IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, | § § § § § § § § | |
| | § | CAUSE NUMBER: 3:11-cv-0207-N |
| Plaintiffs, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.,  TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC. | § § § § § § § § § § § § § | |
| Defendants. | § § | |

**PLAINTIFFS' RESPONSE TO TOYOTA DEFENDANTS' MOTION TO STRIKE
NOTICE OF COMMUNICATION SENT TO THE COURT'S CHAMBERS**

Plaintiffs Ollie Greene, William Greene, as the Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, (collectively hereinafter referred to as "Plaintiffs"), file this response to Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc.'s (collectively "the Toyota Defendants) Motion to Strike and Response to "Notice of Communication Sent to the Court's Chambers," (the "Motion to Strike") and would respectfully show the Court as follows:

## **INTRODUCTORY STATEMENT**

For nearly two years, Plaintiffs have attempted to obtain from the Toyota Defendants clearly discoverable Computer Aided Design (CAD) and Computer Aided Engineering (CAE) information, which also consists of Toyota's Finite Element Analysis (FEA). FEA, a subset of CAE used for analyses, is performed with a "computer program" that uses the finite element method or modeling (FEM[1]) to analyze materials and objects. The FEM or CAD representations include items such as input data files, computer simulation and computer models of testing. It is used during the vehicle's design phase, as well as to predict and reconstruct accident scenarios.

During each of Plaintiffs' attempt to obtain the CAD and FEM input data files, computer simulations and computer models, Toyota filed countless objections including, but not limited to, allegations that the requests are "vague, ambiguous, overly broad, open to interpretation, irrelevant and/or unduly burdensome." In fact, it is undisputed that CAD and FEM discovery has been the subject of numerous discovery requests, as well as two motions to compel. In their latest attempt to avoid truly answering questions regarding the existence of CAD and FEA models, the Toyota Defendants claim they have produced information or answered questions regarding FEM <u>data</u> and CAD <u>drawings</u>. However, Plaintiffs' written discovery requests, as well as requests during the motions to compel, sought information on CAD and FEM vehicle representations, such as input data files, computer simulation and computer models of testing. These requests for CAD and FEA are ones for which Toyota has submitted countless objections and have refused to specify the extent, if any, of Toyota's possession of CAD and FEA input data files, computer simulations and computer models of testing.

Indeed, the Court made clear to the Toyota Defendants the distinction between producing

---

[1] Finite element method (FEM) is a numerical technique for finding approximate solutions of partial differential equations (PDE) as well as integral equations.

**PLAINTIFFS' RESPONSE TO THE TOYOTA DEFENDANTS' MOTION TO STRIKE
PLAINTIFFS' NOTICE OF COMMUNICATION SENT TO THE COURT'S CHAMBERS - Page 2**

the underlying models versus producing "data" when the Court stated during the January 22, 2013, hearing on the motion to compel:

> My understanding is that there are models that are developed that essentially describe the structure of the object in question. Whether it is an element of the vehicle or the whole vehicle, there is essentially a description of it that is the input to the software that can then be used to model particular impacts or other things of that nature. So, as I understand it, there is a distinction between the model and the output of the modeling tests. And this request, as I heard Mr. Pittman read it, calls for the models.

See, January 22, 2013, Transcript of Expedited Discovery Hearing, p. 7. Nevertheless, despite the Court admonishing Toyota of the distinction between CAD and FEA models as opposed to CAD and FEA data output (both of which are discoverable), the Toyota Defendants have refused to clarify whether Toyota has "any" entire vehicle, or other, CAD or FEA input data files, computer simulation and computer models of testing related to the model years for which the Court ruled were within the scope of discovery. By failing to respond candidly as to the extent of available CAD and FEA, Toyota is obstructing the Court's ability to fashion an Order as to which specific CAD and FEA should be produced.

As far as the "vehicle" used by Plaintiffs to request the Court's assistance in obtaining a candid response from Toyota about its CAD and FEA files and models, it would have been overkill for Plaintiffs to have to file a "third" motion to compel for the same discovery that was the subject of the first and second motions to compel and for subject matters on which the Court has already ruled are discoverable. Indeed, during the January 22, 2013, hearing, the Court ordered that Toyota respond fully to Plaintiffs' July 2012 discovery requests. The subject matter of the Notice of Communication Sent to the Court's Chambers is simply an inquiry as to whether the Toyota Defendants have complied candidly and completely with the Court's July 18, 2012, Order and the specific instructions the Court directed to the Toyota Defendants during the

January 22, 2013, hearing. Moreover, since the request for answers contained in Plaintiffs' Notice of Communication Sent to the Court's Chambers arises out of the motions to compel and was discussed during the January 22, 2013, hearing, it is already before the Court by way of motions to compel and during the accompanying hearing on the motion to compel. Accordingly, this should obviate the need for Plaintiffs to have to file a redundant motion to obtain the same information that has been requested in writing and addressed multiple times in open Court.

## FACTUAL BACKGROUND

In Plaintiffs' First Request for Production served upon the Toyota Defendants in 2011, Plaintiffs requested, *inter alia*:

1. Information related to the design, testing and manufacture of the driver, right front passenger, and rear seat occupant restraint systems for the subject platform vehicle;

2. All Computer Aided Engineering files and associated documentation, analyses, and reports for the subject platform vehicle from 5 years prior to product line inception to present, including all CAD and FE files and associated documentation;

3. Documents related to finite element modeling for the subject platform vehicle;

4. All crashworthiness finite element models for subject platform vehicle that would be used with finite element modeling programs, for example, LS-DYNA, RADIOSS, or PAMCRASH;

5. All crashworthiness finite element models for the Corolla platform (for the Corolla style involved in the Greene accident) that would be used with finite element modeling programs, for example, LS-DYNA, RADIOSS, or PAMCRASH;

6. The MADYMO files for the subject platform vehicle including all available versions for side curtains and side airbags; and

7. All computer aided engineering files and associated documentation, analyses, and reports for the subject platform vehicle from 5 years prior to product inception to present.

In response to these and other requests, the Toyota Defendants, in three responses that total 546 pages, objected to virtually each of Plaintiffs' requests and refused to provide clearly

discoverable items. Accordingly, on February 24, 2012, Plaintiffs filed a motion to compel (the "First Motion to Compel") seeking Court intervention to compel production of discoverable information. See, Dkt Entry No. 64.

On March 5, 2012, the Court held a hearing on Plaintiffs' First Motion to Compel. During this hearing, the Court requested that the parties provide briefing to the Court to aid the Court in fashioning an order compelling production of the discovery sought. The parties complied with this directive. On July 18, 2012, the Court issued its Order (the "July 18, 2012, Order") on Plaintiffs' First Motion to Compel. See, Dkt. Entry No. 111. In the July 18, 2012, Order the Court established the scope of permissible discovery with regard to areas that Plaintiffs' counsel identified during the March 5, 2012, hearing. The July 18, 2012, Order also granted Plaintiffs leave to reurge their motion to compel responses to specific discovery requests if Toyota and Volvo's discovery responses remained deficient after the Court's guidance.

Upon receiving the Court's July 18, 2012, Order, Plaintiffs' counsel submitted a discovery request dated July 23, 2012, to the Toyota Defendants seeking production of discovery within the scope permitted by the Court's July 12, 2012, Order. This discovery request included a demand for the following CAD and FEA discovery:

1. All <u>FE files</u>, and associated documentation, analyses, and reports for the U.S.-bound 2003-2009 and 2010-2012 Toyota 4Runners. Includes the <u>finite element analysis input files</u> used for design and crashworthiness evaluations of the fuel system, fire prevention and suppression systems, seat restraint, air bag systems, rear occupant compartment and structural integrity. <u>This information should be produced in a universally readable, useable and downloadable format</u>;

2. All <u>CAD files</u>, and associated documentation, analyses, and reports for the U.S.-bound 2003-2009 and 2010-2012 Toyota 4Runners. Includes the <u>finite element analysis input files used</u> for design and crashworthiness evaluations of the fuel system, fire prevention and suppression systems, seat restraint, air bag systems, rear occupant compartment and structural integrity. <u>This information should be produced in a universally readable, useable and downloadable format</u>;

**PLAINTIFFS' RESPONSE TO THE TOYOTA DEFENDANTS' MOTION TO STRIKE**
**PLAINTIFFS' NOTICE OF COMMUNICATION SENT TO THE COURT'S CHAMBERS - Page 5**

3.  The crashworthiness finite element <u>model computer files</u> for the U.S.-bound 2003-2009 and 2010-2012 Toyota 4Runners that would be used as input to the finite element modeling programs, for example, LS-DYNA, RADIOSS, or PAMCRASH. <u>This information should be produced in a universally readable, useable and downloadable format;</u>

4.  The crashworthiness <u>finite element model computer input files</u> for front, side and rear impacts for the U.S.-bound 2003-2009 and 2010-2012 Toyota 4Runners. <u>This information should be produced in a universally readable, useable and downloadable format;</u>

5.  <u>MADYMO Computer input files</u> for the U.S.-bound 2003-2009 and 2010-2012 Toyota 4Runner including as available versions including side curtains, side airbags, seats and/or seatbelts. This information should be produced in a universally readable, useable and downloadable format;

6.  <u>The MADYMO computer input files</u> for the U.S.-bound 2003-2009 and 2010-2012 Toyota 4Runner and its occupant restraint systems. This information should be produced in a universally readable, useable and downloadable format; and

7.  <u>The most current set of computer files for the LS-DYNA version of THUMS Version 4</u> including the AE05, AM50, AM95 model types for the U.S.-bound 2003-2009 and 2010-2012 Toyota 4Runners. <u>This information should be produced in a universally readable, useable and downloadable format.</u>

After finally receiving some materials from the Toyota Defendants, several months after the discovery requests were served on Toyota, Plaintiffs' counsel informed Toyota's counsel on October, 24, 2012, that Toyota's responses did not comply with the scope of discovery allowed by the Court's July 18, 2012, Order. By parsing words, the Toyota Defendants had actually refused to abide by the terms or spirit of the Court's July 18, 2012, Order. As a product of the actions of the Toyota Defendants, Plaintiffs were forced to file another motion to compel (the "Second Motion to Compel") (Dkt. Entry No. 131), which was heard by the Court on January 22, 2013. During the January 22, 2013, hearing on Plaintiffs' Second Motion to Compel, the Court issued the following directive to the Toyota Defendants:

> Okay. I want you to treat Exhibit B [Plaintiffs' July 23, 2012, discovery requests] as if it were a formal RFP and respond to it in a week. That doesn't mean produce the documents, necessarily, but give them a written response. You have had it around since July, so I think you can probably give them a written response in a week.

**PLAINTIFFS' RESPONSE TO THE TOYOTA DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' NOTICE OF COMMUNICATION SENT TO THE COURT'S CHAMBERS - Page 6**

Okay. Then 30 days for the docs.

On or about January 29, 2013, the Toyota Defendants submitted their response to Plaintiffs' July 23, 2012, discovery requests. Consistent with the Toyota Defendants' original 546 page set of objections to Plaintiffs' first set of discovery, the Toyota Defendants submitted an 83-page set of objections to the July 23, 2012, discovery requests, despite the requests being completely consistent with the scope of discovery allowed by the Court's July 18, 2013, Order. Additionally, as a result of numerous objections asserted in the Toyota Defendants' responses regarding the existence of Toyota's CAD and finite element modeling, Plaintiffs' counsel submitted a letter dated February 1, 2013, to Toyota's counsel asking for the status of the Toyota Defendants' CAD or FEA input data files, computer simulation and computer models of testing. This letter is attached to the Notice of Communication Sent to the Court's Chambers. See, Dkt. Entry No. 139, PageID 3036.

In several subsequent exchanges of correspondence between Plaintiffs' counsel and counsel for the Toyota Defendants, the Toyota Defendants never responded to the question whether the Toyota Defendants have "any" entire vehicle, or other, CAD or FEM representations (e.g. input data files, computer simulation and computer models of testing) related to the 2003-2009 and the 2010-2012 U.S. bound 4Runners. Plaintiffs' inquiry as to the existence of Toyota's CAD and FEM information is not limited to the narrow areas listed in Toyota's correspondence that is attached to the Notice of Communication Sent to the Court's Chambers. See, Dkt. Entry No. 139 PageID 3037. By failing to respond as to the full nature and extent of the Toyota Defendants' CAD or FEM input files, design files, computer models and/or computer simulation programs the Court's ability to issue further orders on the Second Motion to Compel is being hampered. That is because the Toyota Defendants

are refusing to apprise Plaintiffs or the Court as to the nature and extent of the CAD and FEA models that Toyota possesses.

Additionally, the Toyota Defendants attempt to make hay out of the absence of the Toyota Defendants' March 1, 2013, letter[2] from Plaintiffs' Notice of Communication Sent to the Court's Chambers. However, as can be seen from this letter, it also does not address the question as to whether the Toyota Defendants have "any" entire vehicle, or other, CAD or FEM representations (e.g. input data files, design files, computer simulation and computer models of testing) related to the 2003-2009 and the 2010-2012 U.S. bound 4Runners. In other words, the March 1, 2013, letter is simply a replication of the unresponsive February 22, 2013, letter from Toyota's counsel, which is included with the Notice of Communication Sent to the Court's Chambers. Indeed, the March 1, 2013, letter from Toyota's counsel does nothing to provide the Court with the nature and extent of the Toyota Defendants' CAD or FEM input files, design files, computer models or computer simulation programs related to the 2003-2009 and the 2010-2012 U.S. bound 4Runners.

## CONCLUSION

Plaintiffs ask that the Court deny the Toyota Defendants' Motion to Strike. Furthermore, as a continuation of the Court's rulings on Plaintiffs' Second Motion to Compel, Plaintiffs ask that the Court order that the Toyota Defendants (a) respond fully as to whether Toyota has any CAD or FEM input files, design files, computer models or computer simulation programs, whether for the entire truck or otherwise; (b) if so, specify the nature and full extent of such CAD or FEM files, models and information; and (c) provide an explanation why the Toyota Defendants are not producing the requested CAD

---

[2] See, Toyota's Appendix in Support of Defendants' Motion to Strike, and Response to "Notice of Communication Sent to the Court's Chambers.

**PLAINTIFFS' RESPONSE TO THE TOYOTA DEFENDANTS' MOTION TO STRIKE**
**PLAINTIFFS' NOTICE OF COMMUNICATION SENT TO THE COURT'S CHAMBERS - Page 8**

and FEA discovery. This request clearly arises out of the motions to compel that are on file with the Court and is not onerous. Accordingly, Plaintiffs ask that the Court also find that there is no need to file another motion in order to obtain the relief being sought.

Respectfully Submitted,

| | |
|---|---|
| /s/ Aubrey "Nick" Pittman | /s/ Daryl K. Washington |
| AUBREY "NICK" PITTMAN | DARYL K. WASHINGTON |
| State Bar No. 16049750 | State Bar No. 24013714 |
| | |
| **THE PITTMAN LAW FIRM, P.C.** | **LAW OFFICES OF DARYL K. WASHINGTON P.C.** |
| 100 Crescent Court, Suite 700 | 325 N. St. Paul St., Suite 1975 |
| Dallas, Texas 75201-2112 | Dallas, Texas 75201 |
| 214-459-3454 | 214-880-4883 |
| 214-853-5912 – fax | 469-718-0380 - fax |
| pittman@thepittmanlawfirm.com | dwashington@dwashlawfirm.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2013, the foregoing pleading and attachments were filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

   /s/ Aubrey "Nick" Pittman
   AUBREY "NICK" PITTMAN