## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE,** | § § § § § § § § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| **Plaintiffs,** | § | |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC.** | § § § § § § § § § § § § | |
| **Defendants.** | § § | |

---

## PLAINTIFFS' THIRD MOTION TO COMPEL
## AGAINST VOLVO GROUP NORTH AMERICA

---

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................ iv

I.      PRELIMINARY STATEMENT .................................................................... 1

II.     CHRONOLOGY OF DISCOVERY DISPUTE ........................................... 1

III.    ARGUMENT AND AUTHORITIES ........................................................... 2

        A.      The Applicable Discovery Principles. ................................................... 2

        B.      The Claims and Defenses to Which the Requested Discovery Relates. .................. 3

        C.      The Court Should Overrule VGNA's Objections and Require that VGNA
                Respond Fully to Plaintiffs' Discovery Requests. .................................... 4

                1.      VGNA has unfettered access to and use of the information requested
                        and should be ordered to produce information it contends "belongs to"
                        another Volvo entity. .............................................................. 4

                2.      Volvo's FUPS Information is relevant and clearly discoverable ............... 9

                        a.      The FUPS Interrogatories – Nos. 1 and 2 .................................... 12

                        b.      The FUPS Requests for Production – Nos. 3, 5, 9, 14, 15, 16,
                                17, 18, 19, 40 ................................................................. 12

                3.      Requests for Production Nos. 1, 2:  Plaintiffs are entitled to discovery
                        of the complete CAD, FE and/or IGS files and complete database
                        for the Volvo Truck. .............................................................. 13

                4.      Plaintiffs are entitled to discovery on the other "potential energy
                        absorbing device" analyzed by Volvo. ......................................... 16

                        a.      The potential energy absorbing device:  Interrogatories – Nos. 3
                                and 4 ........................................................................... 16

                        b.      The potential energy absorbing device: Requests for
                                Production – Nos. 4, 5, 12, 13, 15, 16, 18, and 40 ....................... 17

                5.      Plaintiffs are entitled to research from Volvo worldwide regarding
                        truck compatibility and energy absorbing devices – Requests for
                        Production Nos. 9, 12, 13, 15, 16, 17, and 37 ................................. 17

                6.      Plaintiffs are entitled to the materials properties information for the
                        Volvo truck's relevant components – Requests for Production No. 10 .... 19

                7.      Plaintiffs are entitled to discovery regarding Volvo's Enhanced Cruise
                        System – Requests for Production Nos. 29, 30, and 31 ....................... 19

8.       Plaintiffs are entitled to the documents, studies and test results
         involving truck aggressivity – Request for Production No. 36................ 20

IV.     CONCLUSION...................................................................................................... 20

CERTIFICATE OF CONFERENCE....................................................................................... 21

CERTIFICATE OF SERVICE ................................................................................................ 22

# TABLE OF AUTHORITIES

## Cases

*Afros S.P.A. v. Krauss-Maffei Corp.*,
  113 F.R.D. 127 (D. Del. 1986) ............................................................. 7

*Alcan Int'l Ltd. v. S.A. Day Manuf. Co., Inc.*,
  176 F.R.D. 75 (W.D.N.Y 1996) ....................................................... 7, 8

*Alimenta (U.S.A.), Inc. v. Anheuser-Busch Cos.*,
  99 F.R.D. 309 (N.D. Ga. 1983) ........................................................... 7

*Boatland of Houston, Inc. v. Bailey*,
  609 S.W. 2d 743 (Tex. 1980) ........................................................ 12, 16

*Chesapeake Operating, Inc. v. Stratco Operating Co.*,
  2009 WL 426101 (M.D.La. 2009) ....................................................... 6

*Cooper Indus, v. British Aerospace, Inc.*,
  102 F.R.D. 918 (S.D.N.Y. 1984) ....................................................... 7, 9

*Fagan v. District of Columbia*,
  136 F.R.D. 5 (D.D.C.1991) ................................................................. 3

*First Nat'l City Bank v. IRS*,
  271 F.2d 616 (2d Cir. 1959) ................................................................ 7

*General Motors Corp. v. Sanchez*,
  997 S.W.2d 584 (Tex.1999)( ............................................................. 16

*Halliburton Energy Servs., Inc. v. M-I, LLC*, 1:06MC001,
  2006 WL 3085622 (S.D. Ohio Sep. 15, 2006) .................................. 7, 8

*Honda of Am. Mfg. v. Norman*,
  104 S.W.3d 600 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) ...................................... 12

*Hunter Douglas, Inc. v. Comfortex Corp.*, No. CIV. A. M8-85 (WHP),
  1999 WL 14007 (S.D.N.Y. Jan. 11, 1999) .......................................... 7

*In re Anschuetz & Co., GmbH*,
  754 F.2d 602 (5th Cir. 1985) .............................................................. 6

*In re Bankers Trust Co.*,
  61 F.3d 465 (6th Cir. 1995) ................................................................ 6

*In re Uranium Antitrust Litig.*,
  480 F. Supp. 1138 (N.D. 111. 1979) .................................................... 7

*Leksi, Inc. v. Fed. Ins. Co.*
  129 F.R.D. 99 (D.N.J.1989) ................................................................ 2

*Searock v. Stripling*,
  736 F.2d 650 (11th Cir. 1984) ............................................................. 7

*SEC v. Credit Bancorp Ltd.*,
  194 F.R.D. 469 (S.D.N.Y. 2000) ........................................................ 7

**Rules**

FED.R.CIV.P. 26(b)(1) ................................................................................................................ 2

FED.R.CIV.P. 34(A) ................................................................................................................... 6

## I.    PRELIMINARY STATEMENT

Defendant Volvo Group North America, LLC, ("VGNA") has chosen to continue its pattern of discovery abuse, the result of which deprives Plaintiffs of clearly discoverable matter. Despite two previous motions to compel, this Court's July 18, 2012, Order, and two sets of narrowed discovery requests after taking the 21sitions of the VGNA corporate representatives, VGNA once again interposes baseless objections in its continuing attempt to hide-the-ball from Plaintiffs. VGNA should be ordered to respond immediately to Plaintiffs' discovery requests. The requests are clearly relevant to the issues in the lawsuit, requests information to which VGNA has access and are reasonably calculated to lead to the discovery of admissible evidence.

## II.    CHRONOLOGY OF DISCOVERY DISPUTE

1.      On or about February 24, 2012, Plaintiffs filed a Motion to Compel (the "First Motion to Compel") against the Toyota Defendants and VGNA.  The First Motion to Compel was heard on or about March 5, 2012, and an Order was issued on July 18, 2012, setting the scope of discovery, but only as to certain limited items discussed at the hearing.

2.      Upon receiving the Court's July 18, 2012, Order, Plaintiffs' counsel submitted discovery requests dated July 23, 2012, to Volvo's counsel seeking production of discovery within the scope permitted by the Court's July 18, 2012 Order and FRCP 26.

3.      On or about August 23, 2012, Volvo responded to Plaintiffs' July 23, 2012, discovery requests. In its response, Volvo objected to the majority of the discovery requests and produced only eighteen (18) pages of supplemental discovery.

4.      On January 4, 2013, Plaintiffs filed a Second Motion to Compel (the "Second Motion to Compel") against the Toyota Defendants and VGNA.  The Second Motion to Compel was heard on or about January 22, 2013, and an Order was issued.

1

5.     On or about May 2, 2013, Plaintiffs took the depositions of VGNA corporate representatives Charles Bird ("Bird"), Andrew Adams ("Adams"), and Gregory Prinzo ("Prinzo") in Greensboro, North Carolina.

6.     As a result of testimony provided by Bird, Adams, and Prinzo indicating that other discoverable matter was available to and had been withheld by VGNA, Plaintiffs served additional interrogatories and requests for production upon VGNA on or about May 22, 2013. (APP 001-012 and APP 025-036)

7.     On or about June 24, 2013, VGNA responded to Plaintiffs' May 22, 2013, discovery requests.   In its responses, VGNA objected to the majority of the discovery requests and produced very limited discovery. (APP 013-024 and APP 037-055)

### III.     ARGUMENT AND AUTHORITIES

### A.     The Applicable Discovery Principles.

FED.R.CIV.P. 26(b)(1) provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The rule provides further that relevant evidence need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  *Id.*  However, despite the application of FRCP 26 and the July 18, 2012, Order establishing the scope of certain discovery in this matter, VGNA continues to assert meritless objections and refuses to produce information plainly relevant and likely to lead to the discovery of admissible evidence.  Plaintiffs ask that the Court order VGNA to immediately respond fully to Plaintiffs' discovery requests.

As to Volvo's burdensome objections, FRCP 26 provides, "[t]he relevancy of this information must be balanced against the burdensomeness of its production." *Leksi, Inc. v. Fed. Ins. Co*. 129 F.R.D. 99, 105 (D.N.J.1989).  Therefore, the Court should find that the expense or burden, if any, in retrieving the requested information is outweighed by the potential benefit of

the proposed discovery. *See e.g., Fagan v. District of Columbia*, 136 F.R.D. 5, 7 (D.D.C.1991) ("The mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden."). Consequently, VGNA's undue burden arguments should be rejected.

        **B.**     **The Claims and Defenses to Which the Requested Discovery Relates.**

Plaintiffs' Complaint alleges that Volvo, *inter alia*, failed to design and incorporate widely available, safer and feasible, alternative designs into the Volvo Heavy Truck.  In essence, Plaintiffs' first claim against Volvo is that the Volvo truck was an incompatible mismatch, in a crash, with other vehicles on the road and designed in such a manner as to inflict, upon impact, its entire mass and stiffness upon passenger vehicles such as the Greene Family's Toyota 4Runner, without any consideration to installing more energy-absorbing components, less rigid materials or technology that would have reduced the Volvo truck's aggressivity towards the Greene SUV and other vehicles.  If the Volvo Heavy Truck had been properly designed, it could have aided in significantly reducing the injuries to, and/or preventing the eventual deaths of, each member of the Greene Family.

Second, it is undisputed that Volvo and other manufacturers have long been aware that collision warning systems save lives and are a needed component on Volvo's trucks. In fact, after analyzing the top safety issues that impact transportation nationwide and changes that are needed to reduce accidents and save lives, the National Transportation Safety Board decided to petition the National Highway Traffic Safety Administration to establish performance standards for motor vehicle collision avoidance technologies and make them standard equipment in passenger vehicles and commercial motor vehicles.[1] Nevertheless, the discovery process is not

---

[1] http://www.ntsb.gov/news/2012/121114.html

the proper time during which to debate Volvo's foreseeability, gross negligence and liability. Accordingly, VGNA's objections that argue the merits of the case should not be entertained.

In its Answer, VGNA has each asserted as one of its affirmative defenses that its trucks complied with all Federal Motor Vehicle Standards.  See paragraph 101 of VGNA's Original Answer (Dkt. Entry 34).  Accordingly, FRCP 26 allows discovery that seeks to establish or refute the applicability of these defenses.  In this Motion to Compel, the issue is properly: does the discovery appear reasonably calculated to lead to the discovery of admissible evidence regarding Plaintiffs' claims and VGNA's defenses.  The answer is an unqualified "yes."

## C. The Court Should Overrule VGNA's Objections and Require that VGNA Respond Fully to Plaintiffs' Discovery Requests.

### 1. VGNA has unfettered access to and use of the information requested and should be ordered to produce information it contends "belongs to" another Volvo entity.

In its Certificate of Interested Persons (Dkt. Entry 35), Volvo affirmatively states as follows:

> VGNA is a Delaware Limited Liability Company and its sole member is Mack Trucks, Inc. Mack Trucks, Inc. is a Pennsylvania corporation and is wholly owned by VNA Holding, Inc., a Delaware corporation, which in turn is a wholly-owned subsidiary of AB Volvo, a Swedish corporation. AB Volvo shares are listed on Nasdaq OMX Nordic Exchange and are traded OTC in the United States.

From a review of Volvo's publicly available information, the Volvo Group is a consolidated organization with seven global "business units" that provide support to the business areas.  One of the Volvo Group's global business areas relevant to this lawsuit is Volvo Trucks. The Volvo Group, Volvo AB, Volvo Trucks, and VGNA all have related websites. The Volvo Group's website[2] links to the Volvo Trucks website[3].  The website for Defendant VGNA exists

---

[2] http://www.volvogroup.com

[3] http://www.volvotrucks.com

only as a part of the Volvo Trucks global website.[4] VGNA is a part of the overall operations of the Volvo Group.  The address for Volvo Truck Corporation is located in Sweden.  VGNA is the American alter ego of the Volvo Group, Volvo AB and Volvo Trucks.  This internet appearance reflects the reality of Volvo's operations.  All of the entities that are part of the Volvo Trucks global business area, including VGNA, receive support from the Volvo Group's "business units."

Furthermore, according to the testimony of one of Volvo's corporate representatives, Charles Bird ("Bird"), Volvo uses a worldwide documentation system called RAPID.  The RAPID system allows VGNA and all other Volvo worldwide entities to readily access information such as engineering, technical, marketing and business information from the other Volvo entities worldwide. Bird Depo at 113:7 – 116:8. (APP 067-070)  Bird also testified that Volvo's worldwide crash and/or design testing information has been used previously in lawsuits that were filed in the United States.  Bird Depo at 116:15 – 117:13. (APP 070-071). VGNA representatives also testified that VGNA was a part of a Volvo Worldwide safety team called the Collision Safety Expertise Team.  Adams Depo at 116:16 – 118:18 (APP 104-106).  This safety team is composed of representatives from countries all over the world, such as the U.S., Japan, India, Sweden and France.  Adams Depo at 122:10 – 123:13 (APP 107-108).  And the Collision Safety Team was responsible for studying and conducting discussions regarding the European version of what is known as the Front Underrun Protection System ("FUPS"), as well as a potential FUPS that was considered specifically for VGNA trucks.  Adams Depo at 117:7 – 118:23 (APP 105-106); Adams 123:21-25 (APP 108).   Adams also testified that Volvo

---

[4] http://www.volvotrucks.com/trucks/na/en-us/products/vn/Pages/vn.aspx

worldwide developed the FE models that were used by VGNA to test the VGNA trucks. Adams Depo at 28:20 – 29:10 (APP 082-083)

Furthermore, when asked specifically whether VGNA used any of the generic Volvo European-designed components on the VGNA trucks, Adams conceded that some of the VGNA truck components share the identical European design. Adams Depo at 125:25 – 126:8 (APP 110-111); Adams Depo at 128:16 – 129:19 (APP 113-114). In addition, with respect to collapsible energy absorbent material or components used on Volvo trucks worldwide, including FUPS, Adams testified that FUPS has been used in Europe since the mid to early 2000's, that he (VGNA's corporate representative) had access to this information in the early 2000's and that Volvo has had several subsequent releases or versions of the front underrun protection that have been energy absorbing.  Adams Depo at 23:15 – 27:11 (APP 077-081). Adams also indicated that no one prevented VGNA from accessing all of this engineering information regarding collapsible energy absorbent components for use on trucks.  Adams Depo at 25:22 – 26:10 (APP 079-080).

The law is clear that a party's obligation to produce documents extends to all documents in its "possession, custody or control." Fed. R. Civ. P. 34(a).  Documents need not be in the physical possession of a party to be discoverable. *In re Anschuetz & Co., GmbH*, 754 F.2d 602, 607 (5th Cir. 1985). Nor is legal ownership necessary to make documents discoverable. *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995). Rather, Federal Courts have consistently held that documents are deemed to be within the "possession, custody or control" of a party and subject to discovery under Federal Rule of Civil Procedure 34 if the party has the legal right to obtain the documents on demand or the practical ability to obtain documents from a nonparty to the action. *Chesapeake Operating, Inc. v. Stratco Operating Co.*, 2009 WL

426101, *4 (M.D.La. 2009); *see also, SEC v. Credit Bancorp Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y. 2000) (citing *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984)) ("'Control' has been construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought upon demand."); *Hunter Douglas, Inc. v. Comfortex Corp.*, No. CIV. A. M8-85 (WHP), 1999 WL 14007 at *3 (S.D.N.Y. Jan. 11, 1999) (test focuses on whether a party has 'access to the documents' and 'ability to obtain the documents'); *Cooper Indus, v. British Aerospace, Inc.*, 102 F.R.D. 918, 919 (S.D.N.Y. 1984) (subsidiary corporation had "control" over documents in possession of parent corporation because they were documents that the subsidiary used in its normal course of business); *First Nat'l City Bank v. IRS*, 271 F.2d 616, 618 (2d Cir. 1959) (finding "control" where there is potential access to the documents in the ordinary course of business).

"Control," or the practical ability to obtain documents from nonparties, can also be shown by the "close coordination" between the party and nonparty entities. *See Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 129 (D. Del. 1986) (citing *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1153 (N.D. 111. 1979)) ("The control analysis for Rule 34 purposes does not require the party to have actual managerial power over the [affiliated entity], but rather that there be close coordination between them"); *see also Alimenta (U.S.A.), Inc. v. Anheuser-Busch Cos.*, 99 F.R.D. 309, 313 (N.D. Ga. 1983); *Halliburton Energy Servs., Inc. v. M-I, LLC*, 1:06MC001, 2006 WL 3085622, *1 (S.D. Ohio Sep. 15, 2006) ("'control' means 'the ability to obtain' and... is derived from the closeness, connection and practical interaction between the parties").

An analogous case is *Alcan Int'l Ltd. v. S.A. Day Manuf. Co., Inc.*, 176 F.R.D. 75 (W.D.N.Y 1996). In *Alcan*, the Court compelled a party corporate entity to produce documents

and witnesses of its nonparty foreign affiliate. In holding that "it was inconceivable that the plaintiff would not have access to or the ability to obtain the information from its foreign affiliate," the court noted that:

> Both [the party corporation and its nonparty foreign affiliate] are corporate members of a unified worldwide business entity known as "Solvay Group," under the common control of Solvay, S.A. The Solvay Group issues a consolidated annual financial report. Both [the party corporation and its nonparty foreign affiliate] use the same corporate logo in their promotional materials. [The corporate party's president and product manager] each testified that he has regular contact with [the foreign affiliate] regarding product sales and marketing.

*Alcan Int'l, Ltd.*, 176 F.R.D. at 79.   Here, as in *Alcan*, the entities resisting discovery, Volvo Group North America, Volvo Trucks and Volvo AB, are corporate members of a unified worldwide business entity, "Volvo Group," under the common control of a foreign parent holding company, A.B. Volvo. Volvo Group issues a consolidated annual financial report. VGNA, Volvo Sweden, Volvo Trucks, and the Volvo Group share similar websites and possess a unified marketing strategy.   VGNA, Volvo Europe and Volvo Truck of Sweden all use the same corporate logo in their promotional materials. VGNA employees have regular contact with the other Volvo entities. Under these facts, VGNA has control over the information sought by Plaintiffs. *See Alcan*, 176 F.R.D. at 79; *see also Halliburton*, 2006 WL 3085622 at *1 (finding that a wholly-owned subsidiary had control over documents in the possession of a foreign parent where there were similar "websites, a unified marketing strategy," "an overlapping of directors and officers," and where the parent functioned as an "integrated organization with [the subsidiary] as one of its affiliates").   Indeed, it is inconceivable that VGNA cannot obtain the documents requested.

VGNA should not be able to obstruct Plaintiffs from discovering very relevant and much needed information based on fictional corporate boundaries. As shown above as well as from

8

the deposition testimony of Volvo's corporate representatives, documents and people move globally throughout the Volvo Group's various corporate entities.  Safety and engineering teams are composed of Volvo and VGNA representatives working side-by-side.  When Volvo Europe develops technology that can lead to a safer truck, VGNA has access to that information and provides input on various safety and design efforts.  Indeed, Volvo Group was designed to function in that very manner.  As one court put it, "Defendant cannot be allowed to shield crucial documents from discovery... merely by storing them with its affiliate abroad... If defendant could so easily evade discovery, every United States company would have a foreign affiliate for storing sensitive documents." *Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 919-20 (S.D.N.Y. 1984). For the foregoing reasons, the Plaintiffs respectfully ask the Court to compel VGNA to produce documents and witnesses in response to Plaintiffs' discovery requests as set out herein.

### 2.      Volvo's FUPS Information is relevant and clearly discoverable.

Plaintiffs' Complaint alleges that VGNA failed to design and incorporate widely available, safer and feasible, alternative designs into the Volvo Heavy Truck's absent or defective collision warning system and energy-absorption capabilities, and that the Volvo Heavy Truck was defectively designed because it was an incompatible mismatch, in a crash, with other vehicles on the road. In effect, the Complaint alleges that if the Volvo Heavy Truck had been properly designed it would have prevented the deaths of and/or significantly reduced the injuries to each member of the Greene Family.  No one disputes that compatibility assessment is a major topic in crash safety research worldwide and has been for years. Indeed, documents included among the few produced by VGNA recognize the foreseeability specifically of Volvo trucks, unless redesigned, killing occupants of passenger vehicles struck by Volvo trucks:

Vehicles with high aggressivity, such as heavy trucks, often compromise the survivable space within any smaller vehicles they strike, in part because the difference in height between the two vehicle in override and permits the stiffer elements of the commercial vehicle's front structure to intrude into the passenger vehicle…..Deflection of the passenger car and energy absorption into the truck frame might be achieved by design modification, thereby providing some reduction of heavy vehicle aggressivity.

See, Exhibit 9, PageID 1283, to Plaintiffs' Brief in Support of Plaintiffs' original Motion to Compel (Dkt. No. 78-9).  Furthermore, with the changing fleet composition, the differences between cars and trucks have increased in terms of mass, front end stiffness and geometry. Volvo and the rest of the truck manufacturers foresaw and continue to recognize this imbalance. Indeed, according to Volvo's documentation, the benefits and objectives of FUPS technology, which has existed at Volvo since at least 2003, are described as follows:

FUPS is based on the principle that a car colliding with a truck impacts the vehicle at exactly the correct height to activate the car's own crumple zone, while FUPS absorbs the collision forces as efficiently as possible.

Every measure that can be taken to make a heavy vehicle more 'collision-friendly' is a benefit and front underrun protection is one of the most important steps in that direction.

Front underrun protection is one of the most important steps in the direction of making a heavy vehicle more collision friendly.

The underrun protection beam serves as a crumple zone considerably reducing penetration into the car's passenger component."

With the truck bumper situated on the same level as that of a typical car bumper, the deformation zone of the car can be utilized in the best possible way.

If all of the trucks on European roads were equipped with FUPS in accordance with ECE R-93, it's estimated that approximately 20,000 fewer people would suffer death or severe injury every year.

Adams Depo at 66:18 – 71:21 (APP 097-102) and Plaintiffs' Deposition Exhibit 108 (APP 115-116).  Additionally, Adams testified that VGNA used FUPS technology in the mid 2000's to see whether a rigid version of FUPS could be used on VGNA's trucks.  Adams Depo

10

at 64:6 – 66:9 (APP 095-097).  Adams also testified that VGNA was aware as early as the mid-2000's that a group called VC-COMPAT was conducting an industry study in Europe regarding compatibility-type crashes between cars and trucks.  Adams Depo at 84:4-25 (APP 103).

In the objections, VGNA first contends that since FUPS in Europe allegedly "are 'primarily' designed to prevent a passenger car from underrunning or riding under a heavy truck in which the two vehicles collide in a frontal impact," it is irrelevant to truck involved in the May 28, 2010, incident.  However, this statement is a blatant misrepresentation of the potential benefits of the energy-absorbing technology.  VGNA also contends that if Volvo's FUPS was designed for a "cab over" truck in Europe, it is irrelevant to the truck involved in the Greene incident.  However, these assertions by Volvo are blatantly untrue and clearly the subject of expert testimony.  Virtually any energy absorbing device for a Volvo heavy truck will be applicable to the Volvo truck that struck the Greene's SUV on May 28, 2010.  A cab over compartment is simply something that sits atop the truck's chassis.  The truck's cab could be placed further back or further forward on the truck but the chassis can essentially be the same. Consequently, the Court should not be distracted by VGNA's unsupported claims that the location of a cab atop an engine, versus further back on the chassis, has any effect on the utility of an energy absorbing front end.  The effectiveness of FUPS in various types of collisions is an issue that cannot and should not be resolved in a discovery dispute.  Expert testimony will establish that even if frontal collisions were Volvo's "primary" use of FUPS, the energy-absorbing aspect of the FUPS technology is relevant and applicable anytime a Volvo truck impacts another vehicle, whether the truck has a cab-over engine design or engine-forward-of-cab design.  The evidence also clearly establishes that VGNA had knowledge of and unfettered access to FUPS technology prior to the time the VGNA truck at issue was manufactured.

11

Additionally, the fact that other Volvo entities and all truck manufacturers in Europe were using

FUPS makes clear that it is plainly relevant to Plaintiffs' claims. "A plaintiff can prove

technological feasibility of a safer alternative design with evidence that another manufacturer

uses it." *See Boatland of Houston, Inc. v. Baile*y, 609 S.W. 2d 743, 746 (Tex. 1980); *Honda of*

*Am. Mfg. v. Norman*, 104 S.W.3d 600, 607 (Tex.App.-Houston [1st Dist.] 2003, pet. denied).

### a.    The FUPS Interrogatories – Nos. 1 and 2

Interrogatory No. 1 requests information regarding FUPS testing, the speeds at which the

FUPS testing was conducted, the dates FUPS was functional for Volvo's trucks and other

identifying information regarding FUPS.   Interrogatory No. 2 requests cost information for

FUPS.  See, APP 009.  For the reasons discussed above, VGNA and Volvo should be ordered to

answer fully this clearly relevant and available information.

### b.    The FUPS Requests for Production – Nos. 3, 5, 9, 14, 15, 16, 17, 18, 19, 40

Plaintiffs' Requests for Production seeks FUPS information such as (1) CAD, IGES, and

FEM design, computer simulation, and/or input files for FUPS; (2) research regarding truck

aggressivity and incompatibility in crashes between trucks and passenger cars; (3) information

exchanged between various Volvo and VGNA safety or engineering team members regarding

FUPS, truck compatibility and energy-absorbing technology; (4) documents and research from

VGNA and Volvo's joint worldwide Collision Safety Expertise Team that relate to FUPS, truck

aggressivity, and energy-absorbing features and capabilities; (5) cost information for FUPS on

the Volvo trucks and the costs of all FUPS considered by Volvo and VGNA; and (6) email

discussing truck incompatibility, potential energy-absorbing devices, and FUPS during the

relevant time period. See, APP 032-035.  For the reasons discussed herein, the Court should

overrule Volvo's objections and order that VGNA provide all of the information requested.

12

3.      **Requests for Production Nos. 1, 2:  Plaintiffs are entitled to discovery of the complete CAD, FE and/or IGS files and complete database for the Volvo Truck.**

In the requests for production, Plaintiffs have requested the following CAD, FE and IGES information from VGNA for the truck:

1.      The 3-D computer aided design files for the entire representation of the 2007 VN630 tractor. If these are not available, then provide the files for the model year that is closest to 2007 tractor.

2.      The 3-D model IGES files for the 2007 VN630.  If this is not available provide the files for the model year that is closest to the 2007 VN630.

6.      Documents and information related to finite element modeling tools referred to in the deposition of Andrew Adams at 28:20 – 29:5.

7.      Information related to finite element modeling related to the bumper, radiator, frame, etc. referred to in the deposition of Andrew Adams at 28:20 – 29:5.

As demonstrated to the Court in the previous motions to compel, it is undisputed that vehicle manufacturers such as Volvo make use of computer modeling and simulation to test crashworthiness and safety features in new designs.  Computer Aided Design (CAD) is used to predict the accuracy of performance predictions. Computer Aided Engineering (CAE) consists of CAD and Finite Element Analysis (FEA).  FEA, a subset of CAE used for analyses, is performed with a computer program that uses the finite element method (FEM)[5] to analyze materials and objects.  In its response to Plaintiffs' previous request for CAD and FEA, VGNA objected and responded as follows:

> With regard to "finite element analysis input files," there was no finite element modeling performed by VGNA in connection with the subject tractor model that relates to a frontal impact with passenger vehicles similar to the 4Runner, or body-on-body frame sport utility vehicles or collision warning systems, and thus there are no documents responsive to this request.

It was clear from this excerpt that VGNA's response ignored the literal terms and spirit of

---

[5] Finite element method (FEM) is a numerical technique for finding approximate solutions of partial differential equations (PDE) as well as integral equations.

the July 18, 2012, Order.  It is also obvious that the Court intended that VGNA produce CAD

and FEM information and computer files that include those input files and computer programs

that have the ability to measure, test and simulate "frontal impacts with passenger vehicles." As a

result of VGNA's refusal to produce CAD and FEM models, Plaintiffs filed the Second Motion

to Compel.  During the January 22, 2013, hearing on Plaintiffs' Second Motion to Compel,

Plaintiffs' counsel stated,

> MR. PITTMAN: Well, the first item that I have taken from the motion deals with
> the FE modeling representation for the entire Volvo BN 630 Tractor. So that is
> the first item we would like to request from Volvo.

See, January 22, 2013, Transcript of Expedited Discovery Hearing, p. 13.   After VGNA's

counsel was unable to notify the Court of the exact CAD and FEM that VGNA had, the Court

issued the following instruction to VGNA's counsel:

> THE COURT: Let's do this. Why don't you inquire of your client what finite
> element models are available for any constituent part of the tractor.

See, January 22, 2013, Transcript of Expedited Discovery Hearing, p. 15.  On or about

February 4, 2013, VGNA provided Plaintiffs with a listing of some of the FEM testing done on

the VGNA tractor.  FEMs are used principally to model an entire vehicle, as well as individual

components.  It was well over a year ago when Plaintiffs first asked VGNA for the CAD and the

finite element representation of the VGNA tractor, including the computer program information,

input and data files, and the associated documentation reflecting the FEMs for the entire design

and evaluation of the heavy truck.  VGNA objected to producing all of the 3-D CAD and IGES[6]

files.  As a result, Plaintiffs have already had to file two motions to compel.  Even after the

---

[6] Initial Graphics Exchange Specification ("IGES" or "IGS") files use a Vector format for saving
wireframe models.  They contain graphics that are typically opened and manipulated in CAD
software applications.  These files, which could be 2D or 3D, usually contain models, diagrams,
dimensions and drawings of items.

second motion to compel was heard, VGNA has only produced six single IGES files with component designs, but with no materials' properties or dimensions.  VGNA has not produced the 3-D CAD files for the 2007 VN630.  Presumably the 3-D CAD files will contain the much needed materials' properties and dimensions for each component.  Furthermore, although VGNA contends that "tests" it conducted may have been for a limited purpose, the "modeling" done for those tests will contain more detailed CAD and FEA information, such as defined geometry, inertial and materials' properties, etc.  The evidence is clear that VGNA used FE in evaluating cab crashworthiness.  Adams Depo at 28:20 – 31:7 (APP 082-085) and that Volvo worldwide developed FE models that were used by VGNA to test VGNA trucks.  Adams Depo at 117:7 – 118:23 (APP 105-106). Accordingly, the information sought by Plaintiffs is relevant and highly likely to lead to the discovery of admissible evidence.

Additionally, in its objection to Request for Production No. 7, VGNA contends that FEA related to an alternative bumper (the "Bright Bumper") is not relevant since the Bright Bumper was not used on the truck at issue.  (APP 043)  However, that is precisely the point – the Bright Bumper constitutes an alternative design that may have energy-absorbing features that could have lessened the severity of the May 28, 2010, incident.  At the very least, information regarding the Bright Bumper is discoverable.

VGNA has also failed to produce all of the 3-D model IGES files for items such as the (1) frame and frame rails; (2) hood; (3) radiator; (4) transmission; (5) engine; (6) drivetrain components; (7) cooling unit; (8) steering components; (9) the coupling between the frame and bumper; and (10) the other substantial components that are forward of the firewall on the Volvo truck.  Accordingly, Plaintiffs ask that the Court order VGNA to produce the database so that Plaintiffs can extract the needed information for the Volvo truck and all relevant components.

Without the whole database, the inertial properties of the VGNA tractor are not known.  The substantially limited information that VGNA has produced does not characterize the material properties, 3D positions or dimensions of the VGNA truck that was involved in the Greene incident or of the material components of the front of the truck.  Without the complete FE, IGES, and materials information, Plaintiffs will suffer substantial prejudice.

4. **Plaintiffs are entitled to discovery on the other "potential energy absorbing device" analyzed by Volvo.**

During his deposition, one of Volvo's corporate representatives, Adams, testified that Volvo modeled a potential energy absorbing device that could be used on the bumper of a Volvo truck.  This was in addition to the FUPS that was being used in other countries by Volvo and other truck manufacturers.  Adams Depo at 18:21 – 20:11 (APP 072-074).  After hearing of this technology and alternative design, Plaintiffs requested discovery regarding the energy-absorbing technology including, but not limited to, testing dates and detailed information regarding the device's uses and potential.  (APP 033)

However, in its objections, VGNA contends that because the potential energy absorbing device was allegedly "theoretical," VGNA should not have to produce "any" information regarding it.  However, the law provides that "[a] design need only prove 'capable of being developed.'" *General Motors Corp. v. Sanchez*, 997 S.W.2d 584, 592 (Tex.1999)(quoting *Boatland of Houston, Inc. v. Bailey*, 609 S.W. 2d 743, 748 ( Tex. 1980)).   In this matter, Plaintiffs are entitled to present evidence showing that the potential energy absorbing device was capable of being developed and incorporated into the Volvo truck at issue.

a. **The potential energy absorbing device:  Interrogatories – Nos. 3 and 4**

Interrogatory No. 3 requests information regarding the energy-absorbing device's testing, the speeds at which the testing was conducted, the dates this technology was functional for

16

Volvo trucks and other identifying information regarding this technology.  Interrogatory No. 4 requests cost and pricing information discussed by Volvo for the potential energy absorbing device.  See, APP 010.  For the reasons discussed above, VGNA and Volvo should be ordered to produce this information.

<blockquote>

**b.**   **The potential energy absorbing device: Requests for Production – Nos. 4, 5, 12, 13, 15, 16, 18, and 40.**

</blockquote>

Plaintiffs' Requests for Production related to the potential energy absorbing device seek information such as (1) CAD, IGES, and FEM design, computer simulation, and/or input files for the energy-absorbing device; (2) research regarding the energy-absorbing device; (3) information exchanged between various Volvo and VGNA safety or engineering team members regarding the energy-absorbing device, truck compatibility and energy-absorbing technology; (4) documents and research from VGNA and Volvo's joint worldwide Collision Safety Expertise Team that relate to the energy-absorbing device, truck aggressivity, and energy-absorbing features and capabilities; (5) potential cost information for the energy-absorbing device if it had been used on the Volvo trucks and the costs of all of the energy-absorbing devices considered by Volvo and VGNA; and (6) email discussing truck incompatibility, and potential energy-absorbing devices during the relevant time period. See, APP 033.  For the reasons discussed above, the Court should overrule Volvo's objections and order that VGNA provide all of the information in Requests for Production Nos. 4, 5, 12, 13, 15, 16, 18, and 40.

<blockquote>

**5.**   **Plaintiffs are entitled to research from Volvo worldwide regarding truck compatibility and energy absorbing devices – Requests for Production No. 9, 12, 13, 15, 16, 17, and 37.**

</blockquote>

During the deposition of Volvo's corporate representatives, Plaintiffs discovered that Volvo has been engaged for years in research regarding truck compatibility and energy absorbing features for Volvo trucks.  Adams Depo at 18:8 – 24:22 (APP 072-078).  And

VGNA's representative admitted that VGNA has known of this research since the early to mid-2000's, long before the Volvo truck that struck the Greene's SUV was manufactured.   Adams Depo at 24:23 – 26:10 (APP 078-080).  Following the VGNA depositions, Plaintiffs served the following requests for research upon VGNA:

9. Research in possession of VGNA and all VOLVO entities related to truck compatibility as that term is used in the deposition of Andrew Adams at 27:5-15.

12. Research related to the potential energy absorbing device on the front of a cab-over vehicle that is referred to in the deposition of Andrew Adams at 59:12-25.

13. CAD, FEA, IGES, Documents, Test results and all other Information relating to the FUPS Advanced Engineering Project referred to in the deposition of Andrew Adams at 59:12-25.

15. Documents and information by, from, to, or ever in the possession of David Critchley, Franklin Josey, Peter Rundberget, Lars-Gowan Lowenadler Carl Almqvist, and Ulf Torgilsman related in any way to (a) truck compatibility, (b) truck aggressivity, (c) FUPS, (d) FUPS Advanced Engineering Project and (e) energy-absorbing features or capabilities that could have been used with any VGNA and VOLVO truck.

16. Documents, Research, Tests, Analyses and information by, from, to, or ever in the possession of the Collision Safety Expertise Team that are related in any way to (a) truck compatibility, (b) truck aggressivity, (c) FUPS, (d) FUPS Advanced Engineering Project and (e) energy-absorbing features or capabilities that could have been used with any VGNA and VOLVO truck.

17. Research in possession of any VGNA or VOLVO entity related to vehicle or truck aggressivity and truck compatibility.

37. Documents, analyses and results of the driver distraction or inattention study by Virginia Polytechnic Institute referred to in the deposition of Charles Byrd [sic] at 111:20 – 112:13.

There is no doubt from Adams' testimony that this information exists within Volvo's worldwide documentation system, to which VGNA has always had access.  Furthermore, as discussed above, VGNA's contention that this research relates solely to a cab-over engine is completely meritless.  The energy absorbing technology can be used on any type of Volvo truck, regardless of where the cab is located on the chassis.  And VGNA's objections that these

18

requests are overly broad, unduly burdensome, vague, ambiguous, not limited in time and not calculated to lead to admissible evidence are all baseless and should be overruled.  The requested information will establish that Volvo and VGNA were aware, since at least the early-2000's, of the dangers of the crash incompatibility of the trucks being sold in the United States and the availability of safer alternatives for the front-ends, most of which were energy-absorbing.

> **6.    Plaintiffs are entitled to the materials properties information for the truck's relevant components – Requests for Production No. 10.**

During Adams' deposition he stated that the material properties information for each of the components forward of the truck's firewall can be found in VGNA's files.  Adams Depo at 52:7 – 53:16 (APP 091-092).  However, none of this information has been produced, whether contained on the part version reports or elsewhere.  Plaintiffs are entitled to the materials' properties information including, but not limited to, the modulus, yield, density, stress strain curve (or similar characterization), strength, toughness, ductility, hardness, elasticity, fatigue, creep, behavior under loading tension, etc.  Accordingly, the Court should overrule VGNA's objections and require that this material be produced.

> **7.    Plaintiffs are entitled to discovery regarding Volvo's Enhanced Cruise System – Requests for Production Nos. 29, 30, and 31.**

During his deposition, one of Volvo's corporate representatives, Prinzo testified that Volvo was using another type of collision warning system called the Enhanced Cruise, although he was unsure when the technology was introduced. Prinzo Depo at 47:23 – 51:21 (APP 121-125).  Accordingly, Plaintiffs requested the following information:

29.    Documents, Analyses, Test results and information related to the Volvo Enhanced Cruise.

30.    Documents and information reflecting the actual cost to VGNA and VOLVO of the Volvo Enhanced Cruise for a VGNA and VOLVO Truck.

31.    Documents and information reflecting the actual cost to a customer of the Volvo Enhanced Cruise for a VGNA and VOLVO Truck.

19

Plaintiffs are entitled to request discovery regarding the benefits of this alternative technology especially to determine when it was actually available to be used by VGNA.

> **8.    Plaintiffs are entitled to the documents, studies and test results involving truck aggressivity – Request for Production No. 36.**

During his deposition, Bird testified that VGNA was aware of studies that have been conducted regarding how aggressive heavy trucks, like the VGNA truck, are on the road and the dangers they present.  Bird Deposition at 90:13 – 91:16.  (APP 063-064).  Accordingly, Plaintiffs made the following request to VGNA:

> 36.    Documents, Studies, Test results and other Information relating to aggressivity studies involving heavy trucks referred to in the deposition of Charles Byrd at 90:13 – 91:16.

Despite Bird's testimony and this unambiguous request, VGNA has not produced a single test report, crash report, etc.  Plaintiffs ask that the Court overrule VGNA's objection and order that VGNA produce all information responsive to this request.

## IV.    CONCLUSION

Each of the items Plaintiffs requested is relevant to a party's claim or defense and reasonably calculated to lead to the discovery of admissible evidence.  Accordingly, the Court should order that Defendant produce all of the requested discovery.  The Court should also grant Plaintiffs their attorneys' fees and all other relief to which they may be entitled.

Respectfully Submitted,

/s/ Aubrey "Nick" Pittman                         /s/ Daryl K. Washington
AUBREY "NICK" PITTMAN                       DARYL K. WASHINGTON

**THE PITTMAN LAW FIRM, P.C.**                    **LAW OFFICES OF DARYL K. WASHINGTON P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112                          325 N. St. Paul St., Suite 1975
214-459-3454                                      Dallas, Texas  75201
214-853-5912 – fax                                214-880-4883
pittman@thepittmanlawfirm.com                     469-718-0380 - fax
                                                  dwashington@dwashlawfirm.com

20

## CERTIFICATE OF CONFERENCE

I hereby certify that on Friday August 2, 2013, a conference was held between Plaintiffs'
counsel and Volvo's counsel wherein the matters raised in this motion were thoroughly
discussed.  Despite such discussions, counsels were unable to resolve any disagreements.


  /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2013 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

  /s/ Aubrey "Nick" Pittman_____
AUBREY "NICK" PITTMAN