IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, *et al.*, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | CAUSE NUMBER: 3:11-cv-0207-N |
| | § | |
| TOYOTA MOTOR CORPORATION, *et al.,* | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS TOYOTA MOTOR CORPORATION, TOYOTA MOTOR
ENGINEERING & MANUFACTURING NORTH AMERICA, INC., AND TOYOTA
MOTOR SALES, U.S.A., INC.'S BRIEF IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW Defendants Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc.,

and Toyota Motor Engineering and Manufacturing North America, Inc. (collectively "Toyota"),

and file this Brief in Support of their Motion for Partial Summary Judgment, and for such would

respectfully show the Court as follows:

**I.**
**SUMMARY**

Toyota is entitled to summary judgment on Plaintiffs' strict liability and negligent claims

based on any alleged marketing defect because Plaintiffs have no evidence to support any of the

requisite elements for a marketing defect claim, including evidence that any alleged marketing

defect was the producing and/or proximate cause of Plaintiffs' damages.  Toyota is also entitled

to summary judgment on Plaintiffs' misrepresentation claims.  Under Texas law, reliance is an

essential element of a misrepresentation claim or claim of marketing defect, and there is no

evidence that the Greene Family relied upon any representations made by Toyota or any

marketing materials from Toyota.  Therefore, Toyota is also entitled to summary judgment on Plaintiffs' misrepresentation and marketing defect claims.

## II.
## BACKGROUND

This case arises out of a multiple-vehicle accident that occurred at 6:25 p.m. on May 28, 2010 in Kaufman County, Texas.  The multiple vehicle, multiple impact, violent crash occurred on eastbound Interstate 20 near Terrell, Texas.  At the time of the crash Wyndell Greene, Sr. was driving a 2010 Toyota 4Runner (the "4Runner") with his wife Lakeysha Greene as front seat passenger and their children Wyndell Greene, II and Wesleigh Greene as rear seat passengers (collectively "the Greene Family").  The 4Runner had come to a stop due to heavy traffic. Charles Derrick Moody ("Moody") failed to keep a proper lookout while operating a 2008 Volvo tractor truck pulling a loaded semi-trailer and rear-ended the 4Runner at high speed.  The 4Runner was violently forced into the rear of a 2006 Toyota Corolla with sufficient force to propel the Corolla into the median and spin the 4Runner sideways before it was slammed passenger side first into the rear of a 2004 Strick trailer.  Lakeysha Greene, Wyndell Greene, II and Wesleigh Greene were killed at the scene by the blunt force trauma of the crash and Wyndell Greene, Sr. died three months later.

After suing and then settling with Moody and his employer, Plaintiffs filed suit against Toyota alleging various causes of action based on strict liability, misrepresentation, negligence, and breach of warranty.  Plaintiffs allege that a marketing defect caused or contributed to the death of the Greene Family.  However, there is no evidence to support any of the requisite elements of a marketing defect claim.  Plaintiffs also allege that Toyota misrepresented the quality, reliability, and safety of the 4Runner, but there is no evidence to support such an

allegation.   Therefore, Toyota is entitled to summary judgment on Plaintiffs' strict liability and negligence marketing defect claims, as well as Plaintiffs' misrepresentation claims.

## III.
## SUMMARY JUDGMENT EVIDENCE

The following materials support Toyota's Motion for Partial Summary Judgment:

Exhibit 1:     Plaintiffs' Second Amended Complaint

Exhibit 2:     Deposition of William K. Greene

Exhibit 3:     Deposition of Ollie R. Greene

Exhibit 4:     Deposition of Marilyn H. Hardeman

## IV.
## ARGUMENT AND AUTHORITIES

### A.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  When a defendant moves for summary judgment on its affirmative defense, it must establish the absence of a genuine dispute of material fact and establish each element of its defense as a matter of law.  *See Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir. 1995); *Crescent Towing & Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994).  Moreover, a movant is entitled to summary judgment when a non-movant does not or cannot come forward with competent evidence of an essential element on which the non-movant has the burden of proof. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S. Ct 3177 (1990).  To raise a fact issue, the non-movant must go beyond the pleadings and show, by competent evidence, there is a genuine factual issue for trial. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

When federal jurisdiction is based on diversity of citizenship, as in this case, a federal court applies the substantive law of the forum state in which it is sitting.  *See, e.g.*, *Foradori v. Harris*, 523 F.3d 477, 486 (5th Cir. 2008) (*citing Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).

**B.      A Reasonable Time for Discovery has Passed.**

A reasonable time for discovery has passed.  This case was filed in the United States Northern District of Texas, Dallas Division in February of 2011.  The discovery deadline, although extended on multiple occasions, is currently set for December 10, 2013.  This case is set for trial on March 14, 2014.  Since filing their Original Complaint, Plaintiffs have had over two and a half years to conduct discovery, including written discovery, vehicle and scene inspections, and depositions of corporate witnesses.  Most importantly, Plaintiffs have responded to written discovery and have given sworn deposition testimony and have not proffered any evidence to support the essential elements of their marketing and misrepresentation claims.

**C.      Plaintiffs' Marketing Defect Claim Is Simply Another Attempt to Bring a Design Defect Claim.**

For Plaintiffs to prevail under a strict liability theory of defective marketing due to a failure to warn, Plaintiffs must establish five elements: (1) a risk of harm must exist that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product; (2) the product supplier must actually know or reasonably foresee the risk of harm at the time the product is marketed; (3) the product must possess a marketing defect; (4) the absence of the warning and/or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product; and (5) the failure to warn and/or instruct must have caused the product user's injury.  *See Goodyear Tire & Rubber Co. v. Rios*,  143 S.W.3d 107, 116 (Tex.

App.–San Antonio 2004*); Simms v. Washex Machinery Corp.*, 932 S.W.2d 559, 562 (Tex. App.—Houston [1st Dist.] 1995, no writ); *USX Corp. v. Salinas,* 818 S.W.2d 473, 482–83 (Tex. App.-San Antonio 1991, writ denied); *see also, Bristol Myers Co. v. Gonzales*, 561 S.W.2d 801 (Tex. 1978) (In Texas, to establish a cause of action for defective marketing for failure to warn, plaintiff must establish the product is unreasonably dangerous in the absence of a warning of the danger or instructions for its safe use.).

Notably, to recover in failure-to-warn cases, plaintiff must prove that the lack of a warning caused the injury. *See Technical Chemical Co. v. Jacobs*, 480 S.W.2d 602, 604 (Tex. 1972) (stating that "proof of causation is a necessary element of strict liability case"). Specifically, for negligence claims, a plaintiff must prove that the defendant's failure to warn was the proximate cause of their injuries. *See General Motors Corp. v. Saenz*, 873 S.W.2d 353, 357 (Tex. 1993); *Purina Mills, Inc. v. Odell*, 948 S.W.2d 927, 935-36 (Tex. App.–Texarkana 1997, writ denied). When basing their claims on strict liability, a plaintiff must show that the failure to warn was a producing cause of their damages. *See Amstadt v. The United States Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *Saenz*, 873 S.W.2d at 357; *Purina Mills*, 948 S.W.2d at 935-36. The common element to both proximate and producing cause is actual causation-in-fact. *Id*. Therefore, in order to succeed, a plaintiff must show that but for the defendant's failure to provide adequate warnings, the plaintiff's injuries would not have occurred. *See Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995).

Even if the alleged factual scenario in this case could give rise to such a claim, Plaintiffs have offered no evidence sufficient to raise a fact issue to support any of the required elements for a marketing defect cause of action, including that the alleged failure to warn was the cause-in-fact of the death of the Greene Family members. Plaintiffs' pleadings simply state that "the

warnings and instructions for the vehicle were inadequate."  *See* Plaintiffs' Second Amended Complaint, at ¶ 35, attached as Exhibit 1.   To the extent that Plaintiffs have even pled a marketing defect allegation, there is no specific reference to a warning or instruction that was inadequate.

Plaintiffs' boilerplate language is thus no more than an inappropriate re-characterization of their underlying design defect claim.  This case is, quite simply, not a marketing defect case. The facts as Plaintiffs themselves have alleged do not give rise to such a claim.  The hallmark of a marketing defect claim is that a product is rendered unreasonably dangerous due to an absence of sufficient warnings or instructions—in other words, a failure to properly warn a consumer of certain risks turns a *properly designed product* into an unreasonably dangerous one.  *See, e.g.¸ Caterpillar Inc. v. Shears¸* 911 S.W.2d 379, 382 (Tex. 1995) ("A defendant's failure to warn of a product's potential dangers when warnings are required is a type of marketing defect. Liability will attach if the lack of adequate warnings or instructions *renders an otherwise adequate product unreasonably dangerous*.") (internal citations removed and emphasis added); *Lemond v. Lone Star Gas Co.*, 897 S.W.2d 378, 386 (Tex. App.—Fort Worth 1994), aff'd in part and rev'd in part on other grounds, 897 S.W.2d 755 (Tex. 1995) ("In marketing defect cases, the defective or unreasonably dangerous condition of the marketed product arises not from the product itself, but because the seller fails to warn the user of an *improper use of the product*.") (emphasis added).

Plaintiffs' allegations in this case, however, are that the subject 4Runner was *unreasonably dangerous as designed* due to its seatbelts, structure, and fuel and fire safety system.  If the 4Runner were unreasonably dangerous as designed as alleged by Plaintiffs, it could not then be rendered unreasonably dangerous due to an absence of warnings.  On the other

hand, if the 4Runner is not unreasonably dangerous as designed, Plaintiffs have brought forth neither evidence nor even allegations that a lack of warnings or instructions somehow rendered it unreasonably dangerous.  As demonstrated, Plaintiffs have no evidence to establish the elements of a claim for a marketing defect in this case.   Therefore, Toyota is entitled to summary judgment on any of Plaintiffs' strict liability or negligence allegations based on a marketing defect.

**D.      Plaintiffs Have No Evidence Toyota Made Any False Material Representations Regarding the 4Runner.**

Plaintiffs allege that Toyota made false misrepresentations that caused the death of the Greene Family.  *See* Plaintiffs' Second Amended Complaint, at ¶¶ 51-54.  However, Plaintiffs fail to specify whether their "misrepresentation" claim is brought under Texas law as a fraudulent misrepresentation claim or a negligent misrepresentation claim.  Either way, Plaintiffs have no evidence to support either claim because they cannot prove reliance.

In order to establish a fraudulent misrepresentation cause of action against Toyota, Plaintiffs must establish that (1) Toyota made a material misrepresentation; (2) the misrepresentation was false; (3) Toyota knew that it was false at the time or recklessly made it without any knowledge of the truth and as a positive assertion; (4) Toyota made the representation with the intent that it be acted upon; (5) the representation was in fact relied upon; and (6) Plaintiffs' suffered an injury.  *See Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 337 (Tex. 2011).

In order to establish a negligent misrepresentation cause of action against Toyota, Plaintiffs must establish that (1) Toyota made a representation in the course of its business, or in a transaction in which it had a pecuniary interest; (2) Toyota supplied false information for the guidance of others in their business; (3) Toyota did not exercise reasonable care or competence

in obtaining or communicating the information; (4) Plaintiffs' decedents justifiably relied on the misrepresentation; and (5) Toyota's negligent misrepresentation proximately caused Plaintiffs' injuries. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).

Both fraudulent misrepresentation and negligent misrepresentation require Plaintiffs to show both actual and justifiable reliance. *Grant Thornton L.L.P. v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). When measuring justifiability, the Court examines the "individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud." *Id.*

### 1.    The Greene Family did not rely on any Toyota representations regarding the 4Runner.

Plaintiffs allege that Toyota made misrepresentations regarding the quality, reliability and safety of the 4Runner in various commercials, internet postings, periodicals, press releases, etc. *See* Plaintiffs' Second Amended Complaint, at ¶¶ 51-54. Plaintiffs further allege that these representations were relied upon by the Greene Family and that they were the proximate cause their deaths. *Id.* This is the extent of their misrepresentation allegations. At no point do they identify any actionable representations or alleged misrepresentations. The only "representation" alleged by Plaintiffs is that throughout radio and television ads, Toyota "invests $1,000,000 per hour on research and development to enhance the safety and technology of its vehicles." *Id.* at ¶ 30. But Plaintiffs have no evidence that this statement was a false material misrepresentation or that Toyota knew it was a material misrepresentation.

More importantly, Plaintiffs have no evidence that the Greene Family relied on any advertising, marketing, or promotion of the 4Runner in their purchase and use of the vehicle.

When asked about the 4Runner at issue in their depositions, none of the Plaintiffs could point to any evidence suggesting that the Greene Family relied upon any representations made by Toyota.

> Q:    Did Wyndell ever call you as either for some big-brother advice or a guy who was sort of in the car business, did he ever call you for advice about, hey, I'm thinking about buying this vehicle, what do you think?
> A:    Yes.
> Q:    And what – when did those conversations take place?
> A:    When Wyndell owned a Yukon, a General Motors product, and he said, Man, I think I am going to get a Toyota Camry.  I think it was a hybrid.  What do you think?  I said it's kind of cool.  At that time the technology was cool.  And he also says, Yeah, I mean pretty safe product from I understand.  I said, I don't know.  He says, I think I might get it.  I said, Fantastic, go for it.  And then he contacted me again when he wanted to get rid of the Toyota Camry to ask my opinion.  He said I'd like to get another product, a bigger product.  And I said, What are you thinking?  He said I'm thinking we liked the Toyota Forerunner that Keysha had.  I think that I'm going to get that.  So it was more of a seeking advice but telling as well or informing.
> Q.    Did it sound like he had pretty much made his mind up before he called you?
> A.    I think so.

Excerpts of Deposition of William K. Greene, at 15:19—16:18, attached as Exhibit 2.

> Q:    Did he ever discuss with you his decision to buy that vehicle?
> A:    They needed a larger vehicle because they planned to add to their family.
> Q:    Did he tell you anything else about why he decided to buy the 2010 Forerunner?
> A:    No

Excerpts of Deposition of Ollie R. Greene, at 23:22—24:3, attached as Exhibit 3.

> Q:    Do you know why Wyndell or Wyndell and Lakeysha decided to buy the 2010 [4Runner]?
> A:    No

Excerpts of Deposition of Marilyn H. Hardeman, at 35:15—37:24, attached as Exhibit 4.

The testimony from the Plaintiffs set forth above establishes that Plaintiffs can offer no evidence of reliance by the decedents on any representations by Toyota in connection with their decision to purchase the subject 4Runner.  At best, their testimony indicates that the 4Runner was purchased based on prior positive experiences with Toyota products, but such would in no way support a cause of action for misrepresentation.

Simply identifying Toyota materials that may or may not have been in the possession of the Greene Family does not prove that these materials were relied upon by the Greene Family when purchasing the 4Runner.  Possession does not equate to reliance.  Plaintiffs' misguided allegations suggest that because the Greene Family decided to purchase the 4Runner, they must have relied upon Toyota's representations.  This nonsensical approach is not supported by the law or the evidence in this case.  In fact, the evidence establishes that the Greene Family purchased the 4Runner because they wanted a larger vehicle than their previous Toyota Camry, and that they were happy with a prior model year 4Runner that they owned.  *See* Excerpts of Deposition of William K. Greene, *supra*.  The evidence, or lack thereof, shows that the Greene Family did not justifiability rely on any Toyota representations.  As a result, there is no genuine issue of material fact with Plaintiffs "misrepresentation" claims, and they fail as a matter of law. Therefore, summary judgment is appropriate.

## V.
## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendants Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., and Toyota Motor Engineering and Manufacturing North America, Inc.  respectfully request that the Court grant them partial summary judgment on all of strict liability and negligence claims based on any alleged marketing defect, as well as Plaintiffs' misrepresentation claims, and for such other and further relief to which they may show themselves justly entitled.

Respectfully submitted,


*/s/ David P. Stone*

**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 N. Harwood Street, Suite 1700
Dallas, Texas  75201
(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR DEFENDANTS
TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA,
INC., AND TOYOTA MOTOR SALES,
U.S.A., INC.**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 12th day of September, 2013.


*/s/ David P. Stone*