IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, *et al.*, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | CAUSE NUMBER: 3:11-cv-0207-N |
| | § | |
| TOYOTA MOTOR CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**APPENDIX TO JOINT SUBMISSION
REGARDING TOYOTA MOTOR SALES, U.S.A., INC.'S MOTION TO QUASH
PLAINTIFF WILLIAM GREENE'S NOTICE OF DEPOSITION**

| DOCUMENT | PAGES |
|---|---|
| 1.  Plaintiffs' February 20, 2012 Correspondence to all counsel | APP000001-APP000002 |
| 2.  Plaintiffs' August 19, 2013 Notice of Toyota Motor Sales, U.S.A. Deposition | APP000003-APP000013 |
| 3.  Correspondence from Kurt Kern to Nick Pittman dated August 26, 2013 | APP0000014-APP000015 |
| 4.  Correspondence from Nick Pittman to Kurt Kern dated August 27, 2013 | APP000016 |
| 5.  Toyota Motor Sales' August 29, 2013 Motion to Quash | APP000017-APP000039 |
| 6.  Plaintiffs' Response to Toyota Motor Sales' Motion to Quash | APP000040-APP000053 |
| 7.  Court's August 30, 2013 Order regarding Motion to Quash | APP000054-APP000057 |
| 8.  Kurt Kern's September 4, 2013 email to Plaintiffs' counsel regarding Meet and Confer | APP000058 |
| 9.  Toyota Motor Sales' Response and Objections to Plaintiffs' Notice served on September 6, 2013 | APP000059-APP000114 |
| 10. Kurt Kern's September 11, 2013 email to Plaintiffs' counsel offering marketing and advertising witness | APP000115 |
| 11. Toyota Defendants' Motion for Partial Summary Judgment | APP000116-APP000118 |
| 12. Brief in Support of Toyota Defendants Motion for Partial Summary Judgment | APP000119-APP000172 |
| 13. Plaintiffs' February 20, 2012 Correspondence to all counsel | APP000173-APP000175 |
| 14. Correspondence from David Stone to Plaintiffs' counsel | APP000176-APP000177 |

| DOCUMENT | PAGES |
|---|---|
| dated July 29, 2013 | |
| 15.   Correspondence from Plaintiffs' counsel to Counsel for VGNA dated March 20, 2013 | APP000178 |
| 16.   Correspondence from Plaintiffs' counsel to Counsel for VGNA dated April 1, 2013 | APP000179 |
| 17.   Correspondence from Plaintiffs' counsel to Counsel for Toyota dated August 27, 2013 | APP000180 |
| 18.   Excerpts from January 22, 2013 Hearing Transcript | APP000181-APP000185 |
| 19.   Email from Plaintiffs' counsel to counsel for Toyota dated September 12, 2013 | APP000186-APP000187 |

Respectfully submitted,


*/s/ David P. Stone*
**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 N. Harwood Street, Suite 1700
Dallas, Texas  75201
(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR DEFENDANT TOYOTA MOTOR SALES, U.S.A., INC.**

*/s/ Aubrey "Nick" Pittman*

**AUBREY "NICK" PITTMAN**
State Bar No. 16049750
**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

**DARYL K. WASHINGTON**
State Bar No. 24013714
**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2013, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

*/s/ David P. Stone*



# The Pittman Law Firm, P.C.

## ATTORNEYS AT LAW

AUBREY "NICK" PITTMAN
DIRECT DIAL (214) 459-3325

February 20, 2012

**VIA FACSIMILE**

David Stone
**BOWMAN AND BROOKE, LLP**
2711 North Haskell Avenue, Suite 650
Dallas, Texas 75204

Pat Fitzgerald
**HOWRY BREEN & HERMAN, L.L.P.**
1900 Pearl Street
Austin, Texas 78705-5408

S. Todd Parks
**WALTERS, BALIDO & CRAIN, L.L.P.**
900 Jackson Street, Suite 600
Dallas, Texas 75202

John S. Kenefick
**MACDONALD DEVIN, P.C.**
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270

Scott W. Self
**FEE, SMITH, SHARP & VITULLO, LLP**
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 752440

> **RE:** ***Ollie Greene, et al v. Toyota Motor Corporation et al***; Cause No. 3:11-cv-00207-N in the United States District Court for the Northern District of Texas, Dallas Division.

Dear Counsel:

After careful review of the available dates provided by you for depositions in this matter, Plaintiffs have scheduled oral depositions as follows:

> March 5 – Strick Trailers, LLC (notice *duces tecum*)
> March 7 – Dolphin Line, Inc. (notice *duces tecum*)
> March 7 - Daniel Sprinkle
> March 15 – Toyota Motor Corporation
> March 20 – Volvo Group North America, LLC
> March 30 - John Fayard Moving & Warehouse, LLC
> April 2 – Toyota Motor Engineering and Manufacturing
> April 3 – Toyota Motor Sales, USA

Attached you will find formal deposition notices for all but the last three scheduled depositions, which you shall receive in the near future.

**The Pittman Law Firm, P.C.**
100 Crescent Court, Suite 700 ● Dallas, Texas 75201 ● 214-459-3454 tel ● 214-853-5912 fax
Dallas ● Houston ● www.thepittmanlawfirm.com

APP 000002

**Letter to all counsel**
**February 20, 2012**
**Page 2**

Your cooperation in maintaining this schedule is appreciated.

Sincerely,

Aubrey "Nick" Pittman

Attachments

**The Pittman Law Firm, P.C.**
100 Crescent Court, Suite 700 ● Dallas, Texas 75201 ● 214-459-3454 tel ● 214-853-5912 fax
Dallas ● Houston ● www.thepittmanlawfirm.com

APP 000003

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **OLLIE GREENE, Individually as the** | § | |
| **surviving parent of WYNDELL GREENE,** | § | |
| **SR., WILLIAM GREENE, as the** | § | |
| **Administrator of the Estate of  WYNDELL** | § | |
| **GREENE, SR., and MARILYN BURDETTE** | § | |
| **HARDEMAN, Individually and as the** | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| **surviving parent of LAKEYSHA GREENE,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **TOYOTA MOTOR CORPORATION,** | § | |
| **TOYOTA MOTOR ENGINEERING &** | § | |
| **MANUFACTURING NORTH AMERICA,** | § | |
| **INC.,  TOYOTA MOTOR SALES USA,** | § | |
| **INC., VOLVO GROUP NORTH** | § | |
| **AMERICA, LLC., VOLVO TRUCKS** | § | |
| **NORTH AMERICA, A DIVISION OF** | § | |
| **VOLVO GROUP NORTH AMERICA,** | § | |
| **LLC., STRICK TRAILERS, LLC, JOHN** | § | |
| **FAYARD MOVING & WAREHOUSE,** | § | |
| **LLC, and DOLPHIN LINE, INC.** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF WILLIAM GREENE'S FRCP RULE 30(b)(6)**
**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A**

PLEASE TAKE NOTICE that Plaintiff William Greene will take the deposition of

Toyota Motor Sales U.S.A. ("TMS") pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure.  The deposition will take place on **September 9, 2013, beginning at 9:30 a.m. at**

**BOWMAN AND BROOKE, 2711 North Haskell Ave., Suite 650, Dallas, TX  75204** and will

continue day to day until completed.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), TMS shall designate one or more

officers, directors, or managing agents, or other persons who consent to testify on its behalf, on

**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 1**

each of the topics set forth on Exhibit "B" attached hereto.  The person(s) designated shall testify as to matters known or reasonably available to TMS. The deposition will be taken before a certified court reporter, may be videotaped, and the videotape and stenographic copy of the deposition may be used in evidence upon the trial or at any hearing of the above-referenced cause.

Pursuant to FRVP, Plaintiffs' counsel requests that TMS provide notification of the name and title of each designated corporate representative at least five (5) business days before the scheduled deposition(s).


Respectfully Submitted,


/s/ Aubrey "Nick" Pittman_____          /s/ Daryl K. Washington_____
AUBREY "NICK" PITTMAN                          DARYL K. WASHINGTON

THE PITTMAN LAW FIRM, P.C.
100 Crescent Court, Suite 700               LAW OFFICES OF DARYL K. WASHINGTON
Dallas, Texas 75201-2112                    P.C.
214-459-3454                                325 N. St. Paul St., Suite 1975
214-853-5912 – fax                          Dallas, Texas  75201
pittman@thepittmanlawfirm.com               214-880-4883
                                            469-718-0380 - fax
                                            dwashington@dwashlawfirm.com


**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 2**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this pleading was served upon Defendants' counsels of record on August 19, 2013, in the manner described below:

| | | |
|---|---|---|
| RANDY HOWRY | _X_ | Via Email |
| **HOWRY BREEN & HERMAN, L.L.P.** | ____ | Via CMRRR |
| 1900 Pearl Street | ____ | Via Telecopy [512-474-8557] |
| Austin, Texas 78705-5408 | ____ | Via Regular U.S. Mail |
| | ____ | Via Overnight Courier |
| | | |
| KURT C. KERN/DAVID STONE | ____ | Via Hand Delivery |
| **BOWMAN AND BROOKE, LLP** | ____ | Via CMRRR |
| 2711 North Haskell Avenue, Suite 650 | _X_ | Via Telecopy [972 616-1701] |
| Dallas, Texas 75204 | ____ | Via Regular U.S. Mail |
| | ____ | Via Overnight Courier |
| | _X_ | Via Email |
| | | |
| DONALD DAWSON | ____ | Via Hand Delivery |
| **DAWSON & CLARK, P.C.** | ____ | Via CMRRR |
| 243 W. Congress | ____ | Via Telecopy [313-256-8913] |
| 600 Marquette Building | ____ | Via Regular U.S. Mail |
| Detroit, MI  48226 | ____ | Via Overnight Courier |
| | _X_ | Via Email |
| | | |
| S. TODD PARKS | ____ | Via Hand Delivery |
| **WALTERS, BALIDO & CRAIN, L.L.P.** | ____ | Via CMRRR |
| 900 Jackson Street, Suite 600 | ____ | Via Telecopy [214-760-1670] |
| 13155 Noel Road, Suite 1000 | ____ | Via Regular U.S. Mail |
| Dallas, Texas 752440 | ____ | Via Overnight Courier |
| | _X_ | Via Email |
| | | |
| JOHN S. KENEFICK | ____ | Via Hand Delivery |
| **MACDONALD DEVIN, P.C.** | ____ | Via CMRRR |
| 3800 Renaissance Tower | ____ | Via Telecopy [214-747-0942] |
| 1201 Elm Street | ____ | Via Regular U.S. Mail |
| Dallas, TX  75270 | ____ | Via Overnight Courier |
| | _X_ | Via Email |
| | | |
| SCOTT W. SELF | ____ | Via Hand Delivery |
| **FEE, SMITH, SHARP & VITULLO, LLP** | ____ | Via CMRRR |
| Three Galleria Tower | ____ | Via Telecopy [972-934-9200] |
| 13155 Noel Road, Suite 1000 | ____ | Via Regular U.S. Mail |
| Dallas, Texas 752440 | ____ | Via Overnight Courier |
| | _X_ | Via Email |

_/s/ Aubrey "Nick" Pittman_____
AUBREY "NICK" PITTMAN

## NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 3

## EXHIBIT "A"

## DEFINITIONS AND INSTRUCTIONS

This Notice incorporates, without limiting the scope of the Federal Rules of Civil Procedure, the following definitions:

1.      "Plaintiffs" shall mean and refer to Plaintiffs Ollie Greene, Individually and as the surviving parent of Wyndell Greene, Sr., William Greene, as the Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and as the surviving parent of LaKeysha Greene.

2.      "Fayard" shall mean and refer to John Fayard Moving & Warehouse, LLC and all of its present and former officers, directors, employees, agents, attorneys, partners, corporate parent, predecessors, subsidiaries, affiliated companies, and all other persons acting or purporting to act on behalf of "Fayard."

3.      "TOYOTA" shall mean and refer to Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, USA and all of their present and former officers, directors, employees, agents, attorneys, partners, corporate parent, predecessors, subsidiaries, affiliated companies, and all other persons acting or purporting to act on behalf of "TOYOTA."

4.      "TMS" shall mean and refer to Toyota Motor Sales, USA and all of its present and former officers, directors, employees, agents, attorneys, partners, corporate parent, predecessors, subsidiaries, affiliated companies, and all other persons acting or purporting to act on behalf of "TMS."

5.      "Volvo" shall mean and refer to Defendant Volvo Group North America, LLC f/k/a Volvo Group North America, Inc. and all of its present and former officers, directors, employees,

**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 4**

agents, attorneys, partners, corporate parent, predecessors, subsidiaries, affiliated companies, and all other persons acting or purporting to act on behalf of "Volvo."

6.      "Dolphin" shall mean and refer to Defendant Dolphin Line, Inc. and all of its present and former officers, directors, employees, agents, attorneys, partners, corporate parent, predecessors, subsidiaries, affiliated companies, and all other persons acting or purporting to act on behalf of "Dolphin."

7.      "Strick" shall mean and refer to Strick Trailers, LLC f/k/a Strick Corporation, Inc. and all of its present and former officers, directors, employees, agents, attorneys, partners, corporate parent, predecessors, subsidiaries, affiliated companies, and all other persons acting or purporting to act on behalf of "Strick."

8.      "Lawsuit" refers to all claims, cross-claims, counterclaims and defenses, whether now asserted or asserted hereafter by amendment, supplement or otherwise, of the parties in the above-styled and numbered cause.

9.      "Incident in Question" refers to the incident that took place on May 28, 2010 when the vehicle driven by Plaintiff Wyndell Greene, Sr. was struck and ignited into flames, causing the deaths of the occupants in the Toyota 4Runner.   The incident is referred to in more detail in Plaintiffs' Complaint filed in this Lawsuit.

10.      "Greene Family 4Runner" or "Greene SUV" refers to the Toyota 4Runner that was being driven by Wyndell Greene, Sr. on May 28, 2010, when the Incident in Question occurred.

11.      The "Subject Toyota Vehicle" means the U.S.-bound 2003-2009 and 2010-2012 Toyota 4Runners and any other vehicle modified to represent the U.S.-bound 2003-2009 and 2010-2012 Toyota 4Runners, including prototypes, concepts, conceptual designs, pre-production

**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 5**

APP000007
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

and production vehicles, systems, subsystems and components, roof structures, restraint systems, side structures, rear structures, sub-assemblies, or other representations of these product lines.

12.     "The Volvo Truck" means the 2006-2008 Volvo VN Truck product line, including any other trucks or vehicles modified to represent the Volvo VN630 truck in any way, including prototypes, concepts, conceptual designs, pre-production and production vehicles, systems, subsystems and components, front structures, side structures, rear structures, sub-assemblies, or other representations of the product line, including other models in the VN Series.

13.     "Trailer" refers to the trailer involved in the Incident in Question, the rear of which was struck by the Greene SUV, and identified in the Complaint as the Trailer manufactured by Strick, owned by Dolphin, and operated by Fayard.

14.     "CAD," "CAE," "FEA," and "FEM" shall refer to Computer Aided Design (CAD) and Computer Aided Engineering (CAE), which can also include Finite Element Analysis (FEA) and any programs that use the finite element method or modeling (FEM ) to analyze materials and objects, etc.

15.     "Document" means any writing and any other tangible thing in Your custody, possession or control, whether printed, recorded, reproduced by any process, or written or contained in a computer (mainframe or otherwise) or on a computer disc, tape, software or electronic media of any kind or data compilation or produced by hand.  Set forth below is a list of examples of writings and tangible things which are included within this definition.  The list is not an exclusive list of the writings and tangible things included within this definition, but rather are intended to aid you in producing the documents that are requested.  Examples of writings and tangible things included within the definition of "document" are as follows:

Letters;  e-mails;  faxes;  reports;  agreements;  intracompany  and  intercompany communications;  correspondence;  telegrams;  memoranda;  summaries  or  records  of

**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 6**

conversations; diaries; calendars; photographs; tape recordings; models; charts; plans; drawings; agendas; minutes or records of conferences or meetings; expressions or statements of policy; lists of persons attending meetings or conferences; summaries; investigations; opinions or reports of consultants; appraisals; records; brochures; pamphlets; advertisements; circulars; trade letters; reports, summaries or analyses prepared by or for any governmental entity or agency; press releases; drafts of any documents; revisions of drafts of any documents; canceled checks; bank statements; invoices; receipts; and notes.

16.     "Communication" or "communications" means any contact or act by which any information or knowledge is transmitted or conveyed between two or more persons and shall include, without limitation, written contact by such means as letters, memoranda, e-mails, "instant messages," telegrams, telex, or by any document, and oral contact by such means as face-to-face meetings and telephone conversations.

17.     "ESI" and "Electronically Stored Information" mean any type of information that is created, used, and stored in digital form, and uses a computer or other device for access. This necessarily includes, but is not limited to, the following examples:

     a.     e-mails, texts, chats, and instant messages;

     b.     memos, letters, and other correspondence;

     c.     spreadsheets;

     d.     drawings;

     e.     simulations;

     f.     databases;

     g.     office documents;

     h.     presentations;

     i.     video, audio, and image files;

     j.     word processing and spreadsheet files;

     k.     website activity and history;

**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 7**

l.      information posted on social networking websites;

m.      voice mails and video mail;

n.      computer programming information; and

o.      all other electronic formats commonly found on computer, network hard drives, back-up tapes and off-line storage such as CDs, DVDs, ZIP drives, etc.

18.      The words "or," "and," "all," "every," "any," "each," "one or more," including," and similar words of guidance are intended merely as such and should not be construed as words of limitation.  The words "or" and "and" shall include each other whenever possible to expand, not restrict, the scope of the request.  The word "including" shall not limit any general category or description that precedes it.  The words "all," "every," "any," "each," and "one or more" shall include each other, when appropriate, to expand, not restrict, the scope of the Request.

19.      The words "refer to," "relate to," "reflect" or "concern " a given subject means concerning, referring to, alluding to, responding to, connected with, commenting on, in respect of, about, regarding, discussing, showing, describing, mentioning, reflecting, analyzing, constituting, evidencing, identifying or in any way pertinent to that certain subject.

20.      The word "person" means any natural person or any business, legal or governmental entity or association, including, but not limited to, private and public partnerships, associations, corporations, joint ventures, sole proprietorships, firms, and governments.

21.      The use of the singular form of any word includes the plural and vice versa.

22.      These topics seek disclosure to the full extent of the Federal Rules of Civil Procedure and applicable laws and shall be interpreted as inclusive rather than exclusive.

23.      If you do not understand or need clarification of a specific request, please contact Plaintiffs' counsel using the contact information above.

**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 8**

## EXHIBIT "B"

1.   Authenticity of documents produced by TMS;

2.   The nature of TMS's business and its relationship to Toyota Motor Corporation and Toyota Motor Engineering & Manufacturing North America, Inc.;

3.   The name, identity, and business office of the CEO, Chairman of the Board and President of TMS, Toyota Motor Corporation, and Toyota Motor Engineering & Manufacturing North America, Inc. for 2009-2013;

4.   The identities and titles of all agents, officers, employees, and representatives of TMS, if any, who were involved in the investigation of the Incident in Question;

5.   The identification of all departments, divisions, Toyota entities, and contractors involved in the marketing, advertising and sales of Toyota, Lexus and Scion SUVs, including the Subject Toyota Vehicle, for 2000-2013;

6.   Knowledge of the geographical areas where marketing, advertising and sales of Toyota, Lexus and Scion SUVs, including the Subject Toyota Vehicle, took place for 2000-2013;

7.   Toyota and TMS's Record Retention Policy for the period 2000 – 2013;

8.   The dates upon which all marketing and sales information for the 2003-2009 and 2010-2012 model year 4Runners were destroyed or discarded and the identity of all persons involved in the decision to destroy or discard this information;

9.   The advertised governmental safety rating for the Subject Toyota Vehicle including, but not limited to, frontal, rear and side crashes for the Subject Toyota Vehicle;

10.  Information and press releases regarding recalls of all Toyota, Lexus and Scion vehicles since 2000 that were recalled as a result of issues related to failure or inadequacy of the fuel system and/or fire prevention system;

11.  Information and press releases regarding recalls of all Toyota, Lexus and Scion vehicles since 2000 that were recalled as a result of defective air bags or side-curtain air bags or failure of air bags to deploy properly;

12.  The general location of the fuel tanks on all models of Toyota, Lexus and Scion SUVs sold by TMS during the period 1996-2013;

13.  The general types of fuel tank protectors used in TOYOTA passenger cars and Toyota, Lexus and Scion SUVs sold by TMS for models 1996-2013;

14.  Type of fuel tank protector used and marketed for the Greene SUV;

15.  The actual and marginal cost, as well as the wholesale and retail sales prices, during the 2003-2013 period, of the full and half fuel tank protector shields for the 2003-2009 and 2010-2012 model year 4Runners;

16.  The actual and marginal cost, and the wholesale and retail sales prices of metal or metallic fuel tanks on vehicles marketed or sold by TMS during the period 1990-2013;

17.  All vehicles marketed or sold by TMS during the period 1990-2013 that contain(ed) metal or metallic fuel tanks;

**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 9**

APP000011
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

18.     The general types of air bags and crash sensors used in Toyota passenger cars and Toyota, Lexus and Scion SUVs sold by TMS for 2000-2013;

19.     Types of air bags, crash sensors, and fuel tanks that were in the Greene SUV while in TMS's possession;

20.     Types of air bags and crash sensors used in the 2003-2009 and 2010-2012 model year 4Runners;

21.     The manner  in and extent to which TMS marketed the reliability and/or hazards of the fuel system, fire prevention system, if any, and the seat belts and air bag restraint systems of the 2003-2009 and 2010-2012 model year 4Runners;

22.     The manner in and extent to which TMS marketed fire safety, fire prevention and fire suppression systems in Toyota, Lexus and Scion SUVs, including the Subject Toyota Vehicle, during the period 2000-2013;

23.     Communications, if any, from Toyota or TMS to dealers and/or consumers that a crash involving the Toyota 4Runner could possibly engage, dislodge, puncture or rupture the fuel inlet pipe and/or the fuel tank, which could lead to a fire in or around the SUV;

24.     The manner in and extent to which TMS marketed safety features of Toyota, Lexus and Scion SUVs, including the Subject Toyota Vehicle, during the period 2000-2013;

25.     Warranties, whether express, implied, or otherwise, provided to dealers that sold the 2003-2009 and 2010-2012 model year 4Runners;

26.     Warranties, whether express, implied, or otherwise, provided to consumers who purchased the 2003-2009 and 2010-2012 model year 4Runners;

27.     Operating instructions and warnings to consumers who purchased the 2003-2009 and 2010-2012 model year 4Runners;

28.     Advertisements placed in Cosmopolitan, Ebony, Jet, Black Enterprise, People Magazine, ESPN Magazine, Sports Illustrated, Popular Mechanic, and US Weekly during 2003-2013 depicting or advertising the Toyota 4Runner;

29.     Exemplar copies of advertisements placed in Cosmopolitan, Ebony, Jet, Black Enterprise, People Magazine, ESPN Magazine, Sports Illustrated, Popular Mechanic, and US Weekly during 2003-2013 depicting, advertising and discussing safety features of Toyota cars and Toyota, Lexus and Scion SUVs;

30.     Identification of all documents, advertisements or other materials, if any, provided to dealers and consumers that describe the differences between, and safety features of, the Full Cover Type and Half Cover Type fuel tank protectors used in the Toyota 4Runners;

31.     The path of distribution of the Greene SUV from the date of its manufacture to the date of the May 28, 2010, incident;

32.     The complete purchase and sales history for the Greene SUV, including complete chronology and wholesale, retail, and dealer prices;

33.     Existence , description and location of emails, e-Discovery and ESI during 2000-2013 that pertain in any way to (a) negligent failure to warn of defective fuel tank design or air bag deployment; (b) breach of express or implied warranties related to fuel tank designs,

**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 10**

seat belt restraints and/or air bags; (c) fuel tank integrity failures, (d) fires in Toyota SUVs from crashes; (e) side curtain airbag failures in crash scenarios; and (f) passenger ejections while wearing seatbelts, in crash scenarios;

34.  The nature of and all actions taken in claims or lawsuits where TMS was/is a party pertaining to any incident during the period 1996-2013 where there were/are allegations of:

    a.  A negligent failure to warn;

    b.  Breach of express or implied warranties;

    c.  An injury or death due to fuel system design or manufacture;

    d.  An injury or death due to a fuel fed fire;

    e.  An injury or death due to alleged failure of seat restraints;

    f.  An injury or death due to alleged failure of air bags and/or crash sensors;

    g.  An injury or death due to full or partial ejection of driver or passenger wearing a seatbelt;

    h.  An injury or death due to allegations of inadequacy of the strength of materials used in the vehicle; or

    i.  An injury or death due to alleged violations of crashworthiness principles.

35.  Research conducted by or for TMS and/or Toyota (or any Toyota related entities) during the period 1996-2013 involving:

    a.  Design, manufacture and locations of fuel tanks in SUVs;

    b.  Fuel leakage during accidents;

    c.  Fire safety, fire prevention and fire suppression systems and/or systems or processes in the Subject Toyota Vehicle that were designed to prevent or suppress fire in the Subject Toyota Vehicle;

    d.  Air bags and crash sensors in SUVs; and

    e.  Crash protection for child occupants and rear passengers in the Subject Toyota Vehicle.

**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 11**



**Bowman and Brooke** LLP

*Attorneys at Law*

2501 North Harwood Street, Suite 1700
Dallas, TX 75201
Main: 972.616.1700
Fax: 972.616.1701
www.bowmanandbrooke.com

Kurt C. Kern
Direct: 972.616.1711
Email: kurt.kern@bowmanandbrooke.com

August 26, 2013

**VIA EMAIL**
Mr. Aubrey "Nick" Pittman
The Pittman Law Firm, P.C.
100 Crescent Court, Suite 700
Dallas, TX 75201

Mr. Daryl K. Washington
Law Offices of Daryl K. Washington, P.C.
325 N. St. Paul, Suite 1975
Dallas, Texas 75201

Re:     Cause No. 3-1-CV-0207-N; *Ollie Greene, et al v. Toyota Motor Corporation, et al*

Dear Mr. Pittman:

Further to our discussions earlier today, Defendants are in receipt of the FRCP 30(b)(6) deposition notice you served on August 19, 2013 setting the deposition of Toyota Motor Sales, U.S.A., Inc. ("TMS") for September 9, 2013 at 11:30 a.m. in Dallas, Texas. As discussed, you unilaterally noticed this deposition without conferring with us as to our availability and we are not available to produce a witness in response to your notice on September 9. However, we are working to identify an appropriate witness in response to the topics in your notice, to the extent they are relevant and properly directed to TMS. We will make that witness available for deposition in our office in Torrance, California at a mutually agreeable time. I hope to have proposed alternative dates for you shortly.

With respect to the topics contained in the notice, several are outside of the scope of knowledge of a TMS corporate witness, or they are otherwise inappropriate. As TMS has previously stated in response to Plaintiffs' written discovery requests, TMS does not design, manufacture, assemble or developmentally test Toyota, Lexus or Scion motor vehicles. Therefore all topics related to the design of the 2003-2009 or 2010-present U.S. bound Toyota 4Runner are outside the scope of a TMS corporate deposition. Additionally, with respect to the advertising and marketing topics identified, there is no evidence of reliance upon any such materials by Plaintiffs or their decedents in this case, which is an essential element of any claim of an alleged marketing defect. Accordingly, TMS will not agree to produce a witness on these irrelevant topics and will file appropriate objections thereto.

Finally, with respect to the location of the deposition, the deposition of an organizational representative should take place in the district of the organization's principal place of business. *Salter v. Upjohn Co.*, 593 F. 2d 649, 651 (5th Cir. 1979). TMS' principal place of business is

MINNEAPOLIS       PHOENIX       DETROIT       SAN JOSE

LOS ANGELES       RICHMOND       COLUMBIA       **DALLAS**       AUSTIN

Mr. Aubrey "Nick" Pittman
August 22, 2013
Page 2 of 2

located in Torrance, California.  Pursuant to our discussions, I appreciate your agreement that the deposition will take place in Torrance, California, not Dallas, Texas.  Also, just for future reference, please note that you listed the address of the office in Dallas that our Firm vacated over a year ago. The correct address is set forth above.

Consistent with the foregoing, we will work with you to coordinate TMS' corporate representative deposition at a mutually agreeable time.  In the meantime, please withdraw the notice as served.

Regards,

BOWMAN AND BROOKE LLP

Kurt C. Kern

KCK:j

cc:    Pat Fitzgerald
       S. Todd Parks
       Michael P. Sharp
       John S. Kenefick

# The Pittman Law Firm, P.C.

## ATTORNEYS AT LAW

AUBREY "NICK" PITTMAN
DIRECT DIAL (214) 459-3325

August 27, 2013

**VIA EMAIL AND FAX**
Kurt Kern
**BOWMAN AND BROOKE, LLP**
2501 North Harwood St., Suite 1700
Dallas, TX 75201

RE:   *Ollie Greene, et al v. Toyota Motor Corporation et al*; Cause No. 3:11-cv-00207-N in the USDC for the Northern District of Texas, Dallas Division.

Dear Mr. Kern:

In response to your August 26, 2013, letter, it does not correctly reflect the conversation you and I had regarding the notice for the deposition of Toyota Motor Sales, U.S.A., Inc. ("TMS"). First, as you may recall, I indicated that we noticed the TMS deposition for Dallas as an attempt to reduce the costs to the other Defendants by avoiding having six or more counsel having to fly to California. Instead we figured TMS would accommodate the parties by having a TMS representative come to Dallas. However, after you indicated that you were not concerned about travel costs incurred by the other Defendants, I stated that Plaintiffs could switch the location of the deposition without this being an issue.

Second, as to date of the deposition, I was very clear that we would "consider" changing the date if you provided another "convenient" date that is within two days before or after September 9, 2013. We have not received any alternate dates. Accordingly, the date remains as noticed and the notice is not being withdrawn. Third, I made it clear that all of the designated topics are appropriate, relevant and reasonably calculated to lead to the discovery of admissible evidence. Therefore, pursuant to Rule 30(b)(6), TMS is required to designate persons having knowledge of each of the matters and to prepare those persons in order that they can answer fully, completely, and unevasively, on the questions posed on the designated subject matters.

We look forward to seeing the TMS representative(s) on September 9, 2013.

Sincerely,

Aubrey "Nick" Pittman

cc:   All Counsel

**The Pittman Law Firm, P.C.**
100 Crescent Court, Suite 700 ● Dallas, Texas 75201 ● 214-459-3454 tel ● 214-853-5912 fax
Dallas ● Houston ● www.thepittmanlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **OLLIE GREENE**, *et al.*, | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| | § | |
| **TOYOTA MOTOR CORPORATION**, *et al.,* | § | |
| **Defendants.** | | |

**TOYOTA MOTOR SALES, U.S.A., INC.'S MOTION TO QUASH
PLAINTIFF WILLIAM GREENE'S NOTICE OF DEPOSITION,
<u>AND BRIEF IN SUPPORT THEREOF</u>**

TO THE HONORABLE JUDGE COURT:

Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") files this Motion to Quash Plaintiff William Greene's FRCP Rule 30(b)(6) Notice of Deposition of Toyota Motor Sales, U.S.A. The Court should quash the overly broad deposition notice because reasonable notice of the deposition was not given, and the appropriate witness(es) for TMS to address the relevant topics is unavailable to testify on the dates unilaterally selected by Plaintiff. Moreover, Counsel for TMS is also unavailable on those dates, and the deposition has been noticed to take place at an improper location.

## I.
## BACKGROUND

1.      At 5:00 p.m. on August 19, 2013, without conferring with counsel for TMS about available dates or the topics to be covered by a TMS witness, Plaintiff served a notice of deposition of TMS covering thirty-five topics and several sub-topics.   A true and correct copy

---

**TOYOTA MOTOR SALES, U.S.A., INC.'S MOTION TO QUASH
PLAINTIFF WILLIAM GREENE'S NOTICE OF DEPOSITION,
REQUEST FOR EXPEDITED RELIEF, AND BRIEF IN SUPPORT THEREOF** **PAGE 1**

of the notice is attached hereto as Exhibit "A."  Appx. at 1-11.  That 30(b)(6) notice, which contains overly broad and irrelevant topics, unilaterally sets the deposition for September 9, 2013, beginning at 9:30 a.m. at Bowman and Brooke LLP, 2711 North Haskell Ave., Suite 650, Dallas, Texas 75204.  This location is improper because it is not within the district of TMS's principal place of business.  *See Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 483 (10th Cir. 1995); *Rapoca Energy Co. v. AMCI. Corp.*, 199 F.R.D. 191, 193 (W.D.Va. 2001). This location is also improper because the current address of Bowman and Brooke LLP's Dallas office is 2501 North Harwood Street, Suite 1700, Dallas, Texas 75201. After receiving the notice, counsel for TMS conferred with Plaintiff's counsel and requested that Plaintiff withdraw the notice, but Plaintiff's counsel refused to do so. *See, e.g.,* August 26, 2013 letter from Kurt Kern to Plaintiffs' counsel, attached hereto as Exhibit "B" and Plaintiff's counsel's response is attached hereto as Exhibit "C." Appx. at 12-13 and 14.

## II.
## MOTION TO QUASH

**A.    Plaintiff's Notice of Deposition Does Not Provide Reasonable Notice.**

2.    TMS was not given reasonable notice of the deposition.  Federal Rule of Civil Procedure, Rule 30, requires that a party must give reasonable written notice of a deposition on oral questions.  Fed. R. Civ. P. 30(b)(1).  Plaintiff has unilaterally set a 30(b)(6) deposition on three weeks' notice.  Rule 30(b)(6) requires the deponent to make a good-faith effort to identify and designate the persons within the organization most knowledgeable of the relevant matters sought by the notice and to prepare those persons so that they can answer fully, completely and without being evasive.  *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 432-34 (5th Cir.

APP000018
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

2006).   That means, to comply with the notice, TMS would need to identify the persons knowledgeable on the numerous topics, prepare those persons so that they can answer relevant questions, and make them available on the date unilaterally selected by Plaintiff.   To do all this in this complex case, three weeks does not constitute reasonable notice.   Moreover, discovery in this case has been ongoing for over two years. During this entire time, Plaintiff has not discussed taking a TMS deposition with Toyota's counsel. In fact, Plaintiff never informed defense counsel of his interest in a 30(b)(6) deposition of a TMS witness until he unilaterally served the subject notice on August 19, 2013. Even when Plaintiff's counsel knew he would be flying to California to take the 30(b)(6) deposition of a Toyota Motor Corporation ("TMC") witness on June 7 and 8, 2013, he made no effort to work with Toyota's counsel to schedule a TMS witness during the same time.   Accordingly, any argument by Plaintiff that there is some urgency to this deposition is without merit. As Plaintiff has not provided reasonable notice of the deposition, the notice should be quashed.   *See* Fed. R. Civ. P. 30.   As stated by counsel for TMS to Plaintiff's counsel and in Exhibit B, Toyota is willing to work with Plaintiff's counsel to identify a mutually agreeable time and date for an appropriate TMS deposition.   Appx. at 12-13.

**B.      Plaintiff's Notice of Deposition Sets the Deposition at an Improper Location**

3.       The notice of deposition sets the deposition at an improper location.   The deposition of an organizational representative should take place in the district of the organization's principal place of business, unless justice requires otherwise, especially when the corporation is a defendant. *Salter*, 593 F.2d at 651; *Thomas*, 48 F.3d at 483; *Rapoca Energy Co.*,

APP000019
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

199 F.R.D. at 193. Plaintiff, however, has noticed the deposition to take place in Dallas, Texas, which is not proper because TMS's principal place of business is in Torrance, California, not in Dallas, Texas. Further, as noted above, if Plaintiff's counsel thinks that making multiple trips to California to take depositions is excessive, he could have tried to work with Toyota's counsel beforehand to set the TMS deposition in conjunction with the TMC deposition that was taken in California.

Additionally, the notice that was served recently, sets the deposition at TMS's counsel's former address, which is no longer occupied by counsel.

**C.     The Scope of the Notice is Overly Broad**

4.     Many of the thirty five topics and sub-topics included in the notice cover subject areas that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence in this case. Many such topics are also vague, overly broad, unduly burdensome or otherwise objectionable**.** Furthermore, many of the topics relate to areas of information that exceed the scope of permissible discovery for this case that the Court defined through its July 18, 2012 Order. Pursuant to the Rules, TMS will serve appropriate objections to such topics before the deposition occurs on a mutually agreed upon date in Torrance, CA.

WHEREFORE, TMS prays that this Court immediately grant TMS's Motion to Quash Plaintiff William Greene's FRCP Rule 30(b)(6) Notice of Deposition of Toyota Motor Sales, U.S.A., Inc., and order any further relief to which TMS is justly entitled.

APP000020
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

Respectfully submitted,

*/s/ Kurt C. Kern*
**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas  75201
(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR DEFENDANTS
TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA,
INC., AND TOYOTA MOTOR SALES,
U.S.A., INC.**

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with Nick Pittman, counsel for Plaintiffs, on August 27, 2013 and Plaintiffs are opposed to the relief sought by this motion.

*/s/ Kurt C. Kern*
**Kurt C. Kern**

**TOYOTA MOTOR SALES, U.S.A., INC.'S MOTION TO QUASH
PLAINTIFF WILLIAM GREENE'S NOTICE OF DEPOSITION,
REQUEST FOR EXPEDITED RELIEF, AND BRIEF IN SUPPORT THEREOF**          **PAGE 5**

APP000021
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 29th day of August, 2013.

*/s/ Jude T. Hickland*
**Jude T. Hickland**

**TOYOTA MOTOR SALES, U.S.A., INC.'S MOTION TO QUASH**
**PLAINTIFF WILLIAM GREENE'S NOTICE OF DEPOSITION,**
**REQUEST FOR EXPEDITED RELIEF, AND BRIEF IN SUPPORT THEREOF**          **PAGE 6**

APP000022
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **OLLIE GREENE**, *et al.*, | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| | § | |
| **TOYOTA MOTOR CORPORATION**, *et al.*, | § | |
| **Defendants.** | § | |

## APPENDIX IN SUPPORT OF TOYOTA MOTOR SALES, U.S.A., INC.'S MOTION TO QUASH PLAINTIFF WILLIAM GREENE'S NOTICE OF DEPOSITION, AND BRIEF IN SUPPORT THEREOF

TO THE HONORABLE COURT:

COME NOW, Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") and would

respectfully show the Court as follows:

| EXHIBIT | DESCRIPTION | PAGE NUMBERS |
|---|---|---|
| Exhibit A | Plaintiff William Greene's FRCP Rule 30(b)(6) Notice of Deposition of Toyota Motor Sales U.S.A. | 1-11 |
| Exhibit B | August 26, 2013 letter from Kurt Kern to Plaintiffs' counsel | 12-13 |
| Exhibit C | Plaintiff's counsel's response | 14 |

Respectfully submitted,

*/s/ David P. Stone*
**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas  75201

APP000023
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR DEFENDANTS
TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA,
INC., AND TOYOTA MOTOR SALES,
U.S.A., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 29th day of August, 2013.

*/s/ David P. Stone*
**Jude T. Hickland**

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE,** | § § § § § § § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| **Plaintiffs,** | § § | |
| **v.** | § § | |
| | § | **JURY TRIAL DEMANDED** |
| **TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC.** | § § § § § § § § § § § § § § | |
| **Defendants.** | § | |

### PLAINTIFF WILLIAM GREENE'S FRCP RULE 30(b)(6)
### NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A

PLEASE TAKE NOTICE that Plaintiff William Greene will take the deposition of Toyota Motor Sales U.S.A. ("TMS") pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  The deposition will take place on **September 9, 2013, beginning at 9:30 a.m. at BOWMAN AND BROOKE, 2711 North Haskell Ave., Suite 650, Dallas, TX  75204** and will continue day to day until completed.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), TMS shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, on

### NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 1

Appendix - 1
APP000025
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

each of the topics set forth on Exhibit "B" attached hereto.  The person(s) designated shall testify as to matters known or reasonably available to TMS. The deposition will be taken before a certified court reporter, may be videotaped, and the videotape and stenographic copy of the deposition may be used in evidence upon the trial or at any hearing of the above-referenced cause.

Pursuant to FRVP, Plaintiffs' counsel requests that TMS provide notification of the name and title of each designated corporate representative at least five (5) business days before the scheduled deposition(s).


Respectfully Submitted,


/s/ Aubrey "Nick" Pittman          
AUBREY "NICK" PITTMAN

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

/s/ Daryl K. Washington          
DARYL K. WASHINGTON

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com


**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 2**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this pleading was served upon Defendants' counsels of record on August 19, 2013, in the manner described below:

RANDY HOWRY
**HOWRY BREEN & HERMAN, L.L.P.**
1900 Pearl Street
Austin, Texas 78705-5408

  X   Via Email
_____ Via CMRRR
_____ Via Telecopy [512-474-8557]
_____ Via Regular U.S. Mail
_____ Via Overnight Courier

KURT C. KERN/DAVID STONE
**BOWMAN AND BROOKE, LLP**
2711 North Haskell Avenue, Suite 650
Dallas, Texas 75204

_____ Via Hand Delivery
_____ Via CMRRR
  X   Via Telecopy [972 616-1701]
_____ Via Regular U.S. Mail
_____ Via Overnight Courier
  X   Via Email

DONALD DAWSON
**DAWSON & CLARK, P.C.**
243 W. Congress
600 Marquette Building
Detroit, MI  48226

_____ Via Hand Delivery
_____ Via CMRRR
_____ Via Telecopy [313-256-8913]
_____ Via Regular U.S. Mail
_____ Via Overnight Courier
  X   Via Email

S. TODD PARKS
**WALTERS, BALIDO & CRAIN, L.L.P.**
900 Jackson Street, Suite 600
13155 Noel Road, Suite 1000
Dallas, Texas 752440

_____ Via Hand Delivery
_____ Via CMRRR
_____ Via Telecopy [214-760-1670]
_____ Via Regular U.S. Mail
_____ Via Overnight Courier
  X   Via Email

JOHN S. KENEFICK
**MACDONALD DEVIN, P.C.**
3800 Renaissance Tower
1201 Elm Street
Dallas, TX  75270

_____ Via Hand Delivery
_____ Via CMRRR
_____ Via Telecopy [214-747-0942]
_____ Via Regular U.S. Mail
_____ Via Overnight Courier
  X   Via Email

SCOTT W. SELF
**FEE, SMITH, SHARP & VITULLO, LLP**
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 752440

_____ Via Hand Delivery
_____ Via CMRRR
_____ Via Telecopy [972-934-9200]
_____ Via Regular U.S. Mail
_____ Via Overnight Courier
  X   Via Email

  /s/ Aubrey "Nick" Pittman  
AUBREY "NICK" PITTMAN

## NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 3

## EXHIBIT "A"

## DEFINITIONS AND INSTRUCTIONS

This Notice incorporates, without limiting the scope of the Federal Rules of Civil Procedure, the following definitions:

1.     "Plaintiffs" shall mean and refer to Plaintiffs Ollie Greene, Individually and as the surviving parent of Wyndell Greene, Sr., William Greene, as the Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and as the surviving parent of LaKeysha Greene.

2.     "Fayard" shall mean and refer to John Fayard Moving & Warehouse, LLC and all of its present and former officers, directors, employees, agents, attorneys, partners, corporate parent, predecessors, subsidiaries, affiliated companies, and all other persons acting or purporting to act on behalf of "Fayard."

3.     "TOYOTA" shall mean and refer to Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, USA and all of their present and former officers, directors, employees, agents, attorneys, partners, corporate parent, predecessors, subsidiaries, affiliated companies, and all other persons acting or purporting to act on behalf of "TOYOTA."

4.     "TMS" shall mean and refer to Toyota Motor Sales, USA and all of its present and former officers, directors, employees, agents, attorneys, partners, corporate parent, predecessors, subsidiaries, affiliated companies, and all other persons acting or purporting to act on behalf of "TMS."

5.     "Volvo" shall mean and refer to Defendant Volvo Group North America, LLC f/k/a Volvo Group North America, Inc. and all of its present and former officers, directors, employees,

## NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 4

agents, attorneys, partners, corporate parent, predecessors, subsidiaries, affiliated companies, and all other persons acting or purporting to act on behalf of "Volvo."

6.      "Dolphin" shall mean and refer to Defendant Dolphin Line, Inc. and all of its present and former officers, directors, employees, agents, attorneys, partners, corporate parent, predecessors, subsidiaries, affiliated companies, and all other persons acting or purporting to act on behalf of "Dolphin."

7.      "Strick" shall mean and refer to Strick Trailers, LLC f/k/a Strick Corporation, Inc. and all of its present and former officers, directors, employees, agents, attorneys, partners, corporate parent, predecessors, subsidiaries, affiliated companies, and all other persons acting or purporting to act on behalf of "Strick."

8.      "Lawsuit" refers to all claims, cross-claims, counterclaims and defenses, whether now asserted or asserted hereafter by amendment, supplement or otherwise, of the parties in the above-styled and numbered cause.

9.      "Incident in Question" refers to the incident that took place on May 28, 2010 when the vehicle driven by Plaintiff Wyndell Greene, Sr. was struck and ignited into flames, causing the deaths of the occupants in the Toyota 4Runner.   The incident is referred to in more detail in Plaintiffs' Complaint filed in this Lawsuit.

10.     "Greene Family 4Runner" or "Greene SUV" refers to the Toyota 4Runner that was being driven by Wyndell Greene, Sr. on May 28, 2010, when the Incident in Question occurred.

11.     The "Subject Toyota Vehicle" means the U.S.-bound 2003-2009 and 2010-2012 Toyota 4Runners and any other vehicle modified to represent the U.S.-bound 2003-2009 and 2010-2012 Toyota 4Runners, including prototypes, concepts, conceptual designs, pre-production

**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 5**

and production vehicles, systems, subsystems and components, roof structures, restraint systems, side structures, rear structures, sub-assemblies, or other representations of these product lines.

12.     "The Volvo Truck" means the 2006-2008 Volvo VN Truck product line, including any other trucks or vehicles modified to represent the Volvo VN630 truck in any way, including prototypes, concepts, conceptual designs, pre-production and production vehicles, systems, subsystems and components, front structures, side structures, rear structures, sub-assemblies, or other representations of the product line, including other models in the VN Series.

13.     "Trailer" refers to the trailer involved in the Incident in Question, the rear of which was struck by the Greene SUV, and identified in the Complaint as the Trailer manufactured by Strick, owned by Dolphin, and operated by Fayard.

14.     "CAD," "CAE," "FEA," and "FEM" shall refer to Computer Aided Design (CAD) and Computer Aided Engineering (CAE), which can also include Finite Element Analysis (FEA) and any programs that use the finite element method or modeling (FEM ) to analyze materials and objects, etc.

15.     "Document" means any writing and any other tangible thing in Your custody, possession or control, whether printed, recorded, reproduced by any process, or written or contained in a computer (mainframe or otherwise) or on a computer disc, tape, software or electronic media of any kind or data compilation or produced by hand.  Set forth below is a list of examples of writings and tangible things which are included within this definition.  The list is not an exclusive list of the writings and tangible things included within this definition, but rather are intended to aid you in producing the documents that are requested.  Examples of writings and tangible things included within the definition of "document" are as follows:

Letters; e-mails; faxes; reports; agreements; intracompany and intercompany communications; correspondence; telegrams; memoranda; summaries or records of

**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 6**

conversations; diaries; calendars; photographs; tape recordings; models; charts; plans; drawings; agendas; minutes or records of conferences or meetings; expressions or statements of policy; lists of persons attending meetings or conferences; summaries; investigations; opinions or reports of consultants; appraisals; records; brochures; pamphlets; advertisements; circulars; trade letters; reports, summaries or analyses prepared by or for any governmental entity or agency; press releases; drafts of any documents; revisions of drafts of any documents; canceled checks; bank statements; invoices; receipts; and notes.

16.     "Communication" or "communications" means any contact or act by which any information or knowledge is transmitted or conveyed between two or more persons and shall include, without limitation, written contact by such means as letters, memoranda, e-mails, "instant messages," telegrams, telex, or by any document, and oral contact by such means as face-to-face meetings and telephone conversations.

17.     "ESI" and "Electronically Stored Information" mean any type of information that is created, used, and stored in digital form, and uses a computer or other device for access.  This necessarily includes, but is not limited to, the following examples:

     a.     e-mails, texts, chats, and instant messages;

     b.     memos, letters, and other correspondence;

     c.     spreadsheets;

     d.     drawings;

     e.     simulations;

     f.     databases;

     g.     office documents;

     h.     presentations;

     i.     video, audio, and image files;

     j.     word processing and spreadsheet files;

     k.     website activity and history;

**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 7**

l.      information posted on social networking websites;

m.     voice mails and video mail;

n.     computer programming information; and

o.     all other electronic formats commonly found on computer, network hard drives, back-up tapes and off-line storage such as CDs, DVDs, ZIP drives, etc.

18.     The words "or," "and," "all," "every," "any," "each," "one or more," including," and similar words of guidance are intended merely as such and should not be construed as words of limitation. The words "or" and "and" shall include each other whenever possible to expand, not restrict, the scope of the request. The word "including" shall not limit any general category or description that precedes it. The words "all," "every," "any," "each," and "one or more" shall include each other, when appropriate, to expand, not restrict, the scope of the Request.

19.     The words "refer to," "relate to," "reflect" or "concern" a given subject means concerning, referring to, alluding to, responding to, connected with, commenting on, in respect of, about, regarding, discussing, showing, describing, mentioning, reflecting, analyzing, constituting, evidencing, identifying or in any way pertinent to that certain subject.

20.     The word "person" means any natural person or any business, legal or governmental entity or association, including, but not limited to, private and public partnerships, associations, corporations, joint ventures, sole proprietorships, firms, and governments.

21.     The use of the singular form of any word includes the plural and vice versa.

22.     These topics seek disclosure to the full extent of the Federal Rules of Civil Procedure and applicable laws and shall be interpreted as inclusive rather than exclusive.

23.     If you do not understand or need clarification of a specific request, please contact Plaintiffs' counsel using the contact information above.

**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 8**

## EXHIBIT "B"

1.      Authenticity of documents produced by TMS;

2.      The nature of TMS's business and its relationship to Toyota Motor Corporation and Toyota Motor Engineering & Manufacturing North America, Inc.;

3.      The name, identity, and business office of the CEO, Chairman of the Board and President of TMS, Toyota Motor Corporation, and Toyota Motor Engineering & Manufacturing North America, Inc. for 2009-2013;

4.      The identities and titles of all agents, officers, employees, and representatives of TMS, if any, who were involved in the investigation of the Incident in Question;

5.      The identification of all departments, divisions, Toyota entities, and contractors involved in the marketing, advertising and sales of Toyota, Lexus and Scion SUVs, including the Subject Toyota Vehicle, for 2000-2013;

6.      Knowledge of the geographical areas where  marketing, advertising and sales of Toyota, Lexus and Scion SUVs, including the Subject Toyota Vehicle, took place for 2000-2013;

7.      Toyota and TMS's Record Retention Policy for the period 2000 – 2013;

8.      The dates upon which all marketing and sales information for the 2003-2009 and 2010-2012 model year 4Runners  were destroyed or discarded and the identity of all persons involved in the decision to destroy or discard this information;

9.      The advertised governmental safety rating for the Subject Toyota Vehicle including, but not limited to, frontal, rear and side crashes for the Subject Toyota Vehicle;

10.     Information and press releases regarding recalls of all Toyota, Lexus and Scion vehicles since 2000 that were recalled as a result of issues related to failure or inadequacy of the fuel system and/or fire prevention system;

11.     Information and press releases regarding recalls of all Toyota, Lexus and Scion vehicles since 2000 that were recalled as a result of defective air bags or side-curtain air bags or failure of air bags to deploy properly;

12.     The general location of the fuel tanks on all models of Toyota, Lexus and Scion SUVs sold by TMS during the period 1996-2013;

13.     The general types of fuel tank protectors used in TOYOTA passenger cars and Toyota, Lexus and Scion SUVs sold by TMS for models 1996-2013;

14.     Type of fuel tank protector used and marketed for the Greene SUV;

15.     The actual and marginal cost, as well as the wholesale and retail sales prices, during the 2003-2013 period, of the full and half fuel tank protector shields for the 2003-2009 and 2010-2012 model year 4Runners;

16.     The actual and marginal cost, and the wholesale and retail sales prices of metal or metallic fuel tanks  on vehicles marketed or sold by TMS during the period 1990-2013;

17.     All vehicles marketed or sold by TMS during the period 1990-2013 that contain(ed) metal or metallic fuel tanks;

**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 9**

18.     The general types of air bags and crash sensors used in Toyota passenger cars and Toyota, Lexus and Scion SUVs sold by TMS for 2000-2013;

19.     Types of air bags, crash sensors, and fuel tanks that were in the Greene SUV while in TMS's possession;

20.     Types of air bags and crash sensors used in the 2003-2009 and 2010-2012 model year 4Runners;

21.     The manner in and extent to which TMS marketed the reliability and/or hazards of the fuel system, fire prevention system, if any, and the seat belts and air bag restraint systems of the 2003-2009 and 2010-2012 model year 4Runners;

22.     The manner in and extent to which TMS marketed fire safety, fire prevention and fire suppression systems in Toyota, Lexus and Scion SUVs, including the Subject Toyota Vehicle, during the period 2000-2013;

23.     Communications, if any, from Toyota or TMS to dealers and/or consumers that a crash involving the Toyota 4Runner could possibly engage, dislodge, puncture or rupture the fuel inlet pipe and/or the fuel tank, which could lead to a fire in or around the SUV;

24.     The manner in and extent to which TMS marketed safety features of Toyota, Lexus and Scion SUVs, including the Subject Toyota Vehicle, during the period 2000-2013;

25.     Warranties, whether express, implied, or otherwise, provided to dealers that sold the 2003-2009 and 2010-2012 model year 4Runners;

26.     Warranties, whether express, implied, or otherwise, provided to consumers who purchased the 2003-2009 and 2010-2012 model year 4Runners;

27.     Operating instructions and warnings to consumers who purchased the 2003-2009 and 2010-2012 model year 4Runners;

28.     Advertisements placed in Cosmopolitan, Ebony, Jet, Black Enterprise, People Magazine, ESPN Magazine, Sports Illustrated, Popular Mechanic, and US Weekly during 2003-2013 depicting or advertising the Toyota 4Runner;

29.     Exemplar copies of advertisements placed in Cosmopolitan, Ebony, Jet, Black Enterprise, People Magazine, ESPN Magazine, Sports Illustrated, Popular Mechanic, and US Weekly during 2003-2013 depicting, advertising and discussing safety features of Toyota cars and Toyota, Lexus and Scion SUVs;

30.     Identification of all documents, advertisements or other materials, if any, provided to dealers and consumers that describe the differences between, and safety features of, the Full Cover Type and Half Cover Type fuel tank protectors used in the Toyota 4Runners;

31.     The path of distribution of the Greene SUV from the date of its manufacture to the date of the May 28, 2010, incident;

32.     The complete purchase and sales history for the Greene SUV, including complete chronology and wholesale, retail, and dealer prices;

33.     Existence , description and location of emails, e-Discovery and ESI during 2000-2013 that pertain in any way to (a) negligent failure to warn of defective fuel tank design or air bag deployment; (b) breach of express or implied warranties related to fuel tank designs,

**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 10**

seat belt restraints and/or air bags; (c) fuel tank integrity failures, (d) fires in Toyota SUVs from crashes; (e) side curtain airbag failures in crash scenarios; and (f) passenger ejections while wearing seatbelts, in crash scenarios;

34.   The nature of and all actions taken in claims or lawsuits where TMS was/is a party pertaining to any incident during the period 1996-2013 where there were/are allegations of:

   a.   A negligent failure to warn;

   b.   Breach of express or implied warranties;

   c.   An injury or death due to fuel system design or manufacture;

   d.   An injury or death due to a fuel fed fire;

   e.   An injury or death due to alleged failure of seat restraints;

   f.   An injury or death due to alleged failure of air bags and/or crash sensors;

   g.   An injury or death due to full or partial ejection of driver or passenger wearing a seatbelt;

   h.   An injury or death due to allegations of inadequacy of the strength of materials used in the vehicle; or

   i.   An injury or death due to alleged violations of crashworthiness principles.

35.   Research conducted by or for TMS and/or Toyota (or any Toyota related entities) during the period 1996-2013 involving:

   a.   Design, manufacture and locations of fuel tanks in SUVs;

   b.   Fuel leakage during accidents;

   c.   Fire safety, fire prevention and fire suppression systems and/or systems or processes in the Subject Toyota Vehicle that were designed to prevent or suppress fire in the Subject Toyota Vehicle;

   d.   Air bags and crash sensors in SUVs; and

   e.   Crash protection for child occupants and rear passengers in the Subject Toyota Vehicle.

**NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A. – Page 11**



**Bowman and Brooke** LLP

*Attorneys at Law*

2501 North Harwood Street, Suite 1700
Dallas, TX  75201
Main: 972.616.1700
Fax: 972.616.1701
www.bowmanandbrooke.com

Kurt C. Kern
Direct: 972.616.1711
Email: kurt.kern@bowmanandbrooke.com

August 26, 2013

**VIA EMAIL**
Mr. Aubrey "Nick" Pittman
The Pittman Law Firm, P.C.
100 Crescent Court, Suite 700
Dallas, TX  75201

Mr. Daryl K. Washington
Law Offices of Daryl K. Washington, P.C.
325 N. St. Paul, Suite 1975
Dallas, Texas  75201

Re:    Cause No. 3-1-CV-0207-N; *Ollie Greene, et al v. Toyota Motor Corporation, et al*

Dear Mr. Pittman:

       Further to our discussions earlier today, Defendants are in receipt of the FRCP 30(b)(6) deposition notice you served on August 19, 2013 setting the deposition of Toyota Motor Sales, U.S.A., Inc. ("TMS") for September 9, 2013 at 11:30 a.m. in Dallas, Texas. As discussed, you unilaterally noticed this deposition without conferring with us as to our availability and we are not available to produce a witness in response to your notice on September 9. However, we are working to identify an appropriate witness in response to the topics in your notice, to the extent they are relevant and properly directed to TMS. We will make that witness available for deposition in our office in Torrance, California at a mutually agreeable time.  I hope to have proposed alternative dates for you shortly.

       With respect to the topics contained in the notice, several are outside of the scope of knowledge of a TMS corporate witness, or they are otherwise inappropriate.  As TMS has previously stated in response to Plaintiffs' written discovery requests, TMS does not design, manufacture, assemble or developmentally test Toyota, Lexus or Scion motor vehicles. Therefore all topics related to the design of the 2003-2009 or 2010-present U.S. bound Toyota 4Runner are outside the scope of a TMS corporate deposition.  Additionally, with respect to the advertising and marketing topics identified, there is no evidence of reliance upon any such materials by Plaintiffs or their decedents in this case, which is an essential element of any claim of an alleged marketing defect.  Accordingly, TMS will not agree to produce a witness on these irrelevant topics and will file appropriate objections thereto.

       Finally, with respect to the location of the deposition, the deposition of an organizational representative should take place in the district of the organization's principal place of business. *Salter v. Upjohn Co.*, 593 F. 2d 649, 651 (5th Cir. 1979).  TMS' principal place of business is

MINNEAPOLIS          PHOENIX          DETROIT          SAN JOSE

LOS ANGELES          RICHMOND          COLUMBIA          **DALLAS**          AUSTIN

Mr. Aubrey "Nick" Pittman
August 22, 2013
Page 2 of 2

located in Torrance, California.  Pursuant to our discussions, I appreciate your agreement that the deposition will take place in Torrance, California, not Dallas, Texas.  Also, just for future reference, please note that you listed the address of the office in Dallas that our Firm vacated over a year ago. The correct address is set forth above.

Consistent with the foregoing, we will work with you to coordinate TMS' corporate representative deposition at a mutually agreeable time.  In the meantime, please withdraw the notice as served.

Regards,

BOWMAN AND BROOKE LLP

Kurt C. Kern

KCK:j

cc:   Pat Fitzgerald
      S. Todd Parks
      Michael P. Sharp
      John S. Kenefick



## The Pittman Law Firm, P.C.

### ATTORNEYS AT LAW

AUBREY "NICK" PITTMAN
DIRECT DIAL (214) 459-3325

August 27, 2013

**VIA EMAIL AND FAX**
Kurt Kern
**BOWMAN AND BROOKE, LLP**
2501 North Harwood St., Suite 1700
Dallas, TX 75201

RE:   *Ollie Greene, et al v. Toyota Motor Corporation et al*; **Cause No. 3:11-cv-00207-N in the USDC for the Northern District of Texas, Dallas Division.**

Dear Mr. Kern:

In response to your August 26, 2013, letter, it does not correctly reflect the conversation you and I had regarding the notice for the deposition of Toyota Motor Sales, U.S.A., Inc. ("TMS"). First, as you may recall, I indicated that we noticed the TMS deposition for Dallas as an attempt to reduce the costs to the other Defendants by avoiding having six or more counsel having to fly to California. Instead we figured TMS would accommodate the parties by having a TMS representative come to Dallas. However, after you indicated that you were not concerned about travel costs incurred by the other Defendants, I stated that Plaintiffs could switch the location of the deposition without this being an issue.

Second, as to date of the deposition, I was very clear that we would "consider" changing the date if you provided another "convenient" date that is within two days before or after September 9, 2013. We have not received any alternate dates. Accordingly, the date remains as noticed and the notice is not being withdrawn. Third, I made it clear that all of the designated topics are appropriate, relevant and reasonably calculated to lead to the discovery of admissible evidence. Therefore, pursuant to Rule 30(b)(6), TMS is required to designate persons having knowledge of each of the matters and to prepare those persons in order that they can answer fully, completely, and unevasively, on the questions posed on the designated subject matters.

We look forward to seeing the TMS representative(s) on September 9, 2013.

Sincerely,

Aubrey "Nick" Pittman

cc:   All Counsel

**The Pittman Law Firm, P.C.**
100 Crescent Court, Suite 700 ● Dallas, Texas 75201 ● 214-459-3454 tel ● 214-853-5912 fax
Dallas ● Houston ● www.thepittmanlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **OLLIE GREENE,** *et al.,* | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| | § | |
| **TOYOTA MOTOR CORPORATION,** *et al.,* | § | |
| **Defendants.** | | |

**ORDER GRANTING TOYOTA DEFENDANTS' MOTION TO QUASH
PLAINTIFF WILLIAM GREENE'S FRCP RULE 30(b)(6)
<u>NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES U.S.A.</u>**

On this _____ day of _____, 2013, came on to be heard Toyota Motor

Sales, U.S.A., Inc.'s Motion to Quash Plaintiff William Greene's FRCP Rule 30(b)(6)

Notice of Deposition of Toyota Motor Sales U.S.A., and the Court after hearing any

argument of counsel and after reviewing the documents and other pleadings on file herein is of

the opinion that said Motion is well-taken and should be in all things granted, and the Notice of

Deposition of Toyota Motor Sales U.S.A. should be quashed in its entirety.

It is accordingly ORDERED, ADJUDGED, and DECREED that Plaintiff William

Greene's FRCP Rule 30(b)(6) Notice of Deposition of Toyota Motor Sales U.S.A. is

hereby QUASHED.

Signed this _____ day of _____, 2013.

_____

JUDGE PRESIDING

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **OLLIE GREENE, Individually as the** surviving parent of **WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of  WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the** surviving parent of **LAKEYSHA GREENE,** | § § § § § § § | |
| | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| **Plaintiffs,** | § | |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| **TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.,  TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC.** | § § § § § § § § § § § § | |
| **Defendants.** | § § | |

**PLAINTIFFS' RESPONSE TO TOYOTA MOTOR SALES, U.S.A., INC.'S MOTION TO QUASH NOTICE OF INTENT TO TAKE DEPOSITION AND BRIEF IN SUPPORT**

AUBREY "NICK" PITTMAN
State Bar No. 16049750

THE PITTMAN LAW FIRM, P.C.
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

DARYL K. WASHINGTON
State Bar No. 24013714

LAW OFFICES OF DARYL K. WASHINGTON
P.C.
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................ii

TABLE OF AUTHORITIES............................................................................................iii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT AND AUTHORITIES .............................................................................. 2

    A.    TMS has Always Known of Plaintiffs' Intent to Take a TMS FRCP 30(b)(6) Deposition and Obtain Discovery from TMS. ............................... 2

    B.    Plaintiffs Served the Deposition Notice with More Than Reasonable Notice. ....................................................................................................... 3

    C.    The Scheduling Order Dictates That This Deposition Take Place Timely, as Noticed. .............................................................................................. 3

    D.    Issuance of the Deposition Notice Did Not Violate any Alleged Requirement to Confer. ............................................................................ 3

    E.    Although the Deposition Was Noticed to Take Place in Dallas, Plaintiffs Were Prepared to Hold the Deposition Elsewhere, if TMS So Desired. ...... 5

    F.    The Scope of the Deposition is Not Overly Broad and Does Not Violate the Court's July 18, 2012, Order. ................................................................ 5

        1.    The Notice seeks discovery on Plaintiffs' claims against the Toyota Defendants. ........................................................................... 6

        2.    The Notice Does Not Violate Any Scope of Permissible Discovery Allegedly in the July 18, 2012, Order. ............................................... 7

    G.    It Has Been Defendants' Conduct, not Plaintiffs' Disinterest, Which Caused the Current Timing of This Deposition. ................................................................ 7

CONCLUSION ........................................................................................................... 10

CERTIFICATE OF SERVICE....................................................................................... 11

ii

Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

# TABLE OF AUTHORITIES

## Cases

*In re Sulfuric Acid Antitrust Litig.*,
    231 F.R.D. 320 (N.D.Ill.2005) ........................................................................... 3

*Jones v. United States*,
    720 F.Supp. 355 (S.D.N.Y.1989) ...................................................................... 3

*Koninklike Philips Electronics N.V. v. KXD Technology, Inc.*,
    2007 WL 3101248 (D.Nev. Oct 16, 2007) ....................................................... 4

*P.S. v. Farm, Inc.*,
    2009 WL 483236 (D.Kan. Feb 24, 2009) ......................................................... 3

*Paige v. Commissioner*,
    248 F.R.D. 272 (C.D.Cal. Jan.18, 2008) .......................................................... 3

*Resolution Trust Corp. v. Worldwide Ins. Mgmt. Corp.*,
    147 F.R.D. 125 (N.D.Tex.1992) ....................................................................... 5

*Turner v. Prudential Ins. Co.*,
    119 F.R.D. 381 (M.D.N.C.1988) ...................................................................... 5

## Rules

FED.R.CIV.P. 30(b)(1) .......................................................................................... 4

FED.R.CIV.P. 30(b)(6) .................................................................................. passim

APP000042

Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

Ollie Greene, Individually as the surviving parent of Wyndell Greene, Sr., William Greene, as the Administrator of the Estate of Wyndell Greene Sr., and Marilyn Burdette Hardeman, Individually and as the surviving parent of LaKeysha Greene (collectively, "Plaintiffs"), file their Response to Toyota Motor Sales, U.S.A.'s ("TMS") Motion to Quash (the "Motion to Quash") Plaintiff William Greene's FED.R.CIV.P. 30(b)(6) Notice of Intent to Take the Deposition of Toyota Motor Sales, U.S.A. (the "Deposition Notice") and show the Court as follows:

**PRELIMINARY STATEMENT**

TMS's Motion to Quash contains blatant factual misrepresentations and distorts the case's chronology as well as Plaintiffs' substantial efforts to take timely discovery and advance this case to trial. The extensive record in this case will support Plaintiffs' argument that it has been Defendants' discovery obstructionism that has contributed to substantial delays in the trial of this matter. TMS's Motion to Quash is simply another attempt by the Toyota Defendants to continue their obstructionist efforts, designed to prevent Plaintiffs from obtaining the discovery they are entitled to under the rules. And the fact that Toyota waited ten (10) days after receiving the Deposition Notice to file the Motion to Quash is further evidence of Toyota's scheme to stall, delay and prevent discovery.

Additionally, the record is incontrovertible that TMS has always known of the claims against it and of Plaintiffs desire to take its deposition, which must be accomplished prior to the date (October 11, 2013) upon which Plaintiffs' experts reports are due. If Plaintiffs do not obtain TMS's deposition sufficiently in advance of the due date for the expert reports Plaintiffs will suffer severe prejudice. Finally, since TMS was provided with more than sufficient notice of the date of the deposition and the subject matters on which the deposition(s) will be taken, the Deposition Notice is proper and the Motion to Quash should be denied.

<u>**PLAINTIFFS' RESPONSE TO TOYOTA MOTOR SALES'S MOTION TO QUASH**</u> **- Page 1**

## ARGUMENT AND AUTHORITIES

**A.     TMS has Always Known of Plaintiffs' Intent to Obtain Discovery from TMS and Take a FRCP 30(b)(6) Deposition of TMS.**

In an attempt to convince the Court to grant its meritless Motion to Quash, TMC shamelessly states:

> Moreover, discovery in this case has been ongoing for over two years.  During this entire time, Plaintiff has not discussed taking a TMS deposition with Toyota's counsel.  In fact, Plaintiff never informed defense counsel of his interest in a 30(b)(6) deposition of a TMS witness until he unilaterally served the subject notice on August 19, 2013.

Motion to Quash, p.3.  This is a blatant misrepresentation of the facts.  In fact, by letter dated February 12, 2012, Plaintiffs' counsel submitted correspondence to TMS and the other Defendants that originally scheduled a TMS deposition for April 3, 2012.  Plaintiffs' APP 001-003[1].  This notification clearly placed TMS on notice that its FRCP 30(b)(6) deposition would be taken.  The only reason this deposition was cancelled was due to Toyota's refusal to produce discovery that would have been used at that TMS deposition, as well as during the depositions of the other Toyota Defendants.  Additionally, throughout this lawsuit, Plaintiffs have served several written discovery request upon TMS.  In fact, TMS just recently submitted a discovery response, albeit incomplete, on July 29, 2013.  Plaintiffs' APP 004-005.  Therefore, it is a gross mischaracterization for TMS to suggest that Plaintiffs never intended to conduct discovery against it.  And in response to TMS's suggestion that Plaintiffs should have taken TMS's deposition in Torrance, CA "during the same day" as the other Toyota corporation, this would have made no sense and would have deprived Plaintiffs of the opportunity to properly plan for the TMS deposition after hearing the testimony of the other Toyota Defendants.

---

[1] In conjunction with the filing of this Response, Plaintiffs have filed their Appendix in Support of Plaintiffs' Response to Toyota Motor Sales' Motion to Quash Deposition Notice.

**PLAINTIFFS' RESPONSE TO TOYOTA MOTOR SALES'S MOTION TO QUASH** - Page 2

**B.      Plaintiffs Served the Deposition Notice with More Than Reasonable Notice.**

Plaintiffs' counsel served a copy the Deposition Notice upon all counsel on August 19, 2013, scheduling the deposition to take place on September 9, 2013 – twenty-one (21) days' notice.  In its Motion to Quash, TMS does not cite any authorities to support its contention that twenty-one days' notice is improper or insufficient.  In fact, TMS's Motion to Quash ignores an endless line of cases that hold that more than one week's notice generally is considered reasonable. *See, e. g., Paige v. Commissioner*, 248 F.R.D. 272, 275 (C.D.Cal. Jan.18, 2008) (finding that fourteen days' notice was reasonable); *Jones v. United States*, 720 F.Supp. 355, 366 (S.D.N.Y.1989) (holding that eight days' notice was reasonable); *see also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 327 (N.D.Ill.2005) ("[T]en business days' notice [of a deposition] would seem to be reasonable"); *P.S. v. Farm, Inc.*, 2009 WL 483236 (D.Kan. Feb 24, 2009)(five days' notice reasonable).  In this case, providing TMS with twenty-one days' notice of the deposition date satisfies the reasonable notice requirement under FRCP 30.  Therefore, TMS's objection on these grounds cannot be sustained.

**C.      The Scheduling Order Dictates That This Deposition Take Place Timely, as Noticed.**

Pursuant to the Scheduling Order in this matter, Plaintiffs' expert reports are due on or about October 11, 2013, and discovery being sought at the TMS deposition will be used by the experts in support of their reports.  Accordingly, Plaintiffs respectfully request that the Court deny TMS's Motion to Quash so that Plaintiffs may obtain the testimony requested sufficiently in advance of the deadline for expert reports in order that Plaintiffs' experts can incorporate the missing discovery into their analyses.

**D.      Issuance of the Deposition Notice Did Not Violate any Alleged Requirement to Confer.**

Rule 30(b)(6) of the Federal Rules of Civil Procedure provides:

In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization.

FED.R.CIV.P. 30(b)(1) provides that a party may take the deposition of any person upon reasonable notice.  However, Rule 30 does not, by its terms, require that the noticing party confer with opposing counsel before scheduling a deposition.  *Koninklike Philips Electronics N.V. v. KXD Technology, Inc.*, 2007 WL 3101248 *18 (D.Nev. Oct 16, 2007).  Therefore, contrary to TMS's argument, there was no requirement that Plaintiffs' confer with TMS's counsel "before" serving the notice of the TMS deposition.

Notwithstanding the absence in FRCP 30 of a requirement to confer, Plaintiffs' counsel followed the practice that the parties have used in noticing other FRCP 30 deponents in this matter.  In past instances, the FRCP 30(b)(6) Intent to Take the Deposition has been served on the opposing counsel setting a tentative date for the deposition and listing the topics upon which examination is requested.  That way, opposing counsel can ascertain which witnesses are needed as well as to determine their availability.  See previous correspondence regarding scheduling of the FRCP 30(b)(6) deposition of Defendant Volvo Group North America.  Plaintiffs' APP 006-007.  Therefore the TMS Deposition Notice was served in the same manner as other deposition notices for FRCP 30(b)(6) deponents.  Moreover, in this case, in an attempt to ensure that the deposition could take place timely and that no party would be prejudiced, Plaintiffs' counsel asked TMS's counsel for another alternate "and timely" date.  Plaintiffs' APP 008. TMS's counsel never provided an alternate date that would ensure that the deposition would take place

**PLAINTIFFS' RESPONSE TO TOYOTA MOTOR SALES'S MOTION TO QUASH** - Page 4

in sufficient time so that it can be considered by the experts.  Accordingly, TMS cannot now be heard to complain.  Therefore, the Court should deny the Motion to Quash.

> **E.** **Although the Deposition Was Noticed to Take Place in Dallas, Plaintiffs Were Prepared to Hold the Deposition Elsewhere, if TMS So Desired.**

Although TMS is correct that Plaintiffs listed TMS's counsel's previous office in Dallas as the suggested location for the TMS Deposition, this address was listed as a place holder and because (1) counsel for the nine (9) parties in this lawsuit (and most of the experts) are located in Texas; (2) there is a likelihood that only one corporate representative is being produced by TMS; (3) significant discovery disputes may arise and there is an anticipated necessity of the resolution by this Court; and (4) the claim's nature and the parties' relationship is such that an appropriate adjustment of the equities favors a deposition site in the forum district, it would be equitable to hold the deposition in this district as it would be less costly to the parties.  *See Resolution Trust Corp. v. Worldwide Ins. Mgmt. Corp.*, 147 F.R.D. 125, 127 (N.D.Tex.1992)(citing *Turner v. Prudential Ins. Co.*, 119 F.R.D. 381, 383 (M.D.N.C.1988).  The RTC court concluded that it "must ultimately consider each case on its own facts and the equities of the particular situation." *Id*.  Accordingly, an order requiring that the deposition take place in this District would not be improper.  Notwithstanding, however, that it is permissible for the TMS deposition to take place in this District, Plaintiffs originally offered, in a show of good faith, to proceed with taking the deposition in California so that this important deposition could be taken in a timely manner.  See Plaintiffs' APP 008.

> **F.** **The Scope of the Deposition is Not Overly Broad and Does Not Violate the Court's July 18, 2012, Order.**

Although the Motion to Quash makes a generalized statement that the topics are not relevant or reasonably calculated to lead to the discovery of admissible evidence, an examination of the Deposition Notice, in conjunction with Plaintiffs' complaint, belies TMS's contention.

**PLAINTIFFS' RESPONSE TO TOYOTA MOTOR SALES'S MOTION TO QUASH - Page 5**

Indeed, the topics are clearly relevant to the issues in this lawsuit and are described with "reasonable particularity" as required by FRCP 30(b)(6).

### 1.   The Notice seeks discovery on Plaintiffs' claims against the Toyota Defendants.

The Complaint makes clear that Defendants, including TMS, breached express warranties that the Toyota 4Runner was safe, reliable and that quality was of paramount importance. Defendants also breached the implied warranties of merchantability.   The warranty of merchantability is implied into every commercial transaction.   The warranty of merchantability requires that products be of reasonable workmanlike quality and free from defects.   Defendants' impliedly warranted to the Greene Family that Toyota's vehicles were of merchantable quality. The Defendants breached the warranty of merchantability by designing, manufacturing, distributing, selling and refusing to adequately repair or replace their vehicles after it became apparent they were defective.   The Complaint also alleges that in various commercials, internet postings, periodicals, press releases, etc., the Toyota Defendants have represented that the safety of their customers is paramount.   These representations were intended to, and did, cause consumers such as the Greene Family to rely on Toyota's statement and purchase Toyota vehicles.   However, as discussed above, Toyota made misrepresentations of the quality, reliability and safety of its vehicles, including the Toyota 4Runner, all to the detriment of the Greene Family and Plaintiffs.

In addition, Plaintiffs also specifically allege that the Toyota Defendants, *inter alia*, failed to design and incorporate widely available, safer and feasible, alternative designs into the Toyota 4Runner's fuel system, fire prevention and suppression systems, seat restraints, air bag systems, rear occupant compartment and structural integrity of the Toyota 4Runner that would have prevented or significantly reduced the injuries and deaths to the Greene Family.   In is clear that

APP000048
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

the topics in the Deposition Notice all relate to claims and defenses of the parties, and is therefore narrowly tailored.

> ### 2.     The Notice Does Not Violate Any Scope of Permissible Discovery Allegedly in the July 18, 2012, Order.

The Motion to Quash contends that the Deposition Notice allegedly "exceeds the scope of permissible discovery for this case that the Court defined through its July 18 Order." However, this is a misrepresentation of the July 18, 2012, Order.  In fact, the Court has already admonished Defendants that the July 18, 2012, Order related only to the discrete issues that were before the Court during that specific motion to compel and is not to be used as an attempt to limit the scope of permissible discovery in this matter:

> And I get some sense from the Defendants that they are interpreting the prior order on July 18 as defining the full permissible scope of discovery in the case, period, and I don't think it was intended to do that. I think it was intended to mediate the issues that were raised in the prior motion to compel.

Excerpt from the January 23, 2012 hearing on Plaintiffs' Motion to Compel.  Plaintiffs' APP 009-013.  Accordingly, the Court should overrule any attempt by Toyota to limit discovery according to its improper use of the July 18, 2012, Order.

> ### G.     It Has Been Defendants' Conduct, not Plaintiffs' Disinterest, Which Caused the Current Timing of This Deposition.

TMS attempts to leave the impression that Plaintiffs have created this delay in taking the TMS deposition.  As stated earlier, however, Plaintiffs wanted to take the depositions of the three Toyota Defendants seriatim, beginning first with Toyota Motor Corporation.  The evidence is clear that it has been the conduct of the Toyota Defendants that have created unreasonable delays in advancing this case to trial.  Indeed, the following facts demonstrate some of the stalling techniques in which the Toyota Defendants have engaged:

> 1.     In response to Plaintiffs' first interrogatory requests, the Toyota Defendants objected to each of Plaintiffs' thirteen (13) interrogatories, providing an incomplete response, or no response, to each.

**PLAINTIFFS' RESPONSE TO TOYOTA MOTOR SALES'S MOTION TO QUASH** - Page 7

2.    Similarly, in response to Plaintiffs' First Request for Production of Documents, the Toyota Defendants, in three responses that totaled 546 pages, objected to virtually each of Plaintiffs' requests and in some instances, under the guise of objections, wholly refused to provide clearly discoverable items.

3.    On or about February 24, 2012, Plaintiffs filed a Motion to Compel (the "First Motion to Compel") against the Toyota Defendants and VGNA. The First Motion to Compel was heard on or about March 5, 2012, and an Order was issued on July 18, 2012, setting the scope of discovery, but only as to certain limited items discussed at the hearing.

4.    Following the issuance of the Court's July 18, 2012, Order, Plaintiffs' counsel submitted discovery requests dated July 23, 2012, to Toyota's counsel seeking production of discovery within the scope permitted by the Court's July 18, 2012, Order and FRCP 26.

5.    Three months after the Court's July 18, 2012, Toyota still had not produced the items that the Court found to be discoverable. Accordingly, on October 23, 2012, Plaintiffs' counsel contacted Toyota's counsel asking for production of the information that is the subject of the Court's July 18, 2012, Order.

6.    After receiving some materials from Toyota, Plaintiffs' counsel informed Toyota's counsel on October, 24, 2012, that Toyota's responses do not comply with the scope of discovery allowed by the Court's July 18, 2012, Order. Plaintiffs' counsel also reiterated Plaintiffs' request that Toyota respond "directly and specifically" to each of the requests for productions and interrogatories contained in Plaintiffs' July 23, 2012, discovery letter.

7.    Following further exchanges of email, Toyota's counsel refused to respond specifically to each of the requests for productions and interrogatories contained in the July 23, 2012, discovery requested.

8.    On January 4, 2013, Plaintiffs filed a Second Motion to Compel (the "Second Motion to Compel") against the Toyota Defendants and VGNA.

9.    The Second Motion to Compel was heard on or about January 22, 2013. During the January 22, 2013, hearing on Plaintiffs' Second Motion to Compel, the Court issued the following directive to the Toyota Defendants:

> Okay. I want you to treat Exhibit B [Plaintiffs' July 23, 2012, discovery requests] as if it were a formal RFP and respond to it in a week. That doesn't mean produce the documents, necessarily, but give them a written response. You have had it around since July, so I think you can probably give them a written response in a week.

**PLAINTIFFS' RESPONSE TO TOYOTA MOTOR SALES'S MOTION TO QUASH - Page 8**

Okay. Then 30 days for the docs.

10.     On or about January 29, 2013, the Toyota Defendants submitted their response to Plaintiffs' July 23, 2012, discovery requests.  Consistent with the Toyota Defendants' original 546 page set of objections to Plaintiffs' first set of discovery, the Toyota Defendants submitted an 83-page set of objections to the July 23, 2012, discovery requests, despite the requests being completely consistent with the scope of discovery allowed by the Court's July 18, 2013, Order.

11.     On June 8, 2013, pursuant to a Fed.R.Civ.P. 30(b)(6) notice of deposition, Plaintiffs took the deposition of Toyota Motor Corporation corporate representative Ichiro Fukumoto ("Fukumoto").  During the deposition, it was apparent that Fukumoto was not knowledgeable of many of the topics on which examination had been requested.

12.     As a result of questions raised during Fukumoto's deposition and his inability to provide relevant information, on June 25, 2013, Plaintiffs submitted a second set of interrogatories and request for production to the Toyota Defendants.

13.     On or about July 29, 2013, Toyota Motor Engineering and Manufacturing, Inc. ("TEMA") submitted a thirty-three (33) page response to Plaintiffs' June 25, 2013, Second Set of Interrogatories, where TEMA submitted general and prophylactic objections to each of Plaintiffs' twelve (12) interrogatories.  TEMA also submitted a seventy-four (74) page response to Plaintiffs' Second Request for Documents, where TEMA submitted general and prophylactic objections each of Plaintiffs' twenty-six (26) requests for documents.

14.     Also on or about July 29, 2013, TMS submitted a thirty-five (35) page response to Plaintiffs' June 25, 2013, Second Set of Interrogatories, where TEMA submitted general and prophylactic objections to each of Plaintiffs' twelve (12) interrogatories.  TEMA also submitted a seventy-fiver (75) page response to Plaintiffs' Second Request for Documents, where TEMA submitted general and prophylactic objections each of Plaintiffs' twenty-six (26) requests for documents.

15.     On August 28, 2013, Toyota Motor Corporation ("TMC") submitted a thirty (30) page response to Plaintiffs' June 25, 2013, Second Set of Interrogatories, where TMC submitted general and prophylactic objections to each of Plaintiffs' twelve (12) interrogatories.  TMC also submitted a eighty-seven (87) page response to Plaintiffs' Second Request for Documents, where TMC submitted general and prophylactic objections each of Plaintiffs' twenty-six (26) requests for documents.

APP000051
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

The July 29, 2013, and August 28, 2013, responses have created a need for Plaintiffs to file yet a third motion to compel against Toyota as it continues to refuse to provide clearly relevant discovery, including matters on which this Court has already ruled are discoverable. Unmistakably it has been Toyota's stalling efforts that have prevented and/or delayed discovery in this matter.

## CONCLUSION

WHEREFORE, based on the foregoing facts and argument, Plaintiff prays that this Court deny TMS's Motion to Quash and allow Plaintiffs to proceed with the deposition of TMS's corporate representative(s) as noticed, or another date that is agreeable to Plaintiffs' counsel. Plaintiffs also request attorneys' fees for responding to the Motion to Quash and such other and further relief as the Court deems appropriate.

Respectfully Submitted,

/s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN
State Bar No. 16049750

THE PITTMAN LAW FIRM, P.C.
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com
kristin@thepittmanlawfirm.com

/s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714

LAW OFFICES OF DARYL K. WASHINGTON P.C.
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2013, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.


　　/s/ Aubrey "Nick" Pittman　　　　
AUBREY "NICK" PITTMAN

APP000053
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-207-N |
| | § | |
| TOYOTA MOTOR CORPORATION, et al., | § | |
| Defendants. | § | |

## ORDER

Pursuant to the order of reference dated June 19, 2013, before the Court *Toyota Motor Sales, U.S.A., Inc.'s Motion to Quash Plaintiff William Greene's Notice of Deposition, and Brief in Support Thereof*, filed August 29, 2013 (doc. 164). The parties to the dispute are hereby **ORDERED** to meet face-to-face to fully confer on each of the items in dispute as follows:

## I. Face-to-Face Conference

Local Rule 7.1(a) of the Civil Local Rules for the Northern District of Texas requires that parties confer before filing this type of motion. After a full review of the motion, the Court finds that the parties could more fully confer on the issues in dispute pursuant to Local Rule 7.1(a) and *Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 289–90 (N.D. Tex. 1988)(discussing proper utilization of then Local Rule 5.1(a), which is now Local Rule 7.1(a)).

Genuine, good-faith efforts by the parties to resolve their disputes before seeking court intervention often result in greater control over the outcome, acceptable compromise, or appreciably narrowed issues; these efforts also result in cost savings for the litigants. Opposing parties will have reasonable disagreements throughout litigation that will require the Court's resolution. However, they must comply with Local Rule 7.1(a) in an earnest attempt to ensure that the issues presented

- 1 -

are unbridgeable and supported by reasonable yet differing positions.  The parties are therefore directed to meet **face-to-face**.  The "face-to-face" requirement is not satisfied by a telephonic conference.

**For each party, a corporate representative with the same level of authority that would be required for a settlement conference or mediation, i.e., ultimate settlement authority, must attend the conference concerning the discovery motion.  Ultimate settlement authority means that the representative must have sufficient authority to negotiate and provide final approval of all terms of settlement up to the limits of the opposing party's most recent settlement demand.  Failure to attend the conference by a corporate representative of each corporate party with ultimate settlement authority shall result in the imposition of sanctions against that party.**

## II.  Requirements for the Conference

At the face-to-face conference, the parties must engage in an item-by-item discussion of each issue raised in the motion.  During the item-by-item discussion, *the parties must exchange authorities supporting their positions on each disputed issue.*[1]  Any party refusing to appear for this meeting or to confer as directed in this Order will be subject to sanctions.

## III.  Post-Meeting Instructions

If the disputed issues are resolved during the face-to-face meeting, the movant shall forward an agreed proposed order in word or wordperfect format to the Court at ramirez_orders@txnd.uscourts.gov **no later than 5:00 p.m. on September 12, 2013.**  If unresolved

---

[1] Exchange of authorities will facilitate the parties' evaluation of the merits of their positions on the disputed issues.

APP000055
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

issues remain, the movant shall be responsible for filing a joint submission jointly prepared by the parties in accordance with Section IV of this Order **no later than 5:00 p.m. on September 12, 2013**.

## IV.  Joint Submission

The joint submission must include an item-by-item listing of all issues in the motion which remain in dispute after the parties' face-to-face conference. ***Only those issues (or discovery requests or objections) which are listed in the joint submission will be considered by the Court.*** Disputes which have been resolved during the parties' face-to-face conference should not be included in the joint submission.

Each disputed issue must be separately listed along with the parties' respective positions on the particular dispute.  In cases involving disputed issues (or discovery requests) which are similar or related, a listing of categories may be appropriate.  However, each such category should include an itemized list of all disputed requests which fall within that category. ***Each party's position statement for each disputed issue or category must include citations to authorities which support its position on the particular issue or category***.

The joint submission must also set forth the date of the face-to-face conference, the length of the conference, and the names of the persons who attended.  It must be signed by all parties to the dispute.

## V.  Responsive Pleadings

The **joint submission** is filed *in lieu* of responsive pleadings.  A separate response is not required.  To the extent that evidentiary support for a position is required, the parties may file a joint appendix to the joint submission.  The joint appendix must be filed on the same date as the joint

- 3 -

APP000056
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

submission.

## VI.  <u>Sanctions</u>

Failure to confer face-to-face or to participate in the filing of a joint submission as directed will subject the non-complying party to sanctions.  If a party fails to comply with this order, the complying party must timely file its portion of the joint submission and include a notice advising the Court of the opposing party's failure to comply.  If the joint submission is not timely filed, the motion will be subject to dismissal for movant's failure to comply with this order.

## VII.  <u>Hearing</u>

No hearing will be scheduled on this motion at this time.

**SO ORDERED** on this 30th day of August, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

- 4 -

## David Stone

| | |
|---|---|
| **From:** | Kurt C. Kern |
| **Sent:** | Wednesday, September 04, 2013 3:46 PM |
| **To:** | Aubrey "Nick" Pittman (pittman@thepittmanlawfirm.com); dwashington@dwashlawfirm.com |
| **Cc:** | David Stone; Jude T. Hickland |
| **Subject:** | Greene v. Toyota - Court Ordered Meet and Confer |

Nick:

I haven't heard back from you regarding our proposed date of September 20, 2013 (instead of September 9th) for the deposition of the corporate representative of Toyota Motor Sales at our offices in Torrance, California on what we believe are the relevant topics set forth in your deposition notice. From our discussions of yesterday I understand you believe that date is too late and will not agree to same, nor will you agree to narrow the scope of your deposition notice. Accordingly, and pursuant to the Court's Order of last Friday we will need to have a face-to-face meeting to discuss Toyota's Motion to Quash, with the parties present, before September 12, 2013, with either an agreed proposed order or a joint submission setting forth the parties respective positions being filed by close of business on the 12th. I have conferred with our representative who has ultimate settlement authority in this matter, and he is available for the necessary conference anytime next Tuesday, September 10th, and possibly Wednesday the 11th. I further note the Court just entered an Order requiring us to also meet and confer regarding the Plaintiffs' Third Motion to Compel that you filed yesterday and I propose that we discuss that at the same time that we meet and confer on the Motion to Quash. I would suggest we conduct the conference at my office beginning at 9 AM on the 10th, but please let me know what works best for y'all.

Kurt

Kurt Christopher Kern
Managing Partner, Dallas
Bowman and Brooke LLP
2501 North Harwood Street, Suite 1700
Dalllas, Texas 75201
Direct: 972.616.1711
Fax: 972.616.1701
KKern@BowmanandBrooke.com

1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the representative of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE-HARDEMAN, individually and as the surviving parent of LAKEYSHA GREENE,**<br><br>        **Plaintiffs,**<br><br>**v.**<br><br>**TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING AND MANUFACTURING NORTH AMERICA, INC., and TOYOTA MOTOR SALES, USA, INC., VOLVO GROUP NORTH AMERICA, INC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, INC., STRICK CORPORATION, INC., JOHN FAYARD MOVING & WAREHOUSE, LLC and DOLPHIN LINE, INC.,**<br><br>        **Defendants.** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **CAUSE NO. 3-11CV-0207-N** |

**DEFENDANT TOYOTA MOTOR SALES, U.S.A., INC.'S RESPONSE
TO PLAINTIFF WILLIAM GREENE'S FRCP RULE 30(b)(6)
NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES, U.S.A., INC.**

Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") hereby responds to Plaintiff William Greene's FRCP Rule 30(b)(6) Notice of Deposition of Toyota Motor Sales, U.S.A., Inc.

---

DEFENDANT TOYOTA MOTOR SALES, U.S.A., INC.'S RESPONSE TO PLAINTIFF WILLIAM GREENE'S
FRCP RULE 30(b)(6) NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES, U.S.A., INC.                    PAGE 1

APP000059
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

## PREFATORY STATEMENT

TMS is the authorized importer and a distributor of Toyota, Lexus and Scion motor vehicles in certain geographic areas of the continental United States. TMS does not design, manufacture, assemble or developmentally test Toyota, Lexus or Scion motor vehicles in the ordinary course of its business and TMS was not responsible for the design, manufacture, assembly or developmental testing of the 2010 4Runner at issue in this case. Toyota Motor Corporation ("TMC"), located in Japan, was responsible for the overall design, manufacture, assembly and developmental testing of the 2010 Toyota 4Runner in this case.

The vehicle referred to as the 4Runner was first introduced in the United States as a 1984 model year vehicle. There have been five model series of the 4Runner identified by the series 1984-1989, 1990-1995, 1996-2002, 2003-2009 and 2010 and later. This case involves a 2010 U.S. bound Toyota 4Runner bearing VIN JTEZU5JR9A5000911, which is part of the 2010-present 4Runner model series.

## DEPOSITION TOPICS

**No. 1:**

Authenticity of documents produced by TMS.

**RESPONSE TO NO. 1:**

TMS objects that the deposition category is vague, ambiguous, overly broad, and lacking in specificity through the phrase "[a]uthenticity of documents." Because of this open-ended phrase, it is unclear whether Plaintiffs are asking TMS to authenticate all documents that TMS has produced in this case, regardless of their origin, or if, alternatively, Plaintiffs are asking TMS to authenticate documents created by TMS that TMS has produced in this case.

Subject to and without waiving its objections, TMS will produce a witness who will testify about the authenticity of the documents that TMS has identified and produced in this case relating to the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner, to

---

APP000060
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

the extent that such documents were created by TMS. This witness will not be testifying on behalf of any other Toyota entities, or about any other vehicles.

**No. 2:**

     The nature of TMS's business and its relationship to Toyota Motor Corporation and Toyota Motor Engineering & Manufacturing North America, Inc.

**RESPONSE TO NO. 2:**

     TMS objects that the deposition category is vague, ambiguous, overly broad, and lacking in specificity through the phrase "its relationship to Toyota Motor Corporation and Toyota Motor Engineering & Manufacturing North America, Inc."

     Subject to and without waiving its objections, TMS will produce a witness who will testify generally about the nature of TMS's business, as well as TMS's business relationships with both TMC and Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA"), as those relationships relate to the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner. This witness will not be testifying on behalf of any other Toyota entities, or about any other vehicles.

     Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information in detail as requested through this deposition category.

     To the extent the deposition category asks for any more information, including information beyond the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

APP000061
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

**No. 3:**

The name, identity, and business office of the CEO, Chairman of the Board and President of TMS, Toyota Motor Corporation, and Toyota Motor Engineering & Manufacturing North America, Inc. for 2009-2013.

**RESPONSE TO NO. 3:**

TMS objects that the deposition category is vague, ambiguous, overly broad, and lacking in specificity through the phrase "[t]he name, identity."

Subject to and without waiving its objections, TMS will produce a witness who will testify generally about the basic organizational structure of TMS, including the names and business addresses of TMS's corporate officers during the period of 2009-2013. This witness will not be testifying on behalf of any other Toyota entities, or about any other vehicles.

TMS further objects to the extent the deposition category asks TMS to respond on behalf of entities other than TMS. As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

**No. 4:**

The identities and titles for all agents, officers, employees, and representatives of TMS, if any, who were involved in the investigation of the Incident in Question.

**RESPONSE TO NO. 4:**

Subject to and without waiving its objections, TMS will not produce a witness to testify regarding this deposition category because any information relating to the "investigation" into the crash that is the subject of this case would have been gathered at the direction of TMS's legal department, and would, therefore, be protected from disclosure by the attorney-client privilege, the work product doctrine, or the consulting expert privilege.

Notwithstanding, TMS objects that Plaintiffs' definition of "Incident in Question" is argumentative, speculative, and misleading to the extent it implies that the occupants of the

---

APP000062
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

2010 U.S. bound 4Runner in this case were killed as a result of any defect in the 4Runner through the phrase "killing occupants."

**No. 5:**

The identification of all departments, divisions, and Toyota entities, and contractors involved in the marketing, advertising and sales of Toyota, Lexus and Scion SUVs, including the Subject Toyota Vehicle, for 2000-2013.

**RESPONSE TO NO. 5:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrase "all departments, divisions, and Toyota entities, and contractors." TMS also objects that the deposition category is overly broad, open-ended, and is not limited in scope to the 2010-2012 U.S. bound 4Runner. Further, the deposition category exceeds the permissible scope of discovery set by the Court's July 18, 2012 Order regarding model series scope for this case.

Subject to and without waiving its objections, TMS will not produce a witness to testify regarding this deposition category because there is no evidence suggesting that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case. Moreover, the areas within TMS in which marketing, advertising, or sales activities may have taken place have absolutely no relevance to the subject matter of this product liability lawsuit.

Notwithstanding, TMS further objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information in detail as requested through this deposition category.

---

APP000063
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

Further, TMS objects that advertising and marketing information is not relevant and not reasonably calculated to lead to the discovery of admissible evidence because there has been no showing that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case. Moreover, the deposition category asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it asks for information about advertising from 2011-2012 that would have been prepared after the date of the crash in this case.

To the extent the deposition category asks for any more information through the phrase "[t]he identification of all departments, divisions, and Toyota entities, and contractors," or asks for information beyond the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, local advertising and marketing materials may have been produced by various entities, including but not limited to local dealers and dealer groups, anywhere in the world.  The deposition category is also not limited to a reasonable and relevant time frame or geographic area.   As such, the deposition category exceeds the scope of permissible discovery.

TMS further objects to the extent the deposition category asks TMS to respond on behalf of entities other than TMS through the phrase "Toyota entities, and contractors." As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

## No. 6:

Knowledge of the geographical areas where marketing, advertising and sales of Toyota, Lexus and Scion SUVs, including the Subject Toyota Vehicle, took place for 2000-2013.

---

APP000064
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

**RESPONSE TO NO. 6:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrase "[k]nowledge of the geographical areas where marketing, advertising and sales." TMS also objects that the deposition category is overly broad, open-ended, and is not limited in scope to the 2010-2012 U.S. bound 4Runner. Further, the deposition category exceeds the permissible scope of discovery set by the Court's July 18, 2012 Order regarding model series scope for this case.

Subject to and without waiving its objections, TMS will not produce a witness to testify regarding this deposition category because there is no evidence suggesting that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information in detail as requested through this deposition category.

Further, TMS objects that advertising and marketing information is not relevant and not reasonably calculated to lead to the discovery of admissible evidence because there has been no showing that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case. Moreover, the deposition category asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it asks for information about advertising from 2011-2012 that would have been prepared after the date of the crash in this case.

To the extent the deposition category asks for any more information, including information beyond the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound

APP000065
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

4Runner, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, local advertising and marketing materials may have been produced by various entities, including but not limited to local dealers and dealer groups, anywhere in the world. The deposition category is also not limited to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

TMS further objects to the extent the deposition category asks TMS to respond on behalf of entities other than TMS. As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

**No. 7:**

Toyota and TMS's Record Retention Policy for the period 2000 – 2013.

**RESPONSE TO NO. 7:**

TMS objects that the deposition category is vague, ambiguous, and overly broad through the phrase "Toyota and TMS's." TMS further objects that TMS's document retention policy has no relevance whatsoever to the defect allegations and Plaintiff's claims in this case.

Subject to and without waiving its objections, purely in the spirit of cooperative discovery, TMS will produce a witness who will testify generally about TMS's document retention policy during the time period when the 2003-2009 and the 2010-2012 U.S. bound 4Runner were being distributed for sale. This witness will not be testifying on behalf of any other Toyota entities or about any other vehicles.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable

---

DEFENDANT TOYOTA MOTOR SALES, U.S.A., INC.'S RESPONSE TO PLAINTIFF WILLIAM GREENE'S
FRCP RULE 30(b)(6) NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES, U.S.A., INC.          PAGE 8

inquiry and research, could determine all of the information requested through this deposition category.

TMS further objects to the extent the deposition category asks TMS to respond on behalf of entities other than TMS through the phrase "Toyota and TMS's Record Retention Policy." As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

**No. 8:**

The dates upon which all marketing and sales information for the 2003-2009 and 2010-2012 model year 4Runners were destroyed or discarded and the identity of all persons involved in the decision to destroy or discard this information.

**RESPONSE TO NO. 8:**

TMS objects that the deposition category is vague, ambiguous, and overly broad through the phrase "all marketing and sales information." TMS also objects that the deposition category is argumentative, misleading, speculative, and assumes facts not in evidence through the phrases "dates upon which all marketing and sales information . . . were destroyed or discarded" and "all persons involved in the decision to destroy or discard this information."

Subject to and without waiving its objections, TMS will not produce a witness to testify regarding this deposition category because there is no evidence suggesting that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case. However, in the spirit of cooperative discovery, TMS refers Plaintiffs to TMS's Record Retention Policy that TMS identified and agreed to produce, subject to the terms of the protective order in this case, through its Response to Request No. 94 of Plaintiff Ollie Greene's First Request for Production of Documents to TMS.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the

APP000067
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information requested through this deposition category.

TMS further objects to the extent the deposition category asks TMS to respond on behalf of entities other than TMS through the phrase "all marketing and sales information." As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

Further, TMS objects that advertising and marketing information is not relevant and not reasonably calculated to lead to the discovery of admissible evidence because there has been no showing that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case. Moreover, the deposition category asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it asks for information about advertising from 2011-2012 that would have been prepared after the date of the crash in this case.

To the extent the deposition category asks for any more information through the phrase "all marketing and sales information," TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, local advertising and marketing materials may have been produced by various entities, including but not limited to local dealers and dealer groups, anywhere in the world.  The deposition category is also not limited to a reasonable and relevant time frame or geographic area.  As such, the deposition category exceeds the scope of permissible discovery.

TMS further objects to the extent the deposition category asks TMS to respond on behalf of entities other than TMS through the phrase "all marketing and sales." As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

APP000068
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

**No. 9:**

The advertised governmental safety rating for the Subject Toyota Vehicle including, but not limited to, frontal, rear and side crashes for the Subject Toyota Vehicle.

**RESPONSE TO NO. 9:**

TMS objects that the deposition category is vague, ambiguous, and overly broad through the phrase "[t]he advertised governmental safety rating."

Subject to and without waiving its objections, interpreting the deposition category as asking for testimony about the "governmental safety rating" for the 2010 U.S. bound 4Runner, TMS is the authorized importer and a distributor of Toyota, Lexus and Scion motor vehicles in certain geographic areas of the continental United States.  TMS does not design, manufacture, assemble or developmentally test Toyota, Lexus or Scion motor vehicles in the ordinary course of its business.  TMS was not responsible for the design, manufacture, assembly, or developmental testing of the 2010-2012 U.S. bound 4Runner, including the 2010 U.S. bound 4Runner in this case. TMC was responsible for the overall design, manufacture, assembly, and developmental testing of the 2010-2012 U.S. bound 4Runner. Therefore, TMS lacks sufficient information, independently, to provide a complete and accurate response to the deposition category. See Prefatory Statement.

To the extent the deposition category intended to ask for testimony about advertising and marketing materials that reference any "governmental safety rating" for the 2010 U.S. bound 4Runner, there is no evidence suggesting that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case.  Therefore, TMS will not produce a witness to testify regarding this deposition category

Subject to the clarification in the preceding paragraph, purely in the spirit of cooperative discovery, TMS refers Plaintiffs to the representative national advertising materials applicable to the 2010 U.S. bound 4Runner that TMS identified and agreed to produce through its Response to Request No. 99 of Plaintiff Ollie Greene's First Request for Production of

---

APP000069
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

Documents. TMS also refers Plaintiffs to the representative national print advertisements pertaining to the 2003-2009 U.S. bound 4Runner that TMS identified and agreed to produce through its Response to Request No. 21 of Plaintiffs' Second Request for Production of Documents. TMS also refers Plaintiffs to NHTSA's website, safercar.gov, where governmental safety ratings are available for the 2003-2009 and 2010-2012 U.S. bound 4Runner.

Notwithstanding, TMS also objects to the extent the deposition category asks TMS to respond on behalf of entities other than TMS through the phrase "[t]he advertised governmental safety rating." As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

TMS further objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information requested through this deposition category.

Further, TMS objects that advertising and marketing information is not relevant and not reasonably calculated to lead to the discovery of admissible evidence because there has been no showing that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case. Moreover, the deposition category asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it asks for information about advertising from 2011-2012 that would have been prepared after the date of the crash in this case.

To the extent the deposition category asks for any more information, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, local advertising and marketing materials may have been produced by various

APP000070
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

entities, including but not limited to local dealers and dealer groups, anywhere in the world. The deposition category is also not limited to a reasonable and relevant time frame or geographic area.

TMS also objects that the deposition category asks for information that is publicly available, and, therefore, also available to Plaintiffs.

**No. 10:**

Information and press releases regarding recalls of all Toyota, Lexus and Scion vehicles since 2000 that were recalled as a result of issues related to failure or inadequacy of the fuel system and/or fire prevention system.

**RESPONSE TO NO. 10:**

TMS objects that the deposition category is vague, ambiguous, and overly broad through the phrase "[i]nformation and press releases regarding recalls" and "all Toyota, Lexus and Scion vehicles since 2000." TMS also objects that the deposition category is vague, ambiguous, argumentative, and misleading through the phrase "issues related to failure or inadequacy of the fuel system and/or fire prevention system." TMS also objects that the deposition category is overly broad, open-ended, and is not limited in scope to the 2010-2012 U.S. bound 4Runner. Further, the deposition category exceeds the permissible scope of discovery set by the Court's July 18, 2012 Order regarding model series scope for this case.

Subject to and without waiving its objections, TMS is not aware of any recalls relating to "failure or inadequacy of the fuel system and/or fire prevention system" in a 2003-2009 or 2010-2012 U.S. bound 4Runner.

Subject to the clarification in the preceding paragraph, although the information does not relate to a "failure or inadequacy of the fuel system and/or fire prevention system," TMS will produce a witness who will testify generally about Special Service Campaign 30C ("SSC-30C), which involved the fuel pulsation damper in certain 2003 V6 4Runners. This witness will not be testifying on behalf of any other Toyota entities or about any other vehicles.

APP000071
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information requested through this deposition category.

TMS further objects to the extent the deposition category asks TMS to respond on behalf of entities other than TMS. As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

To the extent the deposition category asks for any more information through the phrase "[i]nformation and press releases regarding recalls of all Toyota, Lexus and Scion vehicles since 2000," TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. The deposition category is also not limited to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

Because the deposition category is so broad through the phrase "[i]nformation and press releases regarding recalls," TMS also objects that the deposition category may ask for attorney-client communications, work undertaken in anticipation of litigation or at the direction of counsel, or other information that would be protected by the attorney-client privilege, the work product doctrine or the consulting expert privilege.

TMS also objects that the deposition category asks for information that is publicly available, and, therefore, also available to Plaintiffs.

APP000072
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

**No. 11:**

Information and press releases regarding recalls of all Toyota, Lexus and Scion vehicles since 2000 that were recalled as a result of defective air bags or side-curtain air bags or failure of air bags to deploy properly.

**RESPONSE TO NO. 11:**

TMS objects that the deposition category is vague, ambiguous, and overly broad through the phrase "[i]nformation and press releases regarding recalls" and "all Toyota, Lexus and Scion vehicles since 2000." TMS also objects that the deposition category is vague, ambiguous, argumentative, and misleading through the phrase "defective air bags or side-curtain air bags or failure of air bags to deploy properly." TMS also objects that the deposition category is overly broad, open-ended, and is not limited in scope to the 2010-2012 U.S. bound 4Runner. Further, the deposition category exceeds the permissible scope of discovery set by the Court's July 18, 2012 Order regarding model series scope for this case.

Furthermore, because Plaintiffs have not made any specific defect allegations relating to the airbags in the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner in this case, TMS objects that this deposition category goes beyond the scope of permissible discovery.

Subject to and without waiving its objections, TMS is not aware of any recalls relating to "defective air bags or side-curtain air bags or failure of air bags to deploy properly" in a 2003-2009 or 2010-2012 U.S. bound 4Runner.

Subject to the clarification in the preceding paragraph, although the recall does not apply to the 2010 U.S. bound 4Runner in this case and does not involve "defective air bags or side-curtain air bags or failure of air bags to deploy properly," in the spirit of cooperative discovery, TMS will produce a witness who will testify generally about the recall conducted by Southeast Toyota Distributors, Inc. ("SET") involving the occupant sensing system in the

APP000073
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

airbags of certain 2003-2009 and 2010-2012 U.S. bound 4Runners. This witness will not be testifying on behalf of any other Toyota entities, or about any other vehicles.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information requested through this deposition category.

TMS further objects to the extent the deposition category asks TMS to respond on behalf of entities other than TMS. As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

To the extent the deposition category asks for any more information through the phrase "[i]nformation and press releases regarding recalls of all Toyota, Lexus and Scion vehicles since 2000," TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. The deposition category is also not limited to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

Because the deposition category is so broad through the phrase "[i]nformation and press releases regarding recalls," TMS also objects that the deposition category may ask for attorney-client communications, work undertaken in anticipation of litigation or at the direction of counsel, or other information that would be protected by the attorney-client privilege, the work product doctrine or the consulting expert privilege.

TMS also objects that the deposition category asks for information that is publicly available, and, therefore, also available to Plaintiffs.

---

DEFENDANT TOYOTA MOTOR SALES, U.S.A., INC.'S RESPONSE TO PLAINTIFF WILLIAM GREENE'S
FRCP RULE 30(b)(6) NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES, U.S.A., INC.                    PAGE 16

**No. 12:**

The general location of the fuel tanks on all models of Toyota, Lexus and Scion SUVs sold by TMS during the period 1996-2013.

**RESPONSE TO NO. 12:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrases "general location of the fuel tanks," "all models of Toyota, Lexus and Scion SUVs," and "sold by TMS."  TMS also objects that the deposition category is overly broad, open-ended, and is not limited in scope to the 2010-2012 U.S. bound 4Runner.  Further, the deposition category exceeds the permissible scope of discovery set by the Court's July 18, 2012 Order regarding model series scope for this case.

Subject to and without waiving its objections, TMS is the authorized importer and a distributor of Toyota, Lexus and Scion motor vehicles in certain geographic areas of the continental United States.  TMS does not design, manufacture, assemble or developmentally test Toyota, Lexus or Scion motor vehicles in the ordinary course of its business. TMS was not responsible for the design, manufacture, assembly, or developmental testing of the 2010-2012 U.S. bound 4Runner, including the 2010 U.S. bound 4Runner in this case. TMC was responsible for the overall design, manufacture, assembly, and developmental testing of the 2010-2012 U.S. bound 4Runner. Therefore, TMS lacks sufficient information, independently, to provide a complete and accurate response to the deposition category. See Prefatory Statement.

Subject to the clarification in the preceding paragraph, purely in the spirit of cooperative discovery, TMS will produce a witness who will testify about TMS's limited knowledge regarding the location of the fuel tanks in 2003-2009 and 2010-2012 U.S. bound 4Runners. This witness will not be testifying on behalf of any other Toyota entities, or about any other vehicles.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly

APP000075
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information requested through this deposition category.

To the extent the deposition category asks for any more information, or asks for information beyond the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner and the components that Plaintiffs allege are defective in this case, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. The deposition category is also not limited in scope to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

**No. 13:**

The general types of fuel tank protectors used in TOYOTA passenger cars and Toyota, Lexus and Scion SUVs sold by TMS for models 1996-2013.

**RESPONSE TO NO. 13:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrases "general types of fuel tank protectors," "TOYOTA passenger cars and Toyota, Lexus and Scion SUVs," and "sold by TMS." TMS also objects that the deposition category is overly broad, open-ended, and is not limited in scope to the 2010-2012 U.S. bound 4Runner. Further, the deposition category exceeds the permissible scope of discovery set by the Court's July 18, 2012 Order regarding model series scope for this case.

Subject to and without waiving its objections, TMS is the authorized importer and a distributor of Toyota, Lexus and Scion motor vehicles in certain geographic areas of the continental United States. TMS does not design, manufacture, assemble or developmentally test Toyota, Lexus or Scion motor vehicles in the ordinary course of its business. TMS was not

APP000076
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

responsible for the design, manufacture, assembly, or developmental testing of the 2010-2012 U.S. bound 4Runner, including the 2010 U.S. bound 4Runner in this case. TMC was responsible for the overall design, manufacture, assembly, and developmental testing of the 2010-2012 U.S. bound 4Runner. Therefore, TMS lacks sufficient information, independently, to provide complete and accurate information in response to the deposition category. See Prefatory Statement.

Subject to the clarification in the preceding paragraph, purely in the spirit of cooperative discovery, TMS will produce a witness who will testify generally about TMS's limited knowledge regarding the factory installed fuel tank protectors in the 2003-2009 and 2010-2012 U.S. bound 4Runner. This witness will not be testifying on behalf of any other Toyota entities, or about any other vehicles.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information requested through this deposition category.

To the extent the deposition category asks for any more information, or asks for information beyond the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner and the components that Plaintiffs allege are defective in this case, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. The deposition category is also not limited in scope to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

**No. 14:**

Type of fuel tank protector used and marketed for the Greene SUV.

---

**DEFENDANT TOYOTA MOTOR SALES, U.S.A., INC.'S RESPONSE TO PLAINTIFF WILLIAM GREENE'S
FRCP RULE 30(b)(6) NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES, U.S.A., INC.**                          **PAGE 19**

## RESPONSE TO NO. 14:

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrase "used and marketed for the Greene SUV."

Subject to and without waiving its objections, to the extent the discovery category asks for information relating to the components of the fuel system of the 2010 U.S. bound 4Runner that is the subject of this case, TMS is the authorized importer and a distributor of Toyota, Lexus and Scion motor vehicles in certain geographic areas of the continental United States. TMS does not design, manufacture, assemble or developmentally test Toyota, Lexus or Scion motor vehicles in the ordinary course of its business. TMS was not responsible for the design, manufacture, assembly, or developmental testing of the 2010-2012 U.S. bound 4Runner, including the 2010 U.S. bound 4Runner in this case. TMC was responsible for the overall design, manufacture, assembly, and developmental testing of the 2010-2012 U.S. bound 4Runner. Therefore, TMS lacks sufficient information, independently, to provide complete and accurate information in response to the deposition category. See Prefatory Statement.

Subject to the clarification in the preceding paragraph, purely in the spirit of cooperative discovery, TMS will produce a witness who will testify about TMS's limited knowledge regarding the type of fuel tank protector that was installed in the 2010 U.S. bound 4Runner in this case. This witness will not be testifying on behalf of any other Toyota entities, or about any other vehicles.

To the extent the deposition category asks for information relating to the marketing or advertising of the 2010 U.S. bound 4Runner, TMS will not produce a witness to testify regarding marketing or advertising of the 2010 U.S. bound 4Runner because there is no evidence suggesting that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case. However, in the interest of cooperative discovery, TMS refers Plaintiffs to the representative national advertising materials applicable to the 2010 U.S. bound 4Runner that TMS identified and agreed to produce through its

---

APP000078
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

Response to Request No. 99 of Plaintiff Ollie Greene's First Request for Production of Documents.   TMS also refers Plaintiffs to the representative national print advertisements pertaining to the 2003-2009 U.S. bound 4Runner that TMS identified and agreed to produce through its Response to Request No. 21 of Plaintiffs' Second Request for Production of Documents.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information requested through this deposition category.

To the extent the deposition category asks for any more information, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. The deposition category is also not limited in scope to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

**<u>No. 15:</u>**

The actual and marginal cost, as well as the wholesale and retail sales prices, during the 2003-2013 period, of the full and half fuel tank protector shields for the 2003-2009 and 2010-2012 model year 4Runners.

**<u>RESPONSE TO NO. 15:</u>**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrase "actual and marginal cost, as well as the wholesale and retail sales prices."

Subject to and without waiving its objections, TMS is the authorized importer and a distributor of Toyota, Lexus and Scion motor vehicles in certain geographic areas of the continental United States.  TMS does not design, manufacture, assemble or developmentally

APP000079
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

test Toyota, Lexus or Scion motor vehicles in the ordinary course of its business. TMS was not responsible for the design, manufacture, assembly, or developmental testing of the 2010-2012 U.S. bound 4Runner, including the 2010 U.S. bound 4Runner in this case. TMC was responsible for the overall design, manufacture, assembly, and developmental testing of the 2010-2012 U.S. bound 4Runner. Therefore, TMS lacks sufficient information, independently, to provide complete and accurate information in response to the deposition category. See Prefatory Statement. Because TMS lacks sufficient information, independently, to provide a complete and accurate response to the deposition category, TMS will not produce a witness to testify regarding this deposition category.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information requested through this deposition category.

Furthermore, information relating to "wholesale and retail sales prices" for fuel tank protectors that may have been published by various entities, including but not limited to local dealers, auto parts stores, and repair shops, anywhere in the world. TMS would not have access to all such information.

To the extent the deposition category asks for any more information, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. The deposition category is also not limited in scope to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

APP000080
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

**No. 16:**

The actual and marginal cost, and the wholesale and retail sales prices of metal or metallic fuel tanks on vehicles marketed or sold by TMS during the period 1990-2013.

**RESPONSE TO NO. 16:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrase "actual and marginal cost, and the wholesale and retail sales prices" and "sold by TMS" TMS also objects that the deposition category is overly broad, open-ended, and is not limited in scope to the 2010-2012 U.S. bound 4Runner. Further, the deposition category exceeds the permissible scope of discovery set by the Court's July 18, 2012 Order regarding model series scope for this case.

Subject to and without waiving its objections, TMS is the authorized importer and a distributor of Toyota, Lexus and Scion motor vehicles in certain geographic areas of the continental United States. TMS does not design, manufacture, assemble or developmentally test Toyota, Lexus or Scion motor vehicles in the ordinary course of its business. TMS was not responsible for the design, manufacture, assembly, or developmental testing of the 2010-2012 U.S. bound 4Runner, including the 2010 U.S. bound 4Runner in this case. TMC was responsible for the overall design, manufacture, assembly, and developmental testing of the 2010-2012 U.S. bound 4Runner. Therefore, TMS lacks sufficient information, independently, to provide complete and accurate information in response to the deposition category. See Prefatory Statement. Because TMS lacks sufficient information, independently, to provide a complete and accurate response to the deposition category, TMS will not produce a witness to testify regarding this deposition category.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable

APP000081
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

inquiry and research, could determine all of the information requested through this deposition category.

Furthermore, information relating to "wholesale and retail sales prices of metal or metallic fuel tanks" may have been published by various entities, including but not limited to local dealers, auto parts stores, and repair shops, anywhere in the world.  TMS would not have access to all such information.

To the extent the deposition category asks for any more information, or asks for information beyond the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner and the components that Plaintiffs allege are defective in this case, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. The deposition category is also not limited in scope to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

**No. 17:**

All vehicles marketed or sold by TMS during the period 1990-2013 that contain(ed) metal or metallic fuel tanks.

**RESPONSE TO NO. 17:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrase "[a]ll vehicles marketed or sold by TMS."  TMS does not sell vehicles directly to the public. TMS also objects that the deposition category is overly broad, open-ended, and is not limited in scope to the 2010-2012 U.S. bound 4Runner.  Further, the deposition category exceeds the permissible scope of discovery set by the Court's July 18, 2012 Order regarding model series scope for this case.

Subject to and without waiving its objections, TMS is the authorized importer and a distributor of Toyota, Lexus and Scion motor vehicles in certain geographic areas of the continental United States.  TMS does not design, manufacture, assemble or developmentally

APP000082
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

test Toyota, Lexus or Scion motor vehicles in the ordinary course of its business. TMS was not responsible for the design, manufacture, assembly, or developmental testing of the 2010-2012 U.S. bound 4Runner, including the 2010 U.S. bound 4Runner in this case. TMC was responsible for the overall design, manufacture, assembly, and developmental testing of the 2010-2012 U.S. bound 4Runner. Therefore, TMS lacks sufficient information, independently, to provide complete and accurate information in response to the deposition category. See Prefatory Statement.

Subject to this clarification in the preceding paragraph, purely in the spirit of cooperative discovery, TMS will produce a witness who will testify generally about TMS's limited knowledge about the types of fuel tanks installed in U.S. bound Toyota vehicles between 1990 and 2013. This witness will not be testifying on behalf of any other Toyota entities.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information requested through this deposition category.

To the extent the deposition category asks for any more information, or asks for information beyond the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner and the components that Plaintiffs allege are defective in this case, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. The deposition category is also not limited in scope to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

APP000083
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

**No. 18:**

The general types of air bags and crash sensors used in Toyota passenger cars and Toyota, Lexus and Scion SUVs sold by TMS for 2000-2013.

**RESPONSE TO NO. 18:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrases "[t]he general types of airbags and crash sensors" and "sold by TMS" TMS also objects that the deposition category is overly broad, open-ended, and is not limited in scope to the 2010-2012 U.S. bound 4Runner. Further, the deposition category exceeds the permissible scope of discovery set by the Court's July 18, 2012 Order regarding model series scope for this case.

Furthermore, because Plaintiffs have not made any specific defect allegations relating to the airbags in the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner in this case, TMS objects that this deposition category goes beyond the scope of permissible discovery.

Subject to and without waiving its objections, TMS is the authorized importer and a distributor of Toyota, Lexus and Scion motor vehicles in certain geographic areas of the continental United States. TMS does not design, manufacture, assemble or developmentally test Toyota, Lexus or Scion motor vehicles in the ordinary course of its business. TMS was not responsible for the design, manufacture, assembly, or developmental testing of the 2010-2012 U.S. bound 4Runner, including the 2010 U.S. bound 4Runner in this case. TMC was responsible for the overall design, manufacture, assembly, and developmental testing of the 2010-2012 U.S. bound 4Runner. Therefore, TMS lacks sufficient information, independently, to provide complete and accurate information in response to the deposition category. See Prefatory Statement.

Subject to the clarification in the preceding paragraph, purely in the spirit of cooperative discovery, TMS will produce a witness who will testify generally about TMS's limited

---

DEFENDANT TOYOTA MOTOR SALES, U.S.A., INC.'S RESPONSE TO PLAINTIFF WILLIAM GREENE'S
FRCP RULE 30(b)(6) NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES, U.S.A., INC.                    PAGE 26

knowledge regarding the types of airbags and airbag sensors that were installed in the 2003-2009 and 2010-2012 U.S. bound 4Runner. This witness will not be testifying on behalf of any other Toyota entities, or about any other vehicles.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information requested through this deposition category.

To the extent the deposition category asks for any more information, or asks for information beyond the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner and the components that Plaintiffs allege are defective in this case, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. The deposition category is also not limited in scope to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

**No. 19:**

Types of air bags, crash sensors, and fuel tanks that were in the Greene SUV while in TMS's possession.

**RESPONSE TO NO. 19:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrase "[t]ypes of air bags, crash sensors, and fuel tanks." TMS also objects that the phrase "while in TMS's possession" is ambiguous, open to interpretation and nonsensical.

Further, because Plaintiffs have not made any specific defect allegations relating to the airbags in the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner in this

---

APP000085
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

case, TMS objects that this deposition category goes beyond the scope of permissible discovery.

Subject to and without waiving its objections, TMS is the authorized importer and a distributor of Toyota, Lexus and Scion motor vehicles in certain geographic areas of the continental United States. TMS does not design, manufacture, assemble or developmentally test Toyota, Lexus or Scion motor vehicles in the ordinary course of its business. TMS was not responsible for the design, manufacture, assembly, or developmental testing of the 2010-2012 U.S. bound 4Runner, including the 2010 U.S. bound 4Runner in this case. TMC was responsible for the overall design, manufacture, assembly, and developmental testing of the 2010-2012 U.S. bound 4Runner. Therefore, TMS lacks sufficient information, independently, to provide complete and accurate information in response to the deposition category. See Prefatory Statement.

Subject to the clarification in the preceding paragraph, purely in the spirit of cooperative discovery, TMS will produce a witness who will testify about TMS's limited knowledge regarding the types of airbags and airbag sensors, as well as the fuel tank that were installed in the 2010 U.S. bound 4Runner that is the subject of this case. This witness will not be testifying on behalf of any other Toyota entities, or about any other vehicles.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information requested through this deposition category.

To the extent the deposition category asks for any more information, or asks for information beyond the components of the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner that Plaintiffs allege are defective in this case, TMS objects that the

APP000086
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

**No. 20:**

Types of air bags and crash sensors used in the 2003-2009 and 2010-2012 model year 4Runners.

**RESPONSE TO NO. 20:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrase "[t]ypes of airbags and crash sensors."

Further, because Plaintiffs have not made any specific defect allegations relating to the airbags in the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner in this case, TMS objects that this deposition category goes beyond the scope of permissible discovery.

Subject to and without waiving its objections, TMS is the authorized importer and a distributor of Toyota, Lexus and Scion motor vehicles in certain geographic areas of the continental United States. TMS does not design, manufacture, assemble or developmentally test Toyota, Lexus or Scion motor vehicles in the ordinary course of its business. TMS was not responsible for the design, manufacture, assembly, or developmental testing of the 2010-2012 U.S. bound 4Runner, including the 2010 U.S. bound 4Runner in this case. TMC was responsible for the overall design, manufacture, assembly, and developmental testing of the 2010-2012 U.S. bound 4Runner. Therefore, TMS lacks sufficient information, independently, to provide complete and accurate information in response to the deposition category. See Prefatory Statement.

Subject to the clarification in the preceding paragraph, purely in the spirit of cooperative discovery, TMS will produce a witness who will testify generally about TMS's limited knowledge regarding the types of airbags and airbag sensors that were installed in the 2003-

---

DEFENDANT TOYOTA MOTOR SALES, U.S.A., INC.'S RESPONSE TO PLAINTIFF WILLIAM GREENE'S
FRCP RULE 30(b)(6) NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES, U.S.A., INC.                    PAGE 29

2009 and 2010-2012 U.S. bound 4Runner. This witness will not be testifying on behalf of any other Toyota entities, or about any other vehicles.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information requested through this deposition category.

To the extent the deposition category asks for any more information, or asks for information beyond the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner and the components that Plaintiffs allege are defective in this case, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. The deposition category is also not limited in scope to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

**No. 21:**

The manner in and extent to which TMS marketed the reliability and/or hazards of the fuel system, fire prevention system, if any, and the seat belts and air bag restraint systems of the 2003-2009 and 2010-2012 model year 4Runners.

**RESPONSE TO NO. 21:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrases "[t]he manner in and extent to which TMS marketed the reliability and/or hazards of the fuel system, fire prevention system, if any, and the seat belts and air bag restraint systems."

Subject to and without waiving its objections, TMS will not produce a witness to testify regarding this deposition category because there is no evidence suggesting that Plaintiffs'

---

APP000088
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case.

Notwithstanding, because Plaintiffs have not made any specific defect allegations relating to the airbags in the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner in this case, TMS objects that this deposition category goes beyond the scope of permissible discovery.

TMS further objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information in detail as requested through this deposition category.

Further, TMS objects that advertising and marketing information is not relevant and not reasonably calculated to lead to the discovery of admissible evidence because there has been no showing that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case. Moreover, the deposition category asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it asks for information about advertising from 2011-2013 that would have been prepared after the date of the crash in this case.

To the extent the deposition category asks for any more information, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, local advertising and marketing materials may have been produced by various entities, including but not limited to local dealers and dealer groups, anywhere in the world. The deposition category is also not limited to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

APP000089
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

**No. 22:**

The manner in and extent to which TMS marketed fire safety, fire prevention and fire suppression systems in Toyota, Lexus and Scion SUVs, including the Subject Toyota Vehicle, during the period 2000-2013.

**RESPONSE TO NO. 22:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrases "[t]he manner in and extent to which TMS marketed fire safety, fire prevention and fire suppression systems." TMS also objects that the deposition category is overly broad, open-ended, and is not limited in scope to the 2010-2012 U.S. bound 4Runner. Further, the deposition category exceeds the permissible scope of discovery set by the Court's July 18, 2012 Order regarding model series scope for this case.

Subject to and without waiving its objections, TMS will not produce a witness to testify regarding this deposition category because there is no evidence suggesting that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case.

Notwithstanding, TMS further objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information in detail as requested through this deposition category.

Further, TMS objects that advertising and marketing information is not relevant and not reasonably calculated to lead to the discovery of admissible evidence because there has been no showing that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case. Moreover, the deposition category asks for information that is not relevant and not reasonably calculated to lead to the discovery of

APP000090
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

admissible evidence to the extent it asks for information about marketing and advertising from 2011-2013 that would have appeared after the date of the crash in this case.

To the extent the deposition category asks for any more information, or asks for information beyond the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, local advertising and marketing materials may have been produced by various entities, including but not limited to local dealers and dealer groups, anywhere in the world. The deposition category is also not limited to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

**No. 23:**

Communications, if any, from Toyota or TMS to dealers and/or consumers that a crash involving the Toyota 4Runner could possibly engage, dislodge, puncture or rupture the fuel inlet pipe and/or the fuel tank, which could lead to a fire in or around the SUV.

**RESPONSE TO NO. 23:**

TMS objects that the deposition category is argumentative, vague, ambiguous, overly broad and assumes facts not in evidence through the term "[c]ommunications," and through the phrases "from Toyota or TMS," "a crash involving the Toyota 4Runner could possibly engage, dislodge, puncture or rupture the fuel inlet pipe and/or the fuel tank," and "the SUV." TMS also objects that the deposition category is overly broad, open-ended, and is not limited in scope to the 2010-2012 U.S. bound 4Runner. Further, the deposition category exceeds the permissible scope of discovery set by the Court's July 18, 2012 Order regarding model series scope for this case.

Subject to and without waiving its objections, TMS will not produce a witness to testify regarding this deposition category. However, in the interest of cooperative discovery, TMS

APP000091
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

refers Plaintiff to the New Car Feature guide, owner's manual, and owner's materials applicable to the 2010 U.S. bound 4Runner that TMS identified and agreed to produce through its disclosure statements. TMS also refers Plaintiffs to the repair manuals applicable to the 2010-2012 U.S. bound 4Runner that TMS produced through its disclosure statements. TMS further refers Plaintiff to the sales brochures and MVMA specifications applicable to the 2010-2011 U.S. bound 4Runner that TMS produced through its disclosure statements. TMS further refers Plaintiffs to the New Car Feature guides applicable to the 2011-2012 U.S. bound 4Runner and the repair manual applicable to the 2012 U.S. bound 4Runner that TMS identified and agreed to produce through its Supplemental Response to Interrogatory No. 1 of Plaintiff William Greene's Interrogatories. TMS further refers Plaintiffs to the Owner's Manuals applicable to the 2011-2012 U.S. bound 4Runner that TMS identified and agreed to produce through its Response to Interrogatory No. 4 of Plaintiff Marilyn Hardeman's Interrogatories. The documents referenced above contain the type of information Plaintiff is asking for through this broad deposition category.

Furthermore, TMS refers Plaintiff to the New Car Feature guides and repair manuals applicable to the 2003-2009 U.S. bound 4Runner that TMS identified and agreed to produce through its Supplemental Response to Interrogatory No. 1 of Plaintiff William Greene's Interrogatories. TMS also refers Plaintiffs to the MVMA specifications, Owner's Manuals, and sales brochures applicable to the 2003-2009 U.S. bound 4Runner that TMS identified and agreed to produce through its Response to Interrogatory No. 4 of Plaintiff Marilyn Hardeman's Interrogatories. The documents referenced above contain the type of information Plaintiff is asking for through this broad deposition category.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable

APP000092
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

inquiry and research, could determine all of the information in detail as requested through this deposition category. TMS also objects that the deposition category is unduly burdensome because TMS is made up of thousands of past and present employees, and to respond to this deposition category, TMS would have to determine which, if any, of those past and present employees had such communications with dealers or consumers.

To the extent the deposition category asks for any more information, or asks for information beyond the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, communications, instructions, and warnings may have been produced by various entities, including but not limited to local dealers and dealer groups, anywhere in the world. The deposition category is also not limited to a reasonable and relevant geographic area. As such, the deposition category exceeds the scope of permissible discovery.

TMS further objects to the extent the deposition category asks TMS to respond on behalf of entities other than TMS through the phrase "from Toyota." As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

**No. 24:**

The manner in and extent to which TMS marketed safety features of Toyota, Lexus and Scion SUVs, including the Subject Toyota Vehicle, during the period 2000-2013.

**RESPONSE TO NO. 24:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrases "[t]he manner in and extent to which TMS marketed safety features." TMS also objects that the deposition category is overly broad, open-ended, and is not limited in scope to the 2010-2012 U.S. bound 4Runner. Further, the deposition category exceeds the permissible

---

DEFENDANT TOYOTA MOTOR SALES, U.S.A., INC.'S RESPONSE TO PLAINTIFF WILLIAM GREENE'S
FRCP RULE 30(b)(6) NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES, U.S.A., INC.                    PAGE 35

scope of discovery set by the Court's July 18, 2012 Order regarding model series scope for this case.

Subject to and without waiving its objections, TMS will not produce a witness to testify regarding this deposition category because there is no evidence suggesting that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case.

Notwithstanding, TMS further objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information in detail as requested through this deposition category.

Further, TMS objects that advertising and marketing information is not relevant and not reasonably calculated to lead to the discovery of admissible evidence because there has been no showing that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case. Moreover, the deposition category asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it asks for information about marketing and advertising from 2011-2013 that would have appeared after the date of the crash in this case.

To the extent the deposition category asks for any more information, or asks for information beyond the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, local advertising and marketing materials may have been produced by various entities, including but not limited to local dealers and dealer groups, anywhere in the world.  The deposition category is also not limited to a reasonable and relevant

APP000094
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

time frame or geographic area.   As such, the deposition category exceeds the scope of permissible discovery.

**No. 25:**

Warranties, whether express, implied, or otherwise, provided to dealers that sold the 2003-2009 and 2010-2012 model year 4Runners.

**RESPONSE TO NO. 25:**

TMS objects that the deposition category is vague, ambiguous, overly broad, and nonsensical through the phrase "[w]arranties, whether express, implied, or otherwise, provided to dealers."

Subject to and without waiving its objections, to the extent Plaintiff intended the deposition category to ask for information relating to warranties that were provided by Toyota to the purchasers of new 2003-2009 and 2010-2012 U.S. bound 4Runners, TMS will produce a witness who will testify generally about warranties provided to purchasers of new 2003-2009 and 2010-2012 U.S. bound 4Runners through the authorized Toyota dealerships that sold such vehicles. This witness will not be testifying on behalf of any other Toyota entities or about any other vehicles.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information requested through this deposition category.

To the extent the deposition category asks for any more information, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. The

APP000095
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

deposition category is also not limited in scope to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

TMS further objects to the extent the deposition category asks TMS to respond on behalf of entities other than TMS. As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

**No. 26:**

Warranties, whether express, implied, or otherwise, provided to consumers who purchased the 2003-2009 and 2010-2012 model year 4Runners.

**RESPONSE TO NO. 26:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the term "purchased" and through the phrase "[w]arranties, whether express, implied, or otherwise."

Subject to and without waiving its objections, and assuming Plaintiffs intended to ask for information relating to warranties that were provided through Toyota to the purchasers of new 2003-2009 and 2010-2012 U.S. bound 4Runners, TMS will produce a witness who will testify generally about warranties provided by Toyota to purchasers of new 2003-2009 and 2010-2012 U.S. bound 4Runners. This witness will not be testifying on behalf of any other Toyota entities or about any other vehicles.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information requested through this deposition category.

APP000096
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

To the extent the deposition category asks for any more information, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. The deposition category is also not limited in scope to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

TMS further objects to the extent the deposition category asks TMS to respond on behalf of entities other than TMS.  As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

**No. 27:**

Operating instructions and warnings to consumers who purchased the 2003-2009 and 2010-2012 model year 4Runners.

**RESPONSE TO NO. 27:**

Subject to and without waiving its objections, TMS will produce a witness who will testify, generally, about the instructions and warnings that were provided to purchasers of the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner that are pertinent to the claims in this case.  This witness will not be testifying on behalf of any other Toyota entities, or about any other vehicles.

Notwithstanding, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence because TMS is not contending in this case that the operator of a Toyota product (in this case the driver of the 2010 4Runner) operated the vehicle improperly. Furthermore, although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon

APP000097
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

reasonable inquiry and research, could determine all of the information in detail as requested through this deposition category.

To the extent the deposition category asks for any more information, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

**No. 28:**

Advertisements placed in Cosmopolitan, Ebony, Jet, Black Enterprise, People Magazine, ESPN Magazine, Sports Illustrated, Popular Mechanic, and US Weekly during 2003-2013 depicting or advertising the Toyota 4Runner.

**RESPONSE TO NO. 28:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrase "depicting or advertising the Toyota 4Runner."

Subject to and without waiving its objections, TMS will not produce a witness to testify regarding this deposition category because there is no evidence suggesting that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case.

Notwithstanding, TMS further objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information in detail as requested through this deposition category.

Further, TMS objects that advertising and marketing information is not relevant and not reasonably calculated to lead to the discovery of admissible evidence because there has been no showing that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case. Moreover, the deposition category asks for

APP000098
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it asks for information about marketing and advertising from 2011-2013 that would have appeared after the date of the crash in this case.

To the extent the deposition category asks for any more information, or asks for information beyond the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, advertisements in the named magazines may have been placed by various entities, including but not limited to local dealers and dealer groups. The deposition category is also not limited to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

TMS further objects to the extent the deposition category asks TMS to respond on behalf of entities other than TMS. As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

**No. 29:**

Exemplar copies of advertisements placed in Cosmopolitan, Ebony, Jet, Black Enterprise, People Magazine, ESPN Magazine, Sports Illustrated, Popular Mechanic, and US Weekly during 2003-2013 depicting, advertising and discussing safety features of Toyota cars and Toyota, Lexus and Scion SUVs.

**RESPONSE TO NO. 29:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrases "[e]xemplar copies of advertisements" and "depicting, advertising and discussing safety features." TMS also objects that the deposition category is overly broad, open-ended, and is not limited in scope to the 2010-2012 U.S. bound 4Runner. Further, the deposition

---

APP000099
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

category exceeds the permissible scope of discovery set by the Court's July 18, 2012 Order regarding model series scope for this case.

Subject to and without waiving its objections, TMS will not produce a witness to testify regarding this deposition category because there is no evidence suggesting that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case. Moreover, as written, this deposition category is actually a Request for Production asking for "[e]xemplar copies of advertisements placed in" certain specified print publications, rather than a topic for deposition testimony.

Notwithstanding, TMS further objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information in detail as requested through this deposition category.

Further, TMS objects that advertising and marketing information is not relevant and not reasonably calculated to lead to the discovery of admissible evidence because there has been no showing that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in this case. Moreover, the deposition category asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it asks for information about marketing and advertising from 2011-2013 that would have appeared after the date of the crash in this case.

To the extent the deposition category asks for any more information, or asks for information beyond the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, advertisements in the named magazines may have been

---

APP000100
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

placed by various entities, including but not limited to local dealers and dealer groups. The deposition category is also not limited to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

TMS further objects to the extent the deposition category asks TMS to respond on behalf of entities other than TMS. As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

**No. 30:**

Identification of all documents, advertisements or other materials, if any, provided to dealers and consumers that describe the differences between, and safety features of, the Full Cover Type and Half Cover Type fuel tank protectors used in the Toyota 4Runners.

**RESPONSE TO NO. 30:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrases "[i]dentification of all documents, advertisements or other materials" and "differences between, and safety features of." TMS also objects that the deposition category is overly broad, open-ended, and is not limited in scope to the 2010-2012 U.S. bound 4Runner. Further, the deposition category exceeds the permissible scope of discovery set by the Court's July 18, 2012 Order regarding model series scope for this case.

Subject to and without waiving its objections, TMS will not produce a witness to testify regarding this deposition category. However, in the interest of cooperative discovery, TMS refers Plaintiff to the New Car Feature guide, owner's manual, and owner's materials applicable to the 2010 U.S. bound 4Runner that TMS identified and agreed to produce through its disclosure statements. TMS also refers Plaintiffs to the repair manuals applicable to the 2010-2012 U.S. bound 4Runner that TMS produced through its disclosure statements. TMS further refers Plaintiff to the sales brochures and MVMA specifications applicable to the 2010-2011 U.S. bound 4Runner that TMS produced through its disclosure statements. TMS further refers

APP000101
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

Plaintiffs to the New Car Feature guides applicable to the 2011-2012 U.S. bound 4Runner and the repair manual applicable to the 2012 U.S. bound 4Runner that TMS identified and agreed to produce through its Supplemental Response to Interrogatory No. 1 of Plaintiff William Greene's Interrogatories. TMS further refers Plaintiffs to the Owner's Manuals applicable to the 2011-2012 U.S. bound 4Runner that TMS identified and agreed to produce through its Response to Interrogatory No. 4 of Plaintiff Marilyn Hardeman's Interrogatories. The documents referenced above contain the type of information Plaintiff is asking for through this broad deposition category.

Furthermore, TMS refers Plaintiff to the New Car Feature guides and repair manuals applicable to the 2003-2009 U.S. bound 4Runner that TMS identified and agreed to produce through its Supplemental Response to Interrogatory No. 1 of Plaintiff William Greene's Interrogatories. TMS also refers Plaintiffs to the MVMA specifications, Owner's Manuals, and sales brochures applicable to the 2003-2009 U.S. bound 4Runner that TMS identified and agreed to produce through its Response to Interrogatory No. 4 of Plaintiff Marilyn Hardeman's Interrogatories. The documents referenced above contain the type of information Plaintiff is asking for through this broad deposition category.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information in detail as requested through this deposition category.

To the extent the deposition category asks about advertising and marketing information, TMS objects that such information is not relevant and not reasonably calculated to lead to the discovery of admissible evidence because there has been no showing that Plaintiffs' decedents relied on any Toyota advertising or marketing in purchasing the 2010 U.S. bound 4Runner in

APP000102
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

this case. Moreover, the deposition category asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it asks for information about marketing and advertising from 2011-2013 that would have appeared after the date of the crash in this case.

To the extent the deposition category asks for any more information, or asks for information beyond the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, local advertising and marketing materials may have been produced by various entities, including but not limited to local dealers and dealer groups, anywhere in the world.  The deposition category is also not limited to a reasonable and relevant time frame or geographic area.  As such, the deposition category exceeds the scope of permissible discovery.

TMS further objects to the extent the deposition category asks TMS to respond on behalf of entities other than TMS.  As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

**No. 31:**

The path of distribution of the Greene SUV from the date of its manufacture to the date of the May 28, 2010, incident.

**RESPONSE TO NO. 31:**

TMS objects that the deposition category is vague, ambiguous, overly broad, and open to interpretation through the phrase "path of distribution."

Subject to and without waiving its objections, TMS will produce a witness who will testify, generally, about the distribution of the 2010 U.S. bound 4Runner that is the subject of this case from the time it was manufactured to its delivery to the dealer.  This witness will not

---

DEFENDANT TOYOTA MOTOR SALES, U.S.A., INC.'S RESPONSE TO PLAINTIFF WILLIAM GREENE'S
FRCP RULE 30(b)(6) NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES, U.S.A., INC.                    PAGE 45

be testifying on behalf of any other Toyota entities, or about any other vehicles.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information in detail as requested through this deposition category.

Further, to the extent the deposition category asks for any more information, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

TMS further objects to the extent the deposition category asks TMS to respond on behalf of entities other than TMS.  As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

**No. 32:**

The complete purchase and sales history for the Greene SUV, including complete chronology and wholesale, retail, and dealer prices.

**RESPONSE TO NO. 32:**

TMS objects that the deposition category is vague, ambiguous, overly broad, and open to interpretation through the phrases "complete purchase and sales history" and "chronology and wholesale, retail, and dealer prices." TMS also objects that the deposition category is overly broad and unduly burdensome to the extent it asks TMS to provide testimony regarding the sale of the 2010 U.S. bound 4Runner in this case to the Greene family, because TMS was not involved in this transaction.

Subject to and without waiving its objections, TMS will produce a witness who will

APP000104
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

testify, generally, about the distribution of the 2010 U.S. bound 4Runner that is the subject of this case from the time it was manufactured to its delivery to the dealer. This witness will not be testifying on behalf of any other Toyota entities, or about any other vehicles.

Notwithstanding, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence because information about "wholesale, retail, and dealer prices" is not relevant to the subject matter of this product liability lawsuit. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information in detail as requested through this deposition category.

Further, to the extent the deposition category asks for any more information, TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Further, the type of information requested would be available through other sources more convenient than TMS, including the dealership that sold the 4Runner in this case.

TMS further objects to the extent the deposition category asks TMS to respond on behalf of entities other than TMS through the phrase "complete purchase and sales history." As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

**No. 33:**

Existence, description and location of emails, e-Discovery and ESI during 2000-2013 that pertain in any way to (a) negligent failure to warn of defective fuel tank design or air bag deployment; (b) breach of express or implied warranties related to fuel tank designs, seat belt restraints and/or air bags; (c) fuel tank integrity failures; (d) fires in Toyota SUVs from crashes;

---

DEFENDANT TOYOTA MOTOR SALES, U.S.A., INC.'S RESPONSE TO PLAINTIFF WILLIAM GREENE'S
FRCP RULE 30(b)(6) NOTICE OF DEPOSITION OF TOYOTA MOTOR SALES, U.S.A., INC.                    PAGE 47

APP000105
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

(e) side curtain airbag failures in crash scenarios; and (f) passenger ejections while wearing seatbelts, in crash scenarios.

## RESPONSE TO NO. 33:

TMS objects that the deposition category is argumentative, vague, ambiguous, overly broad, and open to interpretation through the phrases "emails, e-Discovery and ESI during 2000-2013," "pertain in any way," " negligent failure to warn of defective fuel tank design or air bag deployment," "fuel tank integrity failures," "fires in Toyota SUVs from crashes," "side curtain airbag failures in crash scenarios" and "passenger ejections while wearing seatbelts, in crash scenarios." TMS also objects that the deposition category is overly broad, open-ended, and is not limited in scope to the 2010-2012 U.S. bound 4Runner.  Further, the deposition category exceeds the permissible scope of discovery set by the Court's July 18, 2012 Order regarding model series scope for this case.

Subject to and without waiving its objections, to the extent the deposition category was intended to ask for testimony about lawsuits, initial claim letters and CRNs that have been produced in this case, in which a claimant alleged that personal injury or death resulted from a defect in the crashworthiness design, fuel system, seat belts, or seats in a 2003-2009 U.S. bound 4Runner or 2010-2012 U.S. bound 4Runner, TMS will produce a witness to testify regarding the lawsuits, initial claim letters and CRNs produced in this case in which a claimant alleged that personal injury or death resulted from a defect in the crashworthiness design, fuel system, seat belts, or seats in a 2003-2009 U.S. bound 4Runner or 2010-2012 U.S. bound 4Runner.

Notwithstanding, to the extent the deposition category asks for any more information, through the open-ended phrase "emails, e-Discovery and ESI during 2000-2013," including information that may be contained in open or closed litigation or claims files, TMS objects that the deposition category asks for information that is unduly burdensome to compile, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence. Further, the deposition category is not limited in scope to the 2003-2009 U.S. bound 4Runner and the

APP000106
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

2010-2012 U.S. bound 4Runner. As written, the deposition category is so broad that it could ask for irrelevant information regarding quality investigations and reports, field reports, dealer inquiries, warranty claims, property damage only claims and other types of notifications that allege a "failure" of a fuel system, seat belt, or curtain shield airbag in any Toyota vehicle between 2000 and 2013, regardless of whether the vehicle is a 2003-2009 or 2010-2012 U.S. bound 4Runner, and regardless of whether the incident involved a personal injury allegation. Further, warranty claims can be made, processed or paid for different reasons, many of which may have nothing to do with Plaintiffs' claims in this case that personal injury was caused by alleged defects in the 4Runner's fuel system, seats or seat belts; or by alleged defects in the structural integrity of the side, rear and roof structures of the 4Runner in rear or side impact crashes. The deposition category is also not limited in scope to a reasonable and relevant time frame or geographic area. The undue burden to TMS to search for, compile and provide all of the information potentially requested, greatly exceeds the marginal relevance, if any, of such information to the subject matter of this lawsuit. As such, the deposition category exceeds the scope of permissible discovery.

Because the deposition category is so broad, TMS also objects that the deposition category asks for testimony about attorney-client communications, work undertaken in anticipation of litigation or at the direction of counsel, or other information that would be protected by the attorney-client privilege, the work product doctrine or the consulting expert privilege. The witness will not provide testimony about any privileged matters relating to the subject matter of this deposition topic.

Additionally, TMS objects that the deposition category may violate the rights of privacy of the claimants about whom the deposition category asks for information. Some of the claims may refer to circumstances, incidents or conditions of a personal or upsetting nature. It is possible that such claimants would resent and even contest unsolicited intrusion into their experience(s). TMS cannot adequately determine how precisely or indifferently, if at all, each

APP000107
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

of the claimants views his or her right(s) to privacy, how each might be affected by any solicitation or annoyance which may follow such disclosure, or, indeed, how seriously such individuals value any right of privacy.

Accordingly, in recognition of the right of privacy, or "right to be let alone," and decisional law which prohibits the dissemination of the name and address of claimants, TMS cannot voluntarily reveal such information. Center for Auto Safety v. NHTSA, 809 F. Supp. 148 (D.D.C. 1993).

**No. 34:**

The nature of and all actions taken in claims or lawsuits where TMS was/is a party pertaining to any incident during the period 1996-2013 where there were/are allegations of:

    a.    A negligent failure to warn;

    b.    Breach of express or implied warranties;

    c.    An injury or death due to fuel system design or manufacture;

    d.    An injury or death due to a fuel fed fire;

    e.    An injury or death due to alleged failure of seat restraints;

    f.    An injury or death due to alleged failure of air bags and/or crash sensors;

    g.    An injury or death due to full or partial ejection of driver or passenger wearing a seatbelt;

    h.    An injury or death due to allegations of inadequacy of the strength of materials used in the vehicle; or

    i.    An injury or death due to alleged violations of crashworthiness principles.

**RESPONSE TO NO. 34:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrases "any incident," "materials used in the vehicle," "alleged failure of seat restraints," "inadequacy of the strength of materials used in the vehicle," and "violations of crashworthiness principles." TMS also objects that the deposition category is overly broad, open-ended, and is not limited in scope to the 2010-2012 U.S. bound 4Runner. Further, the deposition category

APP000108
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

exceeds the permissible scope of discovery set by the Court's July 18, 2012 Order regarding model series scope for this case.

Subject to and without waiving its objections, to the extent the deposition category asks for testimony relating to lawsuits, initial claim letters and CRNs produced in this case, in which a claimant alleged that personal injury or death resulted from a defect in the crashworthiness design, fuel system, seat belts, or seats in a 2003-2009 U.S. bound 4Runner or 2010-2012 U.S. bound 4Runner, TMS will produce a witness to testify regarding the lawsuits, initial claim letters and CRNs produced in this case in which a claimant alleged that personal injury or death resulted from a defect in the crashworthiness design, fuel system, seat belts, or seats in a 2003-2009 U.S. bound 4Runner or 2010-2012 U.S. bound 4Runner.

Notwithstanding, to the extent the deposition category asks for any more information, through the open-ended phrase "all actions taken in claims or lawsuits . . . during the period 1996-2013," including information that may be contained in open or closed litigation or claims files, TMS objects that the deposition category asks for information that is unduly burdensome to compile, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence. Further, the deposition category is not limited in scope to the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner. As written, the deposition category is so broad that it could ask for irrelevant information regarding warranty claims, property damage only claims and other types of claims in any Toyota vehicle between 1996 and 2013, regardless of whether the vehicle is a 2003-2009 or 2010-2012 U.S. bound 4Runner, and regardless of whether the incident involved a personal injury allegation. The deposition category is also extremely over broad to the extent it asks for testimony regarding product liability or warranty cases involving any Toyota, Lexus or Scion vehicle over a 17 year timeframe by using the phrases "negligent failure to warn" and "[b]reach of expressed or implied warranties." Further, warranty claims can be made, processed or paid for different reasons, many of which may have nothing to do with Plaintiffs' claims in this case that personal injury was caused by alleged

---

APP000109
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

defects in the 4Runner's fuel system, seats or seat belts; or by alleged defects in the structural integrity of the side, rear and roof structures of the 4Runner in rear or side impact crashes. The deposition category is also not limited in scope to a reasonable and relevant time frame or geographic area. The undue burden to TMS to search for, compile and provide all of the information potentially requested, greatly exceeds the marginal relevance, if any, of such information to the subject matter of this lawsuit. As such, the deposition category exceeds the scope of permissible discovery.

TMS also objects that the deposition category literally asks for testimony about attorney-client communications, work undertaken in anticipation of litigation or at the direction of counsel, or other information that would be protected by the attorney-client privilege, the work product doctrine or the consulting expert privilege by asking for testimony about "all actions taken in claims or lawsuits."

Additionally, TMS objects that the deposition category may violate the rights of privacy of the claimants about whom the deposition category asks for information. Some of the claims may refer to circumstances, incidents or conditions of a personal or upsetting nature. It is possible that such claimants would resent and even contest unsolicited intrusion into their experience(s). TMS cannot adequately determine how precisely or indifferently, if at all, each of the claimants views his or her right(s) to privacy, how each might be affected by any solicitation or annoyance which may follow such disclosure, or, indeed, how seriously such individuals value any right of privacy.

Accordingly, in recognition of the right of privacy, or "right to be let alone," and decisional law which prohibits the dissemination of the name and address of claimants, TMS cannot voluntarily reveal such information. Center for Auto Safety v. NHTSA, 809 F. Supp. 148 (D.D.C. 1993).

---

APP000110
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

**No. 35:**

Research conducted by or for TMS and/or Toyota (or any Toyota related entities) during the period 1996-2013 involving:

    a.      Design, manufacture and locations of fuel tanks in SUV's;

    b.      Fuel leakage during accidents;

    c.      Fire safety, fire prevention and fire suppression systems and/or systems or processes in the Subject Toyota Vehicle that were designed to prevent or suppress fire in the Subject Toyota Vehicle;

    d.      Air bags and crash sensors in SUVs; and

    e.      Crash protection for child occupants and rear passengers in the Subject Toyota Vehicle.

**RESPONSE TO NO. 35:**

TMS objects that the deposition category is vague, ambiguous and overly broad through the phrases "any Toyota related entities," and "the Subject Toyota Vehicle." TMS also objects that the deposition category is overly broad, open-ended, and is not limited in scope to the 2010-2012 U.S. bound 4Runner.  Further, the deposition category exceeds the permissible scope of discovery set by the Court's July 18, 2012 Order regarding model series scope for this case.

Subject to and without waiving its objections, TMS is the authorized importer and a distributor of Toyota, Lexus and Scion motor vehicles in certain geographic areas of the continental United States. TMS does not design, manufacture, assemble or developmentally test Toyota, Lexus or Scion motor vehicles in the ordinary course of its business. TMS was not responsible for the design, manufacture, assembly, or developmental testing of the 2010-2012 U.S. bound 4Runner, including the 2010 U.S. bound 4Runner in this case. TMC was responsible for the overall design, manufacture, assembly, and developmental testing of the 2010-2012 U.S. bound 4Runner. Therefore, TMS lacks sufficient information, independently, to provide complete and accurate information in response to the deposition category. See Prefatory Statement. Because TMS lacks sufficient information, independently, to provide a

APP000111
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

complete and accurate response to the deposition category, TMS will not produce a witness to testify regarding this deposition category.

Notwithstanding, TMS objects that the deposition category is overly broad and unduly burdensome. Although TMS acknowledges the duties of a witness designated pursuant to the Federal Rules of Civil Procedure to make a reasonable inquiry into the subject matter of the deposition notice, it is unreasonable to suppose that any one person, even upon reasonable inquiry and research, could determine all of the information in detail as requested through this deposition category.

To the extent the deposition category asks for any further information, or asks for information beyond the 2003-2009 U.S. bound 4Runner and the 2010-2012 U.S. bound 4Runner and the components that Plaintiffs allege are defective through the terms "SUV's" and "[a]ir bags," TMS objects that the deposition category is overly broad, unduly burdensome, and asks for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. The deposition category is also not limited in scope to a reasonable and relevant time frame or geographic area. As such, the deposition category exceeds the scope of permissible discovery.

Because the deposition category is so broad through the term "[r]esearch," TMS also objects that the deposition category asks for testimony about attorney-client communications, work undertaken in anticipation of litigation or at the direction of counsel, or other information that would be protected by the attorney-client privilege, the work product doctrine or the consulting expert privilege.

TMS further objects to the extent the deposition category asks TMS to respond on behalf of, entities other than TMS through the phrase "TMS and/or Toyota (or any Toyota related entities)." As such, the deposition category is overly broad, unduly burdensome and beyond the scope of permissible discovery. This Response is on behalf of TMS only.

---

APP000112
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

RESPECTFULLY SUBMITTED,

_[signature]_

**KURT C. KERN – Attorney-in-Charge**
State Bar No. 11334600
Kurt.Kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
David.Stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas  75201
Telephone:  (972) 616-1700
Facsimile:  (972) 616-1701

**ATTORNEYS FOR DEFENDANT**
**TOYOTA MOTOR SALES, U.S.A., INC.**

APP000113
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 6th day of September, 2013.

APP000114
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

**From:** Kurt C. Kern
**Sent:** Wednesday, September 11, 2013 5:26 PM
**To:** Aubrey "Nick" Pittman (pittman@thepittmanlawfirm.com); dwashington@dwashlawfirm.com
**Cc:** David Stone; Brian E. Mason
**Subject:** Greene v. Toyota - TMS Corporate Representative Deposition

Nick:

Further to our detailed Meet and Confer, our telephonic conference with the Court and the voice mail I left for you earlier today please give me a call at your convenience to discuss the Joint Submission on Toyota's Motion to Quash, which is due at the close of business tomorrow. Per my v-mail, Toyota's Representative, Luke Torres, listened to all of the proceedings today, including the Court's comments and your final stated position and wants to continue to work toward a mutually acceptable resolution of this issue. As I mentioned in my final stated position, given the breadth of the topics there is simply no one person who could fairly address the topics you have raised, but in conferring with Mr. Torres and the prospective witnesses I can, as indicated earlier today, offer a representative for certain deposition topics, specifically Topics 1,2,3,7,9,10,11,12,13,14,15,16,17,18,19,20,23,25,26,27,30,31,32,33,34 and 35, in whole or in part, on September 20th at Bowman and Brooke's offices in Torrance, California where TMS is headquartered. And I can now offer a representative for deposition on the marketing and advertising related Topics 5,6,8,9,21,22,24,28,29 and 30, in whole or in part, on October 4th at Bowman and Brooke's offices in Torrance. To the extent you do not wish to or cannot travel to Torrance on both occasions I can offer the representative who is available on September 20th for deposition on October 5th, following completion of the marketing and advertising representative's deposition on October 4th. Alternatively, our office in Dallas has a direct video conference link with our office in Torrance and we could easily schedule one or both depositions to take place by video conference. I will insert these offers into the Joint Submission, but please let me know if they can be agreed to, or whether we should simply list them as "Defendant's Position" and have you insert "Plaintiffs' Position" prior to submitting the Joint Submission to the Court. Thx.

Kurt

Kurt Christopher Kern
Managing Partner, Dallas
Bowman and Brooke LLP
2501 North Harwood Street, Suite 1700
Dalllas, Texas 75201
Direct: 972.616.1711
Fax: 972.616.1701
KKern@BowmanandBrooke.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, *et al.*, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | CAUSE NUMBER: 3:11-cv-0207-N |
| | § | |
| TOYOTA MOTOR CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### DEFENDANTS TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., AND TOYOTA MOTOR SALES, U.S.A., INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE COURT:

COME NOW Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively "the Toyota Defendants") in the above-styled and numbered action, and file this Motion for Partial Summary Judgment and for such would respectfully show the Court as follows:

The Toyota Defendants are entitled to summary judgment on two of Plaintiffs' claims, including: (1) any marketing defect claims; and (2) any misrepresentation claims. Summary judgment is appropriate for the reasons set forth in the Toyota Defendants' brief filed in support of this Motion.

Accordingly, Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. pray this Motion for Partial Summary Judgment be set for oral hearing; that upon hearing, the Court grant this Motion for Partial Summary Judgment in its entirety and render judgment that Plaintiffs take nothing by

---

**TOYOTA DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**
APP000116
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

the claims listed above; and for such other relief, both at law and in equity, to which the Toyota

Defendants may show themselves to be justly entitled.

Respectfully submitted,

/s/ David P. Stone
**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 N. Harwood Street, Suite 1700
Dallas, Texas  75201
(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR DEFENDANTS**
**TOYOTA MOTOR CORPORATION,**
**TOYOTA MOTOR ENGINEERING &**
**MANUFACTURING NORTH AMERICA,**
**INC., AND TOYOTA MOTOR SALES,**
**U.S.A., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 12th day of September, 2013.

/s/ David P. Stone

APP000117
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, *et al.*, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | CAUSE NUMBER: 3:11-cv-0207-N |
| | § | |
| TOYOTA MOTOR CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER GRANTING DEFENDANTS TOYOTA MOTOR CORPORATION, TOYOTA
MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.,
AND TOYOTA MOTOR SALES, U.S.A., INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc.'s (collectively the "Toyota Defendants") Motion for Partial Summary Judgment ("Motion"). Having considered the Motion, the briefs and the arguments of counsel, the Court is of the opinion that the Motion should be GRANTED.

**IT IS THEREFORE ORDERED** that Plaintiffs take nothing on the following claims against the Toyota Defendants: (1) all marketing defect claims; and (2) all misrepresentation claims.

APP000118
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, *et al.*, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | CAUSE NUMBER: 3:11-cv-0207-N |
| | § | |
| TOYOTA MOTOR CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS TOYOTA MOTOR CORPORATION, TOYOTA MOTOR
ENGINEERING & MANUFACTURING NORTH AMERICA, INC., AND TOYOTA
MOTOR SALES, U.S.A., INC.'S BRIEF IN SUPPORT OF THEIR
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW Defendants Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc.,
and Toyota Motor Engineering and Manufacturing North America, Inc. (collectively "Toyota"),
and file this Brief in Support of their Motion for Partial Summary Judgment, and for such would
respectfully show the Court as follows:

**I.**
<u>**SUMMARY**</u>

Toyota is entitled to summary judgment on Plaintiffs' strict liability and negligent claims
based on any alleged marketing defect because Plaintiffs have no evidence to support any of the
requisite elements for a marketing defect claim, including evidence that any alleged marketing
defect was the producing and/or proximate cause of Plaintiffs' damages.  Toyota is also entitled
to summary judgment on Plaintiffs' misrepresentation claims.  Under Texas law, reliance is an
essential element of a misrepresentation claim or claim of marketing defect, and there is no
evidence that the Greene Family relied upon any representations made by Toyota or any

APP000119
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

marketing materials from Toyota.  Therefore, Toyota is also entitled to summary judgment on Plaintiffs' misrepresentation and marketing defect claims.

## II.
## BACKGROUND

This case arises out of a multiple-vehicle accident that occurred at 6:25 p.m. on May 28, 2010 in Kaufman County, Texas.  The multiple vehicle, multiple impact, violent crash occurred on eastbound Interstate 20 near Terrell, Texas.  At the time of the crash Wyndell Greene, Sr. was driving a 2010 Toyota 4Runner (the "4Runner") with his wife Lakeysha Greene as front seat passenger and their children Wyndell Greene, II and Wesleigh Greene as rear seat passengers (collectively "the Greene Family").  The 4Runner had come to a stop due to heavy traffic.  Charles Derrick Moody ("Moody") failed to keep a proper lookout while operating a 2008 Volvo tractor truck pulling a loaded semi-trailer and rear-ended the 4Runner at high speed.  The 4Runner was violently forced into the rear of a 2006 Toyota Corolla with sufficient force to propel the Corolla into the median and spin the 4Runner sideways before it was slammed passenger side first into the rear of a 2004 Strick trailer.  Lakeysha Greene, Wyndell Greene, II and Wesleigh Greene were killed at the scene by the blunt force trauma of the crash and Wyndell Greene, Sr. died three months later.

After suing and then settling with Moody and his employer, Plaintiffs filed suit against Toyota alleging various causes of action based on strict liability, misrepresentation, negligence, and breach of warranty.  Plaintiffs allege that a marketing defect caused or contributed to the death of the Greene Family.  However, there is no evidence to support any of the requisite elements of a marketing defect claim.  Plaintiffs also allege that Toyota misrepresented the quality, reliability, and safety of the 4Runner, but there is no evidence to support such an

APP000120
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

allegation.  Therefore, Toyota is entitled to summary judgment on Plaintiffs' strict liability and negligence marketing defect claims, as well as Plaintiffs' misrepresentation claims.

### III.
### SUMMARY JUDGMENT EVIDENCE

The following materials support Toyota's Motion for Partial Summary Judgment:

Exhibit 1:      Plaintiffs' Second Amended Complaint

Exhibit 2:      Deposition of William K. Greene

Exhibit 3:      Deposition of Ollie R. Greene

Exhibit 4:      Deposition of Marilyn H. Hardeman

### IV.
### ARGUMENT AND AUTHORITIES

**A.      Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  When a defendant moves for summary judgment on its affirmative defense, it must establish the absence of a genuine dispute of material fact and establish each element of its defense as a matter of law.  *See Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir. 1995); *Crescent Towing & Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994).  Moreover, a movant is entitled to summary judgment when a non-movant does not or cannot come forward with competent evidence of an essential element on which the non-movant has the burden of proof.  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S. Ct 3177 (1990).  To raise a fact issue, the non-movant must go beyond the pleadings and show, by competent evidence, there is a genuine factual issue for trial.  *Celotex*

APP000121
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

*Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

When federal jurisdiction is based on diversity of citizenship, as in this case, a federal court applies the substantive law of the forum state in which it is sitting.  *See, e.g.*, *Foradori v. Harris*, 523 F.3d 477, 486 (5th Cir. 2008) (*citing Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).

**B.     A Reasonable Time for Discovery has Passed.**

A reasonable time for discovery has passed.  This case was filed in the United States Northern District of Texas, Dallas Division in February of 2011.  The discovery deadline, although extended on multiple occasions, is currently set for December 10, 2013.  This case is set for trial on March 14, 2014.  Since filing their Original Complaint, Plaintiffs have had over two and a half years to conduct discovery, including written discovery, vehicle and scene inspections, and depositions of corporate witnesses.  Most importantly, Plaintiffs have responded to written discovery and have given sworn deposition testimony and have not proffered any evidence to support the essential elements of their marketing and misrepresentation claims.

**C.     Plaintiffs' Marketing Defect Claim Is Simply Another Attempt to Bring a Design Defect Claim.**

For Plaintiffs to prevail under a strict liability theory of defective marketing due to a failure to warn, Plaintiffs must establish five elements: (1) a risk of harm must exist that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product; (2) the product supplier must actually know or reasonably foresee the risk of harm at the time the product is marketed; (3) the product must possess a marketing defect; (4) the absence of the warning and/or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product; and (5) the failure to warn and/or instruct must have caused the product user's injury.  *See Goodyear Tire & Rubber Co. v. Rios*,  143 S.W.3d 107, 116 (Tex.

APP000122
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

App.–San Antonio 2004*); Simms v. Washex Machinery Corp.*, 932 S.W.2d 559, 562 (Tex. App.—Houston [1st Dist.] 1995, no writ); *USX Corp. v. Salinas,* 818 S.W.2d 473, 482–83 (Tex. App.-San Antonio 1991, writ denied); *see also, Bristol Myers Co. v. Gonzales*, 561 S.W.2d 801 (Tex. 1978) (In Texas, to establish a cause of action for defective marketing for failure to warn, plaintiff must establish the product is unreasonably dangerous in the absence of a warning of the danger or instructions for its safe use.).

Notably, to recover in failure-to-warn cases, plaintiff must prove that the lack of a warning caused the injury. *See Technical Chemical Co. v. Jacobs*, 480 S.W.2d 602, 604 (Tex. 1972) (stating that "proof of causation is a necessary element of strict liability case"). Specifically, for negligence claims, a plaintiff must prove that the defendant's failure to warn was the proximate cause of their injuries. *See General Motors Corp. v. Saenz*, 873 S.W.2d 353, 357 (Tex. 1993); *Purina Mills, Inc. v. Odell*, 948 S.W.2d 927, 935-36 (Tex. App.–Texarkana 1997, writ denied). When basing their claims on strict liability, a plaintiff must show that the failure to warn was a producing cause of their damages. *See Amstadt v. The United States Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *Saenz*, 873 S.W.2d at 357; *Purina Mills*, 948 S.W.2d at 935-36. The common element to both proximate and producing cause is actual causation-in-fact. *Id*. Therefore, in order to succeed, a plaintiff must show that but for the defendant's failure to provide adequate warnings, the plaintiff's injuries would not have occurred. *See Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995).

Even if the alleged factual scenario in this case could give rise to such a claim, Plaintiffs have offered no evidence sufficient to raise a fact issue to support any of the required elements for a marketing defect cause of action, including that the alleged failure to warn was the cause-in-fact of the death of the Greene Family members. Plaintiffs' pleadings simply state that "the

warnings and instructions for the vehicle were inadequate." *See* Plaintiffs' Second Amended Complaint, at ¶ 35, attached as Exhibit 1. To the extent that Plaintiffs have even pled a marketing defect allegation, there is no specific reference to a warning or instruction that was inadequate.

Plaintiffs' boilerplate language is thus no more than an inappropriate re-characterization of their underlying design defect claim. This case is, quite simply, not a marketing defect case. The facts as Plaintiffs themselves have alleged do not give rise to such a claim. The hallmark of a marketing defect claim is that a product is rendered unreasonably dangerous due to an absence of sufficient warnings or instructions—in other words, a failure to properly warn a consumer of certain risks turns a *properly designed product* into an unreasonably dangerous one. *See, e.g.,¸ Caterpillar Inc. v. Shears¸* 911 S.W.2d 379, 382 (Tex. 1995) ("A defendant's failure to warn of a product's potential dangers when warnings are required is a type of marketing defect. Liability will attach if the lack of adequate warnings or instructions *renders an otherwise adequate product unreasonably dangerous.*") (internal citations removed and emphasis added); *Lemond v. Lone Star Gas Co.*, 897 S.W.2d 378, 386 (Tex. App.—Fort Worth 1994), aff'd in part and rev'd in part on other grounds, 897 S.W.2d 755 (Tex. 1995) ("In marketing defect cases, the defective or unreasonably dangerous condition of the marketed product arises not from the product itself, but because the seller fails to warn the user of an *improper use of the product*.") (emphasis added).

Plaintiffs' allegations in this case, however, are that the subject 4Runner was *unreasonably dangerous as designed* due to its seatbelts, structure, and fuel and fire safety system. If the 4Runner were unreasonably dangerous as designed as alleged by Plaintiffs, it could not then be rendered unreasonably dangerous due to an absence of warnings. On the other

APP000124
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

hand, if the 4Runner is not unreasonably dangerous as designed, Plaintiffs have brought forth neither evidence nor even allegations that a lack of warnings or instructions somehow rendered it unreasonably dangerous.  As demonstrated, Plaintiffs have no evidence to establish the elements of a claim for a marketing defect in this case.  Therefore, Toyota is entitled to summary judgment on any of Plaintiffs' strict liability or negligence allegations based on a marketing defect.

**D.     Plaintiffs Have No Evidence Toyota Made Any False Material Representations Regarding the 4Runner.**

Plaintiffs allege that Toyota made false misrepresentations that caused the death of the Greene Family.  *See* Plaintiffs' Second Amended Complaint, at ¶¶ 51-54.  However, Plaintiffs fail to specify whether their "misrepresentation" claim is brought under Texas law as a fraudulent misrepresentation claim or a negligent misrepresentation claim.  Either way, Plaintiffs have no evidence to support either claim because they cannot prove reliance.

In order to establish a fraudulent misrepresentation cause of action against Toyota, Plaintiffs must establish that (1) Toyota made a material misrepresentation; (2) the misrepresentation was false; (3) Toyota knew that it was false at the time or recklessly made it without any knowledge of the truth and as a positive assertion; (4) Toyota made the representation with the intent that it be acted upon; (5) the representation was in fact relied upon; and (6) Plaintiffs' suffered an injury.  *See Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 337 (Tex. 2011).

In order to establish a negligent misrepresentation cause of action against Toyota, Plaintiffs must establish that (1) Toyota made a representation in the course of its business, or in a transaction in which it had a pecuniary interest; (2) Toyota supplied false information for the guidance of others in their business; (3) Toyota did not exercise reasonable care or competence

APP000125
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

in obtaining or communicating the information; (4) Plaintiffs' decedents justifiably relied on the misrepresentation; and (5) Toyota's negligent misrepresentation proximately caused Plaintiffs' injuries. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).

Both fraudulent misrepresentation and negligent misrepresentation require Plaintiffs to show both actual and justifiable reliance. *Grant Thornton L.L.P. v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). When measuring justifiability, the Court examines the "individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud." *Id.*

### 1. The Greene Family did not rely on any Toyota representations regarding the 4Runner.

Plaintiffs allege that Toyota made misrepresentations regarding the quality, reliability and safety of the 4Runner in various commercials, internet postings, periodicals, press releases, etc. *See* Plaintiffs' Second Amended Complaint, at ¶¶ 51-54. Plaintiffs further allege that these representations were relied upon by the Greene Family and that they were the proximate cause their deaths. *Id.* This is the extent of their misrepresentation allegations. At no point do they identify any actionable representations or alleged misrepresentations. The only "representation" alleged by Plaintiffs is that throughout radio and television ads, Toyota "invests $1,000,000 per hour on research and development to enhance the safety and technology of its vehicles." *Id.* at ¶ 30. But Plaintiffs have no evidence that this statement was a false material misrepresentation or that Toyota knew it was a material misrepresentation.

More importantly, Plaintiffs have no evidence that the Greene Family relied on any advertising, marketing, or promotion of the 4Runner in their purchase and use of the vehicle.

APP000126
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

When asked about the 4Runner at issue in their depositions, none of the Plaintiffs could point to any evidence suggesting that the Greene Family relied upon any representations made by Toyota.

> Q:    Did Wyndell ever call you as either for some big-brother advice or a guy who was sort of in the car business, did he ever call you for advice about, hey, I'm thinking about buying this vehicle, what do you think?
> A:    Yes.
> Q:    And what – when did those conversations take place?
> A:    When Wyndell owned a Yukon, a General Motors product, and he said, Man, I think I am going to get a Toyota Camry. I think it was a hybrid. What do you think? I said it's kind of cool. At that time the technology was cool. And he also says, Yeah, I mean pretty safe product from I understand. I said, I don't know. He says, I think I might get it. I said, Fantastic, go for it. And then he contacted me again when he wanted to get rid of the Toyota Camry to ask my opinion. He said I'd like to get another product, a bigger product. And I said, What are you thinking? He said I'm thinking we liked the Toyota Forerunner that Keysha had. I think that I'm going to get that. So it was more of a seeking advice but telling as well or informing.
> Q.    Did it sound like he had pretty much made his mind up before he called you?
> A.    I think so.

Excerpts of Deposition of William K. Greene, at 15:19—16:18, attached as Exhibit 2.

> Q:    Did he ever discuss with you his decision to buy that vehicle?
> A:    They needed a larger vehicle because they planned to add to their family.
> Q:    Did he tell you anything else about why he decided to buy the 2010 Forerunner?
> A:    No

Excerpts of Deposition of Ollie R. Greene, at 23:22—24:3, attached as Exhibit 3.

> Q:    Do you know why Wyndell or Wyndell and Lakeysha decided to buy the 2010 [4Runner]?
> A:    No

Excerpts of Deposition of Marilyn H. Hardeman, at 35:15—37:24, attached as Exhibit 4.

The testimony from the Plaintiffs set forth above establishes that Plaintiffs can offer no evidence of reliance by the decedents on any representations by Toyota in connection with their decision to purchase the subject 4Runner. At best, their testimony indicates that the 4Runner was purchased based on prior positive experiences with Toyota products, but such would in no way support a cause of action for misrepresentation.

Simply identifying Toyota materials that may or may not have been in the possession of the Greene Family does not prove that these materials were relied upon by the Greene Family when purchasing the 4Runner.  Possession does not equate to reliance.  Plaintiffs' misguided allegations suggest that because the Greene Family decided to purchase the 4Runner, they must have relied upon Toyota's representations.  This nonsensical approach is not supported by the law or the evidence in this case.  In fact, the evidence establishes that the Greene Family purchased the 4Runner because they wanted a larger vehicle than their previous Toyota Camry, and that they were happy with a prior model year 4Runner that they owned.  *See* Excerpts of Deposition of William K. Greene, *supra*.  The evidence, or lack thereof, shows that the Greene Family did not justifiability rely on any Toyota representations.  As a result, there is no genuine issue of material fact with Plaintiffs "misrepresentation" claims, and they fail as a matter of law. Therefore, summary judgment is appropriate.

### V.
### CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendants Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., and Toyota Motor Engineering and Manufacturing North America, Inc.  respectfully request that the Court grant them partial summary judgment on all of strict liability and negligence claims based on any alleged marketing defect, as well as Plaintiffs' misrepresentation claims, and for such other and further relief to which they may show themselves justly entitled.

APP000128
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

Respectfully submitted,


*/s/ David P. Stone* _____
**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 N. Harwood Street, Suite 1700
Dallas, Texas  75201
(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR DEFENDANTS
TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA,
INC., AND TOYOTA MOTOR SALES,
U.S.A., INC.**


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 12th day of September, 2013.


*/s/ David P. Stone* _____

APP000129
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **OLLIE GREENE, Individually as the** | § | |
| **surviving parent of WYNDELL GREENE,** | § | |
| **SR., WILLIAM GREENE, as the** | § | |
| **Administrator of the Estate of WYNDELL** | § | |
| **GREENE, SR., and MARILYN BURDETTE** | § | |
| **HARDEMAN, Individually and as the** | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| **surviving parent of LAKEYSHA GREENE,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| **v.** | § | |
| | § | |
| | § | **JURY TRIAL DEMANDED** |
| **TOYOTA MOTOR CORPORATION,** | § | |
| **TOYOTA MOTOR ENGINEERING &** | § | |
| **MANUFACTURING NORTH AMERICA,** | § | |
| **INC., TOYOTA MOTOR SALES USA,** | § | |
| **INC., VOLVO GROUP NORTH** | § | |
| **AMERICA, LLC., VOLVO TRUCKS** | § | |
| **NORTH AMERICA, A DIVISION OF** | § | |
| **VOLVO GROUP NORTH AMERICA,** | § | |
| **LLC., STRICK TRAILERS, LLC, JOHN** | § | |
| **FAYARD MOVING & WAREHOUSE,** | § | |
| **LLC, and DOLPHIN LINE, INC.** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Ollie Greene, Individually as the surviving parent of Wyndell Greene, Sr.,

William Greene, as the representative of the Estate of Wyndell Greene, Sr. and Marilyn Burdette

Hardeman, Individually as the surviving parent of LaKeysha Greene (collectively "Plaintiffs"),

complaining of Defendants Toyota Motor Corporation, Toyota Motor Engineering &

Manufacturing North America, Inc., Toyota Motor Sales USA, Inc. (the "Toyota Defendants"),

Volvo Group North America, Inc., Volvo Trucks North America, a Division of Volvo Group

North America, Inc., (the "Volvo Defendants"), Strick Trailers, LLC, John Fayard Moving &

**EXHIBIT 1**

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 1**

Warehouse, LLC and Dolphin Line Inc., (the "Trailer Defendants") and for cause of action would respectfully show the Court as follows:

## A.   NATURE AND PURPOSE OF THE ACTION

1.      On or about May 28, 2010, Wyndell Greene, Sr. ("Wyndell Sr."), LaKeysha Greene ("LaKeysha), Wyndell Greene, II ("Wyndell II") and Wesleigh Greene ("Wesleigh") ("Wyndell Sr.", "LaKeysha," "Wyndell II," and "Wesleigh" are collectively referred herein as the "Greene Family") were riding in their Toyota 4Runner (the "Toyota 4Runner") when they were struck from the rear by a Volvo Tractor (the "Volvo Tractor") that, upon information and belief, was manufactured by Volvo Trucks North America.  The collision came without warning and caused the Greene Family's Toyota 4Runner to collide with a Toyota Corolla and a trailer (the "Strick Trailer"), owned by Dolphin Line, that was being towed by a Tractor (the "Fayard Tractor") owned by John Fayard Moving & Warehouse, LLC.  The Toyota 4Runner burst rapidly into uncontrollable flames.

2.      As a result of the crash, Wyndell II and Wesleigh were trapped in the Toyota 4Runner, unable to escape, and were eventually burned to ashes while inside the Toyota 4Runner.  LaKeysha, although wearing her seatbelt, was ejected from the Toyota 4Runner's seatbelt restraint, suffered burns and lacerations to a significant portion of her body, and eventually died from the trauma as a result of her ejection from her seatbelt restraint.

3.      Wyndell Sr. sustained unwarranted and excruciating physical pain and mental anguish and emotional distress.  Approximately three months following the accident, Wyndell Sr. died as a result of the burns and other injuries he suffered from the collision, which he sustained while inside the Toyota 4Runner.

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 2**

4.      For the Defendants' conduct, Plaintiffs bring this action under TEX. CIV. PRAC. & REM. CODE §§71.002, 71.004 and 71.021 and other provisions to recover damages for the injuries and death sustained by Wyndell Sr. and for the wrongful death of the Greene Family.

## B.      JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332 since the parties are citizens of different States and the amount in controversy exceeds the jurisdictional limits of 28 U.S.C. §1332.

6.      Venue is appropriate in the United States District Court, Northern District of Texas, Dallas Division, since Kaufman County was the location of the events made the basis of this cause of action.

## C.      PARTIES

7.      Plaintiff Ollie Greene is a citizen of the State of Louisiana.  Plaintiff Marilyn Burdette-Hardeman is a citizen of the State of Arkansas.  William Greene is a citizen of the State of Michigan.  Plaintiff the Estate of Wyndell Greene, Sr. is a Texas entity.

8.      Defendant Toyota Motor Corporation ("TMC"), at all times mentioned, was and is a foreign corporation maintaining its corporate headquarters in Toyota City, Aichi Prefecture, Japan.  TMC has answered and appeared in this action.

9.      Defendant Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") is a foreign corporation doing business in Texas.  TEMA has answered and appeared in this action.

10.     Defendant Toyota Motor Sales, USA ("TMS") is a foreign Corporation doing business in Texas.  TMS has answered and appeared in this action.

11.     Defendant Volvo Group North America, Inc. ("Volvo") is a corporation organized and existing under the laws of the State of Delaware.  At all times relevant to this action, Volvo

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 3**

had continuing and systematic contacts with the State of Texas by delivering its products into the
stream of commerce with the expectation that its products would reach and be used in the State
of Texas.  Volvo also had minimum contacts with the State of Texas and was doing business in
the State by, inter alia, designing, manufacturing, promoting, and/or distributing vehicles in the
State of Texas and derives substantial revenue from the sale of vehicles sold in this State.
Service of process upon this Defendant may be had by serving its Registered Agent for Service
of Process, CT Corporation System, 350 N. St. Paul St., Dallas, TX  75201.  The causes of action
set out herein arise from Volvo's contacts with the State of Texas.  Volvo has answered and
appeared in this action.

12.     Defendant Volvo Trucks North America, a Division of Volvo Group North
America, Inc., ("Volvo Trucks") is, upon information and belief, an assumed name of Volvo
Group North America, Inc. and is a corporation organized and existing under the laws of the
State of Delaware.  At all times relevant to this action, Volvo Trucks had continuing and
systematic contact with the State of Texas by delivering its products into the stream of
commerce with the expectation that its products would reach and be used in the State of Texas.
Volvo Trucks also had minimum contacts with the State of Texas and was doing business in
the State by, inter alia, designing, manufacturing, promoting, and/or distributing vehicles in the
State of Texas and derives substantial revenue from the sale of vehicles sold in this State.
Service of process upon this Defendant may be had by serving its Registered Agent for Service
of Process, CT Corporation System, 350 N. St. Paul St., Dallas, TX  75201.  The causes of
action set out herein arise from Volvo Truck's contacts with the State of Texas.  Volvo Trucks
has answered and appeared in this action.

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 4**

APP000133
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

13.     Defendant Strick Corporation, Inc. ("Strick") is a corporation organized under the laws of the State of Pennsylvania.  Strick manufactures transportation equipment, including freight semi-trailers, which it markets for sale under the federally registered trademark "Strick."  The causes of action set out herein arise from Strick's contacts with the State of Texas. Service of process upon this Defendant may be had by serving its Registered Agent for Service of Process, C T Corporation System, 36 S. Pennsylvania Street, Suite 700, Indianapolis, IN  46204.  Strick has answered and appeared in this action.

14.     Defendant John Fayard Moving & Warehouse, LLC. ("Fayard") is a Mississippi limited liability company.  Its member/owner is John R. Fayard, Jr., who is a citizen of the State of Mississippi.  The causes of action set out herein arise from Defendant's contacts with the State of Texas. Process may be had upon the Defendant by serving its registered agent for service of process, John Fayard at his office located at 13486 Fastway Lane, Gulport, MS 39503, or wherever he may be found.  Fayard has appeared in this action.

15.     Defendant Dolphin Line, Inc., ("Dolphin") upon information and belief, doing business as Red Arrow Delivery Service, Inc., is a Tennessee Corporation.  The causes of action set out herein arise from Defendant's contacts with the State of Texas. Process may be served upon the Defendant by serving its registered agent for service of process Wayne Vandevort at his office located at 1120 Visco Dr., Nashville, TN 37210 or wherever he may be found.  Dolphin has answered and appeared in this action.

## D.     FACTS COMMON TO ALL CLAIMS

16.     In or about February 2010 the Greene Family purchased the Toyota 4Runner, VIN #JTEZU5JR9A5000911 from Toyota of Plano, located in Plano, Texas.  Upon information and belief, the 4Runner was manufactured by one or more of the Toyota Defendants.

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 5**

17.     On or about May 28, 2010, Wyndell Greene, Sr., LaKeysha Greene, Wyndell Greene, II and Wesleigh Greene were riding in their family 4Runner traveling eastbound on Interstate 20 ("I-20") between Terrell, Texas and Canton, Texas enroute to Opelousas, Louisiana to celebrate the third birthday of Wyndell, II.

18.     Immediately prior to their trip, Wyndell Sr., LaKeysha, Plaintiff Marilyn Burdette-Hardeman ("Mrs. Hardeman"), LaKeysha's mother, and Ollie Greene ("Mrs. Ollie Greene"), Wyndell Sr.'s mother, had spent a significant amount of time planning the birthday party for Wyndell II, which was to be held at Mrs. Ollie Greene's residence in Opelousas, La. on May 29, 2010.

19.     Mrs. Hardeman, who was residing with the Greene Family at the time of the incident, helped the Greene Family pack, and saw the family off for their trip to Louisiana.  Mrs. Ollie Greene talked to the Greene Family prior to their departure and anxiously awaited their arrival.

20.     While the Greene Family was traveling in the Toyota 4Runner, it was struck from the rear by the Volvo Tractor, VIN #4V4NC9GH88N483933, manufactured by Volvo Trucks in January 2007.  The collision came without warning and caused the Greene Family's Toyota 4Runner to collide with a Toyota Corolla and eventually with the Strick Trailer, VIN #1S12E95324E497976, which was being towed by the Fayard Tractor, VIN #1FUJA6CV35DUC5936.  The Toyota 4Runner burst rapidly into uncontrollable flames.

21.     Immediately after the collision, several rescuers came by to aid the Greene Family.  The rescuers were able to pull Wyndell, Sr. from the wreckage.  However, due to the manner in which the structure of the Toyota 4Runner was crushed, combined with the intensity

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 6**

of the flames, the potential rescuers were unable to pull Wyndell, II and Wesleigh from the burning wreckage. Lakeysha had already been ejected from her seatbelt through the 4Runner.

22.    As a result of design of the Toyota 4Runner, Wyndell II and Wesleigh were crushed inside the rear occupant seats, unable to escape or be pulled from the Greene's 4Runner, and were eventually burned to death. Also as a result of the 4Runner's design, LaKeysha was ejected from her seatbelt restraint, suffered burns to a significant portion of her body, and eventually died, in front of her husband as he watched helplessly.

23.    Wyndell Sr., the sole member of the Greene Family to survive at the crash site, lay helpless and in severe pain as his family died in his presence. Wyndell Sr. also suffered severe lacerations, internal injuries and third degree burns to over forty percent (40%) of his body.

24.    While hospitalized for three months, Wyndell Sr. suffered severe, sometimes unbearable, pain, had multiple surgeries, and had multiple amputations as he underwent what was hoped to be a recovery. He also suffered frequent unendurable mental anguish and emotional distress, knowing that his family died from this accident, in front of his eyes.

25.    On September 11, 2010, Wyndell Sr. eventually succumbed to the severe injuries he suffered from the accident and passed away, ending his survival from the accident.

26.    Wyndell II was born on May 29, 2007 and Wesleigh was born on July 23, 2004. Wyndell II was just about to turn three (3) years old when he died. He was in good health, with a reasonable life expectancy of living approximately 81 more years to age 84.

27.    Wesleigh was five (5) years old when she died. She was in good health, with a reasonable life expectancy of living approximately 79 more years to age 84.

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 7**

28.     LaKeysha was thirty five (35) years old when she died.  She was in good health, with a reasonable life expectancy of living at least 49 more years to age 84.  LaKeysha had a promising career that was ended with her death.

29.     Wyndell Sr. was thirty four (34) years old at the time of the accident and was in excellent health prior to the incident.  He had a reasonable life expectancy of living at least 50 more years to age 84.  Wyndell Sr. had a promising career that was cut short with his death.

30.     Throughout radio and television ads, as well as all over the internet, the Toyota Defendants tout that they are committed to safety.  In fact, the Toyota Defendants advertise that Toyota "invests $1,000,000 per hour on research and development to enhance the safety and technology of its vehicles."  However, based on recent public incidents all over the country involving Toyota vehicles, it is apparent that Toyota's smooth-talking and deceitful public relations program is intended to deceive customers, and did deceive the Greene Family, into believing that the Toyota SUVs are reasonably safe in accidents, when they are not.

31.     Toyota's cover-up has even extended to this case.  Shortly after the collision, when Plaintiffs' counsel contacted Toyota to discuss an out-of-court resolution of this matter, Toyota and its lawyers at the time (Hartline, Dacus, Barger, Dreyer & Kern, L.L.P.) dispatched one of their "investigators" to "inspect" the Toyota 4Runner.  Soon after the inspector arrived it became apparent that he was not interested in discovering the truth of the defective design.  Instead, this staged inspection was intended only to falsely absolve Toyota of liability and to point all blame at other third parties, which Toyota quickly did.  Toyota did not ask for an independent evaluation of the Toyota 4Runner.  In fact, after a very rudimentary inspection of the Toyota 4Runner, without the aid of any professional equipment with which to conduct a true evaluation of the SUV, Toyota claimed that it was innocent of contributing to the deaths of the

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 8**

APP000137
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

Greene Family, and simply walked away, and indicated that Toyota had no interest in meeting

with the Greene Family to put an end to their nightmare.

### E.      COUNT ONE: STRICT LIABILITY – TOYOTA DEFENDANTS

32.     Plaintiffs reallege and incorporate by reference the allegations set forth in all

preceding paragraphs as if set forth fully and reiterated here in their entirety.

33.     Defendants participated in the sale of the Toyota 4Runner to the Greene Family.

34.     Defendants are and have been at all times pertinent to this Complaint, engaged in

the business of designing, manufacturing, assembling, promoting, advertising, distributing and

selling Toyota vehicles in the United States including that owned by the Greene Family.

Defendants knew and anticipated that the vehicle owned by the Greene Family would be sold to

and operated by purchasers and/or eventual owners of Defendants' vehicles, including the

Greene Family.   Defendants also knew that these vehicles would reach the Greene Family

without substantial change in its condition from the time the vehicle rolled off the Defendants'

assembly lines.

35.     Defendants designed, manufactured, marketed, assembled, and/or tested the

Toyota 4Runner to be unreasonably dangerous and defective within the meaning of Section

402(A) Restatement (Second) Torts, in that the 4Runner was defective and unreasonably

dangerous as designed, manufactured, assembled, marketed, and/or tested because of the

following design, manufacturing and/or marketing defects, among others:

     a.     The seatbelts were defectively designed because they failed to keep
          members of the Greene Family properly restrained in the collision;

     b.     The structure of the vehicle was inherently unstable and defectively
          designed because it collapsed, ripped apart, crushed inordinately, and
          failed to properly protect the Greene Family in the accident;

     c.     The structure of the interior of vehicle, including occupant cells, was
          defectively designed because it caused the minor children to become

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 9**

trapped in the vehicle upon collision and failed to properly protect the Greene Family in the accident;

d.      The fuel and fire safety system for the vehicle was defectively designed because it failed to protect the Greene Family during the accident, caused the minor children to be burned alive, and caused severe burns to Wyndell Sr., and Lakeysha;

e.      The warnings and instructions for the vehicle were inadequate;

f.      Defendants failed to conduct proper engineering analysis, failure mode effects analysis, fault tree analysis, design, quality control analysis, root cause analysis, and emerging hazard analysis to evaluate the potential risks, hazard and danger of occupants becoming trapped in rear end crashes and resulting fuel fed fires;

g.      The Toyota Defendants failed to prevent or guard against its vehicles experiencing structural integrity issues in rear-end collisions by using safer alternative designs that should have used stronger, and better designed, materials to prevent the catastrophic consequences that occurred here. The designs could have been provided at little additional cost for the development and manufacture of the SUV;

h.      The Toyota Defendants failed to prevent or guard against its vehicles experiencing immediate and intense fires from rear-end collisions by using safer alternative designs that should have prevented the catastrophic consequences that occurred here. The designs could have been provided at little additional cost for the development and manufacture of the SUV;

i.      The Toyota Defendants failed to prevent or guard against its vehicles tossing occupants from latched seatbelts in rear-end collisions by using safer alternative designs that should have prevented the catastrophic consequences that occurred here. The designs could have been provided at little additional cost for the development and manufacture of the SUV; and

j.      The Toyota Defendants failed to prevent or guard against its vehicles trapping minor children in the rear occupant cells in rear-end collisions by using safer alternative designs that should have prevented the catastrophic consequences that occurred here. The designs could have been provided at little additional cost for the development and manufacture of the SUV.

36.    There were no mandatory safety standards or regulatory adopted and promulgated by the federal government or an agency of the federal government that were applicable to the SUV at the time of manufacture and that governed the product risk that caused this harm.

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 10**

Alternatively, the design of the SUV did not comply with the mandatory safety standards or regulations adopted by the federal government that were applicable to the SUV model at the time of the manufacture and that governed the risks that caused the deaths of the Greene Family. Additionally, in the alternative, in the event that such standards were in effect, and they were complied with, they were nevertheless inadequate to protect the public from unreasonable risks of injury or danger, or the manufacturer, before or after marketing SUV, withheld or misrepresented the information or material relevant to the federal government's or agencies' determination of the adequacy of the safety standards or regulations at issue.

37.     The defects in the Defendants' Toyota 4Runner could not have been anticipated by a reasonable person, and, therefore presented an unreasonably dangerous situation for expected users such as the Greene Family, even when used in a reasonable and foreseeable manner.

38.     Defendants should have reasonably foreseen that the dangerous conditions caused by the defective Toyota 4Runner would subject the Greene Family to harm resulting from the defects.  Defendants acted with conscious disregard for the safety of the Greene Family, knowing that their conduct created a high and unreasonable risk of serious harm to others and the jury should be permitted to return a verdict of aggravating circumstances damages that will serve to punish Defendants and deter others from like conduct.

39.     The Greene Family used the Defendants' vehicle for its intended purpose and in a reasonable and foreseeable manner.  Nevertheless, the Plaintiffs have suffered damages through no fault of their own but as a direct and proximate result of the Defendants' negligence.

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 11**

40.     As a proximate result of Defendants' actions and omissions, all four members of the Greene Family died and suffered severe injuries, damages and property loss, for which Plaintiffs are entitled to recover, in excess of the minimum jurisdictional limits of this Court.

### F.     COUNT TWO:  NEGLIGENCE – TOYOTA DEFENDANTS

41.     Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

42.     Defendants had a duty to the Greene Family to provide a safely designed and manufactured product.  Defendants also had a duty to warn the Greene Family of the true nature of the defective design of the Defendants' vehicles.   Defendants failed to fulfill this duty to the Greene Family.

43.     Defendants were grossly negligent in at least the following respects as it relates to the Toyota 4Runner and its component parts:

a.      Designing and distributing the Toyota 4Runner with a design standard that was intended barely to meet the minimum government regulations, if any, instead of safely designing the SUV to reasonably minimize injuries in foreseeable accidents;

b.      Failing to adequately monitor the performance of Toyota's vehicles in the field to ensure that they were reasonably minimizing injuries and deaths in foreseeable accidents;

c.      Failing to adequately test the Toyota 4Runner to ensure that it would be reasonably safe in foreseeable accidents;

d.      Failing to adequately test the seat belt restraint system to ensure that they would be reasonably safe in foreseeable accidents;

e.      Failing to design the seat belt system to properly and safely restrain occupants such as the Greene Family in foreseeable accidents;

f.      Failing to adequately test the side and roof structures to ensure that they would provide reasonable safety to occupants during foreseeable accidents;

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 12**

g.  Failing to design the fire safety system, seat belts, and structural integrity of the Toyota 4Runner in compliance with Federal Motor Vehicle Safety Standards;

h.  Failing to properly design the occupant compartment in the Toyota 4Runner so as to increase the ability of the 4Runner to sustain the crush process and/or maintain the passenger compartment integrity in foreseeable rear-end collisions;

i.  Failing to recall, retrofit, or issue post-sale warnings after Toyota knew, or should have known, that the Toyota 4Runner and its component parts were defective and unreasonably dangerous.

j.  Failing to monitor its quality control unit suppliers; and

k.  Failing to impose rigorous manufacturing quality control standards on its suppliers.

44.  As a proximate result of Defendants' negligence, all four members of the Greene Family died and suffered severe injuries, damages and property loss, for which Plaintiffs are entitled to recover, in excess of the minimum jurisdictional limits of this Court.

### G.    COUNT THREE: BREACH OF EXPRESS AND IMPLIED WARRANTIES – TOYOTA DEFENDANTS

45.  Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

46.  Defendants breached expressed warranties that the Toyota 4Runner was safe, reliable and that quality was of paramount importance.

47.  Defendants also breached the implied warranties of merchantability.  The warranty of merchantability is implied into every commercial transaction.  The warranty of merchantability requires that products be of reasonable workmanlike quality and free from defects.  Defendants' impliedly warranted to the Greene Family that Toyota's vehicles were of merchantable quality.  The Defendants breached the warranty of merchantability by designing,

<u>**PLAINTIFFS' SECOND AMENDED COMPLAINT**</u> **- Page 13**

manufacturing, distributing, selling and refusing to adequately repair or replace their vehicles after it became apparent they were defective.

48.     At all times, the Greene Family relied on the representations made by Defendants that their vehicles are reliable and of a quality that rendered them suitable for their intended use. The Greene Family also relied on the fact that Defendants would produce a vehicle of merchantable quality as required by the implied warranty of merchantability.

49.     Defendants have breached its warranties to the Greene Family in that the defective design of their vehicles renders them unusable for their intended purpose and Defendants refuse to properly repair or replace these vehicles.

50.     As a proximate result of Defendants' conduct, which caused the untimely death of the Greene Family, Plaintiffs are entitled to recover, in excess of the minimum jurisdictional limits of this Court.

## H.     COUNT FOUR:  MISPRESENTATION – TOYOTA DEFENDANTS

51.     Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

52.     In various commercials, internet postings, periodicals, press releases, etc., the Toyota Defendants have represented that the safety of their customers is paramount.  These representations were intended to, and did, cause consumers such as the Greene Family to rely on Toyota's statement and purchase Toyota vehicles.

53.     However, as discussed above, Toyota made misrepresentations of the quality, reliability and safety of its vehicles, including the Toyota 4Runner, all to the detriment of the Greene Family and Plaintiffs.

**PLAINTIFFS' SECOND AMENDED COMPLAINT** - Page 14

54.     As a proximate result of Defendants' misrepresentations, which ultimately caused the untimely death of the Greene Family, Plaintiffs are entitled to recover, in excess of the minimum jurisdictional limits of this Court.

## I.     COUNT FIVE: STRICT LIABILITY – VOLVO DEFENDANTS

55.     Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

56.     The Volvo Defendants participated in the sale of the Volvo Tractor to the end-user.

57.     The Volvo Defendants are and have been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling Volvo vehicles in the United States including the Tractor owned by the end-user.  The Volvo Defendants knew and anticipated that the vehicle owned by the end-user would be sold to and operated by purchasers and/or eventual owners of the Volvo Defendants' vehicles, including the end-user.  The Volvo Defendants also knew that these vehicles would reach the end-user without substantial change in its condition from the time the vehicle rolled off the Volvo Defendants' assembly lines.

58.     The Volvo Defendants designed, manufactured, marketed, assembled, and/or tested the Volvo Tractor to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the Volvo Tractor was defective and unreasonably dangerous as designed, manufactured, assembled, marketed, and/or tested because of the following design, manufacturing and/or marketing defects, among others:  absent or defective collision warning system; ineffective energy-absorption capabilities; and the Tractor was defectively designed because it was incompatible, in a crash, with other vehicles on the road, and failed to properly protect the Greene Family in the accident.

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 15**

### J.    COUNT SIX:  NEGLIGENCE – VOLVO DEFENDANTS

59.    Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

60.    The Volvo Defendants had a duty to the Greene Family to provide a safely designed and manufactured product.  The Volvo Defendants also had a duty to warn consumers of the true nature of the defective design of the Volvo Defendants' vehicles.   The Volvo Defendants were grossly negligent when they failed to fulfill this duty to the Greene Family, causing damages to Plaintiffs.

### K.    COUNT SEVEN:  MISPRESENTATION – VOLVO DEFENDANTS

61.    Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

62.    In various commercials, internet postings, periodicals, press releases, etc., the Volvo Defendants have represented that the safety of their customers is paramount.  These representations were intended to, and did, cause consumers to rely on Volvo's statement and purchase Volvo vehicles, as well as cause other consumers to drive on the highways alongside Volvo vehicles without hesitation.

63.    However, as discussed above, Volvo made misrepresentations of the quality, reliability and safety of its vehicles, including the Volvo Tractor, all to the detriment of the Greene Family and Plaintiffs.

64.    As a proximate result of the Volvo Defendants' misrepresentations, which ultimately caused the untimely death of members of the Greene Family, Plaintiffs are entitled to recover, in excess of the minimum jurisdictional limits of this Court.

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 16**

### L.     COUNT EIGHT: STRICT LIABILITY – STRICK DEFENDANT

65.     Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

66.     The Strick Defendant participated in the sale of the Strick Trailer to the end-user.

67.     The Strick Defendant is and has been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling trailers in the United States including the Strick Trailer owned by the end-user.  The Strick Defendant knew and anticipated that its trailers would be sold to and operated by purchasers and/or eventual end-users of Strick's trailers, including the end-user of the Strick Trailer involve in the incident in question.  The Strick Defendant also knew that these trailers would reach the end-user without substantial change in its condition from the time the trailer rolled off the Defendant's assembly lines.

68.     The Strick Defendant designed, manufactured, marketed, assembled, and/or tested the Strick Trailer to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the Strick Trailer was defective and unreasonably dangerous as designed, manufactured, assembled, marketed, and/or tested because of the following design, manufacturing and/or marketing defects, among others:  the trailer did not have strength and energy-absorbing features that optimized the prevention of the underride hazard for vehicles that might crash into the rear of the trailer; and the ICC rear bumper was grossly ineffective in its failure to prevent the intrusion into and crushing of compartments of the Toyota 4Runner.

### M.     COUNT NINE:  MISPRESENTATION – STRICK DEFENDANT

69.     Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

__PLAINTIFFS' SECOND AMENDED COMPLAINT__ - Page 17

APP000146
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

70.     In various internet postings, periodicals, press releases, etc., the Strick Defendant has represented that the safety of its customers is paramount.   These representations were intended to, and did, cause consumers to rely on Strick's statement and purchase Strick trailers, as well as cause other consumers to drive on the highways alongside Strick Trailers without hesitation.

71.     However, as discussed above, Strick made misrepresentations of the quality, reliability and safety of its trailers, including the trailer involved in the incident in question, all to the detriment of the Greene Family and Plaintiffs.

72.     As a proximate result of Strick's misrepresentations, which ultimately caused the untimely death of one or more of the Greene Family, Plaintiffs are entitled to recover, in excess of the minimum jurisdictional limits of this Court.

**N.      COUNT TEN:  NEGLIGENCE AS TO STRICK; NEGLIGENCE AND STRICT LIABILITY AS TO JOHN FAYARD AND DOLPHIN LINE INC.**

73.     Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

74.     Defendants had a duty to the Greene Family to provide a safely designed and manufactured product.  Defendants also had a duty to warn consumers of the true nature of the defective design of the Defendants' products.   Finally, Defendants had a duty to operate a safe trailer on the highways where the Strick Trailer was towed.  Defendants were grossly negligent when they failed to fulfill these duties to the Greene Family, causing death to the Greene Family and damages to Plaintiffs.

75.     Fayard's owner and Dolphin's owner have a long-time personal relationship and have been doing business together for over 30 years, often partnering together to co-broker the delivery of loads to individual or joint customers.  In fact, Dolphin admits that with its working

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 18**

arrangement with Fayard, it simply tells Fayard (and effectively the drivers) to pick up whatever load there is that needs to be delivered and Fayard complies.

76.     In the days prior to the accident, Daniel Sprinkle ("Sprinkle"), traveled to the location of a Dolphin/Fayard customer in Loxley, Alabama to pick up a load that was to be delivered to nine locations of Lowe's Home Improvement stores in Oklahoma City, OK and Dallas, TX.

77.     To assist in the delivery of the customer loads, Dolphin leased one of its Dolphin/Strick trailers to Fayard, as it had done on many previous occasions.

78.     At the time of the loading of the shipments, neither Fayard nor Dolphin inspected or tested the adequacy of the rear impact bumper guard when they decided jointly to tow the loaded Strick Trailer from Alabama throughout Oklahoma and Texas.  At the time Sprinkle picked up the trailer, Sprinkle, Fayard and Dolphin knew or should have known that the trailer had not passed the inspection that is required by 49 CFR §396.

79.     In picking up the Fayard/Dolphin shipment and equipment, as well as while he operated the tractor and trailer, Sprinkle was acting in the course and scope of his employment as an agent for Fayard and Dolphin, as he had done many times in the past.  In the course of his employment, Sprinkle was also towing the trailer that was manufactured by Strick, owned by Dolphin, and leased to Fayard.

80.     On the day of the collision, although he was eventually heading back to Gulfport, MS, Sprinkle was on his way to Marshall, TX, where he intended to check into a motel to rest for a minimum of ten hours, as he had been on the road since 11:30 a.m. that morning.

81.     Just prior to the collision, Sprinkle states that he "stopped" his tractor and trailer on Interstate 20 eastbound.  There was no construction in the immediate area, and others have

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 19**

testified that the other traffic was still moving.  Sprinkle's sudden stop caused a sudden impediment to traffic on the interstate.  Sprinkle told the investigating officers that he was not familiar with this area of Texas as he had not been in this area very often over the years.

82.    Shortly after Sprinkle slowed or stopped, a collision occurred whereby the Toyota 4 Runner ultimately came into contact with the Dolphin/Strick Trailer.

83.    After the Greene's Toyota 4Runner was impacted by the Volvo Truck, the 4Runner was left with no place to go except into the prematurely stopped trailer driven by the Fayard/Dolphin driver, Sprinkle.

84.    As a result of the contact between the Toyota 4Runner and the insufficient rear impact bumper guard, the rear impact bumper guard from the Dolphin-leased Strick Trailer became dislodged and came to rest in the middle of the Interstate.

85.    The Greene's 4Runner SUV continued to travel rapidly underneath the Dolphin-leased Strick Trailer, during which time Lakeysha Greene's body struck various portions of the Strick Trailer, leaving her blood and hair follicles on the Strick Trailer.

86.    The underride action of the Greene SUV, coupled with the inadequate design of the Toyota 4Runner, contributed to Lakeysha Greene's conscious mental anguish, pain and suffering, and eventual death.

87.    Upon information and belief, Fayard and Dolphin's driver, Sprinkle, failed to maintain an assured clear distance between his truck and other vehicles on the road; failed to keep a proper lookout; failed to stop the Fayard truck and trailer safely and/or slowing too suddenly; and failed to maintain a safe instrumentality on the roadways.  These actions contributed to the cause of the collision.

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 20**

APP000149
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

88.     Soon after the impact, Sprinkle saw that the Greene Family was trapped in the rapidly burning Toyota SUV.   In compliance with his companies' accident reporting policy, Sprinkle placed a call to Jerry Talton, Fayard's Operations Manager to discuss the details of the incident.

89.     While on the telephone at the scene of the collision, Sprinkle and Fayard's safety director, Talton, made the conscious decision not to collect all of the components of the Strick Trailer, which would have clearly established the inadequacy of the ICC bumper.

90.     While at the scene of the incident, an investigating trooper from the Texas Department of Public Safety noted several violations with the Fayard Tractor and the Dolphin/Strick Trailer.  The violations discovered included: (a) brakes not maintained in good working order; (b) audible air leak in relay vales in brakes; (c) damaged/discolored windshield; (d) no valid inspection certificate on tractor; (e) no valid inspection certificate on trailer; (f) flat tire on axle 5 right inside; (g) defective turn signal; (h) wheel/rim cracked/broken on axle 5 right inside; and (i) not rear end protection-bumpers.

91.     Shortly after the collision occurred, Sprinkle left the accident site and eventually drove the damaged Fayard Tractor, towing the Dolphin/Strick Trailer, violations and all, to Gulfport, MS to Fayard's place of business.  He towed the trailer, without a rear impact bumper guard, for over five hundred (500) miles, in clear violation of federal regulations.

92.     In addition, following the arrival of the Strick Trailer back at Fayard's place of business, neither Fayard nor Dolphin made any attempt to obtain the rear impact bumper guard components, clearly aware of the incriminatory nature of this evidence.

93.     Following the collision, after Fayard notified Dolphin of the damage to the trailer, Fayard coordinated the repair of the Dolphin/Strick Trailer, although it did not own it, in an

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 21**

APP000150
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

apparent effort to conceal and/or destroy key evidence. The repair of the trailer and the failure to preserve the dislodged rear impact bumper guard has prevented an inspection of these components.

94.     The trailer involved in the incident was purchased from Strick, a manufacturer that Dolphin knew or should have known manufactured trailers that did not comply with the mandatory safety standards or regulations adopted by the federal government that were applicable to the trailer model at the time of the manufacture and that governed the risks that caused the deaths of the Greene Family. In the alternative, in the event that such standards were in effect, and they were complied with, they were nevertheless inadequate to protect the public from unreasonable risks of injury or danger, or Strick, before or after marketing the trailer, withheld or misrepresented the information or material relevant to the federal government's or agencies' determination of the adequacy of the safety standards or regulations at issue. Dolphin and Fayard knew or should have known of Strick's omissions and standing in the industry for insufficient rear impact guards. Likewise, Dolphin and Fayard knew or should have known that the rear impact guards on the trailers they towed were inadequate to protect the public from unreasonable risks of injury or danger.

95.     Using original equipment parts purchased from Strick or one of Strick's dealers, Dolphin made various replacements and/or repairs to the Strick Trailer's rear impact bumper guard while the trailer was in Dolphin's possession. These repairs were either inconsistent with Strick's manufacturing guidelines or installation/maintenance instructions were not provided by Strick, and Dolphin did not contact Strick for installation and/or maintenance instructions.

**PLAINTIFFS' SECOND AMENDED COMPLAINT** - Page 22

APP000151
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

96.     Neither Fayard nor Dolphin provided an adequate rear impact guard for the Strick trailer and failed to provide or use proper installation or replacement instructions, which should have been obtained from Strick or New Life Transport Parts Center, Strick's "Partner in Parts."

97.     At the time prior to and including the collision, neither Fayard nor Dolphin had a safety prevention program to ensure compliance with Section 385 of the FMCSR Safety Provisions.  Such a policy would have prevented Sprinkle from operating the tractor and trailer (both of which lacked a proper inspection) on the highways.

98.     **Strict Products Liability**. It is known in the industry that the current standards tolerate underride guard designs that fail catastrophically when struck by passenger vehicles at speeds that frequently produce minimal intrusion and injury risk in regulatory and consumer information frontal crash test programs.  Crash tests that have been performed by watchdog groups show there is considerable practical potential to improve rear underride guards on truck trailers.

99.     As motor carriers, Fayard and Dolphin knew or should have known that these standards were inadequate.  Fayard and Dolphin also knew or should have known of the readily available state-of-the-art safe design principles and guidelines that would have effectively eliminated, or substantially reduced, the hazard associated with the use of the rear impact bumper guard on the Strick trailer.

100.    Using original equipment parts purchased from Strick or one of Strick's dealers, Dolphin, at its place of business, without instructions from Strick, installed and/or modified the rear impact bumper guard while the trailer was in Dolphin's possession.

101.    The rear of the trailer was defectively designed and/or maintained so as to render it unreasonably dangerous.  The faulty rear impact bumper guard was a substantial factor in

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 23**

APP000152
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

bringing about an injury during the collision, and without which the injury would not have occurred.

102.     As a lessor of the trailer towed by Sprinkle, Dolphin is strictly liable for installing and/or maintaining the inadequate and/or defective rear impact guard on the trailer, and placing the trailer into the stream of commerce.

103.     Dolphin and Fayard are also liable for failing to warn of the unreasonably dangerous nature of the rear impact guard, which industry experts have identified as presenting a threat of harm that would elude the common perception of the product.  Defendants also failed to provide instructions for the safe use of the trailer and its rear impact bumper guard.

104.     **General Negligence.**  Fayard and Dolphin were also negligent in at least the following particulars:

> (a.)     Fayard and Dolphin's failure to ensure that the rear impact bumper guard was installed "and maintained" in compliance with the requirements of 49 CFR §393.86. The regulations provide that "every motor carrier, and its officers, agents, drivers, representatives, and employees directly concerned with the installation and maintenance of equipment and accessories" must comply with the safety requirements and specifications outlined therein;

> (b.)     Fayard and Dolphin's failure to attach the rear impact bumper guard in accordance with the installation instructions or procedures provided by Strick, if any, pursuant to S5.5 of 49 CFR §571.223, Rear impact bumper guard;

> (c.)     Dolphin's failure to provide installation instructions or procedures for installation of the rear impact guard pursuant to S5.5 of 49 CFR §571.223;

> (d.)     Fayard and Dolphin's failure to ensure that the rear impact bumper guard complied with the strength requirements of S5.2.1 of 49 CFR §571.223 at each test location and the energy absorption requirements of S5.2.2;

> (e.)     Fayard and Dolphin's failure to ensure that the tractor and trailer had been properly and timely inspected as required by 49 CFR §396.17 and §396.21;

> (f.)     Violation of the general duty under 49 CFR §396.3, and Texas law, of a trucking company to maintain its vehicles and trailers in good working

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 24**

APP000153
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

order, to maintain repair records and inspection reports, and to make periodic inspections of each vehicle and trailer;

(g.)   Failure to properly inspect the Fayard Tractor and the Strick/Dolphin trailer before placing the two objects on the highway, as required by CFR §396.13, and Texas law;

(h.)   Negligently servicing, repairing, installing and/or maintaining the rear impact bumper guard on the trailer involved in the collision;

(i.)   Failure to properly maintain and service the Fayard Tractor and the Strick/Dolphin trailer;

(j.)   Failing to adequately train Sprinkle how to test for a weak rear impact bumper guard and failing to warn Sprinkle of the dangers of operating the trailer without ensuring the adequacy of the rear impact bumper guard;

(k.)   Failing to exercise reasonable care to discover the dangerous condition or character of the trailer's underride bumper guard before allowing the trailer to be used on the roadways;

(l.)   Failing to warn consumers of the unreasonably dangerous nature of the rear impact guard, which industry experts have identified as presenting a threat of harm that would elude the common perception of the product;

(m.)   Entrusting the Fayard Tractor and the Strick/Dolphin trailer to Daniel Sprinkle, an incompetent or reckless driver whose negligence on the day of the collision was one of the proximate causes of the collision; and

(n.)   Failing to exercise that degree of care that other drivers would have exercised in maintaining an assured clear distance between vehicles, keeping a proper lookout, stopping safely and/or operating a dangerous instrumentality on the roadways.

105.   Fayard and/or Dolphin's conduct and/or omissions identified above constitute a breach of their duties owed by statutory provision, common law and other authorities, the breach of which proximately caused damages.

106.   **Vicarious Liability.**   Both Fayard and Dolphin are vicariously liable for the negligent inspection and negligent operation of the tractor and trailer since this negligence occurred in the course of employment with Fayard and Dolphin as well as while the trailer was under lease from Dolphin to Fayard.   Sprinkle was acting (operating the tractor and trailer) within the general authority given to him by Fayard and Dolphin, in furtherance of their business and for the accomplishment of the object for which he was employed.

<u>**PLAINTIFFS' SECOND AMENDED COMPLAINT**</u> - Page 25

APP000154

Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

107.   **Spoliation.**   The collision involved the Fayard Tractor, the Dolphin Trailer, and the ICC rear bumper guard.   Accordingly, each of these items was material to the ensuing litigation, and should have been preserved.   By way of letter from Plaintiffs' counsel, Fayard's counsel was also put on notice of Fayard's duty to preserve evidence in this matter.   Despite knowing of the importance of preserving relevant evidence, Fayard and Dolphin, upon information and belief, conspired to conceal evidence, which has now been lost or intentionally misplaced.

108.   Even after Sprinkle spoke from the scene of the collision with his safety director, Defendants chose to leave the dislodged rear impact bumper guard in the roadway and never made attempts to retrieve or preserve it.   This was inconsistent with Fayard's company policy, which required that the property involved in the incident must be brought to the Fayard facility immediately to be retained.   Fayard also repaired the damaged trailer "before" Plaintiffs' counsel and experts had an opportunity to photograph and inspect the trailer.

109.   An inspection of the bumper guard and the unrepaired trailer would have revealed that the trailer and rear impact bumper guard were modified and/or improperly installed while in Dolphin's possession, and that Fayard knew or should have known of the inadequacy of the rear impact guard.   An inspection would also have revealed that Strick original equipment was used to install and/or modify the rear impact guard.

110.   Additionally, the actions of Dolphin' s agents (*i.e.*, Sprinkle and Fayard) were a contributing factor in the collision, its agents knew of the magnitude of the collision, and Dolphin admittedly was notified of the collision within a week of the deaths, all of which occurred before the destruction of evidence.   Dolphin also ignored its federal requirements to

**PLAINTIFFS' SECOND AMENDED COMPLAINT** - Page 26

maintain records regarding its inspection and repairs of the instrumentalities that contributed to the deaths of one or more of the decedents.

111.   These facts establish that (a) there was a duty to preserve evidence, (b) Dolphin and Fayard negligently or intentionally (collectively) spoliated the rear impact guard and related repair/replacement records, and (c) this spoliation prejudiced Plaintiffs' ability to present their case.

112.   **Exemplary Damages.**   Additionally, punitive damages are warranted against both Fayard and Dolphin for blatantly ignoring safety provisions of the FMSCR, as well as ignoring industry research establishing the inadequacy of the Strick rear impact guard, the result of which led to this tragic collision.  Fayard and Dolphin should not have allowed the defective or inadequate trailer to have been placed on the highway.  This and other conduct constitutes gross negligence, for which exemplary or punitive damages should be awarded.

### O.   COUNT ELEVEN:  WRONGFUL DEATH – ALL DEFENDANTS

113.   Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

114.   Plaintiffs bring this wrongful death claim against Defendants pursuant to Texas Civil Practice & Remedies Code sections 71.001-71.012.

115.   Plaintiff Ollie Greene is a statutory beneficiary of Wyndell Greene, Sr. and relied on Wyndell Greene, Sr. for love, affection, comfort, financial assistance, protection, affection and care.

116.   Plaintiff William Greene is the administrator of the Estate of Wyndell Greene, Sr.

117.   Plaintiff Hardeman is a statutory beneficiary of LaKeysha Greene and relied on LaKeysha Greene for love, affection, comfort, financial assistance, protection, affection and care.

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 27**

118.    Defendants' wrongful acts caused the deaths of Wyndell, Sr., LaKeysha, Wyndell II and Wesleigh.

119.    Wyndell, Sr., LaKeysha, Wyndell II and Wesleigh would have been entitled to bring an action for their injuries had they lived.

120.    As a proximate result of Defendants' conduct, which caused the untimely death of the Greene Family, Plaintiffs are entitled to recover, in excess of the minimum jurisdictional limits of this Court.

### P.    COUNT TWELVE:  SURVIVAL ACTION – ALL DEFENDANTS

121.    Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

122.    Plaintiffs bring this survival action claim against Defendants pursuant to Texas Civil Practice & Remedies Code sections 71.021-71.022.

123.    Plaintiff William Greene is the legal representative of the estate of Wyndell Greene Sr.  Prior to his death, Wyndell Greene, Sr. had a survival action for himself and his family.  William Greene is appearing in the survival action as the legal representative of the estate of Wyndell Greene, Sr.

124.    Defendants' wrongful acts caused the deaths of the Greene Family.

125.    As a proximate result of Defendants' conduct, which caused the untimely deaths of the Greene Family, Plaintiffs are entitled to recover, in excess of the minimum jurisdictional limits of this Court.

### Q.    DAMAGES– ALL DEFENDANTS

126.    Defendants' acts were a proximate cause of the following injuries suffered by Plaintiffs and decedents:

    a.    Actual damages;

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 28**

b.      Loss of affection, consortium, comfort, financial assistance, protection, affection and care;

c.      Physical impairment, pain and suffering;

d.      Mental anguish and emotional distress;

e.      Loss of quality of life;

f.      Funeral and burial expenses, for which Plaintiffs have been responsible for, will pay, or have paid;

g.      Medical expenses;

h.      Loss of service;

i.      Loss of earnings and contributions to Plaintiffs;

j.      Exemplary and punitive damages;

k.      Prejudgment interest; and

l.      Post judgment interest.

127.    Plaintiffs seek unliquidated damages in an amount that is within the jurisdictional limits of the court.

## R.      EXEMPLARY DAMAGES– ALL DEFENDANTS

128.    Plaintiffs seek exemplary damages for injuries caused by Defendants' gross negligence under Texas Civil Practice & Remedies Code section 41.003(a)(3), as defined by Section 41.001(11).  Plaintiffs also seek exemplary damages for the wrongful deaths of the decedents caused by Defendants' willful act or omission or gross neglect, as provided in Texas Constitution, article 16, section 26, and Texas Civil Practice & Remedies Code section 71.009.

## S.      CONDITIONS PRECEDENT

129.    Defendants have actual notice of the injuries complained of herein.    Any conditions precedent have occurred, been performed, or have been waived.

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 29**

**T.**    <u>**DEMAND FOR JURY**</u>

130.    Plaintiffs have already made a demand for a jury trial.

**U.**    <u>**PRAYER**</u>

Wherefore, Premises Considered, Plaintiffs pray that Defendants be cited to appear and answer herein and, upon final trial hereof, that Plaintiffs have and recover from Defendants their actual damages, exemplary damages, pre and post-judgment interest, costs of court, attorney's fees, and such other and further relief, both general and special, at law and in equity, to which they may be justly entitled.


Respectfully Submitted,


/s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN
State Bar No. 16049750
KRISTIN KAY SCHROEDER
State Bar No. 24037452

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com
kristin@thepittmanlawfirm.com

/s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com


<u>**PLAINTIFFS' SECOND AMENDED COMPLAINT**</u> - **Page 30**

### CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2012 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

   /s/ Aubrey "Nick" Pittman   
AUBREY "NICK" PITTMAN

**PLAINTIFFS' SECOND AMENDED COMPLAINT - Page 31**

# In The Matter Of:

*OLLIE GREENE*

*v.*

*TOYOTA MOTOR CORPORATION*

---

## *GREENE, WILLIAM KAVELL - Vol. 1*
### *March 27, 2012*

---



**MERRILL CORPORATION**

LegaLink, Inc.

20750 Ventura Boulevard
Suite 205
Woodland Hills, CA 91364
Phone: 818.593.2300
Fax: 818.593.2301

EXHIBIT 2

WILLIAM KAVELL GREENE - 3/27/2012

Page 15

1    Q.   How many times before the accident?

2    A.   Oh, quite a few.

3    Q.   Okay.

4    A.   I can't give you the specific number.  But on

5    regular basis, maybe twice, three times a year, I would

6    perhaps fly down to visit Wyndell, Lakeysha and the kids.

7    Q.   How long had they been in that house?

8    A.   Approximately seven years.

9    Q.   You've probably heard me ask questions of

10   Ms. Hardeman about the cars that were in that household,

11   and she was there for some period of time before the

12   accident.  She mentioned an '07 Forerunner that I think

13   Wyndell drove -- no, that Lakeysha had before --

14   A.   Lakeysha had.

15   Q.   Do you recall that vehicle?

16   A.   Yes, I do.

17   Q.   Do you remember when they bought it?

18   A.   No, I do not.

19   Q.   Did Wyndell ever call you as either for some

20   big-brother advice or a guy who was sort of in the car

21   business, did he ever call you for advice about, hey, I'm

22   thinking about buying this vehicle, what do you think?

23   A.   Yes.

24   Q.   And what -- when did those conversations take

25   place?

APP000162
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

WILLIAM KAVELL GREENE - 3/27/2012

Page 16

1       A.    When Wyndell owned a Yukon, a General Motors

2   product, and he said, Man, I think I am going to get a

3   Toyota Camry.  I think it was a hybrid.  What do you

4   think?  I said it's kind of cool.  At that time the

5   technology was cool.  And he also says, Yeah, I mean

6   pretty safe product from I understand.  I said, I don't

7   know.  He says, I think I might get it.  I said,

8   Fantastic, go for it.  And then he contacted me again when

9   he wanted to get rid of the Toyota Camry to ask my

10  opinion.  He said I'd like to get another product, a

11  bigger product.  And I said, What are you thinking?  He

12  said I'm thinking we liked the Toyota Forerunner that

13  Keysha had.  I think that I'm going to get that.  So it

14  was more of a seeking advice but telling as well or

15  informing.

16      Q.    Did it sound like he had pretty much made his

17  mind up before he called you?

18      A.    I think so.

19      Q.    Did Wyndell ever have any problems with the Camry

20  that you know of?

21      A.    Not that I know of.

22      Q.    Do you know if it had ever been in any sort of

23  automobile accident, the Camry?

24      A.    Not that I know of.

25      Q.    What about the 2007 Forerunner, the older

APP000163
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

REPORTER'S CERTIFICATE

1

2

3      This certificate is valid only for a transcript

4  accompanied by my original signature and original seal on

5  this page.

6      I, Leita J. Seaborn, Certified Court Reporter in and

7  for the State of Louisiana, as the officer before whom

8  this testimony was taken, do hereby certify that William

9  Kavell Greene, after having been duly sworn by me upon

10  authority of R.S. 37:2554, did testify as hereinbefore set

11  forth in the preceding 63 pages; that this testimony was

12  reported by me in the stenotype reporting method, was

13  prepared and transcribed by me or under my personal

14  direction and supervision, and is a true and correct

15  transcript to the best of my ability and understanding;

16  that I am not related to counsel or to the parties herein,

17  nor am I otherwise interested in the outcome of this

18  matter.

19      SUBSCRIBED AND SWORN TO on this the 13th day of

20  April, 2012.

21

22

23

24  _____ RPR

25      #2010003

OFFICIAL SEAL
LEITA J SEABORN
Certified Court Reporter
and for the State of Louisiana
Certificate Number 2010003
Certificate expires 12-31-12

APP000164
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

# In The Matter Of:

*OLLIE GREENE*
*v.*
*TOYOTA MOTOR CORPORATION*

---

*GREENE, OLLIE RUTH H. - Vol. 1*
*March 27, 2012*

---

**MERRILL CORPORATION**
LegaLink, Inc.

20750 Ventura Boulevard
Suite 205
Woodland Hills, CA 91364
Phone: 818.593.2300
Fax: 818.593.2301

EXHIBIT 3

OLLIE RUTH H. GREENE - 3/27/2012

Page 23

1    five years?

2        A.    The one who did my thyroid surgery, but it was

3    only for the surgery and right after and then returned to

4    my family doctor.

5        Q.    What hospital was that surgery performed at?

6        A.    Opelousas General.

7        Q.    And when was that surgery?

8        A.    When went was my thyroid -- When was it?

9        Q.    Yes, ma'am.

10       A.    About eight years ago.

11       Q.    Did Wyndell ever have any significant health

12   problems when he was growing up or when he was an adult to

13   your knowledge?

14       A.    No.

15       Q.    Do you know if he was on any medications in 2010

16   before the accident?

17       A.    No.

18       Q.    Now the vehicle that Wyndell and his family were

19   in at the time of the accident was a 2010 Forerunner, did

20   you ever see that vehicle before the accident?

21       A.    No.

22       Q.    Did he ever discuss with you his decision to buy

23   that vehicle?

24       A.    They needed a larger vehicle because they planned

25   to add to their family.

APP000166
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

OLLIE RUTH H. GREENE - 3/27/2012

Page 24

1      Q.    Did he tell you anything else about why he

2    decided to buy the 2010 Forerunner?

3      A.    No.

4      Q.    Were you aware that they had a -- apparently, an

5    earlier version, a 2006 or 2007 Forerunner?

6      A.    Yes.

7      Q.    Did you ever ride in that vehicle?

8      A.    A few times.

9      Q.    A few times?

10     A.    Yes, yeah.

11     Q.    Did Wyndell ever tell you about any problems or

12   concerns he had about the older Forerunner?

13     A.    No.

14     Q.    Did Wyndell ever tell you about any problems or

15   concerns he had about the new Forerunner, the 2010?

16     A.    No.

17     Q.    So you don't have any idea of other than they

18   needed a bigger vehicle why he picked out a 2010

19   Forerunner?

20     A.    To my knowledge that's all.

21     Q.    You were here for Ms. Hardeman's deposition?

22     A.    Yes.

23     Q.    And other than just being in-laws, do you have a

24   close relationship with Ms. Hardeman?

25     A.    Yes.

Merrill  Corporation  -  Los Angeles

APP000167
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

OLLIE RUTH H. GREENE - 3/27/2012

Page 62

```
1                    REPORTER'S CERTIFICATE

2

3        This certificate is valid only for a transcript

4    accompanied by my original signature and original seal on

5    this page.

6        I, Leita J. Seaborn, Certified Court Reporter in and

7    for the State of Louisiana, as the officer before whom

8    this testimony was taken, do hereby certify that Ollie

9    Ruth H. Greene, after having been duly sworn by me upon

10   authority of R.S. 37:2554, did testify as hereinbefore set

11   forth in the preceding 60 pages; that this testimony was

12   reported by me in the stenotype reporting method, was

13   prepared and transcribed by me or under my personal

14   direction and supervision, and is a true and correct

15   transcript to the best of my ability and understanding;

16   that I am not related to counsel or to the parties herein,

17   nor am I otherwise interested in the outcome of this

18   matter.

19       SUBSCRIBED AND SWORN TO on this the 13th day of

20   April, 2012.

21

22

23                                                   OFFICIAL SEAL
                                                     LEITA J. SEABORN
                                                  Certified Court Reporter
24                                              in and for the State of Louisiana      RPR
                                                   Certificate Number 2010003
                                                    Certificate expires 12-31-12
25                   #2010003
```

APP000168
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

# In The Matter Of:

*OLLIE GREENE*
*v.*
*TOYOTA MOTOR CORPORATION*

---

*Hardeman, Marilyn Marie - Vol. 1*
*March 27, 2012*

---

**MERRILL CORPORATION**

LegaLink, Inc.

20750 Ventura Boulevard
Suite 205
Woodland Hills, CA 91364
Phone: 818.593.2300
Fax: 818.593.2301

EXHIBIT 4

APP000169
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

Marilyn Marie Hardeman - 3/27/2012

Page 35

1     A.   Her.

2     Q.   Do you know where she bought it?

3     A.   She bought it in Frisco or Dallas one.

4     Q.   And you were living with them when she bought the

5   2007 Forerunner?

6     A.   Yes.

7     Q.   Did she like the 2007 Forerunner?

8     A.   She felt comfortable with it?

9     Q.   Did she ever tell you that she had any problems

10  with or concerns about the 2007 Forerunner?

11    A.   We didn't talk about that.

12    Q.   Was she the primary driver of the 2007

13  Forerunner?

14    A.   Yes.

15    Q.   Were you -- You were living there with Wyndell

16  and Lakeysha when the 2010 Forerunner was purchased?

17    A.   The gray one?

18    Q.   Yes, ma'am.

19    A.   Yes.

20    Q.   And was that Wyndell's vehicle?

21    A.   Yes.

22    Q.   What did he drive before that?

23    A.   A gray Toyota Camry.

24    Q.   Do you know what year?

25    A.   Probably '07 or 8.

APP000170
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

Marilyn Marie Hardeman - 3/27/2012

Page 36

1      Q.    Did Lakeysha or Wyndell ever tell you that he had

2  any problems or concerns with the Camry?

3      A.    Don't recall.

4      Q.    What kind of car did Lakeysha drive before she

5  got the '07 Forerunner?

6      A.    A Honda Civic.

7      Q.    Did she buy that for herself?

8      A.    Yes.

9      Q.    Do you remember what year?

10     A.    She was in college, so it probably was '96 or

11  '97.

12     Q.    Who was it who decided to buy the 2010

13  Forerunner?

14     A.    Which one?

15     Q.    The 2010.

16     A.    Well, it was a gray one.  Wyndell had a gray one.

17     Q.    The one that was involved in the crash.

18     A.    Okay.  Oh, I don't know.  It was Wyndell's car.

19     Q.    That was the car he primarily drove to work?

20     A.    Yes.

21     Q.    And did it replace the Camry?

22     A.    Yes.

23     Q.    So in May of 2010, the three vehicles that were

24  in that household were your Honda Accord --

25     A.    My car wasn't there.

Merrill  Corporation  -  Los Angeles

APP000171
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

Marilyn Marie Hardeman - 3/27/2012

Page 37

```
 1      Q.   It was up in Arkansas?

 2      A.   Yes.

 3      Q.   So the two -- There were just two cars in the

 4   household there in May 2010; the Enclave and the new

 5   Forerunner -- 2010 Forerunner?

 6      A.   Yes.

 7      Q.   Were there any other cars that they owned?

 8      A.   No.

 9      Q.   Were you -- Did you overhear any discussions

10   about the decision to buy the 2010 Forerunner?

11      A.   No.

12      Q.   Do you know why Wyndell or Wyndell and Lakeysha

13   decided to buy the 2010?

14      A.   No.

15      Q.   Do you know what dealership the 2010 Forerunner

16   was purchased from?

17      A.   No.

18      Q.   Were you present at -- during any of the times

19   he, or he and she, went to the dealership to buy the 2010

20   Forerunner?

21      A.   Repeat your question before that.

22      Q.   Did you go to the dealership with Wyndell or

23   Wyndell and Lakeysha?

24      A.   No.

25      Q.   Do you know why Lakeysha decided to buy the
```

Merrill   Corporation   -   Los Angeles

800-826-0277                                   www.merrillcorp.com/law

APP000172
Appendix to Joint Submission Re: TMS' Motion to Quash William Green Depo

# The Pittman Law Firm, P.C.
## Attorneys & Counselors
### 100 CRESCENT COURT, SUITE 700
### Dallas, TX  75201
### (214) 459-3454
### (214) 853-5912 (fax)

---

## FACSIMILE TRANSMITTAL COVER SHEET

| TO: | FACSIMILE: |
|---|---|
| **David Stone/Kurt Kern** | 972-616-1701 |
| COMPANY: | TELEPHONE: |
| Bowman and Brooke, LLP | 972-616-1700 |

| TO: | FACSIMILE: |
|---|---|
| **Pat Fitzgerald/Randy Howry** | 512-474-8557 |
| COMPANY: | TELEPHONE: |
| Howry Breen & Herman, LLP | 512-474-7300 |

| TO: | FACSIMILE: |
|---|---|
| **John Kenefick** | 214-747-0942 |
| COMPANY: | TELEPHONE: |
| Macdonald Devin, P.C. | 214-744-3300 |

| | FACSIMILE: |
|---|---|
| **Todd Parks/Ashley de la Cerda** | 214-760-1670 |
| COMPANY: | TELEPHONE: |
| Walters, Balido & Crain, LLP | 214-749-4805 |

| TO: | FACSIMILE: |
|---|---|
| **Michael Sharp/Scott Self** | 972-934-9200 |
| COMPANY: | TELEPHONE: |
| Fee, Smith, Sharp & Vitullo, LLP | 972-934-9100 |

| FROM: | SENDER'S FACSIMILE NUMBER: |
|---|---|
| Aubrey "Nick" Pittman | 214-853-5912 |
| COMPANY: | DATE/TIME: |
| The Pittman Law Firm, P.C. | February 20, 2012 |
| TELEPHONE NUMBER: | CLIENT/MATTER NUMBER: |
| (214) 459-3454 | 00179/0002 |
| TOTAL NUMBER OF PAGES, INCLUDING COVER: | CC: |
| 55 | |

☑ URGENT     ☐ FOR REVIEW     ☐ PLEASE COMMENT     ☐ PLEASE REPLY     ☐ PLEASE RECYCLE

NOTES/COMMENTS:

---

*Confidentiality Notice: This transmission is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this transmission is not the intended recipient or the employee or agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by telephone and we will arrange for the return of this transmission to us at the above address by mail.*

# The Pittman Law Firm, P.C.

## ATTORNEYS AT LAW

AUBREY "NICK" PITTMAN
DIRECT DIAL (214) 459-3325

February 20, 2012

**VIA FACSIMILE**

David Stone
**BOWMAN AND BROOKE, LLP**
2711 North Haskell Avenue, Suite 650
Dallas, Texas 75204

Pat Fitzgerald
**HOWRY BREEN & HERMAN, L.L.P.**
1900 Pearl Street
Austin, Texas 78705-5408

S. Todd Parks
**WALTERS, BALIDO & CRAIN, L.L.P.**
900 Jackson Street, Suite 600
Dallas, Texas 75202

John S. Kenefick
**MACDONALD DEVIN, P.C.**
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270

Scott W. Self
**FEE, SMITH, SHARP & VITULLO, LLP**
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 752440

RE:   *Ollie Greene, et al v. Toyota Motor Corporation et al*; Cause No. 3:11-cv-00207-N in the United States District Court for the Northern District of Texas, Dallas Division.

Dear Counsel:

After careful review of the available dates provided by you for depositions in this matter, Plaintiffs have scheduled oral depositions as follows:

March 5 – Strick Trailers, LLC (notice *duces tecum*)
March 7 – Dolphin Line, Inc. (notice *duces tecum*)
March 7 - Daniel Sprinkle
March 15 – Toyota Motor Corporation
March 20 – Volvo Group North America, LLC
March 30 - John Fayard Moving & Warehouse, LLC
April 2 – Toyota Motor Engineering and Manufacturing
April 3 – Toyota Motor Sales, USA

Attached you will find formal deposition notices for all but the last three scheduled depositions, which you shall receive in the near future.

**The Pittman Law Firm, P.C.**
100 Crescent Court, Suite 700 ● Dallas, Texas 75201 ● 214-459-3454 tel ● 214-853-5912 fax
Dallas ● Houston ● www.thepittmanlawfirm.com

APP 000174

**Letter to all counsel**
**February 20, 2012**
**Page 2**

Your cooperation in maintaining this schedule is appreciated.

Sincerely,

Aubrey "Nick" Pittman

Attachments

**The Pittman Law Firm, P.C.**
100 Crescent Court, Suite 700 ● Dallas, Texas 75201 ● 214-459-3454 tel  ● 214-853-5912 fax
Dallas ● Houston ● www.thepittmanlawfirm.com

APP 000175

# Bowman and Brooke LLP

### Attorneys at Law

2501 North Harwood Street, Suite 1700
Dallas, TX 75201
Main: 972.616.1700
Fax: 972.616.1701
www.bowmanandbrooke.com

David P. Stone
Direct: 972.616.1733
Email: david.stone@bowmanandbrooke.com

July 29, 2013

**VIA EMAIL AND CMRRR**
Mr. Aubrey "Nick" Pittman
The Pittman Law Firm, P.C.
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112

Mr. Daryl K. Washington
Law Offices of Daryl K. Washington, P.C.
325 N. St. Paul, Suite 1975
Dallas, Texas 75201

      Re:    Cause No. 3-1-CV-0207-N; *Ollie Greene, et al v. Toyota Motor Corporation, et al*

Dear Counsel:

    Enclosed please find the following:

1.    Defendant Toyota Motor Sales, U.S.A., Inc.'s Response to Plaintiffs' Second Requests for Documents;

2.    Defendant Toyota Motor Engineering & Manufacturing North America, Inc.'s Response to Plaintiffs' Second Requests for Documents;

3.    Defendant Toyota Motor Sales, U.S.A., Inc.'s Response to Plaintiff Marilyn Hardeman's Interrogatories; and

4.    Defendant Toyota Motor Engineering & Manufacturing North America, Inc.'s Response to Plaintiff Marilyn Hardeman's Interrogatories.

    Also enclosed is a flash drive containing documents being produced with TMS and TEMA's Response to Requests for Documents.

    Should you have any questions, please do not hesitate to contact me.

Sincerely,

David P. Stone

DPS/jsr
Enclosures

MINNEAPOLIS      PHOENIX      DETROIT      SAN JOSE

LOS ANGELES      RICHMOND      COLUMBIA      **DALLAS**  AUSTIN

APP 000176

Counsel
July 29, 2013
Page 2


Cc:    Pat Fitzgerald (via email and CMRRR)
       S. Todd Parks (via email and CMRRR)
       Michael P. Sharp (via email and CMRRR)
       Donald H. Dawson, Jr. (via email and CMRRR)
       John S. Kenefick (via email and CMRRR)

# The Pittman Law Firm, P.C.

## ATTORNEYS AT LAW

AUBREY "NICK" PITTMAN
DIRECT DIAL (214) 459-3325

March 20, 2013

**VIA FACSIMILE AND EMAIL**
Pat Fitzgerald.
Randy Howry
John Carlson
**Howry Breen & Herman, L.L.P.**
1900 Pearl Street
Austin, Texas 78705-5408

> RE:   ***Ollie Greene, et al v. Toyota Motor Corporation et al***; **Cause No. 3:11-cv-00207-N in the United States District Court for the Northern District of Texas, Dallas Division.**

Dear Counsel:

Please find attached a copy of the Notice of Intent to take the Deposition of the Corporate Representative(s) for Volvo Group North America ("VGNA"). Pursuant to your email, Mr. Fitzgerald, Plaintiffs are prepared to work with VGNA on the date and location of the deposition depending on mutual availability. However, the notice provides you with the matters on which each person designated is requested to testify. This way, you can ensure the availability of the appropriate representatives.

Sincerely,

Aubrey "Nick" Pittman

cc:   All counsel

**The Pittman Law Firm, P.C.**
100 Crescent Court, Suite 700 ● Dallas, Texas 75201 ● 214-459-3454 tel ● 214-853-5912 fax
Dallas ● Houston ● www.thepittmanlawfirm.com
APP 000178

**The Pittman Law Firm, P.C.**

### ATTORNEYS AT LAW

AUBREY "NICK" PITTMAN
DIRECT DIAL (214) 459-3325

April 1, 2013

**VIA FACSIMILE AND EMAIL**
Pat Fitzgerald.
Randy Howry
John Carlson
**Howry Breen & Herman, L.L.P.**
1900 Pearl Street
Austin, Texas 78705-5408

> **RE:** ***Ollie Greene, et al v. Toyota Motor Corporation et al***; Cause No. **3:11-cv-00207-N** in the United States District Court for the Northern District of Texas, Dallas Division.

Dear Counsel:

Please find attached a copy of the Amended Notice of Intent to take the Deposition of the Corporate Representative(s) for Volvo Group North America ("VGNA"). This Notice reflects the location and dates you submitted in response to Plaintiffs' initial Notice.

Sincerely,

Aubrey "Nick" Pittman

cc:   All counsel

**The Pittman Law Firm, P.C.**
100 Crescent Court, Suite 700 ● Dallas, Texas 75201 ● 214-459-3454 tel ● 214-853-5912 fax
Dallas ● Houston ● www.thepittmanlawfirm.com
APP 000179

**The Pittman Law Firm, P.C.**

### ATTORNEYS AT LAW

AUBREY "NICK" PITTMAN
DIRECT DIAL (214) 459-3325

August 27, 2013

**VIA EMAIL AND FAX**
Kurt Kern
**BOWMAN AND BROOKE, LLP**
2501 North Harwood St., Suite 1700
Dallas, TX 75201

RE:   *Ollie Greene, et al v. Toyota Motor Corporation et al*; **Cause No. 3:11-cv-00207-N in the USDC for the Northern District of Texas, Dallas Division.**

Dear Mr. Kern:

In response to your August 26, 2013, letter, it does not correctly reflect the conversation you and I had regarding the notice for the deposition of Toyota Motor Sales, U.S.A., Inc. ("TMS"). First, as you may recall, I indicated that we noticed the TMS deposition for Dallas as an attempt to reduce the costs to the other Defendants by avoiding having six or more counsel having to fly to California. Instead we figured TMS would accommodate the parties by having a TMS representative come to Dallas. However, after you indicated that you were not concerned about travel costs incurred by the other Defendants, I stated that Plaintiffs could switch the location of the deposition without this being an issue.

Second, I stated that we would "consider" changing the date if you provided a "convenient" date within two days before or after September 9, 2013. We have not received any alternate dates. Accordingly, the date remains as noticed and the notice is not being withdrawn. Regarding the "unilateral" notice, we note that Toyota has unilaterally noticed several depositions, including ones this week and next. Third, I made it clear that all of the designated topics are appropriate, relevant and reasonably calculated to lead to the discovery of admissible evidence. Therefore, pursuant to Rule 30(b)(6), TMS is required to designate persons having knowledge of each of the matters and to prepare those persons in order that they can answer fully, completely, and unevasively, on the questions posed on the designated subject matters.

We look forward to seeing the TMS representative(s) on September 9, 2013.

Sincerely,

Aubrey "Nick" Pittman

cc:   All Counsel

**The Pittman Law Firm, P.C.**
100 Crescent Court, Suite 700 • Dallas, Texas 75201 • 214-459-3454 tel • 214-853-5912 fax
Dallas • Houston • www.thepittmanlawfirm.com

1          THE COURT:  So, Defendants don't want to give

2    Plaintiffs any documents, and Plaintiffs want every piece of

3    paper that the Defendants have that might tangentially relate

4    to any of the vehicles.  Neither one of those is going to be

5    viable.  Right.

6        I don't understand why you guys continue to have these

7    problems.  The Plaintiffs' requests appear to mutate some as

8    the Defendants provide additional information, and we end up

9    with something like, in the current motion, you are wanting

10   all of the underlying models.  I can understand why you would

11   want those, but I don't think that was within the scope of the

12   request that we previously talked about.  And I don't know why

13   you just didn't simply submit a document question saying,

14   "Give me all the models for these vehicles."  They are

15   complaining that stuff was in a letter and it was an informal

16   request and they don't have to respond to it, and you are

17   saying, "Well, yes, they do."  Why didn't you just send them

18   something that looks like a normal document request instead of

19   a letter so that that issue is off the table?  Why am I trying

20   having to screw around with stuff like this?  I don't

21   understand.

22       And I get some sense from the Defendants that they are

23   interpreting the prior order on July 18 as defining the full

24   permissible scope of discovery in the case, period, and I

25   don't think it was intended to do that.  I think it was

```
 1    intended to mediate the issues that were raised in the prior

 2    motion to compel.  And there are some issues, for example, the

 3    interrogatories about other complaints of crashworthiness

 4    that, as far as I could tell from the response, were simply

 5    ignored on the basis that they were outside the scope of the

 6    prior order, and I don't think it necessarily addressed -- I

 7    don't know that it necessarily addressed the prior requests in

 8    a way that permits you to say, "This doesn't have anything to

 9    do with overrides or fuel systems as defined in the July 18

10    order, and, therefore, we don't have to give you any other

11    information about other complaints on crashworthiness," which

12    I -- And I may have misunderstood it, but that's the way I

13    assimilated the Defendants' response to those particular

14    requests in the July 23rd I believe letter.  So I am a little

15    bit at a loss.

16        Usually when I have discovery disputes, the party seeking

17    discovery says, "Here is my request that asks for these

18    relatively well-defined documents.  Here is their response

19    that either says A, 'We object to producing them,'" and I know

20    how to traverse the objection, "or B, 'We don't have any such

21    documents, yet here is such evidence that such documents do in

22    fact exist and have not been produced.'"  I don't have that

23    issue with you all, and I find it a little frustrating because

24    I don't know how to rule on something that isn't presented in

25    that form.
```

```
 1          "We would like documents."

 2          "We don't want to give them documents."

 3       I don't know how to rule on a dispute like that.

 4          "Okay.  Give them some documents."  That would be the

 5    knee-jerk reaction.  "Give them half of the documents that

 6    they want that you don't want to give them."  That would be a

 7    good discovery dispute, wouldn't it--split the baby?  But I

 8    don't know how to do it in this particular context, so I am a

 9    little distressed and concerned.

10       Turning to specifics that are raised in the motion, once

11    we get past all the chronology of how "everybody has been mean

12    to me and how the other side is being very unreasonable in

13    both of them," which I find extraordinarily unhelpful, looking

14    at page 5 on the motion, A, the input files and computer

15    simulation information, I don't think that that was requested

16    before.  What I understood to be requested before were test

17    results, not the underlying models, not the input to the

18    tests, but the results of tests dealing with, I think as we

19    ended up, rear-end collisions overrides, certain limited

20    things.  I don't know that I disagree that the models might be

21    producible, but I don't know that the Plaintiff has asked for

22    the models before.

23       So help me with that first.

24          MR. PITTMAN:  Yes, Your Honor.  They were requested

25    over a year ago.  Specifically, every item that is being
```

1     requested now was requested, and then some.

2              THE COURT:  Okay.  Point me to the request that

3     says, "Give me the underlying finite element models."

4              MR. PITTMAN:  And that was -- In the original

5     motion, we referenced the original production.  That is where

6     they gave us a 346-page objection to it.

7              THE COURT:  Okay.  Point me to the request that

8     says, "Give me the underlying finite element models."

9              MR. PITTMAN:  If you look at it, it is document in

10    the record 64-2.  If you look at -- I will just go through a

11    few of them.  There are probably 15 of them.

12       "Request for Production No. 4:  All crashworthiness

13    finite element models for the subject platform vehicle that

14    would be used with finite element model programs LS-DYNA,

15    RADIOSS, or PAMCRASH," which are structural FE models for

16    that.  So that is Request for Production No. 4.  They objected

17    to it with four pages of objections.

18       The next one?

19              THE COURT:  Okay.  That is a good one.  Let's start

20    with that one.  Why should the Defendants not provide the

21    models, the actual underlying models?

22              MR. KERN:  Good afternoon, Your Honor.  Kurt Kern on

23    behalf of the Toyota Defendants.

24       We did produce with what was available following the

25    Court's order in July, which we construed as Your Honor

1    described it.  That was guidance by the Court as to those

2    subject matters raised by Plaintiffs' counsel at that time.  I

3    think we had a clear understanding of what the Court's

4    guidance was, and we applied that going back and looking at

5    our discovery responses to date.

6         Since that time, Your Honor, as I am sure you have seen

7    from our response, we have supplemented numerous times.  And

8    incorporated in those responses, Your Honor, we have produced

9    the finite element modeling information that was available and

10   still remains.  So we produced that, Your Honor.

11        THE COURT:  You are saying there are no remaining

12   models left?

13        MR. KERN:  There are none, Your Honor.

14        THE COURT:  A little knowledge is a dangerous thing,

15   and I certainly have very, very little knowledge so I am

16   extremely dangerous.

17        My understanding is that there are models that are

18   developed that essentially describe the structure of the

19   object in question.  Whether it is an element of the vehicle

20   or the whole vehicle, there is essentially a description of it

21   that is the input to the software that can then be used to

22   model particular impacts or other things of that nature.  So,

23   as I understand it, there is a distinction between the model

24   and the output of the modeling tests.  And this request, as I

25   heard Mr. Pittman read it, calls for the models.

## Aubrey "Nick" Pittman

| | |
|---|---|
| **From:** | Aubrey "Nick" Pittman <pittman@thepittmanlawfirm.com> |
| **Sent:** | Thursday, September 12, 2013 10:14 AM |
| **To:** | 'Kurt C. Kern'; 'dwashington@dwashlawfirm.com' |
| **Cc:** | 'David Stone'; 'Brian E. Mason' |
| **Subject:** | RE: Greene v. Toyota - TMS Corporate Representative Deposition |

Kurt:

Plaintiffs would like to make sure we understand your proposal. Are you indicating that TMS would be withdrawing its objections to the 30(b)(6) notice and would produce a corporate representative as to each of the 35 topics? If so, Plaintiffs would be willing to delay the deposition of the TMS representative(s) by a few days past September 20, but October 4 would be too late. If TMS would be willing to fly its representative(s) to Dallas for the depositions, Plaintiffs would be willing to go as late as September 27 for these depositions. Although September 27 is late in terms for Plaintiffs to have testimony that could be considered by our experts, by having the deposition(s) in Dallas we could have our experts sit in the deposition instead of having to wait for the final deposition transcripts. Therefore, please see if you can get all the representative(s) for all topics, without objections, to attend a deposition in California or in Dallas on or before September 27. If so, we can resolve the Motion to Quash and report to the Court that we were able to reach an agreement.

---

**From:** Kurt C. Kern [mailto:Kurt.Kern@bowmanandbrooke.com]
**Sent:** Wednesday, September 11, 2013 5:26 PM
**To:** Aubrey "Nick" Pittman (pittman@thepittmanlawfirm.com); dwashington@dwashlawfirm.com
**Cc:** David Stone; Brian E. Mason
**Subject:** Greene v. Toyota - TMS Corporate Representative Deposition

Nick:

Further to our detailed Meet and Confer, our telephonic conference with the Court and the voice mail I left for you earlier today please give me a call at your convenience to discuss the Joint Submission on Toyota's Motion to Quash, which is due at the close of business tomorrow. Per my v-mail, Toyota's Representative, Luke Torres, listened to all of the proceedings today, including the Court's comments and your final stated position and wants to continue to work toward a mutually acceptable resolution of this issue. As I mentioned in my final stated position, given the breadth of the topics there is simply no one person who could fairly address the topics you have raised, but in conferring with Mr. Torres and the prospective witnesses I can, as indicated earlier today, offer a representative for certain deposition topics, specifically Topics 1,2,3,7,9,10,11,12,13,14,15,16,17,18,19,20,23,25,26,27,30,31,32,33,34 and 35, in whole or in part, on September 20th at Bowman and Brooke's offices in Torrance, California where TMS is headquartered. And I can now offer a representative for deposition on the marketing and advertising related Topics 5,6,8,9,21,22,24,28,29 and 30, in whole or in part, on October 4th at Bowman and Brooke's offices in Torrance. To the extent you do not wish to or cannot travel to Torrance on both occasions I can offer the representative who is available on September 20th for deposition on October 5th, following completion of the marketing and advertising representative's deposition on October 4th. Alternatively, our office in Dallas has a direct video conference link with our office in Torrance and we could easily schedule one or both depositions to take place by video conference. I will insert these offers into the Joint Submission, but please let me know if they can be

APP 000186

agreed to, or whether we should simply list them as "Defendant's Position" and have you insert "Plaintiffs' Position" prior to submitting the Joint Submission to the Court. Thx.

Kurt

Kurt Christopher Kern
Managing Partner, Dallas
Bowman and Brooke LLP
2501 North Harwood Street, Suite 1700
Dalllas, Texas 75201
Direct: 972.616.1711
Fax: 972.616.1701
KKern@BowmanandBrooke.com

---

Note: This electronic mail is intended to be received and read only by certain individuals. It may contain information that is attorney-client privileged or protected from disclosure by law. If it has been misdirected, or if you suspect you have received this in error, please notify me by replying and then delete both the message and reply. Thank you.

APP 000187