IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, | § § § § § § § § | CAUSE NUMBER: 3:11-cv-0207-N |
| Plaintiffs, | § § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC. | § § § § § § § § § § § § § | |
| Defendants. | § | |

**PLAINTIFF'S REPLY TO TOYOTA'S RESPONSE TO PLAINTIFFS'
EXPEDITED MOTION TO AMEND SCHEDULING ORDER
TO EXTEND DEADLINE FOR DESIGNATION AND DISCOVERY OF EXPERTS**

Ollie Greene, Individually and as the surviving parent of Wyndell Greene, Sr., William

Greene, as the Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette

Hardeman, Individually and as the surviving parent of LaKeysha Greene (collectively referred to

as "Plaintiffs") file this Reply to Defendants' Toyota Motor Corporation ("TMC"), Toyota

Motor Engineering & Manufacturing North America, Inc. ("TEMA"), Toyota Motor Sales USA,

Inc. ("TMS") (collectively, "Toyota") Response (the "Toyota response") to Plaintiffs' motion to

extend the deadline for designation of testifying experts and discovery of experts and show as follows:

# I.
## SUMMARY OF REPLY

The Toyota Response exemplifies the type of egregious litigation gamesmanship that this Court and *Dondi* frown against.  Toyota's Response is a complete fabrication of the state of discovery in this case, Toyota's role in obstructing legitimate expert discovery, and Plaintiffs' efforts to preserve each trial date that has been set in this case.  In fact, Exhibit 1 attached hereto debunks the untruths in Toyota's Response.  This email exchange validates that it was Toyota that sought to postpone the current trial date, not Plaintiffs.  Indeed, not only did Plaintiffs not seek to delay the trial, Plaintiffs were hopeful that Toyota and VGNA would agree to produce clearly relevant expert discovery during the face-to-face conferences ordered by the Court and/or the Court would have been in a position to have resolved the motions to compel, thus allowing the discovery deadlines to be maintained.  However, as a result of Toyota's conduct in refusing to produce expert discovery and attempting to confuse the discovery issues before the Court, additional delays have occurred.

Furthermore, it is truly incredulous for Toyota to contend that Plaintiffs are the ones who seek to "delay" the trial in this matter.  Plaintiffs have no incentive in prolonging the families' personal agony that accompanies the continuing delays caused by Toyota's obstructionism.  Without a doubt, Toyota's Response is a continuation of Toyota's resort to their oft-used strategy of blaming the victims in their attempts to deprive Plaintiffs of discovery and a full presentation of evidence during their day in Court.  In fact, since day-one the Defendants, led by Toyota, have played hide-the-ball from Plaintiffs.  The stalling strategy began in Toyota's initial response to Plaintiffs' First Request for Production of Documents, where the three Toyota Defendants, in

three responses that total 546 pages, objected to virtually each of Plaintiffs requests and wholly refused to provide clearly discoverable items, under the guise of objections.  This led to the first motion to compel.  Defendants' hide-the-ball strategy is continuing through Toyota's Response, where Toyota is asking the Court effectively to require that Plaintiffs submit incomplete and premature expert reports that are the result of Toyota's intransigence.

## II.
## ARGUMENT IN REPLY

1.      **FRCP 15 permits the relief requests by Plaintiffs**.  As discussed in Plaintiffs' Motion, under FED.R.CIV.P. 15, this Court has the authority to modify the unexpired deadlines in the June 9, 2013, Scheduling Order and should do so freely.  The Fifth Circuit has made it clear that the good-cause standard to modify a scheduling order under Rule 16(b) applies only "after a scheduling order deadline has expired." *S & W Enter., L.L.C. v. Southtrust Bank of Alabama*, 315 F.3d 533, 536 (5th Cir.2003).  Since no deadlines have expired, Rule 15's rules should apply.

2.      **Toyota cannot dispute that there is good cause for the small amendment**. Even if the Court were to apply the principles of FED.R.CIV.P.  16(b), this Court with good cause can modify the deadlines in the June 9, 2013, Order.  FED.R.CIV.P. 16(b)(4).  Plaintiffs' Motion establishes the good cause for a small amendment in this matter.  In the Response, Toyota fails to identify any legitimate reason for the Court to deny Plaintiffs' good cause request for additional time to designate experts and conduct expert discovery.  Instead, to Plaintiffs' sheer amazement Toyota asks that the Court penalize Plaintiffs for Toyota's actions in depriving Plaintiffs of full and timely expert discovery.

3.      **Substantially all of the information Plaintiffs seek in the motions to compel is specifically for experts**.  Plaintiffs are also astounded that Toyota would flippantly contend that the information Plaintiffs are seeking in the motions to compel is not for the experts' benefit.

3

Even a cursory review of the motions to compel show that the motions seek information such as (1) Computer Aided Design (CAD) information used to predict the accuracy of performance predictions; (2) Computer Aided Engineering discovery; (3) Finite Element Analysis (FEA) and Finite Element Method or Modeling (FEM) input files, design files, computer models or computer simulation programs; (4) evidence of alternative (safer) designs in other vehicles; (5) fuel tank design information; (6) cost information for the safer and alternative designs; (7) specific crash and simulated tests and the FMEA and DRBFM for the 4Runner; (8) design, manufacture, testing, crashworthiness simulation or analysis, evaluations, occupant simulations, fire safety, research, or accident reconstruction of the Toyota 4Runners; and (9) representations Toyota made to the public about the designs and safety of Toyota's vehicles.  Clearly, all of this information is expert-related.  Therefore, Plaintiffs cannot comprehend why Toyota would represent to the Court that the information sought in the motions to compel is not expert-related discovery.  Toyota also continues to feign ignorance of the defects that Plaintiffs have alleged against Toyota.  However, even if Toyota were unaware of the defects alleged in the Complaint, the Court identified the alleged defects in the July 18, 2012, Order (Dkt. Entry No. 111) as "the 2010-2012 Toyota 4Runner's fuel system, fire prevention and suppression systems, seat restraints, air bag systems, rear occupant compartment and structural integrity."  Accordingly, the Court should deny Toyota's request that the Court effectively order a premature disclosure of expert reports to satisfy Toyota's pretentious need.

In another attempt to mislead the Court, Toyota suggests that since it has "produced the relevant federal Motor Vehicle Safety Standards ("FMVSS") compliance certification testing" and allowed Plaintiffs to take TMC's and TMS's depositions, that satisfies Toyota's obligations. It does not.  Toyota fails to acknowledge that the FMVSS are simply "minimum" standards for

manufacturers.  Therefore, even if Toyota satisfied the FMVSS standards, which is doubtful, "compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law."  *See. e.g. Geier v. American Honda Motor Co.*, 529 U.S. 1913 (2000); *Estate of Wells v. Great Dane Trailers, Inc*., 5 S.W.3d 860, 862 (Tex.App.1999); *Turner v. General Motors Corp*., 514 S.W.2d 497 (Tex.App.— Houston [14th Dist.] 1974, writ ref'd n.r.e.).  In other words, Plaintiffs' experts are entitled to go beyond these FMVSS to demonstrate that Toyota's designs were defective.

4. **Plaintiffs have served third-party subpoenas to obtain expert information that Toyota recently indicated, for the first time, is in the possession of third-parties.**  It is undisputed that Toyota has not produced **any** FE or CAD input models.  Despite several written discovery requests for the FE information, as well as questioning a TMC representative about the existence of the FE models information, it was not until September 16, 2013, that Toyota admitted that the FE information that Plaintiffs first requested over two years ago is in the possession of Hino Motors, a company controlled by Toyota.  *See Joint Appendix Regarding Plaintiffs' Third Motion to Compel,* APP 485, the September 16, 2013 Declaration of Ichiro Fukumoto, at ¶ 6 (Dkt. Entry No. 202-2).  Accordingly, Plaintiffs have now served a subpoena on Hino Motors Corp. to obtain this information. See, Exhibit 2 attached hereto.  The information allegedly in Hino's possession is also being sought in Plaintiffs' Third Motion to Compel against Toyota.  Additionally, Plaintiffs have also served a subpoena on another third party, Sataachi & Sitaachi, whose identity Plaintiffs just discovered during the September 20, 2013, TMS deposition.  See, Exhibit 3 attached hereto.

5. **It has been Defendants' conduct, not Plaintiffs' lack of diligence that has led to multiple delays in the trial of this matter.**  In the Response, Toyota disingenuously contends

that Plaintiffs have not been diligent in conducting discovery in this matter.  However, Toyota fails to acknowledge that EVERY delay in this case, whether in discovery or in resetting trial dates is the "direct" result of Toyota (or other Defendants) refusing to provide timely and complete discovery.  Therefore, Toyota's effort to blame Plaintiffs is clearly a red-herring.

Throughout this litigation, Plaintiffs have been unable to obtain discovery needed by the experts due to Toyota's failure to respond fully to various discovery requests, all of which has led to several motions to compel. See, Dkt. Entry Nos. 64, 78, 131, and 174.  At every turn, Toyota and other Defendants have blocked Plaintiffs' efforts to obtain this discovery.  Also, as detailed in Plaintiffs' motion, as a result of Defendants refusal to produce discovery and/or witnesses, Plaintiffs were unable take the depositions of the VGNA and Toyota (TMC) representatives until May 2, 2013, and June 8, 2013, respectively.  Testimony from the TMC and VGNA corporative representatives demonstrated that the Toyota and VGNA Defendants were withholding key discovery needed by Plaintiffs and their experts.  Accordingly, after the TMC and VGNA depositions revealed the existence of additional discovery being concealed by TMC and VGNA, Plaintiffs served interrogatories and requests for documents upon VGNA and Toyota to obtain the outstanding discovery.  The latest of the defendants' discovery responses was submitted by TMC on August 28, 2013, which submitted a thirty (30) page response to Plaintiffs' June 25, 2013, Second Set of Interrogatories.  In the response, TMC submitted general and prophylactic objections to each of Plaintiffs' twelve (12) interrogatories and also submitted an eighty-seven (87) page response to Plaintiffs' Second Request for Documents, where TMC submitted general and prophylactic objections each of Plaintiffs' twenty-six (26) requests for documents.  This continuing stalling tactic by Toyota, as well as additional delays by VGNA, led to the filing of the third motions to compel against VGNA and Toyota, which are currently

6

pending with the Court.  There has been nothing that Plaintiffs have done that has demonstrated a lack of diligence or stalling by Plaintiffs in anyway.

Finally, if additional proof were needed to demonstrate that Plaintiffs have been diligent in attempting to meet the expert deadlines, Plaintiffs submit an August 6, 2013, email exchange between Plaintiffs' counsel and Toyota's counsel.  See, Exhibit 4 attached hereto.  In this exchange, Plaintiffs sought to obtain an agreement from Toyota to respond sooner to Plaintiffs' discovery to TMC so that Plaintiffs could get this information expeditiously to the experts. However, Toyota refused to agree and stated that it would take the full "sixty (60)" days to respond.  Again, this demonstrates Plaintiffs' efforts to move this matter to trial and Toyota's behavior to delay it.

6.     **Toyota misrepresents the "August 2011 until February 2012" period.**  In a further perpetration of falsehoods upon the Court, Toyota boldly claims at paragraph 13 of its Response that Plaintiffs "sat on discovery responses received in August 2011 until February 2012…."  However, Toyota failed to be honest with the Court in acknowledging that during this time, Plaintiffs were conducting third-party discovery regarding the other defendants, filing a motion for leave to file an amended complaint to add new defendants, submitting the amended complaint, serving discovery on the new defendants, responding to motions to dismiss, and working on a new scheduling order with Toyota and the other defendants.  In fact, a quick glance at the docket control sheet in this matter will show that there were thirty-five (35) pleadings (Dkt. Entry Nos. 24-60) filed in this matter between August 2011 and February 2012.  Clearly, Plaintiffs were not just sitting around doing nothing.  Also, the "emergency" nature of the February 2012 motion to compel was to obtain information that would be used at the deposition of a representative from Japan that was scheduled to take place a few weeks later, and Toyota

had indicated that it would not produce the witness again.  Indeed, Judge Godbey recognized the urgent nature of Plaintiffs' request and determined that the motion should be set for an expedited hearing.  (Dkt. Entry No. 65).  Again, there has been no lack of diligence on Plaintiffs' part.

7.     **As a result of Defendants' continued refusal to produce legitimate discovery, Plaintiffs have been unable to meet the expert deadlines.**  In the Response, Toyota brazenly misrepresents that Plaintiffs' agreements to previous scheduling orders demonstrate that Plaintiffs do not need additional time for expert reports.  However, Toyota fails to acknowledge that during the agreements on the previous scheduling orders, Plaintiffs had no way of knowing that Toyota would continue to withhold discovery, even after being ordered by the Court to produce the discovery.  Plaintiffs also had no idea that Toyota would produce a TMC corporate representative that would violate the provisions of 30(b)(6) and attend the deposition unprepared to respond even to some of the more basic topics in the deposition notice.  Plaintiffs have identified this deponent's deficiency in the Joint Submission Regarding Plaintiffs' Third Motion to Dismiss Against Toyota.  In other words, Toyota's Response fails to articulate how Plaintiffs could conceivably have met any of the deadlines for designation of testifying experts considering that two Defendants have continually refused to produce much of the discovery needed by Plaintiffs' experts.  Defendants also refuse to take any blame for Plaintiffs' need for additional time for expert reports, despite that it has been Defendants' conduct that has prevented Plaintiff from obtaining all discovery needed by Plaintiffs' experts, which has been repeatedly requested from Defendants.  Defendants should not benefit from their stalling conduct.

8.     **Toyota cannot articulate any reason why Plaintiffs would want to delay the trial of this matter.**  Toyota's argument that Plaintiffs would want to unnecessarily delay the trial of this matter is nonsensical, and Toyota advances no reason why Plaintiffs would want a

trial delay.  First, it has always been Plaintiffs who have sought an expeditious trial date for this case so that they can put the deaths of their loved ones behind them and get on with their lives.  Second, a trial already could have happened if Toyota and the other Defendants had simply provided timely the discovery needed by the experts.  Third, mediation has already taken place in this matter. Defendants have already indicated they have no intent on settling this matter with Plaintiffs and no further mediation is scheduled.  Therefore, it is clear that this matter will be tried to a jury.  So what benefit would Plaintiffs gain by delaying the trial of this matter?  None.  Clearly, Toyota is grasping at shadows in trying to blame Plaintiffs for the delays in the trial of this case.  Plaintiffs believe that once the Court rules on the motions to compel, the current trial date, or reasonably close to the current date can be maintained.  Plaintiffs do not seek a trial delay, only to obtain the outstanding discovery so that it may be used by their experts.

9.      **Toyota has not contended that it will be prejudiced by a delay in expert discovery, because it will not.**  Noticeably absent from Toyota's Response is any argument that Toyota will be prejudiced by a short delay in expert disclosure and discovery.  That is because a short delay in expert discovery in this matter would work no prejudice on Defendants.  If the requested extension is granted, Defendants could have the same length of time (30 days) to produce their rebuttal expert reports and will have the same opportunity to take expert discovery that they have under the current June 9, 2013, Scheduling Order.  Accordingly, Defendants would face absolutely no prejudice from an extension of the expert deadlines.  On the other hand, if Plaintiffs are not provided the additional time to allow their experts to obtain and consider the outstanding discovery before providing expert disclosures, Plaintiffs face irreparable prejudice

10.      **Toyota has already offered to change the trial date, thus it cannot not claim that it will be prejudiced.**    Although Toyota insists that the Court should deny Plaintiffs'

request, it fails to acknowledge that Toyota's counsel has previously offered a continuance of the due date for expert discovery as well as the trial date.   See, Exhibit 1 attached hereto. Accordingly, there is no prejudice to Toyota.

11.    **Defendants' suggestion of court advisors in this matter is additional evidence of an attempt to confuse the issues before the Court and deprive Plaintiffs of expert discovery.** As the Court will recall, the Court asked for recommendations to the Court for consideration as possible Court-appointed experts or technical advisors.  Upon a brief review of the Toyota and VGNA recommendations it appears that these Defendants have not responded accordingly.  For instance, Defendants have provided names of mediators and/or attorneys who, upon information and belief, have no technical expertise in the issues before the Court (e.g. the discoverability and use of CAD and finite element modeling input files, design files, computer models or computer simulation programs; discoverability of alternative (safer) designs in other vehicles; fuel tank design information; crash testing, and the use of cost information for alternative designs).  Accordingly, Defendants' recommendations will do nothing to assist the Court in ruling on the motions to compel.  And adding insult to injury, one or more of Defendants' recommendations are former partners of Defendants' counsels.   Therefore, Defendants' clear intent with these suggestions is to confuse the issues, and deprive the Court of true technical expertise in the hopes this will lead to a denial of discovery to Plaintiffs.

Plaintiffs would also ask that the Court decline to appoint anyone on Defendants' lists and instead appoint someone who has technical and/or legal expertise in the specific issues raised in the motions to compel, as well as someone who has not worked alongside Defendants' counsels or with, or on behalf of, any Defendant.

**III.**

**CONCLUSION**

As Plaintiffs have demonstrated, there has been no undue delay by Plaintiffs in attempting to meet the current scheduling order deadlines.  Nor has there been any bad faith on Plaintiffs' behalf.  Defendants will also not be prejudiced as they will have a full opportunity to designate rebuttal experts and to take depositions of the expert witness that Plaintiffs will ultimately designate.  Additionally, an extension of the deadline for Plaintiffs' designation of testifying experts, and Defendants' designations of rebuttal experts will not affect or interfere with the scheduled docket call date of March 10, 2014.

WHEREFORE, the Plaintiffs pray that this Court enter an Order modifying the June 9, 2013, Scheduling Order as follows:

1.     The following deadlines in the June 9, 2013, Scheduling Order are now vacated and will be reset after the Court makes a final ruling on Plaintiffs' Third Motions to Compel against the Toyota and VGNA Defendants:

       a.     The time in which the parties with the burden of proof must disclose experts pursuant to FRCP 26(a)(2);

       b.     The time in which the parties must disclose opposing experts pursuant to FRCP 26(a)(2);

       c.     The time in which the parties must disclose rebuttal experts pursuant to FRCP 26(a)(2);

       d.     The date on which expert discovery closes; and

       e.     The date by which all objections to expert testimony must be filed.

2.     All other deadlines and requirements in the Court's June 9, 2013, Scheduling Order shall remain applicable and in full force and effect.

11

Respectfully Submitted,


/s/ Aubrey "Nick" Pittman                                                /s/ Daryl K. Washington

AUBREY "NICK" PITTMAN                                          DARYL K. WASHINGTON

State Bar No. 16049750                                              State Bar No. 24013714


**THE PITTMAN LAW FIRM, P.C.**                          **LAW OFFICES OF DARYL K. WASHINGTON**

100 Crescent Court, Suite 700                               **P.C.**

Dallas, Texas 75201-2112                                  325 N. St. Paul St., Suite 1975

214-459-3454                                                Dallas, Texas  75201

214-853-5912 – fax                                      214-880-4883

pittman@thepittmanlawfirm.com                        469-718-0380 - fax

dwashington@dwashlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2013, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.


  /s/ Aubrey "Nick" Pittman          
AUBREY "NICK" PITTMAN