# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of  WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, | § § § § § § § § | CAUSE NUMBER: 3:11-cv-0207-N |
| **Plaintiffs,** | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.,  TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC. | § § § § § § § § § § § § | |
| **Defendants.** | § § | |

## PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE IRMA C. RAMIREZ'S NOVEMBER 8, 2013, ORDER ON PLAINTIFFS' MOTION TO AMEND SCHEDULING ORDER TO EXTEND DEADLINE FOR DESIGNATION AND DISCOVERY OF EXPERTS

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
214-751-6685 - fax
dwashington@dwashlawfirm.com

# TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................................i

I.    INTRODUCTION ........................................................................................... 1

II.   ARGUMENT, AUTHORITIES, AND SPECIFIC OBJECTIONS................................... 3

    A.    Standard of Review of Magistrate Judge's Order................................. 3

    B.    Principles Governing Extensions of Expert Deadlines.......................... 3

    C.    Objections to Specific Rulings in the November 8, 2013, Order. ......................... 4

        1.    Plaintiffs object to the conclusion in paragraph 4 of the November 8, 2013, Order that "[t]he Plaintiffs also contend, without further explanation, that their experts will have to perform additional work as a result of the discovery rulings.".......................................................... 4

            a.    Plaintiffs' experts reasonably expected to receive Toyota's and Volvo's CAD, CAE and FE models. ....................................... 4

            b.    Plaintiffs' experts reasonably expected information regarding alternative designs that was in Toyota's and VGNA's possession. ...................................................... 7

            c.    Plaintiffs initially suggested that the Court suspend the deadlines for expert designations until the conclusion of the motion to compel hearings. ............................................. 8

        2.    Plaintiffs object to the conclusion in paragraph 5 of the November 8, 2013, Order that "[p]laintiffs did not file their first emergency discovery motion until February 24, 2012.  Despite their claims that the defendants are solely responsible for any delay in the completion of discovery, both sides have had a part in the considerable discovery issues and any consequent delay in this case." ................................................................. 9

        3.    Plaintiffs object to the conclusion in paragraph 3 of the November 8, 2013, Order that "[t]he defendants represented at the hearings concerning the motions that they have already produced all responsive information or documents within the scope of discovery set forth in the July 18, 2013 [sic] order. Any document production on November 14, 2013, is therefore not expected to be substantial." ................................................ 10

            a.    The Order erroneously concludes that the July 18, 2012, Order established a limitation on discovery. ......................................... 10

            b.    The Order erroneously allows Defendants unilaterally to determine what is expected to be produced under the July 18, 2012, Order.................................................................. 12

4.      Plaintiffs object to the implied ruling in the November 8, 2013, Order
        that Plaintiffs did not establish good cause for a longer extension........... 13

        a.      Plaintiffs' experts have less than a week to receive and analyze
                items held discoverable at the October 31, 2013, hearing. ........... 13

        b.      Plaintiffs have been diligent in attempting to obtain written
                discovery from the Toyota defendants and involving the Court
                in matters that could not be resolved with Toyota. ...................... 14

        c.      Plaintiffs have been diligent in attempting to obtain discovery
                from other Toyota entities............................................................. 17

        d.      Plaintiffs have been diligent in attempting to obtain discovery
                from VGNA and involving the Court in matters that could not
                be resolved with VGNA................................................................ 18

        e.      Plaintiffs filed the Third Motions to Compel as soon as
                practicable. .................................................................................. 19

        f.      The November 8, 2013, Order ignores that modification to
                the Scheduling Order is important to Plaintiffs............................ 20

        g.      Defendants would not have suffered any prejudice if the
                requested modification had been granted..................................... 21

        h.      Defendants' prejudice, if any, could be cured by a
                continuance. ................................................................................. 22

III.    CONCLUSION........................................................................................... 22

CERTIFICATE OF SERVICE .................................................................................. 24

Pursuant to Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(c), Plaintiffs Ollie Greene, Individually and as the surviving parent of Wyndell Greene, Sr., William Greene, as the Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and as the surviving parent of LaKeysha Greene (collectively referred to as "Plaintiffs") file these Objections to Magistrate Irma C. Ramirez's November 8, 2013, Order granting in part and denying in part (the "November 8, 2013, Order")(Dkt. Entry 239) Plaintiffs' Motion to Amend Scheduling Order to Extend Deadline for Designation and Discovery of Experts and respectfully show the Court as follows:

## I.        **INTRODUCTION**

For the outset of this Plaintiffs made clear that their theory of the case rested on evidence that Defendants had access to safer alternative designs when the Toyota 4Runner and the Volvo Truck were manufactured and that Defendants were aware of the defects in the vehicles when these vehicles were designed, tested, manufactured, and sold.  To establish their claims Plaintiffs requested Computer Aided Design ("CAD"), Computer Aided Engineering ("CAE") and Finite Element modeling (FE) and related information from Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Sales USA, Inc., (collectively, "Toyota") and Volvo Group North America, LLC, a/k/a Volvo Trucks North America ("VGNA").   In addition, Plaintiffs also requested discovery on a number of safer alternative components and/or vehicle designs of which Toyota and VGNA were clearly aware. In other words, since Plaintiffs served their first set of discovery to Toyota on June 17, 2011, (APP 001-028), it has always been clear that Plaintiffs needed this information, and specifically for use by their experts in preparing their expert reports.  Since that time, Plaintiffs have worked diligently and non-stop attempting to get this information for its experts, including through filing three (3) motions to compel in an effort to obtain this crucial information.

1

In addition, since the law is clear in this circuit, and in all courts across the country, that CAD, CAE, FE, and alternative designs are discoverable in product liability lawsuits, it is not a stretch that Plaintiffs' liability experts were eagerly awaiting this discoverable evidence and expected to receive it. It is also not unusual that Plaintiffs' experts would have to regroup once they were finally informed, after the October 31, 2013 hearing on the motions to compel, that the Court would not compel the production of full CAD, CAE, FE and all safer alternative designs. In their efforts to reorganize, Plaintiffs' experts were forced to scramble to try and find alternate or substituted information for the evidence that was not compelled on October 31, 2013. Accordingly, the November 8, 2013, Order works a substantial prejudice on Plaintiffs' pursuit of their claims against Toyota and VGNA since it does not provide Plaintiffs' experts with sufficient time to obtain substitute information. It also does not provide Plaintiffs with sufficient time before expert reports are due to obtain a ruling on Plaintiffs' Objections to the Magistrate Judge's October 31, 2013, rulings denying Plaintiffs motions to compel production of Toyota's and VGNA's CAD, CAE, FE, and alternative designs.

In other words, in the event the Court sustains Plaintiffs' objections to the Magistrate Judge's October 31, 2013, Orders and compels Toyota to produce the "closest available FE and CAD model in Toyota or Hino's possession or control, regardless of the model year" and compels Toyota and VGNA to produce all of the requested alternative designs, Plaintiffs' experts would have time to incorporate this material into their expert reports if additional time were provided. In light of Plaintiffs' objections, this Court should conduct a *de novo* review of the November 8, 2013, Order, consider the numerous factual arguments dismissed by the Court as well as the inappropriate legal conclusions applied, consider additional evidence and testimony, if required, and set aside and sustain Plaintiffs' objections to the November 8, 2013, Order.

## II.   ARGUMENT, AUTHORITIES, AND SPECIFIC OBJECTIONS

### A.   Standard of Review of Magistrate Judge's Order.

A party may file objections to a magistrate judge's written order within 14 days of being served with a copy of the order. FED. R. CIV. P. 72(a). When a party, by objection, shows any part of a magistrate judge's order to be clearly erroneous or contrary to law, the district judge must modify or set aside that part of the order. 28 U.S.C.636(b)(1)(A); FED. R. CIV. P. 72(a); *Castillo v. Frank*, 70 F.3d 382, 385-86 (5th Cir. 1995).

### B.   Principles Governing Extensions of Expert Deadlines.

Under FED.R.CIV.P. 15, this Court has the authority to modify the unexpired deadlines in the June 9, 2013, Scheduling Order and should do so freely.  The Fifth Circuit has made it clear that the good-cause standard to modify a scheduling order under Rule 16(b) applies only "after a scheduling order deadline has expired." *S & W Enter., L.L.C. v. Southtrust Bank of Alabama*, 315 F.3d 533, 536 (5th Cir.2003).  Nevertheless, even if the Court were to apply the principles of FED.R.CIV.P. 16(b), this Court with good cause can modify the deadlines in the June 9, 2013, Order.  FED.R.CIV.P. 16(b)(4).  The Fifth Circuit considers four factors in deciding whether there is good cause to amend a scheduling order: (1) the explanation for the failure to adhere to the deadline at issue; (2) the importance of the proposed modification to the scheduling order; (3) potential prejudice; and (4) the availability of a continuance to cure such prejudice. *See Reliance Ins. Co. v. La. Land & Exploration Co*., 110 F.3d 253, 257 (5th Cir.1997).  When the moving party shows good cause to modify the scheduling order, then the district court applies "the more liberal standard of Rule 15(a)" and "freely gives leave when justice so requires." *Hawthorne Land Co. v. Occidental Chem. Corp*., 431 F.3d 221, 227 (5th Cir.2005).

Here, the Court's denial of Plaintiffs' request for a lengthier extension of time to obtain delinquent discovery and to obtain substitute discovery (in light of the Court's denial,

substantially, of the motions to compel) will lead to an absence of expert testimony.  Thus, the November 8, 2013, Order is clearly erroneous and contrary to the law.  Indeed, exclusion of expert testimony is a "drastic remedy."  *Manoma Realty Mgmt., LLC v. Fed. Pac. Elec. Co.*, 2007 U.S. Dist. LEXIS 54887, at *15-16 (S.D.N.Y. July 26, 2007); *see also Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 605-06 (10th Cir. 1997) (reversing district court's denial of plaintiff's motion to amend scheduling order and citing cases finding less than one month prior to trial sufficient time if amendment granted); *Heirsch v. Dias*, 2013 WL 5701493 (M.D.La. Oct 16, 2013) (NO. CIV.A. 12-419-SDD)(the district court overturned the magistrate judge's denial of motion for an extension of time to produce their expert reports where a party did not have time to prepare expert reports following the denial of a motion to compel).  Thus, the November 8, 2013, Order is erroneous and contrary to law because it does not give Plaintiffs' experts adequate times to obtain needed resources and utilize alternate methods of preparing expert reports following the denial of Plaintiffs' motion to compel the production of otherwise discoverable expert evidence.

**C.     Objections to Specific Rulings in the November 8, 2013, Order.**

Plaintiffs object to the November 8, 2013, Order, the rationale for the Order, and the portions of the Order that are adverse to Plaintiffs.  Specifically, Plaintiffs object to the rulings and conclusions in the November 8, 2013, Order and identify the following portions of the Order's findings, conclusions, or rulings to which specific objections are made:

> **1.     Plaintiffs object to the conclusion in paragraph 4 of the November 8, 2013, Order that "[t]he Plaintiffs also contend, without further explanation, that their experts will have to perform additional work as a result of the discovery rulings."**
>
> > **a.     Plaintiffs' experts reasonably expected to receive Toyota's and Volvo's CAD, CAE and FE models.**

As discussed above, Plaintiffs first requested CAD, CAE and FE models from Toyota in discovery requests submitted to Toyota on June 17, 2011 (APP 001-028).  After VGNA was

4

added to the lawsuit and appeared on September 16, 2011, Plaintiffs served a similar request for CAD, CAE and FE models to VGNA on October 4, 2011.  APP 0029-039.  As the Court is aware, in finite element analysis modeling, a computer representation is created by inputting numeric values representing the vehicles materials, including geometric dimensions, material properties and physical properties, into modeling software. This computer representation of a package is then subjected to simulated physical and crash conditions to generate an approximation of how the vehicle will operate in the physical world under crash conditions. This modeling is well accepted and used throughout the automobile industry for predicting and confirming reliability of vehicles in crash conditions.  Indeed, through FEM, the crashworthiness characteristics and safety features of a vehicle's designs are evaluated from computer analysis results.  FEM also allows the accurate prediction of a vehicle's reaction and deformation in crash simulations by expert designers, reconstructionists and other experts.  It is undisputed that the input and analyses of these models are performed by those with substantial knowledge and experience, i.e. experts.

Furthermore, the law is clear that CAD and FE models and input files are discoverable. *See, e.g. Gibson v. Ford Motor Co*., 510 F. Supp. 2d 1116, 1123 (N.D. Ga. 2007) (requiring defendant to produce computer models of testing, benchmarking studies, and design and testing information for roof structure of allegedly defective truck at issue).  Therefore, all parties and the Court were undeniably on notice that Plaintiffs' experts would be relying on Toyota's and VGNA's CAD and FE.  Indeed, the CAD files and computer modeling technology are absolutely necessary to Plaintiffs' ability to analyze the Toyota 4Runner and VGNA tractor in order to simulate and test the effectiveness of various alternative designs of which Defendants were aware and to which they had access.

In addition, to the extent Toyota contends it did/does not maintain its specific FE on the 2010 4Runner, during Plaintiffs' first motion to compel, Plaintiffs requested initially that Toyota be required to produce the CAD, CAE, FE and CATIA related files for the applicable 2010 4Runner.  Importantly, Plaintiffs argued, in the alternative, that **"[i]f the information is claimed not to be available, then Toyota should be required to produce the information for the model year closest to the 2010 model year for which the information requested is available**."  Dkt. Entry No. 78, p. 13, n.9.  During the course of discovery, Toyota has occasionally claimed that it has "discarded" the FE and computer files that were used to model the 2010 4Runner, despite that its document retention policy requires that Toyota preserve these models and computer files for years after the model year's production.  Nevertheless, Toyota has acknowledged that it is introducing another model/generation of the 4Runner.  Based on Toyota's admitted practice, it prepares FEM and CATIA for its 4Runners "about 3-4 years before the 'line-off date'" for the 4Runner.  See, Toyota's Supplemental Response to Hardeman's Interrogatories. (APP 040-054).  The "design and development of a Toyota vehicle typically begins approximately 3-4 years before the final version of the vehicle model is manufactured." (APP 044-045)  Therefore, Toyota clearly has FEM, CAD and CATIA input files in its possession for the 2013/2014 4Runner, since today is within 3-4 years of the line-off date.  Accordingly, as Toyota claims to have discarded the FEM, CAD and CATIA for the 2010 4Runner, the October 31, 2013, Order should have required that Toyota produce the current FEM, CAD and CATIA for the upcoming model year that is currently available.  This is especially true since the Court did not order that Toyota retrieve its FE from the entity, Hino Motors, where Toyota deposited the FEM, CAD and CATIA for the 2010 4Runner.

In other words, having access to actual (or the closest available) electronic data such as CAD, CAE, FE, and CATIA 3–D that is in Toyota's and VGNA's possessions would have been helpful to Plaintiffs in establishing their claims and defending against Defendants' claims. Since the Court did not order the production of full model FE and CATIA, Plaintiffs' experts will have to perform additional or alternative analyses through alternative testing or attempts to recreate the computer modeling. Thus, the Court acted erroneously when it did not provide Plaintiffs with additional time to perform alternative testing and analyses following the rulings on the motions to compel.

### b. Plaintiffs' experts reasonably expected information regarding alternative designs that was in Toyota's and VGNA's possession.

The law is clear that alternative designs are discoverable, even if it relates to Toyota's and VGNA's foreign parents, as Plaintiffs brief in their motions to compel. Specifically, courts have ruled that "information relating to the feasibility and effectiveness of alternative designs, and defendants' knowledge of potentially safer designs, is highly relevant and thus discoverable." *Cardenas v. Dorel Juvenile Group, Inc*., 230 F .R.D. 611, 614-16 (D.Kan.2005) (granting plaintiff's motion to compel the production of information concerning the defendant manufacturer's European version of a child car seat in a lawsuit involving an American child car seat manufactured by the same parent corporation, where the challenged discovery was relevant to the feasibility of a safer, alternative design). *See also*, *Jampole* 673 S.W.2d at 573-74 (documents showing <u>manufacturer's knowledge of alternative designs</u> is discoverable and design differences between vehicles that might prevent certain alternative designs from being adopted to vehicle in question do not necessarily undermine relevance or discoverability of documents relating to such alternatives). Accordingly, it was not unreasonable for Plaintiffs' experts to have

anticipated receiving information on alternative designs that had been requested, in some cases, years in advance.

Among the items Plaintiffs' experts sought were: (1) Toyota's alternative fuel system designs used in its other SUV's; and (2) Volvo's underride protection systems, as well as its supplemental energy absorbing device, both of which are examples of alternative designs.  Since the Court did not order the production of VGNA's and Toyota's safer alternative designs, Plaintiffs' experts will have to perform additional or alternative analyses through alternative testing.  Or, they will have to figure out whether they can look at alternative methods of obtaining information that is unmistakably in the possession of Toyota and/or its Japanese counterpart and VGNA's European parent.  Thus, the Court acted erroneously when it did not provide Plaintiffs' experts with additional time following the rulings on Plaintiffs' motions to compel to determine what to do about the absence of the undisputed evidence in Toyota's and VGNA's possession of clearly safer alternative designs.

> **c.  Plaintiffs initially suggested that the Court suspend the deadlines for expert designations until the conclusion of the motion to compel hearings.**

Plaintiffs initially asked the Court to enter an order that expert "deadlines in the June 9, 2013, Scheduling Order are now vacated and will be reset after the Court makes a final ruling on Plaintiffs' Third Motions to Compel against the Toyota and VGNA Defendants."  Dkt. Entry No. 217, p. 11.  By doing so, Plaintiffs were informing the Court that deadlines for expert reports should not have been set until the rulings of the October 31, 2013, motion to compel hearing were made known.  That is because the experts' ability to prepare a report by a given date depended completely on how the Court ruled on the motions to compel.  If the Court were to conclude, as it did, that certain items were not discoverable Plaintiffs' experts would need substantially more time to complete expert work, as discussed above.  On the other hand, if the

Court had allowed the discovery of items in the motions to compel the expert reports could have been prepared sooner.  By not vacating and resetting the expert deadlines, Plaintiffs have been prejudiced and thus the November 8, 2013, Order is clearly erroneous.

> **2.   Plaintiffs object to the conclusion in paragraph 5 of the November 8, 2013, Order that "[p]laintiffs did not file their first emergency discovery motion until February 24, 2012.  Despite their claims that the defendants are solely responsible for any delay in the completion of discovery, both sides have had a part in the considerable discovery issues and any consequent delay in this case."**

In its response to Plaintiffs' motion for additional time to designate experts and provide reports, Toyota misrepresented the activity that was taking place during the "August 2011 until February 2012" period and suggested that Plaintiffs were complicit in the delay in pursuing and/or obtaining expert discovery.  Toyota boldly claims at paragraph 13 of its Response that Plaintiffs "sat on discovery responses received in August 2011 until February 2012…." (Dkt. Entry No. 216).  In the November 8, 2013, Order, the Court appears to have embraced Toyota's misrepresentation. However, Toyota failed to be honest with the Court in acknowledging that during this time Plaintiffs were (a) filing a motion for leave to file an amended complaint to add new defendants, (b) submitting the fact-intensive amended complaint, (c) preparing and serving extensive discovery on new defendants, (d) responding to various motions to dismiss, (e) conducting significant third-party discovery regarding the other defendants and (f) working with the other parties on a new scheduling order with Toyota and the other defendants.  In fact, a quick glance at the docket control sheet in this matter will show that there were at least thirty-five (35) pleadings filed in this matter between August 2011 and February 2012. See, Dkt. Entry Nos. 24-60.   Clearly, Plaintiffs were not just sitting around doing nothing.  Also, the "emergency" nature of the February 2012 motion to compel was to obtain information that would be used at the deposition of a representative from Japan that was scheduled to take place a

few weeks later, and Toyota had indicated that it would not produce the witness again.  Indeed,

the Court recognized the urgent nature of Plaintiffs' request and determined that the motion

should be set for an expedited hearing.  (Dkt. Entry No. 65).  Again, there has been no lack of

diligence on Plaintiffs' part in progressing towards trial.  Accordingly, the conclusion in the

November 8, 2013, Order that Plaintiffs were somehow complicit in any delay during the

referenced time is clearly erroneous and should not have been used as a basis for denying

additional time for Plaintiffs' designation of experts and the provision of reports.

**3.**     **Plaintiffs object to the conclusion in paragraph 3 of the November 8, 2013, Order that "[t]he defendants represented at the hearings concerning the motions that they have already produced all responsive information or documents within the scope of discovery set forth in the July 18, 2013 [sic] order. Any document production on November 14, 2013, is therefore not expected to be substantial."**

**a.**     **The Order erroneously concludes that the July 18, 2012, Order established a limitation on discovery.**

Throughout their discovery responses, Toyota and VGNA objected to Plaintiffs' requests

on the grounds that Plaintiffs' requests allegedly "exceed the scope of permissible discovery set

by the Court's July 18 Order."  However, this is a misrepresentation of the July 18, 2012, Order

and flies in the face of existing case law.  The Court never intended that the July 18, 2012, Order

would define that maximum limit of discovery to which Plaintiffs would be entitled.  In fact, the

Court openly admonished Defendants that the July 18, 2012, Order related only to four specific

and discrete issues that were before the Court during a specific motion to compel and that it was

not to be used as an attempt to limit the scope of otherwise permissible discovery in this matter:

> And I get some sense from the Defendants that they are interpreting the prior order on July 18 as defining the full permissible scope of discovery in the case, period, and I don't think it was intended to do that. I think it was intended to mediate the issues that were raised in the prior motion to compel.

Excerpt from the January 22, 2013, hearing on Plaintiffs' Motion to Compel at (page:

line) 3:22 – 4:2. (APP 057-058).  Accordingly, the Magistrate Judge should not have entertained

Defendants' contention that the July 18, 2012, Order established an unconditional outer limit for discovery. Plaintiffs will also note that there was nothing in Plaintiffs' Motions to Compel that exceeds or is inconsistent with the Court's guidance in the July 18, 2012, Order. Issues that were not presented to the Court during the motion to compel that led to the July 18, 2012, Order are not subject to any alleged limitation in that July 18, 2012 Order.

> Rather than ruling on the motion to compel in detail, the Court establishes the scope of permissible discovery with regard to four discrete areas – areas that Plaintiffs' counsel identified at a discovery hearing held March 5, 2012 –in this Order. It also grants Plaintiffs leave to reurge their motion to compel responses to specific discovery requests if discovery remains deficient after the Court's guidance.

See, July 18, 2012, Order. (APP 070). Indeed, the July 18, 2012, Order was to serve as "**guidance**" to the parties and expressly granted Plaintiffs "leave to reurge the motion to compel" later. (APP 070, 089) However, relying on Defendants' improper argument that Plaintiffs could not reurge any issue discussed in the July 18, 2012, Order, the Magistrate Judge did not allow Plaintiffs any latitude in arguing many of the issues in the third motions to compel and made rulings based on Defendants' improper reading and use of the July 18, 2012, Order.

Furthermore, it is also clear that every item requested in the third motions to compel is relevant to the claims and defenses and/or is likely to lead to the discovery of admissible evidence. Accordingly, the Magistrate Judge should have overruled all attempts by Toyota and VGNA to limit discovery according to Defendants' offensive and improper use of the July 18, 2012, Order. Moreover, although a few of Plaintiffs' requests sought information that fell within the four discrete areas presented in the Court's July 18, 2012, Order, none of the requests exceed the scope, if any, related to those four areas that were presented to the Court during the first (limited) motion to compel. Finally, even if Plaintiffs' requests that were the subject of the motions to compel fell outside of the four areas of the Court's particular July 18, 2012, Order,

11

the Magistrate Judge should have applied the discovery scope standard outlined in FED. R. CIV.

P. 26 – whether the discovery is relevant or reasonably calculated to lead to the discovery of

admissible evidence?

As such, to the extent the October 31, 2013, Orders were issued under the misimpression

that the July 18, 2012, Order decreed a global limitation on discovery, it is erroneous, contrary to

the law, and should be set aside.

> **b.** **The Order erroneously allows Defendants unilaterally to determine what is expected to be produced under the July 18, 2012, Order.**

As discussed above, the July 18, 2012, Order did not provide a decision on specifically

on the universe of "items" that should be produced in this case. It is clear that the July 18, 2012,

Order expressly granted Plaintiffs "leave to reurge the motion to compel" later. (APP 070, 089).

The July 18, 2012, Order also used the following excerpt to demonstrate that it was not ruling on

all items that were requested in Plaintiffs' first motion to compel or on future items:

> [1]*See Regan v. Nissan N. Am., Inc.*, 2008 WL 51460000, at *1, 3 (D.N.D.
> 2008) (issuing ruling in products liability case with respect to the scope of
> discovery generally <u>without ruling on any specific discovery request and
> holding plaintiff's motion to compel in abeyance</u> to see if parties could
> resolve their disputes).

APP 070. Thus, it is clear that the Court did not rule on each of the specific items (in

Plaintiffs' third motions to compel) as to whether they should be produced. Additionally,

although Plaintiffs' third motions to compel made requests for specific items, the October 31,

2013, Order does not make rulings on "each" specific item that Plaintiffs' requested. Upon

review of the November 8, 2013, Order it also appears that the unintended consequences of not

applying the guidelines of FRCP 26 (as opposed to the July 18, 2012, Order) to rule on each

request is that the Court may have allowed Toyota and VGNA to determine, at least in part, what

items were within the "scope" of the July 18, 2012, Order where the November 8, 2013, Order

states that "defendants represented at the hearings concerning the motions that they have already produced all responsive information or documents within the scope of discovery set forth in the July 18, 2013 [sic] order."  Since the July 18, 2012, Order did not have a Court-imposed limitation on discovery, the Court's Order is erroneous.  Additionally, the record is clear that Plaintiffs informed the Court that Toyota and VGNA "had not" produced all requested items, whether under a limited view of the July 18, 2012, Order or not.  Therefore, to the extent the Court allowed Toyota and VGNA to determine what items fell in the realm of the July 18, 2012, Order, and used this as basis to deny Plaintiffs' motion for additional time, the November 8, 2013, Order is erroneous.

### 4.    Plaintiffs object to the implied ruling in the November 8, 2013, Order that Plaintiffs did not establish good cause for a longer extension.

When Plaintiffs filed the second motion to extend the expert disclosure dates, Plaintiffs had not missed any deadlines in the scheduling order.  In the second timely motion Plaintiffs sought an order extending the upcoming expert deadlines since it is clear that Plaintiffs will not be able to meet the November 20, 2013, expert disclosure date considering that Toyota and VGNA have continued to refuse to produce discovery needed by Plaintiffs' experts.  The experts also needed additional time to consider the information ruled discoverable under the October 31, 2013, Orders and to undertake additional work, as discussed above, necessitated by the Court's decision to deny production of other items requested in the motions to compel.

#### a.    Plaintiffs' experts have less than a week to receive and analyze items held discoverable at the October 31, 2013, hearing.

The last of the three motions to compel was filed against VGNA on August 9, 2013. (Dkt. Entry No. 164).  Pursuant to the Court's August 12, 2013, Order, the Plaintiffs and VGNA were ordered to meet face-to-face to fully confer on each of the items in dispute and to submit a joint submission of the remaining issues.  (Dkt. Entry No. 166).  In accordance with the Court's

August 12, 2013, Order Plaintiffs and VGNA met and submitted a Joint Submission to the Court on August 23, 2013. (Dkt. Entry No. 167).   An initial hearing was held on Plaintiffs' Third Motion to Compel Against VGNA on September 5, 2013.   On October 31, 2013, the Court issued a ruling on Plaintiffs' Third Motion to Compel Against VGNA.

The last of the three motions to compel against the Toyota Defendants was filed on September 3, 2013. (Dkt. Entry No. 174).   Pursuant to the Court's September 4, 2013, Order the Plaintiffs and Toyota were ordered to meet face-to-face to fully confer on each of the items in dispute and to submit a joint submission of the remaining issues.   (Dkt. Entry No. 177).   In accordance with the Court's September 4, 2013, Order Plaintiffs and Toyota met and submitted the Joint Submission to the Court on August 23, 2013. (Dkt. Entry No. 202).   Pursuant to the September 30, 2013 Court Order (Dkt. Entry No. 207), the Court set a hearing on this motion to compel on October 4, 2013.

On October 31, 2013, the Court issued an Order on the motion to compel granting it in part and denying it in part.   Toyota and VGNA were given 14 days to comply with the portions of the motion to compel for which the motion was granted.   Considering that Plaintiffs' experts will not have sufficient time to analyze these new productions items, the November 8, 2013, Order is clearly erroneous in not providing additional time to Plaintiffs' experts.

> **b.      Plaintiffs have been diligent in attempting to obtain written discovery from the Toyota defendants and involving the Court in matters that could not be resolved with Toyota.**

Throughout this case, the Toyota's conduct has thwarted Plaintiffs' efforts to obtain discovery needed by the experts, which has created unreasonable delays in advancing this case to trial.   The following chronology demonstrates some of the stalling techniques in which Toyota has engaged:

1.  In response to Plaintiffs' first interrogatory requests, the Toyota Defendants objected to each of Plaintiffs' thirteen (13) interrogatories, providing an incomplete response, or no response, to each.

2.  Similarly, in response to Plaintiffs' First Request for Production of Documents, the Toyota Defendants, in three responses that totaled 546 pages, objected to virtually each of Plaintiffs' requests and in some instances, under the guise of objections, wholly refused to provide clearly discoverable items.

3.  On or about February 24, 2012, Plaintiffs filed a Motion to Compel (the "First Motion to Compel") against the Toyota Defendants and VGNA. The First Motion to Compel was heard on or about March 5, 2012, and an Order was issued on July 18, 2012, setting the scope of discovery, but only as to certain limited items discussed at the hearing.

4.  Following the issuance of the Court's July 18, 2012, Order, Plaintiffs' counsel submitted discovery requests dated July 23, 2012, to Toyota's counsel seeking production of discovery within the scope permitted by the Court's July 18, 2012, Order and FRCP 26.

5.  Three months after the Court's July 18, 2012, Toyota still had not produced the items that the Court found to be discoverable.  Accordingly, on October 23, 2012, Plaintiffs' counsel contacted Toyota's counsel asking for production of the information that is the subject of the Court's July 18, 2012, Order.

6.  After receiving some materials from Toyota, Plaintiffs' counsel informed Toyota's counsel on October, 24, 2012, that Toyota's responses do not comply with the scope of discovery allowed by the Court's July 18, 2012, Order.  Plaintiffs' counsel also reiterated Plaintiffs' request that Toyota respond "directly and specifically" to each of the requests for productions and interrogatories contained in Plaintiffs' July 23, 2012, discovery letter.

7.  Following further exchanges of email, Toyota's counsel refused to respond specifically to each of the requests for productions and interrogatories contained in the July 23, 2012, discovery requested.

8.  On or about July 31, 2012, Plaintiffs submitted additional written discovery requests to the Toyota Defendants.

9.  On September 4, 2012, and October 2, 2012, the Toyota Defendants submitted their responses to Plaintiffs' July 31, 2012, discovery requests, wherein Toyota made substantial objections and did not respond fully to the discovery request.

10. On January 4, 2013, Plaintiffs filed a Second Motion to Compel (the "Second Motion to Compel") against the Toyota Defendants and VGNA.

11. The Second Motion to Compel was heard on or about January 22, 2013. During the January 22, 2013, hearing on Plaintiffs' Second Motion to

Compel, the Court issued the following directive to the Toyota Defendants:

> Okay. I want you to treat Exhibit B [Plaintiffs' July 23, 2012, discovery requests] as if it were a formal RFP and respond to it in a week. That doesn't mean produce the documents, necessarily, but give them a written response. You have had it around since July, so I think you can probably give them a written response in a week.
>
> Okay. Then 30 days for the docs.

12. On or about January 29, 2013, the Toyota Defendants submitted their response to Plaintiffs' July 23, 2012, discovery requests. Consistent with the Toyota Defendants' original 546 page set of objections to Plaintiffs' first set of discovery, the Toyota Defendants submitted an 83-page set of objections to the July 23, 2012, discovery requests, despite the requests being completely consistent with the scope of discovery allowed by the Court's July 18, 2013, Order.

13. On or about April 10, 2013, Plaintiffs submitted a written notion of intent to take the deposition of the TMC representative on June 8, 2013, the only available date provided by Toyota for this deposition.

14. On June 8, 2013, pursuant to a Fed.R.Civ.P. 30(b)(6) notice of deposition, Plaintiffs took the deposition of Toyota Motor Corporation corporate representative Ichiro Fukumoto ("Fukumoto"). During the deposition, it was apparent that Fukumoto was not knowledgeable of many of the topics on which examination had been requested.

15. As a result of questions raised during Fukumoto's deposition and his inability to provide relevant information, on June 25, 2013, Plaintiffs submitted a second set of interrogatories and request for production to the Toyota Defendants.

16. On or about July 29, 2013, Toyota Motor Engineering and Manufacturing, Inc. ("TEMA") submitted a thirty-three (33) page response to Plaintiffs' June 25, 2013, Second Set of Interrogatories, where TEMA submitted general and prophylactic objections to each of Plaintiffs' twelve (12) interrogatories. TEMA also submitted a seventy-four (74) page response to Plaintiffs' Second Request for Documents, where TEMA submitted general and prophylactic objections each of Plaintiffs' twenty-six (26) requests for documents.

17. Also on or about July 29, 2013, TMS submitted a thirty-five (35) page response to Plaintiffs' June 25, 2013, Second Set of Interrogatories, where TEMA submitted general and prophylactic objections to each of Plaintiffs' twelve (12) interrogatories. TEMA also submitted a seventy-five (75) page response to Plaintiffs' Second Request for Documents, where TEMA submitted general and prophylactic objections each of Plaintiffs' twenty-six (26) requests for documents.

18.   On August 28, 2013, Toyota Motor Corporation ("TMC") submitted a thirty (30) page response to Plaintiffs' June 25, 2013, Second Set of Interrogatories, where TMC submitted general and prophylactic objections to each of Plaintiffs' twelve (12) interrogatories.  TMC also submitted a eighty-seven (87) page response to Plaintiffs' Second Request for Documents, where TMC submitted general and prophylactic objections each of Plaintiffs' twenty-six (26) requests for documents.

19.   The July 29, 2013, and August 28, 2013, responses created the need for Plaintiffs to file yet a third motion to compel against Toyota. It was filed on September 3, 2013.  Dkt Entry 174.

Therefore, as shown above, Plaintiffs have done everything in their power to obtain discovery from Toyota so that it could provide the information to Plaintiffs' experts.  However, Toyota's stalling efforts have prevented and/or delayed expert discovery in this matter.  Thus, the Court's November 8, 2013, Order is erroneous in not taking Toyota's conduct into account when determining whether to provide Plaintiffs with additional time for expert designations.

### c.   Plaintiffs have been diligent in attempting to obtain other discovery from Toyota entities.

By letter dated February 12, 2012, Plaintiffs' counsel submitted correspondence to TMS and the other Defendants that scheduled the deposition of the TEMA corporate representative for April 2, 2012 and the TMS deposition for April 3, 2012.  This notification clearly placed TMS and TEMA on notice that their FRCP 30(b)(6) deposition would be taken.  The only reason these depositions did not take place was due to Toyota's refusal to produce discovery that would have been used at the TEMA and TMS depositions, as well as during the depositions of others.  Additionally, throughout this lawsuit, Plaintiffs have served several written discovery requests upon TEMA and TMS.  TMS and TEMA just recently submitted a discovery response, albeit incomplete, on July 29, 2013.  Furthermore, Plaintiffs served a Notice of Intent to take the TMS deposition on August 19, 2013, scheduling the deposition to take place on September 9, 2013 – twenty-one (21) days' notice.  On August 29, 2013, TMS filed a Motion to Quash the September 9, 2013, deposition.  On or about September 3, 2013, the Court issued an order requiring that the

parties confer face-to-face on TMS's Motion Quash.  See Dkt. Entry No. 173.  As a result of this Order, the September 9, 2013, deposition did not take place as originally noticed.  Instead, the deposition did not take place until September 20, 2013.

Additionally, during the September 20, 2013, TMS deposition, the corporate representatives were ill-prepared to respond to many of Plaintiffs' questions and brought to Plaintiffs' attention that many documents exist at VGNA that have not been produced.  This issue is thoroughly brief in Plaintiffs' third motion to compel against Toyota, where dozens of cites to Toyota's deponents' testimony is included.  Accordingly, Plaintiffs had additional requests to TMS for documents, as well as obtaining discovery from third-parties whose identities were revealed during the September 20, 2013, deposition.  In the responses, Toyota has once again interposed prophylactic objections while refusing to produce any of the items sought.  Accordingly, Plaintiffs will have to prepare yet another motion to compel against Toyota to obtain this information.

> **d.** **Plaintiffs have been diligent in attempting to obtain discovery from VGNA and involving the Court in matters that could not be resolved with VGNA.**

On or about February 24, 2012, Plaintiffs filed a Motion to Compel (the "First Motion to Compel") against the Toyota Defendants and VGNA.  The First Motion to Compel was heard on or about March 5, 2012, and an Order was issued on July 18, 2012, providing guidance to the parties as to the "general" scope of discovery. Upon receiving the Court's July 18, 2012, Order, Plaintiffs' counsel submitted discovery requests dated July 23, 2012, to VGNA's counsel seeking production of discovery within the areas discussed in the Court's July 18, 2012 Order and FRCP 26.  On or about August 23, 2012, VGNA responded to Plaintiffs' July 23, 2012, discovery requests. In its response, VGNA objected to the majority of the discovery requests and produced only eighteen (18) pages of supplemental discovery.

On January 4, 2013, Plaintiffs filed a Second Motion to Compel (the "Second Motion to Compel") against the Toyota Defendants and VGNA.  The Second Motion to Compel was heard on or about January 22, 2013, and an Order was issued.  After finding an acceptable date for a deposition of VGNA, on or about May 2, 2013, Plaintiffs took the depositions of VGNA corporate representatives Charles Bird ("Bird"), Andrew Adams ("Adams"), and Gregory Prinzo ("Prinzo") in Greensboro, North Carolina. As a result of testimony provided by Bird, Adams, and Prinzo indicating that other discoverable matter was available to and had been withheld by VGNA, Plaintiffs served additional interrogatories and requests for production upon VGNA on or about May 22, 2013.  On or about June 24, 2013, VGNA responded to Plaintiffs' May 22, 2013, discovery requests.  In its responses, VGNA objected to the majority of the discovery requests and produced very limited discovery. As a result of VGNA's objections, and after conferring with VGNA to try and resolve disputes, Plaintiffs were forced to file a motion to against VGNA on August 9, 2013.  The Court has now had an opportunity to rule on the third motions to compel and just issued Orders on October 31, 2013.  This diligence by Plaintiffs clearly demonstrates that Plaintiffs have not delayed developing the discovery in this case.

> **e.    Plaintiffs filed the Third Motions to Compel as soon as practicable.**

As a result of having to wait for discovery to be turned over pursuant to the two previous motions to compel, Plaintiffs were unable take the depositions of the Volvo and Toyota Motor Corporation ("TMC") representatives until May 2, 2013, and June 8, 2013, respectively. Testimony from the TMC and VGNA corporative representatives demonstrated that the Toyota and VGNA Defendants were withholding key discovery needed by Plaintiffs and their experts. Accordingly, after the TMC and VGNA depositions revealed the existence of additional discovery being concealed by TMC and VGNA, Plaintiffs served interrogatories and requests for

19

documents upon VGNA and Toyota to obtain the outstanding discovery.   The latest of the defendants' discovery responses was submitted by TMC on August 28, 2013, which submitted a thirty (30) page response to Plaintiffs' June 25, 2013, Second Set of Interrogatories.   In the response, TMC submitted general and prophylactic objections to each of Plaintiffs' twelve (12) interrogatories and also submitted an eighty-seven (87) page response to Plaintiffs' Second Request for Documents, where TMC submitted general and prophylactic objections each of Plaintiffs' twenty-six (26) requests for documents.   This stalling tactic by Toyota, as well as additional delays by VGNA, led to the filing of the third motions to compel against VGNA and Toyota, which were just recently decided.   Therefore, there has been no unreasonable delay by Plaintiffs in seeking this relief.   To the extent the November 8, Order, is based on a misunderstanding that Plaintiffs have not been diligent and persistent in attempting to receive unmistakably discoverable evidence, it is clearly erroneous.

### f.      The November 8, 2013, Order ignores that modification to the Scheduling Order is important to Plaintiffs.

Plaintiffs' Complaint specifically alleges that Toyota, *inter alia*, failed to design and incorporate widely available, safer and feasible, alternative designs into the Toyota 4Runner's fuel system, fire prevention and suppression systems, seat restraints, air bag systems, rear occupant compartment and structural integrity of the Toyota 4Runner that would have prevented or significantly reduced the injuries and deaths to the Greene Family.   The Complaint also makes clear that Toyota breached express warranties that the 4Runner was safe, reliable and that quality was of paramount importance.   The warranty of merchantability requires that products be of reasonable workmanlike quality and free from defects.   The Complaint also alleges that in commercials, internet postings, periodicals, press releases, etc., Toyota represented that the safety of their customers is paramount.

As to Volvo, Plaintiffs allege that the Volvo Defendant, *inter alia*, failed to design and incorporate widely available, safer and feasible, alternative designs into the Volvo Heavy Truck's absent or defective collision warning system and energy-absorption capabilities, and that the Volvo Heavy Truck was defectively designed because it was an incompatible mismatch, in a crash, with other vehicles on the road. If the Volvo Heavy Truck had been properly designed it would have prevented or significantly reduced the injuries to, and prevented the eventual deaths of, each member of the Greene Family.

It is undisputed that Texas law requires expert testimony for Plaintiffs to meet their burden on many of their claims. Therefore, it is clear that the expert disclosures for which Plaintiffs seek an extension through this motion are vital to Plaintiffs' case. Without expert testimony, Plaintiffs will have difficulty proving their claims. Therefore, this second factor weighed completely in Plaintiffs' favor. Additionally, experts will also be essential to Toyota's and VGNA's defenses and the extension will also give these Defendants additional time. Thus the Court acted erroneously in not granting a longer extension for expert designations.

### g.  Defendants would not have suffered any prejudice if the requested modification had been granted.

The third factor also strongly favors Plaintiffs. As of the filing of this motion, no experts have been designated by any party and expert discovery has not yet begun. The trial date is currently almost four (4) months away. If the requested extension had been granted, the Court could provide Defendants with the same length of time (30 days) to produce their rebuttal expert reports and Defendants would have the same opportunity to take expert discovery that they have under the current June 9, 2013, Scheduling Order. Accordingly, Defendants would have faced absolutely no prejudice from an extension of deadlines. On the other hand, Plaintiffs will face severe prejudice if they are not provided additional time to allow their experts to obtain and

consider the outstanding discovery, as well as to take additional steps now required as a result of the October 31, 2013, rulings before Plaintiffs would have to provide expert disclosures. Consequently, the November 8, 2013, Order is clearly erroneous and contrary to the law.

**h.     Defendants' prejudice, if any, could be cured by a continuance.**

Plaintiffs' request for modification of the scheduling order could have been accomplished without any real prejudice to Defendants.   If Defendants had shown they would suffer some prejudice from a more substantial modification of the June 9, 2013, Scheduling Order, the prejudice could have been cured with a short continuance.   Accordingly, this factor weighs plainly in Plaintiffs' favor.

## III.     CONCLUSION

Granting additional time for Plaintiffs' expert designations would have allowed Plaintiffs additional time in which to have the Court consider Plaintiffs' objections to the Magistrate Judge's October 31, 2013, Orders on the motions to compel and would have allowed Plaintiffs' experts to review any new FE, CAD, CAE, or alternative designs information that the Court would have ordered to be disclosed, if any.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that the Court sustain all objections to the November 8, 2013, Order, set aside and reverse the November 8, 2013, Order, and grant all other relief, legal or equitable, to which Plaintiffs are entitled.

Respectfully Submitted,


/s/ Aubrey "Nick" Pittman

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

/s/ Daryl K. Washington

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
214-751-6685 - fax
dwashington@dwashlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 18, 2013, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

  /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN