IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, | § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CAUSE NUMBER: 3:11-cv-0207-N |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC. | § § § § § § § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants. | § § | |

**PLAINTIFFS' MOTION FOR SANCTIONS AGAINST TOYOTA DEFENDANTS FOR DESTRUCTION AND/OR CONCEALMENT OF EVIDENCE**

AUBREY "NICK" PITTMAN
State Bar No. 16049750

THE PITTMAN LAW FIRM, P.C.
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax

DARYL K. WASHINGTON
State Bar No. 24013714

LAW OFFICES OF DARYL K. WASHINGTON P.C.
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................ iii

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   ABBREVIATED FACTS .................................................................................. 1

III.  ARGUMENT AND AUTHORITIES ............................................................... 2

    A.    Legal Principles of the Spoliation Doctrine .......................................... 2

    B.    Toyota Developed and Used FE and CATIA on its 4Runner Design. ... 3

    C.    Toyota Had a Duty to Preserve CAD CAE and FEM. ........................... 9

    D.    At The Time Of The Destruction Of Evidence, Toyota Was Embroiled In Controversies Involving The Recalls of Millions of Vehicles, Giving Toyota Incentive to Conceal or Destroy Helpful Information, Even In Violation Of Its Own Document Retention Policy. .............................. 10

    E.    Toyota's Failure to Preserve the Evidence and/or Concealment of the Evidence Was in Bad Faith. .............................................................. 14

    F.    Plaintiffs Have Been Severely Prejudiced By Toyota's Concealment and/or Destruction of This Highly Relevant Evidence. ...................... 15

    G.    Toyota's Destruction of Crucial Evidence Obviously Warrants Sanctions. ......... 17

    H.    The Proper Sanction For Toyota's Conduct, At A Minimum, Is To Strike Toyota's Answers and Defenses. ............................................. 18

    I.    Alternatively, the Court Should Provide a Spoliation Instruction to the Jury. ..... 19

IV.   CONCLUSION ............................................................................................... 19

CERTIFICATE OF CONFERENCE .......................................................................... 20

CERTIFICATE OF SERVICE ................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Anadarko Petroleum Corp. v. Davis,*
2006 WL 3837518 (S.D.Tex. Dec. 28, 2006) .......................................................... 18

*Ashton v. Knight Transp.*, Inc.,
2011 WL 734282 (N.D.Tex. Feb.22, 2011) ............................................................ 19

*Danis v. USN Commc'ns, Inc.*,
2000 WL 1694325 (N.D.Ill. Oct.20, 2000) ............................................................. 15

*Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*,
2009 WL 1949124 (N.D.Cal. July 2, 2009) ............................................................ 10

*Duque v. Werner Enters., Inc.,*
2007 WL 998156 (S.D.Tex. Mar. 30, 2007) ........................................................... 18

*Fujitsu Ltd. v. Fed. Express Corp.,*
247 F.3d 423 (2d Cir.2001) ...................................................................................... 18

*Green v. McClendon,*
2009 WL 2496275 (S.D.N.Y. Aug. 13, 2009) ........................................................ 18

*John B. v. Goetz,*
531 F.3d 448 (6th Cir.2008) ....................................................................................... 9

*Jones v. Bremen High School Dist. 228,*
2010 WL 2106640 (N.D.Ill. May 25, 2010) ........................................................... 18

*Kirkendall v. Dep't of the Army,*
573 F.3d 1318 (Fed.Cir.2009) .................................................................................. 10

*Kronisch v. United States,*
150 F.3d 112 (2d Cir.1998) ............................................................................ 9, 13, 17

*M & T Mortgage Corp. v. Miller,*
2007 WL 2403565 (E.D.N.Y. Aug. 17, 2007) ....................................................... 17

*Menges v. Cliffs Drilling Co.,*
2000 WL 765082 (E.D. La. June 12, 2000) ............................................... 2, 3, 17, 18

*Micron Tech., Inc. v. Rambus Inc.,*
645 F.3d 1311 (Fed.Cir.2011) .................................................................................. 13

*Reilly v. Natwest Markets Group,*
181 F.3d 253 (2d Cir.1999) ...................................................................................... 18

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
306 F.3d 99 (2d Cir.2002) ................................................................................. 14, 17

*Rimkus Consulting Group, Inc. v. Cammarata*,
   688 F.Supp.2d 598 (S.D.Tex.2010) ................................................................ 9, 18

*Russell v. Univ. of Tex.*,
   234 Fed.Appx. 195 (5th Cir.2007) ...................................................................... 19

*Scalera v. Electrograph Sys., Inc.*,
   2009 WL 3126637 (E.D.N.Y Sept. 29, 2009). ....................................................... 17

*Schmid v. Milwaukee Elec. Tool Corp.*,
   13 F.3d 76 (3d Cir.1994)................................................................................ 2, 3

*Silvestri v. Gen. Motors Corp.*,
   271 F.3d 583 (4th Cir.2001) ........................................................................... 3, 9

*Toth v. CalcasieuParish*,
   2009 WL 528245 (W.D.La. Mar. 6, 2009) ............................................................. 9

*U.S. v. Philip Morris USA, Inc.*,
   327 F.Supp.2d 21 (D.D.C.2004) ......................................................................... 18

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
   269 F.R.D. 497 (D.Md.2010)........................................................................... 9, 17

*Vodusek v. Bayliner Marine Corp.*,
   71 F.3d 148 (4th Cir.1995) ................................................................................. 2

*Whitt v. Stephens County*,
   529 F.3d 278 (5th Cir.2008) ............................................................................... 19

*World Courier v. Barone*,
   2007 WL 1119196 (N.D.Cal. Apr. 16, 2007) ......................................................... 13

*Zubulake v. UBS Warburg,L.L.C.*,
   220 F.R.D. 212 (S.D.N.Y.2003) ............................................................... 9, 10, 12, 13

Plaintiffs submit their Motion for Sanctions for Spoliation or for an Adverse–Inference Jury Instruction against Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales USA, Inc., (collectively, "Toyota"), for the reasons stated herein:

## I.    PRELIMINARY STATEMENT

Toyota has clearly destroyed and/or concealed evidence that is crucial to Plaintiffs' case and for which there was a clear duty for Toyota to preserve. Specifically, Toyota has intentionally misplaced, destroyed and/or concealed key computer aided engineering and design files, as well as finite element models, from which the crashworthiness characteristics and safety features of the Toyota 4Runner's design was evaluated from the computer analysis results. Toyota's intentional destruction of this valuable evidence has prejudiced Plaintiffs' ability effectively to prove and/or illustrate their claims against Toyota and/or refute Toyota's multiple defenses. Plaintiffs therefore move for sanctions against Toyota due to Toyota's concealment and/or destruction of evidence, to include the entry of judgment against Toyota and/or the striking of Toyota's defenses, certain witnesses and related evidence. Alternatively, Plaintiffs ask for the allowance of evidence of Toyota's spoliation and the inclusion of an "adverse inference" instruction to the jury, as well as attorneys' fees and costs incurred in connection with the underlying discovery issues and the filing of this motion for sanctions.

## II.    ABBREVIATED FACTS

1.     On May 28, 2010, Wyndell Greene, Sr., LaKeysha Greene, Wyndell Greene, II, and Wesleigh Greene, (collectively referred to herein as the "Greene Family") were traveling in their 2010 Toyota 4Runner (the "Toyota 4Runner") when they were struck from the rear by a Volvo tractor (the "Volvo Truck"). The collision came without warning and caused the Greene Family's Toyota 4Runner eventually to collide with a trailer (the "Strick Trailer") manufactured

by Strick Corporation, Inc. ("Strick"), owned by Dolphin Line, Inc. and being towed by a Freightliner owned by Fayard Moving & Warehouse.  The Greene Family's Toyota 4Runner burst rapidly into uncontrollable flames.

2.      As a result of the crash, Wyndell Greene, II and Wesleigh Greene were trapped in the Toyota 4Runner, unable to escape.  LaKeysha Greene was ejected from the Toyota 4Runner, thrown against and underneath the Strick Trailer, and eventually died from the trauma as a result of the impact.  Wyndell Greene, Sr. died approximately three months later from the injuries he sustained in the fire that originated in the Toyota 4Runner.

3.      Beginning with the first set of discovery submitted to Toyota on June 17, 2011, (APP 001-028), Plaintiffs made it known that they need computer aided design and modeling information from Toyota such CAD, CAE, and FEM input files, design files, computer models or computer simulation programs, for the entire Toyota 4Runner and for various components of the 4Runner.

4.      However, despite that Plaintiffs have served several discovery requests seeking this information, took the depositions of Toyota's corporate representatives asking for this information, and filed several motions to compel seeking this information, Toyota has refused to produce the information requested, contending that the information does not exist and/or is not in Toyota's possession.

### III.    ARGUMENT AND AUTHORITIES

### A.    Legal Principles of the Spoliation Doctrine

The spoliation of evidence doctrine provides courts with the authority to impose sanctions on responsible parties when there is intentional destruction or concealment of relevant evidence. *Menges v. Cliffs Drilling Co., No.* 99-2159, 2000 WL 765082 (E.D. La. June 12, 2000) (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir.1995); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir.1994).  Spoliation is the "destruction or material

alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 590 (4th Cir.2001) (citing *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999)); BLACK'S LAW DICTIONARY 1531 (9th ed. 2009).

The seriousness of the sanctions that a court may impose depends on the consideration of: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *Menges*, 2000 WL 765082 (citing *Schmid*, 13 F.3d at 78).

### B.    Toyota Developed and Used FE and CATIA on its 4Runner Design.

Toyota, like other vehicle manufacturers, makes use of computer modeling and simulation to test crashworthiness and safety features in new designs.   Affidavit of Keith Friedman (APP 031, ¶9).   Computer Aided Engineering (CAE) is used to design products and analyze their performance under various conditions.   CAE includes, for example, Computer Aided Design (CAD) and Finite Element Analysis (FEA).   FEA, a subset of CAE used for analyses, is performed with a computer program that uses the finite element method (FEM) to analyze materials and objects under various conditions including impact loading conditions. (APP 031, ¶10).   In finite element analysis modeling, a computer representation is created by inputting numeric values representing the vehicles materials, including geometric dimensions, material properties and physical properties, into a computer file. This computer representation of a vehicle or system is then subjected to simulated physical and crash conditions to determine the expected performance of the vehicle in the physical world under crash conditions.   (APP 031, ¶11).   By building a finite element model of a vehicle or component and running a simulation on

the computer vehicle manufacturers save lots of time, effort and cost that would otherwise be required to build a unique prototype to test all of the vehicles' components and alternative design approaches when problems arise.  (APP 031, ¶12).

FE computer models can also capture all the important phenomenological events during a crash impact related to vehicle kinematics. The FEM of vehicles and vehicle components are applied, for example, in design analysis and system crashworthiness evaluation. Through FEM, the crashworthiness characteristics and safety features of a vehicle's designs are evaluated from computer analysis results.  FEM also allows the accurate prediction of a vehicle's reaction and deformation in crash simulations.  (APP 031, ¶13).   This modeling is well accepted and used throughout the automobile industry for predicting and confirming reliability of vehicles in crash conditions. Through FEM the crashworthiness characteristics and safety features of a vehicle's designs are evaluated from computer analysis results. FEM also allows the accurate prediction of a vehicle's reaction and deformation in crash situations by users. (APP 032, ¶14).

a.      **Toyota's use of FEM and CAD.**

Toyota has long had a practice of using FEM for all of its products, (APP 032, ¶14).as is evidenced by an excerpt from Toyota's Automotive Safety Manual.  (APP 036).  Toyota's use of CAE and finite element modeling is also shown in document 754689-754697, (APP 037-054), which shows a full representation finite element model.  For the Court's benefit, this document is first shown in the original Japanese version produced by Toyota, followed immediately by a version translated into English.  What is shown in this document is the finite element model of the 4Runner, from the top and bottom, just before it impacts an offset barrier during a crash test like the ones the Insurance Institute for Highway Safety conducts and publicizes.  As can be seen in this depiction, the frame, tires, wheels, axles, floors, doors, suspension, engine, fuel system,

etc. are all present in the FEM for this frontal test and CAE is used to analyze the results.   (APP 032, ¶14).

According to Fukumoto, Toyota has an engineering information management division that is responsible for maintaining all of the FE, CAD and CATIA files. Fukumoto Depo Vol. 1 at 72:11-17, 83:13-21, and 101:11-16. (APP 104, 105, 111).  Fukumoto also testified that Toyota has an Advanced CAE Division, the Vehicle Evaluation & Engineering Division and the collision safety and division related to safety and legal issues.  Fukumoto Depo Vol. 1 at 38:3 – 39:18 and 107:10-16.  (APP 79, 80, 111).  The Court's July 18, 2012, Order held that Plaintiffs are entitled to CAD and FEA evidence of the fuel system, fire prevention and suppression systems, seat restraints, air bag systems, rear occupant compartment and structural integrity for the 2003-2009 and the 2010-2012 U.S. bound 4Runners.   (APP 141-160).   Furthermore, Toyota's representative testified that "FEM and FEA were last used in the design and development of the 2010-2012 U.S. bound 4Runner about 1 year prior to the 'line-off' date for the 2010 U.S. bound 4Runner."  (APP 161-175 at 166).  However, Toyota did not provide the "CAD or FEM **input files, design files, computer models or computer simulation programs**" that Fukumoto acknowledged once existed at Toyota.  (APP 032, ¶15).

### b.      Toyota destroyed or concealed XVL files.

XVL® is a 3D format used by companies to enable rapid communication, production and collaboration by using 3D throughout the manufacturing supply chain.  XVL enables data to be compressed to an average 0.5% of its original size with high accuracy.   This allows manufacturers to not have to compromise accuracy for 3D data size.   (APP 032, ¶16). Toyota misrepresented that it provided all the CAD information in XVL format.  One of Plaintiffs' experts prepared an illustration of all of the XVL file information that Toyota provided in this

lawsuit.  (APP 176).  As can be seen, a vehicle could never be built simply with this subset of information.  Nor is it what Toyota would use for evaluating performance of the vehicle under impact or crash conditions.  Accordingly, Toyota's production of CAE in XVL form is severely lacking.  (APP 033, ¶17).

### c.      Toyota destroyed or concealed CATIA files.

CATIA® is an engineering and design software for 3D CAD design.  It is a program by which or through which the CAD data files are created that can be used in creative design, engineering analysis, finite element analysis, among other applications.   (APP 033, ¶18). According to Mr. Fukumoto, the Finite Element Model of the Toyota 4Runner vehicle was created from the CAD's CATIA data files. Fukumoto Depo Vol. 1 at 70:18 – 71:24 (APP 102-103).  Toyota did not provide all of this information although Fukumoto initially indicated that the CATIA information for the 2010 4Runner still existed.  (APP 033, ¶19); Fukumoto Depo Vol. 1 at 72:11-25. (APP 104).   Later Toyota claimed that it had previously produced all the CATIA files that remained.  All CATIA files associated with the 2010 4Runner should have been maintained and produced.

> **d.      If Toyota has "left" its CAD, CAE and FEM in the possession of another Toyota entity, the Court should consider this to be an act of concealment since Toyota owns the CAE and FEM "and" Toyota owns the companies that allegedly have this information.**

During the course of discovery in this matter, Toyota made odd statements regarding the location of its FEM and CAD information.  First, Toyota claimed that the FEM and CAE information may be in the possession of Hino Motors, a Japanese corporation that manufactures some of the Toyota vehicles that are sold in the United States.  In fact, TMC's representative stated under oath in his affidavit "[t]o the extent additional FEM, CAE and/or CAD materials remain in existence, those materials may or may not be in the possession of Hino Motors, Ltd."

See, Dkt Entry No. 196-9 at ¶6.  Not surprisingly, Toyota owns at least a majority interest in Hino Motors.[1]  When Plaintiffs sought to obtain additional information on Hino's ownership, Toyota refused to provide it.  (APP 177-178). It is worth noting that Toyota has never denied "under oath" that it owns a majority interest in Hino Motors.  More importantly, the evidence is clear that Toyota uses the CAD and FEM information to design its vehicles and directs Hino as to how specifically to manufacture the Toyota vehicles.  Hino manufactures the vehicles according to TMC specifications, TMC inspects and approves all of Hino's designs and shipments and Hino is legally affiliated with TMS. Fukumoto Depo Vol. 1 at 29:12 – 34:17 (APP 070-075).  Furthermore, any FE and CAD design work that Hino performed on the Toyota vehicles through FE modeling is plainly Toyota's intellectual property.  The law does not allow Toyota to hide or shield clearly relevant FE and CAD models by hiding them with a related and Toyota-controlled subsidiary that designs and manufactures the vehicles completely in accordance with Toyota's instructions.

Second, a recent disclosure by Toyota makes clear that another Toyota entity, Toyota Technical Development Corporation ("TTDC") may be in possession of relevant FEM information.  On December 2, 2013, Toyota indicated that "during early developmental phases of the 2010 U.S. bound 4Runner, TMC outsourced to TTDC the responsibility to perform limited FEM analysis.  After completing its analysis, TTDC submitted the FEM Document to TMC." See, Dkt Entry No. 246, Page 6 of 10, PageID 9015.  It is important to note that Toyota also does not deny that Toyota owns and controls TTDC.  Toyota cannot dispute that in order to create the "FEM Document," TTDC had to create a computer representation by inputting numeric values representing the 4Runner's materials, including geometric dimensions, material properties and

---

[1] See, http://www.hino.com/hino/ (last visited September 23, 2013).  This website explains that Hino Motors is "A Toyota Group Company."

physical properties, into modeling software.   Therefore, TTDC had, and should still have, possession of the FEM files and models that were used to create this FEM document.   By permitting TTDC to retain the information that Toyota actually owns, Toyota is unmistakably concealing relevant evidence.

Third, Toyota has suggested that it does not own the FEM and CAE information that may be in the hands of Hino Motors, TTDC, or one of the many other Toyota affiliates or agents. According to the testimony of TMC's corporate representative, the CAE engineers in Toyota's design and evaluation divisions are the ones who are responsible for creating and designing the FE models that were used by Toyota.   Fukumoto Depo Vol. 1 at 43:17 – 47:14 (APP 84-88). Indeed, Toyota's corporate representative provided the following testimony, which demonstrates conclusively that Toyota created and owns the FE and CAE that Toyota now suggests may be in the hands of other entities:

> At the initial stage of a design or somewhere in midway of developmental phase, when a shape of a component, for instance, or configuration of a vehicle is determined to a certain extent, then based on that, CAE modeling would take place.
>
> Going back to your earlier question with which model vehicle and when CAE modeling took place, if the question is in that level, we will be talking about exactly which individual was creating the model when.   And I do not have understanding in that level, but rather my knowledge is that at Toyota, under normal course of development, CAE is used on as-needed basis.   That's what I can say.
>
> Well, what I can answer to that question is that during the developmental process, ordinarily **Toyota creates FEM**.   And applying that to this specific 2010 model year 4Runner, approximately two years prior to that model year, the modeling may have been performed on as-needed basis because the modeling is to be done whenever it was necessary.

See, deposition of Ichiro Fukumoto, at 49:9 – 56:25 (APP 089-096).   Therefore, it is undisputed that the FE models and CAE information would have been developed by Toyota, and therefore owned by Toyota.   This is true even if Toyota later provided FEM to Hino Motors,

TTDC, or any of the other Toyota affiliates or agents who would have used it to manufacture or test Toyota vehicles.

### C.      Toyota Had a Duty to Preserve CAD CAE and FEM.

A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation. *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 612 (S.D.Tex.2010)(quoting *John B. v. Goetz,* 531 F.3d 448, 459 (6th Cir.2008)); *Toth v. CalcasieuParish,* 2009 WL 528245 at *1 (W.D.La. Mar. 6, 2009) (citing *Zubulake v. UBS Warburg,L.L.C.,* 220 F.R.D. 212, 216 (S.D.N.Y.2003)). Once litigation is reasonably anticipated, a potential party to that litigation "must not destroy unique, relevant evidence that might be useful to an adversary." *Toth,* 2009 WL 528245 at *1 (quoting *Zubulake,* 220 F.R.D. at 216). This duty "arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591 (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.1998)). Spoliation therefore implicates "both the duty to preserve and the breach of that duty through the destruction or alteration of the evidence." *Victor Stanley, Inc. v. Creative Pipe, Inc*., 269 F.R.D. 497, 521 (D.Md.2010). The duty to preserve extends to the party's or potential party's employees "likely to have relevant information—the 'key players.'" *Toth, 2009 WL 528245 at *1.* The duty to preserve evidence is a duty owed to the *court,* not to the party's potential adversary, hence, spoliation is considered an abuse of the judicial process. *Victor Stanley,* 269 F.R.D. at 525–26.

In this case, in TMC's Responses to Plaintiffs' Second Request for Documents, Toyota admits that during the period in question it had a document retention policy, which is described in the documents produced under the bate-labels 260668-260674 (APP 179-183, 182). A review of this clearly defined retention policy (APP 184-190) indicates unmistakably that the FE

models, CAE, CAD, and other engineering and design information related to the 2010 4Runner should have been in Toyota's possession when this lawsuit was filed and should still be in Toyota's possession as of the filing of this motion.  *See e.g.,* 260671-260674 (APP187-189).  In addition, Toyota's corporate representative also acknowledged that Toyota had a practice of retaining the information that Toyota now claims it does not have in its control:

> Q:   Let's assume, sir, that there was FE modeling done for the Toyota 2010 U.S.-bound 4Runner. That would still be in Toyota's possession if it were done, wouldn't it?
>
> A:   An individual in that division, if he or she makes a decision that that information is necessary for Toyota's business, therefore it is necessary to be retained.  If such a decision is made, **then I believe it would be kept**. But again, I need to search that in order to give you a definite answer.

Deposition of Ichiro Fukumoto, at 90:10-21 (APP 110).  In instances such as this one, courts have concluded that there is evidence of spoliation.  *See, e.g., Kirkendall v. Dep't of the Army*, 573 F.3d 1318, 1325–27 (Fed.Cir.2009) (spoliation found when agency destroyed relevant documents in violation its own document retention program); *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, 2009 WL 1949124, at *10 (N.D.Cal. July 2, 2009), modified on other grounds, 2009 WL 2485556 (N.D.Cal. Aug.12, 2009).  Moreover, even if Toyota were able to argue that it had some other vague document destruction policy, the evidence is clear that once Toyota became aware of the facts surrounding this lawsuit, it should have suspended its normal destruction policies.  See, e.g., *Zubulake* 220 F.R.D. at 218 ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.").

> **D.    At The Time Of The Destruction Of Evidence, Toyota Was Embroiled In Controversies Involving The Recalls of Millions of Vehicles, Giving Toyota Incentive to Conceal or Destroy Helpful Information, Even In Violation Of Its Own Document Retention Policy.**

As demonstrated by hundreds of publicly available documents, in the 2007-2011 time periods, Toyota was being confronted with a massive public relations' debacle on its corporate image, and facing what would eventually become hundreds of lawsuits on virtually all of its vehicles.  Since 2007, there have been public reports that the issues just with brakes, floor mats and gas pedals resulted in the recall of over 10 million vehicles and landed Toyota in trouble. (APP 191-193).  In May 2007, Toyota received reports about an accelerator pedal glitch in its Tundra model.  *Id*.  In September 2007, Toyota recalled Lexus models to secure floor mats that could trap the gas pedal, causing the car to accelerate out of control.  *Id.*   In January 2009: Toyota began to recall 1.3 million vehicles worldwide because of seatbelt and exhaust system problems. (APP 194).   In May 2009: Toyota reported the worst results in its history as it struggled with the global economic crisis. *Id*.  In November 2009, the National Highway Traffic Safety Administration ("NHTSA") accused Toyota of providing owners with "inaccurate and misleading information" about its floor mat entrapment recall. (APP 191).  In February 2010, NHTSA ordered Toyota to provide documents showing when and how it learned of the defects affecting about 6 million U.S. vehicles.  *Id*. Indeed, if Toyota had produced its FEM and CAD to NHTSA at that time, NHTSA could have been determined what Toyota knew and when it knew it.  The legal claims that would have followed would have been monstrous.  The fear of these claims alone gave Toyota a motivation to scrap its previous document retention policy.

Several other legal claims and lawsuits were being brought against Toyota specifically as to its 4Runner SUV, where claims have involved the same types of issues that are involved in this lawsuit.  See, generally, deposition of Harold Clyde at 134:13 – 155:20 (APP 225-246) and accompanying claims.  (APP 247-269).  Toyota paid $1.6 billion to settle claims related to certain recalls (APP 270-271) and earlier paid a record $16.4 million **fine** to the U.S. government

for failing to quickly report safety problems. (APP 272).  For years now, the public heard news about the shoddy safety record of Toyota cars, trucks and SUV's.  Nearly every model has been the subject of a recall, from the flagship Camry sedan for sudden acceleration issues, to its premier Lexus because of problems with its electronic steering system, to the Sequoia SUV and all in between.  See, generally, deposition of Harold Clyde at 55:14 – 69:11 (APP 206-220).  By way of examples, Toyota had a recall in 2010 of thousands of the 2010 Lexus HS 250h due to deadly fuel leaks after collisions.  Deposition of Ichiro Fukumoto, at 113:17 – 115:25 (APP 115-116).  These vehicles did not pass Federal Motor Vehicle Safety Standard 301.  APP 273-274.  In 2007, Toyota recalled the Lexus GS as well as the IS 250 and IS 350 models in the United States due to potential cracks in fuel pipes.  (APP 275).  Toyota recalled some of its 2009-2012 4Runners, Sequoias, and other vehicles because Toyota had failed to test the passenger seat occupant sensing system calibration, which meant that the occupant sensing system may not operate as designed.  (APP 276-294).  This failure to test meant that this could result in incorrect air bag deployment and possible injury or death to the front passenger occupant(s) in the event of a crash. *Id.*  Indeed, press releases from Toyota's press room confirm that Toyota has had over thirty-five (35) recalls over the last 2-3 years on all of its models for various safety-type issues.  APP (298-305).

It is axiomatic that Toyota was clearly aware that Toyota's FEM, CAE, CAD and other design and testing information could be used by NHTSA, other regulatory bodies, or plaintiffs' attorneys to evaluate the designs and crashworthiness of its 4Runners and other vehicles.  Therefore, since Toyota became aware of facts surrounding possible lawsuits, it should have suspended its normal destruction policies.  *See, e.g., Zubulake,* 220 F.R.D. at 218 ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction

policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."). *See also, World Courier v. Barone*, 2007 WL 1119196, at *1 (N.D.Cal. Apr. 16, 2007)("'The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.'") (quoting *Kronisch* 150 F.3d at 126).   "This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron Tech., Inc. v. Rambus Inc*., 645 F.3d 1311, 1320 (Fed.Cir.2011); *Zubulake* 220 F.R.D. at 216 ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.").

Once litigation is reasonably anticipated, a potential party to that litigation "must not destroy unique, relevant evidence that might be useful to an adversary." *Toth v. Calcasieu Parish*, 2009 WL 528245 at *1 (W.D.La. Mar. 6, 2009) (quoting *Zubulake*, 220 F.R.D. at 216). Clearly, the FE models, CAE and CAD information is unique information that should have been retained by Toyota for use by the many adversaries with whom Toyota was encountering during the time of the massive recalls and congressional investigations.  However, it should come as no surprise that it was during the time of its massive litigation troubles that Toyota began to destroy or conceal its FEM and CAD computer files, despite that its own internal document retention policy requires that this information be preserved for a clearly defined period of time that exceeded the period when Toyota began to destroy these materials.  Likewise, the issues with the 2010 4Runner were also front-and-center during the period Toyota concealed the FE and CAE information.  Toyota's dubious conduct of changing its document retention policy in light of the

significant legal claims being amassed against it is clearly in violation of the law and constitutes

an intentional act of the destruction of culpable evidence.

> **E.      Toyota's Failure to Preserve the Evidence and/or Concealment of the Evidence Was in Bad Faith.**

With the advent of the new (2014) model year 4Runner, it is clear that Toyota should

have preserved and used its FEM and CAD from the 2010 4Runner to evaluate the

crashworthiness of any restraint improvements, fuel systems improvements, structural integrity

modifications or other changes from the previous 2010 model to the new 2014 model.  Indeed,

this is a standard procedure for all vehicle manufacturers.  However, as discussed above, if

Toyota had retained the CAD and FEM information, even in accordance with its own internal

policy, NHTSA would have been able to discover when Toyota became aware of the various

problems that led to the massive recalls, not limited to the unintended acceleration claims.  In

other words, third-parties use of the FEM and CAD against Toyota in lawsuits provided a

disincentive for Toyota to retain the FEM and CAD.

Finally, since Toyota's internal document retention policy required Toyota to retain this

information for a defined period, the early destruction of it obviously raises red flags.  In other

words, the evidence is clear that Toyota acted in bad faith in its failures to preserve and maintain

evidence that any reasonable observer would know to be relevant to the massive numbers of

recalls as well as the specific accident and fatalities that occurred on May 28, 2010.  As

authorities conclude, bad faith can be "satisfied by showing that evidence was knowingly ... or

negligently" destroyed.  *See Residential Funding Corp. v. DeGeorge Fin. Corp*., 306 F.3d 99,

108 (2d Cir.2002); *Goodyear* 167 F.3d at 779.  Accordingly, a party breaches the duty to

preserve when it fails to act reasonably in taking positive action to preserve material evidence.

*Jones v. Bremen High Sch. 228*, 2010 WL 2106640, at \*6 (N.D.Ill. May 25, 2010).  More than

"good intentions" are required; "'those intentions [must] be followed up with concrete actions reasonably calculated to ensure that relevant materials will be preserved,' such as giving out specific criteria on what should or should not be saved for litigation."' *Id.* (quoting *Danis v. USN Commc'ns, Inc*., No. 98–C–7482, 2000 WL 1694325, at *36, *38 (N.D.Ill. Oct.20, 2000)).   In this case, Toyota's conduct of destroying, concealing and/or refusing to preserve evidence reeks of bad faith.

**F.    Plaintiffs Have Been Severely Prejudiced By Toyota's Concealment and/or Destruction of This Highly Relevant Evidence.**

Plaintiffs' Complaint alleges that Toyota, inter alia, failed to design and incorporate widely available, safer and feasible, alternative designs into the Toyota 4Runner's fuel system, fire prevention and suppression systems, seat restraints, air bag systems, rear occupant compartment and structural integrity of the Toyota 4Runner that would have prevented or significantly reduced the injuries and deaths to the Greene Family.  In the expert's opinion, if the Toyota 4Runner had been properly designed, it could have aided in significantly reducing the injuries to, and/or preventing the eventual deaths of, each member of the Greene Family.  (APP 033, ¶20).

The industry standard approach for evaluating crashworthiness performance across a range of conditions, or in specialized conditions, such as due diligence considerations is to utilize finite element analysis.  This approach allows for the analysis of existing designs as well as for the evaluation of alternative designs under various impact conditions and/or to identify defects and create solutions to alleviate these defects in vehicle design.  (APP 033-34, ¶21). With the FEM and CAD that Toyota discarded, engineers could have evaluated the crash performance of the fuel system, fire prevention and suppression systems, seat restraints, air bag systems, rear occupant compartment and structural integrity of the Toyota 4Runner under a wide range of

impact conditions.  An expert would also have been able to evaluate and illustrate the occupants'

movements in the Toyota SUV, the mechanisms that caused the injuries to the SUV's occupants,

and reconstruct the injury measures being received.  (APP 034, ¶22).

As far as assessing the performance of potential alternative design approaches, the finite

element crashworthiness model can be utilized to investigate alternative design approaches and

incorporate these approaches into the finite element model of the vehicle.  Following this, the

performance of the alternative designs can then be evaluated under the same impact conditions as

the original design. That way, the effect of the alternative design approach relative to the original

design approach under the same impact conditions is illustrated.  In addition, if the complete

CATIA files associated with the 2010 Toyota 4Runner had not been destroyed or concealed a

finite element model could have been constructed that would have been sufficient to evaluate the

issues in this case. While building the model would take significant time and effort (which is

why such models are not simply thrown away as Toyota has apparently represented to the court)

having these files would have helped reconstruct a model.  (APP 034, ¶23).

Toyota's failure to produce FE and CAE models have significantly impaired the ability to

illustrate the issues and solutions in this case and refute Toyota's defenses as to many of the

potential defects, the hypotheses of which could have been effectively tested with such models.

Examples of such hypotheses include, but are not limited to, restraint systems, interior padding,

side curtain airbags, door performance, structural side integrity, weld unzipping, and overall

structural integrity of the Toyota 4Runner.  (APP 034, ¶24).  Even where we were able to

determine clear design defects and economically feasible alternative design approaches in the

Toyota 4Runner, the absence of the FE and CAE has impaired Plaintiffs' ability to clearly

illustrate the design defects using Toyota's own FE.  (APP 035, ¶25).

In short, there is no dispute that the evidence that has been destroyed and/or concealed is relevant to Plaintiffs' claims in the lawsuit and has impaired Plaintiffs' presentation of the case. In instances such as this courts will find relevance as a matter of law when the unavailability of evidence stems from a party's egregious conduct.  *See, e.g., Scalera v. Electrograph Sys., Inc., No.*, 2009 WL 3126637, at *16 (E.D.N.Y Sept. 29, 2009).  When evidence is destroyed in bad faith, for example, that alone is enough to support an inference that the missing evidence would have been favorable to the party seeking sanctions, and thus relevant.  *See Residential Funding*, 306 F.3d at 109; see also *M & T Mortgage Corp. v. Miller*, No. 02 Civ. 5410(NG)(MDG), 2007 WL 2403565, at *10-11 (E.D.N.Y. Aug. 17, 2007) (finding that the "missing documents [were] clearly critical to plaintiff's claims," and imposing sanctions for spoliation because "defendants acted in bad faith in destroying the documents." "[S]uch improper conduct alone is sufficient to support a finding that the documents were unfavorable to [defendant].")  Toyota's bad faith actions in destroying or concealing this information have materially compromised Plaintiffs' ability fully to present their case against Toyota and to refute Toyota's defenses.

### G.   Toyota's Destruction of Crucial Evidence Obviously Warrants Sanctions.

In determining the sanctions to impose for a sanctionable event, the courts have stated that an appropriate sanction should "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *Goodyear* 167 F.3d at 779 (quoting *Kronisch v. United States*, 150 F.3d at 126); *Victor Stanley*, 269 F.R.D. at 533-34.  A court should also consider "whether the sanctions it imposes will 'prevent abuses of the judicial system' and 'promote the efficient administration of justice.'" *Victor Stanley*, 269 F.R.D. at 539 (quoting *Jones v. Bremen High*

*School Dist. 228*, 2010 WL 2106640, at \*5 (N.D.Ill. May 25, 2010)).  As discussed herein, it is

undisputed that Toyota's conduct warrants sanctions.

> **H.    The Proper Sanction For Toyota's Conduct, At A Minimum, Is To Strike Toyota's Answers and Defenses.**

Under the spoliation of evidence doctrine, a court may exclude spoiled evidence or allow

the jury to infer that the party spoiled the evidence because the evidence was unfavorable to the

responsible party's case. *Menges,* 2000 WL 765082 at \*2.   Courts have broad discretion in

crafting a remedy that is proportionate to both the culpable conduct of the spoliating party and

resulting prejudice to the innocent party.  *Anadarko Petroleum Corp. v. Davis,* No. H–06–2849,

2006 WL 3837518, at \*27 (S.D.Tex. Dec. 28, 2006). These sanctions include awarding

attorney's fees, striking witnesses, deeming certain facts admitted, giving an adverse inference

instruction to the jury, striking pleadings, entering a default judgment, and dismissing the case

entirely. *Rimkus,* 688 F.Supp.2d at 618–19; *Duque v. Werner Enters., Inc.,* No. L–05–183, 2007

WL 998156, at \*2–3 (S.D.Tex. Mar. 30, 2007); *U.S. v. Philip Morris USA, Inc*., 327 F.Supp.2d

21, 25 (D.D.C.2004) (precluding testimony of those witnesses who violated document retention

policy).

Determining a fitting sanction for spoliation is left to the sound discretion of the trial

judge, *Goodyear* 167 F.3d at 779, and is to be assessed on a case-by-case basis.  *Fujitsu Ltd. v.

Fed. Express Corp.,*247 F.3d 423, 436 (2d Cir.2001); *see also Reilly v. Natwest Markets Group,*

181 F.3d 253, 267 (2d Cir.1999)("[t]rial judges should have the leeway to tailor sanctions to

insure that spoliators do not benefit from their wrongdoing-a remedial purpose that is best

adjusted according to the facts and evidentiary posture of each case."); *Green v. McClendon,* No.

08, 2009 WL 2496275 at \*2 (S.D.N.Y. Aug. 13, 2009) (the severity of the sanctions imposed

should be congruent with the destroyer's degree of culpability) (internal citations omitted).  In

this case, Toyota's bad faith conduct in conspiring to conceal FEM and CAD is clear evidence of bad faith and warrants the most severe sanctions.  *See, e.g. Ashton v. Knight Transp*., Inc., 2011 WL 734282, at *26 (N.D.Tex. Feb.22, 2011).

Accordingly, Plaintiffs ask that the Court impose sanctions on Toyota that include, inter alia, (1) striking Toyota's defenses to Plaintiffs' claims; (2) precluding Toyota from arguing that the alleged absence of FE, CAE, and CAD, etc. prevents Plaintiffs from offering evidence or expert opinions on the claims in the lawsuit; and (3) prohibiting Toyota from offering testimony from Toyota corporate representatives, Toyota experts, or other Toyota-sponsored witnesses concerning Toyota's favorable use of CAD, CAE and FE, etc. on its design, testing, and evaluation, etc. of the 4Runner or any other Toyota vehicle.

## I.   Alternatively, the Court Should Provide a Spoliation Instruction to the Jury.

Arguing in the alternative, an adverse inference jury instruction for spoliation is appropriate where a showing is made that the malfeasant party "intentionally destroy[ed] important evidence in bad faith [and] did so because the contents of those documents were unfavorable to that party." *Whitt v. Stephens County*, 529 F.3d 278, 284 (5th Cir.2008)(quoting *Russell v. Univ. of Tex*., 234 Fed.Appx. 195, 207 (5th Cir.2007)).  There is evidence from the analyses performed by Plaintiffs' experts that the FEM and CAD would have been unfavorable to Toyota. Accordingly, arguing in the alternative, Plaintiffs ask that the Court provide the jury with an adverse inference instruction relating to the matters that form the basis of this motion.

## IV.   CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that the Court strike Toyota's claims and defenses, grant judgment against Toyota in Plaintiffs' favor, award Plaintiffs their attorneys' fees for this motion, and grant Plaintiffs such other and further relief, in law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted,


/s/ Aubrey "Nick" Pittman                /s/ Daryl K. Washington

AUBREY "NICK" PITTMAN              DARYL K. WASHINGTON

State Bar No. 16049750                    State Bar No. 24013714


**THE PITTMAN LAW FIRM, P.C.**        **LAW OFFICES OF DARYL K. WASHINGTON P.C.**

100 Crescent Court, Suite 700          

Dallas, Texas 75201-2112              325 N. St. Paul St., Suite 1975

214-459-3454                           Dallas, Texas  75201

214-853-5912 – fax                    214-880-4883

pittman@thepittmanlawfirm.com       469-718-0380 - fax

                                          dwashington@dwashlawfirm.com


## CERTIFICATE OF CONFERENCE

The undersigned certifies that on December 10, 2013, the relief requested in this motion was discussed with Toyota's counsel, David Stone and Jude Hickland.  After Plaintiffs' counsel discussed the asserted merits of the motion, Mr. Stone indicated that Toyota was opposed to the relief sought in this motion.    Accordingly, Plaintiffs present this matter to the Court for resolution.


                             /s/ Aubrey "Nick" Pittman

                             AUBREY "NICK" PITTMAN

**CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2013 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

　　　　　　　　　　　　　　　　　　　　　　　/s/ Aubrey "Nick" Pittman　　　　　　
　　　　　　　　　　　　　　　　　　　　　　AUBREY "NICK" PITTMAN