IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the | § | |
| Surviving Parent of WYNDELL GREENE, | § | |
| SR., et al., | § | CASE NO.: 3:11-CV-00207-N |
| | § | |
| Plaintiffs, | § | |
| vs. | § | JURY TRIAL DEMANDED |
| | § | |
| TOYOTA MOTOR CORPORATION | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS VGNA'S, DOLPHIN'S, STRICK'S
AND FAYARD'S JOINT MOTION FOR CONTINUANCE**

Defendants Volvo Group North America, LLC f/k/a Volvo Trucks North America, Strick Trailers, LLC, John Fayard Moving & Warehouse, LLC and Dolphin Line, Inc. (collectively for this motion, "Defendants") file this Joint Motion for Continuance, respectfully showing:

## I. INTRODUCTION

1.     This case involves a number of separate and distinct allegations of product defects, negligence and other claims against five separate defendant groups – a passenger vehicle manufacturer and its affiliates (the Toyota defendants), a heavy truck manufacturer (VGNA), a trailer manufacturer (Strick), a heavy truck owner/operator (Fayard), and a trailer owner (Dolphin).[1]

2.     Because the sheer number of different theories alleged by Plaintiffs, the diverse nature of these theories and the technical complexity of several of them, and the number of parties, this case involves issues that will require (according to counsel for the various parties in

---

[1] The driver of the Volvo heavy truck and his employer have also recently been designated as responsible third parties, and their liability should additionally be considered by the experts and/or the jury. [Document #259]

the course of several recent teleconferences) the trial testimony of at least 21 expert witnesses –
and perhaps more.  For reasons discussed below, none of these experts have even been deposed.
Based on a schedule recently proposed by Plaintiffs, the first of these 21 experts cannot even be
deposed until January 2nd – only two weeks before the current January 17th deadline for
completing discovery.

3.      Defendants have been diligent in trying to move forward with expert discovery in
this case for several months now, but, through no fault of their own, have been unable to do so.
Despite Defendants' repeated requests starting as early as six weeks before Plaintiffs' November
20th designation deadline that Plaintiffs reserve deposition dates for the seven experts they have
since designated so that there would be sufficient time to schedule all of the expert depositions,
Plaintiffs refused to provide dates for each of their experts until December 9th – almost three
weeks after their expert designation deadline.  Even then, they provided no dates at all in
December even though Judge Ramirez' Amended Order and Discovery Protocol specifically
required that they provide alternative deposition dates within 30 days of a request for same
(meaning that Plaintiffs were required to have provided dates in November and/or December in
response to a number of the multiple requests made by Defendants to Plaintiffs).  Instead, the
earliest date they would provide was January 2nd, only two weeks before the deadline.
Moreover, they have agreed to present two of their primary liability experts, Keith Friedman and
Dr. Rhoades Stephenson – whose four jointly-written reports total some 200 pages and cover
diverse topics ranging from SUV structural design to fuel systems to crash restraints to heavy-
truck crash compatibility to collision warning systems to trailer ICC bar design – on only two
days (January 7th and 8th).

4.      Despite three separate efforts to confer with Plaintiffs via teleconference,

Defendants now find themselves in the impossible position of trying to take and/or present at least 21 experts for depositions between January 2nd and January 22nd (comprising 15 business days) – depositions which would take place in thirteen different cities and eleven different states. Although the parties have tentatively agreed to a brief extension of the expert discovery deadline (to January 27th) and the deadline to file motions challenging experts (to February 7th), Defendants still do not believe there is adequate time to complete the expert depositions.

5.      As it stands, it is extremely likely that the parties will be unable to complete all of the depositions.  Even if this were possible, however, it makes pre-trial motion practice involving *Daubert* challenges untenable.  Defendants anticipate making a number of *Daubert* challenges, which would have to be filed on or before February 7, 2013, to be heard in mid-to-late February, 2014 – within only a few weeks of the rapidly-approaching March 10th trial setting.

6.      Although Plaintiffs actually requested a continuance of the current March 10th trial setting on November 5th to allow *themselves* more time to complete expert discovery, they are now the only party that opposes this motion for continuance and seem intent on trying to force an impossible deposition schedule and *Daubert* motion practice on the other parties.

7.      Because Defendants have been diligent in attempting to request, take and complete expert discovery, but have been unable to do so because of Plaintiffs' delays, Defendants request a brief continuance of the current trial date to June 23, 2014, together with concomitant changes in certain expert and motions deadlines, so that the parties may have fair and adequate time to conduct and complete expert discovery in an orderly fashion and present their respective claims and defenses on the merits.

## II. ARGUMENT AND AUTHORITIES

8.      The Court has the discretion to grant a motion for continuance as part of its

inherent power to control its own docket to ensure that cases proceed before it in a timely and orderly manner. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44, 111 S.Ct. 2123, 2132 (1991). The Court should grant a continuance to allow more time for discovery when the party requesting the discovery has been diligent in requesting the discovery and doing so will not prejudice the adverse party. *See U.S. v Antioch Found.*, 822 F.2d 693, 697 (7th Cir. 1987); *see Mendez v. Perishable Distribs., Inc.*, 763 F2d 1374, 1379-80 (11th Cir. 1985). Here, Defendants have certainly been diligent in trying to schedule and take expert depositions, and Plaintiffs will not be prejudiced by a short continuance of the trial setting to allow for expert discovery and motion practice pertaining to experts to take place in an orderly fashion.

9. The expert designation deadlines in this case were originally 150 days before trial for Plaintiffs and 120 days before trial for Defendants, with expert discovery originally set to close 90 days before trial. [Document #161, pg. 2] These deadlines were later extended by 40 days each as a result of two separate emergency motions to extend expert deadlines filed by Plaintiffs. [Document #219 & 239][2] Therefore, under the current scheduling order, as amended, Plaintiffs' expert disclosure deadline was November 20, 2013; Defendants' expert disclosure deadline is December 20, 2013; and expert discovery is set to close on January 17, 2014.

10. Knowing that having 60 days to depose Plaintiffs' multiple experts[3] and 30 days to depose all the Defendants' experts would be extremely difficult given the number parties and experts, the technical issues raised, and the reality of a lengthy holiday season that would impede

---

[2] Plaintiffs will likely assert that the extensions were required based on alleged discovery abuses by defendants that were the subject of Plaintiffs' motions to compel. However, as the Court noted in the order on Plaintiffs' final motion to extend expert deadlines, "[t]he discovery motions were mostly denied." [Document #239, pg. 1]

[3] Plaintiffs refused to provide any dates for their experts' depositions before Defendants will designate theirs, so although the Defendants technically had 60 days in which to depose Plaintiffs' experts, such refusal resulted in less than a 30-day time period (and, effectively, only two weeks).

scheduling, Defendants began requesting dates from Plaintiffs to depose their experts as soon as possible after they were designated on November 20, 2013.

11.     In fact, as early as October 11, 2013, Defendants requested that Plaintiffs reserve dates so that the expert depositions could begin immediately after Plaintiffs' designation.  (*See* APP 1)  Although several subsequent requests were made to begin scheduling depositions given time and schedule limitations (see APP 3, 5, 7, 9 & 13), Plaintiffs refused to provide any information or engage in scheduling prior to their November 20th designation deadline.  In fact, only one day before their designation deadline, Plaintiffs responded to yet another request to provide dates by stating "[o]ur calculation reflects that Plaintiffs' expert reports are currently due on November 20, 2013 … Plaintiffs will propose dates for expert depositions shortly after expert reports are produced."  (APP 13)

12.     In trying to move the depositions forward, Defendants repeatedly reminded counsel for Plaintiffs of the requirement that they provide dates of availability within 30 days of the Defendants' requests, as set forth in the Court's Amended Discovery Protocol.  [Document #200, pg.1]   Despite this requirement and Plaintiffs' representation that they would provide dates shortly after their designations, Plaintiffs still refused and failed to provide actual dates and locations for their until almost three weeks later.

13.     On November 21st, Plaintiffs proposed a "theoretical" general schedule of depositions that included deposition dates for their experts only after Defendants designated their experts on December 20th, leaving less than 30 calendar days in which to schedule all parties' experts before the January 17th end of expert discovery.  (APP 16)  This "theoretical" schedule, however, did not provide firm or specific dates for any of Plaintiffs' experts and was expressly conditioned on Defendants, who had not and still have not designated experts, providing names

of and dates for their own yet-to-be-designated experts.   (APP 16)

14.    After several unsuccessful attempts to confer about and obtain deposition dates from Plaintiffs, on November 22nd the Toyota Defendants served deposition notices on Plaintiffs for the "theoretical" dates identified in Plaintiffs' November 21, 2013 letter, together with an offer to work with counsel within those dates to attempt to schedule the depositions.   (APP 20) On November 27th, Plaintiffs' counsel responded by claiming that those deposition notices were void and invalid, demanding that the notices be withdrawn, refusing to present Plaintiffs' experts on the dates noticed, and not providing any other dates of availability for their experts.   (APP 25-27)

15.    In an effort to deal with the seemingly impossible, Defendants' counsel scheduled a conference call with Plaintiffs' counsel on December 4, 2013, and then a follow-up conference call on December 6, 2013, in an attempt to divine a workable schedule for the depositions of all experts given the extreme time limitations.   In these two calls, Plaintiffs still failed to provide any actual dates of availability for any of their experts.   Moreover, Plaintiffs informed Defendants for the first time that two of Plaintiffs' primary liability experts, Keith Friedman and Rhoades Stephenson, could not be made available until mid-January (only days before the cutoff) at the earliest because *(i)* Friedman had scheduled a month-long trip to South Africa, and *(ii)* Stephenson was planning to schedule an elective surgery sometime toward the end of the year.

16.    The parties held an additional conference call regarding expert deposition scheduling on December 9th.   On this call, after two months of requests Plaintiffs provided actual dates of availability for their experts for the first time – but still wouldn't present anyone in December and gave a first available date of January 2nd for any of their experts.   Moreover,

they provided a total of two days – January 7th and 8th (seven weeks after Plaintiffs' expert designations and 10 days from the discovery cutoff) – for the depositions of Mr. Friedman and Dr. Stephenson, despite those witnesses' 200 pages of written reports and multifarious topics of designation.

17.     In an effort to facilitate the process (and despite the fact that Defendants have not yet even been required to designate their experts), each of the Defendants provided dates and locations of availability of their potential experts in January to explore the feasibility of completing these depositions.

18.     The result of the December 9th conference was an unrealistic and unworkable schedule now proposed by Plaintiffs that includes 21 experts being deposed in 13 different cities (including Atlanta, Charlotte, Boston, Philadelphia, Detroit, Kansas City, Phoenix, Los Angeles, Lafayette, and several locations in Texas) between January 2nd and January 22nd – that is, 21 depositions in only 15 business days.  (See APP 39)  This proposed schedule contains instances of two or three experts being deposed on the same day, sometimes in different states.  This schedule would thus require multiple attorneys for each party flying around the country on any given day, and some of the dates would still likely be impossible based on traveling to deposition each day (*e.g.*, depositions in Kansas City, Los Angeles, Boston/Scottsdale and Detroit/Lafayette on four consecutive days per the proposal).  Even if it is possible to obtain flights to travel between depositions, one deposition going over, one cancelled flight, or a weather delay (which is likely in January in several of these locations) would throw off the entire schedule.

19.     To further complicate matters, as discussed above Plaintiffs will not agree to offer two of their primary liability experts – Freidman and Stephenson, who are essentially wearing the hats of four, five or six different experts – for more than a total of two days (together), and

the schedule proposed by Plaintiff's counsel does not allow for any deviation from this.

20.     Finally, it should be noted that although Plaintiffs now oppose a continuance, it was Plaintiffs themselves who actually requested a continuance only one month ago in their November 5, 2013 "Expedited Motion to Amend Scheduling Order to Extend Deadline for Designation and Discovery of Experts."  [Document #231, pg. 13]

21.     Defendants will suffer actual and substantial prejudice if a continuance is not granted and expert depositions are taken (or attempted to be taken) on the highly-compressed, belated, and completely unworkable schedule recently proposed by Plaintiffs.  This includes being deprived of their right and ability to adequately prepare for each of the depositions; a likely inability have their own experts review the transcripts of the Plaintiffs' corresponding experts prior to their own depositions (or perhaps instead having to pay their own experts to fly to and attend Plaintiffs' experts' depositions); and not allowing certain attorneys to attend and take certain depositions because the compressed schedule does not allow such.  Additionally, simply moving the expert discovery deadlines and expert motions deadline back further without moving the trial date will push these deadlines within 30 days of trial, potentially precluding the parties from being able to meet the current deadlines, impeding their ability to submit their pretrial materials, and impinging on their time and ability to prepare for trial.

22.     This request for continuance is not merely for delay, but so that justice may be done and so that discovery can proceed on an orderly manner.

23.     This continuance will not prejudice Plaintiffs because it will allow them to adequately prepare for and take the expert depositions as well.  Moreover, the need for the continuance is based on Plaintiffs' refusal and/or inability to provide dates for their experts with reasonable time left in expert discovery.

24.     Defendants orally conferred with Plaintiffs' counsel during the December 4th, 6th and 9th phone calls about continuing the trial for a short period in order to allow more time for expert discovery.   Plaintiffs' counsel, Nick Pittman, stated that he would not agree to a continuance.

25.     Counsel for the Toyota defendants has indicated that they do not oppose the relief sought in this motion.

26.     This motion is verified.

### III.   CONCLUSION AND PRAYER

Despite Defendants' best efforts to timely and reasonably schedule expert depositions before the existing expert discovery deadline, it has proven impossible – and a continuance of the current trial setting is necessary to accommodate the necessary extension of time to conduct discovery of expert witnesses and for related deadlines.   Defendants do not request a change in their expert disclosure deadlines.   Defendants VGNA, Strick, Fayard and Dolphin therefore jointly request the Court continue the current trial setting and enter an amended scheduling order as follows:

1)      This case be reset for trial commencing on June 23, 2014;

2)      The expert discovery deadline be extended to April 9, 2014;

3)      The deadline for all motions, including any objections to expert testimony be extended to April 16, 2014; and

4)      The deadline for the filing of pretrial materials be extended to May 23, 2014.

Defendants request any further relief, at law or in equity, to which they are justly entitled.

Respectfully submitted,

_____
**Randy Howry**
State Bar No. 10121690
rhowry@howrybreen.com
**Pat Fitzgerald**
State Bar No. 24036566
pfitzgerald@howrybreen.com
**John Carlson**
State Bar No. 00790426
jcarlson@howrybreen.com

**Howry Breen & Herman, LLP**
1900 Pearl Street
Austin, Texas  78705-7300
512-474-7300
512-439-4106 - Direct Line
512-474-8557 – Facsimile

**ATTORNEYS FOR DEFENDANT VOLVO
GROUP NORTH AMERICA, LLC f/k/a
VOLVO TRUCKS NORTH AMERICA**

/s/ with permission

_____

**Donald H. Dawson, Jr.**
State Bar No. 05606500
ddawson@dawson-clark.com
**Kathleen A. Clark**
State Bar No. 00788830
kclark@dawson-clark.com

**Dawson & Clark, P.C.**
243 W. Congress
600 Marquette Building
Detroit, MI  48226
313-256-8900
313-256-8913 (Fax)

and

**S. Todd Parks**
State Bar No. 15526520
Todd.parks@wbclawfirm.com
**Ashley De La Cerda**
State Bar No. 24045760
Ashley.delacerda@wbclawfirm.com

**Walters, Balido & Crain, LLP**
900 Jackson Street, Suite 600
Dallas, Texas  75202
214.749.4805
214.760.1670 (fax)

**ATTORNEYS FOR DEFENDANT
STRICK TRAILERS, LLC**

11

/s/ with permission

_____

**Michael P. Sharp**
State Bar No. 00788857
msharp@feesmith.com
**Scott W. Self**
State Bar No. 24033176
sself@feesmith.com

**Fee, Smith, Sharp & Vitullo, LLP**
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas  75240
972-934-9100
972-934-9200 (fax)

**ATTORNEYS FOR DEFENDANT JOHN
FAYARD MOVING & WAREHOUSE, LLC**


/s/ with permission

_____

**John S. Kenefick**
State Bar No. 24006294
jkenefick@macdonalddevin.com
**Joseph F. Henderson**
State Bar No. 24036751
jhenderson@macdonalddevin.com

**Macdonald Devin, P.C.**
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas  75270
214-744-3300
214-747-0942 (fax)

**ATTORNEYS FOR DEFENDANT
DOLPHIN LINE, INC.**

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that Defendants conferred with Plaintiffs' counsel, Aubrey "Nick" Pittman, during the December 4, 6 & 9, 2013 phone calls referenced in the foregoing motion about continuing the trial in this case for several months in order to allow more time for expert discovery.  Mr. Pittman stated that he would not agree to any continuance.



_____
John Carlson

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 13th day of December, 2013, a true and correct copy of the above and foregoing was forwarded to all non-registered counsel of record in accordance with the Federal Rules of Civil Procedure to all registered counsel of record by electronic service through the court's ECF system in compliance with Federal Rule of Civil Procedure 5(b)(2)(E) and 5(b)(3).

_____
Randy Howry