## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE,** | § § § § § § § | |
| | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| **Plaintiffs,** | § § | |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC.** | § § § § § § § § § § § § § § | |
| **Defendants.** | § | |

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR RESPONSE TO VOLVO GROUP NORTH AMERICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................... iii

I.      PRELIMINARY STATEMENT .................................................................... 1

II.     ARGUMENT AND AUTHORITIES ............................................................. 1

        A.      The Applicable Summary Judgment Principles .................................... 1

        B.      Disputed Issues of Fact Preclude Summary Judgment as a Matter of Law on
                Plaintiffs' Misrepresentation Claims. .................................................. 2

                1.      Elements of the Misrepresentation Claims. ................................ 2

                2.      Disputed issues of fact exist regarding Plaintiffs' misrepresentation
                        claims. ..................................................................................... 5

                        a.      VGNA knowingly made material misrepresentations about all
                                of its vehicles, which obviously includes the Volvo Truck that
                                traveled alongside and behind the decedents. ................................ 5

                        b.      VGNA knew, or should have known, that its representations
                                were false and misleading. .............................................. 8

                        c.      VGNA intended that its representations be acted upon and the
                                Greene Family relied upon VGNA's representations. ................... 10

                        d.      VGNA and Volvo's representations caused injury to the
                                Greene family. ........................................................... 12

III.    CONCLUSION ............................................................................................ 12

CERTIFICATE OF SERVICE ................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

*Amstadt v. U .S. Brass Corp.*, 919 S.W.2d 644 (Tex.1996)............................................................. 3

*Bradford v. Vento*, 48 S.W.3d 749 (Tex.2001) .............................................................................. 3

*Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex.1981)................................................... 3

*Cleveland Mack Sales, Inc. v. Foshee*, 2001 WL 1013393 (Tex.App.-Houston [14th Dist.]
    Sept. 6, 2001, pet. denied)........................................................................................................ 8

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573 (Tex.2001).............................. 3

*Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439 (Tex.1991) ................................................ 4

*Hiller v. Kawasaki Motors Corp.*, 671 P.2d 369 (Alaska 1983)..................................................... 4

*Hines v. Hash*, 843 S.W.2d 464 (Tex.1992) ................................................................................. 3

*HOW Ins. Co. v. Patriot Fin. Serv. of Tex., Inc.*, 786 S.W.2d 533 (Tex.App.-Austin 1990) ........ 3

*Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186 (5th Cir.1988) .............................................. 1

*Jack Roach-Bissonnet, Inc. v. Puskar*, 417 S.W.2d 262 (Tex.1967) .............................................. 4

*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742 (Tex.2003). ........................................................ 2

*King v. Kayak Mfg. Corp.*, 182 W.Va. 276, 387 S.E.2d 511 (1989) .............................................. 4

*Ladd by Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83 (Tenn.Ct.App.1996) ............................ 8

*Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167 (5th Cir.1990) ............................ 2

*Leichtamer v. American Motors Corp.*, 67 Ohio St.2d 456, 424 N.E.2d 568 (Ohio 1981)............ 4

*Lewis & Lambert Metal Contractors, Inc. v. Jackson*, 914 S.W.2d 584 (Tex.App.-Dallas 1994). 6

*Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77 (5th Cir.1988) ...................... 1

*Malek v. Miller Brewing Co.*, 749 S.W.2d 521 (Tex.App.-Houston 1988).................................... 6

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............................ 1

*McCathern v. Toyota Motor Corp.*, 332 Or. 59, 23 P.3d 320, 330–32 (Or.2001)......................... 5

*Miles v. Ford Motor Co.*, 2001 WL 727355 (Tex.App.-Dallas 2001)............................................ 4

*Milt Ferguson Motor Co. v. Zeretzke*, 827 S.W.2d 349 (Tex.App.-San Antonio 1991, no writ)... 8

*Moore v. It's All Good Auto Sales, Inc.*, 907 F.Supp.2d 915 (W.D.Tenn. Oct 01, 2012).............. 8

*Rehler v. Beech Aircraft Corp.*, 777 F.2d 1072 (5th Cir.1985) ..................................................... 5

*U.S. Pipe & Foundry Co. v. City of Waco*, 108 S.W.2d 432 (1937) .............................................. 8

**Rules**

TEX.BUS.&COM.CODE § 17.46(b) ............................................................................................... 2

TEX.BUS.&COM.CODE § 17.50(a)............................................................................................... 2

**Treatises**

RESTATEMENT (SECOND) OF TORTS § 531 cmt. d (1977) .................................................... 4

RESTATEMENT (SECOND) OF TORTS: NEGLIGENCE § 402B (1965) ............................... 6

## I.      PRELIMINARY STATEMENT

In addition to other claims that are not the subject of Volvo Group North America's ("VGNA") Motion for Partial Summary Judgment, Plaintiffs' Second Amended Complaint (the "Complaint") alleges that in various commercials, internet postings, periodicals, press releases, etc., VGNA represented that the safety of its vehicles is utmost.  These representations were intended to, and did cause individual to rely on VGNA's widely distributed statements in making their purchases of VGNA vehicles, as well as in driving other vehicles in the proximity of VGNA trucks.  VGNA made these misrepresentations of the quality, reliability and safety of its vehicles, including the VGNA truck involved in this incident, all to the detriment of the Greene Family and Plaintiffs.  The summary judgment evidence submitted with this Response establishes that Plaintiffs have submitted more than a scintilla of evidence to establish that VGNA is not entitled to summary judgment on any of the claims on which VGNA's motion for summary judgment is based.  Accordingly, the motion should be denied in its entirety.

## II.      ARGUMENT AND AUTHORITIES

### A.      The Applicable Summary Judgment Principles

In consideration of VGNA's Motion for Partial Summary Judgment, all reasonable inferences must be drawn in favor of the Plaintiffs.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, although it may not be in admissible form.  *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir.1988).  Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party.  *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir.1988).  The non-moving party may

1

also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990). Moreover, a nonmovant will defeat a no-evidence summary judgment motion if the nonmovant presents more than a scintilla of probative evidence on each element of her claim. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003).

> **B.     Disputed Issues of Fact Preclude Summary Judgment as a Matter of Law on Plaintiffs' Misrepresentation Claims.**

As stated above, Plaintiffs' Complaint alleges that in various commercials, internet postings, periodicals, press releases, etc., VGNA represented that the safety of its vehicles is paramount. These representations were intended to, and did, cause consumers such as the Greene Family to rely on VGNA's statement. Specifically, VGNA made misrepresentations of the quality, reliability and safety of its vehicles, including the VGNA truck, all to the detriment of the Greene Family and Plaintiffs.

> **1.     Elements of the Misrepresentation Claims.**

First, a consumer may bring a DTPA cause of action for either a violation of TEX.BUS.&COM.CODE § 17.46(b) of the DTPA (the "laundry list") relied on by the consumer to the consumer's detriment or for an unconscionable action or course of action if the violation or action "constitute[s] a producing cause of economic damages or damages for mental anguish." TEX.BUS.&COM.CODE § 17.50(a)(1), (3) (West 2011). Under section 17.46(a), false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful. In this case, VGNA violated §§ 17.46(b)(7), (13), (24) of the laundry list when it (i) represented that the Volvo Truck was of a particular standard, quality, or grade, or that it was of a particular style or model, when it was of another; (ii) knowingly made false or misleading statements of fact concerning the safety of the Volvo truck and the VGNA's efforts directed towards safety; and (iii) failed to disclose information concerning the Volvo Truck that was known at the time of

2

the transaction since such failure to disclose such information was intended to induce a consumer into a transaction into which the consumer would not have entered had the information been disclosed.   "Privity of contract with a defendant is not required for the plaintiff to be a consumer." *Amstadt v. U .S. Brass Corp*., 919 S.W.2d 644, 649 (Tex.1996). Further, "[t]he consumer does not have to be the actual purchaser of the goods in order to be classified as a consumer under the DTPA."   *Cameron v. Terrell & Garrett, Inc*., 618 S.W.2d 535, 539 (Tex.1981); TEX. BUS. & COM.CODE §§ 17.45(4) and 17.50(a); *HOW Ins. Co. v. Patriot Fin. Serv. of Tex., Inc*., 786 S.W.2d 533, 539 (Tex.App.-Austin 1990), overruled on other grounds by *Hines v. Hash*, 843 S.W.2d 464 (Tex.1992).

Second, the elements of a cause of action for fraud are: (1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party suffered injury as a result. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co*., 51 S.W.3d 573, 577 (Tex.2001); *Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex.2001).   Texas does not require privity to establish fraud.   *Ernst & Young*, 51 S.W.3d at 578 ("Our fraud jurisprudence has traditionally focused not on whether a misrepresentation is directly transmitted to a known person alleged to be in privity with the fraudfeasor, but on whether the misrepresentation was intended to reach a third person and induce reliance."). To prove that an alleged fraudfeasor had reason to expect reliance,

> [t]he maker of the misrepresentation must have information that would lead a
> reasonable man to conclude that there is an especial likelihood that it will reach
> those persons and will influence their conduct. There must be something in the
> situation known to the maker that would lead a reasonable man to govern his

3

conduct on the assumption that this will occur. If he has the information, the maker is subject to liability under the rule stated here.

*Id*. at 581 (quoting RESTATEMENT (SECOND) OF TORTS § 531 cmt. d (1977)).

Third, the elements of a cause of action for negligent misrepresentation are: (1) the representation is made by a defendant in the course of its business, or in a transaction in which it has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991).

As the Court will note, one of the key elements in each of these causes of action is the "representations" made by the seller and/or manufacturer, in this case VGNA.  Plaintiffs are entitled to present evidence regarding the representations made by VGNA in its press releases, advertisements, handbooks, manuals, etc.  *See, e.g. Jack Roach-Bissonnet, Inc. v. Puskar*, 417 S.W.2d 262 (Tex.1967)(Puskar relied on the 'Owner's Manual' and dealer's warranty as well as the sales advertising to the public generally. Such reliance is sufficient to support a cause of action based on breach of warranty and negligent misrepresentations); *Miles v. Ford Motor Co*., 2001 WL 727355 (Tex.App.-Dallas 2001)(Ford's instructions in the owner's manual were inadequate to warn of the dangers of the tension eliminator feature and therefore made the seat belt extremely dangerous).  Courts have also held that a manufacturer's advertisements indicate a use of the product a manufacturer was able to foresee. *See, e.g., Hiller v. Kawasaki Motors Corp*., 671 P.2d 369, 373 (Alaska 1983); *see also King v. Kayak Mfg. Corp*., 182 W.Va. 276, 387 S.E.2d 511 (1989) (citing cases); *Mikolajczyk v. Ford Motor Co*., 231 Ill.2d 516, 901 N.E.2d 329, 352 (Ill.2008) (finding advertising content relevant to assess consumer expectations); *Leichtamer v. American Motors Corp.*, 67 Ohio St.2d 456, 424 N.E.2d 568, 578 (Ohio 1981)

("The commercial advertising of a product will be the guiding force upon the expectations of consumers with regard to the safety of a product, and is highly relevant to a formulation of what those expectations might be."); *McCathern v. Toyota Motor Corp*., 332 Or. 59, 23 P.3d 320, 330–32 (Or.2001) (consumer expectations can be established by manufacturer's representations about product).

Here, Plaintiffs are able to present more than a scintilla of evidence to allow this matter to proceed to a jury trial on each of the three varieties of Plaintiffs' misrepresentation claims.

> **2.** **Disputed issues of fact exist regarding Plaintiffs' misrepresentation claims.**
>
> > **a.** **VGNA knowingly made material misrepresentations about all of its vehicles, which obviously includes the Volvo Truck that traveled alongside and behind the decedents.**

Section 402B provides the following:

> One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though
>
> > (a)    it is not made fraudulently or negligently, and
> >
> > (b)    the consumer has not bought the chattel from or entered into any contractual relation with the seller.

Restatement (Second) of Torts: Negligence § 402B (1965).  The Fifth Circuit recognized the American Law Institute's Comments to § 402B in its decision in *Rehler v. Beech Aircraft Corp*., 777 F.2d 1072, 1079 n. 11 (5th Cir.1985). Comment "h" provides that § 402B '"is limited to misrepresentations which are made by the seller to the public at large, in order to induce purchase of the chattels sold, or are intended by the seller to, and do, reach the public. The form of the representation is not important. It may be made by public advertising in newspapers or television, by literature distributed to the public through dealers, by labels on the product sold, or leaflets accompanying it, or in any other manner, whether it be oral or written.'" *Id*. (emphasis

added).   Indeed, it is well-settled in Texas that § 402B addresses misrepresentations that are made to the public. *Lewis & Lambert Metal Contractors, Inc. v. Jackson*, 914 S.W.2d 584, 590 (Tex.App.-Dallas 1994), vacated per settlement, 938 S.W.2d 716 (Tex.1997) (§402B applies only to misrepresentations made to public); *Malek v. Miller Brewing Co.*, 749 S.W.2d 521, 526 (Tex.App.-Houston 1988).

In an effort to convince consumers to feel comfortable riding in and around Volvo trucks, Volvo promotes publicly that "[a]t Volvo Trucks, safety isn't an option. It's standard."  APP 060-061.   In publicly distributed material Volvo represents that "trucks safety is of utmost concern to us" APP 002.  Volvo has also promised road users, "Volvo Trucks is in the forefront of traffic safety and today's Volvo trucks are among the safest in the world."  APP 003.  Volvo has another campaign where it has consistently represented that Volvo practices a "safety for life" philosophy, where it promises safety for life and represents that it builds vehicles "primarily to help the driver to avoid accidents," and "that take account of the safety of the occupants of other cars and of <u>unprotected road users</u>."  APP 006-009

Volvo also publicly stated,

The top priority for us at Volvo Trucks is to prevent accidents from occurring and to minimise possible injuries by building trucks with maximum safety and protection of the driver and passenger.  **Since safety also involves <u>other road-users</u>, our product safety programme is designed to encompass them as well**.

APP 004-005.  In other words, Volvo is attempting to inform other drivers that Volvo has recognized that safety has to involve other users on the road and that Volvo is working to protect those other road users, not just Volvo truck drivers. Volvo has also used average consumers to represent in advertisements that Volvo has a "reputation for safety."  APP 001  In the years before the Greene's accident, Volvo was issuing press releases advertising that it has the safest cars on the market and that it has advanced

6

grades of steel with energy-absorbing abilities.  APP 063-066. But, as discussed below, these representations were false.  Volvo Trucks in the United States did not have energy-absorbing abilities.   Volvo was even representing that it was developing cars and technology that would prevent "anyone" from getting killed. APP 067-069.  Around this same time, Volvo was also representing across the world that Volvo was such a safety leader that by the year 2020, no one would be "killed or injured in a Volvo." APP 070-072.  In or about 2010, Volvo was also representing that "n]ew systems such as adaptive cruise control and monitoring of blind spots considerably boost safety levels for drivers, other road users, the truck and its cargo."  APP 010-011  And Volvo represented that its trucks were "[e]quipped with the latest safety technology."  *Id.*  But, as explained below, these representations were false.  Volvo trucks in the United States were not provided with this so-called latest technology.

Clearly, it goes without saying that Volvo's representations about its alleged safety emphasis and alleging that it had the latest and greatest safety technology were obviously being made to convince Volvo drivers and other users on the road that Volvo's cars and trucks were the safest on the road to ride in and around.

It is not excusable for VGNA to contend that its statements about alleged unparalleled safety were puffery or a statement of opinion.  Determining whether a statement is one of fact or one of opinion involves consideration (1) of "the specificity of the alleged misrepresentation, (2) the comparative knowledge between the buyer and seller, and (3) whether the representation concerns past or present conditions, or future considerations. Misrepresentations concerning future conditions or performance of a good are actionable under the DTPA. *Cleveland Mack Sales, Inc. v. Foshee*, 2001 WL 1013393, *4–6 (Tex.App.-Houston [14th Dist.] Sept. 6, 2001,

7

pet. denied); *Milt Ferguson Motor Co. v. Zeretzke*, 827 S.W.2d 349, 357 (Tex.App.-San Antonio 1991, no writ). Here, there is no dispute that the misrepresentations were very specific and that consumers did not have the knowledge about the VGNA products that VGNA had. *U.S. Pipe & Foundry Co. v. City of Waco*, 108 S.W.2d 432, 436–37 (1937) ("Superior knowledge of seller, in conjunction with the buyer's relative ignorance, operates to make the slightest divergence from mere praise into representations of fact effective as a warranty."). Furthermore, it is clear that VGNA was making a representation of future considerations, *i.e.*, that the alleged safety features would keep the consumers safe "in the future" as they ride in and around Volvo cars and trucks. Moreover, VGNA's representations that they are building "accident or injury free" vehicles is clearly a representation of a future promise. Therefore, VGNA is not entitled to a summary judgment on this claim. *Moore v. It's All Good Auto Sales, Inc.*, 907 F.Supp.2d 915 (W.D.Tenn. Oct 01, 2012)(at this stage in the pleadings the Court may not weigh the evidence…the question of whether a particular statement amounts to an actionable misrepresentation will generally be left to the jury). Nor can VGNA contend that the Court should not consider statements made about VGNA's products overall. *Ladd by Ladd v. Honda Motor Co., Ltd*., 939 S.W.2d 83, 100 (Tenn.Ct.App.1996)(representations concerning safety of all of manufacturer's products can provide basis for recovery in products liability action based on innocent misrepresentations by manufacturer where advertising contained misrepresentations applicable to all products).

**b.   VGNA knew, or should have known, that its representations were false and misleading.**

Volvo represents in its foreign information that,

Volvo Trucks leads the development of safe trucks, with comprehensive equipment for both accident preventive and injury-reducing safety. An example of equipment currently available and which we are working on for the future is FUPS - Front Underrun Protection System. It significantly reduces the risk of a car becoming wedged under the front of a truck in a

8

head-on collision. Today, Volvo Trucks is the only manufacturer to offer
an integrated energy absorbing underrun protection system as standard.

APP 004-005.  Volvo also acknowledges that it was using front underrun protection in

Europe, with one objective being to "save the lives of other road users."  APP 058-059.  The

problem, however, is that Volvo was not using this safety technology in the United States on the

trucks that traveled the roads where the Greene family, and road users traveled.  In fact, Volvo's

corporate representative testified that Volvo knew of a safety add-on device known as the Vorad

Collision Warning System since the late 1990's and that it was designed to prevent accidents

involving Volvo trucks and other vehicles on the road.  Deposition of Gregory Prinzo at 19:11 –

20:25, 35:1-7, 74:18 – 75:14 (APP 097 - 106). VGNA's representatives also testified that there

was other safety technology used on its foreign trucks since 1999 that was known as

Adaptive/Automatic Cruise Control. Deposition of Charles Bird at 127:17 – 130:21 (APP 090-

093).  This technology was also designed to successfully prevent accidents like the one that

happened with the Greene family and VGNA admits that it knew that the technology could

reduce accidents and save lives.  Deposition of Charles Bird at 82:20 – 84:21 (APP 076-078).

However, VGNA never tried to change the U.S. trucks to add this safer technology.  Deposition

of Charles Bird at 100:3 – 102:23 (APP 087-089).  In addition, a Volvo truck similar to the one

that collided with the Greene's 4Runner was involved in an accident a year or so before this

accident that also included a SUV.  In that accident, the U.S. Government concluded that two of

the factors that led to the severity of the injuries in that accident were the lack of a collision

warning system and the high aggressivity of the heavy Volvo truck.  Deposition of Charles Bird

at 92:1 – 99:22 (APP 079-086). Accordingly, Volvo was aware that it was a misrepresentation to

promote the Volvo U.S. trucks as the safest trucks available.

In sum, there should be no dispute that Volvo knew that its vehicles were far from the safest on the road. The U.S. Department of Transportation's National Highway Traffic Safety Administration required that Volvo pay $1.5 million in civil penalties for its failure to report safety defects and noncompliances to the federal government in a timely manner. APP 051-052. Volvo had recalls of its VN model (the model of truck involved in the Greene accident) and other trucks for model years 2007-2014 as a result of Volvo building the trucks without a redundant clutch disengagement switch. APP 035. The result of this massive oversight is that "without a signal to disengage the clutch when the brakes are applied, the distance required to stop the truck may lengthen, increasing the risk of a crash." *Id.*

Indeed, recent recalls of Volvo cars trucks and its subsidiary Mack Trucks, totaled 14 which exceed that of many of the other truck manufacturers. APP 053-057. There have been 17 recalls on VNL vehicles in recent years and 38 recalls since 1990. APP 036-050. At the very least, VGNA's substantial recalls, along with the evidence discussed above of VGNA's misrepresentations of safety features, raise a genuine issue of material fact whether VGNA misled the public, and the Greene family, when it campaigned to convince consumers that VGNA produced the safest cars and trucks on the market, and that it was safe to ride in and around the Volvo trucks.

          **c.**       **VGNA intended that its representations be acted upon and the Greene Family relied upon VGNA's representations.**

It is undisputed that VGNA's actions were intended to gain the trust of the public (and the Greene family) by appealing to their desire for safety and a need to associate with a manufacturer whose word they felt they could trust. The effect of this campaign is that it led to customers buying more products from Volvo and more road users who felt more comfortable in and around Volvo products. It is also clear that VGNA misled the Greene family, as well as

other unsuspecting consumers, through its misrepresentations that Volvo designed its vehicles with safety of the driver and other road users in mind.  Safety was extremely important to Wyndell Greene, Sr., especially once he had kids.  (APP 107-110, ¶11).  Safety in and around vehicles was even more crucial to Wyndell Greene considering that he and his family traveled in their SUVs quite frequently on vacation trips, going back-and-forth from the kids' schools as well as to and from the kids' extracurricular activities.  *Id.*  Mr. Greene spent time reading magazines, newspapers and watching TV with his family, where advertisements of products and cars are displayed.  It was within Wyndell Greene's character to rely on advertisements and representations made by designer and manufacturers such as Volvo about their vehicles, especially on things such as safety, reliability, and suitability for being around families with kids. He was a very trusting person.  *Id*.  Wyndell Greene's brother recalls that once Wyndell Greene got married and had kids he would do extensive reviews of a company's information before deciding to buy anything that would be used with or around his kids and paid specific attention to whether the products he and his wife purchased were safe.  (APP 107-110, ¶4).  From what materials he saw and read Wyndell Greene indicated that he felt his family was safe driving in or around Volvo cars and trucks.  (APP 107-110, ¶7). On one or more instances, Wyndell Greene asked his brother if he had heard anything to the contrary and William Greene told Wyndell Green that he had been seeing the same types of statements about the supposed safety of Volvo cars and trucks and that he had also assumed what VGNA was telling the world was true and felt that there products were the safest as VGNA claimed. (APP 107-110, ¶7).

In sum, the evidence demonstrates that Volvo began making misrepresentations regarding the safety of its vehicles on the highways around other road users, including its collision avoidance features, prior to the time the Greene family decided to share the road with

the Volvo truck.  Volvo's misrepresentations continued throughout the entire time the Greene family traveled alongside various Volvo vehicles, and continue through today. It is undisputed that the Greene family relied on Volvo's misrepresentations when they decided to travel in and around Volvo cars and trucks, up until they died in the unsafe 4Runner.  Indeed, a comment from another road user that his discovery of the truth about Volvo's unsafe trucks confirms what Plaintiffs have argued – that knowing of Volvo's recalls (e.g. unsafe trucks) gives him a different, and less than safe, feeling about driving around Volvo trucks now.  APP 062

> **d.    VGNA and Volvo's representations caused injury to the Greene family.**

The evidence is clear that the Greene family relied on VGNA's representations when they thought it was safely to cruise alongside Volvo trucks.  The evidence is also clear that these representations caused injury to the Greene family as three of the family members died at the scene and Mr. Greene died a few months later as the result of the burns he suffered from the fire that originated in the accident.  According to the autopsy reports, Lakeysha Greene, Wyndell Greene, Jr. and Wesleigh Greene, died as a result of blunt force trauma.  Wyndell Greene sustained burns and other injuries and died three months later."  See, Docket Entry No. 71. Thus, it is clear that this element is satisfied.

### III.    CONCLUSION

As explained herein, the VGNA has no justifiable grounds upon which to receive summary disposition of the claims in its motion.  The undisputed evidence demonstrates that there are disputed issues of fact as to each of Plaintiffs' causes of action.  Accordingly, summary judgment should be denied.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that the Court deny VGNA's motion for partial summary judgment, and grant Plaintiffs such other and further relief, in law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted,

/s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

/s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 24, 2013, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.


  /s/ Aubrey "Nick" Pittman_____
AUBREY "NICK" PITTMAN

14