**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE,** | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| **Plaintiffs,** | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| **TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC.** | § | |
| **Defendants.** | § | |

# PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR CONTINUANCE


AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

ARGUMENT AND AUTHORITIES ..... 2

A. Plaintiffs Have Not Obstructed Expert Discovery in This Matter and have Done Everything in Their Power to Ensure that All Experts are Presented Timely for Deposition. ..... 3

B. Defendants Have No Need to Alter the December 9, 2013, Expert Deposition Schedule Reached by the Parties. ..... 10

C. Defendants Rejected Plaintiffs' Offer to Have All Depositions Take Place in Dallas as a Matter of Convenience for All Parties and Their Experts. ..... 11

D. Defendants Offer No Good Cause to Alter the Default Rules on Expert Discovery. ..... 12

E. The Alleged Diverse and Technical Nature of the Experts' Reports is No Reason to Continue Discovery and Trial. ..... 13

F. The Continuance Requested By Defendants Will Cause Prejudice to Plaintiffs. ..... 14

CONCLUSION ..... 15

CERTIFICATE OF SERVICE ..... 16

# TABLE OF AUTHORITIES

## Cases

*Hodges v. United States*,
597 F.2d 1014 (5th Cir.1979) ........................................ 2

*Industrial Maritime Carriers (Bahamas) Inc. v. Luxor California Exports Corp.*,
137 F.3d 1351 (5th Cir. 1998) ........................................ 2

*Martel v. County of Los Angeles*,
56 F.3d 993 (9th Cir.1995) ........................................ 2

*United States v. Antioch Foundation*,
822 F.2d 693 (7th Cir.1987) ........................................ 2

*United States v. German*,
486 F.3d 849 (5th Cir.2007) ........................................ 2

## Rules

FED.R.CIV.P. 16(b)........................................ 2

FED.R.CIV. P. 26(b)(4)(A)........................................ 4

Ollie Greene, Individually and as the surviving parent of Wyndell Greene, Sr., William Greene, as the Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and as the surviving parent of LaKeysha Greene (collectively referred to as "Plaintiffs") file this Response to the Expedited Motion for Continuance (Doc. 273) filed by Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Sales USA, Inc., (collectively, "Toyota"), and the Motion for Continuance (Doc. 272) filed by Defendants Volvo Group North America, LLC, a/k/a Volvo Trucks North America, ("VGNA") Strick Trailers, LLC, ("Strick") John Fayard Moving & Warehouse, LLC, ("Fayard") and Dolphin Line, Inc. ("Dolphin") (all defendants are collectively hereinafter referred to as "Defendants"), as follows:

**PRELIMINARY STATEMENT**

In an effort to gain yet another continuance of the trial of this matter, Defendants have resorted to mischaracterizing the nature of correspondences between the parties, creating an expert discovery backlog where there is none, overstating travel concerns related to the expert depositions, and misrepresenting Defendants' alleged diligence in attempting to schedule expert discovery. The truth is that it has been Plaintiffs that have done the yeoman's work in attempting to arrange reasonable accommodations for the expert depositions, ensuring especially that Defendants have the opportunity to take the depositions of Plaintiffs' experts within the time provided in the current Scheduling Order. However, it has been several of the Defendants that have not provided at least five "available" dates for the depositions of Defendants' experts and who have refused to consider alternate locations or plans for their experts.

The record will reflect that all burden-of-proof and opposing expert reports have been produced. Rebuttal reports are due in a few days. Pursuant to the arrangement discussed by the parties to extend expert discovery by approximately ten (10) days, if necessary, the parties are

now in a position where they will be able to take the depositions of all experts in time to prepare Daubert motions, if any, and have this matter ready for trial on the date provided in the current Scheduling Order. Thus, the current Scheduling Order presents no prejudice to Defendants, and they cannot establish good cause for a continuance of discovery or trial. Therefore, the Court should deny the motions for continuances.

**ARGUMENT AND AUTHORITIES**

Rule 16(b) of the Federal Rules of Civil Procedure authorizes the district court to control and expedite pretrial discovery through a scheduling order. Consistent with the authority vested in the trial court by rule 16, the trial court has "broad discretion to preserve the integrity and purpose of the pretrial order." *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir.1979) (affirmed refusal to modify pre-trial order); see also FED.R.CIV.P. 16(b), Advisory Committee Note (trial court may modify scheduling order for good cause). In moving for a continuance based on an allegation of a lack of an opportunity to take discovery, the movant must show "actual and serious" prejudice if not permitted to get evidence. *See e.g., United States v. German*, 486 F.3d 849, 854 (5th Cir.2007) (noting that "serious prejudice" is required to find abuse of discretion on a motion for continuance); *Martel v. County of Los Angeles*, 56 F.3d 993 (9th Cir.1995)("a district court's decision to deny a continuance sought for the purposes of obtaining discovery will be disturbed only 'upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant.'").

Generally, the common thread in the rare cases that reverse the denial of a continuance is the existence of changed circumstances to which a party cannot reasonably be expected to adjust without an extension of time. The typical "changed circumstances" include illness of a key witness, illness of counsel on the eve of trial, or newly discovered evidence. *Industrial Maritime Carriers (Bahamas) Inc. v. Luxor California Exports Corp*., 137 F.3d 1351 (5th Cir. 1998). On

the other hand, where there are no changed circumstances and a litigant fails to take advantage of opportunities to conduct discovery, this court has upheld the denial of additional time to conduct discovery. *See United States v. Antioch Foundation*, 822 F.2d 693, 697 (7th Cir.1987). In this case, Defendants have had, and still have an opportunity to take the expert discovery it seeks without the Court having to continue the trial date. In other words, Defendants suffer no prejudice from the expert discovery proceeding as currently scheduled. Accordingly, the Court should deny the motions for continuance.

**A. Plaintiffs Have Not Obstructed Expert Discovery in This Matter and have Done Everything in Their Power to Ensure that All Experts are Presented Timely for Deposition.**

Considering that Defendants have mischaracterized the true nature, contents, and intent of communications between the parties leading up to the Motions for Continuance, Plaintiffs include here a more accurate picture of the communications between the parties related to the scheduling of expert depositions:

1. On or about October 11, 2013, Plaintiffs' counsel received correspondence from one of Strick's counsels, Kathleen Clark ("Clark"), seeking to set "target dates" for expert depositions between November 14, 2013 and December 3, 2013. See, VGNA APP 1-2.

2. On or about October 15, 2013, one of Toyota's counsels, Jude Hickland ("Hickland"), submitted correspondence to Plaintiffs' counsel seeking to set dates for expert depositions that were different from those submitted by co-defendant Strick, which demonstrated that Defendants had not collaborated and/or agreed on proposed dates. The potential dates being discussed in Mr. Hickland's letter were approximately 8-10 weeks from the date of his letter. See, VGNA APP 3-4.

3. On October 16, 2013, Plaintiffs' counsel responded to Ms. Clark's and Mr. Hickland's October letters informing them that the "target dates" being proposed would not work

since "some of the experts will not have completed their initial and/or rebuttal reports by the dates" being suggested.[1] However, in an effort to ensure that the experts began thinking about potential deposition dates, Plaintiffs' counsel also stated in the letter, "Plaintiffs will ask their potential testifying experts to hold as many dates open of the days following dissemination of the reports as possible and ask that Defendants do the same." Pltfs' APP 032.

4. On October 29, 2013, Strick's counsel wrote in response to the October 16, 2013, letter from Plaintiffs' counsel but again proposed several invalid dates[2] for the depositions of Plaintiffs' experts that were prior to the November 20, 2013, due date for expert reports. See, VGNA APP 5-6.

5. On or about November 4, 2013, Mr. Hickland submitted a follow-up letter discussing potential dates in December 2013 for the depositions of Plaintiffs' experts, but suggesting that the depositions of Defendants' experts not be scheduled until approximately a month later. See, VGNA APP 7-8. In any event, on November 5, 2013, Plaintiffs filed a second motion to extend until December 19, 2013 the time for disclosure of Plaintiffs' experts and to set the close of expert discovery for February 17, 2014. See, Dkt. Entry No. 231. Defendants opposed the motion for continuance, which would have allowed the parties to avoid to scheduling depositions during the Christmas and New Year's holidays.

6. On or about November 7, 2013, Strick's counsel wrote to Plaintiffs' counsel but again proposed several invalid dates[3] for the depositions of Plaintiffs' experts that were prior to the November 20, 2013, due date for expert reports. See, VGNA APP 9.

---

[1] FED.R.CIV. P. 26(b)(4)(A) prohibits expert discovery before reports are served. Therefore, the Federal Rules expressly precluded Defendants from taking the depositions on most of the dates proposed.

[2] *Id.*

[3] *Id.*

7. On or about November 8, 2013, the Court granted in part Plaintiffs' second motion to extend expert deadlines and extended until November 20, 2013, the date upon which Plaintiffs' expert reports were due. See, Dkt. Entry No. 239.

8. On or about November 18, 2013, Toyota's counsel, Kurt Kern, penned an email to Plaintiffs' counsel wherein he stated, with regard to the depositions of Plaintiffs' experts, "either today, or tomorrow when you formally produce their reports please provide alternative dates and locations for the depositions of each of Plaintiffs testifying experts." See, VGNA APP 13. Plaintiffs' counsel responded immediately to that email and reminded Kern that the actual due date for the expert reports was November 20, 2013. *Id*.

9. Therefore, in accordance with the Court's Order, on November 20, 2013, Plaintiffs submitted their expert reports to all Defendants' counsels.

10. The day after Plaintiffs' expert reports were submitted to Defendants' counsels, Plaintiffs' counsel submitted a November 21, 2013, correspondence to Defendants' counsels in an effort to open the discussions for scheduling the depositions of all experts within the expert discovery period. In the correspondence, Plaintiffs' counsel made various suggestions regarding the order and locations of the depositions so as to ensure that each party would have the full opportunity to take all expert depositions within the time allowed under the scheduling order. See, Pltfs' APP 001-002. This letter clearly served as the starting point for scheduling the expert depositions where it states "[a]s far as which experts are deposed during which stretch, it would depend on the availability of the burden of proof expert and his/her corresponding opposing expert on the following day." Pltfs' APP 002. Plaintiffs' counsel clearly meant for this correspondence to open the dialogue for the parties to be able to arrive at a mutually agreeable expert deposition schedule.

11. On November 22, 2013, Toyota's counsel, Mr. Kern, without conferring with either of Plaintiffs' counsels to agree on a convenient and joint deposition schedule, submitted deposition notices for each of Plaintiffs' experts, wherein Toyota's counsel arbitrarily chose deposition dates for each of Plaintiffs' experts. Toyota's counsel did not provide specific dates for the depositions of Defendants' experts. Pltfs' APP 003-004. Some of the dates chosen wound up being inconvenient for several of the experts and Toyota's counsel made no attempt at the time to sort through the conflicts.

12. In response to Toyota's unilaterally issued deposition notices, Plaintiffs' counsel notified all counsel that Plaintiffs objected to the deposition notices that were issued improperly. In a letter to Defendants' counsel, Plaintiffs' counsel advised that the experts were not all available on the "specific" dates noticed by Toyota and asked that the parties work together on mutually convenient scheduling within the allowable discovery schedule. Pltfs' APP 005-007. The letter goes on to state,

> Moreover, if you refuse to work with Plaintiffs' counsel on mutual scheduling and/or Mr. Kern refuses to withdraw his improper and unworkable deposition notices, Plaintiffs will have no option but to file a motion to quash the deposition notices and/or a motion to compel production of your experts for depositions. However, as you are aware, the Court's Amended Order on Discovery Protocol requires, prior to a party filing a discovery motion, that counsel for the parties and the parties to meet face-to-face to fully confer on scheduling the depositions.
>
> Accordingly, if Defendants decide that they are not going to withdraw the deposition notices and/or choose to refuse to confer with Plaintiffs' counsel to ensure that all expert depositions are conveniently scheduled, please accept this as Plaintiffs' written request for available meeting or conference dates within 14 calendar days after this request.

13. On November 28, 2013, Toyota's counsel submitted an email indicating that he refused to withdraw the unilaterally issued deposition notices. Pltfs' APP 008-009. Toyota's counsel showed an unwillingness to meet and confer.

14. After receiving no dates upon which to confer pursuant to the Court's Amended Discovery Protocol, on December 2, 2013, Plaintiffs' counsel again wrote to Defendants' counsels suggesting that the parties confer to arrange a mutually agreeable expert deposition schedule. In addition to seeking to get the parties to convene to reach agreement on a mutually convenient schedule for expert depositions, pursuant to the Court's Amended Discovery Protocol, Plaintiffs' counsel also asked for dates upon which the parties could confer on a discovery motion to quash the expert deposition notices that Toyota's counsel initially refused to discuss. Pltfs' APP 010-012.

15. Eventually, Defendants agreed with the suggestion from Plaintiffs' counsel to meet and work on a mutual schedule and arranged a conference call for December 4, 2013, to discuss a mutually agreeable schedule for the expert depositions. In an email string among counsels, Plaintiffs' counsel wrote that the purpose of the conference was to "work on completing this calendar and solidifying dates for the depositions of each of the experts during our call." Pltfs' APP 013-019. Again, Plaintiffs are showing a willingness to schedule mutual depositions and never once denied any depositions.

16. Just prior to the call, Toyota's counsel submitted an email to Plaintiffs' counsel expressing concerns Toyota had regarding expert scheduling. Pltfs' APP 020-022. Toyota's counsel makes clear that the parties were indeed discussing a new schedule for expert depositions (i.e., not keeping the unilaterally issued deposition notices). Plaintiffs' counsel eventually addressed those concerns, then reiterated,

> As you know, our intention for the previous conference call was to obtain definite dates for the depositions of each of the Plaintiffs' and Defendants' experts. Therefore, we ask that each party be prepared today to provide the identity and dates for the depositions of each of the experts that you are sure you will designate. That way, we can finalize a schedule.

17. The parties then arranged a follow-up call to take place on December 6, 2013. This call was very brief; however, the parties did discuss a few potential dates and each counsel agreed to speak with their experts to be able to provide definitive dates during the next call. A follow-up call was scheduled to take place on December 9, 2013.

18. During the December 9, 2013, conference call, counsels for the parties discussed specific dates for the depositions of each of Plaintiffs' experts and each of Defendants' experts, including the most likely city where the depositions would take place.

19. Following an extended conference call, the parties reached agreement on the schedule. In accordance with the agreement on the call, Plaintiffs' counsel submitted a schedule for the depositions of each of the experts, setting dates and location for each expert as discussed by all parties on the call. Pltfs' APP 023-024.

20. Over the next day or so, Plaintiffs' counsel and Toyota's counsel exchanged email regarding the expert schedule to make a few minor changes. Pltfs' APP 025-031. In this email string, Plaintiffs' closing comment on the permanency of the experts' deposition schedule stated,

> Plaintiffs consider the schedule to be pretty close to final, although we certainly realize that things can change last minute and are willing to accommodate slight alterations if an expert has to make an adjustment, e.g. due to emergencies or trial.

21. In other words, at the conclusion of these telephone calls and email exchanges, Plaintiffs proceeded according to the agreement reached by the parties and notified the experts accordingly.

22. Suddenly and very unexpectedly, on December 16, 2013, (a week after the parties conferred and agreed on the expert deposition schedule) Plaintiffs received an email from Toyota's counsel informing Plaintiffs that Toyota had reneged on the December 9, 2013, agreement and issued subpoenas on Plaintiffs' experts for dates completely different from those that were agreed upon. Pltfs' APP 033.

23. In response to this astonishing occurrence, Plaintiffs' counsel wrote to Toyota's counsel, informed counsel of the experts' shock created by the issuance of the subpoenas and requested a conference on the newly-issued subpoenas. Even still, Plaintiffs again provided Defendants with specific alternative dates for the depositions of the experts who had been subpoenaed. Pltfs' APP 034. There was never a "denial" of the depositions of Plaintiffs' experts. Toyota's counsel refused to confer on the motion to quash, citing various alleged reasons for his unwillingness to confer. Pltfs' APP 035.

24. In a final exchange of email with Toyota's counsel on attempting to resolve the issue created by the subpoenas and the impending motion to quash, Plaintiffs' counsel reiterated a desire to confer on the motion to quash and explained the chronology behind the timing of the motion to quash. Pltfs' APP 047-049. Again, Plaintiffs' counsel never indicated that Plaintiffs' experts would not be presented for deposition within the allowable discovery period. Plaintiffs' only objective at that time was to alleviate the fears of the experts that their depositions would be taking place last minute during the Christmas holidays when the experts and their staffs were out of town enjoying the holidays with their families.

25. As the result of Toyota's unwillingness to lift the subpoenas and comply with the December 9, 2013, expert deposition schedule, Plaintiffs were forced to file a submission in support of a motion to quash.

As is demonstrated by the chronology above, at no time have Plaintiffs refused to permit Defendants to take the depositions of Plaintiffs' experts, nor have Plaintiffs refused to confer on scheduling issues. In fact, it has been Plaintiffs who have consistently taken the initiative to discuss potential calendars for the depositions as well as a location and a plan that would make it possible and convenient for all experts to be deposed. It was also Plaintiffs who, on several

occasions, asked that the parties confer to agree upon mutually convenient dates for the depositions. It was also Plaintiffs who provided several alternative dates for the depositions of Plaintiffs' experts, while Defendants have not provided Plaintiffs with "five dates" for the depositions of each of Defendants' experts, despite at least three (3) written requests for available dates. See, December 17, 2013, letter (Pltfs' APP 038-039) Thus, Defendants grossly misrepresent the history of the expert deposition scheduling dispute when Defendants contend that Plaintiffs have not ensured that Defendants will get to take the depositions of all of Plaintiffs' experts within the allowable expert discovery period. For this reason alone, the Court should deny the motions for continuances.

### B. Defendants Have No Need to Alter the December 9, 2013, Expert Deposition Schedule Reached by the Parties.

As discussed above, the parties held a conference call on December 9, 2013, wherein the parties prepared a schedule for the depositions of all experts. See, Pltfs' APP 023-024. In addition, Plaintiffs submitted a joint stipulation to the parties that would extend until January 31, 2014, the time period in which expert depositions can be taken and until February 7, 2014, the time by which objections to expert testimony must be filed. Although the other Defendants have not returned their signed stipulations, each has indicated they do not oppose the extension and it has been executed by Toyota's counsel. Pltfs' APP 40-44. Accordingly, with this extended schedule, the parties will have an opportunity to take the depositions of all experts. The extended schedule also provides the parties with flexibility so that they do not have to arrange back-to-back depositions "coast to coast." This schedule also permits the parties to reschedule depositions, if made necessary by weather or flight delays or last minute emergencies. Therefore, there is no need for additional time for expert discovery.

Moreover, Toyota's counsel has provided potential dates for the depositions of Toyota's experts that would also occur within the period open for expert discovery. Pltfs' APP 045-046. This constitutes a tacit admission by Toyota that it is possible to have all expert discovery completed by January 31, 2014 in order to keep the current trial date. Plaintiffs would note, however, that Toyota did not provide "five" available dates for the depositions of Toyota's experts as requested by Plaintiffs' counsel on December 17, 2013. Pltfs' APP 038-039. Plaintiffs asks that Toyota be required to provide additional dates for these experts that are prior to January 31, 2014.

### C. Defendants Rejected Plaintiffs' Offer to Have All Depositions Take Place in Dallas as a Matter of Convenience for All Parties and Their Experts.

In the initial attempt to work out a mutually convenient schedule for expert depositions, Plaintiffs made the following suggestion:

> Considering that all parties (except Volvo) have counsel in Dallas, it would be more efficient to fly one expert into DFW, if necessary, than to have six (6) or more counsels flying across the country, wasting valuable days traveling instead of taking depositions. The depositions can all take place at a central location, e.g., at the offices of Toyota's counsel, Fayard's counsel, Strick's counsel, Plaintiffs' counsel, or a neutral location in Dallas.

Pltfs' APP 001-002. Defendants all refused this offer. Therefore, the Court should not entertain Defendants' contention now that the locations of the experts' residences make it impossible to take the experts' depositions due to the experts being "scattered coast to coast." If Defendants were in good conscience attempting to make any schedule work, Defendants would have offered to bring some, if not all, of their experts to Dallas, considering that Plaintiffs were willing to do so and since there would have been no "coast to coast" objection. In addition, it is worth noting that pursuant to the December 9, 2013, agreement there are no times where two of Plaintiffs' experts would have to be deposed on the same day. Moreover, the depositions of Plaintiffs' experts would occur primarily in Texas and even where some travel is required it

would be de minimis. Accordingly, Defendants have no argument that the locations of the depositions of Plaintiffs' experts make the December 9, 2013, schedule unworkable.

**D. Defendants Offer No Good Cause to Alter the Default Rules on Expert Discovery.**

Toyota asks that the expert discovery deadline be extended to March 21, 2014, while the other Defendants ask that it be extended to April 9, 2014. Pursuant to the current scheduling order, Plaintiffs provided their burden-of-proof expert reports to Defendants on November 20, 2013, and Defendants provided their reports on or about December 20, 2013. Expert Rebuttal Reports are due on January 4, 2014. In the Motions for Continuance, Defendants argue that they are prejudiced by the time in the schedule to conduct expert discovery. This is untrue. Pursuant to Judge David Godbey's standard scheduling order rules, the "default" discovery deadlines are that Defendants must designate experts "30 days" after the party with the burden of proof (here, Plaintiffs) designates experts. Plaintiffs must then designate rebuttal experts 15 days following Defendants' designation of experts. Discovery then closes 15 days after rebuttal designations and *Daubert* Motions must be filed 15 days after the rebuttal expert designations are made. In accordance with the Court's customary practice, these were the discovery deadlines that were contained in the first Scheduling Order in this matter. See, Dkt Entry No. 18.

Later, when the Court was in the process of issuing a new Scheduling Order, Defendants asked that the Court modify the default rules and provide Defendants with forty-five (45) days to designate experts after receiving Plaintiffs' designation. See, Dkt. Entry No. 159. Defendants made principally the same arguments they make now in the Motions for Continuance However, the Court rejected Defendants' arguments and issued a Scheduling Order that contained the default rules discussed above. See, Dkt. Entry No. 161. Therefore, the Court should decline Defendants' efforts to deviate from the default discovery scheduling rules. That way, consistent

with the discovery rules that were mandated by Judge Godbey's Second Scheduling Order, issued over Defendants' objections, Defendants have an allotted time in which to conduct discovery that is governed by the timing of the disclosure of the expert reports. Expert disclosures have taken place and Defendants should not be provided with several months of additional time to do what the default rules contemplate can be done in a defined period of time.

**E. The Alleged Diverse and Technical Nature of the Experts' Reports is No Reason to Continue Discovery and Trial.**

Although Plaintiffs do not quarrel with Defendants' representation that a number of "technical issues" are presented in this case, Defendants have known of these technical issues since February 3, 2011, when the case was originally filed. In fact, Plaintiffs arranged for Toyota's experts to conduct a "courtesy inspection" of the Greene SUV in November, 2010, thirty months ago, prior to the filing of the lawsuit. That inspection lasted for several hours, wherein the Toyota expert was given unfettered access to the vehicle. Indeed, since all Defendants appeared in this action, Plaintiffs' theories have not changed. In fact, as a result of Defendants' spoliation of evidence, Plaintiffs' expert reports have actually substantially "reduced" (but not changed) the theories upon which the lawsuit is based. Accordingly, Defendants' argument that the theories in the November 20, 2013, expert reports surprise Defendants rings hollow.

In addition, Defendants suggest that the page volume of the expert report of Keith Friedman and Dr. Rhoads Stephenson somehow affects Defendants' ability successful to take the expert depositions. This is simply incorrect. First, Defendants fail to acknowledge that Defendants have themselves submitted voluminous expert reports that dwarf the size of the Friedman and Stephenson reports in page volume and alleged analyses. The page volume of the expert reports has no impact on the scheduling of expert discovery. Second, Defendants omit

informing the Court that the Friedman expert report was split into four parts solely as a convenience to the Defendants. Much of the beginning of each of the four subparts of Friedman's expert report mirrors the other. Therefore, these partially duplicative reports have no effect on Defendants' ability to conduct and complete the depositions of these experts on the two days agreed to by the parties on December 9, 2013. Therefore, Defendants' contention that expert discovery poses unique concerns that warrant deviation from the Court's standard scheduling order considerations is disingenuous.

**F. The Continuance Requested By Defendants Will Cause Prejudice to Plaintiffs.**

Toyota asks that the expert discovery deadline be extended to March 21, 2014, while the other Defendants ask that it be extended to April 9, 2014. Pursuant to the current scheduling order, Plaintiffs provided their expert reports to Defendants on November 20, 2013. Toyota proposes that Plaintiffs be ordered to produce their experts for depositions immediately, while Defendants would have until March 21, 2014 (or April 9, 2014, under Toyota's proposal) to produce Defendants' experts. Providing Defendants with nearly four months to exaggeratedly dissect Plaintiffs' expert reports and nearly sixty days to overstatedly critique the depositions of Plaintiffs' experts before Defendants even begin to produce their experts for deposition is inappropriate, inequitable and prejudicial. Such an extended period between presentment of Plaintiffs' experts and Defendants' experts would be unfair and is inconsistent with the standard practice of this Court. In addition, granting the extension requested by Defendants would cause Plaintiffs to have to incur substantial additional litigation costs over additional months that would not otherwise be incurred. This trial has already been continued twice and is long overdue to be tried. Therefore, Plaintiffs' desire to proceed with this trial according to the current Scheduling Order.

## CONCLUSION

For these reasons, Plaintiffs ask the Court to deny the motions for continuance. The Defendants suffer no prejudice from the current Scheduling Order, are not being deprived of any discovery, and cannot establish good cause for a continuance.

Respectfully Submitted,

/s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

/s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2013, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a “Notice of Electronic Filing” to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

/s/ Aubrey “Nick” Pittman
AUBREY “NICK” PITTMAN