**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the representative of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, individually and as the surviving parent of LAKEYSHA GREENE,** | § § § § § § § | |
| **Plaintiffs,** | § § | **CAUSE NO. 3-11-CV-0207-N** |
| **v.** | § § | **JURY TRIAL DEMANDED** |
| **TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING AND MANUFACTURING NORTH AMERICA, INC., and TOYOTA MOTOR SALES, USA, INC., VOLVO GROUP NORTH AMERICA, INC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, INC., STRICK CORPORATION, INC., JOHN FAYARD MOVING & WAREHOUSE, LLC and DOLPHIN LINE, INC.,** | § § § § § § § § § § § § § | |
| **Defendants.** | § | |

---

**THE TOYOTA DEFENDANTS' RESPONSE TO PLAINTIFFS'**
**MOTION FOR SANCTIONS FOR ALLEGED DESTRUCTION AND/OR**
**CONCEALMENT OF EVIDENCE**

---

**TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................ iii

I.   SUMMARY OF THE ARGUMENT .............................................................................. 1

II.   RELEVANT FACTS ..................................................................................................... 3

III.  ARGUMENT AND AUTHORITIES ............................................................................ 5

      1.   Plaintiffs have failed to provide any evidence that TMC destroyed, discarded, or deposited with another entity to avoid disclosure in litigation, any FEM, CAD, or CAE pertinent to the allegedly defective components and systems. ............................................................................................................ 5

      2.   Although Plaintiffs contend otherwise, TMC has produced to Plaintiffs the information in its possession related to the allegedly defective components and systems in this case, including information that TMC received from Hino and TTDC ................................................................................................. 7

      3.   Plaintiffs' "character-based" arguments against the Toyota Defendants referencing the UA litigation and unrelated recalls, are irrelevant, prejudicial, and improper. The Court should disregard such arguments in their entirety ................................................................................................... 13

IV.  THE TOYOTA DEFENDANTS' MOVE FOR SANCTIONS AGAINST PLAINTIFFS ... 14

V.   CONCLUSION ............................................................................................................ 15

CERTIFICATE OF SERVICE .............................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Condrey v. SunTrust Bank of Ga.*,
  431 F.3d 191 (5th Cir. 2005) ................................................... 5
*Jones v. S. Pac. R.R.*,
  962 F.2d 447 (5th Cir. 1992) ................................................. 13
*King v. Ill. Cent. R.R.*,
  337 F.3d 550 (5th Cir. 2003) ............................................. 5, 14
*Old Chief v. U.S.*,
  519 U.S. 172 (1997)........................................................... 14
*Rimkus Consulting Group, Inc. v. Cammarata*,
  688 F. Supp. 2d 598 (S.D. Tex. 2010) ................................. 5, 14
*U.S. v. Wise*,
  221 F.3d 140 (5th Cir. 2000) ................................................. 5
*Wallace v. Ford Motor Co.*,
  3:11-CV-567-CWR-FKB (5th Cir. June 28, 2013) ................... 5

**Rules**

Fed. R. Civ. Proc. 11(b)(3) .................................................. 14
Fed. R. Evid. 401(b)............................................................ 13
Fed. R. Evid. 403 ............................................................... 14

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants Toyota Motor Corporation ("TMC"), Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. ("TMS") (collectively "the Toyota Defendants") respond to Plaintiffs' Motion for Sanctions against the Toyota Defendants for alleged Destruction and/or Concealment of Evidence, and ask that the Court deny Plaintiffs' Motion for the reasons set forth below.

## I.
## SUMMARY OF THE ARGUMENT

1.      The Toyota Defendants have not spoliated evidence, as Plaintiffs allege.   The Toyota Defendants have honored their legal duty to preserve information that is pertinent to Plaintiffs' claims in this case, and have not violated that duty.  Plaintiffs' allegations are simply untrue as will be shown below.[1]

2.      TMC appropriately preserved for this case the information in TMC's possession relating to the fuel system, fire prevention and suppression systems, seat restraints, air bag systems, rear occupant compartment, and structural integrity of the subject U.S. bound 4Runner ("allegedly defective components and systems").

3.      TMC has not violated its record retention policy and has not discarded, destroyed, or deposited with another entity with the intent to avoid disclosure in this case, any FEM, CAD, or CAE in TMC's possession that relates to the allegedly defective components and systems, whether created by TMC or provided to TMC.  And, after the date of the crash, TMC also has

---

[1] Although Plaintiffs' Motion is addressed to all of the Toyota Defendants, Plaintiffs' spoliation claims focus only on TMC, the designer of the subject 4Runner, claiming that TMC allegedly destroyed CAD, CAD and FEM data. Therefore, although none of the Toyota Defendants have spoliated evidence, in this brief, we focus on the spoliation allegations against TMC.

not intentionally discarded or destroyed any such FEM, CAD, or CAE in TMC's possession to prevent its disclosure in this case, as Plaintiffs allege.

      4.     TMC has produced the information in TMC's possession relating to the allegedly defective components and systems, including crash test reports, reflecting actual, physical testing of the allegedly defective components and systems of the U.S. bound 2003-2009 and 2010-2012 4Runner.  These crash test reports and the engineering drawings that TMC has produced in this case, include the pertinent information gained from FEM, CAD or CAE analysis performed on the allegedly defective components and systems during vehicle development. Further, contrary to the assertions in Plaintiffs' expert affidavits submitted with Plaintiffs' Motion, the crash test reports and engineering drawings that TMC has produced reflect the actual crash performance of the 4Runner with respect to the allegedly defective components and systems. Plaintiffs' experts' continued emphasis on the supposed importance of FEM and CAE materials, which can at best only demonstrate simulated or theoretical performance of vehicle components and systems as opposed to their actual performance in the real world, is therefore misplaced. Indeed, this misplaced emphasis suggests that Plaintiffs' experts do not have a comprehensive understanding of the vehicle development process at TMC.  It also suggests that Plaintiffs' experts have no understanding of the careful vehicle evaluation process TMC goes through by actually crash testing Toyota vehicles, rather than judging their anticipated performance through a rigid adherence to computer models that may or may not reflect the real world.

      5.     Plaintiffs argue that events, such as unrelated recalls and the Unintended Acceleration ("UA") claims that have been asserted against the Toyota Defendants in recent years by other plaintiffs in other courts, somehow give credence to their argument that Toyota is a "bad company" that has "spoliated evidence" in this case.  Not only are such arguments

baseless, but also, injecting unrelated recalls and the UA litigation into this case which involves a 2010 4Runner that was never a part of the UA litigation or subject to any relevant recall, is a transparent attempt by Plaintiffs to create prejudice against the Toyota Defendants.   All of Plaintiffs' remarks about unrelated events, including recalls and the UA litigation should, therefore, be disregarded by the Court as irrelevant and prejudicial.

## II.
## RELEVANT FACTS

6.      The facts of this case have been discussed in detail in several pending, and previously heard, motions.  Therefore, rather than waste the Court's time discussing the facts again, the Toyota Defendants incorporate by reference the history of this case that was presented to the Court through the Toyota Defendants' briefs responding to Plaintiffs' three motions to compel, and Plaintiffs' two Objections to Magistrate Ramirez's Orders, all of which relate to the same FEM, CAD, and CAE that are the subject of this motion for sanctions.[2]

7.      In this, Plaintiffs' most recent of several motions, Plaintiffs have provided nothing but mere conjecture to support their request for extreme sanctions against the Toyota Defendants based on TMC's alleged spoliation of FEM, CAD, and CAE evidence.  Rule 11 requires more than mere conjecture.[3]

8.      In contrast, TMC has provided a sworn declaration of a highly knowledgeable TMC engineer (who was deposed in this case), establishing the falsehood of Plaintiffs' claims. This declaration confirms that TMC did not spoliate evidence, and that TMC has not discarded,

---

[2] The Court may find extensive recitations of the facts in the following documents:  Joint Submission Regarding Plaintiffs' Third Expedited Motion to Compel against the Toyota Defendants (Doc. No. 195); Joint Submission Regarding Plaintiffs' Third Motion to Compel against the Toyota Defendants (Doc. No. 201); the Toyota Defendants' Response to Plaintiffs' Expedited Motion to Amend Scheduling Order to Extend Deadline for Designation and Discovery of Experts (Doc. No. 237).
[3] Fed. R. Civ. P. 11(b)(3) ("factual" contentions must have evidentiary support).

destroyed, or deposited with another entity for the purpose of avoiding its production in this case, any FEM, CAD, or CAE in TMC's possession that relates to the allegedly defective components and systems (whether created by TMC or provided to TMC), in violation of TMC's record retention policy or in contravention of the litigation hold TMC properly put into place. *See* Declaration of Ichiro Fukumoto ¶¶ 7-10, APP at 2-3.

9.      TMC also did not "deposit" with any other entity, including Hino Motors and Toyota Technical Development Corporation ("TTDC"), separate corporate entities that were involved in the development and manufacture of the 2003-2009 and 2010-current U.S. bound 4Runner, CAD, FEM or CAE information relating to the allegedly defective components and systems to improperly secrete such information and avoid its production in this case, as Plaintiffs allege. *See id.* ¶ 11, APP at 3.  Rather, based on Plaintiffs' claims in the Complaint, TMC preserved the information in its possession relating to the allegedly defective components. *See id.* ¶ 9, APP at 3.  TMC also did not violate its own record retention policy and destroy relevant CAD, FEM and CAE information relating to the allegedly defective components and systems as Plaintiffs allege.

10.      TMC has produced to Plaintiffs the FEM, CAD or CAE materials in its possession pertaining to the 2003-2009 and 2010-2012 U.S. bound 4Runner—regardless of whether such FEM, CAD or CAE materials were created by TMC or provided to TMC. *Id.*

11.      There is no evidence at all to support Plaintiffs' allegation that the Toyota Defendants spoliated FEM, CAD or CAE relevant to this case.

---

### III.
### ARGUMENT AND AUTHORITIES

**1. Plaintiffs have failed to provide any evidence that TMC destroyed, discarded, or deposited with another entity to avoid disclosure in litigation, any FEM, CAD, or CAE pertinent to the allegedly defective components and systems.**

12.      Plaintiffs' claims that TMC destroyed, discarded, or otherwise secreted FEM, CAD, or CAE information to avoid disclosure in this case are based only on conjecture, which cannot by law, form the basis for the requested sanctions.  The severe sanction of striking an Answer or giving an adverse inference instruction may not be imposed based on speculative and generalized assertions.  *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 614-17 (S.D. Tex. 2010).

13.      Missing from plaintiffs' motion is actual evidence—rather than mere speculation and conjecture—of the bad conduct that is essential to striking an Answer or an adverse inference based on the destruction of potential evidence.  *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003); *U.S. v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000).  The touchstone of whether a court may impose the severe sanctions of granting default judgment, striking pleadings, or giving an adverse inference instruction is persuasive evidence of "bad faith."  *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005); *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 614 (S.D. Tex 2010).  To meet this burden, Plaintiffs must not only show that the Toyota Defendants spoliated evidence that was relevant to Plaintiffs' allegations after their duty to preserve such documents arose, but also that the Toyota Defendants acted in "bad faith." *King*, 337 F.3d at 556; *see also*, *Wallace v. Ford Motor Co.*, 3:11-CV-567-CWR-FKB (5th Cir. June 28, 2013) (Plaintiffs' counsel who asked police department to retain vehicle only until his expert could examine it raised question of bad conduct for jury).

14.     Here, there is no evidence that the Toyota Defendants spoliated any evidence relevant to this case, let alone evidence there was "bad faith."  To the contrary, the record before the Court demonstrates that the Toyota Defendants have acted appropriately and consistent with their legal obligations.  Therefore, Plaintiffs' Motion for sanctions should be denied.

**A.**     **Contrary to Plaintiffs' claims, TMC has not intentionally destroyed, or deposited with another entity to avoid disclosure in litigation, any FEM, CAD, or CAE that pertains to the allegedly defective components and systems.**

15.     Plaintiffs claim that TMC has intentionally destroyed evidence relevant to their case.  This contention is false and completely without evidentiary support.  TMC took appropriate steps to preserve information in TMC's possession, including FEM, CAD, and CAE relevant to the subject 4Runner.  *See* Fukumoto ¶¶ 7-11, APP at 2-3.  Contrary to Plaintiffs' unsubstantiated claims, pertinent information relating to the allegedly defective components and systems of the subject 4Runner was not intentionally destroyed, or "deposited" with another entity to avoid disclosure in this case.  *Id.*

**B.**     **Contrary to Plaintiffs' claims, after May 28, 2010 (the date of the subject crash), TMC did not intentionally destroy any FEM, CAD, or CAE related to the allegedly defective components and systems in TMC's possession (whether created by TMC or provided to TMC), to avoid the disclosure of such information in litigation.**

16.     Contrary to Plaintiffs' claims, after the date of the crash, TMC did not intentionally destroy any FEM, CAD, or CAE in TMC's possession relating to the allegedly defective components and systems of the 2003-2009 or 2010-current U.S. bound 4Runner, to avoid disclosure of such information in this case or any other litigation. *See* Fukumoto ¶¶ 7-11, APP at 2-3.

17.    Any allegation that TMC did not preserve relevant documents for this case, or that TMC spoliated any such evidence is, therefore, baseless.

### C.  <u>TMC did not violate its own record retention policies as Plaintiffs allege.</u>

18.    TMC's sworn declaration also disproves Plaintiffs' separate claim that TMC did not comply with its own record retention policy relating to CAD, FEM and CAE. Specifically, Mr. Fukumoto stated: "No FEM, CAD or CAE materials in TMC's possession pertaining to the 2003-2009 or the 2010-current U.S. bound 4Runner—regardless of whether such FEM, CAD or CAE materials were created by TMC or provided to TMC—were destroyed or discarded in violation of the applicable record retention policies." *See* Fukumoto ¶ 10, APP at 3.

**2.  Although Plaintiffs contend otherwise, TMC has produced to Plaintiffs the information in its possession related to the allegedly defective components and systems in this case, including information that TMC received from Hino and TTDC.**

19.    Hino and TTDC are separate corporate entities from TMC, and TMC does not have "control" over documents in the possession of Hino or TTDC. *See* Fukumoto ¶¶ 11-12, APP at 3. Nevertheless, TMC has already produced in this case the FEM, CAE, and CAD materials relating to the allegedly defective components and systems that were located in TMC's possession through TMC's searches, regardless of whether such FEM, CAD or CAE materials were created by TMC or provided to TMC by Hino or TTDC. Contrary to Plaintiffs' allegations, TMC is not withholding from production any such FEM, CAE, or CAD information related to the allegedly defective components and systems that TMC located.

20.    In fact, many of the documents that TMC produced to Plaintiffs in this case were created by Hino, but because they were provided to TMC by Hino and were located in TMC's possession, they were produced during discovery by TMC. *See, e.g.,* List of Test Reports, APP at 5-14. While additional FEM, CAE, and CAD materials may or may not exist at Hino or

TTDC, TMC does not have any such materials.[4]  TMC simply cannot spoliate evidence that TMC did not have.[5]

### A.  Contrary to Plaintiffs' argument, pursuant to the Magistrate's October 31, 2013 Order, TMC was not required to inquire from Hino whether any FEM, CAD, or CAE materials are still in Hino's possession.

21.    Plaintiffs also argue that the Toyota Defendants should be sanctioned because TMC has not forced Hino to search for and produce in this case, any additional FEM, CAD, or CAE that Hino may still have in its possession.  Doc. No. 269, at 7.  However, this argument is inapposite to Magistrate Ramirez's October 31, 2013 Order.  After reviewing the parties' briefs on the matter and hearing oral argument, Magistrate Ramirez followed Fifth Circuit precedent when she held that there was no basis to order the Toyota Defendants to inquire from Hino—a separate corporate entity whose documents are not controlled by TMC—whether particular documents are in Hino's possession.  Doc. No. 229, at 2.  Because TTDC also is a separate corporate entity and TMC does not have "control" over documents in the possession of TTDC, the same logic would apply to TTDC, although there has been no order by the Magistrate or this Court specifically relating to TTDC.

---

[4] As a result of its searches, TMC located one FEM document pertaining to the 2010 U.S. bound 4Runner that was provided to TMC by TTDC, and that document was produced to Plaintiffs as a document bearing Bates nos. 754689-754697.  This document was the subject of Mr. Fukumoto's Declaration in support of the Toyota Defendants' Opposition to Plaintiffs' Objections to the Magistrate's October 31, 2013 Order.  *See* Doc. No. 246, Exh. B.

[5] TMC has consistently advised Plaintiffs about Hino's role in the design, development, and manufacture of the subject 4Runner.  *See* TMC Test Report, Produced August 25, 2011 with TMC's Second Supplemental Disclosures; June 7, 2013 Deposition of Ichiro Fukumoto, at 29:12-32:25; September 16, 2013 Declaration of Ichiro Fukumoto, at ¶ 6.  In addition, TMC has consistently represented that additional FEM, CAE, and CAD materials may or may not exist in the possession of Hino.  *See* Joint Submission Regarding Plaintiffs' Third Motion to Compel Against the Toyota Defendants, at 48-49; The Toyota Defendants' Response to Plaintiffs' Objections to Magistrate Ramirez's October 31, 2013 Order, at 5-6; The Toyota Defendants' Response to Plaintiffs' Objections to Magistrate Ramirez's November 8, 2013 Order, at 6; September 16, 2013 Declaration of Ichiro Fukumoto, at ¶ 6; September 26, 2013 Declaration of Ichiro Fukumoto, at ¶ 5-6; December 24, 2013 Declaration of Ichiro Fukumoto, at ¶¶ 10-13.  Therefore, TMC has always been forthcoming regarding Hino's role in the design, development, and manufacture of the subject 4Runner and Plaintiffs cannot claim any surprise regarding this information.

---

22.     Plaintiffs' request that the Toyota Defendants be sanctioned for not producing FEM, CAD, or CAE that may be in Hino's or TTDC's possession, is, therefore, an attempt to circumvent the Magistrate's Order.   Although Plaintiffs have filed a formal Objection to Magistrate Ramirez's October 31, 2013 Order, the Order remains in effect.

### B.   Contrary to Plaintiffs' claims,  TMC produced to Plaintiffs through Rule 26 Disclosures and subsequent discovery responses, CAD, FEM and CAE evidence that was in TMC's possession relating to the allegedly defective components and systems.

23.     Plaintiffs claim that TMC is "hiding" evidence, and has not produced "enough" relevant information for Plaintiffs to prepare their case. The shear breadth and depth of TMC's document productions and written discovery responses, however, belie this argument.  TMC has produced to Plaintiffs over 149,500 pages of documents in this case, including extensive CAD and FEM documents, as described below.  In accord with the Court's July 18, 2012 Order (Doc. No. 111) and the Magistrate's October 31, 2013 Order (Doc. No. 229), these documents included CAD and FEM materials relating to the fuel system, fire prevention and suppression systems, seat restraints, air bag systems, rear occupant compartment, and structural integrity of the 2003-2009 and 2010-2012 U.S. bound 4Runner that were located in TMC's possession.  In the interest of cooperative discovery, TMC also went beyond the scope ordered by the Court and searched for CAD pertaining to the underbody, upper body, and door assemblies of the 2003-2009 and 2010-2012 U.S. bound 4Runners, and, as described below, produced to Plaintiffs the CAD documents it located as a result of that search.

24.     Through its Supplemental Responses to Plaintiff William Greene's Interrogatories, TMC produced CAD drawings relating to the frame assembly and fuel system of the 2003-2009 U.S. bound 4Runner.  Additionally, through its Second Supplemental Response to

Plaintiffs' Counsel's Letter Requests, TMC produced CAD drawings applicable to the under body components of the 2003-2009 U.S. bound 4Runner.  TMC did not locate any other CAD drawings or relevant CAD information applicable to the fuel system, fire prevention and suppression systems, seat restraints, air bag systems, rear occupant compartment, and structural integrity of the 2003-2009 U.S. bound 4Runner.  APP at 15-89.

25.     With regard to CAD information applicable to the 2010-2012 U.S. bound 4Runner, TMC produced CAD drawings applicable to the fuel system, seat belt system (front and rear No. 1 seat belts (40:20:40)), curtain shield airbag (passenger seat), rear frame and upper cabin, and rear No. 1 seat back (40:20:40) in the 2010-2012 U.S. bound 4Runner through its First Supplemental Response to Request No. 1, and through its Third, Fifth, and Sixth Supplemental Disclosures.  Additionally, through its Second Supplemental Response to Plaintiffs' Counsel's Letter Requests, TMC produced CAD drawings applicable to front passenger door assembly, rear passenger door assembly, components of the upper body, components of the under body, and back door assembly of the 2010-2012 U.S. bound 4Runner.  TMC did not locate any other CAD drawings relating to the 2010-2012 U.S. bound 4Runner's fuel system, fire prevention and suppression systems, seat restraints, air bag systems, rear occupant compartment, and structural integrity.  APP at 70-89, 102-135.

26.     With respect to "FEM," through its Third Supplemental Responses to Plaintiff Ollie Greene's Requests, TMC produced the FEM documents relating to structural integrity and crashworthiness of the 2010-2012 U.S. bound 4Runner that TMC located through its searches.  *See* APP at 136-144, TMC's Supplemental Response to Request No. 7 of Plaintiff Ollie Greene's Requests for Production of Documents.  TMC did not locate any other FEM documents relating to the fuel system, fire prevention and suppression systems, seat restraints, air bag systems, rear

occupant compartment, and structural integrity of 2010-2012 U.S. bound 4Runners. TMC also searched for FEM documents applicable to the 2003-2009 U.S. bound 4Runner's fuel system, fire prevention and suppression systems, seat restraints, air bag systems, rear occupant compartment, and structural integrity, but TMC did not locate any such documents.

**C.** **In addition to the CAD and FEM that TMC produced, TMC also produced to Plaintiffs actual, physical crash tests that confirm that the 2003-2009 and 2010-2102 U.S. bound 4Runner met or exceeded all applicable Federal, Industry and Toyota engineering and safety standards relating to the allegedly defective components and systems.**

27.     Importantly, TMC produced to Plaintiffs the actual, physical crash tests that relate to the allegedly defective components and systems of the 2003-2009 and 2010-2012 U.S. bound 4Runner. *See* Fukumoto ¶¶ 14-15, APP at 4. These test reports confirm the 2003-2009 and 2010-2012 U.S. bound 4Runner's performance over and beyond what any CAE or FEM simulation could accomplish because CAE and FEM are not substitutes for actual physical testing. *Id.*

28.     Although TMC acknowledges that FEM and CAE analyses may be useful during the developmental stages of a vehicle, such analyses cannot replace actual physical crash testing. For this reason, TMC relies upon actual physical testing to confirm that a Toyota vehicle is reasonably safe for its intended use; and the applicable test reports that provide documentation of such actual physical testing relating to the allegedly defective components and systems of the 2003-2009 and 2010-2012 U.S. bound 4Runner have been produced to Plaintiffs. *See id.* ¶¶ 14-15, APP at 4. As TMC informed Plaintiffs through its discovery responses, the pertinent information derived from FEM or CAE analyses conducted during the development of the 2003-

2009 and 2010-2012 U.S. bound 4Runner are reflected in the engineering drawings and final confirmation test reports that TMC produced in this case. *See id.* ¶ 14, APP at 4.[6]

29.     For the reasons stated in paragraphs 27-28, above, Plaintiffs' continued focus on the purported insufficiency of TMC's CAE and FEM production, is misplaced. The pertinent information garnered from FEM or CAE analyses conducted during the development of the 2003-2009 and 2010-current U.S. bound 4Runner is reflected in the engineering drawings and final confirmation test reports that TMC produced in this case. *Id.* More significantly, TMC uses the engineering drawings and final confirmation test reports of actual crash testing, not simulated CAE and FEM, as final confirmation that Toyota vehicles and their components and systems meet or exceed all applicable federal and industry standards, as well as Toyota's internal engineering and safety standards. Therefore, by producing the final engineering drawings and the final confirmation test reports applicable to the allegedly defective components and systems, TMC produced to Plaintiffs the most important engineering information that TMC has that Plaintiffs need to "build their case."

30.     Plaintiffs' claim that their ability to present their case has been hampered by "missing CAD, FEM, or CAE" is therefore disingenuous at best, in light of TMC's extensive production of the most relevant information. Contrary to the assertions in Plaintiffs' expert affidavits submitted with Plaintiffs' Motion, the crash test reports and engineering drawings that TMC has produced reflect the actual crash performance of the 4Runner with respect to the allegedly defective components and systems. Plaintiffs' experts' continued emphasis on the supposed importance of FEM and CAE materials, which can at best only demonstrate simulated

---

[6] For examples of instances where TMC has previously provided this information to Plaintiffs, TMC refers the Court to TMC's Supplemental Responses to Plaintiff William Greene's First Set of Interrogatories. APP at 15-69. Copies of these responses are attached for the Court's convenience.

or theoretical performance of vehicle components and systems as opposed to their actual performance in the real world, is misplaced. Indeed, this misplaced emphasis suggests that Plaintiffs' experts do not have a comprehensive understanding of the vehicle development process at TMC.  It also suggests that Plaintiffs' experts have no understanding of the careful vehicle evaluation process TMC employs by actually crash testing Toyota vehicles, rather than judging their anticipated performance through a rigid adherence to computer models that may or may not reflect the real world.

**3. Plaintiffs' "character-based" arguments against the Toyota Defendants referencing the UA litigation and unrelated recalls, are irrelevant, prejudicial, and improper. The Court should disregard such arguments in their entirety.**

31.     Plaintiffs make character attacks on the Toyota Defendants by alluding to events, "controversies" and recalls that have no relevance whatsoever to this case.  Whether the Toyota Defendants were involved in other disputes, including discovery disputes, does not relate to a fact of consequence in this case, and is, therefore, completely irrelevant. Fed. R. Evid. 401(b). Further, evidence of Toyota's general circumstances should be ignored because it merely distracts from the pertinent issue of what happened in this case.  *See, e.g., Jones v. S. Pac. R.R.*, 962 F.2d 447, 449 (5th Cir. 1992) (evidence of prior safety infractions irrelevant to circumstances of crash).

32.     Plaintiffs argue that the Toyota Defendants were "embroiled in controversies involving the recalls of millions of vehicles," and that these "controversies" and "recalls" gave the Toyota Defendants "incentive" to universally conceal or destroy information.  *See* Doc. No. 269, at 10-12.  Plaintiffs then leap to the conclusion that the Toyota Defendants spoliated FEM, CAE and CAD evidence in this case driven by this "incentive," although this case is entirely unrelated to the "controversies" and "recalls" that Plaintiffs have referenced.  Such an argument

is simply absurd.  Plaintiffs have provided no evidence of spoliation in this case or in the other unrelated "controversies," and their claims of a grand conspiracy by Toyota to spoliate evidence are therefore based on nothing but wild speculation.  *King*, 337 F.3d at 566.  The severe sanction of giving an adverse inference instruction may not be imposed based on speculative and generalized assertions.  *Rimkus*, 688 F. Supp. 2d at 614-17.  Moreover, Rule 11 requires more than such mere conjecture and speculation.[7]

33.     Plaintiffs' wild and unsupported theories of a Toyota conspiracy pertaining to unrelated events and unrelated vehicles are not only irrelevant, but they are also highly prejudicial in this case because they contain speculative and untrue "character" evidence intended to tarnish the reputation of the Toyota Defendants.  Where the probative value of offered evidence is substantially outweighed by unfair prejudice or confusing the issues, the court may exclude it.  Fed. R. Evid. 403; *Old Chief v. U.S.*, 519 U.S. 172, 184-85 (1997).  In particular, other wrongs are not permissible because this general evidence is overly persuasive, denying a fair opportunity to defend against the relevant claim.  *Old Chief*, 519 U.S. at 181-82; *see also* Fed. R. Evid. 403.  Because these unfounded conspiracy theories are not relevant to Plaintiffs' claim that the Toyota Defendants spoliated evidence in this case, the overwhelming prejudice to the Toyota Defendants warrants that the Court disregard these theories in their entirety.

## IV.
## THE TOYOTA DEFENDANTS' MOVE FOR SANCTIONS AGAINST PLAINTIFFS

34.     Plaintiffs' baseless Motion provides no evidentiary support for their unfounded spoliation allegations against the Toyota Defendants, and Plaintiffs' alleged "factual" contentions are not supported by any evidence.  *See* Fed. R. Civ. Proc. 11(b)(3). Indeed, although to date

---

[7] Fed. R. Civ. P. 11(b)(3) ("factual" contentions must have evidentiary support).

Plaintiffs have brought at least five separate discovery motions against the Toyota Defendants, and the parties have gone through several hearings on these motions, at no time has the Court even suggested that the Toyota Defendants have done anything wrong in discovery, let alone anything to warrant the kind of sanctions requested here.

35.     Therefore, this meritless Motion follows on the heels of a pattern of oppressive discovery, many unwarranted motions to compel and a litany of baseless accusations by Plaintiffs of wrongdoing on the part of the Toyota Defendants.  Even though this Motion is completely without factual support, the Toyota Defendants have been required to expend considerable resources to defend against it.  The Toyota Defendants therefore respectfully request reasonable attorney's fees and costs associated with responding to this Motion, and any other relief that the Court deems just and appropriate.

## V.
## CONCLUSION

36.     Plaintiffs have provided absolutely no evidence that TMC (or any other Toyota Defendant) spoliated any evidence relevant to Plaintiffs' defect claims in this case, let alone that it acted in "bad faith."  On the contrary, the Toyota Defendants have provided extensive evidentiary support for their defense that TMC has not spoliated any such evidence.  Therefore, the Court should deny Plaintiffs' Motion for Sanctions, and award the Toyota Defendants reasonable attorney's fees and costs associated with responding to Plaintiffs' Motion, and any other relief the Court deems just and appropriate.

RESPECTFULLY SUBMITTED,

*/S/ David P. Stone*

**KURT C. KERN – Attorney-in-Charge**
State Bar No. 11334600
Kurt.Kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
David.Stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas  75201
Telephone:  (972) 616-1700
Facsimile:  (972) 616-1701

**ATTORNEYS FOR DEFENDANTS
TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA,
INC., AND TOYOTA MOTOR SALES,
U.S.A., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 31st day of December, 2013.

*/S/ David P. Stone*