IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the Surviving Parent of WYNDELL GREENE, SR., et al., | § § § § | |
| | § | CASE NO.: 3:11-CV-00207-N |
| Plaintiffs, | § § | |
| vs. | § § | JURY TRIAL DEMANDED |
| TOYOTA MOTOR CORPORATION et al., | § § § § | |
| Defendants. | § | |

**DEFENDANT VOLVO GROUP NORTH AMERICA, LLC'S
REPLY TO PLAINTIFFS' RESPONSE TO VGNA'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON PLAINTIFFS' "MISREPRESENTATION" CLAIM
(WITH OBJECTIONS TO PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE)**

Defendant VOLVO GROUP NORTH AMERICA, LLC (VGNA) files this Reply to Plaintiffs' Response to VGNA's Motion for Partial Summary Judgment on Plaintiffs' "Misrepresentation" Claim (with Objections to Plaintiffs' Summary Judgment Evidence), respectfully showing:

**I. SUMMARY OF REPLY**

Plaintiffs' response to VGNA's motion for partial summary judgment on Plaintiffs' "misrepresentation" claims [Document # 300 (Response) & # 301 (Brief)] is riddled with legal and evidentiary flaws, including:

- The response raises causes of action – including DTPA and fraud claims – that *have never even been pleaded* in this case.

- The response misconstrues or misapplies the law governing alleged "misrepresentations."

- The response is largely based on unproven/inadmissible evidence such as website printouts.

1

- Even if Plaintiffs' summary judgment evidence were somehow admissible, it misses the mark in several fundamental ways, including:

  - Many of the materials are printouts of recent web pages that post-date both the date of manufacture of the Volvo tractor (January 2007) <u>and</u> the date of the accident (May 28, 2010); and

  - Some of the materials pertain to the Volvo Car Group, which is not related at all to VGNA (a truck manufacturer) and has not been since 1999.

- The response is based in part on a "sham affidavit" that *(i)* is directly contradicted by the affiant's prior deposition testimony; *(ii)* contains vague and unspecific averments; and, in any event *(iii)* contains inadmissible hearsay.

- And, ultimately, after 2½ years, the Plaintiffs still cannot identify a <u>single</u> alleged representation that was made by VGNA to the Greene family or these plaintiffs.

For these and other reasons, the Court should grant partial summary judgment in VGNA's favor on Plaintiffs' "misrepresentation" claims.

## II. ARGUMENT AND AUTHORITIES

**A.  The response raises causes of action (DTPA and fraud) that have never even been pleaded in this case.**

VGNA moved for partial summary judgment on Plaintiffs' "misrepresentation" claim, which is pleaded in paragraphs 61 through 64 of their live (second amended) complaint. [*See* Document # 113 at p.16] Plaintiffs have responded by invoking two causes of action – DTPA "laundry list" claims and claims of common-law fraud – <u>that have never even been alleged in this case</u>. Indeed, none of their complaints have ever even mentioned the DTPA, nor have the words "fraud" or "fraudulent" ever appeared in any complaint (whether prior or current). [*See* Document #'s 1, 26 & 113] Plaintiffs' belated attempt to invoke DTPA and common-law fraud claims in a summary judgment response does not comport with the pleadings on file, the federal

2

pleading rules, or this Court's scheduling order. *See* FED. R. CIV. P. 8(a)(2) (short and concise statement of plaintiff's claim required), 9(b)(fraud must be alleged with particularity) & 15(a) (leave of court required to amend pleadings more than once unless opposing party agrees in writing).

**B.     The response misconstrues and misapplies the law governing "misrepresentations."**

As VGNA pointed out in its summary judgment motion, there is no cause of action in Texas for "misrepresentations." [*See* Document # 251 at p.5]  And, as discussed above, Plaintiffs have not asserted any causes of action under DTPA or fraud theories based on any alleged misrepresentation by VGNA.  Without waiving any argument that Plaintiffs have not ever pleaded either a DTPA or fraud claim in this suit, however, even if they had timely and properly attempted to plead such claims (they did not), their response materially misconstrues and misapplies the law governing those claims – and any negligent misrepresentation claims as well.

        1.     DTPA.

Plaintiffs' response does not accurately state the law governing DTPA claims in Texas, for example.  A DTPA plaintiff must be a "consumer." *Doe v. Boys Clubs*, 907 S.W.3d 472, 478 (Tex. 1995).  To establish "consumer" status, in turn, the plaintiff must show that it sought or acquired goods or services and its complaint is based on those goods or services.  TEX. BUS. & COMM. CODE §17.45(4); *Sherman Simon Enterprises v. Lorac Svcs.*, 724 S.W.2d 13, 15 (Tex. 1987).  When someone other than the plaintiff acquired the goods or services, the plaintiff must establish that the primary purpose of the acquisition was to benefit the plaintiff. *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex.App.–San Antonio 2002, pet. denied).

Here, the Greene family purchased a Toyota passenger vehicle – not a Volvo tractor. There is no evidence (and it is undisputed) that they never participated in a transaction involving VGNA goods or services in which the primary purpose of the acquisition was to benefit the Greene family (or these plaintiffs). The facts of this tragic motor vehicle collision case simply do not square with a DTPA claim against VGNA by the Greene family or their survivors, none of whom were "consumers" vis-à-vis VGNA.

    2.    <u>Fraud</u>.

Plaintiffs' fraud argument (pleading inadequacies aside) is nothing short of tortured, and runs head-first into the law governing fraud set forth in Section 531 of the Restatement (Second) of Torts and discussed in the Texas Supreme Court's seminal opinion in *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d, 573 (Tex. 2001). VGNA will not belabor the *Ernst & Young* "reason to expect"/intent-to-induce-reliance rule here, but the facts of this case do not even fall close to allowing or providing for a common-law fraudulent misrepresentation claim by the Plaintiffs against VGNA. First, *Ernst & Young* makes it clear that fraud claims are rooted in economic/pecuniary losses, and not personal/physical injury cases. *Id.* at 580. This explains the dearth of Texas case law stemming from physical injuries sustained in motor vehicle accidents and concomitant claims of common-law fraud. Second, there is simply no basis – nor any summary judgment evidence – that suggests that VGNA would have had any reason to believe that any statements it has made regarding its heavy truck products (statements which have never even been identified by Plaintiffs) would make it "especially likely" that its statements would

influence any decision by the Greene family to either *(i)* purchase a Toyota vehicle, or *(ii)* travel on public roadways (as virtually every Texan does). *Id.* at 580.[1]

      3.      Negligent Misrepresentation.

Like fraud, the tort of negligent misrepresentation arises in the context of commercial activity and economic transactions – not personal/physical injury claims. *See Federal Land Bank Ass'n v. Sloan*, 825 S.W.2d 439, 442 (Tex. 1991) (a plaintiff must established it suffered a pecuniary loss as a result of defendant's negligent misrepresentation). Indeed, a plaintiff asserting negligent misrepresentation claims is limited to out-of-pocket damages; neither personal injury damages nor benefit-of-the-bargain damages are available. *D.S.A. Inc. v. Hillsboro ISD*, 973 S.W.2d 662, 663-64 (Tex. 1998).

---

[1] The Texas Supreme Court explained the "narrow scope" of the reason-to-expect rule as follows in *Ernst & Young*:

> "The *Restatement*'s comments further illustrate the narrow scope of the reason-to-expect standard and foreclose the potential for 'unlimited liability' that Ernst & Young decries. Even an obvious risk that a misrepresentation might be repeated to a third party is not enough to satisfy the reason-to-expect standard; rather, the alleged fraudfeasor must 'have information that would lead a reasonable man to conclude that there is *an especial likelihood* that it will reach those persons *and will influence their conduct*.' RESTATEMENT (SECOND) OF TORTS §531 cmt. d (1977) (emphasis added). Section 531 also applies a similar-transaction requirement that further circumscribes that section's scope and offers additional guidance in applying the reason-to-expect standard. It is not enough that a defendant intends or has reason to expect that its representation will reach and be relied upon by one who receives it. The plaintiff must have incurred pecuniary loss 'in the type of transaction in which [the maker of the representation] intends or has reason to expect [his or her] conduct to be influenced.' *Id.* at §531. Though the transaction sued upon need not be identical to that the defendant contemplates, it must have the same essential character: 'It may differ in matters of detail or in extent, unless these differences are so great as to amount to a change in the essential character of the transaction.' *Id.* at §531 cmt. g. In sum, the reason-to-expect standard requires more than mere foreseeability; the claimant's reliance must be 'especially likely' and justifiable, and the transaction sued upon must be the type the defendant contemplated."

*Id.* at 580.

Here, based on the plaintiffs' *own* pleadings – and the undisputed facts – there was no commercial activity or transactions between or involving VGNA on the one hand and the Greene family on the other that could *possibly* serve as the basis for a negligent misrepresentation claim: VGNA did not sell, lease, service or make a truck to or for the Greenes; the Greenes did not purchase, own, lease or operate a Volvo truck. These facts do not and cannot give rise to a negligent misrepresentation claim.

**C.  Plaintiffs' response is largely based on inadmissible and irrelevant evidence, such as current printouts of website pages, that are probative of nothing regarding any alleged "misrepresentation" claim and do not create fact issues.**

Many of the documents in Plaintiffs' summary judgment appendix appear to be printouts of various websites that have not been proven up as evidence and do not satisfy the admissibility requirements of the Federal Rules of Evidence. Moreover, none of these documents are probative of anything relevant to Plaintiffs' "misrepresentation" claims and fail to create fact issues for the purposes of defeating summary judgment. Among other things:

- <u>Materials That Post-Date the Accident</u>. Many of the documents in the appendix (APP002, APP003, APP004-5, APP010-11, APP024-34, APP035, APP036-50, APP051-52, APP053-57, APP058-59 & APP063-66), generally comprising website printouts and some brochures, actually post-date the May 28, 2010 accident involving the Greene family – often by two or three years. These documents, by definition, are completely irrelevant to any alleged claims of actionable "misrepresentations" made by VGNA to any member of the Greene family. VGNA objects to this evidence on both relevance and hearsay grounds.

- <u>Materials Regarding the "Volvo Car Group," "Volvo Car Corporation" or "Volvo cars."</u> Several of the documents (APP006-9, APP067-69 & APP070-72) refer to the "Volvo Car Group," the "Volvo Car Corporation," or "Volvo cars" – *i.e.*, an entity that has no legal relationship to VGNA at all (but instead was purchased by Ford Motor Company in 1999[2] and later sold by Ford to the Geely Holding Group of China) and a passenger car product line unrelated to VGNA's heavy truck

---

[2] *See, e.g.*, APP007 ("Volvo Car Corporation is since 1999 owned 100% by Ford Motor Company …").

products. VGNA objects to this evidence on both relevance and hearsay grounds.

- <u>NHTSA Website Materials</u>. Plaintiffs have apparently printed off some recall-related materials from the NTHSA website (APP035, APP036-50 & APP053-57) that: *(i)* are hearsay; *(ii)* post-date the May 28, 2010 accident (see above); *(iii)* have not been shown to have any relevance to any claim of alleged misrepresentations in this case; and *(iv)* do not provide any evidence of any misrepresentations made by VGNA to the Greene family or any plaintiff in this case. VGNA objects to this evidence on both relevance and hearsay grounds.

- <u>Documents Not Shown to Have Been Reviewed or Relied Upon by the Greene Family</u>. None of the documents in the Plaintiffs' appendix were shown to have been reviewed, much less relied upon, by Wyndell Greene, Lakeysha Greene, or any of these Plaintiffs.

**D.     The appendix also includes a "sham affidavit" that *(i)* contradicts the affiant's own prior deposition testimony, *(ii)* contains vague and unspecific statements that do not point to any specific representations, much less alleged misrepresentations, by VGNA; and *(iii)* contains inadmissible hearsay.**

A "sham affidavit" is one that contradicts the affiant's earlier testimony for the sole purpose of creating a fact dispute to prevent summary judgment. *See Doe ex rel. Doe v. Dallas ISD*, 220 F.3d 380, 386 (5th Cir. 2000); *Axxiom Mfg. v. McCoy Invs.*, 846 F.Supp.2d 732, 749-50 (S.D.Tex. 2012). A sham affidavit cannot defeat summary judgment, and a court can simply disregard it. *Id.* at 750.

The affidavit of William Greene, which is included in Plaintiffs' summary judgment appendix [*see* Document #302-03 at APP0107-10], is (at least in part) a sham affidavit and should be disregarded accordingly. In his deposition, which was taken on March 27, 2012, Mr. Greene was shown the "misrepresentation" allegations against VGNA in the Plaintiffs' complaint and then specifically asked whether he was aware of any representations that were made to his brother or sister-in-law by VGNA or any other Volvo entity regarding the safety of Volvo trucks. He clearly said he was not:

7

> Q. Have you reviewed the first amended complaint in this proceeding? …
>
> Q. And I've handed you page 16 from that. And I'd like you to briefly read Paragraphs, I think it's 61 to 64.
>
> A. **This section here?**
>
> Q. Yes, sir. You don't have to read it out loud. Just familiarize yourself with it.
>
> A. **Okay.**
>
> (Witness Perusing Document)
>
> A. **Okay.**
>
> Q. My question is this: Are you personally aware of any representations that had been made or allegedly made by Volvo Group North America or any Volvo entity to either your brother [Wyndell Greene] or your sister-in-law [Lakeysha Greene] regarding the safety of Volvo tractors?
>
> A. **No, I am not.**

[Document # 251-02 at pp.53-54]

In his recent (November 27, 2013) affidavit, however, Mr. Greene avers that he had conversations with Wyndell Greene regarding unspecified "materials [Wyndell] saw and read" about the safety of Toyota and Volvo cars and trucks:

> 7. During a few of our conversations, Wyndell expressed that everything he had seen and heard from Toyota and Volvo seemed to go out of the way to convince consumers that the Toyota and Volvo cars and trucks were the safest on the road. From what materials he saw and read Wyndell indicated that he felt his family was safe driving in or around Volvo and Toyota cars and trucks. On one or more instances he asked me if I had heard anything to the contrary and I told him that I had been seeing the same types of statements about the supposed safety of Volvo and Toyota cars and trucks and that I had also assumed what these companies was saying was true and felt that [sic] there products were the safest as they claimed.

8

[Document #302-03 at APP0108]

The Court should disregard paragraph 7 of the recent William Greene affidavit for summary judgment purposes because it contradicts the prior testimony, without any explanation or clarification, and thus is a "sham affidavit." *Axxiom, supra*, at 750.  Moreover, the averments in paragraph 7 – which do not even mention a specific representation allegedly made by VGNA to the Greene family (and also simply lump "Volvo and Toyota cars and trucks" into one broad category) – are far too vague and unspecific to give rise to any fact issue for the purposes of VGNA's motion for partial summary judgment.  And, finally, VGNA objects to these averments regarding alleged out-of-court conversations between William and Wyndell Greene because they are hearsay.

### III. OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

As discussed above, VGNA objects to the following evidence included in Plaintiffs' summary judgment appendix [Document #'s 302-00 through 302-03]:

| Doc Ref | Document Description(s) | Objection(s) |
|---|---|---|
| APP002, APP003, APP004-5, APP010-11, APP024-34, APP035, APP036-50, APP051-52, APP053-57, APP058-59 & APP063-66 | Volvo truck brochures & website printouts (unproven) | The documents post-date the accident (and do not contain any identified misrepresentations).  VGNA objects on both relevance and hearsay grounds. FED. R. EVID. 402 & 802. |
| APP006-9, APP067-69 & APP070-72 | "Volvo cars" articles and press releases (unproven) | Volvo cars have nothing to do with VGNA or Volvo trucks (and the materials do not contain any identified misrepresentations anyway).  VGNA |

| Doc Ref | Document Description(s) | Objection(s) |
|---|---|---|
| | | objects on both relevance and hearsay grounds.  FED. R. EVID. 402 & 802. |
| APP035, APP036-50 & APP053-57 | NHTSA website materials (unproven) | The materials post-date the accident (and do not contain any identified misrepresentations and are otherwise not relevant to any issue).  VGNA objects on both relevance and hearsay grounds.  FED. R. EVID. 402 & 802. |
| APP0108 | Paragraph 7 of William Greene Affidavit | The averments regarding out-of-court conversations William Greene allegedly had with Wyndell Greene are inadmissible hearsay, and also contradict William Greene's prior deposition testimony.  FED. R. EVID. 802; *Axxiom*, supra, at 750. |

### IV.  CONCLUSION AND PRAYER

Plaintiffs begin their response by discussing causes of action they have not even pleaded and which do not apply.  After 2½ years of litigation, they have failed to identify any specific representations allegedly made by VGNA to the Greene family or any plaintiff, much less any actionable <u>mis</u>representations.  Their summary judgment evidence largely post-dates the May 28, 2010 accident at issue in this case.  Other evidence addresses "Volvo Car Company" – an entity that is wholly unrelated to VGNA and its products.  Yet other evidence is hearsay that is contracted by the witness' own prior deposition testimony.  There is also no evidence at all on the essential elements of Plaintiffs' "misrepresentation" claim.

VGNA prays that the Court *(i)* sustain its objections, and *(ii)* grant VGNA's motion for partial summary judgment on Plaintiffs' "misrepresentation" claims.  VGNA prays for all other and further relief to which it is entitled.

Respectfully submitted,

HOWRY BREEN & HERMAN, LLP

*/s/ Randy Howry*

_____
Randy Howry
State Bar No. 10121690
rhowry@howrybreen.com
Pat Fitzgerald
State Bar No. 24036566
pfitzgerald@howrybreen.com
1900 Pearl Street
Austin, Texas 78705-5408
(512) 474-7300
(512) 474-8557 FAX

**ATTORNEYS FOR DEFENDANT
VOLVO GROUP NORTH AMERICA, LLC**

### CERTIFICATE OF SERVICE

I do hereby certify that on December 31, 2013, a true and correct copy of the above and foregoing was forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure by electronic service through the court's ECF system in compliance with Federal Rules of Civil Procedure 5(b)(2)(E) and 5(b)(3).

*/s/ Randy Howry*

_____
Randy Howry