IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the Surviving Parent of WYNDELL GREENE, SR., et al., | § § § § | CASE NO.: 3:11-CV-00207-N |
| Plaintiffs, | § § | |
| vs. | § § | JURY TRIAL DEMANDED |
| TOYOTA MOTOR CORPORATION et al., | § § § § | |
| Defendants. | § | |

**DEFENDANT VOLVO GROUP NORTH AMERICA, LLC'S REPLY
TO PLAINTIFFS' SUMMARY JUDGMENT RESPONSE
(INCLUDING OBJECTIONS AND MOTION TO STRIKE)**

Defendant VOLVO GROUP NORTH AMERICA, LLC ("VGNA") files this reply to Plaintiffs' Response (Doc. #321) to VGNA's Motion for Summary Judgment on Plaintiffs' Strict Liability, Negligence and Gross Negligence Claims (Doc. #267). This reply includes objections to some of Plaintiffs' summary judgment evidence and a motion to strike the objectionable evidence.

**I. INTRODUCTION**

In a recent pleading[1], Plaintiffs asserted that "[i]t is undisputed that Texas law requires expert testimony for Plaintiffs to meet their burden on many of their claims …". This is a correct statement. But for summary judgment they lack the expert testimony they admit they need.

As a threshold matter, Plaintiffs have no expert materials at all that are admissible as summary judgment evidence. Instead, their only expert evidence is an unsworn joint expert report of Keith Friedman and Rhoades Stephenson, together with an inadequate declaration from

---
[1] *See* PLAINTIFFS' EMERGENCY MOTION TO EXTEND DATE FOR REBUTTAL EXPERT DISCLOSURE AND REPORTS (Doc. #329) at 7.

1

Mr. Friedman that fails to make the report or its contents admissible. *See Highland Cap. Mgmt, L.P. v. Bank of America, N.A.*, 2013 U.S. Dist. LEXIS 119935 **9-19 (N.D.Tex. Aug. 23, 2013). VGNA objects to the "Friedman report" and other summary judgment evidence.

Plaintiffs have not met their summary judgment burden regarding any alleged product defects – whether under a strict liability, negligence or gross negligence theory – <u>even if the Friedman report were somehow deemed admissible as summary judgment evidence</u>. Neither the report nor Freidman's declaration establish that either Friedman or Stephenson have any relevant expertise at all regarding collision warning systems or heavy truck design. There is no summary judgment evidence in the report or elsewhere of any <u>actual</u> designs held out or offered as safer alternative designs for any alleged defect. The report and declaration contain no relevant drawings, depictions or descriptions pertaining to any alleged safer alternative designs, and make no mention of any specifications, dimensions, materials, testing, simulations, modeling, calculations or analyses regarding any such designs. They do not contain any cost-benefit or risk-utility analyses regarding any alterative designs. There is no evidence regarding any alleged defect being a producing cause of <u>this accident</u> or the Greene family's injuries. There is nothing specific to the accident at issue in either the report or declaration. Alternate possible causes are not considered or ruled out. The Friedman report is nothing but a cursory review of literature with a few broad and unsupported conclusions thrown in; it is not competent summary judgment evidence.

Finally, Plaintiffs have not even tried to any adduce evidence at all regarding any alleged marketing or manufacturing defect.

The Court should not strike VGNA's motion under Local Rule 56.2(b), as Plaintiffs have requested, and should instead grant summary judgment in favor of VGNA.

## II. OBJECTIONS AND MOTION TO STRIKE

VGNA objects to and moves to strike the following documents included in Plaintiffs' summary judgment appendix:

1. <u>Friedman Report</u> (MSJ Exh. 4; APP140-217).

Plaintiffs included an expert report from Friedman Research Corporation with their summary judgment response. (*See* Doc. # 323 at APP140-217) The report is unsworn. It says it is authored by Keith Friedman and Rhoades Stephenson, but does not specify which opinions are held or sponsored by which co-author. As discussed below, the report is bereft of specific alternative designs, opinions, calculations, modeling, analyses, etc. – instead, it is nothing more than a cursory review of literature peppered with some wholly conclusory opinions. The report contains nothing specific to accident involving the Greene family or to the Volvo tractor that was involved in that collision.

The report is accompanied by the declaration of Friedman. Stephenson has not sworn to its contents at all. Mr. Friedman's declaration contains no opinions, conclusions or references to supporting facts at all. Indeed, in his declaration, Mr. Friedman, does not purport to adopt, affirm or explain any aspect of the report. Instead, he simply avers that the report is a "true and correct" copy of a report prepared by Friedman Research Corporation. (*See* APP139) Moreover, the declaration, like the report, contains no information that suggests that either Friedman or Stephenson have any relevant expertise regarding any of the matters pertaining to their criticisms of the Volvo tractor – including energy absorption capabilities of heavy trucks, compatibility of heavy trucks in collisions with other vehicles, or collision warning systems.

In a recent decision that is directly on point, another court in the Northern District of Texas held that an unsworn expert report, coupled with a cursory declaration of the sort that

Friedman has made here, "fall[s] outside the scope of competent summary judgment-type evidence." *Highland Cap. Mgmt, L.P.*, 2013 U.S. Dist. LEXIS 119935 at *16. "While [expert witness] Ms. Taylor's declaration states that the matters *in her declaration* are based on personal knowledge, the declaration itself contains no statements of substance and says nothing about whether Ms. Taylor has personal knowledge of the numerous factual matters set forth in her reports." *Id.* at *19 (granting summary judgment in favor of defendant) (emphasis in original).

  2. <u>June 2009 NHTSA Report</u> (MSJ Exh. 10; APP393-404).

This report is inadmissible hearsay. FED. R. CIV. P. 802.

  3. <u>Volvo Car Corporation and Volvo Car Information</u> (MSJ Exhs. 15, 21 & 25; APP410-13, APP455-56, APP466-69, APP470-72 & APP473-75).

Plaintiffs' appendix contains several materials (primarily press releases) that pertain to Volvo cars and the Volvo Car Group. As the materials themselves indicate (*see* APP411), the Volvo Car Group is not related to Volvo trucks or VGNA but instead was owned by Ford Motor Company after 1999 (and is now owned by Geely Holding Group of China). These materials are not relevant to any issue in this case and VGNA's motion for summary judgment. FED. R. CIV. P. 403.

  4. <u>Miscellaneous Website Information Regarding Product Recalls</u> (MSJ Exhs. 19, 20, 21 & 22; APP439, APP440-54, APP455-56 & APP457-61).

Plaintiffs' appendix also contains various printoffs from websites that pertain to vehicle recalls. As a threshold matter, these materials are all inadmissible hearsay. FED. R. CIV. P. 802. The recall information contained in them also has absolutely nothing to do with any allegation of defect in this case and is not relevant to anything. FED. R. CIV. P. 403.

4

## III. ARGUMENT AND AUTHORITIES

Plaintiffs have asserted strict product liability, negligence, "misrepresentation" and gross negligence claims against VGNA in this suit. VGNA has addressed Plaintiffs' misrepresentation claims in a separate partial summary judgment motion (Doc. #250). The other claims revolve around three broadly-alleged theories of defect in the Volvo tractor: *(1)* insufficient energy-absorption materials; *(2)* incompatibility, in a crash, with other vehicles; and *(3)* an absent or defective collision warning system. *See* PLAINTIFFS' SECOND AM. COMPL. (Doc. #113) at ¶58. The claims are broadly pled to include claims of "design, manufacturing and/or marketing defects." *See id.* Although Plaintiffs now assert for the first time in this case that the tractor is also allegedly defective because it has drum brakes instead of disc brakes – *see* PLAINTIFFS' RESPONSE BRIEF (Doc. #322) at p. 8 – they have never actually alleged any such defect in any complaint they have filed in this case.

**A.   Plaintiffs have not even attempted to adduce any summary judgment evidence regarding any alleged manufacturing or marketing defect.**

Regardless of the admissibility of their summary judgment evidence, Plaintiffs have not even attempted to adduce any evidence regarding any alleged (but unspecified) manufacturing or marketing defect in the Volvo tractor. Their response is silent regarding any such claims. Summary judgment should be granted on these allegations. *E.g.*, *State Farm Fire & Cas. Co. v. Whirlpool Corp.*, 2012 U.S. Dist. LEXIS 89045 **15-16 (N.D. Tex. June 27, 2012) (granting summary judgment in favor of defendant when plaintiff had failed to adduce any evidence of failure-to-warn in product liability case).

**B.   There is not a material fact issue regarding any alleged design defect either.**

   1.   <u>Plaintiffs have presented no admissible expert testimony to defeat summary judgment</u>.

If the Court strikes the Friedman report – which it should for the reasons discussed above – Plaintiffs have no expert evidence <u>at all</u> in support of their summary judgment response. Summary judgment is appropriate because expert testimony is required to support a product liability claim under Texas law. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006)(affirming summary judgment and holding that "[e]xpert testimony is required when an issue involves matters beyond jurors' common understanding); *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004) (same).

   2. <u>Summary judgment is still proper on the design defect claims even if the Friedman report is admissible</u>.

To recover on their products liability claim alleging a design defect in the Volvo tractor, Plaintiff must prove that: *(1)* the design defect rendered the product unreasonably dangerous; *(2)* a safer alternative design existed at the time the product left the control of the manufacturer or seller; and *(3)* the defect was a producing cause of the injury for which the Plaintiffs seek recovery. TEX. CIV. PRAC. & REM. CODE ANN. §82.005(a) & (b); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009). A "safer alternative design" is a product design other than the one actually used that in reasonable probability: *(1)* would have prevented or significantly reduced the risk of the claimants' injury without substantially impairing the product's utility; and *(2)* was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge. TEX. CIV. PRAC. & REM. CODE ANN. §82.005(b).

Plaintiffs have not met their burden to adduce summary judgment evidence on their design defect claims for several of these essential elements <u>even if the Friedman report is admissible</u>. This is true for all three of the Plaintiffs' defect theories – whether pertaining to

energy-absorption capabilities; compatibility, in a crash, with other vehicles; and an "absent or defective" collision warning system.

### a. Energy absorption capabilities.

Plaintiffs have not proffered any evidence at all of any actual safer alternative design relating to the Volvo tractor's energy absorption capabilities in a crash. Instead, the Friedman report (which, together with the declaration, does not establish that either Friedman or Stephenson have any expertise regarding heavy truck design) includes only the <u>basest</u> generalities regarding energy-absorption design and performance:

> "The front end of the Volvo tractor could have been equipped with an energy absorbing front end to provide compatibility with other vehicles and absorb a significant portion of the crash energy. Opportunities to apply static or deployable systems were possible." (Friedman Report at p. 24 (APP166)."

> "A collision mitigation system utilizing deployable systems or static energy absorbing systems could have been utililized to expand the effective crush space available on the Volvo." (Friedman Report at p. 26 (APP168))

> "The front end of the Volvo tractor could have been equipped with an airbag collision mitigation system or other energy absorbing designs that would reduce the crush stroke on the struck vehicle." (Friedman Report at p. 31 (APP173))

There is no summary judgment evidence in the report or elsewhere of any <u>actual</u> design that is proposed in this "energy absorption" arena. The Friedman report contains no relevant drawings, depictions or descriptions; it makes no mention of any specifications, dimensions, materials, testing, modeling, simulations, calculations (energy-related or otherwise) or analyses regarding any alleged theory of energy-absorption defects or safer alternative designs. There is no cost-benefit or risk-utility analysis regarding any energy-absorption design. There is nothing specific to the accident at issue in this case and the subject Volvo tractor in the report. There is no evidence regarding any alleged energy-absorption defect being a producing cause of this accident or the Greene family's injuries.

7

With respect to any alleged energy-absorption defect, the Friedman report is in fact nothing but a cursory review of some literature (without any explanation of how the literature actually applies in this case), with a few global and conclusory statements (see above) tossed in. It is bereft of any <u>facts</u>. It does not satisfy the federal summary judgment requirements.

        b. *Compatibility, in a crash, with other vehicles.*

Plaintiffs fare no better with their "crash compatibility" summary judgment evidence. The Friedman report does generically refer to a "Front Underride Protection System (FUPS)" in several areas – *see, e.g.*, Friedman Report at p. 24 (APP166) – but provides nothing else other than a literature survey in this respect. (*See* Friedman Report at pp. 26-31 (APP168-73))

As with the energy-absorption issue, no <u>actual</u> design or description of a "FUPS" (or any other purported crash-compatibility design) is provided, proposed or discussed. No dimensions, materials, testing, simulations, modeling or analyses regarding any alleged theory of crash-compatibility design defects or safer alternative designs are included. The report does not contain or refer to any relevant calculations pertaining to such. There is no compatibility-related cost-benefit or risk-utility analysis. There is nothing compatibility-related that is specific to the accident at issue, the subject Volvo tractor, and the Greene Family's Toyota 4Runner. There is no evidence regarding any alleged energy-absorption defect being a producing cause of the Greene family's injuries.

        c. *"Absent or defective" collision warning system.*

It is undisputed that the subject Volvo tractor did not have a collision warning system. Therefore, it is a tautology that a non-existent system cannot be defective. Summary judgment is appropriate on the Plaintiffs' collision-warning-system-is-defective theory.

With respect to the *absence*-of-a-collision-warning-system defect allegation, there is no competent summary judgment evidence that the absence of a collision warning system *(1)* was a producing cause of the accident at issue, or *(2)* made the subject Volvo tractor unreasonably dangerous.

First, there is no summary judgment evidence that either Friedman or Stephenson have any expertise *at all* pertaining to collision warning systems: nothing in either the Friedman declaration or the Friedman report establish any expertise relative to collision warning systems -- including such systems' design, performance, functionality, effectiveness and limitations. As they have acknowledged, Plaintiffs cannot establish their product liability claims in this case – including the "producing cause" and "unreasonably dangerous" elements – without expert testimony. Here, there is no summary judgment evidence that establishes the requisite expertise of any witness to opine on collision warning systems.

There is also no competent summary judgment evidence regarding how the absence of a collision warning system played any role in specific crash at issue in this case or was a producing cause of the Greene family's injuries. The Friedman declaration and report contain no testing, modeling, methodology, simulations, analyses, measurements or calculations that create a fact issue that the absence of a collision warning system in the Volvo tractor was a producing cause of <u>this</u> accident or the Greene family's injuries. Instead, the report simply contains some sweeping and unsupported statements (by witnesses whose expertise in this area has not been established) like "[t]he Greene accident would have had a high probability of a safe outcome if equipped with a radar system" (*see* Friedman Report at p. 23 (APP165)) and "[t]he incorporation of a radar system could have prevented the accident all together, or even the most minimal system reduced the impact speeds dramatically" (*see* Friedman Report at p. 33 (APP175)).

9

      3.    <u>There is no pleading to support Plaintiffs' newly-concocted brake defect theory. There is also no evidence of a brake defect</u>.

Plaintiffs dedicate a few paragraphs of their summary judgment response to alleged defects with the Volvo tractor's brakes or braking system. *See* PLAINTIFFS' RESPONSE BRIEF (Doc. #322) at p. 8. This is a brand new defect allegation that has never even been raised or pleaded in the 2½ years this case has been on file. *See* PLAINTIFFS' FIRST AM. COMPL. (Doc. #26) at ¶¶55-64 & PLAINTIFFS' SECOND AM. COMPL. (Doc. #113) at ¶¶55-64. There is no pleading that even supports this newly-raised theory of product liability – and the discussion and summary judgment materials regarding the Volvo tractor's brakes and brake system do not raise a fact issue regarding any of the three theories of defect Plaintiffs have pleaded.

Moreover – without waiving any arguments regarding either *(1)* the pleading/procedural impropriety of an entirely new defect theory regarding brakes and braking systems, and *(2)* the irrelevance of any evidence pertaining to brakes to any summary judgment issue before this Court – the scant evidence Plaintiffs have presented regarding brakes is not even evidence of any defect in the Volvo tractor's brakes. Indeed, the premise that "[t]he vehicle should have been equipped with a better braking system" is not evidence of any product defect or of any unreasonable danger. (Friedman Report at p. 22 (APP164)).

**C.    Plaintiffs' negligence claims are subsumed by their strict liability theories. Summary judgment is thus appropriate on the negligence claims for the reasons discussed above.**

In cases like this claims of negligence are subsumed by the plaintiff's strict liability theories: when "the allegations and evidence are directed to whether the product is 'unreasonably dangerous' and no other potentially negligent conduct is alleged or the subject of evidence," the negligence theories are subsumed by the strict liability theories. *Kallassy v. Cirrus Design Corp.*, 2006 U.S. Dist. LEXIS 34347 **3-4 (N.D. Tex. 2006) (citing *Garrett v.*

*Hamilton Standard Controls, Inc.*, 850 F.2d 253, 257 (5th Cir. 1988); *see Hyundai Motor Co. v. Rodriguez,* 995 S.W.2d 661 (Tex. 1999). Here, contrary to the argument raised in their response, it is clear from text of the Plaintiffs' own complaint that their negligence claims against VGNA are all based on the allegation that the Volvo tractor was unreasonably dangerous due to three alleged defects. Specifically, after alleging in the "Strict Liability – Volvo Defendants" section of their complaint that the Volvo tractor was "unreasonably dangerous and defective," in the ensuing "Negligence – Volvo Defendants" section they simply allege that "[VGNA] had a duty to the Greene Family to provide a safely designed and manufactured product" and that "[VGNA] also had a duty to warn consumers of the true nature of the defective design of the [Volvo] vehicles." *See* PLAINTIFFS' SECOND AM. COMPL. (Doc. #113) at ¶60. There are no claims of negligence that are not subsumed by the strict liability claims that have been asserted against VGNA.

Summary judgment is proper on the Plaintiffs' subsumed negligence claims for the reasons discussed in the subsections above. *See Romo v. Ford Motor Co.*, 798 F.Supp.2d 798, 808-10 (S.D. Tex. 2011) (granting summary judgment on negligence claims subsumed by strict liability claims); *see also Ford Motor Co. v. Ridgeway*, 135 S.W.3d 598, 601 (Tex. 2004).

**D.**     **The gross negligence claims are also subsumed by the other claims, and Plaintiffs also have no evidence regarding the "extreme degree of risk," "actual, subjective awareness" and "conscious indifference" prongs of a gross negligence claim.**

To establish gross negligence under Texas law, a plaintiff must establish a cause of action for negligence, and then must also establish that the act complained of involved "an extreme degree of risk" and that the actor must have "actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety or welfare of others." *See*

11

*Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 231 (Tex. 2004); Forester v. El Paso Elec. Co., 329 S.W.3d 832, 837 (Tex.App.–El Paso 2010, no pet.).

Because summary judgment is proper on the Plaintiffs' negligence claims against VGNA, it is also proper on their gross negligence claim. (In other words, the gross negligence claim is subsumed by the negligence requirement, which is, in turn, subsumed by the strict liability claims which fail for the reasons stated herein.)

Moreover, the evidence they cite – a substantial portion of which is not admissible for the reasons discussed at the outset of this reply and should be stricken – does not create a fact issue regarding the "extreme degree of risk," "actual, subjective awareness" and "conscious indifference" prongs of a gross negligence claim.

E.   **The Court should not strike VGNA's summary judgment motion.**

Finally, Plaintiffs have asked the Court to strike VGNA's summary judgment motion pursuant to Local Rule 56.2(b), which limits parties to filing one summary judgment motion "[u]nless otherwise directed by the presiding judge, or permitted by law. Local Rule 56.2(b). The purpose of the rule is to *(i)* prevent the practice of circumventing page limits for summary judgment motions by splitting arguments into multiple motions, and *(ii)* help the courts regulate motion practice and prevent parties from getting a "second bite at the apple" for matters that have previously been addressed. *See Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 2007 U.S. Dist. LEXIS 46922 **4-5 (N.D. Tex. June 27, 2007). A party may file multiple summary judgments, without leave of court, if the motions are made in "good faith" and are not simply an attempt to lay the groundwork for a later dispositive motion in the event that the first one did not succeed. *See Lexxus Int'l, Inc. v. Loghry*, 512 F.Supp.2d 647, 656-57 (N.D. Tex. 2007).

VGNA has, indeed, filed three separate partial summary judgment motions in this case – none overlapping of the others. The cumulative page totals of these three motions and supporting briefs is well under the 50- and 25- page limitations for summary judgment briefs, responses and replies. Local Rule 56.5(b). VGNA's first motion was a 2-page joinder (Doc. #90) in a partial summary judgment motion that the Toyota Defendants filed early on (Doc. #99) to narrow some standing-related issues. The Court granted that motion. (*See* Doc. #130) VGNA's second motion (Doc. #250) addresses "misrepresentation" claims the Plaintiffs asserted. That motion is still pending. VGNA filed its third and final motion (Doc. #267) addressing the Plaintiffs' remaining strict liability, negligence and gross negligence claims in December on the date of the filing deadline for dispositive motions.

VGNA's summary judgment motions and motion practice here have been economical in length, have not been duplicative, seek to dispose of the case in its entirety and/or narrow issues for trial, and otherwise meet the "good faith" requirement. Plaintiffs' request to strike the most recent summary judgment motion (Doc. # 267) should be denied. Additionally and alternatively, VGNA requests that the Court grant leave such that the motion be considered.

## IV.  CONCLUSION AND PRAYER

The Court should grant VGNA's motion for summary judgment on the Plaintiffs' strict liability, negligence and gross negligence claims (Doc #267). VGNA prays for all other relief to which it is entitled.

      Respectfully submitted,

      */s/ Randy Howry*

      Randy Howry
      State Bar No. 10121690
      rhowry@howrybreen.com
      Pat Fitzgerald
      State Bar No. 24036566
      pfitzgerald@howrybreen.com
      John Carlson
      State Bar No. 00790426
      jcarlson@howrybreen.com

      HOWRY BREEN & HERMAN, LLP
      1900 Pearl Street
      Austin, Texas  78705
      Phone:  (512) 474-7300
      Fax:  (512) 474-8557

      **ATTORNEYS FOR DEFENDANT VOLVO GROUP NORTH AMERICA, LLC f/k/a VOLVO TRUCKS NORTH AMERICA**

**CERTIFICATE OF SERVICE**

This is to certify that on the 14th day of January, 2014, a true and correct copy of the above and foregoing was forwarded to all non-registered counsel of record in accordance with the Federal Rules of Civil Procedure to all registered counsel of record by electronic service through the court's ECF system in compliance with Federal Rule of Civil Procedure 5(b)(2)(E) and 5(b)(3).

_____
Randy Howry