IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, <br><br>Plaintiffs, <br><br>v. <br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC. <br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § § § § §   CAUSE NUMBER: 3:11-cv-0207-N <br><br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' REPLY TO TOYOTA'S RESPONSE TO PLAINTIFFS'
MOTION FOR SANCTIONS AGAINST TOYOTA DEFENDANTS
FOR DESTRUCTION AND/OR CONCEALMENT OF EVIDENCE**

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

I. SUMMARY OF REPLY .................................................................................................... 1

II. ARGUMENT AND AUTHORITIES ................................................................................ 1

    A. Toyota Does Not Explain Why it Violated its Own Internal Record Retention Policy to Maintain the FEM and CAE. ................................................................ 1

    B. Toyota's Responses Regarding its FEM and CAE Are Clearly Misleading. ....... 2

        1. It is undisputed that Toyota used FE models in the designs and testing of the Toyota 4Runner. ................................................................................ 3

        2. Toyota's outside counsel informed the Court that Toyota's FEM was discarded. ................................................................................................... 4

        3. Toyota's legal support representative provided misleading testimony regarding the location and retention of the FEM. ..................................... 4

        4. Toyota's decision, if any, to leave FE models with Hino Motors, TTDC or one of its other subsidiaries also constitutes concealment. ..................... 6

    C. The Paper Output That Toyota Produced Cannot Substitute For the Spoliated CAE and FEM. ...................................................................................................... 6

    D. The Circumstances of Toyota's Change of its Retention Policy and Destruction of CAE and FEM Clearly Suggests There Is Bad Faith in the Destruction or Concealment of Evidence. ..................................................................................... 8

    E. Toyota's Countermotion for Sanctions Falls on its Face in View of its Own Conduct in Destroying Evidence and/or Refusing to Preserve CAE and FEM. .. 10

III. CONCLUSION ................................................................................................................ 10

CERTIFICATE OF SERVICE ................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Allstate Texas Lloyd's v. McKinney*, 2013 WL 3873256 (S.D.Tex. Jul 24, 2013) ......................... 9

*Calixto v. Watson Bowman Acme Corp.*, 2009 U.S. Dist. LEXIS 111659,
    2009 WL 3823390 (S.D.Fla. Nov. 16, 2009) ................................................................ 9

*Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, 2009 WL 1949124
    (N.D.Cal. July 2, 2009) ................................................................................................ 2

*Kirkendall v. Dep't of the Army*, 573 F.3d 1318 (Fed.Cir.2009) ....................................... 2

*Morris v. Union Pac. R.R.*, 373 F.3d 896 (8th Cir.2004) ................................................... 9

*Partington v. Broyhill Furn. Indus., Inc.*, 999 F.2d 269 (7th Cir.1993) ........................... 10

*Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148 (4th Cir.1995) ...................................... 10

## I.    SUMMARY OF REPLY

In a transparent effort to reframe the narrative regarding Toyota's clear concealment and/or destruction of evidence, Toyota first emphasizes its limited production of "output <u>documents</u>" from its FEM, CAD and CAE use, while ignoring the root of Plaintiffs' spoliation motion - that it is the "input files, full FE model representation, and computer simulation programs" that Toyota has concealed and/or destroyed.  Second, it is worth noting that Toyota's argument that there has been no destruction or concealment of FE depends solely on the vague and carefully crafted testimony of a single declarant, one whose job duties at Toyota include "support[ing] legal division and their work." Third, it is also telling that Toyota never answers the question as to the location of the FE model that was used by Toyota in the design and testing of the 4Runner and/or reveals the date and circumstances of its destruction.  Fourth, Toyota also conveniently glosses over its internal requirement to maintain the FEM and CAE for a clearly defined period of time, one that exceeds the period when the lawsuit was filed and the point at which Plaintiffs began to request FEM and CAE in this lawsuit.  Once the Court reviews Toyota's own record retention documents, it will see clearly that Toyota violated its own retention policies in its plan deceptively to deprive the Greene family and other litigants of FEM and CAE evidence with which to test what Toyota knew about its defective designs at the time its vehicles were manufactured and sold.  Since Toyota has clearly destroyed and/or concealed evidence that is crucial to Plaintiffs' case and for which there was a clear duty for Toyota to preserve, the Court should grant the relief requested by Plaintiffs.

## II.    ARGUMENT AND AUTHORITIES

**A.    Toyota Does Not Explain Why it Violated its Own Internal Record Retention Policy to Maintain the FEM and CAE.**

In the Response, Toyota relies on a single conclusory statement from its litigation representative to argue that it did not destroy or discard FEM or CAE "in violation of the applicable record retention policies." Resp. at 7.  That's it.  The Court should find that this unsupported and litigation-induced statement lacks credibility, especially considering that the only person Toyota

**PLAINTIFFS' REPLY TO TOYOTA'S RESPONSE TO PLAINTIFFS' MOTION FOR**
<u>**SANCTIONS AGAINST THE TOYOTA DEFENDANTS FOR CONCEALMENT OF EVIDENCE**</u> **- Page 1**

presented on this subject happens to be someone whose job responsibilities include aiding Toyota in litigation cases that are filed against Toyota. Fukumoto Depo, at 11:21 – 12:4, 13:18 – 14:5 (REPLY APP[1] 001-004). This witness's statement is also flatly refuted by Toyota's unambiguous retention policy (APP[2] 184-190) mandating that the FE models, CAE, CAD, and other engineering and design information related to the 2010 4Runner should have been in Toyota's possession when this lawsuit was filed and should still be in Toyota's possession. *See e.g.*, 260671-260674 (APP[3] 187-189). In addition, contrary to his newly minted declaration, Toyota's representative, Fukumoto, testified that Toyota's practice is to retain the FE models. Fukumoto Depo, at 90:10-21 (APP 110). Therefore, contrary to the argument in Toyota's written response to the motion for spoliation, the failure to maintain the FE and CAE models constitutes a clear example of spoliation, for which sanctions are appropriate. *See, e.g., Kirkendall v. Dep't of the Army*, 573 F.3d 1318, 1325–27 (Fed.Cir.2009)(spoliation found when agency destroyed relevant documents in violation its own document retention program); *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, 2009 WL 1949124, at *10 (N.D.Cal. July 2, 2009), modified on other grounds, 2009 WL 2485556 (N.D.Cal. Aug. 12, 2009). In other words, the Court can glean from Toyota's violation of its own policies that the destruction of highly relevant CAE and FE models was done in bad faith to prevent the use of FE in litigation against Toyota to demonstrate its knowledge of defective designs and foreseeability of results similar to what happened on May 28, 2010.

   **B.**  **Toyota's Responses Regarding its FEM and CAE Are Clearly Misleading.**

In the Response, Toyota aptly notes that Plaintiffs have been forced to file several motions to compel in an effort to obtain clearly discoverable matter from Toyota. Resp. at 15. Indeed, during

---

[1] "REPLY APP" refers to the appendix of material submitted simultaneously with the reply, in support of this Reply.

[2] "APP" refers to Docket Entry No. 270, Sealed Appendix in Support of Plaintiffs' Motion for Sanctions for Spoliation of Evidence against Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales USA, Inc.

[3] *Id.*

**PLAINTIFFS' REPLY TO TOYOTA'S RESPONSE TO PLAINTIFFS' MOTION FOR
SANCTIONS AGAINST THE TOYOTA DEFENDANTS FOR CONCEALMENT OF EVIDENCE - Page 2**

one such motion to compel this Court ruled that Plaintiffs are entitled to CAD and FEA evidence of the fuel system, fire prevention and suppression systems, seat restraints, air bag systems, rear occupant compartment and structural integrity for the 2003-2009 and the 2010-2012 U.S. bound 4Runners. (APP 141-160). During a January 22, 2013, hearing on another motion to compel, the Court inquired whether Plaintiffs were seeking "test results, not the underlying models, not the input to the tests, but the results of tests." Transcript at 5:16-22. (REPLY APP 015). In discussions with the Court, Plaintiffs made sure the Court was aware that Plaintiffs needed the underlying models, not simply the test results. In fact, Plaintiffs identified in specific discovery requests served on Defendants in October 2011, where Plaintiffs requested the actual underlying finite element models dealing with the 4Runner. Transcript at 5:24 – 6:17. (REPLY APP 015-016). As a result of Plaintiffs directing the Court's attention to previous discovery requests for the underlying models and Plaintiffs' need for them, the Court admonished Toyota that Plaintiffs were indeed seeking the actual "models" that were used by Toyota, not simply output documents. Transcript at 7:22-25. (REPLY APP 017)("[s]o, as I understand it, there is a distinction between the model and the output of the modeling tests. And this request, as I heard Mr. Pittman read it, calls for the models).

        **1.    It is undisputed that Toyota used FE models in the designs and testing of the Toyota 4Runner.**

As argued in the Motion for Spoliation, it is undisputed that Toyota uses CAE and finite element modeling for the design and testing of its 4Runner SUVs. This actual use is shown in document 754689-754697, (APP 037-054), which depicts a full representation finite element model of the Toyota 4Runner. This document is first provided in the original Japanese version produced by Toyota, followed immediately by a version translated into English. The output shown in this exhibit was made possible by the construction and use of a finite element model of the 4Runner, from the top and bottom, just before it impacts an offset barrier during a crash test like the ones the Insurance Institute for Highway Safety conducts and publicizes. As can be seen in this depiction, the frame, tires, wheels, axles, floors, doors, suspension, engine, fuel system, etc. are all present in the FEM for

**PLAINTIFFS' REPLY TO TOYOTA'S RESPONSE TO PLAINTIFFS' MOTION FOR SANCTIONS AGAINST THE TOYOTA DEFENDANTS FOR CONCEALMENT OF EVIDENCE - Page 3**

this frontal test and CAE is used to analyze the results.  (APP 032, ¶14).  Therefore, it is undisputed that the FE models once existed within Toyota and was used by Toyota for various purposes.

### 2. Toyota's outside counsel informed the Court that Toyota's FEM was discarded.

During the January 22, 2013, where the Court commented to Toyota that Plaintiffs are seeking the underlying FE models, Toyota's counsel represented to the Court "we [Toyota] don't have the finite element models," and we [Toyota] no longer have the need for the model, and it is <u>discarded</u> in the ordinary course of business."  Although Plaintiffs argued at the hearing that since other car manufacturers maintain their models it was unlikely that all of Toyota's underlying models had been destroyed, at the conclusion of the hearing the Court stated "I have their lawyer's statement in open court on the record that that stuff doesn't exist." Transcript at 11:23-25.  REPLY APP 021.  Therefore, this representation makes clear that Toyota has stated that the CAE and FE models that Plaintiffs are seeking have been "discarded."

### 3. Toyota's legal support representative provided misleading testimony regarding the location and retention of the FEM.

During the deposition of Toyota Motor Corporation's designated representative, Plaintiffs made specific inquiry into Toyota's practice of maintaining its underlying FE models.  In addition to the other evidence presented in support of the Motion for Spoliation, there are two additional areas of testimony provided by Toyota's witness that Plaintiffs ask that the Court consider in evaluating the merits of the spoliation motion.  During one segment of the deposition, Toyota's corporate representative acknowledged that Toyota has a practice of retaining the FE models that Toyota now claims it does not have in its control:

> Q:   Let's assume, sir, that there was FE modeling done for the Toyota 2010 U.S.-bound 4Runner. That would still be in Toyota's possession if it were done, wouldn't it?
>
> A:   An individual in that division, if he or she makes a decision that that information is necessary for Toyota's business, therefore it is necessary to be retained.  If such a decision is made, **then I believe it would be kept**.  But again, I need to search that in order to give you a definite answer.

Deposition of Ichiro Fukumoto, at 90:10-21 (APP 110).  However, when Toyota was questioned as to whether the FE models (whether for the 2010 model or the 2003-2009 models) were discarded prematurely under Toyota's retention policy, Toyota refused to respond:

Q: So, sir, my question is you testified earlier that information related to the 2003 and the 2010 model year 4Runners was destroyed.  Do you recall that testimony?

MR. KERN: Object to the form.

A: No, I don't think I said that.  What I said is that since the 2003 model year is the model year when the 4Runner's generation changed from one generation to another, and so if we assume that that was done in that model year and if that were available at the time but later on if the decision was that such information served its purposes, therefore it became unnecessary, then according to Toyota's practice, I said that it may it may have been discarded.

Q: So who would have been the persons involved in the decision to destroy or discard CAD or FEA for the 2010 model year?

MR. KERN: Object to the form.

A: Again, if it were done and if it were that the decision was such that it became unnecessary and if the decision were to approve the dispose -- disposal, then I would say the members who belong to that division -- in this case, CAE division -- would have made that decision.

Q: In Exhibit 120, the document retention policy, and just looking at information regarding prototypes, it says that it's supposed to be destroyed five years after SOP or completion of development work for the next full model change.  So as it relates to item number 24 on the notice, the dates upon which the information would have been destroyed or discarded, that would have been five years after the 2010 model year is changed, wouldn't it?

MR. KERN: We'll object to the form and instruct Mr. Fukumoto he does not need to answer questions about Exhibit No. 120, the document retention policy.

Q: Are you going to not answer the question?

A: Yes, I would like to follow my counsel's instruction.

Fukumoto Deposition at 100:17 – 101:10 (REPLY APP 011-012).  The testimony cited above makes clear that Toyota has chosen to be less than forthcoming regarding the circumstances behind the destruction of the FE models and why it did not retain the 2010 and 2003-2009 model year 4Runner FE models in accordance with its records retention policy.  Notwithstanding Toyota's refusal to respond fully regarding the premature destruction of the FE models, the fact remains that Toyota has not produced any FE models in the underlying litigation.

### 4. Toyota's decision, if any, to leave FE models with Hino Motors, TTDC or one of its other subsidiaries also constitutes concealment.

In addition to Toyota's decision preemptively to discard CAE and FE models, the record reflects an apparent policy by Toyota to lend or deposit its CAE and FE models with one of its subsidiaries and later argue that if Toyota no longer has physical possession of the underlying models, it cannot be liable for spoliation. If this were true, Toyota would have figured out a scheme masterfully to avoid producing relevant discovery - deposit everything with a subsidiary, thus shielding it from discovery. This is not the law and this practice cannot be used to circumvent discovery. As Toyota concedes, "additional FEM, CAE, and CAD materials may or may not exist in the possession of Hino." Resp. 8, fn 5. First, Plaintiffs contend that Toyota should have been required to retrieve this information from Hino. Although Toyota is correct that Magistrate Judge Ramirez did not order that Toyota produce documents that were in Hino's possession, the Magistrate Judge did not have in front of her information that has been recently produced by Toyota that confirms what Plaintiffs represented to the Magistrate Judge, that Toyota owns a majority interest in Hino Motors and even reports Hino's financial results as part of Toyota's consolidated results. See, REPLY APP 023-025. Therefore, Toyota should have produced whatever CAE and FE is in Hino's possession. Likewise with Toyota's other subsidiaries, e.g. TTDC, which is also controlled by Toyota. See, REPLY APP 026. Second, irrespective of the issue of control of the subsidiaries, the record is clear that the FE models that were used by Hino and TTDC were actually developed by Toyota, used solely for the manufacture of Toyota vehicles, and thus is owned by Toyota. See e.g., deposition of Ichiro Fukumoto, at 49:9 – 56:25 (APP 089-096).

Finally, Plaintiffs contend that to the extent FE models owned by Toyota are being "kept" by Hino or TTDC, this constitutes concealment since Toyota is using this fictional "separate legal entity" arrangement to shield the FE models from discovery in this lawsuit.

### C. The Paper Output That Toyota Produced Cannot Substitute For the Spoliated CAE and FEM.

**PLAINTIFFS' REPLY TO TOYOTA'S RESPONSE TO PLAINTIFFS' MOTION FOR
SANCTIONS AGAINST THE TOYOTA DEFENDANTS FOR CONCEALMENT OF EVIDENCE - Page 6**

Throughout its Response, Toyota argues that its spoliation of key evidence should go unpunished since it produced written crash test "reports" and engineering "drawings." In fact, Toyota boasts that it allegedly has produced over 149,000 "pages of documents" in this case. Resp. at 9. However, this argument demonstrates either that Toyota misunderstands the irreplaceable benefits of using CAE and FE models in replicating crash conditions and evaluating alternative designs or that Toyota is misrepresenting to the Court the FEM's importance in presenting evidence of Toyota's contemporaneous knowledge of defects and clear foreseeability. As the Court may recall, Plaintiffs argued in the written submission for a full representation FE "model" of the Toyota 4Runner. Dkt. Entry No. 201, at pp. 29-35. Plaintiffs made this argument again at various oral hearings. Plaintiffs also presented Toyota-generated documents clearly demonstrating that Toyota evaluated the performance of the Toyota 4Runner in crash impacts through the use of finite element modeling by way of a full representation model of the 4Runner. What was shown to the Court is the finite element model where the frame, tires, wheels, axles, floors, doors, suspension, engine, fuel system, etc. are all present in the FEM for this frontal test. (APP 037-054). This model and complete set of computer files is what should have been produced.

Toyota argues however that the crash tests reports and engineering drawings "reflect the actual crash performance of the 4Runner with respect to the allegedly defective components and systems." Resp. at 2. Toyota would have the Court believe that this is the end of the inquiry. However, these written crash test reports and engineering drawings reflect only what Toyota wants to show. The crash tests are under completely different conditions than what occurred on May 28, 2010, and do not involve similar speeds, similar physical components, multiple vehicles or multiple occupants. By the same token, the engineering drawings Toyota has produced present a single design of arguably relevant components. These cherry-picked drawings do not show the multiple alternative (and safer) designs that Toyota considered, or should have considered when the 4Runner was designed. The drawings also do not reflect the multitude of tests that Toyota performed that

**PLAINTIFFS' REPLY TO TOYOTA'S RESPONSE TO PLAINTIFFS' MOTION FOR SANCTIONS AGAINST THE TOYOTA DEFENDANTS FOR CONCEALMENT OF EVIDENCE - Page 7**

actually failed. The importance of the CAE and FEM is that it would have allowed Plaintiffs to create a computer representation by inputting numeric values representing the 4Runner's materials, including geometric dimensions, material properties and physical properties, into modeling software.

In fact, as Plaintiffs argue in the motion, the industry standard approach for evaluating crashworthiness performance across a range of conditions, or in specialized conditions, such as due diligence considerations is to utilize finite element analysis. This approach allows for the analysis of existing designs as well as for the evaluation of alternative designs under various impact conditions and/or to identify defects and create solutions to alleviate these defects in vehicle design. With the FEM and CAD that Toyota discarded, engineers could have evaluated the crash performance of the fuel system, fire prevention and suppression systems, seat restraints, air bag systems, rear occupant compartment and structural integrity of the Toyota 4Runner under a wide range of impact conditions. An expert would also have been able to evaluate and illustrate the occupants' movements in the Toyota SUV, the mechanisms that caused the injuries to the SUV's occupants, and reconstruct the injury measures being received. In other words, the paper output that Toyota produced is no substitute for the spoliated CAE and FEM.

   **D. The Circumstances of Toyota's Change of its Retention Policy and Destruction of CAE and FEM Clearly Suggests There Is Bad Faith in the Destruction or Concealment of Evidence.**

Toyota never answers the questions (a) do the CAE and FE models exist today, whether in Toyota's possession or in its subsidiaries' possession; (b) when was the decision made to destroy FE models in contravention of Toyota's stated retention policies; and (3) what led to the decision to destroy FE models in contravention of Toyota's stated retention policies. Despite its refusal to respond to these questions, Toyota would have the Court believe that randomly changing one's record retention policy and refusing to maintain FE were innocuous actions. Toyota also takes issue with Plaintiffs' contention that the magnitude of litigation in which Toyota found itself at the time gave it incentive to destroy or conceal CAE and FE, which could be used in any lawsuit against

Toyota. Contrary to Toyota's argument, this is not that great of a leap. Consider also that Toyota has offered no other reason why it changed its document retention policy and/or discarded its CAE and FE at the precise time that Toyota was embroiled in the widely publicized legal battles. Plaintiffs argue that this is direct evidence of Toyota's bad faith.

Nevertheless, even if the Court finds that this is not direct evidence of Toyota's bad faith, the law is clear that "intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Morris v. Union Pac. R.R.*, 373 F.3d 896, 902 (8th Cir.2004); *see also, Allstate Texas Lloyd's v. McKinney*, 2013 WL 3873256 (S.D.Tex. Jul 24, 2013). Plaintiffs argue that Fukumoto's testimony is simply not credible as to Toyota's use or retention of FEM. Circumstantial evidence includes: (1) [a showing that] evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator. *Calixto v. Watson Bowman Acme Corp.*, 2009 U.S. Dist. LEXIS 111659, at *44–45, 2009 WL 3823390 (S.D.Fla. Nov. 16, 2009)). In addition, when the evidence indicates that a party is aware of circumstances that are likely to give rise to future litigation and yet destroys potentially relevant records without particularized inquiry, a factfinder may reasonably infer that the party probably did so because the records would harm its case. *See Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir.1995); *Partington v. Broyhill Furn. Indus., Inc.*, 999 F.2d 269, 272 (7th Cir.1993).

Toyota simply has no plausible explanation for refusing to maintain the CAE and FE for the 2010 4Runner as well as the 2003-2009 models and for discarding it during the period surrounding

this lawsuit and/or Toyota's other highly publicized legal troubles. In other words, the timing and character of Toyota's actions establish that Toyota acted with a culpable state of mind.

### E. Toyota's Countermotion for Sanctions Falls on its Face in View of its Own Conduct in Destroying Evidence and/or Refusing to Preserve CAE and FEM.

In a clear effort to create a diversion from its conduct, Toyota has asked the Court to impose sanctions against Plaintiffs for preparation of the Spoliation Motion, but as demonstrated by Plaintiffs' Motion, Toyota's contentions have no merit. Although Toyota's alleges blindly that Plaintiffs' contentions are not supported by evidence, the record clearly rebuts Toyota's contention. Contrary to Toyota's Response, Plaintiffs' motion is not based on speculative and generalized assertions. Every fact argued by Plaintiffs is complete with cites to testimony from Toyota's witnesses, references to Toyota's documents, and references to Toyota's news releases. Plaintiffs are entitled to make reasonable inferences from these actual facts, and as stated below, the Court is permitted to consider circumstantial evidence in evaluating this Motion. Therefore, the Court should decline Toyota's request to quell legitimate requests for a spoliation sanction in situations where there has been an obvious concealment and/or destruction of highly pertinent evidence under questionable circumstances. These and other facts, along with relevant authorities, demonstrate that Plaintiffs' Spoliation Motion has merit and should be granted against Toyota. Accordingly, Plaintiffs ask that Toyota's request for countersanctions be summarily denied.

### III. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that the Court strike Toyota's claims and defenses, grant judgment against Toyota in Plaintiffs' favor, award Plaintiffs their attorneys' fees for this motion, and grant Plaintiffs such other and further relief, in law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted,

/s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

/s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2014 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

    /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN