IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the Surviving parent of WYNDELL GREENE, SR., WILLIAM GREEN, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the Surviving parent of LAKEYSHA GREEN, | § § § § § § § § § | CAUSE NUMBER 3:11-cv-0207-N |
| Plaintiffs, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR\ SALES USA, INC., VOLVO GROUP NORTH AMERICA, IND., VOLVO TRUCKS NORTH AMERICA, A A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK CORPORATION, INC., JOHN FAYARD MOVING & WAREHOUSE, LLC and DOLPHINE LINE, INC. | § § § § § § § § § § § § | |
| Defendants. | § § § | |

==========================================================================
**DEFENDANT STRICK TRAILERS, LLC'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant, Strick Trailers, LLC ("Strick"), pursuant to Fed. R. Civ. P. 56 and Local Rule 7.1, states as follows for its Reply to Plaintiffs' Response to Strick's Motion for Summary Judgment (the "Plaintiffs' Response") (R.E. 367):

**Introduction**

Strick's Motion for Summary Judgment only raised two issues: (1) whether on the

1

undisputed facts, the ICC rear bumper guard assembly on the Strick trailer at the time of the accident ("accident bumper guard") was a non-Strick bumper guard assembly for which Strick is not liable as a matter of law and alternatively, (2) whether the accident bumper guard was in a substantially different condition than when originally sold by Strick, relieving Strick of liability as a matter of law.

Plaintiffs' Response, which is tantamount to a "shotgun blast" reply, raises many arguments and alleged facts that are completely irrelevant to the disposition of the Strick Motion for Summary Judgment and fails to submit admissible evidence which would create a material dispute of fact on the pertinent issues.[1] Strick's reply will not address Plaintiffs' arguments or factual allegations that are wholly irrelevant to the resolution of the two issues raised in Strick's Motion for Summary Judgment. Strick's decision to limit its reply to the relevant issues presented by Strick's Motion for Summary Judgment should not be construed as an implicit acknowledgment of the validity of Plaintiffs' positions on any of those extraneous issues.

## I. Plaintiffs have Failed to Dispute the Material Facts Cited by Strick with Competent Admissible Evidence.

Plaintiffs have only proffered three pieces of evidence in their attempt to create a material dispute of fact on whether the accident bumper guard assembly was designed,

---

[1] Plaintiffs' Response was 38 pages in length and attached and relied on an Appendix that was an additional 1,531 pages of documents. Most of the issues raised in Plaintiffs' Response were wholly irrelevant to deciding the Strick Motion for Summary Judgment. For example, Plaintiffs' arguments regarding regulations applicable to ICC rear bumper guards (3 pages), the "consequences of inadequate bumper guards" (2 pages), the alleged inadequacies of Strick's ICC bumper guard designs (5 pages), the availability of safer alternative designs (2 pages), the "producing cause" of the decedents' deaths (3 pages), the status of the Strick trailer as "unreasonably dangerous" (4 pages), the challenge of Dolphin's replacement ICC rear bumper guard as being a "substandard product" (3 pages), Strick's alleged failure to include directions or warnings with its replacement equipment (3 pages), and the questions regarding Strick's gross negligence to support exemplary/punitive damages (5 pages) are all wholly irrelevant to the two issues raised in the Strick Motion for Summary Judgment. If the ICC rear bumper guard assembly is not a product designed, manufactured, or sold by Strick, none of these points have any bearing on the outcome of Plaintiffs' claims against Strick.

manufactured or sold by Strick: (1) testimony of Thomas Truss ("Truss"), Dolphin's motor vehicle and heavy truck expert, (2) testimony of Gary Hatfield ("Hatfield"), Dolphin's current Fleet Services Manager, and (3) the February 4, 2014 affidavit of Plaintiffs' expert, Keith Friedman ("Friedman"). *See* Plaintiffs' Response at 19-20. This evidence does not represent admissible evidence which creates a material dispute of fact over whether the accident bumper guard assembly was designed, manufactured or sold by Strick.

Truss only testified that the ICC rear bumper guard assembly involved in the accident "resembled" a Strick ICC rear bumper design.[2] However, the same pages from Truss' deposition that Plaintiffs submitted discredit this point entirely:

> Q. All right. And as someone who has years of experience in truck and trailer issues, do you feel that you are capable of looking at two versions of underride guards and telling a jury whether one is comparable to the other?
>
> A. **No, sir. Other than looking at them and saying one looks like the other, I've not done enough work in this case to decide a direct comparison,** other than a visual comparison, and that's what I was indicating in Opinion 1.

*Id*. Truss made other portions of his deposition clearer on this very issue which Plaintiffs apparently decided not to attach to their 1,531 page Appendix. Truss testified:

> Q. Would it be fair to say that you've seen a lot of underride guards in your life and your work?
>
> A. Yes, sir. About every-every truck or every trailer has got an under ride guard of some sort.
>
> * * *
>
> Q. And you've seen under ride guards that are specifically on a Strick trailer, is that right?
>
> A. No sir. I couldn't say that. I never really paid attention to what underride guard went where. I don't know the manufacturers. Actually, other than my scope, which is to –

---

[2] See Plaintiffs' Appendix to Plaintiffs' Response at App. 1501-1502.

> which is to relate to the measurements and description of the guard, I have no idea.
>
> * * *
>
> Q. And by your observations of under ride guards on Strick trailers and your observation of the under ride guard that was on the trailer in the May 28, 2010 accident, you were able to form an opinion as to whether the under ride guard that was on the trailer on May 28th was a Strick under ride guard?
>
> A. I have no idea.

See **Exhibit 3** to Strick's Appendix, App. 118-121.

Hatfield's testimony regarding Dolphin's present policy to purchase only OEM replacement parts is not admissible evidence on whether the accident guard was designed or manufactured by Strick.[3] Dolphin did not employ Hatfield prior to the date of the accident. Hatfield had no personal knowledge of Dolphin's prior policies. Hatfield admitted he was merely assuming that repairs before his tenure were with OEM parts "based on what we do now."[4] Hatfield had as no knowledge of the details of repairs reflected in Dolphin's July 2008 repair orders.[5]

Friedman's February 4, 2014 affidavit also fails to create a disputed issue of fact regarding the manufacturer of the accident bumper guard assembly. Friedman opined in his affidavit that the ICC rear bumper guard assembly attached to the Strick trailer at the time of the accident is "substantially similar, if not identical" to Strick's design for rear bumper guard

---

[3] It is ironic that Plaintiffs object to Strick's citation to Dolphin repair records showing that the ICC rear bumper guard was repaired and replaced by Dolphin in the Plaintiffs' Response, and then in the next breath go on to rely on those same records and Hatfield's second hand deposition testimony to establish that the replacement components had to be Strick's components because of Dolphin's policy regarding the use of original equipment from the manufacturer. Coincidentally, Hatfield was not even employed by Dolphin at the time the work in question was performed and cannot competently testify regarding that policy or Dolphin's repairs. See Appendix to Plaintiffs' Response at App. 299-302.

[4] See Appendix to Plaintiffs' Response at App. 312.

[5] See Appendix to Plaintiffs' Response at App. 298-301.

assemblies.[6] However, Friedman admitted in his deposition that the horizontal bar from the accident bumper guard is not the same length as the OEM horizontal bar for the subject trailer and that it lacks the perforations on the top of the bar, which are part of Strick's design.[7] The Declaration of James Jackson definitively rules out any possibility that Strick designed, manufactured, or sold the horizontal bar attached to accident guard assembly.[8]

Friedman's affidavit must be made on personal knowledge, setting forth such facts as would be admissible in evidence, and must affirmatively show that Friedman is competent to testify regarding the matters discussed in his affidavit. *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987) *citing* Fed. R. Civ. P. 56(e). Friedman's opinion that the bumper guard is "substantially similar" to Strick designs is inadmissible because it is not supported by relevant admissible facts and does not lay the necessary foundation. Friedman has not identified what tests or analysis he performed on (1) the ICC rear bumper guard assembly that was attached to the Strick trailer at the time of the accident or (2) Strick's actual ICC rear bumper guard designs in order to qualify Friedman to offer that opinion. Friedman's conclusory opinion on the identity of the designer and manufacturer of the ICC rear bumper guard attached to the Strick trailer at the time of the accident is not admissible summary judgment evidence and should be disregarded by the Court. Friedman has done nothing to prove the ICC rear bumper guard assembly attached to the Strick trailer at the time of the accident was designed, manufactured, tested, or sold by Strick.

**II. The ICC Rear Bumper Guard Assembly Attached to the Strick Trailer at the Time of Accident is Not a Strick Rear Bumper Guard Assembly.**

  **A. The Strick ICC Rear Bumper Guard is an Assembly of Specific Component**

---

[6] See Appendix to Plaintiffs' Response at App. 1099, ¶ 23.
[7] See **Exhibit 2** to Strick's Appendix, App. 100-117.
[8] See generally, Declaration of James Jackson ("Jackson Dec. ¶ _") attached to the Appendix as **Exhibit 1**, App. 1-10.

**Parts Designed Specifically for Each Strick Trailer.**

Strick's ICC rear bumper guard assemblies are comprised of (1) a horizontal bar, (2) two struts (also referred to as "uprights" if in a vertical configuration) which attach the horizontal bar to the trailer frame, and possibly (3) bolts, nuts, and attachment brackets.[9] Jackson Dec. ¶ 4; App. 3. Strick ICC rear bumper guard assemblies are specially designed, manufactured, and tested as a single indivisible unit for a particular Strick trailer. That means each component is designed and is dependent on the other specifically designed component parts of the assembly in order to make certain that each rear bumper guard assembly meets FMVSS requirements. Jackson Dec. ¶ 7; App. 4.

When a Strick ICC rear bumper guard assembly is replaced, or components of the assembly are replaced, the correct assembly and replacement components **must** be used to maintain the original structural integrity of the assembly designed for that particular Strick trailer. *Id*. Strick has adopted a company policy to make certain that incorrect or mismatched ICC rear bumper guard assemblies and component parts are not sold to Strick trailer operators. Strick requires its distributor to obtain and provide the VIN for the specific Strick trailer that requires a new assembly or component part before Strick will approve a Strick part number for sale to that particular trailer operator. Jackson Dec. ¶ 6; App. 4. This system ensures that all Strick ICC rear bumper guard assemblies maintain their structural integrity which is tested to meet FMVSS 223 requirements. Jackson Dec. ¶ 7; App. 4.

It is undisputed that Strick's ICC rear bumper guards are designed, manufactured, and tested as one entire assembly and cannot be paired or matched with Strick component parts from

---

[9] The bolts, nuts, and attachment brackets are designed and manufactured to go on most of Strick's ICC rear bumper guard assemblies including the ICC rear bumper guard assembly that was originally attached to the Strick trailer involved in this accident when it was sold to Dolphin Jackson Dec. ¶ 4; App. 3.

other Strick trailer designs or component parts from other manufacturers.[10] This fact is dispositive of Plaintiffs' claims against Strick because the ICC rear bumper guard assembly attached to the Strick trailer at the time of the accident was not the Strick ICC rear bumper guard that was designed to be affixed to the Strick trailer involved in the accident.[11] More importantly, the ICC rear bumper guard assembly involved in the accident is not a Strick ICC bumper guard assembly at all.

### B. The ICC Rear Bumper Guard Assembly Attached to the Strick Trailer at the Time of the Accident is Not a Strick ICC Rear Bumper Guard.

"A fundamental principle of traditional products liability law is that the plaintiff must prove that the defendants supplied the product which caused the injury." *Gauling v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex. 1989). The original equipment ("OEM") Strick ICC bumper guard on the Strick trailer at the time it was sold consists of a 94 ½ inch long horizontal bar which is a fabricated steel bar. Jackson Dec. ¶ 13; App. 6. This means the bar is made in two parts, the top being three sides and the bottom of the bar is a separate piece. One of the sides of the bar is not flat but indented. *Id*. The top of the horizontal bar has a pattern of perforations or holes, as shown in the drawing, which are to the right and left of the right and left upright supports, respectively. *Id*. The ICC rear bumper guard assembly attached to the Strick trailer at the time of the accident could not be the original assembly because the horizontal bar attached to

---

[10] Strick's Trailer Care and Maintenance Manual, which is made available in electronic form to its distributors, to be provided to trailer purchasers, warns that service and repairs to Strick trailer assemblies and components must include authorized Strick replacement parts so that the original structure, integrity, and dimensions are retained. Jackson Dec. ¶ 7; App 4.

[11] Strick performs an extensive quality assurance inspection on every trailer it manufactures and sells just prior to the trailer's departure from the Strick manufacturing plant. This inspection includes a thorough examination of the ICC rear bumper guard assembly to confirm that the correct (and specifically designed and manufactured) components were used to construct the ICC rear bumper guard assembly. Strick performed this quality assurance inspection on the Strick trailer at issue in this case and confirmed that the correct ICC rear bumper components and assembly were attached to the subject trailer. Jackson Dec. ¶ 10; App. 5.

the Strick trailer at the time of the accident (1) is significantly longer than the original equipment horizontal bar, (2) is constructed from a structural steel tube compared to the OEM fabricated steel horizontal bar, (3) is painted red compared to the OEM horizontal bar that was painted white, (4) does not contain the perforation pattern that was present on the OEM horizontal bar, (5) does not contain an indent on one of the sides like the OEM horizontal bar, and (6) is welded to the uprights attached to the trailer compared to the OEM horizontal bar that is bolted to the uprights that attach to the trailer. Jackson Dec. ¶ 15; App. 6-8.

Friedman has hypothesized that the horizontal bar attached to the Strick trailer at the time of the accident could possibly be a Strick horizontal bar designed for a different Strick trailer and mistakenly affixed to the Strick trailer involved in the accident.[12] Friedman's statement regarding the horizontal bar is speculative, conclusory in nature, and unsupported by any disclosed facts or research – it is also untrue. Strick has conducted an exhaustive search of its records and electronic databases and has only identified two Strick horizontal bars which meet some, but not all of the characteristics of the horizontal bar attached to Strick trailer at the time of the accident. Jackson Dec. ¶ 16; App. 8. The two Strick horizontal bars, specifically manufactured for special purpose trailers, cannot be the one-and-the-same as the horizontal bar attached to the Strick trailer at the time of the accident. Jackson Dec. ¶ 19; App. 10. This point is made clear from a direct comparison of the specifications from the Strick designs for these horizontal bars to the specifications from the horizontal bar attached to the Strick trailer which shows that (1) one design is a different length; (2) both contain a kink and/or indent on one side which is not present in the accident horizontal bar; and (3) both use different means of attaching the horizontal bar to the trailer, one using horizontal struts rather than uprights, the other using different uprights all together. One was not even available for purchase until immediately prior

---

[12] See Appendix to Plaintiffs' Response at App. 1099.

to the date of the accident. Jackson Dec. ¶¶ 16-18; App. 7-10.

There is no possible way that the horizontal bar involved in the accident was a Strick horizontal bar. Jackson Dec. ¶ 19; App. 10. Strick ICC rear bumper guards are designed, manufactured, and tested as a whole assembly and their component parts are not designed to be mixed and matched with other Strick ICC rear bumper assembly parts or ICC rear guard component parts from other part manufacturers. Jackson Dec. ¶ 6-7; App. 4. The ICC rear bumper guard assembly attached to the Strick trailer at the time of the accident is not a Strick assembly. Plaintiffs' claims against Strick must fail for this reason.

### III. The ICC Rear Bumper Guard Assembly Involved in the Accident Was Substantially Altered from its Original Condition to the Extent it Even Contains Strick Component Parts.

"Alterations or modifications not reasonably foreseeable by the manufacturer or seller are sufficient to preclude imposition of liability." *Olympic Arms, inc. v. Green*, 176 S.W.3d 567, 587 (Tex. App. 2004) (quoting *USX Corp. v. Salinas*, 818 S.W.2d 473, 489 n. 16 (Tex. App. 1991). Strick is certain that the horizontal bar affixed to the ICC rear bumper guard at the time of the accident is not a Strick horizontal bar and is not the OEM horizontal bar originally designed and manufactured for that specific Strick trailer. Strick is unable, however, to say with absolute certainty that the uprights attached to the Strick trailer at the time of the accident are not Strick uprights. Jackson Dec. ¶ 15-vii; App. 7-8.

If the uprights attached to the Strick trailer at the time of the accident were the Strick OEM upright components, the act of affixing those Strick uprights to a horizontal bar that is not a Strick OEM horizontal bar and was never designed or manufactured to be affixed to those uprights altered the OEM Strick ICC bumper guard assembly so substantially that it was not reasonably foreseeable and Strick cannot be held liable for Plaintiffs' damages. *See Nuzzie v.*

9

*Fruehauf Corp.*, 1991 WL 33099 (Ohio App. 7th Dist. 1991). Strick did not perform any services, repairs, or installations on the Strick trailer involved in this accident following the sale of the Strick trailer to Dolphin. Jackson Dec. ¶ 19; App. 10.

**WHEREFORE**, Defendant Strick Trailers, LLC, respectfully requests this Court enter an order dismissing Plaintiffs' claims against Strick with prejudice pursuant to Fed. R. Civ. P. 56 and Local Rule 56.3 and to grant such other and further relief as this Court deems necessary and just.

DAWSON & CLARK, P.C.

 /s/  Donald H. Dawson, Jr.
 DONALD H. DAWSON, JR.
Texas State Bar No. 05606500
KATHLEEN A. CLARK
Texas State Bar No. 00788830
243 West Congress, Suite 600
Detroit, MI 48226
(313) 256-8900 *(Office)*
(313) 256-8913 *(Facsimile)*

WALTERS, BALIDO & CRAIN, LLP

 /s/  S. Todd Parks
S. TODD PARKS
Texas State Bar No. 15526520
900 Jackson Street, Suite 600
Dallas, TX 75202
(214) 749-4805 *(Office)*
(214) 760-1670 *(Facsimile)*
**ATTORNEYS FOR DEFENDANT STRICK**

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2014, I electronically filed a copy of the foregoing, together with all exhibits, if any, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF participants and I hereby certify that I have mailed by United States Postal Service the document to any non CM/ECF participants.

   /s/  Donald H. Dawson, Jr.
   DONALD H. DAWSON, JR.