**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **OLLIE GREENE**, *et al.*, | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| | § | |
| **TOYOTA MOTOR CORPORATION,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**APPENDIX IN SUPPORT OF THE TOYOTA DEFENDANTS'**
**MOTION TO EXCLUDE UNTIMELY DISCLOSED**
**FILE MATERIALS AND DATA OF PLAINTIFFS' EXPERT JEFF G. VICK**

TO THE HONORABLE COURT:

COME NOW, Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively "the Toyota Defendants") and would respectfully show the Court as follows:

| EXHIBIT | DESCRIPTION | PAGE NUMBERS |
|---|---|---|
| Exhibit A | Plaintiffs' Responses to Toyota Motor Corporation's First Request for Production | 1-4 |
| Exhibit B | December 9, 2013 letter from Toyota Defendants to Plaintiffs | 5 |
| Exhibit C | Correspondence between K. Clark and N. Pittman | 6-11 |
| Exhibit D | January 21, 2014 Deposition of Jeff G. Vick | 12-32 |
| Exhibit E | February 17, 2014 email correspondence from Plaintiffs | 33-34 |

Respectfully submitted,


*/s/ Kurt C. Kern*_____
**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas  75201
(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR DEFENDANTS TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., AND TOYOTA MOTOR SALES, U.S.A., INC.**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 28th day of February, 2014.


*/s/ Jude T. Hickland*_____

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

OLLIE GREENE, Individually as the    §
surviving parent of WYNDELL GREENE,    §
SR., WILLIAM GREENE, as the    §
Administrator of the Estate of WYNDELL    §
GREENE, SR., and MARILYN    §
BURDETTE- HARDEMAN, Individually    §    **CAUSE NUMBER: 3:11-cv-0207-N**
and as the surviving parent of LAKEYSHA    §
GREENE,    §
   §
   **Plaintiffs,**    §
**v.**    §    **JURY TRIAL DEMANDED**
   §
**TOYOTA MOTOR CORPORATION,**    §
**TOYOTA MOTOR MANUFACTURING**    §
**NORTH AMERICA, INC., and**    §
**TOYOTA MOTOR SALES USA, INC.,**    §
   §
   **Defendants.**    §

### PLAINTIFFS' OBJECTIONS AND RESPONSES TO TOYOTA MOTOR CORPORATION'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFFS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs serve their

Objections and Responses to Defendants' First Request for Production to Plaintiffs as follows.

### GENERAL OBJECTIONS

1.     Plaintiffs object to each and every one of Defendants' discovery requests to the extent they request information or documents protected from discovery by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or immunity from disclosure.  Production of information or documents subject to such privilege, or protection in response to any request is inadvertent and shall not constitute or be deemed to constitute a waiver of such privilege, protection or immunity.

2.     Nothing contained in any response herein shall be deemed to be an admission, concession or waiver by Plaintiffs as to the relevance, materiality or admissibility of any document or information provided in response to Defendants' discovery requests.

3.     Plaintiffs respond to each of Defendants' discovery requests based on the information available as of the date hereof and will produce documents in its possession, custody or control which are responsive to Defendants' discovery requests and not otherwise protected

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO**
**DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** - Page 1

**REQUEST NO. 52:**

The complete file of all testifying experts.

**RESPONSE**:

Plaintiffs object to this request on the basis that it is vague, overly broad and can be read to seek the production of attorney work product or other protected matter. Plaintiffs also object to this request as a premature request for expert disclosures. Subject to these objections, Plaintiffs will produce, or make available for inspection and/or copying, unobjectionable information required by FRCP 26(a)(2) that is responsive to this Request, in accordance with the Court's Scheduling Order.

**REQUEST NO. 53:**

The curriculum vitae of all testifying experts.

**RESPONSE**:

Plaintiffs object to this request on the basis that it is a premature request for expert disclosures. Subject to these objections, Plaintiffs will produce, or make available for inspection and/or copying, unobjectionable information required by FRCP 26(a)(2) that is responsive to this Request, in accordance with the Court's Scheduling Order.

**REQUEST NO. 54:**

The testifying history list and/or case list for all testifying experts.

**RESPONSE**:

Plaintiffs object to this request on the basis that it is a premature request for expert disclosures. Subject to these objections, Plaintiffs will produce, or make available for inspection and/or copying, unobjectionable information required by FRCP 26(a)(2) that is responsive to this Request, in accordance with the Court's Scheduling Order.

**REQUEST NO. 55:**

The complete file of all consulting experts whose opinions or conclusions may be relied upon by a testifying expert.

**RESPONSE**:

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO**
**DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS - Page 17**

**REQUEST NO. 82:**

To the extent not otherwise provided in the requests above, all documents identified or referenced by you in your interrogatory answers.

**RESPONSE:**

Plaintiffs object to this request on the basis that it is vague and/or overly broad, unduly burdensome, harassing and seek information and/or material that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Respectfully Submitted,

/s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN
State Bar No. 16049750
KRISTIN KAY SCHROEDER
State Bar No. 24037452

THE PITTMAN LAW FIRM, P.C.
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com
kristin@thepittmanlawfirm.com

/s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714

LAW OFFICES OF DARYL K. WASHINGTON P.C.
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO
DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** - Page 26

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this pleading was served upon Defendants' counsel of record on August 19, 2011 in the manner described below:

KURT C. KERN                          ___   Via Hand Delivery
DAVID P. STONE                     _X_  Via CMRRR
CRAIG D. DUPEN                   ___   Via Telecopy [972 616-1701]
                                           ___   Via Regular U.S. Mail
**BOWMAN AND BROOKE, LLP**        ___   Via Overnight Courier
2711 North Haskell Avenue, Suite 650    ___   Via Email
Dallas, Texas 75204

*Daryl K. Washington /ac*
DARYL K. WASHINGTON

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO**
**DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** - Page 27

# *Bowman and Brooke* LLP

### *Attorneys at Law*

2501 North Harwood Street, Suite 1700
Dallas, TX  75201
Main: 972.616.1700
Fax: 972.616.1701

Kurt C. Kern
Direct: 972.616.1711
Email: kurt.kern@bowmanandbrooke.com

December 9, 2013

<u>VIA EMAIL</u>

Mr. Aubrey "Nick" Pittman
The Pittman Law Firm, P.C.
100 Crescent Court, Suite 700
Dallas, TX  75201

Re:   *Ollie Greene, et al. v. Toyota Motor Corporation, et al.,* In the United States District Court
for the Northern District of Texas, Dallas Division; Cause No. 3:11-CV-0207-N

Dear Nick:

We have had an opportunity to further review Plaintiffs' expert disclosures and reports of November 20, 2013.  It is apparent that certain materials should have been, but were not produced as part of those disclosures.  The Toyota Defendants therefore request that Plaintiffs produce all materials referenced in the expert reports and relied upon by Plaintiffs' experts in forming their opinions, including the Biokinetics, "2010 Toyota 4Runner Fuel Tank Evaluations" report cited by Keith Friedman and Rhoads Stephenson.  Without waiving any objection to Plaintiffs' non-disclosure, we ask that Plaintiffs produce all such materials by 5:00 p.m., December 13, 2013.

Sincerely,

BOWMAN AND BROOKE LLP

Kurt C. Kern

KCK/

cc:   Daryl K. Washington – Via email at dwashington@dwashlawfirm.com
Randy Howry - Via email at rhowry@howrybreen.com
Pat Fitzgerald - Via email at pfitzgerald@howrybreen.com
John Carlson - Via email at jcarlson@howrybreen.com
S. Todd Parks - Via email at todd.parks@wbclawfirm.com
Ashley De La Cerda - Via email at Ashley.delaCerda@wbclawfirm.com
Donald H. Dawson, Jr. - Via email at ddawson@dawson-clark.com
Kathleen A. Clark - Via kclark@dawson-clark.com
Michael P. Sharp - Via email at msharp@feesmith.com
Scott W. Self - Via email at sself@feesmith.com
John S. Kenefick - Via email at jkenefick@macdonalddevin.com
Joseph F. Henderson - Via email at jhenderson@macdonalddevin.com

APP 5

**Melanie McCarty**

| | |
|---|---|
| **From:** | Kathleen Clark <kathleen@dawson-clark.com> |
| **Sent:** | Friday, November 22, 2013 7:47 AM |
| **To:** | Aubrey "Nick" Pittman; NLWF-Robin L. Hart |
| **Cc:** | dwashington@dwashlawfirm.com; rhowry@howrybreen.com; pfitzgerald@howrybreen.com; jcarlson@howrybreen.com; Todd.Parks@wbclawfirm.com; Ashley.delaCerda@wbclawfirm.com; Don Dawson; msharp@feesmith.com; sself@feesmith.com; jkenefick@macdonalddevin.com; 'Joseph F. Henderson'; Brian E. Mason; David Stone; Donna M. Struke; Jude T. Hickland; Mary Lindsey; Julia A Campbell; Kim Weiner; Kurt C. Kern; Jama S. Reynolds |
| **Subject:** | RE: November 21, 2013 correspondence regarding expert deposition schedule |

Mr. Pittman:

The proposed schedule is clearly unworkable  (as well as being devoid of dates for experts by name).      Strick made a formal demand, according to the terms of this Court's amended scheduling order, for dates for depositions of your experts.     As a courtesy, we extended the time to five days after your disclosure date.      Your letter is not responsive to Strick's demand.   Please provide a date for each Plaintiff expert by name, including the location.    After we get these dates, we will be in a position to provide dates for Strick's experts.

We have no objection to Dallas as the location for Plaintiff's experts.    However, Strick's liability experts are located in Detroit, and, accordingly, that will be the expected location for their depositions.

(Please note:  this response and inquiry is without prejudice to Strick's  objections to the inadequacy of Plaintiff's Rule 26 expert disclosures and any relief which may be sought in this regard).

Kathleen

**Kathleen A. Clark**
**Dawson & Clark, P.C.**
243 W Congress Ave, Ste 600
Detroit, MI  48225
313-256-8900;  Fax 313-256-8913
kclark@dawson-clark.com

---

**From:** Aubrey "Nick" Pittman [mailto:pittman@thepittmanlawfirm.com]
**Sent:** Thursday, November 21, 2013 4:47 PM
**To:** 'Robin L. Hart'
**Cc:** dwashington@dwashlawfirm.com; rhowry@howrybreen.com; pfitzgerald@howrybreen.com; jcarlson@howrybreen.com; Todd.Parks@wbclawfirm.com; Ashley.delaCerda@wbclawfirm.com; Don Dawson; Kathleen Clark; msharp@feesmith.com; sself@feesmith.com; jkenefick@macdonalddevin.com; 'Joseph F. Henderson'; 'Brian E. Mason'; 'David Stone'; 'Donna M. Struke'; 'Jude T. Hickland'; 'Julia A Campbell'; 'Kim Weiner'; 'Kurt C. Kern'; 'Jama S. Reynolds'
**Subject:** November 21, 2013 correspondence regarding expert deposition schedule

Attached please find a copy of correspondence sent by fax to all counsel earlier this afternoon.

Regards,

Aubrey "Nick" Pittman,

APP 6

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court
Suite 700
Dallas, Texas 75201
(214) 459-3454
(214) 853-5912 (fax)
pittman@thepittmanlawfirm.com

**NOTE:**

APP 7

Ce courriel est confidentiel et protégé. L'expéditeur ne renonce pas aux droits et obligations qui s'y rapportent. Toute diffusion, utilisation ou copie de ce message ou des renseignements qu'il contient par une personne autre que le (les) destinataire(s) désigné(s) est interdite. Si vous recevez ce courriel par erreur, veuillez m'en aviser immédiatement, par retour de courriel ou par un autre moyen.

**CIRCULAR 230 NOTICE**: To ensure compliance with requirements imposed by U.S. Treasury Regulations, we inform you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This message and any attachments to it may contain PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT INFORMATION AND/OR ATTORNEY CORE WORK PRODUCT and is intended only for the use of the specific individual(s) to which it is addressed. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use, dissemination or copying of this e-mail or the information contained in it or attached to it is strictly prohibited. If you have received this e-mail in error, please delete it and immediately notify the person named above by reply e-mail. Thank you.

APP 8

## Melanie McCarty

| | |
|---|---|
| **From:** | Kathleen Clark <kathleen@dawson-clark.com> |
| **Sent:** | Monday, December 02, 2013 6:32 AM |
| **To:** | Aubrey "Nick" Pittman; NLWF-Robin L. Hart |
| **Cc:** | dwashington@dwashlawfirm.com; rhowry@howrybreen.com; pfitzgerald@howrybreen.com; jcarlson@howrybreen.com; todd.parks@wbclawfirm.com; ashley.delacerda@wbclawfirm.com; Don Dawson; msharp@feesmith.com; sself@feesmith.com; jkenefick@macdonalddevin.com; jhenderson@macdonalddevin.com; Brian E. Mason; David Stone; Donna M. Struke; Jama S. Reynolds; Jude T. Hickland; Julia A Campbell; Kelli Spencer; Kim Weiner; Kurt C. Kern |
| **Subject:** | RE: Greene v Toyota: November 27, 2013, correspondence regarding scheduling expert depositions |

Mr. Pittman:

It is unfortunate that Strick's and Toyota's  early requests to Plaintiffs to work out a schedule for expert depositions was rebuffed.  It is also unfortunate that  Plaintiffs have elected to allow an entire month of the limited  expert discovery period to pass before the first date provided for  deposition of Plaintiffs' experts.     It is not clear whether Plaintiffs are now refusing to provide experts on those dates.    Given that time is short, we would appreciate it if you would confirm whether Plaintiffs will produce the experts for depositions as noticed by Toyota.

Plaintiffs' proposal to intersperse defense liability expert depositions with Plaintiffs liability expert depositions is not workable.    It is not compatible with the remaining expert disclosure schedule and, in addition, Plaintiffs' liability experts have set forth overlapping subject matter and opinions.    Strick will produce its expert disclosures in compliance with the scheduling order.    Strick has been working on obtaining dates for depositions of its experts.   We will notify you as soon as available dates can be confirmed.

This response is without prejudice to Strick's objections  to  inadequate Rule 26 disclosures by  Plaintiffs' liability experts and any relief Strick may seek related thereto.

**Kathleen A. Clark**
**Dawson & Clark, P.C.**
243 W Congress Ave, Ste 600
Detroit, MI  48225
313-256-8900;  Fax 313-256-8913
kclark@dawson-clark.com

---

**From:** Aubrey "Nick" Pittman [mailto:pittman@thepittmanlawfirm.com]
**Sent:** Wednesday, November 27, 2013 2:54 PM
**To:** 'Robin L. Hart'
**Cc:** dwashington@dwashlawfirm.com; rhowry@howrybreen.com; pfitzgerald@howrybreen.com; jcarlson@howrybreen.com; todd.parks@wbclawfirm.com; ashley.delacerda@wbclawfirm.com; Don Dawson; Kathleen Clark; msharp@feesmith.com; sself@feesmith.com; jkenefick@macdonalddevin.com; jhenderson@macdonalddevin.com; 'Brian E. Mason'; 'David Stone'; 'Donna M. Struke'; 'Jama S. Reynolds'; 'Jude T. Hickland'; 'Julia A Campbell'; 'Kelli Spencer'; 'Kim Weiner'; 'Kurt C. Kern'
**Subject:** Greene v Toyota: November 27, 2013, correspondence regarding scheduling expert depositions

Counsel:

APP 9

Please find attached a copy of correspondence sent by fax today to Kathleen Clark and Kurt Kern regarding scheduling expert depositions in this matter.

Regards,

Aubrey "Nick" Pittman,
**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court
Suite 700
Dallas, Texas 75201
(214) 459-3454
(214) 853-5912 (fax)
pittman@thepittmanlawfirm.com

**NOTE:**

2

Ce courriel est confidentiel et protégé. L'expéditeur ne renonce pas aux droits et obligations qui s'y rapportent. Toute diffusion, utilisation ou copie de ce message ou des renseignements qu'il contient par une personne autre que le (les) destinataire(s) désigné(s) est interdite. Si vous recevez ce courriel par erreur, veuillez m'en aviser immédiatement, par retour de courriel ou par un autre moyen.

**CIRCULAR 230 NOTICE**: To ensure compliance with requirements imposed by U.S. Treasury Regulations, we inform you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This message and any attachments to it may contain PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT INFORMATION AND/OR ATTORNEY CORE WORK PRODUCT and is intended only for the use of the specific individual(s) to which it is addressed. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use, dissemination or copying of this e-mail or the information contained in it or attached to it is strictly prohibited. If you have received this e-mail in error, please delete it and immediately notify the person named above by reply e-mail. Thank you.

APP 11

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF TEXAS
 2                     DALLAS DIVISION
 3     OLLIE GREENE,              )
       Individually as the       )
 4     surviving parent of       )
       WYNDELL GREENE, SR.,       )
 5     WILLIAM GREENE, as the     )
       representative of the      )
 6     Estate of WYNDELL GREENE,  )
       SR., and MARILYN           )
 7     BURDETTE-HARDEMAN,         )
       individually and as the   )
 8     surviving parent of        )
       LAKEYSHA GREENE,           )
 9        Plaintiffs,             )
                                  )
10     v.                         ) CAUSE NO. 3-11CV-0207-N
                                  )
11     TOYOTA MOTOR CORPORATION,  )
       TOYOTA MOTOR               )
12     MANUFACTURING NORTH        )
       AMERICA, INC., and TOYOTA  )
13     MOTOR SALES USA, INC.,     )
       VOLVO GROUP NORTH          )
14     AMERICA, INC., VOLVO       )
       TRUCKS NORTH AMERICA, A    )
15     DIVISION OF VOLVO GROUP    )
       NORTH AMERICA, INC.,       )
16     STRICK CORPORATION, INC.,  )
       JOHN FAYARD MOVING &       )
17     WAREHOUSE, LLC and         )
       DOLPHIN LINE, INC.,        )
18        Defendants.             )
19
20     ****************************************************
21           ORAL AND VIDEOTAPED DEPOSITION OF
22                     JEFF G. VICK
23                  JANUARY 21, 2014
24     ****************************************************
25
```

Page 2

1           ORAL AND VIDEOTAPED DEPOSITION OF JEFF G. VICK,

2      produced as a witness at the instance of the Defendant

3      Toyota Motor Corporation, and duly sworn, was taken in

4      the above-styled and numbered cause on the 21st day of

5      January, 2014, from 9:44 a.m. to 6:28 p.m., before Julie

6      C. Brandt, RMR, CRR, and CSR in and for the State of

7      Texas, reported by machine shorthand, at the offices of

8      Daryl K. Washington, PC, 325 N. St. Paul, Suite 1975,

9      Room 105, Dallas, Texas, pursuant to the Federal Rules

10     of Civil Procedure and the provisions stated on the

11     record or attached hereto.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

APP 13

Page 3

1                    A P P E A R A N C E S
2
       FOR THE PLAINTIFFS:
3
            Aubrey "Nick" Pittman
4           THE PITTMAN LAW FIRM, P.C.
            100 Crescent Court, Suite 700
5           Dallas, Texas 75201-2112
            214.459.3325
6           pittman@thepittmanlawfirm.com
7           Daryl K. Washington
            THE LAW OFFICES OF DARYL K. WASHINGTON, P.C.
8           325 N. St. Paul Street, Suite 1975
            Dallas, Texas 75201
9           214.880.4883
            dwashington@dwashlawfirm.com
10
11      FOR THE DEFENDANT TOYOTA MOTOR CORPORATION:
12           Kurt C. Kern
             BOWMAN AND BROOKE LLP
13           2501 North Harwood Street, Suite 1700
             Dallas, Texas 75201
14           972.616.1711
             kurt.kern@bowmanandbrooke.com
15
16      FOR THE DEFENDANT VOLVO GROUP NORTH AMERICA, INC.:
17           John E. Carlson
             HOWRY BREEN & HERMAN, LLP
18           1900 Pearl Street
             Austin, Texas 78705-5408
19           512.474.7300
             jcarlson@howrybreen.com
20
21      FOR THE DEFENDANT JOHN FAYARD MOVING & WAREHOUSE, LLC:
22           Scott W. Self
             FEE, SMITH, SHARP & VITULLO LLP
23           13155 Noel Road, Suite 1000
             Dallas, Texas 75240
24           972.934.9100
             sself@feesmith.com
25

APP 14

Page 4

```
 1     FOR THE DEFENDANT STRICK CORPORATION, INC.:
 2          Ashley de la Cerda
            WALTERS, BALIDO & CRAIN
 3          900 Jackson Street, Suite 600
            Dallas, Texas 75202
 4          214.749.4805
            ashley.delacerda@wbclawfirm.com
 5
            Donald H. Dawson
 6          DAWSON & CLARK, P.C.
            243 W. Congress, Suite 600
 7          Detroit, Michigan 48226
            313.256.8906
 8          ddawson@dawson-clark.com
 9
       FOR THE DEFENDANT DOLPHIN LINES, INC.:
10
            Joseph F. Henderson
11          MACDONALD DEVIN
            3800 Renaissance Tower
12          1201 Elm Street
            Dallas, Texas 75270
13          214.651.3324
            jhenderson@macdonalddevin.com
14
15     VIDEOGRAPHER:
16          Kristen Geoffrion - Merrill Corp.
17
18
19
20
21
22
23
24
25
```

Page 5

1                            INDEX
                                                    PAGE
2

Appearances.................................    3
3      Proceedings.................................    6
4      JEFF G. VICK
           Examination by MR. KERN..................    7
5          Examination by MR. DAWSON................   87
           Examination by MR. CARLSON...............  139
6          Examination by MR. SELF..................  192
           Examination by MR. HENDERSON.............  313
7          Further Examination by MR. CARLSON.......  320
8      Signature and Changes.......................  333
       Reporter's Certificate......................  335
9

10     DEPOSITION EXHIBITS                         IDENTIFIED

11     Exhibit 1      November 19, 2013 Report of J.G.
                      Vick Consulting.................   15
12
       Exhibit 2      Schematic map...................   41
13
       Exhibit 3      Schematic map...................   41
14
       Exhibit 4      4N6XPRT StifCalcs for utility
15                    vehicle.........................   48
16     Exhibit 5      Color copy of photo from scene..   53
17     Exhibit 6      Expert Witness, Court Testimony
                      Log of Jeff G. Vick, Sept. 2003
18                    to Nov. 2013....................   89
19     Exhibit 7      Color copy of photo from scene..  101
20     Exhibit 8      4N6XPRT StifCalcs for Toyota
                      Corolla.........................  161
21
       Exhibit 9      Document showing relative crush
22                    on schematic of Corolla.........  162
23
24
25

Page 9

```
 1         A.    Probably would have to check with the people
 2    who supplied them to me.
 3         Q.    Okay.  And who was that?
 4         A.    That would be the office of Nick Pittman, I
 5    believe.
 6         Q.    All right.  And how were they supplied to you?
 7         A.    I think they were via e-mail.
 8         Q.    Electronically?
 9         A.    Yes.
10         Q.    And have you printed the reports out?
11         A.    Yes, sir.
12         Q.    All right.  Late yesterday I received an
13    e-mail transmission indicating that it was your file
14    materials in this case.  I tried to quickly review them.
15    I did not see any expert reports in those materials that
16    were provided yesterday.  Are they printed out and part
17    of your file now?
18              MR. PITTMAN:  Objection.  Form.
19         A.    The -- my expert reports or --
20         Q.    (BY MR. KERN)  The expert reports you're
21    referring to that you received you said three weeks ago,
22    perhaps.
23         A.    Oh.  No, they're not included in that.
24         Q.    All right.  And do you have the e-mail
25    transmission on a computer somewhere where you would be
```

Page 32

1    so -- it's ARAS HD is what it is.

2       Q.   And what you're saying is you may have used

3    that just as a -- part of your analysis, but in terms of

4    actual output, you don't have any ARAS HD output in your

5    file, do you, sir?

6       A.   No.

7       Q.   And you're not intending to use any of that at

8    trial, are you, sir?

9       A.   No.

10      Q.   The only output that you're using in terms of

11   what's been computer aided or a computer tool would be

12   the FX3, and it will be these diagrams that we'll be

13   talking about?

14      A.   Yes.

15      Q.   All right.

16      A.   The diagrams were also, you know, used for

17   measurements, determining trajectory, angles and things

18   like that as well.

19      Q.   All right.  Can you show me -- because, again,

20   receiving materials last night, I tried to review them,

21   sir, but can you show me any hand calculations that

22   exist in your file materials, because I didn't see any?

23      A.   I don't have any here.

24      Q.   Okay.  Well, where are the hand calculations?

25      A.   I hope back at my office.  I think back at my

Page 33

1    office.

2        Q.   All right.  And you say you hope back at the

3    office.  Tell me what you're thinking.  You're saying

4    that you set those aside, or you just did them on paper

5    and that still may or may not exist?

6        A.   I believe it exists.  We recently moved, and

7    we're still in boxes, and we have stuff all over the

8    place.  I've just got my office operational again and

9    unpacking and getting organized in my office.

10        Q.   All right.

11        A.   So --

12        Q.   When did you supply these materials -- that's

13    the diagrams -- all of your file materials, when did you

14    initially supply those to plaintiffs's counsel?

15        A.   All of the files?

16        Q.   Yes, sir.

17        A.   Just a couple of days ago.

18        Q.   So prior to just a couple days ago, is the

19    only thing that you had ever provided to plaintiffs's

20    counsel your report that we've marked as Exhibit 1?

21        A.   Yes.

22        Q.   And when you were getting ready for this

23    deposition and you were gathering materials that you

24    were going to supply to plaintiffs's counsel, did you

25    look for these hand calculations?

Page 44

1      Q.   You don't have the output in terms of all the

2   points that you shot and how they correlate?  You don't

3   have that input or output file?

4      A.   You're wanting --

5           MR. PITTMAN:  Objection.  Form.

6      A.   I'm sure I have it.  You're talking about the

7   raw data?

8      Q.   (BY MR. KERN)  Yes, sir.

9      A.   I'm sure I have it.

10     Q.   Okay.  Where would that be?  Back at your

11  office?

12     A.   More than likely in my computer, uh-huh.

13     Q.   All right.  Does this reflect all of the data

14  points which you shot when you inspected the 4Runner?

15     A.   I believe it does.  Well, no.  No, it doesn't.

16     Q.   Okay.  Well, explain the change of your answer

17  there.  You thought that it did and then you said no, it

18  doesn't.

19     A.   Well, for this section, yes, it does, but I

20  shot also down the side as well and down the other side

21  as well.  But for the purposes of determining this

22  amount of crush, this is all I used.  So that's what I

23  provided.

24     Q.   All right.  Well, do you have other outputs

25  similar to Exhibit 3 for any other aspect of the Toyota

Page 49

1      Q.   All right.   And is there any information

2   specific to the type of 4Runner, the 2010 model series

3   4Runner that's involved in this accident?

4      A.   No.

5      Q.   And what did you do with these StifCalcs?

6      A.   Basically I used some information off of tests

7   with similar type vehicles in order to determine the

8   barrier equivalent velocity or the kinetic energy

9   equivalent speed for the -- to match to the damage that

10   I've determined in the displacement of the frame member

11   back here.

12      Q.   All right.   And did you calculate how much

13   kinetic energy was at work in this initial impact

14   between the Volvo and the 4Runner?

15      A.   I'm sure I did.

16      Q.   Do you have that calculation with you here

17   today?

18      A.   I don't have any calculations today.

19      Q.   All right.   Looking at some of these other

20   materials, did you use the Toyota crash test for any of

21   your analysis in this case?

22      A.   I looked at it.

23      Q.   I mean, I know it's here, so I'm assuming you

24   looked at it.   But was there anything that you used in

25   the way of information from this report in conjunction

Page 69

1    Q.   All right.  And how long of a period of time

2    was it between impact, the initial impact between the

3    Volvo and the 4Runner and the 4Runner and the Corolla?

4    A.   Milliseconds.  I'm thinking somewhere in the

5    neighborhood of a tenth of a second.

6    Q.   And did you do some hand calculations in that

7    regard as well?

8    A.   Yes.

9    Q.   And those aren't with us here today, are they?

10   A.   No.

11   Q.   Okay.  So then after this impact with the

12   4Runner being kind of squished or positioned between the

13   Corolla and the Volvo, what happens to the Corolla?

14   A.   Well, the Corolla is accelerated.

15   Q.   And what is its change in velocity?

16   A.   I have anywhere between, I believe, 35 miles

17   an hour and 38 miles an hour.

18   Q.   All right.  And at this impact, both with the

19   4Runner into the Corolla and then when the Volvo tractor

20   catches up to the 4Runner while it's still engaged with

21   the Corolla, there is no evidence of fuel release or

22   fire.  Isn't that true, sir?

23        MR. PITTMAN:  Objection.  Form.

24   A.   I don't know if there is or not.  I'm not the

25   fire expert.  I haven't seen any.

Page 87

1   they're saying, and I disagree with that.

2      Q.   Okay.  Any other points of disagreement that

3   you believe may be factual rather than opinion between

4   yourself and Mr. Carr?

5      A.   That's -- really at this point in time, I

6   can't answer that 100 percent, but I can't think of

7   anything right now.

8            MR. KERN:  All right.  Mr. Vick, I would

9   have additional questions for you regarding your data

10  and/or your equations, your hand calculations if they

11  had been provided here today, but in view of them not

12  having been provided, I'm going to go ahead and pass the

13  witness at this time.

14            THE WITNESS:  Okay.

15                 EXAMINATION

16  BY MR. DAWSON:

17     Q.   Good morning, Mr. Vick.  My name is Don

18  Dawson.  I'm one of the attorneys representing Strick.

19     A.   Good morning.

20     Q.   And I have some very few questions of you

21  probably based upon what you've been kind enough to

22  bring today for us.

23            Mr. Vick, can you tell me how many times when

24  either you were a state trooper or in private practice

25  that you've investigated crashes at speeds in excess of

Page 110

1    every other deposition you've given where you've been an

2    accident reconstructionist, is it not true that you have

3    brought with you your calculations for the opposing

4    lawyer to look at and question you about?

5                    MR. PITTMAN:  Objection.  Form.

6        A.   I have to say this is the first deposition I

7    have never received a subpoena to appear at --

8        Q.   (BY MR. DAWSON)  All right.

9        A.   -- with any type of request at all, so I

10   figured that what I brought was actually generous.

11       Q.   Okay.  Well, let me go back to my question,

12   though.  Would you agree this is the first deposition

13   you've ever given where you've served as an accident

14   reconstructionist and you did not bring your calculation

15   data to the deposition?

16                   MR. PITTMAN:  Objection.  Form.

17       A.   That's probably correct.  There may be times

18   where I haven't, but not that I recall.

19       Q.   (BY MR. DAWSON)  And would you agree, sir,

20   that even though lawyers are not always the best

21   mathematicians, they tend to like to go over your

22   calculations with you to see how it is you arrived at

23   your ultimate conclusions concerning such things as

24   delta-v, kinetic energy and so forth?

25                   MR. PITTMAN:  Objection.  Form.

Page 111

1      A.    Yeah, it's not unusual for you guys to want to

2   see that.

3      Q.    (BY MR. DAWSON)  All right, sir.  Now you also

4   talked about when you were at the scene on May 30, you

5   did a total station of the crash scene.  Is that right,

6   sir?

7      A.    Correct.

8      Q.    And is that printout from total station -- I

9   know it can get kind of large, but you can put it on a

10  thumb drive.  Is that here for us today?

11     A.    No, sir.

12     Q.    All right.

13     A.    Well, you have the -- you have the finished

14  product of it.  You have the diagrams.

15     Q.    I appreciate that.  But what I'm saying if I

16  wanted to go back and see whether or not your diagrams

17  were properly plotted out, I would have to look at the

18  total output of the total station.  Correct?

19     A.    Yes.

20     Q.    And where is that data?  Is that back at the

21  new offices?

22     A.    It would be.

23     Q.    Okay.  And did you -- before you came and

24  brought the materials you did, did you discuss with

25  counsel what is it I should bring for these guys to

Page 115

1    calculations which would allow you to determine the

2    speed and trajectory of the vehicles and the angles of

3    their impact.  Is that correct?

4         A.   At least to the extent that I'm comfortable

5    with, yeah.

6         Q.   And then goes on to say, I also used modeling

7    software to predict the general location of the vehicles

8    throughout the accident.  You had done that prior to

9    doing this report.  Is that correct?

10        A.   Well, you know, I guess a better term would be

11   mapping software instead of modeling software.

12        Q.   Fair enough.

13             So when you did this report on November 19,

14   you had the information within your control where if you

15   wanted to describe to the reader of this report the

16   speeds, the trajectory and the angles of impact, you

17   could have done that.  Is that correct?

18             MR. PITTMAN:  Objection.  Form.

19        A.   I believe I did that to an acceptable level.

20        Q.   (BY MR. DAWSON)  Not fussing with you about

21   that.

22        A.   You know, I just wrote the report as I saw

23   fit, and that's how it was turned in.  I didn't --

24   didn't go into every specific potential possible area.

25        Q.   Well, let's do it another way.  If this report

Page 116

1   was sent to you and then someone walked up to you and

2   said, Jeff, I want you to tell me the speeds, trajectory

3   and the angles of impact of all the vehicles involved,

4   could you answer that question from this report?

5        A.   Well, you could at least answer some of the

6   specific questions.  You know, as far as every aspect of

7   this collision, that's what I thought depositions were

8   for.

9        Q.   Okay.

10       A.   If you had asked me at that point in time.

11  And I have explained to you --

12       Q.   And I appreciate that.

13       A.   -- you know, what I've done and I've explained

14  to you actually the impact to the back of the Strick

15  trailer and the forces involved and how the ICC bumper

16  failed.

17       Q.   But would you agree with me, sir, that you

18  could not have given the detail you've given today just

19  from reviewing this report, Exhibit No. 1 --

20            MR. PITTMAN:  Objection.  Form.

21       Q.   (BY MR. DAWSON) -- without your calculations

22  and trajectory maps that you brought with you?

23            MR. PITTMAN:  Same objection.

24       A.   Sir, I don't have any problem with the way I

25  wrote my report.

Page 117

1          Q.    (BY MR. DAWSON)   That isn't my question.

2          A.    So --

3                      MR. DAWSON:   Move to strike as

4     nonresponsive.

5          Q.    (BY MR. DAWSON)   My question is very simple.

6     With this report only, would you agree that there is

7     nothing in here that would allow a reader of the report

8     to draw the conclusions, first of all, of the speeds of

9     each of the impacts?

10                     MR. PITTMAN:   Objection.   Form.

11         A.    I would say you could.   I disagree with you.

12         Q.    (BY MR. DAWSON)   Okay.   And why do you

13    disagree with me?   What is there that would allow me to

14    calculate the speeds from what's in this report that you

15    came to the conclusions existed at the time you wrote

16    it?

17         A.    Well, I'm telling you what I calculated in

18    speeds, so you don't need to calculate it.

19         Q.    Right.   If I want to double check it, if I

20    want to do it for myself, is there anything in here that

21    would allow me to do that, sir?

22                     MR. PITTMAN:   Objection.   Form.

23         A.    If you look at the diagrams and stuff, you

24    should be able to.

25         Q.    (BY MR. DAWSON)   I agree with you, but those

Page 173

1          A.   I would have to look at my diagrams to give

2      you that information.

3          Q.   What distance do you have between the Moody

4      tractor and the Greene 4Runner at that moment of

5      perception, the back of the Toyota 4Runner?

6          A.   Please restate that.

7          Q.   Yes, sir.

8               At the moment of perception, what's the

9      distance between the front of the Volvo tractor and the

10     rear of the Greene 4Runner, according to your

11     calculations?

12         A.   At the moment of perception, I have it

13     documented in the diagrams.  I would have to look at

14     them.

15         Q.   It's in the diagrams, and you don't have any

16     of the underlying calculations with you today.  Is that

17     correct?

18         A.   I don't have the calculations with me today,

19     no.  But you can see -- if you look at the diagrams, you

20     can see that it's -- everything's there for you to

21     calculate it.

22         Q.   Now you -- in response to a question

23     Mr. Dawson asked you, you said that the perception

24     reaction time that you used for your calculations was

25     between 1.25 and 2 seconds.  Is that correct?

Page 204

1    consulting work in Texas, since you retired from the New

2    Mexico State Police, that the Texas Department of Public

3    Safety actually has a separate sub agency or group of

4    troopers who are specifically assigned the

5    responsibility of commercial motor vehicle enforcement?

6         A.   Yes, uh-huh.  And I think the state of New

7    Mexico is moving that direction.  I think even though

8    they're still separated, I think that they're really

9    working more together than what they were whenever I

10   retired.

11        Q.   Right.

12             And you understand that -- from reading some

13   of the depositions in this case, that there were two of

14   those commercial motor vehicle enforcement troopers or

15   DOT troopers for shorthand, who participated in the

16   investigation of this accident.  Correct?

17        A.   I know at least one.  I believe that was

18   Baughman.

19        Q.   Did you read Trooper Baughman's deposition?

20        A.   I did.

21        Q.   And did you also know that there was another

22   DOT trooper who assisted him named Trooper Al Cummins.

23        A.   You know, it sounds familiar, but I don't have

24   a ready recollection of that.

25        Q.   Do you recall having read Trooper Cummins's

Page 205

1    deposition?

2         A.    I don't know if I did or not.  I don't know.

3    I don't recall.

4         Q.    Did you happen to bring copies of any of those

5    deposition transcripts with you today?

6         A.    No.

7         Q.    All right.  Did you bring a copy of the DPS

8    police file with you today?

9         A.    Yes.

10        Q.    Now you're aware, sir, that the Texas

11   Department of Public Safety actually issued a formal

12   Texas Peace Officer's Crash Report, sometimes called a

13   form CR3, with regard to this accident.  Correct?

14        A.    Yes.

15        Q.    And you know that that's a document that

16   consists of six pages of that form that identifies the

17   parties to the crash and the department's findings with

18   regard to the crash.  Correct?

19        A.    It's a report level report.

20        Q.    Right.

21        A.    It doesn't go into reconstruction or anything.

22   It's just basically a synopsis, and it identifies the

23   people involved.

24        Q.    You understand that the trooper -- the Texas

25   DPS trooper who prepared this report, the gentleman

Page 270

1    be able to withstand a collision of at least 31 miles

2    per hour from a vehicle like a Toyota 4Runner?

3         A.   It should be able to.

4         Q.   Okay.  What's your authority for that, please?

5         A.   Well, the standard itself.  The Federal Motor

6    Carrier Safety Regulation.  You can pretty well

7    calculate the amount of energy that goes into the crash

8    test based on weight and velocity, and you can see if it

9    exceeds or meets the minimum standard requirements.

10        Q.   Have you done those calculations in this case?

11        A.   Uh-huh.

12        Q.   Do you have those calculations with you?

13        A.   No.

14        Q.   Have you at any point before today provided

15   those calculations to plaintiffs's counsel?

16        A.   No.

17        Q.   Do you understand, sir, that the -- that the

18   Fayard Dolphin tractor trailer assembly, that it left

19   skid marks following the impact in this case?

20        A.   Well, I know there's tire marks that are after

21   impact and then they release and then there's light

22   shadow marks to the final rest where the tractor is

23   at -- where the trailer is at.  I wouldn't necessarily

24   call those skid marks.

25        Q.   Did you measure those?

**Melanie McCarty**

| | |
|---|---|
| **From:** | Aubrey "Nick" Pittman <pittman@thepittmanlawfirm.com> |
| **Sent:** | Monday, February 17, 2014 7:23 PM |
| **To:** | PITTMAN@THEPITTMANLAWFIRM.COM; DWASHINGTON@DWASHLAWFIRM.COM; Jama S. Reynolds |
| **Cc:** | RHOWRY@HOWRYBREEN.COM; JCARLSON@HOWRYBREEN.COM; DHOLDER@HOWRYBREEN.COM; TODD.PARKS@WBCLAWFIRM.COM; ASHLEY.DELACERDA@WBCLAWFIRM.COM; JENNIFER.FRENCH@WBCLAWFIRM.COM; DDAWSON@DAWSON-CLARK.COM; KCLARK@DAWSON-CLARK.COM; MSHARP@FEESMITH.COM; SSELF@FEESMITH.COM; JKENEFICK@MACDONALDDEVIN.COM; JHENDERSON@MACDONALDDEVIN.COM; Brian E. Mason; David Stone; Donna M. Struke; Jude T. Hickland; Julia A Campbell; Kelli Spencer; Kim Weiner; Kurt C. Kern; Melanie McCarty; NLWF-Robin L. Hart |
| **Subject:** | Jeff Vick's Calculations |
| **Attachments:** | Jeff Vick Calculations.pdf |
| | |
| **Importance:** | High |

Counsel:

Mr. Vick was able to locate some of the calculations he discussed
during his deposition.  As you may recall, at his deposition, he
indicated the notes had been misplaced in his recent move.  The notes
are attached.

Please contact me or Mr. Washington if you have any comments or concerns.

Regards,

Aubrey "Nick" Pittman,
The Pittman Law Firm, P.C.
100 Crescent Court
Suite 700
Dallas, Texas 75201
(214) 459-3454
(214) 853-5912 (fax)
pittman@thepittmanlawfirm.com

NOTE:

Ce courriel est confidentiel et protégé. L'expéditeur ne renonce pas
aux droits et obligations qui s'y rapportent. Toute diffusion,
utilisation ou copie de ce message ou des renseignements qu'il contient
par une personne autre que le (les) destinataire(s) désigné(s) est
interdite. Si vous recevez ce courriel par erreur, veuillez m'en aviser
immédiatement, par retour de courriel ou par un autre moyen.

CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by
U.S. Treasury Regulations, we inform you that any U.S. tax advice
contained in this communication (including any attachments) was not
intended or written to be used, and cannot be used, for the purpose of

(i) avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any transaction
or matter addressed herein.

This message and any attachments to it may contain PRIVILEGED AND
CONFIDENTIAL ATTORNEY CLIENT INFORMATION AND/OR ATTORNEY CORE WORK
PRODUCT and is intended only for the use of the specific individual(s)
to which it is addressed. If you are not an intended recipient of this
e-mail, you are hereby notified that any unauthorized use,
dissemination or copying of this e-mail or the information contained in
it or attached to it is strictly prohibited. If you have received this
e-mail in error, please delete it and immediately notify the person
named above by reply e-mail. Thank you.

APP 34