**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **OLLIE GREENE**, *et al.*, | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| | § | |
| **TOYOTA MOTOR CORPORATION**, *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**APPENDIX IN SUPPORT OF THE TOYOTA DEFENDANTS'**
**MOTION TO EXCLUDE UNTIMELY DISCLOSED FILE MATERIALS AND DATA OF**
**PLAINTIFFS' EXPERTS KEITH FRIEDMAN AND RHOADS STEPHENSON**

TO THE HONORABLE COURT:

COME NOW, Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively "the Toyota Defendants") and would respectfully show the Court as follows:

| EXHIBIT | DESCRIPTION | PAGE NUMBERS |
|---|---|---|
| Exhibit A | Plaintiffs' Responses to Toyota Motor Corporation's First Request for Production | 1-4 |
| Exhibit B | January 16, 2014 email from Plaintiffs' counsel to Defense Counsel | 5-6 |
| Exhibit C | December 9, 2013 letter from Toyota Defendants to Plaintiffs | 7 |
| Exhibit D | Correspondence between K. Clark and N. Pittman | 8-13 |
| Exhibit E | January 15, 2014 and January 17, 2014 Depositions of Keith Friedman | 14-47 |
| Exhibit F | January 18, 2014 Deposition of Rhoads Stephenson | 48-53 |

Respectfully submitted,


*/s/ Kurt C. Kern*_____
**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas  75201
(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR DEFENDANTS
TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA,
INC., AND TOYOTA MOTOR SALES,
U.S.A., INC.**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 28th day of February, 2014.


*/s/ Jude T. Hickland*_____

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE- HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, <br><br> Plaintiffs, <br><br> v. <br><br> TOYOTA MOTOR CORPORATION, TOYOTA MOTOR MANUFACTURING NORTH AMERICA, INC., and TOYOTA MOTOR SALES USA, INC., <br><br> Defendants. | § § § § § § § § § § § § § § § § | CAUSE NUMBER: 3:11-cv-0207-N <br><br><br> JURY TRIAL DEMANDED |

## PLAINTIFFS' OBJECTIONS AND RESPONSES TO TOYOTA MOTOR CORPORATION'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFFS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs serve their

Objections and Responses to Defendants' First Request for Production to Plaintiffs as follows.

## GENERAL OBJECTIONS

1.     Plaintiffs object to each and every one of Defendants' discovery requests to the extent they request information or documents protected from discovery by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or immunity from disclosure.  Production of information or documents subject to such privilege, or protection in response to any request is inadvertent and shall not constitute or be deemed to constitute a waiver of such privilege, protection or immunity.

2.     Nothing contained in any response herein shall be deemed to be an admission, concession or waiver by Plaintiffs as to the relevance, materiality or admissibility of any document or information provided in response to Defendants' discovery requests.

3.     Plaintiffs respond to each of Defendants' discovery requests based on the information available as of the date hereof and will produce documents in its possession, custody or control which are responsive to Defendants' discovery requests and not otherwise protected

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO**
**DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** - Page 1

**REQUEST NO. 52:**

The complete file of all testifying experts.

**RESPONSE:**

Plaintiffs object to this request on the basis that it is vague, overly broad and can be read to seek the production of attorney work product or other protected matter. Plaintiffs also object to this request as a premature request for expert disclosures. Subject to these objections, Plaintiffs will produce, or make available for inspection and/or copying, unobjectionable information required by FRCP 26(a)(2) that is responsive to this Request, in accordance with the Court's Scheduling Order.

**REQUEST NO. 53:**

The curriculum vitae of all testifying experts.

**RESPONSE:**

Plaintiffs object to this request on the basis that it is a premature request for expert disclosures. Subject to these objections, Plaintiffs will produce, or make available for inspection and/or copying, unobjectionable information required by FRCP 26(a)(2) that is responsive to this Request, in accordance with the Court's Scheduling Order.

**REQUEST NO. 54:**

The testifying history list and/or case list for all testifying experts.

**RESPONSE:**

Plaintiffs object to this request on the basis that it is a premature request for expert disclosures. Subject to these objections, Plaintiffs will produce, or make available for inspection and/or copying, unobjectionable information required by FRCP 26(a)(2) that is responsive to this Request, in accordance with the Court's Scheduling Order.

**REQUEST NO. 55:**

The complete file of all consulting experts whose opinions or conclusions may be relied upon by a testifying expert.

**RESPONSE:**

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO**
**DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS - Page 17**

**REQUEST NO. 82:**

To the extent not otherwise provided in the requests above, all documents identified or referenced by you in your interrogatory answers.

**RESPONSE:**

Plaintiffs object to this request on the basis that it is vague and/or overly broad, unduly burdensome, harassing and seek information and/or material that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Respectfully Submitted,

/s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN
State Bar No. 16049750
KRISTIN KAY SCHROEDER
State Bar No. 24037452

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com
kristin@thepittmanlawfirm.com

/s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO**
**DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** - Page 26

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this pleading was served upon Defendants' counsel of record on August 19, 2011 in the manner described below:

| | |
|---|---|
| KURT C. KERN | ____ Via Hand Delivery |
| DAVID P. STONE | _X_ Via CMRRR |
| CRAIG D. DUPEN | ____ Via Telecopy [972 616-1701] |
| | ____ Via Regular U.S. Mail |
| **BOWMAN AND BROOKE, LLP** | ____ Via Overnight Courier |
| 2711 North Haskell Avenue, Suite 650 | ____ Via Email |
| Dallas, Texas 75204 | |

_Daryl K. Washington/ac_
DARYL K. WASHINGTON

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO
DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** - Page 27

## Melanie McCarty

| | |
|---|---|
| **From:** | Aubrey Nick Pittman <pittman@thepittmanlawfirm.com> |
| **Sent:** | Thursday, January 16, 2014 2:57 PM |
| **To:** | Kurt C. Kern; Daryl Washington |
| **Cc:** | David Stone; Jude T. Hickland; Brian E. Mason; Kim Weiner; Pat Fitzgerald; John Carlson; Randy Howry; todd.parks@wbclawfirm.com; Ashley De la Cerda; Don Dawson; Kathleen Clark; Scott W. Self; jkenefick@macdonalddevin.com; jhenderson@macdonalddevin.com; Aubrey  Nick  Pittman |
| **Subject:** | Re: Greene v. Toyota - Production of Expert File Materials |

Mr. Kern:

I am heading back into a meeting with another client and will address your email in more detail later. However, there are a few issues I feel need to be addressed immediately:

First, as you know the vast majority of materials Mr. Friedman relied on are discovery materials that you've had all along. In addition, you never made a formal request that his materials be made available "for inspection and copying." I will address the issue of the logistics of producing expert materials in more detail later including ascertaining whether all Defendants' experts provided "all" of their underlying materials on December 20, 2013.

Second, contrary to your representation, when Mr. Friedman brought the 15 boxes to his deposition you did not ask him what was specifically in each of the boxes and he certainly did not prevent you from looking at the documents. He asked for just a moment to organize them and you asked him to do so over the lunch break, during which time you could have competed a full review. In addition, you did not arrange to have copied the documents he brought for inspection.

Third, as Mr. Friedman and I both explained to you yesterday, the "additional work" to which you are referring was done in preparation for a potential rebuttal report for which he did not have time to complete. He did not change the opinions in his initial report.

I hope this clears these issues.


-----Original Message-----
From: "Kurt C. Kern" <Kurt.Kern@bowmanandbrooke.com>
Date: Thu, 16 Jan 2014 19:37:40
To: Aubrey \"Nick\" Pittman <pittman@thepittmanlawfirm.com>;
Dwashington<dwashington@dwashlawfirm.com>
Cc: David Stone<David.Stone@bowmanandbrooke.com>; Jude T.
Hickland<Jude.Hickland@bowmanandbrooke.com>; Brian E.
Mason<Brian.Mason@bowmanandbrooke.com>; Kim Weiner<Kim.Weiner@bowmanandbrooke.com>; Pat
Fitzgerald<pfitzgerald@howrybreen.com>; John Carlson<jcarlson@howrybreen.com>; Randy
Howry<rhowry@howrybreen.com>; todd.parks@wbclawfirm.com<todd.parks@wbclawfirm.com>;
Ashley.delaCerda@wbclawfirm.com<Ashley.delaCerda@wbclawfirm.com>; Don Dawson<ddawson@dawson-clark.com>; Kathleen Clark<kathleen@dawson-clark.com>; Scott W. Self<sself@feesmith.com>;
jkenefick@macdonalddevin.com<jkenefick@macdonalddevin.com>;
jhenderson@macdonalddevin.com<jhenderson@macdonalddevin.com>
Subject: Greene v. Toyota - Production of Expert File Materials

Counsel:

Per our discussions of yesterday it remains our position that expert file materials (particularly those that provide support for their opinions) were required to be served at the time of the expert's report. Further, I pointed out Plaintiffs' deficiency in this regard and requested production of materials relied upon by your expert well over a month ago. As confirmed with Mr. Friedman yesterday he did not produce his file materials in this matter until the middle of the morning session of his deposition and even then did not allow us to review the materials. Moreover, we learned for the first time yesterday that Mr. Friedman has conducted a significant amount of work since production of his report and absolutely no disclosure of same was provided to Defendants. Accordingly, Toyota will be moving to strike and/or preclude the use of such  untimely, non-produced and/or non-disclosed materials. As for production of Toyota's expert materials, they were served the same day expert reports were served, you received multiple correspondence on the day of service advising you of same and we have confirmed Plaintiffs' counsel have actually received same.

Kurt

Sent from my wireless device
Please excuse brevity, typos, etc.

_____

 Note: This electronic mail is intended to be received and read only by certain individuals. It may contain information that is attorney-client privileged or

protected from disclosure by law. If it has been misdirected, or if you suspect you have received this in error, please notify me by replying and then

delete both the message and reply. Thank you.

APP 6

# *Bowman and Brooke* LLP

### *Attorneys at Law*

2501 North Harwood Street, Suite 1700
Dallas, TX  75201
Main: 972.616.1700
Fax: 972.616.1701

Kurt C. Kern
Direct: 972.616.1711
Email: kurt.kern@bowmanandbrooke.com

December 9, 2013

<u>VIA EMAIL</u>

Mr. Aubrey "Nick" Pittman
The Pittman Law Firm, P.C.
100 Crescent Court, Suite 700
Dallas, TX  75201

Re:   *Ollie Greene, et al. v. Toyota Motor Corporation, et al.,* In the United States District Court
for the Northern District of Texas, Dallas Division; Cause No. 3:11-CV-0207-N

Dear Nick:

We have had an opportunity to further review Plaintiffs' expert disclosures and reports of November 20, 2013.  It is apparent that certain materials should have been, but were not produced as part of those disclosures.  The Toyota Defendants therefore request that Plaintiffs produce all materials referenced in the expert reports and relied upon by Plaintiffs' experts in forming their opinions, including the Biokinetics, "2010 Toyota 4Runner Fuel Tank Evaluations" report cited by Keith Friedman and Rhoads Stephenson.  Without waiving any objection to Plaintiffs' non-disclosure, we ask that Plaintiffs produce all such materials by 5:00 p.m., December 13, 2013.

Sincerely,

BOWMAN AND BROOKE LLP

Kurt C. Kern

KCK/

cc:   Daryl K. Washington – Via email at dwashington@dwashlawfirm.com
Randy Howry - Via email at rhowry@howrybreen.com
Pat Fitzgerald - Via email at pfitzgerald@howrybreen.com
John Carlson - Via email at jcarlson@howrybreen.com
S. Todd Parks - Via email at todd.parks@wbclawfirm.com
Ashley De La Cerda - Via email at Ashley.delaCerda@wbclawfirm.com
Donald H. Dawson, Jr. - Via email at ddawson@dawson-clark.com
Kathleen A. Clark - Via kclark@dawson-clark.com
Michael P. Sharp - Via email at msharp@feesmith.com
Scott W. Self - Via email at sself@feesmith.com
John S. Kenefick - Via email at jkenefick@macdonalddevin.com
Joseph F. Henderson - Via email at jhenderson@macdonalddevin.com

## Melanie McCarty

| | |
|---|---|
| **From:** | Kathleen Clark <kathleen@dawson-clark.com> |
| **Sent:** | Friday, November 22, 2013 7:47 AM |
| **To:** | Aubrey "Nick" Pittman; NLWF-Robin L. Hart |
| **Cc:** | dwashington@dwashlawfirm.com; rhowry@howrybreen.com; pfitzgerald@howrybreen.com; jcarlson@howrybreen.com; Todd.Parks@wbclawfirm.com; Ashley.delaCerda@wbclawfirm.com; Don Dawson; msharp@feesmith.com; sself@feesmith.com; jkenefick@macdonalddevin.com; 'Joseph F. Henderson'; Brian E. Mason; David Stone; Donna M. Struke; Jude T. Hickland; Mary Lindsey; Julia A Campbell; Kim Weiner; Kurt C. Kern; Jama S. Reynolds |
| **Subject:** | RE: November 21, 2013 correspondence regarding expert deposition schedule |

Mr. Pittman:

The proposed schedule is clearly unworkable  (as well as being devoid of dates for experts by name).      Strick made a formal demand, according to the terms of this Court's amended scheduling order, for dates for depositions of your experts.     As a courtesy, we extended the time to five days after your disclosure date.      Your letter is not responsive to Strick's demand.   Please provide a date for each Plaintiff expert by name, including the location.     After we get these dates, we will be in a position to provide dates for Strick's experts.

We have no objection to Dallas as the location for Plaintiff's experts.    However, Strick's liability experts are located in Detroit, and, accordingly, that will be the expected location for their depositions.

(Please note:   this response and inquiry is without prejudice to Strick's  objections to the inadequacy of Plaintiff's Rule 26 expert disclosures and any relief which may be sought in this regard).

Kathleen

**Kathleen A. Clark**
**Dawson & Clark, P.C.**
243 W Congress Ave, Ste 600
Detroit, MI  48225
313-256-8900;  Fax 313-256-8913
kclark@dawson-clark.com

---

**From:** Aubrey "Nick" Pittman [mailto:pittman@thepittmanlawfirm.com]
**Sent:** Thursday, November 21, 2013 4:47 PM
**To:** 'Robin L. Hart'
**Cc:** dwashington@dwashlawfirm.com; rhowry@howrybreen.com; pfitzgerald@howrybreen.com; jcarlson@howrybreen.com; Todd.Parks@wbclawfirm.com; Ashley.delaCerda@wbclawfirm.com; Don Dawson; Kathleen Clark; msharp@feesmith.com; sself@feesmith.com; jkenefick@macdonalddevin.com; 'Joseph F. Henderson'; 'Brian E. Mason'; 'David Stone'; 'Donna M. Struke'; 'Jude T. Hickland'; 'Julia A Campbell'; 'Kim Weiner'; 'Kurt C. Kern'; 'Jama S. Reynolds'
**Subject:** November 21, 2013 correspondence regarding expert deposition schedule

Attached please find a copy of correspondence sent by fax to all counsel earlier this afternoon.

Regards,

Aubrey "Nick" Pittman,

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court
Suite 700
Dallas, Texas 75201
(214) 459-3454
(214) 853-5912 (fax)
pittman@thepittmanlawfirm.com

**NOTE:**

2

Ce courriel est confidentiel et protégé. L'expéditeur ne renonce pas aux droits et obligations qui s'y rapportent. Toute diffusion, utilisation ou copie de ce message ou des renseignements qu'il contient par une personne autre que le (les) destinataire(s) désigné(s) est interdite. Si vous recevez ce courriel par erreur, veuillez m'en aviser immédiatement, par retour de courriel ou par un autre moyen.

**CIRCULAR 230 NOTICE**: To ensure compliance with requirements imposed by U.S. Treasury Regulations, we inform you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This message and any attachments to it may contain PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT INFORMATION AND/OR ATTORNEY CORE WORK PRODUCT and is intended only for the use of the specific individual(s) to which it is addressed. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use, dissemination or copying of this e-mail or the information contained in it or attached to it is strictly prohibited. If you have received this e-mail in error, please delete it and immediately notify the person named above by reply e-mail. Thank you.

APP 10

## Melanie McCarty

| | |
|---|---|
| **From:** | Kathleen Clark <kathleen@dawson-clark.com> |
| **Sent:** | Monday, December 02, 2013 6:32 AM |
| **To:** | Aubrey "Nick" Pittman; NLWF-Robin L. Hart |
| **Cc:** | dwashington@dwashlawfirm.com; rhowry@howrybreen.com; pfitzgerald@howrybreen.com; jcarlson@howrybreen.com; todd.parks@wbclawfirm.com; ashley.delacerda@wbclawfirm.com; Don Dawson; msharp@feesmith.com; sself@feesmith.com; jkenefick@macdonalddevin.com; jhenderson@macdonalddevin.com; Brian E. Mason; David Stone; Donna M. Struke; Jama S. Reynolds; Jude T. Hickland; Julia A Campbell; Kelli Spencer; Kim Weiner; Kurt C. Kern |
| **Subject:** | RE: Greene v Toyota: November 27, 2013, correspondence regarding scheduling expert depositions |

Mr. Pittman:

It is unfortunate that Strick's and Toyota's early requests to Plaintiffs to work out a schedule for expert depositions was rebuffed.  It is also unfortunate that Plaintiffs have elected to allow an entire month of the limited expert discovery period to pass before the first date provided for deposition of Plaintiffs' experts.    It is not clear whether Plaintiffs are now refusing to provide experts on those dates.   Given that time is short, we would appreciate it if you would confirm whether Plaintiffs will produce the experts for depositions as noticed by Toyota.

Plaintiffs' proposal to intersperse defense liability expert depositions with Plaintiffs liability expert depositions is not workable.   It is not compatible with the remaining expert disclosure schedule and, in addition, Plaintiffs' liability experts have set forth overlapping subject matter and opinions.   Strick will produce its expert disclosures in compliance with the scheduling order.   Strick has been working on obtaining dates for depositions of its experts.   We will notify you as soon as available dates can be confirmed.

This response is without prejudice to Strick's objections  to  inadequate Rule 26 disclosures by  Plaintiffs' liability experts and any relief Strick may seek related thereto.

**Kathleen A. Clark**
**Dawson & Clark, P.C.**
243 W Congress Ave, Ste 600
Detroit, MI  48225
313-256-8900;  Fax 313-256-8913
kclark@dawson-clark.com

---

**From:** Aubrey "Nick" Pittman [mailto:pittman@thepittmanlawfirm.com]
**Sent:** Wednesday, November 27, 2013 2:54 PM
**To:** 'Robin L. Hart'
**Cc:** dwashington@dwashlawfirm.com; rhowry@howrybreen.com; pfitzgerald@howrybreen.com; jcarlson@howrybreen.com; todd.parks@wbclawfirm.com; ashley.delacerda@wbclawfirm.com; Don Dawson; Kathleen Clark; msharp@feesmith.com; sself@feesmith.com; jkenefick@macdonalddevin.com; jhenderson@macdonalddevin.com; 'Brian E. Mason'; 'David Stone'; 'Donna M. Struke'; 'Jama S. Reynolds'; 'Jude T. Hickland'; 'Julia A Campbell'; 'Kelli Spencer'; 'Kim Weiner'; 'Kurt C. Kern'
**Subject:** Greene v Toyota: November 27, 2013, correspondence regarding scheduling expert depositions

Counsel:

APP 11

Please find attached a copy of correspondence sent by fax today to Kathleen Clark and Kurt Kern regarding scheduling expert depositions in this matter.

Regards,

Aubrey "Nick" Pittman,
**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court
Suite 700
Dallas, Texas 75201
(214) 459-3454
(214) 853-5912 (fax)
pittman@thepittmanlawfirm.com

**NOTE:**

APP 12

Ce courriel est confidentiel et protégé. L'expéditeur ne renonce pas aux droits et obligations qui s'y rapportent. Toute diffusion, utilisation ou copie de ce message ou des renseignements qu'il contient par une personne autre que le (les) destinataire(s) désigné(s) est interdite. Si vous recevez ce courriel par erreur, veuillez m'en aviser immédiatement, par retour de courriel ou par un autre moyen.

**CIRCULAR 230 NOTICE**: To ensure compliance with requirements imposed by U.S. Treasury Regulations, we inform you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This message and any attachments to it may contain PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT INFORMATION AND/OR ATTORNEY CORE WORK PRODUCT and is intended only for the use of the specific individual(s) to which it is addressed. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use, dissemination or copying of this e-mail or the information contained in it or attached to it is strictly prohibited. If you have received this e-mail in error, please delete it and immediately notify the person named above by reply e-mail. Thank you.

APP 13

**KEITH FRIEDMAN - 1/15/2014**

Page 1

1               IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF TEXAS
2                      DALLAS DIVISION
3    OLLIE GREENE,                )
     Individually as the          )
4    surviving parent of          )
     WYNDELL GREENE, SR.,         )
5    WILLIAM GREENE, as the       )
     representative of the        )
6    Estate of WYNDELL GREENE,    )
     SR., and MARILYN             )
7    BURDETTE-HARDEMAN,           )
     Individually and as the      )
8    surviving parent of          )
     LAKEYSHA GREENE,             )
9        Plaintiffs,              )
                                  )
10   VS.                          ) CAUSE NO. 3-11CV-0207-N
                                  )
11   TOYOTA MOTOR CORPORATION,    )
     TOYOTA MOTOR                 )
12   MANUFACTURING NORTH          )
     AMERICA, INC., AND TOYOTA    )
13   MOTOR SALES USA, INC.,       )
     VOLVO GROUP NORTH            )
14   AMERICA, INC., VOLVO         )
     TRUCKS NORTH AMERICA, A      )
15   DIVISION OF VOLVO GROUP      )
     NORTH AMERICA, INC.,         )
16   STRICK CORPORATION, INC.,    )
     JOHN FAYARD MOVING &         )
17   WAREHOUSE, LLC and           )
     DOLPHIN LINE, INC.           )
18       Defendants.              )
19
20
        **************************************************
21           ORAL AND VIDEOTAPED DEPOSITION OF
22                    KEITH FRIEDMAN
                       VOLUME 1
23
                    JANUARY 15, 2014
24      **************************************************
25      ORAL AND VIDEOTAPED DEPOSITION OF KEITH FRIEDMAN,

Page 2

1     produced as a witness at the instance of the

2     Defendants, and duly sworn, was taken in the

3     above-styled and numbered cause on January 15, 2014,

4     from 9:55 a.m. to 6:03 p.m., before Donna Wright, CSR

5     in and for the State of Texas, reported by machine

6     shorthand, at the law offices of BOWMAN & BROOKE, 2901

7     Via Fortuna Drive, Suite 500, Austin, Texas, pursuant

8     to the Federal Rules of Civil Procedure and the

9     provisions stated on the record or attached hereto.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

```
 1                A P P E A R A N C E S
 2
 3   FOR THE PLAINTIFFS:
         Mr. Aubrey "Nick" Pittman
 4       THE PITTMAN LAW FIRM, P.C.
         100 Crescent Court
 5       Suite 700
         Dallas, Texas  75201
 6       (214) 459-3454
 7            - and -
 8       Mr. Daryl K. Washington
         THE LAW OFFICES OF DARYL K. WASHINGTON, P.C.
 9       325 St. Paul Street
         Suite 1975
10       Dallas, Texas  75201
         (214) 880-4883
11
12   FOR THE DEFENDANTS TOYOTA MOTOR CORPORATION, TOYOTA
     MOTOR MANUFACTURING NORTH AMERICA, INC., AND TOYOTA
13   MOTOR SALES USA, INC.:
         Mr. Kurt C. Kern
14       BOWMAN AND BROOKE, LLP
         2711 North Haskell Avenue
15       Suite 650
         Dallas, Texas  75204
16       (972) 616-1700
17
     FOR THE DEFENDANTS VOLVO GROUP NORTH AMERICA, INC. AND
18   VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP
     NORTH AMERICA, INC.:
19       Mr. Patrick Fitzgerald
         HOWRY, BREEN & HERMAN, LLP
20       1900 Pearl Street
         Austin, Texas  78705
21       (512) 474-7300
22
23
24
25
```

APP 16

Page 4

```
 1    FOR THE DEFENDANT STRICK CORPORATION, INC.:
           Mr. S. Todd Parks
 2         WALTERS, BALIDO & CRAIN
           100 North Trinity Street
 3         Decatur, Texas  76234
           (940) 626-8254
 4
               - and -
 5
           Mr. Donald Dawson
 6         DAWSON & CLARK, P.C.
           243 W. Congress, Suite 600
 7         Marquette Building
           Detroit, Michigan  48226
 8         (313) 256-8900
 9
10    FOR THE DEFENDANT FAYARD MOVING & WAREHOUSE, LLC:
           Mr. Scott W. Self
11         FEE, SMITH, SHARP & VITULLO, LLP
           13155 Noel Road
12         Suite 1000
           Dallas, Texas  75240
13         (972) 934-9100
14
      FOR THE DEFENDANT DOLPHIN LINE, INC.:
15         Mr. John S. Kenefick
           MACDONALD DEVIN, P.C.
16         3800 Renaissance Tower
           1201 Elm Street
17         Dallas, Texas  75270
           (214) 744-3300
18
19    ALSO PRESENT:
           Kristin Geoffrion - Videographer
20
21
22
23
24
25
```

Page 5

```
 1                        INDEX
 2
 3      Appearances....................................    3
 4
 5
 6  KEITH FRIEDMAN
 7
        Examination by Mr. Kern........................    8
 8      Examination by Mr. Fitzgerald..................  205
 9      Witness' Signature Page........................  252
        Reporter's Certificate.........................  254
10
11
                          EXHIBITS
12
        NUMBER            DESCRIPTION              PAGE
13
        Exhibit 1     ..................................   17
14                    Preliminary Crash Worthiness and
                      Fire Worthiness Report
15      Exhibit 2     ..................................   22
                      E-mail
16      Exhibit 3     ..................................   87
                      E-mail
17      Exhibit 4     ..................................  111
                      Photograph
18      Exhibit 5     ..................................  111
                      Photograph
19      Exhibit 6     ..................................  120
                      Photograph
20      Exhibit 7     ..................................  122
                      Photograph
21      Exhibit 8     ..................................  122
                      Photograph
22      Exhibit 9     ..................................  123
                      Photograph
23      Exhibit 10    ..................................  197
                      Drawing
24      Exhibit 11    ..................................  198
                      Texas Peace Officer's Crash
25                    Test Report
```

**KEITH FRIEDMAN - 1/15/2014**

Page 6

Exhibit 12 .................................. 199
17 Boxes of File Material
Exhibit 13 .................................. 199
Rate Schedule
Exhibit 14 .................................. 199
Deposition List
Exhibit 15 .................................. 206
Report
Exhibit 16 .................................. 209
Engineering Report Related to
Braking
Exhibit 17 .................................. 209
Engineering Report Related to
Braking

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

APP 19

Page 23

```
 1              MR. PITTMAN:  Objection to form.  Also, I
 2    would instruct the witness not to respond on the basis
 3    of attorney work product.
 4              Counsel, this is -- you're aware this is
 5    not a formal request.  I believe that you've made the
 6    point quite clear in a number of pleadings where we
 7    tried to request information from you, and you made it
 8    known to the court that this is not a formal document
 9    request.  This is not a formal document request.  We
10    have instructed the witness as a result of attorney
11    work product not to respond.  If you want to waste your
12    time going through this, you can.
13              So some of the material we'll provide to
14    you, but we're not going to provide material that is --
15    that violates our attorney work product privilege.  So
16    if you want to -- if you want to continue this, I'll
17    keep telling the witness not to respond because of our
18    privilege.
19              And, again, this is not a formal document
20    request, and I -- since you represented to the witness
21    that you made this request, I'll represent to the
22    witness that this is not a formal document request that
23    was made of him either pursuant to a deposition notice,
24    nor a subpoena, nor a request for production of
25    documents.
```

1              So this informal note from your legal

2      assistant or in conjunction with the information from

3      the legal assistant is not -- is not a formal request.

4      So I don't want you to mislead this witness into

5      believing that he has violated a formal proper document

6      request.

7              So, again, we've objected -- some of the

8      information is in his file, some of the information

9      we'll provide, but -- we'll provide as a courtesy, but

10     this is not a normal request.

11     Q.   (BY MR. KERN)  Mr. Friedman, are you going to

12     continue to follow Mr. Pittman's instructions and

13     refuse to answer my question?

14     A.   Of course.

15     Q.   Mr. Friedman, since you're familiar with

16     federal court requirements of experts with regard to

17     information they must produce, let me ask you, are you

18     familiar with the federal rule that provides that there

19     is no work product exception to communications or

20     documents relating to compensation for the expert's

21     study or testimony?  Are you aware of that rule, sir?

22     A.   No.

23              MR. PITTMAN:  Objection, form.

24     Q.   (BY MR. KERN)  Do you have any personal

25     opposition -- separate from some objection being

Page 41

1   file?

2                   MR. PITTMAN:  Objection, form.

3                   THE WITNESS:  I don't know what complete

4   means, but it will be a -- it will be the hard -- it

5   will be the file, yes.

6        Q.   (BY MR. KERN)  Well, I heard you reference

7   that other parts of your file are here with you.  Are

8   they here electronically currently?

9        A.   No, I have my report.

10       Q.   Besides your report, is any other portion of

11  your file with us here at this time?

12       A.   No.

13       Q.   And is your file maintained electronically or

14  is it all hard copy?

15       A.   It's in hard copy.

16       Q.   And do you maintain your e-mail communications

17  or analysis regarding this file, sir?

18                  MR. PITTMAN:  Objection, form.

19                  THE WITNESS:  No.

20       Q.   (BY MR. KERN)  I'm sorry?

21       A.   No.

22       Q.   That's just company policy that e-mails are

23  not maintained or they're maintained for a brief period

24  of time and then discarded in the ordinary course of

25  business?

Page 55

1  the record.

2      Q.   (BY MR. KERN)  All right.  Mr. Friedman, we

3  took a break there, and your files have been brought

4  into the deposition room.  Are you ready to resume,

5  sir?

6      A.   Yes.

7      Q.   And is there anything that came to mind during

8  the break in terms of testimony that you've provided so

9  far here today that you in any way need to revise,

10  amend, or correct?

11     A.   Well, I was thinking about your question about

12  there's is additions to the report.  And I was looking

13  at all the boxes and I was thinking, "Well, yeah,

14  obviously, all the work that we've done couldn't be put

15  into the report."  So these sort of highlight the

16  opinions.  But, you know, obviously, there's lots more

17  material that you might think of as being add.  I

18  wouldn't think that way.

19     Q.   All right.  Anything else besides that come to

20  mind during the break with respect to testimony you've

21  provided here so far today that you in any way would

22  want to revise, amend, or correct?

23     A.   No.

24     Q.   As to the issue of additional materials, have

25  you done further work on this case since the time you

Page 57

1      Q.   All right.  Aside from reviewing discovery

2  materials, which would with include all the defense

3  expert reports, and then materials from Strick and

4  Volvo and maybe Toyota, is there any other work you

5  have undertaken since the time your report was produced

6  to us on November 20th of 2013?

7      A.   Yes.  We've been taking that information and

8  incorporated it into our analyses.  So I guess the

9  answer is yes.

10     Q.   Okay.  Describe what you mean by you took

11  those materials and incorporated them into your

12  analyses.

13     A.   Well, we took them into account is what I

14  mean.

15     Q.   Okay.  All right.  Besides reviewing the

16  discovery --

17     A.   To the extent that we understood them.

18     Q.   All right.  Besides the discovery materials

19  being reviewed by you, which would include the defense

20  expert reports and materials from Strick and Volvo and

21  perhaps Toyota and then incorporating them into your

22  analyses, is there any additional work you've

23  undertaken in this case since November 20th, 2013, when

24  your reports were provided to us?

25     A.   Well, like I said, we continued to do our

Page 58

```
 1    analyses.  So we've done some testing work, we've done
 2    some analysis work, we've done simulation work, we've
 3    done -- you know, as I said, continued our analysis
 4    based on the additional information.
 5         Q.   You've done testing and simulation work since
 6    November 20th, sir?
 7         A.   We continued our simulation and analysis work.
 8         Q.   All right.  Tell me about the testing you did
 9    in general since November 20th.
10         A.   Well, we've looked at -- we've tested a
11    trailer with air ride suspension and we tested the fuel
12    tank and we analyzed impacts with varying trailer
13    conditions and incorporating various Volvo parts that
14    were supplied.
15         Q.   Okay.  So the testing you've done since
16    November 20th -- and this is in general, but I just
17    want to make sure I have the list correct.  You tested
18    a trailer with air ride suspension, you tested a fuel
19    tank, you analyzed certain trailer conditions, and then
20    you incorporated various components on a Volvo tractor?
21         A.   Yes.
22         Q.   Any other testing work which you've done since
23    November 20th?
24         A.   Well, I think that describes it basically.
25         Q.   Okay.
```

Page 59

```
 1        A.    I mean, testing, looking at the impact between
 2   the Volvo and the 4Runner with the Volvo parts that
 3   were finally supplied, at least partially.
 4        Q.    And then you said testing and simulation.  Is
 5   there separate simulation work or is that incorporated
 6   in this list?
 7        A.    I guess it depends on how you think of it, but
 8   there certainly are simulations.  So you can think of
 9   it as testing or you can think of it as analysis.
10        Q.    Tell me about the simulation work you've done
11   since November 20th in general.
12        A.    Well, we've done finite element modeling of
13   various impacts.
14        Q.    And you refer to finite element modeling as
15   FEM, sir?
16        A.    Or FEA.  Actually --
17        Q.    Which one would you prefer to use?
18        A.    I just say finite element analysis.  I don't
19   usually use abbreviations.
20        Q.    All right.  Well, tell me about the finite
21   element analysis simulation work you've done.
22        A.    Well, we've impacted the -- a vehicle
23   representing a 4Runner, we've -- with a vehicle
24   representing the Volvo.  We've impacted the 4Runner
25   into a Strick trailer and -- with and without underride
```

Page 60

```
 1   guards under various conditions.
 2       Q.   Okay.  Anything else?
 3       A.   I think they also looked at -- I think that's
 4   the general characteristics.
 5       Q.   And then what else were you thinking there?
 6   You said you also looked at --
 7       A.   Well, I already said Volvo hitting the
 8   4Runner.
 9       Q.   All right.  And when did you conduct this
10   work, sir?
11       A.   Well, we've been conducting it.  As I said, we
12   got new information, so we incorporated that.
13       Q.   Again, if we had your billings detailing the
14   hours that you've worked on the days that you've worked
15   with a description of the work, would you be able to
16   better tell us when this work was conducted?
17       A.   No.
18            MR. PITTMAN:  Objection, form.
19       Q.   (BY MR. KERN)  Sir?
20       A.   No.
21       Q.   Why not?
22       A.   Well, because in there it would be in that
23   kind of detail.  But, I think, in general, you know, we
24   received materials.  And when we receive them, then we
25   incorporate them.  So, for example, we had a document
```

Page 61

1    from Toyota, but it wasn't translated, so we had to

2    wait for a translation and got a translation.

3        Q.   And you are disclosing to us for the first

4    time today that you conducted this testing and

5    simulation work.  Is that correct, sir?

6                   MR. PITTMAN:  Objection, form.

7                   THE WITNESS:  I don't know.  I think of

8    it more as illustrations.  They're not my opinion.

9    They illustrate my opinions.

10       Q.   (BY MR. KERN)  Well, am I correct that you're

11   disclosing to us for the first time today that you

12   conducted this testing and simulation work?

13                  MR. PITTMAN:  Objection, form.

14                  THE WITNESS:  No.  It's just sort of the

15   background to my opinions.  I mean, something was going

16   on in parallel as opposed to something about

17   disclosing.

18       Q.   (BY MR. KERN)  Show me where in your report by

19   page number you indicated that you had conducted

20   testing with override suspension or done finite element

21   analysis of a Volvo into a 4Runner.

22       A.   Well, in here is a -- this looks like an

23   illustration of an FE frame, as you see on Page 38 and

24   39.

25       Q.   I'm not looking for diagrams or pictures.  I

Page 62

1    want you to point to me in this report where you

2    disclosed that you had done testing on a trailer with

3    override suspension or had done finite element analysis

4    simulations of a Volvo into a 4Runner.

5                   MR. PITTMAN:  Objection, form.

6        Q.   (BY MR. KERN)  Are you going to be able to do

7    that, sir?  Or, if I understood you correctly, this was

8    all the work that you conducted since November 20th, so

9    by definition it wouldn't be in this report?

10                  MR. PITTMAN:  Objection, form.

11                  THE WITNESS:  Well, I think what I said

12   is, you know, this shows an FE model in the report of

13   the frame and the tanks.  So the question of, is there

14   some explicit statement about it?  I think, as I said,

15   we're still -- we were still waiting for information

16   to -- to have the characterization of the Volvo and

17   et cetera.

18       Q.   Have you read --

19       A.   It's not an -- by the way, it's not an

20   underride suspension.  It's air ride suspension.

21       Q.   Have you read Robert Lang's report in this

22   case, sir?

23       A.   I skimmed it.  It's very long.

24       Q.   Why would you have not read it in greater

25   detail?

Page 85

1   company?

2      A.   He's an employee in some sense, but he's a

3   1099 employee.

4      Q.   All right.  So, then, tell me all of the

5   evidence, sir, that you have or all the bases for the

6   opinion that you've offered that the fuel tank struck

7   the ground in the initial impact with the Volvo.

8             MR. PITTMAN:  Objection, form.

9             THE WITNESS:  Well, what we see is -- I

10  guess I could get some materials.

11     Q.   (BY MR. KERN)  Mr. Friedman, do you remember

12  my question, sir?

13     A.   Yeah.  I was just looking for some

14  illustrative materials, though, just --

15     Q.   Okay.  You said that you were looking for

16  illustrative materials in your file, sir.  During the

17  break did you have your file brought into the room?

18     A.   Yes.

19     Q.   And did I request to be able to review the

20  file during the break, and you told me that, no, you

21  would prefer that you leave it in the condition which

22  it was brought into the room so that it would be

23  organized pursuant to your liking?

24     A.   Yes.

25     Q.   Yet, you just took about five minutes to look

Page 86

1    in your file materials and were not able to locate the

2    illustrative materials that you apparently were looking

3    for?

4        A.   Well, not instantaneously.  But, as I said, I

5    haven't had a chance to go through the boxes to have

6    them organized yet.  So -- but I have some -- you know,

7    I think I can answer your question just from the

8    report.

9        Q.   Well, with respect to the file materials, sir,

10   were you aware that we had requested that these

11   materials be produced to us before your deposition,

12   sir?

13       A.   No.

14            MR. PITTMAN:  Objection, form.

15       Q.   (BY MR. KERN)  That's never been communicated

16   to you that there was a request or that you should

17   produce your file materials in advance of your

18   deposition, sir?

19            MR. PITTMAN:  Objection, form.

20            THE WITNESS:  Well, I think -- you know,

21   I don't know that that would have been possible in the

22   case even if it was.

23       Q.   (BY MR. KERN)  Why would that not have been

24   possible, sir?

25       A.   Because there's so much material.

Page 89

1    Q.   (BY MR. KERN)  And other than those reports

2  with the attached references/bibliographies and the CVs

3  of yourself and Dr. Stephenson, you have not provided

4  any of your file materials prior to today.  Isn't that

5  true, sir?

6               MR. PITTMAN:  Objection, form.

7               THE WITNESS:  Yes.

8    Q.   (BY MR. KERN)  All right.  So back to my

9  question, which initially was, tell me about all of the

10  evidence that you have that supports your underlying

11  opinion that the fuel tank contacted the ground when

12  the Volvo initially struck the 4Runner, and you were

13  unable to locate anything in your file materials, but

14  now what are you wanting to refer me to, sir?

15    A.   Well, I -- so if you look on Page 35 --

16    Q.   Yes, sir.

17    A.   -- you see the marks in the road.

18    Q.   That's the photograph on the left side, sir?

19    A.   Yes.  And then you see the scratch marks on

20  the tank shield.  In addition, you have an analysis

21  that shows the impact of the 4Runner.  The 4Runner is

22  driven down by the Volvo tractor and driven into the

23  ground.

24    Q.   When was that analysis conducted?

25    A.   I'm not sure when it was finished, but at

Page 163

```
 1    countermeasure in the event that the fuel tank sustains

 2    a severed or pulled hose or line?

 3        A.   No, but those are examples.  Other examples,

 4    for example, are to use a bladder and a fuel cell so

 5    that you have foam that reduces the flow of fuel out,

 6    as an example.  There are other technologies is, I

 7    guess, what I'm saying.

 8        Q.   And my question to you is, were bladders or

 9    fuel cells discussed at all in your expert report

10    produced to us on November 20th?

11        A.   I think we're referring to available

12    technology.  So while we didn't list all possible

13    technology, I brought 18 boxes for purposes of

14    including in the -- as exhibits in the deposition to

15    illustrate my opinions.  So in there you'll find

16    examples of other technologies.  But the point is that

17    it's available technology, so --

18        Q.   And those are materials that support your

19    opinions in this case?

20        A.   Yes.

21        Q.   And I heard you just say you brought 18 boxes.

22    I haven't stopped to count them since they were brought

23    into the room.  Is that how many are over there?

24        A.   I believe so.  Maybe 17.

25        Q.   17?
```

Page 164

1      A.    17, unless there's one hidden.

2      Q.    And, again, since we don't know what the cause

3    or the source of the gasoline leak was, it is not

4    possible to say to a reasonable degree of probability

5    that any of this available technology would have

6    changed the outcome in this case.  Isn't that true?

7                    MR. PITTMAN:  Objection.

8                    THE WITNESS:  No, I think the -- what is

9    appropriate for good fuel system design is appropriate

10   for good fuel system design.  So these are elements

11   that should be in any fuel tank system, because you

12   don't want -- you know, the lines can sever.  You don't

13   want the tanks to leak.  That it was the point of the

14   report in 2004.

15                    So, you know, this is work that's

16   published and -- okay, that's -- that's why it was

17   published.  So there's no reason for all the tanks --

18   for tanks in general to leak under these conditions

19   that are being tested by Biokinetics.  And they show

20   the technology to keep them from being leaking -- from

21   being leaked -- or from -- from leaking.  Too much

22   coffee.

23     Q.    All right.  So, again, I understand that this

24   is a defect which you have identified in terms of the

25   available technology that should have been employed.

Page 204

1   He said he did not have time to do a rebuttal report.

2   So the -- the research and information he did following

3   his report was in preparation of a rebuttal report.

4          So it's not that -- that Mr. Friedman had

5   formed additional opinions following the issuance of

6   his report.  So, again, if you had listened to his

7   testimony, that -- that work that he was doing was with

8   respect to looking at your experts' reports and the

9   other expert reports and being in a position,

10  hopefully, to render a rebuttal report, which he

11  couldn't do because of time.

12         So I just want the record to reflect that

13  since you want to file your motion.  So I'll make sure

14  that I made myself clear with respect to your experts

15  as well.

16         MR. KERN:  Okay.  The time?

17         THE VIDEOGRAPHER:  Four hours and

18  42 minutes.

19         MR. KERN:  And the time on the clock?

20         THE VIDEOGRAPHER:  It is 4:42.

21         MR. KERN:  4:42?

22         And, counsel, I disagree with what you

23  said.  I'll prove to you that -- and I'll prove to the

24  court that I produced all of my expert file materials

25  as required by the federal rules at the time that I

KEITH FRIEDMAN - 1/17/2014
VOLUME 2

Page 258

```
 1            IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF TEXAS
 2                     DALLAS DIVISION
 3   OLLIE GREENE,             )
     Individually as the      )
 4   surviving parent of      )
     WYNDELL GREENE, SR.,      )
 5   WILLIAM GREENE, as the    )
     representative of the     )
 6   Estate of WYNDELL GREENE, )
     SR., and MARILYN          )
 7   BURDETTE-HARDEMAN,        )
     Individually and as the  )
 8   surviving parent of       )
     LAKEYSHA GREENE,          )
 9       Plaintiffs,           )
                               )
10   VS.                       ) CAUSE NO. 3-11CV-0207-N
                               )
11   TOYOTA MOTOR CORPORATION, )
     TOYOTA MOTOR              )
12   MANUFACTURING NORTH       )
     AMERICA, INC., AND TOYOTA )
13   MOTOR SALES USA, INC.,    )
     VOLVO GROUP NORTH         )
14   AMERICA, INC., VOLVO      )
     TRUCKS NORTH AMERICA, A   )
15   DIVISION OF VOLVO GROUP   )
     NORTH AMERICA, INC.,      )
16   STRICK CORPORATION, INC., )
     JOHN FAYARD MOVING &      )
17   WAREHOUSE, LLC and        )
     DOLPHIN LINE, INC.        )
18       Defendants.           )
19
20
        **************************************************
21            ORAL AND VIDEOTAPED DEPOSITION OF
22                   KEITH FRIEDMAN
                       VOLUME 2
23
                    JANUARY 17, 2014
24      **************************************************
25      ORAL AND VIDEOTAPED DEPOSITION OF KEITH FRIEDMAN,
```

Page 259

1    produced as a witness at the instance of the

2    Defendants, and duly sworn, was taken in the

3    above-styled and numbered cause on January 17, 2014,

4    from 9:52 a.m. to 10:03 p.m., before Donna Wright, CSR

5    in and for the State of Texas, reported by machine

6    shorthand, at the law offices of BOWMAN & BROOKE, 2901

7    Via Fortuna Drive, Suite 500, Austin, Texas, pursuant

8    to the Federal Rules of Civil Procedure and the

9    provisions stated on the record or attached hereto.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 260

```
 1                A P P E A R A N C E S
 2
 3    FOR THE PLAINTIFFS:
           Mr. Aubrey "Nick" Pittman
 4         THE PITTMAN LAW FIRM, P.C.
           100 Crescent Court
 5         Suite 700
           Dallas, Texas  75201
 6         (214) 459-3454
 7              - and -
 8         Mr. Daryl K. Washington
           THE LAW OFFICES OF DARYL K. WASHINGTON, P.C.
 9         325 St. Paul Street
           Suite 1975
10         Dallas, Texas  75201
           (214) 880-4883
11
12    FOR THE DEFENDANTS TOYOTA MOTOR CORPORATION, TOYOTA
      MOTOR MANUFACTURING NORTH AMERICA, INC., AND TOYOTA
13    MOTOR SALES USA, INC.:
           Mr. David P. Stone
14         BOWMAN AND BROOKE, LLP
           2501 North Harwood Street
15         Suite 1700
           Dallas, Texas  75201
16         (972) 616-1700
17
      FOR THE DEFENDANTS VOLVO GROUP NORTH AMERICA, INC. AND
18    VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP
      NORTH AMERICA, INC.:
19         Mr. Patrick Fitzgerald
           Mr. John Carlson
20         HOWRY, BREEN & HERMAN, LLP
           1900 Pearl Street
21         Austin, Texas  78705
           (512) 474-7300
22
23
24
25
```

APP 38

Page 261

```
 1    FOR THE DEFENDANT STRICK CORPORATION, INC.:
           Mr. S. Todd Parks
 2         WALTERS, BALIDO & CRAIN
           100 North Trinity Street
 3         Decatur, Texas  76234
           (940) 626-8254
 4
                 - and -
 5
           Mr. Donald Dawson
 6         DAWSON & CLARK, P.C.
           243 W. Congress, Suite 600
 7         Marquette Building
           Detroit, Michigan  48226
 8         (313) 256-8900
 9
      FOR THE DEFENDANT FAYARD MOVING & WAREHOUSE, LLC:
10         Mr. Scott W. Self
           FEE, SMITH, SHARP & VITULLO, LLP
11         13155 Noel Road
           Suite 1000
12         Dallas, Texas  75240
           (972) 934-9100
13
14    FOR THE DEFENDANT DOLPHIN LINE, INC.:
           Mr. John S. Kenefick
15         MACDONALD DEVIN, P.C.
           3800 Renaissance Tower
16         1201 Elm Street
           Dallas, Texas  75270
17         (214) 744-3300
18
      ALSO PRESENT:
19         Kristin Geoffrion - Videographer
20
21
22
23
24
25
```

APP 39

Page 262

1                          INDEX
2        Appearances.................................... 260
3
4     KEITH FRIEDMAN, VOLUME 2
5
       Continued Examination by Mr. Fitzgerald......... 265
6        Examination by Mr. Kenefick.................... 394
         Examination by Mr. Dawson...................... 436
7        Examination by Mr. Self........................ 558
         Examination by Mr. Pittman..................... 625
8        Examination by Mr. Stone....................... 633
         Examination by Mr. Fitzgerald.................. 656
9        Further Examination by Mr. Dawson.............. 673
10       Witness' Signature Page........................ 691
         Reporter's Certificate......................... 693
11
12
                              EXHIBITS
13
       NUMBER            DESCRIPTION
14     PAGE
15       Exhibit 18     ................................
                        Photographs                     298
16       Exhibit 19     ................................
                        Photograph                      304
17       Exhibit 20     ................................
                        Photograph                      307
18       Exhibit 21     ................................
                        Photograph                      310
19       Exhibit 22     ................................
                        Photograph                      315
20       Exhibit 23     ................................
                        Photograph                      316
21       Exhibit 24     ................................
                        Photograph                      317
22       Exhibit 25     ................................
                        Photograph                      317
23       Exhibit 26     ................................
                        (Skipped)
24       Exhibit 27     ................................ 371
                        Volvo Confidential
25       Exhibit 28     ................................ 371

APP 40

Page 263

Exhibit 29      ................................   371
                Notebook
Exhibit 30      ................................   450
                Report
Exhibit 31      ................................   485
                Invoices
Exhibit 32A     ................................   457
                Measurements
Exhibit 32      ................................   485
                Photograph of the ICC bumper
Exhibit 33      ................................   488
                Drawing
Exhibit 34      ................................   490
                Record from Dolphin
Exhibit 35      ................................   503
                Report
Exhibit 36      ................................   515
                Photographs
Exhibit 37      ................................   575
                Report that addresses Dolphin
                Line and Fayard Moving
Exhibit 38      ................................   589
                Police File from Records
Exhibit 39      ................................   656
                Presentation

Page 650

1    in the road, and this is -- is that when you say the

2    4Runner's fuel tank was breached?

3         A.    Well, in that impact.

4         Q.    Okay.  Have you --

5         A.    And you said fuel tank.  I said fuel system.

6         Q.    All right.  Have you made any calculations as

7    to the level of force with which the rear of the

8    4Runner, including the fuel tank, was driven into the

9    ground during that initial impact with the Volvo?

10        A.    Yes.

11        Q.    And were those provided in your report?

12        A.    No.  They are in the simulations that we have

13   talked about.

14        Q.    Simulations that we have never seen before?

15               MR. PITTMAN:  Objection, form.

16               THE WITNESS:  They are here, but whatever

17   it is --

18        Q.    (BY MR. STONE)  They are on CDs?

19        A.    Yes.

20        Q.    And could I run those on my computer if I

21   wanted to?

22        A.    You could look at the videos.

23        Q.    I assume I would have to have special software

24   to look at the data?

25        A.    It depends on -- yes, I suppose.

Page 673

1      A.    It's strong.

2            (Discussion off the record)

3                  FURTHER EXAMINATION

4    BY MR. DAWSON:

5      Q.    Mr. Friedman, first of all, thank you for the

6    endurance.  We appreciate it.  Even though we're on

7    other sides, people do appreciate that.  I think I can

8    say that for everybody here.

9      A.    Well, thank you.

10     Q.    Very briefly, sir, would you say that even for

11   a trained engineer, the ability to look at a virtual

12   crash test with all of the back-up data is something

13   that takes days, if not weeks sometimes, to totally

14   understand it?

15               MR. PITTMAN:  Objection, form.

16               THE WITNESS:  I think that's an

17   interesting question.

18     Q.    (BY MR. DAWSON)  Would you agree, sir, that --

19     A.    I guess that depends on their skill level, et

20   cetera.

21     Q.    Absolutely.  But, at a minimum, would you

22   agree, sir, that the complexity of the simulations that

23   your company has run on behalf of the plaintiffs in

24   this case, even for a very skilled engineer, would take

25   at least two, three, four days to go through and have

Page 674

1  an understanding of what it is you have done and what

2  it means?

3          MR. PITTMAN:  Objection, form.

4          THE WITNESS:  I guess that depends on

5  what the purpose was.

6     Q.  (BY MR. DAWSON)  Yes, sir.  In other words, so

7  if I was trying to get an engineer to sit down with me

8  to go through your simulation so that I could prepare

9  to cross-examine you, could you envision that I could

10  ever do it unless I had at least three or four days of

11  an engineer's time?

12          MR. PITTMAN:  Objection, form.

13          THE WITNESS:  Well, I don't know.  It

14  depends on you, I guess.

15     Q.  (BY MR. DAWSON)  Well, let's take it another

16  way.  If I had retained you and we -- you and I wanted

17  to know what -- let's say, what was done with Mr. Carr

18  and his crash test, the Exponent, wouldn't you agree

19  it's going to take you at least one to two days at a

20  minimum just to understand what went on out there?

21          MR. PITTMAN:  Objection, form.

22          THE WITNESS:  Well, I think the normal

23  approach is that when -- explore what was done and you

24  asked questions to understand what was done and what

25  the implications are.

Page 675

```
 1        Q.    (BY MR. DAWSON)  Yes, sir.

 2        A.    So that's what I think.

 3        Q.    And would you agree with me, sir, that at a

 4   minimum, for someone like a lawyer to dig in 17 boxes

 5   and look at a simulation, would be very difficult for

 6   that lawyer to be able to craft questions on behalf of

 7   his client without some technical help?

 8              MR. PITTMAN:  Objection, form.

 9              THE WITNESS:  I wouldn't -- I don't know.

10        Q.    (BY MR. DAWSON)  All right, sir.

11        A.    That depends on the lawyer.

12        Q.    Okay, very good.  And can you tell me, sir,

13   when I had the opportunity to question you a while ago,

14   you said it would take you some time to find the

15   simulations that you said you did prior to November

16   of 2013.  And so what I would like to know is, is there

17   a way that you can pull those things out so that I can

18   mark then as separate exhibits to send to my expert to

19   examine?  Do you follow what I'm saying?

20        A.    No.

21        Q.    You are not following what I'm saying.  I

22   apologize.  It's late and I know you're tired.  What

23   I'm saying is, would there be a way for you to, in just

24   a couple moments or a couple minutes, pull out of your

25   boxes all the simulations you did that involve issues
```

Page 684

1    Q.   (BY MR. DAWSON)  Yes, sir.  The simulations --

2    A.   Oh, okay.

3    Q.   -- that you said you did for my client's

4    issue, sir, would you agree that I -- just on any of

5    these Dells or Apple computers, I could plug them in,

6    but I couldn't get a program on there right now that I

7    could read all the data, could I?

8              MR. PITTMAN:  Objection, form.

9              THE WITNESS:  I don't know.

10   Q.   (BY MR. DAWSON)  Well, you know it has to

11   have -- to have the simulation, I can't open it up

12   unless I've got a special program or a license

13   for the --

14   A.   Well, you can look at videos.  I mean, you

15   presumably have a movie player.

16   Q.   Yes, sir, I can look at videos.  But without

17   understanding the speeds, the angles, the deformation,

18   the stiffness coefficients, and all the other things

19   that go into it, I'm blinded from all those aspects of

20   it, am I not?

21             MR. PITTMAN:  Objection, form.

22             THE WITNESS:  If you don't ask, yes.

23   Q.   (BY MR. DAWSON)  When you say if I don't ask,

24   do you know how many times my partner, Ms. Clark, asked

25   Mr. Pittman to have you produce at least two days in

Page 686

1              MR. PITTMAN:  They are already marked as

2      part of one exhibit.

3              MR. DAWSON:  No, if someone can just

4      segregate them so that I can have them.

5              MR. PITTMAN:  We're not going to separate

6      them, Don.

7              MR. DAWSON:  Okay.  Well, let's go back

8      on the record.  I want this on the record.

9              THE VIDEOGRAPHER:  We're on the record.

10             MR. DAWSON:  Counsel for the plaintiff

11     has instructed the witness to not agree to segregate

12     the files of the simulations that none of us have had a

13     chance to see and has refused to allow it, even though

14     the witness says he can do it.  And I just want the

15     record to be clear on that, and that will be a motion

16     issue.

17             MR. PITTMAN:  I want the record to be

18     clear that Mr. Dawson is aware -- he was here on

19     Wednesday and all of these exhibits were marked as one

20     exhibit by Toyota's counsel.  We are maintaining the

21     integrity of all of those exhibits.  We're not

22     permitted to separate the exhibits that have been

23     marked, Don.  You're aware of that.  So the witness is

24     not --

25             MR. DAWSON:  Well --

**R. RHOADS STEPHENSON - 1/18/2014**

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF TEXAS
 2                       DALLAS DIVISION
 3   OLLIE GREENE,               )
     Individually as the         )
 4   surviving parent of         )
     WYNDELL GREENE, SR.,        )
 5   WILLIAM GREENE, as the      )
     representative of the       )
 6   Estate of WYNDELL GREENE,   )
     SR., and MARILYN            )
 7   BURDETTE-HARDEMAN,          )
     Individually and as the     )
 8   surviving parent of         )
     LAKEYSHA GREENE,            )
 9        Plaintiffs,            )
                                 )
10   VS.                         ) CAUSE NO. 3-11CV-0207-N
                                 )
11   TOYOTA MOTOR CORPORATION,   )
     TOYOTA MOTOR               )
12   MANUFACTURING NORTH         )
     AMERICA, INC., AND TOYOTA   )
13   MOTOR SALES USA, INC.,      )
     VOLVO GROUP NORTH           )
14   AMERICA, INC., VOLVO        )
     TRUCKS NORTH AMERICA, A     )
15   DIVISION OF VOLVO GROUP     )
     NORTH AMERICA, INC.,        )
16   STRICK CORPORATION, INC.,   )
     JOHN FAYARD MOVING &        )
17   WAREHOUSE, LLC and          )
     DOLPHIN LINE, INC.          )
18        Defendants.            )
19
20      **************************************************
21           ORAL AND VIDEOTAPED DEPOSITION OF
22               R. RHOADS STEPHENSON
23                 JANUARY 18, 2014
        **************************************************
24
25      ORAL AND VIDEOTAPED DEPOSITION OF R. RHOADS
```

Page 2

1    STEPHENSON, produced as a witness at the instance of

2    the Defendants, and duly sworn, was taken in the

3    above-styled and numbered cause on January 18, 2014,

4    from 9:29 a.m. to 6:28 p.m., before Donna Wright, CSR

5    in and for the State of Texas, reported by machine

6    shorthand, at the law offices of BOWMAN & BROOKE,

7    2901 Via Fortuna Drive, Suite 500, Austin, Texas,

8    pursuant to the Federal Rules of Civil Procedure and

9    the provisions stated on the record or attached hereto.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

```
 1                A P P E A R A N C E S
 2
 3   FOR THE PLAINTIFFS:
          Mr. Aubrey "Nick" Pittman
 4        THE PITTMAN LAW FIRM, P.C.
          100 Crescent Court
 5        Suite 700
          Dallas, Texas  75201
 6        (214) 459-3454
 7             - and -
 8        Mr. Daryl K. Washington
          THE LAW OFFICES OF DARYL K. WASHINGTON, P.C.
 9        325 St. Paul Street
          Suite 1975
10        Dallas, Texas  75201
          (214) 880-4883
11
12   FOR THE DEFENDANTS TOYOTA MOTOR CORPORATION, TOYOTA
     MOTOR MANUFACTURING NORTH AMERICA, INC., AND TOYOTA
13   MOTOR SALES USA, INC.:
          Mr. David P. Stone
14        BOWMAN AND BROOKE, LLP
          2501 North Harwood Street
15        Suite 1700
          Dallas, Texas  75201
16        (972) 616-1700
17
     FOR THE DEFENDANTS VOLVO GROUP NORTH AMERICA, INC. AND
18   VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP
     NORTH AMERICA, INC.:
19        Mr. John Carlson
          HOWRY, BREEN & HERMAN, LLP
20        1900 Pearl Street
          Austin, Texas  78705
21        (512) 474-7300
22
23
24
25
```

APP 50

R. RHOADS STEPHENSON - 1/18/2014

Page 4

```
 1    FOR THE DEFENDANT STRICK CORPORATION, INC.:
           Mr. S. Todd Parks
 2         WALTERS, BALIDO & CRAIN
           100 North Trinity Street
 3         Decatur, Texas  76234
           (940) 626-8254
 4
                - and -
 5
           Mr. Donald Dawson
 6         DAWSON & CLARK, P.C.
           243 W. Congress, Suite 600
 7         Marquette Building
           Detroit, Michigan  48226
 8         (313) 256-8900
 9
      FOR THE DEFENDANT FAYARD MOVING & WAREHOUSE, LLC:
10         Mr. Scott W. Self
           FEE, SMITH, SHARP & VITULLO, LLP
11         13155 Noel Road
           Suite 1000
12         Dallas, Texas  75240
           (972) 934-9100
13
14    FOR THE DEFENDANT DOLPHIN LINE, INC.:
           Mr. Joseph F. Henderson
15         MACDONALD DEVIN, P.C.
           3800 Renaissance Tower
16         1201 Elm Street
           Dallas, Texas  75270
17         (214) 744-3300
18
      ALSO PRESENT:
19         Kristin Geoffrion - Videographer
20
21
22
23
24
25
```

Page 5

                         INDEX
1
2      Appearances.................................    3
3
4      R. RHOADS STEPHENSON
5
       Examination by Mr. Dawson......................    7
6      Examination by Mr. Carlson.....................   87
       Examination by Mr. Stone.......................  142
7      Examination by Mr. Henderson...................  312
       Examination by Mr. Self........................  319
8
       Witness' Signature Page........................  354
9      Reporter's Certificate.........................  356
10
11                       EXHIBITS
12     NUMBER          DESCRIPTION                   PAGE
13     Exhibit 1     ...............................    6
                     Preliminary Crash
14                   Worthiness and
                     Fire Worthiness Report
15     Exhibit 2     ...............................    6
16     Exhibit 3     ...............................   88
                     Part of Report from
17                   Friedman Research
       Exhibit 4     ...............................  103
18                   Description of Professional
                     Experience
19     Exhibit 5     ...............................  243
                     Cover Page of Volvo Report
20     Exhibit 6     ...............................  241
                     Bibliography
21     Exhibit 7     ...............................  241
                     Bibliography
22     Exhibit 8     ...............................  242
                     Fire-Related Documents
23
24
25

Page 238

1      Q.   Did you take any photos of the vehicle?

2      A.   No.

3      Q.   Did you make any notes during your inspection?

4      A.   I probably did maybe on the airplane going

5   home, yes.

6      Q.   Are they part of the file of the 17 boxes

7   that's here today?

8      A.   I don't think so.  I don't -- I'm not -- I

9   don't know if they still exist.

10     Q.   With regard to the file, the file is in paper

11   or hard form, and is kept here in Austin in

12   Mr. Friedman's office?

13     A.   Correct, yes.

14     Q.   Do you have your own copy of the file?

15     A.   I have some of the documents that are in

16   the -- in the file -- fire boxes over here.  I have

17   probably my personal copies of all of those.

18     Q.   And are those still at your home office in

19   California, your copies of them?

20          MR. PITTMAN:  Objection, form.

21          THE WITNESS:  Yeah, I think I probably

22   have a stack that high (indicating).

23     Q.   (BY MR. STONE)  You have a stack, I think you

24   were showing, about a foot and a half tall --

25     A.   Something like that.