IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE-HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, | § § § § § § § § | CAUSE NUMBER 3:11-cv-0207-N |
| Plaintiffs, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC. VOLVO GROUP NORTH AMERICA, INC. VOLVO TRUCKS NORTH AMERICA, a DIVISION OF VOLVO GROUP NORTH AMERICAN, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC and DOLPHIN LINE, INC. | § § § § § § § § § § § § § | |
| Defendants. | § | |

**DEFENDANT STRICK TRAILERS, LLC'S MOTION TO EXCLUDE
DR. BURTON'S OPINIONS ON LAKEYSHA GREENE'S CAUSE
OF DEATH AND CONSCIOUS PAIN AND SUFFERING**

Defendant, Strick Trailers, LLC ("Strick"), respectfully moves the Court for the entry of an order excluding any evidence or reference, direct or indirect, to (1) Dr. Joseph L. Burton's opinion that the failure of the ICC rear bumper guard assembly caused or contributed to causing the death of Lakeysha Greene ("Mrs. Greene"); or (2) Dr. Burton's opinion that Mrs. Greene experienced conscious pain and suffering as a result of the failure of the ICC rear bumper guard assembly.

The grounds for this motion are:

1) Since Dr. Burton acknowledges he does not know where Mrs. Greene's fatal injuries were sustained or whether they occurred before or after failure of the Strick underride guard, his opinion on the cause of Mrs. Greene's death which will not assist the trier of fact to understand the evidence or to determine a fact in issue, i.e., whether the failure of the ICC rear bumper guard assembly caused or contributed to cause Mrs. Greene's death. FRE 702(a).

2) Dr. Burton conceded that Mrs. Greene's injuries resulted in an immediate loss of consciousness and instantaneous death, occurring sometime **between** the Volvo's impact with the 4Runner and the 4Runner's impact with the Strick trailer. Strick is not liable for Mrs. Greene's conscious pain and suffering that occurred before the ICC rear bumper guard failed. Accordingly, this opinion is irrelevant to Plaintiffs' claim against Strick and inadmissible against Strick.

## BRIEF IN SUPPORT OF STRICK'S MOTION

### *Pertinent Facts*

Plaintiffs' strict liability and negligence claims against Strick for the wrongful death of Lakeysha Greene are based solely on the allegation that the Strick trailer's ICC rear bumper guard assembly was defective and therefore, it broke off from the trailer when it was struck by the 4Runner. (R.E. 113 ¶¶ 68, 89, 95). Plaintiffs allege that the detachment of the rear bumper guard allowed the 4Runner to underride the Strick trailer, causing fatal injuries to Mrs. Greene. (R.E. 113 ¶¶ 84-86). In other words, for Strick to be liable for Mrs. Greene's wrongful death, Mrs. Greene's death must be traceable to injuries sustained **due to, or following the failure of**

**the ICC rear bumper guard assembly** and not to fatal injuries sustained in the impact between the 4Runner and the Strick trailer frame prior to the failure of the ICC rear bumper guard.[1]

### DR. BURTON'S OPINIONS

*Cause of Mrs. Greene's Fatal Injuries*

In Dr. Burton's Rule 26 report, Dr. Burton opined that, for each of the 4Runner occupants, ".... the threat of sustaining fatal injuries, was compounded by the collapse of the underride guard mounted on the rear of the [Strick] trailer." (Ex. A - Burton Rpt. 17, App. 3). Burton further opined that Mrs. Greene experienced a very brief period of conscious pain and suffering **prior to** receiving the severe traumatic injuries which resulted in almost immediate loss of consciousness and death. (Ex. A - Burton Rpt. 18, App. 4).

Mrs. Greene died from blunt force trauma to the head, consisting of a hinge fracture of the skull and an atlanto-occipital dislocation. (Ex. B - Burton Dep. p 44, App. 9). Dr. Burton conceded he does not know what impacts caused Mrs. Greene's death or whether they occurred before or after separation of the underride guard. He testified that the injuries Mrs. Greene sustained "...would occur if her head collided **with some portion of the trailer frame or the ICC bar,** assuming the panel is close to it. . ." (Ex. B - Burton Dep. 44-45, App. 9-10). He added:

> I've already acknowledged that I'm not sure where that panel is located. If I knew where it was, or if somebody could have --could identify it, then I might could identify specifically what I think she hit.
> But she hit something that was -- she didn't hit the muddy ground, she hit something that's as hard as the frame of a trailer or an ICC bar or a frame. Which of these it is, I don't know, because I don't have a photo identifying the exact location of impact where I can tell you or the others in the room today.

---

[1] Although Plaintiffs' second amended complaint also alleged crashworthiness theories against Strick, Plaintiffs' experts have not opined about or identified any other alleged deficiency in the trailer beyond the rear bumper guard failure.

3

(Ex. B - Burton Dep. 45, App. 10).

Dr. Burton also acknowledged he does not know whether Mrs. Greene sustained the fatal injury before or after the ICC bar separated from the trailer:

> Q. And, Dr. Burton, are you able to determine whether or not Mrs. Greene sustained her fatal injury **before or after the ICC bar was separated from the Strick trailer**?
>
> A. **No**. It could have been coincidental with the separation. I'm not able to specifically tell you as I sit down here today.

(Ex. B-Burton Dep. 45-46, App. 10-11).

*Whether Mrs. Greene Sustained Conscious Pain and Suffering*

Dr. Burton testified that either of the two fatal injuries rendered Mrs. Greene either immediately unconscious or immediately deceased. In Dr. Burton's opinion, the atlano-occipital dislocation caused an instant loss of consciousness:

> Q. Now, AO dislocations are associated with instantaneous loss of consciousness, are they not?
>
> A. Many times. Very frequently, yes.
>
> Q. And so do you know whether or not Mrs. Greene had instantaneous loss of consciousness associated with the AO injury, sir?
>
> A. I think when she had the AO dislocation she probably lost consciousness at the same time, yes.           (Ex. B - Burton Dep. 118-119, App. 15-16).

In Dr. Burton's opinion, the gaping hinge fracture of the skull was immediately fatal:

> Q. All right. And did I hear you to say it's your opinion that the blood [on the trailer] probably emanated out various orifices of Mrs. Greene due to a hinge fracture?
>
> A. The impact that would cause the hinge fracture, yes -- yes, sir.
>
> Q. And would that have been an immediate fatal blow?
>
> A. Yes, sir.                           (Ex. B - Burton Dep. 51-52, App. 12-13).

Dr. Burton's opinion is consistent with the opinion of Dr. Lynn Salzaberger, the Dallas County Medical Examiner who examined Mrs. Greene's remains. She testified that Mrs. Greene's head and neck injuries "are consistent with immediate loss of consciousness and death." (Ex. C - Salzberger Dep. 20-21, App. 21-22).

Dr. Burton's deposition testimony clarifies the statement in his report that Mrs. Greene "experienced a very brief period of conscious pain and suffering prior to receiving the severe traumatic injuries which resulted in an almost immediate loss of consciousness and death." (Ex. B - Burton Dep. 18, App. 4).

> Q. Now, starting with the - - with Mrs. Greene, when is it that you believe she would have had conscious pain and suffering, which impact, if any?
>
> A. **Between the initial impact of the Volvo with the back of the 4Runner and her - - and the 4Runner then being knocked underneath the Strick Trailer**, during that time which is measurable in milliseconds, I'm sure, maybe a couple of seconds.
>
> (Ex. B -Burton Dep. 115, App. 14 (emphasis added)).

## ARGUMENT

Dr. Burton's opinions that the failure of the ICC rear bumper guard assembly attached to the Strick trailer (1) caused or compounded the cause of Mrs. Greene's death; and (2) caused Mrs. Greene to experience conscious pain and suffering are not admissible because (i) Dr. Burton's opinion that Mrs. Greene's fatal impact on unidentifiable parts of the Strick trailer, before or after the ICC rear bumper guard failed, does not assist the trier of fact in resolving the causation issue; and (ii) according to Dr. Burton's opinion, Mrs. Greene could have only experienced conscious pain and suffering during the period **between** the 4Runner's initial impact with the Volvo tractor and the last impact between the 4Runner and the Strick trailer.

5

### I. Dr. Burton's Opinion That He Does Not Know Whether Mrs. Greene's Fatal Injuries Preceded the Bumper Guard Failure Does Not Assist the Trier of Fact

The Strick trailer was stopped in traffic when it was struck in the rear by the Greene's 4Runner. Plaintiffs do not allege that Strick caused the collision with the Strick trailer, only that the ICC rear bumper guard attached to the trailer was defective. Plaintiffs must plead and prove that the **failure of ICC rear bumper guard caused or contributed to cause** Mrs. Greene's death in order to prevail on their negligence and strict liability claims against Strick for Mrs. Greene's death.[2] *Guerra v. Regions Bank*, 188 S.W.3d 744, 747 (Tex. App. 2006) (plaintiff must plead and prove element of causation to succeed on negligence claim); *Toshiba Intern. Corp. v. Henry*, 152 S.W.3d 774, 778 (Tex. App. 2005) (plaintiff must plead and prove element of **causation** to succeed on claim for strict liability); *General Motors Corp. v. Saenz*, 966 S.W.2d 545, 549 (Tex. App. 1997) (negligence and strict liability claims have always had overlapping elements, including the element of causation). If Mrs. Greene died because her head hit the body of the trailer before the ICC rear bumper guard failed and fell off of the trailer, Strick is not liable.

Dr. Burton is well educated and very experienced in his field of expertise. However, even an expert as qualified as Dr. Burton cannot determine whether Mrs. Greene's death was caused by injury that occurred before or after the ICC rear bumper guard failed and broke off. Dr. Burton has conceded he cannot make this determination:

---

[2] Plaintiffs must also prove the rear bumper guard assembly on the trailer at the time of the accident was a Strick bumper guard. That issue is not the subject of this motion.

> Q. And, Dr. Burton, are you able to determine whether or not Mrs. Greene sustained her fatal injury **before or after the ICC bar was separated from the Strick trailer**?
>
> A. **No**. It could have been coincidental with the separation. I'm not able to specifically tell you as I sit down here today.
>
> (Ex. B - Burton Dep. 45-46, App. 10-11).

Consequently, Dr. Burton's opinion does not meet the requirement for admissibility under FRE 702 because the opinion does not assist the trier in fact in determining whether the failure of the ICC rear bumper guard actually caused or contributed to Mrs. Greene's death. Moreover, Burton admitted that he does not have sufficient facts or data, as required under FRE 702, to determine which part of the Strick trailer Mrs. Greene actually hit. Burton testified:

> I've already acknowledged that I'm not sure where that panel is located. If I knew where it was, or if somebody could have --could identify it, then I might could identify specifically what I think she hit.
>
> But she hit something that was -- she didn't hit the muddy ground, she hit something that's as hard as the frame of a trailer or an ICC bar or a frame. Which of these it is, I don't know, because I don't have a photo identifying the exact location of impact where I can tell you or the others in the room today.
>
> (Ex. B - Burton Dep. 45, App. 10).

If Dr. Burton were able to determine (1) which point in time the injury that killed Mrs. Greene occurred (before or after the failure of the ICC rear bumper guard); and (2) which part on the Strick trailer actually caused Mrs. Greene's death (the trailer frame above the bumper guard or below it), Dr. Burton's opinions might be admissible. Those opinions, if he held them, might assist the trier of fact in reaching a conclusion as to which party, if any, is liable for Mrs. Greene's fatality. That is not the case here. Dr. Burton's opinion that he does not know whether

the failure of the ICC rear bumper guard caused or contributed to cause Mrs. Greene's death does not assist the trier of fact. Fed. R. Evid. 702. The opinion is not relevant and admission of it could only result in confusion and potential prejudice to Strick. Fed. R. Evid. 401, 402, 403.

### II. Dr. Burton's Opinion On Mrs. Greene's Conscious Pain and Suffering is Not Admissible Against Strick.

Dr. Burton did not attribute any of Mrs. Greene's conscious pain and suffering to the fatal impact which caused the hinged skull fracture or atlanto-occipital dislocation. Rather, Dr. Burton stated that those injuries were instantaneously fatal and/or produced instant unconsciousness. Dr. Burton testified that:

> Q. Now, AO dislocations are associated with instantaneous loss of consciousness, are they not?
>
> A. Many times. Very frequently, yes.
>
> Q. And so do you know whether or not Mrs. Greene had instantaneous loss of consciousness associated with the AO injury, sir?
>
> A. I think when she had the AO dislocation she probably lost consciousness at the same time, yes.
>
> (Ex. B - Burton Dep. 118-119, App. 15-16)

Dr. Burton further testified:

> Q. All right. And did I hear you to say it's your opinion that the blood [on the trailer] probably emanated out various orifices of Mrs. Greene due to a hinge fracture?
>
> A. The impact that would cause the hinge fracture, yes -- yes, sir.
>
> Q. And would that have been an immediate fatal blow?
>
> A. Yes, sir.    (Ex. B - Burton Dep. 51-52, App. 12-13).

8

Dr. Burton's actual opinion is that Mrs. Greene experienced conscious pain and suffering somewhere between the 4Runner's initial rear impact with the Volvo tractor and "being knocked underneath the Strick trailer ... " (Ex. B - Burton Dep. 115, App. 11). Dr. Burton describes the conscious pain and suffering during this period between the crashes as lasting "milliseconds" or "maybe a couple of seconds." *Id*. Even if the Court assumes the fatal blow happened beneath the Strick trailer, an opinion that Dr. Burton is not willing to provide, there is still an immediacy of occurrence and an award for conscious pain and suffering is improper. *Vasquez-Lopez v United States of America*, 2006 WL 870360, page *3 (S.D. Tex. 2006) citing to *Moore v. Lillebo*, 674 S.W.2d 474 (Tex. App. 1984) rev'd on other grounds by *Moore v. Lillebo*, 722 S.W.2d 683 (Tex. 1986). When unconsciousness is immediate, the estate cannot cover for the decedent's conscious pain and suffering. *Stanford v. McLean Trucking*, 506 F. Supp. 1252, 1255 (E.D. Tex. 1981) citing to *Mpiliris v. Hellnic Lines, Ltd.*, 323 F. Supp. 685 (S.D. Tex 1969) (because decedent was struck by a falling boom rectangle and was immediately rendered unconscious by his injuries the estate could not recover for decedent's pain and suffering). Consequently, Dr. Burton's opinion does not meet the requirement for admissibility under FRE 702 because the opinion does not assist the trier in fact in determining whether the failure of the ICC rear bumper guard actually caused or contributed to Mrs. Greene's death.

## CONCLUSION

Burton's opinions that the failure of the ICC rear bumper guard assembly attached to the Strick trailer (1) caused or compounded the cause Mrs. Greene's death and (2) caused Mrs. Greene to experience conscious pain and suffering are not admissible because the opinions do not assist the trier of fact in reaching their conclusions and there is no evidence that Mrs. Greene

actually experienced conscious pain and suffering after the failure in the ICC rear bumper guard.

Burton's opinion on these subjects should be excluded from evidence by this Court.

                                                       Respectfully submitted**,**

                                                       DAWSON & CLARK, P.C.

                                                     */s/ Donald H. Dawson, Jr.*
                                                     DONALD H. DAWSON, JR.
                                                     Texas State Bar No. 05606500
                                                     243 West Congress, Suite 600
                                                     Detroit, MI 48226
                                                     (313) 256-8900 *(Office)*
                                                     (313) 245-8913 *(Facsimile)*

                                                     WALTERS, BALIDO & CRAIN

                                                     */s/*
                                                     S. TODD PARKS
                                                     Texas Bar No. 1552520
                                                     10440 N. CentralTower, 15th Floor
                                                     Dallas, TX 75231
                                                     (214) 749-4805 *(Office)*
                                                     (214) 760-1680 *(Facsimile)*

## CERTIFICATE OF CONFERENCE

       This will certify that the moving party has conferred in a face-to-face meeting with all counsel for parties affected by the requested relief on March 7, 2014. Plaintiffs' counsel has opposed the relief requested herein and there is a fundamental disagreement regarding the merits of the present Motion. All other Defendants in this matter consent to this Motion and do not oppose the relief requested herein.

                                                     */s/ Donald H. Dawson, Jr.*
                                                   DONALD H. DAWSON, JR.

## **CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY that on the 17th day of March, 2014, a true and correct copy of the above and foregoing was forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure.

                                               */s/ Donald H. Dawson, Jr.*
                                              DONALD H. DAWSON, JR.