IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE-HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, | § § § § § § § § | CAUSE NUMBER 3:11-cv-0207-N |
| Plaintiffs, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC. VOLVO GROUP NORTH AMERICA, INC. VOLVO TRUCKS NORTH AMERICA, a DIVISION OF VOLVO GROUP NORTH AMERICAN, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC and DOLPHIN LINE, INC. | § § § § § § § § § § § | |
| Defendants. | § | |

### DEFENDANT STRICK TRAILER, LLC'S MOTION TO EXCLUDE EXPERT KEITH FRIEDMAN'S UNTIMELY DISCLOSED COMPUTER SIMULATIONS AND OPINIONS BASED THEREUPON

Defendant, Strick Trailer, LLC, pursuant to Fed. R. Civ. P. 37(c)(1), respectfully moves the court to preclude Plaintiffs expert Keith Friedman from relying upon, referring to, testifying about or otherwise offering into evidence (1) computer simulations of collisions into a Strick trailer with and without bumper guard which Mr. Friedman performed during his work on this case; and (2) other simulations (finite element analyses) which Mr. Friedman performed on underride guards in other case.

The grounds for this motion are that expert Friedman violated Fed. R. Civ. P. 26(a)(2) when he failed to disclose the simulations in his Rule 26 report. Strick was prejudiced by the non-disclosure because (I) the simulations were not made available prior to, or during, Mr. Friedman's deposition; (ii) Mr. Friedman was unable to answer questions about what facts were determined by the simulations; (iii) Strick did not receive copies of the simulations until March 7, 3 days before expert discovery closed; (iv) Strick's experts have not have sufficient time to analyze the simulations; (v) Strick has been deprived of discovery on the simulations, including information needed for potential legal challenges to the foundation, modeling and validity of the simulations; and (vi) Strick's experts have no opportunity to respond to the simulations.

## BRIEF IN SUPPORT

Mr. Friedman's Rule 26 report failed to disclose (1) computer simulation work involving crashes into Strick trailers with and without rear bumper guards; and (2) computer simulations of this type previously performed by Mr. Friedman in other cases. Plaintiffs might have cured this non-disclosure by producing Mr. Friedman's file before his deposition. Strick's counsel had informally requested this and Toyota had sent a request for production. (See Toyota Motion & Brief, R.E. 380-382). At the deposition, the simulations were not made available for review by defense counsel, and Mr. Friedman was unable to answer questions about the results of his simulations. The non-disclosure was not justified, was not harmless and were not important to Mr. Friedman's opinions. It cannot be cured without a lengthy trial continuance.

## II.     PERTINENT FACTS

*Undisclosed Simulation Done During This Case and Others*

On November 20, 2013, Plaintiffs served four Rule 26 reports authored by Mr. Friedman.

One addressed Strick; one addressed Volvo; one addressed; Toyota; and one addressed Dolphin Line and Fayard.  (See Ex. A-Friedman/Stephenson Report as to Strick App. 1-55).  Both before and after Plaintiffs served these reports (or "throughout the case," as Mr. Friedman put it), Mr. Friedman conducted computer simulations of crashes into a 4Runner with and without bumper guards.  He used a  technique called finite element analysis. (Ex. B - Friedman Dep pp 57-61, 403, 408-9, 553; App. 60-64, 70, 72-73, 81).

Mr. Friedman also relies on undisclosed simulations of other trailers' rear underride guards performed in other cases.  (Ex. B-Friedman Dep, pp 523-524; App 79-80).  Mr. Friedman's report refer to other simulations and finite element analyses only in the general references to methodology, the bibliography of Friedman's publications (none of which describe simulations of underride guards); references to simulations or finite element analyses found in technical publications. (Ex A-Friedman/Stephenson Rpt. , pp 42-54; App. 43-55).

The existence of the simulations was first discovered during Mr. Friedman's January 15 and 17, 2014 depositions.  (Ex. B-Friedman Dep pp  57-61; App 60-64).  Although the simulation DVD's were apparently in his file boxes, they remained there.  Mr. Friedman was not able to answer questions about the information he gleaned from these simulated crash tests.  When Dolphin Line's counsel asked Mr. Friedman if he could derive the amount of force that went into the underride guard in the simulations, Mr. Friedman said he could, but to do so would take hours.  (Ex. B-Friedman Dep pp 407-410; 71-74)[1]

Mr. Friedman could not say how long it would take for an expert or counsel to examine the

---

[1] Questions about, and reports about, the FEA and simulations of the Strick trailer crashes are not to be confused with Volvo Tractor crash simulations referred to in the Friedman/Stephenson Volvo report and the queries of Volvo's counsel on this topic.

simulations to determine what was done and what the results were. (Ex. B-Friedman Dep p 650; App. 82). Mr. Friedman could not describe the virtual guards were attached to the virtual trailers or give the simulated attachment strength. (Ex. B-Friedman Dep p 410 line 10 to p 411 line 9; p 412 line 1 to p. 414 line 18; App. 74-75; 76-78). Whether the simulations involve alternative design guards is not clear. Similarly, the details dates of and details of simulations of other bumper guards on other trailers in other cases done or what conclusions Mr. Friedman drew from them remains undisclosed not disclosed.

At the deposition, the simulations were within Mr. Friedman's file, which itself consisted of 17 boxes. Mr. Friedman and Plaintiffs' counsel objected to separate marking of or examination of the simulation DVDs. (R.E. 382 - Ex. E, Toyota App at 22) [In response to this request, Mr. Pittman objected, stating "we're going to copy all of this for your experts." (Ex. B-Friedman Dep p 675 line 12 to 676 line 19; App. 83-84).

Following the deposition, Strick received (from the court reporter) a single DVD purporting to be Friedman's *entire* marked file from the court reporter. The simulations were missing. After inquiry, Strick received a second DVD. This was a duplicate of the first DVD. Strick corresponded with Plaintiffs' counsel in an attempt to obtain the simulations and Plaintiffs' counsel eventually took steps to get them produced. However, it was not until March 7th that Strick's counsel received them.

Examination and analysis of the simulations obviously requires the skills of experts. The expert discovery deadline was March 10th. All motions challenging expert opinions were due March 17th. Strick has not had an opportunity to address the contents of the simulations, nor has it had the opportunity to examine Mr. Friedman on the details of his computer modeling, the

various simulation runs, etc.

## ARGUMENT

Plaintiffs failed to disclose computer simulations that their testifying experts performed and relied upon to support their opinions in their Rule 26 reports, as required by Fed. R. Civ. P. 26(a)(2).  They failed to supplement their reports to disclose "ongoing" computer simulation work involving analysis of crash tests with a Strick trailer, with and without a rear bumper guard.  Had Strick known of this simulation work, it likely would have filed a motion to compel Plaintiffs to produce the file materials prior to Mr. Friedman's deposition.  This would have allowed Strick's experts to evaluate the simulations and allowed Strick's attorneys to ask meaningful questions about the simulations during the deposition.  As things stand, there has been no opportunity to do so, and time for expert discovery has run out.

The primary purpose of the Rule 26 expert report "is to permit the opposing party to prepare an effective cross-examination." *Hoover v. United States*, 611 F.2d 1132, 1142 (5th Cir. 1980).  Federal Rule of Civil Procedure 26(a)(2)(B) requires retained experts to contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them…

Fed. R. Civ. P. 26(a)(2)(B).  The rule provides opposing parties access to the same materials provided to the expert. *Allstate Ins. Co. v. Electrolux Home Products, Inc.*, 840 F. Supp. 2d 1072, 1079 (N.D. Ill. 2012) ("The rule contemplates *production* of the materials an expert considered) (emphasis added)); *see also Regional Airport Authority of Louisville v. LFG, LLC*, 460 F.3d 697, 715 (6th Cir. 2006) (Rule 26 requires disclosure of all information that has been provided to testifying experts).  Any disclosures pursuant to Rule 26(a) must be supplemented or

corrected pursuant to Rule 26(e)(1) in a timely manner if the party learns that in some material respect, the disclosure is incomplete or inaccurate. There simply is no excuse that can justify the FEAs' and 2002 trailer inspection's grossly late disclosures. They were not disclosed with the Rule 26 reports. There are no supplemental reports from Plaintiffs' experts. To allow the use of or reference to these materials. In particular, to allow Mr. Friedman to rely on, use and explain to the jury his opinions based on these simulations of the performance of rear bumper guard puts Strick in the position of, having had no discovery, blind cross-examination.

### THERE IS NO SUBSTANTIAL JUSTIFICATION FOR FRIEDMAN'S FAILURES, WHICH ARE HIGHLY PREJUDICIAL TO DEFENDANT STRICK

There is no substantial justification for Plaintiffs' untimely disclosures. Rule 37(c)(1) provides a "party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) ... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 26(c)(1); see also, *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 379-82 (5th Cir. 1996). Additionally, the court has inherent powers to enter sanctions. *Green v. Blitz U.S.A., Inc.*, Civ. A. No. 2:07-CV-372, 2011 WL 806011 at *3 (E.D. Tex March 1, 2011). To avoid sanctions, the party who is alleged to have failed to comply with Rules 16 and 26 bears the burden to show that its actions were substantially justified or harmless. *Avance v Kerr-McGee Chem LLC*, (E.D. Tex., 2006), supra, citing *Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.,* 297 F.Supp.2d 463, 481 (N.D.N.Y. 2003); *Stallworth v. E-Z Serve Convenience Stores,* 199 F.R.D. 366, 368 (M.D.Ala. 2001).

Plaintiffs have had numerous extensions to expert disclosure dates. None of those extensions involved a dispute with Strick. Plaintiffs have had ample time to properly disclose the facts and data considered by Friedman and Stephenson in establishing their opinions, as required by Rule 26. Plaintiffs were requested to exchange file materials prior to Mr. Friedman's deposition. They objected to a request for production prior to Mr. Friedman's deposition. The FEA simulations were not produced until after Friedman's deposition was underway. The FEAs were buried within 17 file boxes of materials and Defendants were blocked from separately marking them or reviewing them. Post-deposition, it took multiple attempts to obtain copies of the 10 DVDs containing the FEA simulations. The FEA simulations were not received by Strick until less than a week before the deadline for expert discovery.

There are four factors that determine whether untimely disclosed expert testimony or materials can be permitted: (1) the importance of the testimony or materials; (2) the prejudice to the defendants in allowing the testimony or materials; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to disclose the testimony or materials. *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1000 (5th Cir. 1998); *Bradley v. U.S.*, 866 F.2d 120, 125 (5th Cir. 1989).

**(1) The importance of the testimony or materials.**

By their words and actions, Plaintiffs indicate that the FEAs and 2002 trailer inspection are not important to their case. They were not important enough to disclose in the expert report. Mr. Friedman did not consider the FEAs important enough to derive basic information that would allow him to answer questions at his deposition. Mr. Friedman's trailer inspection was incomplete at the time of his deposition. Further, Mr. Friedman testified the FEAs were merely

illustrative of his opinions:

> Q. And you are disclosing to us for the first time today that you conducted this testing and simulation work, Sir?
> A. I don't know. I think of it more as illustrations. They're not my opinion. They illustrate my opinion. (Ex. B p 61; see also pp 91, line 11-12; p 94, line 9-11; App. 64, 65, 66).

The lackadaisical treatment and concern by Plaintiffs demonstrates that it is of little importance to them and weighs in favor of excluding the materials.

**(2) The prejudice to the defendants in allowing the testimony or materials**.

Strick's counsel did not receive Mr. Friedman's 10 DVD's containing his FEAs until March 7. Strick promptly delivered them to its accident reconstructionist, Dr. Michelle Vogler. The expert discovery period ended March 10th and challenges to expert opinions were due on March 17th. The untimely disclosures left Dr. Vogler no time to complete her analysis of the FEAs and no time for Strick to submit a challenge to the validity of the FEAs. There was no opportunity to prepare the detailed questions about the simulation for Mr. Friedman's deposition that are necessary to prepare for cross-examination. For example, how the trailers were modeled, how the underride guards were modeled, how the models were validated, and details of the various crashes were all not provided to Strick. Because Strick was unable to review and examine the file materials prior to Friedman's deposition, neither he nor Stephenson were sufficiently deposed regarding information that Plaintiffs intend to rely on at trial. Defendant Strick is now prejudiced by these late disclosures and weighs in favor of excluding the materials.

**(3) The possibility of curing such prejudice by granting a continuance**.

Granting a continuance is unlikely to cure the prejudice to Strick created by Plaintiffs' untimely disclosures. Defendants were deprived the opportunity to fully depose Friedman. To

potentially cure Plaintiffs' untimeliness, this Court would need to open up and revise the discovery schedule to allow time for Defendants' experts to fully review the Plaintiffs' experts' materials. Another round of depositions would be needed. Also, there would need to be a new schedule for filing motions pertaining to experts, based on the results of Defendants' review and the depositions. Trial has been set for June, after already being reset due to Plaintiffs' previous inability to offer their experts for deposition. More continuances creates a burden on this Court as well as the parties.

Plaintiffs were aware of their discovery obligations. They had obligations under Rule 26 to produce the materials as part of Friedman's and Stephenson's report. They objected to providing the materials in response to requests for production. Plaintiffs refused an offer to exchange file materials prior to depositions. This is on top of multiple discovery extensions that Plaintiffs were afforded. This prejudice cannot be cured by another continuance and weighs in favor of excluding the materials.

**(4) The explanation, if any, for the party's failure to disclose the testimony or materials.**

Plaintiffs have no justification for the untimely disclosure of the materials. Federal Rule of Civil Procedure 26(a)(2)(B) requires retained experts to include with their reports not only their opinions and the basis for the same, but also all facts or data considered in forming them. Fed. R. Civ. P. 26(a)(2)(B). The report must contain, among other things (1) the facts or data considered by the witness in forming all his opinions; and (2) any exhibits the witness will use to summarize or support his opinions. *Id.* Plaintiffs therefore were obligated to produce the materials unprompted by formal or informal requests from the Defendants.

The record is clear that this was not a simple oversight by Plaintiffs. They failed to

produce this information that was requested on multiple occasions. Plaintiffs stonewalled and objected to production. Plaintiffs repeatedly denied that they had an obligation to produce such materials. (R.E. 382; Ex. E at 23:4—24:10, App. at 20-21). Plaintiffs' intentional refusal to disclose the materials in a timely manner, despite legal requirements and repeated requests that they do so, weighs heavily in favor of preclusion.

## CONCLUSION

To comply with Rule 26, and FRE 702 and 703, Plaintiffs had an obligation to disclose the facts and data that their testifying experts considered. Any exhibits or other materials used by their experts to summarize or support their opinions also needed to be disclosed in a timely manner. Despite repeated requests made by various defendants that Plaintiffs provide such information, Plaintiffs failed to do so until their experts' depositions were already underway. Plaintiffs failed to disclose that Friedman and Stephenson were conducting finite element analysis simulations. They also failed to disclose Friedman's inspection of a Strick trailer, which was still underway at the time of his deposition. Plaintiffs' failure to timely disclose the materials prejudiced Defendants without justification.

WHEREFORE, Strick respectfully requests that this Court preclude Plaintiffs and their experts from relying upon, alluding to, testifying about, or otherwise offering into evidence the untimely disclosed inspection of the 2002 Strick trailer, as well as the file materials and data of, or the testing and simulations performed by, Keith Friedman and Dr. Rhoads Stephenson, at trial, at any hearing and for any other purpose, and for such other and further relief to which they may show themselves to be entitled.

Respectfully submitted,

DAWSON & CLARK, P.C.

  */s/ Donald H. Dawson, Jr.*
DONALD H. DAWSON, JR.
Texas State Bar No. 05606500
KATHLEEN A. CLARK
Texas State Bar No. 00788830
243 West Congress, Suite 600
Detroit, MI 48226
(313) 256-8900 (Office)
(313) 256-8913 (Facsimile)

WALTERS, BALIDO & CRAIN, LLP

  */s/*
S. TODD PARKS
Texas State Bar No. 15526520
ASHLEY DE LA CERDA
Texas State Bar No. 24045760
10440 North Central Tower, 15th Floor
Dallas, TX 75231
(214) 749-4805 (Office)
(214) 760-1670 (Facsimile)

**ATTORNEYS FOR DEFENDANT STRICK**

**CERTIFICATE OF CONFERENCE**

    This will certify that the moving party has conferred in a face-to-face meeting with all counsel for parties affected by the requested relief on March 7, 2014. Plaintiffs' counsel has opposed the relief requested herein and there is a fundamental disagreement regarding the merits of the present Motion. All other Defendants in this matter consent to this Motion and do not oppose the relief requested herein.

  */s/ Donald H. Dawson, Jr.*
  DONALD H. DAWSON, JR.

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on March 17, 2014 a true and correct copy of the above and foregoing was forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure.

                */s/ Donald H. Dawson, Jr.*
               DONALD H. DAWSON, JR.