IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| OLLIE GREENE, Individually as the Surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the Surviving parent of LAKEYSHA GREENE, § § § § § § § § Plaintiffs, § § v. § § TOYOTA MOTOR CORPORATION, § TOYOTA MOTOR ENGINEERING & § MANUFACTURING NORTH AMERICA, § INC., TOYOTA MOTOR SALES USA, INC., § VOLVO GROUP NORTH AMERICA, IND., § VOLVO TRUCKS NORTH AMERICA, A § A DIVISION OF VOLVO GROUP § NORTH AMERICA, LLC., STRICK § TRAILERS, LLC, JOHN FAYARD § MOVING & WAREHOUSE, LLC and § DOLPHIN LINE, INC. § § Defendants. § § § | CAUSE NUMBER 3:11-cv-0207-N  JURY TRIAL DEMANDED |

## DEFENDANT STRICK TRAILERS, LLC'S MOTION TO EXCLUDE MR. FRIEDMAN'S OPINION THAT THE ICC REAR BUMPER GUARD WAS MANUFACTURED BY STRICK

Defendant Strick Trailers, LLC (Strick) respectfully moves the court for an order excluding the opinions of Plaintiffs' expert Keith Friedman that (1) the ICC rear bumper guard on the trailer at the time of the accident was manufactured or sold by Strick and (2) that the accident underride guard was "identical," "similar," or "substantially similar" to Strick's designs for underride guards.

The grounds for exclusion of the opinion that the accident guard is Strick-manufactured are:   (1) The opinion is not based on sufficient facts or data.   Fed. R.

Civ. P. 26(a)(2); Fed. R. Evid. 37(c)(1); Fed. R. Evid. 702(a); (2). The opinion is not the product of reliable principles and methods, reliably applied to the facts of the case and will not help the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702; and (3) The opinion is based on inadmissible speculation and conjecture. *Viterbo v. Dow Chemical Co.*, 826 F2d 420, 422 (5th Cirt. 1987). The grounds for exclusion of the opinion that the accident guard is "similar" to Strick guards is that it is irrelevant and unduly prejudicial. Fed. R. Evid. 402 and 403.

## BRIEF IN SUPPORT OF MOTION

### BACKGROUND

Several years after Strick's 2003 sale of the subject Strick Trailer, owner Dolphin Line determined the horizontal bar needed to be replaced and that repairs needed to be made to the upright attachments. (Ex. A - Hatfield Dep, Exs. 34-37; App. 25). Precise details of who did the replacement and repair are not known as Dolphin Line personnel at the time are no longer employed there and records are incomplete. (Ex. B-Hatfield dep. pp 7, 12-14, 17-19; App. 9-15). Dolphin Line's present policy is to acquire only OEM parts, so Dolphin personnel merely assume that previously, Dolphin would have ordered OEM replacement parts. (Ex. B p 20; App 16). Mr. Friedman concedes that, the horizontal bar on the accident guard is not the same as the OEM horizontal bar for the subject trailer. (Ex. C-Friedman Dep p 497; App. 25).

F           Following the subject accident, the replacement guard was transported to a field. Although an investigator photographed and measured it, no expert inspected it. From the photographs, Mr. Friedman determined the accident horizontal bar was approximately 100" in length, compared to the 94 ½" length OEM horizontal bar. (Ex. C-Friedman Dep

p 497; App. 25). From photographs, Mr. Friedman could see the accident bar lacked other characteristics of the OEM bar, such as perforations on the top. (Ex. C Friedman Dep pp 490 & 495; App. 22-23; Ex. D Friedman Dep Ex. 32; App.29). [Photo from Friedman dep exhibit of exemplar bar showing perforations]

## PERTINENT PROCEDURAL HISTORY

Plaintiffs served Mr. Friedman's Rule 26 report on November 20, 2013. Mr. Friedman had examined the Strick replacement bumper guard for the subject trailer model, a Strick replacement bumper guard assembly for another model and an exemplar for a different model. Before his deposition, he started to inspect another exemplar Dry Van trailer. Mr. Friedman's report did not opine that the accident horizontal bar or guard was the OEM guard or that it was a Strick manufactured guard. In deposition, Mr. Friedman acknowledged numerous differences seen in the accident guard: (absence of perforations, different lengths, absence of bolted brackets) (Ex. C-Friedman Dep pp 490, 495-497, 500-501; App. 22--27).

Mr. Friedman did not, so far as has been disclosed, survey or investigate Strick bumper guard designs to determine if the accident guard could be matched to a different Strick model.[1] Mr. Friedman acknowledged **he does not know whether, if he got all of the Strick manufactured horizontal bars, one of them would be the length of the accident bar** (100 inches or so). (Ex. C-Friedman Dep p 497, lines 1-15; App. 25). When admitting the OEM bar length was 94 ½ inches, he added "...but we don't know that it isn't a Strick bar." (Ex. C-Friedman Dep p 497 line 8-9; App. 25). When asked, **"Well,**

---

[1] An exhaustive search by Strick revealed the horizontal bar from the bumper guard in the May 28, 2010 accident does not match the characteristics of *any* horizontal bar Strick manufactures. (Jackson Dec. R.E. 373-1¶¶ 16-18; App. 7-10).

**you certainly have no data one way or the other to say it is one either, do you?"** Mr. Friedman responded: **"Just that it's connected to the Strick trailer."** (Ex. C-Friedman Dep p 497 lines 10–14; App. 25).

### Keith Friedman's New Opinion

Three weeks after his deposition, Mr. Friedman filed an affidavit in which he opined that Strick guards he had looked at:

> ...are substantially similar, if not identical, to the photographs of the underride guard I observed in the highway after the accident and the photographs of the underride guard lying in the grassy field**. It is therefore my opinion that the underride guard that was on the trailer involved in the May 28, 2010 accident was a Strick manufactured underride guard**."

(R.E. 369-4 Friedman Aff, ¶ 23)

Mr. Friedman has not identified in his identify a single Strick-manufactured guard which utilized a structural steel tube of approximately 100" in length. He disregarded facts provided by Strick's Engineering Manager, Jim Jackson following a thorough search of Strick's design drawings – i.e. that Strick had only manufactured two guard models which incorporated structural tubes in an approximate length of 100." One was not sold in the pertinent time frame. Both had different characteristics from the accident bar, including but not limited to an indent on one side, perforations, and a difference in attachment struts. (R.E. 373-1 Jackson DEC. pp 5-7).

The scope of Mr. Friedman's review of other Strick guards, to the extent disclosed, consists of one replacement guard for a dry van trailer (the subject model), one replacement guard for another model, and drawings which accompanied each. (R.E. 369-4 Friedman Aff ¶ 16; Ex E-Friedman Rpt, pp 6-8; App. 32-34). His exemplar trailer inspections consist of one exemplar with a different guard and one dry van trailer with the same guard

4

as the OEM guard.   (Ex C-Friedman Dep pp 495-496; App. 23-24 & Ex D-Dep Ex32; App. 29).   [Photo of that guard].

He has, of course, not been able to test the relevant characteristics of the accident guard, i.e. its strength and structural integrity.   Nor did he test any exemplar guards of other designs.

## ARGUMENT

**I.  MR. FRIEDMAN'S OPINION THAT THE ACCIDENT GUARD IS A STRICK MANUFACTURED BUMPER GUARD IS INADMISSIBLE**

Friedman's opinion that the accident guard "was a Strick manufactured underride guard" must be excluded.   It is not supported by relevant facts.   Mr. Friedman did not undertake what is needed for reliable expert witness testimony under FRE 702 and 703.   Expert testimony based on speculation and possibility is unreliable and inadmissible.   As the court stated in *Viterbo v. Dow Chemical Co.*, 826 F2d 420, 422 (5th Cirt. 1987):

> If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury. Furthermore, its lack of reliable support may render it more prejudicial than probative, making it inadmissible under Fed. R. Evid. 403. See *Barrel of Fun, Inc. v. State Farm Fire & Casualty Cp.*, 739 F. 2d 1028, 1035 (5th Cir. 1984), (evidence admissible under Rule 703 must satisfy Rule 403 which excludes evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury').

To the contrary, Friedman's opinion on the bar is speculative, conclusory in nature, and unsupported by any disclosed facts or research.

Mr. Friedman provided no data that links the accident guard to any Strick-manufactured guard.   He apparently made no attempt to include or exclude guards of other manufacturers.   Additionally, he disregarded known facts that distinguish the horizontal bar from Strick's designs.   Instead, Mr. Friedman speculated and offered an

5

opinion without any foundation.   Consequently, Mr. Friedman's opinion must be excluded as inadmissible.

### A. Mr. Friedman provided no data to link Strick to the trailer's underride guard at the time of the accident.

While Friedman claims to have examined actual Strick underride guards as well as photographs and diagrams, he fails to provide any facts or data to support that any Strick design is the same as the underride guard involved in the accident.   Friedman has not identified what tests or analysis he performed on either the ICC rear bumper guard assembly that was attached to the Strick trailer at the time of the accident or Strick's actual ICC rear bumper guard designs in order to qualify Friedman to offer that opinion. Friedman failed to provide data about even such easily identifiable characteristics as the lengths of horizontal bars, perforations, and paint color.   His opinion is fundamentally unsupported and should be disregarded by the Court.

### B. Friedman's Opinion is based on an assumption made by someone without personal knowledge.

There is no dispute that the horizontal bar on the rear guard assembly was changed before the accident.   (Ex. A-Hatfield Dep Ex. 36; App. 4).   Mr. Friedman's opinion presumes that any replacement parts for Dolphin's repairs to the underride guard were Strick parts. This presumption is based on Dolphin's belief, but not actual, personal knowledge that OEM parts were used during the time frame that repairs were made.   (Ex. E Friedman Rep, pp 6-7; App. 32-34).   Plaintiffs' counsel and Dolphin's present fleet service manager, Gary Hatfield, had this exchange in Mr. Hatfield's deposition:

> Q: Do you know what type of parts were used to replace the ICC bumper that's reflected in Exhibit 36?
> A. I can assume, based on what we do now.
> 					(Ex. B-Hatfield Dep, p 20 line 12-14; App. 16).

6

Mr. Hatfield also testified that parts can come from other suppliers. (Ex. B-Hatfield Dep p 23, line 12-14; App. 17). Gary Hatfield did not join the company until August, 2010. He merely assumed, based on Dolphin's practices under his tenure, that Dolphin had purchased only OEM parts. (Ex. B-Hatfield Dep, pp 6, 18, 20; App. 7, 14 & 16). These overlapping presumptions cannot provide a reasonable foundation for Mr. Friedman's opinion.

### C. Strick Does Not Manufacture Guards with the Characteristics of the Guard Found at the Accident Site.

Friedman has hypothesized that the horizontal bar attached to the Strick trailer at the time of the accident could possibly be a Strick horizontal bar designed for a different Strick trailer and mistakenly affixed to the Strick trailer involved in the accident.[2] This theory is purely speculative, without any basis in fact. Friedman made this opinion without the consideration of existing Strick designs or the testimony of Strick's Engineering Manager, Jim Jackson, who testified that no Strick design matched the subject bar. It is at least as likely, if not more, that another manufacturer's horizontal bar was welded onto the trailer. What is certain is that Friedman provided this notion without any foundation for it. He did not identify a matching Strick design nor did he provide data to exclude other manufacturers.

Notwithstanding that Strick's parts distribution process was designed to prevent such a mistake, Strick has searched its data base of bumper guard drawings for rear guards. The exhaustive search revealed the horizontal bar from the bumper guard in the May 28, 2010 accident does not match the characteristics of *any* horizontal bar Strick manufactures. (R. E. Jackson Dec. 373-1 ¶¶ 16-18; App. 7-10). Unlike the horizontal bar in the

---

[2] See Appendix to Plaintiffs' Response at App. 1099.

7

accident, Strick guards have perforations, an indent along one edge, and are painted white on the inside. Friedman further failed to consider Jackson's testimony on other significant, distinctive features on the accident horizontal bar, include its length, composition (structural steel instead of fabricated), and method of attachment (welded versus bolted to uprights), which are evidence that the subject bar is not of Strict design. *Id.*

As all Strick horizontal bars have distinct characteristics from the horizontal bar attached to the trailer in the accident, Strick designs are not "substantially similar, if not identical" to the underride guard involved in the May 28, 2010 accident. Therefore, Mr. Friedman's opinion that the underride guard involved in the accident was of Strick design lacks any supporting basis is pure conjecture, and should be dismissed for lack of foundation as more prejudicial than probative.

### D. Mr. Friedman's Opinion Provided by Affidavit Contradicts His Own Testimony at Deposition.

Most confounding is that Mr. Friedman's affidavit is contradicted by Friedman himself. Friedman testified in his deposition that the horizontal bar from the accident bumper guard is not the same length as the OEM horizontal bar for the subject trailer. (Ex. C-Friedman Dep, pp 496 – 497; App. 24-25). He also admitted that it lacks the perforations on the top of the bar, which are part of Strick's design.[3] (Ex. C-Friedman Dep, pp 490 & 495; App. 25). Friedman further indicated that Strick guard assemblies include bolts and nuts while the bar at the accident scene was welded on. (Friedman Dep, pp 500-501). The distinctions between the two horizontal bars, admitted to by Friedman, fully contradict his position that the underride guards are "substantially similar, if not

---

[3] See Exhibit 2 to Strick's Appendix, App. 100-117.

8

identical"[4]   Friedman's sole basis to believe the underride guard in the accident was manufactured by Strick is "[j]ust that it's connected to a Strick trailer."  (Ex. C-Friedman Dep, p 497, lines 8–14; App. 25).   Friedman's conclusory opinion on who designed and manufactured the underride guard attached to the trailer at the time of the accident is pure speculation.   It lacks foundation.   To allow Friedman's opinion, which contradicts even his own testimony, would be more prejudicial and probative.   Therefore, it must be excluded as inadmissible.

### E.  Friedman has not Provided an "Expert" Opinion.

Friedman's opinion is not part of his Rule 26 report.   His affidavit does not list any facts or data to properly supplement that report.   Moreover, Friedman's opinion is not the subject matter of expert testimony.   An engineer's technical knowledge is not needed to see the differences between the horizontal bar in the accident and Strick designs. Without testing or inspections that address performance characteristics, Mr. Friedman is not providing "special knowledge . . . to determine a fact in issue" in conformance with FRE 702.   To now allow Mr. Friedman to opine that the underride guard in the accident was manufactured by Strick would be more prejudicial than probative and must be excluded.

### II.   SIMILARITY IN APPEARANCE IS IRRELEVANT

Whatever various horizontal bars look like, Friedman's contention that the physical appearance of the underride guard from the accident "similar," "substantially similar," or "identical" to a bar of Strick design is irrelevant, and therefore inadmissible under Rule 703.   The rules of evidence allow expert opinions on otherwise inadmissible evidence "if their probative value . . . substantially outweighs their prejudicial effect." FRE

---

[4]   See Appendix to Plaintiffs' Response at App. 1099, ¶ 23.

703.    The claims against Strick in this case concern the underride guard's *performance*, not what it does or does not look like.   Mr. Friedman did not conduct performance tests on any Strick underride guards. Long, short, red, white, polka dot, or plaid... it is all without probative value and irrelevant to how an underride guard performs under the enormous impact conditions that occurred in the accident on May 28, 2010.   Absent any probative value, any opinions about the similarity of Strick's underride guards to the underride guard in the accident should be excluded.

## **CONCLUSION**

The underride guard at the accident scene was not a Strick manufactured guard. The horizontal bar has different physical characteristics from any bar that Strick manufactures.   Mr. Friedman never investigated whether Strick made a bar with the same characteristics.   More importantly, the issue is not whether the guard looks similar to a Strick guard.   What matters is how the guards performed.   Mr. Friedman never analyzed the performance of the accident's underride guard.   Mr. Friedman provided no data for comparing one type of guard to another.   Without knowing how underride guards perform under the accident's conditions, nothing else is relevant.

For all the foregoing reasons, Strick respectfully asks this Court to enter an order excluding Keith Friedman's opinion that the ICC rear bumper guard at the time of the accident was manufactured by, or was identical, similar, or substantially similar to Strick's designs.

       Respectfully submitted,

       DAWSON & CLARK, P.C.

        /s/ *Donald H. Dawson, Jr.*
       DONALD H. DAWSON, JR.
       Texas State Bar No. 05606500
       KATHLEEN A. CLARK
       Texas State Bar No. 00788830
       243 West Congress, Suite 600
       Detroit, MI 48226
       (313) 256-8900 (Office)
       (313) 256-8913 (Facsimile)


       WALTERS, BALIDO & CRAIN, LLP

        /s/
       S. TODD PARKS
       Texas State Bar No. 15526520
       ASHLEY DE LA CERDA
       Texas State Bar No. 24045760
       900 Jackson Street, Suite 600
       Dallas, TX 75202
       (214) 749-4805 (Office)
       (214) 760-1670 (Facsimile)

       **ATTORNEYS FOR DEFENDANT STRICK**

## CERTIFICATE OF CONFERENCE

  This will certify that the moving party has conferred in a face-to-face meeting with all counsel for parties affected by the requested relief on March 7, 2014. Plaintiffs' counsel has opposed the relief requested herein and there is a fundamental disagreement regarding the merits of the present Motion. All other Defendants in this matter consent to this Motion and do not oppose the relief requested herein.

        /s/ *Donald H. Dawson, Jr.*
       DONALD H. DAWSON, JR.

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on March 17, 2014 a true and correct copy of the above and foregoing was forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure.

                 */s/ Donald H. Dawson, Jr.*
                 DONALD H. DAWSON, JR.