IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, *et al.*, | § | |
| | § | |
|     Plaintiffs | § | |
| | § | |
| v. | § | CAUSE NUMBER: 3:11-cv-0207-N |
| | § | |
| TOYOTA MOTOR CORPORATION, *et al.*, | § | |
| | § | |
|     Defendants. | § | |

**BRIEF IN SUPPORT OF TOYOTA'S MOTION TO EXCLUDE THE
<u>TESTIMONY OF PLAINTIFFS' EXPERT TRUDI ZAPLAC</u>**

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................4

II. FACTUAL AND PROCEDURAL BACKGROUND........................................................4

III. ARGUMENT........................................................................................................................6

    A. Standards of Reliability for Expert Testimony ........................................................6

    B. Zaplac's Opinions Are Unreliable and Should be Excluded....................................7

        1. Zaplac's opinions are not reliable because she failed to adhere to a reliable methodology ................................................................................................7

        2. Testimony offered by Zaplac about Plaintiffs' damages is unreliable because she cannot isolate Plaintiffs' recoverable damages ......................10

        3. Zaplac cannot distinguish Ms. Hardeman's post-accident trauma and mental state from her pre-existing psychological issues............................11

        4. Zaplac's report and testimony are wholly inadmissible under the Federal Rules of Evidence ....................................................................................12

IV. CONCLUSION..................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Claar v. Burlington N. R.R. Co.,* 29 F.3d 499 (9th Cir. 1994)..........................................................8

*Cloud ex rel Cloud v. Pfizer, Inc.,* 198 F. Supp.2d 1118 (D. Ariz. 2001) .......................................8

*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) .........................................................6, 7, 8

*Downs v. Perstorp Components, Inc.,* 126 F. Supp.2d 1090 (E.D. Tenn. 1999)............................8

*E.I. du Pont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549 (Tex. 1995) ......................12

*Gen. Elec. Co. v. Joiner,* 522 U.S. 136 (1997) ................................................................................6

*In re Christus Spohn Hosp. Kleberg,* 222 S.W.3d 434 (Tex. 2007) ................................................8

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) .....................................................................6

*Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998) .........................................................7

*Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316 (7th Cir. 1996) ................................................................6

*U.S. v. Downing*, 753 F.2d 1224 (3rd Cir. 1985)..........................................................................12

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987) ..............................................................6

*Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897 (Tex. 2004).............................................12

**Codes**

Texas Civil Practices and Remedies Code § 71.004.....................................................................10

**Rules**

Federal Rule of Evidence 402.......................................................................................................12

Federal Rule of Evidence 403.......................................................................................................12

Federal Rule of Evidence 702....................................................................................12, 13, 14, 15

Federal Rule of Evidence 703.......................................................................................................15

Federal Rule of Evidence 802.......................................................................................................13

TO THE HONORABLE COURT:

Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively "Toyota Defendants") file this Brief in Support of their Motion to Exclude the Testimony of Plaintiffs' Expert Trudi Zaplac as follows:

## I.  INTRODUCTION

Plaintiffs designated Trupi Zaplac ("Zaplac") to offer opinions regarding the mental anguish and emotional distress experienced by Plaintiffs' Ollie Greene and Marilyn Hardeman, as well as the mental anguish and emotional distress experienced by Wyndell Greene, Sr. between the accident and his death.  However, Zaplac's testimony should be excluded at trial for a number of reasons.  First, Zaplac's opinion testimony is not based on a reliable methodology because she failed to properly administer psychological testing and did not attempt to review the necessary medical history of Plaintiffs before rendering her opinions.  Second, Zaplac's testimony is admittedly unreliable because she cannot isolate Plaintiffs' recoverable damages or distinguish Marilyn Hardeman's post-accident trauma from her pre-accident trauma.  Therefore, there is an "analytical gap" between the evidence considered by Zaplac and her psychological evaluation of Plaintiffs.  Finally, Zaplac's purported expert report and testimony is based on inadmissible evidence that does not assist the jury in determining a fact issue.  Therefore, Zaplac's testimony is unreliable and must be excluded at trial.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a high speed, multiple-vehicle accident that occurred on May 28, 2010 in Kaufman County, Texas.  Plaintiffs' decedents (collectively the "Greene Family") were traveling in a 2010 4Runner that was struck from behind by a 2008 Volvo tractor driven by Charles Moody. The force of the impact drove the 4Runner into the rear of a 2006 Corolla and

then into the rear of the subject Strick Trailer. The Volvo tractor again impacted the rear and left side of the 4Runner, crushing it against and underneath the Strick trailer. Tragically, Lakeysha Greene, Wyndell Greene, II and Wesleigh Greene were killed at the scene by blunt force trauma and Wyndell Greene, Sr., died three months later. Plaintiffs in this action are Ollie Greene, mother of Wyndell Greene, Sr.; Marilyn Hardeman, mother of Lakeysha; and William "Bill" Greene, administrator of Wyndell's estate.

On February 3, 2011, Plaintiffs filed suit against multiple defendants, including the Toyota Defendants. To support their allegations against the Toyota Defendants, Plaintiffs designated Zaplac to testify regarding the emotional distress and mental anguish of Ollie Greene and Ms. Hardeman, as well as the mental anguish and pain and suffering experienced by Wyndell between the accident and his death. *See* Notice of Service of Plaintiffs' Rule 26(a)(2) Expert Disclosures, Doc. No. 244; *see also* Psychological Evaluation of the Parties Report of Findings, attached herein as Exhibit A; Excerpts from the Deposition Transcript of Trudi Zaplac, attached herein as Exhibit B.

During her deposition, Zaplac testified that she intends to offer opinions regarding the current psychological state of Ollie Greene and Ms. Hardeman, as well as the experience Wyndell went through in the time that he continued to live after his family had perished. *See* Exhibit B, at 31:11—32:9; App. 48-49. Zaplac intends to testify that both Ollie Greene and Ms. Hardeman suffer from severe emotional pain, torment, and suffering resulting from the loss of their children and children's family, and will likely suffer emotional pain and suffering for the remainder of their lives. *See* Exhibit A, ¶ 10; App. 3. Zaplac also intends to testify that Wyndell experienced severe emotional pain, torment, and suffering from the loss of his family, the

injuries he incurred in the accident, and the way in which his family perished. *Id.* Because Zaplac's opinions regarding the above are unreliable, her testimony must be excluded.

## III.   ARGUMENT

### A.   Standards of Reliability for Expert Testimony

Before she can offer expert opinion testimony at trial, the Court must determine whether Zaplac's opinions are reliable. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). Faced with an objection to a proffer of expert testimony, the Court must engage in a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* at 592-93. Baseless, unreliable evidence is of no assistance to the trier of fact and is thus inadmissible. *See, e.g., Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 421 (5th Cir. 1987) ("If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury."). A witness who has "little more than his credentials and a subjective opinion" cannot provide expert testimony. *Id.* at 421-22; *see also Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."). The reliability determination is made by examining whether Zaplac arrived at her opinions by a reliable, scientific methodology similar to that utilized by persons outside the context of litigation. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Under this analysis, expert testimony is unreliable if it is not grounded "in the methods and procedures of science" and is no more than "subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590. Expert testimony is unreliable if the court concludes "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). An expert's bald assertions of validity are not enough. *See Daubert*, 509 U.S. at 590; *Viterbo*, 826 F.2d at 421. There must be objective, independent validation of the expert's methodology. *See id.* In making this threshold reliability determination, the trial court may consider:

    1)   whether the theory has been reliably tested;
    2)   whether the theory has been generally accepted within the pertinent technical community;
    3)   whether the theory has been subjected to peer review; and
    4)   the known potential rate of error

*Daubert,* 509 U.S. at 593-94. The burden is on the proponent of the expert testimony to demonstrate the expert witness has adhered to the standards set forth in *Daubert*. *See Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

**B.**    **Zaplac's Opinions Are Unreliable and Should be Excluded.**

    1.   <u>Zaplac's opinions are not reliable because she failed to adhere to a reliable methodology.</u>

Zaplac purports to offer expert testimony that Ollie Greene and Ms. Hardeman suffer from severe emotional distress from the loss of their family members in the accident. However, Zaplac's psychological opinions regarding Plaintiffs are not based on a reliable methodology. During her evaluation of Ollie Greene, Zaplac failed to adhere to generally accepted psychometric testing procedures. Zaplac admitted that certain psychological tests are to be properly monitored and conducted at the office of the administrator. However, Zaplac did not adhere to these standards when administering tests to Ollie Greene.

> Q: Is that appropriate protocol when you're administering psychological tests, to allow the person being tested to take the tests home with them?
>
> A: It is not normally...
>
>                         ***
>
> Q: Is it standard practice for you to be present when the -- or have a proctor or monitor present when these tests are given?
>
> A: Normally, yes.
>
>                         ***

> Q: When you administered these tests, ma'am, isn't it standard practice to have a proctor or some type of monitor when the tests are being given?
>
> A: It's standard that they would do them in your office.
>
> \*\*\*
>
> Q: Did she complete any of them while you were there?
>
> A: She did not complete any of them while I was still there.
>
> Q: So you allowed Ms. Greene to take those tests with her, and she completed them?
>
> A: She finished them and sent them back to me.

Exhibit B, at 111:3-7; 173:1-4; 174:21-25; 110:4-10; App. 52, 64, 65, 51. Because Zaplac failed to administer the test properly, the test results are not reliable. As a result, her opinions in this case regarding the psychological state of Ollie Greene are therefore unreliable.

An expert must also rely on the type of data or facts normally relied upon in the expert's field. *In re Christus Spohn Hosp. Kleberg,* 222 S.W.3d 434, 440 (Tex. 2007). In this situation, that would specifically include Plaintiffs' medical history. In *Claar v. Burlington N. R.R. Co.,* the court excluded the opinions of a medical expert who failed to review all of the relevant record prior to making his diagnosis. 29 F.3d 499 (9th Cir. 1994) (*citing Daubert,* 509 U.S. at 593-94; *see also Cloud ex rel Cloud v. Pfizer, Inc.,* 198 F. Supp.2d 1118, 1135-1136 (D. Ariz. 2001) (excluding a doctor's causation opinions because "there is evidence that Dr. Johnstone came to his conclusion before reviewing all of Mr. Baskins' medical records"); *Downs v. Perstorp Components, Inc.,* 126 F. Supp.2d 1090, 1103-1104 (E.D. Tenn. 1999) (excluding the causation opinions of a doctor who relied upon the patient's statements but never reviewed the medical records). Before rending her final opinions, Zaplac did not review any of Ollie Greene

or Ms. Hardeman's prior medical records or attempt to speak with any of their medical providers. Instead, she simply relied on the interviews she conducted with Ollie Greene and Ms. Hardeman.

> Q: Now, it's my understanding, ma'am, that as part of your evaluation of Ms. Greene, that you did not review any of her medical or mental health records. Is that correct?
>
> A: Yes. That's correct.
>
> Q: And it's my understanding that as part of your evaluation, you did not communicate with any of her physicians or mental health professionals. Is that correct?
>
> A: That's correct.
>
> ***
>
> Q: During the time you were doing an evaluation of Ms. Hardeman, did you have any contact with any of her treating physicians or mental health providers?
>
> A: No.
>
> Q: And did you review any of their records?
>
> A: No.

Exhibit B, at 161:6-15; 162:12-18; App. 61, 62. Without analyzing the medical or mental health records of Ollie Greene or Ms. Hardeman, and without attempting to contact their mental health providers, Zaplac cannot reliably opine on how the accident has affected their psychological state. Therefore, Zaplac has no way of truly knowing what change the accident has caused.

Finally, Zaplac made no effort to speak with any of Wyndell's treating doctors before providing her final opinions regarding his suffering. *Id.* at 163:21-24; App. 63 (Q: Have you ever talked to any of [Wyndell Greene's] doctors at like Parkland or anything like that? A: I have not.). Wyndell's treating doctors undoubtedly had first-hand knowledge of his experience, and Zaplac's failure to consider this pertinent information is a significant flaw in her methodology.

Because Zaplac did not adhere to a reliable methodology, her opinions are not reliable and should be excluded.

    2.    <u>Testimony offered by Zaplac about Plaintiffs' damages is unreliable because she cannot isolate Plaintiffs' recoverable damages.</u>

Under Texas law, a wrongful death action "is for the exclusive benefit of the surviving spouse, children, and parents of the deceased." *See* Tex. Civ. Prac. & Rem. Code. § 71.004. The statute does not allow a wrongful death action based on the loss of grandchildren, or the loss of children's spouses. In fact, this Court has already held as much in ordering that Plaintiffs could not recover for losses related to the deaths of Wyndell Greene, II or Wesleigh Greene. *See* Doc. No. 130. Throughout her report and again during her deposition, Zaplac explains that she is opining that Ollie Greene and Ms. Hardeman's suffering is attributable to the loss of the Greene Family as a whole. However, when questioned about the specific nature of their suffering, Zaplac could not differentiate between the loss of their children, and the loss of the other members of the Greene Family.

> Q: Okay. Now, when you say "the loss of her son and his family," you're referring in that situation to not only Wyndell's death, but to the death of his children and his wife?
>
> A: Yes.
>
> Q: And you believe that it's a combination of those things that has caused the severe emotional pain, torment and suffering that you've identified, correct?
>
> A: It hurts her that she's lost all of them.
>
> Q: Yes. Have you in any way attempted to segregate as between her son and his children and his wife which has been the cause of her emotional pain, torment and suffering?
>
> MR. PITTMAN: Objection; form.
>
> Q: Have you attempted to do that?

>A: No...

>***

>Q: Now, with regard to the opinions you've offered in this case concerning Marilyn Hardeman, similar to what you said about Ollie Greene, you related her severe emotional pain, torment and suffering from the loss of her daughter and her family. The same question I posed before. I take it that it's just not possible for you or anyone else to segregate as between her daughter and her daughter's family what has caused this emotional pain and torment. Fair to say?

>A: I really believe that to be a legal fiction. Certainly the loss of her daughter and those two babies, that's -- if you want to say what's worse, that's the worst. But also I think it's undeniable that Marilyn thought of Wyndell as a son she never had, as the one man who didn't abandon her in her life, the one man who never hurt her, you know. He was really to her a very important figure.

>Q: And the loss of her grandchildren, I take it, too?

>A: Yeah. I already said that. But yes, it's just -- it's hard to quantify how much does that...

Exhibit B, at 125:23—126:13; 133:21—134:17; App. 53-54, 57-58. Zaplac is unable to isolate Ollie Greene and Ms. Hardeman's recoverable wrongful death damages from the loss of their children, Wyndell and Lakeysha. The psychological injury to Plaintiffs for the loss of every member of the Greene Family is not recoverable. Therefore, Zaplac's opinions in this regard do not accurately or reliably reflect any category of recoverable damages in this case. The testimony is irrelevant, unreliable and should be excluded.

    3.    <u>Zaplac cannot distinguish Ms. Hardeman's post-accident trauma and mental state from her pre-existing psychological issues.</u>

In her report and during her deposition, Zaplac discussed the psychological and emotional history of Ms. Hardeman prior the accident. Zaplac acknowledged that Ms. Hardeman has a history of trauma, and suffers from emotional intensity and reactivity, as well as some interpersonal and trust issues. *See* Exhibit B, at 129:8—130:5; App. 55-56. Ms. Hardeman also

had trouble with maintaining "a state of what most people would call just general well-being and happiness, contentedness, and ... a sense of just happy well-being." *Id.* at 155:18—156:7; App. 59-60.  Given the history of Ms. Hardeman prior to the accident, Zaplac was unable to separate the post-accident trauma from her pre-accident trauma, and reliably offer testimony that would assist a jury to evaluate how the loss of the Greene Family has affected her life.  Her proposed expert testimony cannot be sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute.  *See E.I. du Pont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995) (*quoting U.S. v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985)); *see also Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 905 (Tex. 2004) (applying the "analytical gap" test to scientific testimony and excluding expert testimony because there was no explanation of how the data relied upon supported the conclusion reached).  Because she is unable to offer reliable testimony, it must be excluded.

    4.    <u>Zaplac's report and testimony are wholly inadmissible under the Federal Rules of Evidence.</u>

A cursory read of Zaplac's report and her deposition testimony reveals that her opinions reach far beyond issues of emotional distress.  Zaplac's report is replete with information that is not relevant to this case, hearsay, improper character evidence, and unduly prejudicial.  In sum, Zaplac's report serves as a conduit for the introduction of otherwise inadmissible evidence, rather than someone who is performing a scientific analysis based on reliable principles and methods to provide an expert opinion that is helpful to the jury.

Federal Rule of Evidence 702 requires that expert testimony must "assist the trier of fact to understand the evidence or to **determine a fact in issue**" to be admissible.  (emphasis added). Expert opinion testimony, like all evidence, is also subject to the relevant requirements of Rules 402 and 403.  Most all of Zaplac's report is written based on the various interviews that she

conducted with Ollie Greene Ms. Hardeman, and Bill Greene. These interviews provided the impetus for Zaplac to discuss the various changes that have occurred in Ollie Greene and Ms. Hardeman's lives since the death of the Greene Family, as well as her discussion relating to Wyndell's suffering before his death. Zaplac's stories and discussions regarding how the death of the Greene Family has affected Ollie Greene and Ms. Hardeman are being offered for the truth of the matter asserted, and are inadmissible hearsay. Fed. R. Evid. 802. All of the information about how Ollie Greene and Ms. Hardeman's lives have been affected by their loss can be derived from their own testimony at trial. It is improper for Zaplac to offer testimony of how Ollie Greene and Ms. Hardeman's lives have been affected by their loss.

In addition, Zaplac's report if filled with all sorts of irrelevant information that does not assist the jury in determining a fact issue. For example, she discusses how "Wyndell was an exceptionally devoted and involved father with his two children. When he was not at work, his social life was centered around church and family activities." Exhibit A, ¶ 18; App. 6. Zaplac also references a conservation that she had with Ollie Greene regarding her relationship with Wyndell, where she states, "All through college and all throughout the years he was married and living in Texas, Wyndell would open a window into his heart and mind, almost as if he were dictating a diary entry and his mother acting as the stenographer." *Id.* ¶ 24; App. 7. These sort of statements are irrelevant and included simply to appeal to juror biases and prejudices for sympathy. Similar statements are littered throughout Zaplac's report and are not relevant to the issues in this case. Therefore, they should be excluded pursuant to Fed. R. Evid. 702.

Zaplac's report also includes improper character evidence in an effort to make an emotional characterization of Ollie Greene, Ms. Hardeman, and Wyndell. Aside from also being irrelevant and hearsay, this is improper character evidence that is not scientific in nature and does

not help the jury understand the legal or factual issues in this case. It is simply an attempt by Plaintiffs to admit inadmissible evidence.

Zaplac also discusses the mental status of Ollie Greene and Ms. Hardeman, but these discussions contain nothing more than Zaplac's observations of Ollie Greene and Ms. Hardeman's behavior. None of her conclusions and opinions in this regard go above and beyond those that a lay person could form if they were to observe Ollie Greene and Ms. Hardeman testify. For example, Zaplac notes that both Ollie Greene and Ms. Hardeman cried when discussing the circumstances surrounding the loss of the Greene Family. The jury does not need an expert witness to testify that Ollie Greene and Ms. Hardman's may become tearful when discussing that topic. There is no dispute in this case that the loss of a family member is a traumatic experience and can result in sadness, but this testimony is not helpful to the jury, and it does not qualify as scientific, technical, or other specialized knowledge as required by the federal rules of evidence. *See* Fed. R. Evid. 702.

A careful review of Zaplac's report demonstrates that few references are made to the issue of emotional distress. Instead, a majority of the report is filled with character evidence, characterizations, and self-serving fact summaries. Zaplac's report demonstrates that her role in this case is that of an advocate rather than someone who is performing a scientific review based on reliable principals and methods. In the conclusions section, Zaplac offers the opinion that Plaintiffs still suffer from emotional distress resulting from the loss of the Greene Family and that this will continue for the remainder of their lives. *Id.* ¶ 10; App. 3. This opinion, however, is not scientifically supported. The observations that Zaplac cites as the basis for her opinions are stated in terms utilized in the field of psychology, but these terms of art do not transform Zaplac's basic observations into reliable scientific conclusions. A lay juror is capable of making

those observations. This testimony is therefore not helpful to the jury, and should be excluded under Fed. R. Evid. 702.

Finally, this Court should also reject any notion that Zaplac's inadmissible information should be presented to the jury because it is information upon which an expert relied. Federal Rule of Evidence 703 places a heavy burden on the party who attempts to interject inadmissible evidence into a case through the testimony or report of an expert, instructing that such information "shall not be disclosed to the jury ... unless the court determines that their probative value is assisting the jury understand the expert's opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. Plaintiffs cannot overcome this burden because the prejudice to the Toyota Defendants would be significant if Plaintiffs are allowed to present any such evidence, and the probative value of such evidence is minimal given Plaintiffs' improper use of Zaplac.

## IV.  CONCLUSION

Zaplac's opinions in this case will not assist the jury in determining a fact issue, and do not meet the standards set forth in the federal rules of evidence, federal case law, and Texas case law. Therefore, her testimony should be excluded in this case. Additionally, Plaintiffs should not be allowed to use her as a conduit for the admission of otherwise inadmissible, prejudicial evidence.

WHEREFORE, PREMISES CONSIDERED, Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. respectfully request that their Motion to Exclude the Testimony of Plaintiffs' Expert Trudi Zaplac be granted in its entirety; that Zaplac not be allowed to offer any testimony at the

trial of this matter regarding the aforementioned topics; and for such further relief, both at law or in equity, to which Toyota may show itself to be justly entitled.

Respectfully submitted,

*/s/ Kurt C. Kern*
**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR DEFENDANTS TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., AND TOYOTA MOTOR SALES, U.S.A., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 17th day of March, 2014.

*/s/ Jude T. Hickland*