IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| OLLIE GREENE, *et al.*, § | |
| § | |
| Plaintiffs § | |
| § | |
| v. § | CAUSE NUMBER: 3:11-cv-0207-N |
| § | |
| TOYOTA MOTOR CORPORATION, *et al.,* § | |
| § | |
| Defendants. § | |

# BRIEF IN SUPPORT OF TOYOTA'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT DR. STAN V. SMITH

## **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................4

II.  FACTUAL AND PROCEDURAL BACKGROUND.........................................4

III.  ARGUMENT...........................................................................................................5

    A.  Standards of Reliability for Expert Testimony .......................................5

    B.  Smith's Opinions Regarding Damages Related to the Deaths of the Greene Children are Irrelevant and should be excluded ......................................6

    C.  Smith's Testimony Regarding Lost Wages and Benefits is Irrelevant and Should be Excluded.......................................................................................7

    D.  Smith's Testimony Regarding Lost Household/Family Services Should be Excluded ...................................................................................................7

        1.  The methodology for Smith's Calculations is unreliable .............................8

        2.  Smith cannot reliably testify that Hardeman has lost any housekeeping services..........................................................................................9

        3.  Smith's testimony is unreliable because it presupposes that the advice and accompaniment of a child is fungible. .......................................................10

        4.  Loss of accompaniment is duplicative of loss of society and relationship.11

        5.  Smith's opinions are not helpful because they are "benchmarks."..............11

    E.  Smith's Loss of Value of Life Testimony Should be Excluded ..............12

    F.  Smith's Loss of Society or Relationship Testimony Should be Excluded.............13

IV.  PRAYER................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Best Steel Buildings, Inc. v. Hardin*, 553 S.W.2d 122 (Tex. Civ, App.-Tyler 1977, writ ref'd n.r.e.) ..................................................................................................................................7

*Buckhalter v. Burlington N. R.R., Co.,* 1992 WL 236676 (N.D. Miss. Mar. 23, 1992).................12

*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) ..................................................5, 6, 12, 14

*Davis v. Rocor Int'l*, 226 F. Supp. 2d 839 (S.D. Miss. 2002) .....................................................12, 13

*Dover Corp. v. Perez*, 587 S.W.2d 761 (Tex. Civ. App.-Corpus Christi 1979, writ ref'd n.r.e.) ....7

*Halliburton Co. v. Olivas*, 517 S.W.2d 349 (Tex. Civ. App.-El Paso 1974, no writ) .....................7

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) .....................................................................6

*Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998) ...........................................................6

*Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316 (7th Cir. 1996) ................................................................6

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987) ...............................................................6

**Rules**

Federal Rule of Evidence 702.......................................................................................5, 7, 12, 14

TO THE HONORABLE COURT:

Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively "Toyota Defendants") file this Brief in Support of their Motion to Exclude the Testimony of Plaintiffs' Expert Dr. Stan V. Smith as follows:

## I. INTRODUCTION

Plaintiffs designated Dr. Stan V. Smith ("Smith") to offer opinions regarding various economic losses related to the deaths of Wyndell Greene, Sr., Lakeysha Greene, Wesliegh Greene, and Wyndell Greene, II. Smith's testimony regarding damages resulting from the deaths of the Greene Children, and lost wages and benefits is irrelevant. Smith's testimony regarding loss of household/family services is based upon an unreliable methodology, seeks double recovery of losses, and opines to the amount of Plaintiffs' lost housekeeping services without first determining whether Plaintiffs have in fact suffered any such loss or reliably confirmed the extent of any such loss. Smith's testimony regarding loss of value of life and loss of relationship or society is not based on any reliable methodology, and is not helpful to the jury. For these reasons, Smith's testimony on these subjects should be excluded at trial.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a high speed, multiple-vehicle accident that occurred on May 28, 2010 in Kaufman County, Texas. Plaintiffs' decedents (collectively the "Greene Family") were traveling in a 2010 4Runner that was struck from behind by a 2008 Volvo tractor driven by Charles Moody. The force of the impact drove the 4Runner into the rear of a 2006 Corolla and then into the rear of the subject Strick Trailer. The Volvo tractor again impacted the rear and left side of the 4Runner, crushing it against and underneath the Strick trailer. Tragically, Lakeysha Greene, Wyndell Greene, II and Wesleigh Greene were killed at the scene by blunt force trauma

and Wyndell Greene, Sr., died three months later. With respect to the Toyota Defendants, Plaintiffs allege strict products liability causes of action based on the design, manufacture, and marketing of the 4Runner. Specifically, Plaintiffs allege that the 4Runner was defective because its structure and fuel system did not properly protect the Greene Family during the subject accident, and ultimately caused their injuries and deaths.[1]

To support their allegations against the Toyota Defendants, Plaintiffs designated Smith to testify regarding damages to the Greene Family. *See* Notice of Service of Plaintiffs' Rule 26(a)(2) Expert Disclosures, Doc. No. 244; *see also* Expert Report of Stan Smith, attached herein as Exhibit A; Excerpts from the Deposition Transcript of Stan Smith, attached herein as Exhibit B.

In his report, Smith provided a number of valuation opinions for various damages purportedly incurred by the Greene Family. His four sub-reports relate to damages deriving from the deaths of each individual of the Greene Family.

### III. ARGUMENT

#### A. Standards of Reliability for Expert Testimony

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. In order to testify as an expert, Rule 702 requires the testimony of the proposed witness satisfy three requirements (1) the witness must be qualified to be an expert "by knowledge, skill, experience, training or education," (2) the subject matter of the testimony must be "scientific, technical, or other specialized knowledge," and (3) the experts knowledge must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Before he can offer expert opinion testimony at trial, the Court must determine if Smith's

---

[1] Plaintiffs' Complaint also includes a host of other alleged defect claims, including allegations relating to the restraint system in the 4Runner. However none of these claims are supported by any of their experts.

testimony meets these requirements. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). Faced with an objection to a proffer of expert testimony, the Court must engage in a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* at 592-93. Baseless, unreliable evidence is of no assistance to the trier of fact and is thus inadmissible. *See, e.g., Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 421 (5th Cir. 1987) ("If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury."). A witness who has "little more than his credentials and a subjective opinion" cannot provide expert testimony. *Id.* at 421-22; *see also Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."). The reliability determination is made by examining whether Smith arrived at his opinions by a reliable, scientific methodology similar to that utilized by persons outside the context of litigation. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Under this analysis, expert testimony is unreliable if it is not grounded "in the methods and procedures of science" and is no more than "subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590. An expert's bald assertions of validity are not enough. *See id.*; *Viterbo*, 826 F.2d at 421. There must be objective, independent validation of the expert's methodology. *See id.* In making this threshold reliability determination, the trial court may consider:

1) whether the theory has been reliably tested;
2) whether the theory has been generally accepted within the pertinent technical community;
3) whether the theory has been subjected to peer review; and
4) the known potential rate of error

*Daubert,* 509 U.S. at 593-94. The burden is on the proponent of the expert testimony to demonstrate the expert witness has adhered to the standards set forth in *Daubert*. *See Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

**B.     Smith's Opinions Regarding Damages Related to the Deaths of the Greene Children are Irrelevant and Should Be Excluded.**

Smith prepared two sub-reports regarding damages related to the deaths of Wesleigh Greene and Wyndell Greene, II (the "Greene Children"). These opinions are irrelevant and should be excluded. Under Rule 702, an expert's testimony must assist the trier of fact in determining a fact in issue. Fed. R. Evid. 702. The Toyota Defendants have already obtained summary judgment relief from this Court that no plaintiff has standing to bring wrongful death claims for the Greene Children. Doc. No. 130 at 5. Plaintiffs have nevertheless disclosed an expert report drafted by Smith for damages stemming from the death of the Greene Children. Smith's opinions of the damages related to the deaths of the Greene Children would not assist the jury in determining any fact issue in this case, and should be excluded. Fed. R. Evid. 702.

**C.     Smith's Testimony Regarding Lost Wages and Benefits is Irrelevant and Should Be Excluded.**

Smith's opinions regarding lost wages and benefits are irrelevant and should be excluded. In a wrongful death action, the loss calculated upon a projection of earnings must bear some ascertainable relation to the pecuniary benefits that the Plaintiffs might reasonably have expected to receive had the wrongful death not occurred. *Dover Corp. v. Perez*, 587 S.W.2d 761, 770 (Tex. Civ. App.-Corpus Christi 1979, writ ref'd n.r.e.); *Best Steel Buildings, Inc. v. Hardin*, 553 S.W.2d 122 (Tex. Civ, App.-Tyler 1977, writ ref'd n.r.e.); *Halliburton Co. v. Olivas*, 517 S.W.2d 349 (Tex. Civ. App.-El Paso 1974, no writ). Plaintiffs in this case did not receive any significant monetary support from the Greene Family. Therefore, they could not reasonably expected to receive any of the lost income projected by Smith.

**D.     Smith's Testimony Regarding Lost Household/Family Services Should be Excluded.**

Smith's testimony regarding lost household/family services is unreliable and should be excluded. Smith has calculated three broad categories of lost household/family services: (1) loss

of housekeeping and household management services (for Hardeman only); (2) loss of family advice, counsel, guidance, instruction and training (for Ollie and Hardeman); and (3) loss of family accompaniment services (for Ollie and Hardeman). Smith's testimony is unreliable with respect to all three categories, is not helpful to the jury, and seeks double recovery of certain losses.

1. The methodology for Smith's calculations is unreliable.

Smith applied the same general methodology when calculating the three components he used for lost household family services. Smith arrived at an average hourly wage representing the value of the services. He then multiplied that number by a benchmark number of hours lost per week. Finally he applied a growth and discount rate. Exhibit B, at 28-29; App. 285-86. With respect to familial advice and accompaniment, Smith makes the misplaced assumption that such advice and companionship is fungible.

Smith has not reliably arrived at comparable per hour wage rates. For example, as to loss of advice, Smith used an average hourly rate for a group of occupations selected by Smith that purportedly provide advice, counsel, guidance, training, and instruction. He then takes this approximately $24 per hour average as the hourly value of advice a child gives a parent, and uses a benchmark number of hours to determine the loss to Plaintiffs Ollie Greene and Hardeman for loss of advice from their children, Wyndell Greene, Sr. and LaKeysha Greene. *Id.* Smith's testimony is unreliable and is not helpful to the jury. Smith relies upon a single article, a textbook, an article written by himself, and his opinion as to what are appropriate professions for advice. *Id.* at 29-32; App. 286-89. Smith has no training in fields other than economics that informed his decision to select these professions, and the few other publications he cites were also prepared by economists. *Id.* at 28-33; App. 285-90. Neither Smith nor the authors of these

other materials are experts on any of the professions selected for inclusion in the average. There is no evidence that the inclusion of these professions is generally accepted in the economic community. Smith is simply opining on matters outside the realm of his expertise. The same is true of the wage rates used for loss of accompaniment and loss of housekeeping. Because the foundational assumptions of his calculations of these damages are not based on reliable science, and are not within Smith's personal, scientific knowledge, the testimony should be excluded.

      2.    <u>Smith cannot reliably testify that Hardeman has lost any housekeeping services.</u>

With respect to the housekeeping services he estimates Hardeman lost as a result of Lakeysha Greene's death, Smith has not reliably determined the extent of any housekeeping services actually lost. Smith relies upon Hardeman's statement that her daughter provided "specifically to her three hours a week of housekeeping." Exhibit B, at 85:10-12; App. 298. Smith did not seek any further clarification of what services Lakeysha provided, which would allow him to confirm the housekeeping Hardeman referred to was for her exclusive benefit and not for all those at the Greene Family residence. Smith testified, "I don't really need to know what, whether it was making her, you know, chicken soup if she was sick or helping her in certain ways." *Id.* at 85:20-23; App. 298. Rather than confirm the accuracy of Plaintiff's self-serving, conclusory statement, Smith blindly relied on it. That is not a scientific or reliable method of data collection.

Further, Smith does not know how many hours of housekeeping Hardeman performed before or after the accident. *Id.* at 140:3-13; App. 299. He claims it was "not relevant" to his analysis. *Id.* at 140:11; App. 299. The fact that Hardeman may have performed more than three hours a week in housekeeping for the Greene Family, while only receiving three from Lakeysha was not considered by Smith, but that analysis is essential to determining whether Hardeman has actually suffered a loss. If Hardeman is spending less time per week performing housekeeping

now than she did while living with the Greene Family, then she cannot be said to have lost the value of any housekeeping services.

      3.    <u>Smith's testimony is unreliable because it presupposes that the advice and accompaniment of a child is fungible.</u>

Smith's analysis is predicated on the unsupported assumption that the advice and accompaniment of a child to a parent is equivalent to advice and accompaniment provided by non-family members. Smith relies only upon his own bare assertion that the two are equivalent. In doing so, Smith condescendingly dismisses the uniqueness of parent child relationships. In Smith's own words, "I'm saying that what she got from her son, not love, care, and affection, but the advice she got from her son could be given by other people. It was nothing particularly unique except that he knew her. But when you give your clients advice, you know them. It's no different." *Id.* at 36:20—37:1; App. 292-93. Ironically, the very unique nature of the parent-child relationship is the reason Texas recognizes losses of other family members stemming from the death of a loved one. If the advice and accompaniment Ollie and Hardeman lost is simply that of any common day professional or friend, then it should not be recoverable. The loss would be no different from a friend of the Greene Family who occasionally enjoyed the friendly advice or accompaniment of Wyndell or Lakeysha Greene. With respect to the loss of familial accompaniment, Smith offered one additional support for his opinion:

> Q: Okay. You said that this is valuing the tangible economic loss of the household beyond physical housekeeping chores is well recognized in the economic literature, and you cite the same two references there?
>
> A: Sure. I have another one to cite. Your expert wrote a book on prostitution.
>
> Q: Okay
>
> A: --and the value that people pay for the company of a prostitute. So there's another reference, that we pay people to

> spend time with total strangers. We pay them to spend time
> because we value time spent with other people.

*Id.* at 45:9-21; App. 294. The jury, composed of laypersons who presumably value advice from and time with their loved ones, is better equipped to place a value on loss of familial advice and accompaniment than one who denies the unique nature of that advice and compares the time a son spends with his mother to the time a John spends with a prostitute.

    4.    <u>Loss of accompaniment is duplicative of loss of society and relationship.</u>

Loss of accompaniment is a subset of loss of society and relationship, which includes love, care, and affection damages. While Smith believes parent-child advice is not unique beyond them knowing each other, he tacitly admits that the love, care, and affection between parent and child is different. *Id.* at 36:20—37:1; App. 292-93. Undoubtedly one of the primary manifestations of the love, care, and affection between parents and children is the time they spend with each other. Stated another way, a component of the relationship between parent and child is the time they spend together. If the jury were to award damages for loss of love, care and affection, and loss of accompaniment, then Plaintiffs would be recovering twice for the same injury—the time Ollie and Hardeman would have spent with their children while loving and caring for one another. Smith's loss of accompaniment testimony should be excluded because it is misleading to the jury as it suggests Plaintiffs should recover for the same injury twice. Misleading testimony is not helpful, and should be excluded.

    5.    <u>Smith's opinions are not helpful because they are "benchmarks."</u>

Smith has not provided any affirmative opinion as to the amount of any of the losses, so his testimony is not helpful to the jury. Smith made what he calls "benchmark" calculations for the various categories of lost household/family services he included in his reports. Smith clarified at his deposition that when he uses the phrase "benchmark" he means "an assumption

that is easily alterable." *Id.* at 34:7-10; App. 291.  While a jury may be able to perform some calculation different than Smith's benchmark, this does not save Smith's speculative testimony from complying with Rule 702 and *Daubert*.  If it were so simple as that, then any damage witness could simply couch their opinions as "benchmarks" and avoid compliance with the strictures of Rule 702 and *Daubert*.  More specifically, Smith has acknowledged that all of his calculations for lost household/family services are assumptions, and not affirmative opinions of value.  As a jury can craft its own assumptions, benchmark calculations are not helpful to them.

E.     **Smith's Loss of the Value of Life Testimony Should be Excluded.**

Smith's loss of the value of life (i.e. hedonic damages) testimony should be excluded.  Smith's testimony is not necessary and does not assist the jury in understanding or determining an issue in this case.  As two courts in this Circuit have already noted "[w]hile the figures offered by Smith's tables are one person's way of attaching a quantitative figure to a qualitative value, the jury, composed of laypersons who presumably value their own life and loved ones, is equally equipped to place a quantitative value on… companionship, affection and society should the case call for such a determination." *Buckhalter v. Burlington N. R.R., Co.*, 1992 WL 236676 (N.D. Miss. Mar. 23, 1992); *quoted by Davis v. Rocor Int'l*, 226 F. Supp. 2d 839, 842 (S.D. Miss. 2002).  Since the jury is equally capable of determining what quantitative value to place on a qualitative loss, Smith's testimony does not assist the jury in any way, and is unnecessary.

Furthermore, Smith's methodology in determining loss of value of life is unreliable.  Smith utilizes an average life expectancy and the average statistical value of a life in arriving at his hedonic damage calculations.  Exhibit B, at 52-53; App. 295-96.  Smith does not, however, analyze whether any of the Greene Family members were statistically average.  Moreover, Smith indicates in his report that the attempts to determine the average value of a statistical life have

yielded wildly varying results, and the results are therefore patently unreliable. Smith cites a 1990 study of 67 different estimates of the value of life. That study found that "in most instances" the value of life was calculated to be between $1.6 and $2.9 million. Exhibit 5 to Exhibit A at 9; App. 135. In other words "most" of the time economists have tried to calculate the value of a life they achieve results that vary by about 100% and some of the time the results are even more disparate. Smith's methodology is to simply "estimate the central tendency of the range," which he says is "approximately" $4.5 million year 2013 dollars. *Id.* at 10; App. 136. Not surprisingly, economists have not found a precise or accurate way to value a life. The results of the studies vary widely, as one would expect when trying to place a quantitative value on a qualitative loss. Smith's selection of an approximate central tendency does nothing to ensure that the number he has selected is in fact reliable. Smith's method of arriving at a base line figure for the value of a life is unreliable. Smith's loss of value of life testimony should be excluded.

**F.      Smith's Loss of Society or Relationship Testimony Should be Excluded.**

Smith has also offered opinions as to the value of the loss of society and relationship to Hardeman and Ollie. He arrived at these figures by calculating their value of life at the time of the accident and reducing it by a benchmark percentage for each lost relationship. For all of the reasons stated immediately above in section III. D., Smith's calculation is unreliable and not helpful to the jury. The calculations for loss of society or relationship with the Greene Children are irrelevant for the reasons already explained in section III. A. above.

Additionally, Smith again couches his opinions in terms of "benchmarks." For example, he opines as to a benchmark loss of 40 percent for Hardeman resulting from the death of her daughter. As other courts have previously held, Smith, as an economist, is not qualified to make

such determinations. *Davis*, 226 F. Supp. 2d at 843. Smith's opinion is therefore based on conjecture and speculation. Smith's selection of 40 percent is without support. Smith stated, "[w]ell I'm not offering that as an opinion, so I don't have to really support it, it's an example or an illustration." Exhibit B, at 78:2-4; App. 297. While Smith may think that by referring to his opinion of value as a benchmark, example or illustration alleviates the necessity that it be supported by reliable science, Rule 702, *Daubert*, and prior courts say otherwise. If Smith is not offering an opinion of what Plaintiffs' damages actually are, then his testimony is not helpful to the jury. If he is in fact trying to assist the jury by offering an opinion of the value of the damages, then it needs to be supported by reliable science. Either way, the testimony should be excluded.

## IV. PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. respectfully request that their Motion to Exclude the Testimony of Stan Smith be granted in its entirety; that Smith not be allowed to offer any testimony at the trial of this matter; and for such further relief, both at law or in equity, to which Toyota may show itself to be justly entitled.

Respectfully submitted,

*/s/ Kurt C. Kern*
**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR DEFENDANTS TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., AND TOYOTA MOTOR SALES, U.S.A., INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 17th day of March, 2014.

*/s/ Jude T. Hickland*