## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of  WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE,** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| **Plaintiffs,** | § | |
| **v.** | §<br>§ | **CAUSE NUMBER: 3:11-cv-0207-N** |
| **TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.,  TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| **Defendants.** | §<br>§ | |

## PLAINTIFFS' MOTION TO EXCLUDE THE REPORT
## AND TESTIMONY OF CATHERINE CORRIGAN AND BRIEF IN SUPPORT

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax

**ATTORNEYS FOR PLAINTIFFS**

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
469-718-0380 - fax

TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES.................................................................................................. iv

I.      SUMMARY OF ARGUMENT .................................................................................. 1

II.     ARGUMENT  AND AUTHORITIES ........................................................................ 1

        A.      Governing Principles Applicable to Defendant's Proffer of This Testimony. ........... 1

        B.      The Nature of The Alleged Expert Testimony Sought to Be Introduced.................. 3

        C.      Additional Grounds Upon Which to Exclude Defendant's Expert........................... 3

                1.      Corrigan's testimony is not grounded on sufficient facts or data and
                        is not the product of reliable principles and methods. ................................ 4

                2.      Corrigan is not qualified and/or did not apply a proper methodology
                        to provide expert opinions. ........................................................................ 5

                        a.      Using dissimilar and irrelevant studies or "crash tests" is not
                                considered an acceptable methodology. ......................................... 9

                        b.      Corrigan should be precluded from expressing any opinions
                                on design issues as she did not follow an acceptable methodology
                                to express opinions on design issues and was not retained as a
                                design expert. ............................................................................... 11

                        c.      Corrigan should be prohibited from expressing an opinion on
                                the cause and mechanism of Mrs. Greene's death. ...................... 12

                        d.      Corrigan did not follow a recognized methodology of analyzing
                                occupant kinematics and should be excluded. ............................. 13

                        e.      Corrigan should be precluded from expressing any opinions
                                on displacement of the B-pillar and deformation of seat belt
                                anchor since she did not follow an acceptable methodology to
                                express opinions on design issues and was not retained as a
                                design expert. ............................................................................... 14

                3.      Corrigan's blind reliance on Lee Carr's litigation-induced expert
                        report requires exclusion of her report....................................................... 14

                4.      Corrigan did not follow an acceptable methodology analyzing pain
                        and suffering, is not an expert on the subject, and should be precluded
                        from expressing an opinion on whether the Greene Family suffered
                        pain and suffering. .................................................................................... 16

                5.      Corrigan should not be permitted to discuss or give opinions on the
                        reports and testimony of Defendants' other experts. ................................. 17

6. Corrigan should not be permitted to discuss or give any opinions that are not contained in the Corrigan Report. .......................................... 18

7. Corrigan should not be permitted to discuss or give opinions on a "crash test" that was allegedly conducted by Exponent. ......................... 18

8. Corrigan's testimony is also inadmissible under FED.R.EVID. 403. ......... 20

III. CONCLUSION ................................................................................................ 21

CERTIFICATE OF CONFERENCE .......................................................................... 23

CERTIFICATE OF SERVICE ................................................................................ 24

# TABLE OF AUTHORITIES

## Cases

*Ahrens v. Ford Motor Co*., 340 F.3d 1142 (10th Cir.2003)............................................................ 10

*Allison v. McGhan Medical Corp*., 184 F.3d 1300 (11th Cir.1999) ................................................. 6

*Am. Key Corp. v. Cole Nat'l Corp*., 762 F.2d 1569 (11th Cir.1985) ............................................ 15

*Amorgianos v. Nat'l R.R. Passenger Corp*., 303 F.3d 256 (2d Cir.2002) ........................................ 2

*Barker v. Deere & Co*., 60 F.3d 158, 161 (3d Cir.1995) .............................................................. 10

*Barnes v. General Motors Corp*., 547 F.2d 275 (5th Cir.1977) ................................................... 19

*Buck v. Ford Motor Co*., 810 F.Supp.2d 815 (N.D.Ohio 2011) ................................................... 10

*Cholakyan v. Mercedes–Benz USA, LLC*, 281 F.R.D. 534 (C.D.Cal.2012) ................................... 15

*Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir.1994) .............................................................. 2

*Clark v. Takata Corp*., 192 F.3d 750 (7th Cir.1999) .................................................................... 8

*Concord Boat Corp. v. Brunswick Corp*., 207 F.3d 1039 (8th Cir.2000)........................................ 8

*Cummins v. Lyle Indus*., 93 F.3d 362 (7th Cir.1996). .................................................................. 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993).................................. passim

*E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005).......................................... 21

*Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623 (Tex. 2002) ............................................................ 5

*First United Fin. Corp. v. U.S. Fid. & Guar. Co*., 96 F.3d 135 (5th Cir.1996) ............................. 6

*Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279 (Tex.1964).................................... 19

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997) .................................................................... 8

*Greenwell v. Boatwright*, 184 F.3d 492 (6th Cir.1999) ........................................................... 9, 21

*Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825 (9th Cir. 2001)............................................ 9

*Hafstienn v. BMW of N. Am., LLC*, 194 Fed.Appx. 209 (5th Cir.2006) ...................................... 19

*In re Air Crash at Little Rock Ark*., 291 F.3d 503 (8th Cir.2002).................................................. 8

*In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717 (3d Cir.1994) .................................................. 2, 4

*In re TMI Litig*., 193 F.3d 613 (3d Cir.1999) ............................................................................ 15

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 2013 WL 5763178 (C.D.Cal. 2013) ............................................................ 15

*J.B. Hunt Transp., Inc. v. General Motors Corp*., 243 F.3d 441 (8th Cir.2001) ............................ 8

*Jaramillo v. Ford Motor Co*., 116 Fed. Appx. 76 (9th Cir. 2004).............................................. 10

*Kloepfer v. Honda Motor Co.*, 898 F. 2d 1452 (10th Cir. 1990) ................................................. 10

*Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137 (1999).......................................................... 3, 6

*Lightfoot v. Hartford Fire Ins. Co.,* No. 07–4833, 2011 WL 39010 (E.D.La. Jan. 4, 2011)........ 15

*McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797 (6th Cir.2000)...................................................... 21

*Morales v. American Honda Motor Co.*, 151 F.3d 500 (6th Cir.1998) ........................................ 10

*Muth v. Ford Motor Co.*, 461 F.3d 557 (5th Cir.2006)................................................................. 19

*N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90 (Tex.App.—Dallas 1995, writ denied)  21

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239 (5th Cir.2002). ............................................................ 5

*Pomella v. Regency Coach Lines, Ltd.*, 899 F.Supp. 335 (E.D.Mich.1995)................................ 21

*Salamone v. Wal–Mart Stores East, LP*, 2011 WL 2787788 (E.D.Pa. July 15, 2011) .................. 4

*Santos v. Chlysler Corp.*, 715 N.E.2d 47 (Mass. 1999) ............................................................... 10

*Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940 (7th Cir.1997 .................................................. 2

*Smelser v. Norfolk Southern Railway*, 105 F.3d 299 (6th Cir.1997). ............................................. 2

*Smith v. Rasmussen*, 249 F.3d 755 (8th Cir.2001) ......................................................................... 8

*United States v. Bonds*, 12 F.3d 540 (6th Cir.1993)....................................................................... 3

*United States v. Bourgeois*, 950 F.2d 980 (5th Cir.1992) .............................................................. 5

*United States v. Johnson*, 575 F.2d 1347 (5th Cir.1978) ............................................................... 5

*United States v. Posado*, 57 F.3d 428 (5th Cir.1995) ............................................................... 9, 17

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987) ....................................................... 8, 17

*Weisgram v. Marley Company*, 169 F.3d 514 (8th Cir.1999) .................................................... 6, 8

## Rules

FED.R.EVID. 403 ................................................................................................................ passim

FED.R.EVID. 702 .............................................................................................................. 1, 2, 3, 4

**PLAINTIFF'S MOTION TO STRIKE AND/OR EXCLUDE
DEFENDANT'S DESIGNATED EXPERT AND ACCOMPANYING TESTIMONY**

Ollie Greene, Individually and as parent of Wyndell Greene, Sr., William Greene, as Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and the parent of LaKeysha Greene (collectively "Plaintiffs") file this motion to strike and/or exclude the testimony of Catherine Corrigan ("Corrigan"), and in support thereof shows the Court as follows:

## I.   SUMMARY OF ARGUMENT

Corrigan's testimony does not meet the requirements of FED.R.EVID. 702 and *Daubert* because (1) she is not qualified to give expert opinions on certain matters for which she is being offered; (2) it is not based upon scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) it is not based on sufficient facts or data and is not the product of reliable principles and methods she has applied reliably to the facts of the case.  Plaintiffs further contend that the proposed testimony should be excluded pursuant to FED.R.EVID. 403 because consideration of the testimony disguised as expert testimony will result in confusion of the issues and misleading the jury.

## II.   ARGUMENT  AND AUTHORITIES

### A.   Governing Principles Applicable to Defendant's Proffer of This Testimony.

*Daubert* and Federal Rule of Evidence 702 require that trial courts perform a "gate-keeping role" when considering the admissibility of expert testimony.  *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 597 (1993).  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and

> (3) the witness has applied the principles and methods reliably to the facts of the
> case.

FED.R.EVID. 702.     The court's gate-keeping role is two-fold.  First, the court must determine whether the testimony is reliable. See *Daubert*, 509 U .S. at 590. The reliability analysis focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.*  A district court assessing the admissibility of expert testimony under FED.R.EVID. 702 serves a "gatekeeping" function: "it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir.2002) (quoting *Daubert* 509 U.S. at 597.  The proponent of the testimony must establish, by a preponderance of the evidence, that the expert's testimony is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir.1994). In addition, a court may consider "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying" because the former "provides important, objective proof that the research comports with the dictates of good science." *Smelser v. Norfolk Southern Railway*, 105 F.3d 299, 303 (6th Cir.1997).  Another factor that may be considered by the court is "[w]hether the expert has adequately accounted for obvious alternative explanations." FED.R.EVID. 702 advisory committee's note (citing *Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir.1994)). Finally, the court may consider "[w]hether the expert 'is being as careful as he would be in her regular professional work outside her paid litigation consulting.'" FED.R.EVID. 702 advisory committee's note (quoting *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir.1997)). The Supreme Court has emphasized that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial court may consider one or more of the *Daubert* factors when doing

so will help determine that expert's reliability.  *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999).

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant.  See *Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. See *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir.1993).  Thus, an expert's testimony is admissible under Rule 702 only if it is predicated upon a reliable foundation and is relevant.  The testimony sought to be excluded through this motion violates each of the principles discussed above.

**B.     The Nature of The Alleged Expert Testimony Sought to Be Introduced.**

On or about December 20, 2013, Defendants served Plaintiffs with a copy of Corrigan's expert report (the "Corrigan Report").  See APP 001-024.  During Corrigan's deposition, which was taken on February 6, 2014, when asked to provide an understanding of her role as a potential expert in this case, Corrigan explained:

> **Q:**   What's your purpose and your function in this case?
>
> **A:**   My purpose and function is essentially to look at the physical evidence surrounding the crash and to apply the principles of biomechanics to try to understand occupant kinematics as well as injury mechanisms**.**

Corrigan Depo at 14:4-10 (APP 030).  To begin with, the limit of Corrigan's expert testimony should be as she describes it above.  However, for the reasons explained herein, Plaintiffs ask that the Court exclude Corrigan's opinions and testimony.

**C.     Additional Grounds Upon Which to Exclude Defendant's Expert.**

As explained herein, Corrigan's report uses as her initial source the uncorroborated expert report of Lee Carr, who had to create his own accident in order to provide assistance to Toyota.  However, both Carr's and Corrigan's opinions are completely inconsistent with the reconstruction

of the troopers who were on the scene of the accident inspecting skid marks, yaw marks, crook marks, gouges and metal scars, fluid collection areas, directional spills of cargo, burn marks, locations of vehicle components, etc.  The prejudice that will be created by allowing Corrigan to advance her and Carr's unsupported theories to a jury calls for exclusion of Corrigan's testimony and report.

> **1.    Corrigan's testimony is not grounded on sufficient facts or data and is not the product of reliable principles and methods.**

An expert's testimony must "fit" the facts of the case.  *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 742–43 (3d Cir.1994).  To assess reliability of expert testimony, courts consider whether the expert opinion is based on methods and procedures of science rather than the expert's subjective belief or unsupported speculation. *In re Paoli*, 35 F.3d at 742. Factors guiding this analysis include: (1) whether the method features a testable hypothesis; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the technique is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the expert's qualifications to testify based on the methodology; and (8) the method's history of non-judicial uses. Id. at 742 n. 7; *see also Salamone v. Wal–Mart Stores East, LP*, 2011 WL 2787788, at *1 (E.D.Pa. July 15, 2011).  Corrigan's testimony fails each of these elements.  Expert opinions are admissible only if they are the product of reliable principles and methods. FED R.EVID. 702 advisory committee's note; *Daubert*, 509 U.S. at 591-95.  The Texas Supreme Court has also held "expert testimony is unreliable if it is not grounded 'in the methods and procedures of science' and is no more than 'subjective belief or unsupported speculation.'" *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002) (quoting *Robinson*, 923 S.W.2d at 556 (quoting *Daubert*, 509 U.S. at 590)).

As demonstrated in Corrigan's Report and deposition she did not use the complete methodology for occupant kinematics that other experts generally use. The record is also clear that even if Corrigan does possess the requisite FRE 702 expertise in some areas, she is not an expert in all areas in which she purports to provide testimony. Corrigan also did not practice an acceptable or reliable methodology in arriving at her opinions. Much of Corrigan's testimony is subjective, ignores undisputed facts, is not relevant or reliable, was prepared strictly for this litigation and is tailored solely to benefit defendants in this litigation.

> **2.      Corrigan is not qualified and/or did not apply a proper methodology to provide expert opinions.**

Before certifying an expert and admitting her or her testimony, a district court must ensure that the requirements of Federal Rule of Evidence 702 have been met. See *Daubert* 509 U.S. at 592–93. The Fifth Circuit holds that "[t]o qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir.1992) (second alteration in original) (quoting *United States v. Johnson*, 575 F.2d 1347, 1361 (5th Cir.1978)). As a rule, expert testimony must be based on the expert's specialized knowledge, training, experience, and first-hand observation while supported by solid evidence in the scientific community." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir.2002).

Ultimately, the trial court's duty is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire* 526 U.S. 137. Furthermore, although a witness may be qualified as an expert in one area of expertise, the expert may be precluded from offering opinions beyond that area of expertise or

which are not founded on a reliable methodology. See, e.g., *Kumho Tire*, 526 U.S. at 154-55; *Allison v. McGhan Medical Corp*., 184 F.3d 1300, 1317-19 (11th Cir.1999); *Weisgram v. Marley Company*, 169 F.3d 514, 518 (8th Cir.1999); *Cummins v. Lyle Indus*., 93 F.3d 362, 371 (7th Cir.1996).. Nor, may an expert go beyond the scope of his expertise in giving his opinion. *First United Fin. Corp. v. U.S. Fid. & Guar. Co*., 96 F.3d 135, 136 (5th Cir.1996).

As explained herein, it is clear that Corrigan is not qualified to give certain opinions she seeks to provide. Corrigan acknowledges that he has no clinical training cannot contradict an autopsy or medical opinion. Corrigan Depo at 11:7-17 (APP 029). Therefore, Corrigan cannot comment on or rebut any of these opinions that have been provided by the respective medical examiners or Plaintiffs' experts Dr. Joseph Burton and Dr. Darrell Henderson. In addition, Corrigan cannot deny that she did not use methodologies that other experts use, which presents the question as to the acceptability of her methodology. In other words, during her assignment, Corrigan refused to apply a peer-reviewed methodology, thus rendering her opinions speculative and unreliable. Plaintiffs would also ask that the Court not consider it an option that Corrigan could present these outlying opinions at trial and be subjected only to cross examination on them. Corrigan's testimony should be excluded since she has not shown acceptable expertise and because her testimony is contrary to eye witness accounts, contrary to the investigating officers' conclusions, not based on sufficient data and is not reliable. In the reconstruction attempt, Corrigan and her colleague, Lee Carr, form conclusions that are contrary to the actual crash evidence. This demonstrates that she is either not qualified to form expert opinions as an expert or has chosen to ignore the actual evidence. In addition, despite universal recognition of the importance of gathering contemporaneous evidence and considering it as an expert, in providing the Carr-Corrigan version of the accident Corrigan and her colleague, Carr, ignore testimony

from several witnesses who testified as to the speeds at which they, and others, were driving.  No driver was found to have been, or admitted to, driving in excess of the speed limit.  However, to support their joint theory the Carr-Corrigan version of the accident had to conclude that several drivers were exceeding the speed limit.  The Carr-Corrigan version of the accident also ignores evidence from the detailed investigation of 4-5 Highway Patrol Troopers, none of whom agree with Carr-Corrigan's assessment of the identical sequence of, and impacts involved in, the May 28, 2010, accident.  In fact, the investigating officers spent multiple hours at the scene of the accident inspecting skid marks, yaw marks, crook marks, gouges and metal scars, fluid collection areas, directional spills of cargo, burn marks, locations of vehicle components, etc.  Corrigan's testimony reveals, however, that the Carr-Corrigan version of the accident had to disagree with every significant conclusion reached by the highway troopers who investigated the accident.  Corrigan also ignored the multiple eye-witness accounts of the accident, none of which agrees with her account of it.  The Carr-Corrigan version of the accident also ignores that not a single eyewitness concurs with the theory that the Toyota 4Runner was sandwiched in between the Volvo tractor and the Strick Trailer as Corrigan has concluded  Although Corrigan's Report cites to multiple statements from various eyewitnesses and investigating officers, a closer review of her Report and her deposition testimony shows that on the rare occasion where she and Carr rely on an actual fact from the accident, the two of them "cherry pick" facts to argue that they lend support to the Carr-Corrigan version of the accident, and "discard" all the other testimony that did not support her version.

Defendants may argue that Carr's and Corrigan's decision to ignore the trooper's conclusions and eyewitness testimony goes to Corrigan's credibility, not methodology.  However, the Carr-Corrigan version of the accident's complete disavowal of factual testimony

does not present an instance where an expert's opinions should simply be subjected to cross examination.  Thus, Corrigan's opinions and the Carr-Corrigan version of the accident must be excluded since there is nothing to indicate that she either is qualified to give, or has adequate scientific basis for, the reconstruction opinions.  *See Smith v. Rasmussen*, 249 F.3d 755, 758-59 (8th Cir.2001). As the Supreme Court held in *General Electric Co. v. Joiner*, 522 U.S. 136 (1997):

> [N]othing either in Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*Joiner*, 522 U.S. at 146. *See J.B. Hunt Transp., Inc. v. General Motors Corp*., 243 F.3d 441, 444 (8th Cir.2001) ("Expert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis.") (citing *Concord Boat Corp. v. Brunswick Corp*., 207 F.3d 1039, 1057 (8th Cir.2000); *In re Air Crash at Little Rock Ark*., 291 F.3d 503, 514 (8th Cir.2002) (there must be adequate nexus between scientific theory and subject of opinion); *Clark v. Takata Corp*., 192 F.3d 750, 756-57 (7th Cir.1999); *Weisgram v. Marley Co*., 169 F.3d 514, 521 (8th Cir.1999) (expert testimony not reliable where there is lack of nexus between theory and conclusion).

Since Corrigan's testimony is not based on expertise or methodology as an accident reconstructionist, the testimony should be excluded.  In addition, since Corrigan and the Carr-Corrigan version of the accident ignored key facts from eye witnesses and police investigators and substituted her own facts, her opinions are conclusory and inadmissible.  *See Viterbo v. Dow Chem. Co*., 826 F.2d 420, 421-22 (5th Cir. 1987) ("it is not so simply because 'an expert says it is so ...; if an expert brings to the court 'little more than his credentials and a subjective opinion,' his opinion amounts to no evidence").  Although Rule 702 does not require absolute certainty, it

does mandate that the proffered knowledge be based on "good grounds" and that the testimony is "more than speculative belief or unsupported speculation." *United States v. Posado*, 57 F.3d 428, 433 (5th Cir.1995)(citing *Daubert*, 509 U.S. at 589-90). Finally, an expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts. *See Guidroz-Brault v. Mo. Pac. R.R. Co.,* 254 F.3d 825, 829-31 (9th Cir. 2001); *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir.1999) ("Expert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence.").  Based on the accurate facts in the record showing the true sequence of the accident, the Court should preclude the opinions that Corrigan seeks to provide.   Moreover, because Corrigan ignores substantial undisputed facts and refused to properly investigate the facts she should be precluded from providing any opinions that ignore the facts, fall outside his areas of expertise and/or for which she did not employ an acceptable methodology.  Thus, she should be struck as an expert.

> **a.** **Using dissimilar and irrelevant studies or "crash tests" is not considered an acceptable methodology.**

In the Corrigan Report beginning at page 21, Corrigan refers to alleged statistics from the National Automotive Sampling System ("NASS") Collision Data System ("CDS") in an effort to provide support for an opinion comparing Carr's calculation of delta-V to other unidentified rear end collision.  However, the problem again is that this study does not detail statistics for SUVs with a design remotely similar to the 2010 4Runner's design and includes thousands of clearly dissimilar vehicles.   Corrigan's selection of vehicles or crashes from this database is inappropriate and does not follow a methodology that requires some similarity between the subject vehicle and those in the statistical sampling.  *Jaramillo v. Ford Motor Co*., 116 Fed. Appx. 76 (9th Cir. 2004)(court abused its discretion in admitting Ford's comparative accident

statistics that were not limited to accidents that occurred under circumstances similar to plaintiff's accident, i.e., rollover on smooth, dry pavement).  Testing that simulates other sorts of accidents is of limited probative value. See *Ahrens v. Ford Motor Co*., 340 F.3d 1142, 1145–46 (10th Cir.2003); *Buck v. Ford Motor Co*., 810 F.Supp.2d 815 (N.D.Ohio 2011); *Santos v. Chlysler Corp*., 715 N.E.2d 47 (Mass. 1999)(the court excluded a defense expert's statistical analysis of the FARS database because the analysis was not limited to accidents that involved braking, skidding, or rear wheel lockup, which were the critical circumstances of the Santos accident...); *see also Morales v. American Honda Motor Co*., 151 F.3d 500, 511-12 (6th Cir.1998) (in a small motorcycle case, accident statistics admissible when concerning "minibikes and small vehicles of the same sort"); *Barker v. Deere & Co*., 60 F.3d 158, 161, 163 fn. 5 (3d Cir.1995) (holding that statistical evidence of rollover was not substantially similar to the case at issue, which did not involve rollover);  *Kloepfer v. Honda Motor Co*., 898 F. 2d 1452 (10th Cir. 1990)(rejecting ATV manufacturer's attempt to introduce statistical evidence of injuries caused by ATVs manufactured by other manufacturers, when offered to show theirs was no worse than anyone else's).

Here, Corrigan has not identified a recognized methodology that would allow the use of these random selections of crashes to determine whether designers should have taken steps to build a safer SUV, a safer truck, or a safer trailer.  Indeed, Corrigan states nowhere in her report that she analyzed all of these tests and accident reports in an effort to remove dissimilar scenarios from these studies, nor does she discuss the methodology for arriving at these opinions. Corrigan's failure to eliminate dissimilar vehicles from the comparison is a fatal flaw that makes the entire exercise inherently suspect and misleading.  Removing dissimilar vehicles and dissimilar conditions would clearly lead to a much smaller sample with which to examine

whether this accident was unforeseeable, whether the injuries would have been different and whether there was evidence that defendants were alerted to their duties to design their vehicles and devices in a safer manner.    In other words, the studies referred to in Corrigan's report involve dissimilar accidents, dissimilar conditions, dissimilar causes, dissimilar defective components, and dissimilar vehicles.  In addition, Corrigan's data does not include any examples of passenger vehicles crashing into the rears of trailers, which is the principal item at issue in Corrigan's analysis of the cause and mechanism of injury to Mrs. Greene.  Use of the studies Corrigan uses is an improper methodology and causes unfair prejudice to Plaintiffs. Accordingly, the studies and tests and all opinions that rely on, and refer to them in any way, should be excluded.

> **b.      Corrigan should be precluded from expressing any opinions on design issues as she did not follow an acceptable methodology to express opinions on design issues and was not retained as a design expert.**

In the Corrigan Report, Corrigan makes the following statement in reference to her attempt to rebut the opinions of one of Plaintiffs' experts:

> Given the severity of the subject accident, vehicle kinematics, and occupant injury mechanisms, there are no data to support an allegation that the injuries sustained by the occupants in the Toyota 4Runner would have been prevented or reduced had the Toyota been equipped with an **alternative restraint system**.

APP 022.  This statement certainly implies that Corrigan has an expertise in the design of occupant protection systems.  However, at the outset of her deposition Corrigan testified as follows:

> **Q:**      You're not here to testify as a design expert on whether there was any defect in the designs of the Toyota 4Runner, are you?
>
> **A:**      You are correct.  I am not

Corrigan Depo at 15:9-12 (APP 031).  In fact, Corrigan admits that she is not an expert "with respect to restraint hardware or design."  See, Corrigan Depo at 146:20 – 149:21 (APP 051-054).

Indeed, Corrigan finally concedes that she has no idea whether Toyota could or should have designed a safer and more effective occupant restraint system:

> **Q:**   Well, then let me ask you this:  Do you have an opinion as to whether Toyota could have designed an alternative restraint system that could have assisted in saving Ms. Greene's life?
>
> MR. STONE:  Object to form.
>
> **A:**   I have no idea.
>
> **Q:**   Do you have an opinion whether the side curtain airbag would have helped Ms. Greene if the underride guard of the Strick trailer hadn't become dislodged?
>
> **A:**   I don't know.  Haven't addressed that.

Corrigan Depo at 154:25 – 155:11 (APP 055-056).  Accordingly, the Court should preclude any testimony from Corrigan on any design issues including, but not limited to crashworthiness or occupant protection, as well as design principles, methods, practices, performance, etc.

### c.   Corrigan should be prohibited from expressing an opinion on the cause and mechanism of Mrs. Greene's death.

One of the central issues in the case involves the cause and mechanism of Mrs. Greene's injuries and death.  However, when asked for an opinion regarding this issue, Corrigan stated that she is unable to provide an accurate expert opinion:

> **Q:**   Is it -- do you have an opinion, and this is going to be a multi-potential question, but do you have an opinion whether Mrs. Greene suffered head trauma and died within the 4Runner or whether she had head trauma and died while she was in the 4Runner underneath the Strick trailer or whether she suffered head trauma and eventually died after being ejected from the 4Runner?
>
> [multiple objections]
>
> **A:**   -- start with your third because I think that's the easiest.  Your third possibility was, you know, as a -- you know, she's ejected and as a result of, you know, sort of coming to rest after her ejection.  I don't think that she sustained all of these injuries as a result of sort of her final coming to rest generally on the hood of the car**.  Now, as to the first two, I don't think we can distinguish.**  In fact, it's very difficult to even describe exactly when she becomes, quote, unquote, ejected because it's a process. And frankly, it's not so much her being propelled out of the vehicle as it is

> the vehicle being deformed around her and brought away from her, **so I'm not able to tell you exactly** what her position is relative to all those vehicle structures at the moment that these injuries occur.  I think there's a process that goes on.

Corrigan Depo at 117:16 – 118:21 (APP 047-048).  Corrigan concedes that she did no testing to be able to determine exactly when and where Mrs. Greene's head trauma occurred.  Corrigan Depo at 129:8-11 (APP 049).  Indeed, when asked if she had an opinion on the mechanism of Mrs. Greene's death, Corrigan testified:

> **Q:**    Can you tell the jury within a reasonable degree of scientific certainty whether Mrs. Greene died while in the 4Runner or died after being ejected from it?
>
> **A:**    No, I can't

Corrigan Depo at 132:19-23 (APP 050).  Thus, Corrigan cannot provide any helpful opinions on when the head trauma happened or in rebuttal to other opinions on this subject.  Any conclusions would be irrelevant, not sufficiently reliable to be admissible as evidence, and should be excluded under FRE 702 and 403.

> **d.**    **Corrigan did not follow a recognized methodology of analyzing occupant kinematics and should be excluded.**

During her deposition, Corrigan acknowledges that she did not use any of the many available methods whereby experts can simulate occupant kinematics in a high-speed crash:

> **Q:**    Did you use any kind of computer programming?
>
> **A:**    Oh, in terms of like an occupant dynamics analysis or something like that?
>
> **Q:**    Yes.
>
> **A:**    No, no.  There was no simulation-type work done here.
>
> **Q:**    Have you ever used a program called ATB?
>
> **A:**    I have looked at ATB from the standpoint of analyzing the simulations of others.  It is not a tool that I have used affirmatively in looking at occupant dynamics simulations.
>
> **Q:**    Have you ever used something called MVMA-2D?

**A:** That is a reconstruction -- oh, no.  MVMA -- I have not used that or if I have, it's been many, many years.

**Q:** How about CVS3D, have you ever used that?

**A:** CVS3D, no, that's not familiar to me either.

**Q:** So am I correct that you didn't use any type of program by which you input certain things such as the height and weight of an occupant, the stiffness of different components in the car, headrest location, items such as that to get an analysis?

**A:** No -- no simulation like that was done by me, certainly.

**Q:** So you didn't do any kind of computer input?

**A:** There was no quantitative dynamic simulation done with either MADYMO or ATB or any of the other programs that you listed.

Corrigan Depo at 36:24 – 38:2 (APP 038-040).  Since Corrigan did not utilize methods used by most other experts, her opinions and conclusions should be stricken.

> **e.** **Corrigan should be precluded from expressing any opinions on displacement of the B-pillar and deformation of seat belt anchor since she did not follow an acceptable methodology to express opinions on design issues and was not retained as a design expert.**

During questions, Corrigan makes various statements regarding the timing and effect of the "displacement of the B-pillar and the deformation of the seat belt restraint occurred."  However, it is clear from Corrigan's testimony that she did not undertake any independent analysis to determine when or whether this displacement occurred.  Corrigan Depo at 108:14 – 111:10 (APP 043-046).  Instead, she relies solely on Lee Carr's opinions.  Id.  Accordingly, her opinions must be excluded.

> **3.** **Corrigan's blind reliance on Lee Carr's litigation-induced expert report requires exclusion of her report.**

In this case, when asked what she relied on to form her opinions in this matter, Corrigan concedes that she "simply relied on the detailed reconstruction that I had, which was that of Mr. Carr."  Corrigan Depo at 21:23 – 22:19 (APP 032-033).  This blind reliance on the Carr Report requires exclusion of Corrigan as a witness.  As many courts have recognized, expert testimony based solely or primarily on the opinions of other experts is inherently unreliable.  *Cholakyan v.*

14

*Mercedes–Benz USA, LLC*, 281 F.R.D. 534, 544 (C.D.Cal.2012); accord *Am. Key Corp. v. Cole Nat'l Corp*., 762 F.2d 1569, 1580 (11th Cir.1985) ("Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not."); *see also, In re TMI Litig*., 193 F.3d 613, 715–16 (3d Cir.1999) (finding that "expert's failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions, demonstrates that the methodology he used to formulate his opinion was flawed under Daubert as it was not calculated to produce reliable results"); *Lightfoot v. Hartford Fire Ins. Co.,* No. 07–4833, 2011 WL 39010, at *5 (E.D.La. Jan. 4, 2011) (finding opinion unreliable where expert failed to independently investigate the expert opinions upon which he relied).

Moreover, more scrutiny will be given to an expert's reliance on the information or analysis of another expert where the other expert opinions were developed for the purpose of litigation.  *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 2013 WL 5763178, (C.D.Cal. 2013).  In this case, it is clear that Corrigan took no steps to investigate Carr's opinions before she blindly used them in conducting her "analysis."  If Corrigan had performed an independent assessment of Carr's opinions she would have noted that Carr essentially created his own accident.  He ignored evidence from the detailed investigation of 4-5 Highway Patrol Troopers, none of whom agree with Carr's assessment of the identical sequence of, and impacts involved in, the May 28, 2010, accident.  In fact, as discussed above, the investigating officers spent multiple hours at the scene of the accident inspecting skid marks, yaw marks, crook marks, gouges and metal scars, fluid collection areas, directional spills of cargo, burn marks, locations of vehicle components, etc.  Carr's testimony reveals, however, that he had to disagree with every significant conclusion reached by the highway troopers who investigated the accident.  It is worth noting that Corrigan concedes

that she did not even look at the police reports in this matter.  Corrigan Depo at 30:25 – 32:9

(APP 034-036).  Corrigan's entire understanding of the crash sequence and nature and quantity

of crash impacts comes solely from Carr's analysis.  Corrigan Depo at 68:25 – 69:4 (APP 041-

042).

An independent investigation by Corrigan would have also alerted her that Carr also

ignored the multiple eye-witness accounts of the accident, none of which agrees with his account

of it.  He also ignored that not a single eyewitness concurs with his theory that the Toyota

4Runner was sandwiched in between the Volvo tractor and the Strick Trailer as Carr has

concluded  Although Carr's Report cites to multiple statements from various eyewitnesses and

investigating officers, a closer review of his Report and his deposition testimony shows that on

the rare occasion where he relies on an actual fact from the accident, he "cherry picks" facts to

argue that they lend support to his version of the accident, and "discards" all the other testimony

that did not support his version.  Corrigan should have noted that Carr did no crash testing,

virtual or otherwise, to test his novel theory.  He first visited the scene of the accident years after

the accident.  Nor did he speak with any eyewitnesses.  Nevertheless, Corrigan admits that her

conclusions are "based on Mr. Carr's conclusions."  Corrigan Depo at 33:21-23 (APP 037).

As a result of Corrigan's unquestioning reliance on the unreliable report of Lee Carr, this

Court should exclude Corrigan's report and testimony.

**4.      Corrigan did not follow an acceptable methodology analyzing pain and
suffering, is not an expert on the subject, and should be precluded from
expressing an opinion on whether the Greene Family suffered pain and
suffering.**

In the Corrigan Report, Corrigan makes a passing reference to Dr. Burton's opinion that

the Greene Family experienced conscious pain and suffering prior to their deaths.  However, it is

uncertain whether Corrigan is seeking to express an opinion on this topic at trial.  Nevertheless,

Corrigan acknowledges that she is not a physician, has never worked as a medical examiner and is not qualified to give or contradict a medical opinion.  Corrigan Depo at 11:7-17 (APP 029).  Therefore, if Corrigan were to give an opinion of an absence of pain and suffering it would not be based on any specialized expertise or recognized methodology.  Corrigan is not qualified to give opinions on conscious pain and suffering.  Her opinion would be simply conclusory and inadmissible.  *See Viterbo v. Dow Chem. Co*., 826 F.2d 420, 421-22 (5th Cir. 1987) ("it is not so simply because 'an expert says it is so ...; if an expert brings to the court 'little more than his credentials and a subjective opinion,' his opinion amounts to no evidence").  Although Rule 702 does not require absolute certainty, it does mandate that the proffered knowledge be based on "good grounds" and that the testimony is "more than speculative belief or unsupported speculation." *United States v. Posado*, 57 F.3d 428, 433 (5th Cir.1995)(citing *Daubert*, 509 U.S. at 589-90).

**5.**      **Corrigan should not be permitted to discuss or give opinions on the reports and testimony of Defendants' other experts.**

In the Corrigan Report, as well as during his deposition, Corrigan makes reference to the expert reports and out of court statements of Robert Lange, Lee Carr, as well as other experts designated by the Defendants.  As the Court may be aware, Plaintiffs have moved to exclude the expert reports and testimony of Lee Carr and Robert Lange since both experts ignore the true facts of the May 28, 2010 crash and invent their own crashes to suit their clients' best interest.  Thus, these reports should not be relied on by Corrigan for any purpose.  In addition, Corrigan has not (1) identified a recognizable methodology showing that this is the type of information that experts would reasonably rely upon in forming the opinions formed in the Corrigan Report and (2) identified and proven in the Corrigan Report that specific findings of defendants' other experts are critical to her opinions.   Nonetheless, even if she were able to satisfy these

prerequisites, Corrigan should be ordered to avoid repeating the findings and opinions of defendants' other experts, as well as commenting on the merits or quality of the other experts' work or opinions. The jury must evaluate Robert Lange's, Lee Carr's and the other experts' testimony without the benefit of bolstering from Corrigan.

      **6.**     **Corrigan should not be permitted to discuss or give any opinions that are not contained in the Corrigan Report.**

During her deposition, Corrigan occasionally provided unsolicited conclusions on matters outlying to the Corrigan Report or was asked questions by defendants' counsel that required opinions or conclusions that were not contained in the Corrigan Report. However, the record is clear that Corrigan's "expert" opinions are, and should be, contained in the Corrigan Report. Accordingly, Corrigan should be precluded from giving any opinions regarding the May 28, 2010, accident other than the opinions expressed in the Corrigan Report, and then only to the extent these opinions are not limited or excluded by an Order on this motion or during consideration of Plaintiffs' Motion *in limine*.

      **7.**     **Corrigan should not be permitted to discuss or give opinions on a "crash test" that was allegedly conducted by Exponent.**

During her deposition, Corrigan acknowledged that she viewed a December 17, 2013, crash test done by Exponent. (APP 057) The Toyota Defendants have indicated that they plan to introduce this video footage and the related testimony of Mickey Marine, who was hired by Toyota to conduct this test. The problem with this footage and related testimony is that the crash test does not even purport to be substantially similar to, or a replication of, the accident that happened on May 28, 2010, wherein multiple vehicles and multiple impacts of moving vehicles were involved. In other words, although the video is represented to be a "potential" re-enactment of a single event during the May 28, 2010, crash it is clearly not substantially similar

to the underlying accident.  Because of the material differences between the crash test and the underlying accident, the video and all testimony related to it must be excluded.  *See e.g.* *Hafstienn v. BMW of N. Am., LLC*, 194 Fed.Appx. 209, 213 (5th Cir.2006) (evidence of crash tests properly excluded where there are "material differences between the accident and the crash test."); *see also, Barnes v. General Motors Corp*., 547 F.2d 275 (5th Cir.1977); *Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279 (Tex.1964). Thus, Corrigan's reliance on the test and video, if any, must also be excluded.

In the event defendants contend that the crash test was not designed to constitute a re-enactment of the May 28, 2010, crash, the Fifth Circuit has already addressed this issue:

> When the demonstrative evidence is offered only as an illustration of general scientific principles, not as a reenactment of disputed events, it need not pass the substantial similarity test. Such demonstrative aids, however, must not be misleading in and of themselves, and one such way that a demonstration might mislead is when ... the demonstration resembles the disputed accident.

*Muth v. Ford Motor Co*., 461 F.3d 557, 566 (5th Cir.2006). In *Muth*, the district court rejected the proffered demonstration as insufficiently similar, but too closely resembling the disputed accident to effectively present abstract principles without misleading the jury. *Id.*  The Fifth Circuit upheld the district court's determination, noting that the similarities between the crash test and the accident at issue heightened the prejudicial effect of the evidence, and this prejudicial effect was sufficient to justify the exclusion of the evidence. *Id*. at 567.  This rationale is equally applicable here.  Toyota's experts have opined that the vehicles in the crash test were identical to the 4Runner and the Volvo tractor and trailer involved in the May 28, 2010, accident.  Toyota also notes that both the December 17, 2013, crash test and the May 28, 2010 accident involved circumstances (e.g. speeds and impact conditions) similar to those proffered by one or more of the experts in this case.  Therefore, this Court should conclude, as *Muth* did, that the similarities

between the crash test and the accident at issue heightens the prejudicial effect of the evidence, and that this prejudicial effect is sufficient to justify the exclusion of the evidence.

Furthermore, Plaintiffs note that Toyota's witnesses have also acknowledged that the narrator, whose voice is heard on the walk-up portion of the crash test videotape allegedly describing the result of the test, is Kurt Kern, Toyota's lead trial counsel.   Plaintiffs were not provided with the opportunity to have representatives, *i.e.,* a videographer, a photographer, an attorney, and an expert, present at this particular test, or during any crash test or any test involving vehicle-to vehicle collisions conducted by defendants that may pertain to this case. Therefore, the conditions under which this test was performed and the suspect nature of it are additional reasons the tape and accompanying testimony should be excluded.   Moreover, the Court should also exclude this evidence since the danger of unfair prejudice or confusion posed by this subjective evidence substantially outweighs its probative value. FED.R.EVID. 403.   Thus, this video footage, and the accompanying testimony is excludable since it clearly is not reliable or relevant evidence on which any expert should rely to form opinions. Thus, reliance Corrigan may have had, if any, on the crash tests should likewise be excluded and Corrigan should be prohibited from relying on it or referring to it or any of the results from it at trial.

### 8.     Corrigan's testimony is also inadmissible under FED.R.EVID. 403.

Corrigan's purported expert testimony should be excluded also because its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  FED.R.EVID. 403; *Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."); s*ee also, E.E.O.C. v.*

*U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005); *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex.App.—Dallas 1995, writ denied) ("courts should exclude . . . evidence [when] the expert's opinion would be more likely to prejudice or confuse than to assist the trier of fact.").   A review of the Corrigan Report shows that it completely discounts the police's evaluation of the accident and contains Carr's and Corrigan's subjective conclusions, which are not based on any relevant and "reliable" independent evaluations undertaken by Corrigan.   This clearly evinces that Corrigan's testimony is specially tailored to suit Toyota's and the other defendants' litigation strategy, without resort to the true facts.   *See McLean* 224 F.3d at 800-01 ("[A]n expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by good grounds, based on what is known.") (quoting *Pomella v. Regency Coach Lines, Ltd*., 899 F.Supp. 335, 342 (E.D.Mich.1995)).   An expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts. *See Guidroz-Brault,* 254 F.3d at 829-31; *Greenwell,* 184 F.3d at 497 ("Expert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence.").

Corrigan's subjective conclusions and pronouncements should not be labeled as "expert opinions," either because she does not hold the expertise she professes to possess, her opinions are neither relevant nor reliable, her opinions are not based on accepted engineering principles, her opinions are biased, and/or her testimony would serve only to confuse and mislead a jury that her conclusory statements are supposedly expert opinions.

### III.        CONCLUSION

Permitting Corrigan to testify without her having applied a proper methodology in her alleged analyses and without having considered all of the relevant evidence would cause severe

prejudice to Plaintiffs.  It is also clear that Corrigan is ether not qualified or simply chose not to utilize a methodology used by other experts in the field.  Plaintiffs therefore request that the Court strike the Corrigan Report and accompanying testimony, not consider the same as evidence for any purpose, and grant Plaintiffs such other and further relief, in law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted,

/s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

/s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned certifies that a face-to-face conference on this motion was held on March 7, 2014, with counsel for all defendants, during which time defendants' counsel indicated they were opposed to the relief being sought in this motion.  Accordingly, Plaintiffs present this matter to the Court for resolution.


　　　/s/ Aubrey "Nick" Pittman　　　　
AUBREY "NICK" PITTMAN

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2014 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

  /s/ Aubrey "Nick" Pittman_____
AUBREY "NICK" PITTMAN