## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of  WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE,** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| **Plaintiffs,** | § | |
| **v.** | §<br>§ | **CAUSE NUMBER: 3:11-cv-0207-N** |
| **TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.,  TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| **Defendants.** | §<br>§ | |

## PLAINTIFFS' MOTION TO EXCLUDE THE REPORT
## AND TESTIMONY OF LEE CARR AND BRIEF IN SUPPORT

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax

**ATTORNEYS FOR PLAINTIFFS**

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
469-718-0380 - fax

TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES .............................................................................................. iv

I.  SUMMARY OF ARGUMENT ..................................................................... 1

II.  ARGUMENT  AND AUTHORITIES .......................................................... 1

    A.  Governing Principles Applicable to Defendant's Proffer of This Testimony. .......... 1

    B.  The Nature of The Alleged Expert Testimony Sought to Be Introduced .................. 3

    C.  Additional Grounds Upon Which to Exclude Defendant's Expert ........................... 4

        1.  Carr's testimony is not grounded on sufficient facts or data and is not the product of reliable principles and methods. ................................... 4

        2.  Carr is not qualified and/or did not apply a proper methodology to provide expert opinions. .............................................................................. 6

        3.  Carr should be precluded from expressing any opinions on design issues as he did not follow an acceptable methodology to express opinions on design issues and was not retained as a design expert. ......... 10

        4.  Carr acknowledges that his Report does not contain expert opinions on, and he did not follow an acceptable methodology analyzing, the fuel system damage from all impacts and therefore he should be precluded from expressing opinions on the nature and timing of the compromise of the 4Runner's fuel system. ................................................ 12

        5.  Carr did not follow an acceptable methodology analyzing fuel releases and should be precluded from expressing an opinion on whether there was an observable fuel leak. .................................................................. 13

        6.  Carr should be precluded from expressing any opinions on whether any of the instrumentalities involved satisfied safety standards. .............. 15

        7.  Carr should not be permitted to express lay or expert opinions on any ultimate conclusion to be determined by the jury. .................................... 16

        8.  Carr should not be permitted to discuss or give any opinions that are not contained in the Carr Report. ....................................................... 17

        9.  Carr should not be permitted to discuss or give opinions on a "crash test" that was allegedly conducted by Exponent. ....................................... 17

        10.  Carr's testimony is also inadmissible under FED.R.EVID. 403. ................ 19

III.  CONCLUSION ........................................................................................... 21

CERTIFICATE OF CONFERENCE .......................................................................... 22

CERTIFICATE OF SERVICE ..................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Allison v. McGhan Medical Corp.*, 184 F.3d 1300 (11th Cir.1999) .................................................. 6

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir.2002) ........................................ 2

*Bammerlin v. Navistar International Transportation Corp.*, 30 F.3d 898 (7th Cir.1994)............ 14

*Barnes v. General Motors Corp.*, 547 F.2d 275 (5th Cir.1977) .................................................... 17

*Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171 (6th Cir.2009) ...................................................... 4

*Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir.1994) ............................................................... 2

*Clark v. Takata Corp.*, 192 F.3d 750 (7th Cir.1999) .................................................................... 8

*Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir.2000)....................................... 8

*Contini v. Hyundai Motor Co.*, 876 F.Supp. 540 (S.D.N.Y.1995) ................................................ 14

*CSX Transp., Inc. v. City of Plymouth*, 92 F.Supp.2d 643 (E.D.Mich.2000) .............................. 14

*Cummins v. Lyle Indus.*, 93 F.3d 362 (7th Cir.1996). .................................................................. 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).................................. passim

*Dubiel v. Columbia Hosp. L.P.*, 2005 WL 5955691 (S.D.Fla. Jan.11, 2005)............................... 14

*E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005)........................................ 19

*Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623 (Tex. 2002) .......................................................... 4

*First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135 (5th Cir.1996) ........................... 6

*Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279 (Tex.1964).................................... 17

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997) .................................................................. 8

*Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557 (7th Cir.2003)........ 15, 16

*Greenwell v. Boatwright*, 184 F.3d 492 (6th Cir.1999) .......................................................... 9, 19

*Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825 (9th Cir. 2001)............................................ 9

*Hafstienn v. BMW of N. Am., LLC*, 194 Fed.Appx. 209 (5th Cir.2006) ..................................... 17

*In re Air Crash at Little Rock Ark.*, 291 F.3d 503 (8th Cir.2002)................................................ 8

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir.1994) ................................................. 2, 4

*J.B. Hunt Transp., Inc. v. General Motors Corp.*, 243 F.3d 441 (8th Cir.2001) .......................... 8

*K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357 (Tex.2000) .......................................................... 13

*Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137 (1999) ............................................... 3, 5, 6

*McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797 (6th Cir.2000) .................................................. 19

*Muth v. Ford Motor Co.*, 461 F.3d 557 (5th Cir.2006) .............................................................. 17

*N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90 (Tex.App.—Dallas 1995, writ denied)  19

*Nemir v. Mitsubishi Motors Corp.*, 2006 WL 322476 (E.D.Mich. Feb. 10, 2006) ...................... 14

*Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521 (6th Cir.2012) .................................. 4

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239 (5th Cir.2002). .......................................................... 5

*Pomella v. Regency Coach Lines, Ltd.*, 899 F.Supp. 335 (E.D.Mich.1995) ............................... 19

*Roundy's Inc. v. NLRB*, 674 F.3d 638 (7th Cir.2012) ............................................................... 15

*Salamone v. Wal–Mart Stores East, LP*, 2011 WL 2787788 (E.D.Pa. July 15, 2011) ................... 4

*Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940 (7th Cir.1997 ............................................... 2

*Smelser v. Norfolk Southern Railway*, 105 F.3d 299 (6th Cir.1997). .......................................... 2

*Smith v. Rasmussen*, 249 F.3d 755 (8th Cir.2001) .................................................................... 8

*Truck ins. Exch. v. Magnetek, Inc.*, 360 F.3d 1206 (10th Cir.2004) ............................................ 7

*United States v. Bonds*, 12 F.3d 540 (6th Cir.1993) .................................................................. 3

*United States v. Bourgeois*, 950 F.2d 980 (5th Cir.1992) ........................................................... 5

*United States v. Johnson*, 575 F.2d 1347 (5th Cir.1978) ........................................................... 5

*United States v. Noel*, 581 F.3d 490 (7th Cir.2009) ................................................................. 15

*United States v. Posado*, 57 F.3d 428 (5th Cir.1995) ........................................................... 9, 13

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987) ..................................................... 8, 13

*Weisgram v. Marley Company*, 169 F.3d 514 (8th Cir.1999) .................................................. 6, 8

*Yeager v. State*, 737 S.W.2d 948 (Tex.App.-Fort Worth 1987, no pet.) ..................................... 13

**Rules**

FED.R.EVID. 403 ................................................................................................................ passim

FED.R.EVID. 702 ........................................................................................................... 1, 2, 3, 4

FED.R.EVID 704(a) .............................................................................................................. 15

**PLAINTIFF'S MOTION TO STRIKE AND/OR EXCLUDE
DEFENDANT'S DESIGNATED EXPERT AND ACCOMPANYING TESTIMONY**

Ollie Greene, Individually and as parent of Wyndell Greene, Sr., William Greene, as Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and the parent of LaKeysha Greene (collectively "Plaintiffs") file this motion to strike and/or exclude the testimony of Lee Carr ("Carr"), and in support thereof shows the Court as follows:

## I.      SUMMARY OF ARGUMENT

Carr's testimony does not meet the requirements of FED.R.EVID. 702 and *Daubert* because (1) he is not qualified to give expert opinions on certain matters for which he is being offered; (2) it is not based upon scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) it is not based on sufficient facts or data and is not the product of reliable principles and methods he has applied reliably to the facts of the case.  Plaintiffs further contend that the proposed testimony should be excluded pursuant to FED.R.EVID. 403 because consideration of the testimony disguised as expert testimony will result in confusion of the issues and misleading the jury.

## II.      ARGUMENT  AND AUTHORITIES

### A.      Governing Principles Applicable to Defendant's Proffer of This Testimony.

*Daubert* and Federal Rule of Evidence 702 require that trial courts perform a "gate-keeping role" when considering the admissibility of expert testimony.  *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 597 (1993).  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and

1

(3) the witness has applied the principles and methods reliably to the facts of the case.

FED.R.EVID. 702.     The court's gate-keeping role is two-fold.  First, the court must determine whether the testimony is reliable. See *Daubert*, 509 U .S. at 590. The reliability analysis focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.*    A district court assessing the admissibility of expert testimony under FED.R.EVID. 702 serves a "gatekeeping" function: "it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir.2002) (quoting *Daubert* 509 U.S. at 597.  The proponent of the testimony must establish, by a preponderance of the evidence, that the expert's testimony is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir.1994). In addition, a court may consider "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying" because the former "provides important, objective proof that the research comports with the dictates of good science." *Smelser v. Norfolk Southern Railway*, 105 F.3d 299, 303 (6th Cir.1997).  Another factor that may be considered by the court is "[w]hether the expert has adequately accounted for obvious alternative explanations." FED.R.EVID. 702 advisory committee's note (citing *Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir.1994)). Finally, the court may consider "[w]hether the expert 'is being as careful as he would be in his regular professional work outside his paid litigation consulting.'" FED.R.EVID. 702 advisory committee's note (quoting *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir.1997)). The Supreme Court has emphasized that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial court may consider one or more of the *Daubert* factors when doing

so will help determine that expert's reliability. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999).

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant. See *Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. See *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir.1993). Thus, an expert's testimony is admissible under Rule 702 only if it is predicated upon a reliable foundation and is relevant. The testimony sought to be excluded through this motion violated each of the principles discussed above.

**B.      The Nature of The Alleged Expert Testimony Sought to Be Introduced.**

On or about December 20, 2013, Defendants served Plaintiffs with a copy of Carr's expert report (the "Carr Report"). See APP 001-046. During Carr's deposition, which was taken on January 23, 2014, when asked to provide a summary of his role as a potential expert in this case, Carr explained:

> **Q:**   What -- what do you perceive to be your -- your purpose and function in this case?
>
> **A:**   It was to do a reconstruction and to advise Mr. Kern of the -- what I concluded were the causes, conditions, and circumstances of the crash.
>
> **Q:**   And when you say "a reconstruction," what – what is it you were reconstructing?
>
> **A:**   I did work to determine the paths of the vehicles that were involved, their speeds, and the manners in which they came together in various crashes that occurred in the sequence.

Carr Depo at 22:25 – 23:10 (APP 051-052). To begin with, the limit of Carr's expert testimony should be as he describes above. However, for the reasons explained herein, Plaintiffs ask that the Court exclude Carr's opinions and testimony.

### C.    Additional Grounds Upon Which to Exclude Defendant's Expert.

To begin with, courts have developed further guidance by outlining a number of "[r]ed flags that caution against certifying an expert." *Newell Rubbermaid, Inc. v. Raymond Corp*., 676 F.3d 521, 527 (6th Cir.2012), citing *Best v. Lowe's Home Ctrs., Inc*., 563 F.3d 171, 177 (6th Cir.2009). These include "reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Id*.  As explained herein, consideration of each of these red flags weighs completely in favor of excluding Carr's subjective report, for which he did no testing of his hypotheticals.  As explained herein, the record demonstrates that Carr ignored key facts of the May28, 2010 accident and essentially **created his own accident**, one that he needed to create in order to support Toyota's untenable positions regarding fuel system deformation, occupant protection, and energy absorption and distribution.   What makes Carr's report even more remarkable is that it is completely inconsistent with the reconstruction of the troopers who were on the scene of the accident inspecting skid marks, yaw marks, crook marks, gouges and metal scars, fluid collection areas, directional spills of cargo, burn marks, locations of vehicle components, etc. Carr's report also ignores that no eye witness supports Carr's new "sandwich" theory, where he puts the 4Runner simultaneously and squarely in-between two semi-trailers.  And what makes Carr's Report even more prejudicial is that all of Toyota's other experts, as well as some of the other defendants, rely blindly on Carr's creation in providing their opinions, which effectively invalidates many of their opinions.  The prejudice that will be created by allowing Carr to advance this theory to a jury calls for exclusion of Carr's testimony and report.

### 1.    Carr's testimony is not grounded on sufficient facts or data and is not the product of reliable principles and methods.

An expert's testimony must "fit" the facts of the case.  *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 742–43 (3d Cir.1994).  To assess reliability of expert testimony, courts consider

whether the expert opinion is based on methods and procedures of science rather than the expert's subjective belief or unsupported speculation. *In re Paoli*, 35 F.3d at 742. Factors guiding this analysis include: (1) whether the method features a testable hypothesis; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the technique is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the expert's qualifications to testify based on the methodology; and (8) the method's history of non-judicial uses. Id. at 742 n. 7; *see also Salamone v. Wal–Mart Stores East, LP*, 2011 WL 2787788, at *1 (E.D.Pa. July 15, 2011).  Carr's testimony fails each of these elements.  Expert opinions are admissible only if they are the product of reliable principles and methods. FED R.EVID. 702 advisory committee's note; *Daubert*, 509 U.S. at 591-95.  The Texas Supreme Court has also held "expert testimony is unreliable if it is not grounded 'in the methods and procedures of science' and is no more than 'subjective belief or unsupported speculation.'" *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002) (quoting *Robinson*, 923 S.W.2d at 556 (quoting *Daubert*, 509 U.S. at 590)).

As demonstrated in Carr's Report and deposition he did not use the complete methodology for accident reconstruction that other reconstruction experts use.  The record is also clear that even if Carr does possess the requisite FRE 702 expertise in some areas, he is not an expert in all areas in which he provides testimony.  Carr also did not practice an acceptable or reliable methodology in arriving at his opinions.  Much of Carr's testimony is subjective, ignores undisputed facts, is not relevant or reliable, was prepared strictly for this litigation and is tailored solely to benefit defendants in this litigation.

### 2. Carr is not qualified and/or did not apply a proper methodology to provide expert opinions.

Before certifying an expert and admitting his or her testimony, a district court must ensure that the requirements of Federal Rule of Evidence 702 have been met.  See *Daubert* 509 U.S. at 592–93.  The Fifth Circuit holds that "[t]o qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir.1992) (second alteration in original) (quoting *United States v. Johnson*, 575 F.2d 1347, 1361 (5th Cir.1978)).   As a rule, expert testimony must be based on the expert's specialized knowledge, training, experience, and first-hand observation while supported by solid evidence in the scientific community." *Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 247 (5th Cir.2002).

Ultimately, the trial court's duty is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire* 526 U.S. 137.  Furthermore, although a witness may be qualified as an expert in one area of expertise, the expert may be precluded from offering opinions beyond that area of expertise or which are not founded on a reliable methodology. See, e.g., *Kumho Tire*, 526 U.S. at 154-55; *Allison v. McGhan Medical Corp*., 184 F.3d 1300, 1317-19 (11th Cir.1999); *Weisgram v. Marley Company*, 169 F.3d 514, 518 (8th Cir.1999); *Cummins v. Lyle Indus*., 93 F.3d 362, 371 (7th Cir.1996).. Nor, may an expert go beyond the scope of his expertise in giving his opinion. *First United Fin. Corp. v. U.S. Fid. & Guar. Co*., 96 F.3d 135, 136 (5th Cir.1996).

As explained herein, it is clear that Carr is not qualified to give certain opinions he seeks to provide.  He cannot deny that he did not use the methodology for reconstruction that other

reconstruction experts use, which presents the question as to the acceptability of his methodology.  In other words, during his assignment, Carr refused to apply a peer-reviewed methodology, thus rendering his opinions speculative and unreliable.  Plaintiffs would also ask that the Court not consider it an option that Carr could present these outlying opinions at trial and be subjected only to cross examination on them.  Carr's testimony should be excluded since he has not shown acceptable expertise and because his testimony is contrary to eye witness accounts, contrary to the investigating officers' conclusions, not based on sufficient data and is not reliable.  Carr also concedes in paragraph 47 of his report that he was unable to use traditional damage-based delta-V calculations to determine certain speeds.

In his reconstruction attempt, Carr forms conclusions that are contrary to the actual crash evidence.  This demonstrates he is either not qualified to form expert opinions as an accident reconstructionist or has chosen to ignore the actual evidence.  Notably, during his deposition, Carr when asked to describe the methodology that experts typically use, the first step Carr discussed was gathering the police investigation materials: "Those would typically be a police report, police photographs, if they're available; information from a police investigation, or a file. It would commonly be investigations done by others, either technical or nontechnical people." He added that an expert should also "take into account what witnesses or others have to say about the crash."  See e.g. Carr Depo at 61:13 – 64:20. (APP 054-057)   However, despite acknowledging the importance of the crucial evidence that should be gathered and considered by an expert, in providing his opinions Carr ignores testimony from several witnesses who testified as to the speeds at which they, and others, were driving.  No driver was found to have been, or admitted to, driving in excess of the speed limit.  The Court can exclude Carr's report as a result of his complete refusal use the methodology to which he contends experts should adhere. *Truck*

*ins. Exch. v. Magnetek, Inc*., 360 F.3d 1206, 1213 (10th Cir.2004) (district court properly struck an expert whose opinion did not meet investigation standards expert professed to adhere to).

However, to support his theory Carr had to conclude that several drivers were exceeding the speed limit.  He also ignores evidence from the detailed investigation of 4-5 Highway Patrol Troopers, none of whom agree with Carr's assessment of the identical sequence of, and impacts involved in, the May 28, 2010, accident.  In fact, as discussed above, the investigating officers spent multiple hours at the scene of the accident inspecting skid marks, yaw marks, crook marks, gouges and metal scars, fluid collection areas, directional spills of cargo, burn marks, locations of vehicle components, etc.  Carr's testimony reveals, however, that he had to disagree with every significant conclusion reached by the highway troopers who investigated the accident.  See, e.g. Carr Depo at 239:7 – 250:7.   (APP 064-075).   Carr also ignored the multiple eye-witness accounts of the accident, none of which agrees with his account of it.  He also ignores that not a single eyewitness concurs with his theory that the Toyota 4Runner was sandwiched in between the Volvo tractor and the Strick Trailer as Carr has concluded  Although Carr's Report cites to multiple statements from various eyewitnesses and investigating officers, a closer review of his Report and his deposition testimony shows that on the rare occasion where he relies on an actual fact from the accident, he "cherry picks" facts to argue that they lend support to his version of the accident, and "discards" all the other testimony that did not support his version.  Carr did no crash testing, virtual or otherwise, to test his novel theory.  Carr Depo at 333:13-19 (APP  076). He first visited the scene of the accident years after the accident.  Nor did he speak with any eyewitnesses.  Carr Depo at 87:5-23 (APP 058)

Defendants may argue that Carr's decision to ignore the trooper's conclusions and eyewitness testimony goes to Carr's credibility, not methodology.  However, Carr's complete

disavowal of factual testimony does not present an instance where an expert's opinions should simply be subjected to cross examination. Thus, Carr's opinions must be excluded since there is nothing to indicate that he either is qualified to give, or has adequate scientific basis for, the reconstruction opinions. *See Smith v. Rasmussen*, 249 F.3d 755, 758-59 (8th Cir.2001). As the Supreme Court held in *General Electric Co. v. Joiner*, 522 U.S. 136 (1997):

> [N]othing either in Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*Joiner*, 522 U.S. at 146. *See J.B. Hunt Transp., Inc. v. General Motors Corp*., 243 F.3d 441, 444 (8th Cir.2001) ("Expert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis.") (citing *Concord Boat Corp. v. Brunswick Corp*., 207 F.3d 1039, 1057 (8th Cir.2000); *In re Air Crash at Little Rock Ark*., 291 F.3d 503, 514 (8th Cir.2002) (there must be adequate nexus between scientific theory and subject of opinion); *Clark v. Takata Corp*., 192 F.3d 750, 756-57 (7th Cir.1999); *Weisgram v. Marley Co*., 169 F.3d 514, 521 (8th Cir.1999) (expert testimony not reliable where there is lack of nexus between theory and conclusion).

Since Carr's testimony is not based on expertise or methodology as an accident reconstructionist, the testimony should be excluded. In addition, since Carr ignored key facts from eye witnesses and police investigators and substituted his own facts, his opinions are conclusory and inadmissible. *See Viterbo v. Dow Chem. Co*., 826 F.2d 420, 421-22 (5th Cir. 1987) ("it is not so simply because 'an expert says it is so ...; if an expert brings to the court 'little more than his credentials and a subjective opinion,' his opinion amounts to no evidence"). Although Rule 702 does not require absolute certainty, it does mandate that the proffered knowledge be based on "good grounds" and that the testimony is "more than speculative belief

or unsupported speculation." *United States v. Posado*, 57 F.3d 428, 433 (5th Cir.1995)(citing *Daubert*, 509 U.S. at 589-90). Finally, an expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts. *See Guidroz-Brault v. Mo. Pac. R.R. Co.,* 254 F.3d 825, 829-31 (9th Cir. 2001); *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir.1999) ("Expert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence.").  Based on the accurate facts in the record showing the true sequence of the accident, the Court should preclude the opinions that Carr seeks to provide.  Moreover, because Carr ignores substantial undisputed facts and refused to properly investigate the facts he should be precluded from providing any opinions that ignore the facts, fall outside his areas of expertise and/or for which he did not employ an acceptable methodology.  Thus, he should be struck as an expert.

> **3.    Carr should be precluded from expressing any opinions on design issues as he did not follow an acceptable methodology to express opinions on design issues and was not retained as a design expert.**

To begin with, Carr's Report contains several conclusory statements on design issues that are central to the matters to be determined by a jury in this case.  For instance, the Reports states as follows:

> 5.    Only three of the above impacts were likely to create substantial acceleration or deceleration of the 4Runner and/or substantial structural damage that could pose a risk to its occupants. Those were;
>
> a.    The first impact described above increased the speed of the 4Runner by 40 to 50 miles per hour in a fraction of a second. This impact caused severe rear-to-front damage of the 4Runner across its entire width and it may have contributed to the distortion and relative displacement of the rear seat that is evident post-crash if the impact was at the high end of the speed change range. Of course, that rear damage was also caused by the second, fourth and fifth impacts. Given that there is still **significant space between the rear and front seats after all of the impacts**; **occupant compartment damage itself in the first impact** is unlikely to be a source of substantial injury risk to the rear seat occupants.

b.   The impact of the right front corner of the 4Runner into the back of the Strick trailer slowed it by 20 to 30 miles per hour. **Given the design of the 4Runner's crashworthiness features** and given that there was not substantial under-ride to affect the 4Runner's occupant compartment; it is unlikely that this impact posed a substantial injury risk to its occupants.

c.   The crushing of the 4Runner between the Forest Products tractor-trailer and the Strick trailer occurred with small acceleration and deceleration despite the extreme magnitude forces that were applied. This is because it was simply crushed between two massive tractor-trailers. The catastrophic **structural damage** that resulted to the occupant compartment in this fourth impact did present substantial and catastrophic injury risk to all occupants except the driver.

*********

60.   The Delta-V of the 4Runner during Impact #3 was approximately 27 to 34 miles per hour. By this measure, this is a severe frontal crash but **within the design capacity** of the 4Runner's proven crashworthiness features.

APP 004 and 030.  Despite these conclusory comments, there is nothing in the Carr Report that provides a full opinion on these statements or the basis for these statements.  Nor is there anything in the Carr Report that identifies any Toyota material reviewed or products tested that would permit these conclusory statements.  Additionally, during questions from various defendants' counsel, Carr provided additional conclusory statements regarding the general process for the evaluation of vehicle designs for energy absorption, crashworthiness, occupant protection and/or frontal underride protection and principles.  However, it is clear from Carr's report that he does not provide any expert opinions in the Carr Report on these issues.  Nor does the Carr Report or his deposition reflect that he engaged in any acceptable methodology to evaluate these types of issues in this matter.  In fact, during his deposition, Carr made it absolutely clear that he is not being presented to provide expert opinions on any design issues:

**Q:**   And -- and you're not testifying as a design expert as to whether there were any defective designs in the Toyota 4Runner or the Strick trailer or the Volvo tractor, are you?

**A:**   Correct, I am not.

**Q:**   And you're not testifying as a biomechanical expert as to the cause and mechanisms of the deaths of any of the Greene family members?

**A:**     Correct, I am not.

**Q:**     And -- and you're not testifying as an expert as to whether the Toyota 4Runner fuel system was properly designed and properly manufactured, are you?

**A:**     Correct, I am not.

**Q:**     And you're not testifying as to whether the Toyota 4Runner, the Volvo, the Strick trailer met or sat-- satisfied any Federal Motor Vehicle Safety standards, are you?

**A:**     Correct, I am not.

Carr Depo at 23:11 – 24:3 (APP 052-053).  Accordingly, the Court should preclude any

testimony from Carr on design issues including, but not limited to principles, methods, practices,

performance, etc.

> **4.      Carr acknowledges that his Report does not contain expert opinions on, and he did not follow an acceptable methodology analyzing, the fuel system damage from all impacts and therefore he should be precluded from expressing opinions on the nature and timing of the compromise of the 4Runner's fuel system.**

Among the issues raised in this matter is the extent of damage caused to the Toyota

4Runner's fuel system from the initial impact between the Volvo tractor and the 4Runner and/or

the subsequent impacts the 4Runner encountered.   Carr has identified several "impacts" in his

version of the accident sequence.   Any or all of these impacts could have caused or increased

destruction or damage to the 4Runner's fuel system.   However, in his opinion Carr states clearly

that he is unable to provide an expert opinion on the effect of the initial impact on the 4Runner's

fuel system:

**Q:**     And the -- and the same with -- in terms of the damage to the fuel tank, or the fuel system, or the fuel area, you have not done any expert analysis to be able to tell a Jury the extent of the damage to the fuel tank or fuel system area that was caused by Impact No. 1.  Is that right?

[Multiple objections as to form]

**A:**     That is correct.

Carr Depo at 127:25 – 128:11 (APP 059-060).  In fact, Carr concedes that he is leaving

the expert opinion as to the compromise of the 4Runner's fuel system during the earlier impacts

to "somebody else:"

> **Q:**   Sir, if -- if the initial impact caused some destruction or damage to the fuel system, you're not saying that these other impacts couldn't have exacerbated or increased the damage or the potential damage to this family, are you?
>
> [Multiple objections as to form]
>
> **A:**   Certain would have, for certain, increased the damage -- for example, Impact 2 and Impact 4.  With regard to -- so, you -- they would increase the damage –
>
> **Q:**   Uh-huh.
>
> **A:**   -- but I'm not saying that you couldn't have damage to the fuel system in Impact 1.  That's just not something I -- I -- I have looked at or identified or addressed.  **That's somebody else that's dealing with that**.
>
> **Q:**   And the -- and the same with -- in terms of the damage to the fuel tank, or the fuel system, or the fuel area, you have not done any expert analysis to be able to tell a Jury the extent of the damage to the fuel tank or fuel system area that was caused by Impact No. 1.  Is that right?
>
> [Multiple objections as to form]
>
> **A:**   That is correct.

Carr Depo at 153:13 – 154:5 (APP 061-062).  Thus, Carr should be prohibited from

expressing any opinions regarding the breach of the 4Runner's fuel system including, but not

limited to the occurrence, timing, location, sequence, impact, cause, nature, extent, or any other

aspect of the breach of the fuel system.

> **5.**   **Carr did not follow an acceptable methodology analyzing fuel releases and should be precluded from expressing an opinion on whether there was an observable fuel leak.**

In the Carr Report, Carr makes the following statements with regard to the fuel release in

the Toyota 4Runner that Plaintiffs' experts have concluded took place:

There is no evidence of fuel release or fire on the roadway in the area of this first impact.

There is no evidence of fuel release or fire in the area of this second impact from either the 4Runner or the Corolla.

There is no evidence of fuel release in the area of this third impact.

APP 003.  However, when asked how he could make statements regarding whether there was a fuel release on May 28, 2010, Carr testified as follows:

**Q:**    And -- and -- and in your opinion -- your opinion is based solely on your review of the photographs?

**A:**    Absolutely.

Carr Depo at 171:17-20 (APP 063).  In other words, Carr's opinions are not based on any specialized expertise or recognized methodology.  His opinions are simply conclusory and inadmissible.  *See Viterbo v. Dow Chem. Co*., 826 F.2d 420, 421-22 (5th Cir. 1987) ("it is not so simply because 'an expert says it is so ...; if an expert brings to the court 'little more than his credentials and a subjective opinion,' his opinion amounts to no evidence").  Although Rule 702 does not require absolute certainty, it does mandate that the proffered knowledge be based on "good grounds" and that the testimony is "more than speculative belief or unsupported speculation." *United States v. Posado*, 57 F.3d 428, 433 (5th Cir.1995)(citing *Daubert*, 509 U.S. at 589-90).

It is also clear that Carr's subjective opinion based on his view of a photograph, which a jury can also observe, is not expert testimony and is not needed a trial.  *See K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 361 (Tex.2000) (finding an expert's opinions would not be helpful to the jury, as the conclusions simply told the jury how to view the facts and involved matters within the average juror's common knowledge);  *see also, Yeager v. State*, 737 S.W.2d 948, 952 (Tex.App.-Fort Worth 1987, no pet.) (holding jury is qualified to make such a comparison with

no need for opinion testimony concerning photographs).   Therefore, Carr's opinions regarding

fuel leaks should be excluded.

> **6.    Carr should be precluded from expressing any opinions on whether any of the instrumentalities involved satisfied safety standards.**

In the Carr Report and his deposition, Carr occasionally provides statements that go to

the heart of whether the vehicles or Strick trailer were in compliance with safety standards and/or

whether such standards are adequate.   So that Carr is prevented from expressing such opinions at

trial, Plaintiffs move that Carr be prohibited from expressing any such opinions. First because

these opinions (and the bases for them) are not contained in Carr's written Report.   Second,

because the law prohibits expert testimony regarding whether a vehicle or component complies

with federal safety standards.   In *Bammerlin v. Navistar International Transportation Corp*., 30

F.3d 898 (7th Cir.1994) the court reversed a jury verdict after the district court erroneously

permitted experts to interpret FMVSS 208 stating, "[t]he meaning of federal regulations is not a

question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be

resolved by the court." *Id* at 900. "The interpretation of federal regulations is a matter of law for

the court to decide." *CSX Transp., Inc. v. City of Plymouth*, 92 F.Supp.2d 643, 656

(E.D.Mich.2000) (citing *Bammerlin* 30 F.3d at 900). It is a question of law, to be resolved by the

court.")). See *Nemir v. Mitsubishi Motors Corp.*, 2006 WL 322476, at *1 (E.D.Mich. Feb. 10,

2006) ("[I]nterpretation of federal regulations presents a question of law for the Court; not a

question of interpretation for experts or a question of fact to be resolved by the jury.").   *Contini*

*v. Hyundai Motor Co*., 876 F.Supp. 540, 543 (S.D.N.Y.1995) (an expert is simply not permitted

to testify whether the product complied with the standard).   *Klaczak v. Consol. Med. Transp.*

*Inc*., 2005 WL 1564981, at *4 (N.D.Ill. May 26, 2005); *Dubiel v. Columbia Hosp. L.P.*, 2005

WL 5955691, at * 1, 4 (S.D.Fla. Jan.11, 2005) (barring Cutler from opining as to "[w]hether

Columbia Hospital's meal break policy was in compliance with the FLSA"). *Good Shepherd Manor Found.,* 323 F.3d at 564 ("expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible").   Accordingly, Carr should be precluded from providing any testimony or opinions as to whether and of the vehicles or trailers were defectively designed, unreasonably dangerous, or in compliance with federal regulations, whether the safety standards are adequate, and whether any defendant was grossly negligent.

### 7.   Carr should not be permitted to express lay or expert opinions on any ultimate conclusion to be determined by the jury.

In the Carr Report, and during his deposition, Carr makes the following conclusory assertions, among others, as to a jury issue:

> 85.   The crash sequence was initiated when Charles Moody, the driver of the Forest Products semi-trailer truck, <u>failed to slow appropriately</u> and struck the rear of the 4Runner that had slowed in response to traffic conditions ahead of it. The Forest Products tractor-trailer then pushed the 4Runner into the back of the Corolla that had also slowed in response to traffic conditions. The Corolla spun out of the way but the 4Runner struck the back of the Strick trailer just before it was crushed between the Forest Products tractor-trailer and that trailer. It is this latter event that <u>caused catastrophic damage</u> to the 4Runner's structures and occupant compartment.
>
> 86.   The <u>root cause of this crash</u> and the injuries and damage that resulted was that Mr. Moody <u>did not act as a reasonable and responsible driver</u>.

As the Court is aware, opinions such as this are inadmissible under Rule 702, especially considering that they are conclusions to questions the jury will decide at trial.   Although defendants may argue that FED.R.EVID 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue.", "[t]he committee notes to ... Rule [704] explain ... that Rule 702, which requires that opinion be helpful to the trier of fact, and Rule 403, which provides for exclusion of evidence that wastes time, 'afford assurance against the admission of opinions which would merely tell the trier of fact what result to reach.'" *Roundy's Inc. v. NLRB,* 674 F.3d 638, 648 (7th Cir.2012) (quoting FED.R.EVID. 704, 1972 advisory committee notes)

(some alterations omitted). That is precisely what Carr's opinions would do if he were allowed to present them at trial, which renders them inadmissible. *See United States v. Noel*, 581 F.3d 490, 497 (7th Cir.2009) ("Regardless of whether Barnes was an expert, she could not merely tell the jury what result to reach.") (internal quotation marks omitted); *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir.2003) ("expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible").

Accordingly, Carr should be precluded from providing any testimony or opinions as to the conclusions to be drawn ultimately by the jury regarding all triable issues or giving an opinion on the standard of care.

**8.    Carr should not be permitted to discuss or give any opinions that are not contained in the Carr Report.**

During his deposition, Carr occasionally provided unsolicited conclusions on matters outlying to the Carr Report or was asked questions by defendants' counsel that required opinions or conclusions that were not contained in the Carr Report.  However, the record is clear that Carr's "expert" opinions are, and should be, contained solely in the Carr Report.  Accordingly, Carr should be precluded from giving any opinions regarding the May 28, 2010, accident other than the opinions expressed in the Carr Report, and then only to the extent these opinions are not limited or excluded by an Order on this motion or during consideration of Plaintiffs' Motion *in limine*.

**9.    Carr should not be permitted to discuss or give opinions on a "crash test" that was allegedly conducted by Exponent.**

During his deposition, Carr acknowledged that he viewed a December 17, 2013, crash test done by Exponent.  The Toyota Defendants have indicated that they plan to introduce this video footage and the related testimony of Mickey Marine, who was hired by Toyota to conduct

this test.  The problem with this footage and related testimony is that the crash test does not even purport to be substantially similar to, or a replication of, the accident that happened on May 28, 2010, wherein multiple vehicles and multiple impacts of moving vehicles were involved.   In other words, although the video is represented to be a "potential" re-enactment of a single event during the May 28, 2010, crash it is clearly not substantially similar to the underlying accident. Because of the material differences between the crash test and the underlying accident, the video and all testimony related to it must be excluded.  *See e.g. Hafstienn v. BMW of N. Am., LLC*, 194 Fed.Appx. 209, 213 (5th Cir.2006) (evidence of crash tests properly excluded where there are "material differences between the accident and the crash test."); *see also, Barnes v. General Motors Corp.*, 547 F.2d 275 (5th Cir.1977); *Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279 (Tex.1964). Thus, Carr's reliance on the test and video must also be excluded.

In the event defendants contend that the crash test was not designed to constitute a re-enactment of the May 28, 2010, crash, the Fifth Circuit has already addressed this issue:

> When the demonstrative evidence is offered only as an illustration of general scientific principles, not as a reenactment of disputed events, it need not pass the substantial similarity test. Such demonstrative aids, however, must not be misleading in and of themselves, and one such way that a demonstration might mislead is when ... the demonstration resembles the disputed accident.

*Muth v. Ford Motor Co.*, 461 F.3d 557, 566 (5th Cir.2006). In *Muth*, the district court rejected the proffered demonstration as insufficiently similar, but too closely resembling the disputed accident to effectively present abstract principles without misleading the jury. *Id.*  The Fifth Circuit upheld the district court's determination, noting that the similarities between the crash test and the accident at issue heightened the prejudicial effect of the evidence, and this prejudicial effect was sufficient to justify the exclusion of the evidence. *Id.* at 567.  This rationale is equally applicable here.  Toyota's experts have opined that the vehicles in the crash test were identical to

the 4Runner and the Volvo tractor and trailer involved in the May 28, 2010, accident.  Toyota also notes that both the December 17, 2013, crash test and the May 28, 2010 accident involved circumstances (e.g. speeds and impact conditions) similar to those proffered by one or more of the experts in this case.  Therefore, this Court should conclude, as *Muth* did, that the similarities between the crash test and the accident at issue heightens the prejudicial effect of the evidence, and that this prejudicial effect is sufficient to justify the exclusion of the evidence.

Furthermore, Plaintiffs note that Toyota's witnesses have also acknowledged that the narrator, whose voice is heard on the walk-up portion of the crash test videotape allegedly describing the result of the test, is Kurt Kern, Toyota's lead trial counsel.   Plaintiffs were not provided with the opportunity to have representatives, *i.e.,* a videographer, a photographer, an attorney, and an expert, present at this particular test, or during any crash test or any test involving vehicle-to vehicle collisions conducted by defendants that may pertain to this case. Therefore, the conditions under which this test was performed and the suspect nature of it are additional reasons the tape and accompanying testimony should be excluded.  Moreover, the Court should also exclude this evidence since the danger of unfair prejudice or confusion posed by this subjective evidence substantially outweighs its probative value. FED.R.EVID. 403.  Thus, this video footage, and the accompanying testimony is excludable since it clearly is not reliable or relevant evidence on which any expert should rely to form opinions. Thus, reliance Carr may have had, if any, on the crash tests should likewise be excluded and Carr should be prohibited from relying on it or referring to it or any of the results from it at trial.

### 10.    Carr's testimony is also inadmissible under FED.R.EVID. 403.

Carr's purported expert testimony should be excluded also because its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury. FED.R.EVID. 403; *Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."); s*ee also, E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005); *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex.App.—Dallas 1995, writ denied) ("courts should exclude . . . evidence [when] the expert's opinion would be more likely to prejudice or confuse than to assist the trier of fact."). A review of the Carr Report shows that it completely discounts the police's evaluation of the accident and contains Carr's subjective conclusions, which are not based on any relevant and "reliable" independent evaluations undertaken by Carr. This clearly evinces that Carr's testimony is tailored to suit Toyota's litigation strategy, without resort to the true facts. *See McLean* 224 F.3d at 800-01 ("[A]n expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by good grounds, based on what is known.") (quoting *Pomella v. Regency Coach Lines, Ltd*., 899 F.Supp. 335, 342 (E.D.Mich.1995)). An expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts. *See Guidroz-Brault,* 254 F.3d at 829-31; *Greenwell,* 184 F.3d at 497 ("Expert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence.").

Carr's subjective conclusions and pronouncements should not be labeled as "expert opinions," either because he does not hold the expertise he professes to possess, his opinions are neither relevant nor reliable, his opinions are not based on accepted engineering principles, his

opinions are biased, and/or his testimony would serve only to confuse and mislead a jury that his conclusory statements are supposedly expert opinions.

### III.        <u>CONCLUSION</u>

Permitting Carr to testify without his having applied a proper methodology in his alleged analyses and without having considered all of the relevant evidence would cause severe prejudice to Plaintiffs.  It is also clear that Carr is ether not qualified or simply chose not to utilize a methodology used by other experts in the field.  Plaintiffs therefore request that the Court strike the Carr Report and accompanying testimony, not consider the same as evidence for any purpose, and grant Plaintiffs such other and further relief, in law or in equity, to which Plaintiffs may be entitled.


Respectfully Submitted,


/s/ Aubrey "Nick" Pittman           
AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

/s/ Daryl K. Washington           
DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

## **CERTIFICATE OF CONFERENCE**

The undersigned certifies that a face-to-face conference on this motion was held on March 7, 2014, with counsel for all defendants, during which time defendants' counsel indicated they were opposed to the relief being sought in this motion.  Accordingly, Plaintiffs present this matter to the Court for resolution.


    /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2014 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.


  /s/ Aubrey "Nick" Pittman_____
AUBREY "NICK" PITTMAN