## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of  WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE,** | § § § § § § § § | |
| **Plaintiffs,** | § | |
| **v.** | § § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| **TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.,  TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC.** | § § § § § § § § § § § § § § | |
| **Defendants.** | § | |

---

## PLAINTIFFS' MOTION TO EXCLUDE THE REPORT
## AND TESTIMONY OF MICHELLE VOGLER AND BRIEF IN SUPPORT

---

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax

**ATTORNEYS FOR PLAINTIFFS**

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
469-718-0380 - fax

TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES..................................................................................................... iv

I.      SUMMARY OF ARGUMENT ..................................................................................... 1

II.     ARGUMENT  AND AUTHORITIES ............................................................................ 1

        A.      Governing Principles Applicable to Defendant's Proffer of This Testimony. ........... 1

        B.      The Nature of The Alleged Expert Testimony Sought to Be Introduced.................. 3

        C.      Additional Grounds Upon Which to Exclude Defendant's Expert. .......................... 4

                1.      Vogler's testimony is not grounded on sufficient facts or data and is
                        not the product of reliable principles and methods. .................................... 4

                2.      Vogler should not be permitted to give opinions on interpretations of
                        laws and regulations, whether Strick complied with safety regulations,
                        or on ultimate conclusions to be determined by the jury. ........................... 6

                3.      Vogler is not qualified and/or did not apply a proper methodology to
                        provide expert opinions on many areas where she purports to provide
                        opinions. ................................................................................................ 9

                        a.      Vogler's testimony should be excluded since she had not shown
                                acceptable expertise and because her testimony is contrary to
                                eye witness accounts, contrary to the investigating officers'
                                conclusions, not based on sufficient data and is not reliable. ....... 10

                        b.      Vogler's testimony demonstrates that she is not an expert in
                                underride guard design or performance. ..................................... 12

                        c.      Vogler did not follow an acceptable methodology in forming
                                conclusions regarding the performance of underride guards. ........ 12

                        d.      Vogler's testimony demonstrates that she cannot provide
                                expert testimony regarding the federal requirements to provide
                                underride guard installation instructions or whether Strick
                                complied with the requirements. .................................................. 14

                4.      Vogler's testimony restating alleged facts that are clearly in dispute
                        is not expert testimony and also cannot serve as the basis for an expert
                        report. ................................................................................................... 15

5.      Vogler acknowledges that she did not follow an acceptable
        methodology analyzing the weld job on the underride guard and
        should not be permitted to offer speculative opinions. ............................ 18

6.      Vogler should not be permitted to discuss or give any opinions
        that are not contained in the Vogler Report. .............................................. 19

7.      Vogler should not be permitted to discuss or give opinions on a
        "crash test" that was allegedly conducted by Exponent. ......................... 19

8.      Vogler's testimony is also inadmissible under FED.R.EVID. 403. ............ 21

III.    CONCLUSION ......................................................................................... 23

CERTIFICATE OF CONFERENCE ......................................................................... 24

CERTIFICATE OF SERVICE ................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Allison v. McGhan Medical Corp.*, 184 F.3d 1300 (11th Cir.1999) ............................... 3, 9

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir.2002) ......................... 2

*Bammerlin v. Navistar International Transportation Corp.*, 30 F.3d 898 (7th Cir.1994).............. 7

*Barnes v. General Motors Corp.*, 547 F.2d 275 (5th Cir.1977) ................................... 20

*Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir.1994) ......................................... 2

*Clark v. Takata Corp.*, 192 F.3d 750 (7th Cir.1999) ............................................ 11

*Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir.2000) .......................... 11

*Contini v. Hyundai Motor Co.*, 876 F.Supp. 540 (S.D.N.Y.1995) ................................. 8

CSX Transp., Inc. v. City of Plymouth, 92 F.Supp.2d 643 (E.D.Mich.2000) ............................. 8

*Cummins v. Lyle Indus.*, 93 F.3d 362 (7th Cir.1996). .......................................... 3, 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)................................. passim

*Davis v. Washington*, 547 U.S. 813 (2006)....................................................... 17

*E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005)........................... 21

*Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623 (Tex. 2002) ...................................... 5

*First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135 (5th Cir.1996) .................... 9

*Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279 (Tex.1964)........................... 20

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997) ........................................... 11

*Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557 (7th Cir.2003)............ 7, 8

*Greenwell v. Boatwright*, 184 F.3d 492 (6th Cir.1999) ......................................... 14, 22

*Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825 (9th Cir. 2001)............................. 14

*Hafstienn v. BMW of N. Am., LLC*, 194 Fed.Appx. 209 (5th Cir.2006) .......................... 20

*In re Air Crash at Little Rock Ark.*, 291 F.3d 503 (8th Cir.2002)................................ 11

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir.1994) ................................... 2, 4

*J.B. Hunt Transp., Inc. v. General Motors Corp.*, 243 F.3d 441 (8th Cir.2001) ................... 11

*Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137 (1999).......................................... 3, 9

*McLean v. 988011 Ontario, Ltd*., 224 F.3d 797 (6th Cir.2000)..................................................... 22

*Muth v. Ford Motor Co*., 461 F.3d 557 (5th Cir.2006)............................................................ 20

*N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90 (Tex.App.—Dallas 1995, writ denied)  22

*Nemir v. Mitsubishi Motors Corp.*, 2006 WL 322476 (E.D.Mich. Feb. 10, 2006) ....................... 8

*Paulson v. Plainfield Trucking, Inc*., 2003 WL 25771979 (D.Minn. Nov 21, 2003) .................. 17

*Pipitone v. Biomatrix, Inc*., 288 F.3d 239 (5th Cir.2002). ............................................................ 9

*Pomella v. Regency Coach Lines, Ltd*., 899 F.Supp. 335 (E.D.Mich.1995)................................ 22

*Roundy's Inc. v. NLRB*, 674 F.3d 638 (7th Cir.2012) ..................................................................... 7

*Salamone v. Wal–Mart Stores East, LP*, 2011 WL 2787788 (E.D.Pa. July 15, 2011).................. 5

*Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940 (7th Cir.1997 ..................................................... 2

*Smelser v. Norfolk Southern Railway*, 105 F.3d 299 (6th Cir.1997). ............................................ 2

*Smith v. Rasmussen*, 249 F.3d 755 (8th Cir.2001)....................................................................... 11

*U.S. v. Mejia,* 545 F.3d 179 (2d Cir. 2008); ................................................................................ 17

*United States v. Bonds*, 12 F.3d 540 (6th Cir.1993)...................................................................... 3

*United States v. Bourgeois*, 950 F.2d 980 (5th Cir.1992)............................................................. 9

*United States v. Johnson*, 575 F.2d 1347 (5th Cir.1978).............................................................. 9

*United States v. Johnson*, 587 F.3d 625 (4th Cir.2009) .............................................................. 17

*United States v. Lombardozzi*, 491 F.3d 61 (2d Cir.2007) .......................................................... 17

*United States v. Posado*, 57 F.3d 428 (5th Cir.1995) .................................................................. 13

*Viterbo v. Dow Chem. Co*., 826 F.2d 420 (5th Cir. 1987) ........................................................... 13

*Weisgram v. Marley Company*, 169 F.3d 514 (8th Cir.1999) ................................................ 3, 9, 11

## Rules

FED.R.EVID. 403 ..................................................................................................................... passim

FED.R.EVID. 702 ................................................................................................................. 1, 2, 3, 5

FED.R.EVID 704(a) ..................................................................................................................... 7

**PLAINTIFF'S MOTION TO STRIKE AND/OR EXCLUDE
DEFENDANT'S DESIGNATED EXPERT AND ACCOMPANYING TESTIMONY**

Ollie Greene, Individually and as parent of Wyndell Greene, Sr., William Greene, as Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and the parent of LaKeysha Greene (collectively "Plaintiffs") file this motion to strike and/or exclude the testimony of Michelle Vogler ("Vogler"), and in support thereof shows the Court as follows:

## I.       SUMMARY OF ARGUMENT

Vogler's testimony does not meet the requirements of FED.R.EVID. 702 and *Daubert* because (1) she is not qualified to give expert opinions on certain matters for which she is being offered; (2) it is not based upon scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) it is not based on sufficient facts or data and is not the product of reliable principles and methods she has applied reliably to the facts of the case.  Plaintiffs further contend that the proposed testimony should be excluded pursuant to FED.R.EVID. 403 because consideration of the testimony will result in confusion of the issues and misleading the jury.

## II.       ARGUMENT  AND AUTHORITIES

### A.       Governing Principles Applicable to Defendant's Proffer of This Testimony.

*Daubert* and Federal Rule of Evidence 702 require that trial courts perform a "gate-keeping role" when considering the admissibility of expert testimony.  *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 597 (1993).  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and

1

(3) the witness has applied the principles and methods reliably to the facts of the case.

FED.R.EVID. 702.      The court's gate-keeping role is two-fold.  First, the court must determine whether the testimony is reliable. See *Daubert*, 509 U .S. at 590. The reliability analysis focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.*   A district court assessing the admissibility of expert testimony under FED.R.EVID. 702 serves a "gatekeeping" function: "it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir.2002) (quoting *Daubert* 509 U.S. at 597.  The proponent of the testimony must establish, by a preponderance of the evidence, that the expert's testimony is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir.1994). In addition, a court may consider "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying" because the former "provides important, objective proof that the research comports with the dictates of good science." *Smelser v. Norfolk Southern Railway*, 105 F.3d 299, 303 (6th Cir.1997).  Another factor that may be considered by the court is "[w] hether the expert has adequately accounted for obvious alternative explanations." FED.R.EVID. 702 advisory committee's note (citing *Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir.1994)). Finally, the court may consider "[w] hether the expert 'is being as careful as he would be in his regular professional work outside his paid litigation consulting.'" FED.R.EVID. 702 advisory committee's note (quoting *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir.1997)).

The Supreme Court has emphasized that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial court may consider one or more of the *Daubert* factors

when doing so will help determine that expert's reliability.  *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999).

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant.  See *Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. See *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir.1993).  Thus, an expert's testimony is admissible under Rule 702 only if it is predicated upon a reliable foundation and is relevant.  Furthermore, although a witness may be qualified as an expert in one area of expertise, the expert may be precluded from offering opinions beyond that area of expertise or which are not founded on a reliable methodology. See, e.g*., Kumho Tire*, 526 U.S. at 154-55; *Allison v. McGhan Medical Corp*., 184 F.3d 1300, 1317-19 (11th Cir.1999); *Weisgram v. Marley Company*, 169 F.3d 514, 518 (8th Cir.1999); *Cummins v. Lyle Indus*., 93 F.3d 362, 371 (7th Cir.1996).

**B.     The Nature of The Alleged Expert Testimony Sought to Be Introduced.**

On or about December 20, 2013, the Toyota Defendants served Plaintiffs with a copy of Vogler's expert report (the "Vogler Report").  See APP 001-038.  During Vogler's deposition, which was taken on February 18, 2014, when asked to provide a summary of her role as a potential expert in this case, the following exchange occurred:

> **Q:**     What is your understanding of the report that you had provided in this case?  Because you -- you just gave me a caveat of, any other areas that may come up.  I'm not sure what that means, so, what I'm trying to understand is:  For what you've done throughout or up until your expert report, what -- what was your role in -- in this case?
>
> **A:**     I would say that my report was prepared to provide information as to what my role is.  So, I would say that the topics discussed in my report covered the areas, and that is, accident reconstruction, what transpired between the vehicles involved in this accident.  And then there's a section dealing with the design evaluation, the design of the -- the ICC bumper that Strick

3

designed.  It's looking at the bumper that was on the vehicle at the time of the accident, and how the vehicles engaged with each other, and particularly how they engaged with that Strick trailer and that bumper at the time of the accident.

**Q:**  Okay.  So -- make sure I'm understanding you.  You -- you believe that you are here to give expert testimony on accident reconstruction; is that right?

**A:**  Certainly, that's one of the areas, yes.

**Q:**  And then are you -- are you saying that you are giving expert testimony as to the design of the Strick underride guard?

**A:**  Yes.  And that's also in my report.

**Q:**  And what other areas, with respect to the Strick underride guard, are you giving testimony about, other than the design of it?

**A:**  Well, the performance of the particular ICC bar that was on the Strick trailer at the time of the accident.

**Q:**  Anything else?

**A:**  I think those are the three general areas that are covered in my report. Certainly, there are subsets underneath those areas.

Vogler Depo at 17:15 – 18:25 (APP 044-045).  As is evident from this exchange, Vogler apparently maintains that she is an expert in a variety of very broad areas.  However, for the reasons explained herein, Plaintiffs ask that the Court exclude completely or limit Vogler's opinions and testimony.

### C.    Additional Grounds Upon Which to Exclude Defendant's Expert.

#### 1.    Vogler's testimony is not grounded on sufficient facts or data and is not the product of reliable principles and methods.

An expert's testimony must "fit" the facts of the case.  *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 742–43 (3d Cir.1994).  To assess reliability of expert testimony, courts consider whether the expert opinion is based on methods and procedures of science rather than the expert's subjective belief or unsupported speculation. *In re Paoli*, 35 F.3d at 742. Factors guiding this analysis include: (1) whether the method features a testable hypothesis; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the

technique is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the expert's qualifications to testify based on the methodology; and (8) the method's history of non-judicial uses. Id. at 742 n. 7; *see also Salamone v. Wal–Mart Stores East, LP*, 2011 WL 2787788, at *1 (E.D.Pa. July 15, 2011).  Vogler's testimony fails each of these elements.  Expert opinions are admissible only if they are the product of reliable principles and methods. FED R.EVID. 702 advisory committee's note; *Daubert*, 509 U.S. at 591-95.  The Texas Supreme Court has also held "expert testimony is unreliable if it is not grounded 'in the methods and procedures of science' and is no more than 'subjective belief or unsupported speculation.'" *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002) (quoting *Robinson*, 923 S.W.2d at 556 (quoting *Daubert*, 509 U.S. at 590)).

As demonstrated in Vogler's report and deposition, she professes to be an expert in many areas, although the record is less certain as to the areas, if any, in which she actually possess an acceptable expertise.  Vogler actually admits that she did not use the methodology for accident reconstruction that Lee Carr and other reconstruction experts use.  Nevertheless, the record is clear that even if Vogler does possess the requisite FRE 702 expertise in some areas, she is not an expert in all areas in which she provides testimony.  She also did not practice an acceptable or reliable methodology in arriving at many of her opinions.  Much of Vogler's testimony is actually subjective, ignores undisputed facts, is not relevant or reliable, was prepared strictly for this litigation and is tailored solely to benefit Strick in this litigation.

**2.      Vogler should not be permitted to give opinions on interpretations of laws and regulations, whether Strick complied with safety regulations, or on ultimate conclusions to be determined by the jury.**

In the Vogler Report, and during her deposition, Vogler makes the following subjective and arbitrary statements, among others:[1]

1.      The standards that impact guards must comply with to be sold in the US are Federal Motor Vehicle Safety Standards (FMVSS) 223 "Rear Impact Guards" and 224 "Rear Impact Protection". The objective of FMVSS 223 is to "reduce the number of deaths and serious injuries that occur when light duty vehicles collide with the rear end of trailers and semitrailers". (APP 031)

2.      FMVSS 223 also contains requirements for labeling, guard attachment hardware and installation instructions. (APP 031)

3.      FMVSS 224 requires that each vehicle be equipped with a rear impact guard certified as meeting FMVSS 223. (APP 032)

4.      FMVSS 224 also contains guard dimensional and configuration requirements. (APP 032)

5.      The rear impact guard design that was on the subject Strick trailer at the time of manufacture complied with the requirements of FMVSS 223 and FMVSS 224. (APP 033)

6.      The engineering drawing for Strick Part No. M570018 (STRICK00278) shows the certification label, which complies with the requirements of FMVSS 223. Strick engineering drawing M330154 for the rear frame and door assembly shows that the rear impact guard meets the dimensional and configuration requirements of FMVSS 224. (APP 033)

7.      According to FMVSS 223, "The manufacturer of rear impact guards for sale to vehicle manufacturers shall include with each guard printed instructions in English for installing the guard, as well as a diagram or schematic depicting proper guard installation. (APP 035)

8.      Manufacturers of rear impact guards are not required by FMVSS 223 to provide installation instructions to an aftermarket distributor. However, installation instructions for the subject impact guard do exist and are compliant with the requirements of FMVSS 223. (APP 035)

---

[1] These paragraphs are numbered here for convenience and do not appear in Vogler's Report numbered in this manner.

9.      Strick has produced 13 tests from this timeframe, 12 of which passed the newly effective requirements for FMVSS 223. (APP 035)

10.     The subject accident was caused by inattention on the part of Mr. Moody. (APP 037)

11.     The impact guard that was on the Strick trailer at the time of manufacture met the requirements of FMVSS 223. (APP 037)

Many of these opinions are inadmissible under Rule 702, especially considering that they are conclusions to questions the jury will decide at trial, e.g. whether the trailer was unreasonably dangerous, whether it complied with safety regulations, and whether it was technologically feasible to install a better and more energy-absorbing underride guard.   Although Strick may argue that FED.R.EVID 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue.", "[t]he committee notes to ... Rule [704] explain ... that Rule 702, which requires that opinion be helpful to the trier of fact, and Rule 403, which provides for exclusion of evidence that wastes time, 'afford assurance against the admission of opinions which would merely tell the trier of fact what result to reach.' " *Roundy's Inc. v. NLRB*, 674 F.3d 638, 648 (7th Cir.2012) (quoting FED.R.EVID. 704, 1972 advisory committee notes) (some alterations omitted). That is precisely what Vogler's opinions would do if she were allowed to present them at trial, which renders them inadmissible. *See United States v. Noel*, 581 F.3d 490, 497 (7th Cir.2009) ("Regardless of whether Barnes was an expert, she could not merely tell the jury what result to reach.") (internal quotation marks omitted); *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir.2003) ("expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible").

In *Bammerlin v. Navistar International Transportation Corp.*, 30 F.3d 898 (7th Cir.1994) the court reversed a jury verdict after the district court erroneously permitted experts to interpret FMVSS 208 stating, "[t]he meaning of federal regulations is not a question of fact, to be resolved

by the jury after a battle of experts. It is a question of law, to be resolved by the court." *Id* at 900. "The interpretation of federal regulations is a matter of law for the court to decide." *CSX Transp., Inc. v. City of Plymouth*, 92 F.Supp.2d 643, 656 (E.D.Mich.2000) (citing *Bammerlin* 30 F.3d at 900). It is a question of law, to be resolved by the court.")). See *Nemir v. Mitsubishi Motors Corp.*, 2006 WL 322476, at *1 (E.D.Mich. Feb. 10, 2006) ("[I]nterpretation of federal regulations presents a question of law for the Court; not a question of interpretation for experts or a question of fact to be resolved by the jury.").

Vogler also provided subjective statements in her deposition (under the guise of expert testimony) as to whether the safety standards are adequate, whether the Strick trailer complied with the safety standards, and whether Strick had a duty to inform its parts distributor or others how to install the underride guard components. This is improper expert testimony. *Contini v. Hyundai Motor Co.*, 876 F.Supp. 540, 543 (S.D.N.Y.1995) (an expert is simply not permitted to testify whether the product complied with the standard). *Klaczak v. Consol. Med. Transp. Inc.*, 2005 WL 1564981, at *4 (N.D.Ill. May 26, 2005); *Dubiel v. Columbia Hosp. L.P.*, 2005 WL 5955691, at * 1, 4 (S.D.Fla. Jan.11, 2005) (barring Cutler from opining as to "[w]hether Columbia Hospital's meal break policy was in compliance with the FLSA"). *Good Shepherd Manor Found.*, 323 F.3d at 564 ("expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible"). Accordingly, Vogler should be precluded from providing any testimony or opinions as to the conclusions to be drawn ultimately by the jury regarding whether the Strick trailer was defectively designed, unreasonably dangerous without a different underride guard, or in compliance with federal regulations, and whether Strick was grossly negligent. And as discussed above, Vogler should be precluded from giving legal opinions on whether Strick complied with legal standards or had certain duties as a matter of law.

> **3.     Vogler is not qualified and/or did not apply a proper methodology to provide expert opinions on many areas where she purports to provide opinions.**

Before certifying an expert and admitting his or her testimony, a district court must ensure that the requirements of Federal Rule of Evidence 702 have been met.  See *Daubert* 509 U.S. at 592–93.  The Fifth Circuit holds that "[t]o qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir.1992) (second alteration in original) (quoting *United States v. Johnson*, 575 F.2d 1347, 1361 (5th Cir.1978)).   As a rule, expert testimony must be based on the expert's specialized knowledge, training, experience, and first-hand observation while supported by solid evidence in the scientific community." *Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 247 (5th Cir.2002).

Ultimately, the trial court's duty is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire* 526 U.S. 137.  Furthermore, although a witness may be qualified as an expert in one area of expertise, the expert may be precluded from offering opinions beyond that area of expertise or which are not founded on a reliable methodology. *See, e.g., Kumho Tire*, 526 U.S. at 154-55; *McGhan Medical Corp*., 184 F.3d at 1317-19; *Weisgram,* 169 F.3d at 518; *Cummins*, 93 F.3d at 371.  Nor, may an expert go beyond the scope of his expertise in giving his opinion. *First United Fin. Corp. v. U.S. Fid. & Guar. Co*., 96 F.3d 135, 136 (5th Cir.1996).

As explained herein, it is clear that Vogler is not qualified to give certain opinions she seeks to provide.  She even admits that she did not use the methodology for reconstruction that

Lee Carr and other reconstruction experts use, which begs the question as to its acceptability.  In other places, Vogler refused to apply a peer-reviewed methodology, thus rendering her opinions speculative and unreliable.  Plaintiffs would also ask that the Court not consider it an option that Vogler could present these outlying opinions at trial and be subjected only to cross examination on them.  Indeed, because Vogler ignores substantial undisputed facts and refuses to properly investigate the facts she should be precluded from providing opinions that ignore the facts, fall outside her areas of expertise and/or for which she did not employ an acceptable methodology.

   **a.**  **Vogler's testimony should be excluded since she had not shown acceptable expertise and because her testimony is contrary to eye witness accounts, contrary to the investigating officers' conclusions, not based on sufficient data and is not reliable.**

In her reconstruction attempt, Vogler has formed conclusions that are so far contrary to the actual crash evidence that this demonstrates she is either not qualified to form expert opinions as an accident reconstructionist or has chosen to ignore the actual evidence.  For instance, Vogler ignores testimony from several witnesses who testified as to the speeds at which they, and others, were driving.  No driver was found to have been driving in excess of the speed limit (65 mph), however, to support her novel theory Vogler essentially had to conclude that one or more drivers was exceeding the speed limit (driving over 70 mph).  She also ignores the mounds of evidence from 4-5 investigating Highway Patrol Troopers, none of whom agree with Vogler's assessment of the sequence of, and impacts involved in, the accident.  The investigating officers spent multiple hours at the scene of the accident inspecting skid marks, yaw marks, crook marks, gouges and metal scars, fluid collection areas, directional spills of cargo, burn marks, locations of vehicle components, etc.  The troopers then reached a well-reasoned theory of the accident sequence.  Vogler's testimony reveals, however, that she had to disagree with every

significant conclusion reached by the highway troopers who investigated the accident. That is the only way her novel accident reconstruction would make sense.

Vogler also ignored the multiple eye-witness accounts of the accident, none of which agrees with her account of it. She ignores that not a single eyewitness concurs that the Toyota 4Runner was sandwiched in between the Volvo tractor and the Strick Trailer as Vogler concludes. On the rare occasion where she relies on an actual fact from the accident, she "cherry picks" certain facts to support her version of the accident, and "discards" all the other testimony that did not support her version. Indeed, only Vogler, who was retained three (3) years after the accident has developed this unique theory, which is the only one that she believes will absolve her client of some responsibility for the deaths that occurred on May 28, 2010.  Vogler did no crash testing, virtual or otherwise, to test her novel theory. Again, this is not an instance where an expert's opinions should simply be subjected to cross examination. The opinions should be excluded since there is nothing to indicate Vogler either is qualified to give, or has adequate scientific basis for, the reconstruction opinions. Thus, she should not be permitted to testify concerning these opinions. *See Smith v. Rasmussen*, 249 F.3d 755, 758-59 (8th Cir.2001). As the Supreme Court held in *General Electric Co. v. Joiner*, 522 U.S. 136 (1997):

> [N]othing either in Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*Joiner*, 522 U.S. at 146. *See J.B. Hunt Transp., Inc. v. General Motors Corp*., 243 F.3d 441, 444 (8th Cir.2001) ("Expert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis.") (citing *Concord Boat Corp. v. Brunswick Corp*., 207 F.3d 1039, 1057 (8th Cir.2000); *In re Air Crash at Little Rock Ark*., 291 F.3d 503, 514 (8th Cir.2002) (there must be an adequate nexus between scientific theory and

subject of opinion); *Clark v. Takata Corp.*, 192 F.3d 750, 756-57 (7th Cir.1999); *Weisgram v. Marley Co.*, 169 F.3d 514, 521 (8th Cir.1999) (expert testimony not reliable where there is lack of nexus between theory and conclusion). Thus, since Vogler's testimony is not based on expertise or methodology as an accident reconstructionist, the testimony should be excluded.

### b. Vogler's testimony demonstrates that she is not an expert in underride guard design or performance.

In an effort to help her client in its unsuccessful attempt to establish a potential affirmative defense, Vogler has formed opinions in her report and during deposition testimony that address the design and performance of underride guards. However, Vogler's own testimony refutes any claim that she has sufficient foundational expertise to provide such expert testimony.

**Q:** On -- on how many occasions have you given expert testimony regarding the performance of an underride guard?

**A:** Certainly, there's been numerous times over -- oh, I'm sorry, of a rear impact guard?

**Q:** Yes, ma'am.

**A:** This is the first case that I have -- that comes to mind, that I'm giving testimony on.

Vogler Depo at 42:19 – 43:1 (APP 046-047). Thus, Vogler should not be permitted to provide opinions on underride guard design or performance.

### c. Vogler did not follow an acceptable methodology in forming conclusions regarding the performance of underride guards.

Even if Vogler were able to demonstrate an expertise in evaluating underride guards, the facts prove that she did not use a proper methodology to evaluate the performance in this case:

**Q:** My question is: Did you make an assessment that that underride guard that was on the Strick trailer just prior to the impact, did you make an assessment as to whether that underride guard met the 223 Standards?

**A:** Because I don't have all the specifications for it, no, I can't.

**Q:** Did -- did you make an assessment whether that underride guard met the Canadian 223 standard?

> **A:**      Same response.

Vogler Depo at 156:11-19 (APP 052).   Indeed, when questioned regarding what would typically constitute a means by which an expert could determine whether an underride guard performed as intended, the following conversation took place:

> **Q:**      Do you know whether there was any damage to the – that horizontal member of the underride guard?
>
> **A:**      There's evidence of contact during its use.  I can't attribute specifically what occurred during the accident versus what might have been present there before the accident.
>
> **Q:**      Are you –
>
> **A:**      If you're talking about, specifically, that vertical member -- or not vertical, horizontal member.
>
> **Q:**      All right.  You didn't see any bending of that horizontal member, did you?
>
> **A:**      I didn't see photographs in enough detail to be able to quantify or support or refute the presence of bending.

Vogler Depo at 120:18 – 121:5 (APP 050-051).   When asked whether she even investigated whether Strick could manufacture an alternative design to its defective trailer, Vogler did not have an answer:

> **Q:**      And did you reach an opinion as to whether Strick could have put a more energy absorbing underride guard on its trailers?
>
> **A:**      I have not investigated whether they could have or not.

Vogler Depo at 177:1-4 (APP 056).  In other words, Vogler's opinions are conclusory and inadmissible.  *See Viterbo v. Dow Chem. Co*., 826 F.2d 420, 421-22 (5th Cir. 1987) ("it is not so simply because 'an expert says it is so ...; if an expert brings to the court 'little more than his credentials and a subjective opinion,' his opinion amounts to no evidence").  Although Rule 702 does not require absolute certainty, it does mandate that the proffered knowledge be based on "good grounds" and that the testimony is "more than speculative belief or unsupported

speculation." *United States v. Posado*, 57 F.3d 428, 433 (5th Cir.1995)(citing *Daubert*, 509 U.S. at 589-90).

Vogler is clearly not an expert at the task of determining whether an underride guard "performs properly."  She also did not apply any acceptable methodology in arriving at her subjective statements.  Finally, an expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts. *See Guidroz-Brault v. Mo. Pac. R.R. Co.,* 254 F.3d 825, 829-31 (9th Cir. 2001); *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir.1999) ("Expert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence.").  Based on the accurate facts in the record showing that the conveniently missing underride guard did not perform, the Court should preclude the opinions that Vogler seeks to provide.

> **d.** **Vogler's testimony demonstrates that she cannot provide expert testimony regarding the federal requirements to provide underride guard installation instructions or whether Strick complied with the requirements.**

In her report and during her deposition, Vogler provides what she would have the Court accept as expert testimony regarding underride guard installation instructions.  However, the following exchange demonstrates that Vogler (1) does not have a factual background to testify whether Strick provided installation instructions to its distributors; and (2) does not have the requisite expertise to provide such expert testimony.

> **Q:** Are you aware, ma'am, of any instruction that Strick provided to New Life, its parts and equipment distributor?
>
> **A:** I don't know what they provided to New Life.
>
> **Q:** Are you aware of any instructions that Strick provided to Dolphin or Fayard with regard to installation instructions of underride guard?
>
> MR. SELF:  Objection, form.  Self.
>
> **A:** I don't know specifically, no.

**Q:**   And, ma'am, you -- you've never been asked to -- to give your
interpretation of the language in FMVSS 223 or 224, have you?

**A:**   I have not looked at that language before my review of it for this project.

Vogler Depo at 173:4-20 (APP 053).  Consequently, Vogler should be prohibited from

providing any testimony regarding Strick's duty to provide underride guard installation

instructions or whether Strick complied with this duty.

**4.    Vogler's testimony restating alleged facts that are clearly in dispute is not
expert testimony and also cannot serve as the basis for an expert report.**

In other statements in her report and deposition testimony, Vogler clearly assumes the

truth of certain representations she received only from Strick and its attorneys.   Vogler then

adopts those unproven assertions, either as expert opinions or as the basis for her alleged expert

opinions.   For instance, in forming opinions regarding Strick's conduct during its manufacturing

and alleged trailer testing, Vogler's report makes the following uncorroborated statements:

The rear impact guard design that was on the subject Strick trailer at the time of
manufacture complied with the requirements of FMVSS 223 and FMVSS 224.
NHTSA Test No. RIG 9902 performed by KARCO Engineering on July 22, 1999,
demonstrates that the subject impact guard met the force, displacement and
energy requirements of FMVSS 223. While the test report notes that installation
instructions and attachment hardware were included with the impact guard, it
concludes that the guard as-received would not comply with the labeling
requirement because there were no labels attached directly to the rear guard
assembly in its as received condition by KARCO.

Mr. Friedman claims that Strick tested two impact guards in 1998-1999 and that
one failed. Strick has produced 13 tests from this timeframe, 12 of which passed
the newly effective requirements for FMVSS 223. The one design that did not
meet the energy requirement was discontinued by Strick.

Strick engineering drawing M330154 for the rear frame and door assembly shows
that the rear impact guard meets the dimensional and configuration requirements
of FMVSS 224.

The original equipment impact guard assembly on the subject Strick trailer had
been replaced by Dolphin on July 2, 2008. The impact guard that was on the
subject Strick trailer at the time of this accident was not the same impact guard
that was provided on the trailer as original equipment by Strick and does not

appear to be a product manufactured by Strick, <u>as indicated in the testimony of Strick CEO Frank Katz</u>.

<u>The accident-involved design was inconsistent with characteristics of the original impact guard that was on the trailer at the time of manufacture.</u> The horizontal bar that was provided as original equipment on the subject trailer was 94.5 inches long and had holes on the top surface. The horizontal bar that was attached to the subject trailer at the time of this accident was 101 inches long and did not have holes on the top surface.

In addition to these design differences, <u>the impact guard that was on the subject Strick trailer at the time of this accident was attached in a manner inconsistent with the original equipment Strick design.</u> The top surfaces of the vertical gussets were welded directly to the trailer instead of being welded to a baseplate and bolted to the trailer. The bottom surfaces of the vertical gussets were welded directly to the horizontal bumper instead of being welded to a baseplate and bolted to the horizontal bumper.

How can Vogler attest to any of these past acts when she was not present at Strick's manufacturing or shipping premises when these acts allegedly took place?  It is therefore clear from Strick's designation of Vogler that she wishes to testify as to matters of which she has no personal knowledge, to testify as to statements that are hearsay, and to give her unproved opinion on a variety of issues that go to the heart of the claims and defenses in this matter.  In fact, the clear evidence that Vogler has no personal first-hand knowledge about the type or origin of the underride guard that was on the trailer on May 28, 2010 is seen in this passage:

> **Q:**  So, you don't know -- just so that I'm clear, you don't have an expert opinion as to whether that bar was replaced by Dolphin or anyone else, do you?  It's just your testimony that the bar was different from – from other **documents that you've gotten from Strick, where they represented to you as the design characteristics of the original equipment**?
>
> **A:**  That's correct.

Vogler Depo at 57:8-15 (APP 048).   There is additional testimony that demonstrates Vogler has no personal knowledge of Strick's underride guard testing protocol, nor can she verify whether Strick is continuing to manufacture and distribute unsafe trailers:

> **Q:**  Let me hand you what I've marked as Exhibit 13.  Can you identify that?

16

**A:**     Yes.  This is the one-page result that I referred to in my report where an energy criteria was not met.

**Q:**     And -- and isn't it true, Dr. Vogler, that -- that you don't know whether Strick has discontinued that design or not, do you?  I mean, you didn't -- you didn't look at all of Strick's designs to see whether, in fact, they  had discontinued that, did you?

**Q:**     I have -- I did not independently verify it.   <u>I'm aware that Strick has indicated they had</u>.

Vogler Depo at 175:6-16 (APP 055).  In other words, Vogler has no personal knowledge of Strick's design and manufacturing process or the accuracy of the word-processing test results that Strick alleges demonstrates its compliance with FMVSS 223 and 224.  Therefore, Vogler is being used solely as a "hearsay conduit," where Strick tells her that it met its safety obligations and she merely repeats Strick's contentions.  Courts faced with similar issues have cautioned against situations such as this where the witness is used as little more than a conduit for the testimonial hearsay, rather than "a true expert whose considered opinion sheds light on some specialized factual situation." *See U.S. v. Mejia,* 545 F.3d 179, 197 (2d Cir. 2008); *U.S. v. Dixon*, 413 F.3d 520, 524-25 (5th Cir. 2005), aff'd 548 U.S. 1 (2006); *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir.2009); *see also Davis v. Washington*, 547 U.S. 813, 826 (2006) (excluding note-taking policeman's testimony since it recites declarant's unsworn testimony from a report). In fact, it was evident during Vogler' deposition that she is not testifying about any independent judgments she may have formed based upon any expert analysis. Instead, she merely recites the statements of Strick's "selected" witnesses and adopts these alleged facts as her own.  However, cloaking Vogler' inadmissible testimonial hearsay as expert opinions does not redeem the character of the evidence.  Courts agree that "allowing a witness to simply parrot ... out-of-court testimonial statements directly to the jury in the guise of expert opinion" would provide an end run around Crawford, and this we are loathe to do." *See Mejia,* 545 F.3d at197; *United States v. Lombardozzi*, 491 F.3d 61, 72 (2d Cir.2007).  See also, *Paulson v. Plainfield Trucking, Inc*.,

2003 WL 25771979 (D.Minn. Nov 21, 2003)(Plainfield may not make otherwise inadmissible conclusions or opinions admissible simply by passing them through its expert. For instance, the Jury, alone, will decide if it was possible for Paulson to pass the Plainfield vehicle on the right shoulder of the roadway. Lastly, McBride will not be allowed to testify to the credibility of any witness, and he certainly will be prohibited from offering any opinion on the issue of fault.)

In this case, however, Plaintiffs will be unable to cross Vogler on the many prejudicial statements she is providing since she did not undertake any type of investigation to determine the accuracy of the statements she is repeating and has no first-hand knowledge.  Therefore, these hearsay statements parading as expert testimony should be excluded.

> **5.     Vogler acknowledges that she did not follow an acceptable methodology analyzing the weld job on the underride guard and should not be permitted to offer speculative opinions.**

Among the issues raised by Strick and other defendants are whether the exercise of welding the Strick underride guard onto the trailer was appropriate and whether the weld that existed on May 28, 2010, if any, was compliant with FWVSS 223/224 or constituted shoddy workmanship.   In the Vogler Report, she makes the following statement:

> Following the accident, the subject impact guard was photographed but not retained. **While the photographs depict the general post-accident condition of the guard, they do not provide sufficient detail and clarity to evaluate the quality of the welded attachments**. There are potential areas of rust indicated on the weld surface which may suggest an incomplete weld, however without the ability to perform a metallurgical examination and analysis of the actual welds, **there exists insufficient information to opine about the weld quality** outside of an evaluation of the impact guard performance in the subject crash.

APP 034.  Vogler also makes clear in her deposition that she cannot determine the quality of the weld on the underride guard sufficiently for her to be able to render an expert opinion:

> **Q:**     Your opinion is -- is simply that the -- that the resolution of the photographs don't allow you to form an opinion regarding the sufficiency of the well; is that right?

**A:**    That they -- that they don't provide clear evidence, one way or the other, as to the attachment, just those photographs.

Vogler Depo at 57:24 – 58:5 (APP 048-049).  Nevertheless, although Vogler admits that she is unable sufficiently to evaluate the actual weld job on the dislodged Strick underride guard (since none of the defendants preserved this crucial evidence), she continues and purports to provide an opinion on the performance of a weld job for which she had insufficient information to evaluate.  This is the epitome of an expert providing unsupported and conclusory opinions solely to support her client's litigation position.  Since any conclusion Vogler would provide regarding weld jobs is unsupported by forensic evidence and relies on a faulty methodology called "speculation," her opinions should be excluded.

**6.    Vogler should not be permitted to discuss or give any opinions that are not contained in the Vogler Report.**

During her deposition, Vogler often gave solicited opinions solicited from Defendants regarding matters outlying to the Vogler Report.  For instance, she made cursory statements regarding general accident survivability, etc.  However, the record is clear that Vogler's "expert" opinions are contained solely in the Vogler Report.  Accordingly, Vogler should be precluded from giving any opinions regarding the May 28, 2010, accident other than the opinions expressed in the Vogler Report, and then only to the extent these opinions are not limited or excluded by an Order on this motion or during consideration of Plaintiffs' Motion *in limine*.

**7.    Vogler should not be permitted to discuss or give opinions on a "crash test" that was allegedly conducted by Exponent.**

During her deposition, Vogler acknowledged that she viewed a December 17, 2013, crash test done by Exponent.  The Toyota Defendants have indicated that they plan to introduce this video footage and the related testimony of Mickey Marine, who was hired by Toyota to conduct this test.  The problem with this footage and related testimony is that the crash test does not even

purport to be substantially similar to, or a replication of, the accident that happened on May 28, 2010, wherein multiple vehicles and multiple impacts of moving vehicles were involved.   In other words, although the video is represented to be a "potential" re-enactment of a single event during the May 28, 2010, crash it is clearly not substantially similar to the underlying accident. Because of the material differences between the crash test and the underlying accident, the video and all testimony related to it must be excluded.   *See e.g. Hafstienn v. BMW of N. Am., LLC*, 194 Fed.Appx. 209, 213 (5th Cir.2006) (evidence of crash tests properly excluded where there are "material differences between the accident and the crash test."); *see also, Barnes v. General Motors Corp.*, 547 F.2d 275 (5th Cir.1977); *Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279 (Tex.1964). Thus, Vogler's reliance on the test and video must also be excluded.

In the event defendants contend that the crash test was not designed to constitute a re-enactment of the May 28, 2010, crash, the Fifth Circuit has already addressed this issue:

> When the demonstrative evidence is offered only as an illustration of general scientific principles, not as a reenactment of disputed events, it need not pass the substantial similarity test. Such demonstrative aids, however, must not be misleading in and of themselves, and one such way that a demonstration might mislead is when ... the demonstration resembles the disputed accident.

*Muth v. Ford Motor Co.*, 461 F.3d 557, 566 (5th Cir.2006). In *Muth*, the district court rejected the proffered demonstration as insufficiently similar, but too closely resembling the disputed accident to effectively present abstract principles without misleading the jury. *Id*. The Fifth Circuit upheld the district court's determination, noting that the similarities between the crash test and the accident at issue heightened the prejudicial effect of the evidence, and this prejudicial effect was sufficient to justify the exclusion of the evidence. *Id*. at 567.  This rationale is equally applicable here.  Toyota's experts have opined that the vehicles in the crash test were identical to the 4Runner and the Volvo tractor and trailer involved in the May 28, 2010, accident.  Toyota

also notes that both the December 17, 2013, crash test and the May 28, 2010 accident involved circumstances (e.g. speeds and impact conditions) similar to those proffered by one or more of the experts in this case.  Therefore, this Court should conclude, as *Muth* did, that the similarities between the crash test and the accident at issue heightens the prejudicial effect of the evidence, and that this prejudicial effect is sufficient to justify the exclusion of the evidence.

Furthermore, Plaintiffs note that Toyota's witnesses have also acknowledged that the narrator, whose voice is heard on the walk-up portion of the crash test videotape allegedly describing the result of the test, is Kurt Kern, Toyota's lead trial counsel.   Plaintiffs were not provided with the opportunity to have representatives, *i.e.,* a videographer, a photographer, an attorney, and an expert, present at this particular test, or during any crash test or any test involving vehicle-to vehicle collisions conducted by defendants that may pertain to this case. Therefore, the conditions under which this test was performed and the suspect nature of it are additional reasons the tape and accompanying testimony should be excluded.  Moreover, the Court should also exclude this evidence since the danger of unfair prejudice or confusion posed by this subjective evidence substantially outweighs its probative value. FED.R.EVID. 403.  Thus, this video footage, and the accompanying testimony is excludable since it clearly is not reliable or relevant evidence on which any expert should rely to form opinions. Thus, reliance Vogler may have had, if any, on the crash tests should likewise be excluded.

### 8.      Vogler's testimony is also inadmissible under FED.R.EVID. 403.

Vogler's purported expert testimony should be excluded also because its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  FED.R.EVID. 403; *Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the

judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."); s*ee also, E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005); *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex.App.—Dallas 1995, writ denied) ("courts should exclude . . . evidence [when] the expert's opinion would be more likely to prejudice or confuse than to assist the trier of fact."). A review of the Vogler Report shows that it contains subjective conclusions that are not based on any relevant and reliable independent evaluations undertaken by Vogler. First, it is clear that Vogler relies completely on improperly evaluated Strick-produced materials for her opinions. Second, Vogler provides testimony on a myriad subjects and claims to be an expert in each subject matter. This clearly evinces that Vogler's testimony is tailored to suit Strick's litigation strategy, without resort to the true facts. *See McLean* 224 F.3d at 800-01 ("[A]n expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by good grounds, based on what is known.") (quoting *Pomella v. Regency Coach Lines, Ltd*., 899 F.Supp. 335, 342 (E.D.Mich.1995)). An expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts. *See Guidroz-Brault,* 254 F.3d at 829-31; *Greenwell,* 184 F.3d at 497 ("Expert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence.").

Vogler's subjective conclusions and pronouncements should not be labeled as "expert opinions," particularly because she does not hold the expertise she professes to possess, her opinions are neither relevant nor reliable, her opinions are not based on accepted engineering principles, her opinions are biased, and her testimony would serve only to confuse and mislead a jury that her conclusory statements are supposedly expert opinions.

### III.    <u>CONCLUSION</u>

Permitting Vogler to testify without her having applied a proper methodology in the analysis and without having considered all of the relevant evidence would cause severe prejudice to Plaintiffs.   It is also clear that Vogler is ether not qualified or simply chose not to utilize a methodology used by other experts in the field.   Plaintiffs therefore request that the Court strike the Vogler Report and accompanying testimony, not consider the same as evidence, and grant Plaintiffs such other and further relief, in law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted,

/s/ Aubrey "Nick" Pittman_____
AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

/s/ Daryl K. Washington_____
DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned certifies that a face-to-face conference on this motion was held on March 7, 2014, with counsel for all defendants, during which time defendants' counsel indicated they were opposed to the relief being sought in this motion.   Accordingly, Plaintiffs present this matter to the Court for resolution.

   /s/ Aubrey "Nick" Pittman

AUBREY "NICK" PITTMAN

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2014 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

  /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN