IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, <br><br>    Plaintiffs, <br><br>v. <br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC. <br><br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § | CAUSE NUMBER: 3:11-cv-0207-N |

**PLAINTIFFS' MOTION TO EXCLUDE THE REPORT
AND TESTIMONY OF MICKEY MARINE AND BRIEF IN SUPPORT**

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax

**ATTORNEYS FOR PLAINTIFFS**

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax

**TABLE OF CONTENTS**
TABLE OF CONTENTS ................................................................................................................ ii
TABLE OF AUTHORITIES ........................................................................................................... iii
I.      SUMMARY OF ARGUMENT ................................................................................... 1
II.     ARGUMENT AND AUTHORITIES ........................................................................... 1
        A.   Governing Principles Applicable to Defendants' Proffer of This Testimony. ........... 1
        B.   The Nature of The Alleged Testimony Sought to Be Introduced. ............................ 3
        C.   Grounds Upon Which to Exclude Defendants' Experts. ........................................... 4
             1.   Marine has not included any "opinions" in a written report and should not be permitted to discuss or give any expert opinions. ........................... 4
             2.   Marine should not be permitted to discuss or give opinions on the dissimilar "crash test" that was allegedly conducted by Exponent. ............ 5
             3.   In the alternative, Marine should not be permitted to testify to any "observation" other than the one identified in the Marine Report. ............. 7
             4.   Marine's testimony is not grounded on sufficient facts or data and is not the product of reliable principles and methods. ................................... 8
             5.   Marine's testimony is also inadmissible under FED.R.EVID. 403. ............... 9
III.    CONCLUSION ............................................................................................................. 10
CERTIFICATE OF CONFERENCE ............................................................................................ 12
CERTIFICATE OF SERVICE ..................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Allison v. McGhan Medical Corp.*, 184 F.3d 1300 (11th Cir.1999) .................................................. 3

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir.2002) ......................................... 2

*Barnes v. General Motors Corp.*, 547 F.2d 275 (5th Cir.1977) ....................................................... 6

*Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir.1994) .................................................................. 2

*Cummins v. Lyle Indus.*, 93 F.3d 362 (7th Cir.1996). ...................................................................... 3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ................................... passim

*E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005) .......................................... 9

*Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623 (Tex. 2002) .............................................................. 9

*Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279 (Tex.1964) ....................................... 6

*Hafstienn v. BMW of N. Am., LLC*, 194 Fed.Appx. 209 (5th Cir.2006) ......................................... 6

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir.1994) ...................................................... 2, 8

*Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137 (1999) .............................................................. 3

*Muth v. Ford Motor Co.*, 461 F.3d 557 (5th Cir.2006) .................................................................... 6

*N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90 (Tex.App.—Dallas 1995, writ denied) .. 9

*Salamone v. Wal–Mart Stores East, LP*, 2011 WL 2787788 (E.D.Pa. July 15, 2011) ................... 9

*Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940 (7th Cir.1997 .................................................. 2

*Smelser v. Norfolk Southern Railway*, 105 F.3d 299 (6th Cir.1997). .............................................. 2

*United States v. Bonds*, 12 F.3d 540 (6th Cir.1993) ........................................................................ 3

*Weisgram v. Marley Company*, 169 F.3d 514 (8th Cir.1999) ......................................................... 3

**Rules**

FED.R.CIV.P. 26(a)(2)(B)(i) ............................................................................................................. 4

FED.R.EVID. 403 ....................................................................................................................... passim

FED.R.EVID. 702 .................................................................................................................... 1, 2, 3, 9

...........................................................................................................................................................

**PLAINTIFF'S MOTION TO STRIKE AND/OR EXCLUDE
DEFENDANT'S DESIGNATED EXPERT AND ACCOMPANYING TESTIMONY**

Ollie Greene, Individually and as parent of Wyndell Greene, Sr., William Greene, as Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and the parent of LaKeysha Greene (collectively "Plaintiffs") file this motion to strike and/or exclude the testimony of Defendants' designated expert, Mickey Marine ("Marine") and in support thereof shows the Court as follows:

### I.   SUMMARY OF ARGUMENT

Marine's testimony does not meet the requirements of FED.R.EVID. 702 and *Daubert* because (1) he is not qualified to give expert opinions on certain matters for which he is being offered; (2) it is not based upon scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) it is not based on sufficient facts or data and is not the product of reliable principles and methods that they have applied reliably to the facts of the case. Plaintiffs further contend that the proposed testimony should be excluded pursuant to FED.R.EVID. 403 because consideration of the testimony will result in confusion of the issues and misleading the jury.

### II.   ARGUMENT AND AUTHORITIES

**A.   Governing Principles Applicable to Defendants' Proffer of This Testimony.**

*Daubert* and Federal Rule of Evidence 702 require that trial courts perform a "gate-keeping role" when considering the admissibility of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and

1

>   (3) the witness has applied the principles and methods reliably to the facts of the case.

FED.R.EVID. 702.

The court's gate-keeping role is two-fold. First, the court must determine whether the testimony is reliable. See *Daubert*, 509 U .S. at 590. The reliability analysis focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* A district court assessing the admissibility of expert testimony under FED.R.EVID. 702 serves a "gatekeeping" function: "it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir.2002) (quoting Daubert 509 U.S. at 597. The proponent of the testimony must establish, by a preponderance of the evidence, that the expert's testimony is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir.1994). In addition, a court may consider "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying" because the former "provides important, objective proof that the research comports with the dictates of good science." *Smelser v. Norfolk Southern Railway*, 105 F.3d 299, 303 (6th Cir.1997). Another factor that may be considered by the court is "[w] hether the expert has adequately accounted for obvious alternative explanations." FED.R.EVID. 702 advisory committee's note (citing *Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir.1994)). Finally, the court may consider "[w] hether the expert 'is being as careful as he would be in his regular professional work outside his paid litigation consulting.'" FED.R.EVID. 702 advisory committee's note (quoting *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir.1997)).

The Supreme Court has emphasized that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial court may consider one or more of the *Daubert* factors

2

when doing so will help determine that expert's reliability. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant. See *Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. See *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir.1993). Thus, an expert's testimony is admissible under Rule 702 only if it is predicated upon a reliable foundation and is relevant. Furthermore, although a witness may be qualified as an expert in one area of expertise, the expert may be precluded from offering opinions beyond that area of expertise or which are not founded on a reliable methodology. See, e.g.*, Kumho Tire*, 526 U.S. at 154-55; *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1317-19 (11th Cir.1999); *Weisgram v. Marley Company*, 169 F.3d 514, 518 (8th Cir.1999); *Cummins v. Lyle Indus.*, 93 F.3d 362, 371 (7th Cir.1996).

   **B.**  **The Nature of The Alleged Testimony Sought to Be Introduced.**

On or about December 20, 2013, the Toyota Defendants served a copy of Marine's expert report (the "Marine Report") on Plaintiffs. See APP 001-0124. During Marine's deposition, which was taken on February 12, 2014, when asked to provide a summary of his role as a potential expert in this case, the following exchange occurred:

  **Q:**  Sir, has it been provided to you what your -- what your role is in this case?

  **A:**  My understanding is that I was to coordinate the crash tests that I ran on December 17th.

  **Q:**  And what is your role in terms of testimony to be provided to a judge or jury?

  **A:**  The only role I know of is to appear here in -- in front of you for this deposition. I've not -- not discussed any further role than that.

3

**Q:** So it -- it's your understanding that your role was simply to arrange the crash test?

**A:** That's correct.

**Q:** And was it your role to give any opinions regarding the crash test?

**A:** No, no opinions. No, sir.

**Q:** And -- and you're not here to testify as a design expert on whether there were any defective designs in any of the vehicles or trailers involved?

**A:** I'm not here to -- to testify and offer opinions in -- in those areas, that's correct.

**Q:** And you're not here to testify as to the cause and mechanism of the deaths of any of the members of the Greene family?

**A:** That's correct.

Marine Depo at 11:15 – 12:14 (APP 128-29).  For the reasons explained herein, Plaintiffs ask that the Court exclude and/or limit Marine's Report, opinions and testimony.

    **C.**    **Grounds Upon Which to Exclude Defendants' Experts.**

        **1.**    **Marine has not included any "opinions" in a written report and should not be permitted to discuss or give any expert opinions.**

The Marine Report consists solely of a December 17, 2013, "single-moving-vehicle crash test," unwitnessed by Plaintiffs' experts, allegedly using a stationary 2010 Toyota 4Runner as the "target vehicle" and a moving 2008 Volvo 630/1981 Great Dane flat-bed trailer as the "bullet vehicle" FED.R.CIV.P. 26(a)(2)(B)(i) provides that an expert report must include "a complete statement of all opinions the witness will express and the basis and reasons for them." In the Marine Report, however, there are no "opinions" expressly listed.  In fact, during his deposition, when asked whether the Marine Report contains any expert opinions, Marine testified as follows:

**Q:** Let me hand you now what I've marked as Exhibit 11.  Can you identify Exhibit 11?

**A:** Exhibit 11 appears to be the test report from the crash test that I coordinated on December 17th, 2013.

**Q:** Is Exhibit 11 a document that you prepared?

**A:** Largely, yes.

4

| | | |
|---|---|---|
| **Q:** | What does largely mean? | |
| **A:** | Well, we have a data processing person that takes the data and actually makes the plots. We have another person that organizes the photographs, and so their contributions contributed to this report. | |
| **Q:** | <u>And are there any opinions reflected in Exhibit 12 -- I'm sorry, Exhibit 11</u>? | |
| **A**: | <u>I don't believe there are any opinions</u>. | |
| **Q**: | Is there -- is there any written document that would contain any opinions you've reached in this case? | |
| **A**: | I've not written up such a document. | |

Marine Depo at 28:17 – 29:12 (APP 0133-34). In fact, there is no showing that Marine is even qualified to form any expert opinions in this matter, even if there had been opinions written in the report. Marine also admits that he has never testified as an expert. Marine Depo at 70:4-6 (APP 0137). Accordingly, since Marine has not provided any written opinions should be prohibited from providing any testimony in this matter and the Marine Report as well as its crash test, which are unreliable and not the subject of an acceptable methodology, should be precluded in their entirety.

      **2.**      **Marine should not be permitted to discuss or give opinions on the dissimilar "crash test" that was allegedly conducted by Exponent.**

The Marine Report makes reference to the single-moving-vehicle crash test and includes various photographs that are purported to be photographs depicting this alleged test. Toyota has indicated that it plans to introduce the video footage of this crash test and the related testimony of Marine, who was hired by Toyota to conduct this test. The problem with this footage, the photographs and related testimony is that the crash test does not even purport to be substantially similar to, or a replication of, the May 28, 2010, accident, wherein multiple vehicles and multiple impacts of moving vehicles were involved. Indeed, Marine could not have set up a proper test since he admits that he is not even aware of the full sequence of events of the May 28, 2010, crash. Marine Depo at 29:13-19 (APP 0134). In other words, although the video is represented

5

to be a "potential" re-enactment of a single event that occurred during the May 28, 2010, crash it is clearly not substantially similar to the underlying accident. Because of the material differences between the crash test and the underlying accident, the video and all testimony related to it must be excluded. *See e.g. Hafstienn v. BMW of N. Am., LLC*, 194 Fed.Appx. 209, 213 (5th Cir.2006) (evidence of crash tests properly excluded where there are "material differences between the accident and the crash test."); *see also, Barnes v. General Motors Corp.*, 547 F.2d 275 (5th Cir.1977); *Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279 (Tex.1964).

In the event Toyota contends that the crash test was not designed to constitute a re-enactment of the May 28, 2010, crash, the Fifth Circuit has already addressed this issue:

> When the demonstrative evidence is offered only as an illustration of general scientific principles, not as a reenactment of disputed events, it need not pass the substantial similarity test. Such demonstrative aids, however, must not be misleading in and of themselves, and one such way that a demonstration might mislead is when ... the demonstration resembles the disputed accident.

*Muth v. Ford Motor Co.*, 461 F.3d 557, 566 (5th Cir.2006). In *Muth*, the district court rejected the proffered demonstration as insufficiently similar, but too closely resembling the disputed accident to effectively present abstract principles without misleading the jury. *Id*. The Fifth Circuit upheld the district court's determination, noting that the similarities between the crash test and the accident at issue heightened the prejudicial effect of the evidence, and this prejudicial effect was sufficient to justify the exclusion of the evidence. *Id*. at 567. This rationale is equally applicable here. Toyota's expert opined that the vehicles in the crash test were identical to the 4Runner and the Volvo tractor and trailer involved in the May 28, 2010, accident. Toyota also notes that both the crash test and the May 28, 2010 accident involved circumstances (e.g. speeds and impact conditions) similar to those suggested by one or more of the experts in this case.

6

Therefore, this Court should conclude, as *Muth* did, that the similarities between the crash test and the accident at issue heightens the prejudicial effect of the evidence, and that this prejudicial effect is sufficient to justify the exclusion of the evidence.

Furthermore, Plaintiffs would note that Marine has also acknowledged that the narrator, whose voice is heard on the walk-up portion of the crash test videotape, allegedly describing the results of the test is Kurt Kern, who is Toyota's lead trial counsel. Marine Depo at 42:17 – 43:17 (APP 0135-36). This is hardly independent expert testimony. Indeed, Plaintiffs were not provided with the opportunity to have representatives, *i.e.,* a videographer, a photographer, an attorney, and an expert, present at this particular test, or during any crash test or any test involving vehicle-to vehicle collisions conducted by defendants that may pertain to this case. In addition, Toyota did not use high-speed cameras underneath the crash vehicle to detect the motion of the defective fuel system components or the presence of the fuel leak, although Marine acknowledges that NHTSA crash tests are known to use high-speed cameras underneath a crash vehicle to be able to evaluate such results. Marine Depo at 26:15 – 28:6 (APP 0131-33).

Therefore, the conditions under which this test was performed and the suspect nature of it (e.g. being narrated by Toyota's trial counsel and refusing to include cameras directed towards the fuel system components alleged to be defective) are additional reasons the video footage, photographs and accompanying testimony should be excluded. Moreover, the Court should also exclude this evidence since the danger of unfair prejudice or confusion posed by this subjective evidence substantially outweighs its probative value, if any. FED.R.EVID. 403. Thus, this video footage, photographs, and all accompanying testimony is excludable since it is clearly not reliable or relevant evidence on which Marine, or any expert, should rely to form opinions.

### 3. In the alternative, Marine should not be permitted to testify to any "observation" other than the one identified in the Marine Report.

7

In the event the Court allows the evidence of the crash tests and allows Marine to testify, his testimony should be restricted solely to the one-sentence "test result 'observation'" listed in the Marine Report. As discussed above, Marine admits that the Marine Report contains no written expert opinions. See, Marine Depo at 28:17 – 29:12 (APP 0133-34). Therefore, no opinions should be provided. Indeed, even when Toyota's counsel, David Stone, questioned Marine, he remained steadfast that he simply had an observation, not an expert opinion:

> **Q:** And have you set forth in your test report the result of your inspection as to whether or not there was any fuel or Stoddard solvent that leaked from the fuel system?
>
> MR. PITTMAN: Objection to form.
>
> **A:** I did, yes.
>
> **Q:** And what is the test result, sir?
>
> **A:** I did not observe any Stoddard.
>
> **Q:** And is that an <u>**opinion** or a suggestion or is that just a flat-out fact, sir</u>?
>
> MR. PITTMAN: Objection to form.
>
> **A:** <u>That's my observation</u>.

Marine Depo at 96:10-22 (APP 0138). Accordingly, even if the Court allows any testimony from Marine, it would be limited to his lay observation, which must not be expressed as an expert opinion.

### 4. Marine's testimony is not grounded on sufficient facts or data and is not the product of reliable principles and methods.

An expert's testimony must also "fit" the facts of the case. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742–43 (3d Cir.1994). To assess reliability of expert testimony, courts consider whether the expert opinion is based on methods and procedures of science rather than the expert's subjective belief or unsupported speculation. *In re Paoli*, 35 F.3d at 742. Factors guiding this analysis include: (1) whether the method features a testable hypothesis; (2) whether

8

the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the technique is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the expert's qualifications to testify based on the methodology; and (8) the method's history of non-judicial uses. Id. at 742 n. 7; *see also Salamone v. Wal–Mart Stores East, LP*, 2011 WL 2787788, at *1 (E.D.Pa. July 15, 2011). Marine's Report and testimony fails each of these elements.

Expert opinions are admissible only if they are the product of reliable principles and methods. FED R.EVID. 702 advisory committee's note; *Daubert*, 509 U.S. at 591-95. The Texas Supreme Court has also held "expert testimony is unreliable if it is not grounded 'in the methods and procedures of science' and is no more than 'subjective belief or unsupported speculation.'" *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002) (quoting *Robinson*, 923 S.W.2d at 556 (quoting *Daubert*, 509 U.S. at 590)). The record in this case will demonstrate that any opinion that would be expressed by Marine falls woefully short of being reliable. His observations and opinions, if given, are simply subjective opinions and observations, prepared strictly for this litigation and are tailored solely to benefit Toyota in this litigation.

### 5. Marine's testimony is also inadmissible under FED.R.EVID. 403.

An additional ground for excluding Marine's testimony and crash tests is because its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. FED.R.EVID. 403; *Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."); s*ee also,*

*E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005); *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex.App.—Dallas 1995, writ denied) ("courts should exclude . . . evidence [when] the expert's opinion would be more likely to prejudice or confuse than to assist the trier of fact."). A review of the Marine Report shows that it contains a subjective and lay observation and is not based on any independent evaluations undertaken by Marine for the purpose of forming an independent expert opinion. There is simply so much missing from the testing protocol, crash parameters, and the video footage that Marine's subjective conclusions and observations (and video footage narrated by Toyota's trial counsel) should not be anointed with the label of "expert opinions," particularly because such opinions are neither relevant nor reliable, are not based on accepted engineering principles, are biased, and would serve only to confuse and mislead a jury that these are supposedly expert opinions.

### III.     CONCLUSION

Permitting Marine to testify without him having applied the proper methodology in the crash test and without having considered all of the relevant evidence regarding the full nature of the May 28, 2010 accident would cause severe prejudice to Plaintiffs. It is also clear that Marine is ether not qualified to form written expert opinions or simply chose not to utilize a methodology used by other experts in the field. Plaintiffs therefore request that the Court strike the Marine Report and accompanying evidence as well as Marine's testimony, not consider the same as evidence, and grant Plaintiffs such other and further relief, in law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted,

/s/ Aubrey "Nick" Pittman                              AUBREY "NICK" PITTMAN

State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

/s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that a face-to-face conference on this motion was held on March 7, 2014, with counsel for all defendants, during which time defendants' counsel indicated they were opposed to the relief being sought in this motion. Accordingly, Plaintiffs present this matter to the Court for resolution.

    /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2014 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

      /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN