## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE,** | § § § § § § § § | |
| **Plaintiffs,** | § | |
| **v.** | § § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| **TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC.** | § § § § § § § § § § § § § | |
| **Defendants.** | § | |

---

## PLAINTIFFS' MOTION TO EXCLUDE
## THE REPORT AND TESTIMONY OF RICHARD A. DYER AND BRIEF IN SUPPORT

---

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax

**ATTORNEYS FOR PLAINTIFFS**

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax

TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES.......................................................................................................... iii

I.     SUMMARY OF ARGUMENT ........................................................................................ 1

II.    ARGUMENT  AND AUTHORITIES ............................................................................. 1

     A.    Governing Principles Applicable to Defendants' Proffer of This Testimony. ........... 1

     B.    The Nature of The Alleged Expert Testimony Sought to Be Introduced................... 3

     C.    Grounds Upon Which to Exclude Defendant's Expert. ............................................ 4

          1.    Dyer's testimony is not grounded on sufficient facts or data and is
                  not the product of reliable principles and methods. .................................... 4

          2.    Dyer is not qualified to provide expert opinions on many areas where
                  he purports to provide "additional" opinions............................................. 5

               a.    Dyer is not an expert accident reconstructionist and should
                       not be permitted to discuss or give any testimony or opinions
                       regarding any alleged reconstruction of the May 28, 2010,
                       accident. .......................................................................................... 6

               b.    Dyer was not designated as a design expert, is not a design
                       expert, and should not be permitted to discuss or give opinions
                       regarding vehicle or trailer design issues. ...................................... 7

           3.    Dyer should not be permitted to discuss or give opinions that are
                    not contained in the Dyer Report. ............................................................... 8

          4.    Dyer should not be permitted to discuss or give opinions regarding
                    the nature or cause of the breach of the Toyota 4Runner's fuel system. .... 9

          5.    Dyer should not be permitted to discuss or give opinions on a
                    "crash test" that was allegedly conducted by Exponent. ........................... 9

          6.    Dyer should not be permitted to discuss or give opinions on the
                    reports and testimony of Lee Carr and Defendants' other experts. .......... 11

          7.    Dyer's testimony is also inadmissible under FED.R.EVID. 403. ............... 12

III.   CONCLUSION .............................................................................................................. 13

CERTIFICATE OF CONFERENCE............................................................................................ 15

CERTIFICATE OF SERVICE .................................................................................................... 16

## TABLE OF AUTHORITIES

### Cases

*Allison v. McGhan Medical Corp.*, 184 F.3d 1300 (11th Cir.1999) .............................................. 3, 5

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir.2002) ................................... 2

*Barnes v. General Motors Corp.*, 547 F.2d 275 (5th Cir.1977) ................................... 10

*Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir.1994) ................................................. 2

*Cummins v. Lyle Indus.*, 93 F.3d 362 (7th Cir.1996). ................................................. 3, 5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)............................... passim

*E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005)...................................... 12

*Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623 (Tex. 2002) ............................................ 4

*First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135 (5th Cir.1996) ........................... 5

*Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279 (Tex.1964)................................. 10

*Greenwell v. Boatwright*, 184 F.3d 492 (6th Cir.1999) ................................................. 13

*Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825 (9th Cir. 2001)............................................ 13

*Hafstienn v. BMW of N. Am., LLC*, 194 Fed.Appx. 209 (5th Cir.2006) ...................................... 10

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir.1994) ................................................. 2, 4

*In re Polypropylene Carpet Antitrust Litig.*, 93 F.Supp.2d 1348 (N.D.Ga.2000) ........................... 12

*Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137 (1999).................................................. 3, 5

*McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797 (6th Cir.2000)...................................................... 13

*Muth v. Ford Motor Co.*, 461 F.3d 557 (5th Cir.2006)................................................. 10

*N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90 (Tex.App.—Dallas 1995, writ denied)  12

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239 (5th Cir.2002). ................................................. 5

*Pomella v. Regency Coach Lines, Ltd.*, 899 F.Supp. 335 (E.D.Mich.1995)................................ 13

*Ross v. Ford Motor Co.*, 2003 WL 25773619 (D.Neb. Jul 25, 2003) ........................................... 8

*Salamone v. Wal–Mart Stores East, LP*, 2011 WL 2787788 (E.D.Pa. July 15, 2011).................. 4

*Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940 (7th Cir.1997 ...................................... 2

*Smelser v. Norfolk Southern Railway*, 105 F.3d 299 (6th Cir.1997). ..................................... 2

*TK–7 Corp. v. Estate of Barbouti*, 993 F.2d 722 (10th Cir.1993) ................................................. 12

*United States v. Bonds*, 12 F.3d 540 (6th Cir.1993)........................................................ 3

*United States v. Bourgeois*, 950 F.2d 980 (5th Cir.1992).................................................. 5

*United States v. Johnson*, 575 F.2d 1347 (5th Cir.1978)................................................. 5

*Weisgram v. Marley Company*, 169 F.3d 514 (8th Cir.1999) ...................................... 3, 5

iii

**Rules**

FED.R.EVID. 403 ................................................................................................................ passim

FED.R.EVID. 702 ................................................................................................................ 1, 2, 3, 4

**PLAINTIFF'S MOTION TO STRIKE AND/OR EXCLUDE**
**DEFENDANT'S DESIGNATED EXPERT AND ACCOMPANYING TESTIMONY**

Ollie Greene, Individually and as parent of Wyndell Greene, Sr., William Greene, as Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and the parent of LaKeysha Greene (collectively "Plaintiffs") file this motion to strike and/or exclude the testimony of Defendants' designated expert, Richard A. "Smokey" Dyer ("Dyer"), and in support thereof shows the Court as follows:

## I.     SUMMARY OF ARGUMENT

Dyer's testimony does not meet the requirements of FED.R.EVID. 702 and *Daubert* because (1) he is not qualified to give expert opinions on certain matters for which he is being offered; (2) it is not based upon scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) it is not based on sufficient facts or data and is not the product of reliable principles and methods that they have applied reliably to the facts of the case.  Plaintiffs further contend that the proposed testimony should be excluded pursuant to FED.R.EVID. 403 because consideration of the testimony will result in confusion of the issues and misleading the jury.

## II.     ARGUMENT  AND AUTHORITIES

### A.     Governing Principles Applicable to Defendants' Proffer of This Testimony.

*Daubert* and Federal Rule of Evidence 702 require that trial courts perform a "gate-keeping role" when considering the admissibility of expert testimony.  *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 597 (1993).  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and

(3) the witness has applied the principles and methods reliably to the facts of the case.

FED.R.EVID. 702.

The court's gate-keeping role is two-fold. First, the court must determine whether the testimony is reliable. See *Daubert*, 509 U .S. at 590. The reliability analysis focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* A district court assessing the admissibility of expert testimony under FED.R.EVID. 702 serves a "gatekeeping" function: "it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir.2002) (quoting *Daubert* 509 U.S. at 597. The proponent of the testimony must establish, by a preponderance of the evidence, that the expert's testimony is reliable. *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 744 (3d Cir.1994). In addition, a court may consider "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying" because the former "provides important, objective proof that the research comports with the dictates of good science." *Smelser v. Norfolk Southern Railway*, 105 F.3d 299, 303 (6th Cir.1997). Another factor that may be considered by the court is "[w] hether the expert has adequately accounted for obvious alternative explanations." FED.R.EVID. 702 advisory committee's note (citing *Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir.1994)). Finally, the court may consider "[w] hether the expert 'is being as careful as he would be in his regular professional work outside his paid litigation consulting.'" FED.R.EVID. 702 advisory committee's note (quoting *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir.1997)).

The Supreme Court has emphasized that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial court may consider one or more of the *Daubert* factors

when doing so will help determine that expert's reliability. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant. See *Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. See *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir.1993). Thus, an expert's testimony is admissible under Rule 702 only if it is predicated upon a reliable foundation and is relevant. Furthermore, although a witness may be qualified as an expert in one area of expertise, the expert may be precluded from offering opinions beyond that area of expertise or which are not founded on a reliable methodology. See, e.g.*, Kumho Tire*, 526 U.S. at 154-55; *Allison v. McGhan Medical Corp*., 184 F.3d 1300, 1317-19 (11th Cir.1999); *Weisgram v. Marley Company*, 169 F.3d 514, 518 (8th Cir.1999); *Cummins v. Lyle Indus*., 93 F.3d 362, 371 (7th Cir.1996).

**B.     The Nature of The Alleged Expert Testimony Sought to Be Introduced.**

On or about December 20, 2013, the Toyota Defendants served Plaintiffs with a copy of Dyer's expert report (the "Dyer Report"). See APP 001-070. During Dyer's deposition, which was taken on February 10, 2014, when asked to provide a summary of his role as a potential expert in this case, the following exchange occurred:

> **Q:**     Are you aware that you have been designated to provide expert testimony in this case?
>
> **A:**     Yes, sir, I am.
>
> **Q:**     And what is your purpose and function in this case?
>
> **A:**     As I understand it, my assignment in this case is to serve as a fire expert in the areas of the origin of the fire, the source of ignition for the fire, the material first ignited in the fire, the propagation of the fire, and then to be able to serve as an expert in any other related fire matter that may arise during the course of the litigation.

3

Dyer Depo at 9:17 – 10:5 (APP 075-76).  For the reasons explained herein, Plaintiffs ask that the Court exclude and/or limit Dyer's opinions and testimony.

### C.   Grounds Upon Which to Exclude Defendant's Expert.

#### 1.   Dyer's testimony is not grounded on sufficient facts or data and is not the product of reliable principles and methods.

An expert's testimony must "fit" the facts of the case. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742–43 (3d Cir.1994).  To assess reliability of expert testimony, courts consider whether the expert opinion is based on methods and procedures of science rather than the expert's subjective belief or unsupported speculation. *In re Paoli*, 35 F.3d at 742. Factors guiding this analysis include: (1) whether the method features a testable hypothesis; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the technique is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the expert's qualifications to testify based on the methodology; and (8) the method's history of non-judicial uses. Id. at 742 n. 7; *see also Salamone v. Wal–Mart Stores East, LP*, 2011 WL 2787788, at *1 (E.D.Pa. July 15, 2011).  Dyer's testimony fails each of these elements.

Expert opinions are admissible only if they are the product of reliable principles and methods. FED R.EVID. 702 advisory committee's note; *Daubert*, 509 U.S. at 591-95.  The Texas Supreme Court has also held "expert testimony is unreliable if it is not grounded 'in the methods and procedures of science' and is no more than 'subjective belief or unsupported speculation.'" *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002) (quoting *Robinson*, 923 S.W.2d at 556 (quoting *Daubert*, 509 U.S. at 590)).  The record in this case will demonstrate that Dyer's opinions rely solely on an expert report prepared by Lee Carr, Toyota's accident

4

reconstructionist and are simply subjective, prepared strictly for this litigation and are tailored solely to benefit Toyota in this litigation.

> ### 2.    Dyer is not qualified to provide expert opinions on many areas where he purports to provide "additional" opinions.

Before certifying an expert and admitting his or her testimony, a district court must ensure that the requirements of Federal Rule of Evidence 702 have been met.  See *Daubert* 509 U.S. at 592–93.  The Fifth Circuit holds that "[t]o qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir.1992) (second alteration in original) (quoting *United States v. Johnson*, 575 F.2d 1347, 1361 (5th Cir.1978)).   As a rule, expert testimony must be based on the expert's specialized knowledge, training, experience, and first-hand observation while supported by solid evidence in the scientific community." *Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 247 (5th Cir.2002).

Ultimately, the trial court's duty is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field". *Kumho Tire* 526 U.S. 137.  Furthermore, although a witness may be qualified as an expert in one area of expertise, the expert may be precluded from offering opinions beyond that area of expertise or which are not founded on a reliable methodology. *See, e.g., Kumho Tire*, 526 U.S. at 154-55; *McGhan Medical Corp*., 184 F.3d at 1317-19; *Weisgram*, 169 F.3d at 518; Cummins, 93 F.3d at 371.  Nor, may an expert go beyond the scope of his expertise in giving his opinion. *First United Fin. Corp. v. U.S. Fid. & Guar. Co*., 96 F.3d 135, 136 (5th Cir.1996).  In this case, the record is

clear that Dyer should be precluded from providing opinions for which he does not have expertise and that fall outside his areas of expertise.

> **a.      Dyer is not an expert accident reconstructionist and should not be permitted to discuss or give any testimony or opinions regarding any alleged reconstruction of the May 28, 2010, accident.**

During questioning from Toyota's counsel, Dyer made various comments at his deposition suggesting that he had performed some rudimentary reconstruction of the May 28, 200, accident in order to confirm his opinions.  However, when asked about his expertise in reconstruction, if any, and his specific role in this case, the following conversation took place:

> **Q:**    And you're not here to give any expert or lay testimony regarding the reconstruction of the accident that happened on May 28, 2010, are you?
>
> **A:**    As I understand reconstruction, that is correct, on how the vehicles moved and where the different points of impact were and stuff of what I think all of us here in the room would agree what is accident reconstruction, but some other people may construe that fire cause and origin is another form of accident reconstruction, but I think that those are two separate things.
>
> **Q:**    Yeah, 'cause there's -- there's the accident, then there's a fire that arises from the accident, is that right?
>
> **A:**    That is correct.  There's a collision and then there's a fire that arises from that **and I'm here as a, as a fire expert and <u>not as an accident reconstructionist</u> such as Mr. Vick and Mr. Carr are in this matter**.

Dyer Depo at 13:17 – 14:10 (APP 079-080).  Moreover, in more pointed testimony provided during his deposition, Dyer crystalized the point that he is not an expert who did a reconstruction of the accident:

> **Q:**    You're not an accident reconstructionist so you didn't reconstruct the accident, is that right?
>
> **A:**    I did not.
>
> **Q:**    Okay, so the only way that you could have come up with an opinion as to whether the 4Runner, the Strick trailer and the Volvo tractor was in simultaneous contact is you had to have gotten that from somewhere else, is that right?
>
> MR. KERN:  Object to the form.

**A:**     I do not understand the question.

**Q:**     Well, you didn't reconstruct the accident, did you?  Is that right?

**A:**     No, I reconstructed the fire.

Dyer Depo at 22:25 – 23:14 (APP 081-82).  Accordingly, Dyer should not be permitted to give any testimony or opinions regarding any reconstruction of the crash or crash sequence involving the May 28, 2010 accident.

> **b.      Dyer was not designated as a design expert, is not a design expert, and should not be permitted to discuss or give opinions regarding vehicle or trailer design issues.**

During questions at his deposition, Dyer made various comments regarding design issues. For instance, there was significant discussion regarding whether the change in the design of the 4Runner fuel tank system, e.g. using a full tank shield, using a metal tank, using a smaller tank would have made a difference to the Greene family's survival.  However, when asked whether he was being presented in this case as a design expert, Dyer testified as follows:

**Q:**     And you're not -- you're not here to give any testimony, either lay or expert testimony, regarding whether there were any design defects in either the Toyota, the Volvo, Strick trailer or the Freightliner tractor, are you?

**A:**     That is correct, I am not.

Dyer Depo at 13:11-16 (APP 079).  During a discussion later in the deposition, Dyer reiterated that he was not qualified to give opinions on design issues:

**Q:**     Do you know whether it would have --strike that.  Do you know whether the volume of the fuel tank created a, a design, a need to design the fuel tank differently, the fuel system differently?

**A:**     I'm not a design expert, so that would be beyond my expertise.

Dyer Depo at 124:24 – 125:5 (APP 088-89).  Therefore, since Dyer does not have the requisite expertise to give opinions on design issues, and did not follow an acceptable methodology to form an admissible opinion, he should be precluded from providing any design

7

or design-related testimony.  *Ross v. Ford Motor Co*., 2003 WL 25773619 (D.Neb. Jul 25, 2003)(fire and origin expert not permitted to opine regarding motor vehicle defects**)**.

### 3.    Dyer should not be permitted to discuss or give opinions that are not contained in the Dyer Report.

During his deposition, Dyer was occasionally asked questions by other defendants regarding matters outlying to the Dyer Report.  For instance, during questioning, Dyer gave comments on items such as cooling of fuel principles allegedly involved in this case, the most likely fuel system breach event, and various hypotheses he supposedly considered.  However, Dyer did not include these off the cuff statements anywhere in the Dyer Report.  In fact, Dyer's testimony reflects that he has only four (4) written opinions:

> **Q:**    Sir, would it be correct to say that your written opinions are contained on page 66 of your report?
>
> **A:**    Yes, sir.

Dyer Depo at 44:25 – 45:3 (APP 083-84).  During additional testimony, when asked if he planned to give other expert opinions besides those four opinions in his written report, Dyer responded as follows:

> **Q:**    Now, you indicated that you expect to give some other opinions.  As you sit here today have you been asked to give any other opinions?
>
> **A:**    Well, in my report it sets forth those four primary areas of origin, ignition, material first ignited and propagation, and I have not been asked at this point to give any other opinions other than those four.
>
> **Q:**    And would it be correct to say that all of the written opinions that you've given in this case have been provided in your expert report?
>
> **A:**    Yes.  The only written opinions that I have provided in this case are included in my report.

Dyer Depo at 11:9-16 (APP 077).  Accordingly, Dyer should be precluded from giving any opinions regarding this event other than the four opinions expressed on page 66 of the Dyer

Report, and then only to the extent these opinions are not limited or excluded by an Order on this motion or during consideration of Plaintiffs' Motion *in limine*.

> **4.      Dyer should not be permitted to discuss or give opinions regarding the nature or cause of the breach of the Toyota 4Runner's fuel system.**

Dyer should be prohibited from providing any opinions, lay or expert, regarding the possible causes of the breach of the Toyota 4Runner fuel system.  First, Dyer admits that he did not include as one of his written opinions any testimony or opinion regarding the breach:

> **Q:**      Were you able to come up with any hypotheses in terms of the breach mechanisms for the source of the leak?
>
> **A:**      Yes.
>
> **Q:**      And are those in your report?
>
> **A:**      No.

Dyer Depo at 86:22 – 87:2 (APP 085-086).  Second, when asked during his deposition whether he could provide an expert opinion as to the source of the breach of the fuel system in the Toyota 4Runner, Dyer testified as follows:

> **Q:**      So, so, you're unable to give the jury an expert opinion on the source of the leak?
>
> **A:**      Of the specific source, that is correct.

Dyer Depo at 88:19-21 (APP 087).  Therefore, Dyer should be precluded from providing any testimony, affirmative or rebuttal, regarding the source of the breach of the fuel system of the Toyota 4Runner.

> **5.      Dyer should not be permitted to discuss or give opinions on a "crash test" that was allegedly conducted by Exponent.**

During his deposition, Dyer also made reference to a December 17, 2013, crash test done by Exponent.  Toyota has indicated that it plans to introduce this video footage and the related testimony of Mickey Marine, who was hired by Toyota to conduct this test.  The problem with this footage and related testimony is that the crash test does not even purport to be substantially

similar to, or a replication of, the accident that happened on May 28, 2010, wherein multiple vehicles and multiple impacts of moving vehicles were involved.  In other words, although the video is represented to be a "potential" re-enactment of a single event during the May 28, 2010, crash it is clearly not substantially similar to the underlying accident.  Because of the material differences between the crash test and the underlying accident, the video and all testimony related to it must be excluded.  *See e.g. Hafstienn v. BMW of N. Am., LLC*, 194 Fed.Appx. 209, 213 (5th Cir.2006) (evidence of crash tests properly excluded where there are "material differences between the accident and the crash test."); *see also, Barnes v. General Motors Corp*., 547 F.2d 275 (5th Cir.1977); *Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279 (Tex.1964). Thus, Dyer's reliance on the test and video must also be excluded.

In the event Toyota contends that the crash test was not designed to constitute a re-enactment of the May 28, 2010, crash, the Fifth Circuit has already addressed this issue:

> When the demonstrative evidence is offered only as an illustration of general scientific principles, not as a reenactment of disputed events, it need not pass the substantial similarity test. Such demonstrative aids, however, must not be misleading in and of themselves, and one such way that a demonstration might mislead is when ... the demonstration resembles the disputed accident.

*Muth v. Ford Motor Co*., 461 F.3d 557, 566 (5th Cir.2006). In *Muth*, the district court rejected the proffered demonstration as insufficiently similar, but too closely resembling the disputed accident to effectively present abstract principles without misleading the jury. *Id*.  The Fifth Circuit upheld the district court's determination, noting that the similarities between the crash test and the accident at issue heightened the prejudicial effect of the evidence, and this prejudicial effect was sufficient to justify the exclusion of the evidence. *Id*. at 567.  This rationale is equally applicable here.  Toyota's experts have opined that the vehicles in the crash test were identical to the 4Runner and the Volvo tractor and trailer involved in the May 28, 2010, accident.  Toyota

also notes that both the December 17, 2013, crash test and the May 28, 2010 accident involved circumstances (e.g. speeds and impact conditions) similar to those proffered by one or more of the experts in this case.  Therefore, this Court should conclude, as *Muth* did, that the similarities between the crash test and the accident at issue heightens the prejudicial effect of the evidence, and that this prejudicial effect is sufficient to justify the exclusion of the evidence.

Furthermore, Plaintiffs note that Toyota's witnesses have also acknowledged that the narrator, whose voice is heard on the walk-up portion of the crash test videotape allegedly describing the result of the test, is Kurt Kern, Toyota's lead trial counsel.   Plaintiffs were not provided with the opportunity to have representatives, *i.e.,* a videographer, a photographer, an attorney, and an expert, present at this particular test, or during any crash test or any test involving vehicle-to vehicle collisions conducted by defendants that may pertain to this case. Therefore, the conditions under which this test was performed and the suspect nature of it are additional reasons the tape and accompanying testimony should be excluded.   Moreover, the Court should also exclude this evidence since the danger of unfair prejudice or confusion posed by this subjective evidence substantially outweighs its probative value. FED.R.EVID. 403.   Thus, this video footage, and the accompanying testimony is excludable since it clearly is not reliable or relevant evidence on which any expert should rely to form opinions. Thus all reliance Dyer had on the crash tests should likewise be excluded.

### 6.    Dyer should not be permitted to discuss or give opinions on the reports and testimony of Lee Carr and Defendants' other experts.

In the Dyer Report, as well as during his deposition, Dyer makes reference to the expert reports and out of court statements of Lee Carr and other experts designated by the Defendants. However, Dyer has not (1) identified a recognizable methodology showing that this is the type of information that experts would reasonably rely upon in forming the opinions formed in the Dyer

Report and (2) identified and proven in the Dyer Report that specific findings of defendants' other experts are critical to his opinions.  Nonetheless, even if they were able to satisfy these prerequisites, Dyer should be ordered to avoid repeating the findings and opinions of defendants' other experts, as well as commenting on the merits or quality of the other experts' work or opinions.  In addition to improper bolstering and prejudice, the law is clear that experts may not, however, simply repeat or adopt the findings of other experts without investigating them.  *In re Polypropylene Carpet Antitrust Litig.*, 93 F.Supp.2d 1348 (N.D.Ga.2000) (citing *In re TMI Litig.*, 193 F.3d 613, 715–16 (3d Cir.1999) (finding blind reliance by expert on other expert opinions demonstrates flawed methodology under *Daubert* ); *TK–7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732–33 (10th Cir.1993) (excluding expert opinion relying on another expert's report because witness failed to demonstrate a basis for concluding report was reliable and showed no familiarity with methods and reasons underlying the hearsay report)).  The jury must evaluate the testimony of Lee Carr and the other experts without the benefit of bolstering from Dyer.

### 7.     Dyer's testimony is also inadmissible under FED.R.EVID. 403.

Dyer's purported expert testimony also should be excluded because its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  FED.R.EVID. 403; *Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."); s*ee also, E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005); *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex.App.—Dallas 1995, writ denied) ("courts should exclude . . . evidence [when] the expert's opinion would be more likely to prejudice or confuse than to assist the trier

of fact."). A review of the Dyer Report shows that it contains subjective conclusions and is not based on any independent evaluations undertaken by Dyer.  First, it is clear that Dyer relies completely on the Lee Carr expert report for his understanding of the collision sequence that forms the basis for his conclusions.  Second, although Dyer testifies that he is unable to provide an expert opinion on when and how the fuel system was breached or compromised, Dyer suddenly becomes authoritative on the ignition source.  This clearly suggests that Dyer's testimony is tailored to suit Toyota's litigation strategy, without resort to the true facts.  *See McLean* 224 F.3d at 800-01 ("[A]n expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by good grounds, based on what is known.") (quoting *Pomella v. Regency Coach Lines, Ltd*., 899 F.Supp. 335, 342 (E.D.Mich.1995)).  An expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts. *See Guidroz-Brault v. Mo. Pac. R.R. Co.,* 254 F.3d 825, 829-31 (9th Cir. 2001); *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir.1999) ("Expert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence.").

Dyer's subjective conclusions and pronouncements should not be labeled as "expert opinions," particularly because such opinions are neither relevant nor reliable, are not based on accepted engineering principles, are biased, and would serve only to confuse and mislead a jury that these are supposedly expert opinions.

### III.      CONCLUSION

Permitting Dyer to testify without him having applied the proper methodology in the analysis and without having considered all of the relevant evidence would cause severe prejudice to Plaintiffs.  It is also clear that Dyer is ether not qualified or simply chose not to utilize a

methodology used by other experts in the field.  Plaintiffs therefore request that the Court strike

the Dyer Report and accompanying testimony, not consider the same as evidence, and grant

Plaintiffs such other and further relief, in law or in equity, to which Plaintiffs may be entitled.


Respectfully Submitted,


/s/ Aubrey "Nick" Pittman                           /s/ Daryl K. Washington

AUBREY "NICK" PITTMAN                           DARYL K. WASHINGTON

State Bar No. 16049750                               State Bar No. 24013714


**THE PITTMAN LAW FIRM, P.C.**             **LAW OFFICES OF DARYL K. WASHINGTON**

100 Crescent Court, Suite 700                 **P.C.**

Dallas, Texas 75201-2112                     325 N. St. Paul St., Suite 1975

214-459-3454                                     Dallas, Texas  75201

214-853-5912 – fax                            214-880-4883

pittman@thepittmanlawfirm.com           469-718-0380 - fax

                                             dwashington@dwashlawfirm.com

14

## **CERTIFICATE OF CONFERENCE**

The undersigned certifies that a face-to-face conference on this motion was held on March 7, 2014, with counsel for all defendants, during which time defendants' counsel indicated they were opposed to the relief being sought in this motion.  Accordingly, Plaintiffs present this matter to the Court for resolution.


  /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2014 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.


  /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN