## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE,** | § § § § § § § § | |
| **Plaintiffs,** | § | |
| **v.** | § § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| **TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC.** | § § § § § § § § § § § § § § § § | |
| **Defendants.** | § | |

## PLAINTIFFS' MOTION TO EXCLUDE THE REPORT
## AND TESTIMONY OF WILLIAM VAN ARSDELL AND BRIEF IN SUPPORT

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax

**ATTORNEYS FOR PLAINTIFFS**

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax

### TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

I.      SUMMARY OF ARGUMENT ...................................................................................... 1

II.     ARGUMENT  AND AUTHORITIES ............................................................................. 1

        A.      Governing Principles Applicable to Defendant's Proffer of This Testimony. ........... 1

        B.      The Nature of The Alleged Expert Testimony Sought to Be Introduced.................. 3

        C.      Additional Grounds Upon Which to Exclude Defendant's Expert........................... 3

                1.      Van Arsdell's testimony is not grounded on sufficient facts or data
                        and is not the product of reliable principles and methods. ........................ 3

                2.      Van Arsdell should not be permitted to give opinions on interpretations
                        of laws and regulations, whether defendants complied with safety
                        regulations, or on ultimate conclusions to be determined by the jury. ....... 5

                3.      Van Arsdell generally is not qualified and/or did not apply a proper
                        methodology to provide expert opinions. .................................................. 8

                4.      Van Arsdell's testimony simply restating facts that are clearly in
                        dispute is not expert testimony and also cannot serve as the basis
                        for an expert report.................................................................................. 10

                5.      Van Arsdell should be prohibited from expressing an opinion on the
                        cause and mechanism of Mrs. Greene's ejection death. .......................... 12

                6.      Van Arsdell's blind reliance on Lee Carr's litigation-induced expert
                        report requires exclusion of his report. .................................................... 12

                7.      Van Arsdell should not be permitted to discuss or give any opinions
                        that are not contained in the Van Arsdell Report...................................... 14

                8.      Van Arsdell should not be permitted to discuss or give opinions on a
                        "crash test" that was allegedly conducted by Exponent. .......................... 14

                9.      Van Arsdell's testimony is also inadmissible under FED.R.EVID. 403. ..... 16

III.    CONCLUSION .............................................................................................................. 18

CERTIFICATE OF CONFERENCE.......................................................................................... 19

CERTIFICATE OF SERVICE ................................................................................................... 20

**TABLE OF AUTHORITIES**

## Cases

*Allison v. McGhan Medical Corp.*, 184 F.3d 1300 (11th Cir.1999) .................................. 8

*Am. Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569 (11th Cir.1985) ........................... 12

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir.2002) .......................... 2

*Bammerlin v. Navistar International Transportation Corp.*, 30 F.3d 898 (7th Cir.1994) ............. 7

*Barnes v. General Motors Corp.*, 547 F.2d 275 (5th Cir.1977) ................................ 15

*Cholakyan v. Mercedes–Benz USA, LLC*, 281 F.R.D. 534 (C.D.Cal.2012) ............................... 12

*Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir.1994) ...................................... 2

*Clark v. Takata Corp.*, 192 F.3d 750 (7th Cir.1999) ...................................... 9

*Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir.2000)........................ 9

*Contini v. Hyundai Motor Co.*, 876 F.Supp. 540 (S.D.N.Y.1995) ............................ 7

CSX Transp., Inc. v. City of Plymouth, 92 F.Supp.2d 643 (E.D.Mich.2000) ............................. 7

*Cummins v. Lyle Indus.*, 93 F.3d 362 (7th Cir.1996). ...................................... 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)................................. passim

*Davis v. Washington*, 547 U.S. 813 (2006).................................................. 11

*E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005)........................... 17

*Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623 (Tex. 2002) ..................................... 4

*First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135 (5th Cir.1996) ........................... 9

*Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279 (Tex.1964).................................... 15

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997) .................................... 9

*Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557 (7th Cir.2003)............... 7

*Greenwell v. Boatwright*, 184 F.3d 492 (6th Cir.1999) ........................................ 10, 17

*Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825 (9th Cir. 2001)........................... 10

*Hafstienn v. BMW of N. Am., LLC*, 194 Fed.Appx. 209 (5th Cir.2006) ...................... 15

*In re Air Crash at Little Rock Ark.*, 291 F.3d 503 (8th Cir.2002)................................... 9

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir.1994) ...................................... 2, 4

*In re TMI Litig.*, 193 F.3d 613 (3d Cir.1999) ............................................................... 12

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 2013 WL 5763178 (C.D.Cal. 2013) ....................................... 13

*J.B. Hunt Transp., Inc. v. General Motors Corp.*, 243 F.3d 441 (8th Cir.2001) ........................... 9

*Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137 (1999) ......................................................... 3, 8

*Lightfoot v. Hartford Fire Ins. Co.,* No. 07–4833, 2011 WL 39010 (E.D.La. Jan. 4, 2011) ........ 12

*McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797 (6th Cir.2000) ..................................................... 17

*Muth v. Ford Motor Co.*, 461 F.3d 557 (5th Cir.2006) ................................................................. 15

*N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90 (Tex.App.—Dallas 1995, writ denied)  17

*Nemir v. Mitsubishi Motors Corp.*, 2006 WL 322476 (E.D.Mich. Feb. 10, 2006) ........................ 7

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239 (5th Cir.2002). ............................................................ 8

*Pomella v. Regency Coach Lines, Ltd.*, 899 F.Supp. 335 (E.D.Mich.1995) .................................. 17

*Roundy's Inc. v. NLRB*, 674 F.3d 638 (7th Cir.2012) .................................................................. 6

*Salamone v. Wal–Mart Stores East, LP*, 2011 WL 2787788 (E.D.Pa. July 15, 2011) ................... 4

*Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940 (7th Cir.1997 ................................................ 2

*Smelser v. Norfolk Southern Railway*, 105 F.3d 299 (6th Cir.1997). ........................................... 2

*Smith v. Rasmussen*, 249 F.3d 755 (8th Cir.2001) ....................................................................... 9

*U.S. v. Mejia,* 545 F.3d 179 (2d Cir. 2008); ................................................................................ 11

*United States v. Bonds*, 12 F.3d 540 (6th Cir.1993) ..................................................................... 3

*United States v. Bourgeois*, 950 F.2d 980 (5th Cir.1992) ............................................................. 8

*United States v. Johnson*, 575 F.2d 1347 (5th Cir.1978) .............................................................. 8

*United States v. Johnson*, 587 F.3d 625 (4th Cir.2009) ............................................................... 11

*United States v. Lombardozzi*, 491 F.3d 61 (2d Cir.2007) ........................................................... 11

*United States v. Posado*, 57 F.3d 428 (5th Cir.1995) .................................................................. 10

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987) ............................................................ 9

*Weisgram v. Marley Company*, 169 F.3d 514 (8th Cir.1999) ....................................................... 9

**Rules**

FED.R.EVID. 403 ................................................................................................................ passim

FED.R.EVID. 702 ............................................................................................................. 1, 2, 3, 4

FED.R.EVID 704(a) .................................................................................................................. 6

**PLAINTIFF'S MOTION TO STRIKE AND/OR EXCLUDE
DEFENDANT'S DESIGNATED EXPERT AND ACCOMPANYING TESTIMONY**

Ollie Greene, Individually and as parent of Wyndell Greene, Sr., William Greene, as Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and the parent of LaKeysha Greene (collectively "Plaintiffs") file this motion to strike and/or exclude the testimony of William Van Arsdell ("Van Arsdell"), and in support thereof shows the Court as follows:

## I.    SUMMARY OF ARGUMENT

Van Arsdell's testimony does not meet the requirements of FED.R.EVID. 702 and *Daubert* because (1) he is not qualified to give expert opinions on certain matters for which he is being offered; (2) it is not based upon scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) it is not based on sufficient facts or data and is not the product of reliable principles and methods he has applied reliably to the facts of the case.  Plaintiffs further contend that the proposed testimony should be excluded pursuant to FED.R.EVID. 403 because consideration of the testimony disguised as expert testimony will result in confusion of the issues and misleading the jury.

## II.    ARGUMENT  AND AUTHORITIES

### A.    Governing Principles Applicable to Defendant's Proffer of This Testimony.

*Daubert* and Federal Rule of Evidence 702 require that trial courts perform a "gate-keeping role" when considering the admissibility of expert testimony.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and

1

> (3) the witness has applied the principles and methods reliably to the facts of the case.

FED.R.EVID. 702.     The court's gate-keeping role is two-fold.   First, the court must determine whether the testimony is reliable. See *Daubert*, 509 U .S. at 590. The reliability analysis focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.*   A district court assessing the admissibility of expert testimony under FED.R.EVID. 702 serves a "gatekeeping" function: "it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir.2002) (quoting *Daubert* 509 U.S. at 597.  The proponent of the testimony must establish, by a preponderance of the evidence, that the expert's testimony is reliable. *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 744 (3d Cir.1994). In addition, a court may consider "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying" because the former "provides important, objective proof that the research comports with the dictates of good science." *Smelser v. Norfolk Southern Railway*, 105 F.3d 299, 303 (6th Cir.1997).   Another factor that may be considered by the court is "[w] hether the expert has adequately accounted for obvious alternative explanations." FED.R.EVID. 702 advisory committee's note (citing *Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir.1994)). Finally, the court may consider "[w] hether the expert 'is being as careful as he would be in his regular professional work outside his paid litigation consulting.'" FED.R.EVID. 702 advisory committee's note (quoting *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir.1997)). The Supreme Court has emphasized that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial court may consider one or more of the *Daubert* factors when doing

so will help determine that expert's reliability.  *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999).

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant.  See *Daubert,* 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. See *United States v. Bonds,* 12 F.3d 540, 555 (6th Cir.1993).  Thus, an expert's testimony is admissible under Rule 702 only if it is predicated upon a reliable foundation and is relevant.  The testimony sought to be excluded through this motion violates each of the principles discussed above.

## B.   The Nature of The Alleged Expert Testimony Sought to Be Introduced.

On or about December 20, 2013, Defendants served Plaintiffs with a copy of Van Arsdell's expert report (the "Van Arsdell Report").  See APP 001-014.  During Van Arsdell's deposition, which was taken on February 28, 2014, when asked to provide a summary of his role as a potential expert in this case, Van Arsdell explained:

**Q:**   Sir, what is your purpose and function in this case?

**A:**   My focus in this case is on occupant protection, primarily seatbelts, but also the broader area of occupant protection including airbags.

Van Arsdell Depo at 5:22 – 6:1 (APP 019-020).  To begin with, the limit of Van Arsdell's expert testimony should be as he describes above.  However, for the reasons explained herein, Plaintiffs ask that the Court exclude Van Arsdell's opinions and testimony.

## C.   Additional Grounds Upon Which to Exclude Defendant's Expert.

### 1.   Van Arsdell's testimony is not grounded on sufficient facts or data and is not the product of reliable principles and methods.

An expert's testimony must "fit" the facts of the case.  *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 742–43 (3d Cir.1994).  To assess reliability of expert testimony, courts consider

whether the expert opinion is based on methods and procedures of science rather than the expert's subjective belief or unsupported speculation. *In re Paoli*, 35 F.3d at 742. Factors guiding this analysis include: (1) whether the method features a testable hypothesis; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the technique is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the expert's qualifications to testify based on the methodology; and (8) the method's history of non-judicial uses. Id. at 742 n. 7; *see also Salamone v. Wal–Mart Stores East, LP*, 2011 WL 2787788, at *1 (E.D.Pa. July 15, 2011).  Van Arsdell's testimony fails each of these elements.  Expert opinions are admissible only if they are the product of reliable principles and methods. FED R.EVID. 702 advisory committee's note; *Daubert*, 509 U.S. at 591-95.  The Texas Supreme Court has also held "expert testimony is unreliable if it is not grounded 'in the methods and procedures of science' and is no more than 'subjective belief or unsupported speculation.'" *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002) (quoting *Robinson*, 923 S.W.2d at 556 (quoting *Daubert*, 509 U.S. at 590)).

As demonstrated in Van Arsdell's Report and deposition he did not use a complete, reliable or acceptable methodology that other experts would use.  The record is also clear that even if Van Arsdell does possess the requisite FRE 702 expertise in some areas, he is not an expert in all areas in which he purports to provide testimony.  Much of Van Arsdell's testimony is subjective, ignores undisputed facts, is not relevant or reliable, was prepared strictly for this litigation and is tailored solely to benefit defendants in this litigation.

**2.     Van Arsdell should not be permitted to give opinions on interpretations of laws and regulations, whether defendants complied with safety regulations, or on ultimate conclusions to be determined by the jury.**

In the Van Arsdell Report, he makes the following subjective and arbitrary statements, among others:[1]

1. Vehicles that meet the National Highway Traffic Safety Administration's (NHTSA) Federal Motor Vehicle Safety Standards (FMVSSs) have been shown to be highly effective in reducing the likelihood of serious injuries and fatalities in reasonably foreseeable motor vehicle accidents. As stated in the preamble to the FMVSSs, these standards were developed to ensure "*that the public is protected against unreasonable risk of accidents occurring as a result of the design, construction or performance of motor vehicles and is also protected against unreasonable risk of death or injury to persons in the event accidents do occur.*"

2. The FMVSSs consist of a set of specified tests that, generally speaking, evaluate the vehicle or its components relative to requirements that include either minimum or maximum performance criteria. FMVSS 208 consists of a suite of tests that evaluates, among other things, driver and right-front passenger belted and unbelted performance in frontal collisions. FMVSS 209 tests and evaluates all vehicle seat belt assemblies at the component level. FMVSS 210 evaluates the integrity of all seat belt anchorages in a vehicle. Every new vehicle sold in the U.S. is required to meet these, among many other, FMVSS regulations.

3. Materials produced by Toyota show that for the 2010 Toyota 4Runner, the seat belts meet or exceed the requirements of FMVSS 209. The occupant restraint system, including but not limited to the vehicle's seat belts, meets or exceeds the dynamic occupant protection and static requirements of FMVSS 208, and the seat belt anchorages meet the requirements of FMVSS 210. The 2010 Toyota 4Runner was certified to the requirements of the FMVSS 208 "Advanced Airbag" rulemaking.

4. The 2010 Toyota 4Runner's occupant restraint system, including but not limited to the seat belt assemblies, is not defective, and provides a reasonable level of protection in reasonably foreseeable motor vehicle accidents.

5. No occupant restraint system can prevent all injuries in all accidents.

---

[1] These paragraphs are numbered here for convenience and do not appear in Van Arsdell's Report numbered in this manner.

6.  The subject motor vehicle accident sequence consisted of multiple high speed collisions involving energy and forces much greater than those involved in the vast majority of tow-away accidents in the United States.

7.  The 2010 Toyota 4Runner's occupant restraint system, including but not limited to the seat belts, meets or exceeds all the applicable requirements of the relevant Federal Motor Vehicle Safety Standards.

8.  The mandatory FMVSSs applicable to the occupant protection systems of the subject 2010 4Runner are sufficient to protect against unreasonable risk of death or injury in the event of an accident.

9.  The referenced FMVSSs were applicable to the subject 2010 4Runner at the time that it was designed and manufactured. These FMVSSs are related to the risk of harm to occupants in motor vehicle accidents.

10.  Toyota conducted an appropriate amount of testing and development for the 2010 Toyota 4Runner's occupant restraint systems.

As the Court can observe, these opinions are inadmissible under Rule 702, especially considering that they address legal conclusions, interpret legal issues, or are conclusions to questions the jury will decide at trial, e.g. whether the Toyota 4Runner was unreasonably dangerous, whether it complied with safety regulations, and whether it was economically and technologically feasible to install a safer occupant restraint system.  Although Toyota may argue that FED.R.EVID 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue.", "[t]he committee notes to ... Rule [704] explain ... that Rule 702, which requires that opinion be helpful to the trier of fact, and Rule 403, which provides for exclusion of evidence that wastes time, 'afford assurance against the admission of opinions which would merely tell the trier of fact what result to reach.' " *Roundy's Inc. v. NLRB*, 674 F.3d 638, 648 (7th Cir.2012) (quoting FED.R.EVID. 704, 1972 advisory committee notes) (some alterations omitted). That is precisely what Van Arsdell's opinions would do if he were allowed to present them at trial, which renders them inadmissible. *See United States v. Noel*, 581 F.3d 490, 497 (7th Cir.2009) ("Regardless of whether Barnes was an expert, he could not merely tell the jury what result to reach.") (internal quotation marks omitted); *Good Shepherd Manor Found., Inc. v. City*

*of Momence*, 323 F.3d 557, 564 (7th Cir.2003) ("expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible").

In *Bammerlin v. Navistar International Transportation Corp*., 30 F.3d 898 (7th Cir.1994) the court reversed a jury verdict after the district court erroneously permitted experts to interpret FMVSS 208 stating, "[t]he meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by the court." *Id* at 900. "The interpretation of federal regulations is a matter of law for the court to decide." *CSX Transp., Inc. v. City of Plymouth*, 92 F.Supp.2d 643, 656 (E.D.Mich.2000) (citing *Bammerlin* 30 F.3d at 900). It is a question of law, to be resolved by the court.")). See *Nemir v. Mitsubishi Motors Corp.*, 2006 WL 322476, at *1 (E.D.Mich. Feb. 10, 2006) ("[I]nterpretation of federal regulations presents a question of law for the Court; not a question of interpretation for experts or a question of fact to be resolved by the jury.").

Van Arsdell also provided subjective statements in his deposition (under the guise of expert testimony) as to whether the safety standards are adequate, whether the Toyota 4Runner complied with the safety standards, and whether Toyota had certain duties under the Safety Act. This is improper expert testimony.  *Contini v. Hyundai Motor Co*., 876 F.Supp. 540, 543 (S.D.N.Y.1995) (an expert is simply not permitted to testify whether the product complied with the standard).  *Klaczak v. Consol. Med. Transp. Inc*., 2005 WL 1564981, at *4 (N.D.Ill. May 26, 2005); *Dubiel v. Columbia Hosp. L.P.*, 2005 WL 5955691, at * 1, 4 (S.D.Fla. Jan.11, 2005) (barring Cutler from opining as to "[w]hether Columbia Hospital's meal break policy was in compliance with the FLSA"). *Good Shepherd Manor Found.*, 323 F.3d at 564 ("expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible"). Accordingly, Van Arsdell should be precluded from providing any testimony or opinions as to

the conclusions to be drawn ultimately by the jury regarding whether the 4Runner or its occupant restraint sysstem was defectively designed or unreasonably dangerous, and/or in compliance with federal regulations, and whether Volvo and VGNA were grossly negligent.  And as discussed above, Van Arsdell should be precluded from giving legal opinions on whether Toyota complied with legal standards or had duties as a matter of law.

> **3.    Van Arsdell generally is not qualified and/or did not apply a proper methodology to provide expert opinions.**

Before certifying an expert and admitting his or her testimony, a district court must ensure that the requirements of Federal Rule of Evidence 702 have been met.  See *Daubert* 509 U.S. at 592–93.  The Fifth Circuit holds that "[t]o qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir.1992) (second alteration in original) (quoting *United States v. Johnson*, 575 F.2d 1347, 1361 (5th Cir.1978)).   As a rule, expert testimony must be based on the expert's specialized knowledge, training, experience, and first-hand observation while supported by solid evidence in the scientific community." *Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 247 (5th Cir.2002).

Ultimately, the trial court's duty is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire* 526 U.S. 137.  Furthermore, although a witness may be qualified as an expert in one area of expertise, the expert may be precluded from offering opinions beyond that area of expertise or which are not founded on a reliable methodology. See, e.g*., Kumho Tire*, 526 U.S. at 154-55; *Allison v. McGhan Medical Corp*., 184 F.3d 1300, 1317-19 (11th Cir.1999); *Weisgram v. Marley*

*Company*, 169 F.3d 514, 518 (8th Cir.1999); *Cummins v. Lyle Indus.*, 93 F.3d 362, 371 (7th Cir.1996).. Nor, may an expert go beyond the scope of his expertise in giving his opinion. *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir.1996).

As explained herein, there is nothing to indicate that Van Arsdell either is qualified to give, or has adequate scientific basis for, his conclusory opinions. *See Smith v. Rasmussen*, 249 F.3d 755, 758-59 (8th Cir.2001). As the Supreme Court held in *General Electric Co. v. Joiner*, 522 U.S. 136 (1997):

> [N]othing either in Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*Joiner*, 522 U.S. at 146. *See J.B. Hunt Transp., Inc. v. General Motors Corp.*, 243 F.3d 441, 444 (8th Cir.2001) ("Expert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis.") (citing *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir.2000); *In re Air Crash at Little Rock Ark.*, 291 F.3d 503, 514 (8th Cir.2002) (there must be adequate nexus between scientific theory and subject of opinion); *Clark v. Takata Corp.*, 192 F.3d 750, 756-57 (7th Cir.1999); *Weisgram v. Marley Co.*, 169 F.3d 514, 521 (8th Cir.1999) (expert testimony not reliable where there is lack of nexus between theory and conclusion).

To begin with, Van Arsdell admits that he was not involved in any testing Toyota has done on the components at issue in this accident   Van Arsdell Depo at 43:3-13 (APP 022) and 47:14-17 (APP 023).  Therefore, Van Arsdell clearly does not have the foundational expertise to serve as an expert.  Thus, Van Arsdell's testimony is conclusory and inadmissible.  *See Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 421-22 (5th Cir. 1987) ("it is not so simply because 'an expert says it is so ...; if an expert brings to the court 'little more than his credentials and a subjective

opinion,' his opinion amounts to no evidence").  Although Rule 702 does not require absolute

certainty, it does mandate that the proffered knowledge be based on "good grounds" and that the

testimony is "more than speculative belief or unsupported speculation." *United States v. Posado*,

57 F.3d 428, 433 (5th Cir.1995)(citing *Daubert*, 509 U.S. at 589-90). Finally, an expert opinion

is properly excluded where it relies on an assumption that is unsupported by evidence in the

record and is not sufficiently founded on facts. *See Guidroz-Brault v. Mo. Pac. R.R. Co.,* 254

F.3d 825, 829-31 (9th Cir. 2001); *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir.1999)

("Expert testimony, however, is inadmissible when the facts upon which the expert bases his

testimony contradict the evidence

### 4. Van Arsdell's testimony simply restating facts that are clearly in dispute is not expert testimony and also cannot serve as the basis for an expert report.

In forming his opinions Van Arsdell clearly assumes the truth of certain alleged facts and

adopts those facts, either as his opinions or as the basis for what he calls expert opinions.  For

example, Van Arsdell's Report makes the following declarations:

> Materials produced by Toyota show that for the 2010 Toyota 4Runner, the seat belts meet or exceed the requirements of FMVSS 209. The occupant restraint system, including but not limited to the vehicle's seat belts, meets or exceeds the dynamic occupant protection and static requirements of FMVSS 208, and the seat belt anchorages meet the requirements of FMVSS 210. The 2010 Toyota 4Runner was certified to the requirements of the FMVSS 208 "Advanced Airbag" rulemaking.

> The 2010 Toyota 4Runner's occupant restraint system, including but not limited to the seat belts, meets or exceeds all the applicable requirements of the relevant Federal Motor Vehicle Safety Standards.

> Toyota conducted an appropriate amount of testing and development for the 2010 Toyota 4Runner's occupant restraint systems.

However, it is clear from Van Arsdell's testimony that he is simply stating

uncorroborated and conclusory statements that are not the product of any expert analysis or

investigation by him.  For instance, in forming opinions regarding the alleged safety of the

subject 4Runner, Van Arsdell concedes that he did no testing himself, he simply reviewed the reports Toyota provided to him.  Van Arsdell Depo at 43:3-13 (APP 022).   Indeed, it is clear from Toyota's designation of Van Arsdell that he will testify as to matters with which he has no personal knowledge, to testify as to statements that are hearsay, and to give opinions on issues that go to the heart of the claims and defenses in this matter.  In other words, considering that he has no personal knowledge of Toyota's actual compliance testing and failure analyses, Van Arsdell is being used solely as a "hearsay conduit."  Courts faced with similar issues have cautioned against situations such as this where a witness is used as little more than a conduit for testimonial hearsay, rather than "a true expert whose considered opinion sheds light on some specialized factual situation." *See U.S. v. Mejia,* 545 F.3d 179, 197 (2d Cir. 2008); *U.S. v. Dixon*, 413 F.3d 520, 524-25 (5th Cir. 2005), aff'd 548 U.S. 1 (2006); *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir.2009); *see also Davis v. Washington*, 547 U.S. 813, 826 (2006) (excluding note-taking policeman's testimony since it recites declarant's unsworn testimony from a report). Van Ardell should not be allowed to testify regarding alleged safety testing that no one from Toyota has discussed with him or proved to him.

Indeed, courts agree that "allowing a witness to simply parrot ... out-of-court testimonial statements directly to the jury in the guise of expert opinion" would provide an end run around Crawford, and this we are loathe to do." *See Mejia,* 545 F.3d at197; *United States v. Lombardozzi*, 491 F.3d 61, 72 (2d Cir.2007).  In this case, Plaintiffs will also be unable to cross Van Arsdell on the testing documentation regarding that on which he is providing testimony since he not undertake any type of investigation to determine the accuracy of the statements he is repeating and has no first-hand knowledge of the extent of the testing, if any by Toyota. Therefore, these hearsay statements parading as expert testimony should be excluded.

     **5.**     **Van Arsdell should be prohibited from expressing an opinion on the cause and mechanism of Mrs. Greene's ejection death.**

One of the central issues in the case involves the cause and mechanism of Mrs. Greene's injuries and death. However, Van Arsdell effectively concedes that he did no testing and is unable to opine on how it is that Ms. Greene came to be ejected from the Toyota 4Runner. See, e.g. Van Arsdell Dep at 48:14-23 (APP 024). Thus, Van Arsdell cannot provide any helpful opinions on the circumstances behind the failure of Mrs. Greene's occupant restraint system. Any conclusions would be irrelevant, not sufficiently reliable to be admissible as evidence, and should be excluded under FRE 702 and 403.

     **6.**     **Van Arsdell's blind reliance on Lee Carr's litigation-induced expert report requires exclusion of his report.**

In this case, when asked what reconstructionist he relied on to form his opinions in this matter, Van Arsdell concedes that he relied on the Lee Carr reconstruction. Van Arsdell Depo at 17:15-21 (APP 021). This blind reliance on the Carr Report requires exclusion of Van Arsdell as a witness. As many courts have recognized, expert testimony based solely or primarily on the opinions of other experts is inherently unreliable. *Cholakyan v. Mercedes–Benz USA, LLC*, 281 F.R.D. 534, 544 (C.D.Cal.2012); accord *Am. Key Corp. v. Cole Nat'l Corp*., 762 F.2d 1569, 1580 (11th Cir.1985) ("Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not."); *see also, In re TMI Litig*., 193 F.3d 613, 715–16 (3d Cir.1999) (finding that "expert's failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions, demonstrates that the methodology he used to formulate his opinion was flawed under Daubert as it was not calculated to produce reliable results"); *Lightfoot v. Hartford Fire Ins. Co.,* No. 07–4833, 2011 WL 39010, at *5 (E.D.La. Jan. 4, 2011) (finding opinion unreliable where expert failed to independently investigate the expert opinions upon which he relied).

Moreover, more scrutiny will be given to an expert's reliance on the information or analysis of another expert where the other expert opinions were developed for the purpose of litigation. *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 2013 WL 5763178, (C.D.Cal. 2013).  In this case, it is clear that Van Arsdell took no steps to investigate Carr's opinions before he blindly used them in conducting his "analysis."  If Van Arsdell had performed an independent assessment of Carr's opinions he would have noted that Carr essentially created his own accident.  He ignored evidence from the detailed investigation of 4-5 Highway Patrol Troopers, none of whom agree with Carr's assessment of the identical sequence of, and impacts involved in, the May 28, 2010, accident.  In fact, as discussed above, the investigating officers spent multiple hours at the scene of the accident inspecting skid marks, yaw marks, crook marks, gouges and metal scars, fluid collection areas, directional spills of cargo, burn marks, locations of vehicle components, etc. Carr's testimony reveals, however, that he had to disagree with every significant conclusion reached by the highway troopers who investigated the accident.  An independent investigation by Van Arsdell would have also alerted his that Carr also ignored the multiple eye-witness accounts of the accident, none of which agrees with his account of it.  He also ignored that not a single eyewitness concurs with his theory that the Toyota 4Runner was sandwiched in between the Volvo tractor and the Strick Trailer as Carr has concluded  Although Carr's Report cites to multiple statements from various eyewitnesses and investigating officers, a closer review of his Report and his deposition testimony shows that on the rare occasion where he relies on an actual fact from the accident, he "cherry picks" facts to argue that they lend support to his version of the accident, and "discards" all the other testimony that did not support his version.  Van Arsdell should have noted that Carr did no crash testing, virtual or otherwise, to test his novel theory.

Carr first visited the scene of the accident years after the accident.  Nor did he speak with any eyewitnesses.  Nevertheless, Van Arsdell admits that his conclusions are based on Mr. Carr's conclusions.  Van Arsdell Depo at 17:15-21 (APP 021).

As a result of Van Arsdell's unhesitating reliance on the unreliable report of Lee Carr, this Court should exclude Van Arsdell's report and testimony.

**7.     Van Arsdell should not be permitted to discuss or give any opinions that are not contained in the Van Arsdell Report.**

During his deposition, Van Arsdell occasionally provided unsolicited conclusions on matters outlying to the Van Arsdell Report.  However, Van Arsdell's "expert" opinions are, and should be, contained solely in the Van Arsdell Report.  Accordingly, Van Arsdell should be precluded from giving any opinions regarding the May 28, 2010, accident other than the opinions expressed in the Van Arsdell Report, and then only to the extent these opinions are not limited or excluded by an Order on this motion or during consideration of Plaintiffs' Motion *in limine*.

**8.     Van Arsdell should not be permitted to discuss or give opinions on a "crash test" that was allegedly conducted by Exponent.**

During his deposition, Van Arsdell acknowledged that he viewed a December 17, 2013, crash test done by Exponent.  The Toyota Defendants have indicated that they plan to introduce this video footage and the related testimony of Mickey Marine, who was hired by Toyota to conduct this test.  The problem with this footage and related testimony is that the crash test does not even purport to be substantially similar to, or a replication of, the accident that happened on May 28, 2010, wherein multiple vehicles and multiple impacts of moving vehicles were involved.  In other words, although the video is represented to be a "potential" re-enactment of a single event during the May 28, 2010, crash it is clearly not substantially similar to the underlying accident.  Because of the material differences between the crash test and the

underlying accident, the video and all testimony related to it must be excluded. *See e.g.* *Hafstienn v. BMW of N. Am., LLC*, 194 Fed.Appx. 209, 213 (5th Cir.2006) (evidence of crash tests properly excluded where there are "material differences between the accident and the crash test."); *see also, Barnes v. General Motors Corp*., 547 F.2d 275 (5th Cir.1977); *Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279 (Tex.1964). Thus, Van Arsdell's reliance on the test and video must also be excluded.

In the event defendants contend that the crash test was not designed to constitute a re-enactment of the May 28, 2010, crash, the Fifth Circuit has already addressed this issue:

> When the demonstrative evidence is offered only as an illustration of general scientific principles, not as a reenactment of disputed events, it need not pass the substantial similarity test. Such demonstrative aids, however, must not be misleading in and of themselves, and one such way that a demonstration might mislead is when ... the demonstration resembles the disputed accident.

*Muth v. Ford Motor Co*., 461 F.3d 557, 566 (5th Cir.2006). In *Muth*, the district court rejected the proffered demonstration as insufficiently similar, but too closely resembling the disputed accident to effectively present abstract principles without misleading the jury. *Id*. The Fifth Circuit upheld the district court's determination, noting that the similarities between the crash test and the accident at issue heightened the prejudicial effect of the evidence, and this prejudicial effect was sufficient to justify the exclusion of the evidence. *Id*. at 567. This rationale is equally applicable here. Toyota's experts have opined that the vehicles in the crash test were identical to the 4Runner and the Volvo tractor and trailer involved in the May 28, 2010, accident. Toyota also notes that both the December 17, 2013, crash test and the May 28, 2010 accident involved circumstances (e.g. speeds and impact conditions) similar to those proffered by one or more of the experts in this case. Therefore, this Court should conclude, as *Muth* did, that the similarities

between the crash test and the accident at issue heightens the prejudicial effect of the evidence, and that this prejudicial effect is sufficient to justify the exclusion of the evidence.

Furthermore, Plaintiffs note that Toyota's witnesses have also acknowledged that the narrator, whose voice is heard on the walk-up portion of the crash test videotape allegedly describing the result of the test, is Kurt Kern, Toyota's lead trial counsel.   Plaintiffs were not provided with the opportunity to have representatives, *i.e.,* a videographer, a photographer, an attorney, and an expert, present at this particular test, or during any crash test or any test involving vehicle-to vehicle collisions conducted by defendants that may pertain to this case. Therefore, the conditions under which this test was performed and the suspect nature of it are additional reasons the tape and accompanying testimony should be excluded.   Moreover, the Court should also exclude this evidence since the danger of unfair prejudice or confusion posed by this subjective evidence substantially outweighs its probative value. FED.R.EVID. 403.   Thus, this video footage, and the accompanying testimony is excludable since it clearly is not reliable or relevant evidence on which any expert should rely to form opinions. Thus, reliance Van Arsdell may have had, if any, on the crash tests should likewise be excluded and Van Arsdell should be prohibited from relying on it or referring to it or any of the results from it at trial.

## 9.      Van Arsdell's testimony is also inadmissible under FED.R.EVID. 403.

Van Arsdell's purported expert testimony should be excluded also because its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  FED.R.EVID. 403; *Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."); s*ee also, E.E.O.C. v.*

*U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005); *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex.App.—Dallas 1995, writ denied) ("courts should exclude . . . evidence [when] the expert's opinion would be more likely to prejudice or confuse than to assist the trier of fact.").   A review of the Van Arsdell Report shows that it contains legal and subjective conclusions and is not based on any independent evaluations undertaken by Van Arsdell, who also did not observe any testing of the Toyota vehicles and did not perform any independent testing himself.  Yet, he seeks to tell the jury that Toyota's vehicles are safe, despite that he does not take into account that in just the past few years, Toyota has had to recall millions of vehicles, of just about every type manufactured by Toyota, including the subject model year 4Runner.

This clearly evinces that Van Arsdell's testimony is specially tailored to suit Toyota's and the other defendants' litigation strategy, without resort to the true facts.  *See McLean* 224 F.3d at 800-01 ("[A]n expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by good grounds, based on what is known.") (quoting *Pomella v. Regency Coach Lines, Ltd.*, 899 F.Supp. 335, 342 (E.D.Mich.1995)).   An expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts. *See Guidroz-Brault,* 254 F.3d at 829-31; *Greenwell,* 184 F.3d at 497 ("Expert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence.").

Van Arsdell's subjective conclusions and pronouncements should not be labeled as "expert opinions," either because he does not hold the expertise he professes to possess, his opinions are neither relevant nor reliable, his opinions are not based on accepted engineering

principles, his opinions are biased, and/or his testimony would serve only to confuse and mislead a jury that his conclusory statements are supposedly expert opinions.

## III.        CONCLUSION

Permitting Van Arsdell to testify without his having applied a proper methodology in his work and without having considered all relevant evidence would cause severe prejudice to Plaintiffs.  It is also clear that Van Arsdell is ether not qualified or simply chose not to utilize a methodology used by other experts in the field.  Plaintiffs therefore request that the Court strike the Van Arsdell Report and accompanying testimony, not consider the same as evidence for any purpose, and grant Plaintiffs such other and further relief, in law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted,

/s/ Aubrey "Nick" Pittman  
AUBREY "NICK" PITTMAN  
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**  
100 Crescent Court, Suite 700  
Dallas, Texas 75201-2112  
214-459-3454  
214-853-5912 – fax  
pittman@thepittmanlawfirm.com

/s/ Daryl K. Washington  
DARYL K. WASHINGTON  
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**  
325 N. St. Paul St., Suite 1975  
Dallas, Texas  75201  
214-880-4883  
469-718-0380 - fax  
dwashington@dwashlawfirm.com

**<u>CERTIFICATE OF CONFERENCE</u>**

The undersigned certifies that a face-to-face conference on this motion was held on March 7, 2014, with counsel for all defendants, during which time defendants' counsel indicated they were opposed to the relief being sought in this motion.  Accordingly, Plaintiffs present this matter to the Court for resolution.


   /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2014 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.


  /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN