IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, <br><br> Plaintiffs, <br><br> v. <br><br> TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC. <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § § § § § §    CAUSE NUMBER: 3:11-cv-0207-N |

**PLAINTIFFS' RESPONSE TO TOYOTA'S
MOTION TO EXCLUDE MATERIALS AND DATA OF
PLAINTIFFS' EXPERT JEFF G. VICK**

AUBREY "NICK" PITTMAN
State Bar No. 16049750

THE PITTMAN LAW FIRM, P.C.
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax

**ATTORNEYS FOR PLAINTIFFS**

DARYL K. WASHINGTON
State Bar No. 24013714

LAW OFFICES OF DARYL K. WASHINGTON P.C.
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES ..................................................................................................... 1

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT AND AUTHORITIES ....................................................................................... 1

    A.    There Has Been No Untimely Production of Materials. ........................................ 1

    B.    The Parties Were Unable to Reach an Agreement on The Timing Protocol for Production of Expert Materials, and The Manner of Production Complained of Has Not Been Inconsistent With Disclosures from Defendants. ........................... 4

    C.    The Discovery Materials from Jeff Vick are Very Important to Plaintiffs. ............ 6

    D.    Defendants Have Not Been Prejudiced By the Timing of the Production. ............ 6

        1.    The bulk of the information provided to Defendants has been in Defendants' possession for years. ................................................................ 7

        2.    Vick's hand calculations apply standard equations that are used by all reputable accident reconstructionists. ........................................................ 8

CONCLUSION ........................................................................................................................ 10

CERTIFICATE OF SERVICE ............................................................................................... 12

TABLE OF AUTHORITIES

**Cases**

*Allen v. Ford Motor Co.*, 2010 WL 3791037 (E.D.Tex., Sept. 23, 2010) ................................... 10

*Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356 (5th Cir.2004) ........................................ 8

*Davis v. U.S. Bancorp*, 383 F.3d 761 (8th Cir.2004) .................................................................... 9

*Dunn v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266 (E.D.Mich.2009) ................................. 7

*Farmland Indus., Inc. v. Morrison–Quirk Grain Corp.*, 54 F.3d 478 (8th Cir.1995) .................... 9

*Gayle Martz, Inc. v. Sherpa Pet Group, LLC*, 651 F.Supp.2d 72 (S.D.N.Y.2009) ........................ 7

*Graves ex rel. W.A.G. v. Toyota Motor Corp.*, 2012 WL 38894 (S.D.Miss. Jan. 9, 2012) .......... 10

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 2013 WL 5763178, (C.D.Cal. 2013) ........................................................... 9

*Tex. A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394 (5th Cir.2003) ................ 6, 9

**Rules**

FED.R.CIV.P. 26(a)(2)(B)(ii) ........................................................................................................... 1

FED. R. CIV. P. 26(b)(4)(D) ............................................................................................................ 3

FED. R. CIV. P. 26(e)(2) .................................................................................................................. 4

FED.R.CIV.P. 37(c)(1) .................................................................................................................. 10

Ollie Greene, William Greene, as the Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, (collectively referred to as "Plaintiffs") file this Response to Toyota's Motion to Exclude File Materials and Data (the "Motion to Exclude") of Plaintiffs' Expert Jeff G. Vick ("Vick") and show the Court as follows:

## PRELIMINARY STATEMENT

To begin with, the Motion to Exclude labors under a false premise, applies inapposite legal authorities and relies on an inaccurate and incomplete record. As explained herein, there has been no untimely disclosure of information and Defendants have not been prejudiced by production of materials obviously considered by Mr. Vick in rendering his opinions. Frankly, Plaintiffs are perplexed by this groundless motion since (1) Mr. Vick's entire file (except his misplaced eleven pages of "handwritten" calculations) were produced to all Defendants prior to his deposition; (2) Defendants questioned Vick fully regarding his entire file and input data for his calculations; (3) Vick's calculation equations come from standard reconstruction textbooks that all Defendant would have been able to access; and (4) Vick was able to find his hand calculations and have produced them to the Defendants. Thus the Motion to Exclude was brought solely as litigation gamesmanship.

## ARGUMENT AND AUTHORITIES

### A.   There Has Been No Untimely Production of Materials.

Defendants' Motion to Exclude is vague as to what material Defendants are seeking to exclude, especially considering that most of the material produced has been in Defendants' possession for years. Nevertheless, there has been no untimely production. FED.R.CIV.P. 26(a)(2)(B)(ii) requires an expert to **disclose**, among other things, the "facts or data considered" by the expert in forming his or her opinion. Mr. Vick made his Rule 26 disclosures timely on

1

November 20, 2013. For instance, the following disclosure is reflected in the Vick Expert Report:

> **"FACTS AND DATA CONSIDERED**
> 1. Texas Police Officers Crash Report completed by Trooper Dexter Barkley.
> 2. Texas Commercial Vehicle Enforcement Inspection Report regarding the Forest Products Volvo CMV.
> 3. DPS Scene to scale diagram and various scene photos.
> 4. VCADS Pro Job Card for Forest Products Volvo Tractor.
> 5. 15, audio recorded 911 calls.
> 6. Trooper Dexter Barkley Deposition and exhibits.
> 7. Trooper Clinton Baughman Deposition and exhibits.
> 8. Trooper Christopher Countryman Deposition and exhibits.
> 9. Trooper Albert Cummins Deposition.
> 10. Witness Kyle Evans Deposition and exhibits.
> 11. Daniel Sprinkle Deposition and exhibits.
> 12. Brian Thompson Deposition and exhibits.
> 13. Charles Moody Deposition and exhibits.
> 14. Carr Engineering crash site photos and Forest Products Volvo tractor photos.
> 15. 7, crash scene news photos.
> 16. John Fayard 2005 Freightliner and 2004 Strick trailer inspection photographs and DDEC Reports.
> 17. Volvo Build Record.
> 18. Volvo Specifications document.
> 19. Volvo Vehicle component inquiry.
> 20. Volvo Warranty claim.
> 21. Expert Auto stats, VinLink and Stiff Calc. reports for 2010 Toyota 4-Runner and 2006 Toyota Corolla. VinLink reports for Volvo and freightliner.
> 22. Volvo Trucks Field Operational Test Document.
> 23. Bendix EC-60 Brakes document.
> 24. Complaint adding allegations against Dolphin and Fayard on July 23, 2012

25. Federal Motor Vehicle Safety Standards and Regulations.

26. Texas Commercial Drivers Handbook

27. Stopping Distance Comparison document.

28. Volvo Trucks field operational test.

29. Standard 571.223, 571.224, Rear Impact Guard Protection, FMCSR 393.86.

30. Federal Motor Carrier Safety Regulations including but not limited to Appendix G to subpart B. 393.86, 383.111, 383.113, 396.17, 396.21, 393.52, 396.13,396.3, 396.21.

31. FMVSS 121, 49 CFR, Part 571.121.

32. PDF of Toyota 4Runner Crash Test in Japanese.

33. Photographs marked Greene_000456 - 0001318, and 0001985 - 0002058.

34. Documents marked 685137, 685142, 685142 (1), 685143, and 685144 Frame PDF"

See, Vick Report. See, APP 001-035. As shown by the passage above, Vick discloses very specific documents and categories of things he considered in forming their opinions. Realizing they have no authority, in the Fifth Circuit or elsewhere, that would require Mr. Vick, at his own expense, to copy thousands of pages of documents and electronic data (especially that which has already been exchanged in discovery) for five defendants and re-produce these duplicative documents along with expert reports, Toyota attempts to rely on a June 13, 2011, document production request to support its unfounded argument. However, as the Court can observe from Plaintiffs' response to that June 2011 request, Plaintiffs timely objected to this request as premature, considering that at the time of this request, testifying experts had not been identified.[1] The designation of testifying experts did not happen until November 20, 2013. Even then, the experts' file was not near completion and was in use by experts who were working frantically to complete the expert file and were using these materials to prepare for potential

---

[1] See FED. R. CIV. P. 26(b)(4)(D) (a party may not generally discover facts known to an expert employed only in anticipation of litigation or for trial preparation who is not expected to testify as a witness at trial).

3

rebuttal expert reports. Thus, contrary to Toyota's suggestion that there was somehow a two year delay in providing responses, the evidence shows that responsive documents could not have been produced prior to the November 20, 2013, identification of the testifying experts who would have discoverable expert files.

With regard to Defendants' next argument that there has been a violation of the duty to supplement under Rule 26(e)(1), this argument is also false. First, Rule 26(e) simply states that a party must supplement "in a timely manner." As Defendants concede, Plaintiffs objected to the June 2011, request for production, including on the grounds that "the complete file of all testifying experts" was vague and overly broad. Defendants did not obtain a ruling on this objection and never narrowed the request. Nevertheless, Plaintiffs' counsel provided all Defendants with Mr. Vick's file prior to his deposition being taken. Therefore, the disclosure has been timely, with no prejudice. In addition, for expert witnesses, Rule 26(e) provides the following additional guidance regarding supplementation of information:

> For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

FED. R. CIV. P. 26(e)(2). The Rule 26(a)(3) pretrial disclosure date is May 23, 2014. See Dkt. Entry No. 332. Thus, if the expert files produced to Defendants are governed under Rule 26 supplementation principles, the production is timely under any reading of the rules.

> **B. The Parties Were Unable to Reach an Agreement on The Timing Protocol for Production of Expert Materials, and The Manner of Production Complained of Has Not Been Inconsistent With Disclosures from Defendants.**

Other than the premature and overly broad June 2011 document request discussed above, none of the Defendants made a formal request for documents from Plaintiffs' experts. None of the Defendants served a subpoena *duces tecum* on the experts. In fact, the record shows that,

4

prior to the start of the period for expert depositions, one of Defendants' counsel proposed that expert files be disclosed "two days prior to the depositions." See, December 30, 2013, email from Kathleen Clark. (APP 373-374). The Defendants never agreed to this proposal, or on a plan among themselves, as to whether expert files would be produced at the depositions or two or more days prior to the depositions. Nonetheless, there was never an understanding, explicit or implicit, that the parties would produce thousands of pages of underlying discovery "along with" expert reports. In fact, the record is absolutely clear that this was not the Defendants' practice. For instance, although Defendants' expert reports were produced on December 30, 2013, Plaintiffs were served copies of the following Defendants' expert files only "after" the experts' December 30, 2013, written reports were served:

1. Timothy Cheek      Expert File served on Plaintiffs on January 10, 2014 (APP 375)
2. David Viano         Expert File served on Plaintiffs on January 16, 2014 (APP 378)
3. Michelle Vogler     Expert File served on Plaintiffs on January 20, 2014 (APP 379)
4. Thomas Truss        Expert File served on Plaintiffs on January 29, 2014 (APP 380)
5. Kenneth Tandy       Expert File served on Plaintiffs on January 30, 2014 (APP 382)
6. Stephen Werner      Expert File served on Plaintiffs on February 6, 2014 (APP 383)
7. Helen Reynolds      Expert File served on Plaintiffs on March 4, 2014 (APP 386)

Thus, the record is clear that the parties had no specific agreement regarding when the underlying expert files would be provided, and certainly no agreement that thousands of dollars would be spent by the parties to copy "entire expert files" and attach to expert reports. As a result of the inability of the parties to decide on a process for obtaining expert files (that were not duplicative of materials the parties already had), Plaintiffs implemented a practice of serving a *duces tecum* along with each of the expert deposition notices to ensure that documents were produced at the depositions. Thus, Defendants would be incorrect to contend that there was an agreement regarding when "entire expert files" would be produced.

### C. The Discovery Materials from Jeff Vick are Very Important to Plaintiffs.

As discussed above, there has been no untimely production of discovery in this matter. As also mentioned above, the Motion to Exclude is unclear as to exactly what it seeks to exclude. Nevertheless, it goes without saying that the information considered by Jeff Vick is extremely important to Plaintiffs. That is because Vick used his file and the supporting material in it in order to reconstruct the accident. Vick's production includes all of the discovery that has been exchanged in this matter, including documents produced by the five defendants, Vick's research and testing, pleadings in the file, written discovery responses, the depositions of each of the fact and expert witnesses, investigative reports of the troopers, vehicle data, inspection notes, etc. These materials have all been reviewed and analyzed by Vick, goes to the heart of Plaintiffs' case, and refute Defendants' case. Therefore, even if the Court were to apply the failure to disclose principles, the "importance of the testimony or materials" factor weighs in Plaintiffs' favor since excluding Vick's timely produced expert file would amount to an exclusion of virtually all evidence in the reconstruction of this case.

### D. Defendants Have Not Been Prejudiced By the Timing of the Production.

Without assenting that there has been an untimely disclosure, Defendants have not been prejudiced in any respect. As to the material produced by Vick prior to his deposition, the record demonstrates that Defendants not only questioned Vick completely on the items in his file, they marked substantive material from his file as exhibits to his deposition. See, Vick Depo at 5:11-22 (APP 041) showing exhibits from Vick's expert file that were marked as exhibits. The law clearly allows inclusion of Mr. Vick's material. Even in instances where there has been late-disclosed evidence, courts have permitted evidence to be used where the other party has adequate time to prepare and would not suffer prejudice as a result. See *Tex. A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir.2003) (weighing the four harmlessness factors

6

and concluding that the district court had not abused its discretion by permitting certain evidence to be used at trial despite failure to disclose under Rule 26(a) because, "[a]lthough [the party seeking to use the evidence] failed to explain its failure to disclose, the prejudice to the adverse parties was negligible because the witness in support of whose testimony the [contested evidence] [was] offered had been designated properly as a witness before trial. Further, any prejudice was cured by the approximately one month during which [the opponent] was allowed to examine and respond to the contested evidence"); *Dunn v. State Farm Mut. Auto. Ins*. Co., 264 F.R.D. 266, 276 (E.D.Mich.2009) (permitting defendant to use evidence despite defendant's failure to timely supplement its responses before discovery cut-off date because delay was harmless given that plaintiff still had months before trial to adequately prepare itself). Here there simply is no prejudice to Defendants.

        1.      **The bulk of the information provided to Defendants has been in Defendants' possession for years.**

As can be observed from the disclosure listing in Vick's Report, most of the information listed has already been exchanged in this matter, including documents produced by the five defendants, Vick's research and testing, pleadings in the file, written discovery responses, the depositions of each of the fact and expert witnesses, investigative reports of the troopers, vehicle data, inspection notes, etc. In other words, the bulk of the information produced is information to which the Defendants have already had full access, in some cases for years. Therefore, the Court should not exclude any of the information produced. *See Gayle Martz, Inc. v. Sherpa Pet Group, LLC*, 651 F.Supp.2d 72, 81 (S.D.N.Y.2009) (finding no prejudice to defendants from plaintiff's failure to supplement its discovery because "any such supplements would be derived entirely from discovery materials that Defendants produced to [plaintiff]," and refusing to sanction plaintiff as a result).

7

### 2. Vick's hand calculations apply standard equations that are used by all reputable accident reconstructionists.

As to the "hand calculations" about which the Motion to Exclude refers, Plaintiffs would submit that Defendants are aware that the formulas used for the calculations are standard equations used by any reputable accident reconstructionist. The thing that is important to an expert analysis is the input data, not the routine or rote formulas. And Defendants spent hours questioning Mr. Vick regarding his methodology, which gave insight into the input data he uses for the standard calculations, about which all experts are aware. *See Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 375 (5th Cir.2004) (affirming district court's denial of a motion to exclude plaintiff's expert's supplemental report where the district court reasonably believed that the defense expert had access to the supporting work papers and calculations and where the defense expert was already familiar with the underlying data).

Furthermore, although Vick testified that he simply had misplaced the calculation in a recent move, Defendants attempt to paint a more sinister motive. However, Toyota failed to mention that its expert Lee Car testified that he performs hand calculations for every project. Carr Depo at 148:8-19 (APP 369). Yet, Carr did not provide his hand calculations prior to, during, or following his deposition. Similarly, Strick's reconstruction expert, Michelle Vogler, did hand calculations in this matter but did not provide them prior to, during, or following her deposition. Vogler Depo at 123:2-7 (APP 370). Volvo's reconstruction expert, Kenneth Tandy, also made hand calculations but did not produce the actual hand calculations with his expert report or following it. Tandy Depo at 95:8 – 96:11 (APP 371-372). In other words, it is clear that parties are not prejudiced from not receiving hand calculations as long as the expert can provide the source of the equations and the input data, which Vick was able to do during his deposition. Accordingly, there was no prejudice from Mr. Vick not having his calculations at the time.

However, even if the Court were to conclude Mr. Vick's hand calculations were produced late, courts have permitted evidence disclosed after the discovery deadline to be used where the other party has adequate time to prepare and would not suffer prejudice as a result. *See Tex. A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir.2003) (weighing the four harmlessness factors and concluding that the district court had not abused its discretion by permitting certain evidence to be used at trial despite failure to disclose). In addition, the trial in this matter is not until June 23, 2014, which means that Defendants have months to examine the 11 pages of hand calculations that Mr. Vick had misplaced after his office and residential move.

Moreover, it is clear that Defendants were aware from an inspection of Vick's expert report that he uses calculations to determine speeds, impact, energy, delta-V, etc. Therefore, the use of hand calculations comes as no surprise to Defendants. *See, e.g. Davis v. U.S. Bancorp*, 383 F.3d 761, 765 (8th Cir.2004) (no abuse of discretion to allow testimony when "district court reasonably found that there was no unfair surprise" about the topic of testimony); *Farmland Indus., Inc. v. Morrison–Quirk Grain Corp.*, 54 F.3d 478, 482 (8th Cir.1995) (district court did not abuse its discretion by allowing testimony when opposing party "was neither surprised nor confused at the substance" of the testimony).

In addition, during his seven hour deposition, Vick testified at length about his methodology and testing, how he derived his input data, as well as how he arrived at his speeds, etc. Where an expert has been thoroughly questioned on his opinions, the courts will not exclude it. *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 2013 WL 5763178, (C.D.Cal. 2013). The hand calculations that Vick was able to find and provide to Defendants do not alter or supplement his opinions. Rather, they are evidence of the basis for opinions that are already expressed in his written reports. Thus, they

9

should not be excluded. *See McPherson v. Rowe*, 366 Fed.Appx. 43 (11th Cir.2010) (allowing the inclusion of new information not included in an expert report, particularly because the experts were not testifying to new opinions based on new information); *Graves ex rel. W.A.G. v. Toyota Motor Corp.*, 2012 WL 38894 (S.D.Miss. Jan. 9, 2012) (allowing the inclusion of opinions "clearly articulated" in the report); *Allen v. Ford Motor Co.*, 2010 WL 3791037 (E.D.Tex., Sept. 23, 2010) (allowing an affidavit to clarify an opinion taken out of context in a deposition).

Even if the Court were to determine that Rule 26 has been violated, FED.R.CIV.P. 37(c)(1) provides several remedies to a district judge who is faced with violations of the mandatory-disclosure provisions of Rule 26. The provision on sanctions explicitly states in pertinent part that 'instead of this sanction [of total exclusion], the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.'"). If the Court finds there to be prejudice to Defendants it could be mitigated by having Vick appear for a continuation of deposition before trial, during which time he could provide additional responses to questions, if any, regarding his hand calculations.

## CONCLUSION

It is clear that there has been no untimely production of material. In addition, none of the Defendants has been prejudiced by Plaintiffs' production of the information that was tendered to Defendants far in advance of trial.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that the Court deny the Motion to Exclude in its entirety and for such other and further relief to which Plaintiffs may be allowed in law or equity.

Respectfully Submitted,

/s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

/s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

## CERTIFICATE OF SERVICE

    I hereby certify that on March 21, 2014, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

          /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN