IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, *et al.*, | § § § | |
| Plaintiffs | § § | |
| v. | § § | CAUSE NUMBER: 3:11-cv-0207-N |
| TOYOTA MOTOR CORPORATION, *et al.*, | § § § | |
| Defendants. | § | |

**TOYOTA DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE
THE REPORT AND TESTIMONY OF LEE CARR AND BRIEF IN SUPPORT**

## **TABLE OF CONTENTS**

I.  SUMMARY OF THE ARGUMENT .................................................................................4

II. RELEVANT FACTS .......................................................................................................4

III. ARGUMENT AND AUTHORITIES ..............................................................................5

    A.  Carr is Qualified to Render Expert Opinions Regarding the Accident....................5

    B.  Carr Used a Reliable Methodology in Rendering His Opinions..............................7

        1.  Carr's methodology is reliable and common among accident reconstructionist................................................................................7

        2.  Carr properly relied upon the physical evidence in analyzing this complex high-speed accident.................................................................................10

        3.  Plaintiffs' actual reason for challenging Carr's testimony..........................13

        4.  Carr can offer reliable observations regarding the design of the 4Runner based on its structural damage ...............................................................14

        5.  Carr can offer reliable observations regarding fuel system and fuel release ........................................................................................................14

    C.  Carr Can Reliably Opine Whether the 4Runner Complied With Safety Standards................................................................................................................15

    D.  Carr Can Offer Opinions That Embrace Ultimate Issues in The Case, Including Charles Moody's Negligence .................................................................16

    E.  Carr's Testimony Is Admissible Under Federal Rule of Evidence 403 .................16

IV. CONCLUSION................................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Barnes v. Gen. Motors Corp.*, 547 F.2d 275 (5th Cir. 1977)..............................................................9

*Green v. Ford Motor Co.*, 2012 WL 10670462 (N.D. Miss. Sept. 7, 2012)..................................10

*Hafstienn v. BMW of N. Am., LLC*, 194 Fed. Appx. 209 (5th Cir. 2006).......................................9

*Jordan v. Gen. Motors Corp.*, 624 F. Supp. 72 (E.D. La. 1985).......................................................9

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)............................................................10

*McCune v. Graco Children's Prods., Inc.*, 495 Fed. Appx. 535 (5th Cir. 2012)............................9

*Moore v. Ashlyand Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998).......................................................13

*Muth v. Ford Motor Co.*, 461 F.3d 557 (5th Cir. 2006)....................................................................8

*Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 6476371 (N.D. Tex. Nov. 20, 2013).......................9

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239 (5th Cir. 2002)...............................................................6

*Shipp v. Gen. Motors Corp.*, 750 F.2d 418 (5th Cir. 1985).............................................................9

**Rules**

Federal Rule of Evidence 403.........................................................................................................16

Federal Rule of Evidence 704.........................................................................................................16

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively "the Toyota Defendants") respond to Plaintiffs' Motion to Exclude the Report and Testimony of Lee Carr, and show the Court as follows:

## I.
## SUMMARY OF THE ARGUMENT

Plaintiffs' Motion to Exclude the Report and Testimony of Lee Carr must be denied. Lee Carr ("Carr") is qualified to offer opinions regarding the reconstruction of this accident. Carr used a methodology that is proper, reliable, and used by other accident reconstructionists. Carr did not "ignore" any "actual evidence" when conducting his reconstruction. Instead, Carr relied on all of the evidence, including physical evidence, to offer reliable opinions regarding the causes, conditions, and circumstances of this multi-vehicle high-speed crash. Carr is also qualified to offer observations regarding the design of the 4Runner based on structural damage, as well as whether the 4Runner complied with safety standards. It is also within Carr's expertise to reliably opine on Charles Moody's negligence and the Exponent crash test. Finally, Carr's expert opinions are highly probative and there is no danger of unfair prejudice. Because Carr's opinions satisfy Federal Rule of Evidence 702 and *Daubert*, his testimony must not be excluded or limited in any way. Plaintiffs' Motion to Exclude must be denied in its entirety.

## II.
## RELEVANT FACTS

This case involves a high speed, multiple-vehicle, multi-impact accident. Plaintiffs allege that the 4Runner was defective because its structure and fuel system did not properly protect the

Greene Family during the subject accident, and ultimately caused their injuries and deaths.[1] In order to better understand the accident sequence and the vehicle's dynamics, the Toyota Defendants designated Carr to perform a scientific reconstruction of the multi-vehicle crash. *See* Expert Report of Lee Carr, attached herein as Exhibit A; Deposition Transcript of Lee Carr, attached herein as Exhibit B. As part of his expert report, Carr opines that there were six distinct collision events that created substantial impact forces on the 4Runner during the crash sequence. The first impact occurred when the Volvo tractor struck the rear of the slow moving 4Runner. Exhibit A at 3 (APP 3). The second impact occurred when the Volvo tractor and 4Runner (as a combination) struck the rear of the slow moving Corolla. *Id.* During the third impact, the 4Runner struck the back of the Strick trailer. *Id.* The fourth impact occurred when the Volvo tractor caught up to the 4Runner and crushed it underneath the Strick trailer. *Id.* During this crushing event, the fifth impact occurred when the remains of the 4Runner were pushed into the right dual wheels of the Strick trailer. *Id.* Finally, the sixth impact occurred when the left front fender of the 4Runner was struck by the tool box area on the Volvo tractor's trailer. *Id.*

### III.
### ARGUMENT AND AUTHORITIES

**A.     Carr is Qualified to Render Expert Opinions Regarding the Accident.**

Throughout Plaintiffs' Motion, they make passing conclusory statements that "Carr is not qualified to give certain opinions he seeks to provide." However, Plaintiffs provide no further support for these general and unsubstantiated statements. *See* Doc. No. 478 at 6. Instead, they argue that because Carr failed to follow a "proper" methodology, he is not qualified to offer expert opinions regarding the accident. Whether Carr is qualified and whether he used a reliable

---

[1] Plaintiffs' Complaint also includes a host of other alleged defect claims, including allegations relating to the restraint system in the 4Runner. However none of these claims are supported by any of their experts.

_____
**TOYOTA DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE**
**THE REPORT AND TESTIMONY OF LEE CARR AND BRIEF IN SUPPORT**                    **PAGE 5**

methodology are two completely different analyses. Carr's expert report, deposition, and declaration all reveal that Carr is more than qualified to offer these opinions.

Expert testimony must be based on the "expert's specialized knowledge, training, experience, and first-hand observation while supported by solid evidence in the scientific community." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002). Accident reconstruction is an application of mechanical engineering and physics that is used to determine how an accident occurred, including among other things, the speeds of the vehicles involved and their points of impacts. Carr's education, training and experience clearly indicate that he is qualified in these respects.

Carr holds a Bachelor of Science Degree in Mechanical Engineering from Northwestern University and a Master of Science Degree in Mechanical Engineering from the University of Florida. Declaration of Lee Carr, attached herein as Exhibit C ¶ 5 (APP 147). Carr also has extensive experience in the automotive field. He was employed by Ford Motor Company from 1965 to 1981 in various engineering jobs, including the design and testing responsibility for steering and suspension systems, vehicle structures including frames and low speed crash protection bumpers, driver operated controls for their function and compatibility with driver capabilities and, crashworthiness systems including air bags, belt systems and steering wheels and columns. Exhibit A at 1 (APP 1). Carr has been trained in and responsible for crash investigation and reconstruction to establish the causes, conditions, and circumstances of crashes for over forty-five years. Exhibit C ¶ 4 (APP 147). He has also been trained in and responsible for conducting laboratory and full scale vehicle crash tests to reenact real world crashes. Exhibit A at 1 (APP 1). Carr was also responsible for determining the existence of design and performance defects and the implementation of appropriate actions to remedy any defect. *Id.*

Finally, he was the liaison between Ford and Government Agencies worldwide on the issue of compliance to standards and the investigation of potential defects. *Id.* Carr's education, training and experience clearly indicate that he is qualified to testify regarding the reconstruction of this accident.

B.  **Carr Used a Reliable Methodology in Rendering His Opinions.**

 1. **Carr's methodology is reliable and common among accident reconstructionist.**

Before rendering his opinions, Carr conducted a thorough and meticulous investigation into the accident. During his deposition, Carr described the methodology he used in reconstructing the accident. He also offered opinions as to whether his methodology is common among other accident reconstructionist. *See* Exhibit B at 61-66 (APP 74-76). Specifically, Carr testified that he first gathered materials relating to the crash, including information from the police investigation; he then surveyed the crash scene with survey equipment; reviewed the physical evidence, including photographs; conducted a hands-on examination of the vehicles involved in the accident and of the crash scene; used this information to create scaled diagrams in two and three dimensions; reviewed witness statements; and then came up with various hypotheses that he tested employing various methodologies to see if they were consistent with the physical evidence and calculations. *Id*. These steps are clearly indicative of a qualified expert that has been reconstructing thousands of accidents for almost two decades. Plaintiffs also claim that Carr "did not use the methodology for reconstruction that other reconstruction experts use." Yet, Carr testified that the methodology he used in this case is regularly used and generally accepted in the field of accident reconstruction. *Id.* In fact, a review of Plaintiffs' accident reconstructionist, Jeff G. Vick's ("Vick") expert report and deposition testimony reveal

that he used most all of the same methodology described by Carr, although clearly not to the same level of detail and analysis. *See* J.G. Vick Consulting Investigation and Reconstruction Report, attached herein as Exhibit D at 1-2 (APP 155-56); Excerpts from Deposition Transcript of Jeff G. Vick, attached herein as Exhibit E at 25:23—27:13 (APP 196-197).

In an effort to attack Carr's methodology, Plaintiffs make various conclusory statements about things that Carr did not do. For example, Plaintiffs state that "Carr concedes in paragraph 47 of his report that he was unable to use traditional damage-based delta-V calculations to determine certain speeds." Doc. No. 478 at 7. Further, Plaintiffs suggest that Carr's methodology is not reliable because he did not conduct a crash test in this matter. While it is true that given the complexity and number of impacts in this accident it is not appropriate to use traditional damage-based delta-V calculations to determine the speeds of all vehicles during all impacts, Carr did analyze the delta-V for some of the impacts, which is consistent with recognized industry practices. Carr validated his work through the use of recognized accident reconstruction computer simulation tools, all of which provided for appropriate methodology and resultant opinions.

In addition, Carr Engineering, in conjunction with Exponent, Inc., conducted a crash test of a substantially similar impact event to the initial impact between the Volvo tractor and the 4Runner. However, Plaintiffs argue that the crash test is not admissible based on *Muth v. Ford Motor Co.*, 461 F.3d 557 (5th Cir. 2006). The issue in *Muth* was whether demonstrative evidence offered by Ford to provide an illustration of general scientific principles was admissible. *Id.* at 566. However, the Toyota Defendants are not offering the crash test as an illustration of general scientific principles. Instead, the crash test is being offered as a substantially similar impact event to the initial impact between the Volvo tractor and the

4Runner. A district court has wide discretion to admit crash test films conducted under substantially similar conditions as the underlying accident. *Barnes v. Gen. Motors Corp.*, 547 F.2d 275, 277 (5th Cir. 1977*); McCune v. Graco Children's Prods., Inc.*, 495 Fed. Appx. 535, 540 (5th Cir. 2012). If the proper foundation is laid, the court should admit crash test evidence. *Shipp v. Gen. Motors Corp.*, 750 F.2d 418, 427 (5th Cir. 1985). In order for the crash test to be admissible, it is not required to precisely reproduce all factors existing at the time of the accident. *Id.*; *Jordan v. Gen. Motors Corp.*, 624 F. Supp. 72, 79 (E.D. La. 1985). Instead, it is necessary to reproduce the conditions in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed. *Id.* When the same products are used in a crash test as an accident, courts are likely to find that the crash test is substantially similar and therefore admissible. *Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 6476371, at *7 (N.D. Tex. Nov. 20, 2013); *see also Hafstienn v. BMW of N. Am., LLC*, 194 Fed. Appx. 209, 212 (5th Cir. 2006).

Here, the crash test is substantially similar to the initial impact between the Volvo tractor and the 4Runner. In the crash test, a tractor-trailer matching the Volvo tractor was caused to strike a Toyota 4Runner matching the crash-involved Toyota 4Runner. *See* Exhibit A at 44 (APP 44). Both vehicles were purposely weighted to match the weights of the crash involved vehicles. *Id.* The impact speed of the Volvo tractor was also set up to fall within the range of closing speed offered by Vick. *Id.* Finally, the point of engagement between the crash test vehicles was similar to the point of engagement proposed by all of the accident reconstructionists in this case. The crash test therefore reproduced the conditions of the initial impact between the Volvo tractor and the 4Runner in "substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed," and it is therefore admissible. *Barnes*, 547 F.2d at 277.

Moreover, just because Carr did not personally perform the crash test does not mean that he cannot rely on it or refer to it. *Green v. Ford Motor Co.*, 2012 WL 10670462 (N.D. Miss. Sept. 7, 2012). An expert may base his testimony "upon professional studies or personal experience" so long as he "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at *7; citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). Carr also has experience conducting crash tests. Specifically, while working at Ford, Carr was trained in and responsible for conducting laboratory and full scale crash tests to reenact real world crashes. *See* Exhibit A at 1 (APP 1).

Although the crash test is admissible and it is proper for Carr to rely upon it, his opinions in this case do not solely rely on the crash test, so the issue of admissibility of the crash test should be addressed as a separate issue. Plaintiffs' arguments go to the weight of the evidence, not its admissibility. The crash test conducted by the Toyota Defendants in this case is admissible, and Carr can rely on it and refer to it during trial.

Finally, the simple truth is that the proffered accident reconstructionist that did not conduct any computer simulation work or crash testing as part of his analysis was Plaintiffs' expert, Vick, such that if that is grounds for exclusion, then Vick's opinions should be excluded in their entirety. Exhibit E at 29:6-9 (APP 197); Doc. No. 436, 438.

    **2.**    **Carr properly relied upon the physical evidence in analyzing this complex high-speed accident.**

Plaintiffs' boldly claim that Carr has "refused to properly investigate the facts" and that his conclusions are contrary to the "actual crash evidence." These claims are ludicrous and are completely contradicted by Carr's expert report and sworn deposition testimony. Not only did Carr properly investigate all of the facts in this case, he relied upon the most reliable evidence

___

**TOYOTA DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE
THE REPORT AND TESTIMONY OF LEE CARR AND BRIEF IN SUPPORT**     **PAGE 10**

that he was able to gather in reconstructing the accident, the physical evidence.[2] When reconstructing an accident, especially an accident as complex as this one, it is critical to closely examine and rely upon any available physical evidence.

Plaintiffs argue that Carr "ignored" the four witness statements. First and foremost, Carr did not "ignore" any such evidence. During his deposition, he specifically stated that he reviewed and considered this information as part of his methodology when forming his final reconstruction opinions. Exhibit C ¶ 13-14 (APP 149). However, when analyzing a high-speed complex such as this, testimony from witnesses regarding vehicle impacts, impact engagement points, vehicle speeds are more reliably established not by guess or simple observation, but by scientific analysis of physical evidence. *See* Exhibit B at 27:20—28:5 (APP 66). Relying exclusively on lay witness testimony is not generally reliable because you can have two different people witnessing the same accident who provide two different versions of how the accident occurred. Exhibit A at 65 (APP 65).[3] Carr testified that he considered all of the witness statements in analyzing the cause, conditions, and circumstances of the crash, but admitted that when the statements cannot be reconciled with physical evidence, the physical evidence controls. *See* Exhibit B at 164:11—165:16 (APP 100). Although Carr clearly considered the witness statements, Vick could not even recall whether he reviewed the witness statements in this case, and even acknowledged that he didn't take the witness statements into account when creating his reconstruction. *See* Exhibit E at 209:17-23; 245:1-14 (APP 242, 251).

---

[2] For example, Carr relied on the start of the visible tire marks on the roadway when determining the braking distance for the Volvo tractor. *See* Exhibit A at 21 (APP 21). He analyzed the gouges made in the roadway that were created from the 4Runner's spare tires, axle components, and other structures towards the rear when analyzing the initial impact between the Volvo tractor and the 4Runner. *Id.* at 23 (APP 23). He analyzed the damage patters to the 4Runner, the tire marks of the Volvo tractor, and the various other marks on the roadway in order to help render his opinion regarding the orientation of the various vehicles involved during impact #4. *Id.* at 32 (APP 32).

[3] During his deposition, Vick discussed instances where lay witnesses can see the same accident but provide confusing or different statements. *See* Exhibit E at 237:16—241:5 (APP 249-50).

Plaintiffs similarly complain that Carr "ignored" the police report and their reconstruction. Once again, Plaintiffs assertion is baseless and unfounded. Although Carr's opinions differ from the police investigation in certain respects, he had no criticism of their investigation. Instead, he simply opined that their accident reconstruction did not go into the level of detail that was necessary to understand the causes, conditions, and circumstances of this multi-vehicle complex crash. Exhibit B at 239:7-13 (APP 119). Throughout his expert report, deposition testimony, and declaration, Carr explicitly explains how he relied upon the police report and their reconstruction in this accident. For example, Carr used the police survey and photographs in concluding that there were six different impacts. *Id.* at 279:6-16 (APP 129). He also used the photographs to help determine the various points of impacts and points of rest for all of the involved vehicles. Exhibit A at 12 (APP 12).

Moreover, the issues germane to a police investigation are quite different to those related to an accident reconstruction in a civil case. Police investigations typically do not focus on specific speeds involved at various impacts or the amount of crush experienced by the vehicles involved; the police are interested in assigning a cause of the accident and fault, not details of how multiple vehicles impacted and performed. In addition, police officers are not typically qualified engineers who can offer detailed and reliable accident reconstruction opinions necessary for a civil case such as this.

Plaintiffs own accident reconstructionist has also expressed his disagreement with some of the conclusions reached in the police investigation. *See* Exhibit E at 55:23—56:2; 275:3—276:12 (APP 204, 259). Vick acknowledged that there are clearly differences in information that is considered when comparing a police investigation to an accident reconstructionist in a civil case, and that there is "no way" that the police reconstruction was a better reconstruction than

his. *Id.* at 227:22-25; 275:3-15 (APP 227, 259). Just because an accident reconstructionist has differences of opinion with a police investigation or witness statement does not mean that they have "ignored" this evidence or that their methodology is flawed.

### 3. Plaintiffs' actual reason for challenging Carr's testimony.

Plaintiffs attempt to try and exclude Carr's testimony is nothing more than a defensive tactic. Vick's reconstruction is superficial and flawed. Carr's is thorough, supported by the evidence and reliable. The only expert who is "cherry picking" facts in this case is Vick. One of the key issues in this case is whether the Volvo tractor caught up to the 4Runner for a second time and crushed it underneath the Strick trailer. Vick testified that the Volvo tractor briefly contacted the 4Runner again, but it was "a clipping or glancing blow just to pull off this fender. It's not a solid into the back end of this." *Id.* at 77:9-15 (APP 209). Despite Plaintiffs' claim that Carr has ignored the "actual evidence" in this case, Vick is the only expert who seems to have ignored this evidence given that all other reconstruction experts concluded that the Volvo tractor caught up the 4Runner and crushed it underneath the Strick trailer. In fact, Plaintiffs' own biomechanical expert even disagrees with Vick, and testified under oath that the Volvo tractor caught up to the 4Runner and crushed it underneath the Strick trailer. *See* Excerpts from Deposition Transcript of Dr. Joseph Burton, attached herein as Exhibit F at 31:21—33:24 (APP 280-282). Vick is the only expert who is "cherry picking" evidence in this case and ignoring the "accurate facts in the record showing the true sequence of the accident." Doc. No. 478 at 10. Because Plaintiffs don't agree with Carr's ultimate conclusions, they argue that his methodology is flawed. This is not a proper basis to exclude a qualified expert who is using a reliable and well received methodology. It is not the conclusions of an expert that are at issue in a *Daubert* challenge, but rather the methodology used by the expert to arrive at his conclusions. *Moore v.*

*Ashlyand Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). Carr's reliance on the physical evidence is part of a reliable, scientific methodology, which is used by other accident reconstructionists.

### 4. Carr can offer reliable observations regarding the design of the 4Runner based on its structural damage.

Plaintiffs state that Carr offers conclusory statements regarding the design of the 4Runner. Although Carr is not being offered to provide expert opinions regarding the design of the 4Runner, it is within his expertise to make observations regarding the structural damage to the 4Runner and its severity. For example, Carr is entitled to characterize the damage and compare that damage to what one would see in Federal Motor Vehicle Safety Standards crash tests 208, 214, and 301. The portions of Carr's deposition cited by Plaintiffs in their Motion do not reflect his opinions regarding the design of the 4Runner. Instead, they are simply observations he has made when analyzing the 4Runner's damage. Carr should not be precluded from expressing opinions on his observations of the structural damage to the 4Runner and how that damage compares to crash tests.

### 5. Carr can offer reliable observations regarding the fuel system and fuel release.

Similar to the above, Plaintiffs argue that Carr cannot express expert opinions on "the nature and timing of the compromise of the 4Runner's fuel system," and "whether there was an observable leak." Although Carr will not testify regarding the design of the fuel system, he is qualified to offer observations regarding the damage to the fuel system. More specifically, Carr can reliably opine as to the final distortion of the fuel system and how impact four destroyed the fuel filler and substantially affected the area of the fuel tank. In addition, although Carr has not analyzed the exact timing of the fuel system breach, it is well within his expertise to comment on

the Exponent crash test. More specifically, Carr can opine that the crash test was set up within the range of Vick's impact speeds for impact one, a key impact in this case. Carr can also opine that there was no fuel leakage as a result of the crash test. Finally, Carr can reliably testify that there was no evidence of fire or fuel leakage in the area of impact one and impact two, an opinion that is also expressed by Vick. *See* Exhibit E at 67:8-12; 73:4-6 (APP 207, 208). It does not matter if his opinions are based on the photographs that he reviewed. Carr testified that it is common practice to rely on photographs when reconstructing an accident. Carr is not opining as to the timing or location of the fuel release and/or fire, but it is well within his purview to offer opinions about what he is or is not seeing in the photographs. Carr should not be precluded from opining on the damage to the fuel system and his observations regarding fuel release and fire.

C. **Carr Can Reliably Opine Whether the 4Runner Complied With Safety Standards.**

Plaintiffs state that Carr "occasionally provides statements [in his report and deposition] that go to the heart" of whether the 4Runner was in compliance with safety standards and whether those standards are adequate. However, two sentences later, Plaintiffs say that Carr can't testify regarding these subjects because they are not in his report. In addition, there is little if any discussion regarding this subject in Carr's deposition. With that said, Carr is qualified to opine whether the 4Runner complied with certain safety standards. During his deposition, Carr testifies to his expertise in the area of demonstration of compliance to various safety standards that have to do with vehicle design. Exhibit B at 19:2-6 (APP 64). While working at Ford Motor Company, Carr was a liaison between Ford and Government Agencies worldwide on the issues of compliance to standards and the investigation of potential defects. Exhibit A at 1 (APP 1). Plaintiffs also cite no Fifth Circuit or Texas precedent in support of their unfounded proposition that Carr cannot testify on whether the 4Runner complied with safety standards.

**D.     Carr Can Offer Opinions That Embrace Ultimate Issues in The Case, Including Charles Moody's Negligence.**

Federal Rule of Evidence 704(a) provides that "an opinion is not objectionable just because it embraces an ultimate issue."  Plaintiffs claim that Carr should not be permitted to offer opinions relating to cause of the crash and the damage to the 4Runner's structure.  As discussed above, it will well within Carr's expertise to offer observations regarding the structural damage to the 4Runner and its severity.

Plaintiffs cite to various statements made by Carr relating to the negligence of Charles Moody and argue that this is not a proper opinion for Carr to offer.  The negligence of Moody is an important topic in this trial.  Multiple expert witnesses, both from Plaintiffs and Defendants, opine that Moody was negligent.  In fact, Vick opines that Moody was negligent in his operation of the vehicle at the time of the accident because he failed to maintain a proper lookout and struck a slower moving vehicle in front of him.  Exhibit E at 63:13-24 (APP 206).  The opinions expressed by Vick and Carr regarding Moody's negligence are also shared by the police report.  It is therefore well within Carr's expertise to opine regarding the cause of the accident and Moody's negligence.  Finally, Plaintiffs' argument in this regard is improper.  The mention of Moody's negligence at trial is more appropriately addressed as a motion in limine.

**E.     Carr's Testimony Is Admissible Under Federal Rule of Evidence 403.**

Finally, Plaintiffs claim that Carr's testimony should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or that it will mislead the jury.  Fed. R. Evid. 403.  First, there is nothing about Carr's expert testimony that will confuse the issues or mislead the jury.  Carr's expert report was by far the most detailed report provided by any of the accident reconstructionist in this case.  He is also the

most qualified and experienced accident reconstruction expert in this case. Second, Carr's testimony is not unfairly prejudicial. The probative value of the testimony in this case outweighs the danger of any unfair prejudice. A reliable reconstruction of this accident is vital in order to have a proper understanding of this case and the legal issues that are going to be presented, and as discussed above, Carr utilized a proper and reliably methodology that demonstrates the various causes, conditions, and circumstances of this crash. While it is undoubtedly prejudicial to Plaintiffs' case in the sense that it helps disprove Plaintiffs' contentions, including that the 4Runner is defective and unreasonably dangerous, there is nothing unfairly prejudicial about it. The probative value therefore outweighs the danger of any unfair prejudice. Moreover, this is an issue to be addressed by the court at the limine stage, and is not the proper subject of a *Daubert* challenge.

## IV.
## CONCLUSION

Plaintiffs' Motion must be denied. Carr is qualified to offer opinions regarding the reconstruction of this accident and he used a methodology that is proper, reliable, and used by other accident reconstructionist. Carr did not "ignore" any "actual evidence" when conducting his accident reconstruction analysis and his expert opinions are extremely probative in this case given its complexity. Because Carr's opinions satisfy Federal Rule of Evidence 702 and *Daubert*, his testimony must not be excluded or limited in any way.

RESPECTFULLY SUBMITTED,

*/s/ Kurt C. Kern*
**KURT C. KERN – Attorney-in-Charge**
State Bar No. 11334600
Kurt.Kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
David.Stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas  75201
Telephone:  (972) 616-1700
Facsimile:  (972) 616-1701

**ATTORNEYS FOR DEFENDANTS TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., AND TOYOTA MOTOR SALES, U.S.A., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 7th day of April, 2014.

*/s/ Jude T. Hickland*