IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **OLLIE GREENE**, *et al.*, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | CAUSE NUMBER: 3:11-cv-0207-N |
| | § | |
| **TOYOTA MOTOR CORPORATION**, *et al.,* | § | |
| | § | |
| Defendants. | § | |

**TOYOTA DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE
THE REPORT AND TESTIMONY OF CATHERINE CORRIGAN
AND BRIEF IN SUPPORT**

## TABLE OF CONTENTS

I. SUMMARY OF THE ARGUMENT ..................................................................................4

II. RELEVANT FACTS .........................................................................................................5

III. ARGUMENT AND AUTHORITIES................................................................................5

    A. Dr. Corrigan is Qualified to Render Expert Opinions Regarding the Mechanisms of Injuries to the Greene Family and the Biomechanical Issues Relating to the Design and Performance of the 4Runner During the Accident ...............................5

    B. Dr. Corrigan Employed a Reliable Methodology in Rendering Her Opinions........7

        1. Dr. Corrigan can rely on Lee Carr's accident reconstruction......................7

        2. Dr. Corrigan can reliably opine regarding the severity of the initial impact between the Volvo tractor and 4Runner based on publicly available government data........................................................................................9

        3. Dr. Corrigan can offer reliable opinions regarding occupant interaction with restraint systems................................................................................11

        4. Dr. Corrigan can reliably opine regarding the cause and mechanism of Mrs. Greene's death..................................................................................11

        5. The use of simulation programs is rare in the context of individual accident analysis .......................................................................................13

        6. Dr. Corrigan can testify to her observations on the displacement of the B-pillar and the deformation of the seat belt anchor based upon her inspection of the 4Runner .......................................................................13

    C. It is Proper for Dr. Corrigan to Discuss the Reports and Testimony of Other Experts .....................................................................................................................13

    D. Dr. Corrigan Can Discuss and Offer Observations Regarding the Exponent Crash Test...........................................................................................................................14

    E. Dr. Corrigan's Testimony Is Admissible Under Federal Rule of Evidence 403....16

IV. CONCLUSION..................................................................................................................17

## **TABLE OF AUTHORITIES**

**Cases**

*Barnes v. Gen. Motors Corp.*, 547 F.2d 275 (5th Cir. 1977) ......................................................... 15

*Green v. Ford Motor Co.*, 2012 WL 10670462 (N.D. Miss. Sept. 7, 2012) .................................. 16

*Hafstienn v. BMW of N. Am., LLC*, 194 Fed. Appx. 209 (5th Cir. 2006) ..................................... 15

*Jordan v. Gen. Motors Corp.*, 624 F. Supp. 72 (E.D. La. 1985) ................................................... 15

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) .......................................................... 16

*McCune v. Graco Children's Prods., Inc.*, 495 Fed. Appx. 535 (5th Cir. 2012) .......................... 15

*Muth v. Ford Motor Co.*, 461 F.3d 557 (5th Cir. 2006) ................................................................ 14

*Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 6476371 (N.D. Tex. Nov. 20, 2013) ..................... 15

*Shipp v. Gen. Motors Corp.*, 750 F.2d 418 (5th Cir. 1985) .......................................................... 15

**Rules**

Federal Rule of Evidence 401 ........................................................................................................ 14

Federal Rule of Evidence 402 ........................................................................................................ 14

Federal Rule of Evidence 403 ........................................................................................................ 16

Federal Rule of Evidence 615 ........................................................................................................ 14

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively "the Toyota Defendants") respond to Plaintiffs' Motion to Exclude the Report and Testimony of Catherine Corrigan, and show the Court as follows:

## I.
## SUMMARY OF THE ARGUMENT

Plaintiffs' Motion to Exclude the Report and Testimony of Catherine Corrigan must be denied. Dr. Catherine Corrigan ("Corrigan") is qualified to offer opinions regarding the mechanisms of injuries to the Greene Family and the biomechanical issues relating to the design and performance of the subject 2010 Toyota 4Runner during the accident. Dr. Corrigan's methodology was based on reliable principles and methods commonly used by biomechanists. It was proper for her to rely on the accident reconstruction of Lee Carr in forming her opinions. It is also proper for Dr. Corrigan to offer opinions regarding the severity of the initial impact between the Volvo tractor and 4Runner as it compares to other real-world accidents. Dr. Corrigan's expertise and reliable methodology allow her to opine regarding occupant interaction with restraint systems, the causes and mechanisms of occupant injuries, her observations regarding the performance 4Runner from a biomechanical perspective, and her observations regarding the Exponent crash test. Because Dr. Corrigan's opinions satisfy Federal Rule of Evidence 702 and *Daubert*, her testimony must not be excluded or limited in any way. Plaintiffs' Motion to Exclude must be denied in its entirety.

## II.
## RELEVANT FACTS

This case involves a high speed, multiple-vehicle, multi-impact accident. Plaintiffs allege that the 2010 4Runner was defective because its structure and fuel system did not properly protect the Greene Family during the subject accident, and ultimately caused their injuries and deaths[1] In order to understand the mechanisms of injuries to the Greene Family and the biomechanical issues relating to the design and performance of the 4Runner during the accident, the Toyota Defendants designated Dr. Corrigan as a biomechanical expert. *See* Expert Report of Catherine Corrigan, attached herein as Exhibit A; Deposition Transcript of Catherine Corrigan, attached herein as Exhibit B. As discussed below, Dr. Corrigan is a qualified expert in biomechanics and used a reliable methodology in rendering her opinions in this case.

## III.
## ARGUMENT AND AUTHORITIES

**A. Dr. Corrigan is Qualified to Render Expert Opinions Regarding the Mechanisms of Injuries to the Greene Family and the Biomechanical Issues Relating to the Design and Performance of the 4Runner During the Accident.**

Plaintiffs argue "Corrigan is not qualified to give certain opinions she seeks to provide" because she has no "clinical training." Their argument is meritless. Dr. Corrigan was not designated to offer medical opinions. Rather, Dr. Corrigan was designated to provide opinions regarding occupant kinematics, the mechanisms of injuries to the Greene Family and the biomechanical issues relating to the design and performance of the 4Runner during the accident. Dr. Corrigan's qualifications in these areas of expertise are second to none, and she is absolutely qualified to render these opinions in this case.

---

[1] Plaintiffs' Complaint also includes a host of other alleged defect claims, including allegations relating to the restraint system in the 4Runner. However none of these claims are supported by any of their experts.

_____
**TOYOTA DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE
THE REPORT AND TESTIMONY OF CATHERINE CORRIGAN
AND BRIEF IN SUPPORT** **PAGE 5**

Dr. Corrigan graduated from the University of Pennsylvania with a Bachelor's Degree in Bioengineering. Declaration of Catherine Corrigan, attached herein as Exhibit C ¶ 3 (APP 84). She also received a Master's Degree in mechanical engineering at the Massachusetts Institute of Technology ("MIT"). *Id.* Dr. Corrigan then received her Ph.D. in medical engineering and medical physics from the Harvard MIT Division of Health Sciences and Technology, a joint program between the engineering school at MIT and the medical school at Harvard. *Id.* Her graduate work included doctoral research at the Orthopedic Biomechanics Laboratory at the Beth Israel Hospital in Boston, a teaching hospital of the Harvard Medical School. *Id.* Dr. Corrigan's graduate education also included several required medical courses at the Harvard Medical School. *Id.*

Dr. Corrigan has also held appointments as an Adjunct Professor in the Department of Mechanical Engineering at Temple University and as a Visiting Lecturer in the Department of Mechanical and Aerospace Engineering at Princeton University. *Id.* ¶ 4. She is a Group Vice President and Principal at Exponent, her current employer, and specializes in issues involving biomechanics of human injury. *Id.* ¶ 5. Dr. Corrigan has also performed significant research in occupant kinematics and injuries in the automotive environment, bone and joint mechanics, pediatric biomechanics, and the mechanics of the central nervous system. *Id.* Finally, Dr. Corrigan has authored or co-authored numerous peer-reviewed publications in the biomechanical literature relation to human injury mechanisms, human tolerance, occupant kinematics, and injury severity. *Id.* ¶ 6 (APP 85). Dr. Corrigan's specialized knowledge, training, and experience reflects her ability to offer reliable opinions in this case.

Plaintiffs also claim that because Dr. Corrigan has no clinical training, she cannot contradict an autopsy or medical opinion. This argument is pointless because Dr. Corrigan has not offered medical opinions in this case. Medical doctors are trained to diagnose and treat injuries. Dr. Corrigan's opinions are based on her biomechanical expertise in understanding how structures of the human body respond to forces and loads. *Id.* ¶ 13 (APP 86). In order to analyze an accident from a biomechanical perspective, Dr. Corrigan utilized biological properties, composition, and tolerances of the structures of the human body to determine if the forces and loads created in the specific scenario result in a mechanical environment that is consistent with the specific injury. *Id.* Stated simply, a physician may be qualified to diagnose a skull fracture and prescribe treatment, while Dr. Corrigan is qualified to explain the direction and magnitude of the forces that caused the skull fracture. Although Dr. Corrigan will not offer opinions about the diagnoses or treatment of the injuries sustained by the Greene Family or rebuttal to medical opinions offered by Plaintiffs' purported medical experts, Dr. Corrigan is qualified to express and offer biomechanical opinions. *Id.*

**B.      Dr. Corrigan Employed a Reliable Methodology in Rendering Her Opinions.**

**1.      Dr. Corrigan can rely on Lee Carr's accident reconstruction.**

Throughout Plaintiffs' Motion, they argue that Dr. Corrigan's opinions should be excluded because she relied on the accident reconstruction of Lee Carr ("Carr"). Plaintiffs claim that not only is it improper for Dr. Corrigan to rely on his opinions in rendering her own, but because Carr's opinions are improper and unreliable, Dr. Corrigan's opinions are similarly unreliable and must be excluded. There is no dispute that the issues associated with accident reconstruction and biomechanics are intertwined. In large measure, the opinions expressed by

Dr. Corrigan stand on their own, but they are partially based on the reconstruction of Carr. Dr. Corrigan's reliance on the reconstruction of Carr as part of her methodology and in forming her opinions in this case is completely proper. What is improper is for Plaintiffs to make claims that Dr. Corrigan's "blind[ly] reli[ed] on Lee Carr's litigation-induced expert report." As discussed in the Toyota Defendants Response to Plaintiffs' Motion to Exclude the Report and Testimony of Lee Carr, Carr used a reliable methodology in rendering his detailed and specific opinions regarding the accident. *See* Doc. No. 536.

In addition, Dr. Corrigan considered the entirety of the police investigation into the accident, as well as the accident reconstruction reports from the other experts in this case. *See* Exhibit C ¶ 11 (APP 85). Dr. Corrigan in no way discounted any of the police investigation in this case. *Id.* Plaintiffs falsely claim that Dr. Corrigan "did not even look at the police reports in this matter." Doc. No. 470 at 15-16. During her deposition, Dr. Corrigan specifically stated how she considered the police report as part of her analysis. *Id.* ¶ 12.

Although Plaintiffs claim that it is improper for one expert to rely upon another experts reconstruction, Plaintiffs own medical expert, Dr. Joseph Burton ("Burton"), agreed that it was necessary to defer to accident reconstruction experts in such a complex case such as this:

> Q: Okay. And so that means you are not – it was not your role to construct this accident?
>
> MR. PITTMAN: Object to form.
>
> A: First of all, it's a very complex accident. If it was very simple. I might could have at least made a stab at doing the reconstruction, which I wouldn't ordinarily do anyway. But something this complicated I would absolutely defer to other engineers or experts on both sides of this case.

*See* Excerpts from Deposition Transcript of Dr. Joseph Burton, attached herein as Exhibit D at 26:19 (APP 95). Not only is it proper for Dr. Corrigan to rely on Carr's reconstruction, but Carr's reconstruction is sound, thorough, and consistent with the reconstructions of Michelle Vogler and Kenneth Tandy. The only outlying reconstruction in this case is that of Jeff Vick ("Vick"), Plaintiffs' accident reconstructionist. In fact, Dr. Corrigan's counterpart in this case, Dr. Burton, did not even rely on Vick's reconstruction. Instead, he also relied on the reconstruction prepared by Carr. More specifically, Dr. Burton agreed with Carr, Vogler, and Tandy regarding the final accident sequence and the fact that the Volvo tractor caught up to the 4Runner and crushed it underneath the Strick trailer. This is also where both Dr. Corrigan and Dr. Burton believe that Mrs. Greene suffered her fatal injuries.

> Q: Go ahead, then, if you would, Dr. Burton, and with the benefit of having reviewed all of those various accident reconstructions from the engineers, give me your reconstruction understanding, the one that you are relying on to render your opinions as to movements or kinematics of the occupants and the cause and timing of their ultimate injuries.
>
> ***
>
> A: ... According my understanding Mr. Friedman believes that the 4Runner basically hits the rear end of the Strick trailer and takes out the ICC bar, and that the Volvo tractor catches up with the 4Runner, basically hitting somewhere toward the rear of the 4Runner, driving it underneath the Strick trailer, and that this impact basically further results in the damage to the right side of the 4Runner where the right side B pillar is basically -- to use a word -- removed, torn away from the 4Runner itself. It is this event that I believe results in the loss of the belt restraint system for Ms. Greene, who's in the right front. As far as I can tell, that opinion's pretty much consistent with some of the opinions of the defense bio people, as well, as far as how she becomes unrestrained.

Exhibit D at 31:14-20; 33:6-21 (APP 96, 97).[2] The record is clear that it is proper for Dr. Corrigan to rely on Carr's reconstruction in rendering her biomechanical opinions in this case.

> 2. **Dr. Corrigan can reliably opine regarding the severity of the initial impact between the Volvo tractor and 4Runner based on publicly available government data.**

In her report, Dr. Corrigan offered statements regarding the severity of the initial impact between the Volvo tractor and the 4Runner based on National Automotive Sampling System ("NASS") Crashworthiness Data System ("CDS") field accident data. The NASS-CDS is a publicly available collection of crash data collected by the National Center for Statistics and Analysis, an office of the National Highway Traffic Safety Administration ("NHTSA"). NASS-CDS is based on crashes selected from a sample of police crash reports from police agencies within selected areas of the country. NASS-CDS then uses this data to provide estimates of all cars, light trucks, and vans that were towed due to the damage. The NASS-CDS database is routinely relied upon by biomechanics. Exhibit C ¶ 16 (APP 87).

Field data analyses are routinely performed and relied upon by biomechanics, and Dr. Corrigan routinely performs and presents field data analyses in the context of biomechanical work. *Id.* ¶ 18 (APP 88). The use of databases such as the NASS-CDS is critical to understanding how injuries are sustained in the real world, and how these injuries relate to the various parameters associated with accidents. The field accident data from NASS-CDS is also similar to work that has been presented in peer-reviewed publications by Dr. Corrigan and others. *Id.*; *see also* Exhibit B at 141:1-5 (APP 60). Dr. Corrigan routinely relies on this type of

---

[2] During his deposition, Dr. Burton referred to the accident reconstruction of "Mr. Friedman," Planitiffs' liability expert in this case. However, the reconstruction described and relied upon by Dr. Burton regarding the second impact with the Volvo tractor and the 4Runner is consistent with the testimony of Carr, Vogler and Tandy.

---

**TOYOTA DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE
THE REPORT AND TESTIMONY OF CATHERINE CORRIGAN
AND BRIEF IN SUPPORT**

information in her practice and she is qualified to offer opinions in that regard. Dr. Corrigan's analysis in this case was intended to describe and place in context the severity of the initial rear impact between the Volvo tractor and the 4Runner in the context of real-world crash data. *Id.*; Exhibit B at 140:5-9 (APP 60).[3] It was not intended to identify accidents similar to the subject accident. The analyses that she provided in her expert report support, with real world data, the conclusions that were already arrived at based upon traditional bioengineering methods. *Id.* As a result, Dr. Corrigan should be allowed to testify regarding her field data analysis in this case.

### 3. Dr. Corrigan can offer reliable opinions regarding occupant interaction with restraint systems.

Plaintiffs claim that Dr. Corrigan made a statement during her deposition that "implies" she has expertise in the design of occupant protection systems. Dr. Corrigan does not intend to offer opinions regarding occupant restraint hardware or design. However, Dr. Corrigan does have expertise and is qualified to offer opinions regarding occupant interaction with restraints and the effect of restraints on occupants. Exhibit B at 146:21-24; 147:19-21 (APP 62). Dr. Corrigan has previously testified regarding the biomechanical implications of interactions between occupants and their restraint systems with respect to occupant kinematics, injury severity, and injury potential. *See* Exhibit C ¶ 19 (APP 88). She has also analyzed occupant interactions with restraint systems in hundreds of accidents and has evaluated how changes to a restraint system will influence occupant kinematics, injury severity, and injury potential in these accidents. *Id.* Finally, she has inspected hundreds of vehicles and their restraint systems, and this experience allows her to identify typical markings that exist on the components of a restraint

---

[3] In concluding that the initial impact between the Volvo tractor and 4Runner was higher than approximately 98.9-99.8% of rear end impacts, Dr. Corrigan examined the relative delta-Vs associated with police reported tow-away crashes in the United States, based on a 40 to 50 mile per hour delta-V. Exhibit B at 139:17—140:4 (APP 60). The delta-V was used as a metric of severity. *Id.* at 140:10-17.

system as well as recognize the lack of such evidence.  Although Dr. Corrigan will not offer opinions relating to the design of occupant restraint systems, she can offer reliable biomechanical expert opinions relating to the restraint system.

    **4.   Dr. Corrigan can reliably opine regarding the cause and mechanism of Mrs. Greene's death.**

In their Motion, Plaintiffs claim that Dr. Corrigan cannot provide an accurate opinion regarding the cause and mechanism of Mrs. Greene's death.  This is not correct.  Dr. Corrigan opined that Mrs. Greene's head injuries resulted from blunt trauma to her head that occurred when the roof and body of the 4Runner were compressed and deformed between the two tractor semi-trailers and the occupant space within the 4Runner was reduced.  *See* Exhibit C ¶ 20 (APP 88).  According to Carr, during this impact, vehicle structures to the right of Mrs. Greene, including the right B-pillar and front passenger seat belt anchor, were displaced inboard and upward, effectively removing the vehicle from around her body.  *Id.*  The deformation of the vehicle structures and Mrs. Greene's removal from the vehicle was a process.  *Id.*  Although it is not possible to know exactly what her position was relative to all of the vehicle structures at the moment her injuries occurred, it is clear that Mrs. Greene's head injuries occurred during this impact.  *Id.*  Dr. Burton agrees with Dr. Corrigan in this respect and testified during his deposition that Mrs. Greene's head injuries occurred during this impact.  Exhibit D at 43:20—45:18 (APP 98-100).  Dr. Corrigan's expert report, deposition testimony, and declaration all support her ability to provide an accurate opinion regarding the cause and mechanism of Mrs. Greene's death.

5.  **The use of simulation programs is rare in the context of individual accident analysis.**

Plaintiffs also claim that Dr. Corrigan's methodology is not reliable because she did not use any of the "many available methods to simulate occupant kinematics in a high-speed crash." Plaintiffs claim that because this is typically used by "most other experts, her opinions and conclusions should be stricken." Doc. No. 470 at 13. Simulation programs are sophisticated tools that are sometimes used by manufacturers in the development of their safety systems. *See* Exhibit C ¶ 22 (APP 89). They are also used by researchers in the field who want to understand various research questions. *Id.* However, the use of these programs is rarely appropriate in the context of individual accident analysis, especially in a multi-vehicle highly complex case such as this. *Id.* In her 18 years of experience, Dr. Corrigan stated that it is exceedingly rare in an individual accident investigation to utilize a quantitative dynamics analysis in the manner suggested by Plaintiffs. *Id.* Dr. Corrigan also testified that there was no need to do any kind of computer simulation or animation in order to reach her opinions in this case. Exhibit B at 77:7-15 (APP 44). In addition, Plaintiffs undoubtedly believe that Dr. Burton used a reliable methodology in rendering his final opinions in this case. Yet, he did not do any simulation work in this case. Dr. Corrigan's testimony should not be excluded or limited in any way because she did not use computer simulation in reaching her final opinions.

6.  **Dr. Corrigan can testify to her observations on the displacement of the B-pillar and the deformation of the seat belt anchor based upon her inspection of the 4Runner.**

Plaintiffs' Motion states that Dr. Corrigan "did not undertake any independent analysis" to determine when or whether the displacement of the B-pillar and seat belt anchor occurred. *See* Doc. No. 470 at 14. This statement is not correct. As described in her report, at the time of

her inspection, she observed the following vehicle deformation: the entire right side of the 4Runner was pushed upward and inboard; the front passenger's seatback was pushed inboard; and the retractor housing for the right front passenger was inboard and forward of the inboard shoulder on the driver's backrest.  Exhibit C ¶ 23 (APP 89).  Plaintiffs' allegations that she conducted no independent analysis to determine whether displacement occurred are unfounded and should be disregarded.

C.  **It is Proper for Dr. Corrigan to Discuss the Reports and Testimony of Other Experts.**

Dr. Corrigan should be permitted to discuss the reports and testimony of other experts, including other defense experts.  Plaintiffs cite no authority in support of their request to exclude such testimony.  Experts are allowed under the rules to comment on the reports and testimony of other experts.  It is standard practice for experts to comment on other experts' testimony.  In fact, the Rule contemplates that experts will be present.  Fed. R. Evid. 615.  A person whose presence is essential to presenting a party's defense, like a technical liability expert, is not excluded from hearing other witness testimony.  *See* Fed. R. Evid. 615.  Additionally, such testimony is relevant to material issues.  Fed. R. Evid. 401, 402.

D.  **Dr. Corrigan Can Discuss and Offer Observations Regarding the Exponent Crash Test.**

Carr Engineering, in conjunction with Exponent, Inc., conducted a crash test of a substantially similar impact event to the initial impact between the Volvo tractor and the 4Runner.  However, Plaintiffs argue that the crash test is not admissible based on *Muth v. Ford Motor Co.*, 461 F.3d 557 (5th Cir. 2006).  The issue in *Muth* was whether demonstrative evidence offered by Ford to provide an illustration of general scientific principles was

admissible. *Id.* at 566. However, the Toyota Defendants are not offering the crash test as an illustration of general scientific principles. Instead, the crash test is being offered as a substantially similar impact event to the initial impact between the Volvo tractor and the 4Runner. A district court has wide discretion to admit crash test films conducted under substantially similar conditions as the underlying accident. *Barnes v. Gen. Motors Corp.*, 547 F.2d 275, 277 (5th Cir. 1977*); McCune v. Graco Children's Prods., Inc.*, 495 Fed. Appx. 535, 540 (5th Cir. 2012). If the proper foundation is laid, the court should admit crash test evidence. *Shipp v. Gen. Motors Corp.*, 750 F.2d 418, 427 (5th Cir. 1985). In order for the crash test to be admissible, it is not required to precisely reproduce all factors existing at the time of the accident. *Id.*; *Jordan v. Gen. Motors Corp.*, 624 F. Supp. 72, 79 (E.D. La. 1985). Instead, it is necessary to reproduce the conditions in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed. *Id.* When the same products are used in a crash test as an accident, courts are likely to find that the crash test is substantially similar and therefore admissible. *Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 6476371, *7 (N.D. Tex. Nov. 20, 2013); *see also Hafstienn v. BMW of N. Am., LLC*, 194 Fed. Appx. 209, 212 (5th Cir. 2006).

Here, the crash test is substantially similar to the initial impact between the Volvo tractor and the 4Runner. In the crash test, a tractor-trailer matching the Volvo tractor was caused to strike a Toyota 4Runner matching the crash-involved Toyota 4Runner. *See* Doc. No. 537 at 44. Both vehicles were purposely weighted to match the weights of the crash involved vehicles. *Id.* The impact speed of the Volvo tractor was also set up to fall within the range of closing speeds offered by Vick. *Id.* Finally, the point of engagement between the crash test vehicles was similar to the point of impact proposed by all of the accident reconstructionist in this case. The

crash test therefore reproduced the conditions of the initial impact between the Volvo tractor and the 4Runner in "substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed," and it is therefore admissible. *Barnes*, 547 F.2d at 277.

Moreover, just because Dr. Corrigan did not personally perform the crash test does not mean that she cannot rely on it or refer to it. *Green v. Ford Motor Co.*, 2012 WL 10670462 (N.D. Miss. Sept. 7, 2012). An expert may base his testimony "upon professional studies or personal experience" so long as he "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at *7; citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

Although the crash test is admissible and it is proper for Dr. Corrigan to rely upon it, her opinions in this case do not solely rely on the crash test, so the issue of admissibility of the crash test should be addressed as a separate issue. Plaintiffs' arguments go to the weight of the evidence, not its admissibility. The crash test conducted by the Toyota Defendants in this case is admissible, and Dr. Corrigan can rely on it and refer to it during trial.

E.   **Dr. Corrigan's Testimony Is Admissible Under Federal Rule of Evidence 403.**

Finally, Plaintiffs claim that Dr. Corrigan's testimony should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or that it will mislead the jury. Fed. R. Evid. 403. First, there is nothing about Dr. Corrigan's expert testimony that will confuse the issues or mislead the jury. Second, Dr. Corrigan's testimony is not unfairly prejudicial. The probative value of the testimony in this case outweighs the danger of any unfair prejudice. The testimony is highly probative as it addresses Plaintiffs' central liability claims. While it is undoubtedly prejudicial to Plaintiffs' case in the

sense that it helps disprove Plaintiffs' contentions, including that the 4Runner is defective and unreasonably dangerous, there is nothing unfairly prejudicial about it. The probative value therefore outweighs the danger of any unfair prejudice. Moreover, this is an issue to be addressed by the court at the limine stage, and is not the proper subject of a *Daubert* challenge.

## IV.
## CONCLUSION

Plaintiffs' Motion must be denied. Dr. Corrigan is qualified to offer opinions regarding the mechanisms of injuries to the Greene Family and the biomechanical issues relating to the design and performance of the subject 2010 Toyota 4Runner during the accident. She used a generally accepted reliable methodology in rendering her conclusions. Because Dr. Corrigan's opinions satisfy Federal Rule of Evidence 702 and *Daubert*, her testimony must not be excluded or limited in any way.

RESPECTFULLY SUBMITTED,

*/s/ Kurt C. Kern*
**KURT C. KERN – Attorney-in-Charge**
State Bar No. 11334600
Kurt.Kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
David.Stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas  75201
Telephone:  (972) 616-1700
Facsimile:  (972) 616-1701

**ATTORNEYS FOR DEFENDANTS TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., AND TOYOTA MOTOR SALES, U.S.A., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 7th day of April, 2014.

*/s/ Jude T. Hickland*

___

**TOYOTA DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE**
**THE REPORT AND TESTIMONY OF CATHERINE CORRIGAN**
**AND BRIEF IN SUPPORT**                                                                                       **PAGE 18**