**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **OLLIE GREENE**, *et al.*, | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| v. | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| | § | |
| **TOYOTA MOTOR CORPORATION**, *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

---

**TOYOTA DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE**
**THE REPORT AND TESTIMONY OF MICKY MARINE AND BRIEF IN SUPPORT**

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively "the Toyota Defendants") respond to Plaintiffs' Motion to Exclude the Report and Testimony of Micky Marine, and show the Court as follows:

## I.
## SUMMARY OF THE ARGUMENT

Micky Marine ("Marine") is qualified to provide expert testimony in this case. His education, training, and hands-on experience conducting hundreds of crash tests are more than sufficient to qualify him as an expert on crash tests. The crash test was based on sufficient reliable data, and the methodology Marine followed is reliable, scientific, and used throughout the automotive industry. His testimony about the crash test, its parameters, and the forensic evidence resulting from the crash test is relevant and reliable, and will help the jury determine issues of consequence in this case. Plaintiffs' Motion must be denied.

## II.
## <u>RELEVANT BACKGROUND</u>

This case involves a high speed, multiple-vehicle, multiple-impact accident.  The Toyota Defendants retained Marine to configure, perform and observe the forensic evidence resulting from a crash test simulating the initial impact between the Volvo tractor-trailer and the 4Runner. Marine did in fact conduct that crash test between an exemplar Volvo tractor-trailer and a 2010 Toyota 4Runner on December 17, 2013 at the Exponent crash test facility near Phoenix Arizona. The Volvo tractor-trailer was impacted into the rear of the 4Runner at 38.4 miles per hour.  The 4Runner's fuel system was filled with Stoddard solvent so that any leak in the 4Runner's fuel system resulting from the crash could be readily observed.

Marine is a foundational witness, and his expertise will be helpful to the jury.  He will explain how the crash test was conducted, so that the jury can understand that it accurately recreates the initial impact between the Volvo tractor-trailer and 4Runner.  His observation that there was no Stoddard solvent visible, and therefore no breach of the 4Runner's fuel system in the impact, will also help the jury understand that the 4Runner's fuel system was not breached in the initial impact with the Volvo tractor-trailer.

## III.
## <u>ARGUMENT AND AUTHORITIES</u>

### A.      Marine is Qualified to Testify About the Crash Test.

Marine is qualified to testify about the crash test.  He is qualified based on his education and experience to set up, conduct, and offer observations regarding the results of the crash test. Marine obtained a Bachelor's Degree in Aerospace Engineering and Master's Degree in Mechanical Engineering from the University of Arizona.  Declaration of Micky Marine, attached herein as Exhibit A at 1 (APP 1).  He is a member of Tau Beta Pi National Engineering Honor

_____

**TOYOTA DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE
THE REPORT AND TESTIMONY OF MICKY MARINE AND BRIEF IN SUPPORT          PAGE 2**

Society, Phi Kappa Phi Honor Society, and Golden Key Honor Society.  *Id.* at 4 (APP 4).  He is also active in the Society of Automotive Engineers, Association for the Advancement of Automotive Medicine, the American Society of Mechanical Engineers and Southwest Association of Technical Accident Investigators.  *Id.* at 4 (APP 4).

Marine has conducted hundreds of full-scale automotive crash tests, sled tests, and vehicle performance tests.  *Id.* at 2 (APP 2).  He has extensive experience in analyzing test results through use of instrument data, video analysis and examination of the resulting forensic evidence.  *Id.* at 4 (APP 4).  He has also published a number of peer-reviewed technical papers on automotive topics, including a peer reviewed paper on crash test data analysis.  *Id.* at 5 (APP 5).

**B.      The Crash Test Was Based on Sufficient Data and was Reliably Conducted.**

Plaintiffs argue that Marine's testimony is not grounded in sufficient facts or data, and is not the product of reliable methods.  The crash test parameters were selected to be consistent with the expert opinions of Plaintiffs' accident reconstructionist, Jeff. G. Vick ("Vick").  Moreover, the crash test and Marine's observations were conducted using generally accepted, reliable methods.

The impact configuration and speed selected for the crash test is consistent with the opinions that have been offered by Vick in this case.   The impact speed of the Volvo tractor-trailer into 4Runner was 38.4 mph.  This was within the range of speeds Vick calculated.  Vick has opined that the Volvo tractor-trailer was travelling at approximately 54 miles per hour and that the 4Runner was travelling at approximately 11-16 miles per hour.  Deposition of Jeff G. Vick, attached herein as Exhibit B at 63:2-9.  The closing speed was, according to Vick, between 38 and 43 miles per hour.  38.4 miles per hour is between 38 and 43 miles per hour.  Vick has

also opined that the Volvo fully overlapped the rear of the 4Runner in the initial impact.  *Id.* at 62:5-8.  Consistent with that opinion, Marine configured the crash test so that the Volvo tractor trailer fully overlapped the rear of the 4Runner.  To the extent Plaintiffs contend that the crash test and Marine's testimony regarding the same are based on insufficient or unreliable facts and data, they are indicting their own expert's testimony.

Marine's testimony is also the product of reliable methods.  The crash test was not only performed consistent with the accident reconstructions, but was also thoroughly documented and properly conducted.  Notably, Plaintiffs have not identified any way in which the method for the crash test or investigation of its results was unreliable.  Instead, Plaintiffs have promised the Court that they will demonstrate that any opinions expressed by Marine fall "woefully" short of being reliable without indicating how or why they think it is not reliable.

### C.      Marine's Testimony Will Assist the Jury.

Plaintiffs point out that Marine does not believe his testimony in this case is opinion, but is instead observation.  That is a distinction that does not make a difference under Federal Rule of Evidence 702.  It reads in pertinent part, "[a] witness who is qualified as an expert…may testify in the form of an opinion **or otherwise**…"  Fed. R. Evid. 702 (emphasis added).  Instead the significant distinction is whether the testimony "will help the trier of fact to understand the evidence or to determine a fact issue…"  Fed. R. Evid. 702(a).  Having established that Marine is a qualified expert in crash testing and analyzing crash test results, and that the crash test was reliably conducted, the remaining question is whether Marine's testimony will assist the jury, not whether or not it is an opinion.

Marine's testimony will assist the jury.  As a foundational matter, Marine's testimony will establish that the crash test was conducted in a reliable manner and was substantially similar to

the initial impact between the Volvo tractor-trailer and the 4Runner.  Plaintiffs argue that the crash test is not admissible based on *Muth v. Ford Motor Co.*, 461 F.3d 557 (5th Cir. 2006).  The issue in Muth was whether demonstrative evidence offered by Ford to provide an illustration of general scientific principles was admissible.  *Id.* at 566.  However, the Toyota Defendants are not offering the crash test as an illustration of general scientific principles.  Instead, the crash test is being offered as a substantially similar impact event to the initial impact between the Volvo tractor and the 4Runner.  A district court has wide discretion to admit crash test films conducted under substantially similar conditions as the underlying accident.  *Barnes v. Gen. Motors Corp.*, 547 F.2d 275, 277 (5th Cir. 1977); *McCune v. Graco Children's Prods., Inc.*, 495 Fed. Appx. 535, 540 (5th Cir. 2012).  If the proper foundation is laid, the court should admit crash test evidence.  *Shipp v. Gen. Motors Corp.*, 750 F.2d 418, 427 (5th Cir. 1985).  In order for the crash test to be admissible, it is not required to precisely reproduce all factors existing at the time of the accident.  *Id.*; *Jordan v. Gen. Motors Corp.*, 624 F. Supp. 72, 79 (E.D. La. 1985).  Instead, it is necessary to reproduce the conditions in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed.  *Id.*  When the same products are used in a crash test as an accident, courts are likely to find that the crash test is substantially similar and therefore admissible.  *Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 6476371, at *7 (N.D. Tex. Nov. 20, 2013); *see also Hafstienn v. BMW of N. Am., LLC*, 194 Fed. Appx. 209, 212 (5th Cir. 2006).

Here, the crash test is substantially similar to the initial impact between the Volvo tractor and the 4Runner.  In the crash test, a tractor-trailer matching the Volvo tractor was caused to strike a Toyota 4Runner matching the crash-involved Toyota 4Runner.  Both vehicles were purposely weighted to match the weights of the crash involved vehicles.  *Id.*  The closing speed

of the Volvo tractor was also set to fall within the closing speeds offered by Vick.  *Id.*  Finally, the point of engagement between the crash test vehicles was similar to the point of engagement proposed by all of the accident reconstructionists in this case.   The crash test therefore reproduced the conditions of the initial impact between the Volvo tractor and the 4Runner in "substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed," and it is therefore admissible.  *Barnes*, 547 F.2d at 277.

The crash test is helpful to the jury, because it provides reliable evidence of the damage resulting from the initial impact between the Volvo tractor-trailer and 4Runner.   Marine's testimony as to the forensic evidence he observed after the crash test was completed, including the absence of any Stoddard solvent, is also helpful to the jury.   Through this testimony, the jury can understand that the absence of Stoddard fluid is evidence that the 4Runner's fuel system was not breached in the initial impact with the Volvo tractor-trailer.

### D.     Marine's Testimony is Admissible Under Rule 403.

Finally, Plaintiffs claim that Marine's testimony should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or that it will mislead the jury.  Fed. R. Evid. 403.  First, there is nothing about Marine's expert testimony that will confuse the issues or mislead the jury.   Second, Marine's testimony is not unfairly prejudicial.  The probative value of the testimony in this case outweighs the danger of any unfair prejudice.  The testimony is probative as it refutes Plaintiffs' accident reconstruction. While it is undoubtedly prejudicial to Plaintiffs, there is nothing unfairly prejudicial about the testimony.  Moreover, this is an issue to be addressed by the court at the limine stage, and is not the proper subject of a Daubert challenge.

### III.
### CONCLUSION

Marine is qualified to provide expert testimony in this case.  His education, training, and hands-on experience conducting hundreds of crash tests are more than sufficient to qualify him as an expert on crash tests.  The crash test was conducted based on sufficient reliable data, and the methodology Marine followed is reliable, scientific, and used throughout the automotive industry.  His testimony about the crash test, its parameters, and the forensic evidence resulting from the crash test will help the jury determine issues of consequence in this case.  Plaintiffs' motion to exclude his testimony should be denied in its entirety.

WHEREFORE, PREMISES CONSIDERED, Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. request that Plaintiffs' motion to exclude the report and testimony of Micky Marine be denied, and for such other and further relief to which they may show themselves to be entitled.

RESPECTFULLY SUBMITTED,

*/s/ Kurt C. Kern*
**KURT C. KERN – Attorney-in-Charge**
State Bar No. 11334600
Kurt.Kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
David.Stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas  75201
Telephone:  (972) 616-1700
Facsimile:  (972) 616-1701

**ATTORNEYS FOR DEFENDANTS
TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA,
INC., AND TOYOTA MOTOR SALES,
U.S.A., INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 7th day of April, 2014.

*/s/ Jude T. Hickland*