IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, *et al.*, | § § § | |
| Plaintiffs | § | |
| v. | § § | CAUSE NUMBER: 3:11-cv-0207-N |
| TOYOTA MOTOR CORPORATION, *et al.*, | § § § | |
| Defendants. | § | |

**TOYOTA DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE
THE REPORT AND TESTIMONY OF ROBERT LANGE AND DOLPH LOHWASSER
AND BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

I.   SUMMARY OF THE ARGUMENT ...................................................................................4

II.  RELEVANT FACTS ............................................................................................................4

III. ARGUMENT AND AUTHORITIES..................................................................................5

    A.    Lange and Lohwasser are Qualified to Offer Expert Testimony .............................5

        1.    Lange is Qualified to Offer Expert Testimony ............................................5
        2.    Lohwasser is Qualified to Offer Expert Testimony ....................................7

    B.    Lange and Lohwasser should be Permitted To Testify Regarding Toyota's Compliance with Federal Safety Standards and the Sufficiency of those Standards ..................................................................................................................9

    C.    Lange and Lohwasser Followed a Reliable, Scientific Methodology ....................10

        1.    Lange and Lohwasser employed a reliable methodology in determining the 4Runner is not defective and unreasonably dangerous ........................11
        2.    Lange and Lohwasser employed a reliable methodology in determining that the instant collision is too rare to require it be incorporated into a Vehicle Development Process...................................................................13

    D.    Lange and Lohwasser are Not Simply Stating Disputed Facts..............................14

    E.    The Motor Vehicle Fire Safety Research Section of the Report Provides Context in Analyzing Fuel Loss and Fire Initiation ........................................................14

    F.    Plaintiffs' Argument that Lange and Lohwasser Should be Precluded from Testify Regarding the Untimely Disclosed FE modeling and Simulation Performed by Friedman and Stephenson is Premature, Should be Moot and is not a Proper Daubert Challenge .................................................................................................15

    G.    Lange and Lohwasser Should be Permitted to Discuss the Crash Test .................15

    H.    Lange and Lohwasser Should be Permitted to Testify Regarding the Reports and Testimony of Other Experts.................................................................................17

    I.    Lange and Lohwasser's Testimony is Admissible Under Rule 403......................17

IV. CONCLUSION....................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Barnes v. Gen. Motors Corp.*, 547 F.2d 275 (5th Cir. 1977) ................................................... 16, 17

*Green v. Ford Motor Co.*, 2012 WL 10670462 (N.D. Miss. Sept. 7, 2012) ................................. 17

*Hafstienn v. BMW of N. Am., LLC*, 194 Fed. Appx. 209 (5th Cir. 2006) ..................................... 16

*Jordan v. Gen. Motors Corp.*, 624 F. Supp. 72 (E.D. La. 1985) .................................................. 16

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) ......................................................... 17

*McCune v. Graco Children's Prods., Inc.*, 495 Fed. Appx. 535 (5th Cir. 2012) .......................... 16

*Muth v. Ford Motor Co.*, 461 F.3d 557 (5th Cir. 2006) ............................................................... 15

*Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 6476371 (N.D. Tex. Nov. 20, 2013) .................... 16

*Shipp v. Gen. Motors Corp.*, 750 F.2d 418 (5th Cir. 1985) .......................................................... 16

**Rules**

Federal Rule of Evidence 401 ........................................................................................................ 17

Federal Rule of Evidence 402 ........................................................................................................ 17

Federal Rule of Evidence 403 ........................................................................................................ 17

Federal Rule of Evidence 615 ........................................................................................................ 17

**Code**

Texas Civil Practices and Remedies Code § 82.008 ................................................................. 9, 10

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively "the Toyota Defendants") respond to Plaintiffs' Motion to Exclude the Report and Testimony of Robert Lange and Dolph Lohwasser, and show the Court as follows:

## I.
## SUMMARY OF THE ARGUMENT

Robert C. Lange ("Lange") and Dolph Lohwasser ("Lohwasser") are qualified experts in the area of fuel system design, vehicle design, development and testing, and crashworthiness. They have decades of combined industry experience and education that makes them qualified well beyond the level of expertise required by *Daubert*. These experts applied a generally accepted, reliable methodology in analyzing the issues presented in their expert report. The overarching method they employed was the scientific method, and their analysis followed specific methodologies used by the National Highway Traffic Safety Administration, and the automotive industry. Their testimony is relevant to this case, and will assist the trier of fact. Plaintiffs' Motion to Exclude should therefore be denied in its entirety.

## II.
## RELEVANT FACTS

This case involves a high speed, multiple-vehicle, multiple-impact accident. Plaintiffs allege that the 4Runner was defective because its structure and fuel system did not properly protect the Greene Family during the subject accident, and ultimately caused their injuries and deaths.[1]

---

[1] Plaintiffs' Complaint also includes a host of other alleged defect claims, including allegations relating to the restraint system in the 4Runner. However none of these claims are supported by any of their experts.

---

The Toyota Defendants retained Lange to analyze Plaintiffs' allegation that the 4Runner's fuel system and overall crashworthiness performance were unreasonably dangerous and defective. The Toyota Defendants retained Lohwasser to analyze vehicle testing and structural design of the 4Runner. Together they authored a report of their observations, opinions, and bases for same. Report of Robert Lange and Dolph Lohwasser, attached hereto as Exhibit A.

### III.
### ARGUMENT AND AUTHORITIES

**A.  Lange and Lohwasser are Qualified to Offer Expert Testimony.**

　　1.　*Lange is Qualified to Offer Expert Testimony.*

Lange is qualified to offer testimony regarding the design of the 2010 4Runner's fuel system. Lange has significant education and training that qualify him as an expert in fuel system design. Additionally, Lange has decades of hands-on experience in the automotive industry and with crashworthiness systems and fuel system design.

Lange received his Bachelor of Science and Master of Science degrees from the University of Michigan. Exhibit A at 1 (APP 15). He currently works as a Principal and Corporate Vice President at Exponent, Inc., a technical and scientific consulting firm. Declaration of Robert C. Lange, attached herein as Exhibit B at 1 (APP 262). Prior to working at Exponent, he worked at Ford Motor Company ("Ford"), Failure Analysis Associates, and the General Motors Corporation ("GM"). *Id.* (APP 262).

At Ford, Lange worked as a design engineer, supervised other design engineers, acted as a technical expert, and supervised the vehicle design section responsible for vehicle level integration, program management and vehicle imperatives. *Id.* at 2 (APP 263). Lange held the

titles of Managing Enginer, Principal Engineer and Vice President at Failure Analysis Associates. *Id.* (APP 263).

In the course of his work at Failure Analysis Associates, he provided technical consulting services in automotive engineering, and researched alleged safety defect issues for various motor vehicle manufacturers. *Id.* (APP 263). Notably, Lange has performed about 2,000 fire initiation experiments. *Id.* (APP 263).

Lange held the following positions at GM: "Executive in Charge of Field Performance Analysis," "Engineering Director Vehicle Development," and "Executive Director Safety Integration." *Id.* (APP 263). Lange's responsibilities in those roles included: fire safety research; motor vehicle safety research and engineering; vehicle development, validation, and certification to safety standards in the US and other regulatory jurisdictions; safety testing and biomechanics; defect investigations and recalls; safety technology implementation; safety certification requirements and testing; certification sign off; safety rulemaking for U.S. and international standards; potential vehicle safety defect and non-compliance investigations; vehicle defect, noncompliance, and customer satisfaction recalls; and safety related communications. *Id.* at 2-3 (APP 263-64). He was the executive responsible for communications with the National Highway Traffic Safety Administration ("NHTSA") related to defect investigations, the internal safety defect investigation process, resolution of defect investigations and where appropriate, recommendations for recalls. *Id.* at 4 (APP 265). He supervised that activity in implementation of over 200 recalls for safety defects or for non-compliance to safety regulations. *Id.* (APP 265). Lange oversaw the Fire Research Projects consequent to the 1994 agreement between GM and the U.S. Government to perform such

research and was the GM engineer that received the reports of the "Motor Vehicle Fire Research Institute" funded by GM. *Id.* (APP 265).

During Lange's career as an automotive engineer he has: applied statistical analysis and simulations to auto design, public health, and vehicle performance data; engineered Failure Mode and Effects Analysis (FMEA); performed motor vehicle safety research, development, validation and certification and implementation of systems and technologies; performed experiments in motor vehicle fire safety; engineered restraints and structures performance for occupant protection; analyzed motor vehicle collisions through analyses of public health data; contributed to safety standards rulemaking in the U.S. and globally; engineered various vehicle development, validation, and certification programs; and certified products to US emission and safety standards. *Id.* at 1-2 (APP 262-63).

Lange was awarded for "Excellence in Safety Engineering" by the United States National Highway Traffic Safety Administration (NHTSA) at the 2007 Enhanced Safety Vehicle Conference, a bi-annual conference sponsored by NHTSA. *Id.* at 5 (APP 266).

2.   *Lohwasser is Qualified to Offer Expert Testimony.*

Lohwasser is qualified to offer testimony regarding the structure of the 2010 4Runner and the integration of the fuel system. Lohwasser has significant education and training that qualify him as an expert vehicle structure design and vehicle testing. Lohwasser worked for decades for automotive manufacturers. He has more than thirty years' experience as an automotive design, analysis and test engineer. Declaration of Dolph Lohwasser, attached hereto as Exhibit C at 2 (APP 533). Lohwasser's experience generally includes setting vehicle crash strategies and subsystem requirements, the vehicle design/development process, and vehicle and subsystem

testing to meet regulatory compliance, consumer metrics, and OEM requirements. *Id.* at 1 (APP 532). He further has experience balancing of vehicle subsystem requirements between structures, restraint systems, and other vehicle subsystems. *Id.* (APP 532).

Lohwasser obtained a Bachelor of Science in Aerospace Engineering and a Master's of Business Administration from the University of Michigan. Exhibit A at 3 (APP 17). He also obtained a Master degree in Mechanical Engineering from Wayne State University. *Id.* (APP 17). He currently works as a Managing Engineer in the Vehicle Engineering practice at Exponent, Inc. Exhibit C at 1 (APP 532). Lohwasser specializes in issues related to vehicle structural performance and the integration of structural design into overall vehicle crashworthiness.

Lohwasser has vast crash testing experience. He has directed, participated in, or observed hundreds of vehicle and subsystem crash tests for regulatory compliance and vehicle development. *Id.* (APP 532). He also has extensive experience applying computer simulation (CAE) to vehicle crashworthiness and other aspects of vehicle design and development such as handling, NVH, structural stress /fatigue, and thermal and aerodynamics. *Id.* (APP 532).

Prior to joining Exponent in 2004, Lohwasser worked at GM for 24 years in various positions relating to vehicle design/development with emphasis on CAE and testing. *Id.* at 2 (APP 533). From 1985-1995 Lohwasser was a manager of the Vehicle Systems Synthesis and Analysis Department and from 1995-1999 Lohwasser was Director of the same Department. *Id.* (APP 533). From 1999-2004, Lohwasser was Director of the Safety and Crashworthiness Department responsible for the crashworthiness performance of North American passenger cars and crossover vehicles. *Id.* (APP 533). Additionally, prior to joining GM, Lohwasser was a

---

senior advanced body safety engineer with Chrysler Corporation and worked at Massey Ferguson Ltd. in product assurance testing including Rollover Protection Systems. *Id.* (APP533). In the 1970s Lohwasser worked as an aerospace engineer for the U.S. Air Force Flight Dynamics Laboratory. *Id.* (533).

Juxtaposed against Lange and Lohwasser's extensive industry experience is the complete absence of such experience on the part of Plaintiffs' design experts, Keith Friedman and Rhoads Stephenson. While Lange and Lohwasser have hands on experience in the design, development and testing of many mass produced, commercially available vehicles, Friedman and Stephenson have none.

### B. Lange and Lohwasser should be Permitted to Testify Regarding Toyota's Compliance with Federal Safety Standards and the Sufficiency of those Standards.

Lange and Lohwasser should be permitted to testify regarding Toyota's Compliance with Federal Safety Standards and the sufficiency of those standards. Contrary to Plaintiffs' assertion, Lange and Lohwasser have not offered any legal interpretation of the safety standards. Rather they will offer testimony about the sufficiency of the Federal Motor Vehicle Safety Standards ("FMVSS"), and the 4Runner's compliance with them. Both of these issues are determinations to be made by the jury. Lange and Lohwasser are in no way usurping the judge's role in this case.

Compliance with FMVSS is relevant to this case. Texas law provides that a manufacturer is entitled to a presumption of non-liability when a product's design complies with mandatory federal safety standards. Tex. Civ. Prac. & Rem. Code § 82.008(a). Whether the 2010 4Runner complied with FMVSS is therefore relevant in this case. Compliance with FMVSS is the appropriate subject of expert testimony. A lay juror does not have the knowledge

and expertise to know whether a vehicle has complied with FMVSS simply by examining documents. Lange and Lohwasser's testimony will assist the jury in making this determination.

Similarly, the adequacy of FMVSS is relevant to this case. Texas law provides that the presumption of non-liability may be rebutted by showing the standards were inadequate. *Id.* § 82.008(b). Plaintiffs' contend that the FMVSS were inadequate. Therefore, Lange and Lohwasser's testimony establishing that the relevant FMVSS were in fact adequate is also highly relevant to this case. Once again, this determination is highly technical in nature and expert testimony of this sort is very helpful to lay jurors in deciding whether the FMVSS are adequate. Further, Lange and Lohwasser should be allowed to provide appropriate context to their opinion testimony. The factual context in which FMVSS are promulgated is highly relevant to understanding their sufficiency. The fact that Plaintiffs disagree with some of the observations made by Lange and Lohwasser is not grounds to exclude their testimony. That is the subject of cross-examination, not *Daubert*.

Lange and Lohwasser have not offered legal interpretations as Plaintiffs suggest. Their report simply states the requirements of the standards, their stated purpose, or summary paraphrase to provide context for the jury.

### C. Lange and Lohwasser Followed a Reliable, Scientific Methodology.

Lange and Lohwasser followed a reliable, scientific methodology. The overarching methodology they applied was the scientific method. Their analysis also followed methods defined by authoritative third party institutions including the NHTSA and the Insurance Institute for Highway Safety ("IIHS"). Exhibit B at 5 (APP 266). These methodologies have been tested by regulators, vehicle manufacturers and others, and have been determined to be objective,

reliable and repeatable. *Id.* (APP 266). The methodologies are generally accepted by motor vehicle safety engineers. *Id.* (APP 266). Specifically, Lange and Lohwasser have formulated and tested two hypotheses: (1) the 2010 Toyota 4Runner is defective and unreasonably dangerous; and (2) the instant type of collision occurs on U.S. roadways frequently enough to require its incorporation into the Vehicle Development Process (VDP). *Id.* at 6 (APP 267). The scientific application and analysis of objective data in testing these hypotheses led Lange and Lohwasser to reject both hypotheses. Exhibit A at 241-47 (APP 255-61).

    1. *Lange and Lohwasser employed a reliable methodology in determining the 4Runner is not defective and unreasonably dangerous.*

Lange and Lohwasser employed a reliable methodology in determining the 4Runner is not defective and unreasonably dangerous. Their joint report describes in detail the data and analysis conducted in arriving at their conclusions. Exhibit A. Lange and Lohwasser applied NHTSA's defect investigation methodology. Exhibit B at 12 (APP 273). Consistent with that methodology, they compared the 2010 4Runner to other competitive vehicles to search for a deficiency in performance that could indicate a defect. *Id.* at 13 (APP 274). All three comparisons were done scientifically and in accordance with generally accepted methodologies, and all three indicated that the 4Runner is not defective.

The first comparison was of structural designs, restraint system designs, and performance in publically available third party testing. *Id.* (APP 274). The methodology Lange and Lohwasser employed is consistent with benchmarking comparison for defect investigations NHTSA or manufacturers might perform. *Id.* (APP 274). The selection criteria for identification of peer vehicles are detailed in paragraphs 103 through 105 of the report. Exhibit A ¶¶ 103-105 (APP 96). In short, the criteria identified vehicles of similar type, size and age with a similar

manufacturer's suggested retail price ("MSRP"). The objective data comparison is detailed in paragraphs 106 through 116 of the report. *Id.* ¶¶ 106-116 (APP 96-129). In the various categories analyzed, the values for the 4Runner fall within the characteristic range of the peer group. *Id.* ¶ 107 (APP 102).

The second comparison was a survey of the fuel systems for the vehicles included in the first comparison. The methodology Lange and Lohwasser employed is consistent with benchmarking that NHTSA and manufacturers might perform and is described in paragraphs 117 through 120 of the report. *Id.* ¶¶ 117-120 (APP 129-141). All of the fuel tanks are located forward of the rear axle. *Id.* ¶ 117 (APP 129). Like the 4Runner, three of the peer vehicles tanks are located between the rear drive shaft and the frame rail or lower structural longitudinal rail. *Id.* (APP 129). The comparison demonstrated that the location of the 4Runner's fuel tank is not unusual in comparison to its peers and is not evidence of a deficient design. *Id.* ¶ 118 (APP 129).

The third comparison was a broader comparison of fuel system design to search for distinguishing characteristics of the 4Runner fuel system. This broader comparison included all 2000 through 2013 model year light duty trucks. *Id.* ¶ 120 (APP 140-41). After identifying 747 vehicle architectures from this time frame, Lange and Lohwasser further identified 319 truck architectures, 200 of which had NHTSA reports. *Id.* ¶ 121 (APP 142). As the 4Runner has a truck architecture, it was compared to this group. *Id.* (APP 142-149). After performing this detailed comparison of the fuel systems of 200 similar vehicles to the 4Runner, Lange and Lohwasser concluded that nothing about the 4Runner's fuel system design was unusual or indicated the presence of a defect. *Id.* ¶ 122 (APP 149).

> 2. *Lange and Lohwasser employed a reliable methodology in determining that the instant collision is too rare to require it be incorporated into the Vehicle Development Process.*

Lange and Lohwasser employed a reliable methodology in determining the instant collision is too rare to require it be incorporated into the Vehicle Design Process. Their report describes in detail the data and analysis that Lange and Lohwasser conducted in arriving at this conclusion in paragraphs 154 through 168. Exhibit A ¶¶ 154-168 (APP 221-232). Plaintiffs have complained of Lange and Lohwasser's methodology in evaluating the information in the National Automotive Sampling System ("NASS") database. The methodology, however, is reliable and is identical to the methodology NHTSA uses to interrogate its NASS databases. Exhibit B at 15 (APP 276). Application of that methodology indicates that the instant collision is too rare to require it be incorporated into the VDP.

The NASS data is relevant and the selection of vehicles to include in the database is far from random, as Plaintiffs' suggest. The NASS Collision Data System is a nationally representative sample of collisions in the U.S. Exhibit A ¶ 154 (APP 221). Lange and Lohwasser analyzed the data using NHTSA's approach to public health data analysis and rulemaking. The data was appropriately analyzed per the parameters in paragraph 159 of the report. *Id.* ¶ 159 (APP 224). Within the census data, Lange and Lohwasser searched for rear collisions in which a light duty truck was struck by a heavy duty truck with similar force, followed by a second front or side collision of the heavy truck into the light duty truck, which is precisely what happened in this accident. *Id.* (APP 224). As outlined in their report, an analysis of this data indicates that the subject collision was extremely unusual and would not be incorporated into a VDP. *Id.* ¶ 161 (APP 225).

### D. Lange and Lohwasser are Not Simply Stating Disputed Facts.

Plaintiffs' mischaracterize Lange and Lohwasser's testimony as "restating disputed facts." Doc. No. 487 at 18. Plaintiffs also erroneously charge that they "seek to testify regarding matters with which [sic] they have no personal knowledge." *Id.* Specifically, Plaintiffs cite a portion of the Lange-Lohwasser report that states the 4Runner was validated to a complex set of regulatory and internal Toyota requirements, that the 4Runner satisfied all of these requirements, and that the results indicate the 4Runner provides a high level of occupant safety. Plaintiffs contend that Lange and Lohwasser have no personal knowledge of these matters. However, they do in fact have personal knowledge derived from a review and analysis of the many test records applicable to the 4Runner. Additionally, based on their extensive knowledge and experience, they have offered the opinion that because the 4Runner satisfied these requirements, at times with significant margin, it is a reasonably safe vehicle. This testimony is helpful to the jury in determining whether the 4Runner is unreasonably dangerous because a lay juror lacks the expertise to independently review the records that Lange and Lohwasser rely upon in reaching that conclusion and realize the significance of what they represent.

### E. The Motor Vehicle Fire Safety Research Section of the Report Provides Context in Analyzing Fuel Loss and Fire Initiation.

The Motor Vehicle Fire Safety Research section of the report provides context in analyzing fuel loss and fire initiation. The testing in question was done by GM and jointly developed with NHTSA. Exhibit A ¶ 169 (APP 233). The testing was meant to be representative of vehicle types sold in the U.S. and included a sport utility vehicle (Ford Explorer). *Id.* The research was largely focused upon severe collision load cases and the science of fire initiation and propagation. Exhibit B at 16 (APP 277). The research describes general

scientific principles that could be of assistance to a trier of fact in any post collision motor vehicle fire case. *Id.* (APP 277).

> F. **Plaintiffs' Argument that Lange and Lohwasser Should be Precluded from Testify Regarding the Untimely Disclosed FE modeling and Simulation Performed by Friedman and Stephenson is Premature, Should be Moot and is not a Proper Daubert Challenge.**

As further discussed in the Toyota Defendants motion to exclude these untimely disclosed materials, Plaintiffs were required to produce any such materials by November 20, 2013, they failed to do so, and the materials should be excluded. Plaintiffs concede in this motion that they failed to produce those materials until January 18, 2014. Plaintiffs now seek to prevent Lange and Lohwasser from commenting on these untimely disclosed materials because as of February 17, 2014, Lange and Lohwasser had not formed opinions on them at the time of their depositions. Of course, the reason for that is Plaintiffs' failure to timely disclose FE modeling and simulations. This argument is not a proper Daubert challenge and simply seeks to reward Plaintiffs for their dilatory tactics. In any event, the untimely produced materials must be excluded by the Court, rendering this argument moot.

> G. **Lange and Lohwasser Should be Permitted to Discuss the Crash Test.**

Carr Engineering, in conjunction with Exponent, Inc., conducted a crash test of a substantially similar impact event to the initial impact between the Volvo tractor and the 4Runner. However, Plaintiffs argue that the crash test is not admissible based on *Muth v. Ford Motor Co.*, 461 F.3d 557 (5th Cir. 2006). The issue in Muth was whether demonstrative evidence offered by Ford to provide an illustration of general scientific principles was admissible. *Id.* at 566. However, the Toyota Defendants are not offering the crash test as an illustration of general scientific principles. Instead, the crash test is being offered as a

substantially similar impact event to the initial impact between the Volvo tractor and the 4Runner. A district court has wide discretion to admit crash test films conducted under substantially similar conditions as the underlying accident. *Barnes v. Gen. Motors Corp.*, 547 F.2d 275, 277 (5th Cir. 1977); *McCune v. Graco Children's Prods., Inc.*, 495 Fed. Appx. 535, 540 (5th Cir. 2012). If the proper foundation is laid, the court should admit crash test evidence. *Shipp v. Gen. Motors Corp.*, 750 F.2d 418, 427 (5th Cir. 1985). In order for the crash test to be admissible, it is not required to precisely reproduce all factors existing at the time of the accident. *Id.*; *Jordan v. Gen. Motors Corp.*, 624 F. Supp. 72, 79 (E.D. La. 1985). Instead, it is necessary to reproduce the conditions in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed. *Id.* When the same products are used in a crash test as an accident, courts are likely to find that the crash test is substantially similar and therefore admissible. *Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 6476371, at *7 (N.D. Tex. Nov. 20, 2013); *see also Hafstienn v. BMW of N. Am., LLC*, 194 Fed. Appx. 209, 212 (5th Cir. 2006).

Here, the crash test is substantially similar to the initial impact between the Volvo tractor and the 4Runner. In the crash test, a tractor-trailer matching the Volvo tractor was caused to strike a Toyota 4Runner matching the crash-involved Toyota 4Runner. Doc. No. 537 at 44. Both vehicles were purposely weighted to match the weights of the crash involved vehicles. The impact speed of the Volvo tractor was also set up to fall within the range of impact speeds offered by Vick. Finally, the point of engagement between the crash test vehicles was similar to the point of engagement proposed by all of the accident reconstructionists in this case. The crash test therefore reproduced the conditions of the initial impact between the Volvo tractor and the

4Runner in "substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed," and it is therefore admissible. *Barnes*, 547 F.2d at 277.

Moreover, just because Lange & Lohwasser did not personally perform the crash test does not mean that he cannot rely on it or refer to it. *Green v. Ford Motor Co.*, 2012 WL 10670462 (N.D. Miss. Sept. 7, 2012). An expert may base his testimony "upon professional studies or personal experience" so long as he "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at *7; citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

### H.    Lange and Lohwasser Should be Permitted to Testify Regarding the Reports and Testimony of Other Experts.

Lange and Lohwasser should be permitted to discuss the reports and testimony of other experts, including other defense experts. Plaintiffs cite no authority in support of their request to exclude such testimony. Experts are allowed under the rules to comment on the reports and testimony of other experts. It is standard practice for experts to comment on other experts' testimony. In fact, the Rule contemplates that experts will be present. Fed. R. Evid. 615. A person whose presence is essential to presenting a party's defense, like a technical liability expert, is not excluded from hearing other witness testimony. *See* Fed. R. Evid. 615. Additionally, such testimony is relevant to material issues. Fed. R. Evid. 401, 402.

### I.    Lange and Lohwasser's Testimony is Admissible Under Rule 403.

Finally, Plaintiffs claim that Lange and Lohwasser's testimony should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or that it will mislead the jury. Fed. R. Evid. 403. First, there is nothing about Lange or Lohwasser's expert testimony that will confuse the issues or mislead the jury.

Second, Lange and Lohwasser's testimony is not unfairly prejudicial. The probative value of the testimony in this case outweighs the danger of any unfair prejudice. The testimony is highly probative as it addresses Plaintiffs' central liability claims. While it is undoubtedly prejudicial to Plaintiffs' case in the sense that it disproves Plaintiffs' contention that the 4Runner's fuel system is defective and unreasonably dangerous, there is nothing unfairly prejudicial about the testimony. Moreover, this is an issue to be addressed by the court at the *limine* stage, and is not the proper subject of a *Daubert* challenge.

## IV.
## CONCLUSION

Lange and Lohwasser are qualified experts in the area of fuel system design, vehicle testing, structural design, and crashworthiness. They have decades of combined industry experience and education that makes them qualified well beyond the minimum level of expertise required by *Daubert*. These qualified experts reliably applied a generally accepted, reliable methodology in analyzing the issues presented in their report. The overarching method they employed was the scientific method, and their analysis followed specific methodologies used by the National Highway Traffic Safety Administration, and the automotive industry. Their testimony is relevant to this case, and will assist the trier of fact. Plaintiffs' Motion to Exclude should therefore be denied in its entirety.

WHEREFORE, PREMISES CONSIDERED, Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. request that Plaintiffs' Motion to Exclude the Testimony of Robert Lange and Dolph Lohwasser be denied in its entirety, and for such other relief at law or in equity to which they may show themselves to be entitled.

RESPECTFULLY SUBMITTED,

*/s/ Kurt C. Kern*
**KURT C. KERN – Attorney-in-Charge**
State Bar No. 11334600
Kurt.Kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
David.Stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas  75201
Telephone:  (972) 616-1700
Facsimile:  (972) 616-1701

**ATTORNEYS FOR DEFENDANTS TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., AND TOYOTA MOTOR SALES, U.S.A., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 7th day of April, 2014.

*/s/ Jude T. Hickland*