IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, <br><br>    Plaintiffs, <br><br> v. <br><br> TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC. <br><br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § CAUSE NUMBER: 3:11-cv-0207-N |

---

**PLAINTIFFS' RESPONSE TO DOLPHIN'S MOTION TO EXCLUDE
THE REPORT AND TESTIMONY OF JEFF VICK AND BRIEF IN SUPPORT**

---

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax

**ATTORNEYS FOR PLAINTIFFS**

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax

## TABLE OF CONTENTS

TABLE OF CONTENTs .................................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................................... iii

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT AND AUTHORITIES ................................................................................ 2

    A. Vick is Imminently Qualified to Provide the Opinions He Provides. ....................... 2

    B. Defendant's Complaints, If They Were Indeed Legitimate, Are Subjects for Cross Examination at Trial, Rather than a Daubert Motion. ................................. 3

    C. The Methodology Vick Uses is Reliable and is Based on Reliable Data. ............... 5

    D. Vick is Qualified to Express Opinions on the Weld Design and Performance on the Dolphin-Owned Strick Trailer. ......................................................................... 7

    E. Vick is Qualified to Express Opinions on Driver Inattention and Other Causation. ................................................................................................................ 8

    F. Vick's Report Fully Disclosed His Opinions and the Bases for Them. ................ 10

    G. Vick's Testimony Is Not Objectionable Under Rule 403. .................................... 11

    H. Contingent Request for Oral Hearing. .................................................................. 11

III. CONCLUSION ................................................................................................................ 12

CERTIFICATE OF SERVICE ..................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Bolstad v. Egleson*, 326 S.W.2d 506 (Tex.Civ.App.-Houston 1959, writ ref'd n.r.e.) ................... 7

*Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356 (5th Cir.2004) ....................................... 10

*Brown v. Kia Motors Corp.*, 2009 WL 866846 (W.D.Pa. Mar.30, 2009) ....................................... 2

*Chavers v. State*, 991 S.W.2d 457 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd)....................... 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993)................................. passim

*DeLeon v. Louder*, 743 S.W.2d 357 (Tex.App.-Amarillo 1987), writ denied, 754 S.W.2d 148 (Tex.1988)................................................................................................................................ 7

*Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183 (9th Cir. 2005) ..................................... 2

*Ford Motor Co. v. Ledesma*, 173 S.W.3d 78 (Tex.App.-Austin 2005, pet. granted) ..................... 7

*Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713 (Tex.1998). ....................................... 4

*In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d 1124 (2d Cir.1995). .......................................... 4

*Kopf v. Skyrm*, 993 F.2d 374 (4th Cir.1993).................................................................................. 4

*Lingafelter v. Shupe*, 2004 WL 2610515 (Tex.App.-Waco Nov.17, 2004)................................. 5, 9

*LMC Complete Auto., Inc. v. Burke*, 229 S.W.3d 469 (Tex.App.-Houston [1st Dist.] 2007, pet. denied)................................................................................................................................ 4

*Media, L.L.C. v. Google Inc.*, No. 2:07-cv-279, 2010 U.S. Dist. LEXIS 3273 (E.D. Tex. Jan. 15, 2010) ............................................................................................................. 4

*Moore v. Ashland Chemical, Inc.*, 126 F.3d 679 (5th Cir.1997) ..................................................... 2

*N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90 (Tex.App.-Dallas 1995, writ denied) ..... 4

Pena v. State, 155 S.W.3d 238 (Tex.App.-El Paso 2004, no pet.)................................................... 6

*Rock v. Arkansas*, 483 U.S. 44 (1987) ............................................................................................ 3

*Trailways, Inc. v. Clark*, 794 S.W.2d 479 (Tex.App.-Corpus Christi 1990, writ denied).............. 6

*United States v Gomez*, 67 F. 3d 1515 (10th Cir. 1995) ................................................................ 2

*United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074 (5th Cir.1996)................................................................................................................................ 4

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir.1987) ........................................................... 2, 4

*Waring v. Wommack*, 945 S.W.2d 889 (Tex.App.-Austin 1997, no writ) ...................................... 6

**Rules**

FED.R.EVID. 702 ................................................................................................................. 2, 6

Ollie Greene, William Greene, as Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, (collectively "Plaintiffs") oppose Defendant Dolphin Line, Inc.'s ("Dolphin" or "Defendant") motion to exclude the testimony of Plaintiffs' expert Jeff Vick ("Vick") and Brief in Support (hereinafter "Motion."). Dolphin fails to meet the threshold for exclusion of expert opinion established by *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and its progeny.

## I.  INTRODUCTION

It is undisputed that Dolphin owned and operated the Strick Trailer that was involved in the May 28, 2010, accident in which the Greene Family perished. Dolphin concedes that just prior to the collision Daniel Sprinkle, the driver retained by Dolphin and Fayard Moving & Warehouse, LLC ("Fayard") had stopped his massive Freightliner tractor and the Strick trailer in the middle of the freeway and had locked the brakes on the tractor and the trailer. It is also virtually undisputed that one or more members of the Greene family perished after the underride guard on the Dolphin-owned Strick Trailer dislodged, thus allowing the 4Runner to travel underneath the Strick trailer. As discussed below, as described in the expert report of Jeff Vick, and as will be explained by both fact and expert witnesses at trial, Dolphin and its shipping partner, Fayard, did not properly inspect and maintain the trailer so as to ensure that it was equipped with a safe and effective underride guard.

Dolphin's Motion grossly misrepresents Vick's his methodology, and the facts on which he relies. Dolphin also misinterprets the intent and holding of *Daubert* and its offspring. A *Daubert* motion cannot rest on a false impression of the opinions it seeks to challenge. Vick's analysis is demonstrably reasonable and well-grounded in fact, law, and generally accepted forensic

and medical principles. Dolphin may dispute certain factual premises and assumptions employed by Vick, but those disputes do not provide a basis for a *Daubert* motion.

## II.     ARGUMENT AND AUTHORITIES

As Defendant cannot dispute, expert testimony is admissible under FED.R.EVID. 702 if it "rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury should such testimony be excluded. *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir.1987). Vick's testimony far surpasses this "liberal standard of admissibility." *Brown v. Kia Motors Corp.*, 2009 WL 866846, at *5 (W.D.Pa. Mar.30, 2009); *Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1196 (9th Cir. 2005); *Moore v. Ashland Chemical, Inc.*, 126 F.3d 679 (5th Cir.1997); *United States v Gomez*, 67 F. 3d 1515, 1525 (10th Cir. 1995).

### A.     Vick is Imminently Qualified to Provide the Opinions He Provides.

Defendant cannot legitimately question Vick's qualifications as an expert. That is because for over 28 years Vick has specialized in traffic crash investigation, including evidence collection and preservation, in matters involving cars, tractor-trailers, pedestrians, motorcycles, etc. He was a member of the original New Mexico State Police Accident Reconstruction team from 1992 to 2005. He has substantial experience in traffic crash investigation and analysis, forensic mapping and accident reconstruction, interviews and interrogation techniques, and evidence collection and preservation. In addition to having analyzed hundreds of crashes involving passenger vehicles, semi tractor-trailers, pedestrians, motorcycles, trains, heavy trucks, etc., he has also instructed accident investigation courses. Vick has experience in traffic enforcement and knowledge of traffic laws including laws and regulations involving operation of vehicles on the highways and commercial carrier regulations. He is a current or former member of the following organizations: Accreditation Commission for Traffic Accident Reconstruction, National Association of Traffic Accident

Reconstructionists and Investigators, National Association of Professional Accident Reconstruction Specialists, Texas Association of Accident Reconstruction Specialists, International Network of Collision Reconstructionists, Accident Reconstruction Network, New Mexico State Police Association, National Troopers Coalition, the New Mexico Private Investigator & Polygraph Board and Texas Private Security Bureau. APP 036-037

Vick has consulted, been deposed, and/or testified in many cases in state and federal courts around the country. He has been asked on multiple occasions to give testimony on accident reconstruction and regulations governing truckers and trucking companies as well as passenger vehicles.  Thus the record is undisputed that Vick is qualified with more than satisfactory knowledge, skill, experience, training, and education on the issues for which his opinions are provided.

  **B.** **Defendant's Complaints, If They Were Indeed Legitimate, Are Subjects for Cross Examination at Trial, Rather than a *Daubert* Motion.**

Before addressing defendant's complaints, Plaintiffs note that each of the complaints is simply a fact or calculation dispute, not an improper methodology. *Daubert* is about the admissibility of an expert's testimony, not the weight the testimony should carry with the trier of fact.  Defendant's *Daubert* motion is nothing more than a prelude to what will be an unsuccessful cross examination of Vick. As *Daubert* noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). "'[T]he jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" *United States v. 14.38 Acres of Land, More or Less Sit. in*

*Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir.1996) (quoting *Viterbo,* 826 F.2d at 422; *Media, L.L.C. v. Google Inc*., No. 2:07-cv-279, 2010 U.S. Dist. LEXIS 3273, at *5 (E.D. Tex. Jan. 15, 2010) As these authorities reaffirm, "the test for exclusion [of expert opinion] is a strict one." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir.1993).

Defendant's arguments relate to Vick's credibility as an expert, a question of fact that is left to a fact-finder, rather than Vick's admissibility. Defendant's disagreement with Vick's calculations goes to the weight the jury will give the expert testimony and not to whether Vick is himself qualified to give his expert opinion. To the extent defendant's Brief is based on objections to the *factual foundation* of Vick's opinions, nothing in *Daubert* or its progeny changed the fundamental rule that the factual basis of an expert opinion "goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion **in cross-examination**." *Hose v. Chicago Northwestern Transp. Co.,* 70 F.3d 968, 974 (8th Cir. 1995). A court's gate-keeping analysis is not a substitute for cross-examination.[1] A court is not permitted to determine reliability based on the weight of the evidence or the credibility of the witnesses.[2] Nor should a district court prejudge the weight of conflicting evidence or substitute the judgment of the court for that of the jury. See *In re Joint E. & S. Dist. Asbestos Litig*., 52 F.3d 1124 (2d Cir.1995).

In addition, defendant's contention that if Vick has not held a commercial driver's license, he cannot provide expert testimony has already been debunked. *See, e.g., Lingafelter v.*

---

[1] *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 728 (Tex.1998).

[2] *LMC Complete Auto., Inc. v. Burke*, 229 S.W.3d 469, 478–79 (Tex.App.-Houston [1st Dist.] 2007, pet. denied) (finding weakness of facts in support of expert's opinion and credibility of patient history go to weight and not admissibility); *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 95 (Tex.App.-Dallas 1995, writ denied) (holding only the jury should determine credibility and weight to be attached to expert's testimony).

*Shupe*, No. 10–03–00113–CV, 2004 WL 2610515, at *5 (Tex.App.-Waco Nov.17, 2004)("we do not find any Texas precedent that an accident reconstructionist must also be a commercial truck driver to be qualified as an opinion expert").

    **C.    The Methodology Vick Uses is Reliable and is Based on Reliable Data.**

Vick's Opinions are clearly reliable. In his written opinion, Mr. Vick provides the methodology he used in forming his opinions:

> The methodology I used in this case is identical to the methodology I have used in previous reconstructions, and is the methodology that is normally employed by experts in the fields of crash analysis and accident reconstruction. I began by performing inspections and collecting detailed measurements of the accident scene and the subject tractor/trailer units on May 30, 2010, (less than two days after the incident occurred)...The measurements and data obtained in these surveys were downloaded at my office to produce an Auto CAD file for me to work with.
>
> I inspected the 2010 Dolphin 4Runner and/or the 2006 Dolphin 4 [sic] Corolla on June 17, 2010, June 22, 2010 and October 7th 2013. I also attended an examination of the John Fayard trailer tail lamps from the Strick trailer. I completed to scale maps and photographs of the crash site and vehicles. I also reviewed the investigating officer's Uniform Crash Reports as well as other materials listed below.
>
> Other calculations were performed in order to complete a crush analysis, speed analysis and time distance analysis concerning vehicle speeds, first point of possible perception, perception-reaction time, driving strategy and evasive tactics of each driver.
>
> My analysis began with the physical evidence, data, and testimony related to the scene, the actors, and the event. This evidence included, among other things, eyewitness accounts, marks on the roadway, speed information, depictions of the condition and location of the vehicles involved, the roadway, the road structures, the landscape, the location of the occupants, and various outside sources of data. I used this evidence to deduce what, in my opinion, was the most likely account of the accident.
>
> As part of my deduction, I performed calculations to determine the speed and trajectory of the vehicles and the forces acting upon them. I also used modeling software to predict the general location of the vehicles throughout the accident. I compared those results with the evidence about the accident site. In assessing the speed and changes in velocity of the vehicles, I analyzed the scene, which materials were damaged and how, and the final conditions of the vehicles. The calculations I have performed are all based on referenced, published, peer reviewed work and are customarily used by reconstructionists in forming speed

> opinions. It is the same methodology I have used in my 20 years of accident reconstruction.
>
> I also reviewed documents which were provided to me including the accident reports (both the original and amended/supplemental), engine control module download printouts, vehicle registration information, driver history records, multiple depositions, weather reports, the coroner and autopsy reports, hundreds of photos, hospital records for the driver of the 4Runner, witness statements, 911 dispatch tapes, Vehicle Inspection Reports, Freightliner engineer information on the truck, and other facts and data discussed below.

APP 001-002. In other words, Vick reviewed substantial materials, used recognized methodologies, posited and eliminated various hypotheses, conducted independent testing and research, and reviewed other testing and independent information. Courts recognize that notwithstanding the dictates of *Daubert* and its progeny, "the rejection of expert testimony is the exception rather than the rule." See FED.R.CIV.P. 702, Adv. Comm. Notes (2000). The court's gatekeeping function focuses on the examination of the expert's methodology, not the soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir.2000). Dolphin's criticisms of Vick do not trigger any *Daubert* concerns.

Clearly, defendant's complaints concern the reliability of Vick's testimony focus on whether certain disputed facts exist, not on Vick's methodology or techniques. Challenges to disputed facts do not constitute a true challenge to the reliability of Vick's conclusions. Texas has a long history of allowing qualified accident reconstruction experts to testify regarding the way in which an accident occurred. *See, e.g.,* Pena v. State, 155 S.W.3d 238, 243 (Tex.App.-El Paso 2004, no pet.); *Chavers v. State*, 991 S.W.2d 457, 460–61 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd); *Waring v. Wommack*, 945 S.W.2d 889, 893 (Tex.App.-Austin 1997, no writ); *Trailways, Inc. v. Clark*, 794 S.W.2d 479, 483 (Tex.App.-Corpus Christi 1990, writ denied); *DeLeon v. Louder*, 743 S.W.2d 357, 359 (Tex.App.-Amarillo 1987), writ denied, 754 S.W.2d

148 (Tex.1988); *Bolstad v. Egleson*, 326 S.W.2d 506, 519 (Tex.Civ.App.-Houston 1959, writ ref'd n.r.e.). At most, the factual disputes on which defendant argues Vick erroneously premised his opinions affect the credibility of Vick's testimony, not the reliability of his theories. *See Ford Motor Co. v. Ledesma*, 173 S.W.3d 78, 87–88 (Tex.App.-Austin 2005, pet. granted) (holding expert testimony of accident reconstruction concerning mark left on roadway, allegedly by truck's driveshaft, went to credibility not reliability of expert's theories); *Waring*, 945 S.W.2d at 893 (holding no abuse of discretion occurred in admission of accident reconstruction expert's testimony concerning location of the car and bicycle, the turning arc of the car, the speed of the descending bicycle, the point of impact, and the reaction time of each driver; defendant's complaint was "more directed to the accuracy of the conclusions reached by the expert than to his methodology or the theory underlying accident reconstruction ..."). The accuracy of the facts Vick relied upon was thoroughly challenged at his deposition and may be challenged again at trial. But, defendant's complaints do not warrant an exclusion or limitation of Vick's testimony.

> D. **Vick is Qualified to Express Opinions on the Weld Design and Performance on the Dolphin-Owned Strick Trailer.**

Contrary to Dolphin's contention, Vick is qualified to express an opinion on what he observed as to the weld on the Strick Trailer. And this testimony will be helpful to the jury in determining relevant issues in this case. Vick began welding in junior high and high school, where welding was instructed, and welds were inspected and graded. He also received further instruction in college in welding, and welds were graded and tested for quality. He has farmed and ranched where he has used welding extensively. APP 043. In consideration of his opinion, he reviewed photos of the under ride guard and the trailer involved. Visually, he was able to determine that the welds holding the under ride guard to the trailer were of poor quality. He noticed that the weld was a single bead "fillet weld," and observed that the welding technique

7

used was overhead, which is itself a difficult technique to use to weld. In Vick's opinion, the beads indicate uneven metal deposit into the weld with inclusions of slag in the weld, displaying qualities of a weak weld. The bead appears to be porous with potential blow holes or uneven beading. Scene photos of the under ride guard indicate the right side support basically popped off at impact without significantly damaging (bending) the vertical support which is what should be evident if the weld would have held to a significant degree. The left vertical support completely detached from the trailer and from the horizontal guard, indicating the welds also popped off. APP 043. Photographs of the welded surface on the trailer also indicate that the weld was not a uniform bead. In Vick's opinion, to a reasonable degree of certainty, this indicates the welds did not reach the intended purpose of a weld, which is to be as strong as the metal being welded. Simply put, the welds failed prior to significant deformation to the right side vertical support, thus failing to dissipate energy prior to failing. APP 044. Testing the welds was not an option as the welds had already failed and the trailer and under ride guard was not available to look for other deficiencies such as preexisting cracks. Vick's opinions are not speculation, conjecture or guess work; instead, they are based on identifiable, factual characteristics depicted in photographs of the under ride guard, vertical supports and welded surfaces on the trailer. And his opinions are supported by his education, instruction and practical experience with welding, as well as from his prior observations through investigation and experience. APP 0044

  **E. Vick is Qualified to Express Opinions on Driver Inattention and Other Causation.**

  Contrary to Dolphin's contention, the law permits Vick to give opinions about the cause of the accident. *See, e.g., Schultz v. Lester*, 2011 WL 3211271, *2 (Tex. App. - Dallas July 29, 2011, no pet.) (mem. op.) (concluding that officer's training and certifications in accident

reconstruction qualified him to give expert testimony concerning the cause of the accident); *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 891 (Tex. App. - Texarkana 2004, pet. denied) (noting that "police officers are qualified to testify regarding accident reconstruction if they are trained in the science and possess the high degree of knowledge sufficient to qualify as an expert"); *Ter–Vartanyan v. R & R Freight, Inc.*, 111 S.W.3d 779, 781 (Tex.App.-Dallas 2003, pet. denied) (holding police officer trained in accident reconstruction was qualified to give expert opinion on the cause of accident); *Sciarrilla v. Osborne*, 946 S.W.2d 919, 923–24 (Tex.App.-Beaumont 1997, writ denied) (same); see also Lingafelter 2004 WL 2610515, at *4 (recognizing that "[t]he opinion of an investigating officer with level two reconstruction training is admissible").  In fact, courts have allowed accident reconstructionists, including former police officers to provide testimony that "driver inattention" was the cause of the accident. *Ter–Vartanyan* 111 S.W.3d at 781; *Hutton v. AER Mfg. II, Inc.*, 224 S.W.3d 459, 463 (Tex.App.-Dallas 2007, pet. denied).  Here, as discussed above, Vick has significant experience in traffic enforcement and knowledge of traffic laws including laws and regulations involving operation of vehicles on the highways and commercial carrier regulations.  For nearly for nearly twenty years he was involved with issuing citations for commercial vehicle enforcement violations, much like the officers who issued citations to Mr. Sprinkle and Mr. Moody in this case.  Thus, he has substantial experience in determining whether an act arises to the level of constituting a contributing cause.   He has also worked more hundreds of traffic crashes involving commercial motor vehicles.

Vick was a State Police officer from August 1985 until October 2005, when he retired as a Sergeant.  His duties at the time were to reconstruct major crashes, including those commercial motor vehicle collisions. He supervised and instructed officers in the proper investigative

techniques of traffic collisions and proper law enforcement regarding state law and Federal Regulations concerning Commercial Motor Vehicle Equipment and Commercial Motor vehicle driver actions. He has also received substantial formal training and mentoring in the proper inspection of commercial motor vehicles, the Federal Motor Carrier Safety Regulations, in which as a police officer he was issued the Federal regulations yearly and he enforced the regulations and laws pertaining to Commercial Motor Vehicles and Commercial Motor Vehicle Drivers. He is very familiar with the trucking regulations that apply to truck drivers and trucking companies. He also enforced State Laws regarding equipment and operation of Motor Vehicles. As a law enforcement officer, he had to arrest truck drivers, issue citations for violation of state and federal statutes and regulations, impound vehicles, inspect and investigate commercial motor vehicles and drivers for 20 years. And in this case Vick personally investigated the accident. Vick was at the scene two days after the accident to observe skid and yaw marks and to survey the scene, whereas the defendants' experts arrived years later. Thus, he should be permitted to provide expert opinions as to causation, whether it involves inattention, failure to maintain a proper lookout, improper equipment, etc.

### F.  Vick's Report Fully Disclosed His Opinions and the Bases for Them.

In vaguely suggesting that Vick's written expert report was incomplete, Dolphin continues to advance a theory it knows is not meritorious. Plaintiff has already responded to this baseless claim. See, Dkt. Entry No. 503. Vick simply misplaced his hand calculations, but eventually found them and submitted them to all defendants. Dolphin has had months to analyze and scrutinize the calculations. In all other respects, Vick produced all of the underlying data, which included his entire expert file. Nevertheless, as to the "hand calculations" about which the Motion to Exclude refers, Dolphin is aware that the formulas used for the calculations are standard equations used by any reputable accident reconstructionist. The thing that is important

to an expert analysis is the input data, not the routine or rote formulas. And Defendants spent hours questioning Mr. Vick regarding his methodology, which gave insight into the input data he uses for the standard calculations, about which all experts are aware. *See Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 375 (5th Cir.2004) (affirming district court's denial of a motion to exclude plaintiff's expert's supplemental report where the district court reasonably believed that the defense expert had access to the supporting work papers and calculations and where the defense expert was already familiar with the underlying data).

### G.     Vick's Testimony Is Not Objectionable Under Rule 403.

Vick's testimony is undeniably probative, and bears directly on Plaintiffs' claims of causation and damages. Vick has spent years investigating this accident and forming his expert opinions regarding it. His testimony is crucial to Plaintiffs and be clearly be helpful to the jury. Rule 403 excludes evidence only where "its probative value is substantially outweighed by the danger of... unfair prejudice [or] confusing the issues ...." FED. R. EVID. 403. Contrary to defendant's argument, Vick has made it quite clear that he is giving only reliable opinions on areas that are relevant to the case, and for which he has the requisite expertise. So there is no risk that the jury will be misled on these issues. On the other hand, there would be actual prejudice to Plaintiffs if they are not allowed to introduce Vick's opinions.

### H.     Contingent Request for Oral Hearing.

Plaintiffs believe the record before the Court is sufficient to allow the Court to summarily dismiss defendant's Motion to Exclude. However, in the event the Court is inclined to limit or exclude any of Vick's testimony, Plaintiffs request they be given the opportunity to present counsel argument and/or testimony from such witnesses at an oral hearing. This would allow Plaintiffs to more develop for the Court the expert's qualifications and testimony, as well as the relevance and reliability of it.

### III. CONCLUSION

For all the aforementioned reasons, Plaintiffs respectfully request that the Court deny Defendant's Daubert Motion and grant Plaintiffs such other and further relief, in law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted,

| | |
|---|---|
| /s/ Aubrey "Nick" Pittman | /s/ Daryl K. Washington |
| AUBREY "NICK" PITTMAN | DARYL K. WASHINGTON |
| State Bar No. 16049750 | State Bar No. 24013714 |
| | |
| **THE PITTMAN LAW FIRM, P.C.** | **LAW OFFICES OF DARYL K. WASHINGTON P.C.** |
| 100 Crescent Court, Suite 700 | |
| Dallas, Texas 75201-2112 | 325 N. St. Paul St., Suite 1975 |
| 214-459-3454 | Dallas, Texas 75201 |
| 214-853-5912 – fax | 214-880-4883 |
| pittman@thepittmanlawfirm.com | 469-718-0380 - fax |
| | dwashington@dwashlawfirm.com |

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2014 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

    /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN