**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **OLLIE GREENE**, *et al.*, § <br> § <br> Plaintiffs § <br> § <br> v. § <br> § <br> **TOYOTA MOTOR CORPORATION**, *et al.*, § <br> § <br> Defendants. § | **CAUSE NUMBER: 3:11-cv-0207-N** |

**APPENDIX IN SUPPORT OF THE TOYOTA DEFENDANTS'
REPLY BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY
OF PLAINTIFFS' EXPERT DR. RHOADS STEPHENSON**

TO THE HONORABLE COURT:

COME NOW, Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively "the Toyota Defendants") and would respectfully show the Court as follows:

| EXHIBIT | DESCRIPTION | PAGE NUMBERS |
|---|---|---|
| Exhibit A | Deposition of Dr. Rhoads Stephenson | App. 1-17 |

Respectfully submitted,

*/s/ Kurt C. Kern*
**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas  75201
(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR DEFENDANTS TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., AND TOYOTA MOTOR SALES, U.S.A., INC.**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 21st day of April, 2014.

*/s/ Jude T. Hickland*

```
                                                              Page 1
 1              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF TEXAS
 2                       DALLAS DIVISION
 3   OLLIE GREENE,                )
     Individually as the          )
 4   surviving parent of          )
     WYNDELL GREENE, SR.,         )
 5   WILLIAM GREENE, as the       )
     representative of the        )
 6   Estate of WYNDELL GREENE,    )
     SR., and MARILYN             )
 7   BURDETTE-HARDEMAN,           )
     Individually and as the      )
 8   surviving parent of          )
     LAKEYSHA GREENE,             )
 9       Plaintiffs,              )
                                  )
10   VS.                          ) CAUSE NO. 3-11CV-0207-N
                                  )
11   TOYOTA MOTOR CORPORATION,    )
     TOYOTA MOTOR                 )
12   MANUFACTURING NORTH          )
     AMERICA, INC., AND TOYOTA    )
13   MOTOR SALES USA, INC.,       )
     VOLVO GROUP NORTH            )
14   AMERICA, INC., VOLVO         )
     TRUCKS NORTH AMERICA, A      )
15   DIVISION OF VOLVO GROUP      )
     NORTH AMERICA, INC.,         )
16   STRICK CORPORATION, INC.,    )
     JOHN FAYARD MOVING &         )
17   WAREHOUSE, LLC and           )
     DOLPHIN LINE, INC.           )
18       Defendants.              )
19
20
       ***************************************************
21             ORAL AND VIDEOTAPED DEPOSITION OF
22                    R. RHOADS STEPHENSON
23                      JANUARY 18, 2014
       ***************************************************
24
25        ORAL AND VIDEOTAPED DEPOSITION OF R. RHOADS
```

**R. RHOADS STEPHENSON - 1/18/2014**

Page 2

1  STEPHENSON, produced as a witness at the instance of
2  the Defendants, and duly sworn, was taken in the
3  above-styled and numbered cause on January 18, 2014,
4  from 9:29 a.m. to 6:28 p.m., before Donna Wright, CSR
5  in and for the State of Texas, reported by machine
6  shorthand, at the law offices of BOWMAN & BROOKE,
7  2901 Via Fortuna Drive, Suite 500, Austin, Texas,
8  pursuant to the Federal Rules of Civil Procedure and
9  the provisions stated on the record or attached hereto.

**R. RHOADS STEPHENSON - 1/18/2014**

```
                                                          Page 3
 1                    A P P E A R A N C E S
 2
 3    FOR THE PLAINTIFFS:
          Mr. Aubrey "Nick" Pittman
 4        THE PITTMAN LAW FIRM, P.C.
          100 Crescent Court
 5        Suite 700
          Dallas, Texas   75201
 6        (214) 459-3454
 7            - and -
 8        Mr. Daryl K. Washington
          THE LAW OFFICES OF DARYL K. WASHINGTON, P.C.
 9        325 St. Paul Street
          Suite 1975
10        Dallas, Texas   75201
          (214) 880-4883
11
12    FOR THE DEFENDANTS TOYOTA MOTOR CORPORATION, TOYOTA
      MOTOR MANUFACTURING NORTH AMERICA, INC., AND TOYOTA
13    MOTOR SALES USA, INC.:
          Mr. David P. Stone
14        BOWMAN AND BROOKE, LLP
          2501 North Harwood Street
15        Suite 1700
          Dallas, Texas   75201
16        (972) 616-1700
17
      FOR THE DEFENDANTS VOLVO GROUP NORTH AMERICA, INC. AND
18    VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP
      NORTH AMERICA, INC.:
19        Mr. John Carlson
          HOWRY, BREEN & HERMAN, LLP
20        1900 Pearl Street
          Austin, Texas   78705
21        (512) 474-7300
22
23
24
25
```

Page 4

```
 1    FOR THE DEFENDANT STRICK CORPORATION, INC.:
         Mr. S. Todd Parks
 2       WALTERS, BALIDO & CRAIN
         100 North Trinity Street
 3       Decatur, Texas   76234
         (940) 626-8254
 4
              - and -
 5
         Mr. Donald Dawson
 6       DAWSON & CLARK, P.C.
         243 W. Congress, Suite 600
 7       Marquette Building
         Detroit, Michigan   48226
 8       (313) 256-8900
 9
      FOR THE DEFENDANT FAYARD MOVING & WAREHOUSE, LLC:
10       Mr. Scott W. Self
         FEE, SMITH, SHARP & VITULLO, LLP
11       13155 Noel Road
         Suite 1000
12       Dallas, Texas   75240
         (972) 934-9100
13
14    FOR THE DEFENDANT DOLPHIN LINE, INC.:
         Mr. Joseph F. Henderson
15       MACDONALD DEVIN, P.C.
         3800 Renaissance Tower
16       1201 Elm Street
         Dallas, Texas   75270
17       (214) 744-3300
18
      ALSO PRESENT:
19       Kristin Geoffrion - Videographer
20
21
22
23
24
25
```

Page 62

1  Q. (BY MR. DAWSON) In other words, if you're
2  going to talk about the design of an ICC bumper and
3  what constitutes a good one or a bad one, that sort of
4  thing, then we have a lot to discuss.
5  A. I think you ought to refer -- rely on
6  Mr. Friedman.
7           MR. PITTMAN: That's not a question.
8           THE WITNESS: Okay.
9  Q. (BY MR. DAWSON) So would you agree that
10 Mr. Friedman is the source of those opinions more than
11 you are, sir?
12          MR. PITTMAN: Objection, form.
13          THE WITNESS: Yeah. I -- he has more
14 expertise than I do on those subjects.
15 Q. (BY MR. DAWSON) Did you assist Mr. Friedman
16 in any simulations concerning running a Toyota 4Runner
17 in the back of a Strick trailer?
18 A. No.
19 Q. You had no participation whatsoever in that;
20 is that correct?
21 A. When you're saying simulations, you're talking
22 about the virtual testing to --
23 Q. Yes, sir.
24 A. Yeah. No.
25 Q. Did you do any virtual testing relative to the

Page 63

1  fuel system or the cause of -- and origin of the fire?
2     A.   I worked closely with him on the -- on the
3  work that we did with the Biokinetics Corporation.  We
4  hired them to test a Toyota tank from the 2010 4Runner.
5  There's a report in one of those boxes that covers
6  that.
7            And -- and that one looked at leakage
8  rates with tanks and various orientations, which are
9  relevant to rollovers.  But they also -- they also have
10 what -- what places would leak if -- when you're on
11 your four feet.  And there are some hoses on the Toyota
12 that will leak just when you're sitting there.
13    Q.   What I'm primarily concerned with is whether
14 or not you did any virtual crash testing even relative
15 to the Toyota fuel system, which would implicate
16 anything associated with its impact into the Strick
17 trailer.
18    A.   No.
19    Q.   Okay.  Did you assist in any way in taking
20 measurements of the amount of deformation to the Toyota
21 4Runner at various corners of the vehicle, side, and so
22 forth?
23    A.   No.  Mr. Friedman and his measurement
24 technician made all the physical measurements.
25    Q.   Were you with him when that occurred, sir?

Page 116

1   inspection?
2       A.  Mr. Friedman.
3       Q.  Anybody else?
4       A.  Maybe one or two of his assistants.
5       Q.  Did you reach any conclusions about the Toyota
6   vehicle at the time of that particular inspection?
7               MR. PITTMAN:  Objection, form.
8               THE WITNESS:  Well, I mean, I think we
9   make conclusions every time we think about it or get
10  some new information.  I don't recall specifically what
11  decisions were made in that precise moment.
12      Q.  (BY MR. CARLSON)  Did you ever inspect the
13  Forest product Volvo tractor that was involved in the
14  accident?
15      A.  I did not inspect it, but I've seen hundreds
16  of photographs of it.
17      Q.  You never personally inspected it, right?
18      A.  No.
19      Q.  All right.  Obviously, you never looked at the
20  brakes, for example, on that vehicle, right?
21      A.  No.
22      Q.  Do you even know what type of brakes it has
23  other than drum brakes?
24      A.  I don't know the manufacturer of the brakes,
25  but I know they're drum brakes.

1   A.   Well, it was alternative engines and
2   alternative fuels and alternative drive trains,
3   hybrids --
4   Q.   Were any --
5   A.   -- electric cars, hydrogen fuel cell cars.
6   Q.   Were any prototypes ever created as a result
7   of that project?
8   A.   Not by us, but they -- they were by some of
9   the car companies.  And -- and we recommended an
10  expanded program of R&D, which was funded by the
11  Department of Energy that evolved into the new
12  generation of -- partnership for a new generation
13  vehicle program, which developed prototypes.
14  Q.   Okay.  And I'm not trying to be rude, sir, but
15  I have limited time here, and I'm going to ask you to
16  try to be responsive to my questions.  I know there's a
17  lot of interesting background, and I want some of it.
18  But if you could try to limit your answer to the scope
19  of my answer.  All right?
20  A.   You asked me how I got to NHTSA.  That's how.
21  Q.   Okay.  During the course of your work on -- on
22  the Ford project, was there any work done as far as
23  crash testing, whether it be actual or simulated?
24  A.   No, we didn't do -- we wanted to make sure
25  that we didn't do anything to adversely affect the

Page 146

1    safety of vehicles.  But the focus of this was on
2    energy efficiency, not on safety.  So we did not do any
3    virtual or actual testing of real vehicles.
4         Q.   During the course of the Ford project, did you
5    participate in the design of any liquid fuel tanks for
6    automobiles?
7         A.   No.
8         Q.   Now, when you were with the NHTSA, did you
9    have any involvement in compliance with the standards?
10        A.   Well, compliance was in a different office.
11   It's in the -- under the Office of Enforcement, which
12   is parallel to R&D.  I knew the people over there, but
13   I was not a compliance person myself.
14        Q.   You were not a compliance person yourself?
15        A.   Well, that's a different -- as I said, that
16   was a different division within the National Highway
17   Traffic Safety Administration.
18        Q.   I take it in connection with your work at the
19   NHTSA you became familiar with and conversant with the
20   various standards within the Federal Motor Vehicle
21   Safety Standards; is that right?
22        A.   Correct.
23        Q.   All right.  You're familiar with 301 and 302?
24        A.   Correct.
25        Q.   What is your understanding as to how a 301

Page 253

1  ends were, and we tried to tailor our research to fill
2  in the gaps that had not been previously addressed.
3      Q.   Were --
4      A.   And he and I worked collaboratively on this.
5  I probably had more time than he did, so I probably did
6  more than half of the work.
7      Q.   The folks at GM you consulted with who had
8  done their own previous studies, did that include
9  Mr. Lang?
10     A.   No, it included Jeff Santrock and a couple of
11 other colleagues in his department.  Robert Lang was
12 our -- kind of our technical contractual point of
13 contact at General Motors.  We met with him maybe once
14 a year.
15     Q.   Okay.  Now, in connection with that work, did
16 the Motor Vehicle Fire Research Institute actually
17 conduct any crash tests?
18     A.   The Motor Vehicle Fire Research Institute was
19 an online enterprise between Dr. Ken Digges and myself.
20 He lives in Virginia and I live in California, and we
21 collaborated by phone, by videoconference, and by
22 computer.  We did not have laboratories, we did not
23 conduct tests.  We found out who the best researchers
24 in the country were and we gave them contracts to carry
25 out laboratory tests --

```
 1      Q.    And what --
 2      A.    -- and analysis.
 3      Q.    Excuse me.  And who were these best
 4   researchers and laboratories in the country that you
 5   contracted that work out to?
 6      A.    We had a consulting contract with
 7   Dr. Bob Zalosh of Worcester Polytechnic Institute.
 8   He's now retired from there, but he's still working.
 9   We --
10      Q.    Let me interrupt you right there.  You're
11   going to have to spell the last name.
12      A.    Zalosh?
13      Q.    Yeah.
14      A.    Z-a-l-o-s-h, a well-known fire and explosion
15   expert academic type guy.  We talked to Lindsey -- I
16   think his name was Lindsey Griffith at Texas.  We
17   didn't actually fund him.  We did several projects with
18   Southwest Research Institute on the fire tests on
19   plastic fuel tanks and one metal one, on the
20   flammability of these polymers, and on electrical fires
21   and batteries.  And there are four or five reports with
22   Southwest Research Institute.
23              We also funded about four efforts with
24   the biokinetics company up in Canada; Ottawa, Canada,
25   that did the work on the fuel tank leakage rates.  We
```

**R. RHOADS STEPHENSON - 1/18/2014**

```
                                                      Page 354
 1                CHANGES AND SIGNATURE
 2   WITNESS NAME:  R. RHOADS STEPHENSON
 3   DATE OF DEPOSITION:  JANUARY 18, 2014
 4   PAGE        LINE        CHANGE              REASON
 5   _____
 6   _____
 7   _____
 8   _____
 9   _____
10   _____
11   _____
12   _____
13   _____
14   _____
15   _____
16   _____
17   _____
18   _____
19   _____
20   _____
21   _____
22   _____
23   _____
24   _____
25   _____
```

Page 355

1  I, R. RHOADS STEPHENSON, have read the foregoing
2  deposition and hereby affix my signature that same is
3  true and correct, except as noted above.

4                           _____
                            R. RHOADS STEPHENSON
5

6  THE STATE OF _____ )
7  COUNTY OF _____ )
8     Before me, _____, on this day personally
9  appeared R. RHOADS STEPHENSON, known to me (or proved
10 to me under oath or through _____)
11 (description of identity card or other document) to be
12 the person whose name is subscribed to the foregoing
13 instrument and acknowledged to me that he executed
14 the same for the purposes and consideration therein
15 expressed.
16
17    Given under my hand and seal of office, this
18 _____ day of _____, _____.
19
20                        _____
                          NOTARY PUBLIC IN AND FOR
21                        THE STATE OF _____
22
23 My commission expires: _____
24  ____ No Changes Made  ____ Amendment Sheet(s) Attached
25    GREENE, ET AL. VS. TOYOTA MOTOR CORPORATION, ET AL

```
                                                              Page 356
 1              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF TEXAS
 2                      DALLAS DIVISION
 3   OLLIE GREENE,                    )
     Individually as the              )
 4   surviving parent of              )
     WYNDELL GREENE, SR.,             )
 5   WILLIAM GREENE, as the           )
     representative of the            )
 6   Estate of WYNDELL GREENE,        )
     SR., and MARILYN                 )
 7   BURDETTE-HARDEMAN,               )
     Individually and as the          )
 8   surviving parent of              )
     LAKEYSHA GREENE,                 )
 9        Plaintiffs,                 )
                                      )
10   VS.                              ) CAUSE NO. 3-11CV-0207-N
                                      )
11   TOYOTA MOTOR CORPORATION,        )
     TOYOTA MOTOR                     )
12   MANUFACTURING NORTH              )
     AMERICA, INC., AND TOYOTA        )
13   MOTOR SALES USA, INC.,           )
     VOLVO GROUP NORTH                )
14   AMERICA, INC., VOLVO             )
     TRUCKS NORTH AMERICA, A          )
15   DIVISION OF VOLVO GROUP          )
     NORTH AMERICA, INC.,             )
16   STRICK CORPORATION, INC.,        )
     JOHN FAYARD MOVING &             )
17   WAREHOUSE, LLC and               )
     DOLPHIN LINE, INC.,              )
18        Defendants.                 )
19
20          REPORTER'S CERTIFICATION OF THE ORAL
               DEPOSITION OF R. RHOADS STEPHENSON
21                    JANUARY 18, 2014
22        I, Donna Wright, a Certified Shorthand
23   Reporter and Notary Public in and for the State of
24   Texas, hereby certify to the following:
25            That the witness, R. RHOADS STEPHENSON, was
```

Page 357

```
 1   duly sworn by the officer and that the transcript of
 2   the oral deposition is a true record of the testimony
 3   given by the witness;
 4          That the original deposition was delivered to
 5   MR. DONALD DAWSON.
 6          That a copy of this certificate was served on
 7   all parties and/or the witness shown herein on
 8   _____.
 9          I further certify that pursuant to FRCP Rule
10   30(3) that the signature of the deponent:
11          ____ was requested by the deponent or a party
12   before the completion of the deposition and that the
13   signature is to be before any notary public and
14   returned within 30 days from date of receipt of the
15   transcript.  If returned, the attached Changes and
16   Signature Page contains any changes and the reasons
17   therefore:
18          ____ was not requested by the deponent or a
19   party before the completion of the deposition.
20          I further certify that I am neither counsel
21   for, related to, nor employed by any of the parties or
22   attorneys in the action in which this proceeding was
23   taken, and further that I am not financially or
24   otherwise interested in the outcome of the action.
25
```

**R. RHOADS STEPHENSON - 1/18/2014**

```
                                                            Page 358
 1         Certified to by me on this, the _____ day of
 2     _____, 2014.
 3
 4
 5
                       _____
 6                     Donna Wright, CSR No. 1971
                       Expiration Date:  12-31-2015
 7                     MERRILL LEGAL SOLUTIONS
                       Firm Registration No. 191
 8                     4144 N. Central Expwy., #850
                       Dallas, Texas  75204
 9                     800.966.4567
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 359

```
 1   COUNTY OF TRAVIS   )
 2   STATE OF TEXAS     )
 3         I hereby certify that the witness was notified
 4   on _____ that the witness has 30 days or
 5   (_____ days per agreement of counsel) after being
 6   notified by the officer that the transcript is
 7   available for review by the witness and if there are
 8   changes in the form or substance to be made, then the
 9   witness shall sign a statement reciting such changes
10   and the reasons given by the witness for making them;
11         That the witness' signature was/was not returned as
12   of _____.
13         Subscribed and sworn to on this, the _____ day
14   of _____, 2014.
15
16
17                          _____
                            Donna Wright, Texas CSR No. 1971
18                          Expiration Date:  12-31-2015
                            MERRILL LEGAL SOLUTIONS
19                          Firm Registration No. 191
                            4144 N. Central Expwy., #850
20                          Dallas, Texas  75204
                            800.966.4567
21
22
23
24
25
```