**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **OLLIE GREENE**, *et al.*, | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| | § | |
| **TOYOTA MOTOR CORPORATION**, *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**TOYOTA DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR**
**MOTION TO EXCLUDE THE TESTIMONY OF**
**PLAINTIFFS' EXPERT KEITH FRIEDMAN**

TO THE HONORABLE COURT:

Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively "the Toyota Defendants") file this Reply Brief in Support of their Motion To Exclude The Testimony Of Plaintiffs' Expert Keith Friedman as follows:

**I.**
**SUMMARY OF REPLY**

Plaintiffs' designated Keith Friedman ("Friedman") to offer opinions regarding the design of the 4Runner's structure and fuel system, but Friedman's testimony must be excluded at trial. The record is clear that Friedman has not conducted any reliable testing that was properly disclosed.  In addition, Friedman is still unable to reliability opine regarding how the fuel system breach occurred, when the fire began during the accident sequence, and whether or not his proposed alternative designs would have prevented the injuries and deaths at issue.  Instead, Friedman relies on backward logic in support of his vague and conclusory opinions in this case.

Therefore, Friedman's testimony regarding the design of the 4Runner's structure and fuel system and issue relative to causation is unreliable and must be excluded at trial.

## II.
## REPLY

### A.    Plaintiffs Misstate Disputed Facts in This Case.

In their "Introduction" Section, Plaintiffs state that "It is also undisputed that the occupant restraint system on the passenger side of the 4Runner, where Mrs. Lakeysha Greene sat on May 28, 2010, did not restrain her in place and that the 4Runner's occupant restraint system (e.g. frontal airbag, side curtain airbag, and seat belt) did not prevent Mrs. Greene's death."  This is a blatant misstatement of the facts and what is in dispute.  Contrary to Plaintiffs' assertions, the evidence shows that the 4Runner's occupant restraint system did in fact restrain Mrs. Greene until the 4Runner was crushed between two massive 18-wheelers.  More specifically, the side curtain airbags did deploy, likely in the initial impact between the Volvo tractor and the 4Runner, and the restraint system restrained Mrs. Greene in the first and second impacts between the Volvo tractor and the Corolla.  Mrs. Greene's fatal injuries and partial ejection did not occur until subsequent impacts, when the 4Runner was driven underneath the back of the Strick trailer, when the B pillar was torn from the rocker panel.  Plaintiffs' statements to the contrary are false and not supported by the testimony of any experts, including their own.

### B.    Testing Conducted by Friedman Was Not Properly Disclosed.

Throughout Plaintiffs' Response, they repeatedly discuss the testing that Friedman has conducted for this case, including virtual or simulation testing, and finite element modeling. Plaintiffs allege that this testing shows why Friedman's methodology is reliable, and why his opinions are admissible.  The problem for Plaintiffs and for Friedman is that none of this information was properly disclosed with Friedman's expert report. The Toyota Defendants have

already filed a motion with the Court to exclude such testing and other untimely disclosed materials.  Plaintiffs Response to the motion to exclude Friedman describes the additional work that Friedman supposedly conducted, but did not timely disclose.  Now, Plaintiffs attempt to heavily rely on such testing to avoid exclusion of Friedman's opinions.

For example, in his affidavit, Friedman provides a laundry list of tasks that he conducted as part of his methodology.  Yet, much of this information is being disclosed for the first time. For example, the following is listed in both Friedman's affidavit and in Plaintiffs' Response, but was not timely disclosed in Friedman's expert report:

gg.    Review and conduct failure modes and effects analyses.

hh.    Conducted system analyses and virtual testing of various components and accident scenarios involving impacting a model substantially similar to the 4Runner with a model substantially similar to Volvo tractor as well as alternative design approaches and impacting a model substantially similar to a 4Runner into a model substantially similar to a Strick trailer, with and without underride guards, under various conditions and evaluate implications for various alternative design approaches compared to baseline results.

ii. Conduct frame deformation characteristics with alternative frame and tank designs using CAD and virtual testing approaches and/or results.

jj. Evaluate effects of design changes on costs, weight and utility.

Doc. No. 563 at 17.  If Friedman is truly relying on this work and these materials to support his opinions, they should have been disclosed with his report. They were not.  Therefore, such work should be excluded in its entirety and the Court should disregard this information in evaluating the reliability of Friedman's testimony.

In addition, Plaintiffs note that Friedman included an "illustration" in his expert report which they claim indicated "some of the testing that was performed."  This "illustration" in no way comports with the expert disclosure requirements set forth in Federal Rule of Civil Procedure 26.  An expert's report must be "detailed and complete" in order to "avoid the

disclosure of sketchy and vague expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 571 (5th Cir. 1996).  At best, the "illustration" simply shows that Friedman created a partial finite element model of certain portions of the 4Runner.  Yet, the Toyota Defendants were not provided with any of the data that Friedman used to prepare that partial model to determine if it was even accurate, and more importantly, they were not provided the results of the tests that were supposedly conducted and Friedman's opinions regarding same.  Moreover, simply taking a snapshot, or an "illustration" of alleged testing, plugging in into an expert report without disclosing any other information, and then claiming that one complied with the federal rules is completely absurd.  By the same logic, the Toyota Defendants could have simply taken a photograph of the 4Runner at the Exponent crash facility before it was tested, provided nothing more about the crash test, and then claimed the test was properly disclosed.  Because such would not be proper disclosure under the rules, the Toyota Defendants disclosed, with their expert reports, all data, video, and photographs from the crash test, as well as observations from their experts about the test in their reports.  Because Friedman did not conduct any properly disclosed and reliable testing in this case, his opinions must be excluded.

**C.     Plaintiffs Never Disclosed the "Specific Tests" on the Subject 4Runner.**

In their Response, Plaintiffs vaguely state they have had access to the 4Runner for three years, and that they have "performed specific tests on the subject vehicles and used a methodology, effectively, that is used by other experts in the field."  However, Plaintiffs have never disclosed that they have done any specific or non-specific testing on the subject 4Runner.  The Toyota Defendants have no idea what these tests are or what was done.  In addition to raising serious questions about whether the testing involved any alteration of the subject 4Runner in violation of Plaintiffs' obligation to preserve it during this litigation, the failure to disclose the testing prohibits Plaintiffs from using it for any purpose in this case.  The Toyota Defendants

therefore request that any such "specific" tests (and non-specific tests) conducted on the 4Runner be disregarded in determining whether Friedman's testimony must be excluded because the "testing" was never disclosed.

**D.      Plaintiffs Backward Logic is Unreliable and Should be Excluded.**

Throughout Plaintiffs' Response, they try to justify Friedman's failure to identify the cause and origin of the fire that occurred in the accident by once again pointing to vague and conclusory statements about how the 4Runner was defectively designed. However, Plaintiffs unwillingness to provide such information confirms Friedman's inability to offer reliable expert opinions. As discussed in both the Toyota Defendants' Motion and in Plaintiffs' Response, Friedman simply claims, "We know that components failed and we know that the fuel tank is in the crush zone of the vehicle." *See* Doc. No. 433 at 21-22; Doc. No. 563 at 24. This is nothing more than backward logic. The term "crush zone" is meaningless as used by Friedman. The fuel tank is located forward of the rear axle and between the frame rails of the 4Runner. It was not in the "crush zone" of any reasonably foreseeable accident. If the tank was in the "crush zone" as claimed by Friedman, it was as a result of multiple, severe impacts, including a crushing blow between two 18-wheelers. In any event, Plaintiffs fail to identify how, when, or even what specific component failed.

In addition, Plaintiffs attempt to convince the Court that Friedman has shown how his proposed alternative designs would have prevented the injuries and deaths of the Greene Family. However, the language cited by Plaintiffs from Friedman's deposition is again vague and conclusory. Friedman simply opines that if the tank is located in a different area, then it will not be impinged upon. In support of his "alternative design," Friedman drew a picture of a much smaller fuel tank that was simply located within a different area of the 4Runner's frame. No

details or specifications about Friedman's smaller tank, like fuel capacity, means of mounting, or material for the tank was ever disclosed.  Friedman has done nothing to validate this "alternative design" to show that it would have changed the outcome of this accident, been safer in other accident scenarios, or not impaired the overall utility of the 4Runner. This is nothing more than an arbitrary drawing of an unreasonably small fuel tank that was moved away from the rear axle. This is not testing.  This is not evidence of an alternative design that would have prevented the injuries and deaths of the Greene Family members.  Friedman's misguided analysis combined with his vague and conclusory statement reveal that his unreliable opinions are nothing more than speculation.

Finally, when arguing that their alternative design would have prevented the deaths of the Greene Family, Plaintiffs state that "without the breach of the fuel tank and with a properly designed fuel tank check value, the fire would not have occurred, and therefore the Greene Family would not have perished by a fire."  This statement is grossly misleading.  First, it is undisputed that Mrs. Greene and the Greene children's burns occurred post-mortem.   Even Plaintiffs' expert Dr. Joseph Burton, agrees with the medical examiners' findings that Mrs. Greene and the Greene children's suffered their fatal injuries before exposure to the fire.  *See* Excerpts of Deposition Transcript of Dr. Joseph Burton, attached as Exhibit A at 118:4-14 (APP 5); Excerpts of Expert Report of Dr. Joseph L. Burton, attached as Exhibit B at 7 (APP 11) .  It is a completely misleading to state that the "Greene Family" would not have perished in the fire had the Toyota Defendants employed an alternative fuel design.  Moreover, there is no wrongful death claim for the Greene children as this Court has already granted summary judgment on all of their claims. *See* Doc. No. 130 at 5.

Plaintiffs and Friedman have failed to provide competent evidence that was timely disclosed showing Friedman has the requisite bases to opine that there was a design defect in the 4Runner, that such alleged defect was a producing cause of the injuries and deaths at issue, and that any supposed safer alternative design would have prevented the injuries and deaths.  As a result, Friedman's opinions must be excluded.

### III.
### CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. respectfully request that this Court preclude Plaintiffs and Keith Friedman from relying upon, alluding to, testifying about, or otherwise offering into evidence the Testimony of Keith Friedman, at trial, at any hearing and for any other purpose, and for such other and further relief to which they may show themselves to be entitled.

Respectfully submitted,

*/s/ Kurt C. Kern*
**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas  75201
(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR DEFENDANTS**
**TOYOTA MOTOR CORPORATION,**
**TOYOTA MOTOR ENGINEERING &**
**MANUFACTURING NORTH AMERICA,**
**INC., AND TOYOTA MOTOR SALES,**
**U.S.A., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 21st day of April, 2014.

*/s/ Jude T. Hickland*