**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **OLLIE GREENE**, *et al.*, | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| | § | |
| **TOYOTA MOTOR CORPORATION,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**TOYOTA DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR**
**MOTION TO EXCLUDE THE TESTIMONY OF**
**PLAINTIFFS' EXPERT JEFF G. VICK**

TO THE HONORABLE COURT:

Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively "the Toyota Defendants") file this Reply Brief in Support of their Motion to Exclude the Testimony of Plaintiffs' Expert Jeff G. Vick as follows:

**I.**
**SUMMARY OF REPLY**

Plaintiffs designated Jeff G. Vick ("Vick") to offer opinions regarding his reconstruction of the accident in question.  Vick's testimony should be excluded at trial because the methodology he employed is unreliable and not accepted in the technical community, his opinions are not supported by timely disclosed, relevant and reliable data (including his late produced accident reconstruction calculations), and the conclusions he offers have not been verified through testing or otherwise.

## II.
## REPLY

**A.     Vick's Testimony Should be Excluded Because His Methodology is Unreliable.**

      1.    <u>Vick's *ipse dixit* selection of a deceleration rate for the Volvo tractor makes his reconstruction opinions unreliable.</u>

Vick's *ipse dixit* selection of a deceleration rate for the Volvo tractor makes his reconstruction opinions unreliable.  The deceleration rate for the Volvo tractor is an essential variable in determining the speed of the Volvo tractor and is inextricably intertwined with the analysis of the entire accident sequence.  Utilization of an inaccurate, unreliable deceleration rate even in an otherwise reliable formula, produces an unreliable result and renders his entire reconstruction inadmissible.

The deceleration rate is important because it is used to determine the initial speed of the Volvo tractor.  If one can reliably calculate the speed of a striking vehicle (i.e. the Volvo tractor) at the time of impact, they can then use the deceleration rate and time spent decelerating the vehicle to work "backwards" and calculate the initial speed of that vehicle.

During Vick's deposition, he testified that he selected a .1 G deceleration rate for the Volvo tractor between its initial point of braking, and the point of the initial impact with the rear of the 4Runner.  *See* Exhibit B at 181:8-11 (APP 54).  Vick was then asked what literature he relied upon to support his selected deceleration rate for the Volvo tractor:

      Q:  What sort of literature do you have to support using the .1 G number for the purposes of your calculation?

      A:  Well, it's going to be above rolling resistance. And you know, just based on training and experience, it's going to be above rolling resistance, but it's going to be lower than what this truck can attain, which is a little bit higher than a .1, but not a whole lot higher.

Exhibit B at 181:20—182:3 (APP 54-55).  Vick's testimony reveals that he arbitrarily selected the .1 G deceleration rate for the Volvo tractor based on his alleged "training and experience" as to what the rolling resistance of the Volvo tractor is, without referencing or relying on any documented authority, published technical literature or other scientific source for deceleration rates, and without having ever operated or tested a Volvo tractor.  Vick's selection of a deceleration rate for the Volvo tractor is simply based upon his *ipse dixit*.  The deceleration rate he employed for the Volvo tractor is basically pulled from thin air (is factually inaccurate) and is therefore unreliable as are his opinions regarding accident reconstruction.

In their response, Plaintiffs mischaracterize the Toyota Defendants' contentions. Plaintiffs claim that the Toyota Defendants do not "allege that Vick's model fails to adequately determine speed with the specifications he selected."  Doc. No. 552.  On the contrary, the Toyota Defendants contend that Vick has not reliably determined speed precisely because the variables he selected (e.g. deceleration rate for the Volvo tractor) are inaccurate and unreliable. As his speed opinions are unreliable, his ultimate reconstruction testimony is also unreliable and is of no assistance to the jury.

2.   Vick's utilization of an inaccurate deformation rate for the 2010 Toyota 4Runner also makes his reconstruction opinions unreliable.

Vick's utilization of an inaccurate deformation rate for the 2010 Toyota 4Runner also makes his reconstruction opinions unreliable.  The StifCalc factor selected by Vick is inaccurate and unreliable.   As Vick has utilized an inaccurate deformation rate factor, his opinions regarding the velocity and energy involved in the Volvo tractor's impacts with the 4Runner is unreliable.  Because Vick has not reliably determined the velocities and energy involved in the impacts, his reconstruction is unreliable.

Plaintiffs contend that Vick's use of a StifCalc deformation rate for "similar types of vehicles" is a reliable methodology.  But the simple, undeniable truth is that these "similar" vehicles are not, in fact, similar and as such, Vick's methodology, even under Plaintiffs' analysis, fails.  The most correct vehicle in the group of "similar types of vehicles" is a model year 2003 and most of the vehicles were manufactured before 1985.  Even more telling is that the relevant characteristics of these "similar" vehicles are decidedly dissimilar.  The crush factors vary from 9.7 to 33.8.  Exhibit C (APP 58).  In short, the deformation factor itself is inaccurate, making Vick's reconstruction unreliable.

Moreover, Vick could have utilized the crash test the Toyota Defendants produced in this case to determine the actual deformation rate of the 4Runner.  Because the other variables in those tests (speed of impact, mass vehicle is struck with, etc.) are known and the deformation is recorded, a qualified engineer can calculate the actual deformation rate for the 2010 4Runner.  Vick, however, did not utilize this available and reliable information as part of his methodology.

3.     Vick has not reliably analyzed the multiple impacts to the 4Runner.

Vick has not reliably analyzed the impacts to the 4Runner.  Plaintiffs claim that deformation analysis can only reliably determine the direction, extent and totality of the collisions.  Doc. No. 552 at 16.  However, even assuming that is true, Vick has failed to do so in this case.  Specifically, he has not determined what, if any, portion of the damage to the 4Runner is attributable to lateral (side) impacts with the Strick trailer and Volvo tractor, or what portion is attributable to longitudinal (front and rear) impacts with the Volvo tractor and Corolla, all of which is critical to rendering an opinion as to the manner in which this accident occurred.

Vick collected some data related to deformation of the side of the 4Runner but he has not analyzed or relied upon it. He did not analyze what portion of the deformation to the 4Runner is lateral versus longitudinal.

> Q:    And just to confirm – because I think you said you may have some raw data back at the shop because you took some points with your total station along this passenger side, but as you're sitting here today, you can't tell me how much lateral deformation there is to the 4Runner. Is that correct?
>
> A:    If you're talking about the body displacement, I know that it's leftward. It's not to the right; it's to the left. And the exact amount, no, I don't have that.

*Id.* at 54:10—55:2 (APP 51-52). Again, even under Plaintiffs view of the allegedly reliable "scope of deformation" analysis, Vick failed to make proper use of the objective data available to him by failing to properly determine the direction, extent and totality of the collisions.

Similarly, Vick relies simply on his *ipse dixit* regarding the trajectory or path of the involved vehicles, including a claim that a gap developed between the 4Runner and Volvo tractor after the initial impact between the front of the Volvo tractor and the rear of the 4Runner, and before the 4Runner struck the rear of the Corolla.

> Q:    And what was the reason for you concluding now that there was a gap between the Freightliner – excuse me – the Volvo and the 4Runner?
>
> MR. PITTMAN:    Objection, form.
>
> A:    Well, it's what I would expect to see. I just hadn't taken it to that level of precision.

*Id.* at 150:17-22 (APP 53).

Plaintiffs have provided no substantive response to the Toyota Defendants' contention that Vick's opinion that a gap developed between the first and second impacts is unreliable.

Instead, Plaintiffs erroneously state that the Toyota Defendants' accident reconstructionist agrees with Vick's *ipse dixit* theory that a gap developed between the Volvo tractor and 4Runner after the first and before the second impact.  Doc. No. 552 at 13-14.  The testimony Plaintiffs cite, however, is clearly referring to the third impact involving the Strick trailer, not the second impact involving the Toyota Corolla.  *Id.*

### B.    Vick's Opinion Testimony is Unreliable Because it is not Supported by Timely Disclosed, Reliable Data.

Vick's accident reconstruction is not based on any timely disclosed, reliable data. During Vick's deposition, he testified that he prepared various hand calculations before issuing his report and that those calculations form the basis for his reconstruction.  *See* Exhibit B at 29:14-19 (APP 44).  The Toyota Defendants have a pending motion to exclude those calculations and the other data considered by Vick because it was not timely disclosed by Plaintiffs.  Doc. No. 377, 378. As more fully discussed in that motion, Vick's calculations and data were untimely disclosed without justification and therefore Plaintiffs should not be allowed to utilize them for any purpose, including their response to this motion.   Accordingly, if the Court grants the Toyota Defendants' pending motion, then Vick's opinions are wholly unsupported by any relevant or reliable data and any calculations whatsoever, and he should be excluded as an expert witness.

In their response, Plaintiffs raise a number of meritless contentions.  As an initial matter, Plaintiffs response addresses only Vick's hand calculations, but fails to mention that other untimely disclosed materials Vick considered and relied upon should be excluded.  Plaintiffs correctly state that the input data is important to expert analysis.  The input data Vick used for his calculations was not disclosed until his hand calculations were provided.  Plaintiffs seek to place a burden on the Toyota Defendants to guess what formulas and/or equations Vick used, without any basis in law or fact.  Even if such a burden existed, Plaintiffs admit that the input

data for the formulas and/or equations that Vick used is important to one analyzing Vick's opinions. That data was not disclosed until the hand calculations were produced. Finally, Plaintiffs misrepresent that the Toyota Defendants are somehow questioning the use of hand calculations as a general practice. Doc. No. 552 at 15. The Toyota Defendants concern with Vick's calculations is not that they were done by hand, but that they were not timely disclosed.

### C. Plaintiffs Concede that Vick's Opinions Have Not Been Tested or Verified.

Finally, Plaintiffs concede that Vick's opinions have not been tested or verified. They contend that the opinions don't need to be tested or verified to be reliable. Doc. No. 552 at 16. Whether an expert's theory or conclusion can be and has been tested or verified has been described as the "most significant *Daubert* factor," and numerous cases have held that the failure to subject an expert's proffered opinion to scientific testing or verification justifies exclusion. *See, e.g., Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996); *Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 92 (2d Cir. 2000); *Garcia v. BRK Brands, Inc.*, 266 F. Supp. 2d 566, 574 (S.D. Tex. 2003). As the Seventh Circuit noted, even a "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method." *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999); *see also Rosado v. C.J. Deters*, 5 F.3d 119, 124 (5th Cir. 1993) (holding an accident reconstruction expert was properly excluded where "he could not independently establish the necessary physical and mathematical bases for his opinion"); *Garcia*, 266 F. Supp. 2d at 577 (holding experts were properly excluded where they "have not convincingly demonstrated, nor even sought to demonstrate, that their conclusions [were not] untested hypotheses"). Therefore, Vick's failure to test or verify his opinions renders them unreliable and his testimony should be excluded.

**III.**
**CONCLUSION**

Even if qualified, an expert is subject to the rigors of a *Daubert* reliability analysis.  And in this case it is clear that Vick's analysis, even if he followed an appropriate overarching methodology, is unreliable because he failed to properly determine deceleration factors, deformation rates, and the directionality of vehicle deformation.  Moreover, Vick failed to timely disclose the underlying data which allegedly supports the proffered opinions.  These failures should not be left merely to a rigorous cross examination, but rather go to the heart of the unreliability of Vick's opinions, which should therefore be excluded.

WHEREFORE, PREMISES CONSIDERED, Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. respectfully request that this Court preclude Plaintiffs and Jeff G. Vick from relying upon, alluding to, testifying about, or otherwise offering into evidence the Testimony of Jeff G. Vick, at trial, at any hearing and for any other purpose, and for such other and further relief to which they may show themselves to be entitled.

Respectfully submitted,

*/s/ Kurt C. Kern*
**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas  75201
(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR DEFENDANTS
TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA,
INC., AND TOYOTA MOTOR SALES,
U.S.A., INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 21st day of April, 2014.

*/s/ Jude T. Hickland*