IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, <br><br>    Plaintiffs, <br><br>v. <br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC. <br><br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § § § | CAUSE NUMBER: 3:11-cv-0207-N |

**PLAINTIFFS' REPLY TO VGNA'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF STEPHEN WERNER**

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax

**ATTORNEYS FOR PLAINTIFFS**

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

I. SUMMARY OF REPLY ............................................................................................ 1

II. ARGUMENT AND AUTHORITIES ........................................................................ 2

    A. VGNA Has Not Met its Burden of Proof on Werner's Testimony ............................ 2

    B. VGNA Cannot Establish That Werner Has Reliable Testimony With Which to Refute Plaintiffs' Expert's Testimony on The Relevant Issues. ................................. 3

        1. VGNA has not shown that Werner is qualified or that he has any reliable previously expressed opinions on Plaintiffs' claim that the Volvo Heavy Truck lacked an energy-absorbing front end. ............................................... 4

            a. Plaintiffs' expert clearly articulated opinions in his written report. ... 4

            b. Werner knew or should have known that he needed to investigate the relevant alternative designs before attempting to provide an expert opinion. ............................................................. 6

            c. Werner did not investigate or test the alternative designs before offering his conclusory opinions. ...................................................... 8

        2. VGNA cannot salvage that Werner did no actual or virtual testing in arriving at his conclusions. ...................................................................... 9

    C. VGNA Has Not Established Why Werner Should Not Be Prohibited From Providing Legal Interpretations and/or Ultimate Conclusions. .............................. 10

    D. VGNA Did Not Respond to Plaintiffs' Request That Werner Be Precluded From Referring to Kenneth Tandy's Expert Report. ............................................... 13

    E. VGNA Did Not Respond to Plaintiffs' Request That Werner Be Precluded From Discussing or Giving Opinions That Are Not Contained in the December 20, 2013, Werner Written Report. ........................................................ 13

    F. VGNA Did Not Respond to Plaintiffs' Request That Werner Be Precluded From Discussing or Giving Opinions on a "Crash Test" That Was Allegedly Conducted by Exponent. ........................................................................................ 13

    G. VGNA Cannot Refute That Werner's Testimony Shouldn't be Excluded Under FED.R.EVID. 403. ........................................................................................ 14

III. CONCLUSION ........................................................................................................ 14

CERTIFICATE OF SERVICE ............................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Bammerlin v. Navistar International Transportation Corp.*, 30 F.3d 898 (7th Cir.1994) ........... 12

*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227 (10th Cir.2004) ................................................................. 3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ........................................... 2, 3

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ..................................................................................... 2

*Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987 (10th Cir.2003) .................................. 2

*Greenwell v. Boatwright*, 184 F.3d 492 (6th Cir.1999) ..................................................................... 9

*Guidroz-Brault v. Mo. Pac. R.R. Co.,* 254 F.3d 825 (9th Cir. 2001) ................................................ 9

*Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193 (10th Cir.2002) ................................................. 3

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir.1994) ........................................................... 3

*Kumho Tire Co., Ltd., et. al. v. Carmichael, et. al.*, 526 U.S. 137 (1999) ....................................... 2

*Roundy's Inc. v. NLRB*, 674 F.3d 638 (7th Cir.2012) ..................................................................... 11

*United States v. Posado*, 57 F.3d 428 (5th Cir.1995) ....................................................................... 9

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987) ................................................................ 8

**Statutes**

TEX.CIV.PRAC.§ 82.008 ...................................................................................................................... 12

**Rules**

FED.R.EVID. 403 .............................................................................................................................. 11, 13

FED.R.EVID. 702 .................................................................................................................................... 2

FED.R.EVID 704(a) ............................................................................................................................. 11

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION TO STRIKE AND/OR EXCLUDE DEFENDANT'S DESIGNATED EXPERT**

Ollie Greene, Individually and as parent of Wyndell Greene, Sr., William Greene, as Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and the parent of LaKeysha Greene (collectively "Plaintiffs") file this Reply to Plaintiffs' motion to strike and/or exclude the testimony of Volvo Group North America LLC's ("VGNA") designated expert Stephen Werner ("Werner"), and in support thereof shows the Court as follows:

## I.   SUMMARY OF REPLY

In its response, VGNA follows the lead of its defendant-brethren Toyota in practicing the ancient Art of Deflection. Instead of attempting to meet its burden of showing the potential reliability of Werner's testimony, VGNA takes potshots at Plaintiffs' expert – referring to Plaintiffs' expert and his report and opinions as "sketchy," "generic" and "conclusory," "jack of all trades," and "deficient." Apparently, VGNA knew it had no option other than to try and divert attention away from Werner's testimony since, unlike Plaintiffs' experts, Werner admits that he did not investigate the features or capabilities of the front underride protection offered by Volvo in Europe. Also, unlike Plaintiffs' experts, Werner admits that he has never been involved with testing of energy absorbing front ends for trucks. Werner also concedes that in arriving at his braking opinion, "all he did was look at some high school mathematical book or some Northwestern book and he just came up with the conclusion that the disc brakes wouldn't have made a difference."

Setting aside VGNA's transparent efforts to refract the Court's attention away from Werner's report by venomous but groundless attacks on Plaintiffs' expert, the picture is clear that

1

Werner offers nothing but conclusory opinions based on nothing he studied, researched, learned, observed, or tested. Accordingly, his testimony is irrelevant and unreliable.

## II. ARGUMENT AND AUTHORITIES

### A. VGNA Has Not Met its Burden of Proof on Werner's Testimony.

FED.R.EVID. 702 of the Federal Rules of Evidence specifically addresses testimony from expert witnesses. "Where such testimony's factual basis, data principles methods or their application are called sufficiently into question, the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of the [relevant] discipline.'" *Kumho Tire Co., Ltd., et. al. v. Carmichael, et. al.*, 526 U.S. 137, 149 (1999) quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993). In other words, the Court plays the role of the gatekeeper as to (1) the existence of sufficient facts and/or data to allow an expert to reach a conclusion and; (2) the reliability of the principles and methods used to arrive at those opinions. *Id*. To be reliable, an expert's proffered testimony must have "a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592. In making that determination, the district court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592–93, 113 S.Ct. 2786. While "absolute certainty is not required," an expert's opinion "must be based on scientific knowledge, which implies a grounding in the methods and procedures of science based on actual knowledge, not mere subjective belief or unsupported speculation." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987, 991 (10th Cir.2003) (quotations omitted). "Generally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Id*. at 992. "However, an expert's conclusions are not immune from scrutiny: 'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.' " *Id*. (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "[N]othing in either

Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146, 118 S.Ct. 512. The proponent of the testimony must establish, by a preponderance of the evidence, that the expert's testimony is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir.1994). Here, VGNA cannot establish that Werner's testimony passes the reliability principle.

An expert's testimony must also be relevant—it must assist the fact-finder in understanding the evidence or determining a fact in issue. *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401. The Supreme Court has described the consideration of whether an expert's testimony is relevant as one of "fit." *Daubert*, 509 U.S. at 591. The reasoning or methodology underlying the expert's opinion must be able to be properly applied to the facts in issue. *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1204 (10th Cir.2002). "A trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir.2004). "Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant 'fit.'" *Id*. VGNA has not and cannot demonstrate that Werner's testimony has relevant fit.

B.  **VGNA Cannot Establish That Werner Has Reliable Testimony With Which to Refute Plaintiffs' Expert's Testimony on The Relevant Issues.**

Although VGNA may have a difference of opinion as to the accuracy of the information, VGNA concedes that it was aware that Plaintiffs are asserting theories based on front end "energy

3

absorption capabilities" and "crash compatibility" principles. Resp. at 1. Yet, Werner did not do what was necessary to enable himself to express an admissible opinion on these theories.

> **1.   VGNA has not shown that Werner is qualified or that he has any reliable previously expressed opinions on Plaintiffs' claim that the Volvo Heavy Truck lacked an energy-absorbing front end**.
>
>> **a.   Plaintiffs' expert clearly articulated opinions in his written report**.

In its Response, VGNA makes the bizarre statement that "there is no 'energy-absorption' section" in Plaintiffs' expert report. Resp. at 4. This is clearly meant to leave the misimpression that Plaintiffs' expert report is incomplete as to this opinion. And perhaps this is meant to try and justify why Werner did no work in this area. However, VGNA's statement is completely false. Excerpts from pages 18-19 of Plaintiffs' expert report is reproduced below:

> 10. The front end of the Volvo tractor did not utilize a either a rigid or energy absorbing Front Underrun Protection System (FUPS).
>
> 11. The front end design was not designed to be energy absorbing and had no energy absorbing parts.[12]
>
>> "Q. Are there any materials or components on the Volvo VN model forward of the firewall that are designed to be crash absorbent? A. Not that I'm aware of, no. Q. Are any of the materials or components on the Volvo truck forward of the firewall capable of absorbing energy and attenuating the energy that's impacted on a struck vehicle? …A. No."
>
>> "Q. Can you tell me whether there's anything in Exhibit 103 that was designed to be energy absorbing in the event of a collision between the truck that's in Exhibit 103 and a dissimilar vehicle? A. No. Q. No, there is nothing?  A. Not that I'm aware of, no."
>
> 12. Volvo failed to test its front end design with the rear ends of vehicles on the road under impact conditions to ensure compatibility of its front end with the rear ends of other vehicles.
>
> 13. No crash testing was done to ensure crash compatibility with passenger vehicles3

---

[1] Deposition of Andrew Adams, Jr. May 3, 2013, Pg 40, Lines 15-25
[2] Deposition of Andrew Adams, Jr., Pg 48, Lines 15-21

4

> "Q. What type of crash testing was done on the Volvo VN models? A. It was – there were barrier tests, there were Swedish impact tests, seat belt pull test, bunk restraint pull test."

See, Pltfs' APP[3] 102-103.  In addition, in other opinions that are expressed in the Friedman written report, Plaintiffs' expert states:

> In Europe, the European Union has addressed underride protection more aggressively. In Europe many trailers have a lower ride height and hence have a more natural protection against underride. Moreover, frontal underride protection has been addressed with requirements to prevent underride with the introduction of ECER 93 in 1994. Rigid front underride protection was estimated to reduce fatalities by about 900 a year and injuries by about 19,000. Further, the EU has demonstrated that rigid front underride guard is preferable to no prevention system. It was reported that energy absorbing designs have the ability to significantly reduce fatalities;
>
> In 2004, truck manufacturers operating in Europe reported that some manufacturers have incorporated energy absorbing Front Underride Protection (eaFUP) devices that increases the survivable collision speed by an additional 60 kph (38 mph) relative to the fixed underride protection systems; and
>
> These manufacturers found that systems that avoid crashes were the most important to implement, systems that minimize the consequences once there was a crash was second most important, and that the combination of the two would have the greatest impact on reducing fatalities.
>
> Volvo could have incorporated a crash compatibility design such as the Front Underride Protection System (FUPS) which was available and that had been required in Europe for years. Either a rigid or energy absorbing system could have been utilized.
>
> The front end of the Volvo tractor could have been equipped with an energy absorbing front end to provide compatibility with other vehicles and absorb a significant portion of the crash energy. Opportunities to apply static or deployable systems were possible.
>
> Volvo personnel in the US were aware that the FUPD was associated with reducing injuries in a vehicle struck by the heavy truck.[4]
>
> Volvo personnel in the US had determined that the FUPD would work on vehicles in the US, but did not make any effort to pursue the implementation of that system or any other system to protect occupants of the other vehicle in an impact
>
> Volvo did not utilize the available technology to mitigate impacts between its front end and the rear of other vehicles. (**Volvo website talks about the "Front**

---

[3] *"*Pltfs' APP" refers to the original Appendix that was filed by Plaintiffs on March 17, 2014, in support of the motion to exclude Werner's testimony - Dkt. Entry No. 490.

[4] Deposition of Andrew Adams, Jr., Pg 31, Line 20 – Pg 32, Line 3

**Underrun Protection System" (FUPS) which they first developed and which is now required in Europe**.

See, Pltfs' APP 108-113.  In other words, Plaintiffs' expert makes clear that VGNA could have been using, as a safer alternative design, the identical FUPS technology that Volvo was using on its trucks in Europe.  In fact, Friedman includes a drawing of a FUPS device that could have been used.  See, Pltfs' APP 116.  In addition to the FUPS, Friedman concluded that the front end of the Volvo tractor could have been equipped with an airbag collision mitigation system or other energy absorbing designs that would reduce the crush stroke on the struck vehicle by absorbing a significant portion of the crash energy. Opportunities to apply static or deployable systems were available, possible and economically feasible.   Volvo simply failed to incorporate technology to increase the effective crush length and reduce the height of its front end to ensure better compatibility with the rear end designs of existing vehicles on the road.  See, Pltfs' APP 381. Friedman also pointed out that lowering the height of the impact lines would have helped.  See, Pltfs' APP 112.  Therefore, Friedman's opinions are well-documented.

        **b.**      **Werner knew or should have known that he needed to investigate the relevant alternative designs before attempting to provide an expert opinion**.

To begin with, the VGNA corporate representative's testimony makes clear that the VGNA Heavy Truck that crashed into the Greene's 4Runner did not include "energy-absorbing" components to assist in protecting potential crash victims.  The record is also clear that Volvo uses energy-absorbing front ends on its Heavy Truck sold in Europe. When asked specifically about the design of the subject tractor, VGNA's designated representative conceded that "none of the materials or components on the Volvo truck forward of the firewall is capable of absorbing energy and attenuating the energy that's impacted on a struck vehicle." Adams Depo at 40:15-25 ((Pltfs' APP 471) and that there were no components or parts on the subject VGNA Heavy Truck that absorbed

6

any energy in the May 28, 2010, impact with the 4Runner.  Adams Depo at 48:5 – 49:7 (Pltfs' APP 472-73).  Despite that VGNA chose not to design its U.S. trucks with the available energy-absorbing protection it uses in Europe, the record is clear that the European Union addresses underride protection aggressively.  In Europe frontal underride protection has been addressed with requirements to prevent underride with the introduction of ECER 93 in 1994.  Energy absorbing designs have the ability to reduce fatalities compared to the significant benefits associated with the rigid front underride protection systems (FUPs).  Pltfs' APP 383.  In 2004, most truck manufacturers operating in Europe joined to make recommendations on improving heavy truck safety performance.  They reported that manufacturers have incorporated energy absorbing Front Underride Protection (eaFUP) devices that increases the survivable collision speed by an additional 60 kph (38 mph) relative to the fixed underride protection systems.  They found that systems that avoid crashes were the most important to implement, systems that minimize the consequences once there was a crash was second most important, and that the combination of the two would have the greatest impact on reducing fatalities.  Pltfs' APP 383.

In 2009, NHTSA reported that one out of nine traffic fatalities in 2008 was a result of a collision with a large truck. Texas had the largest number of such involvements – the scene of this accident.  In 2010, it was demonstrated that energy absorbing FUPDs could handle impacts with a passenger car at least up to 75 kph <u>with the energy absorbing aspects of the FUPD</u>. They also found that in impacts up to 56 kph the passenger vehicle was designed to handle a rigid version of the FUPD, but much lower deformation were observed when the same vehicle impacted the Energy absorbing FUPD (eaFUPD) at 75 kph, demonstrating that higher speeds still could likely be handled by such a system. They found that the eaFUPD can be an effective collision partner in such collisions.  Pltfs' APP 504-593.  VGNA has known of this safer alternative since 1996, and since 2003 for the flexible energy-absorbing arrangement.  Adams Depo at 69:24 – 70:22 (Pltfs' APP 477-78).  Thus, it is undisputed that there existed a safer front end design that VGNA should have used.

7

TEX. CIV. PRAC. & REM CODE § 82.005(a) explains: "[S]afer alternative design" means a product design other than the one actually used that in reasonable probability: (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.. Thus, it is clear that Friedman's opinion is that the existing energy absorbing FUPS that Volvo uses on the Heavy Trucks sold in Europe would have made a difference in this crash.

### c. Werner did not investigate or test the alternative designs before offering his conclusory opinions.

Although the record was clear that Friedman's alternative design recommendations include identifying the readily available alternative designs that VGNA could and should have incorporated into the Volvo truck, Werner did nothing to be in a position to render an "expert" opinion that is not conclusory. At the time of his deposition, he testified that he has never done any work on front end protection for trucks. Werner Depo at 68:15-24 (Pltfs' APP 019). He concedes that he has never been involved with testing of energy absorbing front ends for trucks. Werner Depo at 72:6-12 (Pltfs' APP 023). He even acknowledges that he did not request information from Volvo to even be able to understand the FUPS system that Plaintiffs' expert is suggesting as an alternative design. Werner Depo at 70:16 – 71:10 (Pltfs' APP 021-022). Therefore, Werner clearly does not have the foundational expertise to serve as an expert. Thus, since Werner's testimony is not based on expertise or methodology as truck designer, the testimony should be excluded as conclusory and inadmissible. *See Viterbo v. Dow Chem. Co*., 826 F.2d 420, 421-22 (5th Cir. 1987) ("it is not so simply because 'an expert says it is so ...; if an expert brings to the court 'little more than his credentials and a subjective opinion,' his opinion amounts to no evidence").

8

Although Rule 702 does not require absolute certainty, it does mandate that the proffered knowledge be based on "good grounds" and that the testimony is "more than speculative belief or unsupported speculation." *United States v. Posado*, 57 F.3d 428, 433 (5th Cir.1995)(citing *Daubert*, 509 U.S. at 589-90). Finally, an expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts. *See Guidroz-Brault v. Mo. Pac. R.R. Co.,* 254 F.3d 825, 829-31 (9th Cir. 2001); *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir.1999) ("Expert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence."). Based on the facts developed by Plaintiffs' experts and Volvo's own documents, the Court should preclude the opinions that Werner seeks to provide. Moreover, because Werner ignores substantial undisputed facts that the Volvo FUPS actually work in Europe and refused to properly investigate frontal underride protection devices and principles he should be precluded from providing any opinions. Thus, he should be struck as an expert.

> **2. VGNA cannot salvage that Werner did no actual or virtual testing in arriving at his conclusions**.

Werner does not deny that he did absolutely no testing, actual or virtual, to determine whether the energy absorbing front underride protection would have made a difference in this accident. Instead, VGNA contends that Werner did not have to do anything more than "observe" the vehicle damage to be able to give an expert opinion:

> The recognition of override/underride by someone with appropriate knowledge, training and experience, such as Dr. Werner, **does not require anything more sophisticated than observation** of the vehicle damage and then application of the straightforward definition established by NHTSA to the physical damage observed.

Resp. at 12. Werner also does deny that he did absolutely not testing, actual or virtual, to determine whether the alternative energy-absorbing front-end proposed by Friedman would have worked and concludes:

9

> Dr. Werner has used **elementary principles of physics and math** – including kinetic energy and the law of energy conservation – to explain how even a theoretical energy absorption design from motor vehicle literature of the highest capability would not have been able to absorb sufficient energy to reduce the deformation….

Resp. at 14. Thus, basically Werner asks the Court to accept him as expert when he relies only on his "observation" of the vehicles and "elementary principles of physics and math." It is not surprising then that Werner was unable to identify the actual source for the methodology he claims to have applied in this case. Werner Depo at 49:2-9 (Pltfs' APP 017). Surely, this cannot establish VGNA's burden to demonstrate that Werner is qualified and that he used a complete, reliable or acceptable methodology that other experts would use. Failing such a showing, Werner's testimony is simply subjective, conclusory, prepared strictly for this litigation and tailored solely to benefit VGNA in this litigation.

### C. VGNA Has Not Established Why Werner Should Not Be Prohibited From Providing Legal Interpretations and/or Ultimate Conclusions.

Once again, using the art of deflection, VGNA attempts to distract the Court's attention from the issue at hand by objecting to Plaintiffs' use of legal authorities from the Seventh Circuit for certain legal propositions. Notably, VGNA has not cited to any case from the Fifth Circuit that stands in contradiction to the few Seventh Circuit cases Plaintiffs' cited in the motion. And it is VGNA that has the burden of demonstrating (1) that Werner's findings and conclusions are "based on the scientific method, and, therefore, are reliable;" and (2) that Werner's "reasoning or methodology can be properly applied to the facts in issue." *Curtis v. M & S Petroleum, Inc*. 174 F.3d 661, 668 (5th Cir.1999) (citing *Daubert*, 509 U.S. at 592–93). Thus, it is VGNA's burden to cite Fifth Circuit authorities allowing such testimony from Werner, which it has not done. In addition, the cases cited by Plaintiffs are relevant to the same rules of evidence (e.g. 702-704) that are applicable in the discussion in Plaintiffs' Motion to Exclude, and are on point. Nevertheless, in

the motion to exclude Plaintiffs requested that the Court prohibit Werner from offering as expert testimony the following subjective and arbitrary statements, among others:[5]

1. As equipped, the subject Volvo tractor exceeded its stopping distance requirements as specified in the relevant federal regulations.

2. Drum brakes are the most common style on tractor-trailer combination units and they are not defective brakes.

3. There is no requirement in the United States for any special attachment below the frame rails at the front of a tractor such as the subject Volvo tractor to alter the manner in which it interacts with other vehicles in a collision. There is furthermore no requirement in the United States for any type of energy-absorbing device on the front of tractors (or any vehicle for that matter) to preferentially absorb deformation energy in a collision.

4. I have identified no conditions of the subject tractor that rendered it unreasonably dangerous as designed, taking into consideration the utility of the vehicle and the risk involved in its use. Plaintiffs have not identified, nor am I am aware of, any alternative designs with respect to collision compatibility and energy absorption that would, in reasonable probability, have prevented or significantly reduced the injuries to the Greenes without substantially impairing the tractor's utility and that was economically and technologically feasible at the time it left control of VGNA by the application of existing or reasonably achievable scientific knowledge.

5. The use of drum brakes on a tractor is not a defect in the design of the tractor.

6. Regardless, had the subject Volvo tractor been equipped with disk brakes, there would not have been a meaningful change in the severity of the subject crash. As equipped, the subject tractor exceeded its stopping distance requirements as specified in the relevant federal regulations.

As argued in Plaintiffs' motion to exclude, many of these opinions are inadmissible under Rule 702, especially considering that they are conclusions to questions the jury will decide at trial, e.g. whether the Volvo tractor was unreasonably dangerous, whether it complied with safety regulations, and whether it was technologically feasible to install a better and energy-absorbing front end and/or disc brakes. VGNA predictably argues that FED.R.EVID 704(a)

---

[5] These paragraphs are numbered here for convenience and do not appear in Werner's Report numbered in this manner.

11

provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." However, "[t]he committee notes to ... Rule [704] explain ... that Rule 702, which requires that opinion be helpful to the trier of fact, and Rule 403, which provides for exclusion of evidence that wastes time, 'afford assurance against the admission of opinions which would merely tell the trier of fact what result to reach.'" *Roundy's Inc. v. NLRB*, 674 F.3d 638, 648 (7th Cir.2012) (quoting FED.R.EVID. 704, 1972 advisory committee notes) (some alterations omitted). That is precisely what Werner's opinions would do if he were allowed to present them at trial, which renders them inadmissible. *See United States v. Noel*, 581 F.3d 490, 497 (7th Cir.2009) ("Regardless of whether [witness] was an expert, he could not merely tell the jury what result to reach.") (internal quotation marks omitted).

It is worth noting that although VGNA objects to Plaintiffs' use of cases from the Seventh Circuit, VGNA refers to *Bammerlin v. Navistar International Transportation Corp.*, 30 F.3d 898 (7th Cir.1994) to argue that the Court should allow Werner to provide expert testimony that VGNA complied with FMVSS 121 or that the Court should instruct the jury that VGNA complied with FMVSS 121. However, VGNA has not cited any case law supporting either of these propositions. TEX.CIV.PRAC.§ 82.008 does not support VGNA's argument. Nevertheless, VGNA has not met its burden of providing support for allowing Werner to give opinions on any of the six items discussed above. And VGNA would have the Court disregard Plaintiffs' authorities concluding that allowing Werner to testify as to compliance with safety standards is improper. In addition, even if this form of testimony were allowable, VGNA has not demonstrated that Werner applied any methodology to ascertain whether the Volvo Heavy Truck complied with any standards. Accordingly, Werner should be precluded from providing any testimony or opinions as to the conclusions to be drawn ultimately by the jury regarding whether

12

the Volvo truck was defectively designed or unreasonably dangerous without a different front end or different brakes, or in compliance with federal regulations, and whether Volvo and VGNA were grossly negligent. And as discussed above, Werner should be precluded from giving legal opinions on whether Volvo complied with legal standards or had duties as a matter of law.

### D. VGNA Did Not Respond to Plaintiffs' Request That Werner Be Precluded From Referring to Kenneth Tandy's Expert Report.

In the Motion to Exclude, Plaintiffs argued that Werner's blind reliance on Kenneth Tandy's (another VGNA expert) litigation-induced expert report requires exclusion of his report. VGNA's Response did not respond to this argument, thus Plaintiffs ask that Werner be stricken on these grounds.

### E. VGNA Did Not Respond to Plaintiffs' Request That Werner Be Precluded From Discussing or Giving Opinions That Are Not Contained in the December 20, 2013, Werner Written Report.

In the Motion to Exclude, Plaintiffs argued that Werner should be precluded from giving any opinions regarding the May 28, 2010, accident other than the opinions expressed in the Werner Report, and then only to the extent these opinions are not limited or excluded by an Order on this motion or during consideration of Plaintiffs' Motion *in limine*. VGNA's Response did not respond to this argument, thus Plaintiffs ask that this request is granted.

### F. VGNA Did Not Respond to Plaintiffs' Request That Werner Be Precluded From Discussing or Giving Opinions on a "Crash Test" That Was Allegedly Conducted by Exponent.

In the Motion to Exclude, Plaintiffs argued that Werner should not be permitted to discuss or give opinions on a "crash test" that was allegedly conducted by Exponent. VGNA's Response did not respond to this argument, thus Plaintiffs ask that this request is granted.

### G.     VGNA Cannot Refute That Werner's Testimony Shouldn't be Excluded Under FED.R.EVID. 403.

In the Motion to Exclude, Plaintiffs argued that Werner's purported expert testimony should be excluded also because its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  FED.R.EVID. 403. VGNA has not addressed why Werner's subjective opinions, reached without conducting any testing or even engaging in sufficient industry research can help the jury.  His subjective and conclusory opinions have no probative value yet will cause substantial prejudice to the jury if allowed.

### III.     CONCLUSION

Permitting Werner to testify without his having applied a proper methodology in his work and without having considered all relevant evidence would cause severe prejudice to Plaintiffs. It is also clear that Werner is ether not qualified or simply chose not to utilize a methodology used by other experts in the field.  Plaintiffs therefore request that the Court strike the Werner Report and accompanying testimony, not consider the same as evidence for any purpose, and grant Plaintiffs such other and further relief, in law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted,

| | |
|---|---|
| /s/ Aubrey "Nick" Pittman | /s/ Daryl K. Washington |
| AUBREY "NICK" PITTMAN | DARYL K. WASHINGTON |
| State Bar No. 16049750 | State Bar No. 24013714 |
| | |
| **THE PITTMAN LAW FIRM, P.C.** | **LAW OFFICES OF DARYL K. WASHINGTON P.C.** |
| 100 Crescent Court, Suite 700 | |
| Dallas, Texas 75201-2112 | 325 N. St. Paul St., Suite 1975 |
| 214-459-3454 | Dallas, Texas 75201 |
| 214-853-5912 – fax | 214-880-4883 |
| pittman@thepittmanlawfirm.com | 469-718-0380 - fax |
| | dwashington@dwashlawfirm.com |

15

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 21, 2014 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

                                                       /s/ Aubrey "Nick" Pittman
                                                       AUBREY "NICK" PITTMAN