IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, <br><br> Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC.<br><br> Defendants. | § § § § § § § § § § § § § § § § § § § § § § § | CAUSE NUMBER: 3:11-cv-0207-N |

**PLAINTIFFS' REPLY TO TOYOTA'S RESPONSE TO PLAINTIFFS'
MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF MICKEY MARINE**

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax

**ATTORNEYS FOR PLAINTIFFS**

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................................ iii

I.      SUMMARY OF REPLY ................................................................................................... 1

II.     ARGUMENT AND AUTHORITIES .............................................................................. 1

        A.     Toyota Has Not Met its Burden of Proof as to Marine. ........................................... 1

        B.     Toyota's Response Has Not Established That Marine Has Reliable Testimony on Relevant Issues. ..................................................................................................... 3

            1.     Marine has questionable conclusions based on an inappropriate and unacceptable methodology. ........................................................................ 3

            2.     Marine's "observation" is not relevant to issues before the jury. .................. 7

        C.     Toyota Has Not Refuted Why Marine's Testimony Shouldn't Be Inadmissible under FED.R.EVID. 403. ......................................................................................... 8

III.    CONCLUSION ................................................................................................................. 8

CERTIFICATE OF SERVICE ..................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Bado–Santana v. Ford Motor Co.*, 364 F.Supp.2d 79 (D.Puerto Rico 2005) ................................... 4

*Bammerlin v. Navistar Int'l Transp. Co.*, 30 F.3d 898 (7th Cir.1994) ............................................. 7

*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227 (10th Cir.2004) ............................................................. 3

*Bourelle v. Crown Equipment Corporation*, 220 F.3d 532 (7th Cir.2000 ........................................ 6

*Chase v. General Motors*, 856 F.2d 17 (4th Cir.1988) ..................................................................... 3

*Clark v. Takata Corp.*, 192 F.3d 750 (7th Cir.1999)). ...................................................................... 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .................................. 1, 2, 6, 8

*E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005) .......................................... 8

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) .................................................................................. 2

*Gladhill v. General Motors Corp.*, 743 F.2d 1049 (4th Cir.1984) ................................................... 3

*Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987 (10th Cir.2003) ................................. 2

*Guild v. General Motors Corp.*, 53 F.Supp.2d 363 (W.D.N.Y.1999) .............................................. 4

*Hafstienn v. BMW of N. Am., LLC*, 194 Fed.Appx. 209 (5th Cir.2006) .......................................... 7

*Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193 (10th Cir.2002) ............................................... 3

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir.1994) ......................................................... 2

*Kumho Tire Co., Ltd., et. al. v. Carmichael, et. al.*, 526 U.S. 137 (1999) .................................... 1, 6

*Miller v. Todd*, 551 N.E.2d 1139 (Ind.1990) ................................................................................... 7

*Montgomery v. Mitsubishi Motors Corp.*, 2006 WL 1967361 (E.D.Pa. June 6, 2006) .................... 4

*N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90 (Tex.App.—Dallas 1995, writ denied) .. 8

*Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 6476371 (N.D.Tex. Nov 20, 2013) ........................... 6

*Pries v. Honda Motor Co.*, 31 F.3d 543 (7th Cir.1994) ................................................................... 7

*Ramseyer v. General Motors Corp.*, 417 F.2d 859 (8th Cir.1969) .................................................. 3

**Rules**

FED.R.EVID. 403 ........................................................................................................................... 1, 8

FED.R.EVID. 702 ............................................................................................................................... 1

Ollie Greene, Individually and as parent of Wyndell Greene, Sr., William Greene, as Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and the parent of LaKeysha Greene (collectively "Plaintiffs") file this Reply to Toyota's Response to Plaintiffs' motion to strike and/or exclude the testimony of Defendants' designated expert, Mickey Marine ("Marine") and in support thereof shows the Court as follows:

## I.    SUMMARY OF REPLY

Toyota has failed to establish that Marine's testimony about the internal crash test is relevant or reliable, especially considering that Marine does not consider himself an expert who can provide an expert "opinion" and the test is too dissimilar to the actual crash to be useful. Toyota also fails to justify how it could hope to submit a crash test that was orchestrated and narrated by Toyota's trial counsel, who refused to allow Plaintiffs' counsel and experts to observe the crash test. In addition, the circumstances and suspicions underlying this alleged test mandate that it be excluded pursuant to FED.R.EVID. 403 because consideration of the testimony will result in confusion of the issues and misleading the jury.

## II.    ARGUMENT AND AUTHORITIES

### A.    Toyota Has Not Met its Burden of Proof as to Marine.

FED.R.EVID. 702 of the Federal Rules of Evidence specifically addresses testimony from expert witnesses. "Where such testimony's factual basis, data principles methods or their application are called sufficiently into question, the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of the [relevant] discipline.'" *Kumho Tire Co., Ltd., et. al. v. Carmichael, et. al.*, 526 U.S. 137, 149 (1999) quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993). In other words, the Court plays the role of the gatekeeper as to (1) the existence of sufficient facts and/or data to allow an expert to reach a

1

conclusion and; (2) the reliability of the principles and methods used to arrive at those opinions. *Id*. To be reliable, an expert's proffered testimony must have "a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592. In making that determination, the district court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592–93, 113 S.Ct. 2786. While "absolute certainty is not required," an expert's opinion "must be based on scientific knowledge, which implies a grounding in the methods and procedures of science based on actual knowledge, not mere subjective belief or unsupported speculation." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987, 991 (10th Cir.2003) (quotations omitted). "Generally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Id*. at 992. "However, an expert's conclusions are not immune from scrutiny: 'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.' " *Id*. (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146, 118 S.Ct. 512. The proponent of the testimony must establish, by a preponderance of the evidence, that the expert's testimony is reliable. *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 744 (3d Cir.1994). Here, Toyota cannot establish that Marine's testimony passes the reliability principle.

An expert's testimony must also be relevant—it must assist the fact-finder in understanding the evidence or determining a fact in issue. *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401. The Supreme Court has described the consideration of

whether an expert's testimony is relevant as one of "fit." *Daubert*, 509 U.S. at 591. The reasoning or methodology underlying the expert's opinion must be able to be properly applied to the facts in issue. *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1204 (10th Cir.2002). "A trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir.2004). "Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant 'fit.'" *Id.* Toyota has not and cannot demonstrate that Marine's testimony has relevant fit.

### B. Toyota's Response Has Not Established That Marine Has Reliable Testimony on Relevant Issues.

The question, then, is whether Marine's single test describes circumstances so dissimilar to those that occurred in the May 28, 2010, accident as to be unreliable and irrelevant to the issues before the jury. The answer is a resounding YES.

#### 1. Marine has questionable conclusions based on an inappropriate and unacceptable methodology.

The case law on the introduction of crash tests requires that the tests be substantially similar. "Admissibility of evidence depends upon a foundational showing of substantial similarity between the tests conducted and actual conditions." *Ramseyer v. General Motors Corp.*, 417 F.2d 859, 864 (8th Cir.1969). In *Chase v. General Motors*, 856 F.2d 17, 20 (4th Cir.1988), the Fourth Circuit noted:

> In products liability cases, expert witnesses necessarily may play a significant part .... When their testimony, however, is based upon the results of tests which were conducted under such different circumstances than those obtaining at the time of the accident complained of so as to make the results 'largely irrelevant, if not misleading,' [citing *Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1051 (4th Cir.1984)], that testimony must be excluded.

3

*See, also Montgomery v. Mitsubishi Motors Corp.*, 2006 WL 1967361, *6 (E.D.Pa. June 6, 2006)(the manner in which the tests were conducted were not substantially similar to the accident that caused the injuries); *Bado–Santana v. Ford Motor Co.*, 364 F.Supp.2d 79, 99–100 (D.Puerto Rico 2005)(same); *Guild v. General Motors Corp.*, 53 F.Supp.2d 363, 367 (W.D.N.Y.1999). Here, it is undisputed that the May 28, 2010, accident involved multiple vehicles, i.e. a Volvo tractor, towing a Great Dane trailer; a 2010 Toyota 4Runner; a 2006 Toyota Corolla; and a 2005 Freightliner tractor, towing a 2004 Strick dry-freight trailer. Likewise, there is no dispute that the accident involved four occupants in the 4Runner. It is also acknowledged that the accident involved multiple collisions, whereby after the Volvo tractor struck the 4Runner, the 4Runner eventually made contact with the Corolla then the Strick trailer. The experts all agree that during the sequence of crash events the 4Runner yawed and had lateral contact with the Strick trailer. All of the vehicles were still moving, except perhaps the Freightliner and Strick trailer, which were allegedly stopped in the middle of an active freeway. Likewise, there is no disagreement that a fire erupted in the 4Runner during the crash sequence as a result of a breach of the 4Runner's fuel system.

As regarding the crash test that Marine now offers, however, it is in no way substantially similar to the May 28, 2010, accident. That is because, among other things, the staged crash test: (1) does not involve exemplars of the other vehicles from the original crash; (2) does recreate all impacts in the accident; (3) uses an impact point between the Volvo tractor and the 4Runner that is different from the impact point in the accident; (4) did not include the braking of the Volvo tractor before impact as the driver described; (5) ignores the evasive actions taken by the Volvo driver during the actual accident; (6) uses different impact speeds than those suggested by Toyota's expert; and (7) uses a stationary Toyota 4Runner. Without using all vehicles to recreate all collisions, there is no way to determine what caused the deaths of the Greene family or to determine how the fire

4

erupted in the 4Runner. In fact, Marine does not profess to offer a fire origin opinion or have any knowledge of the fuel system of the 4Runner. Furthermore, Marine could not have set up a proper substantially similar recreation of the accident since he admits that he is not even aware of the full sequence of events of the May 28, 2010, crash. Marine Depo at 29:13-19 (Pltfs' APP 0134)[1]. In other words, although the video is represented to be a "potential" re-enactment of a single event that occurred during the May 28, 2010, crash it is clearly not substantially similar to the underlying accident.

In addition, there are other issues with Marine's supposed methodology. Toyota did not use high-speed cameras underneath the crash vehicle to detect the motion of the defective fuel system components or the presence of the fuel leak, although Marine acknowledges that NHTSA crash tests are known to use high-speed cameras underneath a crash vehicle to be able to evaluate such results. Marine Depo at 26:15 – 28:6 (Pltfs' APP 0131-33). In addition, as discussed in the Motion to Exclude, Marine has also acknowledged that the narrator, whose voice is heard on the walk-up portion of the crash test videotape, allegedly describing the results of the test is Kurt Kern, who is Toyota's lead trial counsel. Marine Depo at 42:17 – 43:17 (Pltfs' APP 0135-36). This is hardly independent expert testimony. It should also be an unacceptable methodology to have trial counsel dictate the terms of the crash set-up and narrate the alleged results of the crash test. In addition, Plaintiffs were not provided with the opportunity to have representatives, i.e., a videographer, a photographer, an attorney, and an expert, present at this particular test, or during any crash test or any test involving vehicle-to vehicle collisions conducted by defendants that may pertain to this case.

---

[1] "Pltfs' APP" refers to the original Appendix that was filed by Plaintiffs on March 17, 2014, in support of the motion to exclude this witness.

Moreover, it is clear the Marine observed just one test, allegedly, and is attempting to provide an opinion that would leave the jury with the impression that if there was no fuel spillage in the crash test, then there could not have been any fuel spillage in the May 28, 2010, crash. However, it is clear from crash testing done by NHTSA and the Insurance Institute for Highway Safety that proper crash test protocol requires that a series of tests be performed under varying conditions. A single crash test, with no virtual testing to recreate the crash, is not a reliable or acceptable methodology. Otherwise, the opinions are no more than just subjective belief or unsupported speculation.  We know that other valid tests are not limited to a single crash event and usually are recreated in virtual simulation.  However, neither Marine nor Toyota has provided the Court with any literature establishing that the protocol followed by Marine is acceptable crash test protocol when providing the types of opinions that Marine is offering.  Therefore, even if Toyota were able to get past the lack of a substantially similar recreation of the accident (which it cannot) Toyota has not refuted that Marine used an inappropriate and unacceptable methodology to develop a substantially similar recreation of the May 28, 2010, accident. As a result, Marine's "observations" or opinions are unreliable under the standards of *Daubert* and *Kumho*.

In its Response, Toyota cites *Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 6476371 (N.D.Tex. Nov 20, 2013) for the proposition that Marine's "observation" is admissible. However, in *Orthoflex*, the court held the expert must be able acknowledge the differences and show that the methods and principles applied to the facts are nevertheless reliable. 2013 WL 6476371 at *8. Here, however, Marine is not even aware of the details of the May 28, 2010, accident and thus could not have provided facts and principles of these differences.  In fact, he has never been involved in a multiple impact test like this one. Nevertheless, not even *Orthoflex* contemplates that a test would have as many material differences as what exists in this case.  Since Marine has only bottom line

conclusions based on incomplete data and unacceptable testing protocol, his opinions are not admissible. *See Bourelle v. Crown Equipment Corporation*, 220 F.3d 532, 537 (7th Cir.2000) ("Where the proffered expert offers nothing more than a 'bottom line' conclusion, he does not assist the trier of fact.") (citing *Clark v. Takata Corp.*, 192 F.3d 750, 756 (7th Cir.1999)). Stated another way, Marine's opinions have not been tested via the scientific method and are merely the product of subjective belief or unsupported speculation.

### 2. Marine's "observation" is not relevant to issues before the jury.

Even if Marine were able to establish that he is an expert at opining on the design and failure of a fuel tank (which he is not), his testimony is still inadmissible. In *Hafstienn v. BMW of N. Am., LLC*, 194 Fed.Appx. 209, 213 (5th Cir.2006) the Fifth Circuit affirmed the district court's decision to exclude crash test evidence as irrelevant under Rule 401. The district court concluded for several reasons that the test vehicle was not "substantially similar" to the one involved in the crash in question, and that the crash test occurred under dissimilar conditions. *Hafstienn*, 194 Fed.Appx. at 212–13. The Fifth Circuit noted that there were several "material differences between the accident and the crash test." *Id*. at 213. That is no different from here. In addition, the issue here, as relates to the 4Runner's fuel system is whether it was defectively designed and whether the fuel system was breached on May 28, 2010 in a way to lead to a fuel-fed fire. "The question is not whether it is 'possible' for something untoward to occur during an accident but whether 'the design creates unreasonable danger' according to 'general negligence principles.' " *Pries v. Honda Motor Co.*, 31 F.3d 543, 545 (7th Cir.1994) ( citing *Miller v. Todd*, 551 N.E.2d 1139, 1141 (Ind.1990); *Bammerlin v. Navistar Int'l Transp. Co.*, 30 F.3d 898 (7th Cir.1994)). Marine is not a design expert. Nor is he a fire cause and origin expert. Marine's "observation," which is simply a restatement of remarks made by Toyota's trial counsel during his narration of the crash test is simply not relevant and is more prejudicial than probative.

### C. Toyota Has Not Refuted Why Marine's Testimony Shouldn't Be Inadmissible under FED.R.EVID. 403.

Toyota has failed to provide a justification for not excluding Marine's testimony and crash tests since its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. FED.R.EVID. 403; *Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."); s*ee also, E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005); *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex.App.—Dallas 1995, writ denied) ("courts should exclude . . . evidence [when] the expert's opinion would be more likely to prejudice or confuse than to assist the trier of fact."). A review of the Marine Report shows that it contains a subjective and lay observation and is not based on any independent evaluations undertaken by Marine for the purpose of forming an independent expert opinion. There is simply so much missing from the testing protocol, crash parameters, and the video footage that Marine's subjective conclusions and observations (and video footage narrated by Toyota's trial counsel) should not be anointed with the label of "expert opinions," particularly because such opinions are neither relevant nor reliable, are not based on accepted engineering principles, are biased, and would serve only to confuse and mislead a jury that these are supposedly expert opinions.

### III. CONCLUSION

Permitting Marine to testify without him having applied the proper methodology in the crash test and without having considered all of the relevant evidence regarding the full nature of the May 28, 2010 accident would cause severe prejudice to Plaintiffs. It is also clear that Marine

8

is not qualified to form written expert opinions on the design issues that are relevant to this lawsuit and did not utilize a methodology used by other experts in the field.  Plaintiffs therefore request that the Court strike the Marine Report and accompanying evidence as well as Marine's testimony, not consider the same as evidence, and grant Plaintiffs such other and further relief, in law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted,

/s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

/s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

9

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2014 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

   /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN