IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, <br><br>  Plaintiffs, <br><br>v. <br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC. <br><br>  Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § | CAUSE NUMBER: 3:11-cv-0207-N |

**PLAINTIFFS' REPLY TO TOYOTA'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF ROBERT LANGE AND DOLPH LOHWASSER**

| | |
|---|---|
| AUBREY "NICK" PITTMAN<br>State Bar No. 16049750 | DARYL K. WASHINGTON<br>State Bar No. 24013714 |
| THE PITTMAN LAW FIRM, P.C.<br>100 Crescent Court, Suite 700<br>Dallas, Texas 75201-2112<br>214-459-3454<br>214-853-5912 – fax | LAW OFFICES OF DARYL K. WASHINGTON P.C.<br>325 N. St. Paul St., Suite 1975<br>Dallas, Texas 75201<br>214-880-4883<br>469-718-0380 - fax |

**ATTORNEYS FOR PLAINTIFFS**

TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

I.    SUMMARY OF REPLY ................................................................................................ 1

II.    ARGUMENT AND AUTHORITIES ............................................................................. 2

    A.    Toyota Has Not Met Its Burden of Proving That Lange's and Lohwasser's Opinions Are Reliable. ................................................................................................ 2

    B.    Toyota Has Not Met Its Burden of Showing That Lange and Lohwasser Should Be Allowed to Opine on Whether the 4Runner Complied With Federal Safety Standards. ............................................................................................ 5

    C.    Toyota Has Not Met Its Burden of Showing That Using The Distinctively Dissimilar Vehicles Used in the Report's "Motor Vehicle Fire Safety Research" Section Follows an Acceptable Methodology. ....................................... 6

    D.    Toyota Has Not Provided Any Supporting Authority That The Court Should Allow Lange and Lohwasser to Serve as Conduits for Hearsay. ............................... 6

    E.    Toyota Cannot Meet its Burden of Proof in Showing That the Dissimilar Exponent Crash Test is Reliable, Relevant or Admissible. ......................................... 7

    F.    Contrary to Toyota's Contention, Lange's and Lohwasser's Inability or Refusal to Analyze the FE Modeling and Simulation Seems to Have Been the Result of Toyota Trial Counsel's Strategic Decision on When to Provide the FE Information to Lange and Lohwasser. ......................................................... 10

    G.    Toyota Did Not Respond to Plaintiffs' Request That Lange and Lohwasser Be Precluded From Giving Opinions on the History, Meaning and/or Interpretations of NHTSA and the Safety Act or Whether Toyota Complied With it. ............................................................................................................................ 11

    H.    Toyota Has Not Rebutted Why Lange's and Lohwasser's Testimony Should Not Be Precluded Under FED.R.EVID. 403. ............................................. 11

III.    CONCLUSION .............................................................................................................. 12

CERTIFICATE OF SERVICE ............................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Ahrens v. Ford Motor Co.*, 340 F.3d 1142 (10th Cir.2003) .............................................. 6

*Bado–Santana v. Ford Motor Co.*, 364 F.Supp.2d 79 (D.Puerto Rico 2005) .................................... 8

*Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577 (5th Cir.2004) .......................................... 4

*Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed.Appx. 395 (5th Cir.2007) .................................................. 4

*Chase v. General Motors*, 856 F.2d 17 (4th Cir.1988) ........................................................................ 8

*Curtis v. M & S Petroleum, Inc.* 174 F.3d 661 (5th Cir.1999) ......................................................... 2

*Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed.Appx. 395 (5th Cir.2007) .................................................. 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ...................................... 2, 11

*E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005) ....................................... 11

*Gladhill v. General Motors Corp.*, 743 F.2d 1049 (4th Cir.1984) ...................................................... 8

*Guild v. General Motors Corp.*, 53 F.Supp.2d 363 (W.D.N.Y.1999) ................................................ 8

*Kia Motors Corp. v. Ruiz*, --- S.W.3d ----, 2014 WL 1258169 (Tex. Mar 28, 2014). ...................... 5

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) ................................................................. 4

*Montgomery v. Mitsubishi Motors Corp.*, 2006 WL 1967361 (E.D.Pa. June 6, 2006) ...................... 8

*N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90 (Tex.App.—Dallas 1995) ..................... 12

*Ramseyer v. General Motors Corp.*, 417 F.2d 859 (8th Cir.1969) ..................................................... 8

**Rules**

FED.R.EVID. 403 ................................................................................................................ 10, 11

Ollie Greene, Individually and as parent of Wyndell Greene, Sr., William Greene, as Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and the parent of LaKeysha Greene (collectively "Plaintiffs") file this Reply to Toyota's Response to Plaintiffs' motion to strike and/or exclude the testimony of Defendants' designated experts, Robert Lange ("Lange") and Dolph Lohwasser ("Lohwasser"), and show the Court as follows:

### I.     SUMMARY OF REPLY

Toyota's Response does nothing to provide the Court with any assurance that Lange's and Lohwasser's testimony is based upon scientific, technical or other specialized knowledge that will actually assist the trier of fact to understand the evidence or to determine a fact in issue. There is no rhyme or reason to Lange's and Lohwasser's unexplainable methodology. The two men couldn't identify a recognized and reliable subjective methodology during their depositions and given a second opportunity have not identified a reliable methodology in the Response. In fact, Toyota has done absolutely nothing to refute Plaintiffs' contention that all Lange and Lohwasser did was accept as true the alleged testing "documents" that Toyota's counsel provided to them and review a few publicly available but incompatible government documents. This is essentially all they based their "opinions" on. Despite that Lange and Lohwasser also claim they viewed the damaged 4Runner and photographs, these items did not factor into, and was not used as a basis for their "opinions." Lange's and Lohwasser's work, which is scant at best, cannot satisfy Toyota's burden of proving that these experts are providing reliable, relevant, and helpful expert testimony. Indeed, Lange's and Lohwasser's testimony offers no true expert testimony and provides the jury with nothing helpful that a lay witness could not provide, if the testimony even had relevance to the issues in the lawsuit. Thus, Lange and Lohwasser must be excluded.

## II.     ARGUMENT AND AUTHORITIES

### A.   Toyota Has Not Met Its Burden of Proving That Lange's and Lohwasser's Opinions Are Reliable.

In its Response, Toyota claims that Lange and Lohwasser followed "specific methodologies used by the NHTSA and the automotive industry." Yet they never actually identify these industry methodologies. As stated in the motion to exclude, Lange and Lohwasser put together a compilation of mostly irrelevant publicly available documents, accepted Toyota's internal documents as unassailable, and made subjective conclusory statements as though they were expert opinions. Nothing in Toyota's Response proves otherwise. The law is clear that Toyota has the burden to demonstrate (1) that Lange's and Lohwasser's findings and conclusions are "based on the scientific method, and, therefore, are reliable;" and (2) that Lange's and Lohwasser's "reasoning or methodology can be properly applied to the facts in issue." *Curtis v. M & S Petroleum, Inc*. 174 F.3d 661, 668 (5th Cir.1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 592-93 (1993)). Toyota has not satisfied this burden. To begin with, Plaintiffs note that that although Toyota peppers its Response with assertions that Lange and Lohwasser used "generally accepted methodologies," the only sources they provide in support of this assertion are the declarations of Lange and Lohwasser. In fact, neither Lange nor Lohwasser was able to identify in the Lange-Lohwasser Report or during the depositions any methodology that would allow an expert to render expert opinions using the subjective and illogical vehicle comparisons that Lange and Lohwasser used. And the Response never explains why Lange and Lohwasser subjectively selected six vehicles as "peer" vehicles to the 4Runner when a reputable methodology would have been to use the Insurance Institute for Highway Safety's ("IIHS") analysis of comparable vehicles, which

lists twenty-two vehicles among their comparison of SUVs. (Pltfs' APP[1] 290-91). Using the IIHS list would have made a huge difference in Lange's analysis. The Response also never explains why Lange and Lohwasser expanded their vehicle comparison when they referred to a "survey" of all 2000 to 2013 model year light duty trucks and used this data supposedly to compare fuel tank materials, shapes, locations, heat shields, skid plates, etc. with the 4Runner. The report, however, does not identify the trucks by model or architecture so that dissimilar vehicles could be eliminated. Again, Lange and Lohwasser were unable to cite to any source confirming that this was the proper manner in which to perform a comparison. In fact, comparing thirteen years of dissimilar automobiles with dissimilar body dimensions and frame structures is completely inappropriate.

In addition, Toyota's response fails to provide proof (other than Lange simply saying so) that any other expert would use vehicles as random, outdated and diverse as a 1998 Honda Accord, a 1997 Chevrolet Camaro, a 1996 Dodge Caravan and a 1997 Ford Explorer to compare the performance of the 2010 Toyota 4Runner for fire risk, or fuel system integrity. That is because no other expert would use this selection of vehicles for comparison. None of these older model vehicles has any similarity to the 2010 4Runner at issue and therefore Lange's and Lohwasser's comparison is not reflective of a recognized methodology that would legitimately compare such dissimilar accidents, vehicle types, and distinctive fuel system designs and locations. Likewise, when Lange and Lohwasser decided to use the National Automobile Sampling System ("NASS") Collision Data System, they chose the most expansive selection possible, since doing so benefitted their strategy this time. However, even if Toyota were going to use the NASS database (which Plaintiffs contend is inappropriate) the crash parameters should have included rear-end highway collisions. That is because it was the foreseeable rear-end collision between the tractor and the

---

[1] "Pltfs' APP" refers to the original Appendix that Plaintiffs filed on March 17, 2014, in support of the motion to exclude Lange and Lohwasser – Dkt. Entry No. 488.

4Runner that initiated the breach of the fuel system and led to the subsequent impacts. Rear end accidents are by no means unusual. And inclusion of this category of accidents would have completely changed these experts' results. In other words, Plaintiffs do not dispute that experts occasionally will use data from the NASS crash database, the NHTSA database, the IIHS database, or the Motor Vehicle Fire Research Institute's database. Reliability issues arise unless the data is manipulated and categorized correctly under the circumstances. If the correct classification of vehicles and/or accidents is not made, the methodology becomes unreliable, resulting in conclusions that are skewed, erroneous, and highly prejudicial. That is what happened here.

As the Court is aware, the question of whether an expert's testimony is reliable is a fact-specific inquiry. *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir.2004). When a challenge is raised to an expert's testimony, "[i]t is then the district court's responsibility to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed.Appx. 395, 398 (5th Cir.2007) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). Toyota must prove the reliability of Lange's and Lohwasser's proffered testimony by a preponderance of evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc). Here, the record is clear that Lange and Lohwasser have no reputable or acceptable methodology, whether scientific or otherwise. Their subjective and predisposed comparisons of allegedly peer or comparable vehicles and crashes, whether based on their arbitrary selection of the six SUVs, the 200 light-duty trucks, or the millions of unmatched crashes, are only their subjective conclusions. In addition, their inability to cite to a single industry source that would categorize the comparable

vehicles the way they did proves this was not a valid comparison. Nor was it a methodology that anyone else has used or is it verifiable.

Accordingly, Lange's and Lohwasser's decisions to rely on skewed vehicle comparisons and inapplicable research or surveys make their testimony too questionable for jury consumption. The methodology they claim to have used cannot be attacked simply by cross examination. Indeed, the Court's fact-specific inquiry of their work should unmistakably lead to but one conclusion – Lange's and Lohwasser's testimony is unreliable and inadmissible.

**B.    Toyota Has Not Met Its Burden of Showing That Lange and Lohwasser Should Be Allowed to Opine on Whether the 4Runner Complied With Federal Safety Standards.**

Keeping in mind, as discussed above, that Toyota has the burden to demonstrate that Lange's and Lohwasser's findings and conclusions are based on the scientific method and that their reasoning or methodology can be properly applied to the facts in issue, Toyota has failed to satisfy this burden as to testimony regarding federal safety standards. First, Toyota has not cited any legal authorities for the proposition that Lange and Lohwasser can provide so-called expert testimony regarding whether Toyota complied with the five federal motor vehicle safety standards (the "FMVSS") listed in their report. Second, even if FMVSS testimony were allowed from experts, Toyota did not establish that Lange and Lohwasser applied any methodology, much less a reliable one, to ascertain whether the 2010 Toyota 4Runner actually complied with any of the safety standards. Third, Lange and Lohwasser did not observe or verify that the 2010 4Runner actually tested and passed any of these safety standards. Thus, their testimony would be based solely on what they were told by Toyota's trial counsel. Indeed, the jury could also listen to a Toyota witness for this factual testimony. Moreover, contrary to Toyota's contention, Toyota is not entitled to a presumption of non-liability as to the issues in this lawsuit. Therefore, any testimony regarding

potential FMVSS compliance, whether lay or expert, is simply irrelevant. *See, e.g. Kia Motors Corp. v. Ruiz*, --- S.W.3d ----, 2014 WL 1258169, 57 Tex. Sup. Ct. J. 375 (Tex. Mar 28, 2014).

      **C.    Toyota Has Not Met Its Burden of Showing That Using The Distinctively Dissimilar Vehicles Used in the Report's "Motor Vehicle Fire Safety Research" Section Follows an Acceptable Methodology.**

As argued in the motion to exclude, Lange and Lohwasser again chose an arbitrary and random selection of comparison vehicles, this time allegedly for the purpose of forming an opinion whether an engineer would question the design or performance of the 2010 Toyota 4Runner for fire risk, or fuel system integrity. Again, however, these vehicles do not include a recent model year vehicle that was even remotely close to the 2010 4Runner model year. The random self-selected study involved a 1998 Honda Accord, a 1997 Chevrolet Camaro, a 1996 Dodge Caravan and a 1997 Ford Explorer. In other words, none of the vehicles has any similarity to the 4Runner at issue and thus this test is not reflective of a recognized methodology that would legitimately compare such dissimilar accidents, vehicle types, and distinctive fuel system designs and locations to form an opinion on duty, foreseeability or any relevant issue in this case. Testing that simulates other sorts of accidents is of limited probative value. See *Ahrens v. Ford Motor Co.*, 340 F.3d 1142, 1145–46 (10th Cir.2003).

Notably, Toyota's Response identifies no literature or industry source that the Court can review to determine what methodology would lead an expert to such a random and seemingly inappropriate choice of vehicle comparisons. Lange and Lohwasser simply say to the Court, "trust us." However, the Court should find that Toyota has not met its burden on this testimony.

      **D.    Toyota Has Not Provided Any Supporting Authority That The Court Should Allow Lange and Lohwasser to Serve as Conduits for Hearsay.**

As discussed in the Motion to Exclude and keeping in mind, as discussed above, that it is Toyota that has the burden to demonstrate that Lange's and Lohwasser's findings and conclusions

6

are based on the scientific method and that their reasoning or methodology can be properly applied to the facts in issue, Toyota has failed to satisfy this burden as to any of the disputed facts. First, Toyota has not cited any legal authorities for the proposition that Lange and Lohwasser should be allowed to testify regarding alleged safety testing that no one from Toyota has discussed with them or proved to them.  Both men admit that they were not present for any of the compliance testing Toyota claims it did.  Lohwasser Depo at 63:21 – 64:9 (Pltfs' APP 286-87); Lange Depo at 142:8 – 143:8 (Pltfs' APP 274-75).  They also concede that they did not speak with any of Toyota's employees about such documentation.  Lohwasser Depo at 28:10 – 29:12 (Pltfs' APP 283-84); Lange Depo at 194:21 – 195:13 (Pltfs' APP 276-77).  The Response does not dispute these facts.  In other words, Lange and Lohwasser simply looked at Toyota's paper documents, which were provided to them by Toyota's trial counsel.  Second, there is nothing complicated about these alleged documents. For instance, one of the documents cited by Toyota, bate-number 180833-180858, simply concludes "375N (1GR engine) complied with the requirements under F(C)MVSS Nos. 204, 208, 212, 219 and 301."  There is nothing more that an expert who did not validate this testing can provide about these documents. The jury can read the documents for themselves. Otherwise, the expert is simply Toyota's conduit for hearsay and would be providing his subjective and unreliable editorial.

      **E.**    **Toyota Cannot Meet its Burden of Proof in Showing That the Dissimilar Exponent Crash Test is Reliable, Relevant or Admissible.**

Toyota now claims that Lange and Lohwasser should be permitted to rely on or refer to a crash test that was allegedly performed at the behest of Toyota's trial counsel.  The crash test is already the subject of a motion to exclude filed in conjunction with the testimony of Mickey Marine.  In that motion, Plaintiffs rely on the case law on the introduction of crash tests, which requires that the tests be substantially similar.  "Admissibility of evidence depends upon a

7

foundational showing of substantial similarity between the tests conducted and actual conditions." *Ramseyer v. General Motors Corp.*, 417 F.2d 859, 864 (8th Cir.1969). In *Chase v. General Motors*, 856 F.2d 17, 20 (4th Cir.1988), the Fourth Circuit noted:

> In products liability cases, expert witnesses necessarily may play a significant part .... When their testimony, however, is based upon the results of tests which were conducted under such different circumstances than those obtaining at the time of the accident complained of so as to make the results 'largely irrelevant, if not misleading,' [citing *Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1051 (4th Cir.1984) ], that testimony must be excluded.

*See, also Montgomery v. Mitsubishi Motors Corp.*, 2006 WL 1967361, *6 (E.D.Pa. June 6, 2006)(the manner in which the tests were conducted were not substantially similar to the accident that caused the injuries); *Bado–Santana v. Ford Motor Co.*, 364 F.Supp.2d 79, 99–100 (D.Puerto Rico 2005)(same); *Guild v. General Motors Corp.*, 53 F.Supp.2d 363, 367 (W.D.N.Y.1999). Here, it is undisputed that the May 28, 2010, accident involved multiple vehicles, i.e. a Volvo tractor, towing a Great Dane trailer; a 2010 Toyota 4Runner; a 2006 Toyota Corolla; and a 2005 Freightliner tractor, towing a 2004 Strick dry-freight trailer. Likewise, there is no dispute that the accident involved four occupants in the 4Runner. It is also acknowledged that the accident involved multiple collisions, whereby after the Volvo tractor struck the 4Runner, the 4Runner eventually made contact with the Corolla then the Strick trailer. The experts all agree that during the sequence of crash events the 4Runner yawed and had lateral contact with the Strick trailer. All of the vehicles were still moving, except perhaps the Freightliner and Strick trailer, which were allegedly stopped in the middle of an active freeway. Likewise, there is no disagreement that a fire erupted in the 4Runner during the crash sequence as a result of a breach of the 4Runner's fuel system.

As regarding the crash test that Lange and Lohwasser now claim they relied on, however, it is in no way substantially similar to the May 28, 2010, accident. That is because, among other things, the staged crash test: (1) does not involve exemplars of the other vehicles from the original

8

crash; (2) does recreate all impacts in the accident; (3) uses an impact point between the Volvo tractor and the 4Runner that is different from the impact point in the accident; (4) did not include the braking of the Volvo tractor before impact as the driver described; (5) ignores the evasive actions taken by the Volvo driver during the actual accident; (6) uses different impact speeds than those suggested by Toyota's expert; and (7) uses a stationary Toyota 4Runner. Without using all vehicles to recreate all collisions, there is no way to determine what caused the deaths of the Greene family or to determine how the fire erupted in the 4Runner. In fact, Marine does not profess to offer a fire origin opinion or have any knowledge of the fuel system of the 4Runner. Furthermore, the Exponent agent, Marine, could not have set up a proper substantially similar recreation of the accident since he admits that he is not even aware of the full sequence of events in the May 28, 2010, crash. Marine Depo at 29:13-19 (Pltfs' APP 0134). In other words, although the video is represented to be a "potential" re-enactment of a single event that occurred during the May 28, 2010, crash it is clearly not substantially similar to the underlying accident.

In addition, there are other issues with the supposed methodology used in that crash test. Toyota did not use high-speed cameras underneath the crash vehicle to detect the motion of the defective fuel system components or the presence of the fuel leak, although Marine acknowledged that NHTSA crash tests are known to use high-speed cameras underneath a crash vehicle to be able to evaluate such results. Marine Depo at 26:15 – 28:6 (Pltfs' APP 0131-33). In addition, as discussed in Marine's Motion to Exclude, he has also acknowledged that the narrator whose voice is heard on the walk-up portion of the crash test videotape, allegedly describing the results of the test is Kurt Kern, who is Toyota's lead trial counsel. Marine Depo at 42:17 – 43:17 (Pltfs' APP 0135-36). This is hardly independent expert testimony. It should also be an unacceptable methodology to have trial counsel dictate the terms of the crash set-up and narrate the alleged results of the crash

test. Thus, Lange and Lohwasser should not be permitted to rely on or reference this test in any way.

> **F.  Contrary to Toyota's Contention, Lange's and Lohwasser's Inability or Refusal to Analyze the FE Modeling and Simulation Seems to Have Been the Result of Toyota Trial Counsel's Strategic Decision on When to Provide the FE Information to Lange and Lohwasser.**

Instead of explaining why it did not provide the FE modeling information to Lange and Lohwasser in time to allow them to form opinions on it, Toyota resorts to rehashing a meritless motion to exclude and misrepresenting the record. Plaintiffs have already addressed the issue of the allegedly late production of materials and have explained how there was no untimely production of materials and how Defendants have not been prejudiced by timing of the production of the FE materials. See, Dkt. Entry No. 510. Indeed, there was NO untimely production of this FE simulation. There is no dispute that the FE information was tendered fully to defendants' counsel on January 15, 2014. There was no agreement or obligation to produce the computer files before the production of Keith Friedman for deposition. At Friedman's deposition, Toyota's trial counsel retained a copy service to copy all of the information produced, seventeen boxes of materials and many DVDs and CDs. According to both the copying service and the court reporting firm retained by Toyota to copy the documents from Friedman's deposition, these materials were copied and returned to Friedman on January 22, 2014. Therefore, the materials were with Toyota's court reporter on or before January 22, 2014. The depositions of Lange and Lohwasser did not take place until February 17 and 20, respectively. Considering the FE materials were fully copied by January 22, these experts had nearly 30 days to review the FE materials produced by Friedman to be prepared to discuss the materials at their depositions.

Toyota's Response provides no explanation whether and why it did not simply contact its court reporting firm to get the FE information to Lange and Lohwasser sufficiently in advance of

their depositions a month later. Indeed, no defendant would be able to explain why they would wait a month to receive copies from a copy service they hired to copy important information for its experts. Thus, Toyota provides no valid reason why Lange and Lohwasser shouldn't have been able to discuss the FE materials during their depositions.

      **G.    Toyota Did Not Respond to Plaintiffs' Request That Lange and Lohwasser Be Precluded From Giving Opinions on the History, Meaning and/or Interpretations of NHTSA and the Safety Act or Whether Toyota Complied With it.**

In the Motion to Exclude, Plaintiffs argued that Lange and Lohwasser should not be permitted to give opinions on the history, meaning and/or interpretations of NHTSA and the Safety Act or whether Toyota complied with it. Toyota's Response did not address this argument; thus, Plaintiffs ask that Lange's and Lohwasser's testimony on these subjects be stricken on the grounds argued in the motion.

      **H.    Toyota Has Not Rebutted Why Lange's and Lohwasser's Testimony Should Not Be Precluded Under FED.R.EVID. 403.**

The authorities are clear that the Court can exclude otherwise relevant evidence where its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. FED.R.EVID. 403; *Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."); s*ee also, E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005); *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex.App.—Dallas 1995, writ denied) ("courts should exclude . . . evidence [when] the expert's opinion would be more likely to prejudice or confuse than to assist the trier of fact."). Considering that Lange's and Lohwasser's opinions are simply subjective conclusions that are not based on any independent evaluations undertaken by Lange

11

and Lohwasser, the opinions should be excluded. As argued in the motion to exclude, allowing Lange and Lohwasser to give opinions issues such as the alleged safety of the Toyota 4Runner, the testing supposedly performed at Toyota and their general industry opinions on design issues and motor vehicle safety issues would cause absolute prejudice to Plaintiffs.  Stated more succinctly, Lange's and Lohwasser's subjective conclusions and pronouncements should not be anointed with the label of "expert opinions," particularly because such opinions are neither relevant nor reliable, are not based on accepted engineering principles, are biased, and would serve only to confuse and mislead a jury that Lange's and Lohwasser's conclusions are supposedly expert opinions.

### III.    CONCLUSION

Permitting Lange and Lohwasser to testify without them having applied a reliable methodology in their "analysis" and without them having considered all of the relevant evidence would cause severe prejudice to Plaintiffs.  It is also clear that Lange and Lohwasser are here simply to bolster Toyota's claim about its alleged safety philosophy or reputation.  Plaintiffs therefore request that the Court strike the Lange-Lohwasser Report and accompanying testimony, not consider the same as evidence, and grant Plaintiffs such other and further relief, in law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted,

| | |
|---|---|
| /s/ Aubrey "Nick" Pittman | 214-459-3454 |
| AUBREY "NICK" PITTMAN | 214-853-5912 – fax |
| State Bar No. 16049750 | pittman@thepittmanlawfirm.com |

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112

/s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 21, 2014 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

     /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN