## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **OLLIE GREENE, Individually as the** | § | |
| **surviving parent of WYNDELL GREENE,** | § | |
| **SR., WILLIAM GREENE, as the** | § | |
| **Administrator of the Estate of WYNDELL** | § | |
| **GREENE, SR., and MARILYN BURDETTE** | § | |
| **HARDEMAN, Individually and as the** | § | |
| **surviving parent of LAKEYSHA GREENE,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| | § | |
| **TOYOTA MOTOR CORPORATION,** | § | |
| **TOYOTA MOTOR ENGINEERING &** | § | |
| **MANUFACTURING NORTH AMERICA,** | § | |
| **INC., TOYOTA MOTOR SALES USA,** | § | |
| **INC., VOLVO GROUP NORTH** | § | |
| **AMERICA, LLC., VOLVO TRUCKS** | § | |
| **NORTH AMERICA, A DIVISION OF** | § | |
| **VOLVO GROUP NORTH AMERICA,** | § | |
| **LLC., STRICK TRAILERS, LLC, JOHN** | § | |
| **FAYARD MOVING & WAREHOUSE,** | § | |
| **LLC, and DOLPHIN LINE, INC.** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' REPLY TO TOYOTA'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF WILLIAM VAN ARSDELL

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax

**ATTORNEYS FOR PLAINTIFFS**

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

I.      SUMMARY OF ARGUMENT .......................................................................... 1

II.     ARGUMENT  AND AUTHORITIES ................................................................ 1

      A.     Toyota Has Not Met its Burden of Proof as to Van Arsdell...................... 1

      B.     Toyota's Response Did Not Establish That Van Arsdell's Alleged Work is
The Product of Reliable Principles and Methods...................................... 3

      C.     Toyota Has Not Met Its Burden to Show That Van Arsdell Should Be
Allowed to Opine on (i) the History and Purpose of NHTSA, FMVSS or
the Safety Act; or (ii) Whether the 4Runner Complied With Federal Safety
Standards. ................................................................................................. 4

      D.     Toyota's Response is Essentially Not Responsive to Plaintiffs' Request That
Van Arsdell Should Be Prohibited From Expressing an Opinion on the
Cause and Mechanism of Mrs. Greene's Ejection Death. ....................... 7

      E.     Toyota Has Not Provided Any Supporting Authority That The Court
Should Allow Van Arsdell to Serve as The Conduit for Toyota's Testimony
as to the Alleged Testing.......................................................................... 7

      F.     Toyota Cannot Meet its Burden of Proof in Showing That the Dissimilar
Exponent Crash Test is Reliable, Relevant or Admissible. ...................... 8

      G.     Toyota Has Not Met its Burden of Proof of Having to Show That Van Arsdell
Can Rely Upon and Discuss the Reports of Other Experts. .................... 10

      H.     Toyota Has Not Rebutted Why Van Arsdell's Testimony Should Not Be
Precluded Under FED.R.EVID. 403........................................................ 11

III.    CONCLUSION ................................................................................................ 12

CERTIFICATE OF SERVICE .................................................................................... 14

TABLE OF AUTHORITIES

## Cases

*Bado–Santana v. Ford Motor Co.*, 364 F.Supp.2d 79 (D.Puerto Rico 2005) ................................... 8

*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227 (10th Cir.2004) .......................................................... 3

*Chase v. General Motors*, 856 F.2d 17 (4th Cir.1988) .................................................................. 8

*Curtis v. M & S Petroleum, Inc.* 174 F.3d 661 (5th Cir.1999) ...................................................... 11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ....................................... 2, 11

*Davis v. Washington*, 547 U.S. 813 (2006) ................................................................................. 6

*E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005) ....................................... 11

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ............................................................................ 2

*Gladhill v. General Motors Corp.*, 743 F.2d 1049 (4th Cir.1984) ................................................. 8

*Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987 (10th Cir.2003) ................................. 2

*Guild v. General Motors Corp.*, 53 F.Supp.2d 363 (W.D.N.Y.1999) ............................................. 8

*Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193 (10th Cir.2002) ............................................. 3

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir.1994) ....................................................... 2

*Kia Motors Corp. v. Ruiz*, --- S.W.3d ----, 2014 WL 1258169, 57 Tex. Sup. Ct. J. 375
   (Tex. Mar 28, 2014). ............................................................................................................. 6

*Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137 (1999) ........................................................... 1

*Montgomery v. Mitsubishi Motors Corp.*, 2006 WL 1967361 (E.D.Pa. June 6, 2006) ..................... 8

*N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90 (Tex.App.—Dallas 1995, writ denied)  11

*Oddi v. Ford Motor Co.*, 234 F.3d 136 (3d Cir.2000) ................................................................... 4

*Ramseyer v. General Motors Corp.*, 417 F.2d 859 (8th Cir.1969) ................................................. 8

*U.S. v. Dixon*, 413 F.3d 520, 524-25 (5th Cir. 2005), aff'd 548 U.S. 1 (2006) ................................ 6

*U.S. v. Mejia*, 545 F.3d 179 (2d Cir. 2008) ................................................................................. 6

*United States v. Johnson*, 575 F.2d 1347 (5th Cir.1978) ............................................................... 6

## Rules

FED.R.EVID. 401 ........................................................................................................................ 3

FED.R.EVID. 403 ................................................................................................................ 1, 7, 11

FED.R.EVID. 702 ........................................................................................................................ 1

**Regulations**

TEX.CIV.PRAC.& REM.CODE § 82.008(a) ........................................................................................ 6

Ollie Greene, Individually and as parent of Wyndell Greene, Sr., William Greene, as Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and the parent of LaKeysha Greene (collectively "Plaintiffs") file this Reply to Toyota's Response to Plaintiffs' motion to strike and/or exclude the testimony of William Van Arsdell ("Van Arsdell"), and show the Court as follows:

## I.      SUMMARY OF ARGUMENT

Toyota's Response focuses primarily on Van Arsdell's work at Exponent, a company that coincidently happens to be the employer of at least five of the defendants' other "experts" in this case, and a company that has represented Toyota on hundreds of occasions.  Toyota also touts Van Arsdell's apparent "writings" on various subjects, but does little to satisfy its burden to show that the testimony Van Arsdell seeks to provide is based upon scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue; or that it is based on sufficient facts or data and is the product of reliable principles and methods he has applied reliably to the facts of the case.  Toyota cannot carry its burden.  Plaintiffs further contend that the proposed testimony should be excluded pursuant to FED.R.EVID. 403 because consideration of Van Arsdell's testimony, disguised as expert testimony, will result in confusion of the issues and misleading the jury.

## II.      ARGUMENT  AND AUTHORITIES

### A.      Toyota Has Not Met its Burden of Proof as to Van Arsdell.

FED.R.EVID. 702 of the Federal Rules of Evidence specifically addresses testimony from expert witnesses. "Where such testimony's factual basis, data principles methods or their application are called sufficiently into question, the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of the [relevant] discipline.'" *Kumho Tire Co., Ltd.,*

*et. al. v. Carmichael, et. al.*, 526 U.S. 137, 149 (1999) quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993). In other words, the Court plays the role of the gatekeeper as to (1) the existence of sufficient facts and/or data to allow an expert to reach a conclusion and; (2) the reliability of the principles and methods used to arrive at those opinions. *Id*. To be reliable, an expert's proffered testimony must have "a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592. In making that determination, the district court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592–93, 113 S.Ct. 2786. While "absolute certainty is not required," an expert's opinion "must be based on scientific knowledge, which implies a grounding in the methods and procedures of science based on actual knowledge, not mere subjective belief or unsupported speculation." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987, 991 (10th Cir.2003) (quotations omitted). "Generally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Id*. at 992. "However, an expert's conclusions are not immune from scrutiny: 'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Id*. (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146, 118 S.Ct. 512. The proponent of the testimony must establish, by a preponderance of the evidence, that the expert's testimony is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir.1994). Here, Toyota cannot establish that all of Van Arsdell's testimony passes the reliability principle.

An expert's testimony must also be relevant—it must assist the fact-finder in understanding the evidence or determining a fact in issue. *Daubert*, 509 U.S. at 591. "'Relevant evidence' means

evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401.  The Supreme Court has described the consideration of whether an expert's testimony is relevant as one of "fit." *Daubert*, 509 U.S. at 591. The reasoning or methodology underlying the expert's opinion must be able to be properly applied to the facts in issue. *Hollander v. Sandoz Pharm. Corp*., 289 F.3d 1193, 1204 (10th Cir.2002). "A trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Bitler v. A.O. Smith Corp*., 400 F.3d 1227, 1234 (10th Cir.2004). "Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant 'fit.'" *Id*.  Toyota has not demonstrated that all of Van Arsdell's testimony has relevant fit.

**B.     Toyota's Response Did Not Establish That Van Arsdell's Alleged Work is The Product of Reliable Principles and Methods.**

In the Response, Toyota claims that Van Arsdell's "methodlogies" [sic] are "the same methodologies that are used by mechanical engineers to investigate issues similar to those presented in this case."  Resp. at 10.  Toyota also contends that these methodologies are "more broadly used by all enegineers [sic] as they conduct any type of investigation or research."  *Id*.  However, neither Van Arsdell nor Toyota provide any literature, papers, textbooks, or any independent material that support these statements or verifies that Van Arsdell used a reputable methodology in his work. Indeed, when Van Arsdell was asked during his deposition if there is a source to which the judge could go to find his methodology, Van Arsdell replied, "[n]o, I don't believe he can."  Van Arsdell Depo at 30:4-7.  Where an expert engineer failed to test his hypotheses and could not even identify

3

what methodology and research supported the hypotheses the testimony was excluded. *Oddi v. Ford Motor Co*., 234 F.3d 136 (3d Cir.2000).

> ### C.    Toyota Has Not Met Its Burden to Show That Van Arsdell Should Be Allowed to Opine on (i) the History and Purpose of NHTSA, FMVSS or the Safety Act; or (ii) Whether the 4Runner Complied With Federal Safety Standards.

Keeping in mind, as discussed above, that Toyota has the burden to demonstrate that Van Arsdell's conclusions are based on the scientific method and that his reasoning or methodology can be properly applied to the facts in issue, Toyota has failed to satisfy this burden as to the following subjective and arbitrary statements made by Van Arsdell, among others:[1]

1.    Vehicles that meet the National Highway Traffic Safety Administration's (NHTSA) Federal Motor Vehicle Safety Standards (FMVSSs) have been shown to be highly effective in reducing the likelihood of serious injuries and fatalities in reasonably foreseeable motor vehicle accidents. As stated in the preamble to the FMVSSs, these standards were developed to ensure "*that the public is protected against unreasonable risk of accidents occurring as a result of the design, construction or performance of motor vehicles and is also protected against unreasonable risk of death or injury to persons in the event accidents do occur*."

2.    The FMVSSs consist of a set of specified tests that, generally speaking, evaluate the vehicle or its components relative to requirements that include either minimum or maximum performance criteria. FMVSS 208 consists of a suite of tests that evaluates, among other things, driver and right-front passenger belted and unbelted performance in frontal collisions. FMVSS 209 tests and evaluates all vehicle seat belt assemblies at the component level. FMVSS 210 evaluates the integrity of all seat belt anchorages in a vehicle. Every new vehicle sold in the U.S. is required to meet these, among many other, FMVSS regulations.

3.    Materials produced by Toyota show that for the 2010 Toyota 4Runner, the seat belts meet or exceed the requirements of FMVSS 209. The occupant restraint system, including but not limited to the vehicle's seat belts, meets or exceeds the dynamic occupant protection and static requirements of FMVSS 208, and the seat belt anchorages meet the requirements of FMVSS 210. The 2010 Toyota 4Runner was certified

---

[1] These paragraphs are numbered here for convenience and do not appear in Van Arsdell's Report numbered in this manner.

to the requirements of the FMVSS 208 "Advanced Airbag" rulemaking.

4.      The 2010 Toyota 4Runner's occupant restraint system, including but not limited to the seat belt assemblies, is not defective, and provides a reasonable level of protection in reasonably foreseeable motor vehicle accidents.

5.      No occupant restraint system can prevent all injuries in all accidents.

6.      The subject motor vehicle accident sequence consisted of multiple high speed collisions involving energy and forces much greater than those involved in the vast majority of tow-away accidents in the United States.

7.      The 2010 Toyota 4Runner's occupant restraint system, including but not limited to the seat belts, meets or exceeds all the applicable requirements of the relevant Federal Motor Vehicle Safety Standards.

8.      The mandatory FMVSSs applicable to the occupant protection systems of the subject 2010 4Runner are sufficient to protect against unreasonable risk of death or injury in the event of an accident.

9.      The referenced FMVSSs were applicable to the subject 2010 4Runner at the time that it was designed and manufactured. These FMVSSs are related to the risk of harm to occupants in motor vehicle accidents.

10.     Toyota conducted an appropriate amount of testing and development for the 2010 Toyota 4Runner's occupant restraint systems.

In its Response, Toyota did not establish: (1) whether Van is qualified to give testimony on each of these statements; (2) that Van Arsdell's findings and conclusions are "based on the scientific method, and, therefore, are reliable;" (2) that Van Arsdell's "reasoning or methodology can be properly applied to the facts in issue;" (3) conclusively that these are not legal interpretations for the Court or improper conclusions that should be left to the jury; and (4) that the probative value of allowing Van Arsdell to give testimony on these issues is not substantially outweighed by the danger and prejudice of placing an "expert opinion" label on these statements.   Indeed, Toyota has not cited any legal authorities for the proposition that Van Arsdell can provide so-called expert testimony as to whether Toyota complied with the federal motor vehicle safety standards. Neither

has Toyota proved that it is acceptable for Van Arsdell to opine about the history or purpose of the legislatively enacted Safety Act.

Furthermore, even if FMVSS testimony were allowed from experts, Toyota did not establish that Van Arsdell applied any methodology, much less a reliable one, to ascertain whether the 2010 Toyota 4Runner actually complied with any of the safety standards. Third, Van Arsdell did not observe or verify that the 2010 4Runner actually tested and passed any of these safety standards. Thus, his testimony would be based solely on what he was told by Toyota's trial counsel. Indeed, the jury could also listen to a Toyota witness for this factual testimony. Courts faced with similar issues have cautioned against situations such as this where a witness is used as little more than a conduit for testimonial hearsay, rather than "a true expert whose considered opinion sheds light on some specialized factual situation." See *U.S. v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008); *U.S. v. Dixon*, 413 F.3d 520, 524-25 (5th Cir. 2005), aff'd 548 U.S. 1 (2006); *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir.2009); *see also Davis v. Washington*, 547 U.S. 813, 826 (2006) (excluding note-taking policeman's testimony since it recites declarant's unsworn testimony from a report). Van Arsdell should not be allowed to testify regarding alleged safety testing, especially since no one from Toyota has discussed with or proved to him.

Moreover, contrary to Toyota's contention, Toyota is not entitled to a presumption of non-liability under Tex.Civ.Prac. & Rem.Code § 82.008(a) as to the issues in this lawsuit and has not met its burden of proving this to be the appropriate. *See, e.g. Kia Motors Corp. v. Ruiz*, --- S.W.3d ----, 2014 WL 1258169, 57 Tex. Sup. Ct. J. 375 (Tex. Mar 28, 2014). Therefore, any testimony regarding potential FMVSS compliance, whether lay or expert, is simply irrelevant.

**D.** **Toyota's Response is Essentially Not Responsive to Plaintiffs' Request That Van Arsdell Should Be Prohibited From Expressing an Opinion on the Cause and Mechanism of Mrs. Greene's Ejection Death.**

One of the central issues in the case involves the cause and mechanism of Mrs. Greene's ejection and death. In the motion to exclude, Plaintiffs requested that Van Arsdell be precluded from giving any expert opinion as to how Mrs. Greene allegedly became ejected from the 4Runner. That is because Van Arsdell effectively concedes that he did no testing and is unable to opine on how it is that Ms. Greene came to be ejected from the Toyota 4Runner. See, e.g. Van Arsdell Depo at 48:14-23 (Pltfs' APP[2] 024). Thus, Van Arsdell acknowledges that he did not apply a reliable methodology to be in a position to provide an opinion. In the response, however, Toyota ignores Plaintiffs' unreliable methodology argument and focuses instead on trying to establish that Van Arsdell is "qualified." It is clear that Van Arsdell cannot provide any helpful opinions on the circumstances behind the failure of Mrs. Greene's occupant restraint system in preventing her ejection and that Toyota has not satisfied its burden by a preponderance of the evidence. Any conclusions that Van Arsdell would provide would be irrelevant, not sufficiently reliable to be admissible as evidence, and should be excluded under FRE 702 and 403.

**E.** **Toyota Has Not Provided Any Supporting Authority That The Court Should Allow Van Arsdell to Serve as The Conduit for Toyota's Testimony as to the Alleged Testing.**

As discussed in the Motion to Exclude and keeping in mind, as discussed above, that it is Toyota that has the burden to demonstrate that Van Arsdell's findings and conclusions are based on the scientific method and that their reasoning or methodology can be properly applied to the facts in issue, Toyota has failed to satisfy this burden as to any of the disputed facts. First, Toyota has not

---

[2] "Pltfs' APP" refers to the original Appendix that Plaintiffs filed on March 17, 2014, in support of the motion to exclude William Van Arsdell – Dkt. Entry No. 496.

cited any legal authorities for the proposition that Van Arsdell should be allowed to testify regarding alleged safety testing that no one from Toyota has discussed with or proved to him.  Van Arsdell concedes that he did no testing himself, he simply reviewed the reports Toyota provided to him. Van Arsdell Depo at 43:3-13 (Pltfs' APP 022).   The Response does not dispute this fact.  In other words, Van Arsdell simply looked at Toyota's paper documents, which were provided to him by Toyota's trial counsel.  Second, there is nothing complicated about these alleged documents. For instance, one of the documents cited by Toyota, bate-number 180833-180858, simply concludes "375N (1GR engine) complied with the requirements under F(C)MVSS Nos. 204, 208, 212, 219 and 301."  There is nothing more that an expert who did not validate this testing can provide about these documents. The jury can read the documents for themselves.  Otherwise, the expert is simply Toyota's conduit for hearsay and would be providing his subjective and unreliable editorial along with his hearsay statements.

      **F.**      **Toyota Cannot Meet its Burden of Proof in Showing That the Dissimilar Exponent Crash Test is Reliable, Relevant or Admissible.**

Toyota now claims that Van Arsdell should be permitted to rely on or refer to a crash test that was allegedly performed at the behest of Toyota's trial counsel.  The crash test is already the subject of a motion to exclude filed in conjunction with the testimony of Mickey Marine.  In that motion, Plaintiffs rely on the case law on the introduction of crash tests, which requires that the tests be substantially similar. "Admissibility of evidence depends upon a foundational showing of substantial similarity between the tests conducted and actual conditions." *Ramseyer v. General Motors Corp*., 417 F.2d 859, 864 (8th Cir.1969).  In *Chase v. General Motors*, 856 F.2d 17, 20 (4th Cir.1988), the Fourth Circuit noted:

> In products liability cases, expert witnesses necessarily may play a significant part .... When their testimony, however, is based upon the results of tests which were conducted under such different circumstances than those obtaining at the time of the accident complained of so as to make the results 'largely irrelevant, if not

> misleading,' [citing *Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1051 (4th Cir.1984) ], that testimony must be excluded.

*See, also Montgomery v. Mitsubishi Motors Corp.*, 2006 WL 1967361, *6 (E.D.Pa. June 6, 2006)(the manner in which the tests were conducted were not substantially similar to the accident that caused the injuries); *Bado–Santana v. Ford Motor Co.*, 364 F.Supp.2d 79, 99–100 (D.Puerto Rico 2005)(same); *Guild v. General Motors Corp.*, 53 F.Supp.2d 363, 367 (W.D.N.Y.1999). Here, it is undisputed that the May 28, 2010, accident involved multiple vehicles, i.e. a Volvo tractor, towing a Great Dane trailer; a 2010 Toyota 4Runner; a 2006 Toyota Corolla; and a 2005 Freightliner tractor, towing a 2004 Strick dry-freight trailer. Likewise, there is no dispute that the accident involved four occupants in the 4Runner. It is also acknowledged that the accident involved multiple collisions, whereby after the Volvo tractor struck the 4Runner, the 4Runner eventually made contact with the Corolla then the Strick trailer. The experts all agree that during the sequence of crash events the 4Runner yawed and had lateral contact with the Strick trailer. All of the vehicles were still moving, except perhaps the Freightliner and Strick trailer, which were allegedly stopped in the middle of an active freeway. Likewise, there is no disagreement that a fire erupted in the 4Runner during the crash sequence as a result of a breach of the 4Runner's fuel system.

As regarding the crash test that Toyota now claims Van Arsdell relied on, however, it is in no way substantially similar to the May 28, 2010, accident. That is because, among other things, the staged crash test: (1) does not involve exemplars of the other vehicles from the original crash; (2) does recreate all impacts in the accident; (3) uses an impact point between the Volvo tractor and the 4Runner that is different from the impact point in the accident; (4) did not include the braking of the Volvo tractor before impact as the driver described; (5) ignores the evasive actions taken by the Volvo driver during the actual accident; (6) uses different impact speeds than those suggested by Toyota's expert; and (7) uses a stationary Toyota 4Runner. Without using all vehicles to recreate all

collisions, there is no way to determine what caused the deaths of the Greene family or to determine how the fire erupted in the 4Runner.  In fact, Marine does not profess to offer a fire origin opinion or have any knowledge of the fuel system of the 4Runner.  Furthermore, the Exponent agent, Marine, could not have set up a proper substantially similar recreation of the accident since he admits that he is not even aware of the full sequence of events in the May 28, 2010, crash.  Marine Depo at 29:13-19 (Pltfs' APP 0134).  In other words, although the video is represented to be a "potential" re-enactment of a single event that occurred during the May 28, 2010, crash it is clearly not substantially similar to the underlying accident.

In addition, there are other issues with the supposed methodology used in that test.  Toyota did not use high-speed cameras underneath the crash vehicle to detect the motion of the defective fuel system components or the presence of the fuel leak, although Marine acknowledged that NHTSA crash tests are known to use high-speed cameras underneath a crash vehicle to be able to evaluate such results.  Marine Depo at 26:15 – 28:6 (Pltfs' APP 0131-33).  In addition, as discussed in Marine's Motion to Exclude, he has also acknowledged that the narrator whose voice is heard on the walk-up portion of the crash test videotape, allegedly describing the results of the test is Kurt Kern, who is Toyota's lead trial counsel.  Marine Depo at 42:17 – 43:17 (Pltfs' APP 0135-36).  This is hardly independent expert testimony.  It should also be an unacceptable methodology to have trial counsel dictate the terms of the crash set-up and narrate the alleged results of the crash test.  Thus, Van Arsdell should not be permitted to rely on or reference this test in any way.

### G.     Toyota Has Not Met its Burden of Proof of Having to Show That Van Arsdell Can Rely Upon and Discuss the Reports of Other Experts.

In the motion to exclude, Plaintiffs argues that Van Arsdell should be precluded from discussing the reports and testimony of Lee Carr and the other experts.  Toyota argues in Response that "Plaintiffs cite no authority in support of their request to exclude such testimony."  Resp. at 14.

This is untrue. On pages 12-14 of Plaintiffs' motion to exclude (Doc. 495), Plaintiffs cite a multitude of cases that stand for the propositions that (i) expert testimony based solely or primarily on the opinions of other experts is inherently unreliable; and (ii) an expert's failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions, demonstrates that the methodology he used to formulate his opinion was flawed. Plaintiff also argued that this would constitute improper bolstering of the testimony of another expert.

However, in arguing that Plaintiffs have supposedly not disproven the relevance of Van Arsdell's testimony, Toyota ignores that as the proponent for Van Arsdell's testimony, it is Toyota that has the burden to demonstrate that (1) Van Arsdell's findings and conclusions are "based on the scientific method, and, therefore, are reliable;" and (2) Van Arsdell's "reasoning or methodology can be properly applied to the facts in issue." *Curtis v. M & S Petroleum, Inc.* 174 F.3d 661, 668 (5th Cir.1999) (citing *Daubert*, 509 U.S. at 592–93). Thus, it is Toyota's burden to cite authorities allowing such testimony from Van Arsdell, which it has not done. It has also not proved that Van Arsdell applied any methodology, much less a reliable one, to assess the validity of these other expert report on which Van Arsdell now claims to have relied.

**H.    Toyota Has Not Rebutted Why Van Arsdell's Testimony Should Not Be Precluded Under FED.R.EVID. 403.**

The authorities are clear that the Court can exclude otherwise relevant evidence where its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. FED.R.EVID. 403; *Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."); *see also,*

*E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005); *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex.App.—Dallas 1995, writ denied) ("courts should exclude . . . evidence [when] the expert's opinion would be more likely to prejudice or confuse than to assist the trier of fact."). Considering that Van Arsdell's opinions are simply subjective conclusions that are not based on any independent evaluations undertaken by Van Arsdell, the opinions should be excluded. As argued in the motion to exclude, allowing Van Arsdell to give opinions issues such as the alleged safety of the Toyota 4Runner, the testing supposedly performed at Toyota and their general industry opinions on design issues and motor vehicle safety issues would cause absolute prejudice to Plaintiffs. Stated more succinctly, Van Arsdell's subjective conclusions and pronouncements should not be anointed with the label of "expert opinions," particularly because such opinions are neither relevant nor reliable, are not based on accepted engineering principles, are biased, and would serve only to confuse and mislead a jury that Van Arsdell's conclusions are supposedly expert opinions.

### III.      CONCLUSION

Permitting Van Arsdell to testify without his having applied a proper methodology in his work and without having considered all relevant evidence would cause severe prejudice to Plaintiffs. It is also clear that Van Arsdell is ether not qualified or simply chose not to utilize a methodology used by other experts in the field. Plaintiffs therefore request that the Court strike the Van Arsdell Report and accompanying testimony, not consider the same as evidence for any purpose, and grant Plaintiffs such other and further relief, in law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted,

/s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

/s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2014 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.


  /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN