IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, <br><br>    Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC.<br><br>    Defendants. | §§§§§§§§§§§§§§§§§§§§§ | CAUSE NUMBER: 3:11-cv-0207-N |

**PLAINTIFFS' REPLY TO TOYOTA'S RESPONSE TO PLAINTIFFS'
MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF LEE CARR**

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax

**ATTORNEYS FOR PLAINTIFFS**

TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................................ii

TABLE OF AUTHORITIES ......................................................................................................... iii

I. SUMMARY OF REPLY ................................................................................................ 1

II. ARGUMENT AND AUTHORITIES .............................................................................. 2

    A. Toyota Has Not Met Its Burden of Proving That Carr's Opinions Are Reliable. ....... 2

    B. Carr's Disregard of The Facts and His Role as a Professional Expert for Toyota and its Counsel Compel Preclusion of His Testimony. ............................................. 7

    C. Toyota Cannot Meet its Burden of Proof in Showing That the Dissimilar Exponent Crash Test is Reliable, Relevant or Admissible. ....................................... 8

    D. Toyota's Response Does Not Explain Adequately Why The Court Should Allow Carr to Provide His Opinion, a Lay One At Best, As to Whether There Was a Fuel Leak or a Fuel System Breach at the First Impact. ............................... 11

    E. Toyota Cannot Meet Its Burden of Showing That Carr Should Be Allowed to Give Any Opinions or "Observations" Regarding the Design of the 4Runner. ........ 11

    F. Toyota Has Not Met Its Burden of Showing That Carr Should Be Allowed to Opine Whether the 4Runner Complied With Federal Safety Standards. ................. 12

    G. Toyota Has Not Met Its Burden of Showing That Carr Should Be Allowed to Instruct the Jury On The Ultimate Conclusions. ...................................................... 12

    H. Toyota's Response Simply Reinforces Why Carr's Testimony Should Be Prohibited Under FED.R.EVID. 403. ....................................................................... 14

III. CONCLUSION ............................................................................................................... 15

CERTIFICATE OF SERVICE ..................................................................................................... 16

TABLE OF AUTHORITIES

**Cases**

*Bado–Santana v. Ford Motor Co.*, 364 F.Supp.2d 79 (D.Puerto Rico 2005) ................................... 8

*Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577 (5th Cir.2004).......................................... 2

*Chase v. General Motors*, 856 F.2d 17 (4th Cir.1988)........................................................................ 8

*Curtis v. M & S Petroleum, Inc.* 174 F.3d 661 (5th Cir.1999) ......................................................... 11

*Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed.Appx. 395 (5th Cir.2007) ................................................. 2

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311 (9th Cir.1993)(*Daubert II*) ............... 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)............................... 6, 11, 13

*E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005)....................................... 13

*Gladhill v. General Motors Corp.*, 743 F.2d 1049 (4th Cir.1984) ..................................................... 8

*Greenwell v. Boatwright*, 184 F.3d 492 (6th Cir.1999) ..................................................................... 6

*Guidroz-Brault v. Mo. Pac. R.R. Co.,* 254 F.3d 825 (9th Cir. 2001)................................................. 6

*Guild v. General Motors Corp.*, 53 F.Supp.2d 363 (W.D.N.Y.1999) ................................................ 8

*In re Air Crash Disaster at New Orleans*, 795 F.2d 1230 (5th Cir.1986)........................................... 7

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)................................................................ 2

*McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797 (6th Cir.2000)....................................................... 13

*Montgomery v. Mitsubishi Motors Corp.*, 2006 WL 1967361 (E.D.Pa. June 6, 2006) ...................... 8

*N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90 (Tex.App.—Dallas 1995, writ denied) 13

*Pannu v. Land Rover North America, Inc.*, 191 Cal.App.4th 1298 (2011)........................................ 5

*Pomella v. Regency Coach Lines, Ltd.*, 899 F.Supp. 335 (E.D.Mich.1995)................................... 13

*Ramseyer v. General Motors Corp.*, 417 F.2d 859 (8th Cir.1969) ..................................................... 8

*Roundy's Inc. v. NLRB*, 674 F.3d 638 (7th Cir.2012) .................................................................... 12

*Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791 (4th Cir.1989) ............................................... 7

*Tokio Marine & Fire Ins. Co. v. Grove Mfr. Co.,* 958 F.2d 1169 (1st Cir.1992).............................. 7

*United States v. Noel*, 581 F.3d 490 (7th Cir.2009)........................................................................ 12

*United States v. Posado*, 57 F.3d 428 (5th Cir.1995) ....................................................................... 6

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987) ................................................................. 6

**Rules**

FED.R.EVID. 403 .................................................................................................................. 12, 13

FED.R.EVID. 702 .................................................................................................................. 6, 11, 12

FED.R.EVID. 704(a) ..................................................................................................................... 12

Ollie Greene, Individually and as parent of Wyndell Greene, Sr., William Greene, as Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and the parent of LaKeysha Greene (collectively "Plaintiffs") file this Reply to Toyota's Response to Plaintiffs' motion to strike and/or exclude the testimony of Lee Carr ("Carr"), and shows the Court as follows:

## I. SUMMARY OF REPLY

In its response, Toyota practices the ancient Art of Deflection. Instead of spending all of the brief's space attempting to meet its burden of showing the potential reliability and relevance of Carr's testimony, Toyota spends significant space in its Response attacking the clearly objective and reliable opinions of Jeff Vick, Plaintiffs' expert – theatrically referring to Mr. Vick's thorough report as "superficial and flawed." Obviously, Toyota knew it had no way to defend the conclusory "opinions" of its "captive" expert, Carr, so it opted to try and divert the Court's attention away from Carr's testimony since, unlike Plaintiffs' experts, Carr admits that he did not visit the scene of the accident until more than a year after the collision. Therefore, unlike Plaintiffs' experts, Carr was unable to survey the accident scene closer in time to the accident and therefore could not observe and inspect the scene for skid marks, yaw marks, crook marks, gouges and metal scars, fluid collection areas, directional spills of cargo, burn marks, and locations of vehicle components. Also, unlike Plaintiffs' expert, Carr's reconstruction relies principally, not on the police or first-hand photographs, but on photographs (albeit incomplete) taken by another defendant in a previous action. Finally, Carr also admits that he testifies quite frequently on behalf of Toyota and Toyota's lawyers and that in just the last 10 years his company has grossed approximately $80,000,000 testifying for auto manufacturers like Toyota.

Thus, setting aside Toyota's transparent efforts to refract the Court's attention away from Carr's report by groundless attacks on Plaintiffs' expert, the picture is clear that Carr is basically Toyota's captive expert, one who is willing to, and did, provide subjective, unreliable and groundless conclusions as long as the opinions benefit Toyota in this litigation, without reference to the true facts.

## II. ARGUMENT AND AUTHORITIES

### A. Toyota Has Not Met Its Burden of Proving That Carr's Opinions Are Reliable.

In its Response, Toyota expresses confusion as to why Plaintiffs questioned Carr's qualifications as a result of his failure to follow a proper and reliable methodology in rendering his opinions. The issue is that since Carr noticeably did not conduct his analysis in the manner in which an impartial expert would have done, Plaintiffs are unable to discern whether Carr forced his opinions simply because he is Toyota's captive expert or whether he has a lack of experience in conducting a reconstruction of this magnitude. Nevertheless, even if Carr is qualified to analyze a multiple event crash such as this, it is obvious that the "actual" methodology he used does not meet the reliability test. As the Court is aware, however, the question of whether an expert's testimony is reliable is a fact-specific inquiry. *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir.2004). Toyota must prove the reliability of Carr's proffered testimony by a preponderance of the evidence. *Moore v. Ashland Chem. Inc*., 151 F.3d 269, 276 (5th Cir.1998) (en banc). "It is then the district court's responsibility to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Dart v. Kitchens Bros. Mfg. Co*., 253 Fed.Appx. 395, 398 (5th Cir.2007)( quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). Here, however, the fact-specific inquiry unmistakably leads to but one conclusion – Carr's testimony is unreliable and inadmissible.

Plaintiffs note that Toyota devotes several pages in its Response to asserting that there are "steps" Carr took that are "regularly used and generally accepted in the field of accident reconstruction." Plaintiffs have no reservations, or no direct evidence with which to dispute, whether Carr "reviewed" the photographs of the accident scene; "reviewed" the police reports; "reviewed" the witness statements; "reviewed" the accident vehicles; and "observed" the accident scene over a year later, although the accident marks and other evidence were gone. Plaintiffs also do not dispute Carr's assertion that these are steps a normal accident reconstructionist would take. The problem arises, however, when one considers "how" Carr used the information he simply "reviewed." And why he chose to disregard other relevant and persuasive evidence. In a last desperate attempt to save Carr's expert report, Toyota had Carr resort to comparing some of his opinions to those conclusions formed by Plaintiffs' reconstruction expert and the other two reconstructionists, who were retained by Volvo and Strick:

> As a part of my investigation, I have reviewed reports and deposition testimony of certain experts retained by both Plaintiffs and Defendants. Based on that review, **I have concluded that there is no controversy regarding the basic conditions and circumstances involving the crash that led to this lawsuit**. <u>All agree</u> regarding the crash location, and <u>all agree</u> that it involved four vehicles. <u>All agree</u> that two of those vehicles were semi-trailer trucks, all agree that one was a Toyota Corolla passenger car and <u>all agree</u> that one was a Toyota 4Runner. <u>All agree</u> that the Corolla, the 4Runner and one of the trucks was either travelling at a low speed or had stopped in response to traffic on the roadway ahead of them. <u>All agree</u> that one of the trucks approached the other three from the rear at a faster speed than those three and that a collision occurred because of that difference in speed. <u>All agree</u> that the first collision was between the higher speed truck and the rear of the 4Runner. <u>All agree</u> that the second collision was between the front of the 4Runner and the rear of the Corolla. <u>All agree</u> that there was a subsequent collision between the 4Runner and the rear of the second truck. <u>All agree</u> that there was yet another interaction of the higher speed truck and the 4Runner before the 4Runner came to rest. <u>All agree</u> that there was a fire involving the 4Runner as a result of the collisions. Although there are differences in the calculations of travel speeds, particularly with regard to the higher speed truck, there are only minor differences in the travel speeds of the other three vehicles among the reconstructionists. Based upon my own review, the differences among the opinions offered by

    Plaintiffs and Defendants primarily relate to issues of design and the details of the interaction between the vehicles as the crash sequence progressed.

Toyota-Carr APP[1] 147-48 (emphases added). However, with this sleight of hand, Toyota fails to address the major and fundamental areas where Carr's opinions now diverge from those formed by the investigating officers and Plaintiffs' expert, for instance. This is where the cherry-picking begins. Carr's parting of opinions from those of the investigating officers (and Jeff Vick's) is not simply a battle of experts that could be cured by a vigorous cross-examination of Carr. Here, Carr's methodology of ignoring the fundamental findings of the investigating officers is too flawed to be reliable. For instance, with regard to the police's investigation Carr's methodology included:

1. ignoring the investigation of the police reconstructionists, who did not conclude that Moody was exceeding the speed limit;

2. ignoring the investigation of the "experienced" police reconstructionists, who did not conclude that the 4Runner was sandwiched forcibly between the Volvo Truck and the Strick Trailer. The experienced investigators concluded that the Volvo truck played no role in directly forcing the 4Runner under the Strick Trailer;

3. disregarding the police reconstructionists' opinions of the shape and position of tire marks;

4. dismissing the police reconstructionists' opinions of the yaw rotation of the Toyota Corolla;

5. dismissing and ignoring the police reconstructionists' opinions of the accident's survey points;

6. dismissing the police reconstructionists' conclusion that traffic was not stopped at the time of the accident.

See, e.g. Carr Depo at 239:7 – 250:7. (Pltfs' APP[2] 064-075). In another case where Carr's methodology including ignoring the police's investigation of an accident, erring in his

---

[1] "Toyota-Carr APP" refers to the Appendix that Toyota submitted in support of its response to Plaintiffs' Motion to Exclude Carr's testimony - Doc. No. 537.

[2] "Pltfs' APP" refers to the original Appendix that Plaintiffs filed on March 17, 2014, in support of the motion to exclude this witness - Doc. 479.

measurements and claiming that skid marks would necessarily still be visible at the site when he inspected it more than two years after the accident, the appeals court found that the trial court was correct to discount his testimony. *Pannu v. Land Rover North America, Inc*., 191 Cal.App.4th 1298, 1317 (2011).  In his work in the instant case, Carr also ignored the multiple eye-witness accounts of the accident, none of which agree with his account of it.  For instance, Kyle Evans, the key eyewitness and the first person to reach the fiery 4Runner testified that the 4Runner skidded or yawed sideways into the Strick Trailer, simultaneously with the Volvo tractor veering to the right off the freeway. Evans Depo at 23:3 – 26:10.  Carr actually concedes that not a single eyewitness concurs with his theory that the Toyota 4Runner was "sandwiched" between the Volvo tractor and the Strick Trailer as Carr concludes.  Carr Depo at 219:7-22. (Toyota-Carr APP 114.  In other words, there was no sandwiching effect. Carr simply ignored the testimony of Kyle Evans and of every other witness who did not state that there was any "sandwiching" of the 4Runner between two tractors.

     It can hardly be said that a proper methodology could allow an expert to ignore every "fundamental" opinion of trained police investigators as well as every opinion of eyewitnesses in forming a reconstruction opinion.  These fundamental differences of methodology are what lead to the experts' difference in opinions on Mr. and Mrs. Greene's causes of death.  Carr had to ignore the police investigators' fundamental reconstruction opinions as well as the physical evidence in order to be able to provide opinions that are helpful to Toyota.  Likewise, Carr also ignored the opinions of the police investigators, eyewitness testimony, and testimony from the Volvo truck driver, that the truck driver took evasive action when he became aware of his proximity to the Toyota 4Runner.  If one looks at the Volvo truck's skid marks in the photograph (Toyota-Carr APP 28), it is clear that the truck driver has taken evasive action to avoid a direct

hit of the 4Runner into the Strick trailer. However, in order to support his novel "sandwich" theory, Carr's reconstruction had to ignore the truck driver's obvious evasive action in order to conclude that there was a direct sandwiching hit between the Volvo truck and the Strick trailer. See, Toyota-Carr APP 29. Carr also contends that he "validated" his work through the use of "recognized accident reconstruction computer simulation tools." Resp. at 8. While it may be true that Carr used computer simulation tools, the output is only as good as the input. Here, where Carr used biased and subjective numbers, speeds, number of impact, and assumptions as his input, the output will follow as biased and subjective.

Since Carr's testimony is not based on a reliable methodology as an accident reconstructionist, the testimony should be excluded as unreliable and prejudicial. In addition, since Carr ignored key undisputed facts from eye witnesses and police investigators and substituted his own facts, his opinions are conclusory and inadmissible. *See Viterbo v. Dow Chem. Co*., 826 F.2d 420, 421-22 (5th Cir. 1987) ("it is not so simply because 'an expert says it is so ...; if an expert brings to the court 'little more than his credentials and a subjective opinion,' his opinion amounts to no evidence"). Although FED.R.EVID. 702 does not require absolute certainty, it does mandate that the proffered knowledge be based on "good grounds" and that the testimony is "more than speculative belief or unsupported speculation." *United States v. Posado*, 57 F.3d 428, 433 (5th Cir.1995)(citing *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589-90 (1993). Finally, an expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts. *See Guidroz-Brault v. Mo. Pac. R.R. Co.,* 254 F.3d 825, 829-31 (9th Cir. 2001); *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir.1999) ("Expert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence."). Based on

accurate facts in the record showing that the true sequence of the accident and correct types of impacts differs from Carr's conclusions, the Court should preclude the opinions that Carr seeks to provide.

### B. Carr's Disregard of The Facts and His Role as a Professional Expert for Toyota and its Counsel Compel Preclusion of His Testimony.

Carr's complete disregard of key investigative facts, failure to use a proper methodology (accepting all facts), and his role as a professional expert dictate that the Court preclude him as an expert. Indeed, Carr's conclusory opinions may be influenced by the fact that he is a professional witness and essentially a captive expert for Toyota, Toyota's law firm Bowman and Brooke and Toyota's lead trial counsel in this case. Carr testified that he has been hired by Toyota over 200 times,[3] he has been hired by Bowman and Brooke approximately 150 times,[4] and he has worked with Toyota's current trial counsel, Kurt Kern, 40-50 times.[5] Carr also testified that he makes approximately $8 million per year working and testifying in defense of auto manufacturers.[6] In light of Carr's decision to ignore relevant evidence so that he could provide subjective opinions for those who pay him perhaps hundreds of millions, the Court should exclude his testimony. See, also. *Tokio Marine & Fire Ins. Co. v. Grove Mfr. Co.,* 958 F.2d 1169, 1174–1175 (1st Cir.1992) ("In a field like accident reconstruction that is more art than science, the trial judge has particular liberty to eschew 'professional witnesses.' "). Quoting the Fifth Circuit's decision in *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233–34 (5th Cir.1986), the judge stated:

> Experts also run the risk of becoming "nothing more than an advocate of policy before the jury."
> \* \* \* \* \* \*

---

[3] Carr Depo at 299:17-21(Toyota-Carr APP 134).

[4] Carr Depo at 302:6-15 (Toyota-Carr APP 135).

[5] Carr Depo at 302:16-19 (Toyota-Carr APP 135).

[6] Carr Depo at 304:9 – 305:24 (Toyota-Carr APP 135).

7

> The fact that a person spends substantially all of her time consulting with attorneys and testifying in trials is not a disqualification, but it is not an automatic qualification guaranteeing admission of expert testimony. **Experts whose "opinions are available to the highest bidder have no place testifying in a court of law, before a jury; and with the imprimatur of the trial judge's decision that [s]he is an 'expert[,]'** " and the trial judge must decide whether the signs of competence and of contribution of the proposed expert will aid in clearly presenting the dispute.

*Tokio Marine & Fire Ins. Co.*, 762 F.Supp. at 1018; *see also Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir.1989) ( "Although it would be incorrect to conclude that [witness's] occupation as a professional expert alone requires exclusion of her testimony, it would be absurd to conclude that one can become an expert simply by accumulating experience in testifying."); *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1317 (9th Cir.1993)(*Daubert II*) (noting that an expert's normal workplace should be "the lab or the field, not the courtroom or lawyer's office"). Accordingly, Carr's testimony and findings should be excluded for all purposes.

### C. Toyota Cannot Meet its Burden of Proof in Showing That the Dissimilar Exponent Crash Test is Reliable, Relevant or Admissible.

Brazenly, Toyota now claims that Carr "conducted a crash test of a substantially similar impact event. This is a deliberate misrepresentation. The crash test is already the subject of a motion to exclude filed in conjunction with the testimony of Mickey Marine. In that motion, Plaintiffs state the case law on the introduction of crash tests, which requires that the tests be substantially similar. "Admissibility of evidence depends upon a foundational showing of substantial similarity between the tests conducted and actual conditions." *Ramseyer v. General Motors Corp.*, 417 F.2d 859, 864 (8th Cir.1969). In *Chase v. General Motors*, 856 F.2d 17, 20 (4th Cir.1988), the Fourth Circuit noted:

> In products liability cases, expert witnesses necessarily may play a significant part .... When their testimony, however, is based upon the results of tests which were conducted under such different circumstances than those obtaining at the time of the accident complained of so as to make the results 'largely irrelevant, if not

8

> misleading,' [citing *Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1051 (4th Cir.1984) ], that testimony must be excluded.

*See, also Montgomery v. Mitsubishi Motors Corp.*, 2006 WL 1967361, *6 (E.D.Pa. June 6, 2006)(the manner in which the tests were conducted were not substantially similar to the accident that caused the injuries); *Bado–Santana v. Ford Motor Co.*, 364 F.Supp.2d 79, 99–100 (D.Puerto Rico 2005)(same); *Guild v. General Motors Corp.*, 53 F.Supp.2d 363, 367 (W.D.N.Y.1999). Here, it is undisputed that the May 28, 2010, accident involved multiple vehicles, i.e. a Volvo tractor, towing a Great Dane trailer; a 2010 Toyota 4Runner; a 2006 Toyota Corolla; and a 2005 Freightliner tractor, towing a 2004 Strick dry-freight trailer. Likewise, there is no dispute that the accident involved four occupants in the 4Runner. It is also acknowledged that the accident involved multiple collisions, whereby after the Volvo tractor struck the 4Runner, the 4Runner eventually made contact with the Corolla then the Strick trailer. The experts all agree that during the sequence of crash events the 4Runner yawed and had lateral contact with the Strick trailer. All of the vehicles, except perhaps the Freightliner and Strick trailer, which were allegedly stopped in the middle of an active freeway, were still moving. Likewise, there is no disagreement that a fire erupted in the 4Runner during the crash sequence as a result of a breach of the 4Runner's fuel system.

As regarding the crash test that Carr now claims he relied on, however, it is in no way substantially similar to the May 28, 2010, accident. That is because, among other things, the staged crash test: (1) does not involve exemplars of the other vehicles from the original crash; (2) does recreate all impacts in the accident; (3) uses an impact point between the Volvo tractor and the 4Runner that is different from the impact point in the accident; (4) did not include the braking of the Volvo tractor before impact as the driver described; (5) ignores the evasive actions taken by the Volvo driver during the actual accident; (6) uses different impact speeds than those suggested by

9

Toyota's expert; and (7) uses a stationary Toyota 4Runner. Without using all vehicles to recreate all collisions, there is no way to determine what caused the deaths of the Greene family or to determine how the fire erupted in the 4Runner. In fact, Marine does not profess to offer a fire origin opinion or have any knowledge of the fuel system of the 4Runner. Furthermore, the Exponent agent, Marine, could not have set up a proper substantially similar recreation of the accident since he admits that he is not even aware of the full sequence of events of the May 28, 2010, crash. Marine Depo at 29:13-19 (Pltfs' APP 0134). In other words, although the video is represented to be a "potential" re-enactment of a single event that occurred during the May 28, 2010, crash it is clearly not substantially similar to the underlying accident.

In addition, there are other issues with the supposed methodology used in that test. Toyota did not use high-speed cameras underneath the crash vehicle to detect the motion of the defective fuel system components or the presence of the fuel leak, although Marine acknowledged that NHTSA crash tests are known to use high-speed cameras underneath a crash vehicle to be able to evaluate such results. Marine Depo at 26:15 – 28:6 (Pltfs' APP 0131-33). In addition, as discussed in Marine's Motion to Exclude, Marine has also acknowledged that the narrator, whose voice is heard on the walk-up portion of the crash test videotape, allegedly describing the results of the test is Kurt Kern, who is Toyota's lead trial counsel. Marine Depo at 42:17 – 43:17 (Pltfs' APP 0135-36). This is hardly independent expert testimony. It should also be an unacceptable methodology to have trial counsel dictate the terms of the crash set-up and narrate the alleged results of the crash test. Thus, Carr should not be permitted to rely on or reference this test in any way.

      **D.**      **Toyota's Response Does Not Explain Adequately Why The Court Should Allow Carr to Provide His Opinion, a Lay One At Best, As to Whether There Was a Fuel Leak or a Fuel System Breach at the First Impact.**

In the motion to exclude, Plaintiffs asked that the Court preclude Carr from making what would be perceived as an expert opinion as to whether the 4Runner's fuel leak occurred during the initial impact with the Volvo tractor. In the Response Toyota concedes that "Carr has not analyzed the exact timing of the fuel system breach…." Resp. at 14. In addition, during his deposition, Carr admitted that his conclusion as to whether there was a fuel leak "is based solely on [his] review of the photographs." Carr Depo at 171:17-20 (Pltfs' APP 063). Therefore, Carr's testimony is not expert testimony and is not helpful to a jury, who can look at the same photographs at which Carr looked for his lay and subjective opinion. Thus, Carr's conclusion is inadmissible. As to the breach of the fuel system, Carr was unequivocal that he has "not done any expert analysis to be able to tell a Jury the extent of the damage to the fuel tank or fuel system area that was caused by Impact No. 1." Carr Depo at 153:13 – 154:5 (Pltfs' APP 061-062). Consequently, Toyota has not met its burden of establishing that Carr employed any methodology, much less a reliable one, in forming any opinion as to the fuel system breach. Therefore, these opinions, if any, should be excluded.

      **E.**      **Toyota Cannot Meet Its Burden of Showing That Carr Should Be Allowed to Give Any Opinions or "Observations" Regarding the Design of the 4Runner.**

In the Response, under the cover of darkness, Toyota slyly seeks permission to have Carr offer expert design opinions disguised as "observations." Toyota argues that Carr should be able to "make 'observations' regarding the structural damage to the 4Runner and its severity'" and that he should be able to "characterize the damage and compare that damage to what one would see in Federal Motor Vehicle Safety Standards crash tests 208, 214, and 301." This is improper expert testimony. For one, Carr admits that he was hired only to reconstruct the accident, which indicates

11

either that he does not have the expertise to provide these other opinions <u>and/or</u> this is Carr's concession that he did not follow a reliable methodology to be able to give opinions that go to the heart of the question of whether the fuel system was defectively designed. Second, Toyota has not met its burden under 702 by a preponderance of evidence. In fact, Toyota has hired other experts whose job it was to allegedly give opinions on the design of the 4Runner. Carr is not that guy.

### F. Toyota Has Not Met Its Burden of Showing That Carr Should Be Allowed to Opine Whether the 4Runner Complied With Federal Safety Standards.

In the Response, Toyota shamelessly asserts that Plaintiffs "cite no Fifth Circuit or Texas precedent… that Carr cannot testify on whether the 4Runner complied with federal motor vehicle safety standards." In doing so, Toyota apparently has forgotten that as the proponent for Carr's testimony, it is Toyota that has the burden to demonstrate (1) that Carr's findings and conclusions are "based on the scientific method, and, therefore, are reliable;" and (2) that Carr's "reasoning or methodology can be properly applied to the facts in issue." *Curtis v. M & S Petroleum, Inc*. 174 F.3d 661, 668 (5th Cir.1999) (citing *Daubert*, 509 U.S. at 592–93). Thus, it is Toyota's burden to cite authorities allowing such testimony from Carr, which it has not done. And Toyota would have the Court disregard Plaintiffs' authorities concluding that allowing Carr to testify as to compliance with safety standards is improper. In addition, even if this form of testimony were allowable, Toyota's assertion that Carr worked "at Ford Motor Company," does not demonstrate that Carr applied any methodology to ascertain whether the 2010 Toyota 4Runner complied with any standards. Consequently any opinions from Carr would be improper.

### G. Toyota Has Not Met Its Burden of Showing That Carr Should Be Allowed to Instruct the Jury On The Ultimate Conclusions.

As argued in Plaintiffs' motion to exclude, Carr has formed certain opinions that are simply inadmissible under Rule 702, such as:

85. The crash sequence was initiated when Charles Moody, the driver of the Forest Products semi-trailer truck, <u>failed to slow appropriately</u> and struck the rear of the 4Runner that had slowed in response to traffic conditions ahead of it. The Forest Products tractor-trailer then pushed the 4Runner into the back of the Corolla that had also slowed in response to traffic conditions. The Corolla spun out of the way but the 4Runner struck the back of the Strick trailer just before it was crushed between the Forest Products tractor-trailer and that trailer. It is this latter event that <u>caused catastrophic damage</u> to the 4Runner's structures and occupant compartment.

86. The <u>root cause of this crash</u> and the injuries and damage that resulted was that Mr. Moody <u>did not act as a reasonable and responsible driver</u>.

Toyota predictably argues that FED.R.EVID. 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." However, "[t]he committee notes to ... Rule [704] explain ... that Rule 702, which requires that opinion be helpful to the trier of fact, and Rule 403, which provides for exclusion of evidence that wastes time, 'afford assurance against the admission of opinions which would merely tell the trier of fact what result to reach.'" *Roundy's Inc. v. NLRB*, 674 F.3d 638, 648 (7th Cir.2012) (quoting FED.R.EVID. 704, 1972 advisory committee notes) (some alterations omitted). That is precisely what Carr's opinions would do if he were allowed to present them at trial, which renders them inadmissible. *See United States v. Noel*, 581 F.3d 490, 497 (7th Cir.2009) ("Regardless of whether [witness] was an expert, he could not merely tell the jury what result to reach."). In addition, although Toyota argues that since Jeff Vick opines on driver standard of care and driving regulations, Carr should be permitted to do so as well. However, Toyota fails to mention that Vick has over twenty years of experience specifically investigating driver behavior and enforcing traffic regulations. On the other hand, Toyota cannot meet its burden of proof of showing that Carr (1) is qualified to provide expert testimony on driver standard of care and driving regulations, (2) employed a reliable methodology in arriving at his conclusions; and (3) that Carr's reasoning or methodology can be properly applied to the facts in issue. Therefore, Carr's opinions regarding the causes of the crash, or causes of the deaths, should be excluded.

### H.     Toyota's Response Simply Reinforces Why Carr's Testimony Should Be Prohibited Under FED.R.EVID. 403.

In its Response, Toyota argues that Carr is the "most qualified and experienced accident reconstruction expert in this case." Resp. at 17. Indeed, it is Toyota's pronouncement of Carr as a decorated and highly-experienced accident reconstructionist that make Carr's subjective testimony so prejudicial. There is no doubt Toyota plans to parade Carr's experience and qualifications in front of the jury, who will no doubt accept this experienced reconstructionist's testimony as credible. The problem however, as discussed above, is that Carr ignored the police investigators' conclusions and failed to employ a reliable methodology to reach objective opinions. He simply reached the conclusions that $80 million can buy. Therefore, Carr's purported expert testimony should be excluded because its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. FED.R.EVID. 403; *Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."); s*ee also, E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005); *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex.App.—Dallas 1995, writ denied) ("courts should exclude . . . evidence [when] the expert's opinion would be more likely to prejudice or confuse than to assist the trier of fact."). This clearly evinces that Carr's testimony is tailored to suit Toyota's litigation strategy, without resort to the true facts. *See McLean* 224 F.3d at 800-01 ("[A]n expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by good grounds, based on what is known.") (quoting *Pomella v. Regency Coach Lines, Ltd.*, 899 F.Supp. 335, 342 (E.D.Mich.1995)).

In other words, Carr's subjective conclusions and pronouncements should not be labeled as "expert opinions," from someone who Toyota will refer to as "the most qualified accident reconstruction expert in the case." Carr's opinions are biased, and/or his testimony would serve only to confuse and mislead a jury that his conclusory statements are supposedly expert opinions.

### III. CONCLUSION

Permitting Carr to testify without his having considered and applied all of the relevant evidence in his analysis would cause severe prejudice to Plaintiffs. It is plainly obvious that Carr chose not to utilize a methodology used by other experts in the field of considering all evidence and not arbitrarily dismissing findings of trained police investigators. Plaintiffs therefore reiterate their request that the Court strike the Carr Report and accompanying testimony, not consider the same as evidence for any purpose, and grant Plaintiffs such other and further relief, in law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted,

/s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

/s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2014 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

    /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN