IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, | § § § § § § § § | |
| Plaintiffs, | § | |
| v. | § § | CAUSE NUMBER: 3:11-cv-0207-N |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC. | § § § § § § § § § § § § § § | |
| Defendants. | § | |

---

**PLAINTIFFS' REPLY TO STRICK'S RESPONSE TO PLAINTIFFS'
MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF DAVID VIANO**

---

AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax

**ATTORNEYS FOR PLAINTIFFS**

DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax

TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................ iii

I.      SUMMARY OF ARGUMENT .......................................................................... 1

II.     ARGUMENT  AND AUTHORITIES ............................................................... 1

        A.      Viano's Omnibus Expert Testimony Requires Exclusion by the Court. ................. 1

        B.      Strick Has Not Met its Burden of Proof as to Viano's Testimony. ........................ 2

        C.      Strick's Response Did Not Establish That Viano's Testimony Regarding Mrs.
                Greene's Death is The Product of Reliable Principles and Methods. ..................... 4

        D.      Strick's Response Did Not Establish That Viano's Testimony Regarding Mr.
                Greene's Injury is The Product of Reliable Principles and Methods. ..................... 5

        E.      Strick's Response Did Not Establish That Viano's Use of the NASS-CDS
                Database is The Product of Reliable Principles and Methods. ................................ 6

        F.      Strick's Response Did Not Establish That Viano's Comment Regarding Hair
                Follicles and Blood Identification are The Product of Reliable Principles and
                Methods. .......................................................................................................... 7

        G.      Strick's Response Did Not Establish That Viano's Comments Regarding the
                Underride Guard Design Are Based on Expert Qualifications or Are The
                Products of Reliable Principles and Methods. ..................................................... 7

        H.      Strick's Response Did Not Establish That Viano's Comments Regarding
                LaKeysha Greene's Pain and Suffering Are Based on Expert Qualifications
                or Are The Products of Reliable Principles and Methods. .................................... 7

        I.      Strick's Response Did Not Establish That Viano's Comments Regarding a
                Casual or Would-be Reconstruction Are Based on Expert Qualifications or
                Are The Products of Reliable Principles and Methods. ........................................ 8

        J.      Strick Cannot Meet its Burden of Proof in Showing That the Dissimilar
                Exponent Crash Test is Reliable, Relevant or Admissible. ................................... 9

        K.      Strick's Response Does Not Establish Why Plaintiffs' Other Requests in
                the Motion to Exclude Are Not Appropriate and Timely. .................................... 11

        L.      Strick's Response Does Not Establish Why Viano's Testimony is Not Also
                Inadmissible under FED.R.EVID. 403. ............................................................. 12

III.    CONCLUSION ............................................................................................... 13

        CERTIFICATE OF SERVICE ...................................................................... 14

TABLE OF AUTHORITIES

**Cases**

*Bado–Santana v. Ford Motor Co.*, 364 F.Supp.2d 79 (D.Puerto Rico 2005) ................................. 10

*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227 (10th Cir.2004) ............................................................... 4

*Chase v. General Motors*, 856 F.2d 17 (4th Cir.1988) ....................................................................... 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .................................... 2, 3, 12

*E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005) ........................................... 12

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ................................................................................. 3

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997) ....................................................................... 7

*Gladhill v. General Motors Corp.*, 743 F.2d 1049 (4th Cir.1984) .................................................... 9

*Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987 (10th Cir.2003) ................................. 3

*Guild v. General Motors Corp.*, 53 F.Supp.2d 363 (W.D.N.Y.1999) ............................................. 10

*Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193 (10th Cir.2002) ............................................... 4

*Hooten v. City of Hondo*, 2006 WL 5159387 (W.D.Tex. 2006) ....................................................... 11

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir.1994) .......................................................... 3

*King v. Allstate Ins. Co.*, 2013 WL 3943607 (D.Colo. Jul 31, 2013) ............................................... 2

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) .............................................................. 2

*McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797 (6th Cir.2000) ...................................................... 12

*Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706 (Tex.1997) .............................. 2, 4

*Montgomery v. Mitsubishi Motors Corp.*, 2006 WL 1967361 (E.D.Pa. June 6, 2006) ...................... 9

*N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90 (Tex.App.—Dallas 1995, writ denied)  12

*Pomella v. Regency Coach Lines, Ltd.*, 899 F.Supp. 335 (E.D.Mich.1995) ................................... 12

*Ramseyer v. General Motors Corp.*, 417 F.2d 859 (8th Cir.1969) .................................................... 9

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir.1987) .................................................................. 4

**Rules**

FED.R.EVID. 401 ................................................................................................................................. 3

FED.R.EVID. 403 ............................................................................................................................... 12

FED.R.EVID. 702 ................................................................................................................................. 2

Ollie Greene, Individually and as parent of Wyndell Greene, Sr., William Greene, as Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and the parent of LaKeysha Greene (collectively "Plaintiffs") file this Reply to Strick Trailers, LLC's ("Strick") Response to Plaintiffs' motion to strike and/or exclude the testimony of David Viano, ("Viano") and show the Court as follows:

## I.       SUMMARY OF ARGUMENT

As argued in Plaintiffs' Motion to Exclude Viano's testimony, this expert simply tries to do too much to help Strick's case. And although Strick goes to great lengths to argue how eminently qualified Viano is, it does little to explain how or why he should be allowed to provide opinions in areas where he clearly misapplied established methodologies or failed to follow all steps necessary in a given methodology. Despite his membership in various organizations, membership alone does not ensure that a member always practices what he or she preaches. In this case, Viano spreads himself too thin, all to benefit Strick. Here it is obvious that Strick cannot meet its burden of showing that all of Viano's conclusions are based upon scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue; or that Viano's conclusions are based on sufficient facts or data and is not the product of reliable principles and methods he has applied reliably to the facts of the case.

## II.       ARGUMENT  AND AUTHORITIES

### A.       Viano's Omnibus Expert Testimony Requires Exclusion by the Court.

Strick claims that Viano is "one of the most qualified biomechanics in the world." Resp. at 1. And throughout its Response Strick basically suggest that Viano can provide testimony on virtually every aspect of the May 28, 2010, crash – from reconstruction to kinematics to injury mechanisms to vehicle design defects to blood identification to pain and suffering to causes of

death.  Taking Strick's argument to its logical extreme, Strick would have the Court believe that there is no need for any other expert in this case – that Viano can do it all.  In other words, the other 19 experts are superfluous. Indeed, it is overreaching testimony like that which Viano is offering that create the need for courts to place special emphasis on being a gatekeeper. Therefore, Plaintiffs would ask that the Court rein in Viano's testimony as a result of his decision to offer multiple conclusory opinions designed only to exonerate Strick from liability as a result of its design defects, negligence, and failure to warn. And this would not be the first time that Viano has been excluded for overreaching as an expert.  *See, e.g. King v. Allstate Ins. Co*., 2013 WL 3943607 (D.Colo. Jul 31, 2013)(court excluded Viano's opinions regarding impact damage, vehicle deformation and accident severity, crash tests, occupant injury, evaluation of injuries, insurers' duties and obligations, and type of understanding known to company agents).

### B.  Strick Has Not Met its Burden of Proof as to Viano's Testimony.

"The purpose of the *Daubert* inquiry is to scrutinize proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).)  FED.R.EVID. 702 of the Federal Rules of Evidence specifically addresses testimony from expert witnesses. "Where such testimony's factual basis, data principles methods or their application are called sufficiently into question, the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of the [relevant] discipline.'" *Kumho Tire* 526 U.S. at 149 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 592 (1993).  In other words, the Court plays the role of the gatekeeper as to (1) the existence of sufficient facts and/or data to allow an expert to reach a conclusion and; (2) the reliability of the principles and methods used to arrive at those opinions. *Id*. To be reliable, an expert's proffered testimony must have "a reliable basis in the knowledge and

experience of his discipline." *Daubert*, 509 U.S. at 592. In making that determination, the district court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93, 113 S.Ct. 2786. While "absolute certainty is not required," an expert's opinion "must be based on scientific knowledge, which implies a grounding in the methods and procedures of science based on actual knowledge, not mere subjective belief or unsupported speculation." *Goebel v. Denver & Rio Grande W. R.R. Co*., 346 F.3d 987, 991 (10th Cir.2003) (quotations omitted). "Generally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Id.* at 992. "However, an expert's conclusions are not immune from scrutiny: 'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Id.* (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146, 118 S.Ct. 512. The proponent of the testimony must establish, by a preponderance of the evidence, that the expert's testimony is reliable. *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 744 (3d Cir.1994). Here, Strick cannot establish that all of Viano's testimony passes the reliability principle.

An expert's testimony must also be relevant—it must assist the fact-finder in understanding the evidence or determining a fact in issue. *Daubert*, 509 U.S. at 591. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401. The Supreme Court has described the consideration of whether an expert's testimony is relevant as one of "fit." *Daubert*, 509 U.S. at 591. The reasoning or methodology underlying the expert's opinion must be able to be properly applied to the facts in issue. *Hollander v.*

*Sandoz Pharm. Corp.*, 289 F.3d 1193, 1204 (10th Cir.2002). "A trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir.2004). "Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant 'fit.'" *Id.* Strick has not demonstrated that all of Viano's testimony has relevant fit.

### C. Strick's Response Did Not Establish That Viano's Testimony Regarding Mrs. Greene's Death is The Product of Reliable Principles and Methods.

In the Response, Strick avers generally that Viano used a surrogate study to determine that Mrs. Greene's head allegedly struck the trailer body above the underride guard despite that Viano used a totally different underride guard in the study than the underride guard that was on the original trailer. Viano did not even test the energy-absorbing principles of the surrogate underride guard. And instead of proving whether the same type of underride guard would have made a difference, Viano asks the Court to simply accept his word that it would not have made a difference. This does not pass the reliability or relevance tests. An expert's own subjective opinion, without objective validation or scientific support, amounts to mere speculation and will not assist the trier of fact. See *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex.1997) ("it is not so simply because 'an expert says it is so' ")(quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 421 (5th Cir.1987)). Likewise, Viano formed opinions of Mrs. Greene's injuries based on property damage that was on the trailer where he assumed, without any evidence, that this was the same structural damage that occurred nearly four years ago. In addition, despite that all witnesses testified that Mrs. Greene struck her head underneath the Strick trailer, leaving blood and hair follicles, Viano dismissed this testimony as irrelevant. Furthermore, without doing any testing to

determine the actual impact of side airbags and the performance of the 4Runners' seatbelt anchorage, Viano unashamedly dismisses the other alternative observed by everyone else – that Mrs. Greene was ejected underneath the Strick Trailer, where she struck her head against rigid portions underneath the Strick trailer, causing cause a hinge fracture at the base of her skull or atlanto-occipital ("AO") dislocation.   In attempting to justify his methodological inadequacies, Viano asserts that Dr. Joseph Burton, Plaintiffs' expert, also uses surrogate studies.  However, in his studies, Dr. Burton does not make the fundamental misassumptions that Viano makes.  Dr. Burton also relies on design experts who provide valuable information to him about the performance of various relevant components.  Viano just assumed, without any real analysis, that vehicle restraints were irrelevant.

In addition, in the Response, Strick implies that it is Plaintiffs' burden to establish that Viano could have conducted a test to determine whether Mrs. Greene's injuries were suffered underneath the trailer.  Resp. at 6.  However, although Plaintiffs have evidence with which to prove that Mrs. Greene was killed underneath the trailer, Strick fails to acknowledge that it is Strick's burden to prove that Viano's testimony is relevant; based on reliable principles, methodologies and foundational data; and otherwise admissible.  *McNabney v. Laboratory Corporation of America*, 2004 WL 3241969 at *1 (W.D.Tex.2004).  Here, Strick has offered no acceptable basis for a finding that Viano's testimony concerning Mrs. Greene's death or the impact that the 4Runner's occupant restraint systems had on Mrs. Greene would be reliable.  Hence, his testimony must be excluded.

### D.      Strick's Response Did Not Establish That Viano's Testimony Regarding Mr. Greene's Injury is The Product of Reliable Principles and Methods.

In the Response, Strick provides two sentences allegedly in support of its proffer that Viano testify regarding Mr. Greene's "non-fatal traumatic injuries."   However, the record is clear that Viano did not perform a surrogate study or any other testing to determine the circumstances or

occupant kinematics involving Mr. Greene.  Thus, Strick has not met its burden and Viano's testimony regarding Mr. Greene must be excluded.

> **E.**    **Strick's Response Did Not Establish That Viano's Use of the NASS-CDS Database is The Product of Reliable Principles and Methods.**

In the Response, Strick argues that the National Automotive Sampling System ("NASS") Collision Data System ("CDS") "is widely used, not only by NHTSA, but by safety researchers in the automotive industry and elsewhere." Plaintiffs do not dispute that experts occasionally will use data from the NASS-CDS database, other NHTSA databases, or the IIHS database.  However, reliability issues arise if the data is not handled and categorized correctly under the circumstances. If a correct classification of vehicles, circumstances and/or accidents is not made, the methodology becomes unreliable, resulting in conclusions that are skewed, erroneous, and highly prejudicial. That is what happened here.  Therefore, even if Strick was going to use the NASS database (which Plaintiffs contend is inappropriate here) the crash parameters should have included substantially similar rear-end highway collisions.  Here, there is no evidence that Viano included or removed occupants from the test results depending on if air bags deployed or if the vehicle was not an SUV or whether the impact was offset or oblique.  Rear end accidents are by no means unusual. But inclusion of dissimilar accidents would have completely changed these results.

Viano's decision to rely on skewed crash comparisons and inapplicable research or surveys make his testimony too questionable for jury consumption.  The methodology he claims to have used cannot be attacked simply by cross examination. Indeed, the Court's fact-specific inquiry of his work should unmistakably lead to but one conclusion – Viano's work is unreliable and inadmissible.

**F.      Strick's Response Did Not Establish That Viano's Comment Regarding Hair Follicles and Blood Identification are The Product of Reliable Principles and Methods.**

In the Response, Strick simply asks the Court to accept Viano's testimony that the blood and hair follicles belonged to Wyndell Greene, II and were deposited underneath the trailer post-mortem simply "because he says so."  However, as demonstrated in Plaintiffs' motion to exclude, based on the investigating officers comparison of the hair follicles to Mrs. Greene's hair and the location of the blood relative to Mrs. Greene, the hair follicles and blood were determined to be those of Mrs. Greene.  Accordingly, Viano's ipse dixit does not satisfy Strick's burden of reliability.  See, *General Electric Co. v. Joiner*, 522 U.S. 136 (1997):  Consequently, this opinion must be precluded.

**G.      Strick's Response Did Not Establish That Viano's Comments Regarding the Underride Guard Design Are Based on Expert Qualifications or Are The Products of Reliable Principles and Methods.**

In the motion to exclude, Plaintiffs asked that the Court prohibit Viano from expressing any opinions regarding underride guards including, but not limited to, performance, design and capabilities of underride guards as well as the occurrence, timing, location, sequence, impact, cause, nature, extent, or any other aspect of the breach of the underride guard in this case.  In the Response, Strick has failed to meet its burden of establishing that Viano is qualified to provide any such opinions or that he followed used a reliable methodology to be able to render any opinions whatsoever on underride guard issues.  Thus, the motion should be granted.

**H.      Strick's Response Did Not Establish That Viano's Comments Regarding LaKeysha Greene's Pain and Suffering Are Based on Expert Qualifications or Are The Products of Reliable Principles and Methods.**

In the motion to exclude, Plaintiffs asked that the Court prohibit Viano from expressing any opinions regarding Lakeysha Greene's pain, suffering and agonal period as she died underneath the Strick trailer.  That is because Viano has not established that he is medically qualified to give

opinions on conscious pain and suffering or agonal periods.  He has not practiced medicine clinically and admits that he is not medically qualified to contradict a medical opinion or an autopsy.  Viano Depo at 107:9 – 108:1. Viano has also not identified medical examiner reports, eye witness accounts or any reliable information that would permit him to make any conclusions. In addition, he has not shown that he has undertaken any methodology to allow him to form expert opinions.  His opinion is simply conclusory and inadmissible.  Thus, Strick has not met its burden as to Viano's conclusory statements.

> **I.**   **Strick's Response Did Not Establish That Viano's Comments Regarding a Casual or Would-be Reconstruction Are Based on Expert Qualifications or Are The Products of Reliable Principles and Methods.**

In the motion to exclude, Plaintiffs asked that the Court prohibit Viano from expressing any opinions regarding the crude quasi-reconstruction in which he infers he began to engage.  His testimony should be excluded since he has not shown acceptable expertise and because his testimony is contrary to eye witness accounts, contrary to the investigating officers' conclusions, not based on sufficient data and is not reliable.  Although Viano alleges that there is evidence to support his and Michelle Vogler's sandwich theory, the testimony Viano cites comes from an inexperienced police investigator, Countryman, who was being questioned for the very first time regarding an accident investigation.  In addition, Countryman's testimony does not allege, as Strick contends, that the Volvo tractor was connected directly with the 4Runner when it went underneath the Strick trailer.  Furthermore, Kyle Evans, the key eyewitness and the first person to reach the fiery 4Runner testified that the 4Runner skidded or yawed (independently) sideways into the Strick Trailer, simultaneously with the Volvo tractor veering to the right off the freeway. Evans Depo at 23:3 – 26:10.  In other words, there was no sandwiching effect. Viano and Vogler simply ignored the testimony of Kyle Evans and of every other witness who did not agree that there was any "sandwiching" of the 4Runner between two tractors.  Likewise, Viano and Vogler

also ignored the opinions of the police investigators, eyewitness testimony, and testimony from the Volvo truck driver, that the truck driver took evasive action when he became aware of his proximity to the 4Runner.  In other words, Viano's and Vogler's reconstruction had to ignore the Volvo truck driver's obvious evasive action in order to conclude that there was a direct sandwiching hit between the Volvo truck and the Strick trailer.

Nonetheless, Strick did not meet its burden in the Response of showing that Viano's testimony is relevant; based on reliable principles, methodologies and foundational data; and otherwise admissible.  Accordingly, it should be excluded.

### J.   Strick Cannot Meet its Burden of Proof in Showing That the Dissimilar Exponent Crash Test is Reliable, Relevant or Admissible.

As argued in the Motion to Exclude, Viano should not be permitted to rely on or refer to a crash test that was allegedly performed at the behest of Toyota's trial counsel.  The crash test is already the subject of a motion to exclude filed in conjunction with the testimony of Mickey Marine.  In that motion, Plaintiffs rely on the case law on the introduction of crash tests, which requires that the tests be substantially similar. "Admissibility of evidence depends upon a foundational showing of substantial similarity between the tests conducted and actual conditions." *Ramseyer v. General Motors Corp.*, 417 F.2d 859, 864 (8th Cir.1969).  In *Chase v. General Motors*, 856 F.2d 17, 20 (4th Cir.1988), the Fourth Circuit noted:

> In products liability cases, expert witnesses necessarily may play a significant part .... When their testimony, however, is based upon the results of tests which were conducted under such different circumstances than those obtaining at the time of the accident complained of so as to make the results 'largely irrelevant, if not misleading,' [citing *Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1051 (4th Cir.1984) ], that testimony must be excluded.

*See, also Montgomery v. Mitsubishi Motors Corp.*, 2006 WL 1967361, *6 (E.D.Pa. June 6, 2006)(the manner in which the tests were conducted were not substantially similar to the accident that caused the injuries); *Bado–Santana v. Ford Motor Co.*, 364 F.Supp.2d 79, 99–100 (D.Puerto

Rico 2005)(same); *Guild v. General Motors Corp*., 53 F.Supp.2d 363, 367 (W.D.N.Y.1999).  Here, it is undisputed that the May 28, 2010, accident involved multiple vehicles, i.e. a Volvo tractor, towing a Great Dane trailer; a 2010 Toyota 4Runner; a 2006 Toyota Corolla; and a 2005 Freightliner tractor, towing a 2004 Strick dry-freight trailer.  Likewise, there is no dispute that the accident involved four occupants in the 4Runner.  It is also acknowledged that the accident involved multiple collisions, whereby after the Volvo tractor struck the 4Runner, the 4Runner eventually made contact with the Corolla then the Strick trailer.  The experts all agree that during the sequence of crash events the 4Runner yawed and had lateral contact with the Strick trailer.  All of the vehicles were still moving, except perhaps the Freightliner and Strick trailer, which were allegedly stopped in the middle of an active freeway.  Likewise, there is no disagreement that a fire erupted in the 4Runner during the crash sequence as a result of a breach of the 4Runner's fuel system.

The crash test is in no way substantially similar to the May 28, 2010, accident.  That is because, among other things, the staged crash test: (1) does not involve exemplars of the other vehicles from the original crash; (2) does recreate all impacts in the accident; (3) uses an impact point between the Volvo tractor and the 4Runner that is different from the impact point in the accident; (4) did not include the braking of the Volvo tractor before impact as the driver described; (5) ignores the evasive actions taken by the Volvo driver during the actual accident; (6) uses different impact speeds than those suggested by Toyota's expert; and (7) uses a stationary Toyota 4Runner. Without using all vehicles to recreate all collisions, there is no way to determine what caused the deaths of the Greene family or to determine how the fire erupted in the 4Runner.  In fact, Marine does not profess to offer a fire origin opinion or have any knowledge of the fuel system of the 4Runner.  Furthermore, the Exponent agent, Marine, could not have set up a proper substantially similar recreation of the accident since he admits that he is not even aware of the full sequence of

events in the May 28, 2010, crash.  Marine Depo at 29:13-19 (Pltfs' APP 0134).  In other words, although the video is represented to be a "potential" re-enactment of a single event that occurred during the May 28, 2010, crash it is clearly not substantially similar to the underlying accident.

In addition, there are other issues with the supposed methodology used in that test.  Toyota did not use high-speed cameras underneath the crash vehicle to detect the motion of the defective fuel system components or the presence of the fuel leak, although Marine acknowledged that NHTSA crash tests are known to use high-speed cameras underneath a crash vehicle to be able to evaluate such results.  Marine Depo at 26:15 – 28:6 (Pltfs' APP 0131-33).  In addition, as discussed in Marine's Motion to Exclude, he has also acknowledged that the narrator whose voice is heard on the walk-up portion of the crash test videotape, allegedly describing the results of the test is Kurt Kern, who is Toyota's lead trial counsel.  Marine Depo at 42:17 – 43:17 (Pltfs' APP 0135-36).  This is hardly independent expert testimony.  It should also be an unacceptable methodology to have trial counsel dictate the terms of the crash set-up and narrate the alleged results of the crash test.  Thus, Viano should not be permitted to rely on or reference this test in any way.

### K.      Strick's Response Does Not Establish Why Plaintiffs' Other Requests in the Motion to Exclude Are Not Appropriate and Timely.

In the Response, Strick claims that other issues raised in Plaintiffs' motion to exclude, such as "underride design issues, clinical opinions, FMVSS compliance, causation, ultimate conclusion testimony, etc. are not appropriate to address at this time.  However, courts have determined that resolution of such issues is customarily made prior to trial, when the court has more of an opportunity to fully consider the issues, without the rush of trial.  *See, e.g. Hooten v. City of Hondo*, 2006 WL 5159387 (W.D.Tex. 2006).  Thus, to the extent Strick's Response did not respond to these arguments, Plaintiffs ask that Viano's testimony on these issues be stricken entirely.

**L.    Strick's Response Does Not Establish Why Viano's Testimony is Not Also Inadmissible under FED.R.EVID. 403.**

Viano's purported expert testimony should be excluded also because its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  FED.R.EVID. 403; *Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."); s*ee also, E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005); *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex.App.—Dallas 1995, writ denied) ("courts should exclude . . . evidence [when] the expert's opinion would be more likely to prejudice or confuse than to assist the trier of fact.").  A review of Viano's wide-ranging opinions evinces that his testimony is specially tailored to suit Strick's and the other defendants' litigation strategy, without resort to the true facts.  *See McLean* 224 F.3d at 800-01 ("[A]n expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by good grounds, based on what is known.") (quoting *Pomella v. Regency Coach Lines, Ltd*., 899 F.Supp. 335, 342 (E.D.Mich.1995)).  An expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts. *See Guidroz-Brault,* 254 F.3d at 829-31; *Greenwell,* 184 F.3d at 497 ("Expert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence.").

Viano's subjective pronouncements should not be labeled as "expert opinions," either because he does not hold the expertise he professes to possess, his opinions are neither relevant nor reliable, his opinions are not based on accepted engineering principles, his opinions are

biased, and/or his testimony would serve only to confuse and mislead a jury that his conclusory statements are supposedly expert opinions.

### III.        <u>CONCLUSION</u>

Permitting Viano to testify without his having applied a proper methodology in his alleged analyses and without having considered all of the relevant evidence would cause severe prejudice to Plaintiffs.  It is also clear that Viano did not utilize a methodology used by other experts in the field.  Plaintiffs therefore request that the Court strike the Viano Report and accompanying testimony, not consider the same as evidence for any purpose, and grant Plaintiffs such other and further relief, in law or in equity, to which Plaintiffs may be entitled.


Respectfully Submitted,


/s/ Aubrey "Nick" Pittman                    
AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

/s/ Daryl K. Washington                    
DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2014 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

    /s/ Aubrey "Nick" Pittman    
AUBREY "NICK" PITTMAN