# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, | § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CAUSE NUMBER: 3:11-cv-0207-N |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., VOLVO GROUP NORTH AMERICA, LLC., VOLVO TRUCKS NORTH AMERICA, A DIVISION OF VOLVO GROUP NORTH AMERICA, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC, and DOLPHIN LINE, INC. | § § § § § § § § § § § § | |
| Defendants. | § § | |

---

### PLAINTIFFS' REPLY TO STRICK'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF MICHELLE VOGLER

---

| | |
|---|---|
| AUBREY "NICK" PITTMAN | DARYL K. WASHINGTON |
| State Bar No. 16049750 | State Bar No. 24013714 |
| | |
| **THE PITTMAN LAW FIRM, P.C.** | |
| 100 Crescent Court, Suite 700 | **LAW OFFICES OF DARYL K. WASHINGTON P.C.** |
| Dallas, Texas 75201-2112 | 325 N. St. Paul St., Suite 1975 |
| 214-459-3454 | Dallas, Texas 75201 |
| 214-853-5912 – fax | 214-880-4883 |
| | 469-718-0380 - fax |

**ATTORNEYS FOR PLAINTIFFS**

TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................................ii

TABLE OF AUTHORITIES ............................................................................................................iii

I.      SUMMARY OF ARGUMENT ................................................................................... 1

II.     ARGUMENT AND AUTHORITIES ......................................................................... 1

        A.     Legally, Strick Has Not Met its Burden of Proof as to Vogler's Testimony. ............ 1

        B.     Strick's Response Did Not Establish That Vogler's Testimony Regarding Her Accident Reconstruction is The Product of Reliable Principles and Methods. ........ 3

        C.     Strick's Response Did Not Establish That Vogler's Comments Regarding the Underride Guard Design Are Based on Expert Qualifications or Are The Products of Reliable Principles and Methods. ................................................................... 7

        D.     Strick's Response Did Not Establish That Vogler's Comments Regarding the Weld Job Are Based on Expert Qualifications or Are The Products of Reliable Principles and Methods. ................................................................... 8

        E.     Strick Has Not Met Its Burden to Show That Vogler Should Be Allowed to Opine on (i) the History and Purpose of NHTSA, FMVSS or the Safety Act; (ii) Whether the Strick Trailer Complied With Federal Safety Standards; and (iii) Whether Strick Actually Conducted Compliance Testing................................. 9

        F.     Strick Has Not Met Its Burden to Show That Vogler Should Be Allowed to Serve as a Conduit For Hearsay Regarding What Strick Told Her It Must Have Done. ...................................................................................................... 11

        G.     Strick Has Not Rebutted Why Vogler's Testimony Should Not Be Precluded Under FED.R.EVID. 403................................................................................. 13

III.    CONCLUSION ................................................................................................. 14

CERTIFICATE OF SERVICE ................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227 (10th Cir.2004) .................................................................. 3

*Curtis v. M & S Petroleum, Inc.* 174 F.3d 661 (5th Cir.1999) ..................................................... 11, 13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ......................................... 2, 13

*Davis v. Washington*, 547 U.S. 813 (2006) ............................................................................................ 12

*E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005) ................................................ 13

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ......................................................................................... 2

*Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987 (10th Cir.2003) ................................... 2

*Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193 (10th Cir.2002) .................................................. 3

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir.1994) .............................................................. 2

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) ............................................................. 1, 2

*Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706 (Tex.1997) .................................. 2

*N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90 (Tex.App.—Dallas 1995, writ denied) 13

*U.S. v. Dixon*, 413 F.3d 520 (5th Cir. 2005), aff'd 548 U.S. 1 (2006) ............................................... 12

*U.S. v. Mejia*, 545 F.3d 179 (2d Cir. 2008) ........................................................................................... 12

*United States v. Johnson*, 575 F.2d 1347 (5th Cir.1978) ................................................................... 12

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987) .................................................................... 7

**Rules**

FED.R.EVID. 401 ............................................................................................................................................ 3

FED.R.EVID. 403 ............................................................................................................................... ii, 1, 13

FED.R.EVID. 702 ............................................................................................................................................ 1

..................................................................................................................................................................

Ollie Greene, Individually and as parent of Wyndell Greene, Sr., William Greene, as Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and the parent of LaKeysha Greene (collectively "Plaintiffs") file this Reply to Strick's Response to Plaintiffs' Motion to strike and/or exclude the testimony of Dr. Michelle Vogler ("Vogler"), and show the Court as follows:

## I. SUMMARY OF ARGUMENT

Strick's Response does not address all of the concerns Plaintiffs have raised regarding Vogler's testimony and does not establish that her opinions are all based upon scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue; and are based on sufficient facts or data and is the product of reliable principles and methods she has applied reliably to the facts of the case. Plaintiffs further contend Strick has failed to rebut why Vogler's proposed testimony should be not excluded pursuant to FED.R.EVID. 403 because consideration of the testimony will result in confusion of the issues and misleading the jury.

## II. ARGUMENT AND AUTHORITIES

### A. Legally, Strick Has Not Met its Burden of Proof as to Vogler's Testimony.

"The purpose of the *Daubert* inquiry is to scrutinize proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).) FED.R.EVID. 702 of the Federal Rules of Evidence specifically addresses testimony from expert witnesses. "Where such testimony's factual basis, data principles methods or their application are called sufficiently into question, the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of the

[relevant] discipline.'" *Kumho Tire* 526 U.S. at 149 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993). In other words, the Court plays the role of the gatekeeper as to (1) the existence of sufficient facts and/or data to allow an expert to reach a conclusion and; (2) the reliability of the principles and methods used to arrive at those opinions. *Id*. To be reliable, an expert's proffered testimony must have "a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592. In making that determination, the district court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592–93, 113 S.Ct. 2786. While "absolute certainty is not required," an expert's opinion "must be based on scientific knowledge, which implies a grounding in the methods and procedures of science based on actual knowledge, not mere subjective belief or unsupported speculation." *Goebel v. Denver & Rio Grande W. R.R. Co*., 346 F.3d 987, 991 (10th Cir.2003) (quotations omitted). "Generally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Id*. at 992. "However, an expert's conclusions are not immune from scrutiny: 'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Id*. (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146, 118 S.Ct. 512. The proponent of the testimony must establish, by a preponderance of the evidence, that the expert's testimony is reliable. *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 744 (3d Cir.1994). Here, Strick cannot establish that all of Vogler's testimony passes the reliability principle.

An expert's testimony must also be relevant—it must assist the fact-finder in understanding the evidence or determining a fact in issue. *Daubert*, 509 U.S. at 591. "'Relevant evidence' means

evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401. The Supreme Court has described the consideration of whether an expert's testimony is relevant as one of "fit." *Daubert*, 509 U.S. at 591. The reasoning or methodology underlying the expert's opinion must be able to be properly applied to the facts in issue. *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1204 (10th Cir.2002). "A trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir.2004). "Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant 'fit.'" *Id.* Strick has not demonstrated that all of Vogler's testimony has relevant fit.

      **B.**      **Strick's Response Did Not Establish That Vogler's Testimony Regarding Her Accident Reconstruction is The Product of Reliable Principles and Methods.**

In the Response, Strick stated that "Plaintiffs provided no legal authority for their implied proposition that there is 'only one way to skin a cat' and disregarded the fact that there may be multiple scientifically valid methods of reaching reliable conclusions." Resp. at 6. This sentence is indicative of the confusion Strick has regarding *Daubert* and its requirements. First, Strick must be aware that, as the proponent for Vogler's testimony, it is Strick's burden, not Plaintiffs' burden, to prove that Vogler's method of "skinning the cat" is the product of reliable principles and methods that she has applied these principles and methods reliably to the facts of the case. Second, Strick basically argues that experts should be able to follow whatever methodology they desire, even if it leads to entirely and substantially disparate results. This is precisely what *Daubert* cautions against. If experts apply reliable principles and methods to the same facts, the results should not produce

3

totally incongruent results. Here, it is obvious that Vogler did not skin this cat the way other reconstruction experts would, when they are trying to provide reliable testimony.

Plaintiffs also note that Strick has included an affidavit from Vogler with its Response that now seeks to explain steps that Vogler allegedly took in this assignment. Many of the statements in this affidavit are inconsistent with Vogler's deposition testimony and are not contained in her written report. In addition, Vogler alleges that every method she applied "is a standard scientific method utilized by experts in her fields." Plaintiffs have no reservations, or no direct evidence with which to dispute, whether Vogler "reviewed" the photographs of the accident scene; "reviewed" the police reports; "reviewed" witness statements; "reviewed" the accident vehicles; and "observed" the accident scene years later, although the accident marks and other evidence were gone. Plaintiffs also do not dispute Vogler's assertion that these are steps a normal accident reconstructionist would take. The problem arises, however, when one considers "how" Vogler used the information she simply "reviewed." And why she chose to disregard other relevant and persuasive evidence, which disproved of her theory. And, Strick fails to address the major and fundamental areas where Vogler's opinions diverge from those formed by the experienced investigating officers and Plaintiffs' expert, for instance. Vogler's parting of opinions from those of the experienced investigating officers (and Jeff Vick's) is not simply a battle of experts that could be cured by a vigorous cross-examination of Vogler. Here, Vogler's methodology of ignoring the fundamental evidence is too flawed to be reliable. For instance, with regard to the police's investigation Vogler's methodology included:

1. ignoring the investigation of the experienced police reconstructionists, who did not conclude that Moody was exceeding the speed limit;

2. ignoring the investigation of the "experienced" police reconstructionists, who did not conclude that the 4Runner was "sandwiched" forcibly between the Volvo Truck and the Strick Trailer. The experienced investigators

4

>     concluded that the Volvo truck played no role in forcing the 4Runner under the Strick Trailer;
> 
> 3.  disregarding the police reconstructionists' opinions of the shape and position of tire marks;
> 
> 4.  dismissing the police reconstructionists' opinions of the yaw rotation of the Toyota Corolla;
> 
> 5.  dismissing and ignoring the police reconstructionists' opinions of the accident's survey points;
> 
> 6.  disregarding the police reconstructionists' conclusion that the Fayard truck driver moved the Strick trailer after the impact, leaving skid marks;
> 
> 7.  dismissing the police reconstructionists' conclusion that traffic was not stopped at the time of the accident.

In her work in the instant case, Vogler also ignored eye-witness accounts of the accident, none of which agree with her account of it. Although Vogler alleges that there is evidence to support her and Dr. Viano's sandwich theory, the only testimony to which Vogler cites comes from an inexperienced police investigator, Countryman, who was being questioned for the very first time regarding an accident investigation. More importantly, however, Countryman's testimony does not allege, as Strick contends, that the Volvo tractor was connected directly with the 4Runner when the 4Runner went underneath the Strick trailer. In a further attempt to legitimize Vogler's testimony, Strick contends that Plaintiffs' expert, Dr. Joseph Burton, "also testified that the Volvo crushed the 4Runner" Resp. at 7. This is untrue. In fact, a review of the cited testimony shows that Dr. Burton states that he agrees with Plaintiffs' expert Keith Friedman, not Vogler or Carr. Dr. Burton testified "I didn't learn that it was squished, I learned that it was knocked into the Strick trailer and that from the impact of being knocked into it that the ICC bar failed and allowed the 4Runner then to rotate up underneath the Strick trailer." Burton Depo at 85:6-23 (Dkt. Entry No. 531-5, Vogler APP 91). Furthermore, Kyle Evans, the key eyewitness and the first person to reach the fiery 4Runner testified that the 4Runner skidded or yawed sideways into the Strick Trailer, simultaneously with the Volvo tractor veering to the

5

right off the freeway. Evans Depo at 23:3 – 26:10. In other words, there was no sandwiching effect. Vogler simply ignored the testimony of Kyle Evans and of every other witness who did not state that there was any "sandwiching" of the 4Runner between two tractors.

It can hardly be said that a proper methodology could allow an expert to ignore every "fundamental" opinion of trained police investigators as well as every opinion of eyewitnesses in forming a reconstruction opinion. These fundamental differences of methodology are what lead to the experts' difference in opinions on Mr. and Mrs. Greene's causes of death. Vogler had to ignore the police investigators' fundamental reconstruction opinions as well as the physical evidence in order to be able to provide opinions that are helpful to Toyota. Likewise, Vogler also ignored the opinions of the police investigators, eyewitness testimony, and testimony from the Volvo truck driver, that the truck driver took evasive action when he became aware of his proximity to the Toyota 4Runner. If one looks at the Volvo truck's skid marks, it is clear that the truck driver has taken evasive action to avoid a direct hit of the 4Runner into the Strick trailer. However, in order to support her and Lee Carr's novel "sandwich" theory, Vogler's reconstruction had to ignore the truck driver's obvious evasive action in order to conclude that there was a direct sandwiching hit between the Volvo truck and the Strick trailer. Vogler also goes through great lengths in her affidavit to argue that she used "a variety of engineering tools and computer software programs." Vogler APP 52. While it may be true that Vogler used computer simulation tools, the output is only as good as the input. Here, where Vogler used biased and subjective numbers, speeds, number of impacts, and assumptions as her input, the output will follow as biased and subjective.

Since Vogler's testimony is not based on a reliable methodology as an accident reconstructionist, the testimony should be excluded as unreliable and prejudicial. In addition,

6

since Vogler ignored key undisputed facts from eye witnesses and police investigators and substituted his own facts, her opinions are conclusory and inadmissible. *See Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 421-22 (5th Cir. 1987) ("it is not so simply because 'an expert says it is so ...; if an expert brings to the court 'little more than his credentials and a subjective opinion,' his opinion amounts to no evidence"). Clearly, Strick has not met its burden of proof as to Vogler's testimony.

      **C.**      **Strick's Response Did Not Establish That Vogler's Comments Regarding the Underride Guard Design Are Based on Expert Qualifications or Are The Products of Reliable Principles and Methods.**

In the motion to exclude, Plaintiffs asked that the Court prohibit Vogler from expressing any opinions regarding underride guards including, but not limited to, performance, design and capabilities of underride guards as well as the occurrence, timing, location, sequence, impact, cause, nature, extent, or any other aspect of the breach of the underride guard in this case. Vogler admits that this is the first time she has provided any testimony regarding underride guard performance. Vogler Depo at 42:19 – 43:1 (Pltfs' APP[1] 046-047). She admits that she did not use a proper methodology to evaluate the performance of the underride guard in this case. Vogler Depo at 156:11-19 (Pltfs' APP 052). When questioned regarding what would typically constitute a means by which an expert could determine whether an underride guard performed as intended, the following conversation took place, Vogler admitted that she couldn't "attribute specifically what occurred during the accident versus what might have been present there before the accident" and that she didn't see photographs in enough detail to be able to "quantify or support or refute the presence of bending." Vogler Depo at 120:18 – 121:5 (Pltfs' APP 050-

---

[1] "Pltfs' APP" refers to the original Appendix that Plaintiffs filed on March 17, 2014, in support of the motion to exclude Vogler's testimony - Doc. 482.

7

051). Finally Vogler admitted that she did not investigate whether Strick could manufacture an alternative design to its defective trailer. Vogler Depo at 177:1-4 (Pltfs' APP 056). In other words, any opinions that Vogler would provide would be conclusory and inadmissible.

In the Response, Strick has failed to meet its burden of establishing that Vogler is qualified to provide any such opinions or that she followed used a reliable methodology to be able to render any opinions whatsoever on underride guard issues. Thus, the motion should be granted.

> **D.     Strick's Response Did Not Establish That Vogler's Comments Regarding the Weld Job Are Based on Expert Qualifications or Are The Products of Reliable Principles and Methods.**

Among the issues raised by Strick and other defendants are whether the exercise of welding the Strick underride guard onto the trailer was appropriate and whether the weld that existed on May 28, 2010, if any, was compliant with FWVSS 223/224 or constituted shoddy workmanship. In the motion to exclude, Plaintiffs asked that the Court prohibit Vogler from expressing any opinions regarding welding of the underride guards including, but not limited to, performance, design and capabilities. In the Vogler Report, she alleges, "there exists insufficient information to opine about the weld quality" outside of an evaluation of the impact guard performance in the subject crash. Pltfs' APP 034. During her deposition, Vogler also makes that she cannot determine the quality of the weld on the underride guard sufficiently for her to be able to render an expert opinion. Vogler Depo at 57:24 – 58:5 (Pltfs' APP 048-049). Since any conclusion Vogler would provide regarding weld jobs is unsupported by forensic evidence and relies on a faulty methodology called "speculation," her opinions should be excluded. In the Response, Strick fails to meet its burden of establishing why the Court should ignore that Vogler has an insufficient basis on which to make any expert conclusions regarding welding of the underride guard.

8

> **E. Strick Has Not Met Its Burden to Show That Vogler Should Be Allowed to Opine on (i) the History and Purpose of NHTSA, FMVSS or the Safety Act; (ii) Whether the Strick Trailer Complied With Federal Safety Standards; and (iii) Whether Strick Actually Conducted Compliance Testing.**

Keeping in mind, as discussed above, that Strick has the burden to demonstrate that Vogler's conclusions are based on the scientific method and that her reasoning or methodology can be properly applied to the facts in issue, Strick has failed to satisfy this burden as to the following subjective and arbitrary statements made by Vogler, among others:[2]

1. The standards that impact guards must comply with to be sold in the US are Federal Motor Vehicle Safety Standards (FMVSS) 223 "Rear Impact Guards" and 224 "Rear Impact Protection". The objective of FMVSS 223 is to "reduce the number of deaths and serious injuries that occur when light duty vehicles collide with the rear end of trailers and semitrailers". (Pltfs' APP 031)

2. FMVSS 223 also contains requirements for labeling, guard attachment hardware and installation instructions. (Pltfs' APP 031)

3. FMVSS 224 requires that each vehicle be equipped with a rear impact guard certified as meeting FMVSS 223. (Pltfs' APP 032)

4. FMVSS 224 also contains guard dimensional and configuration requirements. (Pltfs' APP 032)

5. The rear impact guard design that was on the subject Strick trailer at the time of manufacture complied with the requirements of FMVSS 223 and FMVSS 224. (Pltfs' APP 033)

6. The engineering drawing for Strick Part No. M570018 (STRICK00278) shows the certification label, which complies with the requirements of FMVSS 223. Strick engineering drawing M330154 for the rear frame and door assembly shows that the rear impact guard meets the dimensional and configuration requirements of FMVSS 224. (Pltfs' APP 033)

7. According to FMVSS 223, "The manufacturer of rear impact guards for sale to vehicle manufacturers shall include with each guard printed instructions in English for installing the guard, as well as a diagram or schematic depicting proper guard installation. (Pltfs' APP 035)

8. Manufacturers of rear impact guards are not required by FMVSS 223 to provide installation instructions to an aftermarket distributor. However,

---

[2] These paragraphs are numbered here for convenience and do not appear in Vogler's Report numbered in this manner.

9

        installation instructions for the subject impact guard do exist and are compliant with the requirements of FMVSS 223. (Pltfs' APP 035)

9. Strick has produced 13 tests from this timeframe, 12 of which passed the newly effective requirements for FMVSS 223. (Pltfs' APP 035)

10. The subject accident was caused by inattention on the part of Mr. Moody. (Pltfs' APP 037)

11. The impact guard that was on the Strick trailer at the time of manufacture met the requirements of FMVSS 223. (Pltfs' APP 037)

In its Response, Strick did not establish: (1) that Vogler is qualified to give testimony on each of these statements; (2) that Vogler's findings and conclusions are "based on the scientific method, and, therefore, are reliable;" (2) that Vogler's "reasoning or methodology can be properly applied to the facts in issue;" (3) conclusively that these are not legal interpretations for the Court or improper conclusions that should be left to the jury; (4) that Vogler can be a conduit for hearsay from Strick's testing facility; and (5) that the probative value of allowing Vogler to give testimony on these issues is not substantially outweighed by the danger and prejudice of placing an "expert opinion" label on these statements. In addition, as argued in Plaintiffs' motion to exclude, some of these opinions are inadmissible under Rule 702, especially considering that they are conclusions to questions the jury will decide at trial, e.g. whether the Strick trailer was unreasonably dangerous, whether it complied with safety regulations, and whether it was technologically feasible to install a better and more effective energy-absorbing underride guard.

In addition, Strick has not cited any legal authorities for the proposition that Vogler can provide so-called expert testimony as to whether Strick complied with the federal motor vehicle safety standards. The reference in Strick's brief to a case discussing expert testimony on OSHA standards is inapplicable. Neither has Strick proved that it is acceptable for Vogler to opine about the history or purpose of the legislatively enacted Safety Act. Furthermore, even if FMVSS testimony were allowed from experts, Strick did not establish that Vogler applied any methodology,

much less a reliable one, to ascertain whether the Strick trailer actually complied with any of the safety standards. Third, Vogler did not observe or verify that the Strick trailer actually tested and passed any of these safety standards. Thus, her testimony would be based solely on what she was told by Strick's trial counsel. Indeed, the jury could also listen to a Strick witness for this factual testimony.

Vogler's testimony should be stricken since Strick has not met its burden of demonstrating (1) that Vogler's findings and conclusions are "based on the scientific method, and, therefore, are reliable;" and (2) that Vogler's "reasoning or methodology can be properly applied to the facts in issue." *Curtis v. M & S Petroleum, Inc*. 174 F.3d 661, 668 (5th Cir.1999) (citing *Daubert*, 509 U.S. at 592–93).

> **F.    Strick Has Not Met Its Burden to Show That Vogler Should Be Allowed to Serve as a Conduit For Hearsay Regarding What Strick Told Her It Must Have Done.**

In the response, Strick has failed to meet its burden that Vogler should be allowed to serve as the conduit for certain arbitrary and uncorroborated statements made by Vogler, among others:[3]

> The rear impact guard design that was on the subject Strick trailer at the time of manufacture complied with the requirements of FMVSS 223 and FMVSS 224. NHTSA Test No. RIG 9902 performed by KARCO Engineering on July 22, 1999, demonstrates that the subject impact guard met the force, displacement and energy requirements of FMVSS 223. While the test report notes that installation instructions and attachment hardware were included with the impact guard, it concludes that the guard as-received would not comply with the labeling requirement because there were no labels attached directly to the rear guard assembly in its as received condition by KARCO.

> Mr. Friedman claims that Strick tested two impact guards in 1998-1999 and that one failed. Strick has produced 13 tests from this timeframe, 12 of which passed the newly effective requirements for FMVSS 223. The one design that did not meet the energy requirement was discontinued by Strick.

---

[3] These paragraphs are numbered here for convenience and do not appear in Vogler's Report numbered in this manner.

> Strick engineering drawing M330154 for the rear frame and door assembly shows that the rear impact guard meets the dimensional and configuration requirements of FMVSS 224.
>
> <u>The original equipment impact guard assembly on the subject Strick trailer had been replaced by Dolphin on July 2, 2008</u>. The impact guard that was on the subject Strick trailer at the time of this accident was not the same impact guard that was provided on the trailer as original equipment by Strick and does not appear to be a product manufactured by Strick, <u>as indicated in the testimony of Strick CEO Frank Katz</u>.
>
> <u>The accident-involved design was inconsistent with characteristics of the original impact guard that was on the trailer at the time of manufacture</u>. The horizontal bar that was provided as original equipment on the subject trailer was 94.5 inches long and had holes on the top surface. The horizontal bar that was attached to the subject trailer at the time of this accident was 101 inches long and did not have holes on the top surface.
>
> In addition to these design differences, <u>the impact guard that was on the subject Strick trailer at the time of this accident was attached in a manner inconsistent with the original equipment Strick design</u>. The top surfaces of the vertical gussets were welded directly to the trailer instead of being welded to a baseplate and bolted to the trailer. The bottom surfaces of the vertical gussets were welded directly to the horizontal bumper instead of being welded to a baseplate and bolted to the horizontal bumper.

In its Response, Strick alleges that Vogler should be allowed to attest to these past acts "because the law allows it." Resp. at 8. This is untrue. And Strick has produced NO authority that allows such testimony. While the law provides that an expert may "rely" upon reputable hearsay, it does not allow an expert to serve as the conduit for hearsay. Indeed, courts faced with similar issues have cautioned against situations such as this where a witness is used as little more than a conduit for testimonial hearsay, rather than "a true expert whose considered opinion sheds light on some specialized factual situation." See *U.S. v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008); *U.S. v. Dixon*, 413 F.3d 520, 524-25 (5th Cir. 2005), aff'd 548 U.S. 1 (2006); *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir.2009); *see also Davis v. Washington*, 547 U.S. 813, 826 (2006) (excluding note-taking policeman's testimony since it recites declarant's unsworn testimony from a report). Vogler should not be allowed to testify regarding alleged safety testing.

Vogler's testimony should be stricken since Strick has not met its burden of demonstrating (1) that Vogler is qualified to testify on these subjects; (2) that Vogler's findings and conclusions are "based on the scientific method, and, therefore, are reliable;" and (3) that Vogler's "reasoning or methodology can be properly applied to the facts in issue*." Curtis,* 174 F.3d at 668 (citing *Daubert*, 509 U.S. at 592–93)

### G. Strick Has Not Rebutted Why Vogler's Testimony Should Not Be Precluded Under FED.R.EVID. 403.

The authorities are clear that the Court can exclude otherwise relevant evidence where its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. FED.R.EVID. 403; *Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."); s*ee also, E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005); *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex.App.—Dallas 1995, writ denied) ("courts should exclude . . . evidence [when] the expert's opinion would be more likely to prejudice or confuse than to assist the trier of fact."). Considering that Vogler's opinions are simply subjective conclusions that are not based on any independent evaluations undertaken by Vogler, the opinions should be excluded. It is clear that Vogler relies completely on improperly evaluated Strick-produced materials for her opinions. He also seeks to provide testimony on a myriad subjects and claims to be an expert in each subject matter. This clearly evinces that Vogler's testimony is tailored to suit Strick's litigation strategy, without resort to the true facts. Stated more succinctly, Vogler's subjective conclusions and pronouncements should not be anointed with the label of "expert opinions," particularly because such opinions are neither relevant nor reliable, are not based on

13

accepted engineering principles, are biased, and would serve only to confuse and mislead a jury that Vogler's conclusions are supposedly expert opinions.

### III. CONCLUSION

Permitting Vogler to testify without her having applied a proper methodology in the analysis and without having considered all of the relevant evidence would cause severe prejudice to Plaintiffs. It is also clear that Vogler is ether not qualified or simply chose not to utilize a methodology used by other experts in the field. Plaintiffs therefore request that the Court strike the Vogler Report and accompanying testimony, not consider the same as evidence, and grant Plaintiffs such other and further relief, in law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted,

| | |
|---|---|
| /s/ Aubrey "Nick" Pittman | /s/ Daryl K. Washington |
| AUBREY "NICK" PITTMAN | DARYL K. WASHINGTON |
| State Bar No. 16049750 | State Bar No. 24013714 |
| | |
| **THE PITTMAN LAW FIRM, P.C.** | **LAW OFFICES OF DARYL K. WASHINGTON P.C.** |
| 100 Crescent Court, Suite 700 | |
| Dallas, Texas 75201-2112 | 325 N. St. Paul St., Suite 1975 |
| 214-459-3454 | Dallas, Texas 75201 |
| 214-853-5912 – fax | 214-880-4883 |
| pittman@thepittmanlawfirm.com | 469-718-0380 - fax |
| | dwashington@dwashlawfirm.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2014 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

   /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN