IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| OLLIE GREENE, *et al.*, § | |
| § | |
| Plaintiffs § | |
| § | |
| v.  § | CAUSE NUMBER: 3:11-cv-0207-N |
| § | |
| TOYOTA MOTOR CORPORATION, *et al.,* § | |
| § | |
| Defendants. § | |

### THE TOYOTA DEFENDANTS' MOTION IN LIMINE AND
### BRIEF IN SUPPORT THEREOF

Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc.'s (collectively the "Toyota Defendants") file this Motion in Limine. The Toyota Defendants respectfully request that, before the voir dire examination of the jury panel has begun, before any opening statements are made to the jury, and before the introduction of any evidence, the Court instruct Plaintiffs and all of Plaintiffs' witnesses to refrain from making any mention through interrogation, voir dire examination, opening statement, arguments or otherwise, either directly or indirectly, concerning any of the matters hereinafter set forth, without first approaching the bench and obtaining a ruling from the Court outside the presence and hearing of all prospective jurors and the jurors ultimately selected to try this case, with regard to the following:

1. **UNINTENDED AND/OR SUDDEN ACCELERATION**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding unintended and/or sudden acceleration issues involving Toyota vehicles generally, or any evidence that suggests or implies that the subject 2010 Toyota 4Runner ("4Runner") unintentionally or suddenly accelerated at the time of the

accident at issue in this case. As described below, such matters are inadmissible because at a minimum: (1) they are entirely irrelevant to the issues in this case; (2) many such references would relate to settlements or settlement negotiations; (3) many such references would be inadmissible hearsay; (4) they would be unfairly prejudicial, confusing, misleading to the jury, and a needless waste of time; and/or (5) Plaintiffs cannot demonstrate the requisite substantial similarity of any vehicle/incident necessary to offer evidence of other incidents. The scope of inadmissible matters related to unintended acceleration would include, but not necessarily be limited to, any of the following (collectively "Unintended Acceleration Matters"):

- Any mention of alleged unintended acceleration incidents or investigations thereof

- Any recalls related to potential floor mat entrapment or slow-to-return pedals

- Any investigations by any federal, state or local government agency, or subdivision thereof, of unintended acceleration allegations

- Any Congressional hearings or testimony related to alleged unintended acceleration incidents or investigations thereof

- Any settlements or settlement negotiations related to unintended acceleration, including without limitation resolution of regulatory or other governmental matters, the economic loss class action settlement or the ongoing "Intensive Settlement Process" in the MDL

- Any other litigation or related investigations, whether civil, criminal, or regulatory involving allegations of unintended acceleration

- Any media coverage of the above topics

Any reference to, mention of, or evidence related to the Unintended Acceleration Matters would be contrary to Plaintiffs' allegations in this cause and would be clearly irrelevant, because it would not go to any fact of consequence in determining this action. Fed. R. Evid. 401, 402. Plaintiffs have never alleged any defect related to unintended acceleration issues as a theory in this case, and Plaintiffs' current pleading includes no allegations or reference to such issues.

Plaintiffs' Second Amended Complaint (Doc. No. 113). Plaintiffs' experts also have expressed no opinions related to such issues. Notably, if Plaintiffs had intended to bring any such unintended acceleration claims in this lawsuit, it should have been consolidated in the Toyota Unintended Acceleration Multi-District Litigation currently pending in the United States District Court for the Central District of California as Cause Number 8:10-ml-02151-JVS-FMO, styled *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales, Practices and Products Liability Litigation* ("MDL").

Additionally, many such references, mentions, or evidence of the Unintended Acceleration Matters would relate to settlements or settlement negotiations which are clearly inadmissible under Federal Rule of Evidence 408. *See* Fed. R. Evid. 408; *see also Union Oil Co. of California v. Buffalo Marine Services, Inc.*, 538 Fed. Appx. 575, 577 (5th Cir. 2013). As described above, the scope of unintended acceleration references to be precluded specifically includes settlements of other litigation, ongoing negotiations related to such litigation, and any payments arising from such settlements or negotiations. These facts and topics are certainly inadmissible. *See* Fed. R. Evid. 401, 402, 403, 408.

Moreover, any such reference, mention, or evidence of Unintended Acceleration Matters should be prohibited because any probative value would be substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. Fed. R. Evid. 403. In *Ahlberg v. Chrysler Corporation*, the Eighth Circuit Court of Appeals addressed a similar issue and upheld the exclusion of evidence related to a "retrofit program" conducted by Chrysler. *See Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 632-34 (8th Cir. 2007). *Ahlberg* involved a fatal car accident in which a 1999 Dodge Ram was alleged to be defective for not having been equipped with a brake-shift interlock (BSI) device. *Id.* at 632. In 1996, Chrysler,

the manufacturer of the Dodge, had voluntarily conducted a retrofit program to install BSI devices on several model years of Jeep Cherokees in response to reports of "unintended acceleration" in those model year Jeeps. *Id.* The *Ahlberg* court noted that evidence of the retrofit program raised "substantial issues of confusion and prejudice" with regard to the Dodge Ram at issue in the case and also offered "minimal" probative value for the plaintiff's strict liability and negligence claims, since the retrofit program applied to an entirely different vehicle. In this case, the unintended acceleration recalls and issues are not at all related to Plaintiff's defect allegations. The unintended acceleration recalls and related matters described above would raise at least the same substantial issues of confusion and prejudice as the retrofit program in *Ahlberg*, but would offer even less probative value and should properly be excluded under Federal Rules of Evidence 401, 402, and 403.

Moreover, any reference to, mention of, or evidence related to the Unintended Acceleration Matters, in addition to being irrelevant, unfairly prejudicial, and confusing, would likely also be presented as inadmissible hearsay without an exception. Fed. R. Evid. 801, 802. Plaintiffs have not designated or developed testimony from anyone purporting to have direct, personal knowledge of any of the above-described matters.

In addition, any reference to, mention of, or evidence related to the Unintended Acceleration Matters should also be inadmissible as proffered evidence of other incidents, without the requisite showing of substantial similarity. *See Nissan Motor Company Ltd. v. Armstrong,* 145 S.W.3d 131, 134-40 (Tex. 2004); *Ponder v. Warren Tool Corp.*, 834 F.2d 1553, 1559-61 (10th Cir. 1987); *Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1108-09 (8th Cir. 1988). In *Lewy*, the Eighth Circuit reversed a trial court's decision allowing the introduction of evidence of several other incidents, a product recall, and a lawsuit settlement involving a Remington

Model 600 rifle when the rifle at issue was a Remington Model 700. *Lewy,* 836 F.2d at 1108-09. The *Lewy* court emphasized that since the plaintiff had not shown the two product models to be substantially similar or the other incidents to have occurred under circumstances substantially similar to the subject incident, all of the Model 600 evidence should have been excluded. Similarly, here, Plaintiffs have not shown and cannot show that the subject 4Runner and subject incident are substantially similar to the vehicles and incidents involved in the Unintended Acceleration Matters.

## 2. DEFERRED PROSECUTION AGREEMENT

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or offer evidence regarding the Deferred Prosecution Agreement (DPA). Toyota Motor Corporation (TMC) has recently entered into the DPA to close an investigation by the U.S. Attorney's Office for the Southern District of New York related to certain Toyota recalls conducted in 2009-2010. Like the rest of the unintended acceleration matters, any reference to or evidence regarding the DPA or the investigation by the U.S. Attorney's Office for the Southern District of New York would be completely irrelevant to the issues in this case, highly prejudicial to the Toyota Defendants, and very confusing to the jury.

The resolution of the Southern District of New York U.S. Attorney's Office investigation has only increased the danger of unfair prejudice to the Toyota Defendants, confusion of the issues, wasting time, and misleading the jury. References to or evidence regarding the DPA is inadmissible for the same reasons as all of the Unintended Acceleration Matters as described in the Toyota Defendants' Motion in Limine Item 1. Above and beyond all of those arguments, however, the DPA presents particular concerns and additional bases for exclusion as described below:

### A. The DPA is Not Relevant to the Issues in This Case and Presents a Substantial Danger of Unfair Prejudice and Confusion

First, the DPA is simply inadmissible due to its irrelevance to the issues in this case. *See* Fed. R. Evid. 401, 402. Plaintiffs have not alleged any defect related to unintended acceleration, and based on the extensive deposition testimony and Plaintiffs' expert reports and testimony, it is undisputed that the 4Runner did not experience an unintended acceleration event during the accident. The existence or details of the DPA therefore do not make the existence of any fact of consequence in this action any more or less likely.

Moreover, even if the DPA had any marginal relevance in this case, such minimal probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or causing undue delay. *See* Fed. R. Evid. 403. "'Unfair prejudice' [under Rule 403] means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. "Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues." *United States v. Dennis*, 625 F.2d 782, 796-97 (8th Cir. 1980) (internal quotations omitted). As shown below, such dangers are particularly present in situations similar to that presented by the recent execution of the DPA.

In *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* ("*Deepwater Horizon*"), No. MDL 2179, 2012 WL 413860, at *3 (E.D. La. Feb. 9, 2012), the court determined that defendant BP's deferred prosecution agreement concerning an oil refinery disaster in Texas City was only minimally relevant to determining the cause of the underwater drilling Deepwater Horizon accident years later in the Gulf of Mexico. 2012 WL 413860, at *2-3. The court was "greatly concerned about considerations of 'undue delay, waste of time, and presentation of cumulative evidence,'" and expressed its trepidation about "a real

danger of creating a 'trial within a trial.'" *Id.* (citations omitted). Based on this balance of considerations, the court granted BP's motion *in limine* to exclude the deferred prosecution agreement (and other evidence of past conduct) for purposes of the first liability phase of the trial. *Id.* at *3.

The Sixth Circuit in *Ross v. American Red Cross*, −F. App'x −, No. 12-4312, 2014 WL 289430 (6th Cir. Jan. 27, 2014), concluded that a consent decree between the Red Cross and the United States was properly excluded under Rules 402 and 403 because it was irrelevant to "'the key issue of whether the Red Cross was negligent in attempting to draw [Ross's] blood on September 12, 2008, or in its "aftercare" following needlestick injury'" and might unfairly prejudice or confuse the jury because "introducing evidence of the Consent Decree could 'lead the jury to believe that [Ross's] claims derive from the Decree itself' and force the parties 'to explain and relitigate old issues that have, at best, only minimal relevance to the present case.'" *Id.* at *9 (alterations in original) (citations omitted).

Here, the DPA sets forth the terms and conditions of resolving the U.S. attorney's criminal investigation, including that TMC was required to pay a monetary penalty of $1.2 billion and be subject to the supervision of an independent monitor.[1] It follows that the DPA's terms, if admitted, will enhance the prejudice to the Toyota Defendants and risk confusing the jury about what the Toyota Defendants have admitted. As one court has explained:

> [E]vidence regarding any of the Agreements entered into by the Settling Financial Institutions may prejudice Defendants because a jury may infer that if major banks paid large sums of money to the government in relation to the circumstances underlying Defendants' prosecution, then those circumstances support . . . liability for Defendants.

---

[1] Ex. 1 (DPA) ¶¶ 3, 15.

*United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 831 F. Supp. 2d 779, 785 (S.D.N.Y. 2011). In other words, a jury exposed to the DPA and its terms and conditions—particularly the penalty and monitor provisions—might accept the improper inference that the Toyota Defendants are somehow a "bad company" or must have engaged in wrongful conduct that now warrants the imposition of civil liability.

Furthermore, the Statement of Facts appended to the DPA describes "a problem with accelerators getting stuck at partially depressed levels, referred to as 'sticky pedal'" and "accelerators becoming entrapped at fully or near-fully depressed levels by improperly secured or incompatible floor mats, referred to as 'floor mat entrapment'", which the Statement of Facts characterize together as types of "unintended acceleration."[2] The DPA thus only addresses the Toyota models subject to the floor mat and sticky pedal recalls in a certain time frame; it closes with the recalls occurring in January 2010 and certain Toyota statements made in March 2010.[3] Here, Plaintiff is asserting claims relating to a 2010 Toyota 4Runner which was not even addressed in the DPA. Thus, Plaintiffs' allegations are not any more or less likely to be true because of any admission in the Statement of Facts, and evidence of the DPA poses a substantial risk of confusion and prejudice. *See Nactsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1269 (5th Cir. 1988) (upholding the exclusion of other accidents due to the practical problems of confusion and waste of time dealing with such collateral matters); *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) (unfair prejudice); *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 632-34 (8th Cir. 2007) (describing the substantial risk of prejudice and confusion posed by

---

[2] *See* Ex. 1 (Statement of Facts) ¶¶ 2-3, 8.

[3] *See* Ex. 1 (Statement of Facts) ¶ 63 (discussing January 2010 floor mat recalls of Venza, Corolla, and Highlander models); ¶ 67 (discussing release of new sticky pedal timeline).

the admission of evidence of a vehicle manufacturer's retrofit program for models separate from the vehicle at issue).

Finally, the Statement of Facts details a floor mat entrapment incident which claimed the lives of a family of four, as well as various Toyota misrepresentations and omissions regarding sticky pedal and floor mat entrapment in 2009 and 2010.[4] Here, the accident and Plaintiffs' allegations against the Toyota Defendants has nothing to do with floor mat entrapment. Thus, the incidents and injuries described in the Statement of Facts are not only so remote in time and causation from Plaintiffs' claims as to be irrelevant, but are also likely to inflame the jury's passions against the Toyota Defendants, given the loss of life and concealment described therein.[5] The probative value of such evidence, if any, is substantially outweighed by the unfair prejudice the Toyota Defendants are likely to suffer if such evidence is admitted. *See Deepwater Horizon*, 2012 WL 413860, at *2; *Rubin/Chambers, Dunhill Ins. Servs.*, 831 F. Supp. 2d at 785.

### B. The DPA is Inadmissible as Evidence of a Compromise Offer or Negotiation

Under Federal Rule of Evidence 408(a), a party may not seek to prove the validity of his or her claim with evidence of "furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim" or "conduct or a statement made during compromise negotiations about the claim." Fed. R. Evid. 408(a). This exclusion is based in large part on the "promotion of the public policy favoring the compromise and settlement of disputes." *See* Advisory Committee Note to Fed. R. Evid. 408 (citing McCormick §§ 76, 251). Notably, "[w]hile the rule is

---

[4] Ex. 1 (Statement of Facts) ¶¶ 9, 22, 42-67.

[5] Ex. 1 (Statement of Facts) ¶¶ 9, 22, 42-67.

ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto." *See id.*

While no court has yet considered the admissibility of a deferred prosecution agreement under Rule 408, courts routinely grant motions to exclude documentary evidence of settlements with government agencies as violative of Rule 408 where, as here, the documents are offered to establish liability in another action. *See Wilson v. Parisi*, No. 3:CV-04-1737, 2009 WL 151666, at *1-2 (M.D. Pa. Jan. 21, 2009) (granting motion to exclude consent petition defendant entered with state agencies where "Plaintiffs seek to establish an inference of liability from the consent agreement"); *Iorio v. Allianz Life Ins. Co. of N. Am.*, No. 05CV633 JLS (CAB), 2008 WL 8929013, at *4 (S.D. Cal. July 8, 2008) (granting motion to exclude settlement agreement between defendant and Department of Insurance); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 536 (D.N.J. 2008) ("Courts have consistently held that Rule 408's exclusionary provision is not limited to settlements between private parties, but also applies to civil consent decrees between private parties and government agencies," excluding use of consent decree between NCAA and Department of Justice).

Here, allowing Plaintiffs to refer to the DPA would run counter to the law and intent behind Rule 408, as it would risk exposing the Toyota Defendants to civil liability for statements it made in reaching an accord with the U.S. Attorney's Office for the Southern District of New York to resolve a criminal investigation bearing no relationship to any issue in this case. The DPA should thus be excluded.

    C.    **THE DPA is Inadmissible Character Evidence**

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the

person acted in accordance with the character." In *Deepwater Horizon*, the court analyzed, under Federal Rule of Evidence 404(b) whether a deferred prosecution agreement concerning an oil refinery disaster in Texas was admissible in a civil trial involving the Deepwater Horizon disaster in the Gulf of Mexico years later. While acknowledging the general rule that "'[e]vidence of similar accidents occurring under substantially similar circumstances and involving substantially similar components may be probative,'" the court nevertheless concluded that BP's past deferred prosecution agreement regarding a safety problem at the refinery was not sufficiently similar to BP's alleged fault for the Deepwater Horizon incident, and, as a result, the "'bad character'" evidence in that agreement was inadmissible to prove BP's liability for the Deepwater Horizon spill. *Deepwater Horizon*, 2012 WL 413860, at *2 (alteration in original) (citation omitted); *see also Kramas v. Sec. Gas & Oil Inc.*, 672 F.2d 766, 772 (9th Cir. 1982) (affirming district court's exclusion of SEC consent decree under Rule 404(b)).

The Statement of Facts appended to the DPA focuses primarily on Toyota's public statements and internal knowledge in late 2009 and early 2010 regarding unintended acceleration incidents. (*See* Ex. A (Statement of Facts) ¶¶ 2-3, 8.) Nowhere, however, does the Statement of Facts discuss any defect theories unrelated to unintended acceleration. Here, Plaintiffs are not asserting *any* claims for injuries relating to unintended acceleration. Indeed, this case has nothing at all to do with unintended acceleration. Instead, Plaintiffs allege defects related to the crashworthiness and fuel system of the 2010 Toyota 4Runner, and must thus establish that they suffered injuries as a result of these alleged design defects.

Plaintiffs should not be allowed to use the DPA as part of a strategy to entice the jury to conclude that Toyota must have acted a particular way toward Plaintiffs because of how it acted in an unrelated circumstance. This is not allowed. Federal Rule of Evidence 404(a) prohibits the

use of evidence for this propensity purpose. In addition, no other permissible purpose exists. Plaintiffs cannot use unrelated incidents of unintended acceleration and Toyota's response to those incidents to somehow establish motive, opportunity or intent under Federal Rule of Evidence 404(b), because they are simply too dissimilar to the facts and claims alleged by Plaintiffs here. Thus, Plaintiffs cannot use any portion of the DPA to establish some tendency on Toyota's part to conceal or minimize the alleged defects giving rise to Plaintiffs' suit. To permit Plaintiffs to use the DPA at trial would run afoul of Alabama Rule of Evidence 404, and therefore the DPA should be excluded.

### D.     Other Considerations Support Exclusion of the DPA and Related Evidence

Other than the actual DPA document itself, any references to or evidence regarding the DPA or the underlying investigation by the U.S. Attorney's Office for the Southern District of New York would likely have to be presented in the form of media reports or other second-hand accounts. Such evidence would constitute inadmissible hearsay without an exception. Fed. R. Evid. 801, 802. Plaintiffs have not designated or developed testimony from anyone purporting to have direct, personal knowledge of the DPA or the investigation.

Finally, since the DPA only addresses the Toyota floor mat and sticky pedal recalls in 2009-2010 and related matters, any references to incidents encompassed in the DPA would constitute proffered evidence of other extraneous incidents without the requisite showing of substantial similarity. *See Nissan Motor Company Ltd. v. Armstrong,* 145 S.W.3d 131, 134-40 (Tex. 2004) (evidence of other incidents or accidents is only relevant and admissible after the party seeking its admission shows that the alleged defect and circumstances surrounding the other incidents were similar to that of the accident that is the subject of the litigation before the court); *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 341 (Tex. 1998); *Magic Chef,*

*Inc. v. Sibley*, 546 S.W.2d 851, 855 (Tex. Civ. App.—San Antonio 1977, writ ref'd n.r.e.); *E-Z Mart Stores, Inc. v. Terry*, 794 S.W.2d 63, 65 (Tex. App.—Texarkana 1990, writ denied); *Ponder v. Warren Tool Corp.*, 834 F.2d 1553 (10th Cir. 1987); *Hale v. Firestone*, 756 F.2d 1322, 1332 (8th Cir. 1985); *Gumbs v. International Harvesters, Inc.*, 718 F.2d 88, 98 (3rd Cir. 1983).

    **3. <u>DISCOVERY DISPUTES AND DISCOVERY ALLEGATIONS, INCLUDING SPOLIATION CLAIMS</u>**

    Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention, make reference, or put on any evidence regarding the discovery process, discovery disputes, discovery allegations, the parties' answers to discovery, Court rulings regarding discovery, the Toyota Defendants document retention policy, or other matters which should be resolved prior to the trial of this matter and outside the presence of the jury. Fed. R. Evid. 402, 403; Tex. R. Civ. P. 215.2. Based upon various pleadings, expert reports, and comments and correspondence by Plaintiffs, it appears that Plaintiffs and/or Plaintiffs' witnesses may attempt to argue to the jury that the Toyota Defendants have resisted in its production of documents and witnesses during the discovery process in this litigation. More specifically, Plaintiffs have filed a motion for sanctions against the Toyota Defendants alleging spoliation of evidence. *See* Doc. Nos. 269. In addition, Plaintiffs have served expert reports accusing the Toyota Defendants of withholding relevant discoverable information to this lawsuit. Although the Court has not ruled on Plaintiffs' spoliation motion, Magistrate Irma C. Ramirez has denied Plaintiffs' prior motion to compel against the Toyota Defendants regarding the same documents and information that is the subject of Plaintiffs' motion for spoliation against the Toyota Defendants. *See* Doc. No. 229. Further, the Toyota Defendants' have consistently asserted throughout multiple pleadings, affidavits, and discovery responses that they have satisfied their discovery obligations. However, despite Magistrate Ramirez's ruling and the Toyota Defendants' discovery compliance, it appears

Plaintiffs will attempt to argue to the jury that the Toyota Defendants have withheld or spoliated evidence in this case. Plaintiffs only possible motivation for doing so would be to confuse and bias the jury against the Toyota Defendants.

Any such allegations are baseless and wholly irrelevant to resolution of the issues in this lawsuit, and should therefore be excluded under Federal Rule of Evidence 402. In addition, Plaintiffs' unfounded assertions would be highly prejudicial to the Toyota Defendants and should therefore be excluded under Federal Rule of Evidence 403. Such unsubstantiated accusations would only confuse and bias the jury by potentially leading them to believe that the Toyota Defendants attempted to conceal or withhold evidence or otherwise bias them against the Toyota Defendants.

### A. Allegations of Delay During Discovery are Entirely Irrelevant to this Lawsuit.

There is no basis for Plaintiffs to assert that the Toyota Defendants have not fully complied with their discovery obligations in this litigation. However, even assuming Plaintiffs somehow had a basis for the assertion, such facts would not be relevant to any issues which the jury will be tasked with deciding. *See* FED. R. EVID. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); FED. R. EVID. 402 ("Evidence which is not relevant is inadmissible."). The jury will be tasked with deciding multiple issues relating to the conduct of the Toyota Defendants, including but not limited to: 1) whether there were defects with the subject 2010 Toyota 4Runner; and 2) the Toyota Defendants alleged knowledge about defects.

The Toyota Defendants' conduct during discovery has absolutely no relevance to any of these issues. While Plaintiffs might argue that evidence of discovery conduct would be relevant

to a determination of sanctions under the Federal Rules of Civil Procedures, this determination would be within the exclusive province of the Court and should be resolved by other means, not in front of the jury during trial. Therefore, Plaintiffs should be precluded from introducing evidence or argument at trial under Federal Rule of Evidence 402 relating to the Toyota Defendants' conduct during discovery.

> B. **Evidence of the Toyota Defendants' Conduct During Discovery Should Be Excluded Because it Will Result in Unfair Bias and Prejudice.**

Plaintiffs' allegations that the Toyota Defendants withheld responsive documents or that the Toyota Defendants failed to offer certain corporate representatives for deposition may lead the jury to incorrectly assume that the Toyota Defendants intentionally attempted to conceal evidence of wrongdoing or otherwise prejudice the jury against the Toyota Defendants. While such statements are wholly untrue and unsupportable, they may make it appear to the jury that the Toyota Defendants were hiding something or being less than forthcoming. This would result in bias against the Toyota Defendants, as the jury might not only believe that Plaintiffs are correct – which they are not – but that the alleged documents, information, or witnesses include evidence detrimental to the Toyota Defendants' case or beneficial to Plaintiffs. Therefore, the likelihood that this type of evidence will bias the jury is far too great to allow the admission of such testimony. Such allegations will also result in a waste of time and be an unnecessary sidetrack from the actual issues in the case. Plaintiffs' allegations regarding the Toyota Defendants' conduct during discovery should therefore be excluded under 403 of the Federal Rules of Evidence. *See, e.g., Lively v. Blackwell*, 51 S.W.3d 637, 642 (Tex. App.—Tyler 2001, pet. denied) (affirming district court's finding that spoliation allegations were outweighed by the potential for unfair prejudice and confusion of the issues); *Green v. Baca*, 226 F.R.D. 624, 642-43 (C.D. Cal. 2005) (holding in a section 1983 action that evidence of defendant's purported

discovery violations should be excluded under Rule 403 because their probative value was substantially outweighed by the danger of unfair prejudice); *Miller v. Ford Motor Co.*, 2004 WL 4054843, at *10 (M.D. Fla. July 22, 2004) (granting defendants' motion in limine to exclude reference or evidence regarding Defendants' alleged misuse of discovery practices); *Blue Cross & Blue Shield, Inc. v. Philip Morris, Inc.*, 2000 WL 1805359, at *2 (E.D.N.Y. Dec. 11, 2000) (granting defendants' motion in limine to exclude references to alleged discovery abuses).

### 4. ASSISTANCE OR INCENTIVES FOR TOYOTA'S RELOCATION TO TEXAS

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding any assistance or incentives, financial or otherwise, that Toyota may receive in connection with the upcoming relocation of certain Toyota units to Plano, Texas. Such statements are irrelevant and prejudicial to the Toyota Defendants because they may create the implication that Toyota is taking advantage of the local community or otherwise prejudicing members of the community. FED. R. EVID. 401, 402, 403.

### 5. INTERPRETATION OF THE TOYOTA DEFENDANTS' DOCUMENTS BY PLAINTIFFS' EXPERTS

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of any attempt by Plaintiffs' experts to provide "interpretation" of the Toyota Defendants' internal documents. Plaintiffs' experts or other witness are not and were not the Toyota Defendants' employees, and thus bring no personal knowledge regarding any of the Toyota Defendants' documents. Plaintiffs' experts' subjective interpretation of the Toyota Defendants' documents is loosely concealed jury argument, which is not the province of testimony from any witness, expert or otherwise. Such testimony from a witness without personal knowledge is pure speculation, and should be excluded.

### 6. INFLAMMATORY REFERENCE TO THE TOYOTA DEFENDANTS

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of a suggestion that the Toyota Defendants are foreign or alien; that the Toyota Defendants take advantage of the poor or the unsophisticated; that the Toyota Defendants are callous or unconcerned about safety; or any other statement, argument, inference or comment which would tend to create or show that there is a conflict between the Toyota Defendants' business and consumers; or that the Toyota Defendants are callous, greedy or overreaching, for the reason that any such statements, inferences or arguments are entirely false and are calculated solely for the purpose of creating prejudice against the Toyota Defendants for the purpose of establishing a bias in the minds of the jury against the Toyota Defendants, or for the purpose of inflaming the emotions of the jury against the Toyota Defendants and in favor of Plaintiffs. Fed. R. Evid. 402, 403.

7. **PLAINTIFFS' FINANCIAL CONDITION**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of documents regarding Plaintiffs' finances, inability to pay medical or other expenses, non-existent or insufficient insurance, or any other matter relating to Plaintiffs' financial status, since such matters have no relevance or probative value to any issue which is in question in this case and is calculated to cause unfair surprise in the minds of the jury against the Toyota Defendants. Simply put, there is no evidence that Plaintiffs or any of the decedent's Wrongful Death Act beneficiaries were financially dependent upon the decedents, making evidence of their financial status wholly irrelevant on the question of liability and to the amount of damages that may be recoverable. Fed. R. Evid. 401, 402. Furthermore, the admission of such evidence would constitute trial by ambush, an unfair surprise, and

endorsement of dilatory and abusive discovery tactics, and an unfair prejudice to the Toyota Defendants' right to fully and fairly prepare for the trial of this matter. *Id.*; Fed. R. Evid. 403.

## 8. REFERENCE TO REPRESENTATION BY DEFENSE COUNSEL, SIZE, OR LOCATION OF LAW FIRMS

Plaintiffs and Plaintiffs' witnesses should not be allowed to mention, reference, or put on any evidence that the attorneys for the Toyota Defendants regularly represent Toyota, other defendants, corporations, insurance companies or manufacturers in lawsuits, or that the Toyota Defendants' attorneys represent Toyota in other lawsuits. Also, Plaintiffs' counsel and their witnesses should not make mention of the number of attorneys who are members of the firm in which the Toyota Defendants' attorneys practice or the number of attorneys who have appeared on the Toyota Defendants' behalf in this case. Further, evidence regarding the residence of the lawyers representing the Toyota Defendants at any trial, deposition or court proceeding in this matter is entirely irrelevant. Fed. R. Evid. 401, 402, 403.

Plaintiffs and Plaintiffs' witnesses should also not be allowed to make any mention of, make reference to, or put on any evidence of the number of attorneys or legal assistants in the Toyota Defendants' attorneys' law firms or the city where the lawyers reside. Such information is not probative of any material fact and would influence the jury, thus unfairly prejudicing the Toyota Defendants. *United States v. Socony – Vacuum Oil Co.*, 310 U.S. 150 (1940); *see also* Fed. R. Evid. 401, 402, 403.

## 9. ACCIDENT HISTORY OF THE PRODUCT LINE

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding the accident history of Toyota vehicles or vehicles designed, manufactured or sold by Toyota or related companies, including any reference to the Toyota Defendants as "a high insurance risk" or "high risk" manufacturer or other such terms

calculated to bring before the jury accidents or an accident history involving vehicles designed, manufactured or sold by the Toyota Defendants or related companies. References to accident history or other such references are calculated to bring before the jury accidents other than the occurrence in question in this case, and testimony and reference to such other accidents would be hearsay and calculated to deprive the Toyota Defendants of the right of cross-examination. Further, there would be no information available with regard to the type or nature of the products involved, the conditions and circumstances under which such other accidents may have occurred, or the conduct of the injured person or some other third person as to any other accident making up such accident history. Without such information, any other accidents making up the so-called accident history of the Toyota Defendants' vehicles would be irrelevant and inadmissible and, consequently, the accident history based upon any such other accidents would be likewise inadmissible. Fed. R. Evid. 402, 403, and 802.

Respectfully submitted,

*/s/ Kurt C. Kern*_____
**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com
**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas 75201
(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR TOYOTA DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 23rd day of May, 2014.

*/s/ Kurt C. Kern*_____