**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **OLLIE GREENE**, *et al.*, | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| v. | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| | § | |
| **TOYOTA MOTOR CORPORATION**, *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' JOINT MOTION IN LIMINE AND BRIEF IN SUPPORT THEREOF

TO THE HONORABLE COURT:

Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Sales U.S.A., Inc., Volvo Group North America, LLC f/k/a Volvo Trucks North America, Inc., Strick Trailers, LLC, John Fayard Moving & Warehouse, LLC and Dolphin Line, Inc. (collectively "Defendants") file this Joint Motion in Limine and Brief in Support Thereof.  Defendants respectfully request that, before the voir dire examination of the jury panel has begun, before any opening statements are made to the jury, and before the introduction of any evidence, the Court instruct Plaintiffs and all of Plaintiffs' witnesses to refrain from making any mention through interrogation, voir dire examination, opening statement, arguments or otherwise, either directly or indirectly, concerning any of the matters hereinafter set forth, without first approaching the bench and obtaining a ruling from the Court outside the presence and hearing of all prospective jurors and the jurors ultimately selected to try this case, with regard to the following:

## JOINT MOTION NO. 1:  Untimely Disclosed File Materials and Data

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence that was untimely or insufficiently disclosed with their expert disclosures.  Specifically, Plaintiffs' experts Keith Friedman, Dr. Rhoads Stephenson, and Jeff G. Vick, failed to timely disclose facts and data considered in forming and to support their opinions.  This includes testing and simulation work and calculations that were not timely disclosed by Vick, Friedman and Stephenson at Plaintiffs' expert disclosure deadline and as required by Federal Rule of Civil Procedure 26(a)(2).[1]  As a result Friedman, Stephenson, and Vick should be precluded from relying upon, alluding to, or testifying regarding any untimely disclosed materials and work.

### A.      Legal Standard for Preclusion

Federal Rule of Civil Procedure 26(a)(2)(B) requires retained experts to include in their reports not only their opinions and the basis for the same, but also all facts or data considered in forming them.  "The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them…" FED. R. CIV. P. 26(a)(2)(B).  The rule is unequivocal and was worded specifically to provide opposing parties with *access* to all materials reviewed or considered by the expert, whether or not the expert report ultimately refers to them.  *In re Google Adwords Litigation*, 2010 WL 5185738, at *3 (N.D. Cal. Dec. 8, 2010) (emphasis added) (citing *City of Owensboro v. Kentucky Utilities Co.*, 2008 WL 452674, at *1 (W.D. Ky. Oct. 8, 2008); *Allstate Ins. Co. v. Electrolux Home Products, Inc.*, 840 F. Supp. 2d 1072, 1079 (N.D. Ill. 2012) ("The rule contemplates *production* of the

---

[1] Relevant background and full briefing by the Defendants regarding Plaintiffs failure to timely disclose such materials can be found in multiple Defendants' motions to exclude such information.  *See* Doc No. 377 - 382, 391 - 394, 409 – 410, 508 – 509, 583.

materials an expert considered) (emphasis added)); *see also Regional Airport Authority of Louisville v. LFG, LLC*, 460 F.3d 697, 715 (6th Cir. 2006) (Rule 26 requires disclosure of all information that has been provided to testifying experts).  Any disclosures pursuant to Rule 26(a) must be supplemented or corrected pursuant to Rule 26(e)(1) in a timely manner if the party learns that in some material respect the disclosure is incomplete or inaccurate.

Failure to timely disclose any such expert materials precludes use of that information in support of a motion, at hearing or at trial, unless the failure was substantially justified or harmless.  FED. R. CIV. P. 37(c)(1); *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 379-82 (5th Cir. 1996).  Rule 37 sanctions must be just and specifically related to the particular "claim" at issue. *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 (5th Cir. 2004).  Additionally, the court has inherent powers to enter sanctions.  *Green v. Blitz U.S.A., Inc.*, Civ. A. No. 2:07-CV-372, 2011 WL 806011 at *3 (E.D. Tex March 1, 2011).  The trial court is to be guided by four factors in determining whether untimely disclosed expert testimony or materials should be permitted: (1) the importance of the testimony or materials; (2) the prejudice to the Defendants in allowing the testimony or materials; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to disclose the testimony or materials.  *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1000 (5th Cir. 1998); *Bradley v. U.S.*, 866 F.2d 120, 125 (5th Cir. 1989).

### B.      The Untimely Disclosed Facts and Data Should be Stricken.

The Court should strike the untimely disclosed facts and data considered by Friedman and Stephenson in preparing their expert report along with any exhibits that will be used to summarize their opinions.  Plaintiffs were required by the Federal Rules of Civil Procedure and this Court's scheduling order to disclose all the facts and data considered by their experts in

forming their opinions by November 20, 2013, and to timely make any necessary supplementations.  Plaintiffs failed to disclose the vast majority of the materials considered by Friedman and Stephenson until their depositions on January 15, 2014 and January 18, 2014.  Plaintiffs failed to disclose any of Vick's file materials until January 20, 2014.   The key underlying data calculations Vick used were not disclosed until February 17, 2014, well after his deposition.  As is evident upon an application of the four factor test, the failure to timely provide the materials was neither substantially justified nor harmless.

      1.     <u>The material and data is not important to Plaintiffs.</u>

As to the first factor, the materials and related testimony is not of critical importance to Plaintiffs' case, given counsel for Plaintiffs decision that they were not important enough to produce them.   Friedman stated in his deposition that the undisclosed materials simply "illustrate" his opinions.    The limited importance of the materials is best demonstrated by Plaintiffs' failure to disclose them with the expert reports, as Plaintiffs did furnish lengthy reports accompanied by some materials.  The relative lack of importance of the materials to Plaintiffs weighs in favor of precluding its use.

      2.     <u>The Defendants would be prejudiced if Plaintiffs are allowed to use the materials and data.</u>

The second factor also weighs heavily in favor of precluding the materials and data, because the Defendants would clearly be prejudiced if Plaintiffs were allowed to use them.  As discussed above, the Defendants did not have proper access or an opportunity to review the untimely disclosed materials prior to Friedman and Stephenson's depositions.  The sheer volume of materials untimely disclosed could not, as a practical matter, be reviewed within the time allotted for the witnesses' depositions.

In addition, the Defendants did not have a meaningful opportunity to review the untimely

disclosed materials prior to Vick's deposition.  Some materials were disclosed late the day before the deposition and the Vick's calculations were not disclosed until well after his deposition.  The Defendants have been denied an opportunity to examine and meaningfully depose Vick regarding the fundamental calculations he made in arriving at his accident reconstruction.  The Defendants had no opportunity to access or review his calculations until after Vick's deposition.

Additionally, because file materials and work supporting the opinions of Plaintiffs' experts was not timely disclosed with their report, Defendants were deprived of their right to have their own experts perform the work needed to respond to the work supportive or "illustrative" of the opinions Plaintiffs' experts.

3.    There should be no further continuances.

There should be no further continuances of the trial setting for this case to cure the prejudice resulting from the untimely disclosure.  This suit was filed in February 2011.  After multiple amendments to the scheduling order in this case, this case was set for trial in March 2014 by Judge Godbey on June 19, 2013.  Second Amended Scheduling Order, Doc. No. 161.  At the request of Plaintiffs, multiple deadlines related to that trial setting were changed, and due to Plaintiffs' failure to offer their experts for deposition as required, trial was reset for June 23, 2014 by Magistrate Ramirez on January 3, 2014.  Order Setting Trial Date, Doc. No. 332.  A continuance of the trial setting resulting from Plaintiffs failure to meet their expert disclosure obligations would be an unjustified delay in the trial of this case. It is also worth noting that Plaintiffs have vigorously opposed prior requests for a continuance from the defendants which was necessitated by delays caused by Plaintiffs.

4.     <u>Plaintiffs have no justification for the untimely disclosure.</u>

Plaintiffs have no justification for the untimely disclosure of the materials.  Federal Rule of Civil Procedure 26(a)(2)(B) requires retained experts to include with their reports not only their opinions and the basis for the same, but also all facts or data considered in forming them. FED. R. CIV. P. 26(a)(2)(B).  A party must, without the need for a discovery request, disclose to the other parties the identity of its expert witnesses.  *Id.* at 26(a)(2)(a).  The disclosure of retained expert witnesses must be accompanied by a report.  The report must contain, among other things, (1) the facts or data considered by the witness in forming all his opinions, and (2) any exhibits the witness will use to summarize or support his opinions.  *Id.*  Plaintiffs therefore were obligated to produce the materials without the need for a request from the Defendants.  Additionally, the Defendants had made a formal discovery request for the materials more than two years prior, and Plaintiffs had indicated in their response to the same that they would produce or make the materials available for copying.  The Defendants reminded Plaintiffs on December 9, 2013 in writing of their obligation to produce the materials, but Plaintiffs did not respond.

The record is clear that this was not a simple oversight by Plaintiffs.  They made a conscious, strategic decision not to produce this information that was requested on multiple occasions.  However, Plaintiffs repeatedly denied that they had an obligation to produce such materials.  Plaintiffs' intentional refusal to disclose the materials in a timely manner, despite repeated requests they do so, weighs heavily in favor of preclusion.

## C.     Conclusion

Plaintiffs had an obligation to disclose the facts and data that their testifying experts considered as well as any materials used to summarize or support their opinions on November 20, 2013.  Despite repeated requests made by various Defendants that Plaintiffs supplement their

disclosures to include such information, Plaintiffs failed to timely disclosure the materials. Plaintiffs' failure to timely disclose the materials was neither justified nor harmless.  As a result Friedman, Stephenson, and Vick should be precluded from relying upon, alluding to, or testifying regarding any untimely disclosed materials.   Stated another way, Friedman, Stephenson, and Vick should only be allowed to rely upon, allude to, or mention in his testimony the materials that are contained within his expert report.

## JOINT MOTION NO. 2:  Undisclosed or Unsupported Defect or Negligence Theories

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding any alleged defects, negligence, or any additional claims which have not been previously disclosed to the Defendants or are not causally connected to the accident made the basis of this lawsuit or Plaintiffs' injuries and damages.  This includes any mention of, reference to, or any evidence regarding the opinions, bases, or conclusions of Plaintiffs' experts regarding the Defendants, the cause of the accident, and the cause of Plaintiffs' injuries or any damages, which were not properly disclosed pursuant to the Federal Rules of Civil Procedure, any applicable order of the Court, and/or the agreement of the parties.

Any attempts to offer evidence of any other alleged defect, negligence, or additional claims have no materiality or relevance to the issues in this lawsuit, are untimely, a violation of the parties' duty to supplement discovery prior to trial, and could only serve to prejudice and unfairly surprise the Defendants.  FED. R. EVID. 403; FED. R. CIV. P. 26.  Furthermore, the admission of such evidence would constitute trial by ambush, an endorsement of dilatory and abusive discovery tactics, and an unwarranted prejudice to the Defendants' right to fully and fairly prepare for the trial of this matter.  *Id.*

**JOINT MOTION NO. 3:  Any Evidence Regarding Other "Similar" Incidents**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence to other incidents, claims, complaints, and/or lawsuits (hereinafter collectively referred to as "other incidents") unless Plaintiffs have first laid a foundation of substantially similarity outside the presence of the jury.  Evidence of dissimilar incidents, allowed unfettered before the jury, is irrelevant and extremely prejudicial, frequently misleading, and confusing. Defendants specifically request that the court rule that the other incidents described in this motion are not substantially similar as a matter of law and exclude all other incidents unless a foundation of substantial similarity is first laid outside the presence of the jury.

 The grounds for this motion are that other incidents are not relevant unless a foundation of substantial similarity is laid. Fed. R. Evid. 402.  Dissimilar incidents are more prejudicial than probative because they create a risk of jury confusion and decision based on different designs or circumstances.  In a product liability case, evidence of other accidents are relevant only under certain carefully defined circumstances: *(1)* the earlier failure occurred under conditions substantially similar to those existing during the failure in the accident central to the litigation, and *(2)* the earlier failure occurred at a time not too remote from the time of the failure in the accident central to the litigation.  *Edwards v, Permobil, Inc*, No. CIV. A. 11-1900, 2013 WL 4508063 (ED La 8/22/13) citing *Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334, 338–39 (5th Cir. 1980); *Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993)(proponent must establish "that the facts and circumstances of other accidents or occurrences are 'closely similar' to the facts and circumstances at issue").

The substantial similarity rule "rests on the concern that evidence of dissimilar accidents lacks the relevance required for admissibility under Federal Rules of Evidence 401 and 402."

*Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991).   This is of particular importance in cases where the evidence is proffered to show the existence of a defective condition or causation.   In *Barker v. Deere & Co.*, 60 F.3d 158, 162-63 (3d Cir. 1995), the Third Circuit described the importance of the rule when allegations of product defect are at issue:

> We note that every court of appeals to have considered this issue agrees that when a plaintiff attempts to introduce evidence of other accidents as direct proof of a design defect, the evidence is admissible only if the proponent demonstrates that the accident occurred under circumstances substantially similar to those at issue in the case at bar.
>
> The foundational requirement of establishing substantial similarity is especially important in cases where the evidence is proffered to show the existence of a design defect.   In such cases, the jury is invited to infer from the presence of other accidents that a design defect existed, which contributed to the plaintiffs' injuries. (Citations omitted).

Federal courts have interpreted "similarity of conditions" to mean that the occurrence or accidents must have involved the identical model or design of product, or, at the least, one which is substantially or virtually similar.   See *Anderson v. Whitaker Corp.*, 894 F.2d 804, 813 (6th Cir. 1990); *Brock v. Caterpiller, Inc.*, 94 F.3d 220, 225-26 (6th Cir. 1990).   Further, plaintiffs also must prove that the accident circumstances of the other claims and lawsuits are substantially similar to those at issue in this case.   *See Barker*, 60 F.3d at 162 ("The almost universal requirement, however, is that the prior occurrence must involve facts and circumstances which are substantially similar to those involved in the case under consideration or they will be excluded").

Should this Court decide the some of the incidents are substantially similar, they may still be excluded from trial.   As the Fifth Circuit held, "even when a substantial similarity of

circumstances is established, the District Court has broad discretion to exclude some or all of the proffered evidence under Rule 403 of the Federal Rules of Evidence." *Johnson*, supra at 579. The Seventh Circuit noted the danger of taking the fact finder on any sort of a prolonged, confusing excursion in an already complicated trial:

> As the circumstances and conditions of the other accidents become less similar to the accident under consideration, the probative force of such evidence decreases. At the same time, the danger that the evidence will be unfairly prejudicial remains. [T]he jury might infer from evidence of the [other] accidents alone that ultra-hazardous conditions existed... and were the cause of the... accident without those issues ever having been proved.

*Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1269 (7th Cir. 1988); *see also Uitts v. General Motors Corp.*, 411 F. Supp. 1380, 1383 (E.D. Penn. 1974) (reports of similar accidents excluded under FRE 403 because the thirty-five reports offered by plaintiffs would have diverted attention from plaintiffs' claim to the claims contained in those reports), aff'd, 513 F.2d 626 (3d Cir. 1975).

## JOINT MOTION NO. 4:  Evidence Regarding Recalls of Other Products

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding any alleged defects or recalls of products other than the products and vehicles that are specifically at issue in this case. Such evidence or reference, in any form, is not relevant and should be excluded. Fed. R. Evid. 402. The only purpose of such evidence would be to inflame the jury against Defendants. Where evidence of an alleged defect is not relevant to plaintiffs' theory of the case or there is no evidence that the alleged defect existed on the subject vehicle, it is proper to exclude the evidence. *Kane v. Ford Motor Company*, 450 F.2d 317 (3rd Cir. 1971) (trial court properly excluded evidence of possibly defective brake supports because the evidence was irrelevant to plaintiffs claim of

improper brake hose installation and there was no evidence the condition existed in the subject vehicle).

Additionally, where a vehicle or vehicle component involved in a recall campaign is different from the alleged defective vehicle or vehicle component at issue in a product liability case, evidence of the recall campaign is not relevant and should be excluded. *See, e.g., Jordan v. General Motors Corp.*, 624 F. Supp. 72, 77 (E.D. La. 1985).  Further, "even if such evidence could be broadly construed as constituting relevant evidence, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice and the possibility of misleading the jury." *Id.*, Fed. R. Evid. 403.  It is only where Plaintiffs can show the alleged defect at issue was involved in a recall that evidence of the recall campaign is admissible.  *Id.*  In the present case, Plaintiffs claim their injuries are a result of manufacturing or design defects in the manufactures vehicles.  This Court should exclude all evidence of any other alleged defects.  Such evidence is not relevant and would serve no purpose other than to unfairly prejudice Defendants. *Id.*

## JOINT MOTION NO. 5:  Evidence Regarding any Alleged Damages Concerning or Relating to the Greene Children

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding any alleged damages that concern or relate in any way to the Greene children, Wesleigh and Wyndell II.  This evidence should be excluded because *(i)* any such evidence is not relevant to any claim or issue in this suit; *(ii)* it is unduly prejudicial (far outweighing any probative value) and inflammatory; and *(iii)* it will confuse and mislead the jurors.  This includes, but is not limited to, any photographs, descriptions or demonstrative evidence regarding the children's injuries and bodies (including such materials in

autopsy reports and related materials), as well as any pain, suffering or mental anguish allegedly suffered by the children in connection with the accident.

Any evidence regarding any damages allegedly suffered by the Greene children is not relevant because this Court has already ruled that none of the plaintiffs have standing to pursue claims in connection with the Greene children's deaths.  Specifically, in its December 19, 2012, May 16, 2013, and May 5, 2014, 2014 orders granting partial summary judgment (Doc. Nos. 130, 156, & 614) the Court held, among other things, that: *(1)* Wyndell Sr.'s mother Ollie Greene lacks standing to sue under Texas law for the wrongful deaths of her daughter-in-law LaKeysha and her two grandchildren; *(2)* LaKeysha's mother Marilyn Burdette Hardeman lacks standing to sue under Texas law for the wrongful deaths of her son-in-law Wyndell Sr. and her two grandchildren; and *(3)* any wrongful death claims that Wyndell Sr. once had based on the deaths of his children lapsed upon his death and cannot be maintained by his estate under Texas law.  *See, e.g.*, Order (Doc. No. 130) at 4-5.

Moreover, no causes or claims – whether survival claims or otherwise – have ever been asserted by or on behalf of the estates of the Greene children or by a court-appointed "personal representative" of the estates on their behalf.  *See generally* Plaintiffs' Orig. Compl. (Doc. No. 1), First Am. Compl. (Doc. No. 24-1) and Second Am. Compl. (Doc. No. 113).  Under Texas law a survival claim belongs to the decedent, and the claim must be brought on the decedent's *estate's* behalf.  *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 850-51 (Tex. 2005).  That has never occurred here.

There are, in short, no claims remaining by any plaintiff in this case arising from the Greene children's injuries or deaths. The *fact* of the occurrence of their deaths in the collision is not in dispute; evidence of their "damages" is not relevant to any remaining claims or issues, is

highly prejudicial, and will confuse and mislead the jury. All such evidence should be excluded under Federal Rules of Evidence 401, 402 and 403.

### JOINT MOTION NO. 6:  Damages Concerning or Relating to the LaKeysha Greene or Her Estate

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of any alleged damages that concern or relate in any way to LaKeysha Greene or her estate because *(i)* any such evidence is not relevant to any pending claim or issue; *(ii)* it is unduly prejudicial (outweighing any probative value) and inflammatory; and *(iii)* it will confuse and mislead the jurors.  This includes, but is not limited to, any photographs, descriptions or demonstrative evidence regarding LaKeysha Greene's injuries and body, as well as any pain, suffering or mental anguish allegedly suffered by her in the accident.

No causes or claims – whether survival claims or otherwise – have ever been asserted by or on behalf of the estates of LaKeysha Greene or by a "personal representative" of her estate on its behalf.  *See generally* Plaintiffs' Orig. Compl. (Docket #1), First Am. Compl. (Docket #24-1) and Second Am. Compl. (Docket #113).   Under Texas law a survival claim belongs to the decedent, and the claim must be brought on the decedent's *estate's* behalf.  *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 850-51 (Tex. 2005).  That has never occurred here.

Moreover, this Court has already held in its December 19, 2012, May 16, 2013, and May 5, 2014orders granting partial summary judgment (Doc. Nos. 130, 156 & 614) that: *(1)* Wyndell Sr.'s mother Ollie Greene lacks standing to sue under Texas law for the wrongful deaths of LaKeysha Greene, her daughter-in-law; and *(2)* any wrongful death claims that Wyndell Sr. once had based on the deaths of his family members lapses upon his death and cannot be maintained by his estate under Texas law.  *See, e.g.*, Order (Doc. No. 130) at 4-5.

Evidence of any damages allegedly suffered by LaKeysha Greene or her estate is not relevant to any remaining claims or issues in this suit, is highly prejudicial, and will confuse and mislead the jury.  All such evidence should be excluded under Federal Rules of Evidence 401, 402 and 403.

## JOINT MOTION NO. 7:  Lost Wages, Earnings or Income for either Wyndell Greene Sr. or LaKeysha Greene

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding: *(i)* any lost wages, earnings or income allegedly suffered by LaKeysha Greene or her estate as a result of her death; and *(ii)* any lost wages, earnings or income allegedly suffered by Wyndell Greene, Sr. or his estate as a result of his injuries or death other than any wages, earnings or income allegedly lost between the date of the accident (May 28, 2010) and the date of his death (September 11, 2010).  Any such testimony or evidence – including but not limited to the report of the plaintiffs' damages expert, Stan Smith – is not relevant to any pending claim or issue; will confuse and mislead the jury; will waste time; and its probative value is outweighed by prejudice.

As discussed above, this Court has already held that: *(1)* Wyndell Sr.'s mother Ollie Greene lacks standing to sue under Texas law for the wrongful deaths of her daughter-in-law LaKeysha; *(2)* LaKeysha's mother Marilyn Burdette Hardeman lacks standing to sue under Texas law for the wrongful deaths of her son-in-law Wyndell Sr.; and *(3)* any wrongful death claims that Wyndell Sr. once had based on the deaths of his family lapsed upon his death and cannot be maintained by his estate under Texas law.  *See, e.g.*, Order (Doc. No. 130) at 4-5. Moreover, while a survivorship claim has been asserted on behalf of the estate of Wyndell Sr. by the estate's personal representative, William Greene, no such claim has been asserted by or on behalf of LaKeysha Greene's estate.

With respect to the wrongful death claims brought by Ollie Greene and Marilyn Burdette Hardeman, under Texas law the parent of an adult child is generally entitled to recover the amount of future pecuniary contributions that the decedent, in reasonable probability, could have been expected to make to the parent. In a wrongful death case, the Texas Pattern Jury Charges define "pecuniary loss" as the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that the wrongful death beneficiary, in reasonable probability, would have received from the decedent had he or she lived. *See* 2012 Texas PJC §16.6. While a parent may recover damages for the pecuniary benefit that the parent had a reasonable expectation of receiving from his or her adult child, se*e Moore v. Lillebo,* 722 S.W.2d 683, 687 (Tex. 1987), parents of adult children are not entitled to recover "loss of earnings" as the plaintiffs have pled in this case. *See* Second Am. Compl. (Doc. No. 113) at 28-29.

Marilyn Burdette Hardeman testified in her deposition as to the amount of pecuniary support she received from her daughter. When asked how much "cash or money" Hardeman received from her daughter she stated; "Like – it's 600 a month." Hardeman Depo Tr. at 19:16-19:22, attached hereto as Exhibit "A" (APP 2). Later Hardeman affirmed that the $600 per month provided by her daughter went to pay bills: "Yes, she would pay my bills." Hardeman Depo Tr. at 22:1-22:4 (APP 3)) Similarly, Ollie Greene testified in her deposition that Wyndell, Sr. had provided her with less than $2,000 in financial support during the final two years of his life. O. Greene Depo Tr. at 17:2-18:24, attached hereto as Exhibit "B" (APP 5 –APP 6)

In light of the already-adduced deposition testimony regarding the pecuniary value of contributions LaKeysha Greene made to her mother, any evidence of her past or hypothetical future earnings will have minimal, if any, probative value in this case. The same is true regarding pecuniary contributions made by Wyndell Greene, Sr. to his mother and any evidence of his past

or hypothetical future earnings.  Simply put, the amount that either LaKeysha Greene or Wyndell Greene, Sr. *earned in the past or would have earned*, had they survived, is not relevant to any remaining claim or cause in this suit.  Such cumulative evidence would also cause confusion of the issues, would be unfairly prejudicial, and would waste time in this matter and should therefore be excluded under Federal Rule of Evidence 403.

### JOINT MOTION NO. 8: Photos of the Bodies of LaKeysha Greene or the Greene Children

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of any "scene photos" of LaKeysha Greene and the Greene children because:  *(i)* any probative value of the photos is far outweighed by the unfair prejudice of showing them to the jury; and *(ii)* they are not relevant to any of the pending claims in this suit.

Federal Rule of Evidence 403 contemplates the exclusion of even relevant evidence that "induce[s] decision on a purely emotional basis."  FED. R. EVID. 403 Advisory Comm. Notes. The Fifth Circuit has explained that "photographs of the victim bleeding profusely are classic examples of such evidence." *Jackson v. Firestone Tire & Rubber Co.,* 788 F.2d 1070, 1085 (5th Cir. 1986).  This is particularly true in a wrongful death action such as this in which the nature of the decedents' injuries is not at issue, rendering the probative value of accident photographs minimal relative to the significant probability that they will engender prejudice. *Campbell v. Keystone Aerial Surveys, Inc.,* 138 F.3d 996, 1004-05 (5th Cir. 1998) (affirming district court's decision to exclude photos of decedent's body where there was no dispute as to how the victim died, pictures were minimally probative of mental anguish that the victim's surviving relatives experienced, and pictures would "induc[e] decision on a purely emotional basis.")

Any such photos should also be excluded because they are not relevant to any remaining claim or cause of action.  As discussed above, none of the plaintiffs have standing to assert wrongful death claims based on the deaths of the Greene children, and there are no survivorship claims asserted on behalf of the estates of either LaKeysha Greene or the Greene children in this suit.  Moreover, it is undisputed that these plaintiffs were not present at the accident scene and did not personally witness the accident or its aftermath.

The *fact* of the occurrence of the deaths of LaKeysha Greene and the Greene children in the collision is not in dispute; visual depictions of their injuries and death are highly prejudicial. Explicit photos of LaKeysha Greene, the Greene children, and their injuries are not relevant and serve no purpose other than to inflame the passions of the jury.  They should be excluded under Federal Rule of Evidence 403.

## JOINT MOTION NO. 9:  Non-Economic Damages

Plaintiffs and Plaintiffs' witnesses should also not be allowed to make any mention of, make reference to, or put on any evidence regarding non-economic damages.  Defendants further request that counsel for Plaintiffs be specifically instructed to inform and instruct all witnesses, including Dr. Stan V. Smith, who they call to not volunteer, interject, disclose, state, or mention to the jury any of the below enumerated matters, unless specifically questioned thereon after a prior ruling by the Court.

### A.  Basis for Motion

The matters set out herein would be inadmissible for any purpose on proper and timely objection and have no bearing on the issues in the case or the rights of the parties to this suit. Permitting interrogation of witnesses, commenting to the Court, or offering evidence concerning these matters would unduly prejudice Defendants' case and deprive them of a fair and impartial

trial.  Furthermore, any testimony regarding hedonic damages is irrelevant under Federal Rules of Evidence 702 and 403 and *Daubert*. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (U.S. 1993); *Smith v. Dorchester Real Estate, Inc.*, 732 F.3d 51, 67 (1st Cir. Mass. 2013); *Ayers v. Robinson*, 887 F. Supp. 1049, 1064-5 (N.D. Ill. 1995). Accordingly, the Court should instruct all counsel that the failure to abide by such order of the Court may constitute contempt.

Federal Courts have repeatedly rejected the hedonic damages (value of life and loss of relationship and society) methodology employed by Dr. Smith as unreliable and irrelevant and barred his testimony in case after case. *Smith v. Dorchester Real Estate, Inc*, 732 F.3d 51, 66-7 (1st Cir. 2013); *Bailey v. Nyloncraft, Inc.*, 2012 WL 3717760, at *3-5 (E.D. Mich. Aug. 28, 2012); *Bolden v. Walsh Group*, 2012 WL 1079898, at *5 (N.D. Ill. Mar. 30, 2012); *Davis v. ROCOR Int'l.*, 226 F. Supp. 839, 842 (S.D. Miss. 2002); *Saia v. Sears Roebuck & Co., Inc.,* 47 F. Supp. 2d 141, 149-51 (D. Mass. 1999); *Brereton v. U.S.*, 973 F. Supp. 752, 757 (E.D. Mich. 1997); *Kurncz v. Honda N. Am., Inc.*, 166 F.R.D. 386, 391 (W.D. Mich. 1996); *Ayers v. Robinson*, 887 F. Supp. 1049 (N.D. Ill. 1995); *Sullivan v. Gypsum Co.*, 862 F. Supp. 317, 320-22 (D. Kan. 1994); *Hein v. Merch & Co., Inc.*, 868 F. Supp. 230, 234 (M.D. Tenn. 1994); and *Mercado v. Ahmed*, 974 F.2d 863, 871 (7th Cir. 1992).

Indeed, when Dr. Smith's testimony has been challenged under Rule 702, it does not appear that any federal court has ever permitted him (without being reversed) to testify before a jury as to any quantification of hedonic damages. *Smith*, 732 F.3d at 66 (recognizing same and holding that trial court abused its discretion by admitting Dr. Smith's testimony). In addition to questioning the underlying rationale, courts and economists alike have recognized that VSL estimates vary dramatically across studies. *e.g. Ayers*, 887 F. Supp. at 1063; *Mercado v. Ahmed*, 756 F. Supp. 1097, 1103 (N.D. Ill. 1991). "[T]roubled by the disparity of results reached in

published [VSL] studies and skeptical on their underlying methodology, the federal courts which have considered expert testimony on hedonic damages in the wake of *Daubert* have unanimously held quantifications of such damages inadmissible." *Smith*, 732 F.3d at 66 (quotations omitted). Indeed, the First Circuit recently concluded that the problems outlined above demonstrate that "Dr. Smith's method for valuing life is based on assumptions 'that appear to convert logic and good sense,'" and therefore held that the district court abused its discretion by permitting Dr. Smith to testify about hedonic damages. *Smith*, 732 F.3d at 67 (citation omitted).

Courts have repeatedly determined, including in the face of Dr. Smith's proposed testimony, that jurors are capable of assessing any appropriate damage award for reductions in the enjoyment of life. *Sullivan*, 862 F. Supp. at 321 ("The court believes that a jury is capable of determining these losses from its own experiences and knowledge, and through testimony [by a fact witness], and further concludes that the proffered testimony of [D]r. Smith would improperly invade the province of the jury.").

## JOINT MOTION NO. 10:  Past Medical Expenses

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding medical expenses not actually paid or incurred by Plaintiffs regarding the medical care received by Wyndell Greene Sr.   The Court should exclude the past medical expenses set forth in the report of Plaintiffs' medical expert witness, Dr. Darrell L. Henderson, M.D., as well as his opinions regarding their alleged reasonableness and necessity, because those expenses do *not* constitute "the amount actually paid or incurred by or on behalf of" decedent Wyndell Greene, Sr., pursuant to Section 41.0105, and therefore inadmissible, pursuant to Texas' *De Escabedo* jurisprudence.   The Court should also preclude Plaintiffs from offering any evidence of past medical expenses until and unless Plaintiffs first demonstrate that

any such expenses constitute the amounts "actually paid or incurred," pursuant to Section 41.0105 and the *De Escabedo* jurisprudence.

**CPRC §41.0105 AND *DE ESCABEDO***

### A.  Section 41.0105

Section 41.0105 of the Texas Civil Practice & Remedies Code, which governs the evidence relating to amount of economic damages, states:

> In addition to any other limitation under law, recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant.

TEX. CIV. PRAC. & REM. CODE § 41.0105 (2014).

### B.  *De Escabedo*

In *Haygood v. De Escabedo*, 356 S.W.3d 391, 398 (Tex.2011), the Texas Supreme Court recognized that Section 41.0105 limits a claimant's recovery of medical expenses to those which have been or must be paid by or for the claimant.  The court then turned to the admissibility of evidence of past medical expenses:

> "Evidence which is not relevant is inadmissible."  This includes evidence of a claim of damages that are not compensable.  Since a claimant is not entitled to recover medical charges that a provider is not entitled to be paid, evidence of such charges is irrelevant to the issue of damages.

*Id.* (citations omitted).  The court then addressed the question of whether evidence of the total billed amount—i.e., the face value of the bills—has any other probative value:

> The question remains whether such evidence has any other probative value. A few courts in other jurisdictions have expressed concern that limiting the evidence to amounts that have been or must be paid provides the jury an unfairly low benchmark with which to gauge the seriousness of the plaintiff's injuries and awarding non-economic damages, such as for physical pain and mental anguish. But there is no unfairness if reimbursable amounts are reasonable for the services provided…. But we think that any relevance of such evidence is substantially outweighed by the confusion it is likely to generate, and therefore the evidence must be excluded.

*Id.* (objections omitted). The court concluded by ruling that only evidence of recoverable medical expenses is admissible at trial. *Id.*, 351 S.W.3d at 399.

**C.  Plaintiffs' Evidence of Past Medical Expenses**

For their evidence of the reasonableness and necessity of past medical expenses incurred by or on behalf of decedent Wyndell Greene, Sr., Plaintiffs rely on the report and opinions of their medical expert witness, Darrell L. Henderson, M.D.[2] Dr. Henderson's report contains the following opinions regarding past medical expenses:

The bills that I reviewed were:

|  |  |
|---|---|
| Parkland and Lipshy | $882,096.86 |
| UT Southwestern | $44,811.16 |
| Centennial Medical Center | $10,062.12 |
| Air Vac EMS | $17,820.00 |
|  | $954,790.16 |

This amount may change if more bills are received.

It is my opinion, to a reasonable degree of medical certainty, that the bills paid and incurred for the care of Mr. Greene were reasonable and necessary for his care.[3]

However, in his deposition, Dr. Henderson admitted that the medical bills stated in his report constituted the total billed amount—i.e., the face value of the bills—rather than "the amount actually paid or incurred by or on behalf of" decedent Wyndell Greene, Sr.—i.e., the amount paid by the Greene family's health insurer.[4]

By his own admission, then, the past medical expenses set forth in Dr. Henderson's report are *not* the amounts "actually paid or incurred by or on behalf of" decedent Wyndell Greene, Sr., pursuant to Section 41.0105.

---

[2] *See* Exhibit C, Expert Report of Darrell L Henderson, M.D., Plastic Surgery Associates, (8/19/13), at 14.
[3] *Id.*
[4] *See* Exhibit D, ORAL DEPOSITION OF DARRELL L. HENDERSON, M.D. (2/4/14), at 51-53, 59-61 (objections omitted)

Defendants therefore respectfully contends that the past medical expenses set forth in Dr. Henderson's report, as well as his opinions regarding their alleged reasonableness and necessity, are inadmissible, pursuant to Section 41.0105 and the *De Escabedo* jurisprudence.

## JOINT MOTION NO. 11:  Size of Company or Net Worth

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of a suggestion that the jury should consider the net worth or financial status of the Defendants or disparity in size and/or wealth of the parties unless and until the Court should find that such matters are relevant and their probative value outweighs the prejudicial effect.  Such comparisons would be irrelevant and immaterial to any issue to be decided by the jury, and would irreparably, unduly, and materially prejudice the jury against the rights of the Defendants.  *See* FED. R. EVID. 401, 403.

## JOINT MOTION NO. 12:  Statements Regarding "Consumer Safety" as Purpose of Suit

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of a suggestion that this case is one brought to establish standards of consumer safety or to enforce consumer safety principles, or that the reason for bringing this suit is based on a desire to enhance consumer safety, or any statement of similar import, for the reason that such argument or statement is misleading and confusing to the jury, in that such is not the purpose for bringing the suit at all.  Rather, this suit is one brought to collect money damages.  If it not brought on behalf of all consumers, or for the purpose of establishing consumer safety, or for any other such purposes of establishing consumer safety, but rather only to collect money.  Such an argument or statement by counsel is inflammatory and calculated to prejudice the rights of the Defendants and create bias and sympathy in favor of Plaintiffs, which is improper and impermissible.  FED. R. EVID. 402, 403.

**JOINT MOTION NO. 13:  Intended Use of Judgment Proceeds**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding how or in what manner Plaintiffs intend to spend or otherwise distribute proceeds from any judgment or verdict rendered in this case for the reason that such matters are irrelevant and immaterial to any issue involved in this case.  FED. R. EVID. 402, 403.

**JOINT MOTION NO. 14:   Use of Exhibits that Have Not Been Produced or Made Available for Inspection**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence related to an exhibit that is not available for inspection before it is displayed to the jury.  If the exhibit is in electronic format only, then it should be made available for inspection in electronic format.  Display of the exhibit before it is inspected could result in harm to the Defendants and is therefore unfairly prejudicial.  FED. R. EVID. 402, 403.

**JOINT MOTION NO. 15:  Attempt to Call Attorneys as Witnesses**

The Court should prevent any attempt by Plaintiffs to call counsel for the Defendants, including in-house counsel, as witnesses in this matter.  Plaintiffs have not identified counsel for the Defendants as fact witnesses.  FED. R. EVID. 402, 403.  Moreover, the only information in the possession of counsel would be protected from discovery by the attorney-client privilege or the work product doctrine.  FED. R. EVID. 502.

**JOINT MOTION NO. 16:  Pre-Trial Matters**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of any action by the Court in ruling upon any matter prior to the actual trial of this cause or that the pleadings or other matters filed by the Defendants were in

a particular form or of a particular nature, including the filing and rulings of this Motion in Limine, the discovery process, discovery disputes, Court rulings regarding discovery, or other matters, which should be resolved prior to the trial of this matter and outside the presence of the jury.  FED. R. EVID. 402, 403.

Respectfully submitted,


/s/ Kurt C. Kern
**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com
**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas  75201
(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR TOYOTA DEFENDANTS**



/s/ Randy Howry
**Randy Howry**
State Bar No. 10121690
rhowry@howrybreen.com
**John Carlson**
State Bar No. 00790426
jcarlson@howrybreen.com
**Howry Breen & Herman, LLP**
1900 Pearl Street
Austin, Texas  78705-7300
512-474-7300
512-474-8557 (fax)

**ATTORNEYS FOR VOLVO DEFENDANT**

*/s/ S. Todd Parks*

**S. Todd Parks**
State Bar No. 15526520
todd.parks@wbclawfirm.com
**Ashley De La Cerda**
State Bar No. 24045760
Ashley.delaCerda@wbclawfirm.com
**Walters, Balido & Crain**
Meadow Park Tower, 15th Floor
10440 North Central Expressway
Dallas, Texas 75231
214-749-4805
214-760-1670 (fax)

**Donald H. Dawson, Jr.**
State Bar No. 05606500
ddawson@dawson-clark.com
**Kathleen A. Clark**
State Bar No 00788830
kclark@dawson-clark.com
**Dawson & Clark, P.C.**
243 W. Congress
600 Marquette Building
Detroit, MI 48226
313-256-8900
313-256-8913 (Fax)

**ATTORNEYS FOR STRICK DEFENDANT**

*/s/ Michael P. Sharp*

**Michael P. Sharp**
State Bar No. 00788857
msharp@feesmith.com
**Scott W. Self**
State Bar No. 24033176
sself@feesmith.com
**FEE, SMITH, SHARP & VITULLO, LLP**
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 75240
972-934-9100
972-934-9200 (Fax)

**ATTORNEYS FOR JOHN FAYARD MOVING & WAREHOUSE, LLC.**

*/s/ John S. Kenefick*

**John S. Kenefick**
State Bar No. 24006294
jkenefick@macdonalddevin.com
**Joseph F. Henderson**
State Bar No. 24036751
jhenderson@macdonalddevin.com
**Macdonald Devin, P.C.**
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas  75270
214-744-3300
214-747-0942 (Fax)

**ATTORNEYS FOR DOLPHIN LINES, INC.**

## CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 23rd day of May, 2014.

*/s/ Kurt C. Kern*