**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **OLLIE GREENE**, *et al.*, | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| | § | |
| **TOYOTA MOTOR CORPORATION**, *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**APPENDIX IN SUPPORT OF THE**
**DEFENDANTS' JOINT MOTION IN LIMINE**

TO THE HONORABLE COURT:

COME NOW, Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Sales U.S.A., Inc., Volvo Group North America, LLC f/k/a Volvo Trucks North America, Inc., Strick Trailers, LLC, John Fayard Moving & Warehouse, LLC and Dolphin Line, Inc. (collectively "Defendants") and would respectfully show the Court as follows:

| EXHIBIT | DESCRIPTION | PAGE NUMBERS |
|---|---|---|
| Exhibit A | Excerpts from the Deposition of Marilyn Marie Hardeman taken 3/27/12 | App. 1-3 |
| Exhibit B | Excerpts from the Deposition of Ollie Ruth H. Greene taken 3/27/12 | App. 4-6 |
| Exhibit C | Expert Report of Darrell L. Henderson dated 8/19/13 | App. 7-45 |
| Exhibit D | Excerpts from the Deposition of Darrell L. Henderson taken 2/4/14 | App. 46-52 |

Respectfully submitted,


*/s/ Kurt C. Kern*_____
**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com
**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas  75201
(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR TOYOTA DEFENDANTS**


*/s/ Randy Howry*_____
**Randy Howry**
State Bar No. 10121690
rhowry@howrybreen.com
**John Carlson**
State Bar No. 00790426
jcarlson@howrybreen.com
**Howry Breen & Herman, LLP**
1900 Pearl Street
Austin, Texas  78705-7300
512-474-7300
512-474-8557 (fax)

**ATTORNEYS FOR VOLVO DEFENDANT**


*/s/ S. Todd Parks*_____
**S. Todd Parks**
State Bar No. 15526520
todd.parks@wbclawfirm.com
**Ashley De La Cerda**
State Bar No. 24045760

Ashley.delaCerda@wbclawfirm.com
**Walters, Balido & Crain**
Meadow Park Tower, 15th Floor
10440 North Central Expressway
Dallas, Texas 75231
214-749-4805
214-760-1670 (fax)

**Donald H. Dawson, Jr.**
State Bar No. 05606500
ddawson@dawson-clark.com
**Kathleen A. Clark**
State Bar No 00788830
kclark@dawson-clark.com
**Dawson & Clark, P.C.**
243 W. Congress
600 Marquette Building
Detroit, MI 48226
313-256-8900
313-256-8913 (Fax)

**ATTORNEYS FOR STRICK DEFENDANT**

*/s/ Michael P. Sharp*
**Michael P. Sharp**
State Bar No. 00788857
msharp@feesmith.com
**Scott W. Self**
State Bar No. 24033176
sself@feesmith.com
**FEE, SMITH, SHARP & VITULLO, LLP**
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 75240
972-934-9100
972-934-9200 (Fax)

**ATTORNEYS FOR JOHN FAYARD MOVING
& WAREHOUSE, LLC.**

*/s/ John S. Kenefick*
**John S. Kenefick**

State Bar No. 24006294
jkenefick@macdonalddevin.com
**Joseph F. Henderson**
State Bar No. 24036751
jhenderson@macdonalddevin.com
**Macdonald Devin, P.C.**
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas  75270
214-744-3300
214-747-0942 (Fax)

**ATTORNEYS FOR DOLPHIN LINES, INC.**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 23rd day of May, 2014.

*/s/ Kurt C. Kern*_____

```
                                                        Page 1

 1              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF TEXAS
 2                      DALLAS DIVISION

 3

 4    OLLIE GREENE, Individually as the
      Surviving Parent of WYNDELL GREENE,
 5    SR., WILLIAM GREENE, as the
      Representative of the Estate of
 6    WYNDELL GREENE, SR., and MARILYN
      BURDETTE-HARDEMAN, Individually and
 7    as the Surviving Parent of LAKEYSHA
      GREENE,
 8
               Plaintiffs,
 9
      VS                              NO. 3-11CV-0207-N
10
      TOYOTA MOTOR CORPORATION, TOYOTA
11    MOTOR MANUFACTURING NORTH AMERICA,
      INC., and TOYOTA MOTOR SALES USA,
12    INC., VOLVO GROUP NORTH AMERICA, INC.,
      VOLVO TRUCKS NORTH AMERICA, A DIVISION
13    OF VOLVO GROUP NORTH AMERICA, INC.,
      STRICK CORPORATION, INC., JOHN FAYARD
14    MOVING AND WAREHOUSE, LLC, and DOLPHIN
      LINE, INC.,
15
16             Defendants.
17
18         Oral deposition of Marilyn Marie Hardeman,
19      called by the Defendants, at the Courtyard Mariott,
20      6001 Financial Plaza, Shreveport, Louisiana,
21      commencing at approximately 9:17 a.m., on the 27th
22      day of March, 2012, and concluded on the same date.
23
24    Reported by:
25    Leita J. Seaborn, CCR, RPR
```

Page 19

1   children that they needed?  Changing diapers, feeding and

2   that sort of thing?

3       A.   Yes.

4       Q.   Did you also do some cleaning in the house?

5       A.   Very little, yes.  I didn't have to.  I just did

6   what I wanted to do, you know, if I wanted to do it.

7       Q.   Did you do cooking for the family?

8       A.   Some.

9       Q.   The money that Lakeysha would give you, was it a

10  set amount on a weekly or monthly basis?

11      A.   Well, yes, monthly mostly.  But anything else I

12  needed she -- Anything I needed, I didn't have to pay for

13  anything or food or shelter in the home or nothing like

14  that.  Anything I needed, going out to eat with her, with

15  them, she paid for everything so. . .

16      Q.   Other than providing food and shelter, did she

17  provide you cash money on top of that?

18      A.   Yes, she did.

19      Q.   And how much?

20      A.   Yes, they did.

21      Q.   And how much was that?

22      A.   Like -- it's 600 a month.

23      Q.   Was that sometimes by check and sometimes by

24  cash?

25      A.   Yes.

Page 22

1      A.   Yes.  She would pay my bills, yeah.

2      Q.   And was -- and was that about $6,000 -- or $600 a

3    month?

4      A.   Yes.

5      Q.   Did you keep any sort of record of what you were

6    given or what bills were paid on your behalf by Lakeysha?

7      A.   No.  I didn't keep a record.

8      Q.   Do you know if she did?

9      A.   No.  Only a copy of her checkbook.

10     Q.   Do you have that?

11     A.   No.

12     Q.   Do you know what happened to it?

13     A.   It was her personal stuff, so I don't know.

14   Probably in the trash now.

15     Q.   Did you file tax returns in 2004 to 2010?

16     A.   No.

17     Q.   Have you tried to seek any employment since 2001

18   when you left Tyson?

19     A.   No.

20     Q.   Has any doctor ever told you you are physically

21   disabled and cannot work?

22     A.   Repeat that, please.

23     Q.   Has any doctor ever told you you are disabled

24   such that you cannot work?

25     A.   Yes.

Page 1

1           IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF TEXAS
2                    DALLAS DIVISION
3
4    OLLIE GREENE, Individually as the
     Surviving Parent of WYNDELL GREENE,
5    SR., WILLIAM GREENE, as the
     Representative of the Estate of
6    WYNDELL GREENE, SR., and MARILYN
     BURDETTE-HARDEMAN, Individually and
7    as the Surviving Parent of LAKEYSHA
     GREENE,
8
             Plaintiffs,
9
     VS                                NO. 3-11CV-0207-N
10
     TOYOTA MOTOR CORPORATION, TOYOTA
11   MOTOR MANUFACTURING NORTH AMERICA,
     INC., and TOYOTA MOTOR SALES USA,
12   INC., VOLVO GROUP NORTH AMERICA, INC.,
     VOLVO TRUCKS NORTH AMERICA, A DIVISION
13   OF VOLVO GROUP NORTH AMERICA, INC.,
     STRICK CORPORATION, INC., JOHN FAYARD
14   MOVING AND WAREHOUSE, LLC, and DOLPHIN
     LINE, INC.,
15
16           Defendants.
17
18           Oral deposition of Ollie Ruth H. Greene,
19       called by the Defendants, at the Courtyard Marriott,
20       6001 Financial Plaza, Shreveport, Louisiana,
21       commencing at approximately 12:53 p.m., on the 27th
22       day of March, 2012, and concluded on the same date.
23
24   Reported by:
25   Leita J. Seaborn, CCR, RPR

Page 17

1      A.    A Jaguar.

2      Q.    Did Wyndell provide you in the last four years of

3   his life any financial support?

4      A.    Yes.

5      Q.    What type of financial support?

6      A.    Things that he wanted me to do around the house,

7   our house.

8      Q.    In Opelousas?

9      A.    Yes.

10     Q.    Help fix it up?

11     A.    Yes.

12     Q.    What sort of things did you do to the house with

13   Wyndell's help?

14     A.    Reroof the house.  And other things that go bad

15   with houses.  Fascia boards.

16     Q.    Did Wyndell pay for the new roof on the house?

17     A.    We paid for it.  He helped me.

18     Q.    In the last four years of his life, how much

19   money did Wyndell provide for you?

20     A.    I can't say specifically.

21     Q.    Was it on a regular basis or an as-needed basis?

22     A.    It was on as needed.

23     Q.    Okay.  So --

24     A.    And then regularly if he felt that he could

25   provide me with something that I would. . .

Page 18

1    Q.    Well, how much money did you give you for the

2    roof?

3    A.    I'm not sure.

4    Q.    More than a thousand dollars?

5    A.    Yes.

6    Q.    More than 2,000?

7    A.    No.

8    Q.    Can you think of any other things other than work

9    on the wood trim and roof that Wyndell paid for or helped

10   pay for?

11   A.    A cracked driveway, potholes out of the

12   driveway.  And anything that he saw was needed, trimming

13   tree limbs around the house.  Just general things that

14   needed to have been done that a mother couldn't do.

15   Q.    And would he -- would he hire a tree service to

16   come out or would he do it himself?

17   A.    He would do it himself and then sometimes I would

18   get people that I knew.

19   Q.    In the last two years of his life, what was the

20   total amount of money that you think Wyndell contributed

21   to help you?

22   A.    Oh, I'm not certain.

23   Q.    More than $2,000?

24   A.    No.

25   Q.    Now I understand that your son William lives in

PLASTIC AND RECONSTRUCTIVE SURGERY
MAXILLOFACIAL SURGERY
SURGERY OF HAND, WRIST & ELBOW
MICROSURGERY
COSMETIC SURGERY
LIPOSUCTION



**PLASTIC
SURGERY
ASSOCIATES**

DARRELL L. HENDERSON, M.D.
TERRY A. CROMWELL, M.D.
JEFFREY S. WILLIAMS, D.O.

August 19, 2013

Aubrey Pittman, Esquire
The Pittman Law Firm, P.C.
100 Crescent Court, Ste. 700
Dallas, TX 75201

Re: Ollie Greene, et al vs. Toyota Motor Corporation, et al
   Cause No. 3-11CV-0207-N

Dear Mr. Pittman:

Please find enclosed the medical report on the above-captioned client of yours, along with Curriculum Vitae, ASPS Expert Witness Affirmation, and statement.

If you should need my services in the future, please do not hesitate to contact me.

Sincerely,

Darrell L. Henderson, M.D.

DLH/mh

Enclosures       Medical Report - 08/19/13
                 Curriculum Vitae
                 ASPS Expert Witness Affirmation
                 Statement



AMERICAN SOCIETY OF
PLASTIC SURGEONS

1101 SOUTH COLLEGE ROAD - SUITE 400 - LAFAYETTE, LOUISIANA 70503-3082
TELEPHONE: 337-233-5025    TOLL FREE: 1-800-950-9290    FAX: 337-233-5054
E-MAIL ADDRESS: PLASTICSX@AOL.COM - WEBSITE ADDRESS: PSASSOC.COM

APP 7

PLASTIC AND RECONSTRUCTIVE SURGERY
MAXILLOFACIAL SURGERY
SURGERY OF HAND, WRIST & ELBOW
MICROSURGERY
COSMETIC SURGERY
LIPOSUCTION



**PLASTIC**

**SURGERY**

**ASSOCIATES**

DARRELL L. HENDERSON, M.D.
TERRY A. CROMWELL, M.D.
JEFFREY S. WILLIAMS, D.O.

August 19, 2013

Aubrey Pittman, Esquire
The Pittman Law Firm, P.C.
100 Crescent Court, Ste. 700
Dallas, TX 75201

Re: Ollie Greene, et al vs. Toyota Motor Corporation, et al
    Cause No. 3-11CV-0207-N

Dear Mr. Pittman:

In an effort to describe the injuries, pain, and other problems Mr. Wendel K. Greene, Sr.
had following his motor vehicle accident on May 28, 2010 until his death on
September 11, 2010, I reviewed the following documents:

1.   Parkland Hospital;

2.   Deposition of Gregory Rushing;

3.   Deposition of Kyle Evans;

4.   Deposition of William Kavell Greene;

5.   Excerpts from Carinbridge diary;

6.   Excerpts from Parkland Hospital;

7.   List of medical provided Wyndell Greene;

8.   Summary of Medicals paid on Wyndell Greene;

9.   Autopsy photographs of Wyndell Greene;

10.  Autopsy report Lakeysha Greene;

11.  Autopsy report Wesleigh Greene;

12.  Autopsy report Wyndell Greene, II;

13.  Autopsy report Wyndell Kyle Greene, Sr.;

14.  Collin County Medical Center;

15.  Dallas County Medical Examiners;



AMERICAN SOCIETY OF
PLASTIC SURGEONS

1101 SOUTH COLLEGE ROAD - SUITE 400 - LAFAYETTE, LOUISIANA 70503-3082
TELEPHONE: 337-233-5025   TOLL FREE: 1-800-950-9290   FAX: 337-233-5054
E-MAIL ADDRESS: PLASTICSX@AOL.COM - WEBSITE ADDRESS: PSASSOC.COM

APP 8

16.    Death Certificate Wyndell Kyle Greene;

17.    Police Accident Report;

18.    Reconstruction Team's Scale Diagram from crash scene;

19.    Narrative of Officer Barclay;

20.    Plaintiff Complaint;

21.    Amended Scheduling Order and Referral of Discovery;

22.    Records from Air Evac EMS;

23.    Records from Centennial Medical Center billing;

24.    UT Southwestern Zale Lipshy University Hospital - Air Vac; and

25.    ETMC EMS records.


## BASIS OF OPINION

I am a Board certified Plastic and Reconstructive surgeon whose practice deals primarily with reconstructive plastic surgery. I have treated patients with acute burns in my career and continue to see patients that see me on regular intervals that have sustained life-threatening burns in the past. This has helped me to understand the problems that burn patients develop over a course of their lifetime, as well as to observe firsthand the many limitations that we have in our treatment of these individuals. I worked at the burn unit with burn patients during my residency at the Mayo Clinic. I was very active in the burn unit in Milwaukee, Wisconsin during my hand surgery residency in Milwaukee, Wisconsin.

I treated patients with burn injuries during my two years of active duty with the United States Navy in Portsmouth, Virginia. This involved primarily pilots who would crash and would be severely burned, and large numbers of Marines who were accidentally caught in napalm fires when our planes accidentally missed the desired target.

GREENE.DLH

I first moved to Lafayette, Louisiana in 1969.  There were no burn units in the state, and I had to treat virtually all burn patients that came in either at Lafayette General Hospital or Our Lady of Lourdes Hospital.  Occasionally, we could transfer a severely burned child to the Shriners Hospital in Galveston, Texas, or an adult to one of the military hospitals in Texas, but the opportunity of this was small as the majority of other states did not have burn hospitals either.  I continued to treat virtually all of my acute patients, regardless of the degree of burns until the burn center opened in Baton Rouge somewhere in the mid-1980s.  Since that time, I have referred the vast majority of my patients that are burned over 30% or 35% to Baton Rouge, but of logistical necessity have continued to treat the acute burns that have less than 30% or 35% burns locally.

Over the years, I have developed a sub-specialty as a long-term reconstructive surgeon who follows burn patients forever.  Every week I see several patients that had severe thermal burns 10, 20, 30, and 40 years ago and will operate on many of those patients. Patients who survive burns have a lot of problems dealing with contractures, intolerance to heat, and wound breakdown.  They are all very negatively impressed with the severity of pain that they went through in order to survive their burns.  They almost all believe that they could have had more pain medications to help them cope with the day-to-day pain, the dressing changes, and procedures.

In seeing these large number of patients, I have noticed differences in the post-thermal psychological problems that these patients currently exhibit as compared to the post-thermal psychological problems they had 20 years ago.  I am including a copy of my curriculum vitae for your record.

GREENE.DLH

## HISTORY

Mr. Wendel K. Greene, Sr. was born on September 4, 1975 and was 34 years old at the time of his automobile accident on May 28, 2010 at 18:25. Mr. Greene grew up in Opelousas, Louisiana. He met his wife, Lakeysha, in graduate school at the University of Arkansas where he got a MBA degree. Mr. Greene worked as a financial consultant for his own company, Greene Wealth Management, but had worked in the past with Merrill Lynch, and worked for Accenture at the time of his death.

On the day of the accident, Mr. Greene was driving a 2010 Toyota 4-Runner en route from his home at 7015 Collinwick Drive in Frisco, Texas to Opelousas, Louisiana. Mr. Greene was attended by his wife, Lakeysha, who was 35 years old, and was in the right passenger's seat; his son, Wendell K. Greene, Jr., who was two years old in a child's seat, and was in the right rear seat, and his daughter; Wesleigh, who was five years old, and was in the left back seat.

According to the police report by Officer Dexter Barkley, the accident occurred in the eastbound lane of I-20 near mile marker 509. There was heavy holiday traffic on I-20 and the traffic had slowed. The police officer entitled Mr. Greene's vehicle as "Unit 3".

Charles Derrik Moody was driving a 2008 Volvo tractor "Unit 1" and pulling a trailer "Unit 2" (an 18-wheeler) for Forrest Products Transportation, LLC of Columbia, Mississippi. Mr. Moody impacted the rear end of Mr. Greene's vehicle. Mrs. Greene went under Unit 6, slamming against the rear of Unit 6 and came to a final resting spot lying dead with massive skull and brain injuries. Wendell K. Greene, Jr. was killed in the crash.

Wesleigh's skull was crushed causing fatal injuries. The Toyota ignited into flames, apparently as it struck Unit 6, causing severe thermal injury to Wendell, Jr. and Wesleigh.

GREENE.DLH

Kyle Evans, a tow truck driver, was trying to recover an 18-wheeler on the shoulder of the highway near the scene of the accident.  Mr. Evans heard the crash taking place, as well as the ignition of the fire, and he ran to the Toyota and found Mrs. Greene on the hood of the vehicle and her body was lifeless.  Mr. Evans lifted Mrs. Greene off of the vehicle, laid her on the ground, and asked someone to try to cover her.  Mr. Evans noted that fire had just started to get into the rear passenger's compartment of the crushed and mangled Toyota.  Fire was in the back seat moving forward.  Mr. Evans noted that Wendell Greene, Jr.'s body was mangled.  Mr. Evans tried to get Wesleigh out from the left side of the vehicle.  Mr. Evans opened the driver's door and the flames immediately worsened, presumably by the extra air that now was available to fuel the fire.  Mr. Evans noticed that Mr. Greene was alive and moving.  Mr. Evans had the truckers get their fire extinguishers and retard the fire while he tried to remove Mr. Greene from the vehicle.  Mr. Evans saw Mr. Greene breathing in the smoke.  Mr. Greene's feet, shoulders, and head were burning.  The fire was too hot to extract Wesleigh's body before it burned up.  Bystanders were able to help him pull Mr. Greene from the vehicle.

Charles Gregory Rushing, a fire fighter who helped put the fire out, explained in his deposition how he and his men extinguished the fire and extracted Wendell, Jr. and Wesleigh's burned remains.  Wendell, Jr.'s head was separated from his body.

Mr. Greene was transported to Parkland Hospital in Dallas, Texas by Air Ambulance.  The ambulance's EMT opined that Mr. Greene had 50% total body surface area burns.

Mr. Greene was given Rocuronium, a paralyzing agent; Morphine, a narcotic; and Versed, a sedative, in order to insert an endotracheal tube and put him on a ventilator for his acute respiratory failure.  Multiple x-rays and scans were carried out.  Among his diagnoses were:

GREENE.DLH

1.   Acute thermal burns of Mr. Greene's back, scalp, neck, buttocks, and bilateral upper extremities involving 31% of his total body surface area.

2.   Left minimal plural effusion with minimal atelectasis.

3.   Ninth and tenth rib fractures.

4.   Left scapular and corinoid fractures.

5.   Transverse process fractures of the lumbar spine.

6.   Minimal hepatic lobe lacerations.

7.   Extensive body wall contusions and hematomas.

Escharotomies were carried out of Mr. Greene's left upper extremity which was circumferentially burned.  Mr. Greene's wounds were cleansed, coated with Silvadene, and dressed.  Mr. Greene was resuscitated with large amounts of fluids and admitted to the burn unit.  A cervical collar was applied until cervical fractures were ruled out the next day.  Mr. Greene was continued on intravenous Morphine, Versed, and Fentanyl "a narcotic" for his medically-induced coma to help him tolerate his pain and the oral endotracheal tube.

Some of the surgical procedures that Mr. Greene had were as follows:

1.   May 28, 2010 - Encharatomy of left upper extremity.

2.   June 4, 2010 - Tangential burn excision and application of split-thickness skin grafts to the left hand, wrist, forearm, elbow, and upper arm.

3.   June 11, 2010 - Removal of endotracheal tube and airway replacement by a tracheostomy.

4.   June 16, 2010 - Tangential excision and split-thickness skin grafts of the right second through five fingers; and tangential excision and full-thickness excision of burns left shoulder and left upper arm.

5.   June 21, 2010 - Full-thickness excision of burns of scalp, left ear, and back with chemical cauterization of left arm.

GREENE.DLH

6.   June 30, 2010 - Tangential excision and split-thickness skin graft of left upper extremity with chemical cauterization of left upper extremity.

7.   July 16, 2010 - Debridement of split-thickness skin grafts of left upper arm, shoulder, and back meshed 4:1.

8.   July 23, 2010 - Debridement and split-thickness skin grafts of scalp and left shoulder meshed 2:1.

9.   Burn excision of neck, buttocks, scalp, shoulders, and right arm with applications of Allograft meshed 2:1; amputation of digits I and II at distal interphalangeal joint and proximal interphalangeal joint respectively; dressing changes to total body.

10.  August 11, 2010 - Split-thickness skin grafts of scalp, neck, left shoulder, and left axilla.

11.  Tarsorrhaphy of both eyes on multiple occasions.

12.  August 18, 2010 - Debridement and Allografts to the stumps of digit left I and II.

During Mr. Greene's hospital stay, consults were obtained from physical therapy, occupational therapy, physical medicine, rehabilitation, psychiatry and psychology, ophthalmology, cardiology and orthopedic surgery, and the hospital chaplain.

Once Mr. Greene's airway was changed to a tracheotomy on June 11, 2010, he was slowly weaned from his ventilator and his sedation gradually reduced so he would awaken. His burns were cleansed daily and dressed with Silvadene. Mr. Greene was treated for exposure keratitis of both eyes by ophthalmology with eye ointment and protective tarsorrhaphies. Mr. Greene had one bout of MRSA pneumonia, but recovered and did not have pneumonia again.

On August 24, 2010, Mr. Greene's pain was reduced so he could be discharged from the burn unit with Lorcet every four hours and Marcaine for dressing changes.

GREENE.DLH

Mr. Greene had extensive physical and occupational therapy at the burn unit and his recovery was prolonged due to a left brachial plexus stretch injury which was discovered. He was discharged to the Zale Lipshy Rehab Hospital on August 24, 2010. Mr. Greene's left hand was very contracted and had very little function, and his right hand was very limited in function as well, but had more use than his left hand. He continued to have supportive therapy and treatment at the Rehab Hospital as an inpatient and then as an outpatient.

Mr. Greene had early and extensive support from the chaplain service, and from psychology and psychiatry. Mr. Greene had extensive stress of his burns and physical injuries which were made worse by his confused thought process that his wife and children failed to come and see him in the hospital or care for him. This denial worsened Mr. Greene's depression when he found out that his wife and both children had died in the crash and obviously were unable to come and see him. Mr. Greene continued to wonder why his life had been spared. Mr. Greene expressed frustration with his inability to take a break from his pain. He did not know how he would ever get over his physical injuries and be independent and function again as a man. Mr. Greene was characterized as being hopeless. He had symptoms of sadness, depression, and anxiety while in the hospital.

Mr. Greene's brother, William Kavell Greene, helped take care of Mr. Wendell Greene when he left the hospital. Mr. Wendell Greene still had some open burn wounds that his brother and mother would dress. On September 11, 2010, Mr. Wendell Greene was preparing for some friends to come over. Mr. Greene asked his brother what was happening as his eyes rolled back and said he did not want to die. He was complaining of lack of oxygen and asked the paramedics that were called to help if the oxygen was turned on. He then passed out and died.

GREENE.DLH

I reviewed the autopsy report by the Collin and Dallas County Medical Examiner's office for all four members of the Greene family. Except for evidence of treatment for Mr. Greene's thermal burns "bandages, skin grafts, donor sites, and cardiac hypertrophy", the autopsy was normal except for massive pulmonary artery thromboemboli and thromboemboli and infarct scattered in his lungs. These fatal complications were direct complications of his burns and the treatment for his burns.

## OPINION

**PAIN**: Agonizing and unrelenting pain is characteristic of burns. Even a tiny burn to the body is very painful, and this is multiplied exponentially in a large burn such as a 31% burn as Mr. Greene experienced. My experience of 50 years as a medical doctor has revealed that burns are the most painful experience that humans can have. No amount of pain medication will eliminate the pain, it will only make it less severe. Patients quickly develop an immunity to the narcotics and require a larger and larger dose with the association of complications of respiratory depression.

It is my opinion that from the moment of the collision and followed swiftly by the burns, Mr. Greene experienced excruciating pain as his skin and the underlying nerve "*endings*" were destroyed. The destruction of the nerve endings in third degree burns does not, unfortunately, put an end to the pain as the *nerves* themselves are not destroyed, and they continue to the spinal cord. These signals then begin to bombard the brain with bizarre signals since their nerve endings which send refined signals, have been destroyed. The brain interprets this as severe pain and responds rather poorly to narcotics. The actual third degree burn eschar is dead, devitalized skin and has been confusedly reported as being pain free. This is true to some extent, as the eschar can be cut with a scalpel without producing much pain. The area underneath the eschar, however, consists of tissue and nerves that have been severely damaged but not destroyed. This is the tissue that overwhelms the brain with bizarre signals which the brain interprets as pain.

GREENE.DLH

In addition to the pain caused directly from the burns, the multiple injuries of bone, organs, and soft tissue as outlined on page 6 amplified the thermal induced pain. Later, a brachial plexus stretch and eye problems developed that added to the pain.

In order to enable some patients to live and survive a massive burn and soft tissue injury such as Mr. Greene endured, a lot of painful things have to be done to them. Since Mr. Greene was in a closed space when the fire occurred, it is logical to assume that he had to breath in super-heated gases and fumes which damaged his pulmonary tree and lungs. Mr. Evans actually witnessed him breathing the smoke. Mr. Greene had early deterioration of his airway and needed emergency intubation with insertion of an endotracheal tube while he was awake. Even in the presence of massive morphine, this is very stressful, painful, and frightening.

Mr. Greene was paralyzed with Rocuronium and given Morphine and later Fentanyl to reduce "not eliminate" the pain. The Versed that Mr. Greene was given does not reduce the pain, but helps him endure the pain by reducing the agitation, fighting, and restlessness. The combination of these drugs makes the patient look asleep and unconscious, but technically Mr. Greene was only unconscious during his general anesthesia at the time of his surgeries and not for the many weeks while he was on Morphine, Versed, and Fentanyl to allow pulmonary ventilation. Mr. Greene could be aroused and awakened while under the influence of narcotics and sedatives. These medications were administered by IV drip which allowed Mr. Greene's physicians to accurately adjust his sedation level and his neurological status. This combination of IV drip administration of narcotics and sedatives is termed "medically induced coma".

**MEDICALLY INDUCED COMA**: Massive sedation and narcotics was used in limited success in early heart surgery in the 1960s at several of the early cardiac surgical centers in the United States. Morphine (a powerful, long-acting narcotic) was used with barbiturates or curare to lessen the patient's pain during open heart surgery and to

GREENE.DLH

make that surgery possible. The barbiturates sedated the patient so they could not move and would cooperate while the curare paralyzed them making it impossible for them to move. General anesthesia in those early times carried an unacceptable high risk of mortality for the patient when combined with open heart surgery.

After the above early medically induced coma, the patient would wake up and would remember the pain of the surgery, the frightening quietness of their heart being stopped for the procedure, and the bizarre unreality of not being able to move or scream. To the surprise of their surgeons, they could remember virtually all of the conversations, either medical or not medical, that went on during surgery while their heart was stopped. Many of these patients had nightmares, hallucinations, and psychosis for the rest of their life. Controlling the long-acting barbiturates and morphine was difficult and many times deadly and required a super-skilled anesthesiologist to make it possible.

Modern pain control in severe burn patients utilize a very short-acting narcotic such as Fentanyl which is given by continuous intravenous drip and supplemented by intermittent injections for break-through severe pain. The pain is lessened *but not eliminated.* The short-life narcotics are much easier for surgical residents to use and much safer and does not require an anesthesiologist. The short life narcotic can be stopped for an hour to periodically assess the neurological status as the full-blown pain now enters the brain unaltered by the narcotics.

The modern sedatives are selected to be fast-acting and short-lived, but also to have amnesia effects so that the patient cannot remember the pain that is not controlled by the narcotics. The goal is to remove the extreme unwanted effects as outlined above that the patients in the 1960s had with medically induced coma. Ativan, Diprivan, and Versed which are modern short-lived sedatives with those qualities, all can be given by intravenous drip and supplemented by intermittent injections. Like the narcotics, they do not require the skill of an anesthesiologist and may be controlled by an experienced

GREENE.DLH

resident.  The sedatives do not affect the patient's pain, but they simply sedate him so much that he cannot respond to the pain making him cooperative to his physicians.

**LATE EFFECTS OF MEDICALLY INDUCED COMA**: The fact that Fentanyl and Versed do not anesthetize the patient, but only reduce the pain and keep the patient still and quite and not screaming means that the brain is continuing to be bombarded by painful stimuli up until the time of impending brain death.  Severe posttraumatic stress syndrome with hallucinations, nightmares, flashbacks, and psychosis are all now common when the patient wakes up.  These usually require long-term care by psychologists and/or psychiatrists.  Additional burn surgery to treat their contractures, wound ulcerations, and breakdowns aggravate these psychological problems and require professional support.

It is my opinion, to a reasonable degree of medical certainty, that Mr. Greene sustained substantial pain when the collision occurred, causing soft tissue, organ, and bone damage.  When the fire came into the rear compartment, Mr. Greene would have had to breathe in hot smoky gases.  His injuries and shock prevented him from trying to get out of the vehicle.  Mr. Kyle Evans got to Mr. Greene just as his car seat, shoulders, and head caught on fire.  Mr. Greene's state of shock required him to be pulled from his seat to safety.  This process of being roasted alive while Mr. Greene was breathing hot gases and smoke had to exert extreme psychological and physical pain.  It is my opinion, to a reasonable degree of medical certainty, that the medically-induced coma was psychologically terrifying, and the daily debridements, dressings, and the 12 surgeries between May 28, 2010 and August 18, 2010 were horrible and extremely painful.  Because the above factors caused so much psychological trauma and stress, we as plastic surgeons or burn surgeons routinely ask for help and treatment by clergy, psychologists, and psychiatrists.  There is not a question if the burn will cause psychological pain, but how much psychological pain[1,2,3,4,5,6,7,8,9,10].

GREENE.DLH

Mr. Greene was unable to talk or reason while he was in a medically-induced coma, and when he awoke a few days after his endotracheal tube was removed on June 11, 2010 and a tracheostomy was inserted, he was very confused about what had happened to him and his family.

If Mr. Greene would have lived, he would have required a lifetime of psychological help and support.  Driving a car and other future stressors such as surgery would have reactivated many of his fears and his posttraumatic stress disorder condition.

If Mr. Greene had lived, it is my opinion, to a reasonable degree of medical certainty, that due to a lack or greatly reduced sensation in his hands, he would have difficulty working a computer.  He would not have been able to take care of routine tasks, maintenance, and upkeep in his home and would have had to have assistance in this. Mr. Greene would have needed a whole-house generator with a transfer switch to protect him from overheating his body to help prevent him from suffering from heatstrokes in periods of power outages[11,12,13,14,15].

Mr. Greene died of a massive pulmonary embolism to his pulmonary artery which obstructed the oxygenated blood from reaching the lungs and being oxygenated. Pulmonary embolism is a recognized major complication in large thermal burns and trauma victims.  He was on Lovenox therapy "anticoagulant" during his early hospitalization, but anticoagulants in a trauma patient or a patient with a severe burn can cause complications of bleeding and death, and it was stopped fairly early in his treatment.  There would have been no safe way to predictively prevent Mr. Greene's pulmonary embolism.

GREENE.DLH

## REASONABLENESS OF FEES AND TREATMENT

It is my opinion, to a reasonable degree of medical certainty, that the treatment Mr. Greene received was within the standard of care. I reviewed the fees submitted by his healthcare providers. I have become quite familiar with the usual and customary fees in the United States for the injuries that Mr. Greene sustained by being actively involved in both acute and long-term treatment of patients with burns for over 45 years. I have been familiar with hospital costs by the nature of operating in private for-profit hospitals, as well as nonprofit hospitals, for over 45 years and by being a 50% owner of an outpatient surgery center and being actively involved in its week to week management since 1976.

The bills that I reviewed were:

| | |
|---|---|
| Parkland and Lipshy | $882,096.86 |
| UT Southwestern | $ 44,811.16 |
| Centennial Medical Center | $ 10,062.12 |
| Air Vac EMS | $ 17,820.00 |
| | $954,790.16 |

This amount may change if more bills are received.

It is my opinion, to a reasonable degree of medical certainty, that the bills paid and incurred for the care of Mr. Greene were reasonable and necessary for his care.

The opinions that have been stated in this report are based on a review of the medical records that I have on this patient, a history of the injury that was related to me by the patient. It was furthermore based on my practice of plastic surgery for more than 40 years, the knowledge that I have gained from the many surgeons and plastic surgeons

GREENE.DLH

who have trained me over the years, and my review of literally hundreds of medical books and thousands of medical articles and publications over more than 40 years. It has enabled me to forensically sort through conflicting presentation of facts, when there is a material issue of facts, to arrive at an opinion. These opinions, I feel, are based on reasonable medical probability and are consistent with what many other medical practitioners in my specialty or similar specialties would have opined, have been or are capable of being tested, and are reflected in the medical literature.

Any physical impairments, if stated in this or future reports concerning this patient, are based on the definitions, the guidelines, and the general intent formulated by the Sixth Edition of the <u>American Medical Association's Guides to the Evaluation of Permanent Impairment</u> in its manual of guidelines to physical impairments. Impairment ratings of the enjoyment of life, when given, are based on the general intent of the Sixth Edition of the <u>American Medical Association's Guides to the Evaluation of Permanent Impairment</u> book, as outlined above, as well as multiple other articles, books and lectures that have been published or written on the interference with the enjoyment of life posed by certain catastrophic injuries. Cost estimates are made in 2013 dollars and are based on my experience with surgical fees as a plastic surgeon for over 40 years. The hospital and anesthesia estimates are based on my experience as a major owner of an outpatient surgical center for over 30 years.

## **SUMMARY**

1.    It is my opinion, to a reasonable degree of medical certainty, that Mr. Greene sustained extensive anxiety, pain, and suffering at the scene of the accident from the multiple crashes his car was involved in along with the fire.

GREENE.DLH

2.      It is my opinion, to a reasonable degree of medical certainty, that Mr. Greene, Sr.
        sustained extensive physical and psychological pain during his necessary
        treatment at Parkland Hospital Burn Unit and the Rehabilitation Unit.

3.      It is my opinion, to a reasonable degree of medical certainty, that the uncertainty
        of the fate of Mr. Greene's wife and children from the accident and the later
        knowledge that they were all dead significantly added to the psychological
        trauma he sustained.

4.      It is my opinion, to a reasonable degree of medical certainty, that the care Mr.
        Greene, Sr. received by the physicians and staff at Parkland Hospital was
        necessary and within the standard of care.

5.      It is my opinion, to a reasonable degree of medical certainty, that the amount of
        medical expenses paid and incurred were reasonable and necessary.

6.      It is my opinion, to a reasonable degree of medical certainty, that Mr. Greene, Sr.
        died from a massive pulmonary embolism which virtually blocked the
        unoxygenated blood from reaching his lungs.  This caused a suffocation-type
        death where he was craving for oxygen but did not get it and only obtained relief
        after he passed out and he had brain death.

7.      It is my opinion, to a reasonable degree of medical certainty, that Mr. Greene's
        death was directly related to his thermal injuries and the necessary treatment.

GREENE.DLH

8.   It is my opinion, to a reasonable degree of medical certainty, that if Mr. Greene, Sr. had not died, he would have been left with significant permanent impairment which would have involved extensive therapy, and medical, surgical, and psychological care over the rest of his life which would have been extremely expensive if projected by a life care planner.

Sincerely,

Darrell L. Henderson, M.D.

DLH/mh

Enclosures          Curriculum Vitae

                    ASPS Expert Witness Affirmation

                    Statement

GREENE.DLH

APP 24

1.    Gregoretti C., et. al., "Analgo-Sedation of Patients with Burns Outside the Operation Room," *Drugs* (2008): 2429 (68(17).

2.    Corry, NH et. al., "Posttraumatic Stress Disorder and Pain Impact Functioning and Disability After Major Burn Injury," *Journal of Burn Care & Research* (2010): 13-25, January/February 31(1).

3.    Hall, R, et. al., "The Role of Morphine in the Development of Acute Stress Disorder and Post traumatic Stress Disorder in Patients with Severe Burn Injury," *Annual meeting of the American Burn Association* (2009).

4.    McGhee, LL et. al., "The relationship of Intravenous Midazolam and Posttraumatic Stress Disorder Development in Burned Soldiers," *Journal of Trauma: Injury, Infection, and Critical Care* (2009): S186-S190;April 66(4).

5.    Der Unfallchinrurg." Unfallchinuro, 2010 Nov;113(11):915-22 *Psychiatric sequelae of severe burn injuries: emotional distress and resources of occupationally versus non occupationally insured patients 1 year after burn injury.*

6.    Giomale Itallano di medicina del lavoro ed ergonomia."G ita Med Lay Ergon 2009 Jan-Mar;31(1 Suppl A):A58-53 *Quality of life impact as outcome in burns patients.*

7.    "The Jornal of trauma." J. Trauma.  2008 May;64(5):1349-56. *Major depression and posttraumatic stress disorder symptoms following severe b urn injury in relation to lifetime psychiatric morbidity.*

8.    Journal of rehabilitation medicine: official journal of the UEMS European Board of Physical and Rehabilitation Medicine." J. Rehabit Med. 2007 Jan;39(1);49-55 *Return to work and health related quality of life after burn injury.*

9.    Burns: journal of the International Society for Burn Injuries." Burns. 2003 Mar,29(2):143-52 *Psychosocial adjustments 5 years after burn injury.*

10.   *Journal of behavioral medicine." J Behav Med. 1999 Aug;22(4):369-78* Prolonged adjustment difficulties among those with acute posttrauma distress following burn injury.

11.   Joel L. Roskind et. al., "Quantitation of Thermoregulatory Impairment in Patients with Healed Burns," Annals of Plastic Surgery *(1978):172-75.*

12.   Davis, SL et. al., "Impaired Cutaneous Vasodilation and Sweating in Grafted Skin During Whole Body Heating," *Journal of Burn Care Research (2007):27-34; May-June, 28 (3).*

13.   *Wingo, JE et. al., "Heat Acclimation of an Adult Female with a Large Surface Area of Grafted Skin," Journal of Burn Care Research (2008): 848-51); September-October, 29 (5).*

14.   Dimick, AR, "Pathophysiology of Burns," *Comprehensive Rehabilitation of Burns,* (1984): 20.

15.   Ben-Simchon C., et. al., "Heat Tolerance in Patients with Extensive Healed Burns," *Plastic and Reconstructive Surgery* (1981): April 67(4) 499-504.

GREENE.DLH

# DARRELL L. HENDERSON, M.D.
## *Curriculum Vitae*

### EDUCATION

| | | |
|---|---|---|
| 1954 | University of Mississippi<br>Oxford, Mississippi | |
| 1955 | Vanderbilt University<br>Nashville, Tennessee | |
| 1955-1959 | University of Tennessee Medical Center<br>Memphis, Tennessee | M. D. |
| Jan. 1960-Dec. 1960 | Baylor University Medical Center<br>Dallas, Texas | INTERNSHIP |
| July 1961-July 1967 | Mayo Clinic<br>Rochester, Minnesota | RESIDENCY<br>GENERAL AND<br>PLASTIC<br>SURGERY |
| Jan. 1965-Dec. 1965 | Marquette University School<br>Of Medicine<br>William H. Frackleton, M.D. | HAND SURGERY |

### MILITARY SERVICE

| | | |
|---|---|---|
| 1967-1969 | U.S. Navy, U.S. Naval Hospital<br>Portsmouth, Virginia | COMMANDER |

### PRIVATE PRACTICE

| | |
|---|---|
| 1969 | Began private practice in Lafayette, Louisiana consisting of Plastic and Reconstructive Surgery, Maxillofacial Surgery, Surgery of the Hand, Microsurgery and Cosmetic Surgery.  Founding partner of Plastic Surgery Associates. |

### CERTIFICATION

American Board of Plastic and Reconstructive Surgery
1969

1101 S. College Road, Suite 400
Lafayette, Louisiana 70503

Telephone: 337.233.5025
Facsimile: 337.233.5054

Darrell L. Henderson
*Curriculum Vitae*

## TEACHING POSITIONS

Louisiana State University School of Medicine, New Orleans, Louisiana
Clinical Instructor, Department of Surgery

Tulane University School of Medicine, New Orleans, Louisiana
Clinical Assistant Professor, Department of Surgery

Jewish Hospital of Cincinnati College of Medicine, Cincinnati, Ohio
Guest Faculty Member, 1986

George Washington University, Washington, D.C.
Guest Faculty Member, 1987-1997

## PAST LECTURER

American Society of Plastic and Reconstructive Surgery
Plastic Surgery Educational Foundation Symposium
American Society of Aesthetic Plastic Surgery
Louisiana Plastic Surgery Society
American Academy of Facial Plastic and Reconstructive Surgery
American College of Surgeons

## PROFESSIONAL ACTIVITIES

Southwest Louisiana Rehabilitation Center
Medical Director; Member and Past President Board of Directors

Surgery Center, Inc.
Co-Founder 1976; Medical Director and President of Board of Directors

Independent Physician Association of Lafayette
Secretary-Treasurer 1984-1985; Board of Directors 1984-1987

Committee of Liaison with State Bar Association
3 Year Term

Louisiana Plastic Surgery Society
Past President

Plastic Surgery Educational Foundation
Member of Laser Committee

Women's Foundation, Inc.
Board Member

Darrell L. Henderson
*Curriculum Vitae*

## PROFESSIONAL ORGANIZATIONS

American Society of Plastic and Reconstructive Surgeons
American Society for Aesthetic Plastic Surgery
Southeastern Society of Plastic and Reconstructive Surgeons
Louisiana Plastic Surgery Society
Diplomat, American College of Forensic Examiners
American Society for Laser Medicine and Surgery, Inc.
American Association for Hand Surgery
International Society of Clinical Plastic Surgeons
Fellow, American College of Surgeons
Louisiana Chapter of American College of Surgeons
Cleft Palate Associate
American Medical Association
Southern Medical Association
Louisiana State Medical Society
Lafayette Parish Medical Society
Louisiana Surgical Association
Mayo Alumni Association
Association of Military Plastic Surgeons of the United States
National Association of Residents and Interns

## HOSPITAL AFFILIATIONS

Our Lady of Lourdes Regional Medical Center
Lafayette General Medical Center
Lafayette General Surgical Hospital
Louisiana Extended Care Hospital
Women's and Children's Hospital
The Regional Medical Center of Acadiana
Surgery Center, Inc.
Park Place Surgery Center
Lafayette Surgical Speciality Hospital

## PUBLICATIONS

"Argon and Carbon Dioxide Laser Treatment of Hypertrophic and Keloid Scars".
<u>Lasers in Surgery and Medicine</u>. Volume 3:271-277, 1984

"Laser Treatment of Discoid Lupus (Case Report)"
<u>Lasers in Surgery and Medicine</u>. Volume 6:12-15, 1986

Contributor, <u>Cutaneous Laser Surgery</u>
Editor-David B. Apfelberg, Raven Press, New York, N.Y., 1992

1101 S. College Road, Suite 400                        Telephone: 337.233.5025
Lafayette, Louisiana 70503                 3          Facsimile: 337.233.5054

Darrell L. Henderson
*Curriculum Vitae*

"Laser Surgery of Scars"
<u>Lasers in Plastic Surgery and Dermatology</u>, Achauer, Bruce M.D., Editor.
Thieme Medical Publishers, Inc., New York, N.Y., 1992

## <u>INVITED PAPERS, LECTURES AND PRESENTATIONS</u>

American Society of Plastic and Reconstructive Surgery
Instructional Course on Laser Surgery held yearly at annual meeting:

| | |
|---|---|
| 1982 | Honolulu, Hawaii |
| 1983 | Dallas, Texas |
| 1984 | Las Vegas, Nevada |
| 1987 | Atlanta, Georgia |
| 1988 | Toronto, Canada |
| 1990 | Boston, Massachusetts |

American Society for Aesthetic Plastic Surgery
"Use of Lasers in Plastic Surgery"

| | |
|---|---|
| 1984 | Washington, D.C. |
| 1985 | Boston, Massachusetts |
| 1986 | New Orleans, Louisiana |
| 1987 | Los Angeles, California |
| 1988 | San Francisco, California |

Jewish Hospital of Cincinnati College of Medicine
"Annual Laser Surgery Operative Course", 1983-1986

| | |
|---|---|
| 1985 | San Francisco, California |
| 1986 | Orlando, Florida |
| 1988 | Orlando, Florida |
| 1990 | Montreal, Canada |

Dermatology and Plastic Surgery Laser Workshop
Denver, Colorado - 1985

Grant Hospital Medical Education Foundation
Cleveland, Ohio - November 1986

George Washington University Medical School, Washington, D.C.
"Introduction to Lasers in Surgery", August 1987-1991

Northwestern University Medical School, Chicago, Illinois
"Laser Applications in Cutaneous Processes", 1988

Darrell L. Henderson
*Curriculum Vitae*

American Academy of Facial Plastic and Reconstructive Surgery
"Complications of Lasers in Facial Plastic Surgery", 1990

American College of Surgeons, Spring Meeting Post Graduate Course #3,
Orlando, Florida, Guest Lecturer - "Basic Principals for the Practicing Surgeon", 1992

Laser Medicine Delegation to Russia and Poland
Citizen Ambassador Program, 1994

## **LEGAL TESTIMONY**

Invited by the Government of Australia to testify as an expert witness in the field of Plastic
Surgery in Sydney, Australia in 1988

---

Updated 03/15/13cr

DEPOSITIONS of DARRELL L. HENDERSON, M.D.

*[ January 2007 and forward only]*

| CAPTION | COURT | PARISH STATE | DOCKET# | DATE | SCHEDULED BY PL/ DEF ? |
|---------|-------|--------------|---------|------|------------------------|
| RANDY PAUL vs METROPOLITAN CASUALTY INS. CO., et al | 15th JDC | Lafayette Louisiana | 2005-4784 C | 01/16/07 | Defense |
| HEATHER HICKERSON, et al AMERICAN CENTRAL INSURANCE CO., et al | 14th JDC | Calcasieu Louisiana | 2004-3665 E | 02/08/07 | Defense |
| JAMISON MENARD vs. SUPERIOR ENERGY | OWC | Lafayette Louisiana | 06-01807 | 02/13/07 | Plaintiff |
| GLORIA HEIM vs. SEARS, ROEBUCK & CO. | USDC Marshall | Marshall Texas | 2:06(CV)48 | 02/13/07 | Plaintiff |
| JODIE & MARIE TYLER vs. ORTHOPAEDIC CLINIC OF MONROE, et al | 4th JDC | Ouachita Louisiana | 05-3553 | 03/15/07 | Plaintiff |
| CATHERINE MANUEL vs. LANGSTON COS. | OWC | Lafayette Louisiana | 0204645 | 03/20/07 | Defense |
| VIRGIE GLYNN, et ux vs. ROUSE'S ENTERPRISES, LLC, et al | 17th JDC | Lafourche Louisiana | 98237 D | 03/27/07 | Plaintiff |
| JAMES RANDY GUILLORY, et ux vs. ACUTE CARE PHYSICIANS, INC., et al | 15th JDC | Lafayette Louisiana | 2004-2596 | 04/03/07 | Plaintiff |
| ROY & SANDY DEROCHE, et al vs. BERRY BROTHERS GENERAL CONTRACTORS, INC., et al | 16th JDC | St. Mary Louisiana | 115404 "A" | 04/10/07 | Defense |
| RANDY JAMES HENRY, et al vs. DANNY L. BARLOW, et al | 14th JDC | Calcasieu Louisiana | 2001-5156 "F" | 04/12/07 | Defense |
| WILTON SUIRE, JR. vs. SUPERIOR DERRICK SERVICES, L.L.C. | USDC Western | Lafayette Louisiana | 05-1345 | 04/19/07 | Plaintiff |
| TERANCE McMENAMIN, et ux. vs. ROBERT BROWN, M.D., et al | Circuit Court | Lee Alabama | CV-2005-604 | 05/08/07 | Defense |
| CHAD BELLANGER vs. PRIDE OFFSHORE, INC. | USDC Eastern | Orleans Louisiana | 06-3758 | 05/10/07 | Plaintiff |
| JESSICA NEILL vs. FORD MOTOR CO., et al | 19th JDC | East Baton Rouge Louisiana | 523990 "D" | 05/22/07 | Defense |
| MILFORD W. LAY, JR., et ux vs. GRAY INSURANCE CO., et al | 16th JDC | St. Mary Louisiana | 114,009 C | 05/29/07 | Defense |

| | | | | | |
|---|---|---|---|---|---|
| JOEL CHELETTE, et al vs. FIRST BAPTIST CHURCH, et al | Pineville City Court | Rapides Louisiana | 7-0043 | 06/07/07 | Defense |
| DAGMAR WHITTEMORE vs. DENNIS P. LEJUENE, et al | 19th JDC | East Baton Rouge Louisiana | 525566 Div 25 | 06/28/07 | Defense |
| EMILY ROHDEMANN, et al vs. JIMMY DALE WALDRON, et al | 16th JDC | St. Martin Louisiana | 70871 | 07/17/07 | Defense |
| ADAM BADEAUX vs ALL AMERICAN CREW BOATS, et al | USDC Western | Lafayette Louisiana | 6:06CV0908 & 2:06CV2219 | 08/09/07 | Defense |
| BEVERLY HIGGINS vs. JULENE B. SAMUELS, M.D., et al | CIRCUIT COURT | Jefferson Kentucky | 05-CI-08993 | 09/25/07 | Defense |
| FRANK JOHNSON, et ux vs. BRANDON S. HUTTON, et al | 15th JDC | Lafayette Louisiana | 81974-D | 09/27/07 | Plaintiff |
| MARJORIE LYONS vs. LARRY J. POMMIER, et al | 16th JDC | St. Martin Louisiana | 69969 | 10/02/07 | Defense |
| LESTER ALLEN vs. DIAMOND SERVICES CORP., et al | 16th JDC | St. Mary Louisiana | 115483 "G" | 10/16/07 | Defense |
| MARJORIE LYONS vs. LARRY J. POMMIER, et al | 16th JDC | St. Martin Louisiana | 69969 | 10/18/07 | Plaintiff |
| MILFORD W. LAY, JR., et ux vs. GRAY INSURANCE CO., et al | 16th JDC | St. Mary Louisiana | 114,009 "C" | 11/01/07 | Plaintiff |
| AUDREY MELEBECK, et al vs. CITY OF ABBEVILLE, et al | 15th JDC | Vermilion Louisiana | 76,380-C | 11/06/07 | Defense |
| BERNADETTE PETERS vs. MONCLA WELL SERVICE, et al | 15th JDC | Vermilion Louisiana | 83,013-G | 11/13/07 | Defense |
| TIFFANY PATTERSON, IND., et al vs. HERRING GAS COMPANY, INC. | 21st JDC | St. Helena Louisiana | 19057 | 11/20/07 | Defense |
| BERNADETTE PETERS vs. LIBERTY MUTUAL INSURANCE COMPANY, et al | 15th JDC | Vermilion Louisiana | 83013 | 11/29/07 | Plaintiff |
| WILLIAM ROBERSON, et ux vs. VIDYA S. JAIN, M.D., et al | Circuit Court 7th JC | Putnam Florida | 04-076-CA Division 53 | 12/27/07 | Defense |
| SILVANO SEGAT vs. RUSH-PRESBYTERIAN-ST. LUKES' MEDICAL CENTER, et al | Circuit Court County Dept. | Cook Illinois | 04 L 009125 | 01/24/08 | Plaintiff |
| LINDA BLISCHE, et al vs. HOMER HOUSE, M.D., et al | Maryland Health Claims Arbitration | Baltimore (City) Maryland | 2007-001 | 03/20/08 | Plaintiff |
| JESSIE FLETCHER vs. ACADIANA'S BEST | OWC | Lafayette Louisiana | 06-05843 District 04 | 04/08/08 | Defense |
| JONATHAN LOVETT, Ind., et al vs. DRILLING PRODUCTION REALIZED, LLC dba AXXIS DRILLING | 16th JDC | St. Martin Louisiana | 72093 Division H | 05/01/08 | Defense |

| | | | | | |
|---|---|---|---|---|---|
| KENNETH WHITTINGTON, et us vs. PCS NITROGEN FERTILIZER, L.L.P., et al | 23rd JDC | Ascension Louisiana | 85,261 Division A | 06/24/08 | Defense |
| TOMMY FORAKER, JR. vs. ENSCO INCORPORATED, et al | 412th JDC | Brazoria Texas | 45194 | 07/17/08 | Plaintiff |
| MELODY MILLER vs. STRATEGIC RESTAURANTS ACQUISITION CO., L.L.C. | 15th JDC | Lafayette Louisiana | 2007-3021 | 07/31/08 | Defense |
| SHELLY M. JOSEPH vs. ACME TRUCK LINE, INC., et al | 15TH JDC | Lafayette Louisiana | 2007-5527 Division F | 09/04/08 | Defense |
| TIFFANY DAVIS, INDIVIDUALLY, et al vs. KINGS HIGHWAY ASSOCIATES, et al | 1st JDC | Caddo Louisiana | 204,279 Division "C" | 09/18/08 | Defense |
| PATRICK LAIRD vs. NAN YA PLASTICS CORP., et al | 18th JDC | Point Coupee Louisiana | 39,271 Division "A" | 09/25/08 | Defense |
| KEITH ROMERO vs. DEVALL TOWING & BOAT SERVICE, INC, et al | County Court Number 1 | Galveston Texas | 5849 | 10/02/08 | Defense |
| MATTHEW SENTER vs. AIR-DOC, LLC, et al | 21st JDC | Livingston Louisiana | 112323 Division "C" | 10/09/08 | Defense |
| RANDY JAMES HENRY, et al vs. DANNY L. BARLOW, et al | 14th JDC | Calcasieu Louisiana | 2001-5156 "F" | 10/16/08 | Defense |
| MAGDALEN HAIR vs. MERCY MEDICAL CENTER, INC. | Circuit Court | Baltimore City Maryland | 24-C-07-007661 | 11/04/08 | Defense |
| LESLIE WINKLER, et ux vs. DAVID SCHNEIDER, M.D. | District Court | Boulder Colorado | 08CV119 Division 3 | 11/06/08 | Defense |
| MICHAEL A. EDWARDS vs. ANGELLE CONCRETE GROUP, L.L.C. & LIBERTY MUTUAL | District Court | Iberia Louisiana | 110885 Division H | 01/13/09 | Plaintiff |
| LUISA GUTTI BROWN vs. SYDNEY COLEMAN, M.D., et al | US District Court | New York New York | 07 CV 1345 | 01/15/09 | Defense |
| DAVID MAYNE vs OMEGA PROTEIN | US District Court | New Orleans | 07-4210 Eastern District | 2/10/09 | Plaintiff |
| MAURICE JACKSON vs PRIDE OFFSHORE | US District Court | | 08-1538 Eastern District | 4/15/09 | Defense |
| Charee Goodwin and Michael Hall, as surviving parents of James Anthony Hill, deceased vs The Children's Mercy Hospital d/b/a C.M. Hospital & Clinics and Virender Singhal, M. D. | In the Circuit Court of Jackson County State of Missouri | | 0816-CV-11537 | 4/21/09 | Plaintff |

| | | | | |
|---|---|---|---|---|
| Brent Morvant<br>vs.<br>Production Enhancement d/b/a<br>Wise Well Intervention and Dallas<br>National Insurance Company | Office of Workers'<br>Compensation | 08-24105 | 5/5/09 | Defense |
| Brandon J. Laughlin<br>vs<br>Madcon Corporation, et al | 25th JDC<br>Parish of Plaquemines<br>State of Louisiana | 00054552 | 5/7/09 | Defense |
| Linda Blische<br>vs<br>Homer C. House, M. D., et al | In the Circuit Court for<br>Baltimore City, Maryland | 24-C-07-005070 MM | 5/19/09 | Plaintiff |
| Soileau, Mary Phyllis<br>vs<br>Smith True Value & Rental - Et al | 13th JDC<br>Parish of Evangeline<br>State of Louisiana | 00069770 | 6/30/09 | Defense |
| Roderick Toby Bohl, Individually,<br>and as the administrator of the estate<br>of his minor child Roderick Chase<br>Bohl, and Ragena Bohl<br>vs<br>Allstate Insurance Company,<br>Stephen D. Baker, and State Farm<br>Mutual Insurance Company | 23rd JDC<br>Parish of Ascension<br>State of Louisiana<br>Div. B | 84,853 | 7/2/09 | Plaintiff |
| James Leggett and Rita Leggett<br>vs.<br>Federal Insurance Company, et al | USDC<br>Western District of La | 1:07CV1907 | 7/21/09 | Defense |
| In Re: Medical Malpractice<br>matter of Lindsie Vidrine | 1st JDC<br>Div. A<br>Parish of Caddo<br>State of Louisiana | 528593 | 9/3/09 | Defense |
| Cindi Babineaux<br>vs<br>PNK (Lakes Charles, LLC<br>d/b/a Lauberge du lac<br>and Casino, et al | 14th JDC<br>Parish of Calcausieu<br>State of Louisiana | 2007-3709 | 9/8/09 | Defense |
| Blane E. "B.J." Matherne, Jr., et al<br>vs<br>Bridgestone Americasw Holding,<br>Inc., et al | 24th JDC<br>Parish of Jefferson<br>State of Louisiana<br>Div. L | 651,533 | 10/1/09 | Defense |
| Brandy Morales, Individually,<br>et al<br>vs<br>F. G. Sullivabn, Jr. Contractor,<br>LLC, et al | 18th JDC<br>Parish of West Baton Rouge<br>State of Louisiana<br>Div. A | 37194-A | 10/22/09 | Plaintiff |

| | | | | |
|---|---|---|---|---|
| Carlette Davis<br>vs<br>Shelanda Davis and American<br>Century Casualty Company | 15JDC<br>Parish of Acadia<br>State of Louisiana | 2008-10256 | 10/27/09 | Plaintiff |
| Jean Joseph, et al<br>vs<br>Fluor Corporation, et al<br><br>consolidated with<br><br>Vernadine Mabry<br>vs<br>Fleetwood Enterprises, Inc., et al<br><br>consolidated with<br><br>Bernard Mabry, III, et al<br>vs<br>Fleetwood Enterprises | Civil District Court<br>Parish of Orleans<br>State of Louisiana | 06-14136 c/\w<br>07-48 and 07-553<br>Section F-10 | 12/8/09 | Defense |
| Jean Joseph, et al<br>vs<br>Fluor Corporation, et al<br>consolidated with<br>Vernadine Mabry<br>vs<br>Fleetwood Enterprises, Inc., et al<br>consolidated with<br>Bernard Mabry, III, et al<br>vs<br>Fleetwood Enterprises | Civil District Court<br>Parish of Orleans<br>State of Louisiana | 06-14136 c/\w<br>07-48 and 07-553<br>Section F-10 | 12/8/09 | Defense |
| Linnie Rogers, et al<br>vs<br>estes Express Lines, Inc., et al | Circuit Court of<br>Prairie County, AK<br>Southern District<br>First Division | CV-2008-032 | 1/26/10 | Defense |
| Nicolas Barone<br>vs<br>Munish K. Batra, M.D., et al | Superior Court of<br>State of California<br>County of San Diego | 37-2008-00093269 | 2/12/10 | Plaintiff |
| Cindi Babineaux<br>vs<br>PNK (Lake Charles)<br>LLC D/B/A L'Auberge DU<br>LAC Hotel & Casino, et al | State of Louisiana<br>14th JDC<br>Parish of Calcasieu | 2007-003709 | 2/23/10   ` | Plaintiff |
| Debra Hartman<br>vs<br>Carnival Corporation | United States District Court<br>Southern District of Florida<br>Miami Division | 09-21579 | 3/30/10 | Plaintiff |

| | | | |
|---|---|---|---|
| Patrick Trahan<br>vs<br>D&L Salvage, et al | United States District Court   08-4590<br>Eastern District for Louisiana | 4/20/10 | Defense |
| Bobby Broussard<br>vs<br>Hearley Trucking, Inc. | United States District Court   6:09-CV-0862<br>Western District of Louisiana<br>Lafayette/Opelousas Div | 4/22/10 | Defense |
| Holly Shepherd vs<br>Old Republic Insurance Corp.<br>And Aaron Faulk | 14th JDC, No: 2008-2658 F.<br>Parish of Calcasieu<br>State of Louisiana | 6/3/10 | Defense |
| Bobbie Ticer Roberts<br>vs<br>Alan Pritchard, M. D.,<br>John Does 1-5, ABC Co. A-M | Circuit Court of Lee County<br>Mississippi<br>CV-07-171 (PF)L | 8/24/10 | Defense |
| Kenneth Kennair<br>vs<br>Entergy New Orleans, Inc. | Civil District Court<br>Parish of Orleans<br>State of Louisiana | 8/26/10 | Defense |
| Sharon Vincent Hicks<br>vs<br>Zurich American Insurance Co.<br>Et al | 14th JDC, 2007-003760<br>Parish of Calcasieu<br>State of La | 9/30/10 | Defense |
| Robin Waters<br>vs<br>Hans Kuisle | District Court<br>Boulder County<br>State of Colorado<br>Case #09CV691 | 10/12/10 | Defense |
| Kevin Lee<br>vs<br>Danielle Johnson and<br>Allstate Indemnity Company | 19th JDC<br>Parish of Baton Rouge<br>State of Louisiana<br>577,674 Section 23 | 11/30/10 | Plaintiff |
| Patricia Whitehurst<br>vs<br>Estate of George Linder, M. D., et al | 24th JDC<br>Parish of Jefferson<br>Case No.: 648-638<br>Div. E | 12/2/10 | Defense |
| Denise Thomas<br>vs<br>Barnes Jewish Hospital | In the Circuit Court of the City<br>Of St. Louis<br>State of Missouri<br>City of St. Louis | 12/16/10 | Defense |
| Eric Bacon<br>vs<br>Oliver P. Simmons, M. D. | In the Circuit Court for<br>Baltimore City, Maryland<br>Case No.: 24-C-10-004596 OT | 1/6/11 | Defense |
| Lynda Markham and Fred<br>Markham, her husband<br>vs<br>Mauricio J. Castellon, M. D., et al | In the Circuit Court of the<br>18th Judicial Circuit in and for<br>Drevard County, Florida | 2/8/11 | Defense |

| | | | |
|---|---|---|---|
| Michelle Phillips<br>vs<br>Michelle Peyroux, N.P., et al | 22nd JDC<br>Parish of St. Tammany<br>State of La | 2/22/11 | Plaintiff |
| Anthony J. Beslin<br>vs<br>Anadarko Petroleum Corp.<br>Et al | 15th JDC<br>Parish of Acadia<br>State of La<br>Docket # 84457-F | 2/24/11 | Defense |
| Eric Bacon<br>vs<br>Oliver P. Simmons, M. D., et al | In the Circuit Court for<br>Baltimore City<br>Case 24-C10-004596 OT | 3/2/11 | Plaintiff |
| Shawn Edward O'Daniel<br>vs<br>Michael Lee B ice:<br>Powertech Industries, LLC<br>Americas Styrenics, LLC<br>The Dow Chemical Compan;<br>Chevron Phillips<br>Chemical Eompany LP;<br>ABC Insurance Company<br>DEF Insurance Company<br>GHI Insurance Company<br>JKL Insurance Company<br>MNO Insurancer Company | 19th JDC<br>Parish of East Baton Rouge<br>State of Louisiana<br>Suite #: 589,598, SECT "22" | 4/12/11 | Defense |
| Marc Green<br>vs<br>Florida Marine Transportation<br>Services, Inc. | USDC<br>Eastern District of Louisiana<br>No: 10-1978<br>Section: A<br>Magistrate: 3 | 5/17/11 | Defense |
| Adrienne Stermer<br>vs<br>Archer-Daniels-Midland<br>Company and American River<br>Transportation Co. | State of Louisiana<br>27th JDC<br>Parish of St. Landry<br>Docket #08-C-6424-B | 6/21/11 | Defense |
| Barbara Morales<br>vs<br>Clara Maas Medical Center, et al | Superior Court of New Jersey<br>Law Division - Essex County<br>ESX-L-006643-08 | 6/23/11 | Defense |
| Warren Fish, Individually and<br>as personal representative of the<br>wrongful death estates of<br>Warren Dean Douglas Fish,<br>Deceased and Sandra Fish, Deceased | State of New Mexico<br>County of Santa Fe<br>First Judicial District Court<br>D-101-CV-2010-02806 | 6/28/11 | Defense |
| Samantha Eve<br>vs<br>John S. Poser, M. D. | In the Circuit Court of the<br>Eighth Judicial Circuit, In<br>And for Alachua County, Florida | 8/4/11 | Defense |
| Michelle Bernard<br>vs<br>Peddie Kay, III | State of Louisiana<br>15 JDC<br>Parish of Lafayette | 8/9/11 | Plaintiff |

| | | | |
|---|---|---|---|
| Amanda Robinson<br>vs<br>David A. Lickstein, M. D.<br>And David A. Lickstein, M. D., P.A.<br>d/b/a GARDENS PLASTIC<br>SURGERY | In the Circuit Court of the 15th<br>Judicial Circuit, in and for PALM<br>BEACH COUNTY, FLORIDA<br>CASE NO.: 50 2010CA005905<br>XXXXMB | 8/16/11 | Defense |
| Brady Gotte<br>vs<br>Inspirion Texas, Inc. | Office of Workers Compensation<br>District 03<br>Docket No.: 10-11607 | 9/13/11 | Defense |
| Andrew Thaggard<br>vs<br>Noble Drilling (U.S.) LLC | USDC<br>Eastern District<br>#10-4164, Sect D, Mag. 3 | 9/22/11 | Defense |
| Juan Lymuel<br>vs<br>The City of New Orleans by and<br>through the Public Belt Railroad<br>Commission of the City of<br>New Orleans | USDC for Eastern District<br>Civil Action # 11-180<br>Section C<br>Magistrate No.3 | 10/6/11 | Defense |
| Denise Winsett, et al<br>vs<br>Wellstar Health Systems, Inc., et al | State Court of Cobb County<br>State of Georgia<br>Civil Action #2009A14665-5 | 11/1/11 | Defense |
| Deborah Truesdale Carrington, et al<br>vs<br>Thomas X. Hahm, M. D., et al | State of South Carolina<br>County of Charleston<br>In the Court of Common pleas<br>C/A No: 10-1712 | 11/22/11 | Defense |
| Shmarua Phelps, et al<br>vs<br>Audobon Park, LLC, et al | 19th JDC<br>State of La<br>Parish of East Baton Rouge<br>No.: C589316 | 1/31/12 | Defense |
| Todd Ponthieux, Sr. and<br>Deidra Juneau, Individually and<br>on behalf of their minor son<br>Todd Ponthieux, Jr. | Alexandria City Court<br>Parish of Avoyelles<br>State of Louisiana<br>Civil Suit # 119,975 | 5/1/12 | Plaintiff |
| Katherine Ann Joubert<br>vs<br>Jeffrey Kyle Andre and ANPAC<br>Louisiana Insurance Company | 18th JDC<br>Parish of Pointe Coupee<br>State of Louisiana<br>Docket #: 44229 Sec. "A" | 5/8/12 | Defense |
| Clarence Chambers<br>vs<br>State Farm Mutual Automobile<br>Insurance Company, United Services<br>Automobile Association and Chelsi<br>George | 15 JDC<br>Parish of Lafayette<br>State of Louisiana<br>Docket # 2011-6805-E | 8/16/12 | Plaintiff |
| John Leviege<br>vs<br>L&M Botruck Rental, Inc. | U.S. District Court<br>Eastern District<br>No.: 121173 | 9/18/12 | Defense |

| | | | |
|---|---|---|---|
| Mark Scully<br>vs<br>Frank's Casing Crew & Rental<br>Tools, et al | 15th JDC<br>Parish of Lafayette<br>State of Louisiana<br>No: 20101664 | 10/16/12 | Plaintiff |
| Warren H. Bridges,<br>vs<br>Nageswararao Kanumuri, M. D.,<br>Kanumuri Medical Group, P.A.,<br>Pamela M. Bouley, CRNA, Snehal<br>Patel, M. D., Lake Wales Clinic<br>Corporation, Lakes Wales<br>Hospital Corporation | In the Circuit Court<br>Of the Tenth Judicial<br>Circuit, in and for<br>Polk County, Florida<br>Circuit Civil Division<br>Case #: 2011-CA-005040-0000-00 | 10/12/12 | Defense |
| Dante Salas<br>vs<br><br>Safeworld Investments, et al | 165 Judicial District Court<br>Harris County, Texas | 10/30/12 | Plaintiff |
| Dawn Young<br>vs<br>Stephen L. Hall | In the District Court<br>Orange County, Texas<br>163rd District Court<br>Cause #B110245-C | 11-1-12 | Plaintiff |
| Clarence Chambers<br>vs<br>United Services Automobile<br>Association, Et al | 15th Judicial District Court<br>Parish of Lafayette<br>State of Louisiana<br>No.: 20116805 "E" | 11-1-12 | Plaintiff |
| Jennifer Bordelon<br>vs<br>Brent Billiot, et al | 12th Judicial District Court<br>Parish of Avoyelles<br>State of Louisiana<br>No: 2010-5692 | 11-6-12 | Plaintiff |
| Ruvicia Morton<br>vs<br>Gregory Bland, M. D.,<br>Aimee Hellem, R.N.,<br>And Premier Medi Spa, LLC | District Court, County of El Paso<br>State of Colorado<br>Case No.: 2011CV5912<br>Div. 21 | 11-15-12 | Defense |
| Dennis Dittman<br>vs<br>Stephen M. Mitchell, D.O. and J.H.<br>Gatewood Emergency Services, P.A. | In the Circuit of the Sixth Judicial<br>Circuit of the State of Florida<br>In and for Pinellas County, General<br>Civil Division<br>Case No.  12-000963-CI<br>Division 15 | 12-4-12 | Defense |
| Kevin Lejeune<br>vs<br>Belaire Design, LLC & Crown<br>Drilling, Inc., et al | 16th Judicial District Court<br>State of Louisiana<br>No: 76074 Div. F | 1-24-13 | Defense |
| Artis Smith<br>vs<br>Webster's Meat Market | Office of Workers' Compensation<br>State of Louisiana<br>District 09 | 1-29-13 | Defense |

| | | | |
|---|---|---|---|
| Lisa Plaia and Peter Plaia, Individually and on behalf of their minor children Petra Plaia and Carolina Plaia vs Stewart Enterprises, Inc., et al | Civil District Court for the Parish of Orleans State of Louisiana | 1-19-13 | Defense |
| Summer Hardie vs Tractor Supply Co. | OWC District 2 Alexandria, LA | 3-21-13 | Defense |
| Mariette Larkin vs Steven Y. Wei, M. D., et al | Superior Court J.D. of New London At New London Docket# KNL-CV-11-6007888S | 3-23-13 | Defense |
| Randall M. Cormier, Sr., et al vs Jefferson Davis Electric Coop, Inc. | 31st JDC Jefferson Davis Parish Jennings, LA | 3-26-13 | Defense |
| Adrienne Stermer vs Archer-Daniels-Midland Co., And American River Transportation Co. | 27th JDC Parish of St. Landry State of Louisiana | 4-2-13 | Plaintiff |
| Crystal Bennett, Individually and as Legal Guardian of Jaxon Smith vs Janssen Parmaceuticals, Inc. | Court of Common Pleas Philadelphia County No.: 03059 | 4-11-13 | Defense |
| Kelly Anderson and Bradley Anderson Individually and as Guardians on Behalf of Payton Anderson, Minor, and Kelly Anderson and Bradley Anderson, Individually vs Janssen Pharmaceuticals, Inc. | Court of Common Pleas Philadelphia County No.: 02131 | 5-9-13 | Defense |
| Lori Melanson, et al vs Janssen Pharmaceuticals, Inc. | Court of Common Pleas Philadelphia County No.: 00202 | 5-24-13 | Defense |
| Nicole Suzanne Ratliff, Individually and as Guardian on behalf of Tyler Scott Ratliff, a Minor vs Janssen Pharmaceuticals, Inc. | Court of Common Pleas Philadelphia County No.: 02434 | 7-9-13 | Plaintiff |

Contrenia Brown, Individually   Court of Common Pleas
and as Guardian on behalf of   Philadelphia County
Josiah Brown, a minor   No.: 3417
vs.
Janssen Pharmaceuticals,Inc.,
C.C.P.C. No. 03417; May Term 2011

Update 09/11/13/cr

## LIVE COURT APPEARANCES of  DARRELL L. HENDERSON, M.D.

*[January 2007 and forward only]*

| CAPTION | COURT | PARISH | DOCKET # | DATE | PL/ DEF |
|---|---|---|---|---|---|
| SHAWN MILLER, et al vs. ALLIED VAN LINES, et al | USDC Western | Lafayette Louisiana | 6:04CV-1250 & 6:04CV-189 | 03/29/07 | Plaintiff |
| JODIE TYLER, et ux vs. ORTHOPAEDIC CLINIC OF MONROE, et al | 4th JDC | Ouachita Louisiana | 05-3553 | 5/9/07 | Defense |
| TERENCE M. McMENAMIN, et ux vs. ROBERT BROWN, M.D. | Circuit Court | Lee Alabama | CV-2005-604 | 4/16/08 | Plaintiff |
| WILLIAM ROBERSON, et ux vs. VIDYA S. JAIN, M.D., et al | 7th JCC | Putnam Florida | 04-076-CA | 6/4/08 | Plaintiff |
| MAGDALEN HAIR vs. MERCY MEDICAL CENTER, INC. | Circuit Court | Baltimore City Maryland | 24-C-07-007661 | 11/04/08 | Plaintiff |
| ERIC RING vs. NEIL BIRNBAUM, M.D., et al | Superior Court | Boston Massachusetts | 05-00421H | 12/03/08 | Plaintiff |
| KENNETH WHITTINGTON vs PCS NITROGEN FERTILIZER | 23rd JDC | Gonzales, LA | 00085261A | 4/3/09 | Plaintiff |
| CHRISTOPHER HALL vs PCS NITROGEN FERTILIZER | 23rd JDC | Gonzales, LA | 0085261A | 4/3/09 | Plaintiff |
| RONELLE FALLS vs ROBERT MURPHY, JR., M.D. LEHIGH VALLEY HOSPITAL, et al | In the circuit court of common pleas | Allentown, PA | 2008-C-0455 | 5/26/10 | Plaintiff |
| Nicholas Barone vs Munish K. Batra, M.D. Individually; Abhay Gupta, M.D., Individually, Coastal Plastic Surgeons business form unknown; and DOES 1-50, inclusive | Superior Court State of California County of San Diego | San Diego, CA | 37-2008-93269 CU-MM-CTL | 5/27/10 | Plaintiff |
| Carl Jones, Sr., et al vs Centerpoint Energy, et al | 27th JDC St. Landry Parish Opelousas, LA | Opelousas, LA | 04-C-2184-D | 7/22/10 | Plaintiff |
| Linnie Rogers, as Guardian of Mark Rogers, et al vs Estes Express Linnes, Inc., Allen Landry, U.S. Xpress | Prairie County Circuit Court | Arkansas | CV-2008-032 | 9/29/10 | Plaintiff |

Enterprises, Inc.; Charles
Daniels; Melton Truck Lines, Inc.,
and Gary Gregory

| | | | | | |
|---|---|---|---|---|---|
| Justin James<br>vs<br>Aequipap Property and Casualty<br>Ins. Co., et al | USDC<br>Western District<br>of LA | Lake Charles,<br>LA | 2:08-cv-1653 | 11/09/10 | Plaintiff |
| James Whitehurst, Susan Whitehurst<br>Berard, Lisa Whitehurst and<br>J. Patrick Whitehurs | 24ᵗʰ JDC<br>State of LA<br>Parish of Jefferson<br>Div. E | New Orleans, LA | 648-638 | 01/06/11 | Defense |
| CeCe Sloan<br>vs<br>Renee Mouton, et al | 27ᵗʰ JDC<br>Parish of St. Landry<br>State of La | Opelousas, LA | 08-C-1866-C | 2/23/11 | Plaintiff |
| Luisa Gutti Brown<br>vs<br>Sydney Coleman, M. D.<br>Kenneth Wemm, M. D.<br>Tribeca Plastic Surgery | USDC<br>Southern District<br>Of New York | New York, NY | 07 CV 1345<br>(LMM)(RLE) | 7/20/11 | Plaintiff |
| Kenneth Kennair<br>vs<br>Entergy New Orleans, Inc. | Civil District Court<br>Parish of Orleans<br>State of Louisiana | | | 9/15/11 | Plaintiff |
| Sharon Vincent Hicks<br>vs<br>Zurich American Insurance Co.<br>Et al | 14ᵗʰ JDC, 2007-003760<br>Parish of Calcasieu<br>State of La | | | 9/30/10 | Defense |
| Adrienne Stermer<br>vs<br>Archer-Daniels-Midland<br>Company and American River<br>Transportation Co. | State of Louisiana<br>27ᵗʰ JDC<br>Parish of St. Landry<br>Docket #08-C-6424-B | | | 6/21/11 | Defense |
| Darren  Marquez, et al<br>vs<br>Zephyrs, Inc., et al | State of Louisiana<br>24ᵗʰ JDC<br>Parish of Jefferson<br>Docket #684-907<br>Division B | | | 11/2/11 | Plaintiff |
| Rage Renee Broussard<br>vs<br>Delmar Systems, Inc. | United States District Court<br>Western District of Louisiana<br>Civil Action #: 07-197 | | | 3/20/12 | Plaintiff |
| Shmaura Phelps, et al<br>vs<br>Audubon Park, LLC, et al | State of Louisiana<br>19ᵗʰ JDC<br>Parish of East Baton Rouge<br>Civil Action#: C589316<br>Section 25 | | | 6/15/12 | Plaintiff |

| | | | |
|---|---|---|---|
| David McBride, Glenn Burns<br>vs<br>Exxon Mobil Corporation | In the District Court<br>Harris County, Texas<br>125th Judicialo District Court<br>No.: 2011-44838 | 1/31/13 | Plaintiff |
| Patrick Merritt and Angela<br>Merritt, as Natural Parents<br>and Legal Guardians for and<br>on Behalf of Sheriod Merritt,<br>an Incapacitated Adult<br>vs<br>Fulton-Dekalb Hospital<br>Authority d/b/a Grady Health<br>System a/k/a Grady Memorial<br>Hospital, et al | In the State Court of<br>Dekalb County<br>State of Georgia<br>No.: 10A26759-3 | 3/14/13 | Plaintiff |
| Lisa Plaia, et al<br>vs.<br>Stewart Enterprises, Inc. | Civil District Court<br>Parish of Orleans<br>Case # 2010-11736 | 8/8/13 | Plaintiff |
| Ann Holdiness and Jerry Holdiness<br>vs<br>Rush Hospital/Butler, Inc.; Rush<br>Health Systems, Inc.;<br>David A. Makey, M. D.; Medical<br>Arts Surgical Group, PLLC; and<br>John Doe 2-10 | Circuit Court of Lauderdale County<br>Cause No.: 10-CV-173(B) | 8-13-13 | Plaintiff |

Updated: 09/11/13



**AMERICAN SOCIETY OF PLASTIC SURGEONS**

### *Expert Witness Affirmation*

*As a member of the medical profession and the American Society of Plastic Surgeons, I affirm my duty, when giving evidence or testifying as an expert witness, to do so solely in accordance with the merits of the case. Furthermore, I declare that I will uphold the following professional principles in providing expert evidence or expert witness testimony.*

1) *I will always be truthful.*

2) *I will conduct a thorough, fair and impartial review of the facts and the medical care provided, not excluding any relevant information and will testify as to their content fairly, honestly and impartially.*

3) *I will provide evidence or testify only in matters in which I have recent and substantive clinical experience and knowledge in the areas of medicine which are the subject of the proceeding.*

4) *I will evaluate the medical care provided in light of generally accepted standards, with which I will be familiar, neither condemning performance that falls within generally accepted practice standards nor endorsing or condoning performance that falls below these standards.*

5) *I will provide evidence or testimony that is complete, objective, scientifically based, and helpful to a just resolution of the proceeding.*

6) *I will make a clear distinction between a departure from accepted practice standards and an untoward outcome.*

7) *I will determine whether there is a causal relationship between the alleged substandard practice and the medical outcome.*

8) *I will make a clear distinction between my personal opinion and accepted practice standards.*

9) *I will submit my testimony to peer review, if requested by a professional organization to which I belong.*

10) *I will not accept compensation that is contingent upon the outcome of the litigation.*

Name: ~DARRELL L. HENDERSON~

Signature: ~Darrell Henderson~

American Board of Plastic Surgery Certification Date: ~1969~

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * *
OLLIE GREENE, Individually as      *
the Surviving Parent of            *
WYNDELL GREENE, SR., WILLIAM       *
GREENE, as the Administrator       *
of the Estate of WYNDELL           *
GREENE, SR., and MARILYN           *
BURDETTE-HARDEMAN, Individually    *
and as the Surviving Parent of     *
LAKEYSHA GREENE,                   *
         Plaintiffs                *
                                   *
vs.                                *   NO.: 3:11-cv-0207-N
                                   *
TOYOTA MOTOR CORPORATION,          *
TOYOTA MOTOR MANUFACTURING         *
NORTH AMERICA, INC., TOYOTA        *
MOTOR SALES USA, INC., VOLVO       *
GROUP NORTH AMERICA, LLC,          *
VOLVO TRUCKS NORTH AMERICA, A      *
DIVISION OF VOLVO GROUP NORTH      *
AMERICA, LLC, STRICK TRAILERS,     *
LLC, JOHN FAYARD MOVING &          *
WAREHOUSE, LLC and DOLPHIN         *
LINE, INC.                         *
         Defendants.               *
* * * * * * * * * * * * * * * * * * * * * * * * * * *

DEPOSITION OF
DARRELL LANE HENDERSON, M.D.


Taken on February 4, 2014


At the office of Plastic Surgery Associates

1101 South College Road, Suite 400

Lafayette, Louisiana

Beginning at 10:48 a.m.

REPORTED BY:  Treva Maricle, CCR, RPR

1         To make it easier, usually I never do on a case

2    like this where I have the records.  I try to rely

3    just on my experience, the knowledge of the

4    literature I have in the medical records.  So I made

5    no attempt to call anybody.

6  Q.  So do I correctly understand, then, that your

7    opinions in this case are based on your review of

8    the medical records and the bills that have been

9    provided to you by plaintiffs' counsel?

10            MR. PITTMAN:  Objection to form.

11  A.  That's correct.

12  BY MR. SELF:

13  Q.  Did you independently seek to obtain any records or

14    bills on your own, in other words, you going

15    directly to one of the medical providers and getting

16    records or bills?

17  A.  No, sir.

18  Q.  You relied on plaintiffs' counsel for that?

19  A.  Yes, sir.  And I may or may not have asked either

20    Mr. Washington or Mr. Pittman for something that was

21    missing.  I just don't remember.

22  Q.  Have you ever communicated either by phone or in

23    writing or otherwise with any of the doctors who

24    treated Mr. Wyndell Greene, Sr.?

25  A.  No, I haven't.  I usually don't do that.

DARRELL LANE HENDERSON, M.D. - 2/4/2014

1   Q.   Have you ever spoken with any representatives of any

2        of the facilities where he was treated about his

3        treatment or billing or anything like that?

4   A.   No, I haven't.

5   Q.   Is it accurate, Dr. Henderson, to say that your

6        report in this case is created for the purpose of

7        this lawsuit?

8   A.   That's correct.

9   Q.   It was not created for any kind of treatment or

10       course of treatment for Mr. Greene?

11  A.   No, it wasn't because he was dead when I was asked

12       to review his records.

13  Q.   With regard to the medical bills that you've

14       reviewed in this case, Dr. Henderson, the totals

15       that you got there where you break it down by four

16       providers on what I believe is page 14 of your

17       report, who did those calculations?

18  A.   That was in the records.  Those summaries were in

19       the records that I received, and I had them -- I

20       don't remember how many pages.  There was a whole

21       bunch of pages of line-by-line items.

22  Q.   Now, did the medical bills that you reviewed -- did

23       they reflect payment of any of those bills by any

24       third party?

25  A.   I think there was some payment.

DARRELL LANE HENDERSON, M.D. - 2/4/2014

1    Q.   Do you recall that there was a health insurer that

2         paid for some or all of those bills?

3    A.   I don't remember, but I think there was.  I just

4         don't remember exactly.

5    Q.   Do you happen to recall offhand whether it was a

6         health insurer from Mr. Greene's group health from

7         his employer as opposed to the health insurer from

8         Mrs. Greene's employer's group health policy?

9    A.   No.  Actually, I really wasn't focusing on whether

10        they were paid or not or how much was paid.  I

11        really wasn't.  It was just looking to see if

12        they're reasonable.  And I guess I review medical

13        bills from Parkland Burn Center and the burn center

14        in Galveston, Texas, probably six to 12 times a

15        year.

16   Q.   Now, the billing records that you reviewed, did they

17        reflect any kind of discounts or write-offs that

18        were afforded by the providers to the insurance

19        company that paid for the bills?

20             MR. PITTMAN:  Objection to form.

21   A.   I don't remember that they did, sir.

22   BY MR. SELF:

23   Q.   Do you know whether the medical billing totals that

24        you got calculated there on page 14 of your

25        report -- do you know whether those take into

DARRELL LANE HENDERSON, M.D. - 2/4/2014

1        substantially less than the amount that you

2        submitted on your claim.

3              Is that fair to say?

4                    MR. PITTMAN:  Objection to form.

5   A.   I guess theoretically it would be.  We don't belong

6        to any HMO plans and very few PPO plans.

7   BY MR. CARLSON:

8   Q.   But you are a preferred provider, a member of PPO

9        plans.

10             Is that fair to say?

11  A.   Yes, we are.

12  Q.   And in the context of PPO plans, you contracted for

13       substantially discounted rates for the insurers or

14       with the insurers.

15             Is that fair to say?

16  A.   I really don't know that, sir.  That's just not what

17       I do in my practice.

18  Q.   Is that what -- is that something that your staff

19       handles?

20  A.   Yes.  I'm sorry I'm not very accurate on it.  Yeah,

21       our staff handles that.

22  Q.   So in the context of this case, let's just talk

23       about the Parkland bills.  You reviewed what was

24       invoiced by Parkland; correct?

25  A.   That's correct.

DARRELL LANE HENDERSON, M.D. - 2/4/2014

1   Q.   And it's your opinion that those were appropriate

2        amounts?

3                    MR. PITTMAN:   Objection to form.

4   A.   They seemed usual and customary to other burn

5        centers that I've reviewed.

6   BY MR. CARLSON:

7   Q.   But you don't if anybody or any of those bills were

8        actually submitted to an insurer who covered

9        Mr. Greene at the time of the accident; is that

10       correct?

11                   MR. PITTMAN:   Objection, form.

12  A.   That's correct.

13  BY MR. CARLSON:

14  Q.   You don't know if any of those bills or any line

15       items on those bills were actually reduced or

16       repriced by an insurer; is that correct?

17                   MR. PITTMAN:   Objection to form.

18  A.   That's correct.  I don't know that.

19  BY MR. CARLSON:

20  Q.   And you don't know what amount, if any, was actually

21       paid by an insurer for any of the line items on the

22       bills that were submitted by Parkland; is that

23       correct?

24                   MR. PITTMAN:   Objection to form.

25  A.   That's correct.

DARRELL LANE HENDERSON, M.D. - 2/4/2014

```
 1   BY MR. CARLSON:

 2   Q.   And you don't know who paid any of those bills; is

 3        that correct?

 4             MR. PITTMAN:   Objection to form.

 5   A.   That's correct.

 6   BY MR. CARLSON:

 7   Q.   And you don't know the total amount that was paid by

 8        any insurer or other entity in connection with the

 9        bills that were submitted by Parkland; is that

10        correct?

11             MR. PITTMAN:   Objection to form.

12   A.   Yes.

13   BY MR. CARLSON:

14   Q.   And with respect to the other three entities that

15        are listed in your report, if I ask you the same

16        question, would your answers be the same?  In other

17        words, you don't know whether or not those bills

18        were submitted to an insurer and whether an insurer

19        paid some or all of those bills?

20             MR. PITTMAN:   Objection to form.

21   A.   Yeah.  That may be in some of the records that I

22        have, but I was more interested in what happened to

23        Mr. Greene and looking through the medical records

24        than who paid the bills.

25   BY MR. CARLSON:
```