IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-207-N |
| | § | |
| TOYOTA MOTOR CORPORATION, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

# **ORDER**

This Order addresses Defendant Volvo Group North America, LLC's ("Volvo") motion for partial summary judgment on Plaintiffs' misrepresentation claim ("Volvo MPSJ") [Doc. 250] and motion for summary judgment on Plaintiffs' strict liability, negligence, and gross negligence claims ("Volvo MSJ") [267].[1] The Court grants the motions in part and denies them in part.

## I. THE CAR ACCIDENT

On May 28, 2010, Wyndell Greene, Sr., LaKeysha Greene, and their children Wyndell Greene II and Wesleigh Greene were traveling in the family's 2010 Toyota 4Runner on

---

[1]Plaintiffs ask the Court to strike Volvo's motions because Volvo has filed multiple summary judgment motions in contravention of Local Rule 56.2. *See* Pls.' Resp. Volvo MSJ 1 [322]. As Volvo's summary judgment motions have been timely, brief, and not duplicative, the Court will allow Volvo's motions. *See Lexxus Intern., Inc. v. Loghry*, 512 F. Supp. 2d 647, 657–58 (N.D. Tex. 2007).

Interstate Highway 20 when traffic slowed.[2] A Volvo semi-tractor trailer behind the Greenes applied its brakes but rear-ended the Toyota 4Runner. The collision caused the Toyota 4Runner to hit a 2006 Toyota Corolla in front of it. The Toyota 4Runner then slid into the rear of a trailer manufactured by Strick, owned by Dolphin Line, and operated by Fayard Moving.

As a result of the collision, the Toyota 4Runner caught fire. Wyndell Greene II was decapitated during the accident, and Wesleigh Greene died after being trapped in the car during the fire. LaKeysha Greene, who was wearing a seatbelt restraint, was thrown from the vehicle and died from the trauma. Wyndell Greene, Sr. survived the car accident but succumbed to his injuries three months later.

Plaintiffs Ollie Greene (Wyndell Greene, Sr.'s parent), William Greene (representative of the estate of Wyndell Greene, Sr.), and Marilyn Burdette-Hardeman (LaKeysha Greene's parent) filed suit against the Defendants in February 2011. Their amended complaint asserts claims for wrongful death, survival action, negligence, gross negligence, strict liability and misrepresentation against Volvo. Volvo now moves for summary judgment on Plaintiffs' misrepresentation, negligence, gross negligence, and strict liability claims.

---

[2]The Court draws these alleged facts from Plaintiffs' second amended complaint [113] and responses to Volvo's motions for summary judgment.

## II. STANDARD FOR SUMMARY JUDGMENT

A trial court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, a court must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "conclusory allegations, speculation, and unsubstantiated

assertions" will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Indeed, factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE COURT GRANTS SUMMARY JUDGMENT ON PLAINTIFFS' MISREPRESENTATION CLAIM

The Court first addresses Volvo's motion for partial summary judgment on Plaintiffs' misrepresentation claim.[3] Plaintiffs allege that Volvo misrepresented the safety of its vehicles. The Court finds, however, that Plaintiffs have failed to show that the Greenes relied on Volvo's representations. The Court therefore holds that Volvo is entitled to summary judgment as to Plaintiffs' misrepresentation claim.

To state a claim for negligent misrepresentation under Texas law, a plaintiff must show:

---

[3]In the operative complaint, Plaintiffs assert a claim of misrepresentation against Volvo. *See* Am. Compl. ¶¶ 61–64 [113]. Their response to Volvo's motion for partial summary judgment, however, asserts new causes of action – violation of the Deceptive Trade Practices Act and common law fraud – that were not raised in its complaint. *See* Pls.' Resp. Volvo MPSJ 2–4. "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). As these claims are not properly before the Court, the Court need not address them in deciding Volvo's motion.

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest;
>
> (2) the defendant supplies "false information" for the guidance of others in their business;
>
> (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and
>
> (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). The last element requires that "the plaintiff must in fact have relied" on the misrepresentation and the reliance was reasonable. *Geosearch, Inc. v. Howell Petroleum Corp.*, 819 F.2d 521, 526 (5th Cir. 1987). "Put another way, there must be a reasonable relation between the contents of the defendant's misrepresentation and the action the plaintiff took in reliance." *Id.*

Plaintiffs fail to provide any evidence that shows reliance. Plaintiffs submit several advertisements, including print-outs of Volvo's website, as evidence of representations Volvo has made regarding the safety of its vehicles. *See* Pls.' Resp. Volvo MPSJ, App. 1–35, 58–61, 63–72 [302].[4] Most of these documents either post-date the accident, *id.* at 2–5, 10–35, 58–59, or relate to Volvo's passenger vehicles rather than the type of commercial truck involved in the accident, *id.* at 6–9, 6–72. Several relevant advertisements are undated, and the Court cannot determine whether the advertisements pre-date or post-date the

---

[4] Several pages of the exhibits list Volvo recalls. *See id.* 35–57, 62. These are supplied as evidence of the falsity of Volvo's alleged representations, not as evidence of representations made by Volvo. Many of the recalls post-date the accident. *Id.*

accident. *Id.* at 1 (dated "2010" but does not indicate month or day); 60–61 (undated). Even assuming these documents pre-date the accident, Plaintiffs still have not shown that the Greenes actually viewed any of these advertisements. At most, Plaintiffs' evidence suggests that the Greenes, and specifically Wyndell Greene, may have viewed Volvo advertisements while reading magazines and newspapers and watching television. *See, e.g.*, *id.* at 107–110. But the specific advertisements the Greenes viewed are not in the record and "their content is subject to speculation." *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 437 (Tex. 1997). Speculation, without more, does not create a fact issue. *Id.* (citing *Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex. 1988)). Thus, Plaintiffs have not shown that the Greenes relied on any statement made in the advertisements. *Cf. Grinnell*, 951 S.W.2d at 436–37 (holding that smoker who did not testify that he saw health claims in tobacco advertisements in 1950s and 1960s could not show that he relied on these statements in making the decision to smoke). Because Plaintiffs do not present evidence to support this element of their misrepresentation claim, the Court need not consider the other elements. The Court grants summary judgment for Volvo on Plaintiffs' misrepresentation claim.

### IV. THE COURT GRANTS IN PART AND DENIES IN PART SUMMARY JUDGMENT ON STRICT LIABILITY CLAIMS

Plaintiffs' strict product liability claims against Volvo stem from alleged design, manufacturing, and marketing defects:

> 58. The Volvo Defendants designed, manufactured, marketed, assembled, and/or tested the Volvo Tractor to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the Volvo Tractor was defective and unreasonably dangerous as designed, manufactured, assembled, marketed, and/or tested because of the following

> design, manufacturing and/or marketing defects, among others: absent or defective collision warning system; ineffective energy-absorption capabilities; and the Tractor was defectively designed because it was incompatible, in a crash, with other vehicles on the road, and failed to properly protect the Greene Family in the accident.

*See* Am. Compl. ¶ 58. Volvo contends that Plaintiffs have offered no evidence to raise a material fact issue with respect to their strict liability claims. The Court finds that Plaintiffs provide evidence to support their design defect claim but fail to do so with respect to their manufacturing or marketing defect claims. Accordingly, the Court grants summary judgment as to the two latter claims but denies it as to Plaintiffs' design defect claim.

### A. Design Defect

In Texas, a design defect claim has three elements: "'(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery.'" *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1040 (5th Cir. 2011) (quoting *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009)).

***1. Unreasonably Dangerous.*** – A defective product is unreasonably dangerous if it is "dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community as to the product's characteristics." *Syrie v. Knoll Int'l*, 748 F.2d 304, 306 (5th Cir. 1984) (citing *Tuner v. General Motors Corp.*, 584 S.W.2d 844, 850 (Tex. 1979)). Determining whether a product is unreasonably dangerous as designed involves a balancing of the utility of the product and the risk involved in its use. *Id.*

Plaintiffs present evidence that the truck was defective because it lacked brake technology, a collision warning system, and certain modifications to the front end of the truck that would have lessened the severity of the accident. *See* Pls.' Resp. Volvo MSJ, App. 137–217 [323].[5] Plaintiffs show that adopting alternative designs is not only technologically and economically feasible but is already being done by other trucking companies and by Volvo in many of its European trucks. *Id.* Plaintiffs further show that adopting these technologies might have a significant impact in reducing fatalities in accidents involving heavy trucks. *See* Pls.' Resp. Volvo MSJ 13. Thus, Plaintiffs have presented evidence that the truck was unreasonably dangerous.

***2. Safer Alternative Design.*** – Next, a "safer alternative design" is "a product design that in reasonable probability 'would have prevented or significantly reduced the risk of the claimant's personal injury' and 'was economically and technologically feasible at the time the product left the control of the manufacturer.'" *Goodner*, 650 F.3d at 1042 (quoting TEX. CIV. PRAC. & REM. CODE § 82.005(b)). Plaintiffs present evidence of several alternative designs – adding disc brakes, installing a collision avoidance system such as VORAD,

---

[5]Plaintiffs submit the expert report of Keith Friedman and R. Rhoads Stephenson (the "Friedman Report"). Volvo objects to the Friedman Report because it is unsworn. Volvo MSJ Reply 3 [353]. Volvo contends that the Declaration of Keith Friedman, attached to the report, is insufficient to remedy this deficiency because it does not affirm the contents of the report. *Id.* Plaintiffs have since submitted a revised Affidavit of Keith Friedman that explicitly swears to the contents of the report. *See* Aff. of Keith Friedman ¶ 10 [366-1]. Thus, the alleged deficiency has been cured. *See Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 634 (S.D. Tex. 2007) ("While filing [the expert's] unsworn expert report did not constitute admissible summary judgment evidence, that deficiency was cured by filing the sworn declaration . . . .").

lowering the ride height, adding a front underride guard, and equipping the front of the truck with an airbag – that could have reduced the risk or lessened the severity of an accident. Pls.' Resp. Volvo MSJ 8–11 [322]. Plaintiffs show that these alternative designs are already in use in Europe and on some Volvo trucks, and thus are economically and technologically feasible. *Id.*

    *3. Causation.* – Finally, a "producing cause" is a "'substantial factor in bringing about an injury, and without which the injury would not have occurred.'" *Goodner*, 650 F.3d at 1044 (quoting *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007)). Plaintiffs present evidence that the sole cause of the accident was the Volvo truck crashing into the rear of the Greenes' 4Runner. Pls.' Resp. Volvo MSJ, App. 329, 333. The expert evidence suggests that the alternative designs listed above are intended to prevent or lessen the severity of this type of rear-end accident. *Id.* at 137–217. Thus, the experts contend that the design defect, *i.e.* the lack of these technologies, caused or exacerbated the Greenes' accident. *Id.*

    *4. Conclusion.* – The Court holds that Plaintiffs offer sufficient evidence to create a genuine issue of material fact as to each element of their design defect claim. Accordingly, the Court denies summary judgment as to this claim.

### B. Manufacturing Defect

Unlike a design defect, a manufacturing defect is not a flaw inherent in the design of a product but a flaw that arises from a deviation in construction or quality from the "specifications or planned output in a manner that renders [the product] unreasonably

dangerous." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 844 (Tex. 2000); *Grinnell*, 951 S.W.2d at 434)).

The basis for all of Plaintiffs' product liability claims against Volvo is that Volvo could have incorporated various technologies to help their trucks avoid collisions or cause less damage to passenger vehicles. But Plaintiffs nowhere suggest these flaws arose during the manufacturing process. Accordingly, the Court grants Volvo summary judgment as to this claim.

### C. Marketing Defect

To prevail on their marketing defect claim against Volvo, Plaintiffs must show:

(1) a risk of harm exists that is inherent in the product or arises from the intended or reasonably anticipated use of the product;
(2) the product supplier actually knew or reasonably foresaw the risk of harm at the time the product was marketed;
(3) the product possessed a marketing defect;
(4) the absence of warning or instructions rendered the product unreasonably dangerous to the ultimate user of the product; and
(5) the failure to warn or instruct must cause the product user's injuries.

*USX Corp. v. Salinas*, 818 S.W.2d 473, 482–84 (Tex. App. – San Antonio 1991, writ denied) (citation omitted). There are four types of dangers that require a warning: "(1) a risk or danger inherent in the design of the product; (2) foreseeable dangers or risks of harm from unintended uses of a product; (3) risks or dangers that affect only a limited number of users susceptible to a danger in the product; and (4) unavoidably unsafe products." *Id.* "A product supplier has no duty to warn of dangers that are of common knowledge to the public or generally known to the consuming public." *Id.*

Though Plaintiffs provide evidence regarding the alleged dangerousness of the Volvo truck, *see supra* Section IV.A, they fail to provide any evidence regarding the absence of warning or instructions that rendered the truck unreasonably dangerous. Plaintiffs present no evidence that the truck could have been made safer by including an instruction or warning. This flaw is fatal to their marketing defect claim. Volvo is therefore entitled to summary judgment on this claim.

## V. THE COURT DENIES SUMMARY JUDGMENT AS TO THE NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS

Plaintiffs' negligence claim, as with its strict liability claim, arises from defects in the design of Volvo trucks. *See* Am. Compl. ¶ 59–60. Plaintiffs allege that Volvo owed a duty to provide a safe product and breached that duty by selling a product without that technology. *Id.* ¶ 60.[6]

To show negligence, Plaintiffs must prove that Volvo (1) owed a duty to Plaintiffs; (2) breached that duty; and (3) Volvo's breach caused Plaintiffs' injury. *See Romo v. Ford Motor Co.*, 798 F. Supp. 2d 798, 807 (S.D. Tex. 2011) (citation omitted). Though Plaintiffs' negligence claim is based on the same design defects as its strict liability claims, a

---

[6] In their amended complaint, Plaintiffs also state a negligence claim based on Volvo's alleged failure to warn consumers regarding alleged defects in the product. Am. Compl. ¶ 60. In their response to Volvo's summary judgment motion, however, Plaintiffs' "failure to warn" negligence claim more closely resembles a negligent misrepresentation claim. Pls.' Resp. Volvo MSJ 17–19. As previously discussed in Section III, the Court finds that Volvo is entitled to summary judgment as to Plaintiffs' misrepresentation claim. To the extent Plaintiffs intended to state a negligence claim based on a failure to warn, they have failed to present evidence of a failure to warn or instruct that caused Plaintiffs' injuries. *See supra* Section IV.C.

"'negligence cause of action requires a different showing from a strict liability claim, even when the action is against the manufacturer.'" *Kallassy v. Cirrus Design Corp.*, 2006 WL 1489248, at *3 (N.D. Tex. 2006) (quoting *Syrie v. Knoll Int'l*, 748 F.2d 304, 307 (5th Cir. 1984)) *aff'd*, 265 F. App'x 165 (5th Cir. 2008). As explained by this Court in *Kallassy*,

> The care taken by the supplier of a product in its preparation, manufacture, or sale is not a consideration in strict liability; this is, however, the ultimate question in a negligence action. Strict liability looks at the product itself and determines if it is defective. Negligence looks at the act of the manufacturer and determines if it exercised ordinary care in design and production.

*Id.* A person who manufactures a product "must exercise reasonable care to prevent physical harm that can reasonably be foreseen to result from the use of the product for its intended purpose . . . ." *Syrie*, 748 F.2d at 307 (quoting W. DORSANEO, TEXAS LITIGATION GUIDE § 320.03[1] (1984)).

As discussed in Section IV.A, Plaintiffs have presented evidence that the product was dangerous, and that the characteristics of the product making it dangerous were the producing cause of Plaintiffs' injuries. Thus, the question is whether Volvo exercised ordinary care in designing and producing the car. Plaintiffs contend that Volvo knew of certain lifesaving technologies, some of which were used by other manufacturers or in Volvo's own truck fleet in Europe, but did not use the technology in the particular truck involved in the accident. Pls.' Resp. Volvo MSJ 13, 16–17, 19–21. For example, Volvo installed front underride protection on its trucks in Europe and were aware of the lifesaving benefits of the technology. *Id.* at 16. Based on this evidence, the risk of physical harm from the use of the

truck without these technologies was foreseeable. Thus, Plaintiffs have raised a material fact question as to whether Volvo breached its duty of reasonable care.

Plaintiffs also present evidence to support their claim for gross negligence and exemplary damages. Am. Compl. ¶ 128. "[G]ross negligence is the breach of duty involving an extreme degree of risk, considering the probability and magnitude of the potential harm to others (an objective element) when the actor has actual awareness of the risk involved but nevertheless proceeds in conscious indifference to the rights, safety, or welfare of others (a subjective element)." *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 595 (Tex. 1999). An "extreme degree of risk" is a "likelihood of serious injury." *Id.* Plaintiffs have presented evidence that commercial trucks, like the one involved in the accident, are responsible for 3,000 to 5,000 fatalities per year in the United States. Pls.' Resp. Volvo MSJ 13. Accident mitigation technology has been shown to reduce that number. For example, improved underride protection reduced fatalities by 900 deaths per year in Europe. *Id.* at 13, 20. Next, "[t]he subjective element requires proof that the defendant knew about the danger, but its acts or omissions demonstrate that it did not care." *Sanchez*, 997 S.W.2d at 596. Plaintiffs have shown that Volvo knew of better technology and even installed it on its European trucks but chose not to use that technology in the United States. Pls.' Resp. Volvo MSJ 20–21. Plaintiffs have thus presented evidence to support both elements of its gross negligence claim. Thus, there is a material issue of fact as to Volvo's gross negligence.

As Plaintiffs have raised a genuine issue of material fact as to Volvo's negligence and gross negligence in the accident, the Court denies Volvo's motion for summary judgment as to these claims.

## Conclusion

For the foregoing reasons, the Court grants summary judgment as to Plaintiffs' misrepresentation, manufacturing defect, and marketing defect claims. The Court denies summary judgment as to the remaining claims.

Signed June 2, 2014.

_____
David C. Godbey
United States District Judge