IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE-HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, | § § § § § § § | CAUSE NUMBER 3:11-cv-0207-N |
| Plaintiffs, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC. VOLVO GROUP NORTH AMERICA, INC. VOLVO TRUCKS NORTH AMERICA, a DIVISION OF VOLVO GROUP NORTH AMERICAN, LLC, STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC and DOLPHIN LINE, INC. | § § § § § § § § § § § | |
| Defendants. | § | |

### DEFENDANT STRICK TRAILERS, LLC'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE # 23 (SEVERITY OF ACCIDENT)

Defendant Strick Trailers, LLC, ("Strick") respectfully requests the Court deny Plaintiffs'

Motion in Limine #23 (to exclude all expert and other testimony that the subject accident was

"severe" or similar description.  [Doc. 685 PageID 32281].  The motion seeks to exclude

evidence which is relevant and highly probative to the issues in the case.

*The Severity of the Accident Impacts Is Squarely At Issue*
*Relative to Elements of Proof and Defenses*

"Evidence is relevant if it relates to any fact that is "of consequence to the action. Fed. R. Evid. 401. In this case, Plaintiffs contend that the Toyota 4Runners' structures and the underride guard which was on the Strick trailer should have remained intact under the accident forces imposed upon them in the subject accident. Against Toyota, Plaintiffs allege that a variety of structural failures occurred when it was struck by the 63,500 pound Volvo Tractor and/or in subsequent impacts, one of which was a failure of the fuel system leading to a fire. Against Strick, Dolphin and Fayard, Plaintiffs allege the trailer's rear underride guard broke away under the forces imposed upon it when the 4Runner was rammed into the trailer's rear by the Volvo Tractor-Trailer. Specifically, Plaintiffs contend the underride guard should have been strong enough to, and energy absorbent enough to, resist breaking off under the impact forces and to prevent the 4Runner from underriding the trailer. Plaintiffs' proposed alternative designs are all stronger underride guards. Accordingly, the severity of the impact force is <u>the central issue in Plaintiffs' design defect and negligence case</u>.

<u>*The Severity of the Impacts Is Relevant to Whether the Underride Guard*</u>
<u>*Was Unreasonably Dangerous*</u>

Plaintiffs must prove, among other things, that the underride guard was unreasonably dangerous, a safer alternative design existed and the defect was the producing cause of injury. *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1038 (Fifth Cir. 2011). "Unreasonably dangerous means dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Hernandez v. Tokai Corp.,* 2 S.W.3d 251 (Tex. 1999) (Texas product

liability statute does not state all elements of strict liability or negate the requirement for proof the product is unreasonably dangerous, as to which consumer expectations is one factor the jury may consider); *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 432 (Tex.1997); *Turner v. General Motors Corp.*, 548 SW 2d 544, (Tex. 1979).  Jurors understand the difference between a "fender bender" and a high velocity crash with large vehicles.  The severity of the impacts is relevant to consumer expectations about the performance of the underride guard.  Jurors may have very different expectations of just how severe a crash an underride guard should be able to sustain before they consider it unreasonably dangerous.

The defendants are not guarantors that no injury will ever occur to occupants of vehicles which have the misfortune to impact the trailer, regardless of the severity of the impact.  "A manufacturer is not obligated to design a completely safe product.  A product is not 'unreasonably dangerous' merely because it could have been designed with greater safety." *Carter v. Massey Ferguson*, 716 F 2d 344, 347 (Fifth Cir. 1983).  By seeking to eliminate evidence of, as well as the concept of "severity" of the subject crashes, Plaintiffs essentially seek to impose absolute liability upon the Defendants.

<u>*Severity of the Impacts Is Relevant to Causation*</u>

Severity of the various impacts is central to the causation issue.  Strick contends Lakeysha Greene sustained immediate fatal head injuries from the impact forces imparted to her head when her head struck the trailer body, prior to the failure of the underride guard.  The impact forces were high enough to overwhelm whatever protection against head injury which the 4Runner's side air bag might have provided had the impact forces been less.  Strick contends the

two children[1] died in the rear impact because the accident forces were so great they crushed the rear floor pan and children's seats forward and upward, obliterating the space between the children and the front seat back.  In addition, the accident forces as measured by Delta V's and accelerations, exceeded the human tolerances of small children and were sufficiently high to produce death.  The rear end forces and accelerations were also sufficiently high to render the front seat occupants unconscious or dazed and therefore unaware of subsequent impact events.

<u>*Severity of the Impacts Is Relevant to Safer, Feasible Alternative Design*</u>
<u>*Which Would Have Prevented or Significantly Reduced the Injuries*</u>

Plaintiffs must prove that a feasible safer alternative design would have prevented or significantly reduced the injuries in the subject accident.  *Id. at 1042; Tex. Civ. Prac. & Rem. Code* §82.005(b).  Plaintiffs' experts have proposed several alternative designs and intend to opine as to each, that it would not have failed under the forces and energies of the subject accident.

Strick contends the energy of the 4Runner's crash with the trailer and underride guard were many, many times higher than that which could be resisted by (a) any one of the Plaintiffs proposed alternative design underride guards and (b) any practicable or feasible design.  Strick further contends that the accident forces were so great, the Plaintiffs' decedent would still have suffered fatal injuries even if the underride guard did not detach.  The 4Runner would have continued to crush and there would have been no survival space for the occupants.

---

[1]  Plaintiffs contend they have pled a survival count for the deaths of the children; Strick contends they have not properly pled it and lack standing to pursue this claim.

### *It Is Not Clear How The Issues In Dispute*
### *Can Be Discussed Without Reference to the Severity of The Crashes*

Severity of the various impacts are disputed.  Plaintiffs' accident reconstructionist, Jeff Vick, calculated the Delta V (change in velocity) of the various impacts.  Delta V is a standard measure to assess the severity of an automotive crash.  If severity of the impacts is irrelevant, then why have Plaintiffs proffered this evidence?  It is because this measure of severity is recognized as relevant to the likelihood of fatality, as well as the likelihood of severe damage to vehicular structures.  For example, Plaintiffs' biomechanical expert, Dr. Joseph Burton, has testified in deposition testimony in another underride case that he considers authoritative and relies upon an SAE article entitled *"Relationship of Crash Casualties and Crash Attributes"* in every file he has involving a frontal, rear or side impact (all three of which happened in the Greene crash event).  He said:

> I put it in there because it's one of the most recent articles written where the NASS database was perused and studied and made a correlation between Delta V, likelihood of fatality, PDOF, likelihood of fatality and things like that.  {Ex. A, App. pp 1-2}

Plaintiffs' experts have opined about Delta V because severity of the impact is relevant to their claim.  All of the Defendants' expert accident reconstructionists have opined about the Delta V of the impacts.  They are relevant to assess consumer expectation about the performance of vehicle structures, including the trailer's underride guard, to the likelihood of a fatality, to the actual cause of fatality.

Strick's expert, Dr. Michelle Vogler, has calculated the quantity of energy, in joules, involved in the impact into the rear underride guard.  Energy is another way of measuring and discussing severity.  She has compared the crash energy to the maximum energy input any of

Plaintiffs' alternative designs could withstand.  She opined that none of the proffered alternative

designs could remain intact under the crash energies of the subject crash.  Plaintiffs' expert

Friedman claims to have done the same analysis (although his analysis was undisclosed and

Strick elsewhere disputes its admissibility).   Here, however, the point is that the severity of the

impact with the rear underride guard, as measured in joules, is relevant to the existence of a

feasible safer alternative design which would have remained intact and to the risk of fatality,

regardless of the guard's performance.

      Plaintiffs' motion to exclude all reference to the severity of the accident would eliminate

all of this evidence.  It is not clear, then, what evidence the jury would have by which to judge

the underride guard's design, causation, alternative designs or injury causes.  Are experts to be

limited to technical "jargon" - Delta V, joules, foot pounds, accelerations -- without any

opportunity to explain these terms to the jury?  The role of an expert witness is to provide to, and

explain scientific, technical and other specialized knowledge to the trier of fact.  The experts

cannot do this if they are prohibited from explaining the concepts, measurements, etc. in terms

the jury can understand.

### *The Words "Severe" or "Similar Terms" Are Neither Inflammatory Nor Unduly Prejudicial*

      There is nothing unfairly prejudicial or inflammatory about the word "severe."  The word

is commonly used by eye witnesses to describe accident events they have observed or

experienced.  Another word commonly used by lay people is violent ("it was a violent

accident").  These words convey information about whether the impacts were high speed, high

energy, high force accidents.  It is not appropriate to "tongue tie" the witnesses and preclude

them from using common words to describe their observations and perceptions.  By asking to

exclude the word "severe" and all similar words from the discussion, Plaintiffs are essentially

asking that highly relevant evidence on numerous issues be masked.

## CONCLUSION

For the reasons stated above, Defendant Strick respectfully requests the Court deny

Plaintiffs' Motion In Limine # 23.

Respectfully submitted,
DAWSON & CLARK, P.C.

_/S/ Donald H. Dawson, Jr._
DONALD H. DAWSON, JR.
Texas State Bar No. 05606500
KATHLEEN A. CLARK
Texas State Bar No. 00788830
243 West Congress, Suite 600
Detroit, MI 48226
(313) 256-8900 *(Office)*
(313) 256-8913 *(Facsimile)*

WALTERS, BALIDO & CRAIN, LLP

_/S/_
S. TODD PARKS
Texas State Bar No. 15526520
10440 North Central Tower, 15th Floor
Dallas, TX 75231
(214) 749-4805 *(Office)*
(214) 760-1670 *(Facsimile)*

**ATTORNEYS FOR DEFENDANT STRICK**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 4, 2014, a true and correct copy of the above and foregoing was forwarded to all counsel of record in accordance with the Texas Rules of Civil Procedure.

*/S/ Donald H. Dawson, Jr.*
DONALD H. DAWSON, JR.
