# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **OLLIE GREENE, et al,** | § | |
| | § | |
| **Plaintiffs,** | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| **v.** | § | |
| | § | |
| **TOYOTA MOTOR CORPORATION,** | § | |
| **et al.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Defendants.** | § | |

## PLAINTIFFS' OBJECTIONS TO TOYOTA DEFENDANTS' PROPOSED JURY INSTRUCTION AND VERDICT FORM

Plaintiffs Ollie Greene, Individually and as the surviving parent of Wyndell Greene, Sr., William Greene, as the Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and as the surviving parent of LaKeysha Greene (collectively hereinafter referred to as "Plaintiffs"), files their Objections to Toyota Defendants' Proposed Jury Charge as follows:

### Plaintiffs' Objection to Defendant's Instructions

### Page 7, last paragraph

Plaintiffs object to the submission of the last paragraph on page 7 and continuing on page 8 because it is an incorrect submission of the law pertaining to design defect under undisputed Texas law.  There is no need for the Court to comment on whether "foreseeable risk of harm posed by the product could have been substantially reduced….."

To prove a design defect, Plaintiffs have to show that (1) there was a safer alternative design; (2) the safer alternative design would have prevented or significantly reduced the risk of injury, without substantially impairing the product's utility; and (3) the safer alternative design was both technologically and economically feasible when the product left the control of the manufacturer. TEX. CIV. PRAC. & REM.CODE ANN. § 82.005(a)-(b) (West 2011); *see Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 588 (Tex.1999); *Smith v. Aqua–Flo, Inc*., 23 S.W.3d 473, 477 (Tex.App.-Houston [1st Dist.] 2000, pet. denied).

Thus, Plaintiffs object and offer the following instruction:

1

A "design defect" is a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. In order for a design defect to exist, there must have been a safer alternative design.

"Safer Alternative Design" means a product design other than the one actually used that in reasonable probability:

(1)     would have prevented or significantly reduced the risk of the injury or death without substantially impairing the utility of the Toyota 4Runner; and

(2)     was economically and technologically feasible at the time the product left the possession of Toyota by the application of existing or reasonably achievable scientific knowledge.

"Producing Cause" means an efficient or contributing cause that, in a natural sequence, produces the occurrence or injury.  There may be more than one producing cause.

*See*, TEX.CIV.PRAC & REM.CODE ANN. § 82.005(a)-(b).

## Page 8, Second Paragraph

Plaintiffs object to the submission of the second (first full) paragraph on page 8 because it is an incorrect and/or prejudicial submission of the law pertaining to strict liability under Texas law. It is also an improper comment on a manufacturer's duty by using dicta from a single case cited by defendant.  Further, the law provides that jury instructions should not include the element of the prudent manufacturer. *Turner v. General Motors Corp*., 584 S.W.2d 844, 847 (Tex. 1979)(in a strict liability case, however, the reasonableness of the manufacturer's conduct is not at issue; the manufacturer may be held liable even though he has exercised the utmost care).

If the Court overrules Plaintiffs' objection, Plaintiffs submit the following additional instruction to be read to the jury:

"The duty to design a safe product is an obligation imposed by law.   A manufacturer is held to the knowledge of an expert. This means that a manufacturer must keep abreast of scientific knowledge, discoveries and advances; and thus, a manufacturer is presumed to understand the significance of scientific knowledge, discovery and advances. The extent of research and experiment with regard to a product must be commensurate with the dangers arising from the product. A product must not be made available without disclosure of those dangers that the application of reasonable foresight would reveal.

"Industry practice may provide some information on what reasonable and prudent manufacturers will do; but industry practice alone does not establish what is reasonable or prudent or safe. Even if an entire industry disregards certain precautions or improvements in technology, that does not make failure to incorporate precautions or improvements in technology reasonable or prudent or safe.  Sometimes an entire industry can be wrong."

### Page 8, Third Paragraph – First paragraph, page 10

Plaintiffs object to the submission of the third paragraph on page 8 because it is an incorrect and/or prejudicial submission of the law pertaining to marketing defects under Texas law.  In Texas a manufacturer has a responsibility to instruct consumers as to the safe use of its product and to warn consumers of dangers associated with its product of which the seller either knows or should know at the time the product is sold.  *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 153–54 (Tex.2012), *citing Bristol–Myers Co. v. Gonzales*, 561 S.W.2d 801, 804 (Tex.1978); *Pavlides v. Galveston Yacht Basin, Inc*., 727 F.2d 330, 338 (5th Cir.1984).

Plaintiffs submit the following correct instruction to be read to the jury:

> A marketing defect occurs when a defendant knows or should know of a potential risk of harm presented by the product but markets it without adequately warning of the danger or providing instructions for safe use.[1]  To prove a marketing defect, the Plaintiffs must show:  1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product must exist; 2) the product supplier must actually know or reasonably foresee the risk of harm at the time the product is marketed; 3) the product must possess a marketing defect; 4) the absence of the warning and/or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product; and 5) the failure to warn and/or instruct must constitute a causative nexus in the product user's injury.[2]

> A manufacturer has a responsibility to instruct consumers as to the safe use of its product and to warn consumers of dangers associated with its product of which the seller either knows or should know at the time the product is sold.[3]

> In assessing what hazards are foreseeable, a manufacturer is held to the status of an expert.[4]  The lack of adequate warnings renders a product defective and unreasonably dangerous even if there is no manufacturing or design defect in the product.[5]

> If you find that no warning was given, you must presume that the Greene family would have read and heeded warnings on the use of defendant's product had the warnings or instruction have been given.[6]

---

[1] *USX v. Salinas*, 818 S.W.2d 473, 482 (Tex.App.—San Antonio 1991, writ denied) (citing *Bristol–Myers*, 561 S.W.2d at 804; *Crocker v. Winthrop Laboratories*, 514 S.W.2d 429, 433 (Tex.1974); and E. CARSTARPHEN, Product Defects, 2 TEXAS TORTS AND REMEDIES § 41.01[2] (J. Edgar & J. Sales eds.1991)); *see also McLennan v. American Eurocopter Corp., Inc*., 245 F.3d 403, 427 (5th Cir.2001)(product is unreasonably dangerous if manufacturer fails to warn of a foreseeable risk arising from the use of the product, and lack of adequate warnings or instructions renders otherwise adequate product unreasonably dangerous).

[2] *Salinas*, 818 S.W.2d at 482–83 (citing SALES, The Duty to Warn and Instruct for Safe Use in Strict Tort Liability, 13 ST. MARY'S L.J. 521, 524 (1982)).

[3] *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 153–54 (Tex.2012), citing *Bristol–Myers Co. v. Gonzales*, 561 S.W.2d 801, 804 (Tex.1978); *Pavlides v. Galveston Yacht Basin, Inc*., 727 F.2d 330, 338 (5th Cir.1984).

[4] *Pavlides*, 727 F.2d at 337.

[5] *Martinez v. Dixie Carriers, Inc*., 529 F.2d 457, 465-66 (5th Cir.1976).

[6] *Magro v. Ragsdale Bros., Inc*., 721 S.W.2d 832, 834 (Tex.1986).

Additionally, where the evidence shows show that Defendant did not provide adequate warnings, the burden shifts to Defendant to show, as an affirmative defense, that its representations gave the decedents actual-adequate and specific-knowledge of the hazards associated with the 4Runner.[7]

If you have heard evidence that defendant provided the Greene family with a warning regarding the harm at issue here, you must find that the warning: (1) was designed so it can reasonably be expected to catch the attention of the consumer; (2) was comprehensible and give a fair indication of the specific risks involved with the product; and (3) was of an intensity justified by the magnitude of the risk.[8] In deciding whether the warning was adequate you must find that the warning provided "a complete disclosure of the existence and extent of the risk involved"[9]

### Page 10, Compensatory Damages

Plaintiffs object to the submission of the language regarding "compensatory damages" because it is an incorrect and/or prejudicial submission of the law in Texas pertaining to compensatory damages. Plaintiffs also object on the ground that this is a partial instruction based on Fifth Circuit Pattern Jury Instruction, which is improperly placed at this point in the charge. Plaintiffs contend these instructions regarding compensatory damages should be read at the time the damages instruction in the verdict form is read, during which time Plaintiffs ask that the Court provide the language submitted in Plaintiffs' proposed jury instructions/verdict form or Fifth Circuit Pattern Jury Instructions Civil §§ 15.2 and 15.3, et seq.

### Page 10, Punitive Damages

Plaintiffs object to the submission of the language regarding "punitive damages" because it is an incorrect and/or prejudicial submission of the law in Texas pertaining to punitive damages. This is also a partial instruction based on Fifth Circuit Pattern Jury Instruction, which is improperly placed at this point in the charge. Plaintiffs object to any instructions regarding punitive damages until the verdict form is read, during which time Plaintiffs ask that the Court provide the language submitted in Plaintiffs' proposed jury instructions/verdict form or Fifth Circuit Pattern Jury Instructions Civil § 4.10.

### Page 10, Multiple Defendants

Plaintiffs object to the submission of the language regarding "multiple defendants" because it is an incorrect and/or prejudicial submission of the law in Texas pertaining to multiple defendants. Plaintiffs also object to any instructions regarding multiple defendants until the verdict form is

---

[7] *Pavlides*, 727 F.2d at 340; *Maxey v. Freightliner Corp.*, 450 F.Supp. 955, 960 (N.D.Tex.1978), *aff'd in pertinent part*, 665 F.2d 1367 (5th Cir.1982) (en banc).

[8] *Bituminous Casualty Corp. v. Black & Decker Manufacturing Co.*, 518 S.W.2d 868, 872-73 (Tex.Civ.App.-Dallas, 1974), writ ref'd n.r.e.

[9] *Alman Brothers Farms & Feed Mill, Inc. v. Diamond Laboratories, Inc.*, 437 F.2d 1295, 1303 (5th Cir.1971).

read, during which time Plaintiffs ask that the Court provide the language submitted in Plaintiffs' proposed jury instructions/verdict form or Fifth Circuit Pattern Jury Instructions Civil § 15.14.

If the Court overrules Plaintiffs' objection, Plaintiffs submit the following additional instruction to be read to the jury:

> You may find that more than one defendant is liable for a particular injury. If so, the plaintiffs are not required to establish how much of the injury was caused by each particular defendant whom you find liable. Thus, if you conclude that the defendants you find liable acted jointly, then you may treat them jointly for purposes of calculating damages. If you decide that two or more of the defendants are jointly liable on a particular claim, then you may simply determine the overall amount of damages for which they are liable, without determining individual percentages of liability.[10]

## Plaintiffs' Objection to Defendant's Jury Questions
### (Instruction numbers correspond to the questions in the proposed verdict form)

## Question 1

A.   Plaintiffs object to the submission of this separate question on design defect apart from producing cause.

Plaintiffs ask that the Court provide the following question:

> "The duty to design a safe product is an obligation imposed by law.[11]   A manufacturer is held to the knowledge of an expert. This means that a manufacturer must keep abreast of scientific knowledge, discoveries and advances; and thus, a manufacturer is presumed to understand the significance of scientific knowledge, discovery and advances. The extent of research and experiment with regard to a product must be commensurate with the dangers arising from the product. A product must not be made available without disclosure of those dangers that the application of reasonable foresight would reveal.[12]

> "Industry practice may provide some information on what reasonable and prudent manufacturers will do; but industry practice alone does not establish what is reasonable or prudent or safe. Even if an entire industry disregards certain precautions or improvements in technology, that does not make failure to

---

[10] Fifth Circuit Pattern Jury Instructions Civil § 15.14.

[11] *See American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 432 (Tex.1997) (quoting *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 789 (Tex.1967))

[12] *Borel v Fibreboard Paper Products Corporation*, 493 F.2d 1076, 1089-90 (5th Cir. 1973).

incorporate precautions or improvements in technology reasonable or prudent or safe. Sometimes an entire industry can be wrong."[13]

Plaintiffs contend that the Toyota failed to design and incorporate widely available, safer and feasible, alternative designs into the Toyota 4Runner's fuel system, fire prevention and suppression systems, seat restraints, air bag systems, rear occupant compartment and structural integrity of the Toyota 4Runner that would have prevented or significantly reduced the injuries and deaths to the Greene Family.

A "design defect" is a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. In order for a design defect to exist, there must have been a safer alternative design.

"Safer Alternative Design" means a product design other than the one actually used that in reasonable probability:

(1)     would have prevented or significantly reduced the risk of the injury or death without substantially impairing the utility of the Toyota 4Runner; and

(2)     was economically and technologically feasible at the time the product left the possession of Toyota by the application of existing or reasonably achievable scientific knowledge.

"Producing Cause" means an efficient or contributing cause that, in a natural sequence, produces the occurrence or injury.  There may be more than one producing cause.


Answer "**YES**" or "**NO**".

Was there a design defect in the 2010 4Runner at the time it left the possession of Toyota that was a producing cause of the injury to or death of any of the following:

| | | |
|---|---|---|
| Wyndell Greene, Sr. | Yes _____ | No_____ |
| Lakeysha Greene | Yes _____ | No_____ |
| Wesleigh Greene | Yes _____ | No_____ |
| Wyndell "Kyle" Greene, II | Yes _____ | No_____ |

---

[13] 3*The T.J. Hooper*, 60 F.2d 737, 740 (2nd Cir. 1932); *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 434 (Tex.1997).

B.      Plaintiffs object to the language regarding a presumption under TEX.CIV.PRAC. &
        REM.CODE § 82.008.

Defendant argues that under the third prong of the section 82.008(a) analysis, Toyota is entitled
to a presumption of non-liability if its product met a Federal Motor Vehicle Safety Standard.
However, a presumption applies only if that standard "governed the product risk that allegedly
caused the harm." TEX.CIV.PRAC. & REM.CODE § 82.008 (a).   Thus, the presumption is
inapplicable since Toyota cannot show that the design of the 2010 4Runner complied with a
federal safety standard governing the product risk that allegedly caused the harm in this case.
*Kia Motors Corp. v. Ruiz*, 348 S.W.3d 465, 485–87 (Tex.App.-Dallas 2011) (rev'd on other
grounds, No. 11–0709, 2014 WL 1258169 (Tex. Mar.28, 2014))

C.      Plaintiffs also object to providing a presumption under TEX.CIV.PRAC. & REM.CODE §
        82.008 on the grounds that the presumption disappears with evidence and is improper in
        the final jury charge.

As the Court, is aware, the Section 82.008 presumption shifts only the burden of production of
evidence, which "disappears" from the case once evidence is introduced sufficient to support a
finding contrary to the presumed fact, and which do not shift the burden of persuasion. *See, e.g*.,
*General Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex.1993).  In this case, there is evidence
to support a finding that the FMVSS standards that Defendant claims were applicable "were
inadequate to protect the public from unreasonable risks of injury or damage" in respect to the
product risk here at issue.  In addition, there is evidence of misrepresentations to, and/or
withholding by defendant of relevant information from, the federal agency in connection with the
relevant safety standards or regulations at issue, as addressed in § 82.008(b)(2). Thus, the
presumption would be an improper subject of jury instruction.

D.      If the Court believes that there are regulations that cover the product risk that caused the
        harm to Plaintiffs, that the § 82.008 presumption does not disappear with the evidence,
        and that the presumption should be provided to the jury, then Plaintiffs would request that
        the Court submit the following instruction and questions to the jury:

        1.      Federal Motor Carrier Safety Administration Regulation § 571.208 provides as
                follows [**Read  § 571.208**]

                a.      Do you find by a preponderance of the evidence that the Toyota 4Runner
                        complied with § 571.208?

                        Answer "**YES**" or "**NO**".


                        Answer: _____

                        If you answered yes to Question _____, then answer Question _____ below.
                        Otherwise, do not answer Question No. _____.

      b.      Do you find by a preponderance of the evidence that § 571.208 was inadequate to protect the public from unreasonable risk of injury or damage?

            Answer "**YES**" or "**NO**".

            Answer: _____

2.      Federal Motor Carrier Safety Administration Regulation § 571.209 provides as follows [**Read  § 571.209**]

      a.      Do you find by a preponderance of the evidence that the Toyota 4Runner complied with § 571.209?

            Answer "**YES**" or "**NO**".

            Answer: _____

            If you answered yes to Question ____, then answer Question ____ below. Otherwise, do not answer Question No. _____.

      b.      Do you find by a preponderance of the evidence that § 571.209 was inadequate to protect the public from unreasonable risk of injury or damage?

            Answer "**YES**" or "**NO**".

            Answer: _____

3.      Federal Motor Carrier Safety Administration Regulation § 571.210 provides as follows [**Read  § 571.210**]

      a.      Do you find by a preponderance of the evidence that the Toyota 4Runner complied with § 571.210?

            Answer "**YES**" or "**NO**".

            Answer: _____

            If you answered yes to Question ____, then answer Question ____ below. Otherwise, do not answer Question No. _____.

b.      Do you find by a preponderance of the evidence that § 571.210 was inadequate to protect the public from unreasonable risk of injury or damage?

Answer "**YES**" or "**NO**".

Answer: _____

4.      Federal Motor Carrier Safety Administration Regulation § 571.214 provides as follows [**Read  § 571.214**]

a.      Do you find by a preponderance of the evidence that the Toyota 4Runner complied with § 571.214?

Answer "**YES**" or "**NO**".

Answer: _____

If you answered yes to Question _____, then answer Question _____ below. Otherwise, do not answer Question No. _____.

b.      Do you find by a preponderance of the evidence that § 571.214 was inadequate to protect the public from unreasonable risk of injury or damage?

Answer "**YES**" or "**NO**".

Answer: _____

5.      Federal Motor Carrier Safety Administration Regulation § 571.301 provides as follows [**Read  § 571.301**]

a.      Do you find by a preponderance of the evidence that the Toyota 4Runner complied with § 571.301?

Answer "**YES**" or "**NO**".

Answer: _____

If you answered yes to Question _____, then answer Question _____ below. Otherwise, do not answer Question No. _____.

  b.  Do you find by a preponderance of the evidence that § 571.301 was inadequate to protect the public from unreasonable risk of injury or damage?

    Answer "**YES**" or "**NO**".


    Answer: _____

 6. Federal Motor Carrier Safety Administration Regulation § 571.302 provides as follows [**Read  § 571.302**]

  a.  Do you find by a preponderance of the evidence that the Toyota 4Runner complied with § 571.302?

    Answer "**YES**" or "**NO**".


    Answer: _____

    If you answered yes to Question _____, then answer Question _____ below. Otherwise, do not answer Question No. _____.

  b.  Do you find by a preponderance of the evidence that § 571.302 was inadequate to protect the public from unreasonable risk of injury or damage?

    Answer "**YES**" or "**NO**".


    Answer: _____


## <u>Question 2</u>

A. See objections to Question 1. Plaintiffs offer the submission offered above in Question 1's response.

B. Plaintiffs also object to this question on the grounds that it attempts to limit the defect to a "fuel system" in the 2010 4Runner, instead of submitting the question in terms of the product (i.e. the 2010 4Runner).

C. Plaintiffs also object to this question on the grounds that it does not contain questions regarding the deaths of Wesleigh Greene and Wyndell Kyle Greene, II.  If provided, Plaintiffs offer questions regarding Wesleigh Greene and Wyndell Kyle Greene, II.

## Question 3

This question is inapplicable since Volvo is no longer a party to this action.

## Question 4

This question is inapplicable since Volvo is no longer a party to this action.

## Question 5

A.     Plaintiffs object to the submission of this separate question on design defect apart from producing cause.

Plaintiffs ask that the Court provide the following question:

"The duty to design a safe product is an obligation imposed by law.[14]   A manufacturer is held to the knowledge of an expert. This means that a manufacturer must keep abreast of scientific knowledge, discoveries and advances; and thus, a manufacturer is presumed to understand the significance of scientific knowledge, discovery and advances. The extent of research and experiment with regard to a product must be commensurate with the dangers arising from the product. A product must not be made available without disclosure of those dangers that the application of reasonable foresight would reveal.[15]

"Industry practice may provide some information on what reasonable and prudent manufacturers will do; but industry practice alone does not establish what is reasonable or prudent or safe. Even if an entire industry disregards certain precautions or improvements in technology, that does not make failure to incorporate precautions or improvements in technology reasonable or prudent or safe. Sometimes an entire industry can be wrong."[16]

Plaintiffs contend that Strick, the manufacturer of the trailer that the 4Runner collided with, failed to provide a safely designed and manufactured trailer, complete with adequate underride guards to prevent vehicle underride.  Plaintiffs contend that if Strick had utilized a safer design it would have prevented or significantly reduced the injuries and deaths to the Greene Family.

A "design defect" is a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the

---

[14] *See American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 432 (Tex.1997) (quoting *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 789 (Tex.1967))

[15] *Borel v Fibreboard Paper Products Corporation*, 493 F.2d 1076, 1089-90 (5th Cir. 1973).

[16] 3*The T.J. Hooper*, 60 F.2d 737, 740 (2nd Cir. 1932); *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 434 (Tex.1997).

risk involved in its use. In order for a design defect to exist, there must have been a safer alternative design.

"Safer Alternative Design" means a product design other than the one actually used that in reasonable probability:

(1)      would have prevented or significantly reduced the risk of the injury or death without substantially impairing the utility of the Strick trailer; and

(2)      was economically and technologically feasible at the time the product left the possession of Strick by the application of existing or reasonably achievable scientific knowledge.

"Producing Cause" means an efficient or contributing cause that, in a natural sequence, produces the occurrence or injury.  There may be more than one producing cause.


Answer "**YES**" or "**NO**".

Was there a design defect in the Strick Trailer at the time it left the possession of Strick that was a producing cause of the injury to or death of any of the following:

| | | |
|---|---|---|
| Wyndell Greene, Sr. | Yes _____ | No_____ |
| Lakeysha Greene | Yes _____ | No_____ |
| Wesleigh Greene | Yes _____ | No_____ |
| Wyndell "Kyle" Greene, II | Yes _____ | No_____ |

B.      Plaintiffs object to the language regarding a presumption under Tex.Civ.Prac. & Rem.Code § 82.008.

Defendant argues that under the third prong of the section 82.008(a) analysis, Strick is entitled to a presumption of non-liability if its product met a Federal Motor Vehicle Safety Standard. However, a presumption applies only if that standard "governed the product risk that allegedly caused the harm." Tex.Civ.Prac. & Rem.Code § 82.008 (a).  Thus, the presumption is inapplicable since Strick cannot show that the design of the Strick Trailer complied with a federal safety standard governing the product risk that allegedly caused the harm in this case. *Kia Motors Corp. v. Ruiz*, 348 S.W.3d 465, 485–87 (Tex.App.-Dallas 2011) (rev'd on other grounds, No. 11–0709, 2014 WL 1258169 (Tex. Mar.28, 2014))

C.      Plaintiffs also object to providing a presumption under Tex.Civ.Prac. & Rem.Code § 82.008 on the grounds that the presumption disappears with evidence and is improper in the final jury charge.

As the Court, is aware, the Section 82.008 presumption shifts only the burden of production of evidence, which "disappears" from the case once evidence is introduced sufficient to support a finding contrary to the presumed fact, and which do not shift the burden of persuasion. *See, e.g.*, *General Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex.1993).  In this case, there is evidence to support a finding that the FMVSS standards that Defendant claims were applicable "were inadequate to protect the public from unreasonable risks of injury or damage" in respect to the product risk here at issue. In addition, there is evidence of misrepresentations to, and/or withholding by defendant of relevant information from, the federal agency in connection with the relevant safety standards or regulations at issue, as addressed in § 82.008(b)(2). Thus, the presumption would be an improper subject of jury instruction.

D.  If the Court believes that there are regulations that cover the product risk that caused the harm to Plaintiffs, that the § 82.008 presumption does not disappear with the evidence, and that the presumption should be provided to the jury, then Plaintiffs would request that the Court submit the following instruction and questions to the jury:

1.  Federal Motor Carrier Safety Administration Regulation § 571.223 provides as follows [**Read  § 571.223**]

   a.  Do you find by a preponderance of the evidence that the Toyota 4Runner complied with § 571.223?

       Answer "**YES**" or "**NO**".

       Answer: _____

       If you answered yes to Question _____, then answer Question _____ below. Otherwise, do not answer Question No. _____.

   b.  Do you find by a preponderance of the evidence that § 571.223 was inadequate to protect the public from unreasonable risk of injury or damage?

       Answer "**YES**" or "**NO**".

       Answer: _____

2.  Federal Motor Carrier Safety Administration Regulation § 571.224 provides as follows [**Read  § 571.224**]

   a.  Do you find by a preponderance of the evidence that the Toyota 4Runner complied with § 571.224?

       Answer "**YES**" or "**NO**".

       Answer: _____

If you answered yes to Question _____, then answer Question _____ below. Otherwise, do not answer Question No. _____.

b.      Do you find by a preponderance of the evidence that § 571.224 was inadequate to protect the public from unreasonable risk of injury or damage?

Answer "**YES**" or "**NO**".

Answer: _____

## Question 6

A.      See objections to Question 5. Plaintiffs offer the submission offered in response to Question 5 above.

B.      Plaintiffs also object to this question on the grounds that it does not contain questions regarding the deaths of Wesleigh Greene and Wyndell Kyle Greene, II.  If provided, Plaintiffs offer questions regarding Wesleigh Greene and Wyndell Kyle Greene, II.

## Question 7

A.      Plaintiffs object to the submission of this separate question on marketing defect apart from the producing cause question.

Plaintiffs ask that the Court provide the following question:

Answer "**YES**" or "**NO**"

Was there a marketing defect in the Strick Trailer at the time it left the possession of Strick that was a producing cause of the injury to or death of any of the following:

| | | |
|---|---|---|
| Wyndell Greene, Sr. | Yes _____ | No_____ |
| Lakeysha Greene | Yes _____ | No_____ |
| Wesleigh Greene | Yes _____ | No_____ |
| Wyndell "Kyle" Greene, II | Yes _____ | No_____ |

B.      Plaintiffs object to the language regarding a presumption under TEX.CIV.PRAC. & REM.CODE § 82.008.

Defendant argues that under the third prong of the section 82.008(a) analysis, Strick is entitled to a presumption of non-liability if its product met a Federal Motor Vehicle Safety Standard. However, a presumption applies only if that standard "governed the product risk that allegedly caused the harm." TEX.CIV.PRAC. & REM.CODE § 82.008 (a).   Thus, the presumption is

inapplicable since Strick cannot show that the design of the Strick Trailer complied with a federal safety standard governing the product risk that allegedly caused the harm in this case. *Kia Motors Corp. v. Ruiz*, 348 S.W.3d 465, 485–87 (Tex.App.-Dallas 2011) (rev'd on other grounds, No. 11–0709, 2014 WL 1258169 (Tex. Mar.28, 2014))

C.      Plaintiffs also object to providing a presumption under TEX.CIV.PRAC. & REM.CODE § 82.008 on the grounds that the presumption disappears with evidence and is improper in the final jury charge.

As the Court, is aware, the Section 82.008 presumption shifts only the burden of production of evidence, which "disappears" from the case once evidence is introduced sufficient to support a finding contrary to the presumed fact, and which do not shift the burden of persuasion. *See, e.g.*, *General Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex.1993).  In this case, there is evidence to support a finding that the FMVSS standards that Defendant claims were applicable "were inadequate to protect the public from unreasonable risks of injury or damage" in respect to the product risk here at issue. In addition, there is evidence of misrepresentations to, and/or withholding by defendant of relevant information from, the federal agency in connection with the relevant safety standards or regulations at issue, as addressed in § 82.008(b)(2). Thus, the presumption would be an improper subject of jury instruction.

D.      If the Court believes that there are regulations that cover the product risk that caused the harm to Plaintiffs, that the § 82.008 presumption does not disappear with the evidence, and that the presumption should be provided to the jury, then Plaintiffs would request that the Court submit the following instruction and questions to the jury:

1.      Federal Motor Carrier Safety Administration Regulation § 571.223 provides as follows [**Read  § 571.223**]

a.      Do you find by a preponderance of the evidence that the Toyota 4Runner complied with § 571.223?

Answer "**YES**" or "**NO**".

Answer: _____

If you answered yes to Question _____, then answer Question _____ below. Otherwise, do not answer Question No. _____.

b.      Do you find by a preponderance of the evidence that § 571.223 was inadequate to protect the public from unreasonable risk of injury or damage?

Answer "**YES**" or "**NO**".

Answer: _____

2.     Federal Motor Carrier Safety Administration Regulation § 571.224 provides as follows [**Read  § 571.224**]

    a.     Do you find by a preponderance of the evidence that the Toyota 4Runner complied with § 571.224?

       Answer "**YES**" or "**NO**".

       Answer: _____

       If you answered yes to Question ____, then answer Question ____ below. Otherwise, do not answer Question No. _____.

    b.     Do you find by a preponderance of the evidence that § 571.224 was inadequate to protect the public from unreasonable risk of injury or damage?

       Answer "**YES**" or "**NO**".

       Answer: _____

## Question 8

A.     See objections to Question 7. Plaintiffs offer the submission above in response to Question 7.

B.     Plaintiffs also object to this question on the grounds that it does not contain questions regarding the deaths of Wesleigh Greene and Wyndell Kyle Greene, II.  If provide, Plaintiffs offer questions regarding Wesleigh Greene and Wyndell Kyle Greene, II.

## Question 9

A.     Plaintiffs object to this question to the extent it does not contain a question regarding Dolphin's strict liability as a non-manufacturing lessor.

Dolphin provided Dolphin's Strick Trailer to Daniel Sprinkle to operate.  Federal Motor Carrier Safety Regulation, 49 C.F.R. §393.86 (1998), provides specific standards for the width, height, and rear surface of the rear impact guards on trailers. The regulations also provides that each rear impact guard used to satisfy the requirements of paragraph of this section must be permanently marked or labeled as required by FMVSS No. 223 (49 C.F.R. 571.223, S5.3). Additionally, 49 C.F.R. §571.223 provides the minimum guidelines for the strength and energy absorptions features that were required on the Trailer involved in the collision.  *Id*.  These safety regulations are applicable to common carriers, contract carriers, and private carriers. 49 C.F.R. §390.33.  Further, the regulations provide that "every motor carrier, and its officers, agents, drivers, representatives, and employees directly concerned with the installation and maintenance of equipment and accessories" must comply with the safety requirements and specifications

outlined therein. Id. §393.1.  Section 1 of the Third Restatement of Torts states: "[o]ne engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY, § 1 (1998) (emphasis added). Section 20(b) provides as follows:

> One otherwise distributes a product when, in a commercial transaction other than a sale, one provides the product to another either for use or consumption or as a preliminary step leading to ultimate use or consumption.  Commercial non-sale product distributors include, but are not limited to, **lessors**, bailors, and those who provide products to others as a means of promoting either the use or consumption of such products or some other commercial activity.

Therefore, in addition to having a duty under the regulations discussed above to maintain the underride guard in accordance with the federal regulations, Dolphin is liable in this matter as a lessor/distributor of the defective trailer.  *McKisson v. Sales Affiliates*, 416 S.W.2d 787, 789 (Tex.1967), adopting RESTATEMENT (SECOND) OF TORTS §402A; Rourke v. Garza, 530 S.W.2d 794, 800 (Tex.1975).  As lessor/distributor of the defective trailer to Sprinkle, the law provides that Dolphin can be held responsible for injuries caused to others.  Moreover, Dolphin, Fayard and Sprinkle were involved with the lack of inspecting and/or maintaining the defective component on the trailer.  Accordingly, Dolphin is liable under a strict liability theory.  *See Fresh Coat, Inc. v. K–2, Inc.*, 318 S.W.3d 893, 895 (Tex.2010). *See also, New Tex. Auto Auction Servs. v. Gomez De Hernandez*, 249 S.W.3d 400, 403 (Tex.2008); Rourke v. Garza, 530 S.W.2d 794, 800 (Tex.1975), abrogated on other grounds by, *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 45–46 (Tex.2007).  Moreover, as the company that provided the trailer to Sprinkle to drive on the highways, Dolphin has a common law duty to exercise reasonable care to discover its dangerous condition or character before allowing the trailer to be used on the roadways.  *Roosth & Genecov Production Co. v. White*, 262 S.W.2d 99 (1953); RESTATEMENT (SECOND) OF TORTS §392.

Thus, Plaintiffs submit the following question as to Dolphin's strict liability:

**Strict Liability - Dolphin**

> Plaintiffs contend that Dolphin, the owner and lessor of the trailer that the 4Runner collided with, failed to provide a safely designed and manufactured trailer, complete with adequate underride guards to prevent vehicle underride. Plaintiffs contend that if the trailer had utilized a safer design it would have prevented or significantly reduced the injuries and deaths to the Greene Family.

> A "design defect" is a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. In order for a design defect to exist, there must have been a safer alternative design.

> "Safer Alternative Design" means a product design other than the one actually used that in reasonable probability:

17

(3)     would have prevented or significantly reduced the risk of the injury or death without substantially impairing the utility of the Strick trailer; and

(4)     was economically and technologically feasible at the time the product left the possession of Strick by the application of existing or reasonably achievable scientific knowledge.

"Producing Cause" means an efficient or contributing cause that, in a natural sequence, produces the occurrence or injury.   There may be more than one producing cause.

Answer "**YES**" or "**NO**".

Was there a design defect in the Strick Trailer at the time it left Dolphin's possession that was a producing cause of the injury to or death of any of the following:

Wyndell Greene, Sr.                     Yes _____               No_____

Lakeysha Greene                          Yes _____               No_____

Wesleigh Greene                          Yes _____               No_____

Wyndell "Kyle" Greene, II            Yes _____               No_____

B.      Plaintiffs also object to this question on the grounds the question does not provide a complete negligence instruction and provide the following submission:

"Did the negligence, if any, of Dolphin, proximately cause the injury to or death of any of the following:

Wyndell Greene, Sr.                     Yes _____               No_____

Lakeysha Greene                          Yes _____               No_____

Wesleigh Greene                          Yes _____               No_____

Wyndell "Kyle" Greene, II            Yes _____               No_____

"Negligence" means failure to use ordinary care; that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a commercial trailer owner or trucking company under the same or similar circumstances.

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred.

In order to be a proximate cause, the act or omission complained of must be such that a commercial trailer owner or trucking company using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom.  There may be more than one proximate cause of an event.

## Question 10

A.      See objections to Question 9. Plaintiffs offer the submission offered in response to Question 9 above.

B.      Plaintiffs also object to this question on the grounds that it does not contain questions regarding the deaths of Wesleigh Greene and Wyndell Kyle Greene, II.  If provided, Plaintiffs offer questions regarding Wesleigh Greene and Wyndell Kyle Greene, II.

## Question 11

Plaintiffs also object to this question on the grounds the question does not provide a complete negligence instruction and provide the following submission:

"Did the negligence, if any, of Fayard or Daniel Sprinkle, its driver, proximately cause the injury to or death of any of the following:

| | | |
|---|---|---|
| Wyndell Greene, Sr. | Yes _____ | No_____ |
| Lakeysha Greene | Yes _____ | No_____ |
| Wesleigh Greene | Yes _____ | No_____ |
| Wyndell "Kyle" Greene, II | Yes _____ | No_____ |

"Negligence" means failure to use ordinary care; that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a commercial trailer owner or trucking company employee of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a commercial trailer owner or trucking company under the same or similar circumstances.

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a commercial trailer owner or trucking company using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom.  There may be more than one proximate cause of an event.

## Question 12

A.      See objections to Question 11. Plaintiffs offer the submission offered in response to Question 11 above.

B.      Plaintiffs also object to this question on the grounds that it does not contain questions regarding the deaths of Wesleigh Greene and Wyndell Kyle Greene, II.  If provided, Plaintiffs offer questions regarding Wesleigh Greene and Wyndell Kyle Greene, II.

## Question 13

Plaintiffs object to this question on the grounds that Texas Civil Practice & Remedies Code § 33.003 does not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission.  See also, *Block v. Mora*, 314 S.W.3d 440, 450 (Tex.App.-Amarillo 2009, pet. dism'd by agr.).

## Question 14

Plaintiffs object to this question on the grounds that Texas Civil Practice & Remedies Code § 33.003 does not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission.  See also, *Block v. Mora*, 314 S.W.3d 440, 450 (Tex.App.-Amarillo 2009, pet. dism'd by agr.).

## Question 15

A.      Plaintiffs object to this question on the grounds that Texas Civil Practice & Remedies Code § 33.003 does not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission.  See also, *Block v. Mora*, 314 S.W.3d 440, 450 (Tex.App.-Amarillo 2009, pet. dism'd by agr.).  Thus, the names Forest Products/Charles Moody and Volvo[17] should not be a part of this question.

B.      Plaintiffs also object on the grounds that the question improperly submits the language "or product" in the comparative negligence question.

## Question 16

A.      Plaintiffs object to this question on the grounds that Texas Civil Practice & Remedies Code § 33.003 does not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission.  See also, *Block v. Mora*, 314 S.W.3d 440, 450 (Tex.App.-Amarillo 2009, pet. dism'd by agr.).  Thus, the names Forest Products/Charles Moody and Volvo[18] should not be a part of this question.

---

[17] *The Kroger Co. v. Betancourt*, 996 S.W.2d 353 (Tex.App.—Houston [14 th Dist.] 1999, rev. denied) (evidence that merely raised inference of alleged defect in product manufactured by settling defendant was not sufficient to warrant submission of issue of comparative responsibility to jury in negligence and gross negligence action).

[18] *The Kroger Co. v. Betancourt*, 996 S.W.2d 353 (Tex.App.—Houston [14 th Dist.] 1999, rev. denied) (evidence that merely raised inference of alleged defect in product manufactured by settling defendant was not sufficient to warrant submission of issue of comparative responsibility to jury in negligence and gross negligence action).

B.      Plaintiffs also object on the grounds that the question improperly submits the language
        "or product" in the comparative negligence question.

## Question 17

Plaintiffs object to the submission of the language in this question because it is an incorrect and/or incorrect submission of the law in Texas pertaining to recoverable damages. In correction Plaintiffs submit the following:

(A)     What sum of money, if paid now in cash, would fairly and reasonably compensate for the disfigurement of Wyndell Greene, Sr. resulting from the May 28, 2010, crash?[19]

        Answer in dollars and cents for damages.

        Answer (A): $_____


(B)     What sum of money, if paid now in cash, would fairly and reasonably compensate for the physical impairment of Wyndell Greene, Sr. resulting from the May 28, 2010, crash?[20]

        Answer in dollars and cents for damages.

        Answer (B): $_____


(C)     What sum of money, if paid now in cash, would fairly and reasonably compensate for the pain, suffering and mental anguish Wyndell Greene, Sr. experienced as a result of the May 28, 2010, crash?[21]

        "Pain and mental anguish" means the conscious physical pain and emotional pain, torment, and suffering experienced by Wyndell Greene, Sr. before his death as a result of the occurrence in question.

        Answer in dollars and cents for damages.

        Answer (C): $_____

---

[19] *Id*. § 15.3.
[20] *Id*. § 15.3
[21] State Bar of Tex., Texas Pattern Jury Charges § 17.3 (2012 ed.).

(D)     What sum of money, if paid now in cash, would fairly and reasonably compensate for the medical expenses of Wyndell Greene, Sr.?[22]

"Medical expenses" means the reasonable expense that has been either paid or incurred for necessary medical and hospital care received by Wyndell Greene, Sr. for the treatment of injuries sustained by him as a result of the occurrence in question.

Answer in dollars and cents for damages.

Answer (D): $_____

(E)     What sum of money, if paid now in cash, would fairly and reasonably compensate for the past and future lost earnings of Wyndell Greene, Sr. as a result of the occurrence in question? [23]

Answer in dollars and cents for damages.

Answer (C): $_____

(F)     What sum of money, if paid now in cash, would fairly and reasonably compensate for the funeral and burial expenses of Wyndell Greene, Sr.?[24]

"Funeral and burial expenses" mean the reasonable amount of expenses for funeral and burial for Wyndell Greene, Sr. reasonably suitable to his station in life.

Answer in dollars and cents for damages.

Answer (C): $_____

## **Question 18**

Plaintiffs object to the submission of the language in this question because it is an incorrect and/or incorrect submission of the law in Texas pertaining to recoverable damages.  In correction Plaintiffs submit the following:

**WRONGFUL DEATH— OLLIE GREENE**

In awarding damages, you will consider the elements of damages listed below. Consider each element separately. Do not include interest on any amount of damages you find.

---

[22] *Id.*
[23] *Id § 15.3*; *Hendricks v. Ford Motor Co*., 2012 WL 7956426 *5 (E.D.Tex. Aug 24, 2012).
[24] *Id.* § 17.3.

In determining damages, you may consider the relationship between *Wyndell Greene, Sr.* and *his* mother, their living arrangements, any extended absences from one another, the harmony of their family relations, and their common interests and activities.

1.      Pecuniary loss sustained in the past by Ollie Greene

"Pecuniary loss" means the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that *Ollie Greene*, in reasonable probability, would have received from *Wyndell Greene, Sr.* had *he* lived.

Answer in dollars and cents for damages.

$_____

2.      Pecuniary loss that, in reasonable probability, will be sustained in the future by Ollie Greene.

Answer in dollars and cents for damages.

$_____

3.      Loss of companionship and society sustained in the past by Ollie Greene.

"Loss of companionship and society" means the loss of the positive benefits flowing from the love, comfort, companionship, and society that *Ollie Greene*, in reasonable probability, would have received from *Wyndell Greene, Sr.* had *he* lived.

Answer in dollars and cents for damages.

$_____

4.      Loss of companionship and society that, in reasonable probability, will be sustained in the future by Ollie Greene.

Answer in dollars and cents for damages.

$_____

5.      Mental anguish sustained in the past by Ollie Greene.

"Mental anguish" means the emotional pain, torment, and suffering experienced by *Ollie*

23

*Greene* because of the death of *Wyndell Greene, Sr.*

Answer in dollars and cents for damages.

$_____

6.      Mental anguish that, in reasonable probability, will be sustained in the future by Ollie Greene.

Answer in dollars and cents for damages.

$_____

## Question 19

Plaintiffs object to the submission of the language in this question because it is an incorrect and/or incorrect submission of the law in Texas pertaining to recoverable damages.  In correction Plaintiffs submit the following:

## WRONGFUL DEATH— MARILYN HARDEMAN

In awarding damages, you will consider the elements of damages listed below. Consider each element separately. Do not include interest on any amount of damages you find.

In determining damages, you may consider the relationship between *Lakeysha Greene* and *his* mother, their living arrangements, any extended absences from one another, the harmony of their family relations, and their common interests and activities.

1.      Pecuniary loss sustained in the past by Marilyn Hardeman

"Pecuniary loss" means the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that *Marilyn Hardeman*, in reasonable probability, would have received from *Lakeysha Greene* had *she* lived.

Answer in dollars and cents for damages.

$_____

2.      Pecuniary loss that, in reasonable probability, will be sustained in the future by Marilyn Hardeman.

Answer in dollars and cents for damages.

$_____

      3.     Loss of companionship and society sustained in the past by Marilyn Hardeman.

"Loss of companionship and society" means the loss of the positive benefits flowing from the love, comfort, companionship, and society that *Marilyn Hardeman*, in reasonable probability, would have received from *Lakeysha Greene* had s*he* lived.

Answer in dollars and cents for damages.

$_____

      4.     Loss of companionship and society that, in reasonable probability, will be sustained in the future by Marilyn Hardeman.

Answer in dollars and cents for damages.

$_____

      5.     Mental anguish sustained in the past by Marilyn Hardeman.

"Mental anguish" means the emotional pain, torment, and suffering experienced by *Marilyn Hardeman* because of the death of *Lakeysha Greene.*

Answer in dollars and cents for damages.

$_____

      6.     Mental anguish that, in reasonable probability, will be sustained in the future by Marilyn Hardeman.

Answer in dollars and cents for damages.

$_____

## **Question 20**

A.    Plaintiffs object on the ground that this is a partial instruction based on Fifth Circuit Pattern Jury Instruction, which is improperly placed at this point in the charge.  This negligence question should follow the strict liability claim on this same defendant.

25

B.      Plaintiffs also object to this question on the grounds that it attempts to limit the negligence to a "fuel system" in the 2010 4Runner, instead of submitting the question in terms of the product (i.e. "the 2010 4Runner").

C.      In response, Plaintiffs submit the following corrected question:

Did Toyota's negligence, if any, proximately cause the injury to or death of any of the following:

| | | |
|---|---|---|
| Wyndell Greene, Sr. | Yes _____ | No_____ |
| Lakeysha Greene | Yes _____ | No_____ |
| Wesleigh Greene | Yes _____ | No_____ |
| Wyndell "Kyle" Greene, II | Yes _____ | No_____ |

"Negligence" means failure to use ordinary care; that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person (here an automobile manufacturer) of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person (here an automobile manufacturer) of ordinary prudence under the same or similar circumstances.

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person (here an automobile manufacturer) using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

## Question 21

A.      See objections to Question 20. Plaintiffs offer the submission offered above in Question 20's response.

B.      Plaintiffs also object to this question on the grounds that defendant attempts to limit the negligence to a "fuel system" in the 2010 4Runner, instead of submitting the question in terms of the product (i.e. the 2010 4Runner).

C.      Plaintiffs also object to this question on the grounds that it does not contain questions regarding the deaths of Wesleigh Greene and Wyndell Kyle Greene, II.  If provided, Plaintiffs offer questions regarding Wesleigh Greene and Wyndell Kyle Greene, II.

## Question 22

This question is inapplicable since Volvo is no longer a party to this action.

## Question 23

This question is inapplicable since Volvo is no longer a party to this action.

## Question 24

A.  Plaintiffs object on the ground that this is a partial instruction based on Fifth Circuit Pattern Jury Instruction, which is improperly placed at this point in the charge.  This negligence question should follow the strict liability claim on this same defendant.

B.  In response, Plaintiffs submit the following corrected question:

Did Strick's negligence, if any, proximately cause the injury to or death of any of the following:

Wyndell Greene, Sr.              Yes _____              No_____

Lakeysha Greene                  Yes _____              No_____

Wesleigh Greene                  Yes _____              No_____

Wyndell "Kyle" Greene, II        Yes _____              No_____

"Negligence" means failure to use ordinary care; that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person (here an automobile manufacturer) of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person (here an automobile manufacturer) of ordinary prudence under the same or similar circumstances.

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person (here an automobile manufacturer) using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

## Question 25

A.  See objections to Question 24. Plaintiffs offer the submission offered above in Question 24's response.

B.  Plaintiffs also object to this question on the grounds that it does not contain questions regarding the deaths of Wesleigh Greene and Wyndell Kyle Greene, II.  If provided, Plaintiffs offer questions regarding Wesleigh Greene and Wyndell Kyle Greene, II.

## Question 26

Plaintiffs object to the submission of the language in this question because it is an incorrect and/or incorrect submission of the law in Texas pertaining to recoverable damages.  In correction Plaintiffs submit the following:

> If you decide that Plaintiffs have proven their claim against Toyota for negligence, you must also decide whether to award exemplary or punitive damages.  In assessing exemplary damages under gross negligence you should take into account whether Toyota committed an act or omission:

> (a)    which when viewed objectively from the standpoint of Toyota at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

> (b)    of which Toyota had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

> In assessing the amount of punitive damages to award, you should consider: (1) the nature of the wrong, (2) the character of the offending conduct, (3) the degree of culpability of the person against whom the damages were awarded, (4) the relative situation and sensibilities of the parties, (5) the extent to which the conduct offends a public sense of justice and propriety, and (6) the net worth of the Toyota.[25]

Answer "**YES**" or "**NO**".


Answer: _____


If you answered YES, answer in dollars and cents for damages for the estate of Wyndell Greene.

$_____


## Question 27

This question is inapplicable since Volvo is no longer a party to this action

## Question 28

---

[25] Tex. Civ. Prac. & Rem. Code Ann. § 41.003(c); TPJC 115.37.

Plaintiffs object to the submission of the language in this question because it is an incorrect and/or incorrect submission of the law in Texas pertaining to recoverable damages.  In correction Plaintiffs submit the following:

> If you decide that Plaintiffs have proven their claim against Strick for negligence, you must also decide whether to award exemplary or punitive damages.  In assessing exemplary damages under gross negligence you should take into account whether Strick committed an act or omission:
>
> (a)    which when viewed objectively from the standpoint of Strick at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>
> (b)    of which Strick had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.
>
> In assessing the amount of punitive damages to award, you should consider: (1) the nature of the wrong, (2) the character of the offending conduct, (3) the degree of culpability of the person against whom the damages were awarded, (4) the relative situation and sensibilities of the parties, (5) the extent to which the conduct offends a public sense of justice and propriety, and (6) the net worth of the Strick.[26]

Answer "**YES**" or "**NO**".


Answer: _____


If you answered YES, answer in dollars and cents for damages for the estate of Wyndell Greene.

$_____


## Question 29

Plaintiffs object to the submission of the language in this question because it is an incorrect and/or incorrect submission of the law in Texas pertaining to recoverable damages.  In correction Plaintiffs submit the following:

> If you decide that Plaintiffs have proven their claim against Dolphin for negligence, you must also decide whether to award exemplary or punitive damages.  In assessing exemplary damages under gross negligence you should take into account whether Dolphin committed an act or omission:

---

[26] TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(c); TPJC 115.37.

(a) which when viewed objectively from the standpoint of Dolphin at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(b) of which Dolphin had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

In assessing the amount of punitive damages to award, you should consider: (1) the nature of the wrong, (2) the character of the offending conduct, (3) the degree of culpability of the person against whom the damages were awarded, (4) the relative situation and sensibilities of the parties, (5) the extent to which the conduct offends a public sense of justice and propriety, and (6) the net worth of the Dolphin.[27]

Answer "**YES**" or "**NO**".

Answer: _____

If you answered YES, answer in dollars and cents for damages for the estate of Wyndell Greene.

$_____

## Question 30

Plaintiffs object to the submission of the language in this question because it is an incorrect and/or incorrect submission of the law in Texas pertaining to recoverable damages.  In correction Plaintiffs submit the following:

If you decide that Plaintiffs have proven their claim against Fayard for negligence, you must also decide whether to award exemplary or punitive damages.  In assessing exemplary damages under gross negligence you should take into account whether Fayard committed an act or omission:

(a) which when viewed objectively from the standpoint of Fayard at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(b) of which Fayard had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

---

[27] TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(c); TPJC 115.37.

In assessing the amount of punitive damages to award, you should consider: (1) the nature of the wrong, (2) the character of the offending conduct, (3) the degree of culpability of the person against whom the damages were awarded, (4) the relative situation and sensibilities of the parties, (5) the extent to which the conduct offends a public sense of justice and propriety, and (6) the net worth of the Fayard.[28]

Answer "**YES**" or "**NO**".


Answer: _____


If you answered YES, answer in dollars and cents for damages for the estate of Wyndell Greene.

$_____


## **Question 31-35**

Plaintiffs object to these questions and have combined these questions into Questions 26-30.

---

[28] Tex. Civ. Prac. & Rem. Code Ann. § 41.003(c); TPJC 115.37.

**Additional Questions:**

Plaintiffs also submit the following additional questions for the jury verdict form:

<u>**QUESTION NO.**</u> __

**Misrepresentation - Toyota**

Was a misrepresentation the producing cause of the death of Wyndell or Lakeysha Greene?

Answer "**YES**" or "**NO**".

Answer: _____

"A misrepresentation occurs if you find that the defendant (i) represented that the Toyota 4Runner was of a particular standard, quality, or grade, or that it was of a particular style or model, when it was of another; (ii) knowingly made false or misleading statements of fact concerning the safety of the vehicle and the efforts directed towards safety; and (iii) failed to disclose information concerning the Toyota 4Runner that was known at the time of the transaction since such failure to disclose such information was intended to induce the Greene Family into a transaction into which the family would not have entered had the information been disclosed."[29]

You may also find a misrepresentation occurred if you find that defendant: (1) made a representation in the course of its business, or in a transaction in which it has a pecuniary interest; (2) supplied false information for the guidance of others in their business; (3) did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the defendant's representation.[30]

---

[29] See, e.g. Tex.Bus.&Com.Code § §§ 17.46(b)(7), (13), (24).
[30] *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991).

<u>QUESTION NO. __</u>
**Breach of Warranty - Toyota**

Was there a breach of warranty for the 2010 4Runner that was a producing cause of the accident on May 28, 2010 and the death of Wyndell or Lakeysha Greene?

Answer "**YES**" or "**NO**".

Answer: _____

"A breach of warranty cause of action under the DTPA occurs when the defendant makes false and misleading representations.[31] The Code recognizes that a breach of warranty may be based on express warranties and/or implied warranties."

"An implied warranty of merchantability and implied warranty of fitness for ordinary use under the Code are not based on any express representation. These warranties are implied in the contract of sale unless excluded or modified."[32]

Texas law provides that, in the sale of goods, a seller impliedly warrants that those goods are merchantable.[33] To be considered merchantable, goods must, among other criteria, "pass without objection in the trade under the contract description," be "fit for the ordinary purposes for which such goods are used," and "conform to the promises or affirmations of fact made on the container or label if any."[34]

"The warranty is breached if goods are "defective—that is, if they are 'unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy.'"[35]

---

[31] TEX. BUS. & COM. CODE ANN. § 17.41 et seq. (Vernon 1987).

[32] See TEX. BUS. & COM. CODE ANN. §§ 2.314, 2.315 (Tex. UCC) (Vernon 1987

[33] TEX. BUS. & COM. CODE § 2.314; *Gen. Motors Corp. v. Brewer*, 966 S.W.2d 56, 57 (Tex.1998).

[34] TEX. BUS. & COM. CODE § 2.314(b).

[35] *Brewer*, 966 S.W.2d at 57 (citing *Plas–Tex, Inc. v. U.S. Steel Corp*., 772 S.W.2d 442, 443–44 (Tex.1989)

## QUESTION NO. __

What sum of money, if paid now in cash, would fairly and reasonably compensate the

Estate of Wyndell Greene for the pain and mental anguish experienced by Kyle and/or Wesleigh

Greene as a result of the occurrence in question? Consider the following items:

"Pain and mental anguish" means the conscious physical pain and emotional pain, torment, and suffering experienced by Kyle and/or Wesleigh Greene before their death as a result of the occurrence in question.

Answer in dollars and cents for damages.

$_____

## **QUESTION NO. __**

What sum of money, if paid now in cash, would fairly and reasonably compensate the

Estate of Lakeysha Greene for the pain and mental anguish she experienced as a result of the

occurrence in question? Consider the following items:

"Pain and mental anguish" means the conscious physical pain and emotional pain, torment, and suffering experienced by Lakeysha Greene before her death as a result of the occurrence in question.

Answer in dollars and cents for damages.

$_____

Respectfully Submitted,


/s/ Aubrey "Nick" Pittman      /s/ Daryl K. Washington     
AUBREY "NICK" PITTMAN      DARYL K. WASHINGTON
State Bar No. 16049750       State Bar No. 24013714


**THE PITTMAN LAW FIRM, P.C.**    **LAW OFFICES OF DARYL K. WASHINGTON**
100 Crescent Court, Suite 700     325 N. St. Paul St., Suite 1975
Dallas, Texas 75201-2112      Dallas, Texas  75201
214-459-3454          214-880-4883
214-853-5912 – fax         469-718-0380 - fax
pittman@thepittmanlawfirm.com    dwashington@dwashlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2014, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.


  /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN