IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-207-N |
| | § | |
| TOYOTA MOTOR CORPORATION, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

# <u>ORDER</u>

This Order addresses Defendants Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., and Toyota Motor Engineering and Manufacturing North America, Inc.'s ("TEMA") (collectively, the "Toyota Defendants") motion for partial summary judgment ("Toyota MPSJ") [Doc. 179]; TEMA's motion for summary judgment ("TEMA MSJ") [256]; and the Toyota Defendants' motion for summary judgment ("Toyota MSJ") [253].[1] The Court grants the motions in part and denies them in part.

---

[1]This Order also addresses Plaintiffs' motion for sanctions against the Toyota Defendants for destroying and concealing evidence [269]. Plaintiffs fail to show that the Toyota Defendants acted in bad faith. *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005). ("The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'bad conduct.'" (citation omitted)). The Court therefore denies Plaintiffs' motion for sanctions. The Court may reconsider a spoliation instruction in the jury charge if it appears appropriate at the time of the trial.

ORDER – PAGE 1

## I. THE ACCIDENT

On May 28, 2010, Wyndell Greene, Sr., LaKeysha Greene, and their children Wyndell Greene II and Wesleigh Greene were traveling in the family's 2010 Toyota 4Runner (the "4Runner") on Interstate Highway 20 when traffic slowed.[2] A Volvo Group North America, LLC ("Volvo") semi-tractor trailer behind the Greenes applied its brakes but rear-ended the 4Runner. The collision caused the 4Runner to hit a 2006 Toyota Corolla in front of it. The 4Runner then slid into the rear of a trailer manufactured by Strick Trailers, LLC ("Strick"), owned by Dolphin Line, Inc. ("Dolphin Line"), and operated by John Fayard Moving & Warehouse LLC ("Fayard Moving").

As a result of the collision, the 4Runner caught fire. Wyndell Greene II was decapitated during the accident, and Wesleigh Greene died after being trapped in the car during the fire. LaKeysha Greene, who was wearing a seatbelt restraint, was thrown from the vehicle and died from the trauma. Wyndell Greene, Sr. survived the car accident but succumbed to burn and other injuries three months later.

Plaintiffs Ollie Greene (Wyndell Greene, Sr.'s parent), William Greene (representative of the estate of Wyndell Greene, Sr.), and Marilyn Burdette-Hardeman (LaKeysha Greene's parent) filed suit against the Defendants in February 2011. Their amended complaint asserts claims for wrongful death,[3] survival action, negligence, strict

---

[2]The Court draws these alleged facts from Plaintiffs' second amended complaint [113] and responses to the Toyota Defendants' motions for summary judgment.

[3]The Court previously granted summary judgment as to several, but not all, of the wrongful death claims. *See* Order, Dec. 19, 2012 [130].

liability, breach of warranty and misrepresentation against the Toyota Defendants.[4]  The Toyota Defendants now move for summary judgment on each of these claims, arguing that Plaintiffs have not presented evidence to support their allegations.  TEMA also moves separately for summary judgment on the basis that it had no involvement in the design, manufacture, assembly, marketing, advertisement, distribution, or sale of the 4Runner involved in the accident.

## II. STANDARD FOR SUMMARY JUDGMENT

A trial court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In making this determination, a court must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted).  When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to

---

[4] With the exception of TEMA, the Court does not address the liability of the specific Toyota entities as the parties do not do so in their briefs.

summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "conclusory allegations, speculation, and unsubstantiated assertions" will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Indeed, factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE COURT GRANTS TEMA'S MOTION IN PART AND DENIES IT IN PART

TEMA claims it did not design, manufacture, assemble, promote, advertise, distribute, or sell the 4Runner involved in the accident and asks for summary judgment on all claims. TEMA MSJ Br. 1–2 [257]. Though Plaintiffs cite statements in TEMA's disclosures in which TEMA states that it was involved in the research and development of certain Toyota vehicles, they provide no evidence showing that TEMA sold the 4Runner or made any

representations to Plaintiffs. Thus, TEMA is entitled to summary judgment on Plaintiffs' warranty and misrepresentation claims.

The Court denies TEMA's motion as to Plaintiffs' design defect and negligence claims, however. In its disclosures, TEMA states that it "had some limited involvement with durability testing of the vehicle." *See* Pls.' Resp. Toyota MSJ, App. 531 [320]. TEMA provides no affirmative evidence to contradict its earlier statement that it had some involvement in the vehicle's design. Thus, the extent of TEMA's involvement in testing the alleged defects in the vehicle, *see infra* Section V.A, is not clear. The Court finds that genuine issues of material fact preclude summary judgment on Plaintiffs' products liability[5] and negligence claims with respect to TEMA.

---

[5]Plaintiffs assert design, manufacturing, and marketing defect claims. *See* Am. Compl. ¶¶ 34–35. As discussed below, Plaintiffs fail to present evidence that the alleged defects arose during the manufacturing process. The Court therefore grants summary judgment on that claim to all of the Toyota Defendants. *See infra* Section V.B. However, the Court finds that Plaintiffs have raised issues of fact with respect to their design and marketing defect claims. *See infra* Section V.A, C. Even though TEMA did not itself market the vehicle, it may be held liable for failing to warn against known and foreseeable dangers of the product. *See General Motors Corp. v. Saenz*, 873 S.W.2d 353, 356–57 (Tex. 1993) (observing that first stage manufacturers still have a duty to warn against dangers inherent in the product they made, though not for modifications to the product after it leaves their hands). The Court denies TEMA's motion for summary judgment as to Plaintiffs' design and marketing defect claims to the same extent as the other Toyota Defendants.

## IV. THE COURT GRANTS IN PART AND DENIES IN PART SUMMARY JUDGMENT ON MISREPRESENTATION CLAIM

Next, the Toyota Defendants contend that Plaintiffs have presented no evidence to support their misrepresentation claim. To state a claim for negligent misrepresentation under Texas law, a plaintiff must show:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest;
>
> (2) the defendant supplies "false information" for the guidance of others in their business;
>
> (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and
>
> (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).[6]

Most of the alleged misrepresentations are nonactionable puffery. *See Kramer v. Hollmann*, 2012 WL 5869423, at *3 (Tex. App. – Fort Worth 2012, no pet.) ("Misrepresentations are actionable under the DTPA so long as they are of a material fact and not merely puffing or opinion." (quotation marks omitted)). Puffery is "an expression of

---

[6]In their complaint, Plaintiffs assert a claim of "misrepresentation" against Toyota. *See* Am. Compl. ¶¶ 51–54 [113]. In their response to the Toyota Defendants' motion for partial summary judgment, however, Plaintiffs cite the standards for a violation of the Deceptive Trade Practices Act and fraud, which were not raised in the complaint. *See* Pls.' Resp. Toyota MPSJ 2–3 [248]. "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). As these claims are not properly before the Court, the Court need not address them.

opinion by a seller not made as a representation of fact." *Id.* (quoting *Dowling v. NADW Mktg., Inc.*, 631 S.W.2d 726, 729 (Tex. 1982)). Whether a statement is one of fact or opinion depends on the circumstances, including the specificity of the statement. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995).

Plaintiffs present several Toyota advertisements stating that Toyota vehicles generally are dependable and safe relative to those of other manufacturers. *See, e.g.*, Pls.' Resp. Toyota MPSJ, App. 74–89 [249]. These statements are not specific and "do not convey any definite implications." *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 464 (Tex. App. – Dallas 1990, writ denied). Thus, they cannot serve as the basis for a misrepresentation claim. *See id.* at 464–65 (holding that a car salesman's statements that Mercedes-Benz vehicles were the best engineered in the world and that the car would probably not have any mechanical problems were not actionable as misrepresentations); *see also Paull v. Capital Res. Mgmt., Inc.*, 987 S.W.2d 214, 218–19 (Tex.App. – Austin 1999, pet. denied) (holding that a statement that an investment was "low risk" is puffery).

Plaintiffs also cite a Toyota advertisement stating that Toyota invests a million dollars each hour to improve technology and safety. *See* Pls.' Resp. Toyota MPSJ, App. 90. According to Plaintiffs' calculations, Toyota would have spent, at this rate, more than $8 billion on safety each year. Pls.' Resp. Toyota MPSJ 9 [248]. Plaintiffs argue that Toyota "must concede" that it does not spend that much per year on safety. *Id.* But Plaintiffs fail to provide any evidence that this number is false or inaccurate. Because Plaintiffs do not

disprove the claim in the advertisement, they cannot show that Toyota supplied false information, a required element for a misrepresentation claim.

The alleged misrepresentations related to specific features of the 2010 Toyota 4Runner are actionable, however. Plaintiffs present deposition testimony from a Toyota employee that the Toyota Defendants advertised the 2010 4Runner using the specifications of the four-wheel-drive model. *See* Pls.' Resp. Toyota MPSJ, App. 28–30. These advertisements failed to state that the two-wheel-drive model did not share these features. *Id.* For example, the advertisements depict the fuel system of the four-wheel-drive model, which had a full protective shield, without stating that the two-wheel-drive model had only a partial protective shield. *Id.* at 209; Pls.' Resp. Toyota MPSJ 12–13. Plaintiffs presentan affidavit from a co-worker of Wyndell Greene that he and Wyndell Greene viewed these representations at a car show at the State Fair of Texas in 2009, where Toyota distributed brochures and information regarding the four-wheel-drive model of the 2010 4Runner. *See* Pls.' Resp. Toyota MPSJ, App. 234.[7] Wyndell Greene relied on representations about safety when he purchased the two-wheel-drive 4Runner. *Id.* Finally, Plaintiffs present evidence that certain characteristics of the 4Runner's safety system – specifically, the design of the

---

[7]The Toyota Defendants object to the affidavit of Vincent Canty because Plaintiffs did not properly disclose him as a person with knowledge of the purchase of the 4Runner. Toyota Reply MPSJ 2 [277]. The Court disagrees. Plaintiffs' first amended Rule 26(a)(1) disclosures, which was served November 7, 2011, list Vincent Canty as a party with discoverable information "regarding the Greene family before the incident alleged in the Complaint . . . ." *See* Toyota Reply MPSJ, App. 8 [278]. The Court holds that this disclosure is adequate under Federal Rule of Civil Procedure 26 and overrules the Toyota Defendants' objection.

fuel tank in the two-wheel-drive model – exacerbated the severity of the Greenes' injuries due to the accident. The Court holds that issues of fact preclude summary judgment as to the alleged misrepresentations of specific features of the 4Runner and denies summary judgment as to these claims. The Court grants summary judgment on misrepresentation claims stemming from the other advertisements.

## V. THE COURT GRANTS IN PART AND DENIES IN PART SUMMARY JUDGMENT ON STRICT LIABILITY CLAIMS

In their amended complaint, Plaintiffs assert products liability claims related to design, manufacturing, and marketing against the Toyota Defendants. Am. Compl. ¶ 35. Plaintiffs present expert testimony to support their claim that defects in the design of the 4Runner exacerbated the severity of the accident and caused the Greenes' deaths. *See* Pls.' Resp. Toyota MSJ 6 [319]. Plaintiffs fail to present evidence to support their manufacturing or marketing defect claims, however. Accordingly, the Court denies summary judgment on the design defect claim but grants it on the manufacturing and marketing defect claims.

### A. *Design Defect*

Plaintiffs allege that defects in the 4Runner exacerbated the severity of the accident, causing the Greenes' deaths. *See* Pls.' Resp. Toyota MSJ 6. According to Plaintiffs' expert testimony,[8] the structure of the rear of the vehicle was inadequate to protect the passenger

---

[8]The Toyota Defendants object to the expert report of Keith Friedman and R. Rhoads Stephenson (the "Friedman Report") as improper hearsay evidence because it is a statement made outside of trial or a hearing. *See* Toyota MSJ Reply 4 [349]. The Court has previously determined that the Friedman Report, as revised, is competent summary judgment evidence. *See* Order, June 2, 2014, 8 n.5 [694]. The Court therefore overrules the Toyota Defendants' objection.

area or to shield the fuel tank. *Id.* at 9–12. As a result of these defects, the fuel tank exploded on impact, and the resulting fire severely burned the Greenes. *Id.*

To prevail on a design defect claim, a plaintiff must show that a product was (1) unreasonably dangerous due to a defective design; (2) a safer alternative was available; and (3) the defect was a producing cause of the plaintiff's injury. *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1040 (5th Cir. 2011) (quoting *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009)). As Plaintiffs present evidence to support each of these elements, the Court finds they have raised a genuine issue of material fact and denies summary judgment on this claim.

*1. **Unreasonably Dangerous.*** – Plaintiffs must first show that the Toyota 4Runner involved in the accident was unreasonably dangerous due to a design defect. A defective product is unreasonably dangerous if it is "dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community as to the product's characteristics." *Syrie v. Knoll Int'l*, 748 F.2d 304, 306 (5th Cir. 1984) (citing *Tuner v. General Motors Corp.*, 584 S.W.2d 844, 850 (Tex. 1979)). Determining whether a product is unreasonably dangerous as designed involves a balancing of the utility of the product and the risk involved in its use. *Id.*

Plaintiffs' primary defect allegations relate to the structure and location of the fuel tank in the 2010 Toyota 4Runner. Plaintiffs present expert testimony that the fuel tank was made of plastic rather than a sturdier material; the rear-impact structure of the vehicle was inadequate to shield the tank; and that the fuel tank was too large and too close to the rear

axle and rear seat. *See* Pls.' Resp. Toyota MSJ 9–12. The rear-impact structure was also inadequate to prevent intrusion into the rear seating areas during a crash. *Id.* There is no evidence that these features had high utility, particularly in light of the fact that older models of 4Runners and other Toyota SUVs had a protected fuel tank or had a fuel tank further from the rear axle. *Id.* at 15. Thus, Plaintiffs have raised an issue of material fact as to whether the 4Runner was unreasonably dangerous.

    ***2. Safer Alternative Design.*** – Next, a "safer alternative design" is "a product design that in reasonable probability 'would have prevented or significantly reduced the risk of the claimant's personal injury' and 'was economically and technologically feasible at the time the product left the control of the manufacturer.'" *Goodner*, 650 F.3d at 1042 (quoting TEX. CIV. PRAC. & REM. CODE § 82.005(b)). Plaintiffs present evidence of safer alternative designs, such as using higher strength steel on the rear of the 4Runner; extending the frame to shield the fuel tank from the rear axle; moving the fuel tank further from the rear axle; reinforcing the fuel tank; and reduce the volume of the fuel tank. Pls.' Resp. Toyota MSJ 9–12, 15. Plaintiffs' expert averred that these alternative designs are technologically and economically feasible. *Id.* at 15. For example, earlier Toyota 4Runners had the fuel tank further from the axle and several other models used a protective structure around the fuel tank. *Id.* Many other SUVs, including others produced by Toyota, have smaller fuel tanks. *Id.* at 16. Thus, Plaintiffs have presented evidence that certain alternative designs could have better protected the passengers and fuel tank and were available at the time Toyota produced the 2010 4Runner.

***3. Causation.*** – Finally, a "producing cause" is a "'substantial factor in bringing about an injury, and without which the injury would not have occurred.'" *Goodner*, 650 F.3d at 1044 (quoting *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007)). Plaintiffs present evidence that defects in the structure of the rear of the 4Runner and the fuel tank caused the fuel tank to explode on impact, causing the Greenes to suffer from serious burns. *See* Pls.' Resp. Toyota MSJ 12. Plaintiffs have thus raised a question of fact as to whether there exists a causal link between the design defects in the vehicle and Plaintiffs' injuries.

### B. Manufacturing Defect

A manufacturing defect is not a flaw inherent in the design of a product but a flaw that arises from a deviation in construction or quality from the "specifications or planned output in a manner that renders [the product] unreasonably dangerous." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 844 (Tex. 2000); *Grinnell*, 951 S.W.2d at 434)). Though Plaintiffs present evidence that the vehicle was defectively designed, they fail to present any evidence that the alleged defects arose during manufacturing. The Court therefore grants summary judgment on this claim.

### C. Marketing Defect

To prevail on their marketing defect claim against the Toyota Defendants, Plaintiffs must show:

> (1) a risk of harm exists that is inherent in the product or arises from the intended or reasonably anticipated use of the product;

    (2) the product supplier actually knew or reasonably foresaw the risk of harm at the time the product was marketed;

    (3) the product possessed a marketing defect;

    (4) the absence of warning or instructions rendered the product unreasonably dangerous to the ultimate user of the product; and

    (5) the failure to warn or instruct must cause the product user's injuries.

*USX Corp. v. Salinas*, 818 S.W.2d 473, 482–84 (Tex. App. – San Antonio 1991, writ denied) (citation omitted). There are four types of dangers that require a warning: "(1) a risk or danger inherent in the design of the product; (2) foreseeable dangers or risks of harm from unintended uses of a product; (3) risks or dangers that affect only a limited number of users susceptible to a danger in the product; and (4) unavoidably unsafe products." *Id.* "A product supplier has no duty to warn of dangers that are of common knowledge to the public or generally known to the consuming public." *Id.*

    Plaintiffs submit advertisements in which the Toyota Defendants marketed a full protective shield for the fuel tank available in the four-wheel-drive version of the 4Runner but failed to warn consumers that the tank was not standard in the two-wheel-drive version. *See* Pls.' Resp. Toyota MPSJ 23–24; Pls.' Resp. Toyota MPSJ, App. 38–39, 65. As previously discussed in Section V.A, Plaintiffs have presented evidence that the 4Runner, as sold, was unreasonably dangerous without the full protective shield and other fuel tank protection features.[9] Failure to warn Plaintiffs of this difference prevented the Greenes from

---

[9]The Toyota Defendants contend that Plaintiffs' marketing defect claim is merely a recharacterization of their design defect claim, as the fuel tank construction serves as the basis for both claims. *See* Toyota Reply MPSJ 8 [277]. However, design and marketing

having the opportunity to purchase the full protective shield. Pls.' Resp. Toyota MPSJ, App. 239. "Under Texas law, there is a presumption that an adequate warning would have been followed." *Wright v. Ford Motor Co.*, 508 F.3d 263, 275 (5th Cir. 2007). And Plaintiffs have presented evidence that the partially protected fuel tank caused the Greenes to suffer severe burns after the tank exploded in the collision. The Court finds that Plaintiffs have raised a genuine issue of material fact as to each element of their marketing claim. The Court therefore denies summary judgment on Plaintiffs' marketing claim.

### VI. THE COURT DENIES SUMMARY JUDGMENT ON NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS

To show negligence, Plaintiffs must prove that Toyota (1) owed a duty to Plaintiffs; (2) breached that duty; and (3) Toyota's breach caused Plaintiffs' injury. *See Romo v. Ford Motor Co.*, 798 F. Supp. 2d 798, 807 (S.D. Tex. 2011) (citation omitted). Though Plaintiffs' negligence claim is based on the same defects as its strict liability claims, a "'negligence cause of action requires a different showing from a strict liability claim, even when the action is against the manufacturer.'" *Kallassy v. Cirrus Design Corp.*, 2006 WL 1489248, at *3 (N.D. Tex. 2006) (quoting *Syrie v. Knoll Int'l*, 748 F.2d 304, 307 (5th Cir. 1984)) *aff'd*, 265 F. App'x 165 (5th Cir. 2008). As explained by this Court in *Kallassy*,

> The care taken by the supplier of a product in its preparation, manufacture, or sale is not a consideration in strict liability; this is, however, the ultimate question in a negligence action. Strict liability looks at the product itself and

---

defect claims are distinct claims with separate requirements. "Plaintiffs are generally entitled to obtain findings that will support alternative theories of recovery, even if those theories address but a single injury." *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 668 (Tex. 1999). The Court thus allows Plaintiffs to proceed on both theories.

>determines if it is defective. Negligence looks at the act of the manufacturer and determines if it exercised ordinary care in design and production.

*Id.* A person who manufactures a product "must exercise reasonable care to prevent physical harm that can reasonably be foreseen to result from the use of the product for its intended purpose . . . ." *Syrie*, 748 F.2d at 307 (quoting W. DORSANEO, TEXAS LITIGATION GUIDE § 320.03[1] (1984)).

Plaintiffs have presented evidence that the 4Runner was unreasonably dangerous due to certain defects and that these defects were the producing cause of Plaintiffs' injuries. *See supra* Section V.A. To succeed on their negligence claim, then, Plaintiffs must show that the Toyota Defendants failed to exercise reasonable care in designing, manufacturing, and selling the 4Runner. Plaintiffs offer evidence that the Toyota Defendants were aware of the differences in safety between the four-wheel-drive and two-wheel-drive models of the 4Runner. *See* Pls.' Resp. Toyota MPSJ, App. 28–30. The Toyota Defendants marketed the 4Runner using the four-wheel-drive model without stating that the two-wheel-drive model did not share these features. *Id.* Further, Plaintiffs have shown that the Toyota Dependants incorporated many of the safer alternative designs in older models of the 4Runner and other Toyota SUVs. Pls.' Resp. Toyota MSJ, App. 186 [320]. Because the Toyota Defendants were aware of the differences in structure and safety between the two-wheel-drive 4Runner and other Toyota vehicles, it was foreseeable that the two-wheel-drive model would perform less well in a crash. Thus, Plaintiffs have raised a question of fact as to the Toyota Defendants' negligence that precludes summary judgment.

Plaintiffs also provide evidence to support their claim for gross negligence and exemplary damages. "[G]ross negligence is the breach of duty involving an extreme degree of risk, considering the probability and magnitude of the potential harm to others (an objective element) when the actor has actual awareness of the risk involved but nevertheless proceeds in conscious indifference to the rights, safety, or welfare of others (a subjective element)." *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 595 (Tex. 1999). An "extreme degree of risk" is a "likelihood of serious injury." *Id.*

Plaintiffs' expert averred that the defects in the vehicle increase the risk of fuel-fed fires upon a rear-impact. *See* Section V.A. He stated that the rear-structure is inadequate to prevent intrusion into the passenger area of the vehicle. *Id.* Thus, Plaintiffs have presented evidence that there is a likelihood of serious injury to passengers in the 4Runner due to these design defects. Plaintiffs also present evidence that the Toyota Defendants had actual knowledge of safer designs, which they had used in past editions of the 4Runner and in the four-wheel-drive model, but did not implement these safer designs in the two-wheel-drive 4Runner purchased by the Greenes. *See* Pls.' Resp. Toyota MPSJ, App. 28–30; *see also Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 597 (Tex. 1999) ("One of the main factors supporting punitive damages in many product defect cases is the fact that the manufacturer is aware of specific design changes that would have made the product safer."). Moreover, the Toyota Defendants advertised the four-wheel-drive model and emphasized its safety features without disclosing that the two-wheel-drive did not have those features. *Id.* Because Plaintiffs have presented evidence to support each element of their gross negligence claim,

ORDER – PAGE 16

the Court finds that there is a genuine issue of material fact. The Court therefore denies summary judgment on both Plaintiffs' negligence and gross negligence claims.

## VII.  THE COURT DENIES SUMMARY JUDGMENT ON WARRANTY CLAIMS

Finally, the Court addresses Plaintiffs' breach of express and implied warranties claims. The Court finds that issues of fact preclude summary judgment on both claims.

### A.  *Express Warranties*

A claim for breach of an express warranty sounds in contract law. *White v. R.J. Reynolds Tobacco Co.*, at *2 (S.D. Tex. 2000) (citing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 526 n.23 (1992)). A seller creates an express warranty when he "'makes an affirmation of fact or a promise to the purchaser, which relates to the sale and warrants a conformity to the affirmation as promised.'" *Id.* (quoting *Humble National Bank v. DCV, Inc.*, 933 S.W.2d 224, 233 (Tex. App.– Houston [14th Dist.] 1996, writ denied)). To succeed on an express warranty claim, a plaintiff must show that the seller made a representation to the plaintiff regarding the quality of the characteristics of a good; (2) the good did not conform to the representation; and (3) the plaintiff was injured as a result. *Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d 353, 361 (Tex. App. – Corpus Christi 1994, no writ). Statements made in advertisements may serve as a basis for an express warranty. *Id.* (citing *Cipollone*, 505 U.S. at 525–26). But "a statement which expresses mere puffing or opinion does not give rise to an actionable warranty." *Id.* (citing *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459 (Tex. App.– Dallas 1990), *writ den'd per curiam*, 800 S.W.2d 853 (Tex. 1991)).

As discussed with respect to Plaintiffs misrepresentation claim, the bulk of express warranties alleged by Plaintiffs are either puffery or have not been shown to be false. *See supra* Section IV. However, the statements related to specific features of the 4Runner are actionable warranties. Plaintiffs submitted advertisements in which the Toyota Defendants highlighted certain safety features of the 4Runner without specifying that those features not standard on the two-wheel-drive model. *See id.* The two-wheel-drive did not have these features, such as the fully protected fuel tank. *Id.* And the absence of these features caused the Greenes' injuries. *Id.* The Court finds that Plaintiffs have raised a material issue of fact as to whether Toyota made express warranties regarding the 4Runner and whether it breached those warranties. The Court therefore denies summary judgment on this claim.

### B. Implied Warranty of Merchantability

Under Texas law, a seller impliedly warrants that his goods are merchantable. TEX. BUS. & COM. CODE § 2.314. To succeed on a breach of implied warranty claim, Plaintiffs must show (1) that a defect caused the vehicle to be unfit for its ordinary purpose; (2) that the alleged defect existed when the vehicle left the manufacturer's and the seller's possession; and (3) that the alleged defect proximately caused the injuries for which the plaintiff seeks damages. *Everett v. TK-Taito, LLC*, 178 S.W.3d 844, 853 (Tex. App. – Fort Worth 2005, no pet.).

Plaintiffs present evidence that the 4Runner was defective when it left the manufacturer's possession because certain structural and safety features failed to protect the Greenes during a rear-impact collision and exacerbated the severity of their injuries. *See*

*supra* Section V.A. The Texas Supreme Court has found that "uncrashworthiness" in a vehicle is a defect that can render the vehicle unfit for its ordinary use. *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 665 (Tex. 1999). Thus, issues of fact preclude summary judgment on Plaintiffs' breach of implied warranty claim.

## CONCLUSION

For the foregoing reasons, the Court grants the Toyota Defendants' motions in part and denies them in part.

Signed June 13, 2014.

_____
David C. Godbey
United States District Judge