**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **OLLIE GREENE**, *et al.*, | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **CAUSE NUMBER: 3:11-cv-0207-N** |
| | § | |
| **TOYOTA MOTOR CORPORATION**, *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**BRIEF IN SUPPORT OF THE TOYOTA DEFENDANTS' MOTION TO EXCLUDE**

## <u>TABLE OF CONTENTS</u>

**I. SUMMARY OF ARGUMENT**……………………………………………………………4

**II. RELEVANT BACKGROUND**…………………………………………………………...5

**III. ARGUMENT AND AUTHORITIES**……………………………………..…………10

    **A.**    **The Federal Rules of Civil Procedure and Applicable Case Law Require Timely Disclosure of the FEM**..........................................................................10

    **B.**    **The Court Should Exclude the Untimely Disclosed FEM**...............................12

        1. Friedman admitted the FEM work was prepared to illustrate his opinions.......12

        2. Plaintiffs made a conscious, strategic decision to not timely produce the FEM......................................................................................................................13

        3. The Toyota Defendants would be prejudiced if Plaintiffs are allowed to use and rely upon Friedman's FEM...................................................................................14

        4. Excluding the untimely disclosed FEM is the most appropriate relief at this time......................................................................................................................15

    **C.**    **The Court Should Exclude the Newly Disclosed FEM**.....................................15

**IV. THE FEM MUST BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 401, 402, 403, AND 702**.....................................................................................................................17

**V. IF THE COURT DOES NOT EXCLUDE THE UNTIMELY DISCLOSED MATERIALS, THE TOYOTA DEFENDANTS ARE FORCED TO MOVE FOR A CONTINUANCE TO ANALYZE AND TAKE DISCOVERY ON SAME**...........................18

**VI. CONCLUSION**.................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002)...........................................11

*Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 379-82 (5th Cir. 1996)................................................11

*Dixie Steel Erectors, Inc. v. Grove U.S., L.L.C.*, 2005 WL 3558663 at *10 (W.D. Okla. 2005)..11

*Green v. Blitz U.S.A., Inc.,* 2011 WL 806011 (E.D. Tex March 1, 2011)....................................11

*Musick v. Dorel Juvenile Group, Inc.*, 2011 WL 5325534 at *1 (W.D. Va. Nov. 4, 2011)..........11

*Raley v. Hyundai Motor Co., Ltd.*, 2010 WL 545860 at *2 (W.D. Okla. Feb. 9, 2010)....10, 11, 12

*Rinehart Racing, Inc. v. S & S Cycle, Inc.*, 2014 WL 222887 at *1 (W.D.N.C. Jan. 21, 2014)....10

**Rules**

Federal Rule of Civil Procedure 26..................................................................4, 6, 8, 10, 11, 13, 17

Federal Rule of Civil Procedure 37..............................................................................................11

Federal Rule of Evidence 401................................................................................................17, 18

Federal Rule of Evidence 402................................................................................................17, 18

Federal Rule of Evidence 403................................................................................................17, 18

Federal Rule of Evidence 702................................................................................................17, 18

TO THE HONORABLE COURT:

COME NOW Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc., (collectively the "Toyota Defendants") file this Brief in Support of their Motion to Exclude and for such would respectfully show the Court as follows:

## I.
## SUMMARY OF ARGUMENT

The Court should exclude portions of Plaintiffs' expert witness disclosures because Plaintiffs did not timely disclose the facts and data created and relied upon by Plaintiffs' expert Keith Friedman ("Friedman") in forming his opinions, or the exhibits that Friedman will use to summarize and support his opinions at trial.  On Friday, June 13, 2014, Friedman admitted under oath that he had prepared finite element modeling ("FEM") over the last several years and that the FEM conducted after Plaintiffs' November 20, 2013 expert disclosure deadline was simply refinements of the work product that existed prior to Plaintiffs' expert disclosure deadline. Friedman's concession reveals that Plaintiffs made a conscious, strategic decision not to produce the FEM with their expert disclosures despite their obligation under Federal Rule of Civil Procedure 26(a)(2).

Plaintiffs had previously represented to the Court on May 23, 2014 that they had already produced Friedman's "complete files and demonstrative evidence."  However, on June 9, 2014, less than three weeks before trial, Plaintiffs produced their trial exhibits that included newly disclosed computer simulations.  Then, during Friedman's June 13th deposition, just ten days before trial, Plaintiffs produced a USB drive containing over 53 gigabytes of input files for his simulations, much of which was never previously disclosed. Friedman also testified that he had

run other simulations based on the reconstruction of one of defendant's experts that was never disclosed and has still never been provided.

These most recent untimely disclosures are just the latest in a pattern of non-disclosure or late disclosure by Plaintiffs.  Plaintiffs did not timely disclose the file materials of Friedman and the co-author of their report, Dr. Rhoads Stephenson, prior to their depositions.  Plaintiffs also did not disclose the calculations of Plaintiffs' accident reconstructionist, Jeff G. Vick prior to his deposition.  Plaintiffs' recent actions once again illustrate that Plaintiffs and their experts made a calculated decision not to disclose materials in defiance of the Federal Rules, this Court's Scheduling Order, and repeated requests for such information.

The Toyota Defendants move to exclude all of the untimely disclosed FEM, demonstratives and exhibits proffered by Plaintiffs.  Alternatively, the Toyota Defendants move to exclude the newly disclosed FEM, demonstratives and exhibits (those which were not included as exhibits to Friedman's deposition on January 15 and 17, 2013)  that were produced with Plaintiffs' trial exhibits and at Friedman's June 13th deposition.  Additionally, the FEM should be excluded because the 4Runner computer simulation does not fairly represent the real-world 4Runner, yet it is similar enough that its use may confuse or mislead jurors into believing that it does.  If the Court declines to exclude Plaintiffs' FEM, the Toyota Defendants move for a continuance of the current June 23, 2014 trial setting to give their counsel and experts sufficient time to fully analyze the newly disclosed FEM and conduct additional discovery about same.

## II.
## RELEVANT BACKGROUND

Plaintiffs designated Friedman as a testifying expert on November 20, 2013, the deadline established by the Court for Plaintiffs' expert designations and reports.  Friedman co-authored various expert reports against all of the defendants, including a report against the Toyota

Defendants.  As part of that disclosure, Plaintiffs were required to produce all of the facts and data considered by Friedman in forming his opinions, as well as any exhibits that would be used to support them.  Fed. R. Civ. P. 26(a)(2)(B).  Despite Plaintiffs' obligations under the federal rules, they did not produce any of the file materials considered by Friedman in forming his opinions or any exhibits that would be used to summarize or support those opinions.

Having not received the file materials or exhibits at the time of Plaintiffs' expert disclosures, counsel for various defendants, including the Toyota Defendants, requested that Plaintiffs furnish the file materials in advance of their depositions so that defendants could review such materials and properly prepare to examine Friedman at his deposition regarding the materials that they relied upon in forming their opinions.  *See e.g.*, December 9, 2013 letter from Toyota Defendants to Plaintiffs, attached herein as Exhibit A (APP 1) (Requesting Plaintiffs produce all materials referenced in the expert reports or otherwise relied upon in forming their opinions by December 13, 2013); correspondence between K. Clark and N. Pittman, attached herein as Exhibit B (APP 2).  Plaintiffs refused, however, to comply with the Federal Rules of Civil Procedure and defendants' requests.[1]

Friedman's initial deposition took place on January 15, 2014 and January 17, 2014. During the first day of Friedman's deposition, Friedman produced approximately eighteen banker's boxes of his "file materials."  These eighteen boxes included some of the FEM prepared by Friedman.  Despite the Toyota Defendants desire to examine Friedman about his FEM, it became clear that this was not possible.  Friedman explained that this kind of simulation work cannot be simply plugged into a computer and analyzed.  Excerpts of Keith Friedman January

---

[1] The Toyota Defendants also had a formal Request for Production (No. 52) that specifically called for production of Plaintiffs' experts file materials to which Plaintiffs responded that such a request was premature and they would timely disclose the properly discoverable materials in accordance with the Federal Rules and the Court's Scheduling Order, which they failed to do.

17, 2014 Deposition, attached herein as Exhibit D at 684:3-22 (APP 19).   Instead, it requires special software.  *Id.* at 650:6-25 (APP 16).   Additionally, in response to many questions at his first deposition seeking calculations or bases for his opinions, Friedman repeatedly responded by stating the answer could be found on the disks containing the finite element data and that it would take a "long time" to obtain the information. *See, e.g.*, Exhibit D at 432:20-24 (APP 15). When asked whether he had a print out of the data on the finite element disks, Friedman responded by stating, "[w]e can fill up the room with a printout. That wouldn't be useful." *Id.* at 432:7-19 (APP 15).   Therefore, none of the defendants were able to question Friedman about his FEM at that time.   Plaintiffs' untimely disclosure thwarted the Toyota Defendants' right to meaningfully examine Friedman on his FEM. Further complicating defendants' ability to obtain the information on the finite element work done by Friedman, counsel for Plaintiffs refused the defendants' request to segregate the finite element disks and mark them as a separate exhibit so they could be readily identified and duplicated more quickly. *Id.* at 685:14—688:16 (APP 20-23).

After the deposition of Friedman, the eighteen boxes of file materials were given to a local copy service in Austin, Texas.  Because of the volume of materials, the Toyota Defendants did not receive copies of the file materials until February 27, 2014.   Upon receipt of this information, including the FEM prepared by Friedman, the Toyota Defendants provided it to their expert witnesses for analysis.   After reviewing these materials, it became apparent that Friedman had performed six computer simulations identified by Friedman as "Runs 1, 2, 3, 4, 5 and 9," and included 22 AVI's which are visual animations of the simulations.  *See* Declaration of Dolph K. Lohwasser, attached herein as Exhibit F ¶ 5 (APP 51).  Input files, which reveal the dimensions, geometry, and material specifications for the models and the simulation parameters

(i.e. speeds), were only provided for Runs 1, 2, 4, 5 and 9 in the file materials that were produced at Friedman's January 15th (and 17th) deposition. *Id.*

On May 23, 2014, Plaintiffs' filed a "Notice of Service of Plaintiffs' Rule 26(e)(2) Expert Supplementation." *See* Doc. No. 683. In their Notice, Plaintiffs represented to the Court and the Toyota Defendants that pursuant to Federal Rule of Civil Procedure 26(e)(2), Plaintiffs *previously provided* expert supplementation of various items including the "*Complete* files and demonstrative evidence of Friedman Research Corporation." *Id.* (emphasis added). Despite Plaintiffs' representations, the Toyota Defendants would soon learn this was false.

On June 9th, Plaintiffs produced their trial exhibits pursuant to the Court's scheduling order. After a quick review of these exhibits, it became clear that Plaintiffs trial exhibits included newly disclosed FEM. More specifically, Plaintiffs' trial exhibits included visual animation *results* of 66 computer simulations. Excerpts of Plaintiffs' Trial Exhibits Produced on June 9th, attached herein as Exhibit G (APP 54-55) (emphasis added). Many, if not all of these simulations had not previously been produced. *See* Exhibit F ¶ 6 (APP 51). The production did not include the input files that are necessary to analyze the specific simulations. *Id.* The results that were produced appear to have some variation from the prior simulations (Runs 1, 2, 3, 4, 5 and 9) in terms of model specifications and crash parameters, but without the input files, differences can only be identified qualitatively by a visual review of the simulation images. *Id.*

On June 6th, the Court ordered Plaintiffs to produce Friedman for a supplemental deposition limited to the subject of Friedman's FEM done after November 20, 2013. *See* Doc. No. 711. The Toyota Defendants subsequently issued a deposition notice for the supplemental deposition of Friedman on Friday, June 13th. *See* Exhibit H (APP 59). The deposition notice included a duces tecum requesting all FEM prepared or conducted by Friedman since November

20, 2013. *Id.*

Friedman's deposition took place on June 13th in Austin, Texas.  At the deposition, Friedman produced a USB drive containing over 53 gigabytes of input files for his simulations, much of which was never previously disclosed.  No AVI's were included in the USB drive. Friedman claimed the input files are for the 66 computer simulation AVI's that were identified as Plaintiffs' trial exhibits Nos. 570 through 635.  Excerpts of Keith Friedman June 13, 2014 Deposition, attached herein as Exhibit E at 710:19-24 (APP 28).  The USB drive included computer simulations titled Runs 1, 2, 2A, 3, 3A, 4, 4A, 5, 6, 7, 7A, 7B, 8, 9, 9A.  *Id.* at 712:23—714:3 (APP 30-32).  However, Runs 2A, 3A, 4A, 6, 7, 7A, 7B, 8, 9A, and the input files for Run 4, were not produced with Friedman's eighteen boxes of file materials on January 15, 2014, although Friedman stated that Runs 6, 7, and 8 "should have been" produced at the time. *Id.* at 713:9-714:4 (APP 31-32).

Friedman was then questioned about his FEM work since November 20th.  He was asked whether the information on the USB drive was completed after November 20th.  Friedman responded that "I think the work evolved over several years.  So to the extent that it was something after November 20-whatever, then *that was just a refinement of what existed before November 20th.*"  *Id.* at 712:7-13 (emphasis added) (APP 30).  He then admitted that some of the input files were complete and not refined at all after November 20th. *Id.* at 712:14-17 (APP 30).  In other words, much of Friedman's FEM was completed or substantially completed prior to November 20th and yet not produced at the time of his expert report.

Friedman was also examined about the specific "run" computer simulations that he created.  For example, he testified that the origins of Run 1 were prepared back in 2012 and that they were not refined after November 20th.  *Id.* at 714:9—716:2 (APP 32-34).  Friedman also

conceded that he prepared FEM as far back as 2011, again with none of it being produced at the time his expert report was prepared, in response to Request for Production No. 52, or in response to the December 9th correspondence asking for the Plaintiffs' experts file materials.  *Id.* at 716:21—717:2 (APP 34-35).

**III.**
**ARGUMENT AND AUTHORITIES**

**A.     The Federal Rules of Civil Procedure and Applicable Case Law Require Timely Disclosure of the FEM.**

Federal Rule of Civil Procedure 26(a)(2)(B) requires retained experts to include in their reports not only their opinions and the basis for the same, but also all facts or data considered in forming them.  "The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them…" Fed. R. Civ. P. 26(a)(2)(B).  As one court has observed, a party is "required to produce this data" at the time it provides the expert witness report, "not at a time of its choosing." *Rinehart Racing, Inc. v. S & S Cycle, Inc.*, 2014 WL 222887 at *1 (W.D.N.C. Jan. 21, 2014).

The Rule clearly requires the production of the expert materials at the time of the expert's report.  "[W]hile some counsel may acquiesce in the production of expert materials at the expert's deposition, the Federal Rules contemplate a different approach." *Raley v. Hyundai Motor Co., Ltd.*, 2010 WL 545860 at *2 (W.D. Okla. Feb. 9, 2010).  Notably, in an automotive product liability case "when the subject matter is highly technical, counsel must often consult with the party's expert both to understand the opposing expert's opinions and their bases and to prepare to question the expert." *Id.*   Nor can Plaintiffs characterize the exhibits as "demonstrative aids" to avoid the requirements of Rule 26. *Id.* at *3.  Rule 26 specifically refers to the production of "any exhibits that will be used to summarize or support" an expert's opinion.

*Id.*; Fed. R. Civ. P. 26(a)(2(B)(iii).

According to Rule 26(e)(1), any disclosures pursuant to Rule 26(a) must be supplemented or corrected in a timely manner if the party learns that in some material respect the disclosure is incomplete or inaccurate.  Late disclosures cannot be accepted as supplementations permitted by Rule 26(e) where because of failure or omission the expert provided an inadequate or incomplete preparation.  *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002); *Raley*, 2010 WL at \*3.  The court "cannot accept a definition of supplementation which would essentially allow unlimited bolstering of expert opinions."  *Id.* at 310; *Raley*, 2010 WL 545860 at \*3.

Failure to timely disclose any such expert materials precludes use of that information in support of a motion, at hearing or at trial, unless the failure was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1); *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 379-82 (5th Cir. 1996).  Stated another way, "a party may not use at trial information that she did not provide as required by Rule 26 unless she can establish the belated disclosure was substantially justified or harmless."  *Musick v. Dorel Juvenile Group, Inc.*, 2011 WL 5325534 at \*1 (W.D. Va. Nov. 4, 2011).  Additionally, the court has inherent powers to enter sanctions.  *Green v. Blitz U.S.A., Inc.*, Civ. A. No. 2:07-CV-372, 2011 WL 806011 at \*3 (E.D. Tex March 1, 2011).

The extent of the noncompliance with the disclosure deadlines is itself a strong indicator of prejudice.  *Raley*, 2010 WL 545860 at \*4.  Similarly, where a case has a lengthy litigation history, extensive rule violations indicate that late disclosures were willful.  *Id.*  This is particularly true when experienced counsel or experts are involved.  As one court noted, "when a veteran expert, working with experienced counsel, waits until more than three months have passed after the original report was rendered to do the most meaningful work in support of that report, the expert, and counsel, know exactly what they are doing."  *Dixie Steel Erectors, Inc. v.*

*Grove U.S., L.L.C.*, 2005 WL 3558663 at *10 (W.D. Okla. 2005).[2]  As stated by another court when confronted with a similar scheme by a plaintiff's counsel and experts, "[t]here simply is too much new material produced by too many experts that was disclosed too late."  *Raley*, 2010 WL 545860 at *3.

### B.      The Court Should Exclude the Untimely Disclosed FEM.

The Court should exclude the untimely disclosed FEM prepared and considered by Friedman in preparing his expert report along with any FEM exhibits or demonstratives that will be used to summarize his opinions at trial.  Plaintiffs were required by the Federal Rules of Civil Procedure and this Court's scheduling order to disclose all the facts and data considered by their experts in forming their opinions by November 20th, and to timely make any necessary and timely supplementations.   Plaintiffs failed to disclose the vast majority of the materials considered by Friedman until his deposition on January 15, 2014.  Newly disclosed FEM was then produced on the eve of trial with Plaintiffs' trial exhibits.  Finally, Friedman's deposition on June 13th revealed that he had been conducting FEM since 2011 and that any work since Plaintiffs' November 20th expert disclosure deadline was done to refine the FEM that had been previously created.  As is evident upon an application of the four factor test, the failure to timely produce the FEM was neither substantially justified nor harmless, and instead was a strategic decision on the part of Plaintiffs to withhold such information.

### 1.   Friedman admitted that the FEM work was prepared to illustrate his opinions.

During his June 13th deposition, Friedman testified that the FEM was prepared to better illustrate his opinions about the alleged defects in the 2010 Toyota 4Runner.  *See* Exhibit E at 753:8—754:5 (APP 38-39).  Even when specifically asked whether he could opine about his purported safer alternative designs with respect to the 4Runner, Friedman acknowledged that

---

[2] This was also noted in a different case that apparently involved Friedman. *Raley*, 2010 WL 545860 at *3-4.

there were multiple other factors that were taken into account, and reiterated that the FEM was prepared in order to illustrate his safer alternative designs. *Id.* at 783:4—785:6 (APP 46-48). Even if the FEM was done for illustrative or demonstrative purposes, given the fact that it was prepared prior to November 20th, it should have been produced at the time instead of four months later, and then again less than three weeks before trial. Plaintiffs cannot simply avoid the requirements of Rule 26 by claiming that the FEM is an illustration or a demonstrative aid. *See Raley*, 2010 WL 545860 at *3. Rule 26 specifically refers to the production of "any exhibits that will be used to summarize or support" an expert's opinion. *Id.*; Fed. R. Civ. P. 26(a)(2(B)(iii).

2. Plaintiffs made a conscious, strategic decision to not timely produce the FEM.

Plaintiffs have no justification for the untimely disclosure of Friedman's file materials, including the FEM. Based on Friedman's recent deposition, it is clear the FEM had been prepared and was able to be produced with Plaintiffs' expert disclosures on November 20th. Despite their obligation to produce the FEM, Plaintiffs made a conscious, strategic decision to withhold this information. Plaintiffs have taken a clear position that they have no obligation to produce this information. *See* Exhibit C at 23:4—24:10 (APP 9-10).

During Friedman's June 13th deposition, Plaintiffs' counsel tactically instructed Friedman not to answer questions about when Friedman provided the FEM to Plaintiffs' counsel. In other words, Plaintiffs' counsel was fully aware that Friedman would reveal Plaintiffs' plan to withhold the FEM. For example, Friedman was asked when he first provided the input files and the contents of the USB drive that was produced at the deposition to Plaintiffs' counsel. *See* Exhibit E at 710:25—711:23 (APP 28-29). Plaintiffs' counsel immediately objected and instructed Friedman not to answer the question. *Id.* Friedman was then asked when he

completed all of the input files that were included on the USB drive. *Id.* Again, Plaintiffs' counsel instructed Friedman not to answer the question. *Id.*[3]

Plaintiffs previously attempted to convince the Court that they were unable to produce the FEM as part of their expert disclosures on November 20th because they were still receiving information from the defendants. More specifically, Plaintiffs have claimed that they were still receiving FEM for the Volvo tractor. Even if Plaintiffs were waiting for additional information from Volvo, Friedman acknowledged that the computer simulation model for the 4Runner was finished before Plaintiffs' November 20, 2013 expert disclosure deadline. Exhibit E at 717:3-10 (APP 35). To the extent Plaintiffs claim that they were waiting for additional information from the Toyota Defendants or anticipating an order from the Court granting them such, the Toyota Defendants asserted for months that they had produced all of the FEM in their possession, and this Court denied Plaintiffs' motion to compel on October 31, 2013. *See* Doc. No. 229. Therefore, any suggestion by Plaintiffs that they could not produce the FEM with their expert disclosures on November 20th is misleading. Plaintiffs have intentionally refused to previously disclose this information despite knowing their obligations under the federal rules.

      3.   <u>The Toyota Defendants would be prejudiced if Plaintiffs are allowed to use and rely upon Friedman's FEM.</u>

The first portion of Friedman's file materials, including the FEM, was not produced until his first deposition on January 15th. At that time, there was no way for the Toyota Defendants to question Friedman regarding the FEM. Even if Friedman had allowed the Toyota Defendants access to the FEM during the deposition, there was no way to access the information because it required special software. Exhibit D at 650:6-25 (APP 16). Friedman even admitted that it would take experts for the defendants hours, if not days, to fully analyze the data. *Id.* at

---

[3] The Toyota Defendants believe these questions were within the scope of the Court's order and Plaintiffs' counsel improperly instructed Friedman not to answer the question.

673:10—674:5 (APP 17-18).  As another court has noted, in this sort of highly technical case, timely disclosure is essential to allowing opposing counsel a meaningful opportunity to fully depose an opposing expert.  *Raley*, 2010 WL 545860 at *2-3.

Although the Court provided defendants an additional two hours of time to examine Friedman on the FEM done after November 20th, this was not enough time given the newly disclosed trial exhibits on June 9th, and the additional FEM information that was produced on June 13th.  The Toyota Defendants also made clear that they did not have enough time to examine Friedman on the FEM, specifically given the amount of new information that was produced.  Exhibit E at 765:23—770:18 (APP 40-45).

    4.  <u>Excluding the untimely disclosed FEM is the most appropriate relief at this time.</u>

Given the new, apparent extent of Plaintiffs' willful non-disclosure, the appropriate remedy is to exclude the untimely disclosed FEM.  There should be no further continuances of the trial setting for this case, and the trial setting would have to be continued to cure the prejudice resulting from the untimely disclosure.  This suit was filed in February 2011.  After multiple amendments to the scheduling order, this case was set for trial on June 23, 2014.  Doc. No. 332.  The parties are now on the eve of trial, with trial set to begin less than one week from the filing of this motion.  It would be improper to order a continuance given Plaintiffs' blatant refusal to comply with the rules.  Instead, the FEM must be excluded entirely.

**C.**    **The Court Should Exclude the Newly Disclosed FEM.**

The Court should undoubtedly exclude the newly disclosed FEM that was first produced with Plaintiffs' trial exhibits on June 9th and at Friedman's June 13th deposition.  Plaintiffs' trial exhibits included additional computer simulations that were never previously produced.  *See* Exhibit F ¶ 6 (APP 51).  Plaintiffs' trial exhibits included only visual animation *results* of 66 computer simulations.  *Id.* (emphasis added).  The production did not include the input files that

are necessary to analyze the specific simulations. *Id.* The results that were produced appear to have some variation from the prior simulations (Runs 1, 2, 3, 4, 5 and 9) in terms of model specifications and crash parameters, but without the input files, differences can only be identified qualitatively by a visual review of the simulation images. *Id.*

These differences are not simple extensions or iterations of previous FEM. A visual review reveals fundamental differences in how the simulations were created and run. For example, when examining the results of the prior computer simulations produced at Friedman's January 15th deposition, the drive shaft does not fail. However, a simple review of the results of these newly disclosed computer simulations reveals that the drive shaft does in fact fail. To produce this different result, the input files had to be modified to change the properties of the drive shaft so that it fails. The input files for this newly disclosed FEM was not produced until Friedman's June 13th deposition when Plaintiffs produced a USB drive that included the input files for the 66 computer simulations that were identified as Plaintiffs' trial exhibits Nos. 570 through 635. Exhibit E at 710:19-24 (APP 28). The USB drive included input data for computer simulation titled Runs 1, 2, 2A, 3, 3A,  4,  4A, 5, 6, 7, 7A, 7B, 8, 9, 9A. *Id.* at 712:23—714:3 (APP 30-32). However, Runs 2A, 3A, 4A, 6, 7, 7A, 7B, 8, 9A, and the input files for Run 3, were not produced with Friedman's eighteen boxes of file materials on January 15, 2014. This newly disclosed expert material is significant given Plaintiffs' admission that he intends to use this FEM to help illustrate his opinions and should be excluded given that it was first disclosed six months after Plaintiffs' expert disclosures deadline, and less than three weeks before the start of trial.

In addition, Plaintiffs misrepresented that all of the FEM had been previously produced. Plaintiffs filed their "Notice of Service of Plaintiffs' Rule 26(e)(2) Expert Supplementation" on

May 23rd and represented that they *previously* provided expert supplementation of various items on January 15, 2014, January 20, 2014, February 17, 2014, and/or April 7, 2014, including but not limited to "Complete files and demonstrative evidence of Friedman Research Corporation." Doc. No. 683.  Despite this representation, Plaintiffs identified the results of newly disclosed visual animation computer simulations with their trial exhibits on June 9th and newly disclosed FEM, including input files, on June 13th.

Allowing Plaintiffs to use and rely on this newly disclosed FEM would completely nullify Federal Rule of Civil Procedure 26(a)(2) and prejudice the Toyota Defendants.  Because the information was produced on the eve of trial, the Toyota Defendants would be forced to examine Friedman on this newly disclosed FEM for the first time at trial.  Although the Court provided defendants with two hours to examine Friedman on his FEM work since November 20th, this only allowed the defendants to gain a better understanding of the timing of the FEM.  It did not allow the Toyota Defendants enough time to fully examine Friedman regarding the substance of the FEM work, including the various input files that he has continued to manipulate.

Given the current trial setting and Plaintiffs' newly disclosed FEM, the Court should exclude the newly disclosed FEM that was first produced with Plaintiffs' trial exhibits on June 9th and at Friedman's June 13th deposition.  This would include, at a minimum, excluding all of the FEM associated with Runs 2A, 3A, 4A, 6, 7, 7A, 7B, 8, and 9A, and all of their corresponding trial exhibits that show the results of these newly disclosed computer animations.

## IV.
## THE FEM MUST BE EXCLUDED UNDER
## FEDERAL RULE OF EVIDENCE 401, 402, 403, AND 702

In addition to being untimely disclosed, the FEM is inadmissible evidence that must be struck pursuant to Federal Rules of Evidence 401, 402, 403, and 702 because the 4Runner

computer model does not fairly represent the real-world 2010 Toyota 4Runner involved in the accident.   During his June 13th deposition, Friedman was questioned about the 4Runner computer model that he had prepared to create the FEM.  Friedman admitted that the body he used for the computer simulation was not the body of a 2010 Toyota 4Runner, but the body of a 1990's Ford Explorer.  *See* Exhibit E at 728:3-24 (APP 36).  Friedman also admitted that the dimensions of the 4Runner used for his computer simulations were not the same as the real-world 4Runner.  *Id.* at 729:5-25 (APP 37).  It is similar enough; however, that it might confuse or misled jurors into believing it represents the 4Runner.  Because Friedman's 4Runner computer simulation does not fairly represent the 2010 Toyota 4Runner, any FEM depicting "a 4Runner" is not relevant and reliable expert evidence, and its probative value is substantially outweighed by the danger of unfair prejudice.  *See* Fed. R. Evid. 401, 402, 403, 702.  Therefore, the FEM must be struck.

## V.
## IF THE COURT DOES NOT EXCLUDE THE UNTIMELY DISCLOSED MATERIALS, THE TOYOTA DEFENDANTS ARE FORCED TO MOVE FOR A CONTINUANCE TO ANALYZE AND TAKE DISCOVERY ON SAME

If the court does not exclude the untimely disclosed materials,  the Toyota Defendants seek a continuance to conduct additional discovery and fully analyze the newly disclosed FEM. The disclosure of these materials on the eve of trial, and the volume of data necessitates a continuance of the June 23rd trial if those materials are not excluded.  Defendants will need considerable time to analyze the input files for the 66 computer simulations that were produced with Plaintiffs' trial exhibits. *See* Exhibit F ¶ 6-7 (APP 51).  Even if all of this information was produced on the USB drive at Friedman's June 13 deposition, a full analysis will require about 3.5 hours per simulation; a total of 231 man hours or about 5.8 man weeks.  *Id.* ¶ 8.  Given that trial is set to begin on June 23, it is impossible for the Toyota Defendants to fully analyze this

information (assuming Plaintiffs have already produced all the necessary information) and prepare to timely and effectively examine Friedman at the trial without being prejudiced. This would include another deposition of Friedman after the Toyota Defendants have has sufficient time to analyze the data. Additional discovery should be limited solely to discovery related to Friedman's FEM simulations and other discovery should remain closed. Otherwise, the Toyota Defendants will suffer severe prejudice. Therefore, the Toyota Defendants respectfully, and reluctantly, request that the Court continue the trial setting. The Toyota Defendants also request that the Court award its attorneys' fees incurred as the result of having to file this Motion and for obtaining the additional discovery requested.

## VI.
## CONCLUSION

Plaintiffs had an obligation to disclose the facts and data that their testifying experts considered as well as any materials used to summarize or support their opinions on November 20, 2013. This included all FEM. Instead of complying with the federal rules, Plaintiffs made a conscious strategic decision to not produce this information. Now, on the eve of trial, Friedman has disclosed that his FEM was completed prior to the Plaintiffs' November 20th deadline, and that any FEM after that time was for the purposes of refinement. Because the federal rules mandate disclosure of this information with their expert disclosures, all of the FEM should be excluded. The Court clearly must exclude the newly disclosed FEM. The Toyota Defendants have not had an opportunity to analyze this information, and would suffer extreme prejudice should Plaintiffs be allowed to use and rely on this work at trial. In addition, the FEM is inadmissible because the 4Runner computer simulation does not fairly illustrate the real-world 4Runner involved in the accident. At a bare minimum, the Toyota Defendants must be allowed additional time to conduct discovery and fully analyze the newly disclosed FEM. This means the

current June 23, 2014 trial setting must be continued to afford the Toyota Defendants sufficient time to fully analyze all of the newly disclosed FEM.

WHEREFORE, PREMISES CONSIDERED, Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. respectfully request that this Court grant theirs Motion to exclude all of the Plaintiffs' FEM, alternatively to exclude all of Plaintiffs' newly disclosed FEM, or alternatively grant their Motion for a Continuance, award them reasonable attorneys' fees, and for such other and further relief to which they may show themselves to be entitled.

Respectfully submitted,

*/s/ David P. Stone*
**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR DEFENDANTS
TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA,
INC., AND TOYOTA MOTOR SALES,
U.S.A., INC.**

## CERTIFICATE OF CONFERENCE

I hereby certify that David P. Stone, counsel for the Toyota Defendants, sought concurrence with counsel for Plaintiffs for the relief sought in this motion.  Plaintiffs did not concur or agree to the relief sought.

*/s/ David P. Stone*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 17th day of June 2014.

*/s/ David P. Stone*