IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLLIE GREENE, Individually as the surviving parent of WYNDELL GREENE, SR., WILLIAM GREENE, as the Administrator of the Estate of WYNDELL GREENE, SR., and MARILYN BURDETTE-HARDEMAN, Individually and as the surviving parent of LAKEYSHA GREENE, | § § § § § § § | |
| | § | CAUSE NUMBER 3:11-cv-0207-N |
| | § | OPI |
| Plaintiffs, | § | |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC. VOLVO GROUP NORTH AMERICA, INC. VOLVO TRUCKS NORTH AMERICA, a DIVISION OF VOLVO GROUP NORTH AMERICAN, LLC., STRICK TRAILERS, LLC, JOHN FAYARD MOVING & WAREHOUSE, LLC and DOLPHIN LINE, INC. | § § § § § § § § § § | |
| | § | |
| Defendants. | § | |

**DEFENDANT STRICK TRAILER, LLC'S  BRIEF IN SUPPORT OF ITS EMERGENCY MOTION TO EXCLUDE EXPERT KEITH FRIEDMAN'S OPINIONS REGARDING UNDERRIDE GUARDS OR, IN THE ALTERNATIVE TO CONTINUE THE TRIAL AND SET SCHEDULE FOR FURTHER DEPOSITION AND RESPONSE BY DEFENSE EXPERTS**

Defendant Strick Trailer, LLC ("Strick"), pursuant to Fed. R. Civ. P. 56(a) and Local

Rules 7.1 and 56.1-56.7, states as follows for its Brief in Support of its Emergency Motion to

Exclude Expert Keith Friedman's Opinions Regarding Underride Guards.

## SUMMARY OF GROUNDS FOR MOTION

The trial date was continued to allow Plaintiffs additional time to provide disclosures for its testifying experts, including Mr. Friedman.  Trial is set for June 23, 2014.  Since receiving an extension of time for expert disclosures, Plaintiffs and Mr. Friedman have engaged in a continuing pattern of failing to timely produce Mr. Friedman's simulations and further, in refusing to produce additional highly relevant simulations he has run.  Plaintiffs failed to disclose any of Mr. Friedman's simulations in their December 8, 2013 response to Strick's 3rd Requests for Production (filed November 8, 2013) which properly requested all documents, photographs, videotapes, computer programs, and other things, and all test materials which pertained to alternative designs.  (See. Ex. C).  Plaintiffs have since produced new simulations created in May and June of 2014 on the eve of trial and Mr. Friedman has testified about other simulations he created after November 20, 2013 which have never been produced.  Plaintiffs' failures to disclose these materials violated Fed. R. Civ. P. 26(a)(2).  Plaintiffs' failure to supplement the disclosures violated Fed R. Civ. P. 26(e), which requires expert witnesses to supplement both information given in their initial report and at their depositions.

Strick is extremely prejudiced in its ability to prepare for trial by these non-disclosures because:

(1)     The point of the Court's order for another deposition was to cure prejudice to Strick and Toyota by the prior non-disclosure of FEA simulations. (Doc. 711);

(2)     Since Plaintiffs had represented to the Court that all of Mr. Friedman's simulations had been produced, neither the Court nor Defendants were aware that Mr. Friedman had, in fact, run at least 39 new FEA simulations involving impacts into the rear of a trailer and

at least 31 other new FEA simulations.  Had the additional simulations been disclosed and

produced, as  required, Defendants could have sought further relief, including production of the

undisclosed FEAs and all their data prior to the deposition, as well as a deposition sufficient in

length to make adequate inquiry on the new simulations;

(3)     Besides the insufficiency in time to inquire,  Mr. Friedman was unable to fully

answer questions about what facts were determined by the new simulations because, as with the

first deposition, he brought the electronic data on a thumb drive but Plaintiffs refused to allow

Mr. Friedman to bring a computer to the deposition;

(4)  Strick's expert was not able to receive the data for the new FEA simulations until

June 16, 2013.  No time remains before trial for Defendant's expert to evaluate and respond to

the simulations, determine appropriate evidentiary challenges and determine if responsive expert

testimony is required;

(5)     At deposition, Strick learned for the first time that Mr. Friedman had run one or

more simulations of the defense reconstructions, shortly after receipt of defense reconstructionist

Vogler's and Carr's reports, dated December 18, 2013.  These FEA's were clearly within the

scope of the order for supplemental deposition.  Mr. Friedman did not bring the input or output

data to the deposition and Plaintiffs' counsel instructed Mr. Friedman not to answer several

questions.  Since Strick requested a meet and confer, Plaintiffs have offered to produce the

simulation about which counsel Dawson inquired, but this does not cure the prejudice of lack of

meaningful discovery, time to evaluate or respond.

(6) Strick has been deprived entirely of discovery on one or more highly relevant new

simulations, the data of which Plaintiffs have failed and refused to produce and as to which

deposition query was blocked by counsel's instructions not to answer questions.

All of the above have deprived Strick of discovery needed for potential legal challenges to the foundation, modeling, and validity of the simulations, of the ability to prepare for effective cross-examination at trial and of an opportunity to seek to name an expert to rebut, reply to or criticize Mr. Friedman's FEA simulations. Excluding the simulations themselves is not an adequate remedy because the FEA simulations form part of the basis of Mr. Friedman's opinions with respect to underride guards and the accident.

## PROCEDURAL HISTORY

On November 14, 2013, Mr. Friedman produced an expert report as to Strick in which he failed to disclose the existence of FEA simulations. On December 8, 2013, Plaintiffs responded to Strick's Third Set of Requests for the Production of Documents (filed November 8, 2013), and failed to produce any simulations. (App. 19-25). On June 6, 2014, in response to Strick's and Toyota's motion to strike Mr. Friedman's FEA simulations, this Court ordered Plaintiffs to produce Mr. Friedman for a two hour deposition on his FEA simulations done after November 20, 2013. At that point in time, Defendants had received from Mr. Friedman only 3 FEA simulation models involving an impact of an SUV into the rear of a trailer, each with several runs.

Between statements made by Mr. Friedman at his supplemental deposition on June 13, 2014, and an analysis of Plaintiffs' trial exhibits (not received until June 9, 2014), Strick has learned that since November 20, 2013, Mr. Friedman and Plaintiffs have engaged in a continuing program of failing to disclose or produce FEA simulations done by Mr. Friedman as part of his work in this case, as detailed above. Accordingly, when the Court sought to remedy the problem

of tardy production of FEA Simulations with a two-hour deposition, neither the Court nor the

Defendants knew of the voluminous amount of new material which needed to be examined.  Nor

did the Court nor the Defendants know that Mr. Friedman would fail to bring all of his FEA

simulations to his deposition and, upon instructions from counsel, refuse to answer questions

about some of them.  (See Ex. A, pp. 711, 822-23, 845; App. 3, 10-12).

 This  failure and refusal to produce these materials has caused extreme prejudice and

detriment to Defendant Strick.  This course of conduct includes but may not be limited to:

1)     **Untimely Production of 39 New FEA Simulations of SUV Impacts with the Rear of a Trailer Created After November 20, 2013**

On June 5, 2014, Plaintiffs filed a second amended exhibit list which contained vague

description  of over 60 "demonstrative videos," including some described as "4Runner into

Strick Trailer."  When Defendant received Plaintiffs' actual trial exhibits on June 9, 2014, the

exhibits turned out to be 39 AVI videos of simulations of an SUV impact into the rear of a trailer

and 31 additional AVIs of simulations.  None of those simulations had ever been previously

produced or disclosed.  The input/output data for these FEA simulations were not produced until

Mr. Friedman's deposition on June 13, 2014.  There, they were produced only via a thumb drive,

which Mr. Friedman could not access to answer questions, because Plaintiffs' refused Strick's

request that he bring a computer to the deposition so he could run queries on his simulations and

be able to answer questions about the data he employed.  Strick was unable to receive the

input/output data and get it into the hands of its expert until June 16, 2014.

2)     **The Failure and Refusal to Produce FEA Simulation Based on Defendants' Reconstruction Of Impact With Guard:**

 At Mr. Friedman's court-ordered deposition on June 13, Defendant learned for the first

W:\Greene\Trial Pleadings\Mot to Exclude Friedman Opinions or
Adjourn\BIS - Mot to Exclude Friedman Opinions or Adjourn10.wpd

5

time that some time after December 18, 2013 (the date Dr. Vogler's and Mr. Carr's expert reports were produced to Plaintiffs), Mr. Friedman ran FEA simulation(s) replicating the Vogler/Carr reconstruction where the guard stayed on.  (Ex. A, pp. 820-21; App. 8-9).  Mr. Friedman had never disclosed the existence of these simulation(s) or produced the input or output data for them.  He did not bring those simulation(s) or the data for them to his court ordered deposition, even though the court made the scope of the deposition all simulations he had done after November 20, 2013, and despite the fact that his notice of deposition *duces tecum* encompassed them.  At the deposition, Mr. Friedman offered contradictory testimony about whether the simulation(s) still existed, first saying they likely did, then saying they may not.  *Id.* at p. 822, 845 App.10, 12.  He offered contradictory testimony about whether the guard remained on or came off in that simulation. *Id.* at 820-21 App. 8-9.

This simulation is highly relevant.  Mr. Friedman first testified that in a simulation in which the guard remained on, as it does in the defense experts' reconstruction, the 4Runner was torn to pieces:

> "The SUV would be completely demolished, basically disintegrated and there would be nothing like what we see in the crash."              (Ex. A, Friedman Dep. III, p. 821; App. 9)

Later, Mr. Friedman attempted to renege on this opinion, stating the simulation was with the guard coming off.  Whether this is the case, or if it is another simulation, it remains highly relevant to the issue of underride guards with alternative designs.

**3)    Plaintiffs' Counsel's Instructions to Mr. Friedman Not To Answer Questions About the Undisclosed FEA Simulations:**

 When Mr. Friedman was asked further questions about the simulations he created based on Defendants' experts' reconstruction and other undisclosed simulations created after

November 20, 2013, Plaintiffs' counsel repeatedly instructed him not to answer some questions

on the subject, while selectively allowing him to answer others.

> Q. And does that data allow one to do measurements as far as making questions to the
> program to tell you how much deformation there would be to each side of the Toyota, sir?
> MR. PITTMAN: I'm going to object to the question and instruct you not to answer.
> Outside the scope.
>
> Q. (BY MR. DAWSON) Mr. Friedman, how would I identify with a trial subpoena what
> information that is contained upon or contained in at your office, sir?
> MR. PITTMAN: I'm going to object and instruct you not to answer. Outside the scope.
>
> (Ex. A, Friedman Dep. III p 822-23; App. 10-11)
>
> Q. (BY MR. STONE) Other than Runs 1 one 9 and then this simulation or modeling of
> Dr. Vogler's reconstruction, have you done any other modeling since November 20,
> 2014? Any other finite element work?
> MR. PITTMAN: Object and instruct you not to answer that question. We're -- we're
> done.
>
> (Ex. A, Friedman Dep. III p 845; App. 12)

The questions Mr. Friedman was instructed not to answer were within the scope of the

deposition since they concerned FEA simulations he had done after November 20, 2013.

> **4)      Doing simulations in which he modeled the 2007 Strick guard, the Canadian
> design guard, and other alternative design guards, some produced, some not
> produced:**

When deposed on January 17, 2014, Mr. Friedman testified the underride guard FEA

runs he made did not include any input on guard strength or attachment strength, only the

direction that the guard remain attached.  (Ex. B, Friedman Dep II p. 412 line 16-17; App. 15).

However, Mr. Friedman later testified he had specifically modeled the 2007 Strick Canadian

guard in some of his simulations. (Ex. B, Friedman p. 553-54; App. 16-17).   He further testified

that he had simulated the Canadian guard not attached as per Strick, but welded onto the trailer.

(Ex. A p. 812-15 App. 5-7 ).

## **ARGUMENT**

For purposes of Rule 37(a), an evasive or incomplete disclosure is treated as a failure to disclose. Fed. R. Civ. P. 37(a)(4). Mr. Friedman's Rule 26 report failed to disclose numerous computer simulations involving crashes into trailers with and without rear bumper guards, involving multiple bumper guard designs. Plaintiffs have never produced a supplemental Rule 26 report concerning these simulations. Plaintiffs were given the opportunity to cure these non-disclosures by producing Mr. Friedman's materials before his supplemental deposition, but failed to do so. These non-disclosures were not justified and were not harmless.

The Federal Rules of Procedure provide that if a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence at trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). Additionally, the court is given discretion to impose other appropriate sanctions, including those listed in Rule 37(b)(2)(A)(I)-(vi). *Id.* To avoid sanctions, the party who is alleged to have failed to comply with Rule 26 bears the burden to show that its actions were substantially justified or harmless. *Avance v Kerr-McGee Chem LLC*, (E.D. Tex., 2006), supra, citing *Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.,* 297 F.Supp.2d 463, 481 (N.D.N.Y. 2003); *Stallworth v. E-Z Serve Convenience Stores,* 199 F.R.D. 366, 368 (M.D.Ala. 2001).

While Strick has asked for a continuance as an alternative to the primary relief it seeks, there is ample precedent that the striking of Mr. Friedman's testimony is the preferable remedy. While a continuance could give Defendants the time they need to review the late disclosures, it would neither punish the Plaintiffs for their conduct nor deter similar behavior in the future. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 573. See also, *Harmon*

*v. Georgia Gulf Lake Charles, LLC*, 476 Fed.Appx. 31, 2012 WL 1623573 (C.A.5 (La.); *Bradley v. U.S.*, 866 F.2d 120, 125 (5th Cir. 1989). Trial has been set for June, after already being reset due to Plaintiffs' previous inability to offer their experts for deposition. Yet another continuance creates a burden on this Court as well as the parties.

## MR. FRIEDMAN'S FEA SIMULATIONS BASED ON DEFENDANTS' EXPERTS' RECONSTRUCTIONS ARE NOT PROTECTED BY WORK PRODUCT PRIVILEGE

Mr. Friedman stated at his supplemental deposition that he had not brought the simulation which used measurements from the Defendants' experts' reconstruction because Plaintiffs' counsel had instructed him not to bring any simulations that were not part of Plaintiffs' exhibits. (Ex.A, p. 841). He also stated that the simulation wouldn't form part of the basis for his opinions. *Id.* at pp. 840-41. However, the expert is required under Rule 26(a)(2)(B) to disclose all "data or information *considered* by the witness in forming the opinions." *TV-3, Inc. v. Royal Ins. Co. of Am.*, 193 F.R.D. 490, 491 (S.D. Miss. 2000) (emphasis in original). "Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions whether or not ultimately relied upon by the expert are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." *Id.* at 491. All of Mr. Friedman's FEA simulations, indeed all materials he considered, including those which he is not ultimately relying on, were required to be produced as part of his expert report and the supplementation thereof.

## CONCLUSION

WHEREFORE, Strick  respectfully requests the Court grant Strick's Motion to Exclude Expert Keith Friedman's Opinions Regarding Underride Guards or, In the Alternative To Continue the Trial and Set Schedule For Further Deposition and Response By Defense Experts,

W:\Greene\Trial Pleadings\Mot to Exclude Friedman Opinions or Adjourn\BIS - Mot to Exclude Friedman Opinions or Adjourn10.wpd

9

and for such other and further relief to which they may show themselves to be entitled.

Respectfully submitted,
DAWSON & CLARK, P.C.

/s/ Donald H. Dawson, Jr.
DONALD H. DAWSON, JR.
Texas State Bar No. 05606500
243 West Congress, Suite 600
Detroit, MI 48226
(313) 256-8900 *(Office)*
(313) 256-8913 *(Facsimile)*

WALTERS, BALIDO & CRAIN, LLP

/s/ S. Todd Parks
S. TODD PARKS
Texas State Bar No. 15526520
900 Jackson Street, Suite 600
Dallas, TX 75202
(214) 749-4805 *(Office)*
(214) 760-1670 *(Facsimile)*

**ATTORNEYS FOR DEFENDANT
STRICK TRAILERS, LLC**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 18, 2014, a true and correct copy of the above and foregoing was forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure.

/s/ Donald H. Dawson, Jr.
DONALD H. DAWSON, JR.

W:\Greene\Trial Pleadings\Mot to Exclude Friedman Opinions or
Adjourn\BIS - Mot to Exclude Friedman Opinions or Adjourn10.wpd

10