IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| OLLIE GREENE, et al, § § § Plaintiffs, § v. § § TOYOTA MOTOR CORPORATION, § et al. § § Defendants. § § | CAUSE NUMBER: 3:11-cv-0207-N JURY TRIAL DEMANDED |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE***

Plaintiffs Ollie Greene, Individually and as the surviving parent of Wyndell Greene, Sr., William Greene, as the Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and as the surviving parent of LaKeysha Greene (collectively hereinafter referred to as "Plaintiffs") submit this Reply Brief in support of their Motion *in limine*.

1. **That Plaintiffs filed a lawsuit against Charles Moody and Forest Transport and any pleadings or testimony related to that lawsuit.**

The Toyota Defendants contend that it should be able to refer to and admit pleadings and testimony from the earlier lawsuit simply because Plaintiffs alleged that Moody was negligence. However, that is not the test. *See Gabarick v. Laurin Maritime (America), Inc*., 406 Fed. Appx. 883, 889 (5th Cir.2010) (applying the exception and citing to the Sherman rule, the panel noted that Rule 8(d)(3) permits a party to "state as many separate claims or defenses as it has, regardless of consistency" and found that where a party "took inconsistent positions in various actions," "the district court erred in treating the allegations in any one of [the party's] many pleadings as an admission sufficient to settle an issue of fact"); *See also Dartez v. Owens– Illinois, Inc*., 910 F.2d 1291, 1294 (5th Cir.1990) ("liberal pleading and joinder rules prevent[ ] the use of arguably inconsistent pleadings and discovery as admissions." (citing *Whatley v.*

*Armstrong World Indus.*, Inc., 861 F.2d 837, 839 (5th Cir.1988)); *see also e.g., Henry v. Daytop Vill.*, 42 F.3d 89, 95 (2d Cir.1994) ("[W]e may not construe [the plaintiff's] first claim as an admission against another alternative or inconsistent claim." (citations omitted)).

Here, the prior pleadings never alleged that Moody or Forest Transports were the "sole" proximate cause of the accident. Nor did the prior pleadings allege that Moody or Forest Transports defectively designed a product that caused the deaths of the Greene family. Therefore, information from the previous pleadings is simply not relevant. In addition, the previous pleadings were filed long before Plaintiffs conducted discovery in this action and obtained experts to opine on the defective products claims. Furthermore, the introduction of the superseded pleadings would risk distracting the jury from the relevant issues by provoking speculation regarding the disposition or settlement of the case against the former defendants. It would effectively cause a trial within the trial. Additionally, allowing Defendants to introduce prior pleadings and question Plaintiffs regarding these pleading will lead to the disclosure of attorney-client communications regarding the decisions to file alternate theories of recovery. Thus, even if the previous complaint was otherwise relevant, the Court should nonetheless exercise its discretion to exclude it under FED.R.EVID. 403 on the grounds that the prior pleading's probative value, if any, is outweighed by its prejudicial effect. *See Vincent v. Louis Marx & Co.*, 874 F.2d 36, 41 (1st Cir.1989) (remanding to district court for reconsideration of admission of prior pleading with instruction to conduct Rule 403 balancing of the probative value of admission against its potential prejudicial effect).

For the reasons set forth above and in Plaintiffs' opening brief, this "evidence" should be excluded from trial as irrelevant, misleading, confusing to the jury, causing undue delay, and

resulting in extreme prejudice to the Plaintiffs. FED.R.EVID. 401, 402, and 403. Defendants' objections should be overruled, and the Court should grant Plaintiffs' motion in limine.

> 2.  **That Plaintiffs entered into settlement with Charles Moody and/or Forest Transport related to the incident that occurred on May 28, 2010.**

Toyota disingenuously argues that settlement evidence should be admitted allegedly on the issue of emotional distress. This is more than a gigantic stretch of logic and is inconsistent with the law and common sense. It is undisputed that FED.R.EVID. 408 prohibits the admission of evidence that an attempt to settle was made, as well as "conduct or statements made in compromise negotiations regarding the claim," for the purpose of establishing liability, the amount of the claim, or for impeachment purposes. FED.R.EVID. 408(a). Indeed, it is universally observed that the admission of such evidence would discourage settlements in either case. See *Quad/Graphics, Inc., v. Fass*, 724 F.2d 1230, 1235 (7th Cir.1983) (evidence of plaintiff's settlement with two defendants in contract action not admissible at trial of remaining defendants); *McHann v. Firestone Tire & Rubber Co.*, 713 F.2d 161, 165–66 (5th Cir.1983) (Plaintiff's covenant not to sue service station was not admissible in products liability action against defendant tire manufacturer). In *McHann*, the Fifth Circuit reversed the trial court's admission of a covenant not to sue given by a plaintiff in a products liability action to a third party service station owner. The plaintiff had sued the defendant Firestone Tire for injuries he sustained when a tire on his vehicle exploded, alleging that the defendant had negligently designed and manufactured the tire. *Id*. at 162–3. Firestone introduced evidence at trial that the plaintiff had previously given a covenant not to sue to a service station owner whose employee had mounted the tire. The Fifth Circuit held the covenant inadmissible under Rule 408, since the evidence "might lead the jury to deny [plaintiff's] claim against Firestone on the perception that Green Oaks Exxon would not have paid the substantial sum of $27,000 if it ... were not the party

at fault." *Id*. at 166. The *McHann* case illustrates the applicability of the policies underlying rule 408 to a situation such as the present one. Here, any use of the prior settlement for Toyota's alleged purpose implicitly requires the jury to infer some indicia of causation in fact from the mere existence of the settlement from Forest Products; otherwise it would be of no logical relevance to the issue of emotional distress. Toyota has no evidence, circumstantial or otherwise, that the earlier settlement lessened Plaintiffs' emotional distress.  Toyota has not designated any expert who could testify that money received from someone other than the manufacturer of the defective fuel system that killed her son would lessen Mrs. Greene's emotional distress. Thus, Toyota's argument that it needs the settlement evidence for this reason is untruthful.  The outlier 9th Circuit case[1] cited by Toyota should not be used to permit the defendants to avoid the policies of rule 408 by using the emotional distress slant as a way of recasting the issue of who caused the injury.

    **3.**    **That Charles Moody was charged with and/or, upon advice of his attorney to avoid prison, took a deferred plea to criminally negligent homicide arising out of the May 28, 2010, incident.**

Toyota has failed to respond to Plaintiffs' objections.  Instead, Toyota blatantly claims that it will use Moody's plea as an admission of liability.  This is precisely why the Court should exclude it.  The issues in this civil case involve principally strict liability claims.  Charles Moody did not design the defective 4Runner or the Strick Trailer.  And as stated in Plaintiffs' motion,

---

[1] The case cited by Toyota, *Md. Cas. Co. v. Knight,* 96 F.3d 1284 (9th Cir. 1996), involved a very narrow case, decided solely on the specific facts of that case where a commercial property insurer brought declaratory judgment action seeking determination of disputes under policy regarding payment for fire loss. Insured filed counterclaim for tortious breach of contract and emotional distress. That court allowed evidence of insured's settlement with loss payee was relevant and properly admitted with respect to emotional distress and bad faith claims against insurer.  None of the facts, reasoning, or analyses in that case applies in this case.

Charles Moody is not a party to this lawsuit and admission of this evidence is not contemplated under the rules of evidence. See, e.g. FED.R.EVID. 404; FED.R.EVID. 609; see also, *United States v. Valentine*, 401 F.3d 609, 614 (5th Cir.2010) ("[A] deferred adjudication does not subject a witness to impeachment with the use of a prior "conviction."). Toyota has failed to address how Moody's plea is hearsay that does not fall under an exception to the hearsay rule. Finally, Toyota ignores that the probative value, if any, of this evidence is substantially outweighed by the danger of unfair prejudice to Plaintiffs. *See* FED.R.EVID. 403; *United States v. Royal*, 972 F.2d 643, 648 (5th Cir.1992). Thus, Plaintiffs' Motion should be granted.

> **4. That Charles Moody allegedly made statements at the scene that he was responsible for the accident or that he felt he had "killed" someone.**

Contrary to Toyota's contention, these statements were not made, and it made, are not excited utterances. More importantly, the statements, if made, were made without Moody's knowledge that the acts of others led to the collision and that the defective designs of the Toyota 4Runner and the Strick was the proximate cause of the deaths. FED.R.EVID. 401, 403, 602, 703, 704, and 802.

> **5. That Charles Moody allegedly was convicted and/or placed on probation for possession of marijuana in "1996 or 1997."**

Toyota has no objection to this request. Accordingly, Plaintiffs ask that it be granted.

> **6. Any reference to any conduct or statement made during any compromise negotiations including, but not limited to, any mediation, and that there be no mention whatsoever that any person or entity has offered or failed to offer any amount in compromise and settlement of the claims herein.**

Toyota has no objection to this request as to the present case. Accordingly, Plaintiffs ask that it be granted. In addition, for the reasons stated above, Plaintiffs contend that the settlement with Charles Moody and Forest Products should also be excluded.

    7.    **Any testimony from the investigating officers as to whether Charles Moody or Danny Sprinkle was the "cause" of the accident or cause of the deaths of the Greene family.**

Contrary to Toyota's contention, Trooper Barkley does not pass muster under Daubert, and it is Toyota that has the burden of establishing his qualification and reliable methodology. It has not done so. As a general rule, police officers' lay "opinions as to the cause of an automobile accident formed by viewing subsequent evidence at the scene" are excluded under Rule 701. See 38 A.L.R.2d 13 § 22; *Ernst v. Ace Motor Sales, Inc.*, 550 F.Supp. 1220, 1223 (E.D.Pa.1982), aff'd without op., 720 F.2d 661 (3d Cir.1982)(officer's lay opinion testimony was admissible only to the extent that it pertained to the point of impact). Barkley's testimony, and that of the other officers, is also irrelevant and unfairly prejudicial, and thus is inadmissible. See FED. R. EVID. 401, 402, 403.

    8.    **Any Evidence or Reference by Defendants or their experts as to whether any of the vehicles or components complied with, met, or exceeded any Federal Motor Vehicle Safety Standard (FMVSS) or that any of the standards governed the risk of harm alleged in this action, as such testimony is hearsay, incompetent, irrelevant and unfairly prejudicial, and thus is inadmissible.**

Toyota's response to this request is misleading and inaccurately states the law. In Plaintiffs' Complaint, Plaintiffs allege the following:

> ¶ 36.  There were no mandatory safety standards or regulatory adopted and promulgated by the federal government or an agency of the federal government that were applicable to the SUV at the time of manufacture and that governed the product risk that caused this harm.

As the Court can conclude from the various pleadings and expert report, the primary issue related to the defect in the Toyota 4Runner has to do with the placement of the fuel tank/system in the 4Runner. Toyota has failed to identify any safety standard that governs the placement of the fuel tank. Accordingly, there is no § 82.008(b) presumption. *Kia Motors Corp. v. Ruiz*, --- S.W.3d ----, 2014 WL 1258169, 57 Tex. Sup. Ct. J. 375 (Tex. Mar 28, 2014).

And the other safety standards are precluded under FED. R. EVID. 401, 402, 403, 601, 602, 703, 704, and 802. Thus this motion should be granted.

  **9.**   **Any testimony or argument that defendants are entitled to any presumption of non-liability as to any issue in this case on account of defendant allegedly meeting a minimum standard under the Federal Motor Vehicle Safety Standard, as such testimony is irrelevant and unfairly prejudicial, and thus is inadmissible.**

See response to item 8.

  **10.**   **Any Evidence or Reference by Defendants or their experts as to whether receiving "safety ratings" confirms that the vehicle is "safe" or that this means the vehicle is not defective. Considering that the tests simulate collisions between two vehicles of the same weight and height, the scores do not apply to mismatched vehicles. The tests also use a 50th percentile dummy, which doesn't measure the impact on people who may be larger or smaller. Any such testimony is hearsay, incompetent, irrelevant and unfairly prejudicial, and thus is inadmissible.**

Toyota's Response makes no cogent explanation as to how these ratings are relevant to the issues at hand. There are no ratings that compare Toyota's placement of its fuel tanks with those of competing manufacturers. Thus, these ratings are irrelevant and their admission would be more prejudicial than probative. FED. R. EVID. 401, 402, 403, 601, 602, 703, 704, and 802.

  **11.**   **Any Evidence or Reference by Defendants and their experts to the design characteristics and/or crash performance of vehicles other than the vehicles involved in the May 28, 2010, incident.**

Plaintiffs' motion is intended to cover those vehicles that are clearly dissimilar. See FED. R. EVID. 401, 402, 403, 602, 702, and 704.

  **12.**   **Limit Defendants' Expert Witnesses to the Opinions Given in Their Written Reports, unless otherwise excluded by previous Order. And, expert witness opinions and testimony that differ from the expert's written report shall not be elicited without prior notice to opposing counsel and opportunity to object.**

Contrary to Toyota's contention, Defendants' experts were required to provide all opinions in their written reports, in deposition testimony, or in timely supplementation.

Defendants' expert should be prohibited from expressing new and never before disclosed opinions. Any other opinions are improper. See, FED R. CIV. P. 37 and FED. R. EVID. 401, 402, 403, 602, 703, and 802.

> 13. **Any testimony, documentation and other evidence from experts that was received after the experts' deposition including, but not limited to experts such as Stephen Werner, Kenneth Tandy, Timothy Cheek, and VGNA who submitted new evidence on May 23, 2014, disguised as supplemental disclosures.**

Toyota has no objection to this request. Accordingly, Plaintiffs ask that it be granted.

> 14. **Any Testimony from Defendants' Expert Witnesses that they "do not have any criticisms" of the other drivers, vehicles, or trailers involved in the May 28, 2010.**

Toyota's Response does not address Plaintiffs' request. This request does not relate to Charles Moody, although Plaintiffs contend that Defendants have no qualified expert who can opine on Mr. Moody's driving. Nevertheless, this motion relates to bolstering of co-Defendants by each other. During the depositions of Defendants' expert witnesses, several counsel for defendants asked the experts whether they had "criticisms" of that **defendant's** driver, vehicle, and/or trailer. In most instances, the expert indicated that he/she had no such criticisms. However, these experts were not retained for the purpose of investigating criticisms such as those about which the questions are directed. Allowing Defendants to re-ask these questions at trial (and receive the same responses) would give the jury the impression that the experts applied experience and an acceptable methodology in investigating the other drivers or vehicles but found no criticisms. In other words, these questions have no probative value, yet the prejudicial effect of these responses would be substantial. FED.R.EVID. 401, 402, 403, 601, 602.

> **15.    Any testimony from Defendants or their experts or other evidence of the statistical or other evidence of dissimilar accidents, crashes or research from source such as National Automotive Sampling System ("NASS") Collision Data System ("CDS"), FARS database, etc. to defend against the strict liability claims.**

Plaintiffs stand by their previous objection. It is undisputed that reliability issues arise if the collected data from the National Automotive Sampling System ("NASS") Collision Data System ("CDS") or testing from the NHTSA is not handled and categorized correctly under the circumstances. If a correct classification of vehicles, circumstances and/or accidents is not made, the methodology becomes unreliable, resulting in conclusions that are skewed, erroneous, and highly prejudicial. That is what happened here. Therefore, even if defendants were going to use the NASS database (which Plaintiffs contend is inappropriate here) the crash parameters should have included substantially similar rear-end highway collisions and substantially similar vehicles and components. Here, there is no evidence that the experts eliminated the clearly inapplicable vehicles and/or included all substantially similar vehicles. Rear end accidents are by no means unusual. But inclusion of similar accidents, similar vehicles, similar model years, etc. would have completely changed the results. Instead, defendants' decisions to rely on skewed crash comparisons and inapplicable research or surveys make the experts' testimony too questionable for jury consumption. The methodology the experts claim to have used cannot be attacked simply by cross examination. *See* FED. R. EVID. 401, 402, 403, 602, 702, and 704.

> **16.    Any testimony that Charles Moody was allegedly on his phone at the time of the accident. According to the testimony of Officer Barkley (74:22 – 75:7), Moody was not on his phone. Phone records also confirm that Moody was not on his phone at the time of the accident.**

The objective evidence is clear that Charles Moody was not on his phone at the time of the collision. Admission of such prejudicial and irrelevant evidence should not be permitted. *See* FED. R. EVID. 401, 402, 403, 602, and 802.

**17.**     Any testimony from, or regarding any knowledge held by, Jan Hoover. Hoover was first designated by Strick on February 26, 2014, as a person with knowledge. This designation look place long after the close of discovery, which occurred on December 10, 2013.

Toyota has no objection to this request. Accordingly, Plaintiffs ask that it be granted.

**18.**     The documentation and any testimony regarding the documentation that was first produced by Strick on February 26, 2014, including but not limited to documents produced as Strick's bates stamped documents number Strick05395 - 05405. This information was produced long after the close of discovery, which occurred on December 10, 2013.

Toyota has no objection to this request.

**19.**     The documentation and any testimony regarding items that were first disclosed by Strick on February 19, 2014, in Strick's Reply to its Motion for Summary Judgment [doc. 372], which was stricken by the Court [doc. 615]. This includes, but is not limited to, the newly alleged "company policy," manufacturing process, quality assurance process, distributor assembly requirement or instructions, electronic database, and inspection process. This information was not produced during discovery, which closed on December 10, 2013.

Toyota has no objection to this request.

**20.**     The documentation and any testimony regarding the items that were first disclosed by Strick on November 26, 2013, which was (a) more than two years after Plaintiffs' October 4, 2011, request for documents was served on Strick; (b) more than a year after Plaintiffs' May 14, 2012, depositions of Strick's corporate representatives were completed; and (c) just two weeks before discovery closed on December 10, 2013. This request includes documents produced as Strick's bate stamped document numbers Strick03892 - 05375.

Toyota has no objection to this request.

**21.**     Any testimony from or regarding any knowledge held by Robert Lobsinger, Amanda Hill and Robert Williams, all of whom were first designated by Dolphin on December 10, 2013, which was the exact date upon which discovery closed in this matter.

Toyota has no objection to this request.

**22.**     Any testimony from witnesses "restating" opinions of other experts retained in this case, as such restatements would be improper bolstering and unduly prejudicial.

Toyota has failed meaningfully to address the prejudice that would occur if one of the more than a dozen experts hired by Defendants is allowed simply to bolster the opinions of their co-Defendants.  None of the experts took any steps to validate the other experts' work.  An expert may not simply repeat or adopt the findings of other experts without investigating them.  *In re Polypropylene Carpet Antitrust Litig.*, 93 F.Supp.2d 1348 (N.D.Ga.2000) (citing *In re TMI Litig.*, 193 F.3d 613, 715–16 (3d Cir.1999) (finding blind reliance by expert on other expert opinions demonstrates flawed methodology under Daubert ); *TK–7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732–33 (10th Cir.1993) (excluding expert opinion relying on another expert's report because witness failed to demonstrate a basis for concluding report was reliable and showed no familiarity with methods and reasons underlying the hearsay report)).  *See also* FED. R. EVID. 401, 402, 403, 601, 702, 802.  Thus, Plaintiffs' request should be granted.

**23.     Any testimony from Defendants or their experts referring to the May 28, 2010, collision as "severe" or similar description.**

**24.     That this Motion has been filed, or disclosing any ruling by the Court in response to this Motion, suggesting or inferring that Plaintiffs has moved to prohibit proof or that the Court has excluded proof on any particular matters**.

Toyota appears to have no objection to this request.  Accordingly, Plaintiffs ask that it be granted for Plaintiffs.

**25.     The probable testimony of a witness who is absent, unavailable, or not called to testify at the trial or in a deposition because this would constitute putting unsworn testimony before the jury.**

Toyota appears to have no objection to this request.  Accordingly, Plaintiffs ask that it be granted for Plaintiffs.

**26.** **Any argument, statements, or testimony from Defendants or its counsel that a witness' testimony is a judicial admission or any similar argument, statement or testimony that would imply that the witness' testimony can be a judicial admission.**

Toyota has not responded completely to this request. Plaintiffs ask that it be granted as requested.

**27.** **Placing before the jury in any form or fashion any out-of-court statement or report of a person not present in court to testify and be cross-examined by counsel for Plaintiffs (except in the case of depositions taken in the case and otherwise admissible documents), as this information is inadmissible.**

Toyota has not responded completely to this request. Plaintiffs ask that it be granted as requested.

**28.** **Any reference to written discovery responses that have been replaced by Plaintiffs with an amendment as such information is irrelevant and unfairly prejudicial.**

Toyota has not responded specifically to this request. Plaintiffs ask that it be granted as requested.

**29.** **Any expert opinion testimony, or reference thereto, offered on behalf of Defendants by witnesses not designated timely as experts and who have not provided expert reports pursuant to the deadlines set forth in the Scheduling Order entered in this case.**

Toyota appears to have no objection to this request. Accordingly, Plaintiffs ask that it be granted for Plaintiffs.

**30.** **Any reference to any witness sponsored by Defendants as an "expert," or any other similar term, without an express ruling by the Court that the witness is qualified as an expert to testify to opinions concerning the specific subject areas of the witness' testimony.**

Toyota has not responded completely to this request. Plaintiffs ask that it be granted as requested.

**31.    Commenting upon any failure of Plaintiff' to call any witnesses equally available to all parties.**

Toyota appears to have no objection to this request. Accordingly, Plaintiffs ask that it be granted for Plaintiffs.

**32.    Defendants offering documents or exhibits into evidence that were not produced timely in response to discovery requests in this litigation, with the exception only of timely trial impeachment evidence, if any.**

Toyota appears to have no objection to this request. Accordingly, Plaintiffs ask that it be granted for Plaintiffs.

**33.    Disputes in this case concerning discovery matters including, but not limited to, motions to compel, motions for protective order, disputes arising during depositions, or any other matter relating to pre-trial discovery disputes, as this information is inadmissible.**

Toyota appears to have no general objection to this request. However, there should be no prohibition from discussing and questioning witnesses regarding information that Plaintiffs were unable to obtain from Defendants, including the information that forms the basis of the Spoliation motions. Otherwise, Plaintiffs ask that it be granted for Plaintiffs.

**34.    Requesting Plaintiffs' witnesses or attorneys to produce documents, photographs, statements or any other material from their files or to demand or request further or additional discovery, physical documentation, or other requests for information or evidence of any kind or speculating about documents that have not been produced during the course of the trial in the presence of the jury, as this information is inadmissible.**

Toyota appears to have no general objection to this request. However, there should be no prohibition from discussing and questioning witnesses regarding information that Plaintiffs were unable to obtain from Defendants, including the information that forms the basis of the Spoliation motions. Otherwise, Plaintiffs ask that it be granted for Plaintiffs.

  **35.**  **Any and all references to objections made by Plaintiffs in answers to written discovery requests, hearings and depositions, as well as objections made by Plaintiffs in any other discovery proceeding, as well as reference to any refusal of Plaintiffs to answer questions or produce documents that were objected to, as this information is inadmissible.**

 Toyota appears to have no general objection to this request. However, there should be no prohibition from discussing and questioning witnesses regarding information that Plaintiffs were unable to obtain from Defendants, including the information that forms the basis of the Spoliation motions. Otherwise, Plaintiffs ask that it be granted for Plaintiffs.

  **36.**  **That Defendants, their attorneys, and all witnesses involved in this lawsuit be instructed not to request or refer to the contents of any pleadings that have been superseded by the current court sanctioned pleadings on file in this case, as this information is inadmissible.**

 Toyota has not responded specifically to this request. Plaintiffs ask that it be granted as requested.

  **37.**  **Before the Court rules on the law applicable to this case, any statement of the law other than regarding the burden of proof and the basic legal definitions all counsel believe to be applicable**.

 Plaintiffs contend that Defendants should not be permitted to address the law until the Court has determined what law is applicable and has charged the jury.

       Respectfully Submitted,

| /s/ Aubrey "Nick" Pittman | /s/ Daryl K. Washington |
|---|---|
| AUBREY "NICK" PITTMAN | DARYL K. WASHINGTON |
| State Bar No. 16049750 | State Bar No. 24013714 |
| | |
| **THE PITTMAN LAW FIRM, P.C.** | **LAW OFFICES OF DARYL K. WASHINGTON P.C.** |
| 100 Crescent Court, Suite 700 | 325 N. St. Paul St., Suite 1975 |
| Dallas, Texas 75201-2112 | Dallas, Texas 75201 |
| 214-459-3454 | 214-880-4883 |
| 214-853-5912 – fax | 469-718-0380 - fax |
| pittman@thepittmanlawfirm.com | dwashington@dwashlawfirm.com |

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 19, 2014, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

                                                /s/ Aubrey "Nick" Pittman
                                          AUBREY "NICK" PITTMAN