IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| OLLIE GREENE, et al, § | |
| § | |
| Plaintiffs, § | CAUSE NUMBER: 3:11-cv-0207-N |
| v. § | |
| § | |
| TOYOTA MOTOR CORPORATION, et al. § | |
| § | |
| Defendants. § | JURY TRIAL DEMANDED |

**PLAINTIFFS' MOTION TO EXCLUDE EXPONENT TEST**

Plaintiffs Ollie Greene, Individually and as the surviving parent of Wyndell Greene, Sr., William Greene, as the Administrator of the Estate of Wyndell Greene, Sr. and Marilyn Burdette Hardeman, Individually and as the surviving parent of LaKeysha Greene (collectively hereinafter referred to as "Plaintiffs"), file this motion to exclude the crash testing done by Exponent and all references thereto and in support show as follows:

**I.**

**SUMMARY**

According to the report of Toyota expert, Mickey Marine, a company called Exponent allegedly conducted a December 17, 2013, "single-moving-vehicle crash test," (the "Exponent Test") unwitnessed by Plaintiffs' experts, allegedly using a stationary 2010 Toyota 4Runner as the "target vehicle" and a moving 2008 Volvo 630/1981 Great Dane flat-bed trailer as the "bullet vehicle." Toyota has indicated that it plans to introduce the video footage of this crash test and the related testimony of Marine, Lee Carr, and other witnesses to discuss this alleged test. However, the photographs and related testimony regarding the crash test describe a crash that is substantially dissimilar to the May 28, 2010, accident, wherein multiple vehicles and multiple impacts of moving vehicles were involved. Although the video of an event is represented to be a

"potential" re-enactment of a single event that occurred during the May 28, 2010, crash it is clearly not substantially similar to the underlying accident. Because of the material differences between the crash test and the underlying accident, the video and all testimony related to it must be excluded.

## II.
## ARGUMENT AND AUTHORITIES

Toyota has indicated in previous pleadings (Dkt. No. 542) that it seeks to offer the Exponent Test as evidence, allegedly, of a recreation of the May 28, 2010 collision. However, the case law on the introduction of crash tests requires that the tests be substantially similar. "Admissibility of evidence depends upon a foundational showing of substantial similarity between the tests conducted and actual conditions." *Ramseyer v. General Motors Corp.*, 417 F.2d 859, 864 (8th Cir.1969). Because of the material differences between the crash test and the underlying accident, the video and all testimony related to it must be excluded. *See e.g. Hafstienn v. BMW of N. Am.*, LLC, 194 Fed.Appx. 209, 213 (5th Cir.2006) (evidence of crash tests properly excluded where there are "material differences between the accident and the crash test."); *see also, Barnes v. General Motors Corp.*, 547 F.2d 275 (5th Cir.1977); *Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279 (Tex.1964). In *Chase v. General Motors*, 856 F.2d 17, 20 (4th Cir.1988), the Fourth Circuit noted:

> In products liability cases, expert witnesses necessarily may play a significant part .... When their testimony, however, is based upon the results of tests which were conducted under such different circumstances than those obtaining at the time of the accident complained of so as to make the results 'largely irrelevant, if not misleading,' [citing *Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1051 (4th Cir.1984) ], that testimony must be excluded.

*See, also Montgomery v. Mitsubishi Motors Corp.*, 2006 WL 1967361, *6 (E.D.Pa. June 6, 2006)(the manner in which the tests were conducted were not substantially similar to the accident that caused the injuries); *Bado–Santana v. Ford Motor Co.*, 364 F.Supp.2d 79, 99–100 (D.Puerto

Rico 2005)(same); *Guild v. General Motors Corp.*, 53 F.Supp.2d 363, 367 (W.D.N.Y.1999). Here, it is undisputed that the May 28, 2010, accident involved multiple vehicles, i.e. a Volvo tractor towing a Great Dane trailer; a 2010 Toyota 4Runner; a 2006 Toyota Corolla; and a 2005 Freightliner tractor towing a 2004 Strick dry-freight trailer. Likewise, there is no dispute that the accident involved four occupants in the 4Runner. It is also acknowledged that the accident involved multiple collisions, whereby after the Volvo tractor struck the 4Runner, the 4Runner eventually made contact with the Corolla then the Strick trailer. The experts all agree that during the sequence of crash events, the 4Runner yawed and made lateral contact with the Strick trailer. All of the vehicles were still moving, except perhaps the Freightliner and Strick trailer, which were allegedly stopped in the middle of an active freeway. Likewise, there is no disagreement that a fire erupted in the 4Runner during the crash sequence as a result of a breach of the 4Runner's fuel system.

As regarding the Exponent Test, it is in no way substantially similar to the May 28, 2010, accident. That is because, among other things, the staged crash test: (1) does not involve exemplars of the other vehicles that were involved in the original crash; (2) does not recreate all impacts in the accident; (3) uses an impact point between the Volvo tractor and the 4Runner that is different from the impact point in the accident; (4) did not include the braking of the Volvo tractor before impact as the driver in the subject incident described; (5) ignores the other evasive actions taken by the Volvo driver during the actual accident; (6) uses different impact speeds than those suggested by Toyota's expert; and (7) uses a stationary Toyota 4Runner. Without using all vehicles to recreate all collisions, there is no way to determine what caused the deaths of the Greene family or to determine how the fire erupted in the 4Runner. In fact, Marine does not profess to offer a fire origin opinion, nor does he have any knowledge of the fuel system of the 4Runner. Furthermore, Marine could not have set up a proper substantially similar recreation of the accident since he admits that he is not

3

even aware of the full sequence of events of the May 28, 2010, crash. Marine Depo at 29:13-19 (Pltfs' APP 0134)[1]. In other words, although the video is represented to be a "potential" re-enactment of a single event that occurred during the May 28, 2010, crash it is clearly not substantially similar to the underlying accident.

In addition, there are other issues with the testing. Toyota did not use high-speed cameras underneath the crash vehicle to detect the motion of the defective fuel system components or the presence of the fuel leak, although Marine acknowledges that NHTSA crash tests are known to use high-speed cameras underneath a crash vehicle to be able to evaluate such results. Marine Depo at 26:15 – 28:6 (Pltfs' APP 0131-33). In addition, Marine has also acknowledged that the narrator, whose voice is heard on the walk-up portion of the crash test videotape, allegedly describing the results of the test is Kurt Kern, who is Toyota's lead trial counsel. Marine Depo at 42:17 – 43:17 (Pltfs' APP 0135-36). This is hardly independent expert testimony. It should also be an unacceptable methodology to have trial counsel dictate the terms of the crash set-up and narrate the alleged results of the crash test. In addition, Plaintiffs were not provided with the opportunity to have representatives, i.e., a videographer, a photographer, an attorney, and an expert, present at this particular test, or during any crash test or any test involving vehicle-to vehicle collisions conducted by defendants that may pertain to this case.

Moreover, it is clear the Marine observed just one test, allegedly, and is attempting to provide an opinion that would leave the jury with the impression that if there was no fuel spillage in the crash test, then there could not have been any fuel spillage in the May 28, 2010, crash. However, it is clear from crash testing done by NHTSA and the Insurance Institute for Highway Safety that proper crash test protocol requires that a series of tests be performed under varying

---

[1] "Pltfs' APP" refers to the original Appendix that was filed by Plaintiffs on March 17, 2014, in support of the motion to exclude this witness.

4

conditions. A single crash test, with no virtual testing to recreate the crash, is not a reliable or acceptable methodology. Otherwise, the opinions are no more than just subjective belief or unsupported speculation. Other valid tests are not limited to a single crash event and usually are recreated in virtual simulation. Therefore, even if Toyota were able to get past the lack of a substantially similar recreation of the accident (which it cannot) Toyota has not refuted that Marine used an inappropriate and unacceptable methodology to develop a substantially similar recreation of the May 28, 2010, accident. As a result, the Exponent Test and Marine's "observations" or opinions of it are unreliable under the standards of *Daubert* and *Kumho*.

In a previous pleading, Toyota cited *Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 6476371 (N.D.Tex. Nov 20, 2013) for the proposition that the Exponent Test is admissible. However, in *Orthoflex*, the court held the expert must be able acknowledge the differences and show that the methods and principles applied to the facts are nevertheless reliable. 2013 WL 6476371 at *8. Here, however, Marine is not even aware of the details of the May 28, 2010, accident and thus could not have provided facts and principles of these differences. In fact, he has never been involved in a multiple impact test like this one. Nevertheless, not even *Orthoflex* contemplates that a test would have as many material differences as what exists between the Exponent Test and the subject accident. Since Marine and the other experts have only bottom line conclusions based on incomplete data and unacceptable testing protocol, the opinions and the accompanying test are not admissible. *See Bourelle v. Crown Equipment Corporation*, 220 F.3d 532, 537 (7th Cir.2000) ("Where the proffered expert offers nothing more than a 'bottom line' conclusion, he does not assist the trier of fact.") (citing *Clark v. Takata Corp.*, 192 F.3d 750, 756 (7th Cir.1999)).

In *Hafstienn v. BMW of N. Am., LLC*, 194 Fed.Appx. 209, 213 (5th Cir.2006) the Fifth Circuit affirmed the district court's decision to exclude crash test evidence as irrelevant under

5

Rule 401. The district court concluded for several reasons that the test vehicle was not "substantially similar" to the one involved in the crash in question, and that the crash test occurred under dissimilar conditions. *Hafstienn*, 194 Fed.Appx. at 212–13. The Fifth Circuit noted that there were several "material differences between the accident and the crash test." *Id.* at 213. That is no different from here. In addition, the issue here, as relates to the 4Runner's fuel system is whether it was defectively designed and whether the fuel system was breached on May 28, 2010 in a way to lead to a fuel-fed fire. "The question is not simply whether it is 'possible' for something unfortunate to occur during an accident but whether 'the design creates unreasonable danger' according to 'general negligence principles.'" *Pries v. Honda Motor Co.*, 31 F.3d 543, 545 (7th Cir.1994) (citing *Miller v. Todd*, 551 N.E.2d 1139, 1141 (Ind.1990); *Bammerlin v. Navistar Int'l Transp. Co.*, 30 F.3d 898 (7th Cir.1994)). Marine is not a design expert. Nor is he a fire cause and origin expert. Marine's "observation," which is simply a restatement of remarks made by Toyota's trial counsel during his narration of the crash test, is simply not relevant and is more prejudicial than probative.

In addition, Toyota has failed to provide a justification for not excluding the Exponent Test since its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed.R.Evid. 403. For these and other reasons, Plaintiffs move that the Court exclude all references to the Exponent Test and instruct Toyota's counsel to cease from referring to the Exponent Test or using it in any manner.

Respectfully Submitted,

/s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

/s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714

**LAW OFFICES OF DARYL K. WASHINGTON P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas 75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

/s/ Greg Marks
GREG MARKS
State Bar No. 12994900

**GUAJARDO & MARKS LLP**
One Galleria Tower
13355 Noel Rd. Suite 1370
Dallas, TX 75240
972-774-9800
greg@guardjomarks.com

/s/ Paul Stafford
PAUL STAFFORD
State Bar No. 00791716

**STAFFORD LAW FIRM, P.C.**
2736 ROYAL LANE #59617
DALLAS, TX 75229
214-649-3405
214-206-9445 fax
paul.stafford@staffordfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2014, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

    /s/ Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN