IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **OLLIE GREENE**, *et al.*, § | |
| § | |
| Plaintiffs § | |
| § | |
| v. § | CAUSE NUMBER: 3:11-cv-0207-N |
| § | |
| **TOYOTA MOTOR CORPORATION**, *et al.,* § | |
| § | |
| Defendants. § | |

## TOYOTA DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE EXPONENT TEST

TO THE HONORABLE COURT:

Defendants Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales U.S.A., Inc. (collectively, the "Toyota Defendants") file this Response to Plaintiffs' Motion to Exclude Exponent Test and for such would respectfully show the Court as follows:

## I.
## SUMMARY

This case and accident scenario involves, initially, a high speed impact of a 2008 Volvo tractor-trailer into the rear of a 2010 Toyota 4Runner. On December 17, 2013, the Toyota Defendants performed a crash test under conditions substantially similar to the initial impact between the Volvo tractor-trailer and 2010 Toyota 4Runner. The crash test was performed consistent with the parameters of the accident reconstruction of Plaintiffs' expert, Jeff G. Vick to rebut Plaintiffs' allegations that the 4Runner's fuel system was compromised during the initial impact between the Volvo tractor-trailer and the 4Runner. Because the crash test is substantially

similar to the initial impact between these two vehicles, it is admissible evidence. Therefore, Plaintiffs' Motion should be denied.

## II.
## ARGUMENTS AND AUTHORITIES

**A. The Toyota Defendants' Crash Test is Substantially Similar to the Initial Impact Between the Volvo Tractor-Trailer and the 2010 Toyota 4Runner.**

*1. The Crash Test is Admissible under Fifth Circuit Case Law.*

A district court has wide discretion to admit crash test films conducted under substantially similar conditions as the underlying accident. *Barnes v. Gen. Motors Corp.*, 547 F.2d 275, 277 (5th Cir. 1977); *McCune v. Graco Children's Prods., Inc.*, 495 Fed. Appx. 535, 540 (5th Cir. 2012). If the proper foundation is laid, the court should admit crash test evidence. *Shipp v. Gen. Motors Corp.*, 750 F.2d 418, 427 (5th Cir. 1985). Perfect identity between experimental and actual conditions is neither attainable nor required. *Ramseyer v. General Motors Corp.,* 417 F.2d 859, 864 (8th Cir. 1969). In order for the crash test to be admissible, it is not required to precisely reproduce all factors existing at the time of the accident. *Id.*; *Jordan v. Gen. Motors Corp.*, 624 F. Supp. 72, 79 (E.D. La. 1985). Instead, it is necessary to reproduce the conditions in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed. *Shipp*, 750 F.2d at 427; *see also Barnes*, 547 F.2d at 277. When the same products are used in a crash test as an accident, courts are likely to find that the crash test is substantially similar and therefore admissible. *Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 6476371, at *7 (N.D. Tex. Nov. 20, 2013); *see also Hafstienn v. BMW of N. Am., LLC*, 194 Fed. Appx. 209, 212 (5th Cir. 2006).

> *2. The Crash Test is Substantially Similar to the Initial Impact Between the Volvo Tractor-Trailer and the 2010 Toyota 4Runner.*

On December 17, 2013, Carr Engineering, in conjunction with Exponent, Inc., conducted a crash test of a substantially similar impact event to the initial impact between the Volvo tractor-trailer and the 4Runner. The impact configuration and speed selected for the crash test were consistent with the opinions offered by Plaintiffs' accident reconstructionist, Jeff G. Vick ("Vick"). In the crash test, a Volvo tractor-trailer matching the subject Volvo tractor, and a trailer similar to the subject trailer, struck a Toyota 4Runner matching the crash-involved Toyota 4Runner. *See* Doc. No. 537 at 44. The vehicles, including the trailer, were purposely weighted to match the weights of the crash involved vehicles. The impact speed of the Volvo tractor-trailer was set up to fall within the range of net impact speeds offered by Vick. Vick opined in his deposition, and again at trial, that the Volvo tractor-trailer was travelling at approximately 54 miles per hour when it struck the rear of the 4Runner, and that the 4Runner was travelling at approximately 11-16 miles per hour when it was struck from the rear by the Volvo tractor-trailer. The closing speed was, according to Vick, between 38 and 43 miles per hour. Vick acknowledged during his testimony that the closing speed is the relevant parameter when considering vehicle speeds. Based on Vick's impact speeds, the crash test was conducted with a closing speed of 38.4 miles per hour.

The point of engagement between the crash test vehicles was also similar to the point of engagement proposed by all of the accident reconstructionists in this case, including Vick. They opined that the Volvo tractor-trailer fully overlapped the rear of the 4Runner in the initial impact. Consistent with these opinions, the crash test was configured so that the Volvo tractor-trailer fully overlapped the rear of the 4Runner. The crash test therefore reproduced the conditions of the initial impact between the Volvo tractor-trailer and the 4Runner in "substantial particulars as

to afford a fair comparison in respect to the particular issue to which the test is directed," and it is therefore admissible. *Barnes*, 547 F.2d at 277.

Moreover, just because all of the Toyota Defendants' experts did not personally perform or witness the crash test does not mean that they cannot rely on it or refer to it. *Green v. Ford Motor Co.*, 2012 WL 10670462 (N.D. Miss. Sept. 7, 2012). An expert may base his testimony "upon professional studies or personal experience" so long as he "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at *7; citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

### B. Plaintiffs' Arguments are Meritless.

Plaintiffs' arguments regarding the inadmissibility of the crash test are meritless. Plaintiffs' main contention is that the crash test is not admissible because it is not a recreation of the entire accident sequence. The Toyota Defendants never claimed the crash test was conducted to recreate the entire accident sequence. Rather, it was conducted only to recreate the initial impact which Plaintiffs claim caused the breach in the fuel system of the 4Runner. Moreover, the finite element simulations conducted by Plaintiffs' expert Keith Friedman was offered (and admitted) as a purported recreation of the initial impact between the Volvo tractor-trailer and the 4Runner and not a recreation of the entire accident sequence. *See* Trial Exhibits 738, 739, 740. These computer simulations only depict the initial impact between the Volvo tractor-trailer and the 4Runner. More importantly, they are being offered in support of Plaintiffs' theory that there was a breach in the 4Runner's fuel system during this initial impact. In order to rebut Plaintiffs' allegations and prove that there was not a breach in the fuel system during the initial impact, the Toyota Defendants conducted the substantially similar crash test. The crash test and its results

will help the jury understand that the 4Runner's fuel system was not breached in the initial impact with the Volvo tractor-trailer and the 4Runner.

Second, Plaintiffs rely on various cases to support of their argument that there are material differences between the crash test and the actual initial impact between the Volvo tractor-trailer and the 4Runner. However, none of these cases support exclusion of the crash test. The Toyota Defendants' crash test is highly distinguishable from experiments which have been excluded by Fifth Circuit Courts. For example, in *Hafstienn* the court properly excluded a crash test proffered by BMW because the test utilized a Volkswagen vehicle when Plaintiffs' claims involved a BMW 328 sedan. 194 Fed.Appx. At 212-213. Moreover, the Volkswagen and BMW vehicles differed in length, weight, centers of gravity, and tip-over ratios. *Id.* at 212. Therefore, the court concluded that BMW's crash test video was irrelevant and would likely confuse and mislead the jury. *Id.* There are also distinct differences between the cases cited by Plaintiffs where courts found that there were material differences between certain tests that were offered to demonstrate a substantial similar events to the actual conditions at the time of the occurence. *Fort Worth & Denver v. O.B. Williams*, 375 S.W.2d 279 (Tex. 1964) (position of lights, distances and like matters were not positioned properly to recreate a beam of light similar to that cast by a locomotive headlight would cause); *Barnes*, 547 F.2d at 277 (the experiment conducted by plaintiffs' expert shed "absolutely no light" on the contested issues in the case); *Chase v. General Motors Corp.*, 856 F.2d 17, 19 (4th Cir. 1988) (actual conditions the night of the crash were "quite different," including road surfaces covered with snow and ice and with vehicles traveling downhill, as opposed to NHTSA testing with dry or merely wet or damp surfaces, and test vehicles on flat surfaces). At best, the cases cited by Plaintiffs support exclusion of Friedman's finite element simulations.

Finally, Plaintiffs claim that they "were not provided with the opportunity to have representatives, i.e., a videographer, a photographer, an attorney, and an expert, present at this particular test, or during any crash test involving vehicle-to vehicle collisions." This argument is nonsensical. Just because the Toyota Defendants did not invite Plaintiffs or their representatives to the crash test does not mean it is inadmissible. Plaintiffs never invited the Toyota Defendants or any of its representatives to the testing conducted by Plaintiffs or their experts in this case, *i.e.* Biokinetics testing; pressurized testing of exemplar 4Runner fuel tank, finite element modeling testing conduct by Keith Friedman. More importantly, Plaintiffs were provided multiple opportunities to inspect the crash test vehicles after the crash test. In fact, counsel for the Toyota Defendants told Plaintiffs on at least four separate occasions, in response to requests by Plaintiffs' counsel, that they could come examine the crash test site and the crash test vehicles. See Correspondence between Toyota's counsel and Plaintiffs' counsel, attached herein as Exhibit A. However, Plaintiffs never accepted these offers. Finally, the Toyota Defendants timely provided Plaintiffs with all of the necessary documentation regarding the crash test, including high-speed video footage depicting the entire crash test and a one hundred twenty-four page test report describing, among other things, the parameters for the crash tests.

### III.
### CONCLUSION

Plaintiffs' Motion should be denied. The crash test is substantially similar to the initial impact between the Volvo tractor-trailer and the 4Runner. The impact configuration and speed selected for the crash test were consistent with the opinions that have been offered by Vick. The crash test is also relevant and necessary evidence to rebut Plaintiffs' allegations, and their finite element modeling, suggesting that the 4Runner's fuel system was compromised during the initial

impact. As a result, Plaintiffs' Motion should be denied and the crash test should be admitted into evidence.

WHEREFORE, PREMISES CONSIDERED, Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. request that Plaintiffs' Motion to Exclude the Exponent Test be denied, that the Court overrule any objections by Plaintiffs to the admissibility of the Exponent Test, and for such other and further relief to which they may show themselves to be entitled.

Respectfully submitted,

*/s/ Kurt C. Kern*
**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**JUDE T. HICKLAND**
State Bar No. 24065416
jude.hickland@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 N. Harwood St., Suite 1700
Dallas, Texas  75201
(972) 616-1700
(972) 616-1701 (fax)

**ATTORNEYS FOR THE TOYOTA DEFENDANTS**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 29th day of June, 2014.

*/s/ Kurt C. Kern*